IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division

BRIAN J. DONOVAN, ESQ.,

     Plaintiff,                        CASE NO: 8:19-cv-00623-VMC-TGW
                                           (Dispositive Motion)

v.

STEPHEN J. HERMAN, ESQ.,

     Defendant.

_____/

## **Defendant's Motion to Dismiss with Prejudice**

KLEIN GLASSER PARK & LOWE, PL
Counsel for Stephen J. Herman, Esq.
9130 S. Dadeland Blvd.
Two Datran Center, Suite 2000
Miami, FL 33156
Tel:    305.670.3700
Fax:    305.670.8592
Email: kleinr@kgplp.com; jonesr@kgplp.com

By:___*Richard M. Jones, Esq.*___
     ROBERT M. KLEIN
     Fla. Bar No: 230022
     RICHARD M. JONES
     Fla. Bar No: 059097

## Introduction and Summary of the Argument

This action seemingly arises out of one of the largest mass torts of our time, the 2010 British Petroleum ("BP") Oil Spill and *Deepwater Horizon* explosion. The action at bar, however, was not initiated by or on behalf of any victims of the oil spill. Rather, the Plaintiff here is a Florida attorney who previously represented three plaintiffs in lawsuits filed against Kenneth Feinberg. Feinberg administered the distribution of funds to compensate claimants for damages suffered during the BP oil spill. Given the vast scope of the BP litigation, MDL 2179 was created to centralize the many lawsuits in the Eastern District of Louisiana, and the three suits against Feinberg were transferred from the Middle District of Florida to MDL 2179. It is Donovan's contention that from its inception, MDL 2179's purpose was to the limit the due process rights and damages of litigants and prospective litigants, and that the Court was aided in this endeavor by Stephen Herman who was appointed as Co-Liaison's Counsel in MDL 2179.

In the present cause, Plaintiff calls on this Court to second-guess the adjudication of thousands of claims, approved settlements, and various protocols and orders issued by MDL 2179 over the course of many years. Even assuming that this Court was able to do so, Plaintiff *ab initio* lacks standing to pursue any such claims on behalf of himself or any non-parties. He presents no factual or legal basis that would entitle him to relief under any of the twelve ill-pled counts he asserts. Dismissal is invariably appropriate and warranted in this case.

## Factual Background

On April 20, 2010, the *Deepwater Horizon* sank resulting in a massive oil spill in the Gulf of Mexico (DE 1-1, ¶ 1). The spill caused immense environmental and economic harm to the surrounding areas, leading to the filing of countless lawsuits that were directly and indirectly related to the spill. Plaintiff Donovan, an attorney in Tampa, Florida, was ostensibly retained by

1

three of the BP oil spill plaintiffs to file lawsuits against attorney Kenneth R. Feinberg, his law

firm, and the Gulf Coast Claims Facility ("GCCF") for Feinberg's administration of the GCCF,

the entity through which individuals and businesses could submit claims for damages allegedly

incurred as a result of the oil spill; Donovan on behalf of his clients claimed that Feinberg's

objective was instead to limit BP's liability and to delay compensation to the oil spill victims. (DE

1-1, ¶¶ 33-52, 131).[12]

On August 10, 2010, the Judicial Panel on Multidistrict Litigation ("JPML") centralized

all of the BP oil-spill federal actions in MDL 2179 pursuant to 28 U.S.C. § 1407. (DE 1-1, ¶ 3).

Subsequently, the cases filed by Donovan's clients were transferred to MDL 2179.[3] On August 27,

2010, the MDL 2179 Court appointed Stephen J. Herman as Plaintiffs' Co-Liaison Counsel. (DE

1-1, ¶ 5). Notably, he was later reappointed by the Court to serve a second term as a member of

the Plaintiffs' Steering Committee ("PSC") through September 30, 2019. (DE 1-1, ¶ 24).

---

[1]     *Pinellas Marine Salvage, Inc. v. Feinberg, et al.* was filed in the Circuit Court of the Sixth Judicial Circuit
in Florida on February 25, 2011, and removed to the Middle District of Florida on March 18, 2011. *See* Complaint,
DE 2, *Pinellas Marine Salvage, Inc. v. Feinberg, et al.*, No. 8:11-cv-00582-EAK-TBM (M.D. Fla. Mar. 18, 2011).
*Salvesen v. Feinberg, et al.* was filed in the Twentieth Judicial Circuit in Florida on June 15, 2011, and removed to
the Middle District of Florida on July 6, 2011. *See* Complaint, DE 2, *Salvesen v. Feinberg, et al.,* No. 2:11-cv-
00375-JES-SPC (M.D. Fla. July 6, 2011). *Ditch v. Feinberg, et al.* was filed in the Circuit Court of the Twentieth
Judicial Circuit in Florida on June 12, 2013, and removed to the Middle District of Florida on July 16, 2013. *See*
Complaint, DE 2, *Ditch v. Feinberg, et al.*, No. 2:13-cv-00531-JES-UAM (M.D. Fla. July 16, 2013).

[2]     Defendant requests that this Court take judicial notice of Mr. Donovan's appearance on behalf of the
plaintiffs in the three above-referenced actions. *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197,
1204 (11th Cir. 2004); Fed. R. Evid. 201(a) and (b). This Court may take judicial notice of matters in the public
record, such as the filings in these underlying lawsuits, without converting a motion to dismiss into one for summary
judgment. *Spechler v. Tobin*, 591 F. Supp. 2d 1350, 1357 (S.D. Fla. 2008), *aff'd*, 327 Fed. Appx. 870 (11th Cir.
2009). *See also Universal Express, Inc. v. U.S. Securities and Exchange Commission*, 177 Fed. Appx. 52, 53 (11th
Cir. 2006).

