UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In Re: Oil Spill by the Oil Rig** | * | **MDL No. 2179** |
| **"Deepwater Horizon" in the Gulf** | * | |
| **of Mexico, on April 20, 2010** | * | **SECTION: J** |
| | * | |
| | * | **JUDGE BARBIER** |
| **This Document Relates to:** | * | |
| | * | **MAG. JUDGE WILKINSON** |
| *Bradley Shivers, et al v. BP, PLC, et al* | * | |
| *Case No. 2:10-cv-03261* | * | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendants BP Exploration & Production Inc., BP America Inc., and BP Products North America, Inc. (collectively "BP") and Halliburton Energy Services, Inc. ("Halliburton," and, together with BP, the "Defendants") submit this memorandum in support of their motion to dismiss plaintiffs Bradley Shivers, Mark Mead, and Scott Russell's (collectively, "Plaintiffs") First Amended Complaint (Rec. Doc. 26329) ("First Amended Complaint" or "FAC") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

This Court dismissed Plaintiffs' original complaint for failure to state maritime law claims for negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED") under a bystander/"zone of danger" theory. Order & Reasons [As to the Motions to Dismiss the *Andry* and *Shivers* Actions] (Rec. Doc. 26318) ("MTD Order") at 15–16. Plaintiffs fail to cure the flaws in their allegations in their First Amended Complaint, filed on February 18, 2020. Plaintiffs cannot overcome the fact that they were 15 miles away from the explosion when

---

[1] BP p.l.c. does not respond to the complaint because it has not been properly served.

it occurred and allege no new facts to state a plausible claim that they were physically harmed by or in immediate risk of physical harm from the initial explosion.  Nor do they allege facts to state a claim against Defendants for emotional distress suffered after they traveled closer to the rig and participated in emergency response efforts.  Like its predecessor, the First Amended Complaint should be dismissed.

## BACKGROUND

Plaintiffs are bystanders who asserted three causes of action—negligence, "wanton, reckless, willful disregard and grossly negligent conduct," and intentional or reckless infliction of emotional distress—to recover for emotional damages allegedly resulting from their proximity to the *Deepwater Horizon* incident.  *See* Complaint (Case No. 10-03261, Rec. Doc. 1) ("Original Complaint") ¶¶ 108, 121, 134.  On August 10, 2018, the Defendants moved to dismiss Plaintiffs' complaint, arguing that it failed to state a claim on which relief could be granted.  *See* Defendants' Motion to Dismiss for Failure to State A Claim (Rec. Doc. 24736) ("MTD Original Complaint"). This Court agreed and dismissed the Original Complaint, but gave Plaintiffs seven days to amend. *See* MTD Order, 15.  Plaintiffs filed their First Amended Complaint on February 18, 2020, asserting the same three causes of action and adding a handful of new factual allegations.

In the First Amended Complaint, Plaintiffs allege that they were fishing on the Gulf of Mexico on April 20, 2010 when they saw a "distant light."  FAC ¶¶ 1–7.  Using binoculars, Plaintiff Shivers saw "what appeared to be a rig on fire."  *Id.*  Plaintiffs then heard and felt an explosion, *id.* ¶ 9, an allegation this Court deemed insufficient to show they were in any immediate risk of physical harm.  MTD Order, 11.  Plaintiffs now add that a "shockwave from the explosion hit each Plaintiff and shook the boat," FAC ¶ 10, and that they "knew the explosion was bad," *id.* at ¶ 11.  At this point, Plaintiffs headed toward the *Deepwater Horizon* and allege it took them 20 minutes to "arrive at the scene," where emergency response efforts were underway.  *Id.* at ¶¶ 12–

