# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-30243

United States Court of Appeals
Fifth Circuit

**FILED**

August 13, 2019

Lyle W. Cayce
Clerk

IN RE: DEEPWATER HORIZON

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; ET AL,

     Plaintiffs,

v.

HALLIBURTON ENERGY SERVICES, INCORPORATED; TRANSOCEAN
HOLDINGS, L.L.C.,

     Defendants – Appellees,

v.

JULIUS BARBOUR; EDWARD BARNHILL, JR.; EDWARD BARNHILL,
SR.; KAREN BARNHILL; SCOTT BLACK; ET AL,

     Movants – Appellants.

JOHN M. PETITJEAN, individually and on behalf of a putative class; ET AL,

     Plaintiffs,

v.

HALLIBURTON ENERGY SERVICES, INCORPORATED; TRANSOCEAN
HOLDINGS, L.L.C.,

     Defendants – Appellees,

v.

No. 18-30243
c/w 18-30413 & 18-30533

JULIUS BARBOUR; EDWARD BARNHILL, JR.; EDWARD BARNHILL, SR.; KAREN BARNHILL; SCOTT BLACK; ET AL,

      Movants – Appellants.

_____

ECONOMIC and PROPERTY DAMAGES SETTLEMENT CLASS, in the matter of Bon Secour Fisheries v. BP Exploration & Production, Incorporated 12cv970,

      Plaintiff,

v.

HALLIBURTON ENERGY SERVICES, INCORPORATED; TRANSOCEAN HOLDINGS, L.L.C.,

      Defendants – Appellees,

v.

JULIUS BARBOUR; EDWARD BARNHILL, JR.; EDWARD BARNHILL, SR.; KAREN BARNHILL; SCOTT BLACK; ET AL,

      Movants – Appellants.


CONSOLIDATED WITH 18-30413

IN RE: DEEPWATER HORIZON

_____

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; ET AL,

      Plaintiffs,

v.

No. 18-30243
c/w 18-30413 & 18-30533

HALLIBURTON ENERGY SERVICES, INCORPORATED; TRANSOCEAN
HOLDINGS, L.L.C.,

        Defendants – Appellees,

v.

JULIUS BARBOUR; EDWARD BARNHILL, JR.; EDWARD BARNHILL,
SR.; KAREN BARNHILL; SCOTT BLACK; ET AL,

        Movants – Appellants.

_____

JOHN M. PETITJEAN, individually and on behalf of a putative class; ET AL,

        Plaintiffs,

v.

HALLIBURTON ENERGY SERVICES, INCORPORATED; HALLIBURTON
COMPANY,

        Defendants – Appellees,

v.

JULIUS BARBOUR; EDWARD BARNHILL, JR.; EDWARD BARNHILL,
SR.; KAREN BARNHILL; SCOTT BLACK; ET AL,

        Movants – Appellants.

_____

JOHN M. PETITJEAN, individually and on behalf of a putative class; ET AL,

        Plaintiffs,

v.

No. 18-30243
c/w 18-30413 & 18-30533

TRITON ASSET LEASING GmbH; TRANSOCEAN DEEPWATER, INCORPORATED; TRANSOCEAN HOLDINGS, L.L.C.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED,

        Defendants – Appellees,

v.

JULIUS BARBOUR; EDWARD BARNHILL, JR.; EDWARD BARNHILL, SR.; KAREN BARNHILL; SCOTT BLACK; ET AL,

        Movants – Appellants.

_____

ECONOMIC and PROPERTY DAMAGES SETTLEMENT CLASS, in the matter of Bon Secour Fisheries v. BP Exploration & Production, Incorporated 12cv970,

        Plaintiff,

v.

HALLIBURTON ENERGY SERVICES, INCORPORATED,

        Defendant – Appellee,

v.

JULIUS BARBOUR; EDWARD BARNHILL, JR.; EDWARD BARNHILL, SR.; KAREN BARNHILL; SCOTT BLACK; ET AL,

        Movants – Appellants.

