CLEM DALRYMPLE SETTLEMENT CONFERENCE

1.  POSITION PAPER WITH ATTACHMENTS

2.  EMAIL FROM KAUFMANN WITH PHONE IN NUMBER FOR SETTLEMENT CONFERENCE

    -  PHONE NUMBER 844-887-1984

    -  CONFERENCE ID - 599011

3.  COLTON ACOSTA'S EMAIL ADDRESS AND CELL PHONE NUMBER (JUDGE WILKINSON'S ASSISTANT)

    -  Colton_acosta@laed.uscourts.gov

    -  Cell phone – 985-502-9510


4.  CLEM'S PHONE NUBMER – 985-377-5485

5.  PREBILL AND AMOUNT IF GOEST TO TRIAL

    -  PRE BILL - $14,976.99

    -  EXTRA - $3,623.50

    -  TOTAL OF BOTH  - $18,600.49

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * | MDL 2179 |
| | * | SECTION: J |
| | * | JUDGE BARBIER |
| This Document Relates to: *Pleading Bundle B3* | * | MAG. JUDGE SHUSHAN |

| | | |
|---|---|---|
| Charles A. Boggs | * | Civil Docket No.:  2:16-cv-13476 |
| Vs. | * | SECTION:  J |
| BP Exploration & Production, Inc., et al. | * | JUDGE CARL J. BARBIER |
| | * | MAGISTRATE JOSEPH C. WILKINSON, JR. |

## STATUS REPORT REGARDING ALL B-3 CASES

PTO 68 requires the filing of a status report if a disclosure dispute exits.  This Status Report is filed on behalf of a single Plaintiff, Charles A. Boggs, who has pending, a personal injury case in the B3 Bundle.

## THE ISSUE

Before the Court is a single issue: Is Plaintiff entitled to the return of Plaintiff's documents previously mailed to the Gulf Coast Claims Facility (GCCF) by Plaintiff during the two years, when the GCCF was settling BP claims, including personal injury claims?

1

Known to the Court is the fact that the GCCF was established by BP on June 16, 2010, with BP's $20 billion.   The GCCF existed until June 2010, when this Court undertook the settlement program.

## BACKGROUND

Mr. Boggs was admitted to the Louisiana Bar and the U.S. District Court, Eastern District Bar in 1970.

He first practiced in New Orleans, with Montgomery, Barnett, Brown and Read and then, on January 5, 1981, founded the firm of Boggs, Loehn and Rodrigue.

Leukemia (acute myleologinous leukemia--Type 3--AML) befell Plaintiff on September 26, 1997. He was treated at Southern Baptist Hospital's isolation unit with moribund chemotherapy. After hospital discharge, Mr. Boggs was treated as an outpatient until 2003, when he suffered a virulent AML recurrence.

He and his wife moved to Houston for extended treatment at MD Anderson Hospital.

The sole chance of survival (10%) was a complete bone marrow transplant, also known as a stem cell transplant.   Unfortunately, no one in his family was bone marrow/stem cell compatible.   After many months at MD Anderson, an anonymous donor came forward and donated his bone marrow/stem cells.   Pursuant to treatment protocol, all of Mr. Boggs' bone marrow cells were chemically destroyed, taking him to death's door. With no native marrow cells to reject the donor's cells, the new marrow cells were injected into his body.

Miracuously, Mr. Boggs fell within the 10% survival rate and after many months in the hospital in Houston, Mr. Boggs was discharged. He returned to New Orleans and, to the practice of law at his firm.

However, after only a few months (including a jury trial in a medical malpractice case), Mr. Boggs health again deteriorated. In late 2004, he resigned from the firm, sold his uptown home that he had built, and moved to 630 West Beach Blvd. (U.S. Hwy 90), Long Beach, Ms.

In August of 2005, Hurricane Katrina totally destroyed Mr. Boggs' beach home. Homeless, he and his wife again moved to Houston to be near MD Anderson in order to continue AML protocol.

Recovering again, in 2007, Mr. Boggs built a new beach front home on his property at 630 West Beach Blvd. in Long Beach.

Not wanting to quit law practice, Mr. Boggs took and passed the Mississippi Bar Exam. He owned a law office in Gulfport, next to the Harrison County Court House. He fully intended to set up a law practice with his lawyer daughter, Margaret Hale Boggs, in his law building. As seen hereafter, Plaintiff's dream of a "Boggs family law firm" was destroyed by the gross negligence of BP employees in causing the explosion, that is the subject of this litigation.

After the April 20, 2010 explosion, oil, hydrocarbons and dispersants came ashore at the beginning of July, 2010. The beach in front of Mr. Boggs' home was fouled daily with the toxic detritus released by BP. Oil, its by products and dispersants washed into the Boggs' Bayou, which traverses Plaintiff's property, passing very near his home. Oil and byproducts coated and covered his home, porches and stairs. The fumes, noxious and continuous, were breathed in by Plaintiff.

3

This assault of on Plaintiff's health was immediate and devastating. He had difficulty breathing, extreme bronchial and nasal symptoms, coughing, weezing, burning eyes and extreme fatigue. The illness is well documented, on a daily basis, in a log, the original of which Plaintiff sent to the GCCF in good faith, thinking the GCCF would attempt settlement.

