**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | * | **MDL No. 2179** |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | **SECTION: J** |
| | * | |
| | * | **JUDGE BARBIER** |
| **This Document Relates to:** | * | |
| | * | **MAG. JUDGE WILKINSON** |
| *Bradley Shivers, et al v. BP, PLC, et al* | * | |
| *Case No. 2:10-cv-03261* | * | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendants BP Exploration & Production Inc., BP America Inc., and BP Products North America Inc. (collectively, "BP")[1] and Halliburton Energy Services, Inc. (together with BP, "Defendants") respectfully file this reply memorandum in support of Defendants' Motion to Dismiss First Amended Complaint (Rec. Docs. 26365, 26365-1) ("Motion to Dismiss" or "Defendants' Motion") for failure to state a claim upon which relief can be granted and in response to Plaintiffs' Response and Memorandum of Law in Opposition to Defendants' Motion to Dismiss First Amended Complaint (Rec. Doc. 26410) ("Opposition").

**ARGUMENT**

Plaintiffs' Opposition mischaracterizes the arguments in Defendants' Motion to Dismiss, strains legal precedent, and fails to persuade that the First Amended Complaint has overcome the pleading deficiencies identified by this Court in its MTD Order.[2] ***First***, contrary to Plaintiffs' insistence in their brief, the allegations in the First Amended Complaint do not support a reasonable

---

[1]    BP p.l.c. does not respond to the complaint because it has not been properly served.

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion to Dismiss.

inference that Defendants' negligence objectively placed Plaintiffs in immediate risk of physical harm, either at the time of the initial explosion or during subsequent events.  Nor does the First Amended Complaint do more than state in conclusory fashion that Plaintiffs subjectively feared physical harm caused by Defendants' negligence, which fear in turn caused their emotional injuries.  And, Plaintiffs have not, in the alternative, pled an NIED claim under the physical-injury-or-impact test because their alleged injuries were minor, did not threaten to cause them traumatic harm, and are not connected to their alleged emotional distress.  **Second**, in the absence of controlling precedent, Plaintiffs fail to establish that the zone-of-danger test should be applied and expanded under maritime law to provide recovery for purely emotional harms to rescuers who knowingly go to danger.  **Third**, Plaintiffs do not allege plausible facts that permit a reasonable inference that Defendants intended to cause or knew their conduct would cause emotional distress to Plaintiffs.  For the reasons discussed below and in Defendants' Motion to Dismiss, the First Amended Complaint fails to state a claim for NIED or IIED and, therefore, should be dismissed.

I.      **PLAINTIFFS' CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS IS NOT PLAUSIBLE ON ITS FACE.**

A.      **Plaintiffs' Allegations Do Not Satisfy the Zone-of-Danger Test.**

*First*, as Defendants argued in their Motion to Dismiss, Plaintiffs fail plausibly to allege that they were in the zone of danger created by Defendants' alleged negligence, either at the time of the initial explosion, *see* Defs.' Mot. 5–7, or during their emergency response efforts, *see* Defs.' Mot. 7–9.  Incorrectly complaining that Defendants "largely frame their arguments on a single factor: the distance between the <u>initial explosion</u> of the Deepwater Horizon and the Plaintiffs," Opp'n 9, Plaintiffs explain that the "crux" of their zone-of-danger allegations is that they "believed they were under constant threat of another massive explosion that would send debris towards them and their boat through their hours long search and rescue efforts around the Deepwater Horizon,"

Opp'n 7 (quoting FAC ¶ 24).  Plaintiffs then list several allegations—many of which were in the Original Complaint—that they argue together "provide the Court with the context to draw a reasonable inference that Plaintiffs faced an 'immediate risk of physical harm'" during their efforts.  Opp'n 9.  Even together, these allegations leave too many pleading gaps in the First Amended Complaint for this Court reasonably to fill, and Plaintiffs may not fill them through argument in their brief.

