# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | * | CASE NO. 2:10-md-02179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO, ON APRIL 20, 2010 | * | SECTION: J(2) |
| | * | |
| DOCUMENT RELATES TO: | * | JUDGE:  CJB |
| 11-01987, *PINELLAS MARINE, ET AL* | * | |
| *v. KENNETH R. FEINBERG, ET AL* | * | MAGISTRATE JUDGE:  JCW |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION REMAND

**MAY IT PLEASE THE COURT:**

Defendants, Kenneth R. Feinberg ("Feinberg") and Feinberg Rozen, LLP ("Feinberg Rozen"), d/b/a Gulf Coast Claims Facility ("GCCF") respectfully submit this brief in opposition to the Motion to Remand and Memorandum of Law (Rec. Doc. 4574-1) ("Motion to Remand") filed by Plaintiffs, Pinellas Marine Salvage, Inc. and John Mavrogiannis.  At the outset, it is important to note that this Honorable Court and the Judicial Panel on Multidistrict Litigation have rejected[1] requests[2] by these Plaintiffs and other similarly situated plaintiffs to have their cases pending in this MDL remanded to the Middle District of Florida.  Accordingly, only the present requests to remand to state court are before the Court.[3]

Plaintiffs' Motion to Remand should be denied because original jurisdiction lies in federal court under 28 U.S.C. § 1331 (Federal question), 33 U.S.C. § 2717(b) (the Oil Pollution Act) ("OPA"), and 43 U.S.C. § 1349(b)(1) (the Outer Continental Shelf Lands Act) ("OCSLA"), and, alternatively, under 28 U.S.C. § 1332 (Diversity).  This Court has federal question jurisdiction

---

[1] *See* Rec. Docs. 26089, 26213 and 26337; JPM No. 19-12014, Rec. Doc. 24.
[2] *See* Rec. Docs. 12708, 12708-1, 12708-2 and 26330.
[3] *See* Rec. Doc. 26213.

because the face of the Complaint presents a substantial, dispositive federal question – specifically, whether OPA may be construed to impose certain duties allegedly owed to the Plaintiffs.  OPA specifically provides federal courts "original jurisdiction over all controversies arising under this Act."[4]  Likewise, OCSLA grants federal jurisdiction over any action, like this one, "arising out of, or in connection with" exploration and drilling operations on the Outer Continental Shelf.[5]  For good measure, this Court also has diversity jurisdiction because the Plaintiffs are citizens of Florida while no properly named Defendant is.

## BACKGROUND

OPA requires a "responsible party" to establish a process to receive and, where appropriate, settle claims for costs and damages arising out of an oil spill.  The Coast Guard designated BP Exploration & Production, Inc. ("BP") as a responsible party with respect to the oil spill in the Gulf of Mexico on April 20, 2010.  *See* Complaint (Case No. 11-cv-01987, Rec. Doc. 1-2), at ¶¶ 1-2, 23-24.  Based on an agreement with the White House, BP transferred its OPA claims processing responsibility to Feinberg, who, with Feinberg Rozen, acted in the name of the GCCF in receiving, processing and where appropriate, paying claims arising out of the oil spill.  *Id.*, at ¶ 27.

OPA requires individuals and businesses seeking damages as a result of the oil spill to present their claims first to the responsible party.  *Id.*, at ¶¶ 5, 98.[6]  Only if the responsible party denies all liability for the claim or the claim is not settled within 90 days may a claimant then commence an action in court against the responsible party or present the claim to the Oil Spill Liability Trust Fund, which is administered by the United States Coast Guard.  *Id.*[7]  OPA thus

---

[4] 33 U.S.C. §2717(b).
[5] 43 U.S.C. §1349(b)(1).
[6] *See also* 33 U.S.C. § 2713(a) ("[A]ll claims for removal costs or damages shall be presented first to the responsible party….")
[7] *See also* 33 U.S.C. § 2713(c).

effectively mandates an alternative dispute resolution process that must be exhausted by potential claimants before they may sue.  Congress's overarching legislative purpose for the OPA claims process was "to encourage settlement and avoid litigation."[8]

Plaintiffs are a marine salvage company servicing states on the Gulf Coast – including Louisiana, Mississippi, Alabama and Florida – and the founder/president of the company.  *See* Complaint, at ¶ 18.  Plaintiffs filed a claim for emergency relief with the GCCF and received $78,000 plus $10,000 previously received from BP for a total of $88,000 in compensation.  *Id.* at ¶¶ 32-34, 51.  Plaintiffs were not required to prove causation or sign a release of liability.  When Plaintiffs subsequently filed a claim for full and final relief, GCCF offered an additional $173,143.09 (for a total of $251,143.09).  Plaintiffs rejected that offer.

Rather than pursuing other available remedies from the Oil Spill Liability Trust Fund, the responsible parties, or the Court Supervised Settlement Program, Plaintiffs filed this lawsuit in Florida state court to attack GCCF's handling of their claim.  Though they attempt to frame their claims as entirely being about state law,[9] Plaintiffs expressly allege Defendants violated OPA in various respects in handling the claim Plaintiffs submitted to GCCF.  As explained below, Plaintiffs' claims thus necessarily hinge on a first-impression interpretation of whether OPA imposes the duties Plaintiffs allege.  This raises a substantial federal question.

