### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | * | CASE NO. 2:10-md-02179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO, ON APRIL 20, 2010 | * | SECTION: J(2) |
| | * | |
| DOCUMENT RELATES TO: | * | JUDGE:  CJB |
| 13-06014, *ANDREW J. DITCH* | * | |
| *V. KENNETH R. FEINBERG, ET AL* | * | MAGISTRATE JUDGE:  JCW |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**MAY IT PLEASE THE COURT:** Defendants Kenneth R. Feinberg, Feinberg Rozen, LLP d/b/a Gulf Coast Claims Facility ("GCCF"), and William G. Green, Jr. submit this Memorandum in Support of Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6).

### INTRODUCTION

In the days, months, and years following the Deepwater Horizon Oil Spill, three different claims settlement programs paid more than $[16] billion to businesses and individuals alleging loses as a result of the Spill.  One of those claims facilities — the Gulf Coast Claims Facility ("GCCF") — paid more than $6 billion to more than 220,000 claimants in the course of approximately 18 months between August 2010 and April 2012.

Plaintiff Andrew J. Ditch filed an Emergency Advanced Payment claim with the GCCF on November 23, 2010.  On December 6, 2010, Plaintiff's claim was denied by the GCCF for failure to provide sufficient supporting documentation.

After his Emergency Payment claim was denied, Plaintiff had an array of options.  As the GCCF informed him, Plaintiff could have filed for additional relief with the GCCF in the form of

1

a claim for Interim or Final Payments.  Plaintiff did not do so.  Alternatively, under the Oil Pollution Act ("OPA"), Plaintiff had the right to file a claim with the federal Oil Spill Liability Trust Fund (the Fund in turn would have a right of subrogation against the Responsible Parties). Plaintiff did not do so.

Still further, Plaintiff could have pursued a lawsuit in federal court against the Responsible Parties.  Although Plaintiff did initially file a "Short Form Joinder" to participate in this Multidistrict Litigation, he did not timely opt out of the 2012 class action settlement.  Plaintiff therefore was a class member who, in exchange for the right to file a claim with the Court Supervised Settlement Program, released all claims regarding the Spill (including claims concerning the operation of the GCCF).

Instead of pursuing the available forms of relief, Plaintiff filed the instant lawsuit against the GCCF under state law contesting how the GCCF evaluated his claim and assailing the GCCF process.  The GCCF strongly disputes Plaintiff's allegations, but it is unnecessary to resolve those disputes.  Simply put, for a number of reasons, state law does not provide a remedy for Plaintiff's allegations and thus the Complaint should be dismissed.

First, because he did not timely opt out, Plaintiff is a class member bound by the terms of the *Deepwater Horizon* Economic and Property Damages Settlement, including its class release. The class release released all claims against BP, as well as others regarding the Deepwater Horizon Incident, which is defined to include, among other things, the operation of the GCCF.  Having fully released BP (including with regard to claims concerning the GCCF), Plaintiff cannot now pursue those same claims against the GCCF, whose purpose was to accept presentment and attempt to resolve claims against BP.

2

Second, Plaintiff's state law claims are preempted by federal law. Pursuant to this Court's prior holding, the fact that the Spill occurred approximately 50 miles offshore precludes application of state law. By Plaintiff's own admission, he is seeking damages directly related to the Spill, and thus federal law provides the exclusive remedy. In addition, and separately, permitting Plaintiff to attack the pre-litigation OPA claims process would interfere with and inhibit the claims resolution structure prescribed by Congress in OPA.

Third, even if the state law claims are not preempted, Plaintiff still cannot state a claim. As an initial matter, Plaintiff has not suffered a cognizable injury as a result of conduct alleged. Even accepting all allegations in the Complaint as true, Plaintiff, upon being denied by the GCCF, retained all of his rights to file a claim with the OSLTF, to sue the responsible parties, and ultimately to participate in the class settlement. Because Plaintiff retained all of his rights to recover any losses, the GCCF could not have caused his loss. That Plaintiff elected not to pursue the wide range of available remedies cannot be blamed on the GCCF.

Fourth, and still further, Plaintiff's state law claims are barred for numerous additional, independent reasons. For example, Plaintiff alleges two different negligence claims, but no duty exists to run an OPA claims facility as Plaintiff wishes or to enter into a settlement. OPA simply requires the Responsible Party to receive claims and to publish information about how claims may be filed. It does not impose a duty to operate a claims facility in any particular manner or to settle disputed claims. Similarly, Plaintiff's fraud claims fail for a variety of reasons, including the absence of an actionable misrepresentation and the absence of reliance. And Plaintiff's promissory estoppel and unjust enrichment claims badly miss the mark as there were no actionable promises and the GCCF was not enriched.

3

For all of the reasons, the Court should dismiss the Complaint with prejudice.

## BACKGROUND

### A.       The OPA Claims Procedure

The Oil Pollution Act establishes the procedure for seeking redress for damages caused as a result of oil pollution.   After an oil spill, the United States Coast Guard is tasked with investigating the spill and designating a "responsible party."[1]  The designated Responsible Party is strictly liable for the costs to remove the oil and for damages as a result of the oil spill, … and "Claimants should pursue claims covered under OPA only against the responsible party."[2]

In order to promote pre-litigation settlement, the Responsible Party is required to establish a procedure to receive OPA claims and to make that procedure known through advertisement to the public.[3]  Parties claiming damages must present their claims under the Responsible Party's claims procedure before resorting to litigation. Thus, 33 U.S.C. § 2713(a) provides that "all claims for removal costs or damages shall be presented first to the responsible party."

