UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig<br>"Deepwater Horizon"<br>in the Gulf of Mexico,<br>on April 20, 2010 | MDL 2179<br><br><br>SECTION: J |
| *This Document Relates to:*<br>*Pinellas Marine Salvage Inc., et al. v. Feinberg, et al.,*<br>*2:11-cv-01987*<br>*Salvesen v. Feinberg, et al.,*<br>*2:11-cv-02533*<br>*Ditch v. Feinberg et al.,*<br>*2:13-cv-06014*<br>_____/ | JUDGE BARBIER<br>MAG. JUDGE WILKINSON |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
<u>MOTIONS TO REMAND</u>**

The following Memorandum is respectfully submitted in support of Plaintiffs' Motions To Remand.

**<u>BACKGROUND</u>**

The Judicial Panel on Multidistrict Litigation (JPML) created MDL 2179 and transferred cases relating to the "Deepwater Horizon" / Macondo Well incident to the Eastern District of Louisiana on August 10, 2010. On February 25, 2011, Plaintiffs Pinellas Marine Salvage Inc., et al. filed their action against Defendants Kenneth R. Feinberg and Feinberg Rozen, LLP, d/b/a GCCF, in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida. The case was subsequently transferred by the JPML to the MDL 2179 Court on August 9, 2011. On June 15, 2011, Plaintiff Salvesen filed his action against Defendants Kenneth R. Feinberg, Feinberg Rozen, LLP, d/b/a GCCF, and William G. Green, Jr. in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida. The case was subsequently transferred by the JPML to the MDL 2179 Court on October 6, 2011. On June 12, 2013, Plaintiff Ditch filed

his action against Defendants Kenneth R. Feinberg, Feinberg Rozen, LLP, d/b/a GCCF, and William G. Green, Jr. in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida. The case was subsequently transferred by the JPML to the MDL 2179 Court on October 2, 2013. Each of the three cases asserts claims for gross negligence, negligence, negligence per se, fraud, fraudulent inducement, promissory estoppel, and unjust enrichment under Florida state law. Pursuant to this Court's Pretrial Order No. 15 (Rec. Doc. 676), "Pending further orders of this Court, all pending and future motions, including Motions to Remand [and Motions to Commence Formal Discovery], are continued without date unless a motion is specifically excepted from the continuance by the Court." All motions filed by Plaintiffs since August 2011, including Motions to Remand and Motions to Commence Formal Discovery, were continued without date. A copy of each of the three Complaints is attached hereto to refresh the Court's memory (*See* Exhibits "A," "B," and "C."). On February 11, 2020, Defendants Kenneth R. Feinberg, et al. substituted the Long Law Firm, L.L.P. as counsel of record. Louisiana Senator Russell Long, one of the longest-serving senators in U.S. history and son of former Louisiana governor and U.S. Senator Huey P. Long, founded the firm in 1988. Long Law Firm has deep roots in Democratic politics, governmental relations, and legislative practice in Louisiana. Fortunately for Plaintiffs, an impenetrable Chinese wall exists between Louisiana Politics and Louisiana Law.

On March 5, 2020, Defendants filed three Motions for Court Approval to Compel the Production of Claims Information by the Claims Administrator Patrick Juneau. (Rec. Docs. 26367- 26369) (*See, e.g.,* Exhibit "D"). On March 10, 2020, the Court, without notifying Plaintiffs either directly or via File and Serve, granted Defendants' three Motions to Compel.

Plaintiffs respectfully point out that the surreptitious granting of these three Motions to Compel by the Honorable MDL 2179 Court was tantamount to granting Defendants a unilateral and unjust right to commence discovery. The claims information produced by Patrick Juneau serve as the basis for Defendants' Oppositions to Plaintiffs' Motion to Remand.

Defendants' briefs in opposition state "Plaintiffs' Motions to Remand should be denied because original jurisdiction lies in federal court under 28 U.S.C. § 1331 (Federal question), 33 U.S.C. § 2717(b) (the Oil Pollution Act) ("OPA"), and 43 U.S.C. § 1349(b)(1) (the Outer Continental Shelf Lands Act) ("OCSLA"), and, alternatively, under 28 U.S.C. § 1332 (Diversity)."

For almost a decade, this Court has been fully briefed, on numerous occasions, in regard to each and every issue raised by Defendants in their Oppositions to Plaintiffs' Motion to Remand. (*See, e.g.*, Exhibit "E," Exhibit "F," and Exhibit "G"). There is no need to waste this Honorable Court's valuable time and resources by doing so here again. Plaintiffs respectfully point out that the issue of remand is best, and most truthfully, addressed as follows.

## LAW AND ARGUMENT

**I.    The Multidistrict Litigation Statute makes clear that each action transferred to the Honorable MDL 2179 Court under 28 U.S.C. § 1407 shall be remanded by the JPML at or before the conclusion of pretrial proceedings to the district from which it was transferred.**

The multidistrict litigation statute (28 U.S.C. § 1407) provides, in pertinent part, "When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district *for coordinated or consolidated pretrial proceedings*. Such transfers shall be made by the judicial panel on multidistrict litigation

authorized by this section upon its determination that transfers for such proceedings will be *for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions*. Each action so transferred **shall be remanded** by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated." (Emphasis added).

