# IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## IN AND FOR PINELLAS COUNTY, FLORIDA
### CIVIL ACTION

PINELLAS MARINE SALVAGE, INC., and
JOHN MAVROGIANNIS

      Plaintiffs,

vs.

KENNETH R. FEINBERG, and
FEINBERG ROZEN, LLP,
d/b/a GULF COAST CLAIMS FACILITY

      Defendants.

_____/

CASE NO. 11-1744 CI 013
522011CA001744XX CICI



## COMPLAINT

COMES NOW Plaintiffs, PINELLAS MARINE SALVAGE, INC. (hereinafter "PMS")

and JOHN MAVROGIANNIS, by and through their undersigned attorney, file this action against

Defendants KENNETH R. FEINBERG, an individual (hereinafter "Feinberg"); FEINBERG

ROZEN, LLP, a District of Columbia limited liability partnership (hereinafter "Feinberg

Rozen"); and GULF COAST CLAIMS FACILITY, an entity established by Feinberg acting

through and as a partner of Feinberg Rozen, doing business in the State of Florida (hereinafter

"GCCF"), and allege as follows:

## NATURE OF ACTION

1. On April 20, 2010, an explosion and fire occurred aboard the mobile offshore drilling

unit Deepwater Horizon. On the morning of April 22, 2010, the Deepwater Horizon sank

**EXHIBIT**

1

resulting in a massive oil spill incident. Oil flowed into the Gulf of Mexico unchecked for nearly five months. Millions of barrels of oil were discharged into the Gulf of Mexico and upon adjoining shorelines, causing immense environmental and economic harm to the entire region.

2. On August 23, 2010, Defendant GCCF, an entity established by Defendant Feinberg acting through and as a partner of Defendant Feinberg Rozen, replaced the claims process which BP had established to fulfill its obligations as a responsible party pursuant to the Oil Pollution Act of 1990 (hereinafter "OPA"). The protocol established by the defendants sets forth the procedure for the submission and resolution by Defendant GCCF of claims by individuals and businesses for costs and damages incurred as a result of the Deepwater Horizon oil spill incident.

3. All Defendants herein have misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly stating the protocol under which Defendant GCCF operates is structured to be compliant with OPA and apply the standards of OPA.

4. All Defendants herein have misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly employing a "Delay, Deny, Defend" strategy against Plaintiffs. This strategy, commonly used by unscrupulous insurance companies, is as follows: "Delay payment, starve claimant, and then offer the economically and emotionally-stressed claimant a miniscule percent of all damages to which the claimant is entitled. If the financially ruined claimant rejects the settlement offer, he or she may sue."

5. Under OPA, claims for damages must be presented first to the responsible party. In the event that a claim for damages is either denied or not paid by the responsible party within 90 days, the claimant may elect to commence an action in court against the responsible party or to

-2-

present the claim to the Oil Spill Liability Trust Fund (hereinafter "OSLTF").

6. Under OPA, the 90-day period for Defendant GCCF to honor the claim of Plaintiff PMS began to run when Plaintiff PMS first submitted its claim to BP on July 3, 2010, and cannot be reset by Defendant GCCF. OPA does not allow the responsible party to "re-advertise" a claim through any other entity, for the purposes of "resetting" this period.

7. All Defendants herein have misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly delaying payment by informing and requiring Plaintiff PMS, who had already submitted an Emergency Advance Payment ("EAP") claim to BP, the responsible party, to resubmit its EAP claim to Defendant GCCF, and wait at least *another* 90 days for Defendant GCCF to not pay its claim before Plaintiff PMS could commence an action in court against the responsible party or could present the claim to the OSLTF.

8. All Defendants herein have misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly delaying payment by requiring Plaintiff PMS, who had already resubmitted an EAP claim, to submit a Final Payment claim to Defendant GCCF and wait at least *another* 90 days for Defendant GCCF to not pay its claim before Plaintiff could commence an action in court against the responsible party or could present the claim to the OSLTF.

9. All Defendants herein have misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly delaying payment by telling Plaintiffs "claims will be paid within 90 days after substantiation." Unbeknownst to Plaintiffs and most claimants, according to Defendant GCCF, substantiation means "the claim has been received and reviewed by GCCF." This definition of substantiation allows a claim to be received and held "under review" indefinitely by Defendant GCCF. When Defendant GCCF finally "substantiates" the claim, the claimant is told he or she

will be paid within 90 days.

10. Defendant Feinberg has misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly using the fear of costly and protracted litigation to coerce Plaintiff PMS to accept grossly inadequate settlements from Defendant GCCF. During widely-reported town hall meetings organized to promote GCCF, Defendant Feinberg repeatedly tells victims of the BP oil spill: "The litigation route in court will mean uncertainty, years of delay and a big cut for the lawyers." and "I take the position, if I don't find you eligible, no court will find you eligible."

11. Defendants Feinberg and GCCF, on their website, indicate the following in the section entitled "Frequently Asked Questions": "To be paid on a Full Review Final Payment Claim, you will have to release and waive any claims that you have or may have in the future against BP and all other potentially responsible parties with regard to the Spill or to submit any claim for payment to the National Pollution Funds Center, the Coast Guard office responsible for evaluating and approving Oil Pollution Act claims, or in court."

12. Defendants Feinberg and GCCF have misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly failing to inform them that: (a) no claimant should receive any less compensation in the GCCF claims process than they are entitled to under OPA; and (b) under OPA, the term "claim" means "a request, made in writing for a *sum certain*, for compensation for damages or removal costs resulting from an oil spill incident" and any acceptance for a lesser amount *shall not* preclude the claimant from pursuing future recovery for unrecovered amounts with the OSLTF or through litigation.

13. Defendant Feinberg, for the purpose of benefiting himself and Defendant Feinberg Rozen and limiting BP's liability, has misled Plaintiffs by fraudulently, recklessly, negligently

-4-

and/or knowingly publicly advising during well-reported town hall meetings, on a number of occasions, potential claimants that the fund which he administers is fully funded in the amount of $20 billion. At the end of 2010, the most the fund would have had in its escrow account would have been $5 billion.

14.  As of the date of the filing of this Complaint, approximately 237 days have passed since Plaintiff John Mavrogiannis presented a claim for damages to BP, on behalf of Plaintiff PMS, and 97 days have passed since Defendant GCCF allowed Plaintiff to file the GCCF claim form (GCCF 2000-C) for final payment online.

15.  This case is brought by Plaintiffs under the following causes of action: (a) Gross Negligence; (b) Negligence; (c) Negligence Per Se; (d) Fraud; (e) Fraudulent Inducement; (f) Promissory Estoppel; and (g) Unjust Enrichment.

## JURISDICTION AND VENUE

16.  This is an action for damages which exceeds fifteen thousand dollars ($15,000.00).

17.  Venue in this judicial district is proper under Florida Statute § 48.193 because the tortious acts and injuries alleged in this action were committed in Pinellas County, Florida and Defendants operate, conduct, engage in, or carry on a business or business venture in Pinellas County, Florida.

## PARTIES

18.  Plaintiff Pinellas Marine Salvage, Inc. is a close corporation organized under the laws of the State of Florida. Pinellas Marine Salvage, Inc., believed to be the only full-service marine salvage facility on the west coast of Florida serving the Gulf Coast states of Louisiana,

Mississippi, Alabama and Florida, was founded in January, 1997 by Plaintiff John Mavrogiannis for the purpose of addressing a strong market need for used and refurbished marine parts, supplies and vessels. The company's principal place of business is located in Pinellas County at 198 E. Oakwood Street, Tarpon Springs, FL 34689.

