**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

SELMER M. SALVESEN

       Plaintiff,                                Case No.  2:11-cv-00375-JES-SPC

v.

KENNETH R. FEINBERG,                        On Removal from the Circuit Court
FEINBERG ROZEN, LLP,                     of the Twentieth Judicial Circuit In
GULF COAST CLAIMS FACILITY, and     and For Lee County, Florida
WILLIAM G. GREEN, JR.                        Case No. 11-CA-002008

       Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

     Selmer M. Salvesen ("Plaintiff"), by and through his undersigned counsel, hereby

respectfully submits this response in opposition to the motion to dismiss Plaintiff's Complaint by

Kenneth R. Feinberg, Feinberg Rozen, LLP, Gulf Coast Claims Facility ("GCCF"), and William

G. Green, Jr. ("Defendants") for the reasons set out herein.

**PRELIMINARY STATEMENT**

     Demonstrating a complete lack of understanding of the intent and objectives of Congress

in its passage of the Oil Pollution Act of 1990 ("OPA"), Defendants move to dismiss Plaintiff's

Complaint on the grounds that: (a) OPA preempts Plaintiff's state law claims; and (b) Plaintiff's

claims are invalid under Florida state law, in part, because: (1) "...the only duty OPA imposes on

responsible parties is to establish and advertise a process for receiving claims; **OPA does not**

**require that the responsible party actually settle the claims**." *See* Motion to Dismiss, p. 15;

(2) Plaintiff cannot establish reliance (because OPA requires presentation to the responsible party); and (3) Plaintiff cannot prove damages because he is still free to sue BP or present a claim to the Oil Spill Liability Trust Fund ("OSLTF").

Defendants' Motion to Dismiss is without merit for at least three reasons. First, Plaintiff's fact-bound and situation-specific allegations in his Complaint are not, and could not be, brought under OPA because Defendants are independent contractors, not agents or representatives of BP (the "Responsible Party"); and Plaintiff's damages "resulted from" the conduct of the defendants, not BP and the BP oil spill incident. Second, even if Plaintiff had brought this Complaint under OPA - which he has not - OPA does not preempt his state law claims. Third, Plaintiff's claims are valid under Florida law because OPA, a strict liability statute, imposes a duty to fully compensate claimants for damages, settle claims, and pay interest on the amount paid in satisfaction of a claim; Plaintiff can establish reliance; and Plaintiff can prove he suffered damages as a direct and proximate result of Defendants' conduct.

## INTRODUCTION

I.      **The Oil Pollution Act of 1990 ("OPA")**

A.      **The Purpose of OPA**

In their Notice of Removal, Defendants erroneously argue that this case arises under the Outer Continental Shelf Lands Act ("OCSLA") which preempts Florida state law. *See* Notice of Removal (Doc. No. 1), p. 4. In their Motion to Dismiss, Defendants concede that OCSLA does not apply to this case by correctly stating, "Congress enacted OPA 'to create a single Federal law providing cleanup authority, penalties, and liability for oil pollution.'" S. Rep. No. 101-94, at 9 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 722, 730. *See* Motion to Dismiss (Doc. No. 14), p. 4.

In their Motion to Dismiss, Defendants further state:

"Allowing [Plaintiff's] claims to proceed would defeat Congress' explicit goal of encouraging private settlements and reducing – not increasing – the involvement of the courts.......... thereby undermining **Congress' goal of expediting the payment of claims for damages arising from oil spills**." (Emphasis added) Motion to Dismiss (Doc. No. 14), p. 3.

"Congress intended the OPA presentment requirement and the claims process to function as a form of alternative dispute resolution that would *minimize* the involvement of the judiciary; thus, the claims procedure reflects "a congressional desire to encourage settlement and avoid litigation." *Boca Ciega Hotel, Inc. v. Bouchard Trans. Co.*, 51 F.3d 235, 240 (11th Cir. 1995)." *Id.* at p. 5.

Numerous courts have recognized that '[t]he purpose of the [OPA] claim presentation procedure is to promote settlement and avoid litigation.'" *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. at 310-11 (E.D. Va. 1993)." *Id.* at p. 12.

