

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig<br>"Deepwater Horizon"<br>in the Gulf of Mexico,<br>on April 20, 2010 | MDL 2179<br><br><br>SECTION: J |
| *This Document Relates to:*<br>*All Cases* and | JUDGE BARBIER |
| *Salvesen v. Feinberg, et al.,*<br>*2:11-cv-02533*<br>*Pinellas Marine Salvage Inc., et al. v. Feinberg, et al.,*<br>*2:11-cv-01987*<br>*Ditch v. Feinberg et al.,*<br>*2:13-cv-06014*<br>*Donovan v. Herman,*<br>*2:19-cv-12014* | MAG. JUDGE WILKINSON |

_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION FOR CLARIFICATION**

The following Memorandum is respectfully submitted in support of Plaintiff's Motion for Clarification.

**THE ISSUE REQUIRING CLARIFICATION**

Plaintiff respectfully moves the Court to enter an order clarifying whether the Honorable MDL 2179 Court shall ensure each action transferred to it under 28 U.S.C. § 1407 is remanded by the JPML at or before the conclusion of pretrial proceedings to the district from which it was transferred.

**THE NEED FOR CLARIFICATION**

The need to clarify the issue of remand recently arose in an Order (Rec. Doc. 26337) denying Brian J. Donovan's Motion to Remand (Rec. Doc. 26330) *Donovan v. Herman*, 2:19-cv-12014, to the Middle District of Florida, the district from which it was transferred pursuant to 28

U.S.C. § 1407. The MDL 2179 Court's Order states, in pertinent part,

> "A transferee court cannot order that a case transferred to it under 28 U.S.C. § 1407 be remanded to the transferor court. That power resides with the Judicial Panel on Multidistrict Litigation. Nevertheless, the Court construes Donovan's motion as requesting a suggestion of remand;" and

> "The Court has reviewed the motion and finds it lacks merit. Notably, Donovan's arguments have been rejected by the Judicial Panel on Multidistrict Litigation (No. 19-12014, Rec. Doc. 24) (denying Donovan's motion to vacate conditional transfer order)."

## BACKGROUND

### I.  How Multidistrict Litigation Works

After the JPML has selected a transferee court and therefore established the MDL, future cases involving the same subject matter, called "tag-along[s]," *See* J.P.M.L. R. P. 1.1(h) (2010), are filed in federal district courts where venue and personal jurisdiction are appropriate (cases may also, of course, be filed in state court and removed. 28 U.S.C. § 1448 (2006)). Requiring full-blown briefing and argument before the JPML for every tag-along case, of which there may be thousands, (John G. Heyburn II, *A View From the Panel: Part of the Solution*, 82 TUL. L. REV. 2225, 2233 (2008) (noting that the JPML transfers thousands of tag-along cases each year) would be extremely inefficient, so the JPML has adopted a streamlined procedure for transferring these cases to the MDL. (*See* WRIGHT ET AL., 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3866 (3d ed. 2007), § 3865, at 490-91. (A party seeking transfer - or a non-party involved in the MDL - must make the JPML aware of the existence of the case, and the JPML clerk will conditionally transfer the case unless a party objects. If no party objects within seven days, the case is transferred, but if there is an objection,

the JPML will hear argument). Unless the tag-along case clearly does not belong in the MDL, these cases are rather seamlessly transferred to the MDL court. *Id.* at 494 ("In the main . . . the later cases are consolidated and coordinated with the earlier cases.").

Once a case is transferred, the control of the case is out of the JPML's hands and in the control of the transferee judge. The JPML "has neither the power nor the inclination to dictate in any way the manner in which the coordinated or consolidated pretrial proceedings are to be conducted by the transferee judge." *In re* Sundstrand Data Control, Inc. Patent Litig., 443 F. Supp. 1019, 1021 (J.P.M.L. 1978). Nor does the JPML review the actions of an MDL judge. *See In re* Data Gen. Corp. Antitrust Litig., 510 F. Supp. 1220, 1226-27 (J.P.M.L. 1979). The MDL transferee judge has the full measure of power over "pretrial proceedings" that the transferor court would have had if the transfer had not occurred. *See* WRIGHT ET AL., 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3866 (3d ed. 2007), § 3866, at 510-11 ("[T]he transferee judge inherits the entire pretrial jurisdiction that the transferor judge would have exercised."). The MDL court's powers are consequently quite broad, ranging from coordinating and resolving discovery-related matters (*See, e.g.*, United States *ex rel*. Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 238 F. Supp. 2d 270, 279 (D.D.C. 2002) (ordering production of documents at deposition); *In re* Air Crash at Charlotte, N.C. on July 2, 1994, 982 F. Supp. 1052, 1056 (D.S.C. 1995) (motion to compel), to deciding evidentiary motions such as *Daubert* motions (*See, e.g.*, *In re* Trasylol Prods. Liab. Litig., 709 F. Supp. 2d 1323 (S.D. Fla. 2010) (resolving *Daubert* motion)), and ruling on motions for class certification, *See, e.g.*, *In re* Monumental Life Ins. Co., 365 F.3d 408, 411 (5th Cir. 2004) (affirming MDL court's denial of class certification in transferred action); *In re* Digitek Prods. Liab. Litig., 821 F.

