UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL 2179 |
| | | SECTION: J(2) |
| Applies to: No. 10-03261, Shivers, et al. v. BP p.l.c., et al. | * * * | JUDGE BARBIER |
| | | MAG. JUDGE WILKINSON |

## ORDER & REASONS
[As to Defendants' Motion to Dismiss the *Shivers* Plaintiffs' First Amended Complaint]

Before the Court is Defendants' Motion to Dismiss (Rec. Doc. 26365) the *Shivers* Plaintiffs' first amended complaint (Rec. Doc. 26329).[1] The *Shivers* Plaintiffs filed an opposition (Rec. Doc. 26410), and Defendants replied (Rec. Doc. 26419). The Court, having considered the parties' arguments, the relevant record, and the applicable law, grants the motion and dismisses the *Shivers* Plaintiffs' first amended complaint with prejudice.

## I. BACKGROUND

This decision is a follow-up to the Court's Order & Reasons of February 11, 2020. (Rec. Doc. 26318).[2] There the Court considered motions to dismiss claims under general maritime law by two groups of plaintiffs, the *Andry* Plaintiffs[3] and the *Shivers* Plaintiffs, for purely emotional injuries they allegedly suffered as a result of

---

[1] "Defendants" are certain BP entities and Halliburton. "*Shivers* Plaintiffs" refers to Bradley Shivers, Mark Mead, and Scott Russell, the plaintiffs in member case no. 10-03261.
[2] *In Re Oil Spill by the Oil Rig "Deepwater Horizon," in the Gulf of Mexico, on April 20, 2010*, No. 10-md-2179, 2020 WL 638571 (E.D. La. Feb. 11, 2020).
[3] The "*Andry* Plaintiffs" refers to the three plaintiffs in member case no. 12-01713.

the blowout, explosions, and fire that occurred on the DEEPWATER HORIZON on the night of April 20, 2010. Both groups asserted claims for negligent infliction of emotional distress ("NIED"), while the *Shivers* Plaintiffs also asserted a claim for intentional infliction of emotional distress ("IIED"). Although these plaintiffs presented similar injuries and theories of recovery, the facts allegedly giving rise to their injuries were significantly different.

According to their complaint (Rec. Doc. 24812), the *Andry* Plaintiffs were fishing from a 26' boat that was positioned underneath the DEEPWATER HORIZON when the blowout began. They claimed that an unknown liquid began to rain down from the rig, which caused their eyes to burn on contact. They then heard a loud hissing noise. One of the boat's occupants had worked on rigs before and recognized what was happening. He screamed in a panic, "Go, go, go! It's time to leave! Go, go!" The *Andry* Plaintiffs quickly moved their boat away from the rig, which exploded when they were approximately 150 feet away.

The *Shivers* Plaintiffs, by contrast, were miles away from the DEEPWATER HORIZON when it exploded. According to their original complaint (No. 10-03261, Rec. Doc. 1-1), the *Shivers* Plaintiffs were fishing from a 31' boat when they saw "a distant light." It was only after viewing it through binoculars that they realized the light was in fact a rig on fire. The *Shivers* Plaintiffs then heard distress calls over VHF. They also claimed to have felt and heard a concussive sonic boom explosion. They sped to the HORIZON's location where they found "a chaotic scene of enormous proportion." They allegedly spent hours searching the area for missing persons. While

searching, the *Shivers* Plaintiffs claimed they felt and heard rumbling sounds coming from deep below the water's surface, which they believed were caused by other explosions. Despite being frightened, they continued searching until around 3:00 a.m.

As noted, both sets of plaintiffs claimed that the events of April 20, 2010 caused them to suffer mental and emotional injuries. A key issue in the February 11, 2020 ruling was whether the plaintiffs' factual allegations satisfied the "zone of danger test" or the "physical injury or impact test," either of which must be met in order to recover for NIED. The Court concluded that the *Andry* Plaintiffs satisfied the zone of danger test, at least for purposes of a Rule 12(b)(6) motion.[4] (*Id.* at 13-14). The *Shivers* Plaintiffs' allegations, however, did not show they met either test. (*Id.* at 11-13). The Court also held that the *Shivers* Plaintiffs failed to plausibly state a claim for IIED. (*Id.* at 14-15).

Accordingly, the Court denied the motion to dismiss with respect to the *Andry* Plaintiffs and granted the motion with respect to the *Shivers* Plaintiffs. (*Id.* at 15-16). The Court gave the *Shivers* Plaintiffs seven days to amend their complaint to attempt to state a facially plausible claim. The *Shivers* Plaintiffs timely filed an amended complaint that adds to their prior allegations. They now allege:

- They were approximately 15 miles away from the DEEPWATER HORIZON when it exploded. (Am. Compl. ¶ 12, Rec. Doc. 26329).

