### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | * | CASE NO. 2:10-md-02179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO, ON APRIL 20, 2010 | * | SECTION: J(2) |
| | * | |
| DOCUMENT RELATES TO: | * | JUDGE:  CJB |
| 11-01987, *PINELLAS MARINE SALVAGE,* | * | |
| *INC., ET AL v. FEINBERG, ET AL;* | * | MAGISTRATE JUDGE:  JCW |
| 11-02533, *SALVESEN v. FEINBERG,* | * | |
| *ET AL*; 13-06014, *ANDREW J. DITCH* | * | |
| *v. FEINBERG, ET AL* | * | |

**************************************************************************

### REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS

**MAY IT PLEASE THE COURT:**  Defendants Kenneth R. Feinberg, Feinberg Rozen, LLP d/b/a Gulf Coast Claims Facility ("GCCF"), and William G. Green, Jr. submit this Reply Brief in consolidated response to Plaintiffs' Response in Opposition to Defendants' Motions to Dismiss the Complaints ("Opposition", Rec. Doc. 26443).

Plaintiffs' Opposition confirms that their Complaints cannot state a claim and should be dismissed.  Relying on the Oil Pollution Act ("OPA"), Plaintiffs seek to hold Defendants liable for not settling their claims for alleged injury from the *Deepwater Horizon* Incident ("Incident").  However, rather than support Plaintiffs' lawsuits, OPA precludes them.

OPA does not impose a duty on either the Responsible Party or claimants to settle claims.  Rather, OPA creates a 90-day pre-litigation period during which the parties may attempt to resolve a claim.  If the parties, for whatever reason, cannot resolve the claim through settlement within 90 days, the claimant is free to pursue litigation under OPA or file a claim against the federal Oil Spill Liability Trust Fund ("OSLTF").  Plaintiffs badly mistake OPA's encouragement of settlements with a non-existent duty to settle.

1

Here, Plaintiffs had full access to all remedies made available by OPA, and then some. Following the 90-day presentment period, each Plaintiff had the opportunity to file a lawsuit against BP alleging damages under OPA or, alternatively, to file a claim with the OSLTF. Still further, each Plaintiff could have pursued a claim for compensation to the Court Supervised Settlement Program ("CSSP") under the Deepwater Horizon Economic and Property Damage Settlement Agreement. Yet, all Plaintiffs (represented by counsel) bypassed all of these available options to seek compensation and instead have attempted to allege state common law causes of action against Defendants. This attempt fails as a matter of law.

*First*, Plaintiffs' state law claims are preempted by OPA. Plaintiffs devote substantial verbiage to OPA's "savings clause," 33 U.S.C. § 2718, but this provision is entirely irrelevant to this case. As both this Court and the 5th Circuit have held, because the *Deepwater Horizon* Incident occurred on the Outer Continental Shelf ("OCS"), there is no state law to "save". Only federal law applies. Plaintiffs are seeking alleged damages directly arising from the Incident, and therefore state law is preempted. The fact that Defendants are not themselves the Responsible Party, but rather the entities and individuals carrying out the Responsible Party's statutory duty to conduct a pre-litigation claims process, does not change the fact that OPA governs claims for liability arising from the Incident.

*Second*, even if state law is not preempted, Plaintiffs fail to state a claim under state law. Plaintiffs rely entirely on OPA in support of a supposed duty to settle, but, as explained above and in Defendants' opening briefs, OPA imposes no such duty. Moreover, none of the Plaintiffs can establish that they incurred a cognizable injury as a result of the fact that Defendants allegedly did not settle their claims. Each Plaintiff had multiple options, consistent with OPA's structure, to

pursue compensation — a lawsuit against BP, a claim with the OSLTF, or a CSSP claim — but did not do so.  It was Plaintiffs' failure to pursue available remedies, not the actions of Defendants, that give rise to any harm to Plaintiffs.  Still further, Plaintiffs' Opposition does not even attempt to address the multitude of dispositive problems with their other tort claims or the fact that Plaintiff Ditch's claims are barred by the Class release.

For all of these independent reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Complaints with prejudice.

## I.     PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED

### A.     *Plaintiffs' Claims Are Governed by the Prior Orders of this Court Dismissing All State Law Claims Related to the Deepwater Horizon Incident*

Plaintiffs cite selected portions from OPA § 2718 to suggest *__all__* state law claims to recover damages are viable under OPA.[1]  This ignores the doctrine of conflict preemption and the orders of this Court[2] and the Fifth Circuit[3] interpreting these OPA provisions in the context of the *Deepwater Horizon* Incident.

