UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig<br>"Deepwater Horizon"<br>in the Gulf of Mexico,<br>on April 20, 2010 | MDL 2179<br><br><br>SECTION: J |
| *This Document Relates to:*<br>All Cases and | JUDGE BARBIER |
| *Salvesen v. Feinberg, et al.,*<br>*2:11-cv-02533*<br>*Pinellas Marine Salvage Inc., et al. v. Feinberg, et al.,*<br>*2:11-cv-01987*<br>*Ditch v. Feinberg et al.,*<br>*2:13-cv-06014*<br>_____/ | MAG. JUDGE WILKINSON |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
SECOND MOTION FOR CLARIFICATION
OF THE ISSUE OF REMAND**

The following Memorandum is respectfully submitted in support of Plaintiffs' Second Motion for Clarification of the Issue of Remand.

**THE ISSUE REQUIRING CLARIFICATION**

Plaintiffs respectfully move the Court to enter an order clarifying whether the Honorable MDL 2179 Court shall ensure each action transferred to it under 28 U.S.C. § 1407 is remanded by the JPML at or before the conclusion of pretrial proceedings to the district from which it was transferred.

**BACKGROUND**

**I.      How Multidistrict Litigation Works**

After the JPML has selected a transferee court and therefore established the MDL, future cases involving the same subject matter, called "tag-along[s]," *See* J.P.M.L. R. P. 1.1(h) (2010),

are filed in federal district courts where venue and personal jurisdiction are appropriate (cases may also, of course, be filed in state court and removed. 28 U.S.C. § 1448 (2006)). Requiring full-blown briefing and argument before the JPML for every tag-along case, of which there may be thousands, (John G. Heyburn II, *A View From the Panel: Part of the Solution*, 82 TUL. L. REV. 2225, 2233 (2008) (noting that the JPML transfers thousands of tag-along cases each year) would be extremely inefficient, so the JPML has adopted a streamlined procedure for transferring these cases to the MDL. (*See* WRIGHT ET AL., 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3866 (3d ed. 2007), § 3865, at 490-91. (A party seeking transfer - or a non-party involved in the MDL - must make the JPML aware of the existence of the case, and the JPML clerk will conditionally transfer the case unless a party objects. If no party objects within seven days, the case is transferred, but if there is an objection, the JPML will hear argument). Unless the tag-along case clearly does not belong in the MDL, these cases are rather seamlessly transferred to the MDL court. *Id.* at 494 ("In the main . . . the later cases are consolidated and coordinated with the earlier cases.").

Once a case is transferred, the control of the case is out of the JPML's hands and in the control of the transferee judge. The JPML "has neither the power nor the inclination to dictate in any way the manner in which the coordinated or consolidated pretrial proceedings are to be conducted by the transferee judge." *In re* Sundstrand Data Control, Inc. Patent Litig., 443 F. Supp. 1019, 1021 (J.P.M.L. 1978). Nor does the JPML review the actions of an MDL judge. *See In re* Data Gen. Corp. Antitrust Litig., 510 F. Supp. 1220, 1226-27 (J.P.M.L. 1979). The MDL transferee judge has the full measure of power over "pretrial proceedings" that the transferor court would have had if the transfer had not occurred. *See* WRIGHT ET AL., 15 CHARLES

ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3866 (3d ed. 2007), § 3866, at 510-11 ("[T]he transferee judge inherits the entire pretrial jurisdiction that the transferor judge would have exercised."). The MDL court's powers are consequently quite broad, ranging from coordinating and resolving discovery-related matters (*See, e.g.*, United States *ex rel*. Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 238 F. Supp. 2d 270, 279 (D.D.C. 2002) (ordering production of documents at deposition); *In re* Air Crash at Charlotte, N.C. on July 2, 1994, 982 F. Supp. 1052, 1056 (D.S.C. 1995) (motion to compel), to deciding evidentiary motions such as *Daubert* motions (*See, e.g.*, *In re* Trasylol Prods. Liab. Litig., 709 F. Supp. 2d 1323 (S.D. Fla. 2010) (resolving *Daubert* motion)), and ruling on motions for class certification, *See, e.g.*, *In re* Monumental Life Ins. Co., 365 F.3d 408, 411 (5th Cir. 2004) (affirming MDL court's denial of class certification in transferred action); *In re* Digitek Prods. Liab. Litig., 821 F. Supp. 2d 822 (S.D. W. Va. 2010); *see also* WRIGHT ET AL., 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3866 at 526-27 (3d ed. 2007) ("[C]lass action rulings are particularly suited for decision by the transferee court because that judge has an overall view of the litigation and it is important that there not be a conflict between or among the transferor courts…."), and motions to remand (*See, e.g.*, *In re* Methyl Tertiary Butyl Ether Prods. Liab. Litig., 399 F. Supp. 2d 356 (S.D.N.Y. 2005) (motion to remand)).

## LAW AND ARGUMENT

**I.     The Multidistrict Litigation Statute makes clear that each action transferred to the Honorable MDL 2179 Court under 28 U.S.C. § 1407 shall be remanded by the JPML at or before the conclusion of pretrial proceedings to the district from which it was transferred.**

The multidistrict litigation statute (28 U.S.C. § 1407) provides, in pertinent part, "When

civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district *for coordinated or consolidated pretrial proceedings*. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be *for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions*. Each action so transferred ***shall be remanded*** by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated." (Emphasis added).

"Shall" means shall. The U.S. Supreme Court has made clear that when a statute uses the word "shall," Congress has imposed a mandatory duty upon the subject of the command. *See United States v. Monsanto*, 491 U.S. 600, 607, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) (by using "shall" in civil forfeiture statute, "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied").

Use of "shall" and "may" in statutes also mirrors common usage; ordinarily "shall" is mandatory and "may" is permissive. "The mandatory 'shall'….normally creates an obligation impervious to judicial discretion." *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998).

Justice Souter, in delivering the opinion of the *Lexecon* Court, explained, "If we do our job of reading the statute whole, we have to give effect to this plain command, *see Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U. S. 469, 476 (1992), even if doing that will reverse the longstanding practice under the statute and the rule, *see Metropolitan Stevedore Co.* v. *Rambo* (1995) ('Age is no antidote to clear inconsistency with a statute') (quoting *Brown* v. *Gardner*,

-4-

513 U. S 115, 122 (1994)). The language is straightforward, and with a straightforward application ready to hand, statutory interpretation has no business getting metaphysical."

**II.      The U.S. Supreme Court has made clear that each action transferred to the Honorable MDL 2179 Court under 28 U.S.C. § 1407 shall be remanded by the JPML at or before the conclusion of pretrial proceedings to the district from which it was transferred.**

The MDL court possesses significant powers but its jurisdiction is incomplete because it cannot try transferred actions without the parties' consent. *In re* Showa Denko K.K. L-Tryptophan Prods. Liab. Litig., 953 F.2d 162, 165 (4th Cir. 1992) ("The authority for consolidating cases on the order of the judicial panel on multi-district litigation….is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred."). Nor can the MDL court transfer a case to itself on a permanent basis in order to try it. Until the U.S. Supreme Court's decision in *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (holding that the statute commanded this result "even if doing that will reverse the longstanding practice under the statute and the rule"), MDL courts commonly transferred cases to themselves in order to try them. *See also* Courtney E. Silver, *Procedural Hassles in Multidistrict Litigation: A Call for Reform of 28 U.S.C. § 1407 and the* Lexecon *Result*, 70 OHIO ST. L.J. 455, 461 (2009) (recalling that during "the first thirty years of MDL practice, it was quite common" for an MDL to transfer cases to itself for trial). The U.S. Supreme Court unanimously ended that practice, holding that, despite longstanding contrary practice, the plain language of § 1407(a) dictates that the JPML "shall" remand cases at the close of pretrial proceedings. *Lexecon*, 523 U.S. at 32. There have been numerous attempts to persuade Congress to reverse *Lexecon* by statute, but none have come to fruition. *See* Richard L. Marcus,

