UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf Of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 |
| | * | SECTION: J |
| This document relates to: | * * | |
| | * | HONORABLE CARL J. BARBIER |
| *Donovan v. Herman,* No.19-12014 | * * | |
| | * * | MAGISTRATE JUDGE WILKINSON |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

The following Memorandum is respectfully submitted in support of Defendant's Motion to Dismiss the above-captioned action:

**MAY IT PLEASE THE COURT:**

While it is somewhat difficult to understand the specific claims being asserted, it would appear from the Complaint that:

- To the extent that Mr. Donovan seeks to assert claims on behalf of his clients, he lacks standing to do so.

- To the extent that Mr. Donovan seeks to assert his own claims, he **(i)** cannot state a cause of action as a matter of law, and **(ii)** has no Article III standing to do so.

- All of the claims which appear to be asserted in the Complaint are perempted under Louisiana Revised Statute 9:5605(a).

- Most, if not all, of the claims which appear to be asserted are subject to defenses of waiver, estoppel, and/or *res judicata.*

- The claims purported to be set forth in the Complaint are simply not factually or legally plausible.

For the above and foregoing reasons, for the reasons stated in undersigned's previously filed Motion to Dismiss,[1] and for the reasons further outlined below, the undersigned's motion to dismiss should be granted.

**Standing**

In his Complaint, Mr. Donovan purports to sue "on behalf of himself, his clients, and all others similarly situated."[2]

To the extent that Mr. Donovan seeks to sue on behalf of an unidentified and undefined group of "clients", he has no standing to do so, as he has articulated no reason why such clients were prevented from bringing action in their own name. *See* Kowalski v. Tesmer, 543 U.S. 125, 130 (2004) (third-party standing has only been extended when there is a hindrance to the possessor of the right's ability to protect his or her own interests).

To the extent that Mr. Donovan seeks to assert his own claims, he **(i)** cannot state a cause of action as a matter of law, and **(ii)** has no Article III standing to do so. The Louisiana Supreme Court has held, in this regard, as a matter of public policy, that no cause of action will exist between and among co-counsel based on the theory that co-counsel have some fiduciary duty to protect one another's interests in a potential fee. Scheffler v. Adams and Reese, 2006-1774, pp.14–16 (La. 2/22/2007), 950 So.2d 641, 652–653.[3] But even assuming, *arguendo,* that a cause of action for some type of negligence or malfeasance against the undersigned might lie, (which is denied), Mr.

---

[1] A preliminary motion to dismiss was previously filed on behalf of the undersigned, out of an abundance of caution, pending the outcome of the MDL Panel's ruling on Mr. Donovan's objection to the Conditional Transfer Order. *See* Rec. Doc. 11 [No.19-12014] (filed in the Middle District of Florida, No.8:19-cv-00623-VMC-TGW, on April 1, 2019).

[2] *Donovan v. Herman* COMPLAINT, No.19-12014 [Rec. Doc. 1-1], at p.1.

[3] Nor is the undersigned aware of any statutory authority or caselaw establishing a duty on the part of MDL Liaison Counsel to protect the contingency fee interest of other attorneys who might have clients in the MDL. *See, e.g.,* STEPHEN J. HERMAN, Duties Owed by Appointed Counsel to MDL Litigants Whom They Do Not Formally Represent, 64 LOY. L. REV. 1, 22 fn.69 (2018).

Donovan does not anywhere in his Complaint identify or articulate a concrete and particularized injury-in-fact, to either himself or any of his clients.

It is well-settled, in this regard, that a plaintiff seeking to invoke the Court's jurisdiction must establish as a Constitutional minimum (1) a concrete and particularized injury-in-fact (2) fairly traceable to the alleged conduct of the defendant (3) that is likely to be redressed by a favorable judicial decision. *See generally* Spokeo v. Robins, 136 S.Ct. 1540, 1547 (2016); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992).

The *Salvesen, Pinellas Marine,* and *Ditch* actions appear to remain viable actions against the defendants named therein.[4] It is therefore difficult to see what concrete or particularized "injury-in-fact" these clients may have suffered?

