64741438
Feb 19 2020
02:28PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig<br>"Deepwater Horizon"<br>in the Gulf of Mexico,<br>on April 20, 2010 | MDL No. 2179<br><br>SECTION: J |
| **This Document Relates to:**<br>*Donovan v. Herman*<br>2:19-cv-12014 | JUDGE BARBIER<br>MAG. JUDGE WILKINSON |

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Brian J. Donovan, Esq. ("Plaintiff"), on behalf of himself, his clients, and all others similarly situated, hereby respectfully submits this response in opposition to the motion to dismiss Plaintiff's Complaint by Stephen J. Herman ("Defendant") for the reasons set out herein.

**PRELIMINARY STATEMENT**

On February 12, 2019, Plaintiff, on behalf of himself, his clients, and all others similarly situated, filed this action against Defendant Stephen J. Herman in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida under the following causes of action: (a) Gross Negligence; (b) Negligence; (c) Negligence Per Se; (d) Fraud; (e) Fraudulent Inducement; (f) Promissory Estoppel; (g) Unjust Enrichment; (h) Breach of Fiduciary Duty; (i) Fraudulent Concealment; (j) Constructive Fraud; (k) Breach of Fiduciary Duty of Loyalty (Breach of the Aggregate Settlement Rule); and (l) Fraudulent Concealment (MDL 2179 Is Unconstitutional). On March 13, 2019, Defendant removed this action to the U.S. District Court for the Middle District of Florida (USMDFL). On March 26, 2019, Defendant filed a Notice of Tag-Along Case with the U.S. Judicial Panel on Multidistrict Litigation (JPML). On March 29, 2019, the parties

jointly filed their Case Management Report with the USMDFL court. On April 1, 2019, Defendant filed his Motion to Dismiss with the USMDFL. On April 4, 2019, Judge Covington scheduled a Case Management Hearing for April 17, 2019. On April 4, 2019, CTO-139 was filed by the JPML. The case was subsequently transferred by the JPML to the MDL 2179 Court on July 31, 2019.

Pursuant to FED. R. CIV. P. 9(b), "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Plaintiff has stated with particularity and specificity each of the twelve causes of action filed against Defendant Herman in the instant case. Hence, the complaint is 130 pages in length.

As noted *supra*, Defendant Herman filed his first Motion to Dismiss on April 1, 2019 in the USMDFL. The USMDFL had approximately four months to consider the merits of this motion before the case was transferred by the JPML to the MDL 2179 Court. Rather than grant the motion, Judge Covington expeditiously moved forward with the case.

I.      **Defendant Herman's Motions to Dismiss**

Defendant Herman and the members of the MDL 2179 PSC drafted the MDL 2179 settlement agreements under the premise that "if we can't dazzle them with brilliance, we will baffle them with obfuscation." (*See* Complaint, ¶ 16, attached hereto as Exhibit "A"). Defendant Herman used this same approach to draft his first 27-page Motion to Dismiss (attached hereto as Exhibit "B"). He apparently continues to employ the same degree of obfuscation in his second 9-page Motion to Dismiss which he filed with this Honorable Court on February 5, 2020.

On April 1, 2019, demonstrating a complete lack of understanding of the intent and

objectives of Congress in its passage of the Multidistrict Litigation Statute (28 U.S.C. § 1407) and the Oil Pollution Act of 1990 ("OPA"), Defendant Herman moves to dismiss Plaintiff's Complaint on the erroneous grounds that: (a) Plaintiff Donovan has no standing to sue Herman as he has alleged no injuries that he himself has suffered; (b) No fiduciary relationship plausibly exists between Plaintiff and Defendant. Herman does not owe any fiduciary duty to Plaintiff, Plaintiff's clients, and all others similarly situated. These fiduciary duties include the duty of care, the duty of loyalty, the duty to zealously protect the interests of Plaintiff Donovan, Plaintiff's clients, and all others similarly situated, and the sacred duty of confidentiality; (c) Plaintiff provides no allegations explaining how Defendant Herman was unjustly enriched; (d) Plaintiff fails to state a claim for Fraud or Fraud in the Inducement; (e) Plaintiff argues that MDL 2179 is completely unconstitutional; (f) Plaintiff has no standing to seek the disgorgement of the Defendant's fees; and (g) The success of the Plaintiff's claims requires undoing long-settled determinations and decisions by Judge Barbier.

Defendant's Motions to Dismiss are without merit for the following reasons.

## FACTUAL BACKGROUND

The following statement of facts is derived from the Complaint (attached hereto as Exhibit "A"), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983).

