# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANGELA THIBODAUX,** | **CIVIL ACTION NO: 2:14-CV-01026** |
| **INDIVIDUALLYAND ON** | |
| **BEHALF OF HER MINOR CHILDREN,** | |
| **CAROLINE NICOLE THIBODAUX** | |
| **AND TY JOSEPH THIBODAUX** | **JUDGE: CARL J. BARBIER** |
| **AND ON BEHALF OF THE ESTATE OF** | |
| **GLENN CLARENCE THIBODAUX** | |
| | |
| **VERSUS** | **MAG. JUDGE WILKINSON** |
| | |
| **TRANSOCEAN OFFSHORE DEEPWATER** | |
| **DRILLING, INC., BP, P.L.C.,** | |
| **BP AMERICA, INC., BP CORPORATION** | |
| **NORTH AMERICA, INC., BP COMPANY** | |
| **NORTH AMERICA, INC., AND** | |
| **BP PRODUCTS NORTH AMERICA, INC.** | |

---

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' RULE 60(b)(1) and 60(b)(6) MOTION FOR RELIEF FROM ORDER OF DISMISSAL

---

MAY IT PLEASE THE COURT:

## I.    Introduction

Angela Thibodaux, individually and on behalf of her two (2) minor children, filed suit on behalf of Glenn C. Thibodaux (deceased), Mrs. Thibodaux's husband, and the father of two minor children in this matter on May 5, 2014.  Mr. Thibodaux and his wife Angela Thibodaux had been married for nearly 12 years, until he died on October 29, 2012 from pancreatic cancer. Mr. Thibodaux was an employee of Transocean Offshore Deepwater Drilling, Inc., working on the M/V Development Driller II, owned by Transocean. From about April 10, 2010 to April 4, 2011, Mr. Thibodaux was working on the Deep Water Horizon cleanup operation, wherein he was required to use and was exposed to certain toxic dispersants.  It is Plaintiff's contention that

Mr. Thibodaux was exposed to dangerous levels of these toxic dispersants because BP and/or Transocean failed to provide him with adequate protective equipment to enable him to safely perform his job.

Plaintiff's wrongful death and survival action was involuntarily dismissed with prejudice due to an inadvertence by the undersigned to register for Lexis Nexis File & Serve ("LNFS" or "File & Serve") pursuant to Pre-Trial Order 12[1].   Because of this inadvertence, Plaintiff's counsel was never served with a copy of Pre-Trial Order 63[2], nor the Compliance Order for Pre-Trial Order 63[3] issued on July 18, 2017 which dismissed Plaintiff's claims with prejudice. Plaintiff's claims were dismissed without a hearing, without any showing of intentional delay or contumacious conduct by Plaintiff or Plaintiff's counsel, nor without even an indication as to why a lesser sanction, if any, would not be appropriate.

Plaintiff filed a Rule 60(b)(1) and 60(b)(6) Motion for Relief from this Court's July 18, 2017 Order which was denied.

 Plaintiff respectfully submits that any non-compliance with Pre-Trial Order 63 and any failure to correct any deficiency in her first Rule 60 Motion was inadvertence, warranting relief under Rule 60(b)(1) and/or Rule 60(b)(6). Plaintiff was never served with notice of the harsh sanctions that would be imposed on her should she fail to comply with Pre-Trial Order 63, and because more than six-hundred (600) other claims were similarly dismissed *in-globo*. Likewise, Plaintiff's first Rule 60 Motion was marked deficient, yet no explanation for the deficiency has ever been provided to the undersigned, nor has any deficiency notice ever been served upon the undersigned, the motion was denied without reason, and the Order denying the requested relief was also not served upon Plaintiff.

---

[1] R.Doc.3-2
[2] R.Doc.R.Doc.22295 in the MDL litigation no. 2179
[3] R.Doc.23047

## II.    Relevant Facts

On about May 7, 2014 Plaintiff's counsel was emailed a copy of R.Doc.3 (in the undersigned's member case) which contained Pre-Trial Orders ("PTO") #1, #11, #12, #25, #31, & #41 2nd Amended.  PTO 12 required that Plaintiff's counsel to sign up for LNFS within ten (10) days of filing their complaint, and to forward a completed "MDL 2179 Counsel Contact Form" to liaison counsel for Plaintiff and Defendants in the multi-district litigation.[4] This order also provided that the LNFS system would be the repository for all pleadings.  PTO 12 additionally ordered that ". . . all service of documents filed in the MDL, shall be made via File & Serve," and that attorneys who fail to register for this service will no longer receive service of documents filed in the MDL. However, documents ". . . [were to be] filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana."[5]

PTO No. 25 (R.Doc. 3-3) issued on January 12, 2011 which the undersigned was served with on about May 7, 2014, categorized Plaintiff's claims within bundle B3, which added the instant claims with those of plaintiffs in the "Master Complaint," and provided that all claims in B3 _were stayed_.

