MINUTE ENTRY
WILKINSON, M. J.
MAY 15, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL BY THE OIL RIG      MDL NO. 2179
"DEEPWATER HORIZON" IN THE
GULF OF MEXICO ON APRIL 20, 2010      SECTION "J"

THIS DOCUMENT RELATES TO:      JUDGE BARBIER
     MAG. JUDGE WILKINSON

Civil Action Nos. 12-970, 15-4143,
15-4146 and 15-4654

## CLAIMS APPEAL DETERMINATION AND REASONS
### [Halliburton and Transocean Settlement]

The Claims Administrator has provided me with the Appeal Determination Notice, Court Review Request, Claim Form, Settlement Program Appeal Determination letters and correspondence/brief of Apache's counsel concerning the appeal of Apache Louisiana Minerals, LLC ("Apache" or "claimant") denying its claims for payment from the Halliburton/Transocean Settlement Agreements.

Having reviewed these materials, the determination of the Claims Administrator is REVERSED and these matters are REMANDED to the Claims Administrator for payment of Apache's claims for the following reasons.

**MJSTAR:  7:50**

Apache appeals the Claims Administrator's denial of its Wetlands Real Property claims. The Claims Administrator initially determined that Apache failed to submit the required tax documentation.[1] In his appeal determination, the Claims Administrator reiterated that because Apache failed to produce 2010 tax assessments for the claims at issue, Apache lacks the required documentation to establish ownership eligibility for compensation, as required by the Distribution Model.[2]

Apache asserts that its ancestors in title entered into boundary agreements establishing their ownership of the subject property.[3] It attaches these agreements, the first of which demonstrates that Vermilion Bay Land Company ("Vermilion Bay"), one of Apache's ancestors in title, and the current neighboring landowner Louisiana Land and Exploration Company ("Louisiana Land") entered into a boundary agreement, dated August 13, 1969, which was filed into the Plaquemines Parish conveyance records at COB 340; Folio 448; File #61.[4]  The second boundary agreement demonstrates that various individuals, who are Apache's other ancestors in title ("the Cockrell Group"), and Louisiana Land entered into a boundary agreement, dated September 23, 1969, which was filed into the Plaquemines Parish conveyance records at COB 341; Folio 215;

---

[1] Determination Notice.

[2] Appeal Determination Notice.

[3] Court Review Request, Counsel's Memorandum at p. 1.

[4] Id.; Boundary Agreement between Vermilion Bay and Louisiana Land.

File #60.[5] Apache argues that La. Civil Code art. 789[6] and comment (C)[7] to that article demonstrate that because these agreements were filed in the public records, they are effective against third persons to demonstrate ownership and Apache should not be penalized merely because the Plaquemines Parish Assessor failed to "update[] its assessment to accurately reflect the boundary agreements."[8] Apache also submitted an email from Plaquemines Parish Assessor Belinda Hazel in which she states that there is "a 1994 conveyance which transferred immovable property and which transferred the boundary agreement itself . . . [t]he boundary agreement . . . states that it is an agreement between the two parties and not for use by a third party.[9] If the intent is to convey title,

---

[5] Id. at p.2; Boundary Agreement between Louisiana Land and the Cockrell Group.

[6] La. Civ. Code art. 789 provides, in pertinent part, that a "boundary may be fixed judicially or extrajudicially. It is fixed extrajudicially when the parties, by written agreement, determine the line of separation between their lands with or without reference to markers on the ground."

[7] Comment (C) to La. Civ. Code art. 789 provides that "[o]wners of contiguous lands may enter into a written agreement designating in it a boundary or line of division between their lands. When recorded, this agreement may be asserted against third persons in the same way as any other agreement affecting immovable property. The effect of such an agreement is to convey ownership to each party up to the designated line."

[8] Court Review Request, Counsel's Memorandum at pp. 2-3.

[9] The boundary agreement between Vermilion Bay and Louisiana Land provides that "the adjustment of said boundary lines, as herein provided, is limited to the fixing of the rights of the parties hereto, and their respective successors and assigns, and . . . this agreement is not executed for the benefit of any third person, or third persons, and shall not be binding upon or used against any of the parties signatory hereto, or their respective successors or assigns, in any controversy with any other person, firm, or corporation, for any purposes whatsoever." Court Review Request, Boundary Agreement between Vermilion Bay and Louisiana Land, Seventh Section (emphasis added). The boundary agreement between the Cockrell Group and Louisiana Land contains the same language as the other agreement, and also provides that ". . . certain assigns of the parties hereto, including mineral leases and transferees, may ratify and approve this agreement by separate

- 3 -

it is a [little] fuzzy. It seems like a lot of work to . . . <u>not</u> . . . create title. . . . I am willing, ready, and able to prepare an affidavit that states that there is a recorded boundary agreement between the parties but not a document such as a quitclaim which the Assessor's office recognizes as a conveyance which is why there is no tax bill in Apache's name."[10] However, no affidavit is attached or appears to have been provided.

