IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION J |
| This Document Relates To:<br><br>No. 15-4143, 15-4146 & 15-4654 | * * * * * * | HONORABLE CARL J. BARBIER<br><br>CHIEF MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

**DECLARATION OF MICHELLE M. LA COUNT
REGARDING HESI AND TRANSOCEAN PUNITIVE DAMAGES SETTLEMENTS'
ALLOCATIONS AND DISTRIBUTION B**

I, MICHELLE M. LA COUNT, declare as follows:

1. I am a Senior Project Manager at Epiq Class Action and Claims Solutions, Inc.[1] (formerly an Assistant Director of Operations at Garden City Group, LLC ["GCG"]).  GCG was engaged by the Court appointed New Class Claims Administrator to assist him in implementing the Proposed HESI and Transocean Punitive Damages and Assigned Claims Class Action Settlements. Pursuant to the Court's April 12, 2016 Preliminary Approval Order regarding the Proposed HESI and Transocean Punitive Damages and Assigned Claims Class Action Settlements (the "Preliminary Approval Order"), GCG was authorized to act as the Class Notice Administrator in connection with the Settlements filed in MDL-2179.[2] The  following statements are based on my personal knowledge and information provided by other experienced GCG and Epiq employees working under my supervision, and, if called on to do so, I could and would testify competently thereto.

---

[1] GCG was acquired by Epiq as of June 15, 2018 and is now continuing operations as part of Epiq.
[2] All terms with initial capitalization not otherwise defined herein have the meanings ascribed to them in the HESI Punitive Damages and Assigned Claims Settlement Agreement as amended on September 2, 2015, as well as the Transocean Punitive Damages and Assigned Claims Settlement Agreement dated May 29, 2015 (the "Settlements").

## MAILING OF THE NOTICE

2. Notice regarding the New Class Settlements was included in a combined notice along with details of the Old Class Settlements in one overarching notification to the Classes in order to achieve the most cost efficient notice campaign possible. Details regarding the commingled notice campaign were provided to the Court in Section 2 of the Declaration of Michelle M. La Count (the "Old Class La Count Declaration") included as an exhibit to the Memorandum in Support of Motion for Approval of Distribution of the Assigned Claims Portion of the Halliburton Energy Services, Inc. and Transocean Ltd. Settlement Agreements [Rec. Doc. 25122-2].

## TELEPHONE HOTLINE

3. Epiq has continued to maintain a toll-free telephone number (1-877-940-7792) and Interactive Voice Response ("IVR") system to accommodate potential Old and New Class Members who have questions about the Settlements. As of May 13, 2020, Epiq has received 76,502 calls to the toll-free helpline. Call agents are available to take calls Monday through Friday, 9:00 am – 5:00 pm Central Time, excluding days when Epiq was closed for holidays, etc.

## WEBSITE

4. Epiq continues to maintain the case website (www.GulfSpillPunitiveDamagesSettlement.com) dedicated to the Settlements in order to assist potential Old and New Class Members.

5. The New Class Claims Administrator has provided Epiq with updates to post to the public website along with administrative forms, frequently asked questions, Court Status Reports, and Court Orders, including the Order Capping Individual Attorneys' Fees in the HESI and Transocean Punitive Damages and Assigned Claims Settlement Agreements [Rec. Doc. 24470].

6.      Epiq has also continued to handle written correspondence via the dedicated email address, Questions@GulfSpillPunitiveDamagesSettlement.com, and to answer inquiries received by US Mail and courier services.

**PROCEDURES FOLLOWED IN COMPILING THE CLAIMS DATA FROM EXISTING DHEPDS CLAIM DETERMINATIONS**

7.      <u>DHEPDS Claims Data Transferred</u>.   As described in the Declaration of Michelle M. La Count Regarding HESI and Transocean Punitive Damages Settlements' Allocations And Distributions filed as Exhibit 1 to the Motion for Approval of Partial Distribution of the Punitive Damages Portion of the Halliburton Energy Services, Inc. and Transocean Ltd. Settlement Agreements [Rec. Doc 25899-2] (the "La Count Distribution A Declaration") pursuant to the direction of the New Class Claims Administrator, the underlying Deepwater Horizon Economic and Property Damages Settlement ("DHEPDS") Court Supervised Settlement Program (the "CSSP") data was transferred for utilization in calculating *pro rata* shares of the HESI and Transocean Punitive Damages Settlements.  This process specifically involved harvesting the base compensation amounts of DHEPDS-eligible claims (the "Transferred Eligible Claims") prior to application of any DHEPDS Risk Transfer Premium for use by the Settlements Program prior to the application of a multiplier, if required, pursuant to the New Class Distribution Model (the "Model").  Additionally, the Settlements Program transferred data for denied claims in order to provide a full accounting of all DHEPDS claims filed for Class Members.

