**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig** | * | **MDL NO. 2179** |
| **"Deepwater Horizon" in the Gulf of** | * | |
| **Mexico, on April 20, 2010** | * | **SECTION: J** |
| | * | |
| | * | **JUDGE BARBIER** |
| | * | |
| **Applies to:  All BELO Lawsuits** | * | **MAGISTRATE** |
| | * | **JUDGE CURRAULT** |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF THE BP PARTIES'**
**MOTION FOR PROTECTIVE ORDER**

Pursuant to Federal Rule of Civil Procedure 26, Defendants BP Exploration & Production

Inc. and BP America Production Company (collectively the "BP Parties") move for a protective

order to prevent BELO plaintiffs from deposing Dr. Jessica Herzstein.[1]

## INTRODUCTION

Two law firms that represent numerous Back-End Litigation Option ("BELO") plaintiffs

have requested to depose Dr. Herzstein.  The Downs Law Group ("Downs") has noticed Dr.

Herzstein's deposition in a BELO lawsuit in the Southern District of Alabama and has proposed

a stipulation allowing the use of her deposition in all BELO lawsuits in all jurisdictions.  The

Falcon Law Firm ("Falcon") has requested Dr. Herzstein's deposition in BELO lawsuits in the

Northern District of Florida.

The Court may recall that Dr. Herzstein submitted declarations in connection with the

Court's approval of the Medical Benefits Class Action Settlement Agreement ("MSA") in 2012

---

[1]     Dr. Herzstein has not been served with a subpoena for her deposition.  Dr. Herzstein may
raise additional objections if she is subpoenaed.

that addressed the Specified Physical Conditions ("SPC") Matrix and objections to the MSA. Dr. Herzstein's testimony has no relevance to any pending BELO lawsuit. Dr. Herzstein is not a fact or expert witness in any BELO lawsuit. Downs' stated purpose for deposing Dr. Herzstein is to question her on two 2012 declarations.

Although Downs has noticed Dr. Herzstein's deposition in a BELO lawsuit pending in the Southern District of Alabama, Downs' stated intent is to use the deposition testimony in all BELO lawsuits nationwide. Downs has tried to use Dr. Herzstein's 2012 declarations in other BELO lawsuits in other jurisdictions, and Falcon seeks to depose Dr. Herzstein in its BELO lawsuits. This Court has previously decided issues that involve the national BELO docket, even when they have arisen in a transferred lawsuit. This issue is also particularly appropriate for this Court's consideration as it involves the MSA approval proceedings with which this Court has unique familiarity.

Plaintiffs seek Dr. Herzstein's deposition in order to raise again an incorrect argument that this and other Courts have already rejected. The MSA provides two exclusive and independent remedies for class members who seek compensation for alleged exposure-based conditions: (1) fixed payments determined by a Claims Administrator for those who provided specified proof SPCs that manifested within 24-72 hours after exposure to oil or other substances, and (2) the streamlined BELO litigation process for those whose alleged conditions were first diagnosed after April 16, 2012, two years after the spill.

The SPC Matrix was the result of lengthy settlement negotiations to provide eligible class members with a remedy to seek fixed payments from the Claims Administrator for certain listed conditions based upon medical and other proof provided. Downs and other BELO plaintiffs' counsel have filed motions in this and other Courts which they inaccurately tried to recast this

settlement provision as an admission by the BP Parties that relieves plaintiffs of their burden of proof on the essential element of causation and/or precludes the BP Parties from disputing causation in individual BELO lawsuits that allege conditions listed in the SPC Matrix.  Plaintiffs argued to this Court that for BELO claims involving conditions that were also listed in the SPC Matrix, the only proof requirements were those found in the SPC Matrix, such as class member declarations and medical records.[2]  In BELO lawsuits before Judge Rodgers in the Northern District of Florida and Judge Morgan in the Eastern District of Louisiana, Downs argued that declarations submitted by Dr. Herzstein and other experts during the MSA approval process established an expert "consensus" that established causation and therefore should preclude the BP Parties from disputing general causation in BELO lawsuits.[3]

The Courts have rejected these arguments.  As this Court ruled, "[t]he proof requirements found in the SPC Matrix do not apply to Movants' BELO lawsuits."[4]  Judge Rodgers similarly rejected the argument that there had been expert "consensus" on the issue of causation, ruling that "[t]he Matrix does not apply to BELO cases and did not establish general causation for use in BELO litigation regardless of when the condition manifested."[5]

---

[2]     Motion to Amend or Modify BELO Cases Initial Proceedings Case Management Order, Rec. Doc. 23880, No. 2:10-md-2179 (Feb. 2, 2018).  The motion was filed by the Nations, D'Amico, and Amaro law firms.

[3]     Plaintiffs' Motion to Enforce Terms of MDL's Settlement Agreement on the Issue of General Causation, filed in *In re Deepwater Horizon BELO Cases*, Rec. Doc. 37, No. 3:19-cv-963 (N.D. Fla. Nov. 4, 2019) and *Lee v. BP Expl. & Prod. Inc.*, Rec. Doc. 20, No. 18-cv-10381 (E.D. La. Oct. 30, 2019).

[4]     Order Denying Plaintiffs' Motion to Amend or Modify BELO Cases Initial Proceedings Case Management Order at 3, Rec. Doc. 24218, No. 2:10-md-2179 (E.D. La. Mar. 16, 2018).

[5]     Order at 3, Rec. Doc. 52, *In re Deepwater Horizon BELO Cases*, No. 3:19-cv-963 (N.D. Fla. Dec. 12, 2019).  Judge Morgan indicated in a status conference that she would deny the motion but has not yet entered an order.

