UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | **MDL NO. 2179** |
| | **SECTION: J** **JUDGE BARBIER** |
| **Applies to: All BELO Lawsuits** | **MAGISTRATE: JUDGE CURRAULT** |

**DOWNS' RESPONSE TO BP PARTIES' MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFFS' NOTICE OF DEPOSITION OF DR. JESSICA HERZSTEIN**

Comes now The Downs Law Group as counsel for James Noel, Stanley Payne, and Maria Rubi, and James Lyon;[1] and as counsel for a number of other Back End Litigation Option – (hereinafter BELO) Plaintiffs who have filed individual actions pursuant to the MSA and files this Response to BP's Motion for Protective Order concerning the deposition of Dr. Jessica Herzstein, MD, MPH, (Hereinafter Dr. Herzstein). The response that has been prepared by the Downs Law Group will focus on the affirmative reasons as to why the deposition of Dr. Herzstein should be allowed.[2] The deposition should be allowed based on the fact that the affidavit of Dr. Herzstein is evidence that BP has already affirmatively placed into the public record of this MDL; this evidence, if allowed to be developed, is expected to be relevant, reliable and undisputed; allowing this evidence to be developed in the individual BELO Case would support the overriding policy

---

1 These Plaintiffs allege that exposure to oil or oil-based dispersants caused them to suffer from one of the three (3) chronic conditions that Dr. Herzstein opined in her affidavit could generally be caused by exposure to oil and/or oil-based dispersants so long as the symptoms manifested themselves within 24 to 72 hours. *See* Exhibit 1.

2 Falcon Law Firm has also sought the deposition and will also be filing a response to BP's Motion. The Falcon Law Firm's Response will respond specifically to the arguments made by BP as to why the BELO Plaintiffs should be prevented from taking this deposition. The Downs Law group hereby adopts the legal and factual arguments made by the Falcon Law Group in its response in addition to the arguments outlined in this response.

considerations of 'scaling up' in MDL cases[3] and for judicial economy; the development of this evidence is consistent with the historical judicial philosophy of broad and open discovery; and, finally, if the Court prevents this deposition from being taken in these individual BELO cases then the individual District Courts will be deprived of the opportunity to consider whether this testimony, after developed, is admissible in any individual proceeding.

Wherefore, The Downs Law Group on behalf of Mr. Noel, Mr. Payne, Ms. Rubi, and Mr. Lyons, and other BELO Plaintiffs, respectfully requests that this Court deny BP's Motion for Protective Order and allow the Plaintiffs to take the deposition of Dr. Herzstein.

## BACKGROUND

As this Court is aware, a Multi-District Litigation was created on August 10, 2010, to address the damages that were caused to thousands of different entities due to one of the largest oil discharges in the history of the world. As a result of this MDL,[4] and this Court's stewardship, a class action settlement was reached.[5] The main purpose of this MDL, as is typical of most MDL's, was to resolve a large of number of cases efficiently and in a cost-effective manner.

Before the PSC and BP entered into the Master Settlement Agreement, extensive information was exchanged between the parties. During this phase of the case, both the PSC and BP employed various experts who prepared written opinions. As a result of this exchange of

---

3 *See* Judge Eldon E. Fallon et. al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2330 (2008) ("[J]udicial economy is undoubtedly well-served by MDL consolidation when scores of similar cases are pending in the courts. The relevant comparison is not between a massive MDL and an 'average case,' but rather between a massive MDL and the alternative of thousands of similar cases clogging the courts with duplicative discovery and the potential for unnecessary conflict."); *see also* Zachary B. Savage, *Scaling Up: Implementing Issue Preclusion in Mass Tort Litigation Through Bellwether Trials*, 88 N.Y.U.L. Rev. 439 (2013).

4 *See In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, U.S. District Court for the Eastern District of Louisiana).

