UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | **MDL NO. 2179**<br><br>**SECTION: J**<br>**JUDGE BARBIER** |
| **Applies to: All BELO Lawsuits** | **MAGISTRATE:**<br>**JUDGE CURRAULT** |

### PLAINTIFFS' RESPONSE TO BP'S MOTION FOR PROTECTIVE ORDER

Comes now Falcon Law Firm as counsel for a number of other BELO Plaintiffs[1] who have filed individual actions pursuant to the MSA, and files this Response to BP's Motion for Protective Order of Dr. Jessica Herzstein. The response prepared by the Falcon Law Firm will focus on rebutting the legal arguments made by BP.[2]

### INTRODUCTION

Counsel for Plaintiffs requested a deposition of Dr. Jessica Herzstein on June 11, 2020 to determine mutually agreeable dates and to arrange the deposition to comply with pending discovery deadlines set by the courts. Dr. Herzstein, MD, MPH is an expert previously retained by BP in an earlier stage of this MDL. BP Parties have filed a motion attempting to distort Plaintiffs' routine request for a deposition into a dispute about the terms of the settlement agreement.

All cases arising out of this MDL are in the discovery stage. It is unclear whether the evidence sought from the deposition of Dr. Herzstein may be used as evidence at trial. Regardless,

---

[1] *See* Exhibit 1.
[2] The Downs Law Group has also sought the deposition of Dr. Herzstein and will also be filing a response to BP's Motion for Protective Order. The Downs Law Group's Response will outline the affirmative reasons why this deposition should proceed. The Falcon Law Firm hereby formally adopts the legal and factual arguments made by the Downs Law Group in its response.

BP's analysis revolves around arguments that are not in any way relevant to the relaxed legal standard that Plaintiffs must satisfy in order to properly notice BP's expert for deposition—an expert that BP has previously proffered to this Court to establish the scientific consensus that was the keystone to the settlement agreement and the Specified Physical Conditions Matrix[3] (the "Matrix"). BP misapplies the legal standard for discovery because, for this deposition, neither party will know whether the evidence will be admissible until we know what the evidence actually is. However, the deposition is likely to lead to the discovery of admissible and relevant evidence and is permissible pursuant to the Federal Rules and the terms of the MSA.

The Court should not permit BP Defendants to continue its gamesmanship in an effort to delay resolution of BELO claims so as to clog this Court's docket with motions that could be resolved in this early stage without depleting the finite resources of class members who seek their day in court; many of whom were medically indigent at the time that their respective diseases manifested. BP wishes to walk back its previously agreed upon concessions of scientific facts agreed to in the early settlement phase and to place the burden entirely on Plaintiffs to *re-prove* general causation based on voluminous epidemiological and toxicological data, and for the courts to adjudicate the issue on a case-by-case basis at the expense of judicial economy.

The simplest and most functional way to consolidate and resolve common issues of scientific fact related to causation is to avoid grouping every "Later Manifested Physical Condition" ("LMPC") into the same category—especially where the claimed medical conditions are identical to the conditions listed in the Matrix. As the court noted at the April 19, 2019 Rule 16 Conference in the Northern District of Florida, BP should have already tendered a list of cases

---

[3] Specified Physical Conditions Matrix, Rec. Doc. 6427-10, No. 2:10-md-02179 (E.D. La. May 3, 2012).

or chronic conditions that it will not seek to litigate the issue of general causation on in these BELO cases because not every "LMPC" should be treated the same.[4]

BP has attempted to game both sides of this issue for tactical advantage. For instance, BP argues in its Motion that the earlier stages of this MDL, where Dr. Herzstein initially gave her declarations, are so dissimilar from the BELO litigation that those prior declarations should not be considered part of the record in *any* BELO case. BP further argues that the foundational testimony of the Matrix, and the Matrix itself, does not apply to any BELO cases or speak to the issue of general causation. However, BP's assertions only address the question of admissibility, and not relevance. The district court cannot consider admissibility until discovery is developed.

