**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | * | **MDL NO. 2179** |
| | * | **SECTION: J** |
| | * | **JUDGE BARBIER** |
| **Applies to: All BELO Lawsuits** | * | **MAGISTRATE JUDGE CURRAULT** |

* * * * * * * * * * * * * * * * * * * * * * * * * *

**REPLY MEMORANDUM IN SUPPORT OF**
**THE BP PARTIES' MOTION FOR PROTECTIVE ORDER**

The BP Parties submit this Reply Memorandum in support of their Motion for Protective Order to preclude the deposition of Dr. Jessica Herzstein (Rec. Doc. 26547) and in response to the Oppositions filed by the Downs Plaintiffs (Rec. Doc. 26580, "Downs Opp.") and Falcon Plaintiffs (Rec. Doc. 26581, "Falcon Opp.").

There is no legitimate reason for plaintiffs to depose Dr. Herzstein in BELO lawsuits. Dr. Herzstein has not been designated as an expert in any BELO lawsuit and will not be called to testify at trial. Downs and Falcon have offered their own causation experts in dozens of BELO lawsuits on the issue on which they now seek Dr. Herzstein's deposition. Dr. Herzstein has not worked on any *Deepwater Horizon* matters in six years, and it would be burdensome and wasteful to require her to set aside her current professional and medical responsibilities to participate in expert discovery in BELO lawsuits in which no party has designated her as a testifying expert. Further, requiring her to testify concerning her 2012 declarations that have been held to be irrelevant in BELO lawsuits is contrary to the terms of the MSA and creates a disincentive to settlement of class action lawsuits.

## I. Rule 26 Does Not Permit the Deposition of an Expert Who Was Not Designated to Testify In Any BELO Lawsuit.

Both Downs and Falcon wrongly argue that Federal Rule of Civil Procedure 26 allows them to depose Dr. Herzstein.[1] The plain language of Rule 26 clearly limits depositions to those experts who have been identified to testify in the lawsuit at issue.

Rule 26(b)(4)(A) provides that "[a] party may depose any person *who has been identified as an expert whose opinions may be presented at trial*."[2] Dr. Herzstein has not been identified as an expert in any BELO lawsuit, and the BP Parties do not intend to offer her testimony at any BELO trial. As this Court has ruled, "[t]he BELO lawsuit is essentially a new action, separate from the class action."[3] The fact that Dr. Herzstein has not been identified as an expert in any separate BELO lawsuit means that her deposition is not authorized under Rule 26(b)(4)(A). "[T]he plaintiffs are not entitled to any discovery of experts not expected to testify at trial."[4]

Rule 26 provides only two narrow exceptions for allowing the deposition of an expert who is not expected to be called as a witness for trial. Neither applies here. The first exception is for experts who have performed medical examinations pursuant to Rule 35, which Dr. Herzstein has not done.[5] The second exception applies only "on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the

---

1 Falcon Opp. at 8; Downs Opp. at 6.

2 Fed. R. Civ. P. 26(b)(4) (A) (emphasis added).

3 Order at 3, Rec. Doc. 14479, No. 2:10-md-2179 (E.D. La. Apr. 27, 2015).

4 *See In re Shell Oil Refinery*, 132 F.R.D. 437, 439 (E.D. La. 1990), *clarified*, 134 F.R.D. 148 (E.D. La 1990) (barring deposition of defense experts who were not designated to testify even though defendants had produced those experts' preliminary reports to plaintiffs).

