## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * | MDL 2179 |
| | | SECTION: J(2) |
| Applies to: BELO Cases | * * | JUDGE BARBIER |
| | * | MAG. JUDGE CURRAULT |
| | * | |

### ORDER & REASONS

Before the Court is BP's Motion for Protective Order (Rec. Doc. 26547), along with responses by the Downs Law Group and the Falcon Law Firm (together, "Downs") (Rec. Docs. 26580, 26581), BP's reply (Rec. Doc. 26586), and Downs's sur-reply (Rec. Doc. 26592). The motion seeks a protective order to prevent BELO plaintiffs from deposing Dr. Jessica Herzstein, an expert retained by BP in 2012 in connection with its effort to obtain Court approval of the *Deepwater Horizon* Medical Benefits Class Action Settlement Agreement ("Medical Settlement" or simply "Settlement," Rec. Doc. 6427). The Court grants the motion for the reasons set forth below.

### I.

On April 20, 2010, a blowout, explosions, and fire occurred aboard the DEEPWATER HORIZON drilling rig as it was preparing to temporarily abandon a well, known as Macondo, it had drilled approximately 50 miles off the coast of Louisiana. These events resulted in, inter alia, a massive oil spill in the Gulf of Mexico. On August 10, 2010, the Judicial Panel on Multidistrict Litigation created Multidistrict Litigation No. 2179 ("MDL 2179") pursuant to 28 U.S.C. § 1407, and

assigned it to this Court. (Rec. Doc. 1). Nearly all federal cases arising from the DEEPWATER HORIZON/Macondo Well casualty have been consolidated with MDL 2179.

The Medical Settlement is one of several class action settlements to have emerged from the MDL. It sought to resolve chemical exposure claims by those who lived near the Gulf or worked on the oil spill response. The Settlement—a product of ten months of negotiations between BP (the primary defendant in MDL 2179) and the Plaintiffs' Steering Committee ("PSC")—was filed with the Court in April 2012. The PSC simultaneously filed a new class action lawsuit, which was consolidated with MDL 2179, to serve as the procedural vehicle for the Medical Settlement. (*See* No. 12-968, *Plaisance, et al. v. BP Exploration & Production Inc., et al*). Because it purported to settle a class action, the Medical Settlement required court approval. *See* Fed. R. Civ. P. 23(e). Consequently, BP retained several experts, including Dr. Herzstein,[1] who submitted declarations in support of Settlement approval. Dr. Herzstein executed two declarations: one on August 12, 2012 and another on October 22, 2012. Both were filed publicly in the MDL record. (Rec. Docs. 7112-7, 7732-1). The Court held a fairness hearing in November 2012 and granted final approval in January 2013. The Final Approval Order cites extensively to Dr. Herzstein's declarations. (*See* Rec. Doc. 8218).

The Medical Settlement established two separate procedures by which class members could seek compensation for physical conditions alleged to have been caused

---

[1] Dr. Herzstein is an occupational and environmental physician.

by exposure to chemicals from the oil spill and/or the response. Certain conditions that were diagnosed on or before April 16, 2012 are compensated pursuant to the Specified Physical Conditions ("SPC") Matrix. The SPC Matrix sets forth the conditions that are eligible for compensation, the required proof that the class member must submit, and the available compensation amounts. (Medical Settlement § VI.A & Ex. 8). The Settlement's Claims Administrator determines whether the class member has demonstrated eligibility for SPC compensation and makes an award from dedicated funds established pursuant to the MSA.

Conditions diagnosed after April 16, 2012, which the Settlement refers to as "Later-Manifested Physical Conditions" or "LMPCs," are not compensated under the SPC Matrix. Instead, LMPCs must be pursued via the Settlement's Back-End Litigation Option ("BELO"). (Medical Settlement § VIII; *see also* Order of Mar. 16, 2018 at 2-3, Rec. Doc. 24218). The BELO provisions ultimately require that a class member file a new, individual lawsuit against BP. The Court has previously explained that "'[t]he BELO lawsuit is essentially a new action, separate from the class action.'" (Order of Mar. 16, 2018 at 3, Rec. Doc. 24218 (quoting Order of Apr. 27, 2015 at 3, Rec. Doc. 14479)). The BELO plaintiff must file his or her complaint in this Court. After a mandatory initial disclosure process, each BELO case is either transferred to another venue or allotted to one of the judges on this Court for further proceedings and possibly trial. (*See* BELO Cases Initial Proceedings Case Management Order Nos. 1 & 2, Rec. Docs. 14099, 25738). To date, around 4,700 BELO cases have been filed. However, the Court understands that fewer than 1,000 of these remain pending across all federal districts.

