# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| Of Mexico, on April 20, 2010 | * | SECTION: J |
| | * | |
| Applies to: | * | JUDGE BARBIER |
| | * | |
| *Remaining Cases in the B3* | * | MAG. JUDGE CURRAULT |
| *Pleading Bundle* | * | |

## ORDER & REASONS

Before the Court is BP's Motion for Summary Judgment on B3[1] Claims Released Under the Medical Benefits Class Action Settlement Agreement. (Rec. Doc. 25914). For the reasons set forth below, the Court partially grants the motion and dismisses claims by four plaintiffs. The Court does not, however, dismiss claims by seven other plaintiffs that were also targeted by BP's motion.

### I. THE MEDICAL SETTLEMENT

In 2012, after months of negotiations, BP America Production Company and BP Exploration & Production Inc. (together, "BP") reached a class-wide settlement, the Medical Benefits Class Action Settlement Agreement ("Settlement," Rec. Doc. 6427), with many individuals allegedly injured by exposure to chemicals released from the Macondo Well and/or used to combat the oil spill. The Court preliminarily approved the Settlement on May 2, 2012. (Rec. Doc. 6419). Following a notice,

---

[1] "B3" refers to the B3 pleading bundle, one of several pleading bundles used to organize claims in this MDL. The B3 bundle includes all claims, of any type, relating to postexplosion clean-up efforts asserted against defendants not named in the B1 master complaint, as well as all claims for personal injury and/or medical monitoring for exposure or other injury occurring after the explosion and fire of April 20, 2010. (Pretrial Order No. 25, Rec. Doc. 983).

objection, and opt-out period, the Court certified the Medical Benefits Settlement Class and approved the Settlement on January 11, 2013. (Rec. Docs. 8218; 8217).

The class is defined in relevant part as all natural persons who "[w]orked as CLEAN-UP WORKERS at any time between April 20, 2010 and April 16, 2012." (Settlement § I.A).[2] The Settlement defines "Clean-Up Workers" as:

> all NATURAL PERSONS who performed RESPONSE ACTIVITIES, including:
>
> 1. Captains, crew, and other workers employed under the Vessels of Opportunity ("VoO") program who performed RESPONSE ACTIVITIES;
>
> 2. Workers employed to perform the decontamination of vessels involved in RESPONSE ACTIVITIES;
>
> 3. Captains, crew, and other workers on vessels other than VoO who performed RESPONSE ACTIVITIES;
>
> 4. Onshore personnel employed to perform RESPONSE ACTIVITIES; and
>
> 5. Persons involved in the recovery, transport, and decontamination of wildlife affected by the *DEEPWATER HORIZON* INCIDENT.

(Settlement § II.Q). Furthermore, "Response Activities" is defined as:

> the clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances that were done under the auspices of the Unified Command, BP, or a federal, state, or local authority.

(Settlement § II.OOOO).

Class members who did not want to be bound by the terms of the Settlement

---

[2] The class also includes persons who resided in certain areas along the coast in 2010. This part of the class definition is not at issue.

2

could exclude themselves by mailing an opt-out request to the Claims Administrator by November 1, 2012. (Rec. Doc. 7176). The opt-out needed to be in writing; state "I wish to exclude myself from the Medical Benefits Settlement Class" or use substantially similar clear and unambiguous language; contain the class member's printed name, address, phone number, and date of birth, and a copy of his or her driver's license or other government-issued identification; and be signed by hand by the class member "or, where applicable, by his or her AUTHORIZED REPRESENTATIVE." (Settlement § XI.E; *see also* Preliminary Approval Order at 26, Rec. Doc. 6419). Class members who did not opt out of the Settlement were barred from commencing, asserting, and/or prosecuting any and all "Released Claims" against any "Released Party," as those terms are defined in the Settlement. (*See* Order and Judgment, Rec. Doc. 8218; Settlement § XVI). Indeed, the Court has previously dismissed claims that were released by the Settlement. (*See, e.g.*, PTO 66 Compliance Order at 7-14, Rec. Doc. 25356; Order of June 10, 2015, Rec. Doc. 14709, *aff'd sub nom. In re Deepwater Horizon*, 819 F.3d 190 (5th Cir. 2016)).

