UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG         "DEEPWATER HORIZON: in the GULF OF MEXICO, on APRIL 20, 2010 | *  *  | MDL NO. 10-2179  SECTION "J" |
| This Document Relates To: Civil Actions No.  17-3199 | * | JUDGE BARBIER |
| | * | MAG. JUDGE CURRAULT |

## PROPOSED LITIGATION PLAN BY LOUISIANA WORKERS' COMPENSATION CORPORATION

**NOW INTO COURT**, through undersigned counsel, comes Louisiana Workers' Compensation Corporation ("LWCC"), who respectfully submits the following proposed elements to the litigation plan:

1.

As the BP interests are well aware from previous filings, correspondence, emails and telephone conversations, Louisiana Workers' Compensation Corporation ("LWCC") is a workers' compensation insurer who paid multiple claims with respect to injuries resulting from the Deepwater Horizon explosion and fire and subsequent clean-up.  More particularly, LWCC has made payments to and on behalf of 89 workers injured during the clean-up operations, all of whom

have been identified to the BP interests. These workers worked for various employers retained by the BP interests to clean-up the oil spill damage. All of these workers' compensation claims have been concluded and LWCC has paid in excess of $4.2 million dollars to and on behalf of the various claimants. The claims of LWCC herein are made pursuant to Louisiana State Law LSA-R.S. 23:1101-1103, alternatively, under the Longshore and Harbor Workers' Compensation Act, specifically, 33 U.S.C. 933.

2.

Contrary to the disingenuous assertion in its Reply to Plaintiffs' PTO Show Cause Submissions (Rec. Doc. 26506 at p.8), before the release documents were even created, LWCC has expressed serious doubts that it could provide medical releases and histories for the various claimants to whom they paid compensation benefits. On August 6, 2019 undersigned counsel sent BP an email outlining, in detail, the difficulties that LWCC would have in providing executed medical release forms and in obtaining medical histories from individuals whom it did not represent. The email invited a conversation with BP on this issue, however, it was met with silence. Thereafter, undersigned counsel has suggested that because the claims of LWCC are unique from the other B3 claimants, the LWCC claims should be severed from the multi-district litigation and be pursued independently. This request has also received no direct response. Finally, it has been acknowledged by everyone that LWCC would have a difficult time obtaining medical release forms from parties it never represented in this litigation, but again, rather than attempt to achieve an appropriate solution, the BP interests have apparently chosen to pursue a path which it is presumed they hope will result in the administrative dismissal of LWCC's claims on technical procedural reasons.

3.

Considering the foregoing and the unique posture of LWCC in this litigation vis-à-vis the remaining B3 claimants, the most efficient and effective element of any litigation plan involving LWCC would begin with severing the LWCC claims from this litigation to be pursued independently, outside the MDL.

The Supplemental Medical Disclosure Form and Authorization for Release of Medical Records attached as Exhibits A & B to PTO 68, and likely any litigation plan designed to meet the needs of any individual claimant, are not targeted to an entity such as LWCC.  LWCC was not hired to perform clean-up work, rather it insured, for workers compensation liability, various other entities that were hired to perform clean-up work, and, as a result of those insurance policies, paid workers compensation benefits to injured workers for which LWCC is now exercising its statutory subrogation rights to recover the amounts it has paid from the responsible parties.  The entirety of the disclosure and release forms are inapplicable to LWCC.  For example, LWCC did not suffer bodily injury or receive medical treatment, rather it is subrogated to the claims of persons who did suffer bodily injury and did obtain medical treatment as a result of those injuries. As such, LWCC has provided the information it has concerning those injuries and resulting medical treatment, but even that information rarely included any extensive information about the injured workers medical history, and certainly does not include any medical treatment obtained after the worker's compensation claims were concluded.

4.

Considering the forgoing, LWCC proposes the following elements to a litigation plan involving its subrogation claims:

(1) Sever the claim of LWCC from the MDL litigation and allow that claim to proceed independently.

(2) As the remaining issues concern medical causation, and injury, and because the amount of damages claimed by LWCC is a sum certain, the BP interests should be required to disclose all information they have, including information provided to the Gulf Coast Claims Facility (GCCF) concerning the claimants who received benefits from LWCC, including all medical records and all information which would otherwise be disclosed pursuant to FRCP 26(a). It is believed that many, if not most, of the claimants to whom LWCC paid benefits also instituted individual claims against the BP interests. LWCC has already disclosed approximately 10,000 pages of claims payment reports, medical records and reports, and, where available, the first reports of injury, accident reports, including BP accident reports, wage records/time sheets; formal claims for compensation and/or petitions for damages filed by the claimants and any approved state or federal compensation settlement documents. To date, the BP interests have sent a few wage records and contracts and thousands upon thousands of pages marked "non-responsive". Before LWCC can begin to estimate the time required for discovery, it must be provided with full disclosures from the BP interests.

(3) Once the initial disclosures have been completed, many, if not most of the claims of LWCC for the 89 claimants who received benefits from LWCC will be ready for mediations or settlement conferences. It is suggested that the subrogation claims for the payments made to the 89 workers who received benefits from LWCC could be bundled into groups of 10-15 claims at a time for each mediation

session/settlement conference. LWCC believes that its claim can be amicably resolved.

(4) To the extent any discovery is needed, the discovery process could be expedited as none of the LWCC claims have any component of future damages. As previously mentioned, the LWCC claims concern previously paid medical and indemnity expenses, and the entirety of each LWCC can be set forth as a sum certain.

**WHEREFORE**, Louisiana Workers' Compensation Corporation prays that its claim be severed from the MDL litigation and/or that its suggested processes be included in any future CMO.

Respectfully submitted:

/s/ David K. Johnson
David K. Johnson, Bar Roll No. 1998
Johnson, Rahman & Thomas
2237 S. Acadian Thruway
Post Office Box 98001
Baton Rouge, Louisiana 70898-8001
Telephone: (225) 231-0755
Facsimile: (225) 231-0986
Email: djohnson@lwcc.com
Counsel for Louisiana Workers' Compensation Corporation

### **CERTIFICATE**

**I HEREBY CERTIFY** that on the 9th day of September, 2020, a copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all known counsel of record by operation of the Court's electronic filing system.

/s/ David K. Johnson
David K. Johnson