UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUSIAINA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, On April 20, 2010 | § § § § § | MDL 2179 SECTION J<br><br>Sub case No.<br>2:13-cv-01658-CJB-JCW |
| This Document Relates to | § § | JUDGE BARBIER |
| Allstar Pipe Services, Inc. | § § | |
| v. | § § | |
| BP Production & Production Inc., et al. | § | MAG. JUDGE WILKENSON |

**EXCLUDED NON-CLASS MEMBER ALLSTAR PIPE, INC.'S
RESPONSE TO THE COURT'S SHOW CAUSE ORDER**

Excluded Non-Class Member Allstar Pipe Services, Inc. ("Allstar Pipe") files this Response to the Court's Show Cause Order and respectfully demonstrates why the Amended Settlement Agreement did not require Allstar Pipe to "opt out" prior to filing its Complaint:

**SUMMARY OF ARGUMENT**

1.  Allstar Pipe's position is simple and straightforward. As stated in its 2010 Federal Tax Return and as demonstrated by the substantive nature of its business, Allstar Pipe is an oilfield service company. The plain language of Section 2.2.4.5 and Exhibit 17 of the Amended Settlement Agreement excluded oilfield service company Allstar Pipe from the Economic and Property Damages Settlement Class ("Settlement Class"). Therefore, Allstar Pipe was not required to opt out before filing its Complaint against BP, which was responsible for the *Deepwater Horizon*

explosion and oil spill. BP's position is wholly without merit, and the Court should summarily deny BP's attempt to dismiss All Star Pipe's substantial case.

2. Moreover, Allstar Pipe's position is not new. In March 2016, the Court issued Pretrial Order ("PTO") 60, which required any plaintiff that had previously filed an individual lawsuit to complete a sworn statement. *See* PTO 60, Case 2:10-md-02179-CJB-SS, Document No. 16050, filed March 29, 2016. Among other things, the sworn statement compelled each plaintiff to disclose its status in relation to the Settlement Class. *See* Exhibit A to PTO 60, Case 2:10-md-02179-CJB-SS, Document No. 16050-1, filed March 29, 2016. On May 2, 2016, Allstar Pipe timely filed its sworn statement and clearly checked the box indicating that it was "not a member of the Economic and Property Damages Class." *See* Filing of Sworn Statement for Disclosure of B1 Claims, Case 2:13-cv-01658-CJB-JCW, Document No. 5, filed May 2, 2016. Thus, Allstar Pipe properly followed PTO 60 and disclosed to BP more than four years ago that it was not a member of the Settlement Class – and not required to "opt out" before bringing this action. In short, BP's position is incorrect, because Allstar Pipe has met all substantive and procedural requirements for its case to proceed. The Court should allow Allstar Pipe the opportunity to present its case and recover its extensive damages.

## FACTS

3. The Court is well-acquainted with the history of this litigation. On April 20, 2010, BP's Macondo Well erupted and the Deepwater Horizon exploded, dumping millions of barrels of oil into the Gulf of Mexico (the "BP oil spill"). *In re Deepwater Horizon,* 732 F.3d 326 (5th Cir. 2013) ("Deepwater Horizon I"). BP's oil spill caused the shutdown of the Louisiana coast, the closure of rivers and tributaries leading from Louisiana to the Gulf of Mexico, and the stoppage of

boating and shipping in the Gulf of Mexico. It is undisputed that the cleanup of BP's oil spill off of the Louisiana coast took years.

4. Allstar Pipe was located in Scott, Louisiana at the time of the April 20, 2010 BP oil spill. *See* Exhibit A, Declaration of Thomas Wright at ¶ 3. As correctly stated on its redacted 2010 Federal Tax Return, Allstar Pipe's Business Activity was "Oilfield Service." *Id.* at ¶ 6.[1] Allstar Pipe provided such Oilfield Services to workover rigs owned by third-parties. *Id.* Importantly, Allstar Pipe did not engage in any drilling. *Id.*

5. Allstar Pipe engaged in the wholesale rental and sales distribution of oilwell machinery, equipment, and supplies. *Id.* at ¶ 7. More specifically, Allstar Pipe rented and sold thread protectors and pipe bolsters for shallow and midwater workover rigs in the Gulf of Mexico. *Id.* The thread protectors and pipe bolsters were used by oil companies in servicing and repairing their existing wells. *Id.* Customers included, but were not limited to, oil companies such as Newfield Exploration, Tana Exploration, Walter Oil and Gas, and Forest Oil. *Id.*

6. Allstar Pipe's thread protectors and pipe bolsters had to be transported to the workover rigs by boat from rivers and docks along the Louisiana coast to the Gulf of Mexico. *Id.* at ¶ 8. The April 20, 2010 BP oil spill caused a massive amount of oil to flow into the Gulf of Mexico over many months. *Id.* The months-long BP oil spill and resulting cleanup efforts made it unsafe for transport boats – or any boats – to travel from the Louisiana coast into the Gulf of Mexico. *Id.* The BP oil spill caused the shutdown and closure of the rivers and tributaries leading to the Gulf of Mexico, as well as the waterways of the Gulf of Mexico itself. *Id.* The massive BP oil spill and lengthy cleanup prevented Allstar Pipe from boating any of its products to the shallow and midwater workover rigs of its customers.. *Id.* The BP oil spill also caused Allstar Pipe's

---

[1] Allstar Pipe has redacted financial information from the 2010 Federal Tax Return because such information is irrelevant to any and all issues related to the Show Cause Order.

