# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf Of Mexico, on April 20, 2010** | * * * | **MDL NO. 2179** |
| | * | **SECTION: J** |
| *This document relates to:* | * * | |
| 2:17-cv-02675; 2:17-cv-02678; 2:17-cv-02674; 10-cv-02543; AND 2:17-cv-02672 | * * * * | **HONORABLE CARL J. BARBIER** |
| | * * | **MAGISTRATE JUDGE WILKINSON** |

## STATEMENT OF ISSUES FOR TRIAL OF MEDICAL OPT-OUTS IN B3 BUNDLE BY HERMAN, HERMAN & KATZ, L.L.C.

NOW INTO COURT comes Herman, Herman & Katz, LLC, ("HHK") through undersigned counsel, who submits the instant *Statement* to the Court's Order [Rec Doc. 26684] instructing BP and counsel for medical opt-outs in the B3 Bundle to meet and confer concerning "what issues need to be tried in individual B3 cases". HHK submits this Statement on behalf of its five remaining medical opt-out clients: *Herman Williams*, No. 17-2675; *Stephen Granier*, No. 17-2674; *James Miller*, No. 17-2678; *Levy Brunet*, No. 17-02672; and *John Wunstell*, No. 10-2543.

HHK submits that, given Covid-19's overall disruption of most litigation activities and BP's comments at the status conference, an opportunity has arisen to address limited common issues of law and fact, as well as limited common discovery in order to streamline these cases before re-allotment to other sections of this Court. Alternatively, at a minimum, the Court should require Plaintiffs to amend their Complaints and require BP to file any responsive pleadings before re-allotment in order to gauge after issue is joined whether any common legal or factual issues are

capable of resolution by this Court. Finally, the Covid-19 delay 10 years since the spill has provided an opportunity to explore settlement.

**I.    Common Legal, Factual, and Discovery Issues Can Be Determined By This Court before Re-Allotment.**

All five HHK clients were hired by BP America Company to participate in the Vessel of Opportunity Program. All five clients signed a Master Vessel Charter Agreement ("MVCA") with BP America. *MVCAs* attached as exhibit "1". All five MVCAs are identical. Although there is an "independent contractor" clause, that is not the end of the legal inquiry, since independent contractors can still satisfy a Jones Act Seamen analysis under certain circumstances. The MVCAs require exclusivity during its term and are designed to remediate a unique BP obligation. BP controlled all aspects of the work being performed under the MCVA – the where, when, and how of remediating oil.

While the Court requested briefing on "individual issues" to be tried, the below are issues specific to each HHK case and common to them as well. The individual issues for these cases include (1) medical causation and (2) damages. The issue of "medical causation" includes within it nature and extent of exposure as well as general and specific medical causation of at least three hazardous substances – petrochemicals, dispersants, and the cleaning solutions used to clean vessels. These issues (except for perhaps general medical causation of the three hazardous substances) will be individual.

Some common legal issues are implicated from the MVCA which bear upon certain categories of damages and the legal status of the captains and employees of the vessels. These include:

- The legal effect of the Master Vessel Charter Agreements ("MVCA");
- Whether the MVCA is enforceable;

- Whether the indemnity and hold harmless clause of the MVCA is unenforceable;
- Whether BP America acted in bad faith and breached MVCA;
- Whether BP America intentionally violated the MVCA;
- Whether the MVCA is voided due to BP America's intended use of vessels to collect, transport, and disburse toxic and hazardous substances;
- Whether using the MVCA to transport hazardous substances on a shrimping vessel caused the vessel to become "unseaworthy";
- Whether the captain and employees of the vessel subject to the MVCA were Jones Act Seamen;
- Whether BP America owes the captain and employees Maintenance and Cure;
- Whether BP America is liable for punitive damages for not paying Maintenance and Cure; and
- Whether BP is liable (acted in bad faith, deliberate indifference, and/or recklessly) for hiring uneducated, untrained, and under-supplied fishermen to clean hazardous substance like petrochemicals while using and/or exposing them to hazardous chemical dispersants and supplying them with still more hazardous cleaning chemicals to clean their vessels. Some common factual issues include:
- Why did BP choose Corexit?
- Why did BP use any dispersants?
- Did BP have a safer alternative than Corexit available?
- What did BP know of the toxicity of petrochemicals?
- What dangers was BP aware of in (a) using dispersants, (b) cleaning petrochemicals, and/or (c) using any other chemicals to clean vessels?
- Did BP engage in a risk analysis of using a dispersants against not using any dispersants?

