# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill | * | MDL No. 2179 |
| by the Oil Rig "Deepwater Horizon" | * | |
| in the Gulf of Mexico, on April 20, 2010 | * | SECTION:  J |
| | * | |
| | * | JUDGE BARBIER |
| | * | |
| | * | MAG. JUDGE CURRAULT |
| This Document Relates to: | * | |
| *All Claims In Pleading Bundle B3* | * | |

## BP'S REPORT REGARDING ISSUES TO BE TRIED IN INDIVIDUAL B3 CASES

Pursuant to the Court's September 23, 2020 Order (Rec. Doc. 26684), BP America Production Company and BP Exploration & Production Inc. (together, "BP") respectfully submit this report regarding the issues to be tried in individual B3 cases.  BP has met and conferred with counsel for the majority of the B3 plaintiffs (collectively with BP, the "Parties")[1] on this question. The Parties agree that several issues, including the nature, extent, and duration of each plaintiff's alleged exposure, causation, and each plaintiff's alleged injuries, will be at issue in every trial. The Parties have different views, however, regarding fault and the availability of punitive damages in these cases and are submitting separate reports with their respective positions.

In summary, BP will not re-litigate fault for the blowout, explosion or spill and respects this Court's ruling in the Phase One trial on those matters (the "Phase One Ruling").  *See In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010,* MDL 2179, Findings of Fact and Concl. of Law, Phase One Trial, Rec. Doc. 13355, at 152.  For most B3 plaintiffs who base their claims solely on fault for the spill, the Court's Phase One Ruling obviates the need to litigate fault and bars any punitive damages recovery.

---

[1]  BP has met and conferred with B3 plaintiffs represented by Nexsen Pruet, the Falcon Law Firm, Stag Liuzza, the Downs Law Group, and Herman Herman & Katz.  BP and these plaintiffs comprise the "Parties."

Almost none of the 872 B3 plaintiffs limit their fault allegations solely to *the spill*, however; rather nearly all seek to recover punitive damages based on BP's alleged fault for the *spill response*. Approximately 862 — over 98% — of the B3 plaintiffs seek punitive damages in these cases. While BP accepts responsibility for the spill, BP denies that it was negligent in the Unified Command-led spill response. BP's spill response conduct was not at issue in the Phase One trial or addressed in the Phase One Ruling, and BP has a right to defend itself against those allegations. Simply put, where a B3 plaintiff (i) alleges fault for BP's spill response efforts or for not adequately protecting cleanup workers, and/or (ii) seeks to recover punitive damages for BP's spill response conduct, then questions of fault and the availability of punitive damages become additional issues to be tried in those plaintiffs' cases. To date, no B3 plaintiffs have agreed to withdraw his claims for negligence and punitive damages based on the spill response.

For the reasons set forth below and in its Proposal for the Future Case Management of the B3 Bundle (Rec. Doc. 26672), BP respectfully submits that the remaining B3 cases present highly individualized issues and should be reallocated from MDL 2179 for individual proceedings.

1. **Overview of B3 Claims.**

The 872 remaining B3 plaintiffs include residents, tourists, and clean-up workers who performed a variety of spill response activities onshore, near shore or offshore. They primarily assert negligence claims under general maritime law. *See In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 2011 WL 4575696, at *3 (E.D. La. Oct. 4, 2011) (B3 "claims for negligence, negligence per se, products liability, nuisance, and battery which are asserted under state law are preempted by maritime law."). To state a claim for negligence under general maritime law, the "plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by plaintiff, and a causal connection between defendant's conduct and the plaintiff's injury." *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th

Cir. 1991); *see also Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 675-76 (5th Cir. 1999) (affirming summary judgment for defendant where plaintiff failed to show defendant breached duty to warn him of chemical exposure dangers).

The B3 plaintiffs claim that their exposure to oil, chemical dispersants and/or other substances caused a panoply of medical ailments, identifying a total of more than 1,900 unique medical conditions or symptoms in their complaints or pretrial submissions. (Rec. Doc. 26672) To recover on toxic tort claims like these, the Fifth Circuit has explained that a plaintiff must prove both general causation and specific causation. *See, e.g., Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351-52 (5th Cir. 2007); *McGill v. BP Expl. & Prod., Inc.*, 2020 WL 6038677, at *3 (5th Cir. Oct. 12, 2020 (affirming summary judgment for BP where BELO plaintiff failed to present evidence necessary to establish causation). Indeed, "[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case." *Allen v. Penns. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996) (citation omitted). To establish general causation, plaintiffs "must prove, at minimum, that exposure to a certain level of a certain substance for a certain period of time can cause a particular condition in the general population." *Lee v. BP Expl. & Prod. Inc.*, 2020 WL 6106889, *4 (E.D. La. Sept. 29, 2020) (citation omitted). "Specific causation is whether a substance caused a particular individual's injury" and turns on resolution of a variety of additional individualized considerations unique to each plaintiff. *Seaman v. Seacor Marine LLC*, 564 F. Supp. 2d 598, 600 (E.D. La. 2008).

