IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010<br><br>**APPLIES TO:**<br><br>All Civil Actions of the Plaintiffs Represented by Nexsen Pruet, LLC and Douglas M. Schmidt, APLC; The Falcon Law Firm; Downs Law Group, PA; The Law Offices of Frank D'Amico, Jr., APLC; Lindsay & Lindsay, PA; Stag Liuzza, LLC; The Kreller Law firm; Pivach, Pivach, Hufft, Thriffiley & Dunbar, LLC; Joseph F. Gaar, Jr., APLC; The Panagiotis Firm; Jacobs Manuel Kain & Aamodt; Cossich Sumich Parsiola & Taylor, LLC; Motley Rice LLC; Krupnick, Campbell, Malone, Buser, Slama, Hancock, P.A. | Civil Action No. 2:10-MD-02179<br><br>SECTION: J<br><br>JUDGE CARL BARBIER<br><br>MAG. DONNA CURRAULT |

## PLAINTIFFS' PROPOSAL FOR COMMON LEGAL ISSUES IN THE B3 BUNDLE

**I. RELEVANT BACKGROUND**

On September 23, 2020, counsel for Defendants (Defendants hereinafter referred to herein as "BP") and most B3 Plaintiffs met with the Court to discuss a potential plan for the ultimate resolution of the claims of the remaining medical damages opt-out plaintiffs. For the first time, BP's counsel noted novel liability arguments not yet considered in any previous rulings in the MDL. As a result, the Court ordered the parties to meet and discuss these matters in an attempt to reach agreement on identifying the issues to be tried in the cases. After a good faith meeting, the parties could not agree on issues that are common to the plaintiffs, or a process for resolution of such issues.

Plaintiffs believe the best way to advance the docket in an efficient and fair manner, is for this Court to resolve the remaining contested issues common to all cases. There are approximately 900 individual B3 opt-out cases before the Court. Given this Court's in-depth knowledge and experience managing this litigation, it should retain the cases to decide if its findings apply to BP's liability for response worker injuries, and resolve the remaining issues common to the B-3 opt-outs.

This proposal is submitted on behalf of the majority of the remaining Plaintiffs via their respective attorneys, as listed above.

## II.     THE PHASE ONE TRIAL DETERMINED BP'S LIABILITY FOR THE SPILL AND ANY RESULTING TOXIC EXPOSURE INJURIES

### A.     BP's response to the Oil Spill does not impact BP's liability for Plaintiffs' toxic exposure injuries.

Recently, BP raised a new baseless, defense intended to insulate itself from liability to clean-up workers who allege injury from exposure to the chemicals released into the environment by BP. Its lawyers argued that in addition to its gross negligence and recklessness in causing the spill, these workers will have to show that BP was also negligent in the clean-up response. BP's counsel calls it the "repairman's doctrine." *See*, Transcript of September 23, 2020 Hearing ("Transcript") at pages 37-38. Although it is an incorrect legal position, BP's new defense will apply to almost every Plaintiff. The Court should resolve it as a common legal issue.

BP's counsel cites *Stass v. American Commercial Lines, Inc.*, 720 F.2d 879 (5th Cir. 1983), as authority for its new defense. Without making a complete argument for why this case, and the "repairman's doctrine" are not applicable, a few important distinctions are immediately clear. The *Stass* case was decided under the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), and is inapplicable to the B-3 opt out causes of action. The *Stass* facts are not even

remotely the same. One glaring distinction is that the *Stass* court found the defendant was not negligent. *Id.*

Nearly every Plaintiff asserts injuries from direct exposure to chemicals released by BP through the Deepwater Horizon rig explosion and the response to it. BP asserts that Plaintiffs claiming injuries from exposure to chemicals released into the environment will "have to prove that BP somehow was negligent in its employment of dispersant or in how they protected workers or suggested workers be protected from that Corexit." Hr'g Tr. 39. The Court should decide this common issue, and advance all of the Plaintiffs' cases towards resolution.

A joint decision by BP and others to deploy a specific dispersant chemical into the environment as a method to clean up the oil spill that BP created should not insulate BP from liability for personal injuries caused by exposure to the chemicals released by BP into the environment due to the Deepwater Horizon rig explosion, whether the chemicals are crude oil, dispersant chemicals, or combination of the two. Although the Court granted the manufacturer of Corexit summary judgment based upon the government's approval to use it, the Court specifically refused to extend the ruling to BP. (*See* Rec. Doc. 8037 at page 35). But for BP's gross negligence and recklessness in causing the oil spill, there would have been no need to deploy dispersants into the air and water surrounding the cleanup workers. BP can argue that the use of dispersants limited the Plaintiffs' harmful toxic exposures, but such an argument speaks to the legal issue of causation and does not relieve BP of its liability for all toxic exposures proximately caused by the oil spill.

