UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUSIANA

| | | |
|---|---|---|
| **In Re: Oil Spill by the Oil Rig** | * | |
| **"Deepwater Horizon" in the Gulf** | | **MDL 2179** |
| **of Mexico, on April 20, 2010** | * | |
| | | **SECTION: J(2)** |
| **This Document Relates To:** | * | |
| | | **JUDGE BARBIER** |
| **CIVIL ACTION No. 2:16-cv-13874** | * | |
| *Lee vs. BP Exploration & Production,* | | **MAG. JUDGE WILKINSON** |
| *Inc., et al.* | * | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO MOTION TO AMEND THE COURT'S ORDER GRANTING BP'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to this Court's October 7, 2020 Order (Rec. Doc. 26716), Plaintiff Tiffany Lee respectfully submits this reply to Defendant's Response to Plaintiff's Rule 59(e) Motion to Amend the Court's Order Granting BP's Motion for Summary Judgment ("BP Opp."). BP's opposition to Plaintiff Tiffany Lee's motion constitutes nothing more than a failed attempt to rewrite the record and to misconstrue prior decision of this Court. Plaintiff respectfully submits that the Court should grant her motion for the reasons set forth in her moving brief and as further set forth below.

**I.   It Is Within The Court's Discretion to Grant Plaintiff Tiffany Lee's Motion**

This Court has discretion to grant Plaintiff Lee's Rule 59(e) motion. BP's reliance on *In re: Deepwater Horizon (Barrera),* 907 F.3d 232 (5th Cir. 2018), is misplaced. BP Opp. at 2. That decision holds that deference should be given to district courts, and especially MDL courts, when the court dismisses a litigant for failure to comply with the court's order. In *Barrera*, the plaintiffs' cases were dismissed because they failed to comply with this Court's PTO 60. Here, Plaintiff complied timely with the sister order to PTO 60 – in the case of the B3 claims PTO 63.

Indeed, Plaintiff has timely complied with every order of this Court, completing her responses to PTOs 63, 66, and 68. What Plaintiff admittedly did not timely submit was her opposition to BP's motion – a motion that should never have been made in the first place because Plaintiff is not a clean-up worker nor a resident plaintiff, and thus not a class member, and the motion was not filed in her individual case nor served on both of her counsel.

BP also twists Plaintiff's motion to suggest that her counsel did not comply with PTO 1 and 12 by failing to register for ECF notifications. That is simply false, and BP well knows that. To the contrary, of course Plaintiff's counsel registered for ECF notifications, and received notifications, throughout the MDL proceedings – indeed for nearly eight years – pursuant to PTO 12. But sometime in 2018, changes appear to have been made (by whom counsel does not know), which removed Plaintiff's counsel's name – and many other counsel who were part of the Plaintiffs' Steering Committee -- such that Plaintiff's counsel no longer received ECF notifications (see Exhibit A, screen shot). Plaintiff's counsel did not realize this, however, until receipt of the Court's order dismissing Ms. Lee's case because that order was filed in her individual case and her counsel thus received the ECF notification. Regardless, counsel for Plaintiff did not "remove" themselves from MDL ECF notifications, as BP baselessly accuses. In any event, even if counsel had known in 2018 that they were no longer listed to receive general MDL ECF notifications, counsel would not have seen that as posing an issue for counsel as the only two remaining MDL cases counsel has are two B3, personal injury, non-B3 class cases for which counsel filed individual actions and are registered to receive ECF notifications in those cases. As BP concedes, it did not file its summary judgment motion in Plaintiff Lee's action. Nevertheless, when counsel received the Court's order granting summary judgment (because the Court's order was filed in Plaintiff Lee's individual case), counsel realized that

BP's motion had been filed in the general MDL docket, that counsel had been removed as a party to receive such ECF notifications, and that Plaintiff Lee's case had been dismissed based on misleading facts that BP submitted to the Court in its summary judgement motion.

Moreover, it is not for BP to decide who to serve and who not to serve with motions. See BP Opp. at 5. BP admittedly failed to serve Plaintiff Lee's co-counsel, Duke Williams, Esq., the only other counsel of record for Plaintiff Lee.

## II. Plaintiff Tiffany Lee Is Not A Class Member And Her Case Should Not Be Dismissed

As this Court is well aware, the B3 Master Settlement Agreement (MSA) only compensated badged clean-up workers and residents residing within Zones A and B. As Ms. Lee fully explained in her Rule 59 motion, she was not a badged cleanup worker and is not, and never was, a member of the B3 medical benefits class. She has consistently and correctly represented such facts in all of her sworn filings pursuant to the orders of this Court.

In PTO 63, for instance, Plaintiffs had to answer the question: "Did you participate in any of the following Response Activities* in response to the *Deepwater Horizon* incident?" The term "Response Activities" is defined as "the clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances that were done under the auspices of the Unified Command, BP, or a federal, state, or local authority." Putting aside the recursive definition of "response activities" involving "responsive actions" to the Oil Spill, the intention of the MSA has always been to compensate individuals who experienced personal injuries in the course of their work deploying dispersants, removing oil and dispersant products from the beaches of the Gulf Coast, decontaminating vessels or wildlife, skimming and removing oil from the water as part of the VoO program, etc.,

3

and to residents who lived within a defined proximity to the contaminated beaches and wetlands and thus had similar exposure to the substances as those employed to perform cleanup work. The below are the response activities that follow the above question on PTO 63, followed by Plaintiff Lee's lack of inclusion in any of the enumerated activities:

- Captain, crew, or other worker employed under the Vessels of Opportunity ("VoO") program who performed Response Activities.
  *Ms. Lee was not involved in the VoO program in any way.*

- Workers employed to perform the decontamination of vessels involved in Response Activities.
  *Ms. Lee was not employed to decontaminate vessels involved in Response Activities.*

- Captains, crew, and other workers on vessels other than VoO who performed Response Activities.
  *While Ms. Lee was sent by Hypack, her employer at the time, to train crew members on a vessel in how to use her company's hydrographic software program for underwater mapping and navigation, her work did not include work on vessels performing Response Activities. The company's website describes HYPACK, the software that Ms. Lee was training the crew of the Fugro John Chance to use, as follows:*

    > o  *HYPACK - A Xylem Brand and now part of AIA is a Windows based software for the Hydrographic and Dredging Industry. Founded in 1984, HYPACK, Inc (formerly Coastal Oceanographics, Inc.) has evolved from a small hydrographic consultant to one of the most successful providers of hydrographic and navigation software worldwide. HYPACK® is one of the most widely used hydrographic surveying packages in the world, with more than 10,000 users. It provides the Surveyor with all the tools needed to design their survey, collect data, process it, reduce it, and generate final products. Whether you are collecting hydrographic survey data or environmental data, or just positioning your vessel in an engineering project, HYPACK provides the tools needed to complete your job. With users spanning the range from small vessel with just a GPS and single beam echosounder to large survey ships with networked sensors and systems, HYPACK gives you the power needed to complete your task in a system your surveyors can master.[1]*

  *The Fugro John Chance was mobilized to perform emergency hydrographic surveys in the Gulf of Mexico by the federal government. But Ms. Lee was not a crewmember of the Fugro John Chance. To claim that Ms. Lee is a badged cleanup worker under the MSA because her Connecticut employer assigned her to conduct a week-long training session*

---

[1] Hypack Website, *Hydrographic Survey Software for Data Collection, Terrain Imaging*, https://www.hypack.com/ (last accessed October 30, 2020).

> *for the crew of a vessel that was asked to survey waterways in the Gulf of Mexico is baseless.*

- Onshore personnel employed to perform Response Activities.
  *Ms. Lee did not work onshore in any capacity related to the Oil Spill.*

- Persons involved in the recovery, transport, and decontamination of wildlife affected by the *Deepwater Horizon* incident.
  *Ms. Lee did not work in any capacity related to the recovery, transport, or decontamination of wildlife affected by the Oil Spill.*

The Proof of Claim Form required under the MSA states as follows:

Unless otherwise specified, the information requested for a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER ("You") refers to the person who:

1) Worked as a CLEAN-UP WORKER between April 20, 2010, and April 16, 2012;
2) Resided in ZONE A […] and who developed one or more SPECIFIED PHYSICAL CONDITIONS […]; and/or
3) Resided in ZONE B […].

Ms. Lee was a resident of Connecticut and, as shown above, does not fall into any of these categories for "clean-up worker".

Finally, and what should shut down BP's argument entirely, is the information provided **by BP** to the B3 Medical Benefits Class Claims Administrator Garretson Resolution Group (GRG) to determine class membership. Pursuant to Section XXI.D.1 of the MSA, non-resident class members included only those individuals identified in the badged cleanup worker databases, the medical encounters database, and other documentation/records showing that the individual was authorized to enter the site and perform clean-up activities. Ms. Lee was not a badged cleanup worker, and, even though such status would not extend to her even if it were not so, to the best of her knowledge the crew of the Fugro John Chance were similarly not badged cleanup workers when she worked with them. To be sure that she was not covered as a class member under the MSA, Ms. Lee submitted documentation to GRG, as contemplated by the MSA, to request a search of the BP database to determine whether she was included in the class.

In accordance with established class claims procedures, she completed a Data Disclosure Form, including her social security number, full name, the names of her employer, her contacts at the Fugro John Chance, the dates of her work, her contact information, her date of birth, and a copy of her driver's license. GRG time and again informed Ms. Lee that she does not appear on any of BP's lists.

The Proof of Claim Form for participation in the B3 class allows class members to submit documentation to establish their status as a cleanup worker under the MSA with several pieces of documentary evidence, including "pay stub(s), W-2 form(s), 1099 form(s), employment agreement(s), a copy of your worker identification badge, tax return(s), other documents created at the time of your employment that establish proof of employment," or a "declaration from your employer." As stated multiple times in Ms. Lee's sworn submissions, her employer at the time was Hypack, a Connecticut company involved in the creation of hydrographic surveying software; no pay stub, W-2 form, 1099 form, employment agreement, or tax return would indicate that she was performing clean-up work because she was not and has never been a cleanup worker. There is no documentary evidence that establishes Ms. Lee as a clean-up worker, nor is there any evidence that Ms. Lee was present in any of the records or databases provided by BP to GRG to establish class membership. Indeed, the Claims Administrator specifically informed Ms. Lee on several occasions that she was not in any BP records or databases.

Ms. Lee should be treated like the other three plaintiffs that were subject to the BP's summary judgment motion –Thomas Bodiford, Lillie Coleman, and Jordan Dixey– as, like Ms. Lee, none of these individuals were class members.  Accordingly, Plaintiff Tiffany Lee respectfully requests that the Court grant her motion pursuant to Rule 59.

### III. Conclusion

For the foregoing reasons, Plaintiff Tiffany Lee respectfully requests that the Court grant her motion to amend the judgement.

Respectfully submitted,

By: /s/ *Robin L. Greenwald*
Robin L. Greenwald, Esq.
WEITZ & LUXENBERG, P.C.
700 Broadway
New York, New York 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461

*Attorney for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply to Defendant's Response to Plaintiff's Motion to Amend the Court's Order has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 2nd day of November, 2020.

      /s/ *Robin L. Greenwald*
      Robin Greenwald