UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * | MDL 2179 |
| | | SECTION: J(2) |
| Applies to:<br>No. 13-1658, Allstar Pipe Services, Inc. v. BP Expl. & Prod. Inc., et al. | * * | JUDGE BARBIER |
| | | MAG. JUDGE CURRAULT |

## ORDER & REASONS

In 2013, Allstar Pipe Services, Inc. ("Allstar") sued BP and other defendants for economic losses it allegedly incurred as result of the DEEPWATER HORIZON/Macondo Well oil spill. That case (No. 13-1658) was consolidated with this multidistrict litigation as part of the "B1" pleading bundle. In Pretrial Order No. 69 ("PTO 69," Rec. Doc. 26709), the Court ordered Allstar to show cause why its case should not be dismissed on the grounds that it is part of a class of plaintiffs who settled and released their claims in the *Deepwater Horizon* Economic and Property Damages Settlement Agreement ("Economic Settlement" or "the Settlement," Rec. Doc. 6430).[1] Allstar timely responded to the show cause order (Rec. Docs. 26729, 26825), and BP replied (Rec. Docs. 26755, 26828). After considering the parties' arguments, the applicable law, and the relevant record, the Court holds that Allstar's case is barred by the Settlement. Accordingly, the Court will dismiss Allstar's claims.

♦

The Economic Settlement is a class action settlement that the Court approved

---

[1] PTO 69 required four other B1 plaintiffs to show cause why their cases should not be dismissed. The Court has already ruled on those plaintiffs. (*See* Order of Dec. 4, 2020, Rec. Doc. 26802).

in 2012 pursuant to Federal Rule 23(e). (Rec. Docs. 8138, 8139). This Court retains continuing and exclusive jurisdiction over the Settlement, including its interpretation, implementation, and enforcement. (Settlement § 18.1). The Settlement contains a class-wide release whereby class members, in exchange for certain benefits, agreed to "release and forever discharge with prejudice" certain "Released Claims"—which are most, but not all, claims arising from the subject oil spill—against BP and several other defendants (i.e., the "Released Parties"). (Settlement §§ 10.1, 10.2). In other words, the Settlement is "the exclusive remedy for any and all Released Claims by or on behalf of . . . all . . . Class Members against any and all Released Parties, and . . . Class Members shall not recover . . . any sums from any Released Parties for any Released Claims other than those received . . . under the terms of the Settlement . . . ." (Order & Judgment ¶ 9, Rec. Doc. 8139).

BP asserts that Allstar is part of the Settlement class; therefore, the Settlement's class-wide release bars Allstar's lawsuit. Allstar responds that it is excluded from the class by the "Oil and Gas Industry" exclusion; consequently, its claims are unaffected by the Settlement. Arguing in the alternative, Allstar also contends that if it is a class member and if it had filed a claim in the Settlement, this Court's order of October 3, 2018 would have removed that claim from the Settlement and required Allstar to pursue it in litigation, which is exactly what Allstar did. In Allstar's view, then, all roads lead to Rome.

♦ ♦

The first issue is whether Allstar is a class member. Section 1 of the Settlement

sets forth the general class definition. There is no dispute that Allstar satisfies the requirements of Section 1. Section 2 then excludes certain types of businesses from the class, one of which is the "Oil and Gas Industry." (Settlement § 2.2.4.5). "Oil and Gas Industry" is defined by a list of NAICS[2] codes contained in Exhibit 17 to the Settlement. The question boils down to which NAICS code best describes the primary nature of Allstar's business. *See BP Expl. & Prod., Inc. v. Claimant ID 100211268*, 706 F. App'x 197 (5th Cir. 2017) (unpublished). If that code is in Exhibit 17, then Allstar is part of the "Oil and Gas Industry" and excluded from the class.[3]

Allstar argues that code 213112, entitled "Support Activities for Oil and Gas Operations," is the correct NAICS code for its business. That code applies to businesses

> primarily engaged in performing support activities on a contract or fee basis for oil and gas operations (except site preparation and related construction activities). Services included are exploration (except geophysical surveying and mapping); excavating slush pits and cellars, well surveying; running, cutting, and pulling casings, tubes, and rods; cementing wells, shooting wells; perforating well casings; acidizing and chemically treating wells; and cleaning out, bailing, and swabbing wells.

(Settlement, Ex. 17 at 26695). BP contends the correct code is 532412, "Construction, Mining, and Forestry Machinery and Equipment Rental Leasing." That code applies

---

[2] NAICS stands for North America Industry Classification System.
[3] The Court pauses to note that this is not the first time BP has disagreed with a potential class member over the Oil and Gas Industry exclusion. *See, e.g.*, *Claimant ID 100211268*, 706 F. App'x at 197; *BP Expl. & Prod., Inc. v. Claimant ID 100214656*, No. 18-30887 (5th Cir. Apr. 16, 2019) (unpublished); *BP Expl. & Prod., Inc. v. Claimant ID 100126024*, 769 F. App'x 120 (5th Cir. 2019) (unpublished); *BP Expl. & Prod., Inc. v. Claimant ID 100157225*, 777 F. App'x 721 (5th Cir. 2019) (unpublished). However, usually BP is the one arguing the exclusion applies to bar a claimant from the Settlement, while the claimant fights to be in the Settlement class. Here, the roles are reversed: BP argues Allstar is within the class; Allstar argues it is without. While this is a new twist on an old problem, the analysis is unchanged.

to businesses "primarily engaged in renting or leasing heavy equipment without operators that may be used for construction, mining, or forestry, such as . . . well-drilling machinery and equipment." (Settlement, Ex. 19 at 14). Code 532412 also contains a list of business types to which it applies, one of which is "oil field machinery and equipment rental or leasing."

In 2018—two years before PTO 69 issued—Allstar's president submitted in this MDL a sworn statement that described Allstar's business as follows:

> [Allstar] generated income by selling and renting equipment primarily to the oil and gas industry along the Gulf Coast. Specifically, most of [Allstar's] revenues prior to the Spill were derived from, inter alia, renting out thread protectors, pipe slings, and specialized shipping containers (called "bolsters") that are utilized primarily on vessels to safely transport production tubing to and from work over rigs located in the Gulf of Mexico.

(Rec. Doc. 26755-2 at 5). Allstar's attorney made identical statements in a 2019 letter submitted pursuant to a court-ordered mediation process. (Rec. Doc. 26755-1 at 2). More recently, Allstar's president submitted a declaration in response to PTO 69 where he states, consistent with the two prior statements, that "Allstar engaged in the wholesale rental and sales distribution of oil well machinery, equipment, and supplies." (Rec. Doc. 26729-1 at ¶7). The only difference arguably worth mentioning is that this declaration does not specify that "most" of Allstar's revenue came from equipment rentals.

In light of Allstar's own statements, the Court finds that code 532412 better describes Allstar's primary business activity than code 213112. Indeed, "oil field machinery and equipment rental or leasing"—one of the specific business types listed

4

under code 532412—appears to be a perfect description of how Allstar earned "most" of its revenue according to the 2018 sworn statement and 2019 letter, if not also the most recent declaration. On the other hand, code 213112 applies to businesses that provide certain oil and gas-related services, such as surveying wells, running casing, cementing wells, etc. While Allstar's customers likely performed these services, Allstar apparently did not.

Code 532412 is not in Exhibit 17; therefore, Allstar cannot avail itself of the Oil and Gas Industry exclusion. As a class member, Allstar was required to opt out of the Settlement by November 2012 if it did not wish to be bound by the Settlement's terms, including the class-wide release. (*See* Settlement § 2.2.1; Order of Aug. 27, 2012, Rec. Doc. 7176)). There is no dispute that Allstar did not opt out of the Settlement.

♦ ♦ ♦

This brings Allstar's alternative argument to the fore. Allstar did not file a claim with the Settlement, and the deadline for doing so passed in 2015. Nevertheless, Allstar contends that if it had filed a claim under the Settlement, that claim would have been placed on "Moratoria Hold" and so remained until October 3, 2018, when the Court excluded all Moratoria Hold claims from the Settlement. (*See* Rec. Doc. 24945). Thus, Allstar argues that even if BP is correct that the Oil and Gas Industry exclusion is not applicable, the result is the same: Allstar's claim is excluded from the Settlement and, therefore, unaffected by the class-wide release.

Some additional background information is required before engaging this issue.

5

As mentioned above, the Economic Settlement released most, but not all, class members' claims arising from the blowout and oil spill. "Moratoria Losses" are an "Expressly Reserved Claim" under the Settlement, meaning such losses are "not recognized or released under the [Settlement], and are reserved to . . . Class Members." (Settlement §§ 3, 3.3; *see also* Settlement § 5.10.3.1.3-.4).[4] The Settlement contains a process to screen some claims for potential Moratoria Losses. If a claimant's business is one of the types identified in Exhibit 19 § I to the Settlement, then its claim is "subject to automatic review for potential moratoria losses"; i.e., it is placed on "Moratoria Hold." (Settlement, Ex. 16 at 1). The Settlement's provisions regarding this screening process is incomplete, however. Because a claim on Moratoria Hold may contain a mixture of Moratoria Losses and non-Moratoria Losses, the Settlement contemplated that BP and Class Counsel would later agree to a set of parameters that the Claims Administrator would then use to segregate the Moratoria Loss component and process and possibly pay the non-Moratoria Loss component. (Settlement, Ex. 16 at 3-4). However, BP and Class Counsel never reached an agreement; consequently, many claims simply remained on Moratoria Hold. (*See* Rec. Doc. 24945 at 1). In 2016, the Court appointed a team of neutrals to attempt to resolve, inter alia, claims that were stuck in Moratoria Hold. (*See* Order

---

[4] The Settlement defines "Moratoria Losses" as:

> any loss whatsoever caused by or resulting from federal regulatory action or inaction directed at the offshore oil industry activity—including shallow water and deepwater activity—that occurred after May 28, 2010, including the federal moratoria on offshore permitting and drilling activities imposed on May 28, 2010 and July 12, 2010 and new or revised safety rules, regulations, inspections or permitting practices.

(Settlement § 38.93).

of March 17, 2017, Rec. Doc. 22390). The neutrals' process resulted in direct settlements between many of these claimants and BP, upon which the claimant would withdraw its claim from the Economic Settlement. (*Id.*). In this manner, the neutrals' process greatly reduced the number of claims on Moratoria Hold from several thousand to around 70.[5] Nevertheless, the impasse between BP and Class Counsel over the Moratoria Hold parameters continued. In light of this, on October 3, 2018, the Court issued an order that excluded from the Settlement any claims that were still on Moratoria Hold. (Rec. Doc. 24945). These newly-excluded claims could proceed in litigation provided they complied with certain conditions, such as filing a complaint and fulfilling the requirements of various pretrial orders. (*Id.* at 2-4).

One type of business that was subject to an automatic Moratoria Hold is "oil field machinery and equipment rental or leasing" under NAICS code 532412. (*See* Settlement, Ex. 19 at 14). As discussed above, Allstar meets this description. Therefore, Allstar is likely correct that ***if*** it had filed a claim in the Settlement, its claim would have been placed on Moratoria Hold.[6] However, the reality is that Allstar did not file a claim in the Settlement, and this reality has consequences.

The October 3, 2018 order applied only to claimants who, unlike Allstar, filed a claim in the Settlement that was on Moratoria Hold at the time of the order. (Rec. Doc. 24945 at 2 ("[A]ny Claimant (i) who has received a notice from the Settlement

---

[5] An order from March 2017 states that the neutrals' process reduced the number of claims on Moratoria Hold to 150, as opposed to 70. (Rec. Doc. 22390). The difference in figures is due to the fact that additional Moratoria Hold claims were settled after the March 2017 order issued.
[6] Whether Allstar's hypothetical claim would have still been on Moratoria Hold when the October 3, 2018 order issued is far from certain, as discussed below.

7

Program that his, her, or its claim is subject to a 'Moratoria Hold' and (ii) that claim has not been resolved to date . . . will be deemed hereby EXCLUDED from the Settlement and instead may proceed with its claim in litigation before this Court by compliance with the terms of this Order.")). Because Allstar never filed a claim with the Settlement, the order has no application to Allstar.

Additionally, even if Allstar had timely filed a claim in the Settlement, it is speculative to state what the final result would have been. The Court, having supervised the Settlement for the past nine years, is aware that claims placed on Moratoria Hold met a variety of outcomes. For example, some claims were initially placed on Moratoria Hold because of their NAICS code, but the hold was later lifted after the Claims Administrator determined that no aspect of the claim concerned Moratoria Loss. (*See*, *e.g.*, Claimant ID 100234405, Doc. ID 18238680). These claims were then processed and either paid, denied, or voluntarily withdrawn.[7] Relevant to this point, Allstar states in its brief that "the so-called deep-water drilling 'Moratorium' has no application to [its] case." (Rec. Doc. 26729 at 4 n.2). If this is accurate, then it is possible that the Claims Administrator would have removed the Moratoria Hold from Allstar's claim as well. Of course, no one will ever know what the outcome would have been, because Allstar did not file a claim in the Settlement.

Another, more prevalent example of the fate of Moratoria Hold claims comes from the neutrals' process discussed above. Following that process, only a small percentage of the claims initially placed on Moratoria Hold remained in that state

---

[7] In the case of Claimant ID 100234405, cited in the previous sentence, its claim was ultimately denied for insufficient documentation.

8

when the October 3, 2018 order issued. Thus, if one is going to speculate about a hypothetical claim in the Settlement, the collective experience of actual Moratoria Hold claims suggests that it is unlikely Allstar's claim would have still been on Moratoria Hold on October 3, 2018.

At bottom, the Court decides this matter based on what actually occurred, not what may have occurred. Allstar did not file a claim in the Settlement; therefore, the October 3, 2020 order did not exclude it from the Settlement. Furthermore, because Allstar is a class member, its claim in litigation is barred by the Settlement's class-wide release.

♦ ♦ ♦ ♦

Accordingly,

IT IS ORDERED that the order to show cause in PTO 69 (Rec. Doc. 26709) is NOT satisfied, and Allstar's claims in member case no. 13-1658 are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 7th day of January, 2021.

_____
United States District Judge

**Note to Clerk: File in 10-md-2179 and 13-1658.**