# United States Court of Appeals
# for the Fifth Circuit

No. 20-30300

United States Court of Appeals
Fifth Circuit
**FILED**
January 11, 2021
Lyle W. Cayce
Clerk

IN RE: DEEPWATER HORIZON,

BRADLEY SHIVERS; MARK MEAD; SCOTT RUSSELL,

*Plaintiffs—Appellants*,

*versus*

BP, P.L.C.; BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA, INCORPORATED; BP PRODUCTS NORTH AMERICA, INCORPORATED; TRITON ASSET LEASING GMBH; TRANSOCEAN HOLDINGS, L.L.C.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED; TRANSOCEAN DEEPWATER, INCORPORATED; TRANSOCEAN, LIMITED; HALLIBURTON ENERGY SERVICES, INCORPORATED; CAMERON INTERNATIONAL CORPORATION, *formerly known as* COOPER CAMERON CORPORATION; ANADARKO PETROLEUM CORPORATION,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC 2:10-CV-3261

Before HAYNES, HIGGINSON, and OLDHAM, *Circuit Judges*.

Per Curiam:[*]

Plaintiffs—Bradley Shivers, Scott Russell, and Mark Mead—sued BP and a number of other defendants (collectively, "Defendants") to recover for negligent infliction of emotional distress that they allegedly suffered when they participated in efforts to rescue individuals in the aftermath of the *Deepwater Horizon* explosion. The district court dismissed their complaint for failure to state a negligent infliction of emotional distress claim. We AFFIRM.

## I. Background

### A. Factual Allegations

We provide the relevant allegations from Plaintiffs' operative complaint. On the day of the *Deepwater Horizon* explosion, Plaintiffs were out on a fishing trip. Plaintiffs were about fifteen miles away from the *Deepwater Horizon* at the time of the explosion, saw what appeared to be a rig on fire, and heard and felt a sonic boom. Shortly after, Plaintiffs responded to a distress call from the *Deepwater Horizon* on their radio.

Arriving at the scene about twenty minutes later, they saw people, lifeboats, and fiery debris in the water. Plaintiffs proceeded to try to help rescue individuals; they navigated their small fishing vessel around floating wreckage from the *Deepwater Horizon* and used gaffs to push fiery debris away from their boat. While searching for people in the water, Plaintiffs kept 100 to 200 feet from the burning rig; they could not go any closer due to the overwhelming heat, which melted parts of the powder coating of their boat.

As they made laps around the *Deepwater Horizon* looking for individuals, flames from the rig jumped as high as 500 feet in the air and

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

subsequent explosions occurred on the burning rig every few minutes. Plaintiffs thus "believed they were under constant threat of another massive explosion that would send debris towards them and their boat" as they continued with their rescue attempt. Plaintiffs also "felt and heard deep rumbling sounds coming from deep below the surface of the water," which shook their boat and caused them to believe that they were at immediate risk of harm.

After about five hours, Plaintiffs "decided they could be of no further help" and left; "their fuel was low," and there were "approximately 40 boats . . . and Coast Guard choppers" at the scene. The extent of Plaintiffs' physical injuries from their rescue efforts were burned faces, singed hair, and "scratches and bruises." One plaintiff had "smashed his hand." Plaintiffs also asserted that they suffered emotional distress from the explosions and what they witnessed during their rescue efforts.

**B.     Procedural History**

Plaintiffs sued Defendants for negligent infliction of emotional distress.[1] *See In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mex., on Apr. 20, 2010*, 452 F. Supp. 3d 455, 460 (E.D. La. 2020). Defendants moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See id.* The district court granted Defendants' motion and dismissed Plaintiffs' complaint with prejudice. *Id.* at 463. It determined that a plaintiff could recover for negligent infliction of emotional distress if he satisfies either the physical-injury-or-impact ("physical-injury test") or the zone-of-danger test under general maritime law but held that Plaintiffs

---

[1] Plaintiffs also asserted a claim for intentional infliction of emotional distress. *See In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mex., on Apr. 20, 2010*, 452 F. Supp. 3d 455, 463 (E.D. La. 2020). The district court dismissed that claim, *id.*, and Plaintiffs do not raise it on appeal.

failed to plead sufficient facts for a negligent infliction of emotional distress claim under either test. *Id.* at 461–63. Plaintiffs timely appealed.

## II. Standard of Review

We review a district court's dismissal under Rule 12(b)(6) de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc) (quotation omitted). Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," which requires "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (first quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III. Discussion

Plaintiffs argue that they raised a plausible cause of action under both the physical-injury and zone-of-danger tests. Although we have recognized recovery under the physical-injury test for general maritime claims of emotional injury, *see Plaisance v. Texaco, Inc.*, 966 F.2d 166, 169 (5th Cir. 1992) (en banc), we have left open the question of whether a zone-of-danger negligent infliction of emotional distress claim presents a recoverable injury, *see Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 224 (5th Cir. 2013). Because we ultimately conclude neither test is met, we decline to decide that open question.

### A. Physical-Injury Test

Under general maritime law, a plaintiff may "recover[] for emotional injury provided there is some physical contact." *Plaisance*, 966 F.2d at 168 (quotation omitted). That physical contact must, however, be more than "trivial." *See Ainsworth v. Penrod Drilling Corp.*, 972 F.2d 546, 547 (5th Cir.

1992) (per curiam); *see also Metro-North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 432 (1997) (explaining that "physical impact" does not encompass "every form of 'physical contact'"). Therefore, "transitory, non-recurring physical phenomena, harmless in themselves, such as dizziness, vomiting, and the like," are insufficient to establish physical impact. RESTATEMENT (SECOND) TORTS § 436A cmt. c (AM. L. INST. 1965); *see also Plaisance v. Texaco, Inc.*, 937 F.2d 1004, 1009 (5th Cir. 1991) (obtaining the requirements to satisfy the physical-injury test from that Restatement section). Moreover, there must be a causal relationship between the impact and the injury: the emotional injury must "result[] from" the physical contact. *Ainsworth*, 972 F.2d at 547.

Here, Plaintiffs' pleaded injuries do not appear to be significant enough to meet the physical-injury test. But, even if they did, Plaintiffs failed to allege that their physical injuries resulted in their emotional distress. Per the complaint, their distress stems instead from what they *saw*: first the exploding rig and later the destruction in the surrounding water. We thus affirm the district court's holding that Plaintiffs failed to plead sufficient facts to satisfy the physical-injury test.

## B. Zone-of-Danger Test

Assuming arguendo that a plaintiff bringing a maritime claim of emotional injury may recover under the zone-of-danger test, Plaintiffs also fail to adequately plead a zone-of-danger negligent infliction of emotional distress claim. In non-maritime cases where such a claim has been allowed, it has been necessary for a plaintiff to plausibly allege that he was at "immediate risk of physical harm."[2] *Barker*, 713 F.3d at 224 (quoting *Consol.*

---

[2] A plaintiff may also plead to having "sustain[ed] a physical impact as a result of the defendant's negligent conduct." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 547–48

No. 20-30300

*Rail Corp. v. Gottshall*, 512 U.S. 532, 548 (1994)). Whether a plaintiff is at immediate risk includes both objective and subjective components; the plaintiff must "objectively [be] within a zone of danger" and subjectively "fear[] at the time of the incident that his life or person was in danger." *Anselmi v. Penrod Drilling Corp.*, 813 F. Supp. 436, 442 (E.D. La. 1993); *see also Ainsworth*, 972 F.2d at 548 (rejecting liability because there was no objective nor subjective danger). The issue on appeal is whether Plaintiffs were objectively at immediate risk of danger.[3]

Plaintiffs argue that the following allegations in their complaint showed that they were objectively "under constant threat of another massive explosion that would send debris towards them and their boat" when they were attempting to rescue people in the water: There were "subsequent explosions every few minutes on the burning rig." They were "frequently forced to reverse their boat due to the overwhelming heat of the burning rig." They suffered burns on their faces and had their hair singed. Their boat's powder coating "melted in places." Lastly, they "felt and heard deep rumbling sounds coming from deep below the surface of the water." We conclude that these allegations are insufficient to satisfy the zone-of-danger test.

In the handful of instances where we have addressed whether a plaintiff was objectively within a zone of danger, we have held that the plaintiff must be in the same location as the accident and face immediate risk

---

(1994). But that prong simply encompasses the more demanding physical-injury test, which we discussed in Section III.A. *See id.*

[3] Defendants do not dispute that Plaintiffs alleged that they subjectively feared they were in danger, and we assume without deciding that those allegations would sufficiently satisfy the subjectivity prong.

6

of harm to satisfy the zone-of-danger test.[4] However, Plaintiffs here were never closer than "100 to 200 feet from the rig"—the location of the accident and subsequent explosions. Plaintiffs' allegations that they "felt and heard deep rumbling sounds coming from deep below the surface of the water" also do not place Plaintiffs at the site of the accident and subsequent explosions. Further, Plaintiffs did not face immediate risk of harm from these deep rumblings. Thus, Plaintiffs were objectively not within the zone of danger under our precedent.

Moreover, the two Eastern District of Louisiana cases cited by Plaintiffs do not support Plaintiffs' zone-of-danger argument. *See Anselmi*, 813 F. Supp. at 442–43; *SCF Waxler Marine LLC v. M/V ARIS T*, 427 F. Supp. 3d 728 (E.D. La. 2019), *appeal filed*, No. 20-30019 (5th Cir. Jan. 13, 2020). In *Anselmi*, the court held that the plaintiff was within the zone of danger because he was on the rig where the explosion occurred, "felt the impact of the explosion," "could not easily flee the scene," and had to spend "several hours" on the isolated, self-supporting rig before being able to leave. 813 F. Supp. at 437, 442. Conversely, the court in *SCF Waxler* held that the plaintiff was not within the zone of danger because the moving ship "did not strike, and never was in danger of striking, the dock on which [the plaintiff]

---

[4] *See Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 931, 938 (5th Cir. 2014) (holding that the plaintiff was within the zone of danger because he was in the crane house when the crane failed and caused the crane house to separate from the pedestal); *cf. Barker*, 713 F.3d at 224 (holding that the plaintiff was not within the zone of danger because he was two feet away from the opening in the drill floor, which was where the accident occurred, and had testified that he was "out of the dangerous position where something could have happened"); *Plaisance*, 966 F.2d at 167–68 (holding the same when the plaintiff "did not personally participate in fighting the fire" and "the fire did not spread" to other parts of the boat and thus did not put the plaintiff in any danger); *Ainsworth*, 972 F.2d at 548 (holding the same when the plaintiff was "approximately one hundred feet away from" the crash and admitted that he knew the crashed helicopter would not fall into the room he was in).

was working": the allision occurred "over 1,000 feet" from where the plaintiff stood, and by the time the ship passed, it was moving away from the plaintiff. 427 F. Supp. 3d at 785. Further, the court observed that the plaintiff "had ample time to leave the dock calmly before the [ship] passed." *Id.*

In other words, these Eastern District of Louisiana cases require a plaintiff seeking recovery under the zone-of-danger test to allege that they could not leave the dangerous area. But Plaintiffs plainly alleged that they could move their boat around in the water to avoid the "overwhelming heat of the burning rig" and that they voluntarily left the scene after they determined "they could be of no further help and their fuel was low."

Plaintiffs' argument fares no better under other circuits' case law. Federal courts of appeals that have addressed the zone-of-danger test in maritime cases hold that a plaintiff was objectively within the zone of danger if he (1) was at the same location where people got injured by the alleged negligent conduct (like our precedent);[5] (2) could not leave the dangerous area (like the Eastern District of Louisiana cases);[6] or (3) experienced a near-

---

[5] *See Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1410 (9th Cir. 1994) (holding that the plaintiff was in the zone of danger because she was in the same raft that had overturned and thrusted a person onto rocks and killed two others); *cf. Azzia v. Royal Caribbean Cruises, Ltd.*, 785 F. App'x 727, 729 (11th Cir. 2019) (per curiam) (holding that the plaintiffs were not within the zone of danger because they were not in the children's pool where their daughter almost drowned).

[6] *See Sawyer Bros., Inc. v. Island Transporter, LLC*, 887 F.3d 23, 39 (1st Cir. 2018) (holding that the plaintiffs were objectively within the zone of danger because they were in their vehicle "aboard a relatively small ferry as it attempted to traverse a sea roiled by large waves" when their vehicle tipped against the vessel's bulwark); *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1338 (11th Cir. 2012) (per curiam) (holding the same when the plaintiffs were "trapped in [a] bus during [a] shooting near [the beach]" where their daughter was shot to death).

miss collision.[7]  Plaintiffs did not plead any of these three scenarios.  We thus affirm the district court's holding that Plaintiffs failed to satisfy the zone-of-danger test, assuming arguendo that recovery under that test is permissible.[8]

Accordingly, we AFFIRM.

---

[7] *See Stacy v. Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033, 1034–35 (9th Cir. 2010) (holding that the plaintiff sufficiently stated a negligent infliction of emotional distress claim under the zone-of-danger test when he alleged that a cargo ship nearly collided with the boat he was on).

[8] Plaintiffs' citations to *Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403 (S.D. Fla. 1995), *Twyman v. Carnival Corp.*, 410 F. Supp. 3d 1311 (S.D. Fla. 2019), and *Destefano v. Children's National Medical Center*, 121 A.3d 59, 64 (D.C. 2015), for support are unpersuasive as those cases fall within the three scenarios mentioned above.  In *Williams*, the cruise ship passenger plaintiffs were at sea, trapped on their cruise ship, when the ship encountered a severe storm. 907 F. Supp. at 404.  In *Twyman*, the plaintiff father entered the same location where his son died to pull him out of the water. 410 F. Supp. 3d at 1316, 1325.  In *Destefano*, the plaintiff mother also entered the same location where her child fell and nearly fell herself while trying to rescue her child. 121 A.3d at 64, 72.