## Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

*****************************************************************

IN RE: OIL SPILL BY THE
OIL RIG *DEEPWATER HORIZON*
IN THE GULF OF MEXICO ON
APRIL 20, 2010

CIVIL ACTION NO. 10-MD-2179 "J"
NEW ORLEANS, LOUISIANA
WEDNESDAY, SEPTEMBER 9, 2020, 9:00 A.M.

THIS DOCUMENT RELATES TO
13-1658, 13-1286, 16-5923,
16-5941, 16-5952, 18-11120,
16-3966, 16-6126, 16-6131,
16-6118, 16-6585, 16-4149,
16-7488, 16-5277, 18-11122,
13-948 (CERTAIN CASES IN THE
B1 BUNDLE)

*****************************************************************

TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS VIA VIDEOCONFERENCE
HEARD BEFORE THE HONORABLE CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:   THE BUZBEE LAW FIRM
                     BY: CAROLINE E. ADAMS, ESQUIRE
                     600 TRAVIS STREET, SUITE 7300
                     JP MORGAN CHASE TOWER
                     HOUSTON TX  77002

OFFICIAL TRANSCRIPT

## Page 2

APPEARANCES CONTINUED:

LAW OFFICES OF RONNIE G. PENTON
BY: RONNIE G. PENTON, ESQUIRE
209 HOPPEN PLACE
BOGALUSA LA  70427

BRENT COON & ASSOCIATES
BY: BRENT W. COON, ESQUIRE
215 ORLEANS STREET
BEAUMONT TX  77701

EUGENE J. HOFFMAN, IV
ATTORNEY AT LAW
245 PONTCHARTRAIN DRIVE
SLIDELL LA  70458

THE KRELLER LAW FIRM
BY: STEPHEN S. KRELLER, ESQUIRE
757 ST. CHARLES AVENUE, SUITE 301
NEW ORLEANS LA  70130

JASON J. JOY & ASSOCIATES
BY: JASON J. JOY, ESQUIRE
909 TEXAS ST. SUITE 1801
HOUSTON TX  77002

ATTORNEYS FOR BP AMERICA
PRODUCTION COMPANY
AND BP EXPLORATION &
PRODUCTION INC.:   KIRKLAND & ELLIS
                   BY: MATTHEW T. REGAN, ESQUIRE
                   KRISTOPHER S. RITTER, ESQUIRE
                   300 NORTH LASALLE STREET
                   CHICAGO IL  60654

OFFICIAL TRANSCRIPT

## Page 3

APPEARANCE CONTINUED:

KIRKLAND & ELLIS
BY: CHRISTOPHER W. KEEGAN, ESQUIRE
555 CALIFORNIA STREET
27TH FLOOR
SAN FRANCISCO CA  94104

OFFICIAL COURT REPORTER:   CATHY PEPPER, CRR, RMR, CCR
                          CERTIFIED REALTIME REPORTER
                          REGISTERED MERIT REPORTER
                          500 POYDRAS STREET, ROOM B-275
                          NEW ORLEANS LA  70130
                          (504) 589-7779
                          Cathy_Pepper@laed.uscourts.gov

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT PRODUCED BY COMPUTER.

OFFICIAL TRANSCRIPT

## Page 4

P-R-O-C-E-E-D-I-N-G-S
WEDNESDAY, SEPTEMBER 9, 2020
M O R N I N G  S E S S I O N
(VIA VIDEOCONFERENCE)

THE COURT:  Good morning, everyone.

VOICES:  Good morning, Your Honor.

THE COURT:  All right.  Hopefully, everyone is present who needs to be present.

This matter is a status conference that the Court has scheduled to discuss and figure out how to proceed with the remaining B1 claimants or lawsuits.  It appears, from my list, that we have 16 remaining B1 cases.  I don't know if anyone wants to respond to whether they feel that number is accurate or not.

MR. REGAN:  Your Honor, Matthew Regan on behalf of BP.

I think in terms of the actual case number, I think we have 15, and I can walk through the five that we believe are no longer active since our filing in January of 2020, and then the actual number of cases is probably smaller than that because there are some related plaintiffs, but I think in the 15 range is what we have, Your Honor.

THE COURT:  Okay.  Well, we're close.  I'm showing 16; although, I'll tell you what I'll do, and you can check these

OFFICIAL TRANSCRIPT

5

09:05:53 1  off your list as we go through, I'm just going to read the case
09:05:56 2  numbers and the names of the plaintiffs really quickly.  We
09:06:07 3  have them, more or less, alphabetically, so not necessarily in
09:06:14 4  numerical case number order.
09:06:16 5          So, the first one I have on the list is 13-1658,
09:06:22 6  Allstar Pipe Services, Inc.  The attorney is listed as
09:06:29 7  Jason Joy from Houston.  Is Mr. Joy present on here?  It looks
09:06:34 8  like he is.
09:06:35 9          MR. JOY:  Present, Your Honor.
09:06:38 10         THE COURT:  Okay.  Thank you.
09:06:38 11         Then I have 13-01286, BioMarine Technologies and
09:06:49 12 Gulf Marine Institute of Technology, represented by
09:06:54 13 Garcia de la Garza, LLP, and the Kreller Law Firm.  Is someone
09:07:00 14 present from that group?
09:07:04 15         MR. KRELLER:  Yes, Your Honor.  Stephen Kreller.
09:07:06 16         THE COURT:  Okay.  Then 16-5923, Classy Cycles, Inc.,
09:07:11 17 from the Buzbee Law Firm in Houston.
09:07:14 18         MS. ADAMS:  Yes, Your Honor Caroline from the Buzbee
09:07:20 19 Law Firm.
09:07:20 20         THE COURT:  Okay.  You all have the next two also on my
09:07:23 21 list, 16-5941, Coastal Land Development Group and 16-5952,
09:07:32 22 Loggerhead Holdings, Inc., right?
09:07:35 23         MS. ADAMS:  Yes, Your Honor.  But Coastal Land
09:07:38 24 Development, we have reached a tentative settlement.  My client
09:07:42 25 is in bankruptcy, so we are getting approval from the Court.

OFFICIAL TRANSCRIPT

6

09:07:45 1          THE COURT:  Okay.  So, that is 16-5941, correct?
09:07:52 2          MS. ADAMS:  That is correct, Your Honor.
09:07:54 3          THE COURT:  Okay.  Then the next case I have is
09:08:02 4  18-11120, Enviro Tech Systems represented by Eugene Hoffman.
09:08:11 5          MR. HOFFMAN:  Yes, Your Honor.  I'm here.
09:08:13 6          THE COURT:  Hi.  Then 16-3966, Robert Evans.  I think
09:08:21 7  he's a *pro se* litigant.
09:08:24 8          16-6126, Fin & Feather Adventures, L.L.C.,
09:08:34 9  Kreller Law Firm and Al Robert.
09:08:38 10         MR. KRELLER:  Stephen Kreller.
09:08:41 11         THE COURT:  Okay.  Hi.  Then the next two appear to be
09:08:44 12 somewhat related claims, 16-6131, Fin & Feather Cabins, and
09:08:51 13 16-6118, Fin & Feather L.L.C., same law firms, correct?
09:08:57 14         MR. KRELLER:  Yes, Your Honor.
09:08:58 15         THE COURT:  So, all three of those cases are still
09:09:00 16 pending to your knowledge?
09:09:02 17         MR. KRELLER:  That is correct.
09:09:03 18         THE COURT:  All right.  Then we have 16-6585,
09:09:09 19 Global Disaster Recovery and Rebuilding Services, Brent Coon
09:09:15 20 Law Firm.
09:09:15 21         MR. COON:  Good morning, Your Honor, Brent Coon (audio
09:09:21 22 distortion gap).
09:09:21 23         THE COURT:  Good morning.
09:09:22 24         Then 16-4149, another *pro se* case, John Hanks,
09:09:32 25 Lady Luck Fishing -- It's either Lady Luck Fishing or

OFFICIAL TRANSCRIPT

7

09:09:32 1  Lucky Lady Fishing.  I'm not sure which.  Apparently, it's been
09:09:37 2  used interchangeably but that's a *pro se* case.
09:09:40 3          Then 16-07488, Nabaa, N-A-B-A-A, Gas Montgomery,
09:09:49 4  L.L.C., represented by Doug Lyons of Tampa and Samuel Adams of
09:09:57 5  Lynn Haven, Florida.  Is someone here from that firm or for
09:10:01 6  that case?  (No response.)
09:10:07 7          All right.  Then 16-5277, John DeSilva, The Bird
09:10:15 8  of Paradise, L.L.C, Ronnie Penton.
09:10:18 9          MR. PENTON:  Yes, Your Honor.  I am present for
09:10:22 10 The Bird of Paradise.
09:10:24 11         THE COURT:  All right.  Thank you.
09:10:24 12         Then 18-11122, Donald Thibodeaux is the claimant,
09:10:32 13 represented by ROE-DEE or Rodi Rispone of Baton Rouge.
09:10:40 14         MR. REGAN:  Your Honor, this is Matthew Regan.  I
09:10:44 15 believe that case is also one that's been resolved.  The
09:10:44 16 paperwork may not have gotten to the Court yet.
09:10:51 17         THE COURT:  So, that may account for the difference
09:10:52 18 between your number and mine, I don't know.  Were you including
09:10:55 19 that in your 15, Mr. Regan?
09:10:58 20         MR. REGAN:  We were not.  The only case that you have
09:11:00 21 not mentioned, Your Honor, that is the same number of 15 would
09:11:05 22 be Kirk Williams.
09:11:06 23         THE COURT:  Yeah, I have that.  That was my next and
09:11:08 24 last one, yes.
09:11:09 25         13-948, Kirk Williams, another *pro se* case.

OFFICIAL TRANSCRIPT

8

09:11:14 1          So, the only difference in my 15 and your 16 is
09:11:17 2  that Thibodeaux case, Donald Thibodeaux?
09:11:21 3          MR. REGAN:  That and the Coastal Land, Coastal Land
09:11:24 4  Development as well.
09:11:25 5          THE COURT:  Well, if both of those go away, I'm down to
09:11:28 6  14 then.
09:11:29 7          Okay.  All right.  So, I think we're all on the
09:11:32 8  same page.
09:11:33 9          I don't know much, actually, I don't know
09:11:39 10 basically anything about any of these cases other than I'm
09:11:44 11 assuming they all either have to be opt-outs or they could be
09:11:51 12 excluded claims, I'm not sure.  Does anybody want to identify
09:11:55 13 any of these excluded claims as opposed to opt-outs, B1
09:11:59 14 opt-outs?  Do you know, Mr. Regan?
09:12:03 15         MR. REGAN:  I don't have that right offhand, but I
09:12:06 16 think they are, for the most part, opt-outs.  If it's helpful
09:12:11 17 for the Court, we can divide it into a couple of different
09:12:15 18 categories.
09:12:16 19         THE COURT:  All right.  Why don't you go ahead and give
09:12:18 20 us what you've grouped together, and then we can let anybody
09:12:22 21 else respond, okay?
09:12:22 22         MR. REGAN:  Yes, very well.
09:12:24 23         So, again, as our filing in January of 2020
09:12:30 24 confirmed, we had gone from about 70 of these B1 nonMexican
09:12:35 25 fishermen claims to approximately 20.  As we had just gone

OFFICIAL TRANSCRIPT

9

| | | |
|---|---|---|
| 09:12:39 | 1 | through, about 5 more of those had been resolved since that |
| 09:12:44 | 2 | filing. |
| 09:12:44 | 3 | The first group I would like to talk about, |
| 09:12:46 | 4 | Your Honor, are ones where we proposed that, really, a simple |
| 09:12:51 | 5 | show cause process would probably take care of a question about |
| 09:12:54 | 6 | what should we do next with these cases? |
| 09:12:56 | 7 | The very first one that I referred to would be |
| 09:12:59 | 8 | the Nabaa Gas case. That's 16-7488. I know counsel for |
| 09:13:06 | 9 | Nabaa Gas is not on the call. We did confer with him before |
| 09:13:10 | 10 | the hearing. |
| 09:13:11 | 11 | That's a BP dealer. As Your Honor is aware, |
| 09:13:13 | 12 | there is an order in 2012 barring those claims, so for Nabaa |
| 09:13:20 | 13 | Gas, we would just propose a show cause as to why that claims |
| 09:13:24 | 14 | should not be just dismissed based on the Court's prior order. |
| 09:13:26 | 15 | That's prior order Record Number 7526. We let counsel for |
| 09:13:30 | 16 | Nabaa Gas know that that's what we would propose to the Court. |
| 09:13:35 | 17 | The next one also is we're preserving a show |
| 09:13:39 | 18 | cause box would be Allstar Pipe Services, 13-1658. Our |
| 09:13:48 | 19 | position is that Allstar is a class member. It did not opt out |
| 09:13:52 | 20 | of the settlement, and so we think the next step for that case |
| 09:13:55 | 21 | would be a show cause as to why their case can proceed given |
| 09:14:00 | 22 | that they were a class member. |
| 09:14:01 | 23 | I believe counsel for Allstar is on the hearing, |
| 09:14:04 | 24 | so I'll pause there. |
| 09:14:06 | 25 | THE COURT: It's Mr. Joy. |

OFFICIAL TRANSCRIPT

10

| | | |
|---|---|---|
| 09:14:11 | 1 | MR. JOY: Your Honor, Jason Joy for Allstar Pipe. |
| 09:14:14 | 2 | I disagree with BP's characterization that |
| 09:14:14 | 3 | Allstar Pipe was a class member. It's fairly clear that had |
| 09:14:18 | 4 | they tried to proceed with the settlement program, they would |
| 09:14:21 | 5 | have either been summarily dismissed by Mr. Juneau or summarily |
| 09:14:28 | 6 | placed in an indefinite moratoria hold and then ultimately |
| 09:14:34 | 7 | subject to this court -- breached an order -- placing all of |
| 09:14:36 | 8 | the cases into the MDL -- (audio distortion gap) for the |
| 09:14:41 | 9 | steering committee. |
| 09:14:44 | 10 | THE COURT: Mr. Joy, I'm not clear. So, you say your |
| 09:14:48 | 11 | position is your client is not and never was a member of a |
| 09:14:52 | 12 | class; is that it? |
| 09:14:55 | 13 | MR. JOY: That's correct, Your Honor. |
| 09:14:56 | 14 | THE COURT: Is that because they are a moratoria |
| 09:15:00 | 15 | claimant, they are excluded, or what? |
| 09:15:03 | 16 | MR. JOY: Yes, Your Honor. We believe that they were |
| 09:15:05 | 17 | excluded from the class just by the settlement agreement, |
| 09:15:07 | 18 | Your Honor. They were clearly engaged in offshore oil and gas |
| 09:15:14 | 19 | services, activities. They were -- I believe that they were |
| 09:15:19 | 20 | engaged in -- their products and services were being used on |
| 09:15:27 | 21 | offshore vessels, Your Honor, and their vessels were -- their |
| 09:15:33 | 22 | entire business basically came to a halt after the explosion, |
| 09:15:37 | 23 | Your Honor. I think there is some -- I think we're disagreeing |
| 09:15:40 | 24 | about some of the facts here, but if BP wants to file a motion, |
| 09:15:45 | 25 | we'll be more than happy to respond to it. |

OFFICIAL TRANSCRIPT

11

| | | |
|---|---|---|
| 09:15:47 | 1 | THE COURT: All right. Okay. I understand. It's kind |
| 09:15:51 | 2 | of interesting, I'll say, because, except for your client, |
| 09:15:58 | 3 | everybody else who appeared to have some moratoria aspect to |
| 09:16:02 | 4 | their claim fought to stay in the settlement instead of being |
| 09:16:06 | 5 | kicked out of the settlement, but that's your prerogative, your |
| 09:16:14 | 6 | client's prerogative. |
| 09:16:15 | 7 | Okay. Mr. Regan, do you want to go back to your |
| 09:16:21 | 8 | report? |
| 09:16:21 | 9 | MR. REGAN: I'll go through these in a summary fashion |
| 09:16:25 | 10 | like I've been doing. |
| 09:16:26 | 11 | The next one is Lady Luck, which is 16-cv-4149, |
| 09:16:31 | 12 | and that case, again, we think could be subject to a show cause |
| 09:16:36 | 13 | because of a prior settlement with the neutrals process; so, we |
| 09:16:41 | 14 | think a simple show cause as to why that case could proceed |
| 09:16:45 | 15 | given that settlement would answer the question whether any |
| 09:16:50 | 16 | further proceedings are necessary for Lady Luck. |
| 09:16:52 | 17 | THE COURT: Okay. What else? |
| 09:16:53 | 18 | MR. REGAN: The last one in that group would be the |
| 09:16:56 | 19 | Enviro Tech case, 18-cv-11120. Enviro Tech is one where, |
| 09:17:03 | 20 | again, we think the show cause process because of a failure -- |
| 09:17:07 | 21 | because of the pretrial orders that Your Honor put in place for |
| 09:17:11 | 22 | the mediation, specifically PTO 67. |
| 09:17:14 | 23 | I don't think there is a dispute that Enviro Tech |
| 09:17:17 | 24 | did not meet those deadlines for quite a specific period of |
| 09:17:21 | 25 | time and did not produce the materials required under that |

OFFICIAL TRANSCRIPT

12

| | | |
|---|---|---|
| 09:17:25 | 1 | order; so, from our perspective, a show-cause process to |
| 09:17:27 | 2 | determine whether any further proceedings would be necessary |
| 09:17:30 | 3 | for Enviro Tech given the noncompliance with the pretrial |
| 09:17:36 | 4 | order. |
| 09:17:36 | 5 | THE COURT: Which pretrial order are you alleging they |
| 09:17:38 | 6 | did not comply with? |
| 09:17:40 | 7 | MR. REGAN: 67, Your Honor, the one that basically was |
| 09:17:41 | 8 | the starting point for the mediation process that took place in |
| 09:17:44 | 9 | 2019. |
| 09:17:45 | 10 | THE COURT: Okay. All right. Any others? |
| 09:17:48 | 11 | MR. REGAN: Enviro Tech's counsel is on the call, if I |
| 09:17:53 | 12 | heard correctly. |
| 09:17:56 | 13 | THE COURT: Oh, yes, Mr. Hoffman. |
| 09:17:56 | 14 | MR. HOFFMAN: Yes, Your Honor. Gene Hoffman for |
| 09:17:58 | 15 | Enviro Tech Systems. |
| 09:18:01 | 16 | Your Honor, Pretrial Order 67 came about while I |
| 09:18:09 | 17 | was personally in the hospital. I would respectfully ask that |
| 09:18:18 | 18 | Your Honor allow me to file a motion for leave with an |
| 09:18:23 | 19 | affidavit explaining my situation and my client's situation |
| 09:18:25 | 20 | and, if Your Honor so grants, allow us to stay with our claim. |
| 09:18:32 | 21 | We would be happy to go through a mediation |
| 09:18:35 | 22 | process or arbitration or something of that nature to try to |
| 09:18:37 | 23 | get this claim settled out without having to take much more |
| 09:18:43 | 24 | time on Your Honor's docket. |
| 09:18:44 | 25 | THE COURT: Well, I would suggest two things: Why |

OFFICIAL TRANSCRIPT

13

09:18:48 1  don't you have a conversation afterwards with Mr. Regan and see
09:18:53 2  what his position is on that, first of all, and if there is no
09:18:59 3  agreement, then Mr. Regan will file some sort of motion, as I'm
09:19:05 4  appreciating things, and you can respond and explain whatever
09:19:08 5  you wish to include in that response, okay?
09:19:14 6          MR. HOFFMAN:  Yes, sir, Your Honor.  We were part of
09:19:16 7  the settlement claims, but in 2018, when the process was ended
09:19:22 8  with the moratoriums, we were kind of in limbo from the
09:19:26 9  moratorium delay, which I think came about in 2015.
09:19:32 10         THE COURT:  Is this claim one that was in the
09:19:34 11 settlement program and was on moratoria hold; is that what
09:19:37 12 you're saying?
09:19:38 13         MR. HOFFMAN:  Yes, sir, Your Honor.  Yes.
09:19:40 14         THE COURT:  Then we kicked you out after a while,
09:19:45 15 right?
09:19:45 16         MR. HOFFMAN:  Yes, sir, Your Honor.
09:19:47 17         THE COURT:  All right.  I understand where you are.
09:19:49 18 Okay.  Mr. Regan.
09:19:52 19         MR. REGAN:  Judge, the last two that are sort of in
09:19:55 20 this category, Your Honor, are both *pro se*, so understanding
09:19:59 21 they are *pro se*, I'll give you our view on those.
09:20:02 22         The first would one be Kirk Williams, 13-948.  I
09:20:07 23 can say that Mr. Williams was formerly represented by the
09:20:11 24 Herman Herman Katz firm, and there was a mediation, but after
09:20:16 25 the mediation, Mr. Williams stopped communicating with

OFFICIAL TRANSCRIPT

14

09:20:21 1  everybody, including Herman Herman Katz.  I think they've
09:20:25 2  withdrawn as his counsel, and from our last report from
09:20:30 3  Judge Shushan, she has not heard anything further from
09:20:33 4  Mr. Williams.
09:20:34 5          So, from our perspective, perhaps a show-cause
09:20:37 6  order directed to Mr. Williams as to whether he intends to
09:20:42 7  proceed with his claim or not is what our current view of how
09:20:45 8  to handle the situation is, but neither we nor the mediator has
09:20:49 9  been able to hear anything further from Mr. Williams about to
09:20:52 10 whether he's pursuing his claim.
09:20:54 11         THE COURT:  Okay.
09:20:57 12         MR. REGAN:  Sorry, yes.  We did Mr. Williams, yes.
09:20:58 13         The other one is Mr. Evans, also *pro se*.  In that
09:21:04 14 case, we've heard from Magistrate Shushan that she has been
09:21:09 15 trying to work with him to see if that case can get resolved
09:21:12 16 from the mediation.
09:21:13 17         So, our proposal on this one, sorry -- which is
09:21:17 18 16-3966, Robert Evans -- is that we may file an offer of
09:21:25 19 judgment or something just to see if we can spur that along to
09:21:30 20 get the case resolved, but that one, I would say, it's still in
09:21:33 21 the mediation process, and we hope that it can be resolved in
09:21:36 22 that process.  We just haven't been able to complete it due to
09:21:41 23 some of the challenges in working with Mr. Evans.
09:21:44 24         THE COURT:  Okay.
09:21:47 25         MR. REGAN:  So, Your Honor, that is the first six from

OFFICIAL TRANSCRIPT

15

09:21:50 1  the list.  If I then would transition to sort of a different
09:21:54 2  approach or some different proposal, I should say, with respect
09:22:00 3  to what's left, so broadly speaking, this would apply to
09:22:06 4  The Bird of Paradise claims, BioMarine, Gulf Marine,
09:22:11 5  Classy Cycles, Loggerhead, Global Disaster, and the three
09:22:15 6  Fin & Feather entities.  Collectively, that's six disputes.
09:22:19 7  It's more parties than that, but it's essentially, I think, six
09:22:24 8  disputes.
09:22:24 9          We have gone through mediations.  We were not
09:22:27 10 successful, and from our perspective, really, the final
09:22:32 11 question for most of them is some core questions about
09:22:37 12 causation and damages.
09:22:39 13         We would like to be as efficient as possible to
09:22:41 14 finish this part of the B1 docket, so we've proposed to send
09:22:46 15 Your Honor a case management proposal that would have a very
09:22:49 16 small number of depositions for these matters, no more than two
09:22:55 17 per side, and then a very small amount of process to then get
09:23:00 18 to some summary judgment filings or some summary judgment type
09:23:08 19 filings.
09:23:09 20         From our perspective, me and my partner,
09:23:13 21 Mr. Keegan, have spoken with a number of the counsel on this
09:23:16 22 call.  We think that an expedited process like that would give
09:23:21 23 clarity to both sides about risks that were identified during
09:23:23 24 the mediations, just to speak generally, and might allow us to
09:23:28 25 see where those claims lie.

OFFICIAL TRANSCRIPT

16

09:23:29 1          I will say that there are a couple of them where
09:23:32 2  we would be filing motions; so, the two in specific for that
09:23:40 3  would be the BioMarine and Gulf Marine.  That's 13-1286.  We
09:23:46 4  would be filing a motion with Your Honor with respect to where
09:23:49 5  federal law bars essentially the business that that case
09:23:52 6  intends that they intended to be in, which was a fish farm
09:23:58 7  processed in the Gulf of Mexico, which is barred under federal
09:24:02 8  law.
09:24:02 9          Then the other one --
09:24:02 10         THE COURT:  That's interesting, Mr. Regan, because I
09:24:05 11 just read in the newspaper this morning, are you referring to a
09:24:12 12 Fifth Circuit case that came out recently which said that the
09:24:22 13 Magnuson Act did not authorize the federal government to permit
09:24:28 14 these fish farms in the Gulf of Mexico; is that what you're
09:24:31 15 talking about?
09:24:32 16         MR. REGAN:  That's the last part of it.  There is a
09:24:34 17 long history of the question of whether this is authorized by
09:24:38 18 NOAA or --
09:24:40 19         THE COURT:  What's interesting -- and I only know about
09:24:48 20 what's on the surface, so to speak -- but I read in the paper
09:24:52 21 this morning, and I was kind of surprised to read that despite
09:24:56 22 the recent ruling by the Fifth Circuit, some entity of the
09:25:00 23 federal government, the current administration, plans to go
09:25:05 24 forward with these fish farms in the Gulf of Mexico
09:25:08 25 nonetheless, or in the ocean somewhere, and I'm not quite sure

OFFICIAL TRANSCRIPT

17

```
09:25:13  1   what the arguments are there, but you may or may not be right
09:25:18  2   is all I'm pointing out.
09:25:20  3         MR. REGAN:  I think that's what we would like to put in
09:25:23  4   front of the Court is not only that case but all of the history
09:25:27  5   with respect to that particular claim because it's a
09:25:31  6   fundamental go, no-go question on the BioMarine, Gulf Marine
09:25:37  7   cases that, I think, some guidance would be helpful on.
09:25:39  8         The other one that has sort of that threshold
09:25:43  9   legal question would be The Bird of Paradise matter, which is
09:25:46 10   16-5277.  From our perspective, there is a question about who
09:25:51 11   owns that claim, and through motion practice we think that
09:25:55 12   could be resolved, which would then, obviously, provide
09:25:58 13   direction of what should happen next.
09:26:00 14         With respect to the others, I mean, again, I
09:26:03 15   think without getting into detail on them, I'm happy to talk
09:26:06 16   about any of the specific cases, but what we would be proposing
09:26:09 17   is an expedited procedure that could be completed probably in
09:26:13 18   about nine months, we think, given that it's only six essential
09:26:18 19   matters, and it's not that many depositions that would bring us
09:26:21 20   to a substantial closure, if not complete closure, for what's
09:26:25 21   here.
09:26:26 22         I'm happy to answer further questions, but that's
09:26:28 23   what we proposed with respect to those last remaining matters.
09:26:31 24         THE COURT:  So, am I understanding that all of these
09:26:34 25   remaining, not all of these, this last group that you talked
```

OFFICIAL TRANSCRIPT

18

```
09:26:38  1   about, subgroup, however you want to describe it, all of them
09:26:43  2   were claimants that went through the neutrals mediation process
09:26:52  3   or Judge Shushan's mediation process but were unsuccessful; is
09:26:58  4   that accurate?
09:26:59  5         MR. REGAN:  Yes, Your Honor.
09:26:59  6         THE COURT:  Okay.  All right.  So, that was a lot said
09:27:06  7   there by Mr. Regan.  Anybody who wants to respond?  Anyone want
09:27:11  8   to respond who hasn't already?
09:27:15  9         MR. KRELLER:  Your Honor, it's Stephen Kreller.  I
09:27:17 10   represent BioMarine and Gulf Marine Institute of Technology.
09:27:22 11         That case I've had some exchanges with
09:27:27 12   Chris Keegan by email on what his proposal is as far as limited
09:27:34 13   discovery, and our issue is just what is the boundaries of the
09:27:40 14   limited discovery and does that get into expert -- exchanges of
09:27:45 15   expert reports and expert depositions?
09:27:49 16         These cases, as far as the damages aspect for
09:27:55 17   BioMarine and Gulf Marine Institute of Technology, do involve
09:27:58 18   expert testimony; so, as far as their limited discovery plan, I
09:28:02 19   just want a better understanding of that.  I've had some good
09:28:06 20   discussions with Chris.  I think we can probably come to an
09:28:12 21   agreement of what that is.
09:28:12 22         The other claims that I represent are the
09:28:17 23   Fin & Feather claims, and that would be the same discussion.  I
09:28:21 24   think they have proposed limited discovery, and from what I'm
09:28:28 25   understanding, it's to explore the cases a little bit more so
```

OFFICIAL TRANSCRIPT

19

```
09:28:35  1   BP can file their motions, whatever they may be, motions to
09:28:40  2   dismiss, motion for summary judgment, but again, I just want to
09:28:43  3   understand what that limited discovery is and, you know, who
09:28:46  4   they plan on deposing.
09:28:49  5         THE COURT:  Well, I imagine it's going to have to be
09:28:54  6   something that's going have to be worked out in each of these
09:28:57  7   cases.  I have no idea.
09:28:58  8         What kind of businesses are these three
09:29:02  9   Fin & Feather entities that you represent?  I suppose they are
09:29:06 10   all related somehow, right?
09:29:09 11         MR. KRELLER:  Yes, sir, Judge.  They are all related.
09:29:11 12   They are in Boothville, Louisiana.  Fin & Feather is a boat
09:29:16 13   storage rental business.  Fin & Feather Cabins is fishery
09:29:24 14   cabins.  Fin & Feather Adventures is a development that the
09:29:28 15   Prests, Kirk and Denise Prest, had formed and began to develop
09:29:32 16   a property into a more commercial scale sort of retreat, sort
09:29:41 17   of compound where corporate clients can come and stay at this
09:29:47 18   facility, go out and fish.  So, it involved guided fishery
09:29:54 19   services primarily targeting speckled trout and redfish, and
09:30:01 20   that's really what these businesses are.
09:30:13 21         THE COURT:  Are your clients opt-outs or excluded
09:30:16 22   claimants?
09:30:19 23         MR. KRELLER:  I believe they are opt-outs, Judge.  I
09:30:23 24   got involved in these cases after Judge Shushan's mediation
09:30:28 25   process, and I have had limited discussions with Judge Shushan
```

OFFICIAL TRANSCRIPT

20

```
09:30:33  1   about the case -- these cases but not much.
09:30:43  2         THE COURT:  Okay.  Does anybody else want to say
09:30:49  3   anything?
09:30:50  4         MS. ADAMS:  Thank you, Your Honor.
09:30:50  5         THE COURT:  Go ahead, Ms. Adams.  Are you trying to
09:30:54  6   speak?
09:30:54  7         MS. ADAMS:  Yes, I am, Your Honor.  I represent --
09:30:56  8   thank you.
09:30:57  9         I represent two plaintiffs in this case.  One is
09:31:00 10   basically a diver hotel, kind of a floating hotel, and then
09:31:08 11   another is Loggerhead Holdings, who has two diving vessels that
09:31:12 12   are kind of live-aboard vessels.  Then, I also represent
09:31:16 13   Classy Cycles, which is in the panhandle, and they rent a great
09:31:20 14   deal of the motorized scooters or golf carts, a vehicle called
09:31:23 15   a *QuickStart* and are tourist related.  They were opt-outs and
09:31:29 16   would have likely not received compensation in the program just
09:31:34 17   due to either documentation or kind of unique circumstances of
09:31:39 18   both claimants.
09:31:39 19         I do agree that nine months is sufficient and
09:31:45 20   limited discovery.  I do think we could come to an agreement.
09:31:48 21   We do want to file formal expert reports and designations.  I
09:31:53 22   think that that is something that's necessary for this to go
09:31:55 23   forward, but other than that, I think that we could work with
09:31:59 24   BP to come up with a broad list and schedule in these cases.
09:32:06 25         THE COURT:  Okay.  So, both of those clients of your
```

OFFICIAL TRANSCRIPT

21

```
09:32:09  1  firm are opt-outs; is that what I heard?
09:32:14  2          MS. ADAMS:  Yes, Your Honor.  One would have been under
09:32:16  3  the failed business formula, which was not favorable at all,
09:32:23  4  and then the other one has some issues with their
09:32:27  5  documentation, which would not have qualified them even though
09:32:34  6  Classy Cycles is its own business.
09:32:36  7          THE COURT:  Well, if you had trouble with your
09:32:38  8  documentation under the settlement program, I don't know if
09:32:41  9  that issue goes away now that you're in litigation, does it?
09:32:46 10  You still have to product documentation -- I'm sorry, what?
09:32:49 11          MS. ADAMS:  (Speaking simultaneously) Yes, Your Honor.
09:32:51 12  Your Honor, yes, yes.  There were just some errors and they
09:32:54 13  have been corrected, but kind of outside of the (audio
09:32:59 14  distortion gap).  We didn't think we would be able to do it by
09:33:04 15  2013.  It was not -- we did not think we would be able to meet
09:33:06 16  the formal document requirements but we think we have now.
09:33:11 17          THE COURT:  Okay.  Thank you.
09:33:12 18          Does anyone else want to speak?
09:33:14 19          MR. COON:  Good morning, Your Honor.  Brent Coon on
09:33:18 20  behalf of Global.  We concur with the nine months -- track and
09:33:23 21  we are prepared to (audio distortion gap.)
09:33:23 22          THE COURT:  What kind of a case is yours, Mr. Coon?
09:33:25 23          MR. COON:  The one remaining, Mr. Birkett had two
09:33:30 24  businesses.  One was successfully resolved with the mediation
09:33:34 25  program.  The other is a remediation recovery type of business
```
OFFICIAL TRANSCRIPT

22

```
09:33:37  1  with contracts, municipal contracts.
09:33:41  2          THE COURT:  Okay.  Were they an excluded claimant or an
09:33:46  3  opt-out?
09:33:46  4          MR. COON:  It was an opt-out, Your Honor.
09:33:50  5          THE COURT:  Okay.  Would anyone else like to speak?
09:33:56  6          Mr. Penton, you must be muted.  I can't hear you.
09:34:11  7  I don't see the little muted microphone on your screen but I
09:34:15  8  can't hear you.  Can anyone else hear Mr. Penton?
09:34:20  9          MR. REGAN:  No, Your Honor.
09:34:23 10          Mr. Penton, it may just be you're not connected
09:34:26 11  to the computer audio.  If you see in the bottom left corner
09:34:28 12  where there is a mute button and a little arrow, you might be
09:34:33 13  able to connect to the computer audio there.  That might solve
09:34:35 14  it.
09:34:35 15          THE COURT:  Try again, Mr. Penton.  I still can't hear
09:34:55 16  you.  It says you're connecting now.  You're connecting now but
09:34:57 17  you're still not quite there yet, Mr. Penton.
09:35:03 18          I've got to say, I've known Mr. Penton a long
09:35:07 19  time, this is the quietest he's ever been.
09:35:15 20          Okay.  I think you're there.  Try now.  No.  I
09:35:24 21  still can't hear him.  Mr. Penton, you might have to use sign
09:35:29 22  language, if you're good at that.  I'm sorry, but we can't hear
09:35:36 23  you.
09:35:42 24          Steve, could it be a Wi-Fi connectivity issue?
09:35:42 25          THE IT TECHNICIAN:  He had troubles connecting this
```
OFFICIAL TRANSCRIPT

23

```
09:35:42  1  morning and he had to reboot.  Then he dialed in on the phone
09:35:42  2  so he could hear, but I don't see the phone connection, so he
09:35:56  3  must have dropped off.
09:35:56  4          THE COURT:  We can't hear you.  It says you're trying
09:36:02  5  to connect, but you're not connected to audio for some reason,
09:36:02  6  Mr. Penton.
09:36:17  7          Does anybody else want to speak meanwhile while
09:36:20  8  we're trying to get Mr. Penton connected?  Does anybody else
09:36:24  9  have anything else to say?
09:36:25 10          Mr. Regan, let me get back to you for a second.
09:36:30 11  When you said nine months, two depositions, what kind of
09:36:39 12  discovery?  Respond to Mr. Kreller's concerns or questions.
09:36:44 13          MR. REGAN:  So, I think we've already exchanged
09:36:47 14  documents for the mediation process, and I think we could just
09:36:50 15  use that for their -- I think several of these cases, the
09:36:54 16  question of whether experts are necessary or not is something
09:36:57 17  we could talk with the other side about, but most of these
09:37:01 18  businesses are sort of one-person or one-lead-person type
09:37:04 19  businesses, so there is not a large number of people involved,
09:37:06 20  and so I think the question of whether we would need two
09:37:10 21  depositions plus an expert deposition, I think, for the most
09:37:14 22  part probably we would not.
09:37:15 23          That's not to say that we would -- you know, if
09:37:18 24  someone wants to submit an expert deposition or a declaration,
09:37:22 25  we could work with somebody on that for accommodating that
```
OFFICIAL TRANSCRIPT

24

```
09:37:26  1  particular claim, but, frankly, Your Honor, to just speak
09:37:30  2  generically with respect to what we saw and a lot of the
09:37:34  3  damages filings that were made, we got just simple things like
09:37:38  4  damages claims that are going for 25 years past 2010.  Some of
09:37:42  5  the Fin & Feather stuff is like that and other very, very
09:37:46  6  simple questions that, you know, we could have experts on and
09:37:48  7  get into things, but some of it is very fundamental about just
09:37:53  8  the basic boundaries of speculation and what's appropriate.
09:37:57  9          So, I think multiple counsel said that we could
09:38:02 10  work with them.  We tried to talk to people before this hearing
09:38:04 11  so that everybody could have a sense of what we were going to
09:38:08 12  propose, but I think for the most part, Your Honor, to be very
09:38:12 13  simple, we just need to have some things done under oath with
09:38:18 14  respect to somebody's businesses as to what they were doing and
09:38:21 15  when, and then questions about sort of, really, more detail
09:38:28 16  about the -- what the -- so, that's really the causation
09:38:31 17  question -- and more detail about how those two questions
09:38:34 18  relate to the damages theory because, again, not everybody -- I
09:38:38 19  just want to speak hypothetically, but hypothetically a number
09:38:42 20  of the damages models that we were shown were settlement
09:38:47 21  program damages models, and we're not in the settlement
09:38:50 22  program.  We're in litigation.
09:38:51 23          So, we just want to get -- I think as Mr. Kreller
09:38:55 24  may have said and others, and I agree with them -- we want to
09:38:57 25  get a little further down the road with these cases because a
```
OFFICIAL TRANSCRIPT

25

```
09:39:00  1   lot of work has already been done by everybody, but get them in
09:39:05  2   a place where we can understand them better, but also maybe
09:39:09  3   clear up some of what I think were some of the barriers that
09:39:14  4   occurred or at least were shown to occur in the mediations with
09:39:18  5   Judge Shushan.
09:39:19  6           THE COURT:  Let me tell Mr. Penton, you're still not
09:39:24  7   audible there.  I don't know if you want to try to call in, but
09:39:29  8   he could only listen if he called in, though, but can you hear
09:39:33  9   us, Mr. Penton?
09:39:37 10           MR. PENTON:  Judge, I can hear you well.
09:39:39 11           THE COURT:  Now I hear you.
09:39:40 12           MR. PENTON:  When we tried to unmute or mute to reverse
09:39:44 13   the problem with the audio, it kicked us out and it wouldn't
09:39:49 14   let us back in.  We're in now.
09:39:50 15           THE COURT:  Well, you're loud and clear now, so go
09:39:53 16   ahead and speak.  Go ahead.
09:39:53 17           MR. PENTON:  Your Honor, I represent The Bird of
09:39:56 18   Paradise, which is an Anheuser-Busch celebrity charity in --
09:40:06 19   St. Pete Beach, Florida.  I've also had discussions with
09:40:10 20   Chris Keegan and was told the same thing -- they want to do
09:40:14 21   some discovery.
09:40:15 22           I would point out to the Court that this is a
09:40:17 23   purely legal issue on, as Mr. Regan says, who owns the claim.
09:40:24 24   This is a single entity L.L.C, and who owns the claim of that
09:40:31 25   type of L.L.C. is purely a -- are purely a legal issue.
```

OFFICIAL TRANSCRIPT

26

```
09:40:37  1           If the Court wants or grants discovery in a CMO,
09:40:45  2   we'll be happy to participate in that, and we'll be happy to
09:40:49  3   meet with Mr. Keegan and Mr. Regan and try to work that out.
09:40:53  4           THE COURT:  When you say *it's purely,* it may be purely
09:40:58  5   a legal issue, but I'm not sure that's necessarily the case.  I
09:41:01  6   don't know.  The claim is listed as *John DeSilva*.  Is that the
09:41:08  7   person you represent here, is John DeSilva?
09:41:11  8           MR. PENTON:  Yes, Your Honor, as John DeSilva is on the
09:41:15  9   presentment paperwork, as well as all the claims, is the single
09:41:19 10   member of -- owner of The Bird of Paradise, L.L.C.
09:41:24 11           THE COURT:  Okay.  So, what's the issue, as you
09:41:27 12   understand it, as to what BP is suggesting that there is an
09:41:33 13   issue of who owns this claim?
09:41:36 14           MR. PENTON:  Judge, the first we found out about this
09:41:39 15   was actually in the mediation, and apparently -- I'll let
09:41:47 16   Mr. Regan speak for them -- in 2017, Mr. DeSilva sold this
09:41:55 17   business, and I have to say that could be the only -- the only
09:42:00 18   issue that I'm aware of, but I'll let Mr. Regan speak to that.
09:42:08 19           THE COURT:  What year?  I'm sorry?  What year?
09:42:11 20           MR. PENTON:  2017.
09:42:14 21           THE COURT:  Oh, okay.  So, long after the oil spill.
09:42:17 22   So, the question is:  Did he retain ownership of this claim or
09:42:21 23   not?
09:42:21 24           MR. PENTON:  Yes.  That's why it goes back to what a
09:42:26 25   single entity L.L.C is.
```

OFFICIAL TRANSCRIPT

27

```
09:42:28  1           THE COURT:  Well, who did he sell it to?  Did that
09:42:33  2   entity or person make a claim?
09:42:35  3           MR. PENTON:  No, they didn't.  He still has the claim.
09:42:38  4   That's our opinion.
09:42:40  5           Judge, just so that the Court understands our
09:42:43  6   position is under a single entity L.L.C., you can elect whether
09:42:48  7   to be taxed as a corporation or as a disregarded entity.  As a
09:42:53  8   disregarded entity, you take -- you take the deductions and the
09:42:58  9   revenue on your personal return when you're a single-member
09:43:03 10   L.L.C.
09:43:05 11           THE COURT:  Well, thanks for that tax lesson, but I'm
09:43:09 12   not sure I understand how that helps resolve this here.
09:43:12 13           So, really quickly, Mr. Regan, what's BP's
09:43:17 14   argument here as to why there is a question about who owns this
09:43:21 15   claim?
09:43:21 16           MR. REGAN:  Yeah, it's exactly what the question you
09:43:26 17   just asked.  We don't see evidence or evidence that he actually
09:43:30 18   retained the claim.  He doesn't own this business any more.  He
09:43:34 19   sold it in 2017.
09:43:35 20           As I said in the beginning, both BioMarine and
09:43:38 21   Gulf Marine for different issues and also Bird of Paradise,
09:43:42 22   these are the two where, even before we get into some
09:43:44 23   depositions, there might be some legal questions that we could
09:43:48 24   bring forth immediately because, frankly, this is the challenge
09:43:50 25   we have in that we need to know that the person that's in front
```

OFFICIAL TRANSCRIPT

28

```
09:43:54  1   of us actually has the claim.
09:43:56  2           That's our question.  It was the question we had
09:43:59  3   before the case was mediated, and it's the reason why the
09:44:03  4   mediation really didn't go anywhere because it really hasn't
09:44:06  5   been answered from our standpoint, and we know there have been
09:44:08  6   other --
09:44:08  7           THE COURT:  So, what are you looking for?  Are you
09:44:11  8   looking for documents?  Do you have documents pertaining to the
09:44:16  9   sale itself and what those documents say or don't say?
09:44:20 10           MR. REGAN:  I don't think we have it in detail to
09:44:23 11   confirm that we know that Mr. Penton's clients retained the
09:44:28 12   claim, no.
09:44:28 13           MR. PENTON:  Well, Mr. Keegan, Your Honor, had told me
09:44:33 14   yesterday that there was no documents that he really needed to
09:44:35 15   resolve this issue.  He just needed to take the depositions.
09:44:39 16           If there are additional documents they need, I
09:44:42 17   would be happy to review our exhibits that we tendered to BP
09:44:49 18   and see if there are other documentation they are interested
09:44:53 19   in.  Mr. Keegan said there was not.
09:44:56 20           THE COURT:  I'll let Mr. Keegan answer, if he wants to,
09:44:59 21   for himself, but it just strikes me fundamentally that a
09:45:06 22   document that might be relevant would be whatever documents
09:45:12 23   relate to the sale of the business, because those documents
09:45:17 24   perhaps state whether this claim was sold or retained or what.
09:45:25 25   It certainly seems like that would be relevant.
```

OFFICIAL TRANSCRIPT

---

**29**

```
09:45:33  1           Let me let Mr. Keegan respond, if he cares to.
09:45:40  2           MR. KEEGAN:  Yes, Your Honor.  Chris Keegan on behalf
09:45:43  3   of the BP departments.
09:45:45  4           For all of these cases, as Mr. Regan has said we
09:45:45  5   think very limited discovery is appropriate.  To the extent
09:45:49  6   that we don't (audio distortion gap) -- wasn't sure if that was
09:45:53  7   provided in the earlier process or not.  I think Your Honor is
09:45:56  8   right that one or two relevant documents might be spot on; so,
09:46:00  9   Mr. Penton, if we don't have that already (audio distortion
09:46:03 10   gap) -- whether we need a deposition on top of that or not, I
09:46:06 11   think is a very open question, and we would be happy to discuss
09:46:10 12   with Mr. Penton, but it is a very straightforward question
09:46:15 13   whether purely legal or (audio distortion gap) the ownership.
09:46:17 14           THE COURT:  Okay.  Mr. Penton, did you want to say
09:46:20 15   anything else?
09:46:20 16           MR. PENTON:  Yes, Your Honor.
09:46:22 17           Like I said, we first sounded this issue at the
09:46:27 18   mediation.  We were not prepared to produce anything that was
09:46:31 19   needed, but we'll be happy to review our tender.  We'll be
09:46:36 20   happy to meet with Chris and discuss documentation.  If there
09:46:40 21   are additional transactional documents, we'll certainly be
09:46:45 22   happy to produce them so we could work that issue out.
09:46:48 23           THE COURT:  Okay.  All right.  Anybody else have
09:46:52 24   anything to say right now?
09:46:57 25           I guess I'll ask a general question first:  If I
                              OFFICIAL TRANSCRIPT
```

**30**

```
09:47:03  1   get to the point where these cases may be severed from the MDL
09:47:12  2   itself, do we know which of these lawsuits, which of these
09:47:19  3   claims were originally filed elsewhere and came here only
09:47:23  4   because of the MDL or which ones were filed here originally?
09:47:27  5           Mr. Regan, do you have that information?
09:47:31  6           MR. REGAN:  I can pull it up but I think, generally
09:47:33  7   speaking, Your Honor, almost all of these are EDLA cases, but I
09:47:37  8   can pull that up.
09:47:37  9           THE COURT:  Okay.
09:47:39 10           MR. REGAN:  Particularly of the six that we're talking
09:47:41 11   about here at the end, but I can pull that up.
09:47:43 12           MS. ADAMS:  Your Honor, this is Caroline, and the two
09:47:48 13   of mine were filed in Houston.
09:47:51 14           THE COURT:  And came here as tagalongs?
09:47:55 15           MS. ADAMS:  Yes, Your Honor.
09:47:58 16           THE COURT:  Okay.
09:47:58 17           MR. PENTON:  Your Honor, Ronnie Penton.  Bird of
09:48:03 18   Paradise likewise was filed in the Middle District of Florida
09:48:07 19   in Tampa and transferred.
09:48:08 20           THE COURT:  Okay.  So, at some point if we can't
09:48:10 21   otherwise resolve these, those cases will either have to be
09:48:17 22   sent back to the originating district or the parties could
09:48:21 23   stipulate to leave them stay here.  That would be the
09:48:26 24   plaintiff's choice in those cases.  I'm not asking anybody to
09:48:30 25   make that decision right now, but you can keep that in mind.
                              OFFICIAL TRANSCRIPT
```

**31**

```
09:48:33  1           Okay.  Anybody else?
09:48:37  2           Mr. Regan, I think what you should do is submit
09:48:40  3   something along the lines of what we discussed here this
09:48:45  4   morning, what everybody discussed, and put it in the form of a
09:48:50  5   draft case management order and circulate it amongst all
09:48:55  6   counsel.  How long would it take you to get that together?
09:48:59  7           MR. REGAN:  We could do it within a week, Your Honor.
09:49:02  8           THE COURT:  Okay.  Circulate that amongst all counsel
09:49:05  9   and all parties within a week.  We'll give everyone a week to
09:49:10 10   respond to you, and then after you get their responses, let's
09:49:15 11   say within, I'll build in a little extra time, let's say within
09:49:21 12   21 days, BP will submit a proposed case management order and
09:49:28 13   either state that it's agreed upon by all of the parties, and
09:49:32 14   if there is anyone who is not in agreement, of course you
09:49:39 15   should point that out, and they can submit their objection or
09:49:42 16   whatever at the time, okay, within 21 days.
09:49:46 17           Okay.  Does anyone have any questions about that?
09:49:53 18   Okay.  I'm going to try my best.  I know these cases have been
09:49:56 19   stayed for a long time, and it's just part of the MDL process
09:50:06 20   when you have so many cases as we had, and most of the emphasis
09:50:14 21   has been on resolving the several large class settlements that
09:50:26 22   we had, and we're about at the end of the road with that.
09:50:31 23           I talked to Mr. Juneau yesterday.  I think he
09:50:37 24   and, I think, BP are working on some sort of order to propose
09:50:40 25   to the Court to totally wind down his claim office.  I think he
                              OFFICIAL TRANSCRIPT
```

**32**

```
09:50:43  1   has essentially nothing left.  There may be one or two cases up
09:50:48  2   in the circuit, still.
09:50:50  3           Mr. Regan, are you aware of that?
09:50:54  4           You need to unmute yourself, Mr. Regan.
09:51:01  5           MR. REGAN:  That's correct, Your Honor.  It's a very
09:51:04  6   small number and we'll get that feedback and then provide that
09:51:07  7   to the Court.
09:51:08  8           THE COURT:  Okay.  Unless someone has anything else,
09:51:13  9   thanks to everyone and we'll be in touch, okay?
09:51:17 10           Thank you.  Have a good day.
09:51:19 11           MR. REGAN:  Thank you, Your Honor.
09:51:21 12           MS. ADAMS:  Thank you, Your Honor.
         13           (WHEREUPON, at 9:51 a.m. the proceedings were
         14   concluded.)
         15                        *   *   *
         16
         17              REPORTER'S CERTIFICATE
         18       I, Cathy Pepper, Certified Realtime Reporter, Registered
             Merit Reporter, Certified Court Reporter in and for the State
         19  of Louisiana, Official Court Reporter for the United States
             District Court, Eastern District of Louisiana, do hereby
         20  certify that the foregoing is a true and correct transcript
             to the best of my ability and understanding from the record of the
         21  proceedings in the above-entitled and numbered matter.
         22          s/Cathy Pepper
                     Cathy Pepper, CRR, RMR, CCR
         23          Certified Realtime Reporter
                     Registered Merit Reporter
         24          Official Court Reporter
                     United States District Court
         25          Cathy_Pepper@laed.uscourts.gov

                              OFFICIAL TRANSCRIPT
```