[3]     *Pinellas Marine Salvage, Inc.* was transferred on August 16, 2011; *Salvesen* was transferred on October 12,
2011; and lastly, *Ditch* was transferred on October 28, 2013. *See* Transfer Order, DE 24-1, *Pinellas Marine Salvage,
Inc. v. Feinberg, et al.*, No. 8:11-cv-00582-EAK-TBM (M.D. Fla.); Transfer Order, DE 27, *Salvesen v. Feinberg, et
al.,* No. 2:11-cv-00375-JES-SPC; Transfer Order, DE 29, *Ditch v. Feinberg, et al.*, No. 2:13-cv-00531-JES-UAM
(M.D. Fla. July 16, 2013).

Upon transfer to MDL 2179, Plaintiff Donovan alleges that he and other unnamed attorneys retained by the oil spill plaintiffs were "magically replaced" by Herman and other unnamed attorneys appointed to the MDL PSC. (DE 1-1, ¶ 130). In light of his clients' pending lawsuits against Feinberg, Donovan allegedly emailed Herman on August 29, 2011 and sought to commence discovery on Feinberg "as soon as possible." (DE 1-1, ¶ 131). On September 5, 2011, Herman responded to Donovan stating that "the Court has declined to permit formal discovery on Feinberg or the GCCF." (DE 1-1, ¶ 132). According to Donovan, Herman's adherence to the Court's procedures amounts to a breach of fiduciary and ethical duties Herman allegedly owed Donovan. (DE 1-1, ¶¶ 130-156).

Plaintiff also claims that Herman improperly designated the "B1" Master Complaint as an admiralty or maritime case and requested a non-jury trial pursuant to Rule 9(h). (DE 1-1, ¶¶ 69, 160). According to Donovan, this was a strategic effort on Herman's behalf to circumvent the Oil Pollution Act of 1190 (OPA) and Outer Continental Shelf Lands Act (OCSLA) which allegedly allowed the MDL 2179 Court to limit the claimants' recovery of damages, heighten and confuse causation standards, and dispense with trial by jury. (DE 1-1, ¶¶ 89-90). In February 2011, settlement negotiations began in MDL 2179, and in November 2012 the final fairness hearing was held. (DE 1-1, ¶¶ 91, 93). At the fairness hearing, four law professors offered their expert opinions that the proposed settlement was eminently "fair, reasonable, and adequate." (DE 1-1, ¶¶ 105-107). Yet, Donovan believes that notwithstanding the reasoned opinions of these experts, it should be "obvious to any reasonable person that Defendant Herman's negotiated settlement class action violates the OPA statute by defining class members by geographic bounds and certain business activities while requiring proof of a heightened, vague standard of causation." (DE 1-1, ¶ 108).

The compensation period was limited to 2010 due to evidence showing that "extending compensation to 2011 would cover losses not likely caused by the spill." (DE 1-1, ¶¶ 97-98). Donovan further takes issue with this causation standard as applied by the MDL 2179 Court and even more so with Herman's alleged agreement to it, because it allegedly limited the claimants' putative right to compensation.   (DE 1-1, ¶¶ 98, 101). He accuses Herman of attempting to "eliminate those few remaining non-cooperating, pesky plaintiffs who have the audacity to demand justice" through the MDL 2179 Court's issuance of PTO 60. (DE 1-1, ¶¶ 113-114). PTO 60 "required plaintiffs in pleading bundle 'B1' who had filed a claim and not previously released their claim to file and serve on BP a sworn statement disclosing information regarding their claims" and required any "B1" plaintiffs who had not previously filed an individual complaint against BP to file a new individual complaint. (DE 1-1, ¶¶ 115-16). On July 14, 2016, the MDL 2179 Court issued an Order declaring that the claimants who had met the requirements of PTO 60 had preserved their claims while those who had not would be time-barred. (DE 1-1, ¶ 121).

On February 22, 2017, the Court issued PTO 64 with the goal of identifying remaining B1 group plaintiffs who could plausibly allege a claim under general maritime law. (DE 1-1, ¶ 124). However, if a plaintiff failed to comply with the requirements of PTO 64, their general maritime law claims would be waived and summarily dismissed with prejudice. (DE 1-1, ¶¶ 125-126). Ultimately, Donovan claims that through these various limitations imposed by MDL 2179, the members of the MDL 2179 PSC, BP, and Herman—the only named Defendant here—"eliminated, excluded or dismissed virtually all remaining claims against BP." (DE 1-1, ¶ 129).

**Legal Argument**

I.    **Plaintiff Donovan has no standing to sue Herman as he has alleged no injuries that he himself has suffered.**

A plaintiff must have standing in order to sue. U.S. Const. art. III, § 2, cl. 1. The irreducible constitutional minimum of Article III standing consists of three elements. A plaintiff must have: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. Of these, the injury in fact is the "first and foremost" of standing's three elements. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998); *Friends of the Earth. Inc. v. Laidlaw Environmental Services*, 528 U.S. 167, 180-81 (2000). Injury in fact refers to "a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* In meeting his burden of showing injury in fact, the plaintiff must clearly allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers. *Warth v. Seldin*, 422 U.S. 490 (1975).

The flaw in Plaintiff's Complaint is that he never alleges an injury that he himself has suffered. Instead, the Plaintiff describes injuries that *his clients have hypothetically suffered*. His clients are not parties to this action and the injuries in question appear to be connected to litigation in MDL 2179. To the extent there are any viable claims—and the Defendant contends there are none—Plaintiff cannot sue as his client's proxy nor as the proxy for other oil-spill claimants. Here, because the papers are so deficient, the Court does not need to go far to see that standing is lacking, even taking the allegations in the Complaint as true. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

Examining the individual counts of the Complaint reveals no allegations demonstrating an attorney-client relationship between Plaintiff and Defendant that would allow him to have standing to assert a claim for damages under the multitude of negligence theories or the breach of fiduciary duty theories asserted within the Complaint. (DE 1-1, ¶¶ 320-353, 400-421, 466-498).

Likewise, in the claims for fraud, fraud in the inducement, fraudulent concealment, promissory estoppel, and constructive fraud, Plaintiff lists a series of purported misrepresentations or omissions of fact made regarding the settlement process in the underlying suit. (DE 1-1, ¶¶ 354-370, 422-564). In the count for promissory estoppel, Plaintiff presents a variation of his fraud claims. He argues that Defendant made representations to the Plaintiff regarding formal discovery on Feinberg that were not followed up on. However, to the extent any of these claims involve misrepresentations regarding the settlement process or the litigation itself, the injury there would not be to Plaintiff.

Count VII seeks damages under an unjust enrichment theory. Plaintiff provides no allegations explaining how Defendant was unjustly enriched to Plaintiff's detriment. There are simply no allegations of injuries the Plaintiff has suffered in light of the Defendant's compensation.

Count XI alleges a "Breach of Fiduciary Duty of Loyalty" (Breach of the Aggregate Settlement Rule). The aggregate settlement rule specifically deals with settlements on behalf of clients. Plaintiff alleges his "clients and all others similarly situated were forced to be represented by Defendant Herman and the MDL 2179 PSC." (DE 1-1, ¶ 481). Again, the Plaintiff is poorly alleging a purported breach of duty and injury to his clients, not to him.

Count XII is labeled "Fraudulent Concealment (MDL 2179 is Unconstitutional)." Plaintiff never alleges an injury that he has suffered that he can seek recourse for against Herman. (DE 1-1, ¶¶ 500-564). Instead, he attacks MLD 2179, its orders, the Court's process, and the transfer of his client's claims against Kenneth Feinberg to MDL 2179. But as counsel, the injury he is complaining of is not to him. Accordingly, none of the allegations in Plaintiff's bloated Complaint present a necessary factual or legal predicate that would accord the Plaintiff standing to bring these claims against the Defendant.

## II.     Independently, the causes of action in the Complaint are all defectively pled.

Separate from the question of standing, the Complaint does not state a claim upon which relief can plausibly be granted under Florida law. Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). However, a complaint of this length including hundreds of repetitive, conclusory, and contradictory paragraphs is not "short and plain" and must be dismissed. *See, e.g., LaCroix v. Western Dist. of Kentucky*, 627 Fed. Appx. 816, 818-19 (11th Cir. 2015); *Flores v. U.S. Attorney General*, No: 2:15-cv-653-FtM-99CM, 2016 WL 3647174, at *2 (M.D. Fla. June 10, 2016); *Pominansky v. Jarj Const. Corp*., 2007 WL 2900275, at *1 (S.D. Fla. Oct. 2, 2007).

The Complaint is also impermissibly pled in a shotgun fashion, incorporating by reference in every count each and every foregoing paragraph; including conclusory, vague, and immaterial facts that are not obviously connected with each of the stated causes of action; and conflating and confusing the causes of action pled. *See Weiland v. Palm Beach County Sherriff's Office*, 792 F.3d 1313, 1332-33 (11th Cir. 2015). The Eleventh Circuit has been explicit in expressing displeasure with "shotgun pleadings" and requiring their dismissal. *See, e.g.*, *Weiland v*, 792 F.3d at 1321; *Cook v. Randolph County*, 573 F.3d 1143, 1151 (11th Cir. 2009); *Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997).

The form of Plaintiff's Complaint renders it almost impossible to respond to in a reasonable fashion. It frequently duplicates the same theories of liability over and over again but with meaningless distinctions, including, for example, two breach of fiduciary duty claims and multiple fraud claims alleging the same elements. Being forced to respond to Plaintiff's prolix,

contradictory, and unclear narrative has required the expenditure of significant time and energy that is grossly disproportionate to the merits or lack thereof here. Even assuming otherwise, under no circumstances should Plaintiff be allowed to file something so massive and unwieldly.

Aside from these pleading deficiencies that militate in favor of an immediate dismissal of the Complaint, plaintiff's factual allegations, even when assumed to be true, cannot otherwise withstand this Rule 12(b)(6) motion. A sufficient complaint "must be enough to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555 (2007), and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). This standard requires more than a possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. Under this analysis, a court is not required to accept factual claims that are "internally inconsistent; facts which run counter to facts of which the court can take judicial notice; conclusory allegations; unwarranted deductions; or mere legal conclusions asserted by a party." *Response Oncology, Inc. v. MetraHealth Ins. Co.*, 978 F. Supp. 1052, 1058 (S.D. Fla. 1997), *order clarified on reconsideration in Response Oncology, Inc. v. Metrahealth Ins. Co.*, No. 96-1772-CIV, 1997 WL 33123678 (S.D. Fla. 1997)); *see also Howard v. Kerzner Intern. Ltd.*, No. 12-22184-CIV, 2014 WL 714787, at *5 (S.D. Fla. Feb. 24, 2014); *In re Gurley*, 357 B.R. 868, 878 (Bankr. M.D. Fla. 2006).

Plaintiff's Complaint is loaded with his legal opinions with no connection to anything actionable against the Defendant. Plaintiff's factual exposition covers scores of unnamed non-parties whom he claims were injured as a result of the MDL 2179 hierarchy. While the pleadings of *pro se* litigants are entitled to less stringent scrutiny, s*ee Tannenbaum v. United States*, 148 F.3d

8

1262, 1263 (11th Cir. 1998), a *pro se* litigant is not entitled to ignore the rules of civil procedure

or the application of substantive law. *See Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981); *see

also Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007).[4]

**A. The counts alleging negligence, gross negligence, or breach of fiduciary duty in connection with the rendition of legal services related to MDL 2179 all fail.**

Counts I and II of the Complaint for gross negligence and negligence assert that Defendant

owed a duty to Plaintiff, Plaintiff's clients, and all others similarly situated to exercise reasonable

care with respect to Defendant's oversight of MDL 2179. (DE 1-1, 322, 338, 366). This includes

conduct that allegedly would be required in the Defendant's role as Co-Liaison Counsel, including

settlement negotiations, litigation, appeals, payment, and other lawyer tasks. (DE 1-1, ¶¶ 322, 336).

Plaintiff alleges that Defendant breached his ethical and fiduciary duties by failing to appropriately

exercise oversight of MDL 2179—which Plaintiff also argues is unconstitutional. Plaintiff also

complains that Defendant was negligent in failing to conduct discovery on Kenneth R. Feinberg.

(DE 1-1, ¶¶ 329; 343). The Complaint is filled with allegations that Defendant made improper

tactical and legal decisions to "maximize his compensation" and functionally to protect BP. (DE

1-1, ¶ 326).

Similarly, in Counts VIII and XI, Plaintiff alleges that Defendant breached his fiduciary

duties to Plaintiff and Plaintiff's clients. Plaintiff specifically alleges that Defendant: "has many

fiduciary duties, including the duty of care, the duty of loyalty, the duty to zealously protect . . . "

and that "Defendant Herman failed to act with the knowledge, skill, and care of other qualified

attorneys practicing under similar circumstances." (DE 1-1, ¶¶ 407-408). Plaintiff also alleges a

breach of duty in connection with the Deep Water Horizon settlement to the extent it allegedly

violates the aggregate settlement rule, repeating the same mantra in Count XI regarding

---

[4]       It also does not help that Plaintiff is himself an attorney.

Defendant's fiduciary and ethical obligation, citing to the ABA Model Rules of Professional Conduct.

Defendant's role with respect to MDL 2179 was as the plaintiffs' Co-Liaison counsel. (DE 1-1, ¶ 5). Plaintiff also notes that "Defendant Herman and each attorney appointed by Judge Barbier to the MDL 2179 [Plaintiffs' Steering Committee] directly represent thousands or tens of thousands of clients." (DE 1-1 ¶ 28). In this regard, Plaintiff's negligence, gross negligence, and fiduciary duty claims appear primarily to be in the form of a claim for professional liability against Defendant.

### i. *The negligence claims fail as a matter of law*

To file suit against an attorney for negligence in connection with the rendition of legal services, a plaintiff must prove the following elements: (1) The attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the plaintiff. *Maillard v. Dowdell*, 528 So. 2d 512, 514 (Fla. 3d DCA 1988). To establish the existence of an attorney's duty to the client it is "not sufficient merely to assert an attorney-client relationship existed between the parties; it is essential to allege the relationship existed with respect to the acts or omissions upon which the malpractice claim is based." *See Lane v. Cold*, 882 So. 2d 436, 438 (Fla. 1st DCA 2004).

Privity of contract is a critical component of any claim against an attorney for deviating from the standard of care. *See Brennan v. Ruffner*, 640 So. 2d 143, 145 (Fla. 4th DCA 1994); *Fed. Deposit Ins. Corp. for Orion Bank of Naples, Florida v. Nason Yeager Gerson White & Lioce, P.A.*, No. 13CV208FTM38UAM, 2013 WL 12200968, at *8 (M.D. Fla. July 22, 2013). To sue an attorney under a negligence theory, there must be an employment relationship between the attorney and the complaining party—creating a direct obligation and a corresponding duty. In some

circumstances, a third-party to the representation can sue the attorney, but only where the underlying representation was to primarily and directly benefit the third-party (such as in will drafting). *Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner*, 612 So. 2d 1378, 1379 (Fla. 1993).[5]

Nowhere across the Complaint's 130 pages does Plaintiff ever establish that Defendant had an attorney-client relationship with him or otherwise owed him any duty of care. Instead, Plaintiff was counsel for several individuals and entities who attempted to sue Kenneth Feinberg and found their cases transferred to MDL 2179 at some point in 2011. Plaintiff does not stand in the shoes of his clients as it pertains to a professional-negligence claim or even a simple negligence claim. Nor is this a situation where Plaintiff is a third-party beneficiary to whatever attorney-client relationship may otherwise exist between Defendant and any litigants in MDL 2179. On this basis alone, Count II fails as a matter of law.

ii. *Plaintiff fails to allege gross negligence.*

Separately, to allege "gross negligence" a Plaintiff is required to show the following elements:

> (1) the existence of a composite of circumstances which, together, constitute an imminent or clear and present danger amounting to more than the normal and usual peril; (2) a showing of chargeable knowledge or awareness of the imminent danger; and (3) an act of omission occurring in a manner which evinces a conscious disregard of the consequences.

*Deutsche Bank Nat. Tr. Co. v. Foxx,* 971 F. Supp. 2d 1106, 1117 (M.D. Fla. 2013).

Defendant's work in MDL 2179 is not such a circumstance. Plaintiff's Complaint never once shows a set of circumstances which would plausibly rise to the level of gross negligence.

---

[5]     The same is true under Louisiana law. *See Seals v. DeBose-Parent*, 99 So. 3d 72, 73 (La. Ct. App. 2012); *Anderson v. Collins*, 648 So. 2d 1371, 1379 (La. Ct. App. 1995), *writ denied*, 95-0629 (La. 4/21/95), 653 So. 2d 576, and *writ denied,* 95-0783 (La. 4/21/95), 653 So. 2d 576.

Plaintiff's allegations that Defendant "colluded" with other members of the MDL 2179 plaintiff's steering committee and BP to "<u>not</u> zealously advocate on behalf of Plaintiff, Plaintiff's clients, and all others similarly situated," (DE 1-1, ¶ 326), is meaningless conjecture and implausible in the absence of any pleaded connection between Plaintiff and Defendant and cognizable damage as a result thereof. Count I should be dismissed.

### iii. *No fiduciary relationship plausibly exists between Plaintiff and Defendant.*

As to the fiduciary duty claims in Counts VIII and XI, the Complaint show no plausible basis for a fiduciary relationship between Plaintiff—as personal counsel for the Feinberg plaintiffs—and Defendant. It offers no factual allegation that the Plaintiff reposed his confidence in the Defendant or more importantly, that the Defendant recognized this responsibility and undertook his duties on behalf of the Plaintiff with this understanding. *See American Honda Motor Co., Inc. v. Motorcycle Information Network, Inc.,* 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005). Courts generally analyze fiduciary duty claims against attorneys using the same rubric as legal-malpractice claims, while acknowledging they are alternative theories of liability. *See Brenner v. Miller,* 09-60235-CIV, 2009 WL 1393420, at *1 (S.D. Fla. May 18, 2009) *and Resolution Tr. Corp. v. Holland & Knight*, 832 F. Supp. 1528, 1531 (S.D. Fla. 1993). The entirety of both of Plaintiff's fiduciary duty claims relate to the rendition of legal services, advice, and information in connection with the MDL 2179 litigation and settlement. The attorney-client relationship creates a fiduciary duty, and those duties encompass the duties of loyalty and care as noted in Plaintiff's Complaint, but those duties were not owed to Plaintiff.

The Plaintiff <u>does not</u> describe a duty that would have been owed to him pursuant to a court order or other document approved by the court in MDL 2179. *Casey v. Denton*, No. 3:17-cv-00521, 2018 WL 4205153, at * 4 (S.D. Ill. Sept. 4, 2018). Even if such a document existed that would

delineate the duties owed by the Defendant to the Plaintiff who was not a plaintiff in the MDL, the Defendant's duties as Co-Liaison counsel would be necessarily circumscribed to the parameters set forth therein. *Id.* Plaintiff cannot both attack the constitutionality of MDL 2179's orders and try to impose undefined duties under them.

While it is generally recognized that leadership counsel in an MDL proceeding have "a duty to perform the functions to which they have been appointed in a fair, honest, competent, reasonable, and responsible way, it would be inappropriate to describe their obligations to other plaintiffs as 'fiduciary' in the traditional sense of the word." *Id.* at * 6 (quoting Stephen Herman, *Duties Owed by Appointed Counsel to MDL Litigants Whom They Do Not Formally Represent*, 64 Loyola L.R. 1, 8 (2018)). As the Southern District of Illinois recognized in *Casey*, to impose the duties incumbent on a traditional attorney-client relationship onto leadership counsel of an MDL would be unworkable given the size of the litigation, and it would frustrate the purpose of leadership counsel to oversee the litigation and ensure that it is proceeding in a timely and organized fashion. *Id.* at * 7. It would further eviscerate the function of MDL leadership counsel if this position also required a fiduciary relationship with personal counsel for individual MDL plaintiffs as the Plaintiff here suggests.

Under these circumstances, the mere pleading that Defendant owed a fiduciary duty is not factually or legally sufficient to support a claim for relief. Counts VIII and XI should be dismissed.

## B. Plaintiff fails to state a claim for negligence *per se;* Count III should be dismissed.

Florida law generally recognizes two categories of statutory violations that constitute negligence *per se*: "(1) violation[s] of a strict liability statute designed to protect a particular class of persons who are unable to protect themselves"; [and] (2) violation of a statute establishing a duty to take precautions to protect a particular class of persons from a particular type of injury."

*Grand Union Co. v. Rocker*, 454 So. 2d 14, 15 (Fla. 3d DCA 1984). Violations of any other kind of statute constitute "mere prima facia evidence of negligence." *Id.* To find negligence *per se*, a private right of action must be explicitly or implicitly stated in a statute. *See Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 852 (Fla. 2003); *Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 985 (Fla. 1994). Where the statute displays no evidence of a legislative intent to create a private right of action, negligence *per se* fails. *Rowe v. Mentor Worldwide, LLC*, 297 F. Supp. 3d 1288, 1297 (M.D. Fla. 2018) (citing *Pantages v. Cardinal Health 200, Inc.*, No. 5:08CV116OC-10GRJ, 2009 WL 2244539, at *2 (M.D. Fla. July 27, 2009)).

The statute that Plaintiff specifically references is the Oil Pollution Act: 33 U.S.C. §2701 *et seq*. Per Plaintiff's Complaint, the OPA governs "private claims for property damage and economic loss result from a discharge of oil in navigable waters." (DE 1-1, ¶ 349). Plaintiff alleges that "Herman's conduct with regard to Defendant's oversight of MDL 2179 is governed by" the OPA and that his "violations of these statutory standards constitute negligence *per se* under Florida law." (DE 1-1, ¶ 352).

The text of the OPA, however, provides no private right of action for purported violations of Defendant's oversight responsibilities to the MDL 2179 plaintiffs' class—nor does the Plaintiff even articulate a colorable basis for such a violation.  The OPA is a strict liability statute directed at parties responsible for an oil spill.  *See, e.g*., *Gabarick v. Laurin Mar. (Am.) Inc*., 623 F. Supp. 2d 741, 744 (E.D. La. 2009). The statute was designed to encourage settlement and reduce litigation in oil spill cases. *Id.* at 747-478. Plaintiff also does not demonstrate how *he himself* was injured by any purported violation that would somehow fall upon Defendant. Count III should be dismissed.

### C.  Plaintiffs' fraud-based claims fail as a matter of law; Counts IV, V, IX, X, and XII should be dismissed.

14

Where a complaint contains claims of fraud or mistake Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading standard "[i]n alleging fraud or mistake" where "a party must state with particularity the circumstances constituting fraud or mistake." Under Eleventh Circuit precedent, this particularity requirement is satisfied if the complaint alleges "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Matheny v. Medco Health Sols., Inc*., 671 F.3d 1217, 1223 (11th Cir. 2012) (quoting *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009)). *See also Blair v. Wachovia Mortg. Corp.*, No. 5:11–cv–566–Oc–37TBS, 2012 WL 868878, at *2 (M.D. Fla. Mar. 14, 2012) (citations omitted). Even a cursory glance at the four counts sounding in fraud in Plaintiff's Complaint reveal that the particularity requirement has not been met, and these counts are subject to dismissal.

### i. *Plaintiff fails to state a claim for Fraud or Fraud in the Inducement.*

Count IV and V are near mirror images of one another, alleging Fraud and Fraud in the Inducement. Fraud claims and fraudulent inducement claims share essentially the same elements:

> (1) a false statement concerning a material fact; (2)
> the representor's knowledge that the representation is false; (3) an intention that
> the representation induce another to act on it; and, (4) consequent injury by
> the party acting in reliance on the representation.

*Compare Townsend v. Morton*, 36 So. 3d 865, 868 (Fla. 5th DCA 2010) *with GEICO Gen. Ins. Co. v. Hoy*, 136 So. 3d 647, 651 (Fla. 2d DCA 2013). Plaintiff has failed to state a cause of action under either theory.

In paragraphs 356, 357 and 365, Plaintiff repeats the same group of 17 purported false statements allegedly made by Defendant. They all involve a summary issued on March 9, 2012 related to the settlement "agreement in principal allegedly entered into between MDL 2179 Plaintiffs and BP." (DE 1-1, ¶¶ 356-357, 365).  In the Fraud count, Plaintiff alleges that he, his

clients, and "all others similarly situated relied on Defendant's representations rather than elect to commence an action in Court against BP, the responsible party, or present the claim to OSLTF." (DE 1-1, ¶ 359). Similarly, in the Fraudulent Inducement count, Plaintiff alleges: "reliance on these false statements of material fact did, in fact, induce Plaintiff, Plaintiff's clients, and all others similarly situated to refrain from commencing an action in Court against BP, the responsible party, or presenting the claim to the OSLTF." (DE 1-1, ¶ 369). Plaintiff adds in the inducement claim that: "as a result of Defendant Herman's refusal to conduct and initiate discovery on Kenneth R. Feinberg, as of the date of the filing of this Complaint, approximately eight years have passed since Plaintiff's clients filed their complaints against Kenneth R. Feinberg in Florida State Court." (DE 1-1, ¶ 370).

Collectively, these allegations do not state a claim for any theory of fraud. The allegations are also simply not plausible. First, the statements in question, on their face, appear to be the opinions of counsel regarding the settlement agreement that was in process of being hammered out in MDL 2179. The notion that they are a "false statement of material fact" is itself absurd. Of course, the settlement in question has long since been affirmed by the Fifth Circuit. *See generally In re Deepwater Horizon*, 739 F.3d 790, 821 (5th Cir. 2014). Elsewhere in the Complaint, it is apparent that similar statements were made by several experts and the Court when approving of the MDL settlement agreement. (DE 1-1, ¶¶ 236-237).

Separately, Plaintiff has not demonstrated how he himself relied upon those representations—as counsel—nor that he has he been personally damaged. Presumably, he would have been the one providing advice to his clients regarding the efficacy of these statements and their options. Under Rule 9, he is required to allege with particularity the manner in which he was misled by the allegedly false statements. *See Sacred Heart Health Sys., Inc. v. Humana Military*

*Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997).  Because he fails to do so, Counts IV and V must be dismissed.

**ii.      *Plaintiff fails to state a claim for Fraudulent Concealment and Constructive Fraud***

Plaintiff also alleges Fraudulent Concealment (Count IX) and Constructive Fraud (X). Fraudulent Concealment is a form of common-law fraud by way of actively concealing a material fact in the face of a duty to disclose that fact. *See R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1068 (Fla. 1st DCA 2010). "This duty arises when one party has information which the other party has a right to know because there is a fiduciary or other relation of trust or confidence between the two parties. Where a party in an arm's-length transaction undertakes to disclose information, all material facts must be disclosed." *Friedman v. Am. Guardian Warranty Services, Inc.*, 837 So. 2d 1165, 1166 (Fla. 4th DCA 2003); *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 335 (Bankr. S.D. Fla. 2013).

As previously noted, there is no fiduciary relationship between Plaintiff and Defendant as a matter of law. The collection of "concealed facts" in Count IX appear to consist of attorney argument and opinion over a negotiated settlement that was consummated years ago. Plaintiff does not identify a material fact that was knowingly and actively concealed from him that caused *him* damage that Defendant was under a legal obligation to disclose.

Similarly, in Count X, Plaintiff claims Defendant is liable under a constructive fraud theory. But, as Plaintiff notes in the Complaint, one of the key elements of the claim is the presence of a fiduciary relationship.  *See Linville v. Ginn Real Estate Co., LLC,* 697 F. Supp. 2d 1302, 1309 (M.D. Fla. 2010). But again, there are no facts in the Complaint establishing a fiduciary

relationship, and the allegations of the Complaint flatly contradict any possibility of one existing. Therefore, Counts IX and X also fail as a matter of law and require dismissal.

### iii. Count XII alleging "Fraudulent Concealment (MDL 2179 is Unconstitutional)" fails as a matter of law.

Plaintiff alleges a second fraudulent concealment claim in Count XII. This count, perhaps more than any other count in the Complaint, highlights its inherent deficiencies. Mechanically, it fails just like the preceding fraud claims. But what is so remarkable about it, is that Plaintiff argues in *over 14 pages* that MDL 2179 is completely unconstitutional—a panel out of which billions of dollars in claims have been paid out in settlement funds and where the settlement at issue has been affirmed through the appellate process. (DE 1-1, ¶¶ 500-564). Not only that, but Plaintiff randomly attacks the Rules of Civil Procedure and, thus, the very legal foundation of class actions. (DE 1-1, ¶¶ 507(d), 546-549). Plaintiff concludes with the remarkable suggestion that somehow the Defendant concealed the unconstitutional nature of these proceedings and had some unidentified duty to disclose it! (DE 1-1, ¶ 557). Not only does the claim not actually allege the elements of the cause of action, but it is so dysfunctional that it could never be fashioned into a viable claim.

As further discussed elsewhere in this Motion, Plaintiff is estopped from attacking the long-since resolved claims and issues determined by the Court in MDL 2179. Count XII must be dismissed.

### iv. Count VI does not state a claim for promissory estoppel

To state a claim for promissory estoppel, a Plaintiff must allege:

(1) a representation as to a material fact that is contrary to a later-
asserted position; (2) a reasonable reliance on that representation; and
(3) a change in position detrimental to the party claiming estoppel caused by
the representation and reliance thereon.

*Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 650 (Fla. 3d DCA 2006).

Plaintiff alleges that a series of email communications occurred between himself and Defendant between September 2011 and December 2013 related to the lawsuits his clients filed against Feinberg. (DE 1-1, ¶¶ 373-377). Plaintiff claims that he, his clients, and all others reasonably situated relied on "Herman's representations that 'the GCCF Jurisdiction Work Group … coordinated Plaintiff's collective efforts regarding Feinberg. . . .'" (DE 1-1, ¶ 378), and that "Defendant . . . never coordinated the MDL 2179 Plaintiff's collective efforts regarding Feinberg." (DE 1-1, ¶ 379).

This is not an actionable form of promissory estoppel. In essence, the purported "promise" was that discovery would be conducted on Kenneth Feinberg and that the work group would coordinate the litigation efforts concerning Feinberg, but that it did not.  Plaintiff, however, cannot show reliance, as he was not the "party" that would have been reasonably relying upon the statements at issue. Plaintiff cannot assume the mantle of any claims that his clients may have had, nor otherwise stand as their proxy. Indeed, he is the very party who would have been obligated as personal counsel to discuss these options with his clients, including any options relative to BP. The claim is not plausible, and Count VI should be dismissed.

### *v.*   **Count VII does not state a claim for unjust enrichment**

Although Count VII of the Plaintiff's complaint is styled a claim for unjust enrichment, it alleges none of the essential elements of the claim—nor could it ever plausibly allege to do so. To plead a claim for unjust enrichment, a plaintiff must show:

> (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff.

*Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. 3d DCA 2018). Plaintiff spends three pages complaining that Defendant aided and abetted Kenneth Feinberg and

19

describing various provisions of the OPA. (DE 1-1, ¶¶ 382-399). But never once does Plaintiff allege what benefit he has conferred on Defendant and what benefit Defendant ostensibly retained. Instead, he seems to be arguing that fees paid to Defendant in connection with his work on MDL 2179 were improper because his conduct "did not rise to the standards expected of his profession." (DE 1-1, ¶ 395).

Again, Plaintiff has no standing to seek the disgorgement of the Defendant's fees on this basis. There is no presumption that counsel appointed to a plaintiffs' steering committee expends funds in bad faith. *See In re San Juan Dupont Plaza Hotel Fire Litigation*, 111 F.3d 220, 233-34 (1st Cir. 1997) (and cases cited therein). This is no less true here where the MDL 2179 Court plainly trusted and reappointed the Defendant to the position, and the Defendant's work was integral to the administration of one of the largest mass-tort claims in history. Count VII should be dismissed.

### III. <u>Plaintiff is estopped from mounting a collateral attack against MDL 2179.</u>

Many of the issues the Plaintiff raises with regard to MDL 2179 involve not only what appears to be his dissatisfaction with the ultimate result, but also with the basic manner in which the massive class action was organized, managed and litigated. Although the page limit of this Motion precludes a detailed examination of every such instance in the 130-page Complaint, what should be abundantly clear is that this action is fundamentally a collateral attack on the findings, structure and binding effect of MDL 2179.

The success of the Plaintiff's claims requires undoing long-settled determinations and decisions by Judge Barbier in the MDL 2179 Court's discretion to manage the class litigation. A central part of this case, should it be allowed to proceed, would require detailed inquiries into the manner in which the GCCF operated, the manner in which claims were resolved, and the

legitimacy of the settlement of tens of thousands of claimants. *See Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 419 (5th Cir. 2013) ("The MDL case before Judge Barbier consists of hundreds of cases, with over 100,000 individual claimants, all in connection with the Deepwater Horizon disaster."). Since the Plaintiff intends to challenge many of those essential orders to make his claims—most, if not all, of which garnered and survived appellate scrutiny—basic rulings on the efficacy of those orders would have a cascading effect on the validity of MDL 2179. While not an exhaustive list, such legal challenges would include:

- The exclusion of claimants who executed GCCF releases from the Class Settlement which was fully and finally approved by the MDL Court ((DE 1-1, ¶ 9);

- The negotiation, execution, submission and approval of the Class Settlement that was fully and finally approved by the MDL Court (DE 1-1, ¶¶ 11, 16, 91-110, 191-198);

- The fairness, reasonableness and adequacy of the Class Settlement with respect to the Attorneys' Fees, which was fully and finally approved by the MDL Court, in addition to the Aggregate Common Benefit Fee Award, which became a final and non-appealable judgment ((DE 1-1, ¶¶ 17-18, 292);

- Pre-Trial Order No. 11 ((DE 1-1, ¶¶ 66-67, 140, 254, 478, 528);

- Pre-Trial Order No. 25 ((DE 1-1, ¶¶ 68, 256, 480, 530);

- The Court's "B1 Order" and Phase One Trial Findings with respect to the classification of the Deepwater Horizon as "vessel" and the application of General Maritime Law (DE 1-1, ¶¶ 71-82);

- Pre-Trial Order No. 60 (DE 1-1, ¶¶ 113-120);

- The Court's Order Re: Compliance with PTO 60 Regarding All Remaining Claims in Pleading Bundle "B1" (DE 1-1, ¶¶ 115-116);

- Pre-Trial Order No. 64 (DE 1-1, ¶¶ 113, 124-126);

- Pre-Trial Order No. 15 (DE 1-1, ¶¶ 155, 222, 255, 479, 529);

- The final Order approving Common Benefit Fee Allocation (DE 1-1, ¶¶ 303-319);

- 28 U.S.C. §1407, the MDL Panel Transfer Order, and/or MDL 2179 itself on
Constitutional grounds (DE 1-1, ¶ 14).

"As a general rule, a judgment in a class action will bind the members of the class." *In re Deepwater Horizon*, 819 F.3d 190, 198 (5th Cir. 2016). Though one of the central themes repeated throughout the Complaint is that the participants in the MDL "colluded" in order to replace justice with judicial efficiency, Federal Rule of Civil Procedure 23 provided Judge Barbier the discretion to manage the litigation. One example of this discretion was the court's issuance of Pretrial Order No. 11 which established several 'pleading bundles' into each of which claims of a similar nature would be placed for the purpose of filing a master complaint, answers, and any Rule 12 motions. *See In re Deepwater Horizon*, 819 F.3d 190, 193 (5th Cir. 2016). As the Fifth Circuit noted in the appeal of a dismissal of a prior collateral action in which a class member similarly attempted to sidestep the preclusive effect of the settlement, "[t]he gargantuan size and extraordinary complexity of this litigation […] support[ed] the district court's decision." *Id.* at 197 (citing *Ctr. for Biological Diversity*, 704 F.3d at 419).

In that case, a "limitation of liability action" brought by an employee/crew member engaged to assist in the firefighting efforts, the employee moved to sever his claims, but did not opt out of the class before the deadline for doing so. *Id.* at 195-98. The district court entered summary judgment for the employer, in part, for what the Fifth Circuit later described as the employee's "collateral attack" on the class judgment. *Id.* at 192-93. Specifically, the employee argued that he was deprived of due process because his attorney did not realize that he would be considered a member of the litigation's Medical Benefits Settlement Class, did not receive any of the electronic filing notifications from the MDL, did not receive the Class Action Settlement Notification, and paid no attention to published notifications regarding the Agreement. *Id.* at 199. Because the relief would necessarily have required the court to revisit the district court's previous

findings—including, as alluded to in the Complaint, issues regarding the sufficiency and overall constitutionality of a settlement agreement which bound members of the class—the Fifth Circuit explained that since it had already affirmed the district court's order approving the agreement and the attendant notice procedures, the employee was in fact bound by the settlement. *Id.* at 198-200.[6] The court stated that although *absent* class members may sometimes collaterally attack a class action judgment, for instance based on a lack of notice and due process, because his counsel had actual notice of the agreement, the circumstances did not justify allowing such a challenge. *Id.* at 199.

The preclusive effect of Judge Barbier's findings similarly requires a dismissal of the Plaintiff's claims on the basis that he is collaterally estopped from challenging any aspect of the underlying orders in front of this Court. Under the doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision will preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case." *In re Celotex Corp.*, 196 B.R. at 609 (citing *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980)). Federal law requires the following four elements to invoke issue preclusion: (1) the issue at stake must be identical to the one decided in the prior action; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the earlier decision; and (4) the standard of proof in the current action must not be significantly more stringent than the standard in the prior action. *Bush v. Balfour Beatty Bahamas (In re Bush)*, 62 F.3d 1319, 1322 (11th Cir. 1995). Each of these factors is satisfied by

---

[6]     Although the facts do not support such an argument upon this Complaint, it is worth briefly noting that the Eleventh Circuit has held that absent class members can collaterally challenge the res judicata effect of a prior class judgment where adequate notice was lacking. See *In re Deepwater Horizon*, 819 F.3d 190, 198–99 (5th Cir. 2016) (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1312–13 (11th Cir. 2012)).

the fact that the Plaintiff, his clients, and all those unnamed but "similarly situated" individuals whom he ostensibly purports to represent, participated in MDL 2179 and were on notice.

With respect to the first element, the action in general is quite clearly a direct assault on the legitimacy of MDL 2179 and a request for this Court to revisit and re-evaluate both the accuracy and "constitutionality" of legal determinations made by Judge Barbier. Further, many of the orders Plaintiff takes issue with have already been addressed and approved by the Fifth Circuit in a handful of opinions relating to MDL 2179. *See, e.g.*, *In re Deepwater Horizon*, 819 F.3d 190 (5th Cir. 2016); *In re Deepwater Horizon*, 786 F.3d 344 (5th Cir. 2015); *In re Deepwater Horizon*, 785 F.3d 1003 (5th Cir. 2015); *In re Deepwater Horizon*, 785 F.3d 986 (5th Cir. 2015); *In re Deepwater Horizon,* 745 F.3d 157, 164 (5th Cir. 2014); *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014); *In re Deepwater Horizon*, 732 F.3d 326 (5th Cir. 2013); *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co*., 704 F.3d 413 (5th Cir. 2013).

The second prong requires the issue to have been actually litigated in the previous determination. The issues were fully litigated before Judge Barbier, as is evidenced by detailed written orders, published decisions and various opinions by the Fifth Circuit.

Third, the earlier determined issue must have been a critical and necessary part of the earlier judgment. This element is easily satisfied here because even the most cursory review of the Complaint reveals that the Plaintiff seeks to reexamine some of the most basic threshold determinations, such as whether MDL 2179 involved "any live dispute between the parties," which the Plaintiff suggests may have prevented the action from satisfying Article III's "case-or-controversy" requirement. *See, e.g,* (DE 1-1, ¶ 14).

Finally, under the fourth prong, the standard of proof required in the prior action must not be significantly lower than the standard in the current action. *See Bush*, 62 F.3d at 1322. The

24

standard of proof for civil litigation between private litigants in the Federal court system is generally by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

For these reasons, and because the very nature of this action is undoubtedly one which would require significant consideration of issues previously adjudicated in one of the largest mass tort actions in the past century, the Court should dismiss the Complaint with prejudice.

## <u>Conclusion</u>

The Plaintiff's Complaint fails to set forth either a legal or factual cognizable basis to state a plausible claim for relief. The multiple and repetitive claims asserted by Plaintiff seek to collaterally attack the work of MDL 2179 through one of its appointed liaison counsel. This Court should not permit the Plaintiff here to utilize this forum in such a vexatious and harassing manner to retry already adjudicated claims. At this early juncture, it is apparent that Plaintiff's Complaint should be dismissed with prejudice.

Dated: April 1, 2019

## CERTIFICATE OF SERVICE

**WE HEREBY** certify that a true and correct copy of the above and foregoing was electronically filed via CM/ECF this 1ˢᵗ day of April, 2019, which will send notice of electronic filing to all CM/ECF participants.

KLEIN GLASSER PARK & LOWE, PL
9130 S. Dadeland Blvd.
Two Datran Center, Suite 2000
Miami, FL 33156
Tel: 305.670.3700
Email:     kleinr@kgplp.com
              jonesr@kgplp.com


By: /s/ Richard M. Jones
ROBERT M. KLEIN
Fla. Bar No.: 230022
RICHARD M. JONES
Fla. Bar No.: 59097
*Attorneys for Defendant*