17. Plaintiffs detail their efforts to assist in the emergency response, during which time they now allege "[t]here were subsequent explosions every few minutes on the burning rig." *Id.* at ¶¶ 23–24. They do not allege how close they were to the explosions or that those explosions created an objectively immediate risk of physical harm to them or that they subjectively feared they were at immediate risk of physical harm from those explosions. Rather, Plaintiffs allege they "believed they were under constant threat of *another* massive explosion that would send debris towards them and their boat . . . ." *Id.* at ¶ 24 (emphasis added). Plaintiffs also newly allege that they suffered various injuries, asserting that the "overwhelming heat" burned their faces and singed their hair, they suffered "scratches and bruises when leaning over the rails" in the course of their efforts, and one Plaintiff "smashed" his hand while holding a lifeboat. *Id.* at ¶¶ 28, 31–32. Plaintiffs also allege they "felt and heard deep rumbling sounds coming from deep below the surface of the water," which they believed to be caused by explosions. *Id.* at ¶ 39. The Court previously rejected this allegation as insufficient. So, Plaintiffs add, in conclusory fashion, that the rumblings shook their boat and that they believed "they were in an immediate risk of harm." *Id.*

These new allegations are insufficient to cure the defects in Plaintiffs' legal theory for emotional distress.

## ARGUMENT

### I. LEGAL STANDARD

"To avoid dismissal for failure to state a claim, the complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Carlucci v. Chapa*, 884 F.3d 534, 537–38 (5th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," demanding instead sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

"'[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action' are not enough, nor are facts that are 'merely consistent with' a defendant's liability." *Singh v. RadioShack Corp.*, 882 F.3d 137, 144 (5th Cir. 2018) (quoting *Twombly*, 550 U.S. at 555 and *Iqbal*, 556 U.S. at 678).

## II. The First Amended Complaint Fails to State A Claim on Which Relief Can Be Granted.

Despite the amendments in the First Amended Complaint, Plaintiffs still do not state a facially valid claim for NIED or IIED[2] under federal maritime law.[3] Accordingly, the First Amended Complaint should be dismissed.

### A. Plaintiffs Fail to State A Claim for Negligent Infliction of Emotional Distress.

To succeed on an NIED claim, Plaintiffs must prove that they suffered "mental or emotional harm . . . that is caused by the negligence of another and that is not directly brought about by a physical injury, but that may manifest itself in physical symptoms." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 544 (1994). Under a "zone of danger" theory, plaintiffs may recover for cognizable emotional injuries, if they "sustain a physical impact as a result of a defendant's negligent conduct, or . . . are placed in immediate risk of physical harm by that conduct." *Id.* at 547–48. This Court held that the "zone of danger" test applies to NIED claims brought under

---

[2] Plaintiffs style their second cause of action as "wanton, reckless, willful disregard, and grossly negligent conduct." FAC ¶ 142. As there is no separately cognizable tort of this nature, and as this Court did not address this claim in the MTD Order, Defendants subsume all discussion of the second cause of action into their arguments concerning the NIED and IIED claims.

[3] This Court held, and the parties agree, that federal maritime law applies to Plaintiffs' claims. MTD Order, 6; Plaintiffs' Response and Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Rec. Doc. 24809), at 3; MTD Original Complaint, 4–5.

4

maritime law. *See* MTD Order, 7.[4]  The First Amended Complaint does not satisfy either prong of this test.

> 1. *The First Amended Complaint Does Not Plausibly Allege That Defendants' Conduct Placed Plaintiffs in Objectively Immediate Risk of Physical Harm.*

The "zone of danger" test recognizes that "a near miss may be as frightening as a direct hit." *Gottshall*, 512 U.S. at 547.  To fall in the "zone of danger," Plaintiffs must allege both that they were in objectively immediate risk of physical harm and that they subjectively believed they were in such immediate risk of harm.  *See Anselmi v. Penrod Drilling Corp.*, 813 F. Supp. 436, 442 (E.D. La. 1993); MTD Order, 11–12.  Because Plaintiffs have failed to plausibly allege that they were placed in objectively immediate risk of physical harm, the First Amended Complaint should be dismissed.

*First*, Fifth Circuit case law undermines Plaintiffs' contention that they were in the "zone of danger."  The Fifth Circuit's opinion in *Ainsworth* delineates the narrow confines of the "zone of danger" standard.  *See Ainsworth v. Penrod Drilling Corp.*, 972 F.2d 546, 547–48 (5th Cir. 1992).  There, the court affirmed a finding of summary judgment against a crew member on a jack-up rig who alleged nonphysical damages under a "zone of danger" theory.  *Id*.  The crew member was in the control room when a helicopter crashed 100 feet away from him on the rig.  *Id*. at 548.  The court held that, under a "zone of danger" inquiry, the plaintiff could not show that he was objectively threatened with physical harm, in part because his location in the control room was separated from the crash by 100 feet and the bow leg of the rig.  *Id*.

Similarly, the court's opinion in *Anselmi* is helpful in defining the scope of facts that can establish that a plaintiff was in the "zone of danger."  *See Anselmi*, 813 F. Supp. at 442.  There,

---

[4] BP acknowledges and accepts for the purposes of this motion the Court's holding applying a "zone of danger" test to Plaintiffs' claims, but reserves its right to appeal that ruling.

the court denied the defendant's motion for summary judgment, finding that whether the plaintiff was within the "zone of danger" was a question of fact for a jury. *Id*. The plaintiff, a crane operator on an oil rig, was onboard the rig when two explosions ignited, sending flames within 50 to 75 feet of the plaintiff. *Id*. at 437–38. The court held that the plaintiff had made a showing of objective fear within an "articulable area of actual threat to his well-being," relying in large part on the fact that the rig was an "isolated, self-supporting unit" and the plaintiff "could not easily flee the scene." *Id*. at 442.

Here, Plaintiffs have not alleged that they were placed in objectively immediate risk of physical harm by Defendants' conduct. Unlike the plaintiff in *Anselmi*, who was 50 to 75 feet away from the flames and on the rig at the time of the explosion, Plaintiffs were ***15 miles*** and 20 minutes away from the scene of the explosion. *See id*. at 438; FAC ¶¶ 12, 16. As the Fifth Circuit in *Ainsworth* held that 100 feet from a helicopter crash on a rig was not within the "zone of danger," 15 miles at the time of the explosion is beyond the pale. *See Ainsworth*, 972 F.2d at 548; *SCF Waxler Marine LLC v. M/V ARIS T*, No. Civil Action No. 16-902 c/w, 2019 WL 6174981 at *39 (E.D. La. Nov. 19, 2019) (holding plaintiff could not recover under "zone of danger" theory because he was 1,000 feet and five minutes away from a vessel that struck various marine terminals, vessels, and barges and he had ample time to leave before that vessel passed by).

***Second***, Plaintiffs' new allegations do not overcome this Court's rulings in the MTD Order. The Court held that Plaintiffs' allegations that they "heard and felt" the initial explosion did not objectively permit an inference that they were in immediate risk of physical harm. *See* MTD Order, 11. Plaintiffs now allege that the "shockwave from the explosion hit each Plaintiff and shook the boat." FAC ¶ 10. This allegation is not meaningfully different from Plaintiffs' previous allegation, and it fails to plausibly suggest an objective, immediate risk of physical harm. Plaintiffs

6

do not allege that they were harmed by the shockwave or feared any risk of harm from the shockwave. This is not an objectively "near miss" within the scope of the "zone of danger" test. *See Gottshall*, 512 U.S. at 547–48.

Nor have Plaintiffs plausibly alleged that they were in the "zone of danger" during their emergency response efforts. As discussed below, *infra* Section II.A.3, Plaintiffs' emotional distress claims are barred to the extent they voluntarily entered and remained in any "zone of danger." Moreover, this Court already held that Plaintiffs' alleged fears regarding "deep rumbling sounds," which they believed were caused by other explosions, did not permit a reasonable inference of an objective, immediate risk of physical harm. *See* MTD Order, 11. Plaintiffs now assert that they "***believed*** they were under constant threat of another massive explosion that would send debris towards them," FAC ¶ 24 (emphasis added), and "***believed*** that these rumblings were caused by other explosions and that they were in an immediate risk of harm," *id.* at ¶ 39 (emphasis added). These allegations do nothing more than restate Plaintiffs' subjective fears and offer "[t]hreadbare recitals . . . , supported by mere conclusory statements" as to the objective risk of harm. *Iqbal*, 556 U.S at 678. Indeed, Plaintiffs allege that they "frequently" reversed their boat to back away from the rig, FAC ¶ 28, demonstrating that they were able to retreat safely as needed.

Plaintiffs have not pled facts to permit an inference that they were placed in an objectively immediate risk of physical harm by Defendants' alleged conduct.

        2.    *The First Amended Complaint Does Not Sufficiently Allege That Plaintiffs Suffered Physical Injury or Impact.*

Plaintiffs also fail to allege facts to satisfy the "physical injury or impact" prong of the "zone of danger" test. Under Fifth Circuit jurisprudence, "trivial" injuries do not support recovery for emotional distress. *See, e.g.*, *Ainsworth*, 972 F.2d at 547. Because Plaintiffs fail to allege

physical injuries beyond the levels rejected by this Court and Fifth Circuit precedent, Plaintiffs' NIED claims should be dismissed.

This Court already held that "sensing the air-pressure changes from a distant explosion" does not satisfy the "physical injury or impact" rule. *See* MTD Order, 12–13. Plaintiffs' new allegation that the "shockwave from the explosion hit each Plaintiff and shook the boat," FAC ¶ 10, is not meaningfully different from Plaintiffs' previous allegations. To the extent they are "impacts" at all, "hear[ing] and fe[eling] a concussive sonic boom explosion," *id.* at ¶ 9, and feeling a vessel shake while on the open water are both, at best, trivial impacts that cannot satisfy the "physical injury or impact" rule. *See* MTD Order, 12–13.

Plaintiffs' new allegations of physical injuries and impacts that occurred once they reached the rig—which were absent from the Original Complaint—likewise fall short. Plaintiffs now allege that their faces were burned and their hair was singed from coming within 100 to 200 feet of the rig, they were scratched and bruised from leaning over the rails in their response efforts, and one Plaintiff's hand was smashed while holding onto a lifeboat. FAC ¶¶ 28, 31–32. Such injuries do not satisfy the "physical injury or impact" rule under Fifth Circuit law. *See Gaston v. Flowers Transp.*, 866 F.2d 816, 816–17 (5th Cir. 1989) (affirming dismissal of NIED claim brought by plaintiff who witnessed his half-brother crushed to death, where plaintiff fell and suffered "only trivial physical injury—a bruised elbow"); *Ainsworth*, 972 F.2d at 547 (holding an "upset stomach, headaches, [and] a pulled muscle" suffered after plaintiff witnessed a helicopter crash 100 feet away on a rig were merely trivial and did not support recovery for NIED).

Plaintiffs' alleged injuries are distinguishable from the injuries found sufficient in *Gough*. There, the plaintiff was inside the pilot house on his vessel when the vessel exploded, forcing the plaintiff to jump overboard to escape the spreading flames. *Gough v. Nat. Gas Pipeline Co. of*

8

*Am.*, 996 F.2d 763, 766 (5th Cir. 1993). The plaintiff "could feel the heat, and immediately after he left the pilot house fire engulfed it." *Id.* Even in the water, the heat was "unbearable," and the plaintiff inhaled smoke, ingested salt water, and suffered multiple contusions and possible burns in the course of his harrowing escape. *Id.* In contrast, Plaintiffs allege minor injuries from coming within 100 to 200 feet of the burning rig "at times," but were able to "frequently" reverse their boat and retreat from the heat. FAC ¶ 28. Plaintiffs do not reference these newly alleged injuries anywhere else in the First Amended Complaint and do not allege that they required or sought any medical attention for these injuries. These are not the types of physical impacts that would allow Plaintiffs to recover for NIED.

        3.    *Plaintiffs Cannot Recover for Any Alleged Injuries Suffered by Voluntarily Entering the Zone of Danger.*

Notwithstanding the discussion above, Plaintiffs ignore the fact that they chose to enter any applicable "zone of danger" by heading and remaining closer to the rig before they suffered any alleged physical and emotional injuries. Plaintiffs point to no authorities that permit a "zone of danger" emotional distress claim after voluntarily traveling to the danger, and maritime law does not permit such claims.

While the Fifth Circuit has held that federal maritime law "must be . . . most hospitable to the impulses of man and law to save life and limb and property," this does not extend to permit maritime rescuers to bring claims of emotional distress suffered during the course of a rescue. *Grigsby v. Coastal Marine Serv. of Tex., Inc.*, 412 F.2d 1011, 1021–23 (5th Cir. 1969); *cf. Gaston*, 866 F.2d at 821 (holding that a crewmember who attempted to rescue a fellow crewmember after the vessel struck a barge could not recover for emotional damages). The Fifth Circuit has declined to recognize such a "blanket protection" for injuries incurred during a maritime rescue. *See Theodories v. Hercules Navigation Co.*, 448 F.2d 701, 704 (5th Cir. 1971). Admiralty law seeks

9

to promote rescue primarily by heightening the standard of contributory negligence, thus comparing the rescuer's actions to that of a reasonable person under those emergency circumstances, so that a would-be rescuer is not deterred due to a fear of being held liable for any acts of negligence that they commit during the rescue. *See Hlodan v. Ohio Barge Line, Inc.*, 611 F.2d 71, 73-74 (5th Cir. 1980). This policy in favor of maritime rescue does not, however, ***create*** emotional distress claims for choosing to undertake a rescue. Permitting claims of NIED suffered after individuals travel to the scene of disaster would open courts and defendants to the "nearly infinite and unpredictable liability" feared in *Gottshall*. 512 U.S. at 546. Due to the difficulties with adjudicating such claims, courts have recognized limits, such as the "zone of danger" test, on bringing NIED claims. *See id*. at 557.

Here, Plaintiffs state that they "knew the explosion was bad," yet they travelled 20 minutes to reach the scene and provide assistance. FAC ¶ 11. Plaintiffs' rescue efforts were rightly recognized and commended, including by the Coast Guard and others in 2011. However, maritime law cannot recognize liability for alleged mental harms incurred by individuals who travel to the scene of disaster. *See Gaston*, 866 F.2d at 821; *cf. LeConte v. Pan Am. World Airways, Inc.*, 736 F.2d 1019, 1021 (5th Cir. 1984) (rejecting claims under a bystander/"zone of danger" theory, under Louisiana law, for off-duty police officers who spent hours assisting in search and rescue for victims of the 1982 Pan Am crash in Kenner, Louisiana, noting "the plaintiffs here are purely bystanders, and they were outside any zone of danger created by defendants' alleged negligence"); *Coastal Iron Works, Inc. v. Petty Ray Geophysical, Div. of Geosource, Inc.*, 783 F.2d 577, 582 (5th Cir. 1986) (noting that reference to state law is appropriate where federal maritime law is silent). Even if they entered a "zone of danger" once they arrived at the site—which Plaintiffs

10

have not sufficiently alleged—Plaintiffs cannot recover for any emotional distress they suffered a result of their voluntary rescue efforts.

### B. Plaintiffs Fail to State a Claim for Intentional Infliction of Emotional Distress.

Plaintiffs also fail to state a claim for intentional infliction of emotional distress. This Court already held that Plaintiffs' previous complaint did not state a claim for IIED, *see* MTD Order, 14–15, and Plaintiffs' amendments do not cure the deficiency of their pleading.

As this Court laid out in the MTD Order, the elements of an IIED claim are (1) "conduct so extreme in degree and so outrageous in character that it went beyond all bounds of decency and was utterly intolerable in civilized community; (2) that such conduct caused severe emotional distress; and (3) that defendant intended, by performing the acts complained of, to inflict severe emotional distress on plaintiff, or that defendant knew that such severe emotional distress would be certain or substantially certain to result from the conduct." *Id.* at 14.

Plaintiffs attempt to re-plead the third element of IIED by alleging that Defendants knew the dangers and risks associated with deepwater drilling and knew that "oil rigs are an attractive location for fisherman [*sic*] . . . and that fisherman [*sic*] would be the first responders in the event of an emergency." FAC ¶ 145. Even if true, these factual allegations do not support a plausible inference that Defendants intended or knew that such severe emotional distress was certain or substantially certain to occur to Plaintiffs fishing fifteen miles away from the rig on April 20, 2010. Moreover, claims for IIED from accident scenes, absent any specific and targeted behaviors at an individual plaintiff, fail as a matter of law. For example, the court in *Dumas v. Angus Chem. Co.*, discussing Louisiana law, held that plaintiffs had failed to make a prima facie case of IIED, stating that it would be "absurd to suggest that not only would [the defendants'] intent be to kill or wound workers and cause millions of dollars in damages, but also that their conduct would be calculated to cause severe emotional distress directed at plant workers, [local] residents, and their relatives

11

spread around the world." *See Dumas v. Angus Chem. Co.*, 728 So. 2d 441, 446–47 (La. 2d Cir. 1999); *cf. Coastal Iron Works, Inc.*, 783 F.2d at 582 (noting that reference to state law is appropriate where federal maritime law is silent). As Plaintiffs have not, and cannot, allege that Defendants specifically targeted any behavior toward Plaintiffs, Plaintiffs' IIED claims once again must fail. *See* MTD Order, 15.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully submit that Plaintiffs have failed to state a claim upon which relief can be granted on their NIED and IIED claims, and therefore this action should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: March 3, 2020

                                                                   Respectfully submitted,

| | |
|---|---|
| */s/ R. Keith Jarrrett* <br> R. Keith Jarrett (Bar # 16984) <br> LISKOW & LEWIS <br> One Shell Square <br> 701 Poydras Street, Suite 5000 <br> New Orleans, Louisiana 70139-5099 <br> Telephone: (504) 581-7979 <br> Fax No.    (504) 556-4108 <br><br> -and- <br><br> Matthew T. Regan, P.C. <br> (matthew.regan@kirkland.com) <br> Kristopher S. Ritter <br> (kristopher.ritter@kirkland.com) <br> KIRKLAND & ELLIS LLP <br> 300 North LaSalle <br> Chicago, IL 60654 <br> Telephone: (312) 862-2000 <br><br> -and- <br><br> Christopher W. Keegan <br> (chris.keegan@kirkland.com) <br> Ashley Littlefield <br> (ashley.littlefield@kirkland.com) <br> Anna Terteryan <br> (anna.terteryan@kirkland.com) <br> KIRKLAND & ELLIS LLP <br> 555 California Street <br> San Francisco, CA 94104 <br> Telephone: (415) 439-1400 <br><br> *Attorneys for Defendants BP Exploration & Production Inc., BP Products North America Inc., and BP America Production Company* | */s/ R. Alan York* <br> R. Alan York <br> State Bar No. 22167500 <br> AYork@ReedSmith.com <br> REED SMITH LLP <br> 811 Main Street <br> Suite 1700 <br> Houston, Texas 77002 <br> Telephone: (713) 469-3800 <br> Facsimile: (713) 469-3899 <br><br> *Attorneys for Defendant Halliburton Energy Services, Inc.* |

13

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Joint Motion to Dismiss First Amended Complaint has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 3rd day of March, 2020.

*/s/ R. Keith Jarrett*
R. Keith Jarrett