CONSOLIDATED WITH  18-30533

In re: Deepwater Horizon

-------------------------

No. 18-30243
c/w 18-30413 & 18-30533

DOBBY DARNA; DARRIN COVERT; RICHARD DELACEY; JOSEPH
WILLIAMSON; GEORGE ZIRLOTT,

       Plaintiffs – Appellants,

v.

HALLIBURTON ENERGY SERVICES, INCORPORATED; HALLIBURTON
COMPANY; TRANSOCEAN HOLDINGS, L.L.C.; TRITON ASSET LEASING
GMBH; TRANSOCEAN DEEPWATER, INCORPORATED; TRANSOCEAN
OFFSHORE DEEPWATER DRILLING, INCORPORATED,

       Defendants – Appellees.

————————————

Appeals from the United States District Court
for the Eastern District of Louisiana
Nos. 2:10-MD-2179, 2:12-CV-970, 2:15-CV-4143,
2:15-CV-4146, and 2:15-CV-4654

————————————

Before KING, ELROD, and ENGELHARDT, Circuit Judges.

PER CURIAM:

       Following the *Deepwater Horizon* disaster, Halliburton Energy Services,
Inc. and Transocean Holdings, L.L.C. each entered into a punitive damages
settlement agreement with a class of claimants who alleged that they were
harmed by the oil spill.  In these consolidated appeals, a group of menhaden
fishermen challenge the denial of their claims pursuant to those settlements.
Because the magistrate judge properly affirmed the denial of the claims and
the district court properly declined review, we AFFIRM.

No. 18-30243
c/w 18-30413 & 18-30533

## I.

Appellants are commercial menhaden fishermen (the Fishermen) who allegedly suffered economic loss due to the *Deepwater Horizon* oil spill.  The Fishermen did not file separate lawsuits against BP or any of the other entities involved in the spill.  However, they fell within the class definition in the class-action portion of the B1 Master Complaint filed in the *Deepwater Horizon* MDL.[1]  The B1 Master Complaint sought compensatory and punitive damages on behalf of the B1 plaintiffs and class members.

The familiar *Deepwater Horizon* Economic and Property Damages Settlement (E&P Settlement) eventually resolved the majority of the claims asserted in the B1 Master Complaint.  However, the terms of that agreement specifically excluded the Fishermen.  Instead, the Fishermen entered into settlement agreements with the Appellees, Halliburton Energy Services, Inc. (HESI) and Transocean Holdings, L.L.C. (Transocean).  These class settlement agreements (the HESI Settlements) created a fund to distribute among the claimants for punitive damages arising out of the oil spill, and the parties agree that the Fishermen fit within the class definition set out in the settlements.[2]  The HESI Settlements also include a provision limiting the claimants' rights

---

[1] As we explained in *Graham*, the district court divided the claims against BP, Transocean, and the other entities into pleading bundles for ease of administration.  *In re Deepwater Horizon* (*Graham*), 922 F.3d 660, 664 (5th Cir. 2019).  The B1 Master Complaint asserted claims on behalf of plaintiffs in the B1 pleading bundle, which encompassed claims for "non-governmental economic loss and property damages."  The class-action portion of the complaint defined the class as follows: "All individuals and entities residing or owning property in the United States who claim economic losses, or damages to their occupations, businesses, and/or property as a result of the April 20, 2010 explosions and fire aboard, and sinking of, the Deepwater Horizon, and the resulting Spill."

[2] The terms of the two HESI Settlements are substantially the same for purposes of this appeal, except where otherwise indicated.

No. 18-30243
c/w 18-30413 & 18-30533

to appeal to this court.  The HESI Settlements were entered into and filed with the district court on September 2, 2014 (HESI) and May 29, 2015 (Transocean).[3]

While these settlements were awaiting district court approval, the district court issued Pretrial Order 60 (PTO 60) on March 29, 2016, which applied to all claims in the B1 pleading bundle.  Foreseeing "no further administrative or procedural benefit to maintaining" the B1 Master Complaint, PTO 60 first dismissed that complaint.  It then instructed "[p]laintiffs [who] did not file an individual lawsuit, but instead filed a [short-form joinder] and/or were part of a complaint with more than one plaintiff" to file an individual lawsuit with the district court by May 2, 2016.  PTO 60 warned that plaintiffs who failed to comply would "have their claims deemed dismissed with prejudice without further notice."

On April 12, 2016, the district court preliminarily approved the HESI Settlements, and notice of their terms was given to class members, including the Fishermen.  The April 12, 2016 order, *inter alia*, set deadlines for objecting to (September 23, 2016) and opting out of (October 16, 2016) the proposed settlements and scheduled a fairness hearing to be held on October 20, 2016. A few weeks later, on May 2, 2016, the deadline to comply with PTO 60 expired. The Fishermen did not file individual lawsuits, nor did they seek relief from PTO 60 or additional time to comply.  On June 7, 2016, the district court issued a show cause order to B1 plaintiffs who had failed to comply with PTO 60.  The Fishermen did not respond to the order.  Thereafter, on July 14, 2016, the district court found that "[a]ll remaining Plaintiffs in the B1 bundle . . . [were] deemed noncompliant with PTO 60" and dismissed their claims with prejudice.

---

[3] The HESI Settlement was amended on September 2, 2015.

No. 18-30243
c/w 18-30413 & 18-30533

Order Re: Compliance with PTO 60 at 5, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mex. on Apr. 20, 2010*, No. 2:10-md-2179-CJB-JCW (E.D. La. July 14, 2016), ECF No. 20996.

After the issuance of the June 7, 2016 show cause order but before the June 28, 2016 deadline to respond, the Claims Administrator for the HESI Settlements filed a proposed Distribution Model on June 13, 2016 detailing how claims would be processed under the agreements. The Distribution Model specified that commercial fishermen, including menhaden fishermen, would be required to provide "proof of [their] timely preservation of [their] rights to a claim for damages by compliance with [PTO 60]." Both the Distribution Model and the attached Claim Form warned that claims would be assigned a value of $0 if the claimant had failed to comply with PTO 60. Although other class members filed objections to the Distribution Model on the ground that it improperly required claimants to comply with PTO 60, the Fishermen did not object. Nor did the Fishermen attend the "fairness hearing" that the district court held in November 2016 to address objections to the Distribution Model.

On February 15, 2017, the district court gave its final approval of the HESI Settlements and the Claims Administrator's Distribution Model. In its approval order, the district court declined to comment on the propriety of the Claims Administrator's interpretation of the HESI Settlements as requiring compliance with PTO 60. Instead, the district court observed that "[t]his objection [was] most properly considered in an appeal to [the district court] after claim determinations [were] concluded." On February 14, 2018, a year after the district court issued the approval order, the Fishermen filed a Federal Rule of Civil Procedure 60(b) motion for relief from that order, arguing that the Distribution Model was contrary to the terms of the HESI Settlements and

No. 18-30243
c/w 18-30413 & 18-30533

that they had not received adequate notice of PTO 60 or its applicability to their claims. The district court denied the motion.

The Fishermen submitted claims pursuant to the HESI Settlements, but the Claims Administrator denied them because the Fishermen had failed to comply with PTO 60. The Fishermen then appealed to the district court, which had referred "all appeals of claim determinations by the HESI/Transocean settlements claims administrator" to the magistrate judge pursuant to an agreement between the parties. The magistrate judge affirmed the denial, holding that requiring the Fishermen to comply with PTO 60 was consistent with the terms of the HESI Settlements and "the general maritime law precept that a claimant may obtain punitive damages only if that claimant has underlying compensatory damages."

The Fishermen objected to the magistrate judge's determination, complaining that his reliance on PTO 60 was contrary to the terms of the HESI Settlements and violated their due process rights. The district court overruled the objection on the ground that the claimants had waived their right to appeal the magistrate judge's determination to any other court, including the Fifth Circuit. The Fishermen then appealed to this court.

II.

As an initial matter, we address the Fishermen's pending motion to take judicial notice of the docket and complaint in *Bruhmuller v. BP Exploration & Production Inc.* Complaint, *Bruhmuller v. BP Expl. & Prod. Inc.*, No. 2:13-CV-97 (E.D. La. Jan. 18, 2013), ECF No. 1. We may take judicial notice of prior court proceedings as matters of public record. *ITT Rayonier Inc. v. United States*, 651 F.2d 343, 345 n.2 (5th Cir. 1981) ("A court may . . . take judicial notice of its own records or of those of inferior courts."). We GRANT the motion, and we have considered these materials in our review of the case.

No. 18-30243
c/w 18-30413 & 18-30533

### III.

The Fishermen raise four issues on appeal: (1) whether this appeal is barred by the appeal waiver in the HESI Settlements; (2) whether the magistrate judge erred in affirming the denial of their claims; (3) whether the district court erred by declining to review the magistrate judge's decision; and (4) whether the district court erred in denying their Rule 60(b) motion.

### A.

The appeal waiver in the HESI Settlement reads as follows:

> [T]he Claims Administrator shall establish rules for appealing the determinations of the Claims Administrator to the [district] Court. The [district] Court's decision on any such appeal involving the amount of any payment to any individual claimant (other than a determination that a claimant is not entitled to any payment due to a failure to meet the class definition) shall be final and binding, and there shall be no appeal to any other court including the U.S. Court of Appeals for the Fifth Circuit.

The Transocean Settlement contains a similar provision, but it omits the exception in parentheses.

The Fishermen argue that this appeal waiver does not foreclose our review because their appeal does not "involv[e] the amount of any payment to any individual claimant" under the HESI Settlements—instead, the Claims Administrator determined that they were not eligible to recover at all. Alternatively, they argue that their appeal fits within the parenthetical exception for "a determination that a claimant is not entitled to any payment due to a failure to meet the class definition." The Appellees respond that "the Claims Administrator's decision was that Appellants are entitled to receive $0, a clear determination as to 'the amount of payment to any individual claimant.'"

No. 18-30243
c/w 18-30413 & 18-30533

We have enforced appeal waivers in settlement agreements in prior unpublished cases. *See Hill v. Schilling*, 495 F. App'x 480, 487–88 (5th Cir. 2012); *Campbell Harrison & Dagley, L.L.P. v. Hill*, 582 F. App'x 522, 523–24 (5th Cir. 2014). And in the context of the *Deepwater Horizon* settlements specifically, we have indicated that we would enforce an express waiver of the right to appeal from the district court's claim determinations. *In re Deepwater Horizon*, 785 F.3d 986, 997 (5th Cir. 2015). But because we conclude that the Fishermen cannot prevail on the merits, we need not determine whether the appeal waiver in the HESI Settlements bars their appeal. *See United States v. Story*, 439 F.3d 226, 230 (5th Cir. 2006) ("[A]ppeal waivers . . . do not deprive us of jurisdiction.").

B.

We turn next to the issue of whether the magistrate judge erred in affirming the denial of the Fishermen's claims. We conclude that the magistrate judge's decision was correct.

Under maritime law, a plaintiff's recovery of punitive damages is tied to his or her underlying compensatory damages claim. *See Exxon Shipping Co. v Baker*, 554 U.S. 471, 506–07 (2008). It is unsurprising, then, that the HESI Settlements contemplated that claimants would need to "establish a claim for commercial fishing loss" to recover punitive damages. The Distribution Model set out three methods by which claimants could establish a compensatory damages claim: (1) by filing a claim pursuant to the E&P Settlement; (2) by filing proof of a separate settlement with BP that did not release the claimant's punitive damages claims; or (3) by filing an individual lawsuit as required by PTO 60. As we explained, the Fishermen were excluded from the E&P Settlement, and they do not argue here that they entered into a separate compensatory damages settlement with BP. Consequently, to establish a

11

No. 18-30243
c/w 18-30413 & 18-30533

compensatory damages claim upon which to predicate their recovery of punitive damages under the HESI Settlements, the Fishermen had to comply with PTO 60.

The Fishermen acknowledge that they received notice of this obligation to comply with PTO 60 at the latest when the Claims Administrator filed the Distribution Model in the district court on June 13, 2016. At that time, although the deadline to comply with PTO 60 had passed, the district court's show cause order was in effect, and the deadline to respond—June 28, 2016— was two weeks away. The Fishermen did not respond to the show cause order, nor did they attempt *at any point* to file individual lawsuits or seek additional time to comply with PTO 60, although the district court had granted extensions to other parties.

The circumstances of this case are quite similar to those in our recent decision in *Barrera*. *In re Deepwater Horizon* (*Barrera*), 907 F.3d 232 (5th Cir. 2018). There, although the plaintiff-fishermen received notice of PTO 60, they failed to comply, arguing that they were unable to file individual lawsuits because they were working offshore. *Id.* at 234. The district court dismissed their claims with prejudice, and we affirmed, observing that the plaintiffs had a "number of opportunities . . . to either comply with PTO 60 [or] explain why they could not do so." *Id.* at 235–37. As in *Barrera*, the Fishermen here knew of their obligation to comply with PTO 60 but still failed to file individual lawsuits. And unlike in *Barrera*, the Fishermen did not attempt to comply with PTO 60 at any point throughout these proceedings. The magistrate judge therefore correctly affirmed the denial of their claims.

Despite the above, the Fishermen challenge the magistrate judge's decision on several grounds: (1) requiring compliance with PTO 60 was contrary to the terms of the HESI Settlements; (2) PTO 60 did not apply to the

No. 18-30243
c/w 18-30413 & 18-30533

Fishermen; and (3) requiring compliance with PTO 60 violated the Fishermen's due process rights.  Each of these arguments is unavailing.

1.

The Fishermen first contend that requiring compliance with PTO 60 was contrary to the terms of the HESI Settlements, arguing that the settlements deem any claimant who fits within the class definition to have standing.  Thus, they maintain that they did not need to make a separate showing of standing by filing individual lawsuits to preserve their compensatory damages claims.  According to the Fishermen, this was a "contractual concession" by the Appellees similar to BP's contractual concession that proof of causation was not required under the E&P Settlement.  *See In re Deepwater Horizon* (*Bon Secour Fisheries*), 744 F.3d 370, 377 (5th Cir. 2014).  The Fishermen also emphasize that "the law is not settled in this circuit" as to whether they have standing, but the HESI Settlements nonetheless expressly include them in the class definition.  They argue that the HESI Settlements would not have included claimants whose standing is unclear in the class definition if a separate showing of standing was required—instead, a claimant is entitled to recover under the HESI Settlements merely by proving that he is a member of the class.

"The interpretation of a settlement agreement is a question of contract law that this [c]ourt reviews de novo."  *In re Deepwater Horizon*, 785 F.3d 1003, 1011 (5th Cir. 2015).  The primary provision of the HESI Settlements on which the Fishermen rely to deem standing is the class *description* found in Section 3: "It is the intent of the Parties to capture within the New Class definition all potential claimants . . . who may have valid maritime law standing to make a Punitive Damages Claim under general maritime law against [Appellees.]"  However, the class *definition* in Section 4 does not include any language

13

No. 18-30243
c/w 18-30413 & 18-30533

regarding standing.  Nor does the quoted language from the class description unequivocally deem standing for class members as the Fishermen contend. Instead, the class description provision demonstrates that the parties recognized that the class definition encompasses claimants whose standing is uncertain under existing law, without saying anything about whether a separate showing of maritime standing is required for recovery under the settlements.  At best, this provision is silent as to whether class members must separately prove standing.

Helpfully, the class description in Section 3 is not the only provision in the HESI Settlements that sheds light on whether claimants were deemed to have standing such that compliance with PTO 60 was unnecessary.  First, the HESI Settlements contain the statement that "this [settlement agreement] shall be interpreted in accord with general maritime law."  As we discussed above, maritime law links a plaintiff's recovery of punitive damages to his or her underlying compensatory damages claim.  *See Exxon Shipping Co.*, 554 U.S. at 506–07.

In addition, as we also noted above, the section of the HESI Settlements providing for the creation of the Distribution Model by the Claims Administrator, Section 8, contains the following provision: "The plan for distribution of payments to the New Class recommended by the Claims Administrator may, at his/her discretion, include . . . a standard to establish a claim for commercial fishing loss."  This expressly recognizes that claimants may be required to demonstrate that they have a claim for loss—in other words, a claim seeking compensatory damages—in order to proceed under the HESI Settlements.  By requiring compliance with PTO 60 as one possible way to establish such a claim, the Claims Administrator was exercising the discretion afforded him under this provision.

14

No. 18-30243
c/w 18-30413 & 18-30533

Finally, in Section 19, the HESI Settlements contain a series of provisions stipulating that the parties will seek certain orders from the district court to effectuate the settlements.  One of those provisions requires the parties to obtain an order that:

> Adopt[s] the interpretation as to the scope of *Robins Dry Dock* in the [district court's] Order and Reasons [As to Motions to Dismiss the B1 Master Complaint] . . . by finding that the New Class as defined and described in sections 3 and 4 includes all potential claimants who have standing to bring claims under general maritime law as interpreted by *Robins Dry Dock v. Flint*, 275 U.S. 203 (1927), *State of Louisiana ex. Rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), and their progeny[.]

Thus, the parties specifically bargained for an order by the district court limiting the class of claimants who could recover under the HESI Settlements to "claimants *who have standing to bring claims under general maritime law*" as interpreted by the two named cases and their progeny.

*Robins Dry Dock* stands for the proposition that a plaintiff who sustains only economic loss unaccompanied by personal injury or property damage generally does not have standing to recover damages under maritime law.  *See Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927); *Wiltz v. Bayer CropScience, Ltd. P'ship*, 645 F.3d 690, 695–96 (5th Cir. 2011).  In *M/V Testbank*, we noted that "[a] substantial argument can be made that commercial fishermen possess a proprietary interest in fish in waters they normally harvest sufficient to allow recovery for their loss."  *State of La. ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1027 n.10 (5th Cir. 1985).  But we declined to decide whether commercial fishermen were an exception to the *Robins Dry Dock* rule.  *Id.*

The district court order referenced in the provision—the order on the motions to dismiss the B1 complaint—interpreted these two cases, in

No. 18-30243
c/w 18-30413 & 18-30533

conjunction with the district court's decision in *M/V Testbank*, as creating an
exception to *Robins Dry Dock* to allow commercial fishermen to sue for mere
economic loss arising out of the *Deepwater Horizon* oil spill.  Order and Reasons
Granting in Part, Denying in Part, Defendants' Motions to Dismiss the B1
Master Complaint at 19–20, *In re Oil Spill by the Oil Rig "Deepwater Horizon"
in the Gulf of Mex. on Apr. 20, 2010*, No. 2:10-md-2179-CJB-JCW (E.D. La.
Aug. 26, 2011), ECF No. 3830.  In light of this interpretation, we read the
above-quoted provision to indicate that for the purposes of the HESI
Settlements, the Fishermen are not barred from recovery by *Robins Dry Dock*
even though we have not affirmatively established that they would have
standing under that rule.  However, this provision does not purport to
eliminate standing issues unrelated to *Robins Dry Dock*, especially the
fundamental requirement that a plaintiff has suffered injury in fact.  *See Lujan
v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Thus, this case is distinguishable from *Bon Secour Fisheries* in that the
settlement at issue there—the familiar E&P Settlement—set out express
causation requirements that departed from the proof of causation a claimant
would have been required to provide under general tort law.  744 F.3d at 375–
77.  Here, the HESI Settlements contemplate that the class encompasses only
claimants "who *have* standing to bring claims *under general maritime law*"—
suggesting that claimants must make the same showing of standing to recover
under the settlements as they would under maritime law, subject to the district
court's interpretation of *Robins Dry Dock* and *M/V Testbank*.  Unlike in *Bon
Secour Fisheries*, the Appellees did not "contractually concede" standing under
the HESI Settlements.

For the reasons described, we hold that requiring the Fishermen to
establish underlying compensatory damages claims by complying with PTO

16

No. 18-30243
c/w 18-30413 & 18-30533

60—in other words, requiring them to have standing to recover punitive damages under maritime law—was not contrary to the terms of the HESI Settlements.

2.

The Fishermen next argue that PTO 60 did not apply to them. Specifically, they contend that the district court's conclusion that PTO 60 applied to unnamed class members in class action suits was incorrect because PTO 60 only mentions "mass joinder" plaintiffs, and class actions are distinct from mass joinder suits. Although the Fishermen acknowledge that we affirmed the district court's dismissal of class action claims under PTO 60 in *Perez*, they "make a good-faith assertion that the *Perez* ruling was incorrect and should be reconsidered." *See In re Deepwater Horizon* (*Perez*), 713 F. App'x 360 (5th Cir. 2018).

We review the district court's docket management decisions for an abuse of discretion, affording "special deference" to a district court administering an MDL. *Barrera*, 907 F.3d at 234–35. In *Perez*, the appellants, who had filed a series of class action suits in the BP MDL, challenged the district court's decision that they were required to comply with PTO 60 and file single-plaintiff lawsuits instead. 713 F. App'x at 362. Observing that PTO 60 applied to class actions, we affirmed the district court's dismissal of the appellants' class action claims with prejudice. *Id.* The Supreme Court denied the appellants' petition for a writ of certiorari. *Perez v. B.P., P.L.C.*, No. 18-59, 139 S. Ct. 231 (Oct. 1, 2018). We see no reason to revisit *Perez* here: The district court did not err in applying PTO 60 to unnamed class members.

3.

The Fishermen's third basis for challenging the magistrate judge's decision is that requiring them to comply with PTO 60 violated their due

No. 18-30243
c/w 18-30413 & 18-30533

process rights.  Their core argument in this regard is that they "did not have constitutionally adequate notice that they had to comply [with PTO 60] in order to receive compensation under the [HESI Settlements]."  Whether a claimant's due process rights were violated is a question of law that this court reviews de novo.  *See Simi Inv. Co. v. Harris Cty.*, 236 F.3d 240, 249 (5th Cir. 2000).

On this issue, the Fishermen first point to the district court's decision to excuse noncompliance with PTO 60 for certain claimants due to a "notice gap." They also contend that the terms of PTO 60, the terms of the HESI Settlements, and the notices of those settlements sent to class members did not adequately inform them that compliance with PTO 60 was a prerequisite to recovery under the settlements.  Finally, while the Fishermen acknowledge that the Distribution Model put them on notice of the requirement to file individual lawsuits, they emphasize that the Distribution Model was not filed until after the deadline to comply with PTO 60 had expired.

The Fishermen's "notice gap" argument analogizes their situation to that of Zat's Restaurant, a claimant that the district court excused from compliance with PTO 60 because it had not received notice of that order.  As addressed above, we reject this argument because, unlike Zat's, the Fishermen did not attempt to comply with PTO 60 once they *did* receive notice of it.  In fact, we observe that the Fishermen had numerous opportunities to comply with, object to, or otherwise challenge the PTO 60 compliance requirement before their claims were denied by the Claims Administrator, but they failed to do so.  First, the Fishermen had an opportunity to respond to the district court's show cause order with respect to PTO 60 *after* they unequivocally received notice via the Distribution Model that failure to comply with PTO 60 would bar their claims under the HESI Settlements.  Second, the Fishermen had an opportunity to

No. 18-30243
c/w 18-30413 & 18-30533

object to the Distribution Model itself based on the PTO 60 compliance requirement. Third, the Fishermen had an opportunity to participate in a fairness hearing before the district court to challenge the Distribution Model based on the PTO 60 compliance requirement. Fourth, the Fishermen had an opportunity to appeal the district court's order approving the HESI Settlements and Distribution Model based on the PTO 60 compliance requirement.

Given the above, we cannot conclude that the Fishermen did not receive adequate notice or an opportunity to be heard on the PTO 60 compliance issue. *See Barrera*, 907 F.3d at 236 (affirming dismissal of plaintiffs' claims for failure to comply with PTO 60 "[g]iven the number of opportunities the district court gave Plaintiffs to either comply with PTO 60 [or] explain why they could not do so"). Requiring compliance with PTO 60 to recover under the HESI Settlements did not violate the Fishermen's due process rights.

None of the Fishermen's arguments convince us that the magistrate judge's decision to affirm the denial of their claims was incorrect. We therefore hold that the magistrate judge did not err in applying PTO 60 to the Fishermen's claims under the HESI Settlements.

C.

The Fishermen also complain that the district court erred in declining to review their objections to the magistrate judge's decision. First, they note that the district court's order referring matters to the magistrate judge (the Referral Order) only delegated "questions regarding the amount of payments." This is not correct. The Referral Order, which the parties agreed to, referred "all appeals of claim determinations by the HESI/Transocean settlements claims administrator" to the magistrate judge. Thus, the Fishermen's appeal from

19

No. 18-30243
c/w 18-30413 & 18-30533

the denial of their claims was within the scope of the Referral Order and was properly reviewed by the magistrate judge.

Second, the Fishermen point to the district court's statement in its order approving the HESI Settlements that objections to the PTO 60 compliance requirement were "most properly considered in an appeal to [the district court] after claim determinations [were] concluded." In the Fishermen's view, this statement reserved the PTO 60 compliance issue for the district court's review, so it should not have been delegated to the magistrate judge. However, the Fishermen cite no authority for the proposition that this determination was not delegable to the magistrate judge. On the contrary, that is precisely what the parties agreed to in the Referral Order, which the district court issued *after* the approval order in which it expressed that it would consider the PTO 60 compliance issue at a later time. Thus, as the magistrate judge recognized, his decision in this case *was* the promised consideration of the PTO 60 compliance issue at a later stage of the proceedings. That the Fishermen disagree with the magistrate judge's decision on that issue does not permit them to circumvent the Referral Order that they bargained for.

D.

Finally, the Fishermen contend that the district court erred in denying their Rule 60(b) motion, which they filed a year after the district court issued the order approving the Distribution Model. This court reviews a district court's denial of a Rule 60(b) motion for an abuse of discretion. *Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*, 690 F.3d 382, 385 (5th Cir. 2012). As the Fishermen explain, their Rule 60(b) motion raised the same arguments that they raised in their appeal of the magistrate judge's decision affirming the denial of their claims. Because we conclude that the magistrate judge's

No. 18-30243
c/w 18-30413 & 18-30533

decision was correct, we hold that the district court did not err in denying the Fishermen's Rule 60(b) motion for the same reasons.

IV.

We recognize that, in the unique facts of this case, our holding leads to an unfortunate result for the Fishermen, who were unnamed, unrepresented class members for much of these proceedings—the record is not clear as to when they became represented. As a result, as even the Appellees recognized at oral argument, affirming the denial of the Fishermen's claims may appear unduly harsh. However, we are bound by our precedent, by the plain language of the HESI Settlements, and by the deferential standard of review applicable to several of the issues in this case. Under those standards, the magistrate judge correctly affirmed the denial of the Fishermen's claims, the district court did not err in declining to review the magistrate judge's decision, and the district court did not err in denying the Fishermen's Rule 60(b) motion. We must therefore AFFIRM the district court's judgment.