In addition to the daily log, Mr. Boggs sent an estimated 200 documents to the GCCF. These include photographs of the oil detritus in his Bayou, on his home, and on the beach, as taken from his front porch. Photos of BP's failed efforts to block the oil in the Gulf of Mexico from entering Boggs Bayou were sent to the GCCF. Many newspaper articles, a report of the U.S. Coast Guard of oil in Boggs bayou, medical reports, lab reports, doctor's notes, CT Scan and Xray reports, doctor's and hospital bills, cancelled checks showing payment for repairs, etc. were also mailed to the GCCF by Mr. Boggs.

During this two year time frame after the July 2010 beginning of Mr. Boggs' explosion related illness, BP hired at least three building inspectors and local Gulfport counsel to investigate Mr. Boggs' claim that oil covered and coated his home. Based upon this investigation, BP paid $5,500 to remove the oil from his home and to repaint the horizontal surfaces where the heaviest concentration of oil accumulated. The painter's invoice for the work states, in part: "so thick was this oil that it repelled water in a number of places."

While he was acutely ill, Plaintiff was treated by a pulmonologist, a nephrologist, and several oncologists, including an emergency trip to MD Anderson Hospital for a bone marrow biopsy. He sustained permanent lung damage, stage III kidney damage, and a lifelong fear of another AML recurrence, which will be fatal. These are known complications of the hydrocarbons

4

and chemicals released by BP and the proof, at trial, will be that Mr. Boggs' organ damage is secondary to the explosion.

In addition, Mr. Boggs sent his past medical expense bills of over $65,000 to the GCCF. His future medicals are estimated at $260,000.

It is important to note that **all** of the documents mailed to the GCCF by Mr. Boggs were ORIGINALS. Mr. Boggs, due to the severity of his illness, could not get out to make copies of these documents. Thus, some of the documents were not copied. Therefore, these uncopied original documents sent to the GCCF, are the sole and only documents he had.

## **REQUESTS TO BP TO RETURN MR. BOGGS' DOCUMENTS**

Undersigned counsel has written to BP's lawyers requesting the return of Mr. Boggs' documents on the following six dates: July 22, 2019; September 18, 2019; September 27, 2019, October 29, 2019; November 21, 2009, and February 20, 2020. BP counsel has responded twice, on November 19, 2019 and March 5, 2020. Because undersigned counsels' letters are repetitious, only two are attached. Both of BP's response letter are attached.

Plaintiff counsel's letters are Exhibits 1 and 2. BP counsel's letters are Exhibits 3 and 4.

Plaintiff shows the Court that if BP does not have Mr. Boggs' documents, Mr. Boggs asked BP to tell Plaintiff who does. Exhibit 1 contains this request:

> "Lastly, please note that in my first letter to Mr. Reed of July 22, 2019, Charles A. Boggs requested 'that you produce a copy of each and every piece of documentation contained within Mr. Boggs'

GCCF/BP files.' Please understand that Mr. Boggs is requesting return of everything he previously sent to GCCF and/or BP. If BP does not have possession of the GCCF materials sent to the GCCF by Charles A. Boggs, please provide the name and address of the custodian of these records. Will BP/GCCF voluntarily produce the records sent by Mr. Boggs, or will BP require a subpoena as set out in PTO 68 III. Other Provisions, B.?" (See Exhibit 1.)

BP misstates the scope of Mr. Boggs' request. BP tells the Court that Plaintiff requested "all" of BP documents relating to Mr. Boggs. Rather, as appears above, the request is for Mr. Boggs' documents previously sent to the GCCF and/or BP.

Undersigned counsel's (2) two attached letters clearly state, in 6 different paragraphs, that Mr. Boggs is seeking return of the documents he sent previously to the GCCF and /or BP. (Exhibit 1 and Exhibit 2).

## ARGUMENT

Simple facts beget simple argument.

PTO 68 address the exchange of the parties' documents. Plaintiff is to provide defendant Plaintiff's medicals and a medical authorization. He did. Defendant is to provide Plaintiff with the technical oil spill information and Defendant's "medical encounters" with Plaintiff.

PTO 68 does not address, nor does it enjoin, the return of Plaintiff's records to that same Plaintiff.

6

Plaintiff has made a full disclosure of his case to the GCCF in the estimated 200 documents he mailed, hoping that the GCCF would entertain settlement. Not a single word, comment, letter, email, etc. came from the GCCF. Rather, it simple kept Mr. Boggs records and now BP refuses to return them or tell Mr. Boggs who has them.

## POST SCRIPT

Plaintiff just received a BP computer generated notice of deficiency called: "Question 1: Improper Grouping." (Exhibit 5 attached).

BP has had possession of plaintiff's medical records for eight (8) months, marked Exhibits 1-36. Plaintiff's response to this "improper grouping" is contained in undersigned counsel's March 19, 2020 letter to BP. (Exhibit 6 attached).

Respectfully submitted,
**BOGGS, LOEHN & RODRIGUE**
/s/Thomas E. Loehn
**THOMAS E. LOEHN (LA 8663)**
2324 Severn Avenue, Suite 100
Metairie, Louisiana 70001
Telephone: (504) 828-1202
Facsimile: (504) 828-1208
E-mail: tloehn@yahoo.com
*Attorney for Plaintiff, Charles A. Boggs*

7

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 23rd day of March, 2020, I electronically filed the foregoing document with the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, and that all parties or their counsel of record will be served by the CM/ECF system.

/s/ Thomas E. Loehn
THOMAS E. LOEHN