For example, Plaintiffs attempt to shore up their pleadings about the immediate risk of physical harm by arguing in their Opposition that a later, hypothetical explosion "could have sunk Plaintiffs['] boat or caused severe injuries and/or death."  Opp'n 7.  The First Amended Complaint contains no such allegation.  Nor is that inference supported by Plaintiffs' allegations about perceiving the initial explosion when they were miles away from the rig.  *See* Opp'n 7–8; FAC ¶¶ 9–10.  None of Plaintiffs allegations about any of the explosions they perceived, whether near or far from the rig, suggest that those explosions had a material physical impact on Plaintiffs or threatened to harm Plaintiffs in any way.  Thus, Plaintiffs' allegations about the explosions do not support a reasonable inference that Defendants' conduct objectively placed them at immediate risk of physical harm.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that Rule 8(a) requires that the court be able to "infer more than the ***mere possibility***" of misconduct) (emphasis added).

Plaintiffs also urge the Court to consider the "context" of their other allegations regarding the scene of the incident and Plaintiffs' subjective beliefs about what might happen.  *See* Opp'n 7–9 (citing, among other things, allegations that the incident occurred at night, that the *Deepwater Horizon* was engulfed in a "massive firestorm," that there was burning debris in the water, and that Plaintiffs "believed" they were under constant threat of another explosion based on their belief that underwater "rumblings" were caused by explosions).  That context does little to bolster Plaintiffs'

allegations of objective risk.  As this Court held, such "subjective fright" does not permit a reasonable inference that the Plaintiffs objectively faced an immediate risk of physical harm.  MTD Order 11.  Moreover, this Court has already rejected much of the "context" that Plaintiffs highlight—of the sixteen allegations that Plaintiffs emphasize, *see* Opp'n 8–9, five appeared in Plaintiffs' Original Complaint and several more contain immaterial alterations from the Original Complaint.  *Compare* Original Compl. ¶¶ 3, 11, 12, 16, 20, 24, 26 *with* FAC ¶¶ 3, 13, 15, 16, 26, 35, 39, 41.

In fact, Plaintiffs' allegations show that they were in their own vessel and were able to stay out of harm's way by "frequently . . . revers[ing] their boat" to retreat from the burning rig.  FAC ¶ 28.  Thus, unlike the plaintiff in *Anselmi*, Plaintiffs could easily flee the scene, if they so desired.  *Compare SCF Waxler Marine LLC v. M/V ARIS T*, No. CV 16-1022, 2019 WL 6174981, at *39 (E.D. La. Nov. 19, 2019) (finding that plaintiff was not in the zone of danger because, in part, he had ample time to leave after various collisions occurred upstream) *with Anselmi v. Penrod Drilling Corp.*, 813 F. Supp. 436, 442 (E.D. La. 1993) (holding that there was a triable issue as to whether plaintiff was in the zone of danger, in part because he "could not easily flee the scene").  Moreover, Plaintiffs were able to maintain distance from the danger, alleging at most that they were "100 to 200 feet from the rig at times."  FAC ¶ 28.  *Cf. Anselmi*, 813 F. Supp. at 442 (holding that plaintiff who was 50 to 75 feet away from flames on his vessel raised a genuine dispute of material fact as to whether he was within the zone of danger).

Thus, considered collectively, Plaintiffs' allegations do not support a reasonable inference that they were objectively placed in immediate risk of physical harm, but to the contrary show that Plaintiffs faced no such risk.  Accordingly, the Court should dismiss Plaintiffs' NIED claim.[3]

---

[3]  Despite Plaintiffs' speculation, *see* Opp'n 7 n.1, nowhere do Defendants concede that Plaintiffs have alleged a subjective fear of physical harm caused by Defendants' negligence.  Although this Court need not inquire as to

4

### B.    Plaintiffs' Allegations Do Not Satisfy the Physical-Injury-or-Impact Test.

As to the physical-injury-or-impact test, Plaintiffs simply argue that their alleged physical impacts are more akin to the injuries found sufficient to establish NIED in *Gough* than to the injuries found too minor in *Gaston* and *Ainsworth*.[4]  But, as discussed in the Motion to Dismiss, Plaintiffs' alleged physical injuries are distinguishable from Gough's injuries, which he sustained in escaping from his vessel moments before it was engulfed in flames.  Defs.' Mot. 8–9.  Here, Plaintiffs' injuries were not sustained in a "near miss" such as Gough's; rather, they were incidental to Plaintiffs' response efforts, like the stomach upset, headaches, and pulled muscle suffered in *Ainsworth* or the fall and bruised elbow sustained in *Gaston*, which did not satisfy the physical-injury-or-impact test.  *See Ainsworth v. Penrod Drilling Corp.*, 972 F.2d 546, 547 (5th Cir. 1992); *Gaston v. Flowers Transp.*, 866 F.2d 816, 817 (5th Cir. 1989).  Accordingly, Plaintiffs do not allege, as they must, that the impacts they suffered put them at a risk of immediate traumatic harm.  *See Metro-N. Commuter R. Co. v. Buckley,* 521 U.S. 424, 430–31 (1997) (the physical impacts necessary to state a zone-of-danger claim are those that "cause[], or might . . . cause[], immediate traumatic harm").

---

Plaintiffs' subjective fears because it is sufficient to find Plaintiffs have failed to allege facts supporting any objective risk of harm, as Defendants explained in their Motion to Dismiss, Plaintiffs "do not allege . . . that they subjectively feared they were at immediate risk of physical harm" from the explosions they allege occurred during their response efforts.  *See* Defs.' Mot. 3.  While Plaintiffs assert that they "believed" there would be **subsequent** explosions that would send debris towards them, *see* FAC ¶¶ 23–24, 39, those allegations do not indicate that Plaintiffs feared physical harm from the explosions they **did** perceive.  Nor does the First Amended Complaint allege that Plaintiffs feared explosions would overturn their vessel or that they believed any debris would strike them.  Rather, as discussed above, Plaintiffs inappropriately add this color in their Opposition and ask the Court to consider the possibility of harm as a "reasonable inference" of the facts pled.  Opp'n 9.  Plaintiffs' only explicit allegation of subjective fear is a conclusory statement that alleges no connection to Defendants' conduct.  *See* FAC ¶ 39 (stating that Plaintiffs "believed . . . that they were in an immediate risk of harm"); Defs.' Mot. 7.  That conclusory assertion, devoid of additional pleading, does not adequately allege a subjective fear of physical harm.

4    Plaintiffs do not appear to seek damages for physical injuries; rather, Plaintiffs attempt to plead emotional distress claims, and this Court has treated Plaintiffs claims as the latter.  *See* FAC ¶¶ 121–25; MTD Order 12.

Moreover, to satisfy the physical-injury-or-impact test, Plaintiffs' emotional injuries must *result from* the alleged physical injuries. *See Waxler*, 2019 WL 6174981, at *39 (citing *Ainsworth*, 972 F.2d at 546). While Plaintiffs allege physical injuries and impacts including burns, singed hair, bruises, and a "smashed" hand, the emotional distress for which they seek recovery involves the "stress and depression" that followed what Plaintiffs had "seen and heard" near the rig. FAC ¶¶ 28, 31–32, 44–46; *see also* FAC ¶ 46 (alleging Plaintiff Shivers "still feared for the missing rig workers. He knew they were dead but he hoped their bodies would be recovered."). In short, Plaintiffs' emotional distress is too attenuated from the physical impacts Plaintiffs allege, and those injuries are not enough to state a claim for NIED.

## C.    Rescue Doctrine Does Not Save Plaintiffs' NIED Claims.

Even if Plaintiffs came within the zone of danger in the course of their response efforts, their emotional distress claims should be dismissed because they voluntarily traveled to that danger. Plaintiffs' choice to participate in the emergency response efforts near the rig does not constitute a "near miss" for which emotional damages should be compensable. *See Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 547–48 (1994); MTD Order 8–9.

As there is no binding precedent concerning the intersection of the zone-of-danger test and rescue doctrine under maritime law, Plaintiffs rely on two out-of-circuit, distinguishable cases, *Twyman v. Carnival Corp.* and *Destefano v. Children's National Medical Center*. In *Twyman*, a Southern District of Florida court held that one plaintiff, the father of a deceased cruise-ship passenger, had sufficiently alleged that he was in the zone of danger, in part, because he "was in the *immediate area* [already on a jet ski in the water close to his son] and entered the water" following his son's jet-ski collision. *Twyman v. Carnival Corp.*, 410 F. Supp. 3d 1311, 1316, 1325 (S.D. Fla. 2019) (emphasis added). While in the water, the father feared both that he would be struck by a jet ski and that he would drown, which risks fell within the scope of defendant's alleged

negligence in failing to ensure that its jet-ski vendor adequately instructed passengers and in failing to employ lifeguards. *Id*. at 1320, 1325. In contrast, the court ***dismissed*** the NIED claim by the decedent's mother, ruling that the mother was not within the zone of danger. *Id.* at 1325. The court reasoned that, while she was involved in the rescue attempt and feared physical injury during the rescue, she "never entered the water during the drowning or resuscitation efforts" and her fears of physical injury (i.e., physical and heat exhaustion from giving CPR and electrocution by the AED she used on her son) were unrelated to the defendant's alleged negligence of failing to supply lifeguards and providing inadequate medical care. *Id.* at 1326 (internal brackets and quotation omitted).

In *Destefano*, the District of Columbia Court of Appeals held in a non-maritime-law context that, while the plaintiff was not initially in the zone of danger, there was a triable issue as to whether she entered the zone of danger in attempting to rescue her son after he fell into a shaft that had been negligently left uncovered. *Destefano v. Children's Nat. Med. Ctr.*, 121 A.3d 59, 70, 72 (D.C. 2015). The court acknowledged that "[t]he traditional form of the rescue doctrine has rarely been used to allow recovery by a plaintiff who has suffered only emotional distress but not physical harm," but nevertheless expanded the "rescue doctrine" to permit a rescuer who enters the zone of danger in a rescue attempt to recover for mental distress, "as long as they feared for their own safety, because of the defendant's negligence, while in the zone of danger." *Id*. at 71–72. The court noted that the rescue doctrine implicates a "mélange of issues . . . includ[ing] duty, scope of liability, superseding cause, contributory negligence, and assumption of risk," however, and did "not here attempt to outline the full contours of the doctrine." *Id*. at 71 & n.11.

*Twyman* supports Defendants' position—the zone of danger is limited to those, irrespective of any status as rescuer, in the "immediate area" of the alleged conduct who objectively and

subjectively fear physical harm arising from the defendants' alleged negligence. *See Twyman*, 410 F. Supp. 3d at 1325–26. Like the mother in *Twyman*, who was not in the immediate area of the collision and did not fear harm related to the defendant's negligence, but rather harm from her subsequent rescue efforts, *see id*. at 1326, here, Plaintiffs were miles away during the initial explosion and have failed to allege, as discussed above, that they objectively and subjectively feared physical harm arising from Defendants' alleged negligence during their emergency response efforts.

*Destefano* is distinguishable. There, the court noted that plaintiff "had no idea that the hole dropped two stories down" when she first reached in after her son, and "she only realized that [her son] had fallen a considerable distance when she reached into the hole." *Destefano*, 121 A.3d at 70–72. In other words, the *Destefano* plaintiff had no idea she was entering the zone of danger when she did so. *Id*. In contrast, here, Plaintiffs traveled to the burning rig despite alleging that they "knew the explosion was bad," FAC ¶ 11, and remained near the burning rig despite the "overwhelming heat" that forced them frequently to reverse their boat, *id.* ¶ 28.

Plaintiffs quote a general principle of rescue doctrine—"[w]hen the rescuer acts from motives of altruism, and risks himself to save another, the risk of his harm falls on the tortfeasor who created the peril"—and urge this Court to extend that principle to their maritime-law claims for purely emotional injuries. Opp'n 14–16 (quoting dicta from *Carter v. Taylor Diving & Salvage Co.*, 341 F. Supp. 628, 630 (E.D. La. 1972)). This Court should decline that invitation. Where, as here, a plaintiff unknown to a defendant, not in the immediate area, and wholly unrelated to an incident goes voluntarily and knowingly to the zone of danger, it is not the defendant's conduct that causes plaintiff's ensuing emotional harm, but plaintiff's own choice to be there. To hold

8

otherwise would quite literally open defendants to "the threat of unlimited and unpredictable liability." *Gottshall*, 512 U.S. at 557; *Buckley*, 521 U.S. at 433; MTD Order 8–9.

For the reasons discussed above, Plaintiffs' NIED claim should be dismissed.

## II.      PLAINTIFFS DO NOT STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Plaintiffs argue that their vague allegations that Defendants knew of the dangers associated with deepwater drilling and knew that fishermen near oil rigs would be the first responders in any emergency are sufficient to plead a cognizable IIED claim.  *See* Opp'n 16–17; FAC ¶¶ 113, 129, 145.  They are not.  *First*, these general statements fall short of the necessary allegation that Defendants directed their conduct **specifically at Plaintiffs**.  *See White v. Monsanto Co.*, 585 So. 2d 1205, 1211 (La. Sup. Ct. 1991) (dismissing an IIED claim and noting that the conduct "was directed to all three employees and not just to plaintiff specifically")[5]; Opp'n 16 (acknowledging that an IIED claim requires showing "that defendant intended, by performing the acts complained of, to inflict severe emotional distress **on plaintiff**, or that defendant knew that such severe emotional distress would be certain or substantially certain to result") (citing *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 514 (5th Cir. 1994)) (emphasis added).  *Second*, Plaintiffs' allegations about deepwater drilling and fishermen near oil rigs in general are a far cry from pleading that Defendants knew or were substantially certain that Plaintiffs would suffer severe emotional harm as a result of Defendants' conduct.  Indeed, it is "absurd to suggest that . . . [Defendants' deepwater drilling] would be calculated to cause severe emotional distress directed at" any fishermen in the vicinity

---

[5]     While maritime law controls Plaintiffs' IIED claim, maritime IIED claims are "governed by the same standards applicable under Louisiana law."  *Ostrowiecki v. Aggressor Fleet, Ltd.*, Nos. 07-6598, 07-6931, 2008 WL 3874609, at *18 (E.D. La. Aug. 15, 2008).

of the *Deepwater Horizon*, let alone at Plaintiffs.  *Dumas v. Angus Chem. Co.*, 728 So. 2d 441, 446–47 (La. 2d Cir. 1999).  Thus, Plaintiffs have failed to state a claim for IIED.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss Plaintiffs' NIED and IIED claims with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: March 25, 2020

                                        Respectfully submitted,

*/s/ Devin C. Reid*                             */s/ R. Alan York*
R. Keith Jarrett (Bar # 16984)          R. Alan York
Devin C. Reid (Bar # 32645)             State Bar No. 22167500
LISKOW & LEWIS                          AYork@ReedSmith.com
One Shell Square                        REED SMITH LLP
701 Poydras Street, Suite 5000          811 Main Street
New Orleans, Louisiana 70139-5099       Suite 1700
Telephone:  (504) 581-7979              Houston, Texas 77002
Fax No.      (504) 556-4108             Telephone:  (713) 469-3800
                                        Facsimile:   (713) 469-3899
-and-
                                        *Attorneys for Defendant Halliburton Energy*
Matthew T. Regan, P.C.                  *Services, Inc.*
(matthew.regan@kirkland.com)
Kristopher S. Ritter
(kristopher.ritter@kirkland.com)
KIRKLAND & ELLIS LLP                            .
300 North LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000

-and-

Christopher W. Keegan
(chris.keegan@kirkland.com)
Ashley Littlefield
(ashley.littlefield@kirkland.com)
Anna Terteryan
(anna.terteryan@kirkland.com)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

*Attorneys for Defendants BP Exploration &*
*Production Inc., BP America Inc., and BP*
*Products North America Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that the above and foregoing Defendants' Reply in Support of Their Motion to Dismiss First Amended Complaint has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 25th day of March, 2020.


                                       */s/ Devin C. Reid*
                                       Devin C. Reid

12