## ARGUMENT

### I.    THE COURT HAS JURISDICTION UNDER OPA.

Remand is unwarranted because the Court has jurisdiction under OPA.  Indeed, the Court has jurisdiction under OPA in two separate ways.  First, the Court has jurisdiction directly under

---

[8] *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co. Inc.*, 51 F.3d 235, 238-39 (11th Cir. 1995).
[9] Plaintiffs' claims are addressed in a Rule 12 motion to dismissed being filed contemporaneously with this brief.

OPA's own jurisdictional provision.  Second, in all events, OPA presents a federal question for purposes of "arising under" jurisdiction under Section 1331.

### A.      The Court Has Direct Jurisdiction Under OPA

To begin, Section 2717(b) of OPA gives federal District Courts "original jurisdiction over all controversies arising under this Act, without regard to the citizenship of the parties or the amount in controversy."  This provision should be the beginning and end of this issue: by definition, a suit challenging how the administrator of an OPA claims process carries out its duties necessarily arises under OPA.  Without OPA, there would be no suit at all.

Plaintiffs argue that Section 2717(b) does not apply here because they bring suit under state law, not OPA, so no federal question appears on the face of their well-pleaded complaint.  This argument fails, however, because the well-pleaded complaint rule does not apply to removal based on Section 2717(b).  As the Supreme Court has explained, "the 'well-pleaded complaint' rule (that the federal question must appear on the face of a well-pleaded complaint)" only applies to "statutory 'arising under' jurisdiction, i.e., jurisdiction based on 28 U.S.C. § 1331."[10]  This Court has also recognized that rule.  *See In re Oil Spill By the Oil Rig "Deepwater Horizon" In the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 747 F.Supp.2d 704, 707 (E.D. La. Oct. 6, 2010) (allowing removal under OCSLA because "the well-pleaded complaint rule only applies to removal based on 28 U.S.C. § 1331").

But even if a rule like Section 1331's applied to OPA, this case "arises under" OPA for purposes of jurisdiction under Section 2717(b) for the same reasons that it "arises under" OPA for purposes of federal question jurisdiction under Section 1331: it presents a substantial federal issue that a federal forum may entertain without disturbing any congressionally-approved balance of

---

[10] *Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247, 258 (1992).

federal and state judicial responsibilities.  In enacting OPA, Congress created a "comprehensive framework" for oil spills.  *See, e.g.*, *Tanguis v. M/V WESTCHESTER,* 153 F. Supp. 2d 859, 867-68 (E.D. La. 2001) (explaining that "OPA 'represents Congress's attempt to provide a comprehensive framework in the area of marine oil pollution'" through "'a single Federal law providing cleanup authority, penalties, and liability for oil pollution'") (citations omitted).  Accordingly, OPA's jurisdictional provision expansively allows removal.  *See id.* (finding jurisdiction under § 2717(b) and denying a motion to remand).

Because Plaintiffs' claims directly relate to a core portion of OPA – how claims are processed pursuant to this "comprehensive" statute, which plainly matters here because the oil spill is the ultimate cause of Plaintiffs' alleged injuries – there is no credible basis to say this suit does not fall within OPA's jurisdictional grant, making the case removable as a matter of law.

**B.    OPA Also Provides "Arising Under" Jurisdiction Under Section 1331**

Even apart from OPA's own jurisdiction provision, jurisdiction also exists here because this case arises under OPA, a federal statute, for purposes of Section 1331.  Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the Unites States."[11]  As the Supreme Court has explained, although the well-pleaded complaint rule generally applies when assessing jurisdiction under Section 1331, it does not always do so.  *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (upholding jurisdiction over "claims recognized under state law that nonetheless turn on substantial questions of federal law").  Here, because this case presents important federal issues about the meaning and operation of OPA, jurisdiction exists under Section 1331.

Plaintiffs contend they assert causes of action under only Florida state law that do not "arise

---

[11] 28 U.S.C. § 1331.

under" OPA or any other federal law.  On the face of Plaintiffs' Complaint, however, the entire case turns on whether OPA creates duties flowing from the responsible party to potential claimants regarding the manner in which the claims process is administered.  In particular, Plaintiffs allege that Defendants have:

- fraudulently stated that the protocol under which GCCF operates "is structured to be compliant with OPA and apply the standards of OPA" (Complaint, at ¶¶ 3, 35, 66, 68);

- impermissibly "reset" the 90-day period under OPA because "OPA does not allow the responsible party to 're-advertise' a claim through any other entity, for the purpose of 'resetting' this period (*id.*, at ¶ 6);

- fraudulently delayed payment to Plaintiffs by requiring them to resubmit to the GCCF the claim they originally submitted to BP (*id.*, at ¶ 7);

- fraudulently failed to advise that "no claimant should receive any less compensation in the GCCF claims process than they are entitled to under OPA" and that "under OPA … any acceptance for a lesser amount [than the claim submitted] *shall not* preclude the claimant from pursuing future recovery" in court or from the federal Oil Spill Fund (*id.*, at ¶ 12);

- fraudulently required Plaintiffs to prove "proximate causation between [their] damages and the Deepwater Horizon oil spill" when "OPA is a strict liability statute" and requires only that a claimant "show that his or her damages 'resulted from' the oil spill" (*id.*, at ¶ 70);

- fraudulently "fail[ed] to provide a procedure for the payment or settlement of claims for interim, short-term damages beyond 90 days" because "[a] single six-month emergency advance payment for lost income is in violation of OPA"  (*id.*, at  ¶  ¶  74, 78);

- "in violation of OPA, provide[d] for a single final settlement payment" (*id.*, at ¶ 21);

- fraudulently stated "that no claim may be submitted to the GCCF 'more than three years after the date the Protocol becomes operative'" because OPA permits claims brought "within three years after the date on which the loss" and its connection with the spill is discoverable (*id.*, at ¶¶ 82, 83);

- fraudulently failed to advise Plaintiffs of certain information about the OPA claims procedure (*id.*, at ¶¶ 86-90, 97);

- fraudulently failed to pay interest required by OPA (*id.*, at ¶¶ 92-93);

- fraudulently required a full release of claims in return for payment, in violation of OPA (*id.*, at ¶¶ 94-96); and

- fraudulently delayed payment to Plaintiffs by holding their claim under review indefinitely in violation of OPA (*id.*, at ¶¶ 98-99).

While Plaintiffs' causes of action purport to state claims under Florida common law, each alleges and necessarily depends on finding a violation of OPA, which is a substantial federal question. Counts I and II, for gross negligence and negligence, assert Defendants owe Plaintiffs a duty "to exercise reasonable care in regard to the operation of Defendant GCCF's claims intake, claim review, claim evaluation and claim settlement and payment services," *id.*, at ¶¶ 110, 118, and Defendants have breached that duty "in their negligent operation of Defendant GCCF's claim intake, claim review, claim evaluation and claim settlement and payment services in" various manners, including "Inadequate Claim Processing," "Inadequate Claim Investigation," "Delay in Payment," and "Unreasonable Denial of Claim." *Id.*, at ¶¶ 112, 121. Count III, alleging negligence *per se*, claims "Defendant's conduct with regard to the operation of Defendant GCCF's claim intake, claim review, claim evaluation and claim settlement and payment services is governed by the Oil Pollution Act of 1990" which "creates statutory standards that are intended to protect and benefit Plaintiffs," and "Defendants' violations of these statutory standards constitute negligence *per se*." *Id.*, at ¶¶ 126-28. Count IV, for fraud, asserts Defendants have falsely represented that "[t]he protocol under which Defendant GCCF operates is structured to be compliant with OPA and apply the standards of OPA." *Id.*, at ¶ 131. And Counts V (fraudulent inducement), VI (promissory estoppel), and VII (unjust enrichment) also depend on violations of OPA. "If even one claim in the complaint involves a substantial federal question, the entire matter may be removed." *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009). Here, however, *all* of the claims involve a substantial federal question.

The Supreme Court has recognized jurisdiction exists under Section 1331 where a case raises a substantial federal issue that a federal forum may entertain without disturbing any

congressionally approved balance of federal and state judicial responsibilities. *Grable*, 545 U.S. at 310-14. In *Grable*, the IRS had seized the plaintiff's real property to satisfy a tax lien and sold it to Darue. Grable sued Darue in state court, alleging that Darue's record title was invalid because the IRS had conveyed the seizure notice improperly under the governing federal statute. Although the cause of action was created by state law, the Court held federal jurisdiction existed because the meaning of the federal statute was an important issue for the United States and directly related to the litigation. *See id.* at 315 ("[T]the national interest in providing a federal forum for tax litigation is sufficiently substantial to support the exercise of federal-question jurisdiction over the disputed issue…."). The Court also ruled disagreements over federal tax title provisions would have only a "microscopic" effect on the federal-state division of judicial responsibilities because state title cases rarely raise contested matters of federal law. *Id.*

This case meets the *Grable* test. Plaintiffs' Complaint requires the Court to interpret OPA to determine what, if any, duties it imposes as a matter of federal law on a responsible party in discharging its obligation to establish a procedure for receiving, reviewing and (where appropriate) settling claims. Congress intended the OPA claims process to function as a form of alternative dispute resolution that would *minimize* the involvement of the judiciary; thus, the claims procedure reflects "a congressional desire to encourage settlement and avoid litigation."[12] OPA clearly delineates the options available to a party that *rejects* a settlement offer made by a responsible party; namely, suing the responsible party in District Court or making a claim with the Coast Guard. The question whether OPA permits an *additional* alternative of suing a responsible party based on the protocols it followed in reviewing claims and making settlement offers is a substantial

---

[12] *Boca Ciega Hotel*, 51 F.3d at 240; *accord Gabarick v. Laurin Maritime (America) Inc.*, 623 F. Supp. 2d 741, 747-48 (E.D. La. 2009) ("[T]he legislative intent of OPA was to encourage settlement and reduce litigation in oil spill cases."); *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310-11 (E.D. Va. 1993) ("The purpose of the claim presentation procedure is to promote settlement and avoid litigation.").

federal question that goes to the heart of Congress's efforts through OPA to expedite and minimize litigation arising from oil spills.[13]  How to interpret OPA's claims processing requirement is thus a substantial federal question by any measure.

Additionally, federal rather than state court adjudication of the procedural requirements of OPA is essential to a uniform and efficient implementation of the statute – an important federal interest justifying "resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."[14]  Absent federal jurisdiction, the Defendants and future responsible parties under OPA would be exposed to a multitude of suits that could establish different sets of claims procedures for claimants in each state.  This would inevitably slow the pace of claims settlements and hinder claimants' ability to recoup damages from responsible parties, which would thwart the legislative purpose of expediting recovery to those injured by oil spills.

Finally, a court analyzing the question of the duties, if any, owed to potential claimants by a responsible party would confront an issue of first impression.  OPA contains no prescriptions for how the claims process it mandates should work – nothing about the procedures themselves, the participation of anyone other than the responsible party in their formulation, claims forms, staffing claims offices, communications with claimants, possible internet claims submissions, security measures to protect confidential claimant information, the methodologies for evaluation of claims, the form of releases when settlements are made, or anything else.  Moreover, given OPA's relatively recent vintage, there are very few cases interpreting its provisions, and none analyzing the issues presented by the Complaint here.  A court would have to assess under OPA each of the

---

[13] Defendants believe that OPA does *not* permit such an alternative, leaving to claimants only the alternatives of rejecting a responsible party's offer and bringing suit in court or presenting a claim to the Oil Spill Fund, but that substantive legal question is not before the Court on this motion.  In other words, any *merits* argument here that OPA does not allow the recovery Plaintiff seeks is irrelevant to the question of *jurisdiction*.

[14] *Grable*, 545 U.S. at 312.

Plaintiffs' alleged violations – from how the 90-day period is calculated, to whether interest is required, to the form of release allowed, to whether proximate cause must be shown, etc. – before it could determine whether the violation may warrant recovery under a state law tort theory. There is no reason to believe that Congress intended a state court rather than a federal one to resolve such substantial federal questions about the United States' central law addressing oil spills.

Plaintiffs err in contending this case is governed not by *Grable* but by *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006). Empire was a health insurance provider under contract with the Office of Personnel Management to provide health-care plans to federal employees. A beneficiary to whom it had made payments successfully brought a state court tort action against parties alleged to have caused his injuries, whereupon Empire sued the beneficiary in federal court to recover the payments it had made. The Court held the action did not arise under federal law and was "poles apart from *Grable*."[15]

The Court's recitation of the distinguishing characteristics of *Grable* clearly demonstrates, however, that *Grable* controls here. It noted that "'[t]he meaning of the federal tax provision … is an important issue of federal law that sensibly belongs in a federal court.'"[16] The same is true with respect to the meaning of OPA – especially because this is a case of first impression regarding OPA's procedural requirements. The Court also noted the federal issue presented in *Grable* "qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases."[17] The same is true here; how OPA addresses oil spills is dispositive in this case, tremendously important to federal law generally, and may implicate tens of thousands of claims in future oil spills. *See, e.g.*, *Ctr. for Bio. Diversity, Inc. v. BP Am. Prod.*

---

[15] *Empire*, 547 U.S. at 700.
[16] *Id.* (quoting *Grable*, 45 U.S. at 315).
[17] *Id.*

*Co.*, 704 F.3d 413, 418, 425 (5th Cir. 2013) (explaining the massive federal response to the oil spill); *In re Deepwater Horizon*, 819 F.3d 190, 197 (5th Cir. 2016) (explaining the "epic" number of claims at issue).  The Court also noted that "*Grable* presented a nearly 'pure issue of law,' one that could be settled once and for all and therefore would govern numerous [future] cases."[18] Again, the same is true here.

The Court in *Empire* also noted Empire's reimbursement claim was "fact-bound and situation specific."[19]  Plaintiffs seize on that language, but it is of no use.  *See* Motion to Remand (Rec. Doc. 4574-1), at p. 9.  The fact-bound issues in the reimbursement suit were whether "there were overcharges or duplicative charges by care providers" and "whether particular services were properly attributed to the injuries caused by the 1997 accident and not rendered for a reason unrelated to the accident."[20]  There are no similar fact-bound issues in this case; instead, as in *Grable,* the strictly legal questions concerning the meaning of an important federal statute (here, OPA) are an "'essential element'" of Plaintiffs' claims.[21]  Indeed, Plaintiffs themselves *acknowledge* that their Complaint "refers to [OPA] as the necessary standard of care" in this case. Motion to Remand, at p. 10.  Deciding what, if any, standard of care OPA imposes with respect to the claims process concerns "an important issue of federal law that sensibly belongs in federal court."[22]

In sum, a case is properly removed if a right allegedly created by a federal law is an "essential element" of the plaintiff's cause of action, and the right "will be supported" if the federal law is "given one construction or effect, and defeated if [it] receive[s] another."[23]  Here, Plaintiffs'

---

[18] *Id.*
[19] *Id.*
[20] 547 U.S. at 700.
[21] *Id.* (quoting *Grable*, 545 U.S. at 315).
[22] *Grable,* 545 U.S. at 315.
[23] *Gully v. First Nat'l Bank,* 299 U.S. 109, 112 (1936).

claims may be supported if OPA is given the construction they urge, but will be defeated if it receives another. Hence, this case arises under Section 1331 and was properly removed. The fact that OPA allows state courts to address damages resulting from oil spills does not change that conclusion. *See* Motion to Remand, at pp. 10-11 (citing 33 U.S.C. §§ 2717(c) and 2718). It is black-letter law that concurrent jurisdiction does not preclude removal. *See Tanguis,* 153 F. Supp. 2d at 867 (concurrent jurisdiction under OPA "does not indicate an intent to prohibit removal, as plaintiffs argue, but merely provides that state and federal claims for removal costs or damages can be brought together in a state forum, rather than requiring plaintiffs to bring their OPA claims exclusively in federal court"); *see generally Lavin v. Practice Prot. Fund*, No. CV 2:19-11348, 2020 WL 416360, at *2 (E.D. La. Jan. 27, 2020) ("The Fifth Circuit has held that when federal and state courts have concurrent jurisdiction, the defendant can remove the action to federal court.") (citing *Baldwin v. Sears, Roebuck and Co.*, 667 F.2d 458, 460 (5th Cir. 1982)).

Moreover, this case does not involve claims for damages under state tort theories, nor under OPA's strict liability provisions, but rather for alleged violations of OPA's claims processing requirements or other alleged misconduct regarding that process. Hence, Congress's decision not to preempt some state law claims for damages *caused by the spill* is irrelevant to whether this Court has jurisdiction over Plaintiffs' claims for damages *caused by alleged procedural violations of OPA.* This case thus cleanly presents a substantial question of federal law that justifies "resort to the experience, solicitude, and hope of uniformity that a federal forum offers."[24]

---

[24] *Grable*, 545 U.S. at 312. Accordingly, notwithstanding Plaintiff's lengthy discussion of OPA's legislative history, the Court need not address whether or under what circumstances States can impose liability for oil spills beyond OPA. Under no plausible theory of preserved state authority could a State create liability for violating OPA's claims-processing requirements rather than for damages from the spill itself. Regardless, on the face of the Complaint, it is apparent that all or at least some of Plaintiff's claims (e.g., negligence per se) turn on the meaning of OPA, which is a significant federal issue. That alone defeats remand because even one removable claim is sufficient. *See, e.g., Pet Quarters*, 559 F.3d at 779 (removal only requires one claim). Similarly, this issue presents a pure question of law, making cases like *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290 (11th Cir. 2008), irrelevant.

Finally, *Grable* disfavors removal when it would disturb a "congressionally approved balance of federal and state judicial responsibilities."[25]  Plaintiffs quote that language but make no argument that removal here would have such an effect.  *See* Motion to Remand, at p. 10.  On the contrary, state courts are rarely called upon to interpret significant federal statutes in the first instance, and no state court could be affronted by the removal of a case in which the initial judicial interpretation of a federal statute will be dispositive of some or all of the plaintiff's claims, particularly where, as here, the underlying accident occurred in a federal enclave and the response was directed by federal officials.  Simply put, because OPA is a significant federal statute, it should be interpreted by a federal court.

## II.   THE COURT HAS JURISDICTION UNDER OCSLA

Even apart from OPA, this Court also has jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA").  As with OPA, this jurisdiction comes in two varieties.  First, OCSLA itself creates jurisdiction.  And second, OSCLA also separately creates a federal question for purposes of Section 1331.

### A.   The Court Has Direct Jurisdiction Under OCSLA.

Section 1349 of OCSLA grants federal courts wide-ranging jurisdiction to decide *any* action "arising out of, or in connection with" exploration and drilling operations on the Outer Continental Shelf.  *See Tenn. Gas Pipeline v. Houston Cas. Ins. Co*., 87 F.3d 150, 154 (5th Cir. 1996) (OCSLA's jurisdictional grant is "very broad"); *EP Operating Ltd. P'ship v. Placid Oil Co*., 26 F.3d 563, 569 (5th Cir. 1994) ("[B]road reading of the jurisdictional grant of section 1349 is supported by the expansive substantive reach of the OCSLA," which "is "intended to govern the full range of potential legal problems that might arise in connection with operations on the Outer

---

[25] *Grable*, 545 U.S. at 314.

Continental Shelf."); *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014) (allowing removal of claims about injuries suffered entirely in Louisiana territory because of OCSLA and the relationship between those injuries and the *Deepwater Horizon* oil spill).

A court considering jurisdiction under Section 1349 conducts a two-part analysis.[26]  First, it determines whether an "operation" was conducted on the Outer Continental Shelf ("OCS") "and whether that 'operation' involved the exploration or production of minerals."[27]  "Operation" is broadly defined as "the doing of some physical act" involving "exploration, development, or the production of minerals on the OCS."[28]  Second, it focuses on whether the case "arises out of, or in connection with the operation."[29]  Whether the case or controversy arises out of, or in connection with the operation is determined by a "but-for" test – that is, but for the operation, would the case or controversy have arisen.[30]  The but-for test reflects the "broad jurisdictional grant under § 1349."[31]  Notably, the well-pleaded complaint rule does not apply to Section 1349.[32]

The two-part test is satisfied here.  Plaintiffs' claims have their origin in alleged damages supposedly caused by BP's operations conducted on the OCS, and but-for those operations the spill would not have occurred, and Plaintiffs would not have submitted their OPA claim for damages to the Defendants.  Accordingly, the Court has original OCSLA jurisdiction over Plaintiffs' claims.  *See Phillips v. BP p.l.c. et al.*, No. 4:10-cv-259-RH/WCS, 2010 WL 3257737,

---

[26] *In re Oil Spill*, 747 F.Supp.2d at 708 (citing *Recar v. CNG Producing Co.*, 853 F.2d 367, 369-70 (5th Cir.1988)).

[27] *Id.*

[28] *Tenn. Gas Pipeline*, 87 F.3d at 154.

[29] *In re Oil Spill*, 747 F.Supp.2d at 708.

[30] *See Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 350 (5th Cir. 1999) ("We apply a broad 'but-for' test to determine whether a cause of action arises under OCSLA.").

[31] *Tenn. Gas Pipeline*, 87 F.3d at 155; *see also Stansbury v. Sikorski Aircraft*, 681 F.2d 948, 951 (5th Cir. 1982) ("But for those operations [on the OCS], [the decedent] would not have been in the helicopter.  His death, therefore, occurred 'as a result of operations' as required by the OCSLA.").

[32] *See Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1205 (5th Cir. 1998) ("In determining federal court jurisdiction, we need not traverse the Serbonian Bog of the well pleaded complaint rule … because § 23 of OCSLA expressly invests jurisdiction in the United States District Courts."); *In re Oil Spill*, 747 F.Supp.2d at 708 (similar).

at *1 (N.D. Fla. Aug. 17, 2010) (refusing to remand a damages claim against BP and holding that, "[a]s a matter of plain English, § 1349(b)(1) provides federal jurisdiction over the plaintiff's claim, because the claim arises out of, and is connected with, the *Deepwater Horizon*'s oil-related operations on the continental shelf.  That begins and ends the proper analysis of the jurisdictional issue as presented in this case."); *Deepwater Horizon*, 745 F.3d at 163 (broadly reading OCSLA jurisdiction); *see also* Memorandum & Order, Dkt.441 in *In re BP p.l.c. Sec. Litig.*, No. 4:10-md-2185 (S.D. Tex. Oct. 1, 2012) (denying remand in litigation involving allegations of violations of Oregon securities law because "if BP had not conducted exploratory operations on the OCS, Defendants would have had no opportunity or reason to make the allegedly misleading statements at all").

Plaintiffs' argument that OCSLA cannot be a source of federal jurisdiction here because OCSLA "gives way to any other provisions of law that reach conduct occurring on the [OCS]" confuses the question of what law applies with the question of jurisdiction.  Motion to Remand, at p. 15.  Jurisdiction under Section 1349(b)(1) exists if the dispute has the required connection to operations on the OCS, regardless of the cause of action or substantive legal theory alleged.[33] Accordingly, courts, including this one, have concluded that OCSLA confers federal jurisdiction over cases asserting only maritime or state law causes of action because the underlying accident itself had the required connection to operations on the OCS.  *See, e.g.*, *In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2017 WL 5625811, at *2 (E.D. La. Nov. 22, 2017) ("[T]he existence of OCSLA jurisdiction makes this case removable even if the applicable substantive law is maritime, and even if the parties are not diverse, and even

---

[33] *See, e.g.*, *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 492 (5th Cir. 2002) ("The decision to apply maritime law, however, has nothing to do with whether or not a federal court has jurisdiction.  It clearly does.  *See* § 1349(b)."); *Recar*, 853 F.2d at 369-70 (similar); *Morris v. T E Marine Corp.*, 344 F.3d 439, 443-44 (5th Cir. 2003) (similar); *see also EP Operating Ltd.*, 26 F.3d at 566 (action to determine ownership rights was within OCSLA jurisdiction).

if a defendant is a citizen of the forum state.") (citing *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 218-23 (5th Cir. 2013)).[34]

Plaintiffs also err in relying on *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473 (1981), which held that a plaintiff may sue in state court for injuries sustained on the Outer Continental Shelf. *See* Motion to Remand, at pp. 16-18.  Here, as with OPA, a scheme of concurrent jurisdiction does not preclude removal, which is appropriate under Section 1441 if the district court would have had *original,* not exclusive, jurisdiction.[35]   Indeed, *Gulf Offshore* itself recognizes the propriety of removal.  *See* 453 U.S. at 483 n.12 ("Exclusive federal-court jurisdiction … is unnecessary to protect the parties.  The plaintiff may choose the available forum he prefers, and the defendant may remove the case if it could have been brought originally in a federal court.").

Accordingly, under the "operations" and "but-for" test, the Court has jurisdiction under OCSLA § 1349(b)(1), and for that reason as well the case should not be remanded.

**B.   OCSLA Also Provides "Arising Under" Jurisdiction Under Section 1331**

In addition to the direct jurisdiction OCSLA grants under Section 1349(b)(1), OCSLA also provides an additional basis for federal question jurisdiction under Section 1331 because, as

---

[34] *See In re Oil Spill*, 747 F.Supp.2d at 708 (holding that state law claims related to the OSC are removable under OCSLA because "the jurisdictional grant contained in § 1349(b)(1) is very broad"); *Phillips*, 2010 WL 3257737, at *1 (similar).  To be sure, one court has concluded that some matters involving the GCCF are so far removed from OCSLA activities that federal jurisdiction does not exist.  *See Mississippi ex rel. Hood v. Gulf Coast Claims Facility*, No. 3:11-CV-00509-CWR, 2011 WL 5551773, at *4 (S.D. Miss. Nov. 15, 2011) (concluding that a government subpoena to the GCCF was not a removable "civil action" and that refusal to comply with a subpoena about developing claims standards was not an operation on the OCS).  The Court need not decide whether that decision can be reconciled with the Fifth Circuit's later jurisdictional analysis in *In re Deepwater Horizon, see* 745 F.3d at 163-64 (reiterating the "but for" test and rejecting a "situs" requirement), because here the nexus between the *Deepwater Horizon* oil spill and these claims is exceptionally tight.  Plaintiff alleges that he was injured by the spill and brings this suit because he is displeased with how the GCCF addressed his request for damages.  That is more than sufficient to satisfy the Fifth Circuit's "but for" test.

[35] *See, e.g.*, *In re Oil Spill*, 747 F.Supp.2d at 708-09 (denying remand of case alleging state causes of action because the court had original jurisdiction under OCSLA).  Plaintiffs also rely on *St. Joe Co. v. Transocean Offshore Deepwater Drilling, Inc.*, No. 1:10-cv-968-LPS, 2011 U.S. Dist. LEXIS 26391, at *30 (D. Del. Mar. 15, 2011), but that case ruled that the plaintiff had not asserted claims arising under federal law.  Whatever the merits of that decision, which was unsuccessfully cited to the Fifth Circuit in *In re Deepwater Horizon*, 745 F.3d 157 (affirming that state-law claims are preempted), *see* Reply Br. of Alabama, No. 12-30012, 2012 WL 4664207, at 9 (5th Cir. Sept. 25, 2012), Plaintiff's claims here *do* arise under federal law.  Hence, *St. Joe Company* is irrelevant..

explained above, the critical events giving rise to Plaintiffs' lawsuit arose out of activity on the OCS.  The Supreme Court recently reaffirmed that the OCS "should be treated as an exclusive federal enclave."[36]  As a federal enclave, "the only law on the OCS is federal law."[37]  Regardless of Plaintiffs' attempt to characterize their claims as purely based on state law, this action presents *only* federal questions because "the only law on the OCS is federal law."[38]  Because the only law here is federal, by definition any claim arises under federal law.  *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) ("Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'") (citing, *inter alia*, 28 U.S.C. § 1331; *Mater v. Holley*, 200 F.2d 123, 125 (5th Cir. 1952)).

## III.   THE COURT HAS DIVERSITY JURISDICTION.

Finally, there is also diversity jurisdiction here.  A defendant may remove a civil action filed in state court if a federal court would have original jurisdiction over the action.  *See* 28 U.S.C. § 1441.  Federal courts have original diversity jurisdiction under 28 U.S.C. § 1332.  As the Complaint pleads, Plaintiff Pinellas Marine Salvage, Inc. is a corporation organized under the laws of the State of Florida, with its principal place of business in Pinellas County, Florida, at 198 E. Oakwood Street, Tarpon Springs, Florida 34689.  *See* Complaint (Case No. 11-cv-01987, Rec. Doc. 1-2), at ¶ 18.  Plaintiff John Mavrogiannis is a resident of Pinellas County, Florida.  *Id.*, at ¶ 19.

---

[36] *Parker Drilling Mgmt. Servs. Ltd. v. Newton*, 139 S.Ct. 1881, 1891 (2019).

[37] *Id.* at 1889.

[38] *Id.*; *see also Hodges v. Shell Oil Co.*, No. CIV. A. 97-1573, 1997 WL 473809, at *5 (E.D. La. Aug. 19, 1997) ("In this action, plaintiffs' negligence claims stem from an accident that occurred on the outer Continental Shelf, an enclave of exclusive federal jurisdiction."); *cf. Barker*, 713 F.3d at 225 ("This suit was properly removed to federal court under OCSLA's grant of original federal question jurisdiction ….").

Defendant Feinberg is a resident of the District of Columbia, *id.*, at ¶ 20,[39] and Defendant Feinberg Rozen is a District of Columbia limited liability partnership with its principal place of business in Washington, D.C., *id.*, at ¶ 21.   The GCCF is simply the banner under which Defendants Feinberg and Feinberg Rozen carry out their responsibilities with respect to the OPA claims process.   *See id.*, at ¶ 22 (alleging GCCF to be an entity created by Defendants Feinberg and Feinberg and Rozen).   Accordingly, complete diversity exists between the Plaintiffs and the Defendants.   Plaintiffs have requested payment from GCCF in the amount of $98,000, *id.*, at ¶ 43, submitted a claim to the GCCF for $900,000.00, *id.*, at ¶ 44, and complains of non-payment, *id.*, at ¶ 122.   Hence, the amount in controversy also exceeds $75,000.

Plaintiffs rely on incorrect procedural arguments in challenging the presence of diversity jurisdiction.   Plaintiffs contend the Defendants failed adequately to allege in their Notice of Removal the citizenship of Feinberg Rozen because Defendants "must list the citizenships of all the partners of the [firm] at the time of the removal to federal court."   Motion to Remand, at p. 19-20.   The Complaint and Notice of Removal show, however, through "readily deducible" inferences, that no Feinberg Rozen partner is a citizen of Florida.[40]   If more is needed, it can be found in paragraphs 3 and 4 of the accompanying Declaration of Kenneth R. Feinberg ("Feinberg Declaration."), averring that Feinberg Rozen has only two partners – Mr. Feinberg and Mr. Rozen, neither of whom is a citizen of Florida – and only two offices, one in Washington, D.C. and one in New York City.

---

[39] *See* Exhibit 1, Declaration of Kenneth R. Feinberg in Support of Defendants' Opposition to Plaintiff's Motion to Remand, originally submitted in the Middle District of Florida on August 4, 2011 in opposition to a motion to remand filed in the *Salveson* suit prior to that case being transferred to the MDL. At the time suit was filed, Mr. Feinberg was, in fact, a resident of the State of Maryland. *See id.* at ¶ 4.  For purposes of this motion, however, it is of no consequence whether Mr. Feinberg is a resident of Maryland or the District of Columbia.

[40] *See Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1211 (11th Cir. 2007).

Plaintiffs also contend Defendants failed to adequately allege the citizenship of the GCCF. *See* Motion to Remand, at pp.18-19.  The GCCF is not a separate legal entity, however, and thus should not be a factor in the Court's diversity determination.  *See generally Carden v. Arkoma Assocs.*, 494 U.S. 185, 187-92 (1990) (refusing to afford weight for purposes of diversity jurisdiction to "artificial entities" other than corporations).  Indeed, the GCCF is not a corporation, partnership, unincorporated association, or other similar entity; rather, it is simply the name given to the claims processing activities undertaking by Mr. Feinberg and Feinberg Rozen.  *See* Notice of Removal (Case No. 11-cv-01987, Rec. Doc. 1-1), at 2; Complaint, at ¶ 22; Feinberg Decl., at ¶ 6.  In all events, there is no basis in law or fact to say that the GCCF is a citizen of *Florida*, which is the relevant question.

Contrary to Plaintiffs' assertion, this Court may consider evidence outside the Removal Notice (such as the Feinberg Declaration) in determining whether diversity jurisdiction exists.  The Fifth Circuit held just that in *Allen v. R&H Oil & Gas Co.*:

> A removing attorney may support federal jurisdiction by setting forth the *facts* in controversy – preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount….  Finally, under any manner of proof, the jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time.

63 F.3d 1326, 1335 (5th Cir. 1995).[41]

In sum, there is complete diversity among the parties and the amount in controversy exceeds $75,000.  This Court thus also has diversity jurisdiction.

---

[41] *See also Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999) (reiterating that an affidavit may be appropriate); *Sierminski v. Transouth Fin. Corp*., 216 F.3d 945, 949 (11th Cir. 2000) (adopting the Fifth Circuit's approach and stating: "[T]here is no good reason to keep a district court from eliciting or reviewing evidence outside the removal petition.  We … adopt[ ] a more flexible approach, allowing the district court when necessary to consider post-removal evidence in assessing removal jurisdiction.").

## IV.   CONCLUSION

This case was properly removed to federal court under several legal bases and Plaintiffs'

Motion to Remand should be denied.

Respectfully submitted:

**LONG LAW FIRM, L.L.P.**

/s/ Mark L. Barbre
**MICHAEL A. PATTERSON** (#10373)
**MARK L. BARBRE** (#30385) -T.A.
**JOSEPH WESTON CLARK** (#37378)
**SETH F. LAWRENCE** (#38316)
1800 City Farm Drive, Building 6
Baton Rouge, Louisiana 70806
Telephone:     (225) 922-5110
Facsimile:      (225) 922-5105
map@longlaw.com
mlb@longlaw.com
wjc@longlaw.com
sfl@longlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Defendants' Opposition to Plaintiff's Motion*

*to Remand* has been served on all counsel by electronically uploading the same to File &

ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was

electronically filed with the Clerk of Court of the United States District Court for the Eastern

District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing

in accordance with the procedures established in MDL 2179, on this 30th day of March, 2020.

/s/Mark L. Barbre
MARK L. BARBRE