OPA does not set forth any requirements as to how the Responsible Party is to administer the claims process – it simply provides that a claims process must be created and advertised.  The Fifth Circuit summarized the three-step OPA process as follows:

> One clear requirement of the OPA is that liability and damages are determined in a three-step process.  First, the injured party must present its claim for damages to the designated Responsible Party.   33 U.S.C. § 2713(a)…   Second, if the Responsible Party rejects the claim or refuses to settle it within 90 days, the injured

---

[1] *See* 33 U.S.C. § 2714.  OPA also provides the President with authority to designate the source of the oil spill and the responsible party.  The President has delegated this authority to the Secretary of the Department in which the United States Coast Guard is operating.  *See* Exec. Order No. 12777, 56 FR 54757, at *54768, 1991 WL 11253690 (Oct. 18, 1991); *In re Settoon Towing, L.L.C.*, 859 F.3d at 344.

[2] 33 U.S.C. §§ 2701(32), 2702(a), (b); *See Gabarick v. Laurin Maritime (America) Inc.,* 623 F. Supp. 2d 741, 750 (E.D. La. 2009).

[3] 33 U.S.C. § 2714(b)(1), (2).

> party has a statutory cause of action to sue the Responsible Party for its damages or
> to seek recovery from the government-created Oil Spill Liability Trust Fund. *Id.* §
> 2713(c). Third, once the Responsible Party pays compensation, it may seek partial
> or complete repayment from others by means of contribution or subrogation. *Id.* §
> 2709 (contribution); § 2715 (subrogation).

*In re Settoon Towing Co.,* 859 F.3d 340, 345 (5th Cir. 2017).

If a claim presented to the Responsible Party is not settled, or 90 days pass without a
response from the Responsible Party, then "the claimant may elect to commence an action in court
against the responsible party" or "to present the claim to the" Oil Spill Liability Trust Fund
("OSLTF").[4] If the claim is valid, the claimant is generally entitled to interest running from 30
days after it first presented its claim to the Responsible Party until the date the claim is paid.[5]

### B.     The *Deepwater Horizon* Incident and the GCCF

The United States Coast Guard designated BP Exploration & Production, Inc., ("BP") as a
Responsible Party under OPA with respect to the *Deepwater Horizon* Incident ("Incident") that
began on April 20, 2010. BP accepted the designation and promptly initiated an OPA claims
process that ran for four months. Upon agreement between BP and the White House, BP, on
August 23, 2010, Kenneth R. Feinberg and his law firm Feinberg Rozen, LLP assumed operation
of the OPA claims process. Thereafter, the claims process was conducted under the name Gulf
Coast Claim Facility ("GCCF"). On May 2, 2012 this Court issued a preliminary approval order
for the "*Deepwater Horizon* Economic and Property Damages Settlement" ("Settlement
Agreement"). Rec. Doc. 6418. Economic and property damage claims arising out of the Incident
were thereafter transitioned to the CSSP. Class members who failed to timely opt-out of the

---

[4] 33 U.S.C. § 2713(c).
[5] 33 U.S.C. § 2705.

Settlement Agreement are bound thereby and may only recover damages against BP by the procedures outlined in the Settlement Agreement. *Id.* ¶¶ 7-9.

During its one-and-a-half year tenure, the GCCF processed over one million claims and paid a total of more than $6.2 billion to over 220,000 individual and business claimants.[6]  The GCCF was among the largest claims processing facilities in U.S. history.  Inherent in this task were many challenges.  A publicly available independent review of the GCCF found that while there were "instances in which errors were made in the claims evaluation process, in general, the GCCF appeared to have consistently applied its protocols and methodologies in processing claims."[7]

### E. Plaintiff's Claim

The allegations in the Complaint arise out of GCCF's handling of Plaintiff's OPA claim. Complaint ¶¶ 1-14.  Plaintiff alleges he presented an interim OPA claim to the GCCF on November 23, 2010. *Id.* ¶ 62.   On December 6, 2010, Plaintiff's claim was denied by the GCCF for failure to provide enough supporting documentation.  *Id.* ¶ 63.   After Plaintiff's claim was denied, Plaintiff did not pursue a Final Payment Claim with the GCCF.  *Id.* ¶ 66.

On April 22, 2011, Plaintiff filed a "Short Form Joinder" and joined the B1 Master Complaint as a party.  *See* Rec. Doc. 96689 in Case No. 2:10-08888 (E.D. La.).  Thereafter, as reported by Class Counsel and the BP Defendants in their Joint Report, Plaintiff failed to timely

---

[6] BDO Consulting, Independent Evaluation of the Gulf Coast Claims Facility - Report of Findings & Observations (June 5, 2012), *available at* https://www.justice.gov/sites/default/files/opa/legacy/2012/06/06/gccf-rpt-find-obs.pdf. "[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *See Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir.1994); *see also Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (holding that it is appropriate for a district court to take judicial notice of publicly-available federal agency documents at the motion to dismiss stage).
[7] BDO Consulting, *supra* n. 6.

opt-out of the Settlement Agreement before the Court-ordered deadline.  *See* Rec. Doc. 8001-43, p. 1 (I.D. #62960).  There is no evidence that the Plaintiff otherwise pursued his claims against the Responsible Parties.

Plaintiff filed this lawsuit in the Circuit Court of the Twentieth Judicial District, Lee County, Florida on June 12, 2013.  *See* Rec. Doc. 1 in Case No. 2:13-cv-06014 (E.D. La.).  The seven counts of the Complaint purport to state claims under Florida common law, but they all allege and depend on a finding that Defendants have a duty to claimants under OPA and breached that duty in their interactions with Plaintiff.  On July 16, 2013, Defendants removed the case to the United States District Court, Middle District of Florida, Fort Myers Division ("Middle District of Florida").  *Id.*  The Panel on Multidistrict Litigation entered an Order on October 2, 2013, transferring this case from the Middle District of Florida to this Court, pursuant to 28 U.S.C. § 1407.  *Id.*  On January 17, 2020, the Court entered an Order lifting the stay in the instant case for the limited purpose of responding to the Complaint and responding to the Motion to Remand.  Rec. Doc. 26213.

## ARGUMENT

I.    **The Economic and Property Damage Settlement Agreement Bars Plaintiff's Claims**

The Court granted Final Approval of the Settlement Agreement in December 2012. Rec. Doc. 8139.  The terms of the Settlement Agreement were incorporated into the Court's Order.  *See Id.* ¶ 19.  The class included individuals who suffered economic damages resulting from the BP Oil Spill, including loss of income, earnings, or profits.  *See* Rec. Doc. 64301, § 1.3.1.2.

Economic class members who failed to opt out of the class are expressly bound by the Settlement Agreement.  *See Id.*, § 8.2.4.  Released claims expressly include, "…all claims arising

7

out of, due to, resulting from or relating in any way to, directly or indirectly, the Deepwater Horizon Incident …" *See Id.*, § 10.2. The Deepwater Horizon Incident includes "the operation of the GCCF." *See Id.*, § 38.43.

The Complaint alleges Plaintiff suffered economic injuries arising from the *Deepwater Horizon* Incident. Complaint at ¶¶ 67-68. Plaintiff failed to timely opt out of the economic damages class and, therefore, is bound by the Settlement Agreement. *See* Rec. Doc. 8001-43, p. 1 (I.D. #62960). Having fully released BP, including claims regarding the operation of the GCCF, Plaintiff cannot now bring those released claims against the GCCF. The purpose of the GCCF was to receive presentment of and attempt to resolve claims against BP. All such claims were released, and thus there is nothing left for Plaintiff to pursue.

## II.    OPA Preempts and Precludes Plaintiff's Claims

In enacting OPA, Congress intended to '"create a single Federal law providing cleanup authority, penalties, and liability for oil pollution.' … OPA prescribes a supplemental, comprehensive federal plan for handling oil spill responses, allocating responsibility among participants, and prescribing reimbursement for cleanup costs and injuries to third parties."[8] This carefully calibrated liability scheme "suggests that Congress intended for th[e] statutory remedies to be exclusive."[9] Indeed, "[t]he text of OPA implies its mandatory and exclusive nature."[10] Thus, OPA is the only available mechanism to recover damages arising out of an oil spill.[11]

Section 2718 of OPA preserves certain State law claims imposing additional liability or

---

[8] *In re Deepwater Horizon*, 745 F.3d 157, 168 (5th Cir. 2014) (quoting S. Rep. No. 101–94, at 9 (1989), reprinted in 1990 U.S.C.C.A.N. 722, 730).
[9] *United States v. Am. Commercial Lines, L.L.C.*, 759 F.3d 420, 424 (5th Cir. 2014).
[10] *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F.Supp.2d 741, 745 (E.D. La. 2009).
[11] *See, e.g.*, *Am. Commercial Lines*, 759 F.3d at 424; *Gabarick*, 623 F.Supp.2d at 745.

requirements with respect to oil spills.[12]   However, because the *Deepwater Horizon* Incident occurred approximately 50 miles offshore, above the Outer Continental Shelf, this Court has held that state law claims arising out of the Incident are precluded.  *See, e.g.*, *In re Oil Spill By the Oil Rig "Deepwater Horizon" In the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 808 F. Supp. 2d 943 (E.D. La. 2011).   Therefore, any claim asserting damage arising out of the *Deepwater Horizon* Incident is not properly asserted under a state law theory of liability and must be dismissed.

Plaintiff attempts to escape that conclusion by alleging his losses arise out of the administration of the GCCF, a *Deepwater Horizon* claims process developed under the authority of OPA, not from the *Deepwater Horizon* Incident itself.  But a simple recitation of the damages Plaintiff asserts betrays this strategy: Plaintiff is seeking to recover for "loss of profit, loss of business reputation, loss of livelihood, loss of income, and other economic losses" allegedly arising out the Incident and delays in payment of their damages therefrom.  These are spill-related damages, not independent torts.  Indeed, even the alleged delay in payment Plaintiffs asserts was caused by the GCCF is encompassed by the claims available under OPA, which provides for interest in the event of delayed payment on valid claims.[13]   Plaintiff's claims are, therefore, governed by this Court's prior preemption ruling and must be dismissed.

But, even if Plaintiff was able to allege a compelling basis as to why these claims deserve different preemption treatment than other Incident-related claims, they still would be preempted as they attempt to subvert the goals of the OPA pre-litigation claims process.  The Congressionally

---

[12] 33 U.S.C. § 2718.
[13] 33 U.S.C. § 2705.

9

designed OPA claims process is intended "to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation."[14]  OPA claims processes, like the one set up under the GCCF, are a *settlement* tool and their structure is left in the hands of the Responsible Party who, if the claims process fails, is faced with cumbersome litigation against potentially a vast number of plaintiffs.  Imposing Florida common law duties on this process would frustrate the expediency and flexibility of the process, leading to unnecessary litigation in contravention of Congressional intent.  Claims, like these, that seek to impose a tort-law duty of care on a pre-litigation OPA claims administration process are, therefore, preempted under the doctrine of conflict preemption.[15]

The OPA claims process need not resolve a plaintiff's claim.  Rather, if settlement is not promptly reached, it triggers a plaintiff's right to seek payment from the OSLTF or to sue the Responsible Party in court.[16]  OPA does not mandate that the parties actually reach settlement. There are a host of reasons why a settlement may not be reached.  Instead, OPA relies on its incentive structure to maximize the potential for settlement.  Absent a prompt settlement, a claimant may bring a lawsuit against the Responsible Party seeking that the Responsible Party be held liable for any proven, recoverable damages.[17]

In sum, OPA establishes a specific structure for resolving oil spill claims, combining a mandatory presentment to the Responsible Party, a brief settlement period, followed by a

---

[14] 135 Cong. Rec. H7965 (daily ed. Nov. 2, 1989).

[15] Conflict preemption occurs when state law conflicts with federal law, or when state law is an obstacle to accomplishing the purpose, goals, and objectives of Congress.  *Arizona v. United States*, 567 U.S. 387, 399 (2012).

[16] *See* 33 U.S.C. § 2713(c).

[17] *See id.* § 2702; *In re Settoon Towing*, 859 F.3d at 344-46.  Among other limitations, recoverable economic losses are limited to those "due to the injury, destruction, or loss of real property, personal property, or natural resources" that "result from such incident."  33. U.S.C. § 2702(b)(2).

claimant's right to file a claim with the OSLTF or to institute litigation against the Responsible Party if a prompt settlement is not reached.   Importantly, OPA does not legislate how the Responsible Party evaluates claims and attempts to settle.   Rather, it simply prescribes that the Responsible Party publish information about how to file a claim.[18]   This silence is no accident.   It is not pragmatic to require parties to attempt to settle or to settle in a specific manner — for example they may have irreconcilable views of a given claim.   OPA thus leaves to the Responsible Party how it conducts the settlement efforts.

Imposing state, common law duties on top of OPA's structure would conflict with and impede the structure chosen by Congress.   For example, second guessing how a party elected to process and evaluate a claim through the lens of common law negligence would be directly at odds with OPA's careful balance of requirements and incentives.   Rather than engaging in the impossible task of compelling specific duties regarding settlement efforts, OPA simply imposes a 90-day period for potential resolution.   It is for the Responsible Party to decide how a presented claim is processed and evaluated.   If the Responsible Party denies the claim or the parties otherwise cannot settle within 90 days of presentment, the claimant is free to file a claim with the OLSTF or initiate litigation against the Responsible Party.   Plaintiff's request to introduce state law duties into OPA's carefully delineated process would rewrite the statute and interfere with the structure designed by Congress.

As further evidence that Congress intended there to be no mandatory process governing a Responsible Party's settlement approach in an OPA claims process, Congress *did impose*

---

[18] 33 U.S.C. § 2713(b)(1).

*mandatory process* on the adjudication of claims presented to the OLSTF (one of the potential avenues of recovery should settlement through the Responsible Party's claims process fail).  *See* 33 U.S.C. § 2713(e) (requiring promulgation of regulations governing "presentation, filing, processing, settlement, and adjudication of claims under this Act against the Fund.").   The U.S. Coast Guard has promulgated the regulations governing the OLSTF claims process and published a 25-page guide describing the process to potential claimants. *See* 33 C.F.R. § 136.[19]  This detailed, uniform process stands in stark contrast to the more limited direction of OPA whereby a Responsible Party's claims settlement process can simply be established and advertised.  Indeed, the OLSTF regulations themselves contemplate that settlement through the Responsible Party's claims process may have failed for entirely unknown reasons.  33 C.F.R. § 136.105(e)(10) ("a statement indicating that the claim was presented to the responsible party or guarantor, the date it was presented, that it was denied or remains not settled and, ***if known,*** the reason why it was denied or remains not settled.") (emphasis added).  Thus, creation of standardized procedures for the Responsible Party's OPA claims process is simply not required under OPA.

In its briefing regarding the GCCF's compliance with OPA, the United States agreed with this interpretation, stating "[t]he OPA leaves this extra-judicial claims settlement process largely in the parties' hands … [and] … relies on its incentives – strict liability on the Responsible Parties, the backstop of the NPFC/Fund and the courts where resolution was not reached, and the clear benefits of expeditious out-of-court settlements – to encourage Responsible Parties to fairly

---

[19] *See also*, U.S. Coast Guard, Claimant's Guide (A Compliance Guide for Submitting Claims Under the Oil Pollution Act of 1990) (Apr. 2013; updated Jan. 2018) (*available at* https://www.uscg.mil/Portals/0/NPFC/docs/PDFs/Claimant%20Guide.pdf)

compensate those harmed by an oil spill." Statement of the United States, Rec. Doc. 1322 at pp. 2-3. "[T]he OPA claims process is intended as a mechanism by which parties may avoid litigation – not a mechanism that will generate litigation or open up new forum for disputes."[20]

Finally, considering the consequences of allowing actions like this one to proceed is enough to stop the idea in its tracks. The GCCF processed more than one million claims which, without the GCCF's assistance, might have resulted in additional litigation. If state common law duties were to apply to the GCCF's conduct, claimants in each of the Gulf states would be permitted to seek the local courts' assistance in imposing whatever procedures they deem required to assure that the process is "fair," or comports with due process, or whose implementation would not constitute a breach of duty under that state's laws. The first case would invite the second and the second would open the floodgates. The GCCF would have been seriously distracted from its claims settling purpose by having to litigate these cases, and its operations would have been gravely impaired if it found itself subject to disparate procedural requirements ordered by courts across the Gulf region.[21] This would clearly "'stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"[22]

In short, state law claims are not available with regard to the *Deepwater Horizon* Incident, and OPA preempts efforts based on state law to impose particular requirements on responsible parties in their discharge of their settlement duties under OPA.

---

[20] *Id.*

[21] Congress' intentional denial of a right to challenge an OPA claims process' procedures, as discussed throughout this memorandum, also supports the conclusion that OPA has no "standard of care" that might give rise to a claim against Defendants. Allowing state law claims against an OPA claims process to proceed would result in the imposition of numerous and differing standards of care and would substantially frustrate the purpose of OPA.

[22] *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

13

## III.    All of Plaintiff's Claims are Invalid Under Florida Law

All seven of the Complaint's counts relate to the operations of the GCCF in administering the OPA claims process.  The entire purpose of the OPA claims process was to resolve liability arising out of the *Deepwater Horizon* Incident.  Thus, in order for a claim to be colorable, the GCCF must have inhibited Plaintiff's ability to recover any losses from the ultimately Responsible Party.  Plaintiff has not and cannot allege that this occurred, as Plaintiff commenced litigation against BP under OPA to recover his alleged damages by filing the "Short Form Joinder".  Furthermore, OPA does not impose a duty to *actually settle a claim* or to conduct a claims process in any specific manner.  Defendants, therefore, did not breach any duty to Plaintiff with respect to the manner in which they administered the claims process.  Finally, Plaintiff falls far short of stating actionable claims for fraud.  For these and other reasons discussed below, the Complaint must be dismissed in full with prejudice.

### A.    Plaintiff Fails to Allege any Legally-Cognizable Injury

Plaintiff alleges seven causes of action under Florida law: i) gross negligence; ii) negligence; iii) negligence per se; iv) fraud; v) fraudulent inducement; vi) promissory estoppel; and vii) unjust enrichment.  All seven claims require, among other elements, that Plaintiff allege an actual injury or damage resulting from the alleged conduct.[23]   The injury alleged in the Complaint is economic loss allegedly arising from the Incident and the subsequent handling of

---

[23] *See Jackson Hewitt, Inc. v. Kaman*, 100 So. 3d 19, 27–28 (Fla. 2d Dist. Ct. App. 2011) (negligence); *Vallejos v. Lan Cargo S.A.*, 116 So. 3d 545, 552 (Fla. 3d Dist. Ct. App. 2013) (gross negligence); *Sorenson v. Prof'l Compounding Pharmacists of W. Pennsylvania, Inc.*, 191 So. 3d 929, 934 (Fla. 2d Dist. Ct. App. 2016) (negligence per se); *Somerset Pharm., Inc. v. Kimball*, 49 F. Supp. 2d 1335, 1340 (M.D. Fla. 1999) (fraud); *Tindall v. Gibbons*, 156 F. Supp. 2d 1292, 1298 (M.D. Fla. 2001) (fraudulent inducement); *FCCI Ins. Co. v. Cayce's Excavation, Inc.*, 901 So. 2d 248, 251 (Fla. 2d Dist. Ct. App. 2005) (citing *Almerico RLI Ins. Co.*, 716 So. 2d 774 (Fla. 1998)) (promissory estoppel); *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (unjust enrichment).

Incident-related claims, which (if valid) were recoverable from the Responsible Party, BP. Plaintiff does not allege, however, that the GCCF frustrated in any way his ultimate ability to recover damages from BP in litigation.  Indeed, pursuant to OPA, Plaintiff's interaction with the BP-created claims programs (whether the GCCF or the earlier iteration) was a statutory *prerequisite*, not an impediment, to bringing a claim against BP.  Despite Plaintiff's frustrations with that process, no injury resulted (nor could any injury have resulted) because Plaintiff's rights to the compensation sought was preserved.  Plaintiff did not release his right to sue for their alleged loses.  In fact, Plaintiff joined the Master Complaint in the MDL and had the opportunity to pursue his claims in the CSSP.  However, Plaintiff failed to opt out of the Settlement Class and apparently chose not to further pursue his claims with the CSSP. [24]  Plaintiff had ample time to pursue his rights; the fact that he did not do so cannot be blamed on the GCCF.

> **B.** **Plaintiff Fails to Allege a Duty that Gives Rise to a Gross Negligence or Negligence Claim (Counts I & II)**

Whether the law recognizes a duty owed by the defendant to the plaintiff is a threshold question of law.[25]  If there is no duty, there is no actionable claim for negligence.[26]  Even if OPA does not preempt the law in Florida (the state where Plaintiff resides and the jurisdiction of which Plaintiff seeks), because the claims process is governed by OPA, Florida courts would look to OPA in determining the duty of care imposed.  As discussed throughout this brief, OPA imposes no duty of care on the administration of a claims process like the GCCF nor does Florida law.

---

[24] Rec. Doc. 8001-39, p. 15 (I.D. 01087).
[25] *Jackson Hewitt, Inc.*, 100 So. 3d at 27–28.
[26] *Id.*

15

Because the GCCF did not owe the Plaintiff a duty, Plaintiff's gross negligence and negligence claims must fail.[27]

Under Florida law, a legal duty may only arise out of the following four sources: "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (citing *McCain v. Fla. Power Corp.*, 593 So.2d 500, 503 n. 2 (Fla. 1992)).  None of these sources impose a duty on Defendants as to the OPA claims process.[28] Therefore, any potential duty GCCF owed to the Plaintiff would have to arise out of OPA.

Florida law recognizes courts must be wary of interpreting federal regulations as establishing a duty absent specific provisions establishing a standard of care.[29]  A federal statute or regulation that sets out a general or abstract standard of care cannot establish negligence.[30]  Federal courts sitting in diversity have been reluctant to find a new standard of care that is not already recognized by Florida law.[31]  Furthermore, Florida courts have been reluctant to find a cause of action based in negligence for a purely economic loss without a corresponding bodily

---

[27] *See Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014).

[28] In comparison, Florida has numerous statutorily created duties regarding how insurance claims are handled and processed. *See Hogan v. Provident Life & Acc. Ins. Co.*, 665 F. Supp. 2d 1273, 1281 (M.D. Fla. 2009).  Therefore, Florida law's silence on the OPA process is not coincidental.

[29] *See Murray v. Briggs*, 569 So. 2d 476, 481 (Fla. 5th Dist. Ct. App. 1990).

[30] *Id*.

[31] *Virgilio v. Ryland Grp., Inc.*, 695 F. Supp. 2d 1276, 1285 (M.D. Fla. 2010), *aff'd*, 680 F.3d 1329 (11th Cir. 2012).

injury or property damage.[32]  When evaluating claims for negligence for purely economic loss, the

duty element serves as an important barrier to prevent the over-extension of liability.[33]

The GCCF was created to receive OPA claims related to the *Deepwater Horizon* Incident

and according to Plaintiff, "replaced the claims process which BP had established to fulfill its

obligations as a responsible party" pursuant to OPA.  Thus, the GCCF stood in the shoes of a

Responsible Party for the limited purpose of handling OPA claims.  Pursuant to OPA, a

Responsible Party's claims process is subject to only two requirements: that such a claims process

be established and that the process be advertised.[34]  As discussed above, there are no other

requirements for this process.  For example, there is no requirement to establish a claims process

that abides by any legally recognized standard of care or that results in the settlement of any claims;

indeed, OPA explicitly contemplates that claims may not all be settled through this process and

provides recourse.[35]  This is no accident.  Settlement is, by definition, a voluntary process and

cannot be governed by specific duties to adverse parties.

Simply put, there is no "settlement duty" under OPA, Florida statute, or Florida common

law applicable to Defendants and Counts I and II of the Complaint must be dismissed.

## C.    Plaintiff Has Not Stated a Negligence *Per Se* Claim (Count III)

The Complaint fails to state a cause of action for negligence *per se* based on the alleged

violations of OPA by the Defendants.  As an initial matter, Plaintiff has not alleged that BP has

---

[32] *See, e.g.*, *Monroe v. Sarasota Cty. Sch. Bd.*, 746 So. 2d 530, 534-539 (Fla. 2d Dist. Ct. App. 1999) (providing a thorough analysis on the common law's approach to purely economic damages).  The common law basis for limiting negligence claims to bodily injury and property damage is the availability of insurance policies to protect the alleged defendant from financial ruin. *See Id.* at 535 n.8 (citing *Ard v. Ard*, 414 So. 2d 1066, 1068–69 (Fla. 1982)).
[33] *Virgilio*, 680 F.3d at 1339
[34] 33 U.S.C. §§ 2705, 2714(b).
[35] *See id.* § 2705.

violated OPA's actual claims procedure requirements — namely to create a claims process and to advertise it.  Accordingly, Plaintiff cannot state a claim for *negligence per se*.

Moreover, even if Plaintiff did allege such a violation, there is no private cause of action for such an alleged violation.  To find negligence *per se,* a private right of action must be explicitly or implicitly stated in the statute.[36]  When the statute is silent as to whether it allows for a private cause of action, a negligence *per se* claim may only survive by showing an express legislative intent to create such a cause of action.[37]  OPA provides no private cause of action for a violation of the claims procedure.  To the contrary, if a claimant is unhappy with the claims process, the OPA remedy is to sue the Responsible Party to recover damages, which Plaintiff initiated when he filed the Short Form Joinder.  Therefore, the provisions of OPA cannot form the basis for a cause of action for negligence *per se* under Florida law.

### D.    Plaintiff Has Not Alleged a Cognizable Fraud or Fraudulent Inducement Claim

To prove fraud under Florida law, a plaintiff must show: 1) the defendant made a false representation of past or present fact, 2) the defendant knew the statement was false, 3) the statement was made for the purpose of inducing the plaintiff to rely on it, and 4) the plaintiff's reliance was reasonable.[38]  Misrepresenting a future fact or event cannot be the basis for a claim of fraud.[39]  Similarly, promises of future conduct or breach of a promise to perform cannot form

---

[36] *In re Brinker Data Incident Litig.*, Case No. 3:18-cv-686-J-32MCR, 2020 WL 691848, at *9 (M.D. Fla. Jan. 27, 2020).
[37] *Id.* (quoting *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1229 (S.D. Fla. 2010)); *see also, Sorenson*, 191 So. 3d at 934.
[38] *Somerset Pharm., Inc.*, 49 F. Supp. 2d at 1340.
[39] *See Sleight v. Sun & Surf Realty, Inc.*, 410 So. 2d 998, 999 (Fla. 3d Dist. Ct. App. 1982).

the basis for a claim of fraud.[40]  Statements of opinion also cannot give rise to a claim for fraud.[41]

For example, in *Pierson v. Rogow,* a physician brought a legal malpractice claim against his

attorneys arising out of the alleged mishandling of an appeal. Case No. 15-61312-CIV-ZLOCH,

2019 WL 1112293, at *6 (S.D. Fla. Jan. 23, 2019), *report and recommendation adopted*, Case No.

15-61312-CIV-ZLOCH, 2019 WL 2253304 (S.D. Fla. Mar. 25, 2019).   In dismissing the

physician's claim for fraud, the court characterized the allegation as follows: "[the] Defendants

led Plaintiff to believe they would do something and did not do it to Plaintiff's satisfaction," and

found that "[t]his is not the stuff of a fraud claim."[42]

In this case, Plaintiff's fraud allegations are based on of the following alleged

representations made by the GCCF:

(1) The protocol under which [the Defendant] GCCF operates is structed to be compliant
with OPA and apply the standards of OPA;

(2) "Each Emergency Advance Payment application will be evaluated preliminarily within
24 hours of receipt of the completed form and supporting documentation to determine
whether an Emergency Advance Payment is appropriate based on the information
submitted by the Claimant;"

(3) "Complex business claims submitted for an Emergency Advance Payment will be
evaluated preliminarily within 7 days of receipt of the completed form and supporting
documentation to determine whether an Emergency Advance Payment is appropriate
based on the information submitted by the Claimant;"

(4) "Upon a determination that the Claimant is eligible for an Emergency Advance
Payment, a payment will be authorized within 24 hours;"

(5) Potential claimants do not need to hire a lawyer and will be much better off accepting
what Defendant Feinberg offers rather than going to court;

---

[40] *See Palmer v. Santa Fe Healthcare Sys., Inc.*, 582 So.2d 1234, 1236 (Fla. 1st Dist. Ct. App. 1991); *Clark v. Ashland, Inc.*, No. 2:13-CV-794-FTM-29DNF, 2015 WL 1470657, at *6 (M.D. Fla. Mar. 31, 2015).
[41] *See Tampa Union Terminal Co. v. Richards*, 108 Fla. 516, 525, 146 So. 591, 594 (1933).
[42] Pierson, 2019 WL 1112293, at *6.

(6) "The litigation route in court will mean uncertainty, years of delay and a big cut for the lawyers;"

(7) "I am determined to come up with a system that will be more generous, more beneficial, than if you go and file a lawsuit;"

(8) "It is not in your interest to tie up you and the courts in years of uncertain protracted litigation when there is an alternative that has been created;"

(9) "I will take the position, if I don't find you eligible, no court will find you eligible;" and

(10)    Defendants referred to the Deepwater Horizon Oil Spill Trust Fund as the "$20 Billion Fund." At the end of 2010, the most the fund would have had in its escrow account would have been $5 billion.

Complaint, ¶¶ 132.

Not a single one of these statements can give rise to a claim for fraud -- all are either promises to perform (bullets 2, 3, 4, 5, 7 and 10 above) or opinions (bullets 1, 5, 6, 8 and 9 above). For example, statements regarding anticipated timelines for review of claims and authorization of payments were plainly aspirational and not the stuff of fraud. Furthermore, Plaintiff did not rely on certain of these statements. Similarly, that there was allegedly less than $20 billion in the trust fund at the end of 2010 does not disprove that $20 billion was committed to the fund because, as Plaintiff alleges, the $20 billion was intended to be paid over time, with the last payment anticipated in 2013, *Id*. ¶ 29. In any event, Plaintiff does not allege that there were insufficient funds in the trust to timely pay Plaintiffs' alleged damages; thus, any statements regarding the timing of funding could not have harmed Plaintiff.

Finally, Plaintiff's fraudulent inducement claim ignores that engagement with the GCCF or its predecessor claims process is *required* pursuant to OPA. Presentment to the Responsible Party is an express condition precedent to bringing an OPA action in court or presenting the claim

to the OSLTF.[43]  Thus, the idea that Plaintiff's participation in the GCCF was fraudulently induced is at odds with Plaintiff's contention that they experienced losses that gave rise to an OPA claim. The filing of Plaintiff's claims with the GCCF allowed him to properly intervene in the MDL and become a member of the settlement class.  The GCCF is not responsible for Plaintiff's lack of follow through in the CSSP, the MDL, or otherwise. Simply put, Plaintiff was required to present to the GCCF (or its predecessor claims process).  Plaintiff's fraudulent inducement claim also ignores that there are only two remedies for fraudulent inducement under Florida law: (1) rescission of the contract, or (2) ratification of the contract and damages.[44]  Plaintiff has not alleged the existence of a contract that could be rescinded; nor have they alleged any verbal contract with the GCCF that could be ratified.  As such, this claim must fail.

### E.    Plaintiff Fails to State a Claim for Promissory Estoppel

To state a cause of action for promissory estoppel, a plaintiff is required to demonstrate the following elements: (1) the defendant made a representation as to a material fact that is contrary to a later-asserted position; (2) the plaintiff reasonably relied on that representation; and (3) a change in position detrimental to the party claiming estoppel caused by the defendant's representation and the plaintiff's reliance thereon.[45]  The promise must be definite and the reliance upon the promise reasonable.[46]

The Promissory Estoppel Count within the Complaint references three statements the GCCF allegedly made that are "contrary to Defendants' current representations."  Complaint at ¶

---

[43] *See* 33 U.S.C. § 2713(a).

[44] *See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000).

[45] *See FCCI Ins. Co..*, 901 So. 2d at 251 (citing *Almerico RLI Ins. Co.*, 716 So. 2d 774 (Fla. 1998)).

[46] *See RMP Enterprises LLC v. Connecticut Gen. Life Ins. Co.*, Case No. 9:18-CV-80171, 2018 WL 2973389, at *6 (S.D. Fla. June 13, 2018), *appeal dismissed*, No. 18-15294-GG, 2019 WL 3021231 (11th Cir. Apr. 8, 2019).

143.   All three statements relate to allegedly promised timelines for review and processing of claims made on the GCCF's website which were aspirational, not definite.  Furthermore, Plaintiff's assertion that these three statements are contrary to later representations is betrayed by Plaintiff's own characterizations of the representations.  Additionally, the only representation Plaintiff claims he actually relied on was "Defendants' representation that his claims would be evaluated and paid." *Id*. ¶ 144. "Timeliness" is far from a definite concept and nothing in the Complaint indicates the GCCF diverged from this statement in its treatment of Plaintiff's claim.

### F.   Plaintiff Fails to State a Claim for Unjust Enrichment

A claim for unjust enrichment must assert three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain it without paying the value thereof.[47] "It is well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy."[48]  A plaintiff must allege the lack of an adequate legal remedy in order to sufficiently state a cause of action for unjust enrichment.[49]

The Complaint fails to allege Plaintiff conferred any benefit to the Defendants.  The Complaint also fails to allege Defendants accepted and retained any benefit from Plaintiff.  The third element is mooted by the absence of the first two elements.  Therefore, Plaintiff's unjust enrichment claim should be dismissed.

---

[47] *Virgilio*, 680 F.3d at 1337.
[48] *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).
[49] *Id*.

## CONCLUSION

Plaintiff's claims arising out of the *Deepwater Horizon* Incident are barred by the Economic and Property Damage Settlement Agreement.  Alternatively, Plaintiff's state law claims arising out of the *Deepwater Horizon* Incident are preempted pursuant to prior orders of this Court and are furthermore preempted in that they would frustrate the Congressional intent behind OPA's requirement that a Responsible Party establish a claims process.  Plaintiff likewise fails to assert valid causes of action under Florida law.

Respectfully submitted:

**LONG LAW FIRM, L.L.P.**

/s/ Seth F. Lawrence
**MICHAEL A. PATTERSON** (#10373)
**MARK L. BARBRE** (#30385) -T.A.
**JOSEPH WESTON CLARK** (#37378)
**SETH F. LAWRENCE** (#38316)
1800 City Farm Drive, Building 6
Baton Rouge, Louisiana 70806
Telephone:    (225) 922-5110
Facsimile:     (225) 922-5105
map@longlaw.com
mlb@longlaw.com
wjc@longlaw.com
sfl@longlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Memorandum in Support of Defendants'*
*Motion to Dismiss* has been served on All Counsel by electronically uploading the same to File &
ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was
electronically filed with the Clerk of Court of the United States District Court for the Eastern
District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing
in accordance with the procedures established in MDL 2179, on this 30th day of March, 2020.

/s/Seth F. Lawrence_____
Seth F. Lawrence