"Shall" means shall. The U.S. Supreme Court has made clear that when a statute uses the word "shall," Congress has imposed a mandatory duty upon the subject of the command. See *United States v. Monsanto*, 491 U.S. 600, 607, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) (by using "shall" in civil forfeiture statute, "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied").

Use of "shall" and "may" in statutes also mirrors common usage; ordinarily "shall" is mandatory and "may" is permissive. "The mandatory 'shall'….normally creates an obligation impervious to judicial discretion." *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998).

Justice Souter, in delivering the opinion of the *Lexecon* Court, explained, "If we do our job of reading the statute whole, we have to give effect to this plain command, see *Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U. S. 469, 476 (1992), even if doing that will reverse the longstanding practice under the statute and the rule, *see Metropolitan Stevedore Co.* v. *Rambo* (1995) ('Age is no antidote to clear inconsistency with a statute') (quoting *Brown* v. *Gardner*, 513 U. S 115, 122 (1994)). The language is straightforward, and with a straightforward application ready to hand, statutory interpretation has no business getting metaphysical."

**II.     The U.S. Supreme Court has made clear that each action transferred to the Honorable MDL 2179 Court under 28 U.S.C. § 1407 shall be remanded by the JPML at or before the conclusion of pretrial proceedings to the district from which it was transferred.**

The MDL court possesses significant powers but its jurisdiction is incomplete because it cannot try transferred actions without the parties' consent. *In re* Showa Denko K.K. L-Tryptophan Prods. Liab. Litig., 953 F.2d 162, 165 (4th Cir. 1992) ("The authority for consolidating cases on the order of the judicial panel on multi-district litigation….is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred."). Nor can the MDL court transfer a case to itself on a permanent basis in order to try it. Until the U.S. Supreme Court's decision in *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (holding that the statute commanded this result "even if doing that will reverse the longstanding practice under the statute and the rule"), MDL courts commonly transferred cases to themselves in order to try them. *See also* Courtney E. Silver, *Procedural Hassles in Multidistrict Litigation: A Call for Reform of 28 U.S.C. § 1407 and the* Lexecon *Result*, 70 OHIO ST. L.J. 455, 461 (2009) (recalling that during "the first thirty years of MDL practice, it was quite common" for an MDL to transfer cases to itself for trial). The U.S. Supreme Court unanimously ended that practice, holding that, despite longstanding contrary practice, the plain language of § 1407(a) dictates that the JPML "shall" remand cases at the close of pretrial proceedings. *Lexecon*, 523 U.S. at 32. There have been numerous attempts to persuade Congress to reverse *Lexecon* by statute, but none have come to fruition. *See* Richard L. Marcus, *Cure-All for an Era of Dispersed Litigation? Toward a Maximalist Use of the Multidistrict Litigation Panel's Transfer Power*, 82 TUL. L. REV. 2245, 2292–95 (2008), at 2291 ("[S]ince [*Lexecon*], bills to add authority to transfer for trial to the Panel's authority have been introduced

-5-

but not passed.") (discussing choice-of-law concerns in the context of MDL); Thomas E. Willging & Emery G. Lee III, *From Class Actions to Multidistrict Consolidations: Aggregate Mass-Tort Litigation After* Ortiz, 58 U. KAN. L. REV. 775, 776 (2010) (discussing the substantial growth of aggregate tort litigation in MDL proceedings). As a result, an MDL court may not try a case transferred to it for pretrial proceedings unless the parties consent to trial *See* WRIGHT, MILLER & COOPER, 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3866 (3d ed. 2007), § 3866.2 at 555 (noting that parties may consent to trial in the MDL court).

The traditional model for MDL, reflected in its legislative history *See* H.R. REP. NO. 90-1130, 3-4 (1968) ("The proposed statute affects only the pretrial stages in multidistrict litigation.") and the U.S. Supreme Court's reading of the MDL statute in *Lexecon*, Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 36-37 (1998) ("[T]he statute places an obligation on the Panel to remand no later than the conclusion of pretrial proceedings in the transferee court, and no exercise in rulemaking can read that obligation out of the statute.") provides that pretrial proceedings will at some point conclude, and, on the recommendation of the MDL judge, the JPML will remand the cases to the districts whence they came. 28 U.S.C. § 1407(a) (2006); MANUAL FOR COMPLEX LITIGATION § 20.133 (4th ed. 2004) ("The Panel looks to the transferee court to suggest when it should order remand."). (*See*, Exhibit "H").

**III.    The "Black Hole"**

Pinellas Marine Salvage Inc., et al. v. Feinberg, et al.; Salvesen v. Feinberg, et al.; and Ditch v. Feinberg et al. were sentenced to the proverbial "Black Hole" where they were automatically and indefinitely stayed for nearly a decade. Multidistrict litigation has frequently

been described as a "Black Hole" because transfer is typically a one-way ticket. Indeed, the JPML has abdicated its proper role by providing no recourse to remedy or to exit an MDL "Black Hole." *See, e.g.*, *In re* U.S. Lines, Inc., No. 97-CIV-6727, 1998 WL 382023, at *7 (S.D.N.Y. July 9, 1998) (explaining appellants' description of the asbestos multidistrict litigation as "a black hole" and "the third level of Dante's inferno"); Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. 2323, 2330 (2008) ("Indeed, the strongest criticism of the traditional MDL process is that the centralized forum can resemble a 'black hole,' into which cases are transferred never to be heard from again."); John G. Heyburn II & Francis E. McGovern, *Evaluating and Improving the MDL Process*, 38 LITIGATION 27, 31 (2012) ("The single most prominent complaint about multidistrict litigation arises from counsel's negative experiences in so-called black hole cases - those that seem not to move at an acceptable pace."); Eduardo C. Robreno, *The Federal Asbestos Product Liability Multidistrict Litigation (MDL 875): Black Hole or New Paradigm?*, 23 WIDENER L. J. 97, 126 (2013) ("Ultimately, neither the court nor the parties were ready, willing, or able to move [asbestos] cases to trial and settlement. This stage of litigation led some litigants to refer to MDL 875 as a 'black hole,' where cases disappeared forever from the active dockets of the court.").

By all accounts, the multidistrict litigation statute's idealized vision differs dramatically from the real-world practice of MDL. Indeed, most MDL cases are understood by all involved to be unamenable to trial at the outset. As one judge put it, "[i]t's the culture of transferee courts. You have failed if you transfer it back." Abbe R. Gluck *Unorthodox Civil Procedure: Modern Multidistrict Litigation's Place in the Textbook Understandings of Procedure*, 165 U. Pa. L. Rev. 1669 (2017).

MDLs depend almost entirely on consent and, in turn, disrupt traditional relationships among their players, turning judges and lawyers into deeply collaborative partners in (as one judge put it) "practical problem solving." MDLs have created a judicial elite among the federal judges chosen to lead them, subverting the baseline premise of horizontal equality among federal district judges and instantiating Judge Richard Posner's view that federal judges, with life tenure and little prospect for formal promotion, are eager to find some way to distinguish themselves from the pack. *See* RICHARD A. POSNER, HOW JUDGES THINK 132 - 47 (2008).

The MDL judge in many ways acts more like a modern administrator than the judge the FRCP envisions, not least because, like agencies, the particular MDL judges who are chosen for these cases are delegated to specifically for their expertise in practical administration. *See* Alexandra D. Lahav, *The Law and Large Numbers: Preserving Adjudication in Complex Litigation*, 59 FLA. L. REV. 383, 403 (2007); See *also,* Abbe R. Gluck *Unorthodox Civil Procedure: Modern Multidistrict Litigation's Place in the Textbook Understandings of Procedure*, 165 U. Pa. L. Rev. 1669 (2017).

**IV.     The power that Judge Barbier exercises, *in regard to remand*, rests on little more than "empty air."**

Judge Patrick E. Higginbotham explains, "The disconnect between the power of the transferee judge and the power that the judge exercises rests on a statute that authorizes only the transfer of cases to that judge for purposes of pretrial proceeding with return to their filing homes, as the U.S. Supreme Court made clear in *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*. The rest of the operation finds its footing in some form of consent and assertions of implied and inherent authority sometimes on little more than empty air." *See* Patrick

Higginbotham, *Bureaucratizing the Courts? Finding MDL's Place in the Traditional Legal Culture*, Available at: https://judicialstudies.duke.edu/articles/bureaucratizing-the-courts-finding-mdls-place-in-the-traditional-legal-culture/

Writing in dissent for the Ninth Circuit, Judge Alex Kozinski presaged the U.S. Supreme Court's ruling in *Lexecon* by characterizing self-transfer as "a remarkable power grab by federal judges," because the practice exceeded the authority Congress granted to transferee judges. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach* (*In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.*), 102 F.3d 1524, 1540 (9th Cir. 1996)(Kozinski, J., dissenting) (arguing that "the language itself [of 1407] is clear as sunlight"), rev'd, 118 S. Ct. 956 (1998). In addition, Judge Kozinski had observed that nearly 30 years of congressional silence on the issue of self-transfer merited little deference since Congress exercises little oversight in the M.D.L. area. *See Lexecon*, 102 F.3d at 1549 (Kozinski, J., dissenting) (contrasting this area with Congress' "vigorous oversight" of tax laws, where congressional silence could properly be considered ratification).

## CONCLUSION

For the reasons given above, and the reasons more extensively set forth in the exhibits attached hereto, Plaintiffs' Motions to Remand should be granted.

DATED: April 6, 2020                                        Respectfully submitted,

**/s/ Brian J. Donovan**
Brian J. Donovan
Attorney for Plaintiffs
Florida Bar No. 143900
3102 Seaway Court, Suite 304
Tampa, FL 33629
Tel: (352)328-7469
BrianJDonovan@verizon.net

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 6th day of April, 2020.

<strong>/s/ Brian J. Donovan</strong><br/>Brian J. Donovan