19. Plaintiff John Mavrogiannis is a resident of Pinellas County, Florida, Founder and President of Pinellas Marine Salvage, Inc.

20. Defendant Feinberg is a resident of the District of Colombia and Founder and Managing Partner of Defendant Feinberg Rozen and Founder and Administrator of Defendant GCCF.

21. Defendant Feinberg Rozen is a District of Colombia limited liability partnership with its principal place of business in Washington, D.C. and Founder of Defendant GCCF.

22. Defendant GCCF is an entity established by Defendant Feinberg and Defendant Feinberg Rozen with 13 offices located in the State of Florida including an office located in Pinellas County at 2551 Drew Street ,Suite 301, Clearwater, FL 33765.

## BACKGROUND FACTS

23. At approximately 10 p.m. on April 20, 2010, the U.S. Coast Guard District Eight command center in New Orleans, Louisiana received a report of an explosion and fire aboard the mobile offshore drilling unit Deepwater Horizon. On the morning of April 22, 2010, the Deepwater Horizon sank, resulting in a massive oil spill incident. Oil flowed into the Gulf of Mexico unchecked for months. Ultimately, the "Macondo Well" was finally sealed on September 19, 2010, nearly five months after the blowout began. By that time, millions of barrels of oil had

-6-

been discharged into the Gulf of Mexico and upon adjoining shorelines, causing immense environmental and economic harm to the entire region.

24. OPA requires BP Exploration & Production Inc. (hereinafter "BP"), as the designated "responsible party" for the Deepwater Horizon oil spill, to establish a procedure for the payment or settlement of claims for damages resulting from this oil spill incident.

25. In the initial months after this oil spill incident, BP directly received and paid interim claims arising from the oil spill. During the initial four months, BP contracted with one or more claims adjusting firms to assist in handling claims.

26. On June 16, 2010, President Obama announced that BP agreed to set aside $20 billion to pay economic damage claims to individuals and businesses affected by the Deepwater Horizon oil spill. President Obama stated, "Another important element is that this $20 billion fund will not be controlled by either BP or by the government. It will be put in a escrow account, administered by an impartial, independent third party."

27. At the request of the White House and BP, Defendant Feinberg, acting through and as Managing Partner of Defendant Feinberg Rozen, established Defendant GCCF to independently administer and where appropriate settle and authorize the payment of certain claims asserted against BP as a result of the explosion at the Deepwater Horizon rig and consequent spillage of oil into the Gulf of Mexico.

28. On August 6, 2010, BP created the Deepwater Horizon Oil Spill Trust. The Trust Agreement provides, "To secure the payment and performance of its obligations to make the contributions to the Trust hereunder, BP hereby agrees to grant, convey, and/or assign to the Trust first priority perfected security interests in production payments pertaining to BP's U.S. oil

and natural gas production."

29. The Trust Agreement further provides that BP shall contribute: (a) "THREE BILLION DOLLARS ($3,000,000,000) to the Trust on or about August 9, 2010; (b) an additional TWO BILLION DOLLARS ($2,000,000,000) to the Trust, in one or more installments, during the fourth calendar quarter of 2010 and by no later than December 31, 2010; and (c) an additional ONE BILLION TWO HUNDRED FIFTY MILLION DOLLARS ($1,250,000,000) to the Trust, in one or more installments, during and prior to the end of each calendar quarter commencing with the first calendar quarter of 2011 and continuing through the last calendar quarter of 2013."

30. On August 23, 2010, Defendant GCCF, spearheaded by Defendant Feinberg and Defendant Feinberg Rozen, replaced the original BP claims process and commenced performing BP's obligations under OPA with respect to private economic loss claims.

31. The nature of the relationship between BP and Defendant Feinberg and Defendant Feinberg Rozen has been memorialized in a written agreement between Defendant Feinberg Rozen and BP, which was negotiated over a period of several months and was finalized and executed on January 6, 2011. Section 11 of the agreement, titled "Independent Contractor; No Agency," states:

> "It is the express intention of the parties that Feinberg Rozen shall be an independent contractor throughout the Term of this Agreement. Except as otherwise agreed to by the parties, nothing in this Agreement shall in any way be construed to constitute Feinberg Rozen as an agent or representative of BP, and Feinberg Rozen shall otherwise perform the Services hereunder as an independent contractor. The execution of this Agreement shall not be construed to create an attorney-client relationship between BP and Feinberg Rozen, and the provision of Services hereunder shall not constitute, or be otherwise construed to constitute, provision of legal advice from Feinberg Rozen, or any of its partners or employees, to BP."

-8-

## I. The BP Claim Process Sequence of Events

32.  On July 3, 2010, Plaintiff John Mavrogiannis presented a claim for damages on behalf of Plaintiff PMS to BP, the responsible party. This claim included 55 pages of supporting documentation. As required by 33 U.S.C. $ 2701(3), the claim was "a request, made in writing for a sum certain, for compensation for damages resulting from an oil spill incident." BP approved the PMS claim for damages for a payment of $13,000.00 per month for 6 months.

33. On July 3, 2010, Plaintiff John Mavrogiannis received a check on behalf of Plaintiff PMS in the amount of $5,000.00. The check was issued by ESIS, Inc. on behalf of BP for an "Advance on Loss of Income."

34.  On or about August 6, 2010, Plaintiff John Mavrogiannis received a second check on behalf of PMS in the amount of $5,000.00. This second check was also issued by ESIS, Inc. on behalf of BP for an "Advance on Loss of Income."

## II. The GCCF Claim Process Sequence of Events

35.  At all times material herein, Defendants Feinberg, Feinberg Rozen and GCCF claim the protocols under which Defendant GCCF operates are structured to be compliant with OPA and apply the standards of OPA.

36.  At all times material herein, Defendant Feinberg publicly advises potential claimants that they do not need to hire a lawyer and will be much better off accepting what he offers rather than going to court.

37.  On August 23, 2010, as demanded by Defendant Feinberg and Defendant GCCF, Plaintiff John Mavrogiannis refiled, on behalf of Plaintiff PMS, the $78,000.00 claim with

Defendant GCCF. This claim was originally submitted to BP on July 3, 2010 for damages incurred by Plaintiff PMS as a result of the Deepwater Horizon oil spill incident.

38. On October 11, 2010, Plaintiff PMS, by and through its attorney, sent a letter to BP requesting payment in the amount of $68,000.00 plus accrued interest. This represents the amount due after subtracting the $10,000.00 received from BP by Plaintiff PMS from the total claim of $78,000.00. The letter stated, "It is my understanding that BP is committed to paying all legitimate claims for damages resulting from the Deepwater Horizon incident. Given that BP has already approved the PMS claim for a six-month emergency advance payment of $78,000.00, BP obviously believes that the PMS claim is legitimate."

39. On October 20, 2010, Plaintiff PMS, by and through its attorney, sent a letter to Defendant Feinberg and Defendant GCCF requesting payment in the amount of $68,000.00 plus accrued interest. The letter reminded Defendants, "As of the date of this letter, it has been 109 days since Mr. John Mavrogiannis, the president of PMS, presented a claim for damages on behalf of PMS to BP."

40. On October 22, 2010, Plaintiff PMS, through its attorney, received a telephone call from a representative of Defendant GCCF who would only identify himself as "Luke." Luke stated, "The PMS claim is deficient. Profit and Loss Statements are required for August, 2010 and September, 2010." This request for supporting documentation was made by Defendant GCCF 111 days after BP had already approved the PMS claim for a six-month emergency advance payment of $78,000.00.

41. On October 22, 2010, during the same telephone conversation with Luke, attorney for Plaintiff PMS requested approval to file an amended claim which would increase the total

claim amount from $78,000.00 to $108,000.00. Luke checked with his supervisor and said, "That should not be a problem if it is supported by documentation." Attorney for Plaintiff PMS requested that Luke send an email approving this amendment. Luke replied, "We are not allowed to receive calls from claimants or receive/send emails to claimants. If you have a question or need to follow-up, you must send an email to info@gccf-claims.com and I will try to call you within 48 hrs." Luke further informed attorney for Plaintiff PMS that "Final Payment claims would not be reviewed by GCCF until after November 23, 2010."

42.  On October 26, 2010, Plaintiff PMS, by and through its attorney, filed an amended claim with Defendant Feinberg and Defendant GCCF. This additional interim partial payment ("Emergency Advance Payment") claim included the August, 2010 Profit & Loss Statement, the September, 2010 Profit & Loss Statement, and the 2009 U.S. Income Tax Return for Plaintiff PMS. The letter stated, "Given that Form GCCF 200-SC is not applicable in this situation, PMS, pursuant to 33 U.S.C. $ 2705(a), does hereby file an additional interim partial payment ("Emergency Advance Payment") claim to increase the "Amount Claimed" of $78,000.00 for an Emergency Advance Payment for six months to the "Amount Claimed" of $108,000.00 for an Emergency Advance Payment for six months. Financial documents supporting this increase are enclosed." Plaintiff, through its attorney requested payment in the amount of $98,000.00 plus accrued interest.

43.  On October 27, 2010, November 2, 2010 and November 9, 2010, Plaintiff PMS, by and through its attorney, sent letters to Defendant Feinberg and Defendant GCCF requesting payment in the amount of $98,000.00 plus accrued interest without further delay and requesting an explanation as to why the PMS claim has been placed in the perpetual review stage.

-11-

44. On November 13, 2010, Plaintiff PMS, by and through its attorney, submitted a Final Payment Claim, in the amount of $900,000.00, to Defendant GCCF. In the submission cover letter, attorney for Plaintiff PMS states, "Unfortunately, I am unable to file a final payment claim for lost earnings or profits online via the GCCF website. When I enter the GCCF Claimant Identification Number and GCCF Password, I receive the following notice: "We cannot locate your information, please enter your Claimant Identification Number and password again. I attach the Claim Summary and Declaration (5 pages) for the final payment claim for lost earnings or profits by Pinellas Marine Salvage, Inc. I also enclose our Inventory of Documents Submitted in Support of Final payment claim (61 pages)." Pursuant to 33 U.S.C. § 2713(a), a copy of the Claim Summary and Declaration for the final payment claim for lost earnings or profits was also presented to the responsible party.

45. On November 17, 2010, Plaintiff PMS, by and through its attorney, sent a letter to Defendant Feinberg and Defendant GCCF explaining, "We were unable to file the standard GCCF Claim Form for final payment for lost earnings or profits online via the GCCF website. In lieu of the standard GCCF Claim Form, we filed a "Claim Summary and Declaration" for the final payment claim for lost earnings or profits on behalf of PMS. We also submitted sixty-one pages of documents in support of the PMS final payment claim. Pursuant to 33 U.S.C. § 2713(a), we also presented the Claim Summary and Declaration for the final payment claim for lost earnings or profits to the responsible party. The Claim Summary is the Optional OSLTF Claim Form CG NPFC-CA1 (APR 03). Accordingly, we believe GCCF will find this form to be acceptable. PMS will file the additional GCCF Claim Form (GCCF 2000-C) for final payment as soon as GCCF allows the company to do so."

-12-

46.  On November 18, 2010, Plaintiff PMS, through its attorney, received a telephone call from a representative of Defendant GCCF who would only identify herself as Michelle. Michelle stated, "There is a 'technical problem' with filing Final Payment Claims online which should be resolved in a few days."

47.  On November 18, 2010, during the same telephone conversation with Michelle, Michelle asked attorney for Plaintiff PMS "to explain how the oil spill caused a loss in profits for PMS." This request for very basic claim information was made by Defendant GCCF 138 days after BP had already approved the PMS claim for a six-month emergency advance payment of $78,000.00.

48.  On November 20, 2010, the GCCF Final Payment Claim Form was finally able to be signed and submitted online, on behalf of Plaintiff PMS, by Plaintiff John Mavrogiannis.

49.  On November 30, 2010 at 0933 hrs., attorney for Plaintiff PMS sent an email to Defendant Feinberg and Defendant GCCF notifying them that "My client, Pinellas Marine Salvage, Inc. ("PMS"), has just informed me that it no longer has the luxury of waiting for you, GCCF or GCCF's Attorney Team to respond. Obviously, the fact that I, as legal counsel for PMS, am not permitted to contact GCCF directly by phone is nothing more than a delaying tactic on your part and GCCF's part. Please be advised that you and GCCF have until 1700 hrs. on December 2, 2010 to pay the PMS EAP claim."

50.  On November 30, 2010 at 1712 hrs, a representative from GCCF who identified herself as Lorna Lightfoot calls attorney for Plaintiff PMS and asks, "Where should the check be sent?"

-13-

51.   On December 1, 2010, Plaintiff PMS, through its attorney, received a telephone call from a representative of Defendant GCCF who would only identify himself as Aaron. Aaron stated, "A check in the amount of $78,000.00 has been issued by GCCF to Pinellas Marine Salvage, Inc. Pinellas Marine Salvage, Inc. will receive the $20,000.00 claim balance in the Final Payment Claim." Plaintiff PMS relied upon Defendant GCCF's promise to pay the $20,000.00 claim balance in the Final Payment Claim and accepted Defendant GCCF's offer. Defendant GCCF paid this Emergency Advance Payment 152 days after BP had approved the claim. Defendant GCCF did not include accrued interest in this Emergency Advance Payment.

52.   On December 1, 2010, during the same telephone conversation with Aaron, Aaron informed attorney for Plaintiff PMS, "We are not allowed to receive calls from claimants or receive/send emails to claimants. If you have a question or need to follow-up, you must send an email to info@gccf-claims.com and I will try to call you within 48 hrs."

53.   On January 25, 2011, Plaintiff PMS, by and through its attorney, sent a letter to Defendant Feinberg and Defendant GCCF, stating in part, "It is my understanding that BP is committed to paying all legitimate claims for damages resulting from the Deepwater Horizon incident. Given that BP/GCCF has already paid PMS, in the amount of $88,000.00, for its six-month Emergency Advance Payment claim, BP/GCCF obviously believes that the PMS claim is legitimate. As of the date of this letter, 206 days have passed since Mr. John Mavrogiannis presented a claim for damages on behalf of PMS to BP and 66 days have passed since GCCF allowed PMS to file the GCCF Claim Form (GCCF 2000-C) for final payment online. Please forward a check representing payment of the PMS Final Payment claim to the above letterhead address, made payable to The Donovan Law Group, in the amount of $900,000.00 plus accrued

-14-

interest without further delay."

54. On January 28, 2010 and January 31, 2010, Plaintiff PMS, by and through its attorney, sent emails to Defendant Feinberg and Defendant GCCF stating the number of days that have passed since Plaintiff PMS presented a claim for damages to BP and the number of days that have passed since GCCF allowed PMS to file the GCCF Claim Form (GCCF 2000-C) for final payment online. The letter states, "PMS still prefers to resolve this matter in an amicable manner. However, time is of the essence. The economic stress that PMS continues to experience as a result of the disruption of its business activity caused by the BP oil spill is significant. Delaying payment of the PMS Final Payment claim by placing the claim "under review" for an indefinite period of time is unacceptable. Please forward a check, representing payment of the PMS Final Payment claim, in the amount of $900,000.00 plus accrued interest without further delay."

55. On January 31, 2011, Plaintiff PMS, through its attorney, received a telephone call from a representative of Defendant GCCF who would only identify herself as Michelle. Michelle explained, "Claims will be paid within 90 days after substantiation. Substantiation means "the claim has been received and reviewed by GCCF." When asked if this definition of substantiation allows a claim to be received and held "under review" indefinitely by GCCF, Michelle responded that, "The Pinellas Marine Salvage claim is being reviewed now. GCCF has not started the 90-day clock. But it *probably* won't take another full 90 days."

56. On January 31, 2011, Plaintiff PMS, through its attorney, received a letter, dated January 26, 2011, from Defendant Feinberg and Defendant GCCF stating in part, "The GCCF is currently developing a formula for calculations of future damages to be used in assessing Final

-15-

Payment Claims. In the next few weeks, the GCCF will make a final determination regarding its methodology for the calculation of future damages. During this period of consultation and evaluation, the GCCF will not be issuing any Final Payment Offers. Final Payment Claims will be reviewed, on a rolling basis, in the order in which the final payment claims were received by the Facility. If the GCCF determines that your claim requires additional information or documentation you will be contacted and notified of the specific missing documentation that you must provide." As of the date of receipt of this letter, *212 days* had passed since Plaintiff John Mavrogiannis presented a claim for damages on behalf of PMS to BP and 72 days had passed since Defendant GCCF allowed PMS to file the GCCF Claim Form (GCCF 2000-C) for final payment online.

57.  On February 3, 2011, Plaintiff PMS, through its attorney, received a letter, dated January 31, 2011, from Defendant Feinberg and Defendant GCCF. The letter stated in part, " In order for the GCCF to accurately determine your total damages for all of 2010, if you have not already done so, you must submit documents reflecting your gross earnings as an Individual Claimant or your total revenues and expenses as a Business Claimant from May 1, 2010, through December 31, 2010, or documents proving that you did not receive income or earn revenue for any part of that period. Incomplete records will delay the review of your claim, will affect the damages calculation, and may cause your claim to be denied." As of the date of receipt of this letter, *215 days* have passed since Plaintiff John Mavrogiannis presented a claim for damages on behalf of PMS to BP and 75 days have passed since GCCF allowed PMS to file the GCCF Claim Form (GCCF 2000-C) for final payment online.

-16-

58. On February 4, 2011, Plaintiff PMS, by and through its attorney, sent a letter to Defendant Feinberg and Defendant GCCF stating, "As per your request, a copy of the November, 2010 P&L Statement and a copy of the December, 2010 P&L Statement for Pinellas Marine Salvage, Inc. are enclosed."

59. On February 14, 2011, Plaintiff PMS, by and through its attorney, sent a letter to Defendant Feinberg and Defendant GCCF stating in part, "As of the date of this letter, 226 days have passed since PMS presented a claim for damages to BP and 86 days have passed since GCCF allowed PMS to file the GCCF claim form (GCCF 2000-C) for final payment online. Delaying payment of the PMS final payment claim by placing the claim "under review" for an indefinite period of time is unacceptable. Moreover, the fact that I, as legal counsel for PMS, am not permitted to contact GCCF directly by phone can only be interpreted as a delaying tactic on your part and GCCF's part. Please forward a check representing payment of the PMS final payment claim to the above letterhead address, made payable to The Donovan Law Group, in the amount of $900,000.00 plus accrued interest without further delay."

60. On February 17, 2011, attorney for Plaintiff PMS sent an email to Defendant Feinberg and Defendant GCCF stating, "As of the date of this email, 229 days have passed since Pinellas Marine Salvage, Inc. (PMS) presented a claim for damages to BP and 89 days have passed since GCCF allowed PMS to file the GCCF claim form (GCCF 2000-C) for final payment online. Mr. John Mavrogiannis, the president of PMS, has informed me that he no longer has the luxury of waiting for you to respond. Please be advised that you and GCCF have until 1200 hrs. on February 22, 2011 to pay the PMS final payment claim."

-17-

61. On February 24, 2011, at 1428 hrs., Plaintiff John Mavrogiannis received a telephone call directly from a representative of Defendant GCCF who knew or should have known that Plaintiff PMS was represented by legal counsel. Plaintiff John Mavrogiannis did not answer the call.

62. On February 24, 2011, at 1429 hrs., Plaintiff PMS, through its attorney received a telephone call from a representative of Defendant GCCF who would only identify herself as Michelle. Michelle stated that she was merely calling to confirm that the Final Payment claim which was submitted by Plaintiff John Mavrogiannis, on behalf of Plaintiff PMS, is "under review."

63. On February 24, 2011, during the same telephone conversation, Michelle confirmed, "Claims will be paid within 90 days after substantiation. Substantiation means "the claim has been received and reviewed by GCCF." When asked if this definition of substantiation allows a claim to be received and held "under review" indefinitely by GCCF, Michelle responded that, "The Pinellas Marine Salvage claim is being reviewed now. GCCF has not started the 90-day clock. But it *shouldn't* take another full 90 days."

### III. Defendants, Without Any Legal Authority For Doing So, Circumvent Many of the Rights Provided to Plaintiffs Under OPA

64. Plaintiffs, Pinellas Marine Salvage, Inc. and John Mavrogiannis, refer to and incorporate by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

65. At all times material herein, Defendant Feinberg publicly advises potential claimants

-18-

that they do not need to hire a lawyer and will be much better off accepting what he offers rather than going to court.

66. At all times material herein, Defendants Feinberg, Feinberg Rozen and GCCF claim the protocols under which Defendant GCCF operates are structured to be compliant with OPA and apply the standards of OPA.

67. Defendant Feinberg, for the purpose of benefiting himself and Defendant Feinberg Rozen and limiting BP's liability, has misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly publicly advising during well-reported town hall meetings, on a number of occasions, potential claimants that they do not need to hire a lawyer and will be much better off accepting what he offers rather than going to court.

68. All Defendants herein, for the purpose of benefiting themselves and limiting BP's liability, have misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly stating the protocol under which Defendant GCCF operates is structured to be compliant with OPA and apply the standards of OPA.

### A. Proximate Causation

69. Defendant GCCF's Protocol states, "The GCCF will only pay for harm or damage that is proximately caused by the Spill. The GCCF will take into account, among other things, geographic proximity, nature of industry, and dependence upon injured natural resources."

70. OPA is a strict liability statute. In order to recover damages, a claimant merely needs to show that his or her damages "resulted from" the oil spill. OPA states, "The responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a

-19-

discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages *that result from* such incident." See 33 U.S.C. § 2702(a)

71. All Defendants herein have misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly requiring that a claimant has the increased burden of proving "proximate causation" between his or her damages and the Deepwater Horizon oil spill incident.

72. All Defendants herein have misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly paying for damages based on geographic proximity and nature of industry.

### B. Single Emergency Advance Payment

73. Defendant GCCF's Protocol provides, "Emergency Advance Payment applications may be submitted during the period August 23 – November 23, 2010. After that date, applications for Emergency Advance Payments will no longer be accepted."

74. A single six-month emergency advance payment for lost income is in violation of OPA. Moreover, the lack of a procedure for the payment or settlement of claims for interim, short-term damages beyond 90 days, as required by 33 U.S.C. § 2705, is also in violation of OPA.

75. OPA specifically provides for interim partial payments. "The responsible party shall establish a procedure for the payment or settlement of claims for interim, short-term damages. Payment or settlement of a claim for interim, short-term damages representing less than the full amount of damages to which the claimant ultimately may be entitled *shall* not preclude recovery by the claimant for damages not reflected in the paid or settled partial claim." See 33 U.S.C. § 2705(a).

-20-

76. The fact that a single payment does not preclude recovery by the claimant for future damages demonstrates that the legislative intent of Congress was for the responsible party to pay a series of partial claims in order to ensure that victims of the oil spill are fully compensated. Each of these partial claims would be paid after the date on which the claimant discovers damages resulting from the oil spill.

77. All Defendants herein have misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly offering Plaintiffs a single six-month emergency advance payment for lost income or profits.

78. All Defendants herein have misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly failing to provide a procedure for the payment or settlement of claims for interim, short-term damages beyond 90 days.

## C. Single Final Settlement

79. Defendant GCCF's Protocol, in violation of OPA, provides for a single final settlement payment.

80. OPA provides: (a) "Payment or settlement of a claim for interim, short-term damages representing less than the full amount of damages to which the claimant ultimately may be entitled *shall* not preclude recovery by the claimant for damages not reflected in the paid or settled partial claim." See 33 U.S.C. § 2705(a); and (b) Any person, including the [Oil Spill Liability Trust] Fund, who pays compensation pursuant to OPA to any claimant for damages shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law. Moreover, payment of such a claim *shall not* foreclose a claimant's right to recovery

-21-

of all damages to which the claimant otherwise is entitled under OPA or under any other law.
See 33 U.S.C. § 2715(b)(2)

81.  All Defendants herein have misled Plaintiffs by fraudulently, recklessly, negligently
and/or knowingly offering Plaintiffs a single final settlement payment.

### D. Period of Limitations

82.  Defendants fraudulently, recklessly, negligently and/or knowingly have misled
Plaintiffs by stating that no claim may be submitted to the GCCF "more than three years after the
date the Protocol becomes operative."

83.  Under OPA, an action for damages shall be barred unless the action is brought within
three years after the date on which the loss and the connection of the loss with the discharge in
question are reasonably discoverable with the exercise of due care. 33 U.S.C. § 2717(f)(1)(A)

84.  The damages suffered by Plaintiffs and other victims of this oil spill will be
enormous and on-going. The livelihoods of all persons whose businesses rely on the natural
resources of the Gulf Coast are at risk. Recreational deep sea fishing boat operators, commercial
fishermen, oyster harvesters, shrimpers, and  businesses involved, directly or indirectly, in
processing and packaging for the seafood industry will experience the end of a way of life that,
in many cases, has been passed down from one generation to the next.

85.  It is too early for Plaintiffs to calculate their economic damages. Defendants' "take it
or leave it" Period of Limitations and the final settlement offer are unconscionable, requiring the
financially-stressed Plaintiffs to file a claim before Plaintiffs know, and are able to corroborate,
the full extent of the damages incurred as a result of the oil spill.

## E. Intentionally Misleading Claims Procedure

86.  Under OPA, claims for damages must be presented first to the responsible party. 33 U.S.C. § 2713(a). The term "claim" means "a request, made in writing for a sum certain, for compensation for damages or removal costs resulting from an oil spill incident." 33 U.S.C. § 2701(3) In the event that a claim for damages is not paid by the responsible party within 90 days, the claimant may elect to commence an action in court against the responsible party or to present the claim to the Oil Spill Liability Trust Fund. 33 U.S.C. § 2713(c)

87.  Defendants fraudulently, recklessly, negligently and/or knowingly failed to inform Plaintiffs that in the event that a claim for damages is not paid by Defendant GCCF within 90 days, Plaintiffs may elect to commence an action in court against the responsible party or to present the claim to the OSLTF.

88.  Defendants fraudulently, recklessly, negligently and/or knowingly: (a) failed to acknowledge that the filing of a claim with GCCF satisfies 33 U.S.C. § 2713(a); and (b) failed to inform Plaintiffs as to when the 90-day OPA period for payment starts. Defendants' Protocol vaguely states, "Whether or not a claim has been presented shall be governed by OPA and applicable law."

89.  Moreover, Defendants required Plaintiff PMS, who had a pending claim with BP, to refile its claim with Defendant GCCF on a new 18-page claim form. Defendants fraudulently, recklessly, negligently and/or knowingly did not advise Plaintiff PMS that its refiling would restart the 90-day OPA period.

90.  Defendants fraudulently, recklessly, negligently and/or knowingly did not advise Plaintiff what would happen if Plaintiff failed to refile its claim.

91. Defendants fraudulently, recklessly, negligently and/or knowingly have misled Plaintiffs through the employment of an intentionally misleading and constantly changing claim process.

## F. Interest on the Amount Paid

92. Under OPA, 33 U.S.C. § 2705(a), the responsible party or the responsible party's guarantor is liable to a claimant for interest on the amount paid in satisfaction of a claim. The period for which interest shall be paid is the period beginning on the 30th day following the date on which the claim is presented to the responsible party or guarantor and ending on the date on which the claim is paid.

93. All Defendants herein fraudulently, recklessly, negligently and/or knowingly, in violation of OPA, misled Plaintiffs by failing to pay interest on the amount paid in satisfaction of the claim of Plaintiff PMS.

## G. Waiver of Right to Sue

94. OPA defines a "claim" as "a request, made in writing, *for a sum certain*, for compensation for damages or removal costs resulting from an incident." 33 U.S.C. § 2701(3)

95. OPA further provides: (a) "Payment or settlement of a claim for interim, short-term damages representing less than the full amount of damages to which the claimant ultimately may be entitled *shall not* preclude recovery by the claimant for damages not reflected in the paid or settled partial claim." 33 U.S.C. § 2705(a); and (b) Any person, including the [Oil Spill Liability Trust] Fund, who pays compensation pursuant to OPA to any claimant for damages shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law.

-24-

Moreover, payment of such a claim *shall not* foreclose a claimant's right to recovery of all damages to which the claimant otherwise is entitled under OPA or under any other law. 33 U.S.C. § 2715(b)(2).

96. Defendants Feinberg and GCCF, on their website, indicate the following in the section entitled "Frequently Asked Questions": "To be paid on a Full Review Final Payment Claim, you will have to release and waive any claims that you have or may have in the future against BP and all other potentially responsible parties with regard to the Spill or to submit any claim for payment to the National Pollution Funds Center, the Coast Guard office responsible for evaluating and approving Oil Pollution Act claims, or in court."

97. Defendants Feinberg and GCCF have misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly failing to inform them that: (a) no claimant should receive any less compensation in the GCCF claims process than they are entitled to under the OPA; and (b) under OPA, the term "claim" means "a request, made in writing for a *sum certain*, for compensation for damages or removal costs resulting from an oil spill incident" and any acceptance for a lesser amount *shall not* preclude the claimant from pursuing future recovery for unrecovered amounts with the OSLTF or through litigation.

### H. The Intentional and Systematic Delay of Payment of Legitimate Claims

98. Under OPA, claims for damages must be presented first to the responsible party. In the event that a claim for damages is either denied or not paid by the responsible party within 90 days, the claimant may elect to commence an action in court against the responsible party or to present the claim to the OSLTF.

-25-

99.  All Defendants herein have misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly delaying payment by telling Plaintiffs "claims will be paid within 90 days after substantiation." Unbeknownst to Plaintiffs and most claimants, according to Defendant GCCF, substantiation means "the claim has been received and reviewed by GCCF." This definition of substantiation allows a claim to be received and held "under review" indefinitely by Defendant GCCF. When Defendant GCCF finally "substantiates" the claim, the claimant is told he or she will be paid within 90 days.

100.  All Defendants herein have misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly delaying payment by prohibiting Plaintiffs, and attorney for Plaintiffs, from directly telephoning or emailing Defendant GCCF's representative/claim adjusters assigned to the claims of Plaintiff PMS. Defendant GCCF's representative/claim adjusters assigned to the claims of Plaintiff PMS have been ordered by Defendants to tell Plaintiffs, and attorney for Plaintiffs, "We are not allowed to receive calls from claimants or receive/send emails to claimants. If you have a question or need to follow-up, you must send an email to info@gccf-claims.com and I will try to call you within 48 hrs." Defendant GCCF's representative/claim adjusters fail to mention that if a claimant is not available to receive the call, he or she is "out of luck."

### IV. Use of the Fear of Costly and Protracted Litigation to Coerce Plaintiffs

101.  At all times material herein, Defendants Feinberg, Feinberg Rozen and GCCF claim the protocols under which Defendant GCCF operates are structured to be compliant with OPA and apply the standards of OPA.

-26-

102.  At all times material herein, Defendant Feinberg publicly advises potential claimants that they do not need to hire a lawyer and will be much better off accepting what he offers rather than going to court.

103.  Defendant Feinberg has misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly using the fear of costly and protracted litigation to coerce Plaintiffs to accept grossly inadequate settlements from Defendant GCCF.  During widely-reported town hall meetings organized to promote GCCF, Defendant Feinberg repeatedly tells victims of the BP oil spill:

(a) "The litigation route in court will mean uncertainty, years of delay and a big cut for the lawyers;"

(b) "I am determined to come up with a system that will be more generous, more beneficial, than if you go and file a lawsuit;"

(c) "It is not in your interest to tie up you and the courts in years of uncertain protracted litigation when there is an alternative that has been created;" and

(d) "I take the position, if I don't find you eligible, no court will find you eligible."

104.  Defendant Feinberg has misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly failing to affirmatively state that punitive damages (and/or additional damages), which may be available in litigation, are not being recognized or paid by Defendant GCCF.

## V. The Deepwater Horizon Oil Spill Trust Fund

105.  At all times material herein, Defendant Feinberg has referred to the Deepwater Horizon Oil Spill Trust Fund as the "$20 Billion Fund."

-27-

106. The Trust Agreement for the Deepwater Horizon Oil Spill Trust Fund provides that BP shall contribute $5 billion in 2010, $5 billion in 2011, $5 billion in 2012 and $5 billion in 2013. The Trust Agreement further provides, "To secure the payment and performance of its obligations to make the contributions to the Trust hereunder, BP hereby agrees to grant, convey, and/or assign to the Trust first priority perfected security interests in production payments pertaining to BP's U.S. oil and natural gas production."

107. The fact that future production payments pertaining to BP's U.S. oil and natural gas production, rather than hard U.S. assets, are being used as collateral by BP means that the "$20 Billion Fund" does not currently exist and that there is no guarantee that BP will contribute $20 billion to the Fund by the end of 2013.

108. Defendant Feinberg, for the purpose of benefiting himself and Defendant Feinberg Rozen and limiting BP's liability, has misled Plaintiffs by fraudulently, recklessly, negligently and/or knowingly publicly advising during well-reported town hall meetings, on a number of occasions, potential claimants that the fund which he administers is fully funded in the amount of $20 billion. At the end of 2010, the most the fund would have had in its escrow account would have been $5 billion.

## COUNT I
## GROSS NEGLIGENCE

109. Plaintiffs, Pinellas Marine Salvage, Inc. and John Mavrogiannis, refer to and incorporate by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

-28-

110. Defendants owed a duty to Plaintiffs to exercise reasonable care in regard to the operation of Defendant GCCF's claim intake, claim review, claim evaluation and claim settlement and payment services.

111. Defendants had a heightened duty of care to Plaintiffs because of the unprecedented environmental and economic harm resulting from the millions of barrels of oil that had been discharged into the Gulf of Mexico and upon adjoining shorelines by the Deepwater Horizon oil spill incident. The damages suffered by Plaintiffs and other victims of this oil spill incident will be enormous and on-going. The livelihoods of all persons, including Plaintiffs, whose businesses rely on the natural resources of the Gulf Coast are at risk. Recreational deep sea fishing boat operators, commercial fishermen, oyster harvesters, shrimpers, and businesses involved, directly or indirectly, in processing and packaging for the seafood industry will experience the end of a way of life that, in many cases, has been passed down from one generation to the next.

112. Defendants breached their legal duty to Plaintiffs, failed to exercise reasonable care, and acted with reckless, willful, and wanton disregard for the business and livelihood of Plaintiffs in their negligent operation of Defendant GCCF's claim intake, claim review, claim evaluation and claim settlement and payment services in the following manner:

(1) Inadequate Claim Processing - On August 23, 2010, Defendant GCCF failed to verify the claim which Plaintiff PMS had filed with BP on July 3, 2010. Defendant GCCF failed to properly receive the file of Plaintiff PMS from its predecessor, BP Claims Processing.

(2) Inadequate Claim Investigation - Defendant GCCF failed to even investigate the claim which Plaintiff PMS refiled with GCCF on August 23, 2010. Defendant GCCF failed to appraise the amount of loss claimed by Plaintiff PMS.

-29-

(3) Delay in Payment - Defendant GCCF employed a "Delay, Deny, Defend" strategy against Plaintiffs by delaying payment in the following manner:

(a) Defendant GCCF required Plaintiff PMS, who had already submitted an EAP claim to BP, the responsible party, to resubmit its EAP claim to Defendant GCCF, and wait at least *another* 90 days for Defendant GCCF to not pay its claim before Plaintiff could commence an action in court against the responsible party or could present the claim to the OSLTF;

(b) Defendant GCCF required Plaintiff PMS, who had already resubmitted an EAP claim, to submit a Final Payment claim to Defendant GCCF and wait at least *another* 90 days for Defendant GCCF to not pay its claim before Plaintiff could commence an action in court against the responsible party or could present the claim to the OSLTF; and

(c) Defendant GCCF told Plaintiffs "claims will be paid within 90 days after substantiation." Unbeknownst to Plaintiffs and most claimants, according to Defendant GCCF, substantiation means "the claim has been received and reviewed by GCCF." This definition of substantiation allows a claim to be received and held "under review" indefinitely by Defendant GCCF. When Defendant GCCF finally "substantiates" the claim, the claimant is told he or she will be paid within 90 days.

113. As of the date of the filing of this Complaint, approximately 237 days have passed since Plaintiff John Mavrogiannis presented a claim for damages to BP, on behalf of Plaintiff PMS, and 97 days have passed since Defendant GCCF allowed Plaintiff to file the GCCF claim form (GCCF 2000-C) for final payment online.

(4) Unreasonable Denial of Claim - In this case, payment delayed is payment denied. When Defendant GCCF denies a claim, it sends the following boilerplate denial letter, which

-30-

violates OPA, stating that the claimant's request payment has been denied for the following

reasons:

> "In determining eligibility, the GCCF applies the same factors to every claim. The GCCF takes into account evidence of the connection between the asserted loss and the Spill, the nature of the claimant's job or business, and the extent to which the claimant's job or business is dependent upon injured property or natural resources. In weighing these factors, the GCCF has determined that you did not demonstrate that you lost profits or income as a direct result of the Spill."

114. Defendants knew or should have known that their wanton or reckless conduct

would foreseeably result in the financial ruin of Plaintiff PMS, thereby causing irreversible

damage to the health and the economic interests of Plaintiff John Mavrogiannis.

115. As a direct and proximate result of Defendants' wanton or reckless conduct,

Plaintiffs have suffered legal injury and damages, in an amount to be proven at trial, including,

but not limited to, loss of profit, loss of business reputation, loss of livelihood, loss of income,

and other economic loss.

116. Defendants' wanton or reckless conduct, as described herein, constitutes such a

conscious disregard or indifference to the rights of Plaintiff PMS and the rights and life of

Plaintiff John Mavrogiannis that it entitles Plaintiffs to punitive damages.

### COUNT II
### NEGLIGENCE

117. Plaintiffs, Pinellas Marine Salvage, Inc. and John Mavrogiannis, refer to and

incorporate by reference as though fully set forth herein each and every foregoing paragraph of

this Complaint.

118. Defendants owed a duty to Plaintiffs to exercise reasonable care in regard to the operation of Defendant GCCF's claim intake, claim review, claim evaluation and claim settlement and payment services.

119. Defendants knew or should have known that their conduct would foreseeably result in the financial ruin of Plaintiff PMS.

120. Defendants knew or should have known that their conduct would foreseeably cause irreversible damage to the health and the economic interests of Plaintiff John Mavrogiannis.

121. Defendants breached their legal duty to Plaintiffs and failed to exercise reasonable care in the following manner:

(1) Inadequate Claim Processing - On August 23, 2010, Defendant GCCF failed to verify the claim which Plaintiff PMS had filed with BP on July 3, 2010. Defendant GCCF failed to properly receive the file of Plaintiff PMS from its predecessor, BP Claims Processing.

(2) Inadequate Claim Investigation - Defendant GCCF failed to even investigate the claim which Plaintiff PMS refiled with GCCF on August 23, 2010. Defendant GCCF failed to appraise the amount of loss claimed by Plaintiff PMS.

(3) Delay in Payment - Defendant GCCF employed a "Delay, Deny, Defend" strategy against Plaintiffs by delaying payment in the following manner:

(a) Defendant GCCF required Plaintiff PMS, who had already submitted an EAP claim to BP, the responsible party, to resubmit its EAP claim to Defendant GCCF, and wait at least *another* 90 days for Defendant GCCF to not pay its claim before Plaintiff could commence an action in court against the responsible party or could present the claim to the OSLTF;

(b) Defendant GCCF required Plaintiff PMS, who had already resubmitted an EAP claim, to

-32-

submit a Final Payment claim to Defendant GCCF and wait at least *another* 90 days for

Defendant GCCF to not pay its claim before Plaintiff could commence an action in court against

the responsible party or could present the claim to the OSLTF; and

(c) Defendant GCCF told Plaintiffs "claims will be paid within 90 days after substantiation."

Unbeknownst to Plaintiffs and most claimants, according to Defendant GCCF, substantiation

means "the claim has been received and reviewed by GCCF." This definition of substantiation

allows a claim to be received and held "under review" indefinitely by Defendant GCCF. When

Defendant GCCF finally "substantiates" the claim, the claimant is told he or she will be paid

within 90 days.

    122. As of the date of the filing of this Complaint, approximately 237 days have passed

since Plaintiff John Mavrogiannis presented a claim for damages to BP, on behalf of Plaintiff

PMS, and 97 days have passed since Defendant GCCF allowed Plaintiff to file the GCCF claim

form (GCCF 2000-C) for final payment online.

(4) Unreasonable Denial of Claim - In this case, payment delayed is payment denied.

When Defendant GCCF denies a claim, it sends the following boilerplate denial letter, which

is in complete violation of OPA, stating that the claimant's request payment has been denied for

the following reasons:

> "In determining eligibility, the GCCF applies the same factors to every claim. The GCCF
> takes into account evidence of the connection between the asserted loss and the Spill, the
> nature of the claimant's job or business, and the extent to which the claimant's job or
> business is dependent upon injured property or natural resources. In weighing these
> factors, the GCCF has determined that you did not demonstrate that you lost profits or
> income as a direct result of the Spill."

123.  As a direct and proximate result of Defendants' negligent conduct, Plaintiffs have suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to, loss of profit, loss of business reputation, loss of livelihood, loss of income, and other health and economic loss.

124.  Defendants are further liable under the doctrine of *res ipsa loquitor* because the loss of profit, loss of business reputation, loss of livelihood, loss of income, and other health and economic loss by Plaintiffs could not have occurred in the absence of the negligence of Defendants.

## COUNT III
## NEGLIGENCE PER SE

125.  Plaintiffs, Pinellas Marine Salvage, Inc. and John Mavrogiannis, refer to and incorporate by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

126.  Defendants' conduct with regard to the operation of Defendant GCCF's claim intake, claim review, claim evaluation and claim settlement and payment services is governed by the Oil Pollution Act of 1990.

127.  The Oil Pollution Act of 1990 creates statutory standards that are intended to protect and benefit Plaintiffs.

128.  Defendants' violations of these statutory standards constitute negligence *per se* under Florida law.

129.  Defendants' violations of these statutory standards proximately caused Plaintiffs' injuries, warranting compensatory and punitive damages.

-34-

## COUNT IV
## FRAUD

130. Plaintiffs, Pinellas Marine Salvage, Inc. and John Mavrogiannis, refer to and incorporate by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

131. Defendants, knowing the representations were false at the time the representations were made, made the following false representations of fact to Plaintiffs:

(1) The protocol under which Defendant GCCF operates is structured to be compliant with OPA and apply the standards of OPA;

(2) "Each Emergency Advance Payment application will be evaluated preliminarily within 24 hours of receipt of the completed form and supporting documentation to determine whether an Emergency Advance Payment is appropriate based on the information submitted by the Claimant;"

(3) "Complex business claims submitted for an Emergency Advance Payment will be evaluated preliminarily within 7 days of receipt of the completed form and supporting documentation to determine whether an Emergency Advance Payment is appropriate based on the information submitted by the Claimant;"

(4) "Upon a determination that the Claimant is eligible for an Emergency Advance Payment, a payment will be authorized within 24 hours;"

(5) Plaintiff's claims will be paid within 90 days after "substantiation;"

(6) Potential claimants do not need to hire a lawyer and will be much better off accepting what Defendant Feinberg offers rather than going to court;

-35-

(7) "The litigation route in court will mean uncertainty, years of delay and a big cut for the

lawyers;"

(8) "I am determined to come up with a system that will be more generous, more beneficial, than

if you go and file a lawsuit;"

(9) "It is not in your interest to tie up you and the courts in years of uncertain protracted litigation

when there is an alternative that has been created;"

(10) "I take the position, if I don't find you eligible, no court will find you eligible;" and

(11) Defendants referred to the Deepwater Horizon Oil Spill Trust Fund as the "$20 Billion

Fund." At the end of 2010, the most the fund would have had in its escrow account would

have been $5 billion.

132.  Defendants made these false representations for the purpose of inducing Plaintiffs

to act in reliance on the false representations.

133.  Plaintiffs relied on Defendants' representations rather than elect to commence an

action in court against the responsible party or to present the claim to the OSLTF.

134.  Plaintiffs reliance, which was reasonable and foreseeable, resulted in the following

damage to Plaintiffs: Plaintiffs have suffered legal injury and damages, in an amount to be

proven at trial, including, but not limited to, loss of profit, loss of business reputation, loss of

livelihood, loss of income, and other health and economic loss.

## COUNT V
## FRAUDULENT INDUCEMENT

135.  Plaintiffs, Pinellas Marine Salvage, Inc. and John Mavrogiannis, refer to and

incorporate by reference as though fully set forth herein each and every foregoing paragraph of

this Complaint.

136. Defendants made the following false statements of material fact to Plaintiffs:

(1) The protocol under which Defendant GCCF operates is structured to be compliant with OPA and apply the standards of OPA;

(2) "Each Emergency Advance Payment application will be evaluated preliminarily within 24 hours of receipt of the completed form and supporting documentation to determine whether an Emergency Advance Payment is appropriate based on the information submitted by the Claimant;"

(3) "Complex business claims submitted for an Emergency Advance Payment will be evaluated preliminarily within 7 days of receipt of the completed form and supporting documentation to determine whether an Emergency Advance Payment is appropriate based on the information submitted by the Claimant;"

(4) "Upon a determination that the Claimant is eligible for an Emergency Advance Payment, a payment will be authorized within 24 hours;"

(5) Claims will be paid within 90 days after "substantiation;"

(6) Potential claimants do not need to hire a lawyer and will be much better off accepting what Defendant Feinberg offers rather than going to court;

(7) "The litigation route in court will mean uncertainty, years of delay and a big cut for the lawyers;"

(8) "I am determined to come up with a system that will be more generous, more beneficial, than if you go and file a lawsuit;"

(9) "It is not in your interest to tie up you and the courts in years of uncertain protracted litigation

-37-

when there is an alternative that has been created;"

(10) "I take the position, if I don't find you eligible, no court will find you eligible;"

(11) Defendants referred to the Deepwater Horizon Oil Spill Trust Fund as the "$20 Billion Fund." At the end of 2010, the most the fund would have had in its escrow account would have been $5 billion.

(12) On December 1, 2010, Plaintiff PMS, through its attorney, received a telephone call from a representative of Defendant GCCF who would only identify himself as Aaron. Aaron stated, "A check in the amount of $78,000.00 has been issued by GCCF to Pinellas Marine Salvage, Inc. Pinellas Marine Salvage, Inc. will receive the $20,000.00 claim balance in the Final Payment Claim." Plaintiff PMS relied upon Defendant GCCF's promise to pay the $20,000.00 claim balance in the Final Payment Claim and accepted Defendant GCCF's offer. Defendant GCCF paid this Emergency Advance Payment 152 days after BP had approved the claim. Defendant GCCF did not include accrued interest in this Emergency Advance Payment.

137. Defendant GCCF knew or should have known these statements were false.

138. Defendants made these false statements of material fact for the purpose of inducing Plaintiff PMS to enter into a settlement agreement with Defendant GCCF.

139. Plaintiff PMS justifiably relied upon these false statements of material fact.

140. Reliance on these false statements of material fact did, in fact, induce Plaintiff PMS to enter into an Emergency Advance Payment settlement with Defendant GCCF that proximately caused the following injury to Plaintiffs: Due to the fact that Defendant GCCF, after approximately 237 days have passed since Plaintiff John Mavrogiannis presented a claim for damages to BP, on behalf of Plaintiff PMS, still has not made the promised Final Payment

-38-

settlement offer to Plaintiff PMS, Plaintiffs have suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to, loss of profit, loss of business reputation, loss of livelihood, loss of income, and other health and economic loss.

## COUNT VI
## PROMISSORY ESTOPPEL

141.  Plaintiffs, Pinellas Marine Salvage, Inc. and John Mavrogiannis, refer to and incorporate by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

142.  Defendants made the following representations as to material facts that are contrary to Defendants' current representations:

(1) On or about August 23, 2010, Defendant GCCF, on its website, stated, "Each Emergency Advance Payment application will be evaluated preliminarily within 24 hours of receipt of the completed form and supporting documentation to determine whether an Emergency Advance Payment is appropriate based on the information submitted by the Claimant;"

(2) On or about August 23, 2010, Defendant GCCF, on its website, stated, "Complex business claims submitted for an Emergency Advance Payment will be evaluated preliminarily within 7 days of receipt of the completed form and supporting documentation to determine whether an Emergency Advance Payment is appropriate based on the information submitted by the Claimant;"

(3) On or about August 23, 2010, Defendant GCCF, on its website, stated, "Upon a determination that the Claimant is eligible for an Emergency Advance Payment, a payment will be authorized within 24 hours;"

-39-

(4) Currently Defendant GCCF states, "Claims will be paid within 90 days after substantiation." According to Defendant GCCF, substantiation means "the claim has been received and reviewed by GCCF." This definition of substantiation allows a claim to be received and held "under review" indefinitely by Defendant GCCF. When Defendant GCCF finally "substantiates" the claim, the claimant is told he or she will be paid within 90 days.

143. Plaintiff PMS reasonably relied on Defendants' representation that its claim would be paid in a timely manner.

144. This reasonable reliance of Plaintiff PMS on Defendants' representation proximately caused the following injury to Plaintiffs: Due to the fact that Defendant GCCF, after approximately 237 days have passed since Plaintiff John Mavrogiannis presented a claim for damages to BP, on behalf of Plaintiff PMS, still has not made the promised Final Payment settlement offer to Plaintiff PMS, Plaintiffs have suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to, loss of profit, loss of business reputation, loss of livelihood, loss of income, and other health and economic loss.

## COUNT VII
## UNJUST ENRICHMENT

145. Plaintiffs, Pinellas Marine Salvage, Inc. and John Mavrogiannis, refer to and incorporate by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

146. As of the date of the filing of this Complaint, due to Defendants' intentional and systematic delay of payment of legitimate claims, approximately 237 days have passed since Plaintiff John Mavrogiannis presented a claim for damages to BP, on behalf of Plaintiff

PMS, and 97 days have passed since Defendant GCCF allowed Plaintiff to file the GCCF claim form (GCCF 2000-C) for final payment online.

147. At all times material herein, Defendants Feinberg, Feinberg Rozen and GCCF claim the protocols under which Defendant GCCF operates are structured to be compliant with OPA and apply the standards of OPA.

148. Pursuant to OPA, 33 U.S.C. § 2705(a), the responsible party or the responsible party's guarantor is liable to a claimant for interest on the amount paid in satisfaction of a claim. The period for which interest shall be paid is the period beginning on the 30th day following the date on which the claim is presented to the responsible party or guarantor and ending on the date on which the claim is paid.

149. Defendants have been enriched by delaying the payment of the legitimate claim of Plaintiff PMS and by not paying the statutorily-mandated interest on the amount paid in satisfaction of the Emergency Advance Payment claim of Plaintiff PMS.

150. Defendants' delay of payment and intentional refusal to pay interest on the amount paid in satisfaction of the claim of Plaintiff PMS have allowed Defendants to save thousands of dollars in costs.

151. As a result of limiting BP's liability by delaying payment and by not paying interest on the amount paid in satisfaction of the claim of Plaintiff PMS, Defendant Feinberg and Defendant Feinberg Rozen were enriched by BP by receiving a monthly payment for services which did not rise to the standards expected of their profession.

152. Plaintiffs have suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to, loss of profit, loss of business reputation, loss of livelihood, loss of

-41-

income, and other health and economic loss due to Defendants' delay of payment and intentional refusal to pay interest on the amount paid in satisfaction of the claim of Plaintiff PMS.

153. Defendants lack any legal justification for violating the rights provided to Plaintiffs under OPA.

154. Under the circumstances described herein it would be inequitable for Defendants to retain the benefits of their actions without paying the value thereof to Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Pinellas Marine Salvage, Inc. and John Mavrogiannis, demand judgment against Defendants, jointly and severally, as follows:

(a) Economic and compensatory damages in amounts to be determined at trial;

(b) Punitive damages;

(c) Pre-judgment and post-judgment interest at the maximum rate allowable by law;

(d) Attorney's fees and costs of litigation;

(e) Such other and further relief as the Court may deem just and appropriate; and

(f) A trial by jury as to all Defendants on all issues so triable..

DATED: February 25, 2011

Respectfully submitted,

Brian J. Donovan
Attorney for Plaintiffs
Florida Bar No. 143900
3102 Seaway Court, Suite 304
Tampa, FL 33629
Tel: (352)328-7469

-42-