**"OPA is intended 'to allow for quick and complete payment** of reasonable claims without resort to cumbersome litigation.'"* See* 135 Cong. Rec. H7965 (daily ed. Nov. 2, 1989). Id. at p. 12.

### B.      Defendants' Unique Interpretation of OPA

Defendants, who cannot cite to a single authority, statutory provision, or fragment of legislative history supporting their position, suddenly and self-servingly argue: (a) "the only duty OPA imposes on responsible parties is to establish and advertise a process for receiving claims; **OPA does not require that the responsible party actually settle the claims."** *Id.* at p. 15; and (b) "OPA says nothing about how a claims process should work. It simply requires that the claimant and the responsible party have a chance to consider a settlement before the claimant may sue." *See* Motion to Dismiss, p. 2.

In short, Defendants are asking this Court to completely ignore legislative intent and judicial precedent and believe that Congress intended OPA to be merely a "speed bump" on the road to inevitable protracted litigation.

-3-

The Eleventh Circuit held, "The overarching purpose of OPA's mandatory alternative dispute resolution process is 'to encourage settlement and avoid litigation.'" *Boca Ciega Hotel, Inc. v. Bouchard Trans. Co*., 51 F. 3d 235, 240 (11th Cir. 1995). In the instant case, the overarching purpose of Defendants' "Delay, Deny, Defend" strategy is to avoid settlement and encourage litigation.

## II.    The Oil Spill Liability Trust Fund

Defendants knowingly err in contending that:

".......the claimant's only alternatives under OPA are to sue the responsible party in court **or seek recovery from the Oil Spill Liability Trust Fund**." (Emphasis added) *See* Motion to Dismiss, p. 2.

"Claimants 'options are expressly limited by OPA to suing the responsible party in court **or presenting their claim to the NPFC**.' 33 U.S.C. § 2713(c)." *Id.* at p. 12.

"The brief of the United States strongly supports dismissal of the Complaint. The United States noted that claims submitted to the NPFC and paid by the Oil Spill Liability Trust Fund are assigned (subrogated) to the Justice Department for pursuit against the responsible party." *Id.* at p. 13.

The Oil Spill Liability Trust Fund ("OSLTF"), which is administered by Coast Guard's National Pollution Funds Center ("NPFC"), is subject to a statutory $1 billion cap on the total amount of expenditures per incident, with a concurrent limit of $500 million per incident for natural resource damage assessments and claims. This $1 billion expenditure limit applies even if the OSLTF is fully reimbursed by the responsible party and net expenditures are zero**.**

GAO reports OSLTF costs of about $629.5 million as of March 31, 2011. *See* GAO-11-397R (April 18, 2011). The OSLTF will very likely reach the $1 billion per incident cap on total expenditures in the very near future. Once the expenditures reach the cap, NPFC will be precluded from paying any additional claims related to the *Deepwater Horizon* oil spill. As of

-4-

March 31, 2011, NPFC had received over 629 claims, totaling $186 million from individuals and businesses for this spill. NPFC had issued determinations for more than 538 of these claims (for about $163 million), **all of which were denials**. *Id.*

In short, OSLTF cannot pay claims because it does not have the money. Furthermore, since only claims *paid by the OSLTF* may be subrogated, the Justice Department will not be able to pursue the responsible party for any payment. Defendants fully realize that OSLTF is not a "backstop." Therefore, they are free to recklessly engage in their "Delay, Deny, Defend" strategy.

### III.    The Multidistrict Litigation

Defendants removed this case to federal court solely for the purpose of being able to subsequently file a "tag-along" notice with the MDL Panel for the hopeful transfer of this case to MDL 2179 in the United States District Court for the Eastern District of Louisiana.

When the MDL Panel receives a "tag-along" notice, it issues a Conditional Transfer Order ("CTO"), in this case CTO-29, transferring the action to the designated MDL transferee court. As Defendants are well aware, in about 90% of the cases, no affected party opposes the CTO within the time established by the Panel, and the MDL Panel automatically transfers the case to the transferee court. That has not happened in this case. MDL Panel Rule 1.1 defines *tag-along action* as "a civil action pending in a district court and involving common questions of fact with actions previously transferred under Section 1407." This case is not a tag-along action. If transferred to MDL 2179 this case would languish indefinitely, along with approximately 130,000 other victims that have been forced by Defendants to resort to litigation, because Judge Barbier has issued a pretrial order indefinitely continuing all motions to remand, including future

motions. *See Pretrial Order #15*, U.S. Dist. Ct., E.D. La., 2:10-md-02179-CJB-SS, filed Nov. 5, 2010 (D.I. #676).

Defendants request this Court to defer ruling on their motion to dismiss because the J.P.M.L. issued CTO-29 on July 15, 2011. The stay Defendants request will span many months, needlessly impeding Plaintiff from having his claims adjudicated in a timely manner by the Florida state court. Plaintiff respectfully submits that remanding this case to state court will assist in the just, speedy, and inexpensive determination of this action. *See* Fed.R.Civ.P.1.

## ARGUMENT AND AUTHORITIES

### I.   Plaintiff's Allegations Are Not, And Could Not Be, Brought Under OPA

Plaintiff's fact-bound and situation-specific allegations are not, and could not be, brought under OPA because Defendants are independent contractors, not agents or representatives of BP (the "Responsible Party"); and Plaintiff's damages "resulted from" the conduct of the defendants, not BP and the BP oil spill incident.

OPA is a strict liability statute. In order to recover damages, a claimant merely needs to show that his or her *damages "resulted from" the oil spill*. OPA states, "*The responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages that result from such incident*." *See* 33 U.S.C. § 2702(a) (Emphasis added).

The damages referred to in 33 U.S.C. § 2702(a) include, but are not limited to: "Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which <u>shall</u> be recoverable by any

-6-

claimant." 33 U.S.C. § 2702(b)(2)(E) (Emphasis added).

In the present case, Plaintiff's damages did not "result from" the oil spill and Defendants are not "Responsible Parties" under OPA. *See* 33 U.S.C. § 2701(32)(C). Defendants, with 13 offices located in the State of Florida, are *independent contractors* (Complaint, ¶ 30) that administer, settle and authorize the payment of certain claims asserted against BP as a result of the explosion at the Deepwater Horizon rig and consequent spillage of oil into the Gulf of Mexico. Accordingly, the damages incurred by Plaintiff as a result of Defendants' tortious acts are not recoverable by Plaintiff under OPA.

## II.    OPA Does Not Preempt Plaintiff's State Law Claims

Even if Plaintiff had brought this Complaint under OPA - which he has not - OPA does not preempt his state law claims.

Under OPA, an injured person may also bring a claim under state common law pursuant to 33 U.S.C. § 2718, which states in relevant part:

> (a) Nothing in this Act ....shall -
> (1) affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to -
>
> (A) the discharge of oil or other pollution by oil within such State; or
> (2) affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under.......State law, *including common law*.
>
> (c) Nothing in this Act......shall in any way affect, or be construed to affect, the authority of the United States or any State or political subdivision thereof -
> (1) to impose additional liability or additional requirements.....relating to the discharge, or substantial threat of a discharge, of oil.

In addition to explicitly preserving state statutory and common law claims for oil spill

damages, OPA also expressly provides that these claims may be prosecuted in state court. In particular, 33 U.S.C. § 2717 provides that:

> (c) A State trial court of competent jurisdiction over claims for removal costs or damages, as defined under this Act, may consider claims under this Act or State law and any final judgment of such court (when no longer subject to ordinary forms of review) shall be recognized, valid, and enforceable for all purposes of this Act.

The intent of Congress is "the ultimate touchstone in every pre-emption case." *Gabarick et al v. Laurin Maritime (America) Inc*., 623 F. Supp.2d 741, 749 (E.D. La. 2009).

The legislative history clearly demonstrates that Congress intended for OPA not to preempt state law claims.

In the course of debating and enacting OPA, Congress articulated that its purpose was to consolidate several oil spill remediation regimes into a single act, which would benefit the victims of spills and give them the procedural advantage:

> What the Nation needs is a package of complimentary international, national, and State laws that will adequately compensate victims of oil spills... Instead, there is a fragmented collection of Federal and State laws providing inadequate cleanup and damage remedies, taxpayer subsidies to cover cleanup costs, third party damages that go uncompensated, and substantial barriers to victim recoveries - such as legal defenses, statutes of limitation, the corporate form, and the burdens of proof that favor those responsible for the spill. *See* S. Rep. No. 101-94, at *2 (1989), reprinted in 1990 U.S.C.C.A.N. 722.

The "fragmented collection" of pre-OPA federal statutes included OCSLA, the Clean Water Act, the Limitation of Liability Act of 1851 (for maritime claims), the Deepwater Ports Act, and the Trans-Alaska Pipeline Authorization Act. *Id.* at *3, *6. The Legislature's intent to package these conflicting regimes into one cohesive whole did not, however, extend to an intent to deprive the states of their power to provide rights of action for their own citizens. As noted in the Senate debate over OPA:

To date, Federal legislation has affirmed the rights of States to protect their own air, water, and land resources by permitting them to establish State standards which are more restrictive than Federal Standards.

[OPA] would permit such State laws to continue and would not preclude enactment of new State laws.

The theory behind the Committee action is that the Federal statute is designed to provide basic protection for the environment and victims damaged by spills of oil. Any State wishing to impose a greater degree of protection for its own resources and citizens is entitled to do so. On the other hand, a State might feel adequately protected by the Federal statute and therefore choose not to enact additional State law. In any event, the Committee chose not to impose, arbitrarily, the constraints of the Federal regime on the States while at the same time preempting their rights to their own laws. *Id.* at *6.

The Senate report also notes that:

Preemption has been discussed by the members of the Committee more than any other single issue. [OPA] does not embrace any preemption of State oil spill liability laws... *Id.* at *17.

The joint Congressional conference report also reaffirmed that OPA was not intended to preempt state causes of action when it reported that:

[The OPA] states explicitly that nothing in the substitute...shall affect in any way the authority of a State or local government to impose additional liability or other requirements with respect to oil pollution... *See* H.R. Rep. No. 101-653, at *21 (1990)(Conf. Rep.), reprinted in 1990 U.S.C.C.A.N. 779.

In considering a preemption argument made under OPA, the First Circuit held, "Congress did not intend the OPA to bar the imposition of additional liability by the States." *S. Port Marine, LLC v. Gulf Oil L.P.*, 234 F.3d 58, 65 (1st Cir. 2000).

The argument that OPA preempts state common law causes of action to recover damages in oil spill cases because the state actions would somehow conflict with OPA "was effectively put to rest in *U.S. v. Locke*, decided by the Supreme Court." *Williams v. Potomac Elec. Power Co.*, 115 F. Supp. 2d at 564-65 (D. Md. 2000)(citing *United States v. Locke*, 529

U.S. 89, 105 (2000)). Indeed, the state law "savings clause" contained in 33 U.S.C. § 2718 "was meant to allow the states to go beyond the basic protection of the federal law. The beneficiaries of the savings clause, therefore, are the victims of oil spills." *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp*., 924 F. Supp. 1436, 1448 (E.D. Va. 1996).

The general rule is that state law claims are not preempted by a federal statute absent "extraordinary" language in the statute indicating Congressional intent to displace those state claims. *Ortega v. HomEq Servicing*, 2010 WL 383368 at *4 (C.D. Cal. Jan. 25, 2010). The "dispositive question" is whether or not the supposedly preemptory statute "provides the exclusive cause of action." *Ortega*, 2010 WL 383368 at *4. Here, OPA's own state law savings clause renders it unambiguously non-exclusive. 33 U.S.C. § 2718.

Further evidence that OPA does not preempt state law claims can be found in a line of OPA cases considering whether a plaintiff asserting state law claims against an oil spill defendant must comply with a pre-suit presentment requirement imposed by OPA § 2713. Those courts hold that presentment under OPA is unnecessary because claims under state law do not arise under OPA, a result fundamentally inconsistent with preemption. *See Russo v. M/T Dubai Star*, No. C 09-05158 SI, 2010 WL 1753187, at *3 (N.D. Cal. Apr. 29, 2010) ("The remainder of plaintiffs' causes of action, however, arise not under OPA but under state law. The presentation requirement does not apply to these claims") (*citing Williams*, 115 F. Supp. 2d at 565 & n.3 (holding that that state law claims are not preempted by OPA, and that "there is, in consequence, no requirement for the presentment of claims under OPA prior to commencing suit")). Likewise, when the oil spill defendant is not one of the "responsible parties" as defined by OPA, the plaintiff's state law causes of action do not need to be presented under OPA § 2713 - an

-10-

unsurprising result given that such claims do not arise under OPA in the first place, and are accordingly not preempted. *Marathon Pipe Line Co. v. LaRoche Indus., Inc.*, 944 F. Supp. 476, 480 (E.D. La. 1996) (holding "in this suit, [plaintiff] seeks damages from LaRoche, not [the responsible party]. Such claims against LaRoche, who is not a responsible party, do not invoke § 2713's presentation requirement").

In short, OPA permits a plaintiff to assert state statutory and common law claims for damages incurred as a result of an oil spill, that such claims are not preempted, and that such claims may be asserted in state court.

## III.     Plaintiff's Claims Are Valid Under Florida Law

On June 15, 2011, Plaintiff filed this action against Defendants in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida asserting claims for gross negligence, negligence, negligence per se, fraud, fraudulent inducement, promissory estoppel, and unjust enrichment.

Plaintiff's claims are valid under Florida law because OPA, a strict liability statute, imposes a duty to fully compensate claimants for damages, settle claims, and pay interest on the amount paid in satisfaction of a claim; Plaintiff can establish reliance; and Plaintiff can prove he suffered damages as a direct and proximate result of Defendants' conduct.

### A.     OPA Imposes a Duty to Fully Compensate Claimants for Damages.

OPA is a strict liability statute. In order to recover damages, a claimant merely needs to show that his or her *damages "resulted from" the oil spill*. OPA states, "*The responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil*, into or upon the navigable waters or adjoining shorelines or the exclusive

economic zone *is liable for the removal costs and damages that result from such incident*." *See* 33 U.S.C. § 2702(a) (Emphasis added).

The damages referred to in 33 U.S.C. § 2702(a) include, but are not limited to: "Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which <u>*shall*</u> be recoverable by any claimant." *See* 33 U.S.C. § 2702(b)(2)(E) (Emphasis added).

### B.   OPA Imposes a Duty to Encourage Settlement and Avoid Litigation.

"The overarching purpose of OPA's mandatory alternative dispute resolution process is 'to encourage settlement and avoid litigation.'" *Boca Ciega Hotel, Inc. v. Bouchard Trans. Co*., 51 F. 3d 235, 240 (11th Cir. 1995). The court in *Boca* cited statements of Representative Hammerschmidt ("The system of liability and compensation....is intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation.") and Representative Lent ("The trust of this legislation is to eliminate, to the extent possible, the need for an injured person to seek recourse through the litigation process, which - as we know - can take years."). 135 Cong. Rec. at H7962, 7965.

Defendants, who cannot cite to a single authority, statutory provision, or fragment of legislative history supporting their position, self-servingly argue that (a) "OPA imposes no duty on responsible parties other than to establish and advertise a process for receiving claims, *not that they actually settle claims*." (Emphasis added by Defendants) *See* Motion to Dismiss, p. 14; and (b) "OPA says nothing about how a claims process should work. It simply requires that the claimant and the responsible party have a chance to consider a settlement before the claimant may sue." *See* Motion to Dismiss, p. 2.

-12-

C.     **OPA Imposes a Duty to Pay Interest on the Amount Paid in Satisfaction of a Claim.**

Under OPA, 33 U.S.C. § 2705(a), the responsible party or the responsible party's guarantor is liable to a claimant for interest on the amount paid in satisfaction of a claim. The period for which interest *shall* be paid is the period beginning on the 30th day following the date on which the claim is presented to the responsible party or guarantor and ending on the date on which the claim is paid.  *See* 33 U.S.C. § 2705(b)(1).

With these duties in mind, we now show that Plaintiff's claims are valid under Florida state law.

1.     **Count I: Gross Negligence**

Count I is not deficient on its face as a matter of Florida law. Under Florida law, the purpose of punitive damages is not to further compensate the plaintiff, but to punish the defendant for its wrongful conduct and to deter similar misconduct by it and other actors in the future. *BDO Seidman v. Banco Espirito Santo Intern*., 38 So. 3d 874 (Fla. 3rd DCA 2010).

Punitive damages are appropriate when a defendant engages in conduct which is fraudulent, malicious, deliberately violent or oppressive, or committed with such gross negligence as to indicate a wanton disregard for the rights and safety of others. *Id*. at 877.

The Florida Legislature codified the definition of "gross negligence" (as a predicate for a punitive damages claim) in section 768.72(2)(b), Florida Statutes (2007): "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct. This definition is also found in the standard jury instruction on punitive damages. *In Re Standard Jury Instruc*. - Civil Cases, 797 So. 2d 1199 (Fla. Supreme Court 2001). The question

-13-

of whether conduct amounts to gross negligence is a question that should be left to the jury. .”
*Hager v. Live Nation Motor Sports*, *Inc.,* 665 F. Supp. 2d at 1295 (S.D. Fla. 2009) *See Foy v. Fleming,* 168 So2d 177, 180 Fla. 1st DCA 1964) ("`In doubtful cases, the question of whether such negligence is ordinary or gross is, as we have heretofore held, one which under appropriate instructions should be submitted to the jury.'").

Defendants, while repeatedly claiming the protocols under which they operate are structured to be compliant with OPA and apply the standards of OPA, circumvent many of the rights provided to victims of the BP oil spill under OPA. Defendants, in part by making numerous false statements of material fact to Plaintiff (*See* Complaint, ¶ 137), breached their legal duty to Plaintiff, failed to exercise reasonable care, and acted with reckless, willful, and wanton disregard for the business and livelihood of Plaintiff in their negligent operation of Defendant GCCF's claim intake, claim review, claim evaluation and claim settlement and payment services. Defendants knew or should have known that their conduct, commonly referred to as a "Delay, Deny, Defend" strategy, would foreseeably result in the financial ruin of Plaintiff and cause irreversible damage to the health and the economic interests of Plaintiff. *See* Motion to Remand, p. 2.

### 2.     Count II: Negligence

Count II is not deficient on its face as a matter of Florida law. Under Florida law, the elements of negligence are: (1) a duty to the plaintiff; (2) the defendant's breach of that duty; (3) injury to the plaintiff arising from the defendant's breach; and (4) damage caused by the injury to the plaintiff as a result of the defendant's breach of duty. *Delgado v. LAUNDROMAX, INC*., No. 3D10-1492 (Fla. 3d DCA, Opinion filed June 15, 2011). *See* Complaint, p. 28.

-14-

### 3. Count III: Negligence Per Se

Count III is not deficient on its face as a matter of Florida law. Under Florida law, when a private right of action is not explicit in a statute the court may nevertheless find that the right is implicit. *Welker v. Southern Baptist Hospital of Florida, Inc.*, 864 So.2d 1178, 1182 (Fla. 1st DCA 2004). The Florida Supreme Court has held that whether there is civil liability for violation of a statute depends on legislative intent. *Aramark Uniform and Career Apparel, Inc. v. Easton*, 894 So.2d 20, 23 (Fla. 2005); *Murthy v. N. Sinha Corp.*, 644 So.2d 983, 985-86 (Fla. 1994) (stating that "legislative intent . . . should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one.") *Northern Ins. Co. of New York v. Pelican Point Harbor, Inc.*, No. 3:05cv184/MCR/MD, 2006 WL 1285078, at *7 (N.D. Fla. May 5, 2006).

In *deJesus v. Seaboard Coast Line Railroad Co.*, 281 So.2d 198 (Fla. 1973), the Florida Supreme Court explained that there are three categories of statutory violations, two of which constitute negligence per se and one which is only evidence of negligence: "(1) violation of a strict liability statute designed to protect a particular class of persons who are unable to protect themselves, constituting negligence per se; (2) violation of a statute establishing a duty to take precautions to protect a particular class of persons from a particular type of injury, also constituting negligence per se; (3) violation of any other kind of statute, constituting mere prima facie evidence of negligence." *Grand Union Co. v. Rocker*, 454 So.2d 14, 15 (Fla. 3d DCA 1984); *Newsome v. Haffner*, 710 So.2d 184, 186 (Fla. 1st DCA 1998).

It must also be established by a plaintiff that he is of the class the statute was intended to protect, that he suffered injury of the type the statute was designed to prevent, and that the

violation of the statute was the proximate cause of his injury." *deJesus*, 281 So.2d at 201; *Walker v. Butler*, 461 So.2d 249, 250 (Fla. 1st DCA 1984). *See* Complaint, pages 30, 31.

### 4.    Count IV: Fraud

Count IV is not deficient on its face as a matter of Florida law.

To state a claim for fraud under Florida law, a plaintiff must establish through particular, ultimate facts:

(1) a false statement concerning a material fact;
(2) the speaker's knowledge of falsity;
(3) the speaker's intent to induce another to act on the false statement; and
(4) reliance on the false statement to the injury of the other party. *C & J Sapp Publ'g Co. v. Tand-Corp.*, 585 So. 2d 290 (Fla. Dist. Ct. App. 1991).

A fact is *material* if, but for the misrepresentation, the party would not have acted as it did. *Riback v. Centex Real Estate Corp.*, 702 So. 2d 1316, 1317 (Fla. Dist. Ct. App. 1997).

In the instant case, Plaintiff has established a very clear cause of action for fraud through particular, ultimate facts. Complaint, ¶¶ 131, 132, 133, 134, 135.

### 5.    Count V: Fraudulent Inducement

Count V is not deficient on its face as a matter of Florida law. Complaint, ¶¶ 136, 137, 138, 139, 140, 141.

Fraudulent inducement requires proof of:

(1) a false statement of material fact;
(2) that the defendant knew or should have known was false;
(3) that was made to induce the plaintiff to enter into a contract; and
(4) that proximately caused injury to the plaintiff when acting in reliance on the misrepresentation. *Johnson v. Davis*, 480 So. 2d 625 (Fla. 1985); *Bradley Factor v. United States*, 86 F. Supp. 2d 1140 (M.D. Fla. 2000).

Fraud in the inducement is pre-contract fraudulent conduct which undermines one party's ability to negotiate and make informed decisions. In *Medalie v. FSC Securities Corporation*, the

court upheld a fraudulent inducement claim based upon plaintiffs' allegations that defendant made material misrepresentations about the risks involved with certain investments to induce plaintiffs to make the investments. 87 F. Supp. 2d 1295 (S.D. Fla. 2000).

6.    **Count VI: Promissory Estoppel**

Count VI is not deficient on its face as a matter of Florida law. Complaint, ¶¶ 142, 143, 144, 145.

To state a cause of action for promissory estoppel under Florida law, a plaintiff must prove:

> (1) a representation as to a material fact that is contrary to a later-asserted position;
> (2) a reasonable reliance on that representation; and
> (3) a change in position detrimental to the party claiming estoppel caused by the representation and reliance thereon. *FCCI Ins. Co. v. Cayce's Excavation, Inc.*, 901 So. 2d 248, 251 (Fla. Dist. Ct. App. 2005).

Here, again, Defendants err in arguing, "Plaintiff's promissory estoppel claim suffers from the same fatal flaws as his fraud claims: he cannot establish reliance (because OPA requires presentation to the responsible party) or damages (because he can still sue BP or present to the NPFC)."

7.    **Count VII: Unjust Enrichment**

Count VII is not deficient on its face as a matter of Florida law. Complaint, ¶¶ 146 through 155.

The essential elements of a claim for unjust enrichment are:

> 1. a benefit conferred upon a defendant by the plaintiff;
> 2. the defendant's appreciation of the benefit; and
> 3. the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006).

-17-

Defendants have been enriched by excessively delaying, and finally denying, the payment of the legitimate claim of Plaintiff Salvesen and by not having to pay the statutorily-mandated interest on the amount paid in satisfaction of the Final Payment claim of Plaintiff. Complaint ¶ 150. As a result of limiting BP's liability by delaying and denying payment and by not paying interest on the amount paid in satisfaction of the claim of Plaintiff Salvesen, Defendant Feinberg, Defendant Green and Defendant Feinberg Rozen were enriched by BP by receiving a monthly payment for services which did not rise to the standards expected of their profession. Complaint ¶ 152.

###### D.     Plaintiff Can Establish Reliance.

Defendants argue that Plaintiff cannot establish reliance because OPA requires presentation to the responsible party. As discussed above, OPA requires that claimants are fully compensated for their damages, interest is paid by Defendants on the amount paid in satisfaction of a claim, and Defendants have a duty to encourage settlement and avoid litigation.

In a line of cases similar to the instant case, the court has held that presentment under OPA is unnecessary because claims under state law do not arise under OPA. *See Russo v. M/T Dubai Star*, No. C 09-05158 SI, 2010 WL 1753187, at *3 (N.D. Cal. Apr. 29, 2010) ("The remainder of plaintiffs' causes of action, however, arise not under OPA but under state law. The presentation requirement does not apply to these claims") (*citing Williams*, 115 F. Supp. 2d at 565 & n.3 (holding that that state law claims are not preempted by OPA, and that "there is, in consequence, no requirement for the presentment of claims under OPA prior to commencing suit")). Likewise, when the oil spill defendant is not one of the "responsible parties" as defined by OPA, the plaintiff's state law causes of action do not need to be presented under OPA § 2713

- an unsurprising result given that such claims do not arise under OPA in the first place.

*Marathon Pipe Line Co. v. LaRoche Indus., Inc.*, 944 F. Supp. 476, 480 (E.D. La. 1996) (holding "in this suit, [plaintiff] seeks damages from LaRoche, not [the responsible party]. Such claims against LaRoche, who is not a responsible party, do not invoke § 2713's presentation requirement").

### E. Plaintiff Can Prove He Suffered Damages as a Direct and Proximate Result of Defendants' Conduct.

Finally, Defendants creatively argue that Plaintiff cannot prove damages because he is still free to sue BP or present a claim to the Oil Spill Liability Trust Fund ("OSLTF").

Plaintiff, and all victims of the BP oil spill, continue to suffer damages from three separate sources: (a) once from the oil spill, the environmental and economic damages of which have devastated their way of life; (b) again by being left in financial ruin as a result of Defendants' tortious acts; and (c) a third time for daring to demand justice, which will consume their time, energy and hopes for years to come if they are held hostage by protracted litigation.

As explained above, Plaintiff's damages did not "result from" the oil spill and Defendants are independent contractors that administer, settle and authorize the payment of certain claims asserted against BP. Here, Defendants' tortious acts, not acts by BP, resulted in the financial ruin of Plaintiff. Therefore, Plaintiff is not "free to sue BP." Moreover, as explained in detail above, Plaintiff may be "free to present a claim to OSLTF" but that claim would not be paid.

BP is responsible for the oil spill incident. The defendants (independent contractors), via employment of their "Delay, Deny, Defend" strategy, are responsible for not compensating and thereby financially ruining Plaintiff Salvesen and other victims of the BP oil spill.

**CONCLUSION**

For all the foregoing reasons, Plaintiff requests that this Court (1) deny Defendants'

Motion to Dismiss; (2) grant Plaintiff's pending Motion to Remand; and (4) grant Plaintiff all

other appropriate relief.

DATED: August 9, 2011                                        Respectfully submitted,

                                                        **s/ Brian J. Donovan**
                                                        Brian J. Donovan
                                                        Attorney for Plaintiffs
                                                        Florida Bar No. 143900
                                                        3102 Seaway Court, Suite 304
                                                        Tampa, FL 33629
                                                        Tel: (352)328-7469
                                                        BrianJDonovan@verizon.net

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court

by using the CM/ECF system. I further certify a copy of the foregoing was sent by CM/ECF to

the following counsel: **Eric S. Adams, Esquire**, **David B. Pitofsky, Esquire**, and **William F.

Sheehan, Esquire**, this 9th day of August, 2011.

                                                        **s/ Brian J. Donovan**
                                                        Brian J. Donovan
                                                        Attorney for Plaintiffs
                                                        Florida Bar No. 143900
                                                        3102 Seaway Court, Suite 304
                                                        Tampa, FL 33629
                                                        Telephone: (352)328-7469
                                                        BrianJDonovan@verizon.net