Supp. 2d 822 (S.D. W. Va. 2010); *see also* WRIGHT ET AL., 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3866 at 526-27 (3d ed. 2007) ("[C]lass action rulings are particularly suited for decision by the transferee court because that judge has an overall view of the litigation and it is important that there not be a conflict between or among the transferor courts…."), and motions to remand (*See, e.g.*, *In re* Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 399 F. Supp. 2d 356 (S.D.N.Y. 2005) (motion to remand)).

The MDL court, therefore, possesses significant powers, but its jurisdiction is incomplete because it cannot try transferred actions without the parties' consent. *In re* Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.*, 953 F.2d 162, 165 (4th Cir. 1992) ("The authority for consolidating cases on the order of the judicial panel on multi-district litigation….is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred."). Nor can the MDL court transfer a case to itself on a permanent basis in order to try it. Until the Supreme Court's decision in *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (holding that the statute commanded this result "even if doing that will reverse the longstanding practice under the statute and the rule"), MDL courts commonly transferred cases to themselves in order to try them. *See also* Courtney E. Silver, *Procedural Hassles in Multidistrict Litigation: A Call for Reform of 28 U.S.C. § 1407 and the* Lexecon *Result*, 70 OHIO ST. L.J. 455, 461 (2009) (recalling that during "the first thirty years of MDL practice, it was quite common" for an MDL to transfer cases to itself for trial). The U.S. Supreme Court unanimously ended that practice, holding that, despite longstanding contrary practice, the plain language of § 1407(a) dictates that the JPML "shall" remand cases at the close of pretrial proceedings. *Lexecon*, 523 U.S. at 32. There have been numerous attempts to persuade

Congress to reverse *Lexecon* by statute, but none have come to fruition. *See* Richard L. Marcus, *Cure-All for an Era of Dispersed Litigation? Toward a Maximalist Use of the Multidistrict Litigation Panel's Transfer Power*, 82 TUL. L. REV. 2245, 2292–95 (2008), at 2291 ("[S]ince [*Lexecon*], bills to add authority to transfer for trial to the Panel's authority have been introduced but not passed.") (discussing choice-of-law concerns in the context of MDL); Thomas E. Willging & Emery G. Lee III, *From Class Actions to Multidistrict Consolidations: Aggregate Mass-Tort Litigation After* Ortiz, 58 U. KAN. L. REV. 775, 776 (2010) (discussing the substantial growth of aggregate tort litigation in MDL proceedings). As a result, an MDL court may not try a case transferred to it for pretrial proceedings unless the parties consent to trial *See* WRIGHT, MILLER & COOPER, 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3866 (3d ed. 2007), § 3866.2 at 555 (noting that parties may consent to trial in the MDL court).

The traditional model for MDL, reflected in its legislative history *See* H.R. REP. NO. 90-1130, 3-4 (1968) ("The proposed statute affects only the pretrial stages in multidistrict litigation.") and the Supreme Court's reading of the MDL statute in *Lexecon*, Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 36-37 (1998) ("[T]he statute places an obligation on the Panel to remand no later than the conclusion of pretrial proceedings in the transferee court, and no exercise in rulemaking can read that obligation out of the statute.") provides that pretrial proceedings will at some point conclude, and, on the recommendation of the MDL judge, the JPML will remand the cases to the districts whence they came. 28 U.S.C. § 1407(a) (2006); MANUAL FOR COMPLEX LITIGATION § 20.133 (4th ed. 2004) ("The Panel looks to the transferee court to suggest when it should order remand."). The persistence of this

vision notwithstanding, remand rarely happens. *See* Richard L. Marcus, *Cure-All for an Era of Dispersed Litigation? Toward a Maximalist Use of the Multidistrict Litigation Panel's Transfer Power*, 82 TUL. L. REV. 2245, 2292–95 (2008), at 2265–66 (noting "the great majority of cases that never came back" to home districts); *see also* Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. 2323, 2324 (2008) (discussing direct filing and bellwether trials) at 2329 ("[F]ew cases are remanded for trial; most multidistrict litigation is settled in the transferee court.") (quoting Delaventura v. Columbia Acorn Trust, 417 F. Supp. 2d 147, 151 (D. Mass. 2006))); *see also*, Andrew D. Bradt, *The Shortest Distance: Direct Filing and Choice of Law in Multidistrict Litigation*, 88 Notre Dame L. Rev. 759 (2012).

**II.     The "Black Hole"**

It is the worst-kept secret in civil procedure that the MDL is really a dispositive, not pretrial, action. MDL transferee judges, unlike judges even in class actions, do not generally manage to trial or even to the possibility of trial.

MDL is mushrooming in both impact and sheer numbers. From 2002 to 2015, multidistrict proceedings leapt from 16 to 39 percent of the federal courts' entire civil caseload. Removing prisoner and social security cases escalates that number to 45.6 percent. MDL impacts the entire civil justice system. Even though the JPML centralizes factually related cases to promote efficient *pretrial* handling only, the reality is that merely 2.9 percent of cases return to their original districts.

Pinellas Marine Salvage Inc., et al. v. Feinberg, et al., 2:11-cv-01987, Salvesen v. Feinberg, et al., 2:11-cv-02533, Ditch v. Feinberg et al., 2:13-cv-06014, and Donovan v.

Herman, 2:19-cv-12014 have entered the proverbial "Black Hole" where they have been automatically and indefinitely stayed. Multidistrict litigation has frequently been described as a "Black Hole" because transfer is typically a one-way ticket. Indeed, the JPML has abdicated its proper role by providing no recourse to remedy or to exit an MDL "Black Hole." *See, e.g.*, *In re U.S. Lines, Inc.*, No. 97-CIV-6727, 1998 WL 382023, at *7 (S.D.N.Y. July 9, 1998) (explaining appellants' description of the asbestos multidistrict litigation as "a black hole" and "the third level of Dante's inferno"); Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. 2323, 2330 (2008) ("Indeed, the strongest criticism of the traditional MDL process is that the centralized forum can resemble a 'black hole,' into which cases are transferred never to be heard from again."); John G. Heyburn II & Francis E. McGovern, *Evaluating and Improving the MDL Process*, 38 LITIGATION 27, 31 (2012) ("The single most prominent complaint about multidistrict litigation arises from counsel's negative experiences in so-called black hole cases - those that seem not to move at an acceptable pace."); Eduardo C. Robreno, *The Federal Asbestos Product Liability Multidistrict Litigation (MDL 875): Black Hole or New Paradigm?*, 23 WIDENER L. J. 97, 126 (2013) ("Ultimately, neither the court nor the parties were ready, willing, or able to move [asbestos] cases to trial and settlement. This stage of litigation led some litigants to refer to MDL 875 as a 'black hole,' where cases disappeared forever from the active dockets of the court.").

By all accounts, the multidistrict litigation statute's idealized vision differs dramatically from the real-world practice of MDL. Indeed, most MDL cases are understood by all involved to be unamenable to trial at the outset. As one judge put it, "[i]t's the culture of transferee courts. You have failed if you transfer it back." Abbe R. Gluck *Unorthodox Civil Procedure: Modern*

*Multidistrict Litigation's Place in the Textbook Understandings of Procedure*, 165 U. Pa. L. Rev. 1669 (2017).

MDLs also depend almost entirely on consent and, in turn, disrupt traditional relationships among their players, turning judges and lawyers into deeply collaborative partners in (as one judge put it) "practical problem solving." MDLs have created a judicial elite among the federal judges chosen to lead them, subverting the baseline premise of horizontal equality among federal district judges and instantiating Judge Richard Posner's view that federal judges, with life tenure and little prospect for formal promotion, are eager to find some way to distinguish themselves from the pack. *See* RICHARD A. POSNER, HOW JUDGES THINK 132-47 (2008).

The MDL judge in many ways acts more like a modern administrator than the judge the FRCP envisions, not least because, like agencies, the particular MDL judges who are chosen for these cases are delegated to specifically for their expertise in practical administration. *See* Alexandra D. Lahav, *The Law and Large Numbers: Preserving Adjudication in Complex Litigation*, 59 FLA. L. REV. 383, 403 (2007); See *also,* Abbe R. Gluck *Unorthodox Civil Procedure: Modern Multidistrict Litigation's Place in the Textbook Understandings of Procedure*, 165 U. Pa. L. Rev. 1669 (2017).

Judge Patrick E. Higginbotham further explains, "The disconnect between the power of the transferee judge and the power that the judge exercises rests on a statute that authorizes only the transfer of cases to that judge for purposes of pretrial proceeding with return to their filing homes, as the U.S. Supreme Court made clear in *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*. The rest of the operation finds its footing in some form of consent and assertions of

implied and inherent authority sometimes on little more than empty air." See Patrick Higginbotham, *Bureaucratizing the Courts? Finding MDL's Place in the Traditional Legal Culture*, Available at: https://judicialstudies.duke.edu/articles/bureaucratizing-the-courts-finding-mdls-place-in-the-traditional-legal-culture/

Writing in dissent for the Ninth Circuit, Judge Alex Kozinski presaged the U.S. Supreme Court's ruling in *Lexecon* by characterizing self-transfer as "a remarkable power grab by federal judges," because the practice exceeded the authority Congress granted to transferee judges. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach* (*In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.*), 102 F.3d 1524, 1540 (9th Cir. 1996)(Kozinski, J., dissenting) (arguing that "the language itself [of 1407] is clear as sunlight"), rev'd, 118 S. Ct. 956 (1998). In addition, Judge Kozinski had observed that nearly 30 years of congressional silence on the issue of self-transfer merited little deference since Congress exercises little oversight in the M.D.L. area. *See Lexecon*, 102 F.3d at 1549 (Kozinski, J., dissenting) (contrasting this area with Congress' "vigorous oversight" of tax laws, where congressional silence could properly be considered ratification).

## LAW AND ARGUMENT

### I. The Multidistrict Litigation Statute

The multidistrict litigation statute (28 U.S.C. § 1407) provides, in pertinent part, "When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district *for coordinated or consolidated pretrial proceedings*. Such transfers shall be made by the judicial panel on multidistrict litigation

authorized by this section upon its determination that transfers for such proceedings will be *for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions*. Each action so transferred **shall be remanded** by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated." (Emphasis added).

"Shall" means shall. The Supreme Court has made clear that when a statute uses the word "shall," Congress has imposed a mandatory duty upon the subject of the command. See *United States v. Monsanto*, 491 U.S. 600, 607, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) (by using "shall" in civil forfeiture statute, "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied").

Use of "shall" and "may" in statutes also mirrors common usage; ordinarily "shall" is mandatory and "may" is permissive. "The mandatory 'shall'….normally creates an obligation impervious to judicial discretion." *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998).

## II.     The Heyburn Rule

The Heyburn Rule finds the *Lexecon* decision to be merely a "conundrum" which may be avoided by "resourceful" transferee judges.

The Honorable John G. Heyburn II, Chair of the Judicial Panel on Multidistrict Litigation ("Panel"), addressed the *Lexecon* decision in his article, "A View From the Panel: Part of the Solution." The following is an excerpt from Judge Heyburn's article.

"A continuing unresolved controversy over the Panel's history has concerned the power of transferee judges to retain transferred actions for trial. For nearly thirty years, numerous

-10-

transferee judges tried such actions after first transferring the actions to themselves under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406 - a practice expressly recognized in then operative Panel Rule 14(b), which provided that 'each transferred action that has not been terminated in the transferee district court shall be remanded by the Panel to the transferor district for trial, unless ordered transferred by the transferee judge to the transferee or other district under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406.'"

In 1998, however, the U.S. Supreme Court held that transferee courts lack such self-transfer authority, concluding that the practice was at odds with § 1407(a). In response to the *Lexecon* decision and at the Panel's recommendation, the Judicial Conference of the United States immediately urged Congress to enact a statutory fix, and has continued to advocate such a change, as has the Panel. Indeed, two past Panel chairs, Judge Hodges in 2006 and Judge Nangle in 1999, testified before Congress and, echoing the views of many experienced transferee judges, strongly urged that § 1407 be amended to fix the situation that *Lexecon* created. Despite these best efforts, Congress appears unlikely to act on our request at this time.

To be sure, the *Lexecon* imperative does create severe inefficiencies in some cases as the transferor judge must re-familiarize himself or herself with the remanded action (perhaps many months after it was transferred out of the district under § 1407)."

Judge Heyburn notes that transferee judges are nothing if not resourceful where necessity dictates. He points out that five appropriate tactics are available by which the *Lexecon* "conundrum" may be avoided:

> (a) Provided the plaintiff is amenable and venue lies in the transferee district, the action could be refiled there.

(b) The parties could also agree to waive objections to venue.

(c) Alternatively, the transferee court could try a "bellwether" case that was originally filed in the transferee district, the result of which may promote settlement of the transferred actions in the MDL.

(d) Another option, suggested in the *Lexecon* opinion itself, is for the transferor court to transfer the action back to the transferee court under § 1404(a).

(e) Still another option would be for the transferee judge to follow the action to the transferor court after obtaining an intracircuit or intercircuit assignment.

Judge Heyburn describes the *Lexecon* decision as a "conundrum" which may be avoided by "resourceful" transferee judges. The undersigned disagrees. The *Lexecon* decision is not a conundrum. It is not an obstacle which judicial discretion may circumvent in the name of judicial efficiency/economy or political expediency. It is the law.

### III.  The Two Statements Which Precipitated This Motion for Clarification

As noted *supra*, the MDL 2179 Court's Order (Rec. Doc. 26337) states,

"A transferee court cannot order that a case transferred to it under 28 U.S.C. § 1407 be remanded to the transferor court. That power resides with the Judicial Panel on Multidistrict Litigation. Nevertheless, the Court construes Donovan's motion as requesting a suggestion of remand;" and

"The Court has reviewed the motion and finds it lacks merit. Notably, Donovan's arguments have been rejected by the Judicial Panel on Multidistrict Litigation (No. 19-12014, Rec. Doc. 24) (denying Donovan's motion to vacate conditional transfer order)."

In response to the first statement, the undersigned agrees that "A transferee court cannot order that a case transferred to it under 28 U.S.C. § 1407 be remanded to the transferor court. That power resides with the Judicial Panel on Multidistrict Litigation." However, as explained *supra*, the U.S. Supreme Court's reading of the MDL statute in *Lexecon* provides that pretrial proceedings will at some point conclude, and, **on the recommendation of the MDL judge, the**

**JPML will remand the cases to the districts whence they came**. 28 U.S.C. § 1407(a) (2006); MANUAL FOR COMPLEX LITIGATION § 20.133 (4th ed. 2004) ("**The Panel looks to the transferee court to suggest when it should order remand.**") (Emphasis added).

The undersigned is unaware of any MDL in the country wherein a party bypasses the transferee judge and files a motion to remand directly with the JPML. The undersigned respectfully requests that this Honorable Court further explain what it means by "Nevertheless, *the Court construes Donovan's motion as requesting a suggestion of remand*."

In response to the second statement, namely, "The Court has reviewed the motion and finds it lacks merit. Notably, Donovan's arguments have been rejected by the Judicial Panel on Multidistrict Litigation (No. 19-12014, Rec. Doc. 24) (denying Donovan's motion to vacate conditional transfer order)," the undersigned respectfully requests this Honorable Court to explain how the fact that the JPML denied a motion to vacate the CTO leads the Court to conclude that a motion to remand lacks merit.

Every case, which has filed a motion to vacate the CTO and is subsequently transferred to an MDL, has had its motion to vacate the CTO denied by the JPML. If the motion to vacate the CTO had been granted, the case would remain in the original district court and would not have been transferred to the MDL.

In sum, does this Honorable Court hold that every motion to remand lacks merit if the JPML has denied a plaintiff's motion to vacate the CTO? The undersigned respectfully points out that this reasoning, while creative, is illogical and turns *Lexecon* on its head.

## **CONCLUSION**

For the reasons given above, further clarification of whether the Honorable MDL 2179 Court shall ensure each action transferred to it under 28 U.S.C. § 1407 is remanded by the JPML at or before the conclusion of pretrial proceedings to the district from which it was transferred is needed. Plaintiff requests an order be entered (a) addressing the above-referenced issue requiring clarification; and (b) stating that the Honorable MDL 2179 Court shall ensure each action transferred to it under 28 U.S.C. § 1407 is remanded by the JPML at or before the conclusion of pretrial proceedings to the district from which it was transferred.

DATED: March 17, 2020 	 Respectfully submitted,

**/s/ Brian J. Donovan**
Brian J. Donovan
Florida Bar No. 143900
3102 Seaway Court, Suite 304
Tampa, FL 33629
Tel: (352)328-7469
BrianJDonovan@verizon.net