- The shockwave from the explosion "hit each Plaintiff and shook [their] boat." They heard "Mayday" calls over VHF. (*Id.* ¶¶ 8-10).

- They sped to the DEEPWATER HORIZON's location, where they found a

---

[4] The Court commented that its conclusion was not free from doubt and the issue may warrant re-examination once the factual record is developed. The Court did not address whether the *Andry* Plaintiffs satisfied the physical injury or impact test.

3

"chaotic scene of enormous proportion." The rig was "engulfed in a massive firestorm." Flames on the rig "jumped as high as 500 feet in the air." The heat was intense. (*Id.* ¶¶ 17-19).

- They saw several injured survivors lying onboard the supply vessel DAMON BANKSTON. (*Id.* ¶ 21).[5]

- Someone asked the *Shivers* Plaintiffs to search the area for missing persons. (*Id.* ¶ 26).

- "There [were] parts falling from the Deepwater Horizon into the water." "There were subsequent explosions every few minutes on the burning rig. Plaintiffs believed they were under constant threat of another massive explosion that would send debris towards them and their boat throughout their hours long search and rescue efforts" (*Id.* ¶¶ 28, 23-24).

- Their search required them to navigate their boat around floating, fiery debris. At times they used gaffs to push debris away from their boat. (*Id.* ¶¶ 25, 26).

- "Plaintiffs estimate they were within 100 to 200 feet [of] the rig at times." "[They] were frequently forced to reverse their boat due to the overwhelming heat of the burning rig." "[Their] faces were burned, and their hair was singed. The powder coating of [their vessel] was melted in places." (*Id.* ¶ 28).

- They felt and heard rumbling sounds coming from deep below the surface of the water, which shook their vessel. They believed these rumblings were caused by other explosions, which posed an immediate risk of physical harm. They were frightened, but they continued to search. (*Id.* ¶ 39).

- The *Shivers* Plaintiffs suffered scratches and bruises from leaning over rails while attempting to moor to other vessels or passing gear between vessels. One of the *Shivers* Plaintiffs smashed his hand while holding on to a lifeboat. (*Id.* ¶¶ 31-32).

- Their boat, which lacked bumpers, was damaged when it rubbed or bumped against other vessels, such as the DAMON BANKSTON. (*Id.* ¶ 33).

- After searching for hours, the *Shivers* Plaintiffs gave up at 3:00 a.m. At that point there were approximately 40 boats on the scene and helicopters overhead. (*Id.* ¶ 41).

---

[5] The DAMON BANKSTON was next to the DEEPWATER HORIZON when it exploded. Those who survived the explosions and fire on the HORIZON evacuated to the BANKSTON.

4

Contending the *Shivers* Plaintiffs' amended complaint still does not plausibly state a claim for NIED or IIED, Defendants filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Rec. Doc. 26365).

## II. DISCUSSION

The Court set forth the applicable law in its prior ruling. (*See* Rec. Doc. 26318). For the sake of brevity, this opinion omits some of that information or provides it in an abbreviated fashion.

### A. Legal Standard

To survive a motion to dismiss, the *Shivers* Plaintiffs' amended complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* There must be enough factual content for a court to draw the reasonable inference that the defendant is liable to the plaintiff. *Id.* This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Although a court must accept factual allegations in the complaint as true, it need not accept legal conclusions couched as factual allegations. *Id.* at 678.

### B. NIED: Zone of Danger

Under general maritime law, a plaintiff may not recover for emotional damages that result purely from witnessing an injury to another person. *See Naquin v. Elevating Boats, L.L.C.*, 774 F. 3d 927, 939-40 (5th Cir. 2014). However, a plaintiff

5

may recover for emotional injury caused by fear of physical injury to *himself*, provided certain requirements are met. *Id.* at 939. Among these requirements is that the plaintiff satisfy either the "zone of danger test" or the "physical injury or impact test."[6] The Court first examines whether the *Shivers* Plaintiffs' amended complaint satisfies the zone of danger test.

To be in the zone of danger, the plaintiff must be in "immediate risk of physical harm." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 224-25 (5th Cir. 2013). This is an objective standard. *See SCF Waxler Marine LLC*, 2019 WL 6174981, at *39; *Anselmi v. Penrod Drilling Corp.*, 813 F. Supp. 436, 442 (E.D. La. 1993). The plaintiff also must subjectively believe that he is in immediate risk of physical harm. *See, e.g.*, *Gaston v. Flowers Transp.,* 866 F.2d 816, 820 (5th Cir. 1989). The zone of danger test is a compromise between competing policy interests. On one hand, it recognizes that "a near miss may be as frightening as a direct hit" and thus prevents a tortfeasor from "escap[ing] liability for emotional injury caused by the apprehension of physical impact simply because of the fortuity that the impact did not occur." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 547, 556 (1994) (interpreting FELA). On the other hand, by precluding plaintiffs who are outside the zone of danger from recovering for NIED, the test limits the potential for a flood of trivial suits, the possibility of fraudulent claims that are difficult for judges and juries to detect, and the specter of unlimited and unpredictable liability. *Id.* at 557. The Supreme Court has

---

[6] The Fifth Circuit has not yet adopted or rejected the zone of danger test for NIED claims under general maritime law. However, the Court's prior ruling held that the zone of danger test does apply under general maritime law. *See* Rec. Doc. 26318 at 7-8; *see also SCF Waxler Marine LLC v. M/V Aris T*, No. 16-902, 2019 WL 6174981, at *39, --F. Supp. 3d -- (E.D. La. Nov. 19, 2019).

6

acknowledged that the zone of danger test will sometimes bar what would otherwise be a valid claim for emotional injury. *Id.*

The *Shivers* Plaintiffs contend that "[t]he crux of [their] factual allegations is that [they] 'believed they were under constant threat of another massive explosion that would send debris towards them and their boat through their hours long search and rescue efforts around the Deepwater Horizon.'" (Rec. Doc. 26410 at 7 (quoting Am. Compl. ¶ 24)). They argue that it can be reasonably inferred from this allegation that "another large explosion could have sunk [their] boat or caused severe injuries and/or death." (*Id.*). The problem with this argument is that the *Shivers* Plaintiffs do not allege that an explosion actually launched debris anywhere near their vessel, only that they feared that this could occur. In zone of danger terms, their allegations do not reflect that they *objectively* faced an *immediate* risk of physical harm. At best, their allegations show there was *a risk* that they or their vessel may be struck by flying debris. But, because debris was never thrown near their vessel, the risk of physical harm was not "immediate," at least not in the manner the relevant case law appears to require. While the zone of danger test permits recovery for a "a near miss," *Gottshall*, 512 U.S. at 547, the *Shivers* Plaintiffs' amended complaint simply does not reflect that a miss, much less a near one, occurred. As the Court observed in its prior ruling, there is nothing in the Shivers Plaintiffs' amended complaint to suggest they were any closer to the zone of danger than the plaintiffs in *Ainsworth v. Penrod Drilling Corp.*, 972 F.2d 546 (5th Cir. 1992), or *Plaisance v. Texaco*, 966 F.2d 166 (5th Cir. 1992) (en banc). (*See* Rec. Doc. 26318 at 11-12).

7

Furthermore, the Court notes that its conclusion is consistent with the Supreme Court's guidance that the zone of danger test is intended to prevent unlimited and unpredictable liability. *See Gottshall,* 512 U.S. at 557. The *Shivers* Plaintiffs allege there were 40 boats on the scene by the time they decided to stop searching. (Am. Compl. ¶ 41). The DEEPWATER HORIZON was still burning at this time. *See In Re: Oil Spill by the Oil Rig "Deepwater Horizon,"* 21 F.Supp.3d 657, 667 (E.D. La. 2014) (noting that the rig continued to burn until April 22, 2010, when it sank). If the *Shivers* Plaintiffs were correct that they were within the zone of danger due to the mere possibility that an explosion might launch debris near their vessel, then many or perhaps all of these 40 vessels would be within the zone of danger as well.

### C. NIED: Physical Injury or Impact

A plaintiff who satisfies the physical injury or impact test may be able to recover for NIED. *See Gough v. Nat. Gas Pipeline Co. of Am.*, 996 F.2d 763, 765 (5th Cir. 1993). The *Shivers* Plaintiffs contend they meet this test. They point out that the amended complaint states that their search efforts brought them close enough to the fire on the DEEPWATER HORIZON that their faces were burned and their hair was singed. They also note that they allegedly suffered multiple bruises and scratches from leaning over rails while mooring to other vessels and passing gear to other vessels, and that one of the *Shivers* Plaintiffs smashed his hand while holding on to a lifeboat. The *Shivers* Plaintiffs contend that their injuries were equal to or greater than those suffered by the plaintiff in *Gough*, discussed below.

8

At the outset, the Court notes that the *Shivers* Plaintiffs do not seek compensation for any of their claimed physical injuries; they only claim that these injuries enable them to recover for NIED. The Fifth Circuit has held that "trivial" injuries will not satisfy the physical injury or impact test. *See Ainsworth*, 972 F.2d at 547. In that case, a worker on a jack-up rig sued for emotional injuries that allegedly resulted when a helicopter crashed and exploded on the rig. *Id.* Like the *Shivers* Plaintiffs, the worker attempted to rescue those in the helicopter. He claimed that following the crash he vomited, suffered headaches, and pulled a shoulder muscle. *Id.* The Fifth Circuit held that the worker did not meet the physical injury or impact test because he suffered no physical impact and his claimed injuries were "trivial and do not support recovery." *Id.*

In contrast to *Ainsworth*, the plaintiff in *Gough* did meet the physical injury or impact test. 996 F.2d 766-67. There, a commercial fishing vessel allided with a submerged pipeline, causing "an immense explosion." *Id.* at 764. "Within seconds, a fireball swept the ship from stern to bow," killing eleven of the fourteen crew. *Id.* The plaintiff was inside the vessel's pilot house at the time, and could feel the heat from the fire. *Id.* at 766. He left the pilot house and jumped overboard moments before flames engulfed the pilot house. *Id.* The opinion further recounts,

> Even in the water, the heat was unbearable, and Captain Gough inhaled fumes from the fire. He also ingested salt water, as another victim of the disaster pulled him underwater. Besides being submerged in the ocean, Captain Gough suffered multiple contusions. Finally, some testimony suggests that Captain Gough suffered from minor burns, although no medical record confirmed these opinions.

*Id.*

9

Returning to the case at bar, the bruises, scratches, and smashed hand allegedly suffered by the *Shivers* Plaintiffs are irrelevant because their claimed emotional injuries do not result from or directly relate to these physical injuries. As noted above, the *Shivers* Plaintiffs urge that the "crux of [their] factual allegations" is their belief that they or their boat would be hit by debris launched by an explosion on the DEEPWATER HORIZON. (Rec. Doc. 26410 at 7). Neither their amended complaint nor their opposition brief suggests that they suffered emotional injuries due to apprehending injury or impact from mooring with, holding on to, or passing gear to another vessel. These injuries are incidental to their response efforts and do not form the basis of their NIED claim. Contrast this with the plaintiff in *Gough*, who incurred multiple bruises, etc., as he was attempting to flee the fire aboard his vessel—i.e., that which threatened to seriously harm or kill him. In other words, the injuries incurred by the plaintiff in *Gough* evince just how close he came to injury or death. *See also SCF Waxler Marine LLC*, 2019 WL 6174981, at *39 (holding that a worker who slipped and fell on a dock could not recover under a physical injury or impact theory for emotional injuries that allegedly resulted from his fear that he would be struck by the petitioner's vessel because "his claimed emotional injuries do not result from his alleged physical injuries").

This leaves the allegations that the *Shivers* Plaintiffs' faces were burned and their hair singed. First, the *Shivers* Plaintiffs do not appear to claim that they feared they would be consumed by the fire. Thus, these allegations appear to be as irrelevant as the other claimed injuries.

Nevertheless, even assuming that the *Shivers* Plaintiffs' emotional injuries are based at least in part on a fear that they would be seriously injured by the fire, the Court finds that they still have not plausibly alleged an NIED claim. The *Shivers* Plaintiffs state that the closest they came to the DEEPWATER HORIZON was between 100 and 200 feet. Thus, while the Court must accept the allegation that the heat was intense enough to burn their faces and singe their hair, this was not a situation where plaintiffs were licked by the flames. Furthermore, the *Shivers* Plaintiffs state that they merely had to reverse their boat to escape the heat, and frequently did so. (Am. Compl. ¶ 28). These circumstances make the *Shivers* Plaintiffs readily distinguishable from the plaintiff in *Gough*. *Cf. Gough*, 996 F.2d at 767 ("Captain Gough narrowly escaped a harrowing disaster with minor physical injuries."). The Court concludes that the *Shivers* Plaintiffs' alleged physical injuries were at most trivial.

### D. IIED

For reasons previously stated by the Court (Rec. Doc. 26318 at 14-15) as well as those argued by Defendants (Rec. Docs. 26365-1 at 11-12; 26419 at 9-10), the *Shivers* Plaintiffs fail to state a claim for IIED that is plausible on its face.

### III. CONCLUSION

For the reasons set for above,

IT IS ORDERED that Defendants' Motion to Dismiss (Rec. Doc. 26365) is GRANTED, and the *Shivers* Plaintiffs' First Amended Complaint (Rec. Doc. 26365) is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 8th day of April, 2020.

_____
United States District Judge

**Note to Clerk: Enter in 10-md-2179 and 10-03261.**