The Fifth Circuit in *In re Deepwater Horizon*, 745 F.3d 157 (5th Cir. 2014) addressed claims brought by Louisiana costal parishes against BP and other defendants to recover penalties under Louisiana law.  The Fifth Circuit held that state law claims are preempted because the Incident occurred on the Outer Continental Shelf ("OCS"), a federal enclave.[4]  Notably, the Fifth Circuit, applying *International Paper Co. v. Ouellette*, 479 U.S. 481 (1987), recognized that

---

[1] Opposition at p.11-13.
[2] *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 808 F.Supp.2d 943, 956 (E.D. La. 2011).
[3] *In re Deepwater Horizon*, 745 F.3d 157, 174 (5th Cir. 2014).
[4] *Id*. at 165-166.

allowing state law claims would undermine the federal scheme and prompt "[c]haotic confrontations among states" over which law should apply.[5]  Likewise, the Fifth Circuit recognized that "the affected parties can sue for the generous remedies … that the OPA offers."[6]

The Fifth Circuit then rejected the argument that the "savings clauses" in the Clean Water Act and OPA saved the parishes' state law claims.  Applying *Ouellette*, the Court held that "there are no state remedies to 'save'" because the entire issue is federal to begin with.[7]  "The OPA applies as the law of the OCSLA point source and, along with the CWA penalties, furnishes a comprehensive remedial regime for affected states' governmental and private claims ….  The CWA and the OPA 'savings' clauses preserve but do not create state law claims."[8]  Further, the Court held "savings clauses must be read with particularity" and "a savings clause does not disrupt the ordinary operation of conflict preemption."[9]

The same analysis applies here.  Allowing state law claims against Defendants here would similarly undermine the scheme Congress created and lead to the same "confrontations among states."  Plaintiffs were free to sue BP directly and seek OPA's "generous remedies," yet declined to do so.

Thus, this Court and the Fifth Circuit have roundly rejected Plaintiffs' argument that the OPA savings clauses displaces conflict preemption of state law claims relating to the Incident.  The fact that the GCCF received OPA claims on behalf of BP does not in any way change the

---

[5] *Id*. at 167, 170.  Also, contrary to the statement on p.5 of the Opposition, Defendants have not "conceded OCSLA does not apply."  Instead, Defendants agree with the Fifth Circuit that OCSLA does apply.  Because OSCSLA applies, there is no state law to "save"; the only law here is federal, and OPA provides that federal law.

[6] *Id*. at 170.

[7] *Id*. at 171.

[8] *Id*.

[9] *Id*.

preemption analysis.  As this Court explained, the GCCF was "acting for and on behalf of BP in fulfilling its statutory obligations as the 'responsible party' under the Oil Pollution Act of 1990."[10] That the GCCF acted on BP's behalf in operating an OPA presentment process does not make Plaintiffs' claims any less about alleged liability for an oil spill on the Outer Continental Shelf and thus solely governed by federal law.  Plaintiffs' suggestion that their damages "did not result from the oil spill" is vacuous.  Their entire claim is for alleged losses from the Incident.

### B.  Plaintiffs Fail to Distinguish Their State Law Claims from Those Dismissed in the Prior Rulings of this Court

Finally, none of the cases cited by Plaintiffs undermine the conclusion that Plaintiffs' state law claims are preempted.   In *United States v. Locke,* 529 U.S. 89 (2000), for instance, the Supreme Court addressed OPA preemption and savings clauses in the context of *state* regulations on oil tankers, not claims resulting from an oil spill.[11]  There, the Supreme Court ultimately held the Ports and Waterways Safety Act precluded the state regulations.[12]  *Locke* is thus irrelevant. Indeed, the Fifth Circuit addressed *Locke* in *In re Deepwater Horizon* and held that nothing about it saves state law claims relating to the *Deepwater Horizon* Incident.[13]

Similar flaws apply to the Plaintiffs' other cited cases.  The First Circuit in *South Port Marine, LLC v. Gulf Oil Ltd. Partnership*, for example, held the Seventh Amendment right to a jury trial applies to claims under OPA[14] and that OPA displaces the general maritime claim for punitive damages.[15]  On their face, neither holding relates to Plaintiffs' claims here.  This dispute

---

[10] Rec. Doc. 1098 at p.14.
[11] *Id.* at 94.
[12] *Id.* at 116.
[13] 745 F.3d at 173.
[14] 234 F.3d 58, 64 (1st Cir. 2000).
[15] *Id.* at 66.

is not about jury trials or punitive damages; instead, it concerns whether Defendants owe a duty to Plaintiffs.  For its part, the Eleventh Circuit in *Boca Ciega Hotel, Inc. v. Bouchard Transportation Co.* addressed displacement of maritime law, not preemption of state law[16] and whether OPA presentment is a condition precedent to filing suit.[17]  These issues are also not before the Court.

Plaintiffs also cite several cases addressing OPA where oil discharge and claims were limited to *state* territorial waters alone and did not involve *federal* waters or the OCS.  These cases lend no support to Plaintiffs here where the oil spill occurred on the OCS, a federal enclave. *Williams v. Potomac Electric Power Co.* addressed an oil spill that occurred in Maryland waters.[18] *National Shipping Co. of Saudi Arabia  v. Moran Mid-Atl. Corp.* involved a collision between a cargo vessel and a tug boat in Virginia waters and addressed claims for subrogation, indemnity, contribution, and restitution.[19]  *Russo v. M/T Dubai Star* addressed an oil spill that occurred in California state territorial waters and did not even address preemption.[20]  Not one of these cases has any relevance for the key point recognized by this Court and the Fifth Circuit in *In re Deepwater Horizon*: an accident that occurs on the OCS is governed exclusively by federal law.

*Ortega v. HomEq Servicing* is another unpublished opinion from another circuit that is not on point.[21]  *Ortega* addressed federal question jurisdiction for purposes of removal[22] and analyzed whether the federal Fair Debt Collection Practices Act or the Truth in Lending Act preempted the

---

[16] 51 F.3d 235 (11th Cir. 1995).
[17] *Id.* at 236.
[18] 115 F.Supp.2d 561 (D. Md. 2000).
[19] 924 F. Supp. 1436, 1440, 1446 (E.D. Va. 1996), *aff'd sub nom.*, *Nat'l Shipping Co. of Saudi Arabia v. Moran Trade Corp. of Delaware*, 122 F.3d 1062 (4th Cir. 1997).
[20] No. C 09-05158 SI, 2010 WL 1753187, at *1-2 (N.D. Cal. Apr. 29, 2010).
[21] No. CV 09-02130MMM(DTBX), 2010 WL 383368 (C.D. Cal. Jan. 25, 2010); *see* Opposition, p. 12.
[22] *Id.* at *4.  Further, the Ninth Circuit strictly construes § 1441 against removal jurisdiction requiring any question of whether or not removal jurisdiction applies to be determined in favor of remand. *Id.* at *3.

plaintiffs state law claims.[23]   *Ortega* is not instructive to any of the relevant questions here. Similarly, *Marathon Pipe Line Co. v. LaRoche Industries, Inc.* addressed claims by an OPA responsible party against an allegedly responsible third party and claims for contribution and subrogation pursuant to OPA.[24]   The court found the presentment of OPA claims to the responsible party was a jurisdictional requirement[25] but OPA contribution and subrogation claims were not subject to the § 2713 presentment requirement.[26]   No state law claims were at issue.

In short, none of these cases "save" Plaintiffs' claims from OPA preemption, which flows naturally from the text and structure of OPA and the Fifth Circuit's analysis in *In re Deepwater Horizon*.

## II.     PLAINTIFFS CANNOT PLEAD PLAUSIBLE STATE LAW CLAIMS.

Even if they were not preempted (they are), the Court should still dismiss Plaintiffs' claims because they do not allege plausible state law theories of liability.

As explained in Defendants' Motions to Dismiss, all of Plaintiffs' state law claims suffer from multiple dispositive problems.   First and foremost, Defendants could not have caused Plaintiffs any cognizable injury.   Defendants did not preclude Plaintiffs from recovering their alleged losses.   Each Plaintiff had at least three different options for seeking recovery:  (i) sue BP, (ii) file a claim with the OSLTF, or (iii) participate in the Economic and Property Damage settlement agreement.   Plaintiffs, all of whom were represented by counsel, failed to pursue any of

---

[23] *Id.* at *1.
[24] 944 F. Supp. 476, 479 (E.D. La. 1996).   "In its complaint, [plaintiff], as the statutory responsible party, seeks only to avail itself of these remedies provided for in the OPA."  *Id.*
[25] *Id.* at 477.
[26] *Id.* at 480.

these options.  This failure, not the inability to enter into a settlement, caused any losses incurred by Plaintiffs.

Still further, Plaintiffs' argument that OPA imposes a duty to settle is wrong as a matter of law.  Not one word of OPA can be read to create such a duty, which would be entirely novel and unprecedented.  Rather, OPA simply encourages parties to settle by creating a 90-day presentment period, after which the claimant is free to sue the Responsible Party or to make a claim with the OSLTF.  This statutorily prescribed claims structure — a short opportunity for settlement followed by opportunity to litigate — confirms that OPA does not impose a duty to settle.  Plaintiffs appear to recognize this reality, as their Opposition argues OPA is designed to "encourage" (not mandate) settlement.  But there is a wide chasm between a process designed to "encourage" settlement (what Congress created) and a process that "requires" settlements (what Plaintiffs wish Congress had created).

Notably absent from Plaintiffs' Opposition is any support for the notion that Florida law creates a duty to settle OPA claims.  There is none.  As set forth in Defendants' Motion, there are numerous barriers to a finding that OPA could give rise to  state law claims for purely economic losses, including that, under Florida law, a federal statute or regulation that sets out a general or abstract standard of care cannot establish a state law negligence claim.[27]

Plaintiffs point the Court to Exhibit "E" of their brief, which appears to be Plaintiff Salvesen's opposition to the prior Motion to Dismiss filed in the Middle District of Florida in 2011,

---

[27] *See* Defendants' Memo addressing Plaintiff Pinellas Marine Salvage, et al,. Rec. Doc. 26431-1, at p.17; Rec. Doc. 26432-1 at p.17 for Plaintiff Salvesen, and; Rec. Doc. 26433-1 at p.18 for Plaintiff Ditch.

before this case was transferred to the MDL.[28]  Nothing in Exhibit "E" supports the existence of a state law duty.  Rather, the majority of the state law discussion in that opposition only identifies the required elements of Plaintiffs' claims under Florida law.

Finally, Plaintiffs' Opposition is silent as to how any of the alleged statements by Defendants could give rise to a claim for fraud, fraudulent inducement, promissory estoppel or unjust enrichment.  As set forth in Defendants' Motions, every statement Plaintiffs point to as allegedly fraudulent was either demonstrably true on the face of the Complaint or was an opinion or promise that, pursuant to Florida law cannot give rise to a fraud claim.  Nor can Plaintiffs prove that they reasonably relied on any of the allegedly false statements that supposedly give rise to their claims.  Finally, Plaintiffs cannot point to any benefit conferred by Plaintiffs to the GCCF giving rise to unjust enrichment.  Plaintiffs were statutorily required to present their claims to the GCCF (or its predecessor claims facility).  Thus, the sentiment underlying all these claims — that the GCCF maliciously lured Plaintiffs into engaging in a process that was ultimately a waste of time — is directly at odds with what Plaintiffs were statutorily required to do to recover for their alleged losses.

For these reasons, independent of preemption, Plaintiffs state law claims must be dismissed.

## III.    CONCLUSION

Plaintiffs' claims are both preempted and not viable under Florida Law.  As such, all three Complaints should be dismissed with prejudice.

---

[28] Opposition at p.15.  This is improper.  *See* LR 7.7.  Nonetheless, out of an abundance of caution, Defendants respond to the arguments offered in "Exhibit E."

Respectfully submitted:

**LONG LAW FIRM, L.L.P.**

/s/ Mark L. Barbre
**MICHAEL A. PATTERSON** (#10373)
**MARK L. BARBRE** (#30385) -T.A.
**JOSEPH WESTON CLARK** (#37378)
**SETH F. LAWRENCE** (#38316)
1800 City Farm Drive, Building 6
Baton Rouge, Louisiana 70806
Telephone:    (225) 922-5110
Facsimile:    (225) 922-5105
map@longlaw.com
mlb@longlaw.com
wjc@longlaw.com
sfl@longlaw.com

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Reply Brief Support of Defendants' Motion to Dismiss* has been served on all counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of April, 2020.

/s Mark L. Barbre
Mark L. Barbre