-5-

*Cure-All for an Era of Dispersed Litigation? Toward a Maximalist Use of the Multidistrict Litigation Panel's Transfer Power*, 82 TUL. L. REV. 2245, 2292–95 (2008), at 2291 ("[S]ince [*Lexecon*], bills to add authority to transfer for trial to the Panel's authority have been introduced but not passed.") (discussing choice-of-law concerns in the context of MDL); Thomas E. Willging & Emery G. Lee III, *From Class Actions to Multidistrict Consolidations: Aggregate Mass-Tort Litigation After* Ortiz, 58 U. KAN. L. REV. 775, 776 (2010) (discussing the substantial growth of aggregate tort litigation in MDL proceedings). As a result, an MDL court may not try a case transferred to it for pretrial proceedings unless the parties consent to trial *See* WRIGHT, MILLER & COOPER, 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3866 (3d ed. 2007), § 3866.2 at 555 (noting that parties may consent to trial in the MDL court).

The traditional model for MDL, reflected in its legislative history *See* H.R. REP. NO. 90-1130, 3-4 (1968) ("The proposed statute affects only the pretrial stages in multidistrict litigation.") and the U.S. Supreme Court's reading of the MDL statute in *Lexecon*, Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 36-37 (1998) ("[T]he statute places an obligation on the Panel to remand no later than the conclusion of pretrial proceedings in the transferee court, and no exercise in rulemaking can read that obligation out of the statute.") provides that pretrial proceedings will at some point conclude, and, on the recommendation of the MDL judge, the JPML will remand the cases to the districts whence they came. 28 U.S.C. § 1407(a) (2006); MANUAL FOR COMPLEX LITIGATION § 20.133 (4th ed. 2004) ("The Panel looks to the transferee court to suggest when it should order remand.").

**III.     The "Black Hole"**

Pinellas Marine Salvage Inc., et al. v. Feinberg, et al.; Salvesen v. Feinberg, et al.; and Ditch v. Feinberg et al. were sentenced to the proverbial "Black Hole" where they were automatically and indefinitely stayed for nearly a decade. Multidistrict litigation has frequently been described as a "Black Hole" because transfer is typically a one-way ticket. Indeed, the JPML has abdicated its proper role by providing no recourse to remedy or to exit an MDL "Black Hole." *See, e.g.*, *In re* U.S. Lines, Inc., No. 97-CIV-6727, 1998 WL 382023, at *7 (S.D.N.Y. July 9, 1998) (explaining appellants' description of the asbestos multidistrict litigation as "a black hole" and "the third level of Dante's inferno"); Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. 2323, 2330 (2008) ("Indeed, the strongest criticism of the traditional MDL process is that the centralized forum can resemble a 'black hole,' into which cases are transferred never to be heard from again."); John G. Heyburn II & Francis E. McGovern, *Evaluating and Improving the MDL Process*, 38 LITIGATION 27, 31 (2012) ("The single most prominent complaint about multidistrict litigation arises from counsel's negative experiences in so-called black hole cases - those that seem not to move at an acceptable pace."); Eduardo C. Robreno, *The Federal Asbestos Product Liability Multidistrict Litigation (MDL 875): Black Hole or New Paradigm?*, 23 WIDENER L. J. 97, 126 (2013) ("Ultimately, neither the court nor the parties were ready, willing, or able to move [asbestos] cases to trial and settlement. This stage of litigation led some litigants to refer to MDL 875 as a 'black hole,' where cases disappeared forever from the active dockets of the court.").

By all accounts, the multidistrict litigation statute's idealized vision differs dramatically from the real-world practice of MDL. Indeed, most MDL cases are understood by all involved to

be unamenable to trial at the outset. As one judge put it, "[i]t's the culture of transferee courts. You have failed if you transfer it back." Abbe R. Gluck *Unorthodox Civil Procedure: Modern Multidistrict Litigation's Place in the Textbook Understandings of Procedure*, 165 U. Pa. L. Rev. 1669 (2017).

MDLs depend almost entirely on consent and, in turn, disrupt traditional relationships among their players, turning judges and lawyers into deeply collaborative partners in (as one judge put it) "practical problem solving." MDLs have created a judicial elite among the federal judges chosen to lead them, subverting the baseline premise of horizontal equality among federal district judges and instantiating Judge Richard Posner's view that federal judges, with life tenure and little prospect for formal promotion, are eager to find some way to distinguish themselves from the pack. *See* RICHARD A. POSNER, HOW JUDGES THINK 132 - 47 (2008).

The MDL judge in many ways acts more like a modern administrator than the judge the FRCP envisions, not least because, like agencies, the particular MDL judges who are chosen for these cases are delegated to specifically for their expertise in practical administration. *See* Alexandra D. Lahav, *The Law and Large Numbers: Preserving Adjudication in Complex Litigation*, 59 FLA. L. REV. 383, 403 (2007); See *also,* Abbe R. Gluck *Unorthodox Civil Procedure: Modern Multidistrict Litigation's Place in the Textbook Understandings of Procedure*, 165 U. Pa. L. Rev. 1669 (2017).

**IV.    The power that Judge Barbier exercises,** *in regard to remand***, rests on little more than "empty air."**

Judge Patrick E. Higginbotham explains, "The disconnect between the power of the transferee judge and the power that the judge exercises rests on a statute that authorizes only

the transfer of cases to that judge for purposes of pretrial proceeding with return to their filing homes, as the U.S. Supreme Court made clear in *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*. The rest of the operation finds its footing in some form of consent and assertions of implied and inherent authority sometimes on little more than empty air." *See* Patrick Higginbotham, *Bureaucratizing the Courts? Finding MDL's Place in the Traditional Legal Culture*, Available at: https://judicialstudies.duke.edu/articles/bureaucratizing-the-courts-finding-mdls-place-in-the-traditional-legal-culture/

Writing in dissent for the Ninth Circuit, Judge Alex Kozinski presaged the U.S. Supreme Court's ruling in *Lexecon* by characterizing self-transfer as "a remarkable power grab by federal judges," because the practice exceeded the authority Congress granted to transferee judges. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach* (*In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.*), 102 F.3d 1524, 1540 (9th Cir. 1996)(Kozinski, J., dissenting) (arguing that "the language itself [of 1407] is clear as sunlight"), rev'd, 118 S. Ct. 956 (1998). In addition, Judge Kozinski had observed that nearly 30 years of congressional silence on the issue of self-transfer merited little deference since Congress exercises little oversight in the M.D.L. area. *See Lexecon*, 102 F.3d at 1549 (Kozinski, J., dissenting) (contrasting this area with Congress' "vigorous oversight" of tax laws, where congressional silence could properly be considered ratification).

## **THE HEIGHTENED NEED FOR CLARIFICATION**

On February 26, 2020, Plaintiffs filed a Motion for Clarification (Rec. Doc. 26344) moving the Court to enter an order clarifying whether the Honorable MDL 2179 Court applies

the choice-of-law rules of the state in which the transferor court sits. (*See* Exhibit "A"). On March 2, 2020, the Honorable MDL 2179 Court issued an Order (Rec. Doc. 26357) denying the Motion for Clarification. On March 17, 2020, Plaintiffs filed their first Motion for Clarification (Rec. Doc. 26395) moving the Court to enter an order clarifying whether the Honorable MDL 2179 Court shall ensure each action transferred to it under 28 U.S.C. § 1407 is remanded by the JPML at or before the conclusion of pretrial proceedings to the district from which it was transferred. This Motion for Clarification remains pending.

In sum, Plaintiffs are left in the dark in regard to the choice-of-law rules applied by the Honorable MDL 2179 Court and whether the Honorable MDL 2179 Court shall ensure each action transferred to it under 28 U.S.C. § 1407 is remanded by the JPML at or before the conclusion of pretrial proceedings to the district from which it was transferred.

The need to clarify the issue of remand is clearly shown by two recent MDL 2179 Court decisions (Rec. Doc. 26337 and Rec. Doc. 28):

(1) an Order (Rec. Doc. 26337) (*See* Exhibit "B") denying Brian J. Donovan's Motion to Remand (Rec. Doc. 26330) *Donovan v. Herman*, 2:19-cv-12014, to the Middle District of Florida, the district from which it was transferred pursuant to 28 U.S.C. § 1407. The MDL 2179 Court's Order states, in pertinent part,

> "A transferee court cannot order that a case transferred to it under 28 U.S.C. § 1407 be remanded to the transferor court. That power resides with the Judicial Panel on Multidistrict Litigation. Nevertheless, the Court construes Donovan's motion as requesting a suggestion of remand;" and

> "The Court has reviewed the motion and finds it lacks merit. Notably, Donovan's arguments have been rejected by the Judicial Panel on Multidistrict Litigation (No. 19-12014, Rec. Doc. 24) (denying Donovan's motion to vacate conditional transfer order)."

(2) an Order (Rec. Doc. 28) (*See* Exhibit "C") granting Defendant Herman's second Motion to Dismiss Plaintiff Donovan's complaint with prejudice. As explained below, in its March 27, 2020 Order, the MDL 2179 Court's uniquely creative reasoning allows it to circumvent the U.S. Supreme Court's holdings in *Van Dusen* and *Ferens* and hold that **Louisiana law governs *Donovan v. Herman*.** This allows Judge Barbier to conveniently and unfathomably find, "As a result, Donovan's [**twelve**] claims are untimely under La. R.S. 9:5605(a)."

I.  **The Credibility of a Court's Ruling is Inversely Proportional to the Court's Uniquely Creative Reasoning.**

Plaintiffs respectfully point out that as the MDL 2179 Court's reasoning becomes more and more uniquely creative in its Orders, this Honorable Court's credibility decreases. The following examples are instructive.

A.  **The Heyburn Rule**

The Honorable John G. Heyburn II, Chair of the JPML, addressed the *Lexecon* decision in his article, "A View From the Panel: Part of the Solution." Judge Heyburn finds the *Lexecon* decision to be merely a "conundrum" which may be avoided by "resourceful" transferee judges. The undersigned disagrees. The *Lexecon* decision is not a conundrum. It is not an obstacle which judicial discretion may circumvent in the name of judicial efficiency/economy or political expediency. It is the law. (*See* Exhibit "D," pp. 10 - 12).

B.  **The Court's Reasoning in *Donovan v. Herman* is Instructive**

On February 12, 2019, the undersigned filed a lawsuit against Defendant Stephen J. Herman in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. (*See* Exhibit

"E"). The Complaint, when read in its entirety, proves that the undersigned stated with particularity each of the twelve causes of action filed against Defendant Herman in the instant case. Hence, the complaint is 130 pages in length. The Complaint is pled with specificity. It is not merely "a sprawling document" as this Honorable Court alleges in its Order and Reasons.

On April 1, 2019, Defendant Herman filed his first Motion to Dismiss with the USMDFL. The case was subsequently transferred by the JPML to the MDL 2179 Court on July 31, 2019.

On February 5, 2020, Defendant Herman filed his second Motion to Dismiss in the MDL 2179 Court. (*See* Exhibit "F").

On February 19, 2020, the undersigned filed his response in opposition to Defendant Herman's motion to dismiss. (*See* Exhibit "G").

On March 27, 2020, the MDL 2179 Court grants Herman's motion and dismisses Donovan's complaint with prejudice. (*See* Exhibit "H").

In his second Motion to Dismiss, Defendant Herman alleges, in pertinent part, "All of the claims which appear to be asserted in the Complaint are perempted under Louisiana Revised Statute 9:5605(a)."

Defendant Herman fails to mention that the U.S. Supreme Court held in *Van Dusen* and *Ferens* that the policies underlying the holdings of *Erie* and *Klaxon* mandated that the law, including the choice-of-law rules, of the transferor court, rather than those of the transferee court, must be applied to a case that has been transferred pursuant to 28 U.S.C. § 1404(a). *Ferens v. John Deere Co.*, 494 U.S. 516, 532 (1990); *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

The following is an example of how the MDL 2179 Court's uniquely creative reasoning allows it to circumvent the U.S. Supreme Court's holdings in *Van Dusen* and *Ferens*.

"….the Court's own research reveals that **Florida's choice of law regime applies the law of the state that has most this significant relationship to the parties and the occurrence**. *See Merkle v. Robinson*, 737 So.2d 540, 542 (Fla. 1999). Donovan is an attorney in Florida. Herman is an attorney in Louisiana. No contract exists between them. Donovan's claims concern actions Herman allegedly took in his role as a member of the PSC and as Plaintiffs' Co-Liaison Counsel, leadership positions in an MDL that is centralized in Louisiana. Herman's appointments came from this Court, which sits in Louisiana. (Rec. Docs. 110, 506). **All attorneys who appear in this MDL, including both Donovan and Herman, are subject to this Court's disciplinary authority** (Rec. Doc. 7812) and Louisiana's Rules of Professional Conduct. *See In Re: Deepwater Horizon*, 824 F.3d 571 (5th Cir. 2015) (affirming this Court's decision to sanction attorneys in MDL 2179 for violations of the Louisiana Rules of Professional Conduct); *see also* Rec. Doc. 26089 at 8. **Considering these factors, the Court holds that Louisiana has the most significant relationship to the parties and the events giving rise to this dispute**. **As a result, Donovan's claims are untimely under La. R.S. 9:5605(a)**....Herman cites Louisiana case law indicating that no fiduciary duty exists between these parties. (Rec. Doc. 26269-1 at 2 (citing *Scheffler v. Adams & Reese*, 950 So. 2d 641, 652-53 (La. 2007)). As explained above, **Louisiana law governs this dispute.**" (Rec. Doc. 28, Filed 03/27/20, attached hereto as Exhibit "H").

Plaintiffs very respectfully point out that all parties seeking justice, and not merely judicial efficiency, deserve less creative and more thoughtful reasoning from our courts.

This date, April 20, 2020, is the tenth anniversary of the BP oil well blowout in the Gulf of Mexico. Plaintiffs, indeed all victims of this BP oil well blowout, continue to suffer damages from three separate sources: (a) once from the oil spill, the environmental and economic damages of which have devastated their way of life; (b) again by being left in financial ruin as a direct result of Defendants' tortious acts; and (c) a third time for daring to demand justice from the MDL 2179 Court which has consumed, and will continue to consume, their time, energy and hopes for years to come.

## CONCLUSION

For the reasons given above, further clarification of whether the Honorable MDL 2179 Court shall ensure each action transferred to it under 28 U.S.C. § 1407 is remanded by the JPML at or before the conclusion of pretrial proceedings to the district from which it was transferred is needed. Plaintiff requests an order be entered (a) addressing the above-referenced issue requiring clarification; and (b) stating that the Honorable MDL 2179 Court shall ensure each action transferred to it under 28 U.S.C. § 1407 is remanded by the JPML at or before the conclusion of pretrial proceedings to the district from which it was transferred.

DATED: April 20, 2020                                              Respectfully submitted,

**/s/ Brian J. Donovan**_____
Brian J. Donovan
Attorney for Plaintiffs
Florida Bar No. 143900
3102 Seaway Court, Suite 304
Tampa, FL 33629
Tel: (352)328-7469
BrianJDonovan@verizon.net