Mr. Donovan suggests that the undersigned's attorney's fees should be disgorged.[5] Yet, whether viewed as an absence of injury-in-fact or a lack of redress, neither Donovan nor his clients contributed, either directly or indirectly, to undersigned's attorney's fees. The contractual contingency fees earned by undersigned's firm were paid solely and exclusively by HHK's clients – none of which include the Donovan plaintiffs. The common benefit fees awarded to the undersigned and his firm – even putting aside issues of waiver, estoppel and *res judicata* – were paid by the MDL Defendants, based on benefits obtained by the BP Settlement Classes, the Halliburton/Transocean Settlement Class, and the States. To the best of undersigned's knowledge and understanding, Donovan's clients either released their claims *via* settlement agreements with the GCCF and were therefore excluded from these classes, or otherwise opted out of these

---

[4] *See generally* ORDER (Jan. 17, 2020) [Rec. Doc. 26213] (setting deadlines relating to the *Salvesen, Pinellas Marine,* and *Ditch* actions). As noted in undersigned's opposition to Donovan's Motions to Recuse, it does not appear that these plaintiffs were treated as B1 Plaintiffs for Pre-Trial Order No. 60, 64 or 65 purposes, [*see, e.g.,* Rec. Docs. 23649-1, 23649-2, 23649-3, 24558-3 and 24558-4].

[5] See DONOVAN COMPLAINT, p.130 (Prayer for Relief (d)).

settlements. If, therefore, as prayed, the undersigned's fees were disgorged, they would presumably be returned to Halliburton, Transcoean and BP – or, alternatively, perhaps, to HHK clients and/or the members of the BP and Halliburton/Transocean Settlement Classes. None of these fees would be "returned" to Donovan or his clients – who have suffered no injury-in-fact, and who, even if successful in their claims, would not be the beneficiaries of any redress or relief.

**Peremption**

An action for damages against an attorney licensed to practice in the State of Louisiana, whether based upon tort, breach of contract, or otherwise arising out of the providing of legal services, must be instituted within three years from the date of the alleged act, omission, or neglect. LA. REV. STAT. 9:5605(a). While it is somewhat difficult to pinpoint the precise acts, omissions, or neglect that Donovan alleges the undersigned is supposedly responsible for, it appears that all of the decisions or events that Mr. Donovan is complaining about occurred well before February 12, 2016.[6]

In particular, Donovan seems to complain about:

- Alleged "collusion" with Mr. Fienberg during the existence of the GCCF – which terminated in March of 2012;[7]

- The transition of the GCCF to the Court-Supervised Settlement Program – which occurred in March of 2012;[8]

- Certain aspects of the Economic & Property Damages Class Settlement Agreement – which was signed on April 18, 2012;[9]

---

[6] *See* DONOVAN COMPLAINT, p.1 (E-Filed 02/12/2019 03:31:14 PM).

[7] *See* TRANSITION ORDER [Rec. Doc. 5988] (March 8, 2012).

[8] *See* TRANSITION ORDER [Rec. Doc. 5988] (March 8, 2012).

[9] *See* Rec. Doc. 6276-1.

Page **4** of **9**

- The stay on Motions to Remand – which the Court entered in November of 2010; [10]

- General stay of individual actions – which the Court entered in January of 2011; [11]

- Entry of Pre-Trial Order No. 11 – in October of 2010; [12]

- The B1 Master Complaint – which was filed in December of 2010 and amended in February of 2011; [13]

- Alleged "misleading" of potential Economic Settlement Classmembers between March of 2012 when the Agreement-in-Principle was signed and December of 2012 when the Court granted Final Approval; [14]

- Settlement Program processing of claims in advance of the Fairness Hearing in November of 2012; [15] and,

- Alleged "refusal" to answer Mr. Donovan's questions between September of 2012 and December of 2013. [16]

Mr. Donovan was required to file suit challenging these actions, decisions or events on or before December of 2016.

**Waiver, Estoppel and/or *Res Judicata***

In his Complaint, Mr. Donovan challenges, not only certain aspects of Pre-Trial Orders Nos. 1, 8, 11, 15, 25, and 59, but also the Court's "B1 Order"[17] and Phase One Trial Findings[18]

---

[10] *See* PRE-TRIAL ORDER NO. 15 [Rec. Doc. 676] (Nov. 5, 2010).

[11] *See* PRE-TRIAL ORDER NO. 25, at ¶8 [Rec. Doc. 983] (Jan. 12, 2011).

[12] *See* Rec. Doc. 569 (Oct. 19, 2010).

[13] *See* B1 MASTER COMPLAINT [Rec. Doc. 879] (Dec. 15, 2010), *and* FIRST AMENDED B1 MASTER COMPLAINT [Rec. Doc. 1128] (Feb. 9, 2011).

[14] *See* Deepwater Horizon, 910 F.Supp.2d 891 (E.D.La. 2012), *aff'd,* 739 F.3d 790 (5th Cir. 2014) ("*Deepwater Horizon II*"), *rehearing en banc denied,* 756 F.3d 320 (5th Cir. 2014), *cert. denied,* 135 S.Ct. 754 (2014).

[15] *See* DONOVAN COMPLAINT, ¶15.

[16] *See* DONOVAN COMPLAINT, ¶¶157-190.

[17] Deepwater Horizon, 808 F.Supp.2d 943, 949-950 (E.D.La. 2011).

[18] Deepwater Horizon, 21 F.Supp.3d 657, 731 (E.D.La. 2014).

with respect to the classification of the *Deepwater Horizon* as a "vessel" and the application of General Maritime Law; the Economic Class Definition and Economic Class Settlement, which were fully and finally approved by the Court;[19] and the final Orders approving both the Aggregate Fee Petition[20] and the Common Benefit Fee Allocation.[21]

Putting the question of standing aside, Mr. Donovan and his clients could have,[22] but did not, object to the Economic & Property Damages Class Settlement. Mr. Donovan and his clients could have,[23] but did not, object to the aggregate Fee Petition. Mr. Donovan and his clients could have,[24] but did not, object to the Common Benefit Fee Allocation. Any challenge to these judgments and orders are barred by waiver, estoppel and/or *res judicata.*

**<u>No Facially Plausible or Factually Supportable Claim</u>**

Even though the allegations in a complaint are generally accepted as true for Rule 12(b)(6) purposes, a complaint must contain sufficient facts to state a claim to relief that is plausible on its face. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 556 (2007) (bare or implausible allegations of an alleged "conspiracy" are insufficient). As has been noted, Mr. Donovan is simply incorrect that the undersigned somehow colluded with someone to

---

[19] In re Deepwater Horizon, 910 F.Supp.2d 891 (E.D.La. 2012), *aff'd,* 739 F.3d 790 (5th Cir. 2014) ("*Deepwater Horizon II*"), *rehearing en banc denied,* 756 F.3d 320 (5th Cir. 2014), *cert. denied,* 135 S.Ct. 754 (2014).

[20] ORDER AND REASONS (Oct. 25, 2016) [Rec. Doc. 21849] – not appealed.

[21] ORDER (Oct. 24, 2017) [Rec. Doc. 23574] – not appealed.

[22] *See* PRELIMINARY APPROVAL ORDER [Rec. Doc. 6418] (May 2, 2012) at ¶¶38 and 48(d) (setting deadline for any objections to be submitted on or before August 31, 2012).

[23] *See* PRE-TRIAL ORDER NO. 59 [Rec. Doc. 14863] (July 15, 2015) at ¶20 (setting deadline for any objections to be submitted on or before August 25, 2016).

[24] *See* SPECIAL MASTER ORDER NO. 1 [Rec. Doc. 22727] (April 18, 2017) at p.2 (setting deadline for any objections to Fee Committee Recommendation to be submitted on or before May 25, 2017); ORDER (Oct. 12, 2017) [Rec. Doc. 23494] (setting deadline for any objections to Special Master Recommendation to be submitted on or before October 20, 2017).

"circumvent the OPA,"[25] as claims under the Oil Pollution Act were expressly asserted in the B1 Master Complaint,[26] were settled in the BP Economic Class Settlement,[27] and were otherwise litigated through a series of OPA Test Cases.[28] *See* ORDER (Jan. 17, 2020) [Rec. Doc. 26213], at p.7 ("What Donovan apparently fails to understand is that the PSC asserted claims under general maritime law in addition to, not in lieu of, claims under OPA"). Donovan's Complaint also seems to ignore the fact that the PSC successfully moved to enjoin Mr. Feinberg,[29] and continued to challenge, among other things, the efficacy of the GCCF Release.[30] Donovan's Complaint is simply incorrect that BP ever agreed to pay or that the PSC ever agreed to limit payments to $20 billion,[31] and ignores the fact that BP closed its Gulf Coast Claims Facility lead by Mr. Fienberg in March of 2012.[32] Donovan's Complaint ignores the fact that the Aggregate Settlement Rule in Louisiana expressly excludes class action settlements from its purview. *See* LOUISIANA RULE OF PROFESSIONAL CONDUCT 1.8(g). And given BP's far-reaching and widely-publicized attempts to back out of the Economic & Property Damages Class Settlement, it seems incredible that Donovan would allege that the PSC somehow "colluded" with BP to impose "a heightened and vague proof

---

[25] *See, e.g.,* DONOVAN COMPLAINT, ¶¶ 9, 11 and 84.

[26] *See* B1 MASTER COMPLAINT [Rec. Doc. 879] at ¶¶602-612, *and* FIRST AMENDED B1 MASTER COMPLAINT [Rec. Doc. 1128] at ¶¶678-690.

[27] *See, e.g.,* SETTLEMENT AGREEMENT [Rec. Doc. 6276-1] at Recital C and ¶¶ 4.2.5, 10.2, 36.1, 38.97, 38.98.

[28] *See, e.g.,* SCHEDULING ORDER FOR OPA TEST CASE TRIALS [Rec. Doc. 12972] (June 3, 2014).

[29] *See* ORDER AND REASONS [Rec. Doc. 1098] (Feb. 2, 2011).

[30] *See, e.g.,* PLAINTIFFS' SUPPLEMENTAL MEMORANDUM CONCERNING BP'S FAILURE TO COMPLY WITH THE MANDATES OF OPA [Rec. Doc. 1318] (Feb. 18, 2011).

[31] Contrary to Mr. Donovan's allegations, the highly publicized "trust" that had been established by BP in 2010 was largely a pass-through; was never limited – nor otherwise limited BP's liability – to only $20 billion; and could be used by BP to cover response costs, natural resource damages, and other Spill-related judgments or obligations. *See generally* DEEPWATER HORIZON OIL SPILL TRUST (Aug. 6, 2010) [Rec. Doc. 912-8]. Similarly, the ECONOMIC & PROPERTY DAMAGES CLASS SETTLEMENT AGREEMENT, with the exception of the $2.3 billion Seafood Fund, neither required BP to pay nor in any way limited BP's responsibility for paying any aggregate amount of compensation to the members of the Economic & Property Damages Settlement Class. *See* ORDER AND REASONS (Nov. 8, 2019) [Rec. Doc. 26089] at p.10 ("Aside from the Seafood Compensation Program, the Economic Settlement has no cap…. BP's liability was never limited to $20 billion").

[32] *See* TRANSITION ORDER [Rec. Doc. 5988] (March 8, 2012).

of causation between his or her damages and the BP oil well blowout incident."[33] *See generally* <u>In re Deepwater Horizon</u>, 744 F.3d 370 (5th Cir. 2014) ("*Deepwater Horizon III*"), *rehearing denied,* 753 F.3d 509 (5th Cir. 2014), *rehearing en banc denied,* 753 F.3d 516 (5th Cir. 2014).[34] Mr. Donovan's speculative and conclusory allegations that the undersigned somehow "colluded" with BP, Mr. Fienberg, the Claims Administrator, and/or the Court, are simply factually and legally unsupportable and implausible on their face. *See generally* ORDER AND REASONS (Nov. 8, 2019) [Rec. Doc. 26089] at pp.8-12; OPPOSITION TO MOTIONS TO RECUSE [Rec. Doc. 26014] (Sept. 10, 2019) at pp.3-17; *and* ORDER (Jan. 17, 2020) [Rec. Doc. 26213] at pp.5-7.

## Conclusion

For the above and foregoing reasons, the above-captioned action should be dismissed, with prejudice, at Plaintiff's cost.

This 5th day of February, 2020.

Respectfully submitted,

_____/s/ Stephen J. Herman_____
**Stephen J. Herman**, La. Bar No. 23129
**HERMAN HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 561-6024
E-Mail: sherman@hhklawfirm.com

*Defendant*

---

[33] *See, e.g.,* DONOVAN COMPLAINT, ¶90.

[34] *See also, generally,* <u>In re Deepwater Horizon</u>, 739 F.3d 790 (5th Cir. 2014) ("*Deepwater Horizon II*"), *rehearing en banc denied,* 756 F.3d 320 (5th Cir. 2014), *cert. denied,* 135 S.Ct. 754 (2014). (*See also, e.g.,* FEE PETITION [Rec. Doc. 21098] (July 21, 2016) at pp.58-61 (BP's Attacks on the Economic Settlement))

**Certificate of Service**

I HEREBY CERTIFY that the above and foregoing Memorandum will be filed into the record using the Court's ECF electronic filing system, will be served *via* E-Mail upon Mr. Donovan, and will be served upon All Counsel *via* File & ServeXpress in accordance with Pre-Trial Order No. 12, this 5<u>th</u> day of <u>February</u>, <u>2020</u>.

                   _____/s/ Stephen J. Herman_____