On August 27, 2010, the MDL 2179 Court issued PTO No. 6 which states "IT IS ORDERED that Stephen J. Herman be hereby appointed Plaintiffs' Co-Liaison Counsel." At all times material herein, Defendant Herman, individually and/or in collusion with

the members of the MDL 2179 PSC and BP, fraudulently, recklessly, negligently and/or knowingly conceived, developed, and/or facilitated an eight-step plan to maximize his compensation and the compensation of the members of the MDL 2179 PSC in exchange for limiting the liability of BP. This eight-step plan includes, but is not limited to, misleading Plaintiff, Plaintiff's clients, and all others similarly situated by:

> (a) designating the "B1" Master Complaint as an admiralty or maritime case, and requesting a non-jury trial pursuant to Rule 9(h), rather than properly alleging claims under the Oil Pollution Act of 1990 ("OPA"), a *strict liability* statute, and the Outer Continental Shelf Lands Act ("OCSLA");
>
> (b) aiding and abetting the Kenneth R. Feinberg-administered victims' compensation fund to circumvent the OPA. As a result of Defendant Herman's fraudulent and negligent conduct, approximately 220,000 Kenneth R. Feinberg victims who or that executed a "Release and Covenant Not to Sue" in exchange for a one-time miniscule final payment ($5,000 for individuals and $25,000 for businesses) were excluded from the settlement class action;
>
> (c) aiding and abetting Kenneth R. Feinberg to use the fear of costly and protracted litigation in an attempt to coerce Plaintiff's clients and all others similarly situated to accept grossly inadequate settlements. During widely-reported town hall meetings, Kenneth R. Feinberg repeatedly told victims of the BP oil well blowout incident: "The litigation route in court will mean uncertainty, years of delay and a big cut for the lawyers….I take the position, if I don't find you eligible, no court will find you eligible;"
>
> (d) circumventing the OPA by negotiating and drafting a settlement class action which limits a claimant's recovery of damages to geographic bounds and certain business activities while requiring a heightened and vague proof of causation between his, her, or its damages and the BP oil well blowout incident;
>
> (e) failing to zealously and competently advocate on behalf of Plaintiff, Plaintiff's clients, and all others similarly situated;
>
> (f) exercising oversight of a multidistrict litigation which is unconstitutional. MDL 2179, which employs a victims' compensation fund on the frontend and a settlement class action on the backend, involves no litigation and infringes individual claimants' procedural due process rights. The most serious problem with the MDL 2179 settlement class action is that by its nature it does not involve any live dispute between the parties that a federal court is being asked to resolve through litigation, and because from the

outset of the proceeding Defendant Herman, the members of the MDL 2179 PSC, and BP are in full accord as to how the claims should be disposed of. There is missing the adverseness between the parties that is a central element of Article III case-or-controversy requirement;

(g) secretly colluding to inflate the amount of compensation received by some MDL 2179 plaintiffs (just prior to the "fairness" hearing) in order to induce the remaining plaintiffs into believing that the proposed settlement is "fair, reasonable, and adequate;"

(h) failing to disclose to their clients that a class member seeking to determine his or her compensation would not be able to simply read the settlement agreements and determine how his or her circumstances fit into the frameworks. The frameworks of the settlement agreements are certainly not detailed and transparent. A claimant could not possibly make a reasonable determination of how his or her claim will be resolved based on his or his business's circumstances. Defendant Herman and the members of the MDL 2179 PSC drafted these settlement agreements under the premise that "if we can't dazzle them with brilliance, we will baffle them with obfuscation;"

(i) failing to disclose to Plaintiff, Plaintiff's clients, and all others similarly situated the material fact that contingent fees are designed to increase proportionally alongside a plaintiff's recovery - to tie the fates of lawyer and client. When Defendant Herman and the MDL 2179 PSC attorneys take things one-step further and bargain for the defendant to pay their common benefit fees directly, they sever that tie. As a result, the attorneys' financial self-interest may no longer be linked to their clients' outcome, but to the defendant's wishes. This concern has long been recognized as one of structural collusion in the class context. (*See* John C. Coffee, Jr., *Rethinking the Class Action: A Policy Primer on Reform*, 62 IND. L.J. 625, 647-48 (1987)). Courts have agreed. *E.g.,* Zucker v. Occidental Petroleum Corp., 192 F.3d 1323 (9th Cir. 1999); and

(j) failing to disclose to their clients that: (i) the total amount of the settlement is $20 billion; (ii) Patrick Juneau would deny payment to approximately 60.03% of the claims submitted to the DHCC; (iii) the total fees paid to Defendant Herman and the members of the MDL 2179 PSC would be comprised of common benefit fees, contingent fees, co-counsel fees, and hold-backs; (iv) the total compensation paid to Defendant Herman and the members of the MDL 2179 would be $3.035 billion; and (v) the MDL 2179 plaintiffs were fraudulently induced not to opt-out of the settlement.

In sum, Defendant Herman, in part by making numerous false statements of material fact to Plaintiff, Plaintiff's clients, and all others similarly situated, breached his legal duty to Plaintiff, Plaintiff's clients, and all others similarly situated, failed to exercise reasonable care,

and acted with reckless, willful, and wanton disregard for the business and livelihood of Plaintiff, Plaintiff's clients, and all others similarly situated in his negligent oversight of MDL 2179. Defendant knew or should have known that his conduct would foreseeably result in the financial ruin of Plaintiff's clients and all others similarly situated and cause irreversible damage to the economic interests of Plaintiff. (*See* Complaint, ¶¶ 6 - 18, 320 – 564)

As a result of Defendant Herman's refusal to initiate and conduct discovery on Kenneth R. Feinberg, as of the date of the filing of the instant Complaint, more than *eight years* have passed since Plaintiff's clients filed their complaints against Kenneth R. Feinberg in Florida State Court.

As a direct and proximate result of Defendant's negligent conduct, Plaintiff, Plaintiff's clients, and all others similarly situated have suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to, lost time value of money and the excess legal expenses incurred, loss of profit, loss of business reputation, loss of livelihood, loss of income, and other economic loss. (*See* Complaint, ¶ ¶ 323, 332, 346, 353, 360, 380, 397, 451, 462, 563, attached hereto as Exhibit "A"). Accordingly, Plaintiff filed this action against Defendants in Florida state court asserting claims arising exclusively under Florida state law in order to obtain recovery for the damages incurred.

**LEGAL STANDARD**

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007)). Mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads facts that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* Therefore, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

Although Federal Rule of Civil Procedure 8 does not require a claimant to set out in detail the facts upon which he bases his claim, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts, accepted as true, to state a plausible claim for relief. *Id.* Where a complaint contains well-pleaded facts, if those facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint stops short of plausibility and does not show the plaintiff is entitled to relief. *Id.* at 1950. Furthermore, while the Court must assume that all of the factual allegations in the complaint are true, this assumption is inapplicable to legal conclusions. *Id.* at 1949. The door to discovery will not open for a plaintiff "armed with nothing more than legal conclusions." *Id.* at 1950.

## ARGUMENT

Plaintiff responds to Defendant Herman's second Motion to Dismiss, which has been filed in this Honorable Court, as set forth above and as follows.

## I. Standing

The injuries which Plaintiff Donovan has suffered are set forth repeatedly and with particularity in his Complaint. Plaintiff Donovan has worked extensively on behalf of his clients for more than eight years and has not been able to receive proper compensation for his legal services because Defendant Herman refuses to allow formal discovery on Kenneth Feinberg. The injuries suffered by Plaintiff Donovan "include, but not limited to, lost time value of money and the excess legal expenses incurred, loss of profit, loss of business reputation, loss of livelihood, loss of income, and other economic loss, warranting compensatory and punitive damages." (*See* Complaint, ¶ ¶ 323, 332, 346, 353, 360, 380, 397, 451, 462, 563, attached hereto as Exhibit "A").

Moreover, the aggregate settlement rule ("ASR") governs global MDL settlements. Defendant Herman breached his fiduciary duties to Plaintiff, Plaintiff's clients, and all others similarly situated by violating the ASR. Courts have long recognized that lawyers may be subject to total or partial fee forfeiture as a sanction for serious violations of the ASR. *The plaintiff does not have to prove either causation or injury to be entitled to fee forfeiture as a remedy for Defendant Herman's breach of fiduciary duty*. (*See* Complaint, ¶ ¶ 467 - 499, attached hereto as Exhibit "A").

Finally, many cases allow standing to third parties who demonstrate a requisite degree of injury to themselves and if under the circumstances the injured parties whom they seek to represent *would likely not be able to assert their rights*. See *Barrows v. Jackson*, 346 U.S. 249 (1953). One example in MDL 2179 would be those victims of the BP oil well blowout who were illegally forced to sign Feinberg's "Release and Covenant Not to Sue" which *excluded approximately 220,000* BP oil well blowout victims from the subsequent Deepwater Horizon

Economic and Property Damages Class Settlement Agreement.

## II.     Peremption

Defendant Herman states, "An action for damages against an attorney licensed to practice in the State of Louisiana, whether based upon tort, breach of contract, or otherwise arising out of the providing of legal services, must be instituted within three years from the date of the alleged act, omission, or neglect. LA. REV. STAT. 9:5605(a)."

Defendant Herman fails to mention that MDL courts typically apply the choice of law rules of the court from which the case was transferred. In sum, when transfer results in a change of venue for purposes of MDL pretrial proceedings, the transferee judge generally must apply the substantive law of the transferor forum, including that forum's choice-of-law rules and appropriate state law.

The Supreme Court held in *Van Dusen* and *Ferens* that the policies underlying the holdings of *Erie* and *Klaxon* mandated that the law, including the choice-of-law rules, of the transferor court, rather than those of the transferee court, must be applied to a case that has been transferred pursuant to 28 U.S.C. § 1404(a). *Ferens v. John Deere Co.*, 494 U.S. 516, 532 (1990); *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

In 2018, Defendant Herman, citing to his authoritative self, argues that he does not owe a fiduciary duty to Plaintiff, Plaintiff's clients, or others similarly situated. "While it is generally recognized that leadership counsel in an MDL proceeding have "a duty to perform the functions to which they have been appointed in a fair, honest, competent, reasonable, and responsible way, it would be inappropriate to describe their obligations to other plaintiffs as 'fiduciary' in the traditional sense of the word." (Stephen Herman, *Duties Owed by Appointed Counsel to MDL*

*Litigants Whom They Do Not Formally Represent*, 64 Loyola L.R. 1, 8 (2018)).

In his article, Defendant Herman further explains "When counsel is appointed [by the transferee judge] Lead Counsel's authority and concomitant responsibility is generally defined by the procedural steps that must be undertaken from the court's perspective, rather than the ultimate goals sought by plaintiffs; those responsibilities are generally set forth in an order of appointment which describes the services that Lead Counsel is asked and directed to perform. ***Such appointment's primary purpose is to further the interests of judicial efficiency and economy***…."

In sum, it was not until 2018 that Plaintiff, Plaintiff's clients, and others similarly situated fully understood that Defendant Herman did not owe them any fiduciary duty. The damages resulting from Defendant Herman's lack of fiduciary duty are ongoing.

Defendant's argument that "Mr. Donovan was required to file suit challenging these actions, decisions or events on or before December of 2016," although creative, is without merit.

### III.    Waiver, Estoppel and/or *Res Judicata*

Defendant Herman states, "Mr. Donovan and his clients could have, but did not, object to the Economic & Property Damages Class Settlement. Mr. Donovan and his clients could have, but did not, object to the aggregate Fee Petition. Mr. Donovan and his clients could have, but did not, object to the Common Benefit Fee Allocation." This is not correct. Defendant Herman is well aware that Plaintiff Donovan's clients opted-out and therefore did not have standing to object. Moreover, those victims of the BP oil well blowout who were illegally forced to sign Feinberg's "Release and Covenant Not to Sue" were excluded from the subsequent Deepwater

Horizon Economic and Property Damages Class Settlement Agreement. Accordingly, these approximately 220,000 BP oil well blowout victims also did not have standing to object.

**IV.   No Facially Plausible or Factually Supportable Claim**
(a) "What Donovan apparently fails to understand is that the PSC asserted claims under general maritime law in addition to, not in lieu of, claims under OPA."

To the contrary, Donovan fully understands why Defendant Herman asserted claims under general maritime law. (*See* Complaint, ¶ ¶ 84 - 90).

(b) "Donovan's Complaint also seems to ignore the fact that the PSC successfully moved to enjoin Mr. Feinberg, and continued to challenge, among other things, the efficacy of the GCCF Release."

"Moved to enjoin" and "continued to challenge" the efficacy of the GCCF Release is merely window dressing. Defendant Herman, who believes he does not owe a fiduciary duty to any party in MDL 2179 (except possibly the clients he directly represents and Judge Barbier), did nothing concrete to protect the BP oil well blowout victims from Mr. Feinberg. It is insulting to any reasonable person. (*See for example* Complaint, ¶ ¶ 38 - 47, 52, 180 - 182, and 328).

(c) "Donovan's Complaint is simply incorrect that BP ever agreed to pay or that the PSC ever agreed to limit payments to $20 billion."

On October 25, 2016, the Honorable Carl J. Barbier states, "In December 2015, Magistrate Judge Wilkinson estimated the total claims payout from the Economic Settlement when he allocated amounts under the Transocean and Halliburton Settlements. Judge Wilkinson's estimate was $10.825 billion. (Rec. Doc. 15652 at 16). Judge Wilkinson's estimate appears to be based solely on projected payments under the Economic Settlement, and does not appear to include Seafood and Tourism Promotional Grants, Transocean Insurance Proceeds, Medical Settlement benefits, administrative costs, notice costs, or common benefit attorney fees.

Considering the foregoing, the Court finds that a conservative estimate of the total value of the Settlements is $13 billion." (Rec. Doc. 21849 at 32 - 33).

In October 2016, approximately $6.2 billion had been paid out under the GCCF. Judge Barbier could not predict, on October 25, 2016, that the total amount that will eventually be paid by just the Deepwater Horizon Claims Center is $13 billion unless Judge Barbier knew *Defendant Herman and BP made the business decision to have BP pay a total amount of $20 billion to compensate all the BP oil well blowout victims in the settlement class action* ($20 billion - $6.2 billion - $0.6 billion in attorneys' fees yields an estimate of $13 billion).

> (d) "Donovan's Complaint ignores the fact that the Aggregate Settlement Rule in Louisiana expressly excludes class action settlements from its purview. See LOUISIANA RULE OF PROFFESIONAL CONDUCT 1.8(g)."

As explained *supra*, MDL courts typically apply the choice of law rules of the court from which the case was transferred. In sum, when transfer results in a change of venue for purposes of MDL pretrial proceedings, the transferee judge generally must apply the substantive law of the transferor forum, including that forum's choice-of-law rules and appropriate state law.

In *Burrow v. Arce*, the Texas Supreme Court held that lawyers may be subject to total or partial fee forfeiture as a sanction for serious violations of an ethical rule. *Burrow* involved allegations that **mass tort lawyers breached their fiduciary duties to their clients** by violating the aggregate settlement rule. (*See Arce v. Burrow*, 958 S.W.2d 239, 243 (Tex. App. 1997), *rev'd,* 997 S.W.2d 229 (Tex. 1999); *see also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS (discussing when fee forfeiture may be appropriate); *see also Liberty Mut. Ins. Co. v. Gardere & Wynne, L.L.P.*, 82 F. App'x 116, 121 (5th Cir. 2003).

The Aggregate Settlement Rule, in pertinent part, is fully explained in the Complaint.

(*See for example* Complaint, ¶ ¶ 466 - 499).

(e) "…it seems incredible that Donovan would allege that the PSC somehow 'colluded' with BP to impose a heightened and vague proof of causation between his or her damages and the BP oil well blowout incident."

Defendant Herman's settlement causation requirements take obfuscation to a new level.

(*See for example* Complaint, ¶ ¶ 99 - 104).

(f) Again, citing in pertinent part, to his authoritative self, Defendant Herman states, "Mr. Donovan's speculative and conclusory allegations that the undersigned somehow 'colluded' with BP, Mr. Feinberg, the Claims Administrator, and/or the Court are simply factually and legally unsupportable and implausible on their face."

PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTIONS TO RECUSE THE HONORABLE CARL J. BARBIER (attached hereto as Exhibit "C") fully addresses the issues raised in Defendant Herman's OPPOSITION TO MOTIONS TO RECUSE (Rec. Doc. 26014).

## **CONCLUSION**

The Complaint, when read in its entirety, proves that Plaintiff has stated with particularity each of the twelve causes of action filed against Defendant Herman in the instant case. Hence, the complaint is 130 pages in length. The Complaint is pled with specificity. It is not "impermissibly pled in a shotgun fashion" as Defendant Herman alleges in his first Motion to Dismiss.

In sum, Plaintiff has sufficiently stated his twelve claims against Defendant Herman.

Holding Defendant Herman accountable does not require undoing a single determination or decision by the Honorable Carl J. Barbier. The twelve causes of action brought against Defendant Herman would not disrupt the MDL 2179 Court in the slightest.

Holding Defendant Herman would, however, help to restore the faith of Plaintiff, Plaintiff's clients, and all others similarly situated in multidistrict litigation.

To not hold Defendant Herman accountable for his tortious acts would be to permit an injustice of the most fundamental sort.

For all the foregoing reasons, Plaintiff requests that this Court deny Defendant's Motion to Dismiss.

DATED: February 19, 2020                                  Respectfully submitted,

**/s/ Brian J. Donovan**
Brian J. Donovan
Attorney for Plaintiffs
Florida Bar No. 143900
3102 Seaway Court, Suite 304
Tampa, FL 33629
Tel: (352)328-7469
BrianJDonovan@verizon.net

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 19th day of February, 2020.

                                                                          **/s/ Brian J. Donovan**
                                                                          Brian J. Donovan
                                                                          Attorney for Plaintiffs
                                                                          Florida Bar No. 143900
                                                                          3102 Seaway Court, Suite 304
                                                                          Tampa, FL 33629
                                                                          Tel: (352)328-7469
                                                                          BrianJDonovan@verizon.net