This court subsequently issued PTO 63 (R.Doc.22295 on February 22, 2017). However, PTO 63 was never served upon Plaintiff's counsel via email or otherwise, nor was Plaintiff otherwise served with a copy of this order.  PTO 63 pertained to cases alleging all other damages, such as personal injury- which would apply to the claims of the instant Plaintiff.  PTO 63 required Mrs. Thibodaux to file a sworn written statement as to the status of her claims by April 12, 2017.  PTO 63 Compliance Order[6] was then issued on July 18, 2017 ruling that Plaintiffs who did not file a sworn written statement by April 12, 2017 were dismissed with

---

[4] PTO 12 (R.Doc.3-2 in this action)
[5] _Id._
[6] R.Doc. 23047

prejudice.  Multiple plaintiffs objected to Compliance Order for PTO 63, and the court set a deadline for responses to same.[7] On December 6, 2017 the court issued an order regarding reconsiderations sought by multiple B3 plaintiffs as to compliance order for PTO 63.[8]   No written reasons are contained within this order for the actions taken by the court. Prior submissions were simply deemed compliant or not.

Because the undersigned unintentionally failed to register for LNFS service, Plaintiff never received a copy of R.Doc.23047,[9] which apparently dismissed all of Plaintiff's claims with prejudice. The PTO 63 Compliance Order provides that B3 claims not listed in Exhibit 1 are dismissed with prejudice.[10]   However, the instant case is not listed therein.  Plaintiff did not receive a copy of, nor was she aware of PTO 63 or the Compliance Order for PTO 63, until R.Doc.21 was electronically served upon the undersigned on September 6, 2018. To date, Plaintiff is unable to find any order lifting the stay ordered by this court on January 12, 2011[11] as to claims in the B3 bundle, to which Plaintiff's claims belong. In fact, according to Plaintiffs' Liaison Counsel, the stay was never flifted.[12]

On November 21, 2018 Plaintiffs filed a Rule 60(b)(1) and 60(b)(6) Motion for Relief from this Court's July 18, 2017 Compliance Order for Pre-Trial Order 63.[13] After a number of months passed, after having heard nothing on Plaintiffs' Rule 60(b)(1) and 60(b)(6) Motion, the undersigned's office checked PACER for this individual case and this Court's website as to orders issued in the master case and found no ruling.

---

[7] R.Doc.23321
[8] R.Doc.23735
[9] On about October 15, 2018, the undersigned's office attempted to register for File and Serve electronic access to the record at http://law.lexisnexis.com/fileand-serve-e-service, to obtain a copy of the 7/18/17 order (R.Doc.23047) but the page is apparently no longer valid. Thus, Plaintiff could not obtain a copy of the order of dismissal, but was able to obtain a copy of the order from the Eastern District's website.
[10] R.Doc.23047 p. 2
[11] R.Doc.3-3, PTO 25
[12] R.Doc.25193-3, October 18, 2018 email from Steve Herman.
[13] R.Doc.23047

The undersigned then obtained a "docket report" for the master case (2:10-md-02179), whereupon it was discovered that Plaintiffs' Rule 60 motion was marked deficient. However, no explanation for the deficiency was indicated on the docket report, nor was any deficiency notice ever served upon the undersigned. Subsequently, on March 15, 2019 the Court issued a two (2) page Order (which was never served upon the undersigned) denying Plaintiffs' Rule 60 motion noting that the motion was deficient without providing any reasons for the denial or any explanation of the deficiency.

### III.   LAW AND ARGUMENT

#### A.   *Legal Standards for Rule 41(b) Involuntary Dismissal*

District courts have inherent power under Fed. R. Civ. P 41(b) to involuntarily dismiss claims due to Plaintiff's failure to prosecute a claim, for non-compliance with the Federal Rules of Civil Procedure, or for disobedience of a court order. Fed. R. Civ. P. 41(b) However, "a district court should issue a formal warning before resorting to the sanction of dismissal for failure to prosecute, but such a warning is not always required." § 2370 *Involuntary Dismissal-Want of Prosecution* 9 Fed. Prac. & Proc. Civ. § 2370 (3d ed.) (*citing In re Nora*, 417 Fed. Appx.573, 576 (7th Cir. 2011); *Thanedar v. Time Warner Communications of Houston, L.L.P.*, 227 Fed. Appx. 385 (5th Cir. 2007). The absence of notice or the failure to hold a hearing does not necessarily render a dismissal void; the adequacy of notice and a hearing turn on a party's knowledge of the consequences of his or her conduct." *Id.* (citing *SEC v. Packetport.Com, Inc., ,* 2007 WL 1521583 (D.C.Conn. 2007)) "Prior notice or lack thereof is a key consideration in determining whether the district court abused its discretion." *Id.* (*citing S*tough v. Mayville *Community Schools*, 138 F.3d 612 (6th Cir. 1998). In this case, Plaintiff never received any prior

notice that her claims would be dismissed with prejudice if she failed to submit a declaration to the court advising of the status of her claims.

An involuntary dismissal under Fed. R. Civ P. 41(b) requires (1) a record of delay or contumacious conduct by the Plaintiff; (2) an express determination by the trial court that no lesser sanction would prompt diligent prosecution, or that  lesser sanction would be futile; and (3) a finding of one of three aggravating factors to be present: delay caused by the plaintiff, or actual prejudice to the defendant, or a showing of intentional delay by plaintiff's conduct. *Farmer v. La. Elec. & Financial Crimes Task Force*, Nos. 13-30422, 30423, 553 Fed. Appx. 386, 389-90 (5th Cir. 2014).  None of these factors are present in this case.

### B.  Plaintiffs Did Not Intentionally Disobey PTO 63, Nor Act Contumaciously

The Fifth Circuit has held that:

> . . . because [a] dismissal with prejudice is an extreme sanction that deprives the litigant of the opportunity to pursue his claim, . . . this [c]ourt has limited the district court's discretion in dismissing cases with prejudice. We will therefore affirm dismissals-with-prejudice for violations of docket management orders only on a showing of *a clear record of delay or contumacious conduct* by the plaintiff . . .  and where lesser sanctions would not serve the best interests of justice.

*Graham v. BP Expl. & Prod. (In re Deepwater Horizon)*, 922 F.3d 660, 666 (5th Cir. 2019) (*citing Barrera v. BP, P.L.C. (In re Deepwater Horizon)*, 907 F.3d 232, 235 (5th Cir. 2018) (Internal citations omitted. Emphasis added). In Barrera, plaintiff filed a motion for an extension of time in the underlying MDL 2179 litigation in order to comply with PTO 60. PTO 60 ordered that individual lawsuits with signed declarations be filed by May 2, 2016, and warned that non-compliance would result in dismissal of claims with prejudice. Barrera's motion for an extension of time was granted, noting that no further extensions would be granted. However, Barrera filed a second motion for an extension of time arguing that their clients were out of town, or out of the

country, and could not provide sworn declarations within the time frame the court ordered. The district court did not rule on the motion, and the Barrera plaintiffs failed to timely submit signed declarations. The district court then entered a show cause order as to PTO 60. *Id.* The Barrera plaintiffs responded to the show cause order arguing that additional time was needed for certain plaintiffs to obtain signed declarations, that other plaintiffs had since filed individual declarations, and that plaintiffs in the mass joinder complaint needed additional time for compliance because of a "lack of electronic means, working offshore, inaccessibility, and change of contact information." *Id.* at *1. The Fifth Circuit held that because the Barrera *plaintiffs failed to provide corroborating evidence to explain the need for the continuances*, and – given *the number of opportunities* the district court granted plaintiffs to comply with PTO 60 or explain why they could not comply – Barrera's non-compliance with PTO 60 constituted a clear record of delay. *Id.* at 2-3

The Fifth Circuit followed *Barrera* with *Graham, supra.* There, the D'Amico plaintiffs were a group of seventeen (17) individuals who brought two (2) individual suits in this Court and one (1) in a district court in Florida. The Florida case was transferred to the MDL 2179 master litigation. Compliance with PTO 63 required that B3 plaintiffs who had filed an individual complaint (one without class allegations) had to file and serve a sworn statement in his individual lawsuit by April 12 2017. However, any plaintiff who had only filed a short form joinder, or was part of a complaint with more than one plaintiff was required to file an individual lawsuit by April 12, 2017. The D'Amico plaintiffs were notified that failure to comply with PTO 63 would result in dismissal of their claims with prejudice. After issuance of PTO 63, the D'Amico plaintiffs sought advice from the Plaintiffs Steering Committee on how this order applied to them. Considering advice received from the Plaintiff's Steering Committee, the

D'Amico Appellants thereafter believed that PTO 63 only required them to file sworn statements. The D'Amico plaintiffs thus filed sworn statements instead of individual lawsuits in response to PTO 63. However, their submissions were determined to be "deficient," and their claims were dismissed with prejudice, as they were actually required to file individual lawsuits to comply with PTO 63.  The D'Amico plaintiffs argued that their failure was unintentional. This court denied their Rule 59(e) motions, and the D'Amico plaintiffs sought relief from the Fifth Circuit. On appeal, the D'Amico plaintiffs emphasized that they had sought advice from the Plaintiffs' Steering Committee, that based on that advice they filed statements, instead of individual lawsuits, and that a lesser sanction would better serve the interests of justice. The Fifth Circuit agreed and noted that the D'Amico plaintiffs had timely filed sworn statements, which showed an absence of willful misconduct. The Fifth Circuit continued "[t]here is a critical difference between trying but failing, on the one hand, and simply not trying, on the other. Because the record shows the former, we conclude that the D'Amico Appellants did not engage in delay or contumacious conduct sufficient to support dismissal-with-prejudice." *Id.* at 668 (Internal citations omitted.) The Fifth Circuit further recognized that appellants did not receive an extension to comply with PTO 63 and then blow it off. And, after their claims were dismissed they sought leave to re-file individual lawsuits. The D'Amico plaintiffs also corroborated their claim that they misunderstood PTO 63 with documentation. The Fifth Circuit then reversed and remanded.

Most recently, the Fifth Circuit followed *Barerra* and *Graham, supra.,* with the unpublished decision *Park Nat'l Corp. v. BP Expl. & Prod. (In re Deepwater Horizon)*, 2020 U.S. App. LEXIS 4778, (5th Cir. Feb. 13, 2020). Plaintiffs *Park National* and *Destin* asserted economic and property damage claims. PTO 65 required the *Park* and *Destin* plaintiffs to

provide sworn answers to four (4) questions. This Court thereafter issued a show cause order requiring plaintiffs who failed to file a PTO 65 submission to show why dismissal with prejudice was not proper. The Destin plaintiffs filed a response to the show cause order noting it's attorney was not served with PTO 65, and noted that their attorney failed to sign up for electronic service. The Park plaintiffs did not respond to PTO 65 or the show cause order, and their claims were dismissed with prejudice. As to the Destin plaintiffs, the Fifth Circuit determined that counsel 's failure to sign up for electronic service was "not the type of good-faith mistake we considered in *Graham*. . .  [and] . . . that Destin's counsel disregarded not only PTO 65 but also the district court's instructions in an earlier PTO. . ." finding that the Destin plaintiffs had demonstrated a "record of contumacious conduct." *Id.* at *5. The Fifth Circuit further held that a lesser sanction would not better serve the interests of justice since plaintiffs had not identified a lesser, effective sanction.

However, 5th Cir. Loc R. 47.5.4 provides in part that:

> Unpublished opinions issued on or after January 1, 1996, ***are not precedent***, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like).

*Id.* (Emphasis added.) Moreover, when there are conflicting decisions of the Fifth Circuit, this Court should apply the rule of orderliness." This Court has described the "rule of orderliness" as follows:

> It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court. *E.g., United States v. Simkanin,* 420 F.3d 397, 420 n. 25 (5th Cir.2005). Indeed, even if a panel's interpretation of the law appears flawed, the rule of orderliness prevents a subsequent panel from declaring it void. *Grabowski v. Jackson County Pub. Defenders Office,* 47 F.3d 1386, 1400 n. 4 (5th Cir.1995) (Smith, J., concurring in part and

dissenting in part), *vacated for reh'g en banc, id.* at 1403, *district court judgment aff'd,* 79 F.3d 478 (5th Cir.1996) (en banc).

*Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir.2008). "[T]o to the extent that a more recent case contradicts an older case, the newer language has no effect." *Arnold v. U.S. Dep't of Interior*, 213 F.3d 193, 196, n. 4 (5th Cir.2000). Plaintiffs in the case at bar respectfully submit that *Park National* is not precedent under 5th Cir. Loc R. 47.5.4, and that *Graham, supra.,* is controlling. *Graham* is a panel decision of the Fifth Circuit which has not been overruled by the Supreme Court or by the Fifth Circuit sitting *en banc.* The Fifth Circuit in *Graham* clearly held that where plaintiffs ***received notice*** that failure to comply with a pre-trial order would result in dismissal, and where plaintiffs ***reasonably relied on advice from the Plaintiffs Steering Committee,*** there was no intentional disobedience of an order of this Court.

Here, Plaintiffs require additional time to comply with PTO 63 since they did not receive a copy of, nor were they even aware of PTO 63, or the Compliance Order for PTO 63, until R.Doc.21 was electronically served upon the undersigned on September 6, 2018 via this court's ECF/ECM filing system. Further, neither Plaintiff nor Plaintiff's counsel willfully disobeyed PTO 63 or any other order of this court,[14] and there is no record or even any indication that Plaintiff has done so. In fact, Plaintiffs reasonably relied on a representation from Plaintiff's liaison counsel that all claims in B3 were stayed, such that Plaintiffs reasonably believed that no action was required. See also *Norman v. U.S.* 377 F. Supp. 2d 96 (D.D.C. 2005), aff'd, 467 F.3d 773 (D.C. Cir. 2006) (holding that counsel's lack of familiarity with electronic case filing system which led to failure to receive email notification of status conference constituted excusable neglect.

---

[14] R.Doc.25193-4, Declaration of J. Arthur Smith, III

The type of willful disobedience necessitating involuntary dismissal was addressed in *Vohwinkel v. Pembroke Cent. School Dist.,* No. 05-CV-37S, 2008 WL 2074078 (W.D. N.Y May 14, 2008). There, the court granted defendant's motion for summary judgment as unopposed and dismissed plaintiff's claims after plaintiff repeatedly failed to oppose defendant's motion for summary judgment. The court provided Vohwinkel at least four (4) different deadlines to oppose the motion, but Plaintiff failed to do so.  Plaintiff then hired a new attorney- who likewise failed to oppose the motion, and failed to attend an oral argument.  Accordingly, the court ruled ". . . it is the opinion of this court that plaintiff has no intention of complying with this court's orders or properly litigating this case." *Id.* at \*4. Had Plaintiff in the case *sub judice* been served with PTO 63, she would have certainly complied with this court's order.[15] The Plaintiff respectfully submits that her attorneys' inadvertence is nothing comparable to the willful disobedience displayed in *Vohwinkel.*  Moreover, more than six-hundred (600) other cases were dismissed by this court on July 18, 2017 pursuant to the Compliance Order for PTO 63, suggesting doubt as to whether more than six-hundred (600) other attorneys received proper notice of PTO 63.

### C.  No Express Determination Has Been Made Regarding Lesser Sanctions, or What Prejudice Defendants Will Suffer

The Compliance Order for PTO 63 does not even specifically cite <u>*this claim*</u> as being dismissed.  This Order is also silent as to whether lesser sanctions would be possible or that lesser sanctions would be futile, in contravention of Fifth Circuit jurisprudence. *See Farmer*, *supra.* Likewise PTO 63 does not indicate what prejudice Defendants *may* suffer should this matter be permitted to proceed to a merits determination. In *In re Deepwater Horizon,* 17-30122, *supra.,* the Fifth Circuit considered the fact that after plaintiffs were determined to be non-compliant with PTO 60, the district court gave them multiple opportunities to explain *why*

---

[15] *Id.*

*their claims should not be dismissed. Id.* at * 7. Plaintiff in the case at bar has been granted no

such opportunity.

IV.     **Relief From a Judgment Under Rule 60**

     A. ***Factors for Consideration Under Seven Elves Weigh in Favor of Granting Plaintiff's Relief***

The Fifth Circuit has held that Rule 60(b) is "a grand reservoir of equitable power to do

justice in a particular case that may be tapped by the district court in the sound exercise of its

discretion, and within the strictures inherent in the underlying objectives of the rule." *Seven*

*Elves, Inc. v. Eskenazi,* 635 F.2d 396, 402 (5th Cir. 1981). There, the court applied eight (8)

factors in reversing and remanding the trial court's judgment denying defendants' Rule 60(b)

Motion. In *Seven Elves* defendants had sought relief under Rule 60(b) as to a judgment against

them because they were not present at trial. The Fifth Circuit considered:

> (1) That final judgments should not lightly be disturbed; (2) that the Rule
> 60(b) motion is not to be used as a substitute for appeal; (3) that the rule
> should be liberally construed in order to achieve substantial justice; (4)
> whether the motion was made within a reasonable time; (5) whether if the
> judgment was a default or a dismissal in which there was no consideration
> of the merits the interest in deciding cases on the merits outweighs, in the
> particular case, the interest in the finality of judgments, and there is merit
> in the movant's claim or defense; (6) whether if the judgment was
> rendered after a trial on the merits the movant had a fair opportunity to
> present his claim or defense; (7) whether there are intervening equities that
> would make it inequitable to grant relief; and (8) any other factors relevant
> to the justice of the judgment under attack.

*Id.* at 402.

    In *Seven Elves* defendants failed to inform their attorney of their new address, however

the attorney became indirectly aware of the defendant's new address during a deposition.

Defendants subsequently terminated the attorney, and when the court issued a notice of trial, the

terminated attorney mailed the trial notice to defendants' former address, which was invalid. As

a result, defendants did not appear at trial, a default judgment for damages of $250,000 were entered against them. Defendants were not aware of this judgment until being served with a show cause order for a writ of execution, upon receipt of which, defendants filed a Rule 60(b) motion for relief about six (6) month after the trial court judgment. *Id.* at 399. First, the court found there was no indication that the motion was being used to appeal the judgment, and that the motion was filed within "a reasonable time" as it was brought within one year of the entry of judgment. Next, the court found that judgment was entered in defendants' absence, prior to taking any evidence, without defendants having an opportunity to present their case, and that Rule 60(b) would be liberally construed in considering such a "truncated proceeding."  Third, the court found merit in defendants' case, evidenced by affidavits incorporated therein to cite facts which could assist in showing the existence of an element in plaintiff's malicious prosecution claim. Finally, the court found that defendants were deprived of an opportunity to present the merits of their case because of unusual circumstances, namely: that their absence at trial resulted from their attorneys' representation that no action would be required of them unless and until he contacted them; that the attorney withdrew from the case without actually being relieved as their attorney of record; that the attorney did not appear at trial; and that the defendants did not receive notice of the trial date.

As in *Seven Elves*, the instant motion is not a substitute for an appeal, as there has been no determination of the merits of Plaintiffs' claims. Admittedly, this motion is being brought more than one (1) year from the Order of dismissal. However, this motion is being brought about two and one-half (2 ½) months after the undersigned was served with the Order (R.Doc.21) to the clerk to close this case, which was when the undersigned first learned of the dismissal with prejudice. Further, the July 18, 2017 Order was entered without service upon, or a response from

Plaintiff. Plaintiff's complaint herein states a validly pled wrongful death claim. No discovery has taken place in this case, except for written discovery issued to Defendants, which has not been answered, and because the undersigned was advised that this case had been stayed.

Finally, the Plaintiff respectfully submits that the following significant factors are relevant to the justice of the court's dismissal, and the deprivation of Plaintiff's day in court:

- this is a wrongful death action brought by a widow and her two (2) surviving children;

- PTO No. 25 (R.Doc. 3-3) issued on January 12, 2011 *stayed* all claims within B3, and this stay has never been lifted;

- the dismissal was for failure to submit information in a statement, the substantive content of which is primarily included in the complaint: (1) that Mr. Thibodaux was working for Transocean for one (1) year from April 2010 to April 2011; and (2) that he died as a result of contracting cancer because of his exposure to dispersants used in the cleanup efforts; and

- PTO 25, a prior order of this court, appears to have established the status of Plaintiffs' claims as categorized in B3, and not belonging to the Medical Benefits Class.

### B. Relief From this Court's Compliance Order for PTO 63 is Warranted Under Rule 60(b)(1)

Fed. R. Civ. P. 60(b) provides in pertinent part that ". . . [o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . (6) any other reason that justifies relief."

> The rule does not assume to define the substantive grounds for vacating judgments, but merely prescribes the practice in proceedings to obtain relief. The rule attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done.

§ 2851 *History and Purpose of Rule*, 11 Fed. Prac. & Proc. Civ. § 2851 (3d ed.)

Numerous Rule 60 motions have been granted due to confusion about the procedural posture of a proceeding or when a litigant did not receive service of process. § 2858 *Mistake,*

14

*Inadvertence, Surprise, or Excusable Neglect*, 11 Fed. Prac. & Proc. Civ. § 2858 (3d Ed.) In *State v. Sparks*, 978 F.2d 226 (5th Cir. 1992) the Fifth Circuit granted defendant's Rule 60(b)(1) motion because of his counsel's confusion about the procedural history of a related removal proceeding. The court excused Sparks' mistaken belief that the government had the burden to re-urge a motion to quash a subpoena once the subpoena proceeding was removed to federal court. The Fifth Circuit ruled that this court abused its discretion in dismissing by failing to grant Sparks' Rule 60 motion due to the ". . . extremely confusing procedural posture" of that case. *Id*. at 228.   Similarly, in *Jolin v. Casto*, 238 F.R.D. 48 (D. Conn. 2006) the trial court granted plaintiff's Rule 60 motion to re-open plaintiff's case based on plaintiff's misreading of the court's notice that cases would be dismissed where no action was taken for a period of six (6) months.  Discovery in that proceeding was ongoing and plaintiff's counsel was unaware of any scheduling order.  The *Jolin* court ruled ". . . all doubts are to be resolved in favor of adjudication on the merits." The court then concluded that the error was an honest mistake, not one of ill will, nor an intentional act.  Plus, the court ruled that plaintiff's claim was "sufficiently grounded in law so as to give the fact finder some determination to make." *Id.* at *50.  That is, *Jolins'* claim stated the prima facie elements of a negligence action.   See also *In re Houston Oil Tr. Sec. Litig. MDL-625*, 990 F.2d 625 (5th Cir.1993) reversing the dismissal and noting an absence in the record of delay or contumacious conduct or an express determination that lesser sanctions would not prompt diligent prosecution; *Long v. Simmons*, 77 F.3d 878 (5th Cir. 1996) (vacating judgment of dismissal and remanding where record was devoid of pro-se Plaintiff's willful disobedience of court order to submit disclosure form to court nor any record that lesser sanctions were considered.) See also *Romero v. Stephens*, No. 14-CV-40570, 624 Fed. Appx. 231 (5th Cir. 2015) (Rule 41(b) dismissal vacated and case remanded where pro-se plaintiff's

motion for extension to respond to answer was lost in the mail, and no record of Plaintiff's willful disobedience existed in record, nor were lesser sanctions considered); and *Brown v. O'Leary*, 512 F.2d 485 (5th Cir. 1975)

Other factors for considering a Rule 60 motion are the ". . . parties' and society's interest in finality of judgments and avoidance of prejudice." *Mistake, Inadvertence, Surprise, or Excusable Neglect*, 11 Fed. Prac. & Proc. Civ. § 2858 (3d Ed.) (*citing Blois v. Friday,* 612 F.2d 938, 940 (5th Cir. 1980) "[S]light mistake by the attorney should not deprive the party of the opportunity to present [the] true merits of his claims." *Id.*

Plaintiffs are, of course, cognizant of the time delay set for a litigant to obtain relief under Rule 60(b)(1): no more than one (1) year after the entry of the judgment or order.  The undersigned did inadvertently fail to register for LNFS service of pleadings, which led to Plaintiff not being served with Compliance Order for PTO 63 which dismissed Plaintiffs claims. However, the Plaintiffs contend that the manner of service of pleadings in this matter has been inconsistent. Compliance Order for PTO 63 was never served upon Plaintiff's counsel via the court's ECM/ECF filing system, yet this court's September 6, 2018 order[16] was served upon the undersigned via ECM/ECF filing system. Had the undersigned been served with the Compliance Order for PTO 63 in the same manner as service was affected upon him regarding R.Doc.21, Plaintiff would have received ample notice, complied with this court's directive to submit a sworn statement,[17] and in any event – would have been able to file a Rule 60(b)(1) motion prior to now.

---

[16] R.Doc.21
[17] R.Doc.25193-4

### C.  *Alternatively, Relief From Compliance Order for PTO 63 is Warranted Under Rule 60(b)(6)*

> The most common "other reason" for which courts have granted relief is *when the losing party fails to receive notice of the entry of judgment in time to file an appeal.* Relief has been deemed particularly appropriate when counsel was diligent about tracking the case, and through no fault of the party's, did not receive notice of the entry of judgment. . .

§ 2864 *Other Reasons Justifying Relief*, 11 Fed. Prac. & Proc. Civ. § 2864 (3d ed.).  (Emphasis added).

Plaintiff submits that she has diligently tracked the procedural posture of this matter, and that she did not receive a copy of the dismissal until well after her deadline to file an appeal. On September 5, 2014 the undersigned was notified by Richard Hymel, counsel for Defendant Transocean Offshore Deepwater Drilling, Inc., who confirmed Plaintiff's belief that this matter was still stayed.[18] On January 2, 2015 the undersigned received email correspondence from Mr. Hymel, reiterating that this claim remained stayed.[19] Plaintiff's counsel never even received an answer to their complaint. Indeed, Plaintiffs had not received notice of any action taken by the court for a couple of years.[20] Because of a concern of potential abandonment and no notice regarding the status of the stay order issued on January 12, 2011[21], Plaintiff's counsel served substantial discovery requests in the form of requests for admissions, requests for production of documents and interrogatories upon Defendants BP, P.L.C., BP America, Inc., BP Corporation North America, Inc., BP Company North America, Inc., and BP Products North America, Inc. on August 18, 2017.[22] Thus, Plaintiff certainly believed her claims remained pending as of August

---

[18] R.Docs.25193-4, and 25193-5
[19] R.Doc.25193-6
[20] It is Plaintiff's understanding that on February 23, 2017, Stephen J. Herman, the Plaintiff's Liaison counsel in the multi district litigation, posted a copy of PTO 63 on the Louisiana Association for Justice's "Eagles Listserv", a trial lawyer list serve. See R.Doc.25193-7
[21] PTO No. 25 (R.Doc. 3-3)
[22] See R.Doc.25193-8, Plaintiff's discovery requests

18, 2017. Yet, according to Compliance Order for PTO 63, this matter had apparently been dismissed on July 18, 2017.

Additionally, Plaintiff's requested relief is warranted given the significant deprivation of due process rights as secured by the Fifth Amendment. In *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 429–30, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982), the court held in pertinent part that:

> The Court traditionally has held that the Due Process Clauses protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress grievances. In *Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), for example-where a plaintiff's claim had been dismissed for failure to comply with a trial court's order-the Court read the "property" component of the Fifth Amendment's Due Process Clause to impose "constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." *Id.*, at 209, 78 S.Ct., at 1094. Similarly, the Fourteenth Amendment's Due Process Clause has been interpreted as preventing the States from denying potential litigants use of established adjudicatory procedures, when such an action would be the equivalent of denying them an opportunity to be heard upon their claimed right[s].

*Id.* (internal citations omitted).

## CONCLUSION

Plaintiff has not engaged in any willful delay or contumacious conduct requiring dismissal of her claim as required under Fed. R. Civ P. 41(b), and the significantly confusing procedural posture of this matter weighs in favor of re-opening these Plaintiffs claims as the Fifth Circuit has done with similar matters. Further, no express determination has been made regarding why a lesser sanction, if any, would not be appropriate instead of dismissing this case with prejudice. Despite that this court did issue PTO 63, and the Compliance Order for PTO 63, Plaintiff had no knowledge of the order to file a declaration, nor the harsh consequences which

would follow from her non-compliance, as set forth in PTO 63. The fact that more than six-hundred (600) other cases were similarly dismissed pursuant to the Compliance Order for PTO 63, suggests that there may be doubt as to the adequacy of this notice. Mrs. Thibodaux respectfully requests that she be permitted an opportunity to comply with this court's PTO 63, and submit the required declaration: a significantly less burdensome request, than the opportunity for compliance afforded the Barrera plaintiffs in *In re Deepwater Horizon,* 17-30122, 2018 WL 5077646 (5th Cir. Oct. 18, 2018).   Additionally, the *Seven Elves*' considerations for granting a party relief under Rule 60 weigh in Plaintiff's favor.   Ms. Thibodaux, a widow, brings this wrongful death action on behalf of her children and herself for the death of their father and her husband.  Mrs. Thibodaux thus submits that her request is not lightly made, and this motion is not seeking an appeal on the merits, as the merits have never been considered by the Court. Given these considerations, and the jurisprudence of the Fifth Circuit, Mrs. Thibodaux respectfully submits that the interest of justice can only be served by permitting her an opportunity to submit the required declaration, and permitting these claims to be re-opened.

<div style="margin-left:40%">

Respectfully Submitted,

**SMITH LAW FIRM**

*/s/ J. Arthur Smith, III*
**J. ARTHUR SMITH, III** (#07730)
830 North Street
Baton Rouge, LA  70802
Telephone: (2265) 383-7716
Facsimile: (225) 383-7773
jasmith@jarthursmith.com
*Counsel for Plaintiffs*

</div>

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that the above and foregoing was electronically filed this day with the Clerk of Court for the Eastern District of Louisiana, and that a copy of same was previously served upon all counsel of record and interested parties via the Court's File & ServeXpress service on March 16, 2020.

  Baton Rouge, Louisiana this 30th day of April, 2020.

         *__/s/ J. Arthur Smith, III___*
          J. Arthur Smith, III