Under Louisiana law, a duly recorded boundary agreement between the owners of contiguous lands has the effect of conveying ownership to the parties up to the boundaries set forth in the agreement. <u>See</u> <u>Barker v. Quality Builders, Inc.</u>, 503 So. 2d 1170, 1173 (La. App. 3d Cir.1987) (citing La. Civ. Code art. 789, comment (C)); <u>Longleaf Investments, L.L.C. v. Cypress Black Bayou Recreation & Water Conservation Dist.</u>, 162 So. 3d 479, 485 (La. App. 2d Cir. 2015) (same), <u>writ denied</u>, 171 So. 3d 251 (La. 2015). The boundary agreements, once recorded, were effective in conveying ownership of the land to the contracting landowners up to the stated boundaries.[11]  As noted above, the boundary agreements state that the agreement is for the benefit of the

---

instrument, and it is agreed that the effect of such ratification and approval shall be the same if accomplished herein." Court Review Request, Boundary Agreement between Louisiana Land and the Cockrell Group, Eighth Section.

   [10]  Administrative Mailings No. 23 at p. 4 (emphasis added).

   [11] The boundary agreements also provide that "[t]he parties hereto further declare that . . . they have agreed to hereby permanently fix and establish their . . . boundary lines in accordance with the description and map hereinabove referred to and have accepted the lines hereinabove set out in detail as the boundary lines between the properties . . . whether or not the same be the true lines as fixed by the original government survey, <u>and the parties do hereby make such conveyances and transfers</u>, without any warranty whatsoever . . . ." Court Review Request, Boundary Agreements, Fifth Section.

- 4 -

parties "and their respective successors and assigns."[12] Apache's original claim form contains a conveyance from Vermilion Bay to Apache, dated December 1994, which explicitly included both boundary agreements.[13] Based on the property descriptions contained in the boundary agreement between the Cockrell Group and Louisiana Land, compared with those in the 1994 conveyance between Vermilion Bay and Apache, it appears that at some point Vermilion Bay acquired the Cockrell Group's property before it conveyed it to Apache.[14] Thus, Apache acquired ownership of the subject property in 1994.

In certain extraordinary scenarios, the court's equitable authority and discretion permit deviation from the documentation requirements under the New Class Distribution Model. Record Doc. No. 21778 at p. 3. For example, it is physically impossible for a tax-exempt entity seeking compensation under the New Class settlement to meet the Distribution Model's requirement of submitting tax-related documents to the settlement program. Id. In such a case, "appropriate alternative documentation . . . deem[ed] to be reliable and appropriate for verification and evaluation of a given claim" may be considered. Id. (quoting Record Doc. No. 18797, at p. 27).

---

[12] Id., Boundary Agreement Between Vermilion Bay and Louisiana Land, Seventh Section; Boundary Agreement Between the Cockrell Group and Louisiana Land, Eighth Section.

[13] Claim Form No. 1 at pp. 441-469 (including the boundary agreements at p. 451).

[14] Id. at p. 445; Court Review Request at p. 49.

In this instance, Apache has submitted that sort of appropriate alternative documentation. Although the Plaquemines Parish Assessor states in her email that her office does not view a boundary agreement as a conveyance, Louisiana law provides that boundary agreements, once recorded, have the effect of conveying ownership up to the boundaries stated in the agreements. Apache cannot produce a 2010 tax assessment because the Plaquemines Parish Assessor's Office failed to update its records to include the land acquired in the boundary agreements. Apache owns the subject property and should not be deemed ineligible for compensation merely because of what the Assessor did or did not do.

The decision of the Claims Administrator is reversed. These matters are remanded to the Administrator for payment of Apache's claims.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

**CLERK TO NOTIFY:**
**HON. CARL J. BARBIER**
**and**
**HESI/TRANSOCEAN SETTLEMENT**
**CLAIMS ADMINISTRATOR**