**NEW CLASS CLAIM FORM PROCESSING**

8.      There were a series of steps taken to process all New Class Claim Forms ("Claim Forms") in accordance with the Model that were described in detail in the La Count Distribution A Declaration.  A summary of the Claim Form processing steps is provided below:

(a) Deficiency identification and notification to the Claimant via US Mail providing a 20-day response deadline with a 10-day grace period before next steps would be taken;

(b) Determination notices were sent to the Claimant allowing 20 days from the date of the determination notice to appeal within the Settlements Program;

(c) For appealed claims, an appeal determination notice was sent to the Claimant via US Mail, providing 20 days to request Court Review, if desired;

(d) On claims with a Court review request, upon receiving the Order from Chief Magistrate Judge Wilkinson, a Court review determination notice was sent to the Claimant via US Mail, and a redacted copy of the decision was posted to the case website to provide guidance to other Claimants considering appealing to the Court.

In reviewing claims, the existing DHEPDS Coastal Real Property Framework, Wetlands Real Property Framework, Real Property Sales Framework, and Oyster Leaseholder Framework were employed as the basis for valuation to the extent possible with all necessary adjustments being tailored to mirror the DHEPDS frameworks as closely as possible (*e.g.*, the anticipated, alternate calculations to establish eligibility values for municipal and other tax exempt properties as a property tax value would not be available).

## APPLICATION OF THE DISTRIBUTION MODEL TO ALL CLAIMS

9. <u>New Class Claims Reconciliation Notices</u>. As detailed further in the La Count Distribution A Declaration to the Court, the New Class Claims Administrator issued letters to all potential New Class Members with either one or more transferred DHEPDS claims and/or one or more claims made via a Claim Form. This allowed for the reconciliation of claims and gave potential Class Members an opportunity to review the data for accuracy; confirm counsel's status, as applicable; receive notice regarding the attorneys' fee Order entered by the Court; and provide a Form W-9 if needed.

As reported to the Court previously, Claimants returned 4,864 requests for re-review to the Settlements Program. Of the 2,193 responses to the New Class claims reconciliation notices that met the requirements for review, data issues identified only related to Commercial Fishermen claims and Fraud, Waste and Abuse ("FWA") status; none of the appeals related to the Real Property claims that are the subject of this Declaration.

10. <u>DHEPDS FWA Claim Determinations, Clawback Motions, or Other Findings of Fraud or Material Misrepresentation</u>. Pursuant to page 27 of the Distribution Model, in situations where a Claimant had a successful clawback motion against it, had an FWA determination on one or more DHEPDS claims, or was the subject of a finding of fraud or material misrepresentation in the HESI/Transocean Settlements Program, such Claimants had all claims, regardless of the claim source (DHEPDS data or Newly Filed Claim), denied, and a determination notice was issued accordingly.

11. <u>Court-Appointed Neutrals' Settlements</u>. Pursuant to the Model, unless a timely, fully-documented Claim Form was submitted for consideration to the Settlements Program, the mere existence of a Neutrals settlement for a particular individual or entity did not entitle him/her/it to consideration for participation in these Settlements (*see* Page 7 of the Distribution Model, "Should you file a New Class claim?" [Rec. Doc. 18797]).

12. <u>DHEPDS Excluded Parties and Opt Outs</u>. Parties/entities that were not allowed to participate in the DHEPDS a) because they were excluded under the DHEPDS Agreement or b) because they validly opted out of the DHEPDS Agreement, could file a Claim Form and were potentially eligible to recover punitive damages pursuant to the Model, so long as they 1) could demonstrate receiving compensatory damages for a New Class-eligible claim type through an individual lawsuit or a settlement whereby rights to pursue punitive damages from HESI and Transocean had not been surrendered, including a settlement brokered by the Court-appointed

5

Neutrals, or 2) were in compliance with Pretrial Order 60 demonstrating they had reserved their right to potentially receive compensatory damages. The Claim Form filing deadline was December 15, 2016.

13. <u>Parties That Opted Out of the HESI/Transocean Settlements</u>. A total of 36 parties opted out of the Settlements (*see* Supplemental Declaration of Stephen J. Cirami Regarding (A) Notice Plan Implementation; and (B) Report on Requests for Exclusion Received to Date [Rec. Doc. 21858]). Pursuant to the direction of the New Class Claims Administrator, the claims database was checked to confirm no claims were received or processed for these parties.

14. <u>Allowances for Equitable Treatment Made by the New Class Claims Administrator during the Course of Administration</u>. The Distribution Model allowed for the New Class Claims Administrator to exercise equitable authority in his discretion as necessary during the course of the administration [Rec. Doc. 18797 at page 27]. The following equitable allowances were approved by the New Class Claims Administrator in order to efficiently and fairly assess claims in the exceptional situations noted below:

(a) As discussed during the Fairness Hearing during the hearing of objections to the Settlements and Proposed New Class Distribution Model, the Claims Administrator retained equitable authority to make decisions regarding Real Property claims that may have fallen outside the Real Property Compensation Zones. Where the evidence provided by the Claimant warranted inclusion in the Class, even if the property was located outside the original DHEPDS Coastal Real Property Compensation Zone or Wetlands Real Property Compensation Zone, the Claims Administrator made allowances on appeal to include claims for real property for which sufficient evidence of oiling had been submitted by the Claimant. On Wetlands Real Property claims where the necessary oiled-feet-of-property observation data was not available in SCAT or NRD records, but an alternate

6

    basis for inclusion was deemed reasonable and equitable by the Claims Administrator, the Coastal Real Property valuation formula was utilized. The solution for how to calculate a loss for these claims needed to be both time and cost sensitive, and, given there was no means by which to create oiling observations and measurements from 2010 because they were never observed and/or recorded contemporaneous to the Spill, this was the most reasonable option the Settlements Program could employ. This decision to not extend the Wetlands Real Property valuation framework was challenged on Court Review to Chief Magistrate Judge Wilkinson who affirmed the decision of the Claims Administrator, acknowledged the Claims Administrator's use of the equitable authority reserved unto him to allow for alternate valuation under the Coastal Real Property framework, and determined any further exercise of the Court's equitable authority and discretion was not justified [Rec. Doc. 25212].

(b) With regard to Coastal Real Property claims, the Model as approved by the Court states on Page 9 in the Eligibility Requirements and Calculation Methodology for Newly Filed Claims section, "The minimum compensation amounts noted in DHEPDS based on land use designations will not be considered in this Program." However, the necessary underlying data for the DHEPDS-calculated claims did not include the pre-minimum values, thus the time and cost associated with recreating this data would have far outweighed any potential benefit to the balance of the class not receiving these minimums. Additionally, given the limited funds of the HESI and Transocean Settlements, to lower the recognized losses when Claimants will only be receiving a *pro rata* share of those amounts would likely have yielded many payments so small that the cost of preparation would exceed the value of the payment, which would have been an unintended consequence of this provision of the Model. As such, the same minimum compensation

methodology used by the CSSP in calculating DHEPDS framework values has been utilized for applicable Newly Filed Claims.

15. <u>New Class Reserve Distribution B Claims</u>.  At this time the Court is only being petitioned for approval to pay claims in the following claim categories and underlying claim types (collectively, the "Distribution B Claims" or the "Real Property Claims"):

(a) Coastal Real Property;

(b) Wetlands Real Property;

(c) Real Property Sales; and

(d) Oyster Leaseholder.

Of the 887 DHEPDS claims identified as the DHEPDS Reserve Claim population prior to the Old Class distribution, none are unresolved New Class Distribution B-applicable claim types. There are 276 Distribution B Claims related to 29 Claimants that are currently pending in various stages of appeal or Court review, a list of which has been appended as Exhibit A (the "Distribution B Reserve Claims").  For these Claimants/claims, a Distribution B Reserve will be established and set aside using the *pro rata* share of the Real Property Claims' distribution pool attributable to these claims based on their potential maximum recognized loss for each Distribution B Reserve Claim for payment if/when the Distribution B Reserve Claim is determined to be eligible and no further due process rights remain.

## THIRD-PARTY CLAIMS AND BANKRUPTCY PROCESSING

16. <u>Eligible New Class Members with an Associated Third-Party Claim Record</u>. The Third-Party Claimants of record with claims for attorneys' fees, claims preparation liens, tax liens, child support liens, judgments, etc. shall be paid to the extent that the Third-Party confirmed that its lien transferred from records related to the original DHEPDS claim remains active. Alternatively, if the Third-Party Claimant has perfected its claim with the Settlements Program

8

directly, no additional confirmation will be required. Third-Party Claimant response timeframes are governed by Court-Approved Procedure 3, and if adequate responses are not timely received, such Third-Party claims will not be honored by the Settlements Program which shall not be liable for any loss, damage or injury of any kind or character to any such non-responding Third-Party Claimant(s).

17. <u>Eligible New Class Members with Claims Previously Identified as Related to a Bankruptcy Proceeding</u>. The appropriate U.S. Trustees have been contacted and, during the pendency of the Motion for Approval of Partial Distribution of the Punitive Damages Portion of the Halliburton Energy Services, Inc. and Transocean Ltd. Settlement Agreements, updates will be made to the Claimant bankruptcy records based on responses by the U.S. Trustees. In the event the award is disclaimed by the Trustee, such amount shall be paid directly to the Claimant. Trustee response timeframes are governed by Court-Approved Procedure 4, and if adequate responses are not received, such bankruptcy-related claims will not be honored by the Settlements Program which shall not be liable for any loss, damage or injury of any kind or character to any such non-responding U.S. Trustees, bankruptcy estates, or creditors of the Claimant(s).

**QUALITY ASSURANCE, FRAUD PREVENTION AND REGULATORY COMPLIANCE**

18. <u>Fraud Prevention Measures</u>. Epiq, prior to distribution, will review the database against its "watch list" of known potential fraudulent filers that it has developed throughout its over thirty years of experience as a claims and settlement administrator.

19. <u>OFAC Review</u>. In accordance with the Office of Foreign Asset Control ("OFAC") regulations and guidelines, Epiq will perform searches on payments to identify potential payees whose names may appear on the federal government's restricted persons list or who reside in countries to which payments are prohibited. Epiq regularly monitors changes to OFAC regulations and guidelines in connection with its distributions.

**DISPOSITION OF CLAIMS**

20.  <u>Eligible Claims</u>.  A total of 46,665 eligible claims for 27,121 unique Claimants were identified pursuant to the compilation procedures described in Section 7 (the "Transferred Eligible Claims").  In addition to the Transferred Eligible Claims, the Settlements Program received and processed Newly Filed Claims in accordance with the requirements of the Model. Those determined to be eligible are referred to herein as the "New Eligible Claims".  The following chart breaks down the New Eligible Claims by claim type:

| Claim Type | New Eligible Claims | Recognized Losses (Pre-Multiplier) | Recognized Losses (Including 2.5X Multiplier)[3] |
|---|---|---|---|
| Coastal Real Property | 2,226 | $14,006,410.26 | $35,016,025.65 |
| Wetlands Real Property | 412 | $122,935,320.96 | $307,338,302.40 |
| Real Property Sales | 7 | $492,862.02 | N/A |
| Oyster Leaseholder | 106 | $14,029,681.24 | N/A |

The Claim Forms resulting in the New Eligible Claims above were submitted by 613 additional unique Claimants.  Together, the Transferred Eligible Claims and the New Eligible Claims shall be referred to as the "Eligible Claims".

21.  <u>Denied Claims</u>. There are 29,498 claims falling into one of the applicable New Class claim types that were denied by the CSSP.  All of those determinations were automatically transferred from the DHEPDS to the Settlements Program (the "Transferred Denied Claims").

A total of 156 Claimants failed to meet the requirements identified in General Principles 14, 16, 17, and 19 of the Model, as further described at pages 6-9 of the same, such that their

---

[3] Total Recognized Loss inclusive of the multiplier for Coastal Real Property claims and Wetlands Real Property claims is calculated by multiplying the Pre-Multiplier Recognized Loss (the base compensation) times 2.5; there is no multiplier applied to Oyster Leaseholder or Real Property Sales claims per the design of the Model.

underlying claims yielded either denial determinations on the Claimant level or findings of a $0 punitive damages compensation as denoted below:[4]

Claimant-Level Determinations

| Determination Reason | Quantity |
|---|---|
| Non-Compensable/Only Ineligible Claim Types Claimed | 11 |
| Duplicate of Another Claim | 25 |
| Not PTO 60/Prior Compensatory Damages Compliant | 45 |
| Late Claim | 73 |
| Prior FWA Denial | 2 |
| **Total** | **156** |

An additional 3,269 claims were deemed ineligible based on their underlying merits pursuant to the requirements of the Model and are broken out into the various determination categories below:

Claim-Specific Ineligible Determinations by Claim Type

| Determination Reason | Coastal Real Property | Wetlands Real Property | Real Property Sales | Oyster Leaseholder |
|---|---|---|---|---|
| No Basis for Claim Provided | 4 | 7 | 2 | 2 |
| Failure to Cure Deficiencies/ Documentation Provided Did Not Support Eligibility | 231 | 84 | 36 | 26 |
| Non-Zone Property | 2,204 | 612 | 39 | 2 |
| Claim Not Settled via Neutrals Process/Covered by Individual Lawsuit | 4 | 2 | 0 | 14 |
| **Total** | **2,443** | **705** | **77** | **44** |

---

[4] It is unclear whether these Claimants had underlying Real Property claims because if the Claimant failed to meet the initial criteria, no further review was necessary or warranted to look at claim-level considerations or discern the claim types being made in light of the threshold issues.

Together, the Transferred Denied Claims and Claims associated with the above charts will be referred to as the "Denied Claims". These claims are associated with 12,228 total, unique Claimants.

22. <u>Distribution B Reserve Claims Valuation</u>. As noted above in Section 15, there are currently an additional 276 Distribution B Claims related to 29 Claimants that are pending in the various appellate processes provided in the Settlements and the Model. A reserve value has been assigned to each claim (the "Reserve Claim Values") to establish the aggregate values below based on the Real Property distribution pool of the Net Settlement Fund.

| Claim Type | Number of Reserve Claims | Maximum Reserve Recognized Losses (Pre-Multiplier) | Estimated Maximum Reserve Recognized Losses (Including 2.5X Multiplier) |
|---|---|---|---|
| Coastal Real Property | 241 | $1,530,930.61 | $3,827,326.52 |
| Wetlands Real Property | 32 | $7,011,782.66 | $17,529,456.65 |
| Real Property Sales | 1 | $231,250 | N/A |
| Oyster Leaseholder | 2 | $8,000 | N/A |

**NEW CLASS CLAIMS ADMINISTRATOR'S DETERMINATION ON DISTRIBUTION POOL REALLOCATIONS**

23. Pursuant to the Allocation Amongst Claim Categories in the Distribution Model, the New Class Claims Administrator reserved the right to reallocate as much as 3% of the overall Settlement Funds between the claim categories.[5]

In New Class Distribution B, the Claims Administrator has determined that pursuant to his authority reserved in the Model, the full 3% of the New Class settlements funds will be reallocated

---

[5] *See* the Distribution Model at pages 26 - 27.

12

to New Class Distribution B from previously allocated New Class Distribution A funds. These funds to be reallocated are derived from the excess reserve holdback from New Class Distribution A[6], the unused contingency reserve holdback from New Class Distribution A, and a downward revision of the estimated administrative costs to complete the New Class administration. As such, a total of $27,062,497.50, which includes the $1,000,000.00 set aside for reallocation during New Class Distribution A, has been reallocated to the Real Property claim category and shall be distributed as part of the Net Settlement Fund for New Class Distribution B.

## ESTABLISHMENT OF THE NET SETTLEMENT FUND

24.    <u>Administrative Fees/Expenses</u>.  The Court had previously entered orders granting approval to allocate $1,753,400.00 for Old Class administrative fees and expenses (the "Old Class Costs Allocation") in conjunction with the Old Class distribution [Rec. Doc. 25128] and $8,125,000.00 for New Class administrative fees and expenses (the "New Class Costs Allocation") in conjunction with New Class Distribution A [Rec. Doc. 25900].

Since that time, Old Class invoices approved by the Court total $1,663,882.47, leaving $72,539.28 remaining of Old Class Costs Allocation. The Claims Administrator has advised he wishes to apply the Old Class Costs Allocation funds remaining to the invoice to be filed with the Court for the period of February 1, 2020 – April 30, 2020, which will close out the Old Class Costs Allocation, after which all invoices will be paid from the New Class Costs Allocation given there is very limited Old Class distribution activity ongoing at this time, and most future activity relating

---

[6] The reserve holdback included a substantial sum in relation to updated seafood-related claim determinations made as the New Class Distribution A Order was being entered. Given the Claims Administrator was already reallocating $1,000,000 from that claim pool to stay in alignment with the 1:1 punitive to compensatory damages ratio under *Baker*, these funds are now being reallocated to the Real Property claims pool where the *pro rata* is otherwise lower based on the number of eligible claims received and the preference given to Real Property claims in the Model in accordance with the principles of *Robins Dry Dock*.

to the Old Class will also benefit the New Class (*e.g.* address update efforts, locating Claimants with undeliverable checks, etc.) given the overlap in membership of the Classes.

Since entry of the Order establishing the $8,125,000.00 New Class Costs Allocation, invoices totaling $2,770,080.65 have been approved by the Court and paid, leaving a remainder of $5,354,919.35. Assuming approval of the February 1, 2020 – April 30, 2020 invoice once that motion is filed, presuming the full $72,539.28 remaining of the Old Class Fee Allocation is utilized for this invoice, there will be $4,701,995.55 remaining from the Court's initial allocation.

To complete the initial New Class distributions, excluding tax preparation costs, for activities after May 1, 2020, the Claims Administrator anticipates a total cost for fees and expenses of $2,749,500.00. As such, at this time the Claims Administrator has advised he wishes to reduce the previously approved holdback to this amount. The balance of $1,952,495.55 will be included in the Claims Administrator's reallocation of funds to New Class Distribution B. All of the aforementioned funds should therefore be transferred to the New Class Distribution B account to improve administrative efficiency.

The New Class Claims Administrator will continue to submit invoices for Court approval on a quarterly basis as fees and expenses are accrued prior to payment from the set aside administrative fee and expense reserve funds.

25. <u>New Class Distribution B Contingency Hold Back Funds</u>. Given the complexity and age of the data in some instances, the New Class Claims Administrator determined a holdback of $3,500,000.00 prior to *pro rata* allocation of the available funds was appropriate and necessary to ensure funds are available to remediate any issues that could arise post-distribution. These funds would also be utilized for any Distribution B Claims that require a true-up payment.

26. <u>Settlement Funds Allocated to the New Class</u>. The commingled HESI and Transocean Settlements proceeds totaled $1,239,750,000.00 (prior to earning interest or deducting

any taxes due and administrative costs and fees) of which the Allocation Neutral allocated to the New Class $902,083,250.00 (the "New Class Settlements' Proceeds") [Rec. Doc. 15653].

27. <u>Estimated Commingled Net Settlement Fund Available for Division Amongst the Eligible Distribution B Claims</u>. After additions of: (a) estimated interest earned through June 15, 2020, on the New Class Settlements' Proceeds earmarked for New Class Distribution B, (b) the additional $27,062,497.50 in reallocated funds from the prior New Class Distribution A holdbacks, and (c) an overpaid invoice refund of $10,706.00; and after deduction of (a) $725,463.08 for the pending invoices and setting aside of the revised New Class Costs Allocation for activity after May 1, 2020 of $2,749,500.00; (b) the New Class portion of taxes paid from the New Class Settlement funds on interest earned; (c) an additional $35,240.00 for future tax preparation expenses to be added to the $34,760 remaining from prior Court Orders [Rec. Docs. 25128 and 25900]; and (d) the contingency holdback of $3,500,000.00; the remaining New Class Distribution B Net Settlement Fund balance is estimated to be $755,038,305.16. This amount will be subject to adjustment once additional interest and tax liabilities are established based on actual available amounts on approximately June 15, 2020.

28. Funds shall be transferred upon entry of an order by the Court authorizing this action. Section 33(e) below contains additional detail. After transfer, the original escrow accounts set up with UBS for the Halliburton Energy Services, Inc. Settlement Fund and Transocean, Ltd. Settlement Fund shall be closed, and final tax returns for the associated employer identification numbers shall be filed. The distribution account for the New Class Distribution B payments has previously been established with Huntington Bank, and it is requested all remaining New Class Costs Allocation funds as well as funds allocated for tax preparation be transferred to this account for purposes of administrative efficiency.

## ESTIMATED INITIAL DISTRIBUTION *PRO RATA*

29. <u>Estimated *Pro Rata* Value for Distribution B</u>.  Based on the estimated Distribution B Net Settlement Fund value of $755,038,305.16 as described in Section 27, the estimated *pro rata* for the Real Property claim category is as follows:

| Claim Category | Eligible Claims Count | Reserve Claims Count | All Claims - Recognized Losses (Pre-Multiplier) | 2.5X Multiplier Value for Coastal Real Property & Wetlands Real Property Claims | All Claims – Recognized Losses Including 2.5X Multiplier (as applicable) | Distribution Pool Value | Estimated *Pro Rata* |
|---|---|---|---|---|---|---|---|
| **Real Property Includes: Coastal Real Property, Wetlands Real Property, Real Property Sales & Oyster Leaseholder** | 49,416 | 276 | $895,915,581.29 | $411,766,308.54 | $1,307,681,889.82 | $755,038,305.16 | 0.5773868331 |

The distribution pool includes an allocation of funds for all Distribution B Reserve Claims based on their potential, maximum recognized losses.  As further described in Section 22, should these claims become eligible at a later date, these funds will be utilized to make those distributions.  The distribution value for the allocation to these Distribution B Reserve Claims will change given it is established based on a *pro rata* allocation of the Distribution B Net Settlement Fund value, which must be finalized to account for additional interest earned between May 1, 2020 through approximately June 15, 2020 and actual tax liability due as of June 15, 2020.  Based on the estimated numbers in this Declaration, the potential distribution value of the Distribution B Reserve claims is estimated to be $12,469,265.20.

## DISTRIBUTION TAX REPORTING

30. <u>IRS Forms W-9 Required</u>.  Attorneys receiving aggregate payments of $600 or more and Claimants receiving a distribution of $600 or more must receive an IRS Form 1099-

MISC as all punitive damages payments are reportable to the IRS regardless of the character of the underlying claim.  In order to facilitate accurate tax reporting, an IRS Form W-9 that matches the name and social security number or name and employer identification number issued by the IRS must be on file with the New Class Claims Administrator prior to payment being issued.  Otherwise, the Claimant's award may be subject to backup withholding.

31. <u>IRS Backup Withholding</u>.  For individuals and entities that have previously been identified by the IRS as having provided inaccurate information to the CSSP and to whom an IRS "B" Notice was issued by the CSSP pursuant to the request of the IRS, backup withholding of 24%, or the then-current withholding percentage, may be paid to the IRS on the Claimant's behalf.  In his sole discretion, the New Class Claims Administrator may opt to deduct backup withholding for eligible Claimants for whom the IRS has confirmed the information provided to the CSSP is inaccurate and who have not responded to the Settlements Program notices requesting an updated Form W-9; alternately, the New Class Claims Administrator may opt to temporarily hold the payments and allow the Claimant to respond prior to payment less the backup withholding.

32. <u>Issuance of Forms 1099-MISC</u>.  IRS Forms 1099-MISC will be issued as per the IRS deadline of January 31 of the year following the distribution.  Each law firm that receives aggregate payment(s) of $600 or more on behalf of its client(s) and each Claimant that has received $600 or more in the aggregate will receive an IRS Form 1099-MISC as all punitive damages payments are reportable to the IRS.

**PROPOSED DISTRIBUTION ORDER**

33. The Settlement Administrator respectfully requests the New Class Claims Administrator petition the Court for an Order approving the following to allow Epiq and other vendors to take the actions specified under the direction and supervision of the New Class Claims Administrator:

(a) Establishing an additional distribution account with Huntington Bank such that funds will be secured by United States Government-backed Treasury instruments in the name of "HESI-Transocean Punitive Damages Combined Settlements Fund B" for the purpose of conducting Distribution B;

(b) Continuing to file state and federal tax returns and make quarterly payments as necessary from HESI-Transocean Punitive Damages Combined Settlements Fund B account, the HESI-Transocean Punitive Damages Combined Settlements Fund account, and the HESI-Transocean Assigned Claims Combined Settlements Fund account;

(c) Revising the amount of the prior New Class Costs Allocation to $2,749,500.00 and approving of transfer of those funds from the HESI-Transocean Punitive Damages Combined Settlements Fund to HESI-Transocean Punitive Damages Combined Settlements Fund B, as needed to effectuate administrative efficiency and approving use of such funds to pay invoices associated with the Old Class and New Class, upon receipt of Court approval, going forward;

(d) Eliminating the bifurcation of invoices between Old Class and New Class fees and expenses and authorizing the full remaining balance of the Old Class Costs Allocation to be applied to the next invoice approved by the Court with all future invoices to be paid from the revised New Class Costs Allocation;

(e) Directing the Escrow Agent to fund the HESI-Transocean Punitive Damages Combined Settlements Fund B account at Huntington Bank with the remaining funds from the HESI and Transocean Settlement Funds from the HESI Settlement Fund Escrow Account and the Transocean Settlement Fund Escrow Account, less holdback for tax liability as directed by the Claims Administrator or his agent. Such funds may be transferred from the Escrow Agent to Huntington Bank via wire transfer upon the Court entering the Order approving the Motion for Approval of Final Distribution of the Punitive Damages Portion of the Halliburton Energy

Services, Inc. and Transocean Ltd. Settlement Agreements and the New Class Claims Administrator making a request to the Escrow Agent for transfer of these funds;

(f) Approving the New Class Claims Administrator to re-calculate the Distribution B Reserve Claims value once a final Distribution B Net Settlement Fund amount is established, and to adjust the current reserve of $12,469,265.20 accordingly;

(g) Making any final updates to the estimated *pro rata* included in Section 29 based on the final value of funds available or changes to eligible claims pursuant to the methodology stated herein, without the need for further approval of the Court as long as the adjustment to the *pro rata* is 0.5% or less;

(h) Approving the New Class Claims Administrator's claim determinations made pursuant to the methodology established based upon the Court's Order and Reasons [Rec. Doc. 22252], which included approval of the Model as discussed above, subject to the reallocation percentage increase discussed in Section 23;

(i) Approving a revision of the contingency holdback of $5,800,000.00 established for New Class Distribution A to $3,500,000.00 and approving transfer of these funds to the New Class Distribution Fund B account;

(j) Issuing payments via wire or check, as appropriate, to Claimants upon an Order of the Court approving distribution being final; however, reserving unto the New Class Claims Administrator the authority to hold back payments for (1) individuals/entities with missing, incomplete, or inaccurate IRS Forms W-9 or, in the New Class Claims Administrator's discretion, to deduct backup withholding of the payment for forwarding to the IRS, (2) unresolved liens/Third-Party claims, (3) unresolved issues surrounding the rights of a trustee in bankruptcy to the award or part of the award, and (4) Distribution B Reserve Claims;

(k) Reissuing checks on a periodic basis along with first time payments for eligible Distribution B Reserve Claims already approved for distribution by the Court that have been resolved in the

month prior; initial payments will be made in a manner consistent with the methodology stated herein and with the *pro ratas* applied to the various claim categories and claim types included in Distribution B;

(l) Issuing IRS Forms 1099-MISC to attorneys and Claimants with reportable distributions and filing the same information with the IRS annually until distribution is complete;

(m) Retaining the Court's jurisdiction over the HESI-Transocean Punitive Damages Combined Settlements Fund and the Reserve Fund; should the New Class Claims Administrator determine a further distribution is necessary, the New Class Claims Administrator shall file a motion with the Court for consideration; and

(n) Requiring the New Class Claims Administrator to close the HESI-Transocean Punitive Damages Combined Settlements Fund B account one calendar year after issuance of the final eligible Distribution B Reserve Claim payment, further ordering accelerated escheatment of any residual funds to the states by the New Class Claims Administrator at that time, unless a further distribution order is pending with or entered by the Court prior to closure of the account.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Franklin, Wisconsin, on May 20, 2020.

_____
Michelle M. La Count