Given that the MSA's SPC Matrix cannot be used to establish the essential legal causation element of a BELO claim, there is no relevant evidence that can be adduced by deposing Dr. Herzstein concerning her 2012 declarations submitted solely in connection with the MSA approval process.  Dr. Herzstein has never examined or treated any class member, she has never been designated as an expert or submitted a report in any BELO lawsuit, and her limited role in the *Deepwater Horizon* MDL ended before the first BELO lawsuit was filed in late 2014.  Moreover, there will be a substantial burden on Dr. Herzstein and the BP Parties to prepare her to testify on topics that she has not reviewed or studied for many years.  The cost and burden of requiring her deposition clearly outweighs the nonexistent benefit of any testimony on a subject that this and other Courts have already ruled is irrelevant to BELO lawsuits.  In addition, the subpoena seeks documents, such as invoices and records from 2012 and prior, that are typically sought for expert depositions but are not appropriate for an individual who is not designated as a witness in the BELO lawsuits.  A protective order should be entered precluding the deposition of Dr. Herzstein.

## **BACKGROUND**

### I.     **The MSA Provides Two Separate and Independent Remedial Procedures.**

The MSA is a class action settlement agreement that resulted from ten months of arms-length negotiations between the BP Parties and the Plaintiffs' Steering Committee.[6]  It was approved by this Court after eight months of proceedings that involved public notice, consideration of objections, lengthy briefing and submission by the parties, and a fairness

---

[6]     *See* Preliminary Approval Order as to the Proposed Medical Benefits Class Action Settlement at 3, Rec. Doc. 6419, No. 2:10-md-2179 (E.D. La. May 2, 2012) ("Preliminary Approval Order").

hearing before the Court.[7]  The MSA established two separate and independent procedures by which class members could seek compensation for physical conditions alleged to have been caused by exposure to substances from the spill and response activities.

First, class members who alleged SPCs that manifested within 24-72 hours of exposure could seek compensation from the Claims Administrator under Section VI of the MSA.[8]  The MSA's SPC Matrix sets forth the conditions that are eligible for compensation, the required proof that the class member must submit, and the available compensation amounts.[9]  The Claims Administrator determines whether the class member has demonstrated eligibility for SPC compensation and makes an award from dedicated funds established pursuant to the MSA.[10]

Second, class members who allege Later-Manifested Physical Conditions ("LMPCs") may seek compensation through BELO lawsuits, which are governed by Section VIII of the MSA.  An LMPC is defined in relevant part as "a physical condition that is first diagnosed . . . after April 16, 2012, and which is claimed to have resulted from . . . exposure to oil, other hydrocarbons, or other substances . . ."[11]  Section VIII requires that BELO lawsuits be litigated in federal court and defines the issues that are and are not to be litigated in BELO lawsuits.[12]  The issues to be litigated, **which include causation**, are as follows:

---

[7]     Order and Judgment Granting Final Approval of Medical Benefits Class Action Settlement and Confirming Certification of the Medical Benefits Settlement Class, Rec. Doc. 8218, No. 2:10-md-2179 (E.D. La. Jan. 11, 2013) ("Final Approval Order").

[8]     MSA, as amended, Rec. Doc. 6427-1, No. 2:10-md-2179 (E.D. La. May 3, 2012).

[9]     MSA § VI.A & Ex. 8.

[10]     *See* MSA § VI & Ex. 8.

[11]     MSA § II.VV.

[12]     MSA §§ VIII.G.1.c., 3.

(i) The fact of diagnosis (*i.e.,* whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER was correctly diagnosed with the alleged LATER-MANIFESTED PHYSICAL CONDITION);

(ii) The amount and location of oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and the timing thereof;

(iii) The level and duration of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S exposure to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and the timing thereof;

(iv) Whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S alleged LATER-MANIFESTED PHYSICAL CONDITION was legally caused by his or her exposure to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES;

(v) Whether there exist any alternative causes for the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S alleged LATER-MANIFESTED PHYSICAL CONDITION, including, but not limited to, exposure to other substances or sources of contaminants and/or toxins; and

(vi) The amount, if any, of compensatory damages to which the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is entitled.[13]

This Court has made clear that the SPC and BELO remedies are provided separate and independent of each other.  On July 23, 2014, the Court addressed the issue of "whether a class member with an alleged chronic physical condition that was first diagnosed after April 16, 2012 may be classified as having a Specified Physical Condition ('SPC') and compensated for the condition under the SPC Matrix, Exhibit 8 to the MSA, or must instead pursue a remedy for a

---

[13]     MSA § VIII.G.3.a.

Later-Manifested Physical Condition ('LMPC') under the MSA."[14]  The Court ruled that "if a class member has a LMPC, he may not pursue a scheduled payment as set forth in Exhibit 8 of the MSA, but must instead pursue a 'Back-End Litigation Option' ('BELO')."[15]  The Court reaffirmed this ruling on a motion for reconsideration:

> Thus, a class member with a Chronic Specified Physical Condition ("chronic condition") not diagnosed as of April 16, 2012, will not receive a specified lump sum payment under the Matrix.  Instead, that claimant must resort to the "Back-End Litigation Option" ("BELO"), to pursue compensation for that chronic condition which was not diagnosed by the operative date.[16]

As the Court concisely stated in a 2015 Order, "[t]he BELO lawsuit is essentially a new action, separate from the class action."[17]

## II.    Dr. Herzstein Had a Limited Role in Providing Declarations in Connection with the Court's MSA Approval Process.

In April 2012, following lengthy negotiations, Class Counsel and the BP Parties moved for court approval of the MSA.[18]  For the remainder of 2012, the Court presided over settlement approval proceedings in which it received further briefing and supporting declarations from the parties, received and considered objections to the proposed settlement, and, in November 2012,

---

[14]    Order at 2, Rec. Doc. 13179, No. 2:10-md-2719 (E.D. La. July 23, 2014).

[15]    *Id.* at 3.

[16]    Order at 4, Rec. Doc. 13733, No. 2:10-md-2719 (E.D. La. Nov. 26, 2014).

[17]    Order at 3, Rec. Doc. 14479, No. 2:10-md-2719 (E.D. La. Apr. 27, 2015).

[18]    Joint Motion for Preliminary Approval of MSA, Rec. Doc. 6267, No. 2:10-md-2719 (E.D. La. April 18, 2012).

conducted a fairness hearing.[19]  The Court gave final approval to the MSA on January 11,

2013.[20]

In connection with the MSA approval process, Class Counsel and the BP Parties

submitted expert declarations, including two declarations by Dr. Herzstein that were submitted in

support of filings by the BP Parties.[21]  Dr. Herzstein's August 12, 2012 declaration addressed the

conditions that were included in the SPC Matrix and noted that manifestation within 24-72 hours

of exposure would be expected for those conditions.[22]  She also addressed the Periodic Medical

Consultation Program that provided periodic physician visits for class members.[23]  Her brief

discussion of LMPCs focused on the fact that exposures from the *Deepwater Horizon* spill and

response would be unlikely to cause latent diseases such as cancers.[24]  Her October 22, 2012

supplemental declaration addressed only the objections to the proposed MSA, all of which were

related to the SPC Matrix.[25]  Dr. Herzstein was retained by BP to assist the Court in its

consideration and approval of the MSA, and her declarations are the extent of her role in the

---

[19]    Final Approval Order at 5.

[20]    *Id.*

[21]    Ex. 1, Declaration of Dr. Jessica Herzstein, Rec. Doc. 7112-7, No. 2:10-md-2179 (E.D. La. Aug. 13, 2012) ("Herzstein Decl."); Ex. 2,  Supplemental Declaration of Dr. Jessica Herzstein, Rec. Doc. 7732-1, No. 2:10-md-2179 (E.D. La. Oct. 22, 2012) ("Herzstein Suppl. Decl.").

[22]    Herzstein Decl. ¶¶ 13-20, at 6-11.

[23]    Herzstein Decl. ¶¶ 21-25, at 11-15.

[24]    Herzstein Decl. ¶¶ 26-28, at 15-16.

[25]    For example, Dr. Herzstein addressed objections that additional conditions should have been included in the SPC Matrix, *see, e.g.*, Herzstein Suppl. Decl. ¶¶ 3, 4; that the Matrix's proof requirements should be modified, *see, e.g., id.* ¶¶ 3, 6, 7; and other individualized objections, *see, e.g., id.* ¶¶ 3, 4, 7-9.

*Deepwater Horizon* litigation.[26]  She has never examined a BELO plaintiff, has never been

designated as an expert in a BELO lawsuit, and has never provided an expert report in a BELO

lawsuit.  Her involvement ended before the first BELO lawsuit was filed in late 2014.

### III.   Courts Have Uniformly Rejected Plaintiffs' Arguments That the SPC Matrix Is Relevant to Proof Standards in BELO Lawsuits.

As discussed above, this Court issued rulings in 2014 and 2015 that the SPC claims

process and BELO lawsuits were separate and independent remedial procedures.  Despite these

rulings, BELO plaintiffs' counsel have made several failed attempts to argue that the SPC Matrix

was intended to modify the proof requirements in BELO lawsuits.  This Court and other BELO

Courts have uniformly rejected these arguments and ruled that the SPC Matrix has no probative

value as to BELO claims.

### A.   Plaintiffs' 2018 Motion To Amend or Modify the BELO CMO.

Plaintiffs first presented the argument that the SPC Matrix modified the BELO burden of

proof in a February 2018 motion to this Court.[27]  Plaintiffs' motion sought, *inter alia*, a ruling

that the burden of proof for conditions that were also listed in the SPC Matrix had been

"negotiated by the parties and set out in the MSA Matrix."[28]  Plaintiffs' motion claimed that

---

[26]     Although not mentioned in Downs' request for deposition, Dr. Herzstein also submitted an April 14, 2014 declaration in connection with briefing that resulted in the MDL Court's July 23, 2014 Order, discussed above.  *See* Declaration of Jessica Herzstein, M.D. at 14, Rec. Doc. 12862-2, No. 2:10-md-2179 (E.D. La. May 13, 2014) ("Herzstein 2014 Decl.").  This declaration expressed the opinions, *inter alia*, that it was unlikely that class members who had experienced symptoms of SPCs would have waited more than two years to seek medical care and diagnosis; that it was unlikely that large numbers of chronic SPCs would be observed in the class; and that diagnoses arranged by plaintiffs' counsel and focused on detecting SPCs should be viewed with skepticism.  *Id.* ¶¶ 4-8.

[27]     Rec. Doc. 23880, No. 2:10-md-2179 (Feb. 2, 2018).

[28]     Mem. in Support at 4, Rec. Doc. 23880-1, No. 2:10-md-2179 (Feb. 2, 2018).

Class Counsel and the BP Parties intended that the SPC Matrix would establish the proof requirements for all chronic conditions – both SPCs and LMPCs – and without regard to the separate section of the MSA that governed LMPCs and established the BELO process as the sole remedy for class members who sought compensation for LMPCs.[29]

The Court denied plaintiffs' motion without the need for a response from the BP Parties. The Court ruled that "Section VIII of the MSA governs BELO lawsuits, not the SPC Matrix. (*See* MSA §§ VIII.B.1, VIII.C.2, VIII.G.1.a). Because Movants assert LMPC claims, they are subject to the MSA's BELO provisions, including § VIII.G.3 ('Issues to be Litigated')."[30]  As the Court succinctly concluded:  "The proof requirements found in the SPC Matrix do not apply to Movants' BELO lawsuits."[31]

### B.    Plaintiffs' 2019 Motions To "Enforce" the MSA.

Notwithstanding the MDL Court's ruling, in 2019, plaintiffs brought motions in BELO lawsuits in which they again tried to argue that the MSA relieved them of their proof requirements for their BELO claims.

In November 2019, Downs filed a motion before Judge Rodgers in the Northern District of Florida, who was then addressing general causation issues in an initial bellwether group of BELO lawsuits.[32]  Downs' "Motion to Enforce Terms of MDL's Settlement Agreement on the

---

[29]    *See id.* at 19.

[30]    Order at 2-3, Rec. Doc. 24218, No. 2:10-md-2179 (Mar. 16, 2018).

[31]    *Id.* at 3.

[32]    Judge Rodgers selected 26 bellwether lawsuits that included commonly alleged conditions in BELO lawsuits in her District.  *See* Order, Rec. Doc. 3, *In re Deepwater Horizon BELO Cases*, No. 3:19-cv-00963 (N.D. Fla. Apr. 30, 2019).  These common conditions were all of the type listed in the SPC Matrix.  *See id.* Ex. A.

Issue of General Causation" argued that the SPC Matrix constituted an expert consensus that spill-related exposure caused the conditions listed in the SPC Matrix.[33]  Downs argued that during the MSA approval process, "both the PSC and defense counsel employed various experts. These experts prepared affidavits and provided testimony outlining their opinions."[34]  Downs specifically identified Dr. Herzstein as allegedly among "the experts [that] had reached a consensus" and cited to Dr. Herzstein's declarations submitted in connection with the MSA approval proceedings.[35]  Downs asserted that "[t]his consensus helped the PSC and BP to craft a Master Settlement Agreement which essentially resolved the issue of General Causation for those conditions contained in the SPECIFIED PHYSICAL CONDITIONS MATRIX (See Exhibit 3)."[36]

Judge Rodgers rejected Downs' argument and denied the motion.  Judge Rodgers acknowledged that the SPC Matrix had been created with expert input.[37]  But Judge Rodgers also noted that the SPC Matrix applied to compensation claims for conditions that manifested hours after exposure.[38]  She pointed out that an entirely separate section of the MSA governed BELO claims for conditions that were first diagnosed after April 16, 2012, approximately two years

---

[33]     Rec. Doc. 37, *In re Deepwater Horizon BELO Cases*, No. 3:19-cv-963 (N.D. Fla. Nov. 4, 2019).

[34]     Mem. in Support at 2, Rec. Doc. 37-1, No. 3:19-cv-963 (N.D. Fla. Nov. 4, 2019).

[35]     *Id.* at 2-3.

[36]     *Id.* at 3.

[37]     Order at 3, Rec. Doc. 52, *In re Deepwater Horizon BELO Cases*, No. 3:19-cv-963 (N.D. Fla. Dec. 12, 2019).

[38]     *Id.*

after the spill.[39]  Judge Rodgers determined that the "sole purpose of the Matrix was to define which Plaintiffs were eligible for a settlement payment from the Claims Administrator under the stated categories of specified physical conditions that could be attributable to the incident."[40] She found that the "[a]lthough the Matrix was formed in consultation with experts . . . its purpose and scope were limited."[41]  Noting that "the Matrix was a tool of settlement only," Judge Rodgers found that "nothing in the Settlement Agreement indicates that BP stipulated to a finding of general causation for anything other than this limited settlement framework, and nothing in the Settlement Agreement otherwise establishes general causation for these claimants."[42]  She concluded by ruling that "[t]he Matrix does not apply to BELO cases and did not establish general causation for use in BELO litigation regardless of when the condition manifested."[43]

Downs filed a substantively identical motion in a BELO lawsuit before Judge Morgan in the Eastern District of Louisiana in October 2019.[44]  In an untranscribed status conference, Judge Morgan indicated that she would deny the motion, but she has not yet entered an order.

---

[39]     *Id.* at 3.

[40]     *Id.* at 6-7.

[41]     *Id.* at 7.

[42]     *Id.*

[43]     *Id.* at 10.

[44]     Rec. Doc. 20, *Lee v. BP Expl. & Prod. Inc.*, No. 18-cv-10381 (E.D. La. Oct. 30, 2019).

## IV.     Plaintiffs' Requests To Depose Dr. Herzstein.

On April 27, 2020, David Durkee of the Downs Law Group emailed BP counsel "to make a formal request to take the deposition of Jessica Herzstein, M.D."[45]  His email stated that because the deposition would "focus on the general opinions that were outlined in her [2012] public affidavit, I would propose that we enter into a stipulation so that this deposition would only be taken once and could be used in all cases nationally."[46]

On May 5, 2020, Mr. Durkee emailed again with a proposal to notice the depositions in three BELO lawsuits pending in Alabama.  Mr. Durkee described these lawsuits as involving plaintiffs that were "diagnosed with a medical condition that is relevant (in the Plaintiff's position) to the testimony of Dr. Herzstein."[47]  Those conditions were all of the type that are covered by the SPC Matrix.[48]  Mr. Durkee proposed to "stipulate not to take the deposition until the Motion for Protective Order has been heard by the Court."[49]

Downs subsequently emailed a Notice of Deposition to BP counsel.[50]  The Notice states the deposition "will solely address the statements and/or opinions outlined in" Dr. Herzstein's

---

[45]     Ex. 3.

[46]     *Id.*

[47]     Ex. 4.

[48]     Compl. ¶ 27, Rec. Doc. 1, *Rubi v. BP Expl. & Prod. Inc.*, No. 19-cv-00455 (S.D. Ala.) (chronic conjunctivitis); Compl. ¶ 27, Rec. Doc. 1, *Noel v. BP Expl. & Prod. Inc.*, No. 19-cv-00694 (S.D. Ala.) (chronic sinusitis); Compl. ¶ 27, Rec. Doc. 1, *Payne v. BP Expl. & Prod. Inc.*, No. 19-cv-00987 (S.D. Ala.) (chronic sinusitis).

[49]     Ex. 4.  The Notice was issued in *Lyons v. BP Expl. & Prod. Inc.*, No. 1:19-cv-00156 (S.D. Ala.).  The Complaint alleges sinusitis conditions.  Compl. ¶ 22, Rec. Doc. 1.

[50]     Ex. 5.  Although dated May 21, 2020, the Notice was emailed on June 4, 2020.

2012 declaration.[51]  The Notice also requested that Dr. Herzstein produce certain documents,

including her invoices, retention agreement, and case file related to her 2012 declaration(s).[52]

On June 11, 2020, Jerry Sprague of the Falcon Law Firm emailed BP counsel to request

to depose Dr. Herzstein in the Northern District of Florida BELO lawsuits.[53]  As discussed

above, in that District, Judge Rodgers is assigned to all BELO lawsuits and is proceeding with

several bellwether lawsuits that allege conditions that are also identified in the SPC Matrix.  All

other BELO lawsuits are currently stayed.

## ARGUMENT

I.      **The Court Should Enter a Protective Order Precluding Dr. Herzstein's Deposition.**

A.      **This Court Should Resolve This Motion.**

Although plaintiffs have sought Dr. Herzstein's deposition in BELO lawsuits pending in

the Southern District of Alabama and Northern District of Florida, it is appropriate for this Court

to resolve this Motion.

This Court has previously exercised jurisdiction over and resolved motions involving

issues that have widespread application to all BELO cases, including in a lawsuit that had

previously been transferred to the Southern District of Alabama.  In the *Leroy Wilson* BELO

lawsuit, this Court entertained and denied a motion filed by Downs that argued that the MSA

required the BP Parties to pay plaintiff's litigation and other costs.[54]  The Court noted that it had

---

[51]     Ex. 5.  The Notice refers to the affidavit attached as Exhibit A, but it attached as Exhibits 1 and 2 the two 2012 declarations that Dr. Herzstein submitted in connection with the MSA approval.

[52]     Ex. 5 at 2.

[53]     Ex. 6.

[54]     Order as to LeRoy Wilson's Motion to Require BP to Pay Costs Associated with his SPC and LMPC Claims, Rec. Doc. 15708, No. 2:10-md-2719 (E.D. La. Jan. 7, 2016).

jurisdiction over this issue even though the lawsuit had already been transferred.[55]  Previously in that same lawsuit, the Court had agreed to decide the issue of whether BELO plaintiffs are entitled to jury trials.  Although the motion had arisen in the individual *Wilson* lawsuit prior to its transfer, the Court determined that it should address the motion on the MDL docket because it "may have widespread application to all BELO cases."[56]

Plaintiffs' requests to depose Dr. Herzstein affect the entire BELO docket.  In Downs' April 27, 2020 email requesting Dr. Herzstein's deposition, Downs indicated that he sought to "focus on the general opinions that were outlined" in her 2012 declarations and to enter a stipulation so that the deposition "could be used in all cases nationally."[57]  Downs has attempted to make use of Dr. Herzstein's declarations across the BELO docket, including in a recent summary judgment filing in the Southern District of Florida[58] and, as discussed above, in BELO lawsuits before Judge Rodgers in the Northern District of Florida.  Falcon's recent deposition request means that plaintiffs are seeking Dr. Herzstein's deposition in multiple BELO jurisdictions.

Moreover, this Court is uniquely well-positioned to resolve this issue.  Downs' deposition notice advises that the intended subject matter of the deposition is limited to the declarations that Dr. Herzstein submitted in 2012 in connection with this Court's approval of the MSA.  This

---

[55]     *Id.* at 1 n.1.  The Court cited MSA § XXVII, which provides continuing jurisdiction over the interpretation, implementation, administration, and enforcement of the MSA.

[56]     Order at 1, Rec. Doc. 14479, No. 2:10-md-2719 (E.D. La. Apr. 27, 2015).

[57]     Ex. 3.

[58]     Plaintiff's Notice of Filing Affidavit of Dr. Jessica Herzstein in Support of Plaintiff's Motion for Partial Summary Judgment, Rec. Doc. 53, *Henriquez v. BP Expl. & Prod. Inc.*, No. 1:19-cv-22963 (S.D. Fla. May 29, 2020).

Court is uniquely familiar with those approval proceedings, with the issues that were raised and considered, and with the purpose for which Dr. Herzstein's declarations were offered.  For another District Court to address this Motion, it would need to study those approval proceedings and, in particular, the issues surrounding the approval of the SPC Matrix; the difference between SPC and LMPC conditions; and the different types of proof and remedies applicable to SPCs and LMPCs.  A ruling by this Court would be most efficient and would benefit other BELO Courts that would otherwise need to decide this issue in individual lawsuits, presenting a possibility of inconsistent rulings.

### B.    Federal Rule of Civil Procedure Rule 26 Bars Discovery That Is Not Relevant or That Imposes Costs That Outweigh Its Benefits.

Federal Rule of Civil Procedure 26(b)(1) authorizes parties to engage only in "discovery regarding any nonprivileged matter ***that is relevant*** to any party's claim or defense ***and proportional to the needs of the case***, ***considering the importance of the issues at stake in the action,*** the amount in controversy, the parties' relative access to relevant information, the parties' resources, ***the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.***"[59]

Federal Rule of Civil Procedure 26(b)(2)(C) provides that a "court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)," *i.e.,* because the discovery is either irrelevant or not proportional to the needs of the case.[60]   In addition, even for discovery requests that are within the permitted scope of Rule 26(b)(1), the court may "for good

---

[59]      Fed. R. Civ. P. 26(b)(1) (emphasis added).

[60]      Fed. R. Civ. P. 26(b)(2)(C)(iii); *see In re Tara Crosby, LLC*, No. 17-5391, 2019 WL 5634182, at *2 (E.D. La. Oct. 31, 2019).

cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[61]

"[C]ontrol of discovery is committed to the sound discretion of the trial court,"[62] and "[t]he trial court enjoys wide discretion in setting the parameters of a protective order."[63]  Courts in this District have "quashed depositions when the party seeking the deposition was unable to demonstrate that the depositions sought were relevant to the claim."[64]  For example, in *Morgan v. Gusman*, the court granted a protective order to preclude depositions because the testimony would not be relevant to resolution of the legal issue before the court.[65]  The court ruled that if the noticed depositions would not be "relevant to the District Court's resolution of the [legal issue before the Court], then the protective order should be granted to prevent an undue burden or expense."[66]  Similarly, in *Offshore Marine Contractors*, *Inc. v. LaBorde Marine Crewboats, LLC*, the court quashed plaintiff's notice of deposition because the "relevant inquiry concerns

---

[61]     Fed. R. Civ. P. 26(c)(1); *see* Advisory Committee Notes to 1970 Amendment ("Rule 26(c) . . . confers broad powers on the court to regulate or prevent discovery even though the materials sought are within the scope of 26(b) . . . .").

[62]     *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (internal quotation marks omitted); *see Cook v. Marshall*, No. 17-5368, 2018 WL 3439669, at *1 (E.D. La. May 22, 2018) ("[I]t is well established that the scope of discovery is within the sound discretion of the trial court." (citing *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300 (5th Cir. 1973))); *In re Tara Crosby, LLC*, No. 17-5391, 2019 WL 5634182, at *2 (E.D. La. Oct. 31, 2019) (same).

[63]     *Waters v. Lowe's Home Ctrs., LLC*, No. 18-12419, 2019 WL 5309969, at *2 (E.D. La. Oct. 21, 2019) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984));

[64]     *In re Tara Crosby, LLC*, No. 17-5391, 2018 WL 3045799, at *4 (E.D. La. June 20, 2018).

[65]     No. 06-5700, 2010 WL 3070371, at *5 (E.D. La. Aug. 4, 2010).

[66]     *Id.*

settlement discussions that did not involve" the proposed deponent.[67]   The court found that the proposed deponent's involvement "was confined to a single telephone discussion" in initiating the settlement process, and therefore "can provide no relevant testimony regarding the purported settlement in this case."[68]   And in *Volvo Trucks North America, Inc. v. Crescent Ford Truck Sales, Inc.*, the court granted a protective order because "the plaintiff has failed to demonstrate that [the proposed] areas of inquiry are relevant to its breach of contract claims."[69]   Numerous federal courts have entered similar rulings preventing depositions that would impose burden and expense on one party but yield no or little relevant information.[70]

### C.   The MSA Further Limits Discovery in BELO Lawsuits.

In negotiating Section VIII of the MSA, which governs BELO lawsuits, Class Counsel and the BP Parties included a provision limiting discovery to evidence that is relevant to the issues in the lawsuit:

> With respect to a claim for a LATER-MANIFESTED PHYSICAL CONDITION by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER against a

---

[67]   No. 04-1088, 2005 WL 8178267, at *3 (E.D. La. July 19, 2005).

[68]   *Id.*

[69]   No. 02-3398, 2005 WL 1400463, at *4 (E.D. La. June 1, 2005).

[70]   *See, e.g.*, *Jiangmen Kinwai Furniture Decoration Co. v. IHFC Properties, LLC*, No. 1:14-cv-689, 2015 WL 12911773, at *3 (M.D.N.C. Oct. 27, 2015) (granting protective order preventing deposition because "the deposition topics were overbroad . . . unduly burdensome . . . and a fishing expedition unlikely to lead to relevant evidence"); *Joy v. Perez*, No. 10-1636, 2011 WL 3703494, at *1 (D.N.J. Aug. 22, 2011) (affirming magistrate judge's grant of protective order preventing deposition because "Plaintiffs have failed to establish why the deposition . . . would be relevant"); *Ascolese v. S.E. Pa. Transp. Auth.*, No. 93-1461, 1995 WL 133695, at *1 (E.D. Pa. 1995) (granting protective order to prevent deposition because proposed deponent "has no knowledge relevant to this dispute"); *Stone City Music v. Thunderbird, Inc.*, 116 F.R.D. 473, 474 (N.D. Miss. 1987) (granting protective order preventing deposition because the proposed deposition "would be unduly burdensome and costly and would fail to result in the discovery of relevant information").

> BACKEND LITIGATION OPTION DEFENDANT in a BACK-END
> LITIGATION OPTION LAWSUIT, pretrial discovery may be had only as to non-
> privileged matters reasonably calculated to lead to the discovery of admissible
> evidence relevant to any issue that may be litigated at trial.[71]

The parties also expressly agreed that the MSA and related subjects would not be admissible or

used in connection with other lawsuits:

> This MEDICAL SETTLEMENT AGREEMENT, any statements or negotiations
> made in connection with this MEDICAL SETTLEMENT AGREEMENT, and
> any actions undertaken in this MEDICAL SETTLEMENT AGREEMENT, shall
> not be offered or be admissible in evidence or used in any other fashion by the
> MEDICAL BENEFITS CLASS REPRESENTATIVES, the MEDICAL
> BENEFITS SETTLEMENT CLASS, MEDICAL BENEFITS CLASS
> COUNSEL, any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, BP,
> or any of the RELEASED PARTIES in any lawsuit, action, hearing, or
> proceeding for any purpose, except to enforce the terms of this MEDICAL
> SETTLEMENT AGREEMENT by or against the MEDICAL BENEFITS CLASS
> REPRESENTATIVES, the MEDICAL BENEFITS SETTLEMENT CLASS,
> MEDICAL BENEFITS CLASS COUNSEL, any MEDICAL BENEFITS
> SETTLEMENT CLASS MEMBER, BP, or any of the RELEASED PARTIES.[72]

### D.     Dr. Herzstein's Testimony Is Not Relevant to BELO Lawsuits.

As discussed above, this Court and other federal courts have found that the MSA and its

SPC Matrix are not relevant to the proof in a BELO lawsuit.  It follows, then, that Dr.

Herzstein's testimony on that same subject is not relevant.  Yet this is precisely the discovery

that plaintiffs seek.  Downs' deposition notice states that the deposition will address the

statements in Dr. Herzstein's 2012 declarations, which were attached to the notice as exhibits.[73]

In requesting Dr. Herzstein's deposition, Downs made clear that the subject of Dr. Herzstein's

deposition will be the two declarations that she provided in the MSA approval proceedings:

---

[71]     MSA § VIII.G.5.

[72]     MSA § XXIV.B.

[73]     Ex. 5.

Since we are at the early stages of discovery, I want to make a formal request to take the deposition of Jessica Herzstein, MD. **As you know, Dr. Herzstein filed written disclosed opinions in an affidavit in support of the Deepwater Horizon Master Settlement Agreement on behalf of BP (See attached).** I would like to work with defense counsel to schedule this deposition so that the date, time, and  be convenient for all parties and the expert.  As we have done in the past, for the time being, and **since I suspect this deposition to focus on the general opinions that were outlined in her public affidavit**, I would propose that we enter into a stipulation so that this deposition would only be taken once and could be used in all cases nationally.  This would seem to be the most efficient way of doing this.[74]

In a follow up email, Downs reaffirmed its intention to use Dr. Herzstein's deposition for the purpose of obtaining evidence about the SPC Matrix:

However, during that call I would also like to discuss how and/when we expect to deal with my request in the Alabama cases to take the deposition of Jessica Herzstein, MD.  My proposal is that we notice the deposition in any of the three cases, James Noel (Case No.: 19-cv-00694); Stanley Payne (Case No.: 19-cv-00987), or Maria Rubi (19-cv-00455).  **The[se] are cases where the client has an Alabama case and has been diagnosed with a medical condition that is relevant (in the Plaintiff's position) to the testimony of Dr. Herzstein.**[75]

In all of these lawsuits, the allegedly "relevant" condition is one that is listed in the SPC Matrix (either chronic sinusitis or chronic conjunctivitis).[76]  This fact, and that Downs seeks to use Dr. Herzstein's deposition "in all cases nationally," shows that this is simply another attempt to use the class settlement and SPC Matrix to try to prove BELO claims.  Similarly, Falcon seeks Dr. Herzstein's deposition in the Northern District of Florida proceeding in which only conditions

---

[74]    Ex. 3 (emphasis added).

[75]    Ex. 4 (emphasis added).

[76]    Compl. ¶ 27, Rec. Doc. 1, *Rubi v. BP Expl. & Prod. Inc.*, No. 19-cv-00455 (S.D. Ala.) (chronic conjunctivitis); Compl. ¶ 27, Rec. Doc. 1, *Noel v. BP Expl. & Prod. Inc.*, No. 19-cv-00694 (S.D. Ala.) (chronic sinusitis); Compl. ¶ 27, Rec. Doc. 1, *Payne v. BP Expl. & Prod. Inc.*, No. 19-cv-00987 (S.D. Ala.) (chronic sinusitis).

listed in the SPC Matrix are currently at issue, further indicating the purpose of the requested deposition.

Dr. Herzstein did not treat or examine any BELO plaintiff and has never served as an expert in a BELO lawsuit.  Dr. Herzstein's declarations were provided in 2012, well before any BELO lawsuit was filed, and solely in connection with the Court's consideration of the proposed Medical Benefits Class Settlement.  As discussed above, her declarations focused on conditions in the SPC Matrix and why that Matrix was appropriately constructed for purposes of compensating class members whose conditions manifested within a short period of time (24-72 hours) after exposure.[77]  Dr. Herzstein's declarations also described at length the benefits provided to class members by the Periodic Medical Consultation Program.[78]  Her reference to LMPCs (which are the subject of BELO lawsuits) spans just over one page of one declaration and focuses on the expected incidence of latent diseases, such as cancers.[79]

Plaintiffs should not be permitted to seek discovery on a topic that this and other Courts have already ruled is irrelevant to the proof requirements in a BELO lawsuit.  Because plaintiffs are "unable to demonstrate how the depositions sought were relevant to the claim," this Court should grant a protective order preventing the deposition of Dr. Herzstein.[80]

---

[77]     *See* Herzstein Decl. ¶¶ 13, 18, 19-20.

[78]     *Id.* ¶¶ 21-25, at 11-15.

[79]     *Id.* ¶¶ 26-28.

[80]     *Tara Crosby*, 2018 WL 3045799, at *4.

### E.   Dr. Herzstein's Deposition Would Impose an Undue Burden and Is Not Proportional to the Needs of the Case.

Determining whether discovery is "proportional to the needs of the case" involves an assessment of factors that include "the importance of the issues at stake in the action," "the importance of the discovery in resolving the issues," and "whether the burden or expense of the proposed discovery outweighs its likely benefit."[81]  By these standards, Dr. Herzstein's deposition is not proportional to the needs of the case.  Indeed, it is not a close call.

For the reasons discussed above, Dr. Herzstein's testimony about her two 2012 declarations is not relevant or important to the issues in the BELO lawsuits.  Courts have already ruled that the MSA and the SPC Matrix are not be used to establish elements of a BELO claim.

Requiring Dr. Herzstein to testify would impose undue burden and expense on both her and the BP Parties.  Dr. Herzstein's sole involvement in the *Deepwater Horizon* MDL was as an expert, and it ended in 2014 before any BELO lawsuit was filed.  If Dr. Herzstein were to testify, she would need to re-learn materials that she reviewed in preparing her 2012 declarations, re-learn the facts and issues relevant to *Deepwater Horizon*, and then prepare and testify about the subjects on which she submitted declarations.  The BP Parties are not aware of any precedent that would require them to re-engage an expert from a very different proceeding and then offer that expert to testify in a case in which the expert has not been designated as an expert and is not a fact witness.  Nor should they be required to bear the considerable expense of having Dr. Herzstein study materials from 2012 so that she would be in a position to testify.  This is especially true when, as here, there is no relevance or benefit to her testimony in the BELO lawsuits.

---

[81]    Fed. R. Civ. P. 26(b)(1).

The proposed deposition would be particularly burdensome to Dr. Herzstein.  Since ending her involvement in *Deepwater Horizon* in 2014, she has moved on to other projects. Among other consulting engagements, she advises a major multi-national retail and manufacturing corporation on COVID-related employee safety issues that involve travel and health conditions in a number of different countries.  She has not allocated any time to *Deepwater Horizon* issues in years.  If called to testify, she would need to recreate and re-learn the medical and scientific literature that she considered in preparing her 2012 declarations.  She would also need to invest time and resources to review the current literature.  Plaintiffs' requests to depose Dr. Herzstein makes no mention of who would pay Dr. Herzstein for the significant time she would need to invest to get back up to speed on these issues or for the time spent in sitting for a deposition.

In addition, Downs' deposition notice purports to require Dr. Herzstein to produce documents that include invoices, payment records, and her "entire case file" related to *Deepwater Horizon*.[82]  But there is no justification for this type of discovery that is typically used for designated expert witnesses.  There is no need for payment documents that would be used for expert impeachment or similar purposes because Dr. Herzstein is not an expert in the any of the BELO lawsuits.  And the fact the Dr. Herzstein's declarations were offered by the BP Parties during the MSA approval proceedings is public record and does not need to be established through discovery.  Finally, the Notice's request for "any and all correspondence" and "any and all emails" between Dr. Herzstein and the BP parties and BP counsel is not permissible pursuant to Federal Rule of Civil Procedure 26(b)(4), which generally protects communications between counsel and experts.

---

[82]     Ex. 5 at 2.

## <u>CONCLUSION</u>

For the forgoing reasons, the Court should enter a protective order precluding plaintiffs in

BELO lawsuits from deposing Dr. Jessica Herzstein.


Date: June 15, 2020                              Respectfully submitted,


                                   */s/ Scott C. Seiler*
                                   Scott C. Seiler (Bar #19784)
                                   Devin C. Reid (Bar #32645)
                                   LISKOW & LEWIS
                                   701 Poydras Street, Suite 5000
                                   New Orleans, LA 70139
                                   Telephone:  (504) 581-7979
                                   Telefax:  (504) 556-4108

                                   */s/ Kevin M. Hodges*
                                   Kevin M. Hodges
                                   WILLIAMS & CONNOLLY LLP
                                   725 Twelfth Street, N.W.
                                   Washington, D.C. 20005
                                   Telephone:  (202) 434-5000
                                   Telefax:  (202) 434-5029

                                   */s/ Catherine Pyune McEldowney*
                                   Catherine Pyune McEldowney
                                   MARON MARVEL BRADLEY
                                   ANDERSON & TARDY LLC
                                   1201 North Market Street, Suite 900
                                   Wilmington, DE 19801
                                   Telephone:  (302) 425-5177
                                   Telefax:  (302) 425-0180

                                   */s/ Georgia L. Lucier*
                                   Georgia L. Lucier
                                   HUNTON ANDREWS KURTH LLP
                                   600 Travis Street, Suite 4200
                                   Houston, TX 77002
                                   Telephone: (713) 220-4200
                                   Telefax:  (713) 220-4285


**ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.**
**AND BP AMERICA PRODUCTION COMPANY**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 15, 2020, the above and foregoing pleading was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System.  Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.  The above and foregoing pleading was also transmitted via e-mail to the following BELO plaintiffs' counsel:

> David Durkee
> THE DOWNS LAW GROUP, P.A.
> 3250 Mary Street, Suite 307
> Coconut Gove, FL 33133
> E-mail: ddurkee@downslawgroup.com
>
> Jeremiah A. Sprague
> FALCON LAW FIRM
> 5044 Lapalco Blvd.
> Marrero, LA 70072
> E-mail: jerry@falconlaw.com

>    /s/ Scott C. Seiler     
> Scott C. Seiler