5 *See* Master Settlement Agreement, Rec. Doc. 6427-1.

opinions, it was discovered that, at least for various acute and ***three "chronic" conditions***, there was a consensus among the experts. BP in support of the Motion to Approve the MSA then filed Dr. Herzstein's opinions in the MDL as evidence to be considered by the Court. Dr. Herzstein's affidavit is evidence that stands alone – separate and apart from the Master Settlement Agreement. The SPC Matrix that is referred to in Dr. Herzstein's affidavit was later incorporated in the Master Settlement Agreement as an exhibit. However, this does not diminish the original evidentiary value of her sworn testimony. The SPC Matrix was an exhibit to Dr. Herzstein's affidavit which helped her explain her ultimate opinion. Dr. Herzstein's ultimate opinion was that "The…Chronic Specified Physical Conditions on the Matrix consist of those conditions for which there is a medical basis to conclude that contact with oil and/or oil based dispersants caused them if there were exposure to sufficient amounts of such substances for a sufficient duration of time."[6]

This Court considered and weighed Dr. Herzstein's affidavit as part of the evidence supporting the MSA. This Court then found this evidence to be admissible and reliable and sited to this affidavit as support for the conclusion that the three (3) chronic conditions contained in the SPC Matrix could generally be caused by exposure to oil and/or oil-based dispersants and that these conclusions were, "consistent with: (1) medical and scientific literature; (2) conditions that have actually been reported or alleged by Clean-Up Workers and Residents; (3) published health surveillance reports; and (4) conditions reported by response workers and residents in connection with other oil spills. (Herzstein Decl. ¶¶ 14–18.)"[7]

It is acknowledged that *after* this affidavit was filed there was an additional term added to the MSA which treated class members ***diagnosed*** on or before April 16, 2012 with a chronic

6 *See* Herzstein Decl. at 6

7 Order and Reasons Granting Final Approval of the Medical Benefits Class Action Settlement at 9, Rec. Doc 8217, No. 2:10-md-02179 (E.D. La. January 11, 2013) (emphasis added).

condition differently from those class members who were ***diagnosed*** after April 16, 2012.[8] This additional term that is contained in the MSA, was a term that was added solely due to "fraud" considerations.[9] This additional term contained in the MSA, a separate document, does not diminish the evidentiary value of Dr. Herzstein's opinion that the SPC Matrix includes those chronic conditions "***for which there is a medical basis to conclude that contact with oil and/or dispersants caused them if there were exposure to sufficient amounts of such substances for a sufficient duration of time.***"[10]

## ARGUMENT

**1. This is evidence that BP has affirmatively placed into the public record of this MDL in order to help secure the approval of the MSA and, as a result, there is no work product privilege.**

Dr. Herzstein's prior declarations on April 12, 2012 and October 22, 2012 were proffered by the BP Defendants to help establish the scientific framework of the case. It was proffered by BP in an effort by BP to secure the approval of the MSA. Therefore, BP proffered the affidavit of Dr. Herzstein at a time when this evidence would benefit them. Now, when individual BELO

---

8 Although the section of the MSA which contains this additional term is called, "Later Manifested Physical Conditions," this title is simply a relic of an earlier time when the date that the physical condition "manifested" was the relevant line of demarcation – the final draft of the MSA changed the relevant term from "manifested," to "diagnosed" but the title of the section was not updated to reflect this change. Therefore, the title "Later Manifested Physical Conditions" is wrong at best and misleading at the worst.

9 This Court noted the reasons why BP wanted to treat the SPC claims and the BELO claims differently, "BP submits that its filing in support of the MSA consistently referred to the date of diagnosis not manifestation as determinative of whether a claim was a LMPC." Rec. Doc. 13392 at 12. This order further stated that class members with chronic conditions likely would have sought treatment prior to April 16, 2012, because those conditions result in "severe symptoms." Basically, BP sought two groups (SPC class and a BELO class) solely based on the fact that they viewed Plaintiffs who sought medical care prior to April 16, 2012, as "legitimate" and that if you failed to seek care prior to that date, then the claim should be looked at suspiciously and, if paid pursuant to the SPC Matrix, would "invite fraud." BP's concerns have nothing to do with Dr. Herzstein's opinion that the three (3) chronic conditions listed in the SPC Matrix can generally be caused by exposure to oil and/or oil-based dispersants so long as their symptoms ***manifest*** themselves within 24 to 72 hours. (Ocular, Respiratory and/or Dermal).

10 Herzstein Decl. ¶ 14.

Plaintiffs want to develop this same evidence in support of their BELO cases, BP attempts to stonewall this discovery.

By placing Dr. Herzstein's affidavit in the record of this MDL, Defense Counsel rendered the work product protections provided by Federal Rule of Civil Procedure 26(b)(4) moot.[11] Moreover, BP has not identified other privileges that would prevent this discovery. Thus, BP has not demonstrated good cause to grant a protective order here and has made only conclusory allegations regarding the relevance and probative value of the proposed deponent's testimony.

**2. This evidence, if allowed to be developed is expected to be relevant, reliable and undisputed as to the issue of General Causation for this extremely limited number of class members.**

BP applies the wrong legal standard and confuses relevance with admissibility.[12] This Court should set-aside any arguments BP has made as to the admissibility of Dr. Herzstein's testimony since arguments as to admissibility are not ripe. Further, whether this testimony is ultimately admissible would typically be decided by the district court assigned to the case on a later date after the fact record has been developed.

The Federal Rules and the terms of the MSA allow parties to take depositions of witnesses regarding any non-privileged matter that is relevant to any party's claim or defense.[13] As BP

---

[11] *See Fast Memory Erase, LLC v. Spansion, Inc.*, No. 3-08-CV-0977-M, 2009 WL 4884091, at *1 (N.D. Tex. Dec. 16, 2009) ("If materials and documents prepared by a non-testifying expert are disclosed to and considered by a testifying expert, such materials and documents lose their protected status.") (citing *Herman v. Marine Midland Bank*, 207 F.R.D. 26, 30-32 (W.D.N.Y. 2002); *see also Johnson v. Gmeinder*, 191 F.R.D. 638, 646-47 (D. Kan. 2000).

[12] *See Seattle Times Co.*, 467 U.S. at 29-30; *see also Gulf Prod. Co. v. Hoover Oilfield Supply,* No. CIV.A. 08-5016, 2011 WL 1321607, at *4 (E.D. La. Apr. 4, 2011) ("Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.") (quoting *Victor v. Lawler*, 3:08–CV–01374, 2010 WL 2595945, at * 2 (M.D. Pa. June 24, 2010)).

[13] Fed. R. Civ. P. 26(b)(1); *see also MSA*, § VIII.G.6 ("Pretrial discovery may be had only to non-privileged matters reasonably calculated to lead to the discovery of admissible evidence relevant to any issue that may be litigated at trial.").

properly stated, Federal Rule of Civil Procedure 26(b)(1) authorizes parties in engage in discovery where the nonprivileged matter is relevant and "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[14] Absent from BP's Motion is the final line from Rule 26(b)(1): "[i]nformation within this scope of discovery *need not be admissible in evidence to be discoverable*."[15]

Although Plaintiff has not yet taken the deposition, Plaintiff can show that this testimony is relevant. Basically, Dr. Herzstein in her affidavit acknowledges that the state of the science and medical literature is that certain chronic ocular, respiratory, and dermal conditions can be caused by exposure to oil and/or oil-based dispersants. If such evidence is allowed to be developed, then this evidence is expected to be relevant to the issue of general causation in a small number of cases where the plaintiff has alleged that they suffer from one of the three (3) chronic conditions listed in Dr. Herzstein's affidavit (ocular, respiratory, and dermal) and can satisfy all of the condition precedents contained in the SPC Matrix, including, but not limited to manifestation of the condition within 24 to 72 hours

BP has also cited to other filings by Plaintiffs that sought to "enforce" the terms of the MSA and/or to amend the terms of the MSA, but the two motions for Summary Judgement to 'enforce" the terms of the settlement have not been ruled on and the other orders do not concern discovery issues. However, it should be noted that when Judge Rogers considered the Motion for

---

14 Fed. R. Civ. P. 26(b)(1).

15 *Id.*; *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 29-30 (1984) ("[D]iscovery is not limited to matters that will be admissible at trial so long as the information sought 'appears reasonably calculated to lead to the discovery of admissible evidence.'") (internal citations omitted).

Summary Judgment in the NDFL, the Court stated that the affidavit of Dr. Herzstein would not be considered because this was not record evidence in the BELO case.[16] This transcript does not demonstrate that the testimony of Dr. Herzstein is irrelevant, it actually helps to explain why the Plaintiffs need to take the deposition of Dr. Herzstein in the individual BELO cases. If this evidence is not part of the BELO Case, then the individual district courts are unable to even consider this evidence until the deposition is taken in the BELO matter. Despite BP's misstatements, the issue of whether a deposition of Dr. Herzstein would provide ***relevant*** evidence has not been addressed by this Court. This Court has already found Dr. Herzstein's testimony to be reliable. This Court relied upon Dr. Herzstein's testimony to show that other experts who testified or submitted reports were *unqualified* to offer opinions as experts.[17]

BP also attempts to confuse Dr. Herzstein with a treating medical doctor or a CME expert.[18] As an expert who has opined on general causation, Dr. Herzstein was never required to treat any plaintiffs to be a qualified as an expert.[19]

---

16 *See* Transcript of Summary Judgment Teleconference Proceeding at 5-6:23-25, 1-2, No. 19-cv-963 (N.D. Fla. March 31, 2020), Attached as Exhibit 2 ("[M]y decision *is based on the scientific evidence that is in the record in these cases before me*, not on the record before Judge Barbier in the MDL.").

17 Specifically, this Court relied on the testimony of Dr. Herzstein to rebut the scientific opinions Dr. Robichaux, Ms. Wilma Subra, and Mr. James Kirby; to establish that BP "has presented evidence that VOCs actually have short half lives of hours to a few days;" and to establish that "there is no credible, peer-reviewed scientific evidence that detoxification treatment improves symptoms . . ." *See* Order and Reasons Granting Final Approval of the Medical Benefits Class Action Settlement at 73-76, Rec. Doc 8217, No. 2:10-md-02179 (E.D. La. January 11, 2013).

18 As is similar for other toxic tort MDLs, reviewing occupational histories is generally performed absent direct medical oversight or treatment. *See In re Silica Prod. Liab. Litig.*, 398 F. Supp. 2d 563, 634-35 (S.D. Tex. 2005).

19 *See Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 618 (5th Cir.1999) ("The district court's responsibility 'is to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'")(quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

**3. The overriding policy considerations of "*Scaling Up*" in MDL matters and judicial economy favor the taking of this deposition.**

The Manual for Complex Litigation states that one of the primary issues to be litigated in early cases is "whether plaintiffs' claims of causation are generally applicable and susceptible to proof across large groups of individuals and over time"[20] In this MDL, evidence was exchanged by the parties and this exchange resulted in a limited consensus among the experts. Basically, there was a consensus that those chronic conditions that are contained in the SPC Matrix and which are manifested within 24 to 72 hours and which are confirmed by certain diagnostic testing can generally be caused by exposure to oil and/or oil-based dispersants. Allowing the Plaintiffs to once again develop this same evidence in the BELO Cases would further accomplish the goal of "scaling up" – that is taking those points of consensus and applying them to all class members. To prevent these class members from developing the same evidence that was previously developed, would be throwing away a possible point of consensus that was originally established in the MDL after lengthy negotiations and scientific consultation. Allowing the Plaintiffs to take this deposition only one time, as has been agreed to by Plaintiffs, also serves the purpose of judicial economy. Finally, if this testimony leads to an undisputed issue of fact on the issue of General Causation for a small number of BELO class members who have one of the three (3) listed chronic conditions and who can satisfy all of the condition precedents in the SPC matrix, including manifestation within 24 to 72 hours, then this will also help resolve certain General Causation issues in BELO cases in a more efficient manner.

---

20 *See* Issue Identification and Development, Ann. Manual Complex Lit. § 22.634 (4th ed.).

**4. The historical judicial philosophy of open and broad discovery when interpreting the Federal procedural rules of discovery.**

According to this Court, "the discovery rules are accorded a broad and liberal treatment to affect their purpose of adequately informing litigants in civil trials."[21] The policy justifications favoring flexibility in discovery rules is so great that the burden is on the movant for a protective order to show the necessity of issuance and demonstrate particular and specific facts, not conclusory statements, to show good cause.[22] "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted."[23] This burden is also placed on the moving party because to force the Plaintiff to outline all of the areas of inquiry for a deposition, all of the reasons why the deposition are relevant, and to outline all of the questions that may be asked, would force the party petitioning for the deposition to disclose their work product and/or their legal reasoning before the deposition even takes place.

BP's insistence that Dr. Herzstein can proffer no relevant evidence is absurd when considering the liberal interpretation given to relevance for purposes of discovery. Relevance has traditionally been construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[24]

Plaintiffs have limited the scope of the deposition and stated that it will take the deposition of Dr. Herzstein *once* and will then simply use this deposition as evidence in a limited number of

---

[21] *See Offshore Marine Contractors, Inc. v. LaBorde Marine Crewboats, LLC*, No. CV 04-1088, 2005 WL 8178267, at *2 (E.D. La. July 19, 2005) (citing *Hebert v. Lando,* 441 U.S. 153, 176 (1979)); *see also Gulf Prod. Co. v. Hoover Oilfield Supply*, No. CIV.A. 08-5016, 2011 WL 1321607, at *2 (E.D. La. Apr. 4, 2011); *see also United States v. McWhirter*, 376 F.2d 102, 106 (5th Cir. 1967); *see also Hickman v. Taylor*, 329 U.S. 495, 501 (1947).

[22] *See Offshore Marine Contractors*, 2005 WL 8178267, at *2-3 (E.D. La. July 19, 2005); *see also In re: Terra International, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (citing *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978)).

[23] *Offshore Marine Contractors*, 2005 WL 8178267, at *2-3 (E.D. La. July 19, 2005) (citing *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)).

[24] *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

cases where claimants have alleged one of three chronic conditions listed in the SPC Matrix, whose medical symptoms manifested within 24 to 72 hours, and who have the relevant diagnostic testing.

**5. If the Court prevents the Plaintiffs from taking this deposition, then the individual Courts will be deprived of the opportunity to consider the issue as to whether this evidence is relevant or admissible.**

At least one district court refused to consider the affidavit of Dr. Herzstein because it is evidence that has not been developed in the BELO Case.[25] Therefore, for the individual district courts to even consider the testimony of Dr. Herzstein and determine whether this evidence is admissible, the courts must first allow this evidence to be developed in the individual BELO Case. Only after this deposition has been taken can the courts then consider whether this evidence is admissible at the time of Summary Judgement or Trial.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny BP Parties' Motion for Protective Order regarding the deposition of Dr. Jessica Herzstein.

Dated this 8th day of July 2020.

Respectfully submitted,

*/s/ Charles D. Durkee*
Charles D. Durkee
Florida Bar No.: 998435
THE DOWNS LAW GROUP, P.A.
3250 Mary Street, Suite 307
Coconut Grove, Florida 33133
(305) 444-8226 Telephone
ddurkee@downslawgroup.com
*Attorney for Plaintiffs*

25 *See* Transcript of Summary Judgment Teleconference Proceeding at 5-6:23-25, 1-2, No. 19-cv-963 (N.D. Fla. March 31, 2020), Attached as Exhibit 2.

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing was filed with the Clerk of Court by using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the Court's electronic system in accordance with the procedures established in MDL 2179.

Dated this 8th day of July 2020.

*/s/ Charles D. Durkee*
Charles D. Durkee