## LEGAL STANDARD

The Federal Rules of Civil Procedure provides that when a party from whom discovery is sought makes a motion for a protective order, that party must make a showing of good cause by demonstrating a particular need for protection.[5] "[T]he burden is upon the movant to show the necessity of [the protective order] issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory."[6] "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted."[7] Accordingly, broad protective orders, like that requested

---

[4]   *See* Transcript of Rule 16 Conference at 6-7, Rec. Doc. 68-13, No. 3:19-cv-00963 (N.D. Fla. February 12, 2020) ("I asked them to identify the precise general causation dispute in each case . . . I did not expect to hear that there was a dispute in regards to general causation . . . as to whether these dispersants can ever cause the conditions compliance of under any circumstances.").
[5]   *See* Fed. R. Civ. P. 26(c); *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978).
[6]   *Offshore Marine Contractors, Inc. v. LaBorde Marine Crewboats, LLC*, No. CV 04-1088, 2005 WL 8178267, at *2 (E.D. La. July 19, 2005) (quoting *In re: Terra International, Inc*., 134 F.3d 302, 306 (5th Cir. 1998)).
[7]   *Id.* (citing *Phillips v. Gen. Motors Corp*., 307 F.3d 1206, 1211 (9th Cir. 2002)).

here by BP seeking to prevent all plaintiffs from deposing Dr. Herzstein, are disfavored by the courts because they inherently lack a specific showing of good cause.[8]

### ARGUMENT

BP makes four primary arguments in its Memorandum: first, that the relevance of the proposed deposition was addressed by prior orders;[9] second, that the discovery is foreclosed by the terms of the MSA; third, that the discovery sought is irrelevant;[10] and fourth, that the discovery sought creates a burden that is not proportional to the needs of the case. This Court should set aside BP's arguments regarding whether the terms of the MSA prevent Plaintiffs from deposing Dr. Herzstein because settlement agreements cannot be used as a shield against discovery,[11] and BP's arguments regarding the terms of the MSA are not applicable to questions of relevance or burden.

### I.     *The Proposed deposition Was Not Foreclosed By Prior Court Orders*

Plaintiffs admit that this Court has "affirmed the Claims Administrator's interpretation of the MSA that physical conditions that are first diagnosed after April 16, 2012 are 'Later-Manifest[ed] Physical Conditions' ("LMPCs") and not SPCs, regardless of the date the condition

---

[8] "[A]n umbrella protective order that designates all discovery as protected, without any review or determination of 'good cause' by parties or the court . . . are disfavored, and on a motion for modification the burden generally will be on the party seeking protection to show good cause." *Blanchard & Co. v. Barrick Gold Corp.*, No. 02-3721, 2004 WL 737485, at *5 (E.D. La. Apr. 5, 2004); *see also In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. CIV.A. H-01-3624, 2009 WL 3247432, at *3 (S.D. Tex. Sept. 29, 2009).

[9] *But see* Transcript of Show Cause Proceeding at 13, Rec. Doc. 25, No. 2:18-cv-10381 (E.D. La. November 25, 2019) ("[W]hat you're arguing is a little different because it's suggesting that there was agreement by the parties when the medical settlement was confected that as to the specified physical conditions . . . that there was agreement, general agreement by the experts for each side that those are the types of conditions that could be caused by this type of exposure.").

[10] The issue of relevance will primarily be addressed in the brief submitted by Downs Law Group which the Falcon Law Firm adopts in total.

[11] As Judge Torres stated, "[t]here is nothing magical about a settlement agreement . . . Rule 26 has no exception for settlement agreements . . . [t]herefore, the traditional post-2000 standards that apply to any Rule 26 issue apply to this document." See *Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.*, No. 05-60860CIV, 2007 WL 1526649, at *3 (S.D. Fla. May 22, 2007) (citing *In re Initial Public Offering Sec. Litig.*, 2004 WL 60290, at 4-5 (S.D.N.Y. Jan.12, 2004)).

manifested . . . ." and that "LMPC claims must be pursued under the MSA's BELO provisions."[12] However, Plaintiffs do not request similar relief for the Court to rule that different standards of proof apply to "B1 BELO" claims. Plaintiffs simply requests further discovery to determine if general causation has been, or may be, established for a small subset of BELO claimants before extensive litigation.[13] A court has already ruled that Dr. Herzstein's affidavits are not part of the BELO record, so a deposition should be taken so that admissibility can be considered.

This Court has ruled that "[t]he proof requirements found in the [Matrix] do not apply to [Plaintiffs'] BELO lawsuits."[14] However, Plaintiffs do not seek to depose Dr. Herzstein to determine if the same proof requirements apply;[15] rather Plaintiffs, among other inquiries, seek to depose BP's expert to determine whether the science that forms the foundation of the Matrix also establishes general causation for other claimants who allege identical or substantially similar specified chronic physical conditions as enumerated in the Matrix.

## II.     *The Proposed Deposition is Permissible By The Terms of The MSA*

The terms of the MSA related to discovery are clear that "[p]retrial discovery may be had only to non-privileged matters reasonably calculated to lead to the discovery of admissible evidence relevant to *any issue* that may be litigated at trial."[16] BP argues that the terms of MSA prevent Plaintiffs from using any part of the SPC Matrix, and its underlying scientific foundations,

---

[12]     *See* Order at 2, Rec. Doc. 24218, No. 2:10-md-2179 (citing Rec. Doc. 13179, 13733).
[13]     The Northern District of Florida's Order on Summary Judgment did not resolve the instant matter as BP alleges. *See* Transcript of Motion for Summary Judgment Teleconference at 5-6:23-25, Attached as Exhibit 2 ("[M]y decision *is based on the scientific evidence that is in the record in these cases before me*, not on the record before Judge Barbier in the MDL.").
[14]     Order Denying Plaintiffs' Motion to Amend or Modify BELO Cases Initial Proceedings Case Management Order at 3, Rec. Doc. 24218, No. 2:10-md-2179 (E.D. La. Mar. 16, 2018)
[15]     *E.g.*, claimants who sought compensation under the Matrix did not need medical records.
[16]     *See MSA*, § VIII.G.6.

in any BELO dispute. However, BP cannot shield discovery behind the MSA on account of either the terms themselves or confidentiality related provisions.[17]

Stipulated agreements between parties do not bar reasonable requests for discovery. Even if the settlement negotiations and agreement may be inadmissible, factual information *underlying* other claims is relevant and admissible.[18] Additionally, even if this Court concludes that the parties had agreed that a protective order is appropriate in the actual terms of the settlement agreement, BP still has the burden of showing that good cause exists for the order requested.[19] Regardless of the terms of the MSA, this Court must independently determine if "good cause" exists.[20]

The "Issues to be Litigated" section of the MSA[21] does not guarantee BP the right to take another bite at the apple at general causation for BELO cases alleging only chronic specified conditions that satisfy the conditions precedent in the Matrix. The relevant provisions of the MSA states that the issues to be litigated are "the fact of diagnosis . . . [t]he amount and location of oil, other hydrocarbons, and other substances . . . [t]he level and duration of the [Class Member's] exposure . . . [w]hether the [Class Member's] alleged ["LMPC"] was legally caused by his or her exposure . . . [w]hether there exist any alternative causes . . . [and] [t]he amount, if any, of

---

[17]    *See Jeld-Wen, Inc.*, 2007 WL 1526649, at *3 (S.D. Fla. May 22, 2007); see also *Silver Streak Trailer Co., LLC v. Thor Indus., Inc.,* No. 18-14126-CIV, 2018 WL 8367073, at *6 (S.D. Fla. Nov. 15, 2018) (The Federal Rules do not create a "settlement privilege" for the purposes of discovery and "litigants cannot shield settlement agreements from discovery solely based on confidentiality if the agreement is relevant to the action, or likely to lead to relevant evidence.") (internal citations omitted); *see also Norton v. Bank of Am.*, N.A., No. 05-61344-CIV, 2006 WL 8432180, at *10 (S.D. Fla. Apr. 27, 2006).

[18]    *See Marchese v. Sec'y, Dep't of the Interior*, No. CIV.A. 03-3082, 2004 WL 2297465, at *6 (E.D. La. Oct. 12, 2004).

[19]    *See Jepson, Inc. v. Makita Elec. Works*, Ltd., 30 F.3d 854, 858 (7th Cir. 1994) ("Even if the parties agree that a protective order should be entered, they still have "the burden of showing that good cause exists for issuance of that order. It is equally apparent that the obverse also is true, *i.e.*, if good cause is not shown, the discovery materials in question should not receive judicial protection....") (quoting *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir.1988), cert. denied, 488 U.S. 1030 (1989)).

[20]    *See id.* at 858 ("A useful analogue is the fiduciary burden assumed by federal judges in evaluating a proposed class action settlement under Federal Rule 23(e).") (quoting Arthur R. Miller, Confidentiality, Protective Orders and Public Access to the Courts, 105 Harv.L.Rev. 427, 492 n. 322 (1991)).

[21]    MSA § VIII.G.3.

compensatory damages to which the [Class Member] is entitled."[22] The proof requirements found in the BELO provisions do not guarantee the right for Defendants to contest *general causation* in each BELO case*;* and this is especially the case where the alleged later diagnosed condition is the same as one of the conditions listed in the Matrix.[23] The issue of whether there are potentially alternative causes that could explain the alleged exposure-related injuries is one that is clearly within the realm of *specific causation*, not general causation.[24]

The Matrix is not purely an artifact of settlement negotiations between lawyers; it was created by scientific and medical experts before final terms of the MSA were established that pegged the definition of "Later Manifested Physical Condition" to the date of diagnosis instead of the date of manifestation of medical conditions. Part of the total agreement, particularly for this small subset of BELO plaintiffs, was that plaintiffs were not required to prove liability and general causation in consideration for being prevented from seeking punitive damages.[25] If general causation must still be proven in each one of the BELO cases where the plaintiff alleges only the *same* specific chronic physical conditions contained in the Matrix, then BP's contract-related arguments fail because the agreed for consideration was that there were certain issues which could not be litigated. Now, BP seeks to force this subset of BELO claimants to re-prove, with expert testimony, facts already largely established by expert scientific consensus.

---

[22]   *Id.*

[23]   The provision outlining the issues to be litigated uses permissive, not mandatory, language; and only specifies that BP *may* litigate whether injuries were "legally caused" by exposure.

[24]   BP Defendants will continue to have the defenses regarding alternative causes for the exposure and specific causation available for the small subset of BELO cases.

[25]   *See* Transcript of Fairness Hearing at 255:7-10, Rec. Doc. 7892 (E.D. La. November 15, 2012) ("As I appreciate it, there is some trade-off there. You can't claim punitive damages in the back-end litigation option, but you don't have to prove liability and general causation . . . .").

Compensation and proof requirements, specifically for specific causation and exposure, are still governed by the BELO provisions in the MSA—not by the SPC Matrix. Plaintiffs will still need to provide proof of diagnosis, establish specific causation, and establish the nature and extent of exposure among other burdens. However, The effect of this Court's denial would potentially allow for general causation to be established for this small subset of Plaintiffs, and thus would substantially decrease costs for the parties and prevent significant judicial waste.

### III.  The Discovery Sought is Proportional to the Needs of the Case and the Needs Outweigh Any Burdens Placed on Dr. Herzstein or BP

Rule of Civil Procedure 26(b)(1) circumscribes the scope of discovery, not the MSA. "The factors the [C]ourt should consider when determining proportionality are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[26] Here, the benefits from the deposition outweighs alleged burdens because this matter involves complex scientific facts, there is a significant amount of damages in controversy, and the deposition would substantially expedite litigation for a small subset of BELO claimants.

The burden placed on Dr. Herzstein is insubstantial because preparation time should not be balanced against the importance of the issues at stake.[27] There is little burden in Dr. Herzstein "re-learning" the materials regarding general causation or on the common adverse health effects

---

[26] *See Morris v. United States*, No. 13-CV-2246, 2017 WL 6997275, at *2 (W.D. La. Dec. 6, 2017) (quoting Fed. R. Civ. P. 26(b)(2)).

[27] *See Boardman v. Clark*, No. CV 9:10-2222-SB-BHH, 2012 WL 12897333, at *2 (D.S.C. Feb. 7, 2012) (where a party's request would only necessitate approximately two days of preparation time for the expert deponent, "it would seem irresponsible were the record to reflect less" because "[t]he stakes are weighty and the deponents are testifying as *experts*" and "[t]here are literally millions of dollars at stake.").

that could have resulted from the Deepwater Horizon Incident.[28] If there is a burden to re-learn materials, the appropriate remedy is to ensure that the deponent is compensated for her preparation time.[29] Moreover, a dismissed expert who has already submitted an expert report may also be deposed under Federal Rule of Civil Procedure 26(b)(4)(B).[30]

BP has not met the burden of establishing an outweighing burden necessary for this Court to grant its Motion merely because Defendant has *already* produced other relevant documents and reports related to the proposed deposition.[31] The purpose of the proposed deposition is not to bolster evidence, rather it is to create a record to expedite resolution of general causation.

### IV. BP's Motion for a Blanket Prohibition on Discovery Should Be Denied

BP's Motion is beset by an internal contradiction. Either BP is correct that the trial court is the proper site to grant protective orders for depositions[32] and this Court should deny BP's motion; or this Court should use its discretion *only* to simplify and expedite the previously resolved issues

---

[28] "BP expert Dr. Peter Lees has stated that the data collection . . . is sufficient to allow an expert to assess any significant adverse health effects that might result from the Deepwater Horizon Incident and to draw conclusions regarding any potentially harmful exposures." *See* Order Granting Final Approval of the MSA, Rec. Doc. 8217, No. 2:10-md-02179 (E.D. La. January 11, 2013). (citing Decl. of Peter S.J. Lees, Rec. Doc. 7112-3, ¶ 12.).

[29] *See Borel v. Chevron U.S.A. Inc.*, 265 F.R.D. 275 (E.D. La. 2010) (holding that Federal Rule of Civil Procedures should be interpreted so as to allow compensation for adverse party expert's preparation time for a deposition); *see also American Steel Products Corp. v. Penn Central Corp.*, 110 F.R.D. 151, 153 (S.D.N.Y.1986) (awarding costs of preparation time); *but see Abundiz v. Explorer Pipeline Co.*, No. CIV. 300CV2029-H, 2004 WL 1161402, at *3 (N.D. Tex. May 24, 2004) (stating some courts "have refused to award compensation for deposition preparation in the absence of compelling circumstances, such as 'complex cases where there has been a considerable lapse of time between an expert's work on a case and the date of his actual deposition.'") (quoting *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 154 F.R.D. 212, 214 (E.D.Wis.1994)).

[30] *See Estate of Manship v. United States*, 240 F.R.D. 229 (M.D. La. 2006) (citing *Commerce & Indus. Ins. Co. v. Grinnell Corp.*, No. CIV.A. 97-0775, 1999 WL 731410 (E.D. La. Sept. 20, 1999)).

[31] *See Lessert v. BNSF Ry. Co.,* No. 5:17-CV-05030-JLV, 2019 WL 3431282, at *4 (D.S.D. July 30, 2019) ("[T]he fact that Defendant has already produced information covering the identified subject areas does not excuse Defendant from complying with the Rule 30(b)(6) depositions.").

[32] *See* Memorandum in Support of the BP Parties' Motion for Protective Order at 17, Rec. Doc. 26547-2, No. 2:10-md-02179 (E.D. La. June 16, 2020).

9

of scientific facts for efficiency and should deny BP's Motion until the court of first instance can issue an order based on the particularities of the specific case being litigated.

Plaintiffs' request to take to the deposition of Dr. Herzstein is the best starting point for this Court to streamline the MDL and resolve common issues of general causation for claimants alleging chronic specified physical conditions because only one individual would need to be deposed; and that individual played a large role in formulating the SPC Matrix. The fundamental issue of general causation is not whether the diagnoses are accurate because that issue must be litigated in every BELO case. The actual issue is whether the science establishes, for certain chronic conditions, that the medical complaints *can* be caused by exposure to oil and dispersants.

It would be less burdensome to proceed with the deposition of Dr. Herzstein in the discovery phase rather than to wait to take individual trial depositions for the purposes of preserving testimony. Additionally, the requested deposition and related discovery requests are necessary to resolve factual disputes that were previously not in dispute at a prior stage of the MDL; specifically, general causation for the conditions listed in the Matrix.

## **CONCLUSION**

The Court should deny BP's Motion for Protective Order regarding the deposition of Dr. Herzstein and rule solely on whether this discovery shall proceed, not whether the evidence would be admissible. In the alternative, this Court should deny BP's Motion because the proper forum to decide this issue in the first instance is at the trial court level, as BP has conceded.

Dated July 8th, 2020.

                                      Respectfully submitted,

                                      _____*/s/ Jeremiah A. Sprague*_
                                      JEREMIAH A. SPRAGUE
                                      Louisiana State Bar No. 24885
                                      Email: jerry@falconlaw.com
                                      TIMOTHY J. FALCON
                                      Louisiana State Bar No. 16909
                                      Email: tim@falconlaw.com
                                      JARRETT S. FALCON
                                      Louisiana State Bar No. 34539
                                      Email: jarrett@falconlaw.com
                                      FALCON LAW FIRM
                                      5044 Lapalco Boulevard
                                      Marrero, Louisiana  70072
                                      Telephone:  (504) 341-1234
                                      Facsimile:  (504) 348-7714
                                      **ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

     I DO HEREBY CERTIFY that on the 8th day of July, 2020, I electronically filed a copy of the above and foregoing Plaintiffs' Response to BP's Motion for Protective Order for service to all counsel with the Clerk of Court through use of the CM/ECF system which will send a notice of electronic filing to those who are on the list to receive email notices for this case. I further certify that I uploaded the foregoing Plaintiffs' Response to BP's Motion for Protective Order for service to all counsel to File & Serve Xpress in accordance with Pretrial Order 12.

                                        _____*/s/ Jeremiah A. Sprague*_____