5 Fed. R. Civ. P. 26(b)(4)(D)(i).

same subject by other means."[6] "A party seeking to show exceptional circumstances . . . carries a heavy burden."[7] "The exceptional circumstances requirement has been interpreted by the courts to mean an inability to obtain equivalent information from other sources."[8]

*Estate of Mansfield v. United States*, 240 F.R.D. 229 (E.D. La. 2006), cited by plaintiffs, is instructive. In that case, the defendant identified two expert witnesses to testify at trial but then later re-designated them as non-testifying witnesses.[9] Plaintiffs nonetheless sought to depose the experts, arguing that they had been designating as testifying experts for the majority of the litigation and re-designated only after the fact discovery deadline had expired.[10] The Court granted defendant's motion for a protective order. The Court ruled that plaintiffs were not entitled to depose experts who would not testify at trial and did not produce expert reports in the case.[11] The Court also noted that plaintiffs had been able to retain at least three experts who were able to provide opinions on the same subject matter.[12] The Court discussed examples of "exceptional circumstances" that are not present here, such as when a non-testifying expert's

---

6 Fed. R. Civ. P. 26(b)(4)(D)(ii).

7 *Kiser v. Gen. Motors Corp.*, No. 98-3669, 2000 WL 1006239, at *3 (E.D. La. July 19, 2000) (citing to relevant subsection of Rule 26 prior to renumbering) (prohibiting deposition of defense experts who were not expected to testify); *accord In re Shell Oil Refinery*, 132 F.R.D. at 442-43.

8 *Kiser*, 2000 WL 1006239, at *3 (citation omitted).

9 240 F.R.D. at 230.

10 *Id.* at 233.

11 *Id.* at 237-38. The "'exceptional circumstances' test does not apply when a testifying expert witness designation has been withdrawn and a witness is redesignated as a non-testifying expert." *Id.* at 233 (describing holding in *House v. Combined Ins. of Am.*, 168 F.R.D. 236 (N.D. Iowa 1996)).

12 *Estate of Mansfield*, 240 F.R.D. at 231.

report has been used as the basis for a testifying expert's opinion, or when there has been substantial collaborative work between a testifying expert and a non-testifying expert.[13]

Plaintiffs cannot make a showing that Dr. Herzstein's deposition is the only means by which they can obtain evidence relevant to the issue of general causation, which they argue will be the subject matter of her testimony.[14] To date, plaintiffs represented by Downs and Falcon have designated their own experts on issues of general causation in at least 30 BELO lawsuits. For example, in the Northern District of Florida, Judge Rodgers identified a group of bellwether BELO plaintiffs alleging chronic conditions of the type listed in the MSA's SPC Matrix.[15] She conducted an initial seven-month phased process devoted solely to the question of whether general causation could be established in those bellwether cases.[16] Plaintiffs represented by Downs and Falcon designated an expert witness who prepared separate 80-page and 63-page, single-spaced "General Causation Reports," respectively.[17] Expert depositions were conducted, and summary judgment on the issue of general causation was briefed, argued, and submitted to the Court. Downs and Falcon never sought to depose Dr. Herzstein during the general causation

---

13 *Id.* at 238. Another case cited by plaintiff is distinguishable. In *Commerce & Indus. Ins. Co. v. Grinnell Corp.*, Nos. 97-0775 & 97-0803, 1999 WL 731410 (E.D. La. Sep. 20, 1999), the Court denied defendant's motion to quash a deposition of its expert after defendant was granted summary judgment. The Court reasoned that the defendant had already submitted the expert's report and identified the expert on its witness list. The summary judgment order had not been designated as a final judgment, and the defendant never re-designated the expert as non-testifying. *See id.* at *1-2. Thus, the defendant could still call the expert at trial if the Court were to revise the summary judgment order.

14 *See* Downs Opp. at 5; Falcon Opp. at 5.

15 *See* Order, Rec. Doc. 3, *In re Deepwater Horizon BELO Cases*, No. 3:19-cv-00963 (N.D. Fla. Apr. 30, 2019).

16 Order at 4, Rec. Doc. 52, *In re Deepwater Horizon BELO Cases*, No. 3:19-cv-963 (N.D. Fla. Dec. 12, 2019).

17 The BP Parties submitted the reports of five expert witnesses on general causation issues. Dr. Herzstein was not designated as an expert or otherwise involved in preparing those reports.

phase nor argued that her testimony was the only source of evidence on general causation. Their ability to offer expert testimony in the bellwether proceeding and in other BELO lawsuits demonstrates that they cannot make a showing of "exceptional circumstances" that permits them to obtain testimony from Dr. Herzstein.[18]

## II. Plaintiffs' Arguments Ignore Prior Court Orders in BELO Lawsuits.

Despite their assertions to the contrary, Plaintiffs are attempting to circumvent Court orders holding that the MSA and the SPC Matrix do not establish causation in BELO lawsuits.[19] They admit that the discovery they seek is "to determine if general causation has been, or may be, established" for conditions that are listed in the SPC Matrix.[20] They assert that the BP Parties cannot dispute general causation in BELO lawsuits when "the alleged later diagnosed condition is the same as one of the conditions listed in the Matrix."[21] They contend that the MSA reflected an "expert scientific consensus" on general causation.[22] And, remarkably, they contend that the MSA relieved them of the need to prove general causation by continuing to cite a comment made by this Court at the fairness hearing, even after the Court specifically stated that the comment was *not* intended to indicate a finding of general causation.[23]

---

18 *See In re Shell Oil Refinery*, 132 F.R.D. at 443 (Plaintiffs did not show exceptional circumstances because their own experts were able to conduct tests and offer opinions).

19 Falcon Opp. at 4-5; Downs Opp. at 6-7.

20 Falcon Opp. at 7.

21 Falcon Opp. at 6.

22 Falcon Opp. at 7; *see* Downs Opp. at 8.

23 Falcon Opp. at 7 & n.25*; see* Tr. of Show Cause Hearing at 7-8, 2:10-md-2719 (E.D. La. Nov. 20, 2019) (Court clarified that statement at fairness hearing did not indicate that the Court had decided issue of general causation); *see also* Order at 9, Rec. Doc. 52, *In re Deepwater Horizon BELO Cases*, No. 3:19-cv-963 (N.D. Fla. Dec. 12, 2019) ("Significantly, Judge Barbier

These are *precisely* the arguments addressed by Judge Rodgers when she denied Downs' "Motion to Enforce the Terms of MDL's Settlement Agreement on the Issue of General Causation."[24] Judge Rodgers found that "[a]lthough the Matrix was formed in consultation with experts . . . its purpose and scope were limited."[25] "[T]he Matrix was a tool of settlement only," and "nothing in the Settlement Agreement indicates that BP stipulated to a finding of general causation for anything other than this limited settlement framework, and nothing in the Settlement Agreement otherwise establishes general causation for these claimants."[26] She concluded that "[t]he Matrix does not apply to BELO cases and did not establish general causation for use in BELO litigation regardless of when the condition manifested."[27]

Plaintiffs argue that this motion is distinguishable because it involves only a discovery issue. But that argument misses the point. Plaintiffs claim that the discovery they seek concerns "whether the science that forms the foundation of the Matrix also establishes general causation."[28] Judge Rodgers and this Court have held that the Matrix cannot be used to establish general causation in BELO lawsuits. Accordingly, discovery concerning that issue cannot be "relevant to any party's claim or defense" as required by Rule 26(b)(1).

---

has recently clarified on the record during a show cause hearing on November 20, 2019, that he in fact made no ruling on general causation during the Fairness Hearing.").

24 Order, Rec. Doc. 52 (Dec. 12, 2019), denying motion at Rec. Doc. 37 (Nov. 4, 2019), *In re Deepwater Horizon BELO Cases*, No. 3:19-cv-963 (N.D. Fla.).

25 *Id.* at 7.

26 *Id.*

27 *Id.* at 10. This Court ruled similarly on a motion that argued that the SPC Matrix lessened plaintiffs' burden of proof in BELO lawsuits. Order at 2-3, Rec. Doc. 24218, No. 2:10-md-2179 (Mar. 16, 2018); *see* Mem. in Support of BP Parties' Mot. for Protective Order ("BP Mem."), Rec. Doc. 26547-2, at 9-10.

28 Falcon Opp. at 5.

Downs also claims that Judge Rodgers refused to consider Dr. Herzstein's declarations on summary judgment, which Downs argues indicates a need for deposition testimony.[29] In truth, Judge Rodgers had multiple reasons for finding that evidence to be immaterial. Judge Rodgers noted that she had previously considered those declarations when she denied Downs' "Motion to Enforce the Terms of MDL's Settlement Agreement on the Issue of General Causation."[30] In that ruling, Judge Rodgers found that the MSA did not establish general causation in BELO lawsuits.[31] She further observed that the expert declarations submitted in the MSA approval proceedings did not address the general causation issue in the BELO lawsuits before her, namely, whether the alleged exposure was of sufficient dose to establish general causation.[32] She also noted that plaintiffs had not attempted to make Dr. Herzstein's declarations part of the summary judgment record and could not add them to the record during the hearing.[33]

## III. The MSA Does Not Permit Dr. Herzstein's Deposition.

Plaintiffs wrongly argue that the MSA permits Dr. Herzstein's deposition.[34] First, the MSA prohibits the MSA or "any *statements* or negotiations made in connection with" the MSA from being offered or admitted into evidence in any lawsuit except for the purpose of enforcing

---

29 Downs Opp. at 10 & n. 25.

30 *See* BP Mem. at 10-11; Downs Opp. Ex. 2 (Tr. at 55-57).

31 Downs Opp. Ex. 2 (Tr. at 55-57).

32 *Id*.

33 Downs' Opposition also contains an inaccurate description of the MSA negotiation history relating to the defined term "Later-Manifested Physical Condition." *See* Downs Opp. at 3-4. This portion of Downs' brief is little more than an expression of plaintiffs' continued disagreement with this Court's 2014 rulings concerning the distinction between remedies for LMPC and SPC claims. The BP Parties dispute Downs' version of events, but will not respond in detail as they are immaterial to the issue presented by this motion.

34 Falcon Opp. at 5.

the MSA.[35] Dr. Herzstein's declarations were statements that were submitted in the MSA approval proceedings. If her declarations are inadmissible, then testimony concerning those declarations that is sought by plaintiffs should likewise be inadmissible.[36]

Second, the MSA's BELO provisions limit discovery to matters "relevant to any issue that may be litigated at trial."[37] As described above, Courts have held that the MSA and SPC Matrix are not relevant to the proof of BELO claims. Consequently, Dr. Herzstein's testimony concerning those topics is also not relevant.

## IV. Dr. Herzstein's Deposition Would Impose an Undue Burden and is Not Proportional to the Needs of the Case.

Plaintiffs fail to address the reasons why Dr. Herzstein's deposition would impose a significant burden on her and be disproportional to the needs of the BELO lawsuits. Plaintiffs are seeking expert testimony from Dr. Herzstein involving medical literature and scientific evidence on general causation issues.[38] But Dr. Herzstein has not been involved in the MDL proceedings for nearly six years, and she has never been designated as an expert in any BELO lawsuit. Her professional employment and workload have reportedly changed since she submitted her declarations in 2012. She is currently engaged in a demanding, on-call capacity providing COVID-related medical consultation to a multi-national corporation and its employees. The burden on Dr. Herzstein is not alleviated by simply compensating her for her time, as plaintiffs suggest. Rather, Dr. Herzstein would suffer undue burden if she was pulled

---

35 MSA § XXIV.B (emphasis added).

36 *See* Downs Opp. at 1, 10 (seeking Dr. Herzstein's testimony as an alternate means to offer the statements in her declarations).

37 MSA § VIII.G.5.

38 *See* Downs Opp. at 6.

away from her current medical responsibilities and required to study a subject with which she has had no involvement in years. This would all be so that she could be deposed in BELO lawsuits in which she has not been designated as a testifying expert, and in furtherance of plaintiffs' argument concerning the SPC Matrix that has been held to be irrelevant in BELO lawsuits.

## V. Plaintiffs' Requested Discovery Is Contrary to Federal Policy Favoring Class Action Settlements.

Plaintiffs' discovery request is also contrary to federal policy encouraging parties to settle class action lawsuits. The "exclusion of settlement evidence furthers public policy by promoting the voluntary settlement of disputes, which would be discouraged if evidence of compromise were later used in court."[39] "The public interest in amicable resolution of cases is particularly strong in the context of mass tort and similar litigation."[40] The Fifth Circuit recognizes the "strong judicial policy favoring the resolution of disputes through settlement" in class actions,[41] as do other circuit courts.[42] This Court also was cognizant of the "general federal policy favoring the settlement of class actions" in approving the MSA.[43]

Courts have excluded evidence concerning class action settlements in subsequent lawsuits. For example, In *Lohn v. Morgan Stanley DW, Inc.*, the court excluded as unduly

---

39 *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 294–95 (5th Cir. 2010).

40 *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 145 (E.D. La. 2013) (internal quotation marks and alteration omitted).

41 *Smith v. Crystian*, 91 F. App'x 952, 955 (5th Cir. Mar. 16, 2004); *see Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

42 *See, e.g.*, *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129 (2d Cir. 2001); *In re Exxon Valdez,* 229 F.3d 790, 795 (9th Cir. 2000); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995).

43 *In re Oil Spill*, 295 F.R.D. at 145.

prejudicial class action pleadings and documents, including settlement papers, in a lawsuit brought by an opt-out plaintiff.[44] In *Payne v. General Motors Corp.*, the Tenth Circuit affirmed exclusion of a class action settlement because its questionable relevance was outweighed by possible unfairly prejudicial effect.[45]

Plaintiffs seek testimony relating to Dr. Herzstein's declarations that were submitted solely as part of the MSA settlement approval proceedings. Allowing this discovery would create a disincentive to defendants considering settlement of class actions. It would indicate that defendants' submissions made in support of class settlements can be used as evidence against them in future lawsuits. This is contrary to the MSA's prohibition on the use of statements relating to the settlement and to federal policy that encourages class action settlements.[46]

## CONCLUSION

For the reasons stated, the Court should enter a protective order precluding the deposition of Dr. Herzstein.

---

44 652 F. Supp. 2d 812, 826–27 (S.D. Tex. 2009).

45 943 F.2d 57 (Table) (10th Cir. 1991).

46 Plaintiffs also wrongly claim that allowing the deposition of Dr. Herzstein comports with the "overriding policy consideration of 'Scaling Up.'" Downs Opp. at 8. But using expert declarations from the class action *settlement* process has nothing to do with "scaling up." As Plaintiffs' own authorities demonstrate, the benefit of "scaling up" arises from the consolidation of cases in an MDL and the entry of case management orders "early in the litigation." *See* Judge Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2330 (2008) (cited in Downs Opp. at 2 n.3); Issue Identification and Development, Ann. Manual Complex Lit. § 22.634 (4th ed.) (cited in Downs Opp. at 8 n.20).

Date: July 15, 2020

Respectfully submitted,

*/s/ R. Keith Jarrett*
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108s

*/s/ Kevin M. Hodges*
Kevin M. Hodges
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Telefax: (202) 434-5029

*/s/ Catherine Pyune McEldowney*
Catherine Pyune McEldowney
MARON MARVEL BRADLEY
ANDERSON & TARDY LLC
1201 North Market Street, Suite 900
Wilmington, DE 19801
Telephone: (302) 425-5177
Telefax: (302) 425-0180

*/s/ Georgia L. Lucier*
Georgia L. Lucier
HUNTON ANDREWS KURTH LLP
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone: (713) 220-4200
Telefax: (713) 220-4285

***ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC. AND BP AMERICA PRODUCTION COMPANY***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 15th day of July 2020.

/s/ R. Keith Jarrett
R. Keith Jarrett