## II.

Downs is a law firm that represents a significant number of BELO plaintiffs. Downs recently informed BP that it intends to depose Dr. Herzstein, which prompted BP to file the instant motion. Downs contends that Dr. Herzstein's testimony is relevant to the issue of general causation.[2] Downs argues:

> Basically, Dr. Herzstein in her [August 2012 declaration] acknowledges that the state of the science and medical literature is that certain chronic ocular, respiratory, and dermal conditions can be caused by exposure to oil and/or oil-based dispersants. If such evidence is allowed to be developed, then this evidence is expected to be relevant to the issue of general causation in a small number of cases where the plaintiff has alleged that they suffer from one of the three (3) chronic conditions listed in Dr. Herzstein's [August 2012 declaration] (ocular, respiratory, and dermal) and can satisfy all of the condition[s] precedent[ ] contained in the SPC Matrix . . . .

(Rec. Doc. 26580 at 6).

BP avers that it has not designated Dr. Herzstein as an expert in any BELO case, Dr. Herzstein has not examined any BELO plaintiff, BP has no intention to call Dr. Herzstein to testify at a BELO trial, and Dr. Herzstein's involvement with MDL 2179 ended six years ago. Therefore, BP contends that Fed. R. Civ. P. 26(b)(4)(D) prohibits Downs from deposing Dr. Herzstein unless it can show certain "exceptional circumstances" exist.

---

[2] "[P]laintiffs in BELO cases must prove that their illness was legally caused by exposure to chemicals from the oil spill or the response. Furthermore, this proof must be accomplished through expert testimony." *Torres v. BP Expl. & Prod. Inc.*, No. 18-12652, 2020 WL 2197919, at *1 (E.D. La. May 6, 2020) (collecting cases; footnotes omitted); *see also* Medical Settlement § VIII.G.3.iv & v. In toxic tort cases, "general causation" refers to whether a substance is capable of causing a particular injury or condition in the general population; "specific causation" is whether a substance caused a particular individual's injury. *See Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007).

## III.

Rule 26(b)(4) addresses the deposition of a party's expert in two contexts: "Expert Who May Testify" and "Expert Employed Only for Trial Preparation." Regarding the former, subdivision (b)(4)(A) states:

> A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

Fed. R. Civ. P. 26(b)(4)(A). As to the latter, subdivision (b)(4)(D) states:

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
> (i) as provided in Rule 35(b); or
> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(D). The question, then, is which subdivision applies to Dr. Herzstein. The Advisory Committee Notes ("Notes") to Rule 26 point to an answer.

The Notes explain the reasoning behind the differing treatment for testifying and non-testifying experts. Subdivision (b)(4)(A) permits a party to depose an adversary's testifying expert because "[e]ffective cross-examination of an expert witness requires advance preparation." Fed. R. Civ. P. 26, Notes, 1970 Amendment, Subdivision (b)(4). If this was not allowed, "then the narrowing of issues and elimination of surprise [at trial] which discovery normally produces are frustrated." *Id.* However, due to "the fear that one side will benefit unduly from the other's better preparation," the deposition sanctioned under subdivision (b)(4)(A) is limited to

experts who will testify at trial. *Id.* "A party must as a practical matter prepare his own case in advance of that time, ***for he can hardly hope to build his case out of his opponent's experts***." *Id.* (emphasis added). Accordingly, subdivision (b)(4)(D) allows a party to depose an expert who has been retained or specially employed by the party in anticipation of litigation or preparation for trial, but who is not expected to be called as a witness, only on a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means. *Id.*[3]

Because Dr. Herzstein will not testify in any BELO case, there is no need for Downs to prepare to cross-examine her. Furthermore, the fact that Downs wishes to depose Dr. Herzstein so that it may develop evidence regarding general causation—an element that is Downs's burden to prove, *see supra* note 2—shows that Downs is attempting "to build his case out of his opponent's experts." These facts indicate that subdivision (b)(4)(D), rather than subdivision (b)(4)(A), applies here.

The caselaw confirms this conclusion. *In re Agent Orange Product Liability Litigation*, 105 F.R.D. 577 (E.D.N.Y. 1985), arose from an MDL where the defendant's medical experts examined certain plaintiffs in a class action that was consolidated with the MDL. Plaintiffs who opted out of the class and filed their own cases, which were also consolidated with the MDL, sought to depose defendant's experts. Like Dr. Herzstein, the defendant's experts were not listed as witnesses in the opt-out cases,

---

[3] The Notes address two other scenarios, neither of which applies here: experts who were informally consulted (discovery is precluded) and experts whose information was acquired because she was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit (expert should be treated as an ordinary fact witness). *Id.*

had never examined the opt-out plaintiffs, and had not consulted with the defendant about the opt-out plaintiffs. The court held that the plaintiffs could only depose the experts if they could meet Rule 26(b)(4)(D)'s "exceptional circumstances" standard. *Id.* at 580.

*Polum v. North Dakota District Court*, 450 N.W.2d 761 (N.D. 1990), concerned a boating accident that generated two cases by the same plaintiff for the same injury against different defendants. In the first case, the plaintiff brought medical malpractice claims against the doctors who treated his injuries. The plaintiff retained a physician to render an expert opinion on malpractice and designated him as an expert witness to be called at trial. The malpractice defendants deposed the expert, and then the case settled. In the second case, the plaintiff sued the operator of the boat. The boat operator, believing the doctors were the sole or superseding cause of the plaintiff's injuries, sought to depose the plaintiff's expert from the malpractice case. The court held that "an expert retained in anticipation of prior litigation which is closely related legally and factually to the present litigation is covered by Rule 26(b)(4)(B), N.D.R.Civ.P.," which is identical to Fed. R. Civ. P. 26(b)(4)(D). *Id.* at 765. Like here, the court found support for its conclusion in the Notes to Federal Rule 26, commenting, "If we were to construe Rule 26(b)(4)[D] to not apply to [the plaintiff's] expert, we would allow [the boat operator] to prove his main defense primarily with evidence developed through [the plaintiff's] financial resources, diligence, and preparation. Such a result could hardly be labeled fair." *Id.* at 766.

Finally, *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.,* 175 F.R.D. 34 (S.D.N.Y. 1997), concerned two cases that were consolidated for pretrial purposes

but would be tried separately. A party designated an expert as a testifying witness in one case, but not the other. The court held that because the parties in the latter case had no interest in preparing to cross-examine the expert at trial, whether they could depose the expert was determined by subdivision (b)(4)(D), not (b)(4)(A). *Id.* at 44.

Each of the above cases held that the fact that an expert was a testifying expert in one case did not mean that the expert would also be treated as a testifying expert in a related but separate case. Similarly, while Dr. Herzstein arguably "testified" in No. 12-968 (the class action that served as the vehicle for the Medical Settlement), BP has not designated her to testify in any BELO case (which, as noted above, are essentially new actions, separate from the class action). Consequently, Fed. R. Civ. P. 26(b)(4)(D) applies here.

In order to depose Dr. Herzstein, Downs must show there are "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D). Downs does not attempt to argue such circumstances exist. The cases the Court has encountered indicate that Downs could not meet this burden. *See, e.g.*, *In re Agent Orange*, 105 F.R.D. at 581 ("Plaintiffs seek Dr. Taylor's testimony on the causal relationship between exposure and chloracne. Disclosure is denied. Plaintiffs have not shown a practical inability to obtain facts and opinions on this subject by other means. There is extensive literature on this subject."); *Polum*, 450 N.W.2d at 766 ("There is no suggestion that Polum's expert is the only expert qualified to give an opinion on this subject matter, or that he possesses extraordinary qualifications rendering his opinion more valuable than any other expert's opinion. Wulff obviously can obtain

another medical expert to render an opinion on the same subject.*"); Kiser v. Gen.* *Motors Corp.*, No. 98-3669, 2000 WL 1006239, at *3 (E.D. La. July 19, 2000) ("A party seeking to show exceptional circumstances under Rule 26(b)(4)[D], carries a heavy burden."). Additionally, BP states that Downs has designated its own experts on issues of general causation in at least 30 BELO lawsuits. (Rec. Doc. 26586, at 4). The Court finds that exceptional circumstances are not present.

In light of the above, the Court need not address the parties' other arguments about whether Dr. Herzstein's testimony would be "relevant" for purposes of Fed. R. Civ. P. 26(b)(1). Downs also argues that BP waived any privilege when it filed Dr. Herzstein's declarations in 2012. No one suggests the declarations are privileged, which have sat in the public record for eight years. The question here is whether Downs may depose its adversary's expert in cases where the expert will not testify. Accordingly, Downs' reliance on *In re Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 860 F.2d 844 (8th Cir. 1988), which held that a defendant waived any attorney work product privilege that may apply to a document it produced to opposing counsel, is inapposite.

Finally, the Court takes no position on whether this ruling is binding on or merely persuasive authority for any other court that must consider this issue in a BELO case. Such courts are free to give this decision whatever weight they believe it deserves. However, this ruling will certainly apply to all BELO cases allotted to this Court for trial.

**IV.**

Accordingly,

IT IS ORDERED that BP's Motion for Protective Order (Rec. Doc. 26547) is GRANTED.

IT IS FURTHER ORDERED that plaintiffs in BELO cases are precluded from deposing Dr. Jessica Herzstein.

New Orleans, Louisiana, this 27th day of July, 2020.

_____
United States District Judge

10