## II.   BP'S MOTION FOR SUMMARY JUDGMENT

In accordance with the Court's instruction (Rec. Doc. 25858), BP filed a motion for summary judgment against eleven plaintiffs[3] it believes are class members and whose claims were released by the Settlement. (Rec. Doc. 25914). BP's motion is based in part on plaintiffs' Particularized Statements of Claim ("PSOC"), which were provided in 2018 pursuant to the Pretrial Order No. 66 ("PTO 66") process. (*See* PTO

---

[3] BP's motion actually targets twelve plaintiffs. However, the Court has ruled that the motion is moot with respect to the twelfth plaintiff, Clay Whittinghill. (*See* Rec. Doc. 26002).

3

66, Rec. Doc. 24282; *see also* PTO 66 Compliance Order, Rec. Doc. 25356). The PSOC required the plaintiff to provide information regarding, among other things, whether the plaintiff performed oil spill cleanup work, the nature of the cleanup work, the circumstances of the plaintiff's exposure to chemicals, and the nature of the plaintiff's claimed injuries. The PSOC included an attestation where the plaintiff declared under penalty of perjury that the responses to the PSOC were true and correct.

BP's motion also relies upon a 2018 report from the Settlement's Claims Administrator provided to the Court, BP, and the Plaintiffs' Steering Committee ("GRG Report"). The GRG Report lists the remaining plaintiffs in the B3 bundle for whom the Claims Administrator did not have a valid and timely opt-out request.[4] The plaintiffs targeted by BP's motion are listed in the GRG Report.

Ten of the eleven plaintiffs filed responses to BP's motion.[5]

### III.  DISCUSSION

#### A.  Ricky Robin, Jr. (No. 17-03383)[6]

Robin's attorneys filed a response stating that Robin initially opted out of the Settlement but later revoked his opt out. (Rec. Doc. 25949). Robin's attorneys state they have been unable to communicate with Robin, and they do not oppose BP's motion. The Court will dismiss Robin's claim.

---

[4] The Court previously discussed the GRG Report in the January 31, 2019 PTO 66 Compliance Order. (Rec. Doc. 25356 at 7-13 & Ex. 1).

[5] *See* Rec. Docs. 25958 (Craig Burkett), 25980 (Guy Wallace), 25955 (Christopher Green) 25979 (Thomas Bodiford, Joseph Bruton, Lillie Coleman, Jordan Dixey, Ervin Pough, Nakia Scott), 25949 (Ricky Robin, Jr.).

[6] The Court dismissed Robin's case in 2017 for failure to comply with another pretrial order, and the Clerk of Court marked his case as "closed" at that time. (Rec. Doc. 23047). The Court subsequently granted Robin's motion for reconsideration and revived his case. (Rec. Doc. 23725). Nevertheless, Robin's case continued to be listed as "closed" on the docket.

### B. Tiffany Lee (No. 16-13874)

Lee did not file a response to BP's motion. Lee stated in her PSOC that she

> was sent to the Gulf in order to train hydrographic crews who were mobilized by the president to perform response activities. While operating and handling the hydrographic survey equipment on the boat, Mrs. Lee was exposed to oil and dispersants carried from the explosion site, and to contaminated waters. . . . Mrs. Lee also had respiratory exposure to the chemicals in the air.

(Rec. Doc. 25914-29 at 8). According to the GRG Report, Lee did not opt out of the Settlement. Accordingly, there is no material dispute that Lee is a class member and her claim was released by the Settlement. The Court will dismiss Lee's claim.

### C. Craig Burkett (No. 17-03681)

Burkett, who is pro se, does not dispute that he is a class member whose personal injury claim was released by the Settlement. (Rec. Doc. 25958). Instead, Burkett argues that he was not given proper notice that he needed to opt out of the Settlement. However, Burkett admits that notice was sent to the law firm that represented his Vessel of Opportunity claim (although Burkett points out that the firm did not represent his personal injury claim). Thus, Burkett "had actual notice through his counsel, which satisfies due process." *In re Deepwater Horizon*, 819 F.3d at 199. Furthermore, the Court has determined that the Settlement's notice satisfied the requirements of Due Process, Rule 23, and the Class Action Fairness Act. (Rec. Doc. 8217 at 70-71). The Court will dismiss Burkett's claim.

### D. Thomas Bodiford (No. 17-03341)

There is no dispute that Bodiford did not opt out of the Settlement. The issue is whether Bodiford was a class member, specifically a "Clean-Up Worker." BP argues

Bodiford is a class member because he checked "yes" on his PSOC in response to question no. 9, which asks, "Did BP, a government entity, or another company or entity hire you to perform cleanup work in response to the oil spill?" (Rec. Doc. 25914-19 at 4). However, Bodiford's PSOC further states that his job involved "working on the Nakika platform" and that he was "hired to assist in the reconstruction of the Nakika Platform." (*Id.* at 6, 16). Bodiford's response brief adds that his job "involved the construction of a pipe that was always going to be constructed, before the oil spill began." (Rec. Doc. 25979). The Court finds that there is a genuine dispute as to whether Bodiford performed "Response Activities." If he did not, then Bodiford does not meet the "Clean-Up Worker" definition. Accordingly, the Court will not dismiss Bodiford's claim at this time.

E. Lillie Coleman (No. 17-03130)

Like Bodiford, the issue with Coleman is whether she was a "Clean-Up Worker." BP points out that Coleman's PSOC states that she cleaned up "tar balls and oil-covered debris" from Alabama beaches. (Rec. Doc. 25914-27 at 6). However, Coleman's PSOC also states that she performed this work as a volunteer with her church. As mentioned above, a "Clean-Up Worker" is any person "who performed RESPONSE ACTIVITIES," defined as "the clean-up, remediation efforts, and all other responsive actions . . . relating to the release of oil . . . *done under the auspices of the Unified Command, BP, or a federal, state, or local authority*." (*Id.* § II.OOOO (emphasis added)). It is unclear if Coleman's work was done under the auspices of the Unified Command, BP, or a federal, state, or local authority. Accordingly, the Court

6

will not dismiss Coleman's claim at this time.[7]

### F. Jordan Dixey (No. 17-04321)

Like Bodiford and Coleman, the issue with Dixey is whether he was a "Clean-Up Worker." Dixey states in his PSOC that he was a pilot with the U.S. Naval Reserves and was exposed to harmful chemicals while flying over contaminated waters. (Rec. Doc. 25914-28 at 16). However, it is unclear if Dixey's work as a pilot constituted "Response Activities." Dixey attached an exhibit to his PSOC that contains some language that might lead one to conclude that Dixey performed "Response Activities." (*See id.* at 19). However, Dixey's response points out that this language appears in the "question" column of a spreadsheet that Dixey's attorney created and used for all of their clients, many of whom were Clean-Up Workers. Dixey's actual responses in the exhibit do not suggest that his flights were part of any "Response Activities." Furthermore, Dixey's response to BP's motion states, "Plaintiff was a military pilot and, as part of his regular training exercises, often flew over the Gulf during the summer of 2010—not at the direction of BP or as part of any remediation activities, but as part of military exercise." The Court finds there is at least a genuine dispute as to whether Dixey performed "Response Activities." The Court will not dismiss Dixey's claim at this time.

### G. Joseph Bruton (No. 17-03110)

There is no dispute that Bruton is a class member. There also appears to be no

---

[7] Coleman argues that the class definition requires that she be "employed" to perform beach cleanup, which does not include a volunteer like herself. (Rec. Doc. 25979 at 5-6). However, the Court does not read the class definition as being limited to those who are "employed" to perform cleanup work.

dispute that Bruton submitted a timely and valid opt-out.[8] However, the GRG Report indicates that Bruton subsequently revoked his opt-out. This is not clear, however, and the Court has not been provided with Bruton's revocation, if it exists. Bruton's response states only that he submitted an opt-out request; it makes no mention of a revocation. The Court will not dismiss Bruton's claim on the present record. The Court leaves open the possibility that Bruton revoked his opt-out.

### H. Nakia Scott (No. 17-03609)

Scott's situation appears to be identical to Bruton's. Accordingly, the Court will not dismiss Scott's claim on the present record, but leaves open the possibility that Scott may have revoked her opt-out.

### I. Guy Wallace (No. 17-01039), Ervin Pough (No. 17-04164), Christopher Green (No. 17-03191)

There is no dispute that Wallace, Pough, and Green are class members. There is also no dispute that they each submitted timely opt-outs. However, the Claims Administrator determined these requests were invalid because they were not signed by the class member. Instead, they were signed by a person purporting to have power of attorney. (*See* Decl. of Matthew Garretson of Nov. 21, 2012, Exhibit G, Rec. Doc. 7989)).

The Settlement states that an opt-out "must be signed by hand by the NATURAL PERSON seeking to exclude himself or herself from the [class] or, where applicable, his or her AUTHORIZED REPRESENTATIVE." (Settlement § XI.K; *see*

---

[8] Indeed, Bruton is identified in a list of timely and valid opt outs that the Claims Administrator filed in November 2021. (Rec. Doc. 7989).

8

*also* Preliminary Approval Order at 26, Rec. Doc. 6419). The Settlement further states, "AUTHORIZED REPRESENTATIVE shall mean, as to a NATURAL PERSON who is (1) a minor, (2) lacking capacity or incompetent, or (3) an estate of a deceased human being, that NATURAL PERSON'S guardian, conservator, tutor, executor, personal representative, administrator, or other representative authorized under or by operation of applicable law to protect the rights and interests of that NATURAL PERSON." (Settlement § II.G). In other words, the Settlement only permits an "Authorized Representative" to sign an opt-out when the class member is a minor, lacking capacity or incompetent, or deceased.

Based on their response briefs and attached exhibits, there is at least a genuine dispute as to whether Pough and Wallace met the "lacking capacity or incompetent" requirement when they submitted their opt-outs. (*See* Rec. Docs. 25979, 25980). If they did, then their opt-outs were likely valid. Green is different. An affidavit from his attorney states, "Because Mr. Green worked offshore and was often unavailable to sign documents and conduct other business related to his filed claim, he appointed his mother with General Power of Attorney." (Rec. Doc. 25955-2). Because Green was not a minor, did not lack capacity or was incompetent, and was alive, he was required to sign the opt-out himself. Therefore, there is no genuine dispute that Green's opt-out was invalid.

Accordingly, the Court will not dismiss Pough's and Wallace's claim at this time. However, the Court will dismiss Green's claim.

## IV. CONCLUSION

For the reasons above,

IT IS ORDERED that BP's Motion for Summary Judgment on B3 Claims Released Under the Medical Benefits Class Action Settlement Agreement (Rec. Doc. 25914) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that the claims by the following plaintiffs are RELEASED by the Medical Benefits Class Action Settlement Agreement and, therefore, DISMISSED WITH PREJUDICE:

| Plaintiff | Case No. |
| --- | --- |
| Ricky Robin, Jr. | 17-03383 |
| Tiffany Monicque Lee | 16-13874 |
| Craig M. Burkett | 17-03681 |
| Christopher Green | 17-03191 |

New Orleans, Louisiana, this 2nd day of September, 2020.

_____
United States District Judge

**Note to Clerk: File in 10-md-2179 and in the four cases dismissed by this Order. Mail a copy of this Order to Craig M. Burkett, who is pro se.**