3

customers to stop renting and purchasing its oilfield services products for their shallow and midwater workover rigs. *Id.* But for this lengthy shutdown of the Louisiana coast, the cessation of seagoing vessels, and the environmental cleanup of millions of barrels of oil caused by the unsafe conditions of the BP oil spill, Allstar pipe could have continued performing services for its shallow and midwater workover rig customers.[2]

## ARGUMENT

**A.    The Amended Settlement Agreement Excludes Oilfield Services Business Allstar Pipe From Class Membership. Allstar Pipe Was Not Required To Opt Out Of A Class From Which It Did Not Belong.**

7.     The unambiguous language of the Amended Settlement Agreement excludes Allstar Pipe as a Class Member. Section 1 of the Amended Settlement Agreement defines class membership, "subject to the **EXCLUSIONS** in Section 2 below." *See* Amended Settlement Agreement, Case 2:10-md-02179-CJB-SS, Document No. 6430-1, May 3, 2012, at 3 (emphasis in original).

8.     Section 2 contains a lengthy list of **"EXCLUSIONS FROM THE ECONOMIC AND PROPERTY DAMAGES SETTLEMENT CLASS DEFINITION."** *Id.* at 11 (emphasis in original).

9.     Section 2.2.4 states: "The following exclusions are based on the substantive nature of the business, not the legal or juridical form of that business. Any of the following types of Entity [sic] . . . are excluded." *Id.* at 11 (emphasis added). Thus, Section 2.2.4 rejects any strict

---

[2] Though not at issue in this Show Cause Order, the so-called deep-water drilling "Moratorium" has no application to Allstar Pipe's case. The "Moratorium" applied only to new deep-water drilling permits and a select number of existing deep-water drilling rigs. As previously stated, Allstar Pipe did not engage in any drilling. It performed services for workover rigs.

4

automatic/mechanical application of a NAICS Code and instead commands review of the actual substantive nature of the entity's business activities to determine the proper classification.

10. Section 2.2.4.5 then sets forth the language that clearly applies to the "substantive nature" of Allstar Pipe's business. Specifically, Section 2.2.4.5 excludes from the Settlement Class a long and varied list of entities in the "Oil and Gas Industry, as identified in the NAICS codes listed on Exhibit 17, which includes by way of example, firms engaged in: . . . <u>wholesale distribution of oil well machinery, equipment and supplies</u> . . . ." *Id.* at 13 (emphasis added).

11. Exhibit 17 to the Amended Settlement Agreement further excludes from the Settlement Class "support activities for oil and gas operations," including but not limited to "oil and gas field services." *See* Exhibit 17 to the Amended Settlement Agreement, Case 2:10-md-02179-CJB-SS, Document No. 6430-35, May 3, 2012, at 3-4. In accordance with the "substantive nature" command of Section 2.2.4, Exhibit 17 also rejects the automatic/mechanical application of a NAICS Code – and instead directs the Claims Administrator to review "evidence of the business's activities necessary for the Claims Administrator to determine the appropriate NAICS Code." *Id.* at 2.

12. Finally, to emphasize the importance of classifying an entity according to the true nature of its business, in May 2014, the Claims Administrator adopted Policy 480 v.2. That Policy states in relevant part:

> The appropriate NAICS Code for an Entity shall be the NAICS Code that most accurately describes the Entity's <u>primary business activities, which are the activities in which the Entity was primarily engaged</u> during the operative Benchmark, Compensation, and Class Periods. . . . <u>The NAICS Code used on the 2010 tax return or business license will not be considered conclusive, and the Claims Administrator will not apply any presumptions regarding selection of the NAICS Code to classify the entity properly.</u>

5

*See* Exhibit B, Policy 480 v.2, at 3 (emphasis added). In short, it is abundantly clear that review of an entity's substantive business activities is necessary for classification under the Amended Settlement Agreement.[3]

13. A substantive review of Allstar Pipe's business activities leaves no doubt that it is an Excluded Non-Class Member under Section 2.2.4.5. As previously discussed in the Declaration of Allstar Pipe President and Co-owner Thomas Wright, Allstar Pipe's 2010 Federal Tax Return lists its Business Activity as "Oilfield Services." *See* Declaration of Thomas Wright at ¶ 6. Moreover, Mr. Wright stated that Allstar Pipe rented and sold thread protectors and pipe bolsters for shallow and midwater workover rigs in the Gulf of Mexico. *Id.* at 7. Mr. Wright further declared that the thread protectors and pipe bolsters were used by oil companies in servicing and repairing their existing wells. *Id.* Finally, Mr. Wright stated that "Allstar Pipe engaged in the wholesale rental and sales distribution of oilwell machinery, equipment and supplies." *Id.* This evidence demonstrates conclusively that the "substantive nature" of Allstar Pipe's business was the "wholesale distribution of oil well machinery, equipment, and supplies," as described in Section 2.2.4.5 of the Amended Settlement Agreement. Therefore, the plain language of the Settlement Agreement excludes Allstar Pipe as a class member, and Allstar Pipe had no obligation to opt out of a class from which it did not belong. BP's position is patently false, and the Court should allow Allstar Pipe's meritorious lawsuit to go forward.[4]

---

[3] Allstar Pipe recognizes that, technically speaking, Policy 480 v.2 does not strictly apply to this case, because Allstar Pipe is not a Class Member. Allstar Pipe cites Policy 480 v.2 to demonstrate the absolute consistency of how business entities have been – and continue to be – analyzed throughout this 10-year litigation process.

[4] The irony is that if Allstar Pipe had filed a claim within the Settlement Program, either the Settlement Program itself would have excluded the claim based on the oil and gas exclusion, or BP would have appealed any award due to the same oil and gas exclusion.

6

**B. BP's Argument Contravenes The Unambiguous Language In The Amended Settlement Agreement And Ignores Allstar Pipe's Primary Business Activities.**

14. Through conversations and correspondence, Allstar Pipe believes that the gravamen of BP's position concerns the NAICS Code listed on Allstar Pipe's 2010 Federal Tax return. The 2010 Tax Return purports to list a "NAICS Code" of "213110." Allstar Pipe anticipates BP will attempt to argue that because this "NAICS Code" does not appear on Exhibit 17, then Allstar Pipe is automatically a Class Member. The Court should reject BP's erroneous "gotcha" argument for several reasons.

15. First, as discussed extensively *supra*, the Amended Settlement Agreement, Exhibit 17, and Policy 480 v.2 all reject the automatic/mechanical application of a NAICS Code to classify a business entity. The settlement documents universally command review of the substantive nature of the business. Thus, any attempt by BP to ignore the primary business activities of Allstar Pipe is simply wrong.

16. Second, NAICS Code "213110" does not appear to exist. Research of various NAICS Codes does not turn up any listing for "213110."[5] It appears that the accountant simply made a mistake or a typographical error when entering the NAICS Code on Allstar Pipe's tax return – though the qualitative entry "Business Activity, Oilfield Service" is correct. In any event, the fact that "213110" is not a valid NAICS Code means that it is absolutely necessary to conduct a factual review into the substantive nature of Allstar Pipe's business. Such a review demonstrates that Allstar Pipe falls under NAICS Code 213112 – Support Activities for Oil and Gas

---

[5] For the Court's convenience, attached is a link to the NAICS Code website. https://www.naics.com/naics-code-description/?code=2131

7

Operations."[6]   In short, the facts plainly show that Allstar Pipe engages in oil and gas support activities, and that it is an excluded non-class member under Section 2.2.4.5 of the Amended Settlement Agreement and Exhibit 17.

17.   Third, it strains credulity to think that Allstar Pipe's legitimate claims could be dismissed due to a clerical mistake or a typographical error by an outside accountant. In fact, such an inequitable result is exactly what the substantive business review is designed to protect against. An examination of the totality of the circumstances helps to ensure a correct result. Fundamental fairness dictates that BP should not be able to obtain dismissal because of a harmless error not even committed by Allstar Pipe – especially when Allstar Pipe's business activities squarely fall under oil and gas exclusion.

## CONCLUSION

The clear and unambiguous language of the Amended Settlement Agreement demonstrates that Allstar Pipe is not a Class Member, and that Allstar Pipe had no obligation to opt out of a class from which it did not belong prior to filing this action. Allstar Pipe has fulfilled all procedural and substantive requirements to proceed with its lawsuit, and BP's arguments are without any merit. The Court should allow Allstar Pipe to continue prosecuting its claims against BP, so that it may justly recover its extensive damages.

---

[6] Other similar NAICS Codes are 21311 for "Mining" – excluded from Class Membership by Section 2.2.4.5; and 213111 for "Drilling Oil and Gas Wells – excluded from Class Membership by Section 2.2.4.5 and Exhibit 17. The bottom line is that all of these NAICS Codes branch from the same family tree. And the Amended Settlement Agreement excludes all of them from Class Membership and any obligation to opt out.

Respectfully submitted,

**JASON J. JOY & ASSOCIATES, PLLC**

/s/ Jason J. Joy

By: _____
*\* Electronically Signed*
Jason J. Joy
TX Bar No. 24058932
Colin G. Wood
TX Bar No. 24082535
909 Texas St., Suite 1801
Houston, TX 77002
jason@jasonjoylaw.com
colin@jasonjoylaw.com
Phone: (713) 221-6500
Facsimile No.: (713) 221-1717
Counsel on behalf of Plaintiff,
Allstar Pipe Services, Inc.

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above-referenced motion has been electronically served on all counsel of Record in this action on this the 16th day of October, 2020.

*/s/ Jason J. Joy*

_____
Jason J. Joy

9