- Why did BP decide to hire uneducated, untrained, and under-supplied fishermen to clean hazardous substances?
- Did BP engage in any risk analysis before deciding to hire uneducated, untrained, and under-supplied fishermen to clean hazardous substances?
- What disclosures of hazardous materials were provided to the captains and their crew before, during, and after clean-up operations?
- What amount of training materials were provided to captain and crew?
- What amount of training was provided to captain and crew?
- What chemicals were provided to captain and crew to clean vessels?
- What was the protocol for cleaning vessels?
- What protective gear, if any, was provided to captain and crew?
- What was the policy for when and to what extent captain and crew were required to wear protective gear?
- How was the protective gear distributed?
- How often was protective gear distributed?
- Was adequate protective gear distributed?

Some common discovery includes:

- Written discovery on the above factual issues;
- FRCP 30(b)(6) depositions on the above factual issues;
- Fact depositions of any and all experts or persons with specialized knowledge who assisted BP (officially or unofficially) with developing the policies and practices identified in the above factual issues;

- Any witnesses discovered over the course of common discovery with knowledge of how BP's policies, practices, and procedures related to clean-up operations were developed and/or implemented.

## II. Before Re-Allotting Cases, the Court Should Impose Deadlines for Plaintiffs to File Any Amended Complaints and for BP to File Responsive Pleadings.

In the alternative, HHK submits that before re-allotment, this Court should impose a deadline for filing any amended complaints and a subsequent deadline for BP to answer and/or file F.R.C.P. Rule 12 motions to dismiss. HHK filed its initial complaints in 2010 and 2017 for its clients. Pursuant to Local Rules, upon re-allotment, Plaintiff would receive a new deadline to amend complaints.

BP has not filed any responsive pleadings to individual complaints. By requiring BP to file answers and/or motions to dismiss, this Court could determine, based on actual motions to dismiss and/or the answers themselves filed into the record, after issue has been joined, whether common issues of law or fact exist. This approach takes the guesswork away from what may or may not be common areas of law. This Court is best situated with its institutional knowledge to decide these issues.

This approach also provides a meaningful benefit to the transferee judges. After Rule 12(b) motions are decided, and issue is joined, the transferee judges may treat these cases as individual, factually driven disputes. Individual case deadlines will be more likely be met with a reduced need for motions to continue.

## III. A Statement About Settlement.

At the meet and confer, undersigned raised the prospect of making an attempt to settle these cases. Given that 10 years have lapsed since the spill and Covid-19 has created a *de facto*

indeterminate stay of most litigation, the present and near future appear to be an opportune time to consider settlement options.

BP expressed concern that any type of resolution would promote more new filings on the BELO side. Undersigned explained that (1) B3 opt-out claims are different from BELO, (2) the statute of limitations for B3 opt-out claims had long passed, and (3) no new B3 claims could be brought. BP responded that it still felt that the perceived risk outweighed any benefit to exploring settlement.

This 23rd day of October, 2020.

Respectfully submitted,

/s/ Soren E. Gisleson
*By:* Soren E. Gisleson, La. Bar No. 26302
HERMAN HERMAN & KATZ LLC
820 O'Keefe Ave.
New Orleans, LA 70113
Telephone: (504) 581-4892
E-Mail: sherman@hhklawfirm.com

*Counsel for Herman Williams 17-2675;*
*Stephen Granier 17-2674; James Miller*
*17-2678; Levy Brunet 17-02672; AND*
*John Wunstell 10-2543*

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that the above and foregoing Motion has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pre-Trial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 23rd day of October, 2020.

/s/  Soren E. Gisleson