**2.    Issues To Be Litigated in Individual B3 Cases.**

Individual B3 cases will turn on adjudication of several fact-specific issues, including:

- each plaintiff's alleged exposure (whether to oil, dispersants, or decontaminants);
- alleged route of exposure (whether inhalation, dermal contact, and/or ingestion);

3

- alleged dose (exposure levels and durations);

- claimed medical conditions (including timing of onset and validity of diagnoses);

- causation (including general and specific causation in toxic tort claims);

- alternative causes for the claimed medical conditions;

- applicable affirmative defenses, and

- compensatory and other damages.

In addition, many B3 plaintiffs allege fault based on the spill response and seek punitive damages. Accordingly, as discussed below, certain B3 cases may require trial of those issues.

**A.     This Court Has Already Decided BP's Fault and the Unavailability of Punitive Damages for the Spill.**

At the September 23 status hearing, the Parties discussed whether and to what extent (i) fault or other liability-type issues and (ii) punitive damages may be litigated in individual B3 cases in light of this Court's Phase One Ruling. (9/23/20 Hr'g Tr. at 35-55) In its Phase One Ruling, the Court held that BP was "liable under general maritime law for the blowout, explosion, and oil spill." (Phase One Ruling at 152) The Court also found that, under Fifth Circuit precedent, BP could not be liable for punitive damages for such conduct under general maritime law. (*Id.*)

BP respects this Court's Phase One ruling and has no intention of re-litigating its findings. BP acknowledges that B3 plaintiffs may rely on the Phase One Ruling to establish BP's fault for causing the spill. The Phase One Ruling may be dispositive of fault in some B3 cases where plaintiffs base their claims on the spill alone. In those cases, trial will turn on the remaining issues outlined above, including each plaintiff's alleged exposure, causation, claimed injury, and damages, among other things. *See, e.g., Allen*, 102 F.3d at 199.

But, to the extent that B3 plaintiffs elect to rely on the Phase One Ruling to establish fault, they may not, under that same Ruling, recover punitive damages. (*See* Phase One Ruling at 152)

As this Court explained, "if the plaintiffs believe that the Court's previous rulings should control and that there would be no need to prove any other liability-type issues, at the same time the Court's previous rulings on punitive damages should control." (9/23/20 Hr'g Tr. at 52:13-17)  The issues of fault and punitive damages "go hand in hand.  It's all or nothing." (*Id.* at 52:12-13)  The plaintiffs cannot cherry-pick portions of the Phase One Ruling to invoke.

### B. Many B3 Plaintiffs Pursue Claims and Seek Punitive Damages Based on BP's Alleged Fault for the Spill Response, Not the Spill.

Most B3 plaintiffs appear to base their claims not on BP's negligence for the spill, but rather, on BP's alleged negligence for the *spill response*.  For example, some B3 plaintiffs complain that BP allegedly caused their injuries by failing to (i) provide cleanup workers with personal protective equipment ("PPE") that was appropriate for the task each plaintiff was assigned to perform, (ii) provide adequate instructions about whether, when or how to wear the PPE they were given, (iii) provide adequate training to clean-up workers for the specific tasks that each plaintiff performed, or (iv) to otherwise adequately protect cleanup workers.

Nearly all of the B3 plaintiffs attacking BP's spill response demand punitive damages.  At the status hearing, Mr. Falcon explained that these B3 plaintiffs intend to establish their entitlement to punitive damages by showing that BP was supposedly negligent in the *spill response effort*, for example, by not adequately protecting clean-up workers.  (9/23/20 Hr'g Tr. at 41:7-13)  Mr. Falcon explained that B3 plaintiffs may try to show that:

> BP was involved with [the] failure and intentionally not providing PPE for these workers, which our workers are telling us.  [I]f they are involved in that at a high enough level, there could be actual punitive damage issues for the Court on the exposure case.

(9/23/20 Hr'g Tr. at 41:7-13)  This approach is contrary to BELO cases, where the parties agreed that "the alleged fault of BP" is an issue that "need not be proven and may not be litigated at trial" and that punitive damages are unavailable (Medical Benefits Class Action Settlement Agreement

(the "MSA"), §VIII.G.3.b, Rec. Doc. 6427-1).[2]

A review of B3 complaints and pretrial submissions demonstrates that plaintiffs claim that BP was negligent in the spill response in a variety of respects that are unique to each plaintiff. For example, James Miller is a commercial fisherman who participated in the Vessels of Opportunity ("VoO") Program during the spill response. (Ex. A, Miller Compl., Case No. 2:17-cv-02678) He alleges that he was exposed to oil and dispersants while scouting for oil and deploying boom and developed a variety of conditions as a result, including PTSD and rectal bleeding. (*Id.* at 3) Mr. Miller claims that BP was negligent in the spill response, by, among other things:

- Failing to provide "training for crew members in the Vessel of Opportunity Program, including Plaintiff";

- "Failing to provide Plaintiff with adequate personal protection from the fumes, gasses, noxious chemicals, and particles to which he became exposed while working [on the VoO Program]";

- "Failing to have adequate ventilation, respiratory equipment, compressed air or other means of providing good air supply to members of the crews in the [VoO Program]";

- "Ordering, instructing, employing and/or directing the vessels into areas of extreme danger for exposure to crude oil" and other substances during the response;

- "Failing to thoroughly advise crew members such as Plaintiff of the nature and dangers of the hazardous chemicals and noxious fumes to which he would be exposed" in the response;

- "Failing to provide adequate pre-job physical and safety training to guard against potential exposures and hazards involved in [the VoO Program]";

- "Failing to appropriately monitor medical conditions of crew members";

---

[2] BP is not aware of any information that the B3 plaintiffs have provided in their Complaints or in any pretrial submission that would support any claim for punitive damages in these cases. In the event that the Court is inclined to evaluate further the B3 plaintiffs' ability to pursue negligence and punitive damages claims based on BP's conduct in the spill response, the Court might require the B3 plaintiffs, through a PTO *Lone Pine*-type process, to provide information identifying the specific factual bases for their punitive damages claims. Those submissions may assist the Court in evaluating whether the punitive damages claims could be stricken and further streamline the B3 cases before reallocation.

- "Discouraging the use of respirators or other respiratory protective equipment;"

- "Failing to provide complete decontamination and removal of oil and chemicals from Plaintiff's vessel on a regular basis, as previously promised"; and

- "Failing to have adequate air monitoring equipment and/or properly trained individuals monitoring the air quality and/or inadequate procedures for monitoring air quality aboard the vessels in the [VoO Program]."

(*Id.* at XXV, p. 6-7) Mr. Miller contends that BP's alleged spill response conduct warrants punitive damages. (*Id.*) Hundreds of other B3 plaintiffs make similar allegations. For example:

- **Michael Boatright** (Case No. 2:17-cv-03111) and **Stephan Kolian** (Case No. 2:17-cv-03108): Mr. Boatright and Mr. Kolian are professional divers and scientists who worked for the National Oceanic and Atmospheric Administration ("NOAA") collecting water samples during the response. (Ex. B, Boatright Compl. ¶ 89; Ex. C, Kolian Compl. ¶ 89) They claim that they were exposed to dangerous levels of oil and dispersants while diving in a "dive exclusion zone" that NOAA allegedly had identified. (Boatright Compl. ¶¶ 89-94; Kolian Compl. ¶¶89-94) They claim that BP was negligent because it was "aware of this dive exclusion zone and failed to inform Plaintiff[s] of the dive exclusion zone" and "and further failed to warn Plaintiff[s] of the dangers of diving" in the "exclusion zone." (*Id.*) Both demand punitive damages. (Boatright Compl. ¶ 174-99; Kolian Compl. ¶ 171-96)

- **William Fast** (Case No. 2:17-cv-03989): Mr. Fast is a professional spill responder who lived in Vermont at the time of the spill. (Ex. D, Fast Compl. ¶ 4; Ex. E, Fast PTO 66 PSOC at 1). He claims that, after traveling to the Gulf to participate in the cleanup, he was exposed to harmful levels of oil and dispersants during "booming and skimming" operations. (Fast PTO 66 PSOC at 3, Question 13.C). He alleges he was harmed "while working the cleanup operation" and suffered headaches and face numbness, among other things, as a result. (*Id.* at 5, Q. 21) He demands punitive damages. (Fast Compl. at 6-7)

- **Daniel Hatcher** (Case No. 2:17-cv-03179): Mr. Hatcher claims he was exposed to harmful levels of oil and dispersants while working as a deckhand during the response. (Ex. F, Hatcher Compl. ¶ 95-98) He claims that BP failed to provide him "with a respirator and failed to warn him of the danger and risk of toxic exposure while performing oil spill disaster response cleanup activities." (*Id.* at ¶ 96) He alleges that his supervisors told him "that respirators were prohibited on the job, workers would be fired if they wore respirators and that workers requesting respirators would be fired." (*Id.* at ¶ 97) He claims BP allegedly "fail[ed] to properly train and equip" cleanup workers and "fail[ed] to coordinate and conduct aerial dispersant spraying sorties" to minimize risk of worker exposure. (*Id.* ¶106) He alleges that he suffered pulmonary and other conditions as a result of BP's spill response conduct and seeks to impose punitive damages. (*Id.* ¶¶ 98, pp. 43-44)

7

While BP accepts responsibility for the blowout and spill, BP denies that it was negligent in the spill response. That issue has yet to be litigated; BP's conduct in the spill response was not addressed in this Court's Phase One Ruling. Moreover, whether BP was negligent in the spill response in a way that harmed a particular B3 plaintiff is a highly individualized inquiry based on the allegations and circumstances pled by each individual plaintiff. Those issues cannot be decided on a global basis. BP is entitled to defend itself against such allegations. Accordingly, in those B3 cases where the plaintiff alleges that BP was negligent for some aspect of the spill response and/or demands punitive damages, questions regarding BP's alleged fault and the plaintiff's entitlement to punitive damages are issues that will be litigated.

**3.     The B3 Plaintiffs' Spill Response Allegations Involve Resolution of Facts and Issues Specific to Each Plaintiff and Are Best Addressed in Individual Cases.**

The B3 plaintiffs' allegations about BP's alleged fault for the spill response are as varied and non-specific as their alleged medical conditions. Accordingly, whether and to what extent BP's alleged fault for the spill response may be litigated in individual B3 cases will — like the other triable issues identified above, such as exposure and causation — turn on highly individualized facts and issues specific to each B3 plaintiff. These considerations include, for example: (i) what PPE a clean-up worker was provided and told to wear for the specific job she was performing, (ii) the safety and other instructions that she received (including from her direct supervisor) about how to perform her assigned response activity, and (iii) the nature, duration, and extent of the training that she received. (*See, e.g.,* Ex. A, Miller Compl.; Ex. B, Boatright Compl.; Ex. C, Kolian Compl.; Ex. D, Fast Compl.; Ex. F, Hatcher Compl. (detailed above))

BP's defenses to any particular B3 claim, including comparative fault or other affirmative defenses, will likewise turn on the facts and circumstances of each case. For example, B3 plaintiff Mr. Fast, discussed above — a professional clean-up worker from Vermont who came to Louisiana

8

to work in the response, and claims that BP was negligent in the response and should pay punitive damages — is situated differently from B3 plaintiff Michael Helmholtz — a Gulf resident, who claims exposure to oil from the spill while simply living and working in the Gulf, and does not demand punitive damages.  (Ex. D, Fast Compl.; Ex. G, Helmholtz Compl.)  Discovery may also reveal, for example, that a clean-up worker plaintiff did not wear mandated PPE or breached Unified Command safety protocols in such a way that contributed to his or her medical condition.  To clarify the discussion of these issues at the September 23 status conference, BP does ***not*** assert, however, that the "repairman's doctrine" or any other affirmative defense presents an absolute bar to recovery on all B3 claims brought by clean-up workers.  (9/23/20 Hr'g. Tr. at 35-45)  The defenses that may apply to a particular B3 claim will be case- and fact-dependent.

In summary, most B3 plaintiffs are pursuing negligence claims and punitive damages based on BP's conduct in the spill response.  BP disputes that it was negligent in the spill response or that it did not adequately protect cleanup workers.  These issues are not addressed in the Court's Phase One Ruling and turn on highly-individualized facts.  BP respectfully submits that, as with the other triable issues in the B3 cases, each plaintiff's specific allegations about the spill response are most efficiently adjudicated in individual case settings.  Attempting to address these plaintiff-specific issues through additional common proceedings in the MDL would be inefficient and unwieldy.  BP therefore respectfully submits that the Court should reallocate the remaining cases in the B3 bundle from MDL 2179 for individual proceedings at this time.

October 23, 2020                              Respectfully submitted,

                                                     */s/ R. Keith Jarrett*
R. Keith Jarrett (Bar #16984)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax: (504) 556-4108

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
A. Katrine Jakola, P.C.
(katie.jakola@kirkland.com)
Martin L. Roth, P.C.
(martin.roth@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Fax: (312) 862-2200

*Counsel for BP America Production Company and BP Exploration & Production Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **BP'S REPORT REGARDING ISSUES TO BE TRIED IN INDIVIDUAL B3 CASES** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 23rd day of October, 2020.

*/s/ R. Keith Jarrett*
R. Keith Jarrett