      **B.**    **Similar to the Back End Litigation Option ("BELO") cases, Plaintiffs who can prove causation and damages are entitled to recover compensatory damages for their toxic exposure injuries.**

If the Court rules that causation and damages are the only issues left to be tried for the B-3 opt out Plaintiffs, it will be a huge step toward resolving every one of the cases and simplifying the issues for trial.

After an extensive trial in this MDL, this Court found BP grossly negligent and reckless for causing the *Deepwater Horizon* blowout, explosion, and resultant oil spill. (Rec. Doc. 13355). Logically, Plaintiffs should be allowed to rely upon this ruling to hold BP liable for exposing them to the chemicals released as a result of the blowout, explosion, and resultant oil spill. As in the BELO cases, the remaining individual issues for trial will be limited to causation and damages.

**III.**    **RESOLVING COMMON LEGAL ISSUES RAISED BY BP'S DEFENSES WILL AVOID CONFLICTING RULINGS.**

If the Court finds liability (or lack thereof) as set forth above, these cases will be greatly simplified and advanced. After the Court determines liability for injuries related to the spill, it should require BP to set forth a list of its affirmative defenses. Once we know BP's affirmative defenses, the Court can resolve any common legal issues raised by them to narrow the issues for future trials.

**IV.**    **DECIDING WHETHER PUNITIVE DAMAGES ARE AVAILABLE TO PLAINTIFFS UNDER CERTAIN CIRCUMSTANCES WILL SERVE JUDICIAL EFFICIENCY**

The Court should determine the common question of whether punitive damages are available for injuries caused by the spill under the standards of the Eleventh Circuit (Alabama and Florida). The Court previously answered this question, finding punitive damages are not available for claims subject to the maritime law of the Fifth Circuit. *See*, Phase One Trial Order at ¶ 613, pg. 152. However, it did not answer the question for plaintiffs subject to the law of the Eleventh

Circuit. In leaving the issue open, the Court noted that punitive damages *would* be available under the standards of the First and Ninth Circuits. *Id*. at fn. 300, pg. 152.

Plaintiffs also assert that BP (individually and through its subcontractors) was grossly negligent and reckless in the spill response. If injuries resulting from the spill response contributed to, or worsened, injuries originally caused by the spill, with the relevant standards for punitive damages under maritime law being met, BP could be liable for punitive damages. This is analogous to when an originally negligent party (BP) injures a plaintiff. He retains full liability for injuries caused by the subsequent negligence of third parties, (BP and/or its subcontractors) - like the malpractice of a doctor treating the original injuries – this subsequent harm is within the scope of risk for the original conduct. Both the originally-negligent party, and the mal-practicing doctor, are liable for compensatory damages. In this analogy, BP is both parties. Under these circumstances, the originally-negligent party may not be liable for punitive damages, but the doctor (BP) could be if the medical treatment is grossly negligent. By resolving these common legal questions related to punitive damages, this Court will not only provide judicial economy, but also assist the parties toward potential resolution of the claims.

## CONCLUSION

The Court should resolve common legal issues and assist the parties and the other courts that may ultimately receive these cases. The overarching common legal question is whether the Court's ruling (finding BP is liable) has preclusive effect on the remaining cases. This Court is in the best position to decide if its ruling applies.

BP also offers new intervening and superseding cause defenses that seek to undermine the Court's ruling on liability. As misguided and incorrect as BP's new theories may be, these common legal issues should be addressed by this Court to avoid having trial courts who are not familiar

with the cases grapple with an overwhelming number of legal and factual issues unrelated to the individual issues of causation and compensatory damages. If the Court retains the cases to rule on these common issues, it will avoid the inevitable inconsistent findings that will come from 900 separate hearings, and the resulting complications.

Plaintiffs fully recognize the impact of the Court finding punitive damages are not available in cases controlled by the law of the Fifth Circuit. Nevertheless, the Court has not addressed punitive damages with regard to those subject to the laws of the Eleventh Circuit. BP's failure to protect its workers involved in the spill response could give rise to punitive damages.

Once these common legal issues are resolved by the Court, or agreed to by the parties, the cases will be ripe for individual trials to determine: general and specific causation; compensatory damages (and possible punitive damages) related to the spill response.

Respectfully Submitted,

/s/ Paul A. Dominick
Paul A. Dominick     Fed ID No. 577
NEXSEN PRUET, LLC
205 King Street, Suite 400 (29401)
P.O. Box 486
Charleston, SC  29402
Telephone: 843.577.9440
Facsimile:  843.720.1777
pdominick@nexsenpruet.com

and

Douglas M. Schmidt   Fed ID No. 11789
Douglas M. Schmidt, APLC
335 City Park Avenue
New Orleans, LA 70119
Telephone: 504-482-5711
Facsimile:  504-482-5755
dglsschmdt@yahoo.com

/s/ Allen W. Lindsay, Jr.
Allen W. Lindsay, Jr.

/s/ Timothy J. Falcon
Timothy J. Falcon (Bar No. 16909)
Jeremiah A. Sprague (Bar No. 24885)
Jarrett S. Falcon (Bar No. 34539)
Falcon Law Firm
5044 Lapalco Boulevard
Marrero, LA  70072
 (504) 341-1234
tim@falconlaw.com
jerry@falconlaw.com
jarrett@falconlaw.com

s/Frank J. D'Amico Jr.
Frank J. D'Amico, Jr. (Bar No. 17519)
Frank D'Amico, Jr., APLC
4608 Rye Street
Metairie, Louisiana 70006
Telephone: (504) 525-7272
frank@damicolaw.net

/s/ Michael G. Stag
Michael G. Stag (LA No. 23314)

Florida Bar No. 104956
Lindsay & Lindsay, P.A.
5218 Willing Street
Milton, FL 32570
Telephone: 850-623-3200
awl@lal-law.com

/s/ Corey E. Dunbar
Corey E. Dunbar
Pivach, Pivach, Hufft, Thriffiley & Dunbar, LLC
8311 Highway 23, Suite 104
Belle Chasse, LA 70037
Telephone: (504) 394-1870 x153
cdunbar@pivachlaw.com

Counsel for William J. Fitzgerald, III and Dianna M. Fitzgerald, individually and on behalf of decedent Nathan Joseph Fitzgerald (13-00650)

/s/ Craig Downs
Craig Downs
The Downs Law Group
3250 Mary Street
Suite 307
Coconut Grove, Florida 33133
(305) 444-8226
cdowns@downslawgroup.com

/s/ C. David Durkee
C. David Durkee
The Downs Law Group
3250 Mary Street
Suite 307
Coconut Grove, Florida 33133
ddurkee@downslawgroup.com

/s/ Jodi Jacobs Aamodt
Stanley Jacobs
Jodi Jacobs Aamodt
Jacobs Manuel Kain & Aamodt
500 St. Louis Street, Ste. 200
New Orleans, LA 70130
504-523-1444 (Office)
Jmk_jodi@bellsouth.net

Ashley M. Liuzza (LA No. 34645)
Merritt E. Cunningham (LA No. 32843)
Matthew D. Rogenes (LA No. 36652)
Stag Luizza, LLC
365 Canal Street, Suite 2850
New Orleans, LA 70130
(504) 593-9600

/s/ Joseph F. Gaar, Jr.
Joseph F. Gaar, Jr. # 16927
Jason M. Welborn # 26548
Joseph F. Gaar, Jr., APLC
Attorneys at Law
114 Representative Row
Lafayette, Louisiana 70508
(337) 233-3185
joseph@gaarlaw.com
jason@gaarlaw.com

/s/ D. C. Panagiotis
D.C. Panagiotis (#15032)
The Panagiotis Firm
1540 W. Pinhook Rd.
Lafayette, LA 70503
(337) 264-1516
Dan@panalaw.com

/s/ Stephen S. Kreller
Stephen S. Kreller (Bar No. 28440)
The Kreller Law Firm
757 St. Charles Avenue, Suite 301
New Orleans, LA 70130
T: (504) 484-3488
ssk@krellerlaw.com

/s/ Joseph F. Rice
Joseph F. Rice (S.C. Bar No. 4710)
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
 (843) 216-9159
jrice@motleyrice.com

Attorney for Plaintiff, Debra Miles, (13-02715)

| | |
|---|---|
| /s/ Brandon J. Taylor | /s/ Michael J. Ryan |
| Philip F. Cossich, Jr., (LA No. 1788 (T.A.)) | Kelley B. Stewart (FL No. 492132) |
| Brandon J. Taylor (LA No. 27662) | Michael J. Ryan (FL No. 975990) |
| David A. Parsiola (LA No. 21005) | Joseph J. Slama (FL No. 476171) |
| Darren D. Sumich (LA No. 23321) | Kevin A. Malone (FL No. 224499) |
| Cossich Sumich Parsiola & Taylor, LLC | Carlos A. Acevedo (FL No. 0097771) |
| 8397 Highway 23, Suite 100 | Krupnick, Campbell, Malone, Buser, Slama, Hancock, P.A. |
| Belle Chasse, LA 70037-2648 | 12 Southeast Seventh Street, Suite 801 |
| Telephone: (504) 394-9000 | Fort Lauderdale, FL  33301-3434 |
| | 954-763-8181 |
| | kstewart@krupnicklaw.com |
| | mryan@krupnicklaw.com |
| | jslama@krupnicklaw.com |
| | kmalone@krupnicklaw.com |
| | cacevedo@krupnicklaw.com |

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **PLAINTIFFS' PROPOSAL FOR FUTURE CASE MANAGEMENT AND PROCEDURES FOR ULTIMATE RESOLUTION OF THE CLAIMS OF THE OPT-OUT PLAINTIFFS IN THE B3 BUNDLE** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 23rd day of October, 2020.

/s/ Paul A. Dominick
Paul A. Dominick