CAUSE NO. 2019-31827

| | | |
|---|---|---|
| **SHERI ALLEN DORGAN a/k/a** | | |
| **SHERI DORGAN ALLEN** | § | **IN THE DISTRICT COURT OF** |
| **Plaintiff** | § | |
| | § | |
| **V.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **W. MARK LANIER, THE LANIER LAW** | § | |
| **FIRM, PC, CHARLES F. HERD, JR and** | § | |
| **HERD LAW FIRM, PLLC** | § | |
| **Defendants** | § | **234th JUDICIAL DISTRICT** |

**PLAINTIFF'S RESPONSE TO THE LANIER DEFENDANTS'**
**PLEA IN ABATEMENT AND MOTION TO COMPEL ARBITRATION, RESPONSE TO**
**ALTERNATIVE MOTION TO ABATE, AND MOTION FOR SANCTIONS**

Plaintiff, Sheri Dorgan Allen files this Response to Defendants, W. Mark Lanier and The Lanier Law Firm, PC's Plea in Abatement and Motion to Compel Arbitration,[1] Response to Charles F. Herd and Herd Law Firm, PLLC's Alternative Motion to Abate, and Motion for Sanctions and would respectfully show as follows.

**I**

**FACTUAL BACKGROUND**

This is a legal malpractice case arising out of underlying claims against British Petroleum ("BP") related to the Deepwater Horizon oil spill. Plaintiff Sheri Dorgan Allen ("Allen") was exposed to benzene and other carcinogenic chemicals as a result of the spill and suffered severe personal injuries.[2] Allen hired W. Mark Lanier and The Lanier Law Firm (the "Lanier") to bring

---

[1] Defendants Charles F. Herd and Herd Law Firm, PLLC have joined in the motion filed by Lanier, and this response will also address that joinder.

[2] Exhibit 1, Declaration of Sheri Dorgan Allen, at 1.

1



claims for personal injury and economic loss against BP.[3] The contract Allen signed with the Lanier firm contained an arbitration provision.[4]

Charles F. Herd, Jr. ("Herd") handled Allen's case while at the Lanier firm.[5] During the pendency of the case, Herd left the Lanier firm and started his own firm, the Herd Law Firm, PLLC.[6] The Lanier firm notified Allen of this fact and requested her consent to the association and sharing of attorney's fees, since the two lawyers were no longer in the same firm.[7] *See* TEX. DISC. R. PROF. COND. 1.04(f) (permitting a division of attorney's fees between lawyers not in the same firm only upon the client's written consent). Lanier represented to Allen that he and Herd wanted to "keep working on [Allen's] case together"[8] and Lanier agreed to "assume joint responsibility for the representation."[9]

Allen agreed, but the parties ultimately entered into a separate contract directly with the Herd law firm.[10] This new agreement permitted the association of Lanier.[11] The agreement was binding on assigns, such as Lanier,[12] and superseded any prior agreement between the parties, including the Lanier firm contract.[13] Most notably, the new agreement **did not contain an**

---

[3] *See* Arbitration Motion, at Exhibit 1.

[4] *See* Arbitration Motion, at Exhibit 1, § X, ¶ 10.

[5] Exhibit 2, August 3, 2018 Letter.

[6] Exhibit 2.

[7] Exhibit 2.

[8] Exhibit 2.

[9] Exhibit 3, at Consent to Refer.

[10] Exhibit 4, Herd Power of Attorney and Attorney Engagement Agreement.

[11] Exhibit 4, at § VIII.

[12] Exhibit 4, at § XI.

[13] Exhibit 4, at § XIII.

**arbitration provision**: it required mediation and "[i]f mediation is not successful in resolving the dispute, **suit may be filed** by either party in the state or federal courts in Harris County, Texas."[14] Because this new agreement superseded the old Lanier agreement, and Allen considered that prior agreement revoked, along with any agreement to arbitrate.[15]

The Lanier firm did not withdraw, they retained a fee interest in the case, and they remained jointly responsible for the representation as attorneys for Allen.[16]

Unfortunately, Lanier and Herd failed to respond to orders of the federal court which caused Allen's claims against BP to be dismissed with prejudice.[17] The federal court noted that Allen's claims were dismissed because of her "**attorneys' own fault**."[18]

Allen filed suit against Lanier and Herd for legal malpractice on May 7, 2019.[19] Both Lanier and Herd have answered the lawsuit. Lanier filed the instant Plea in Abatement and Motion to Compel Arbitration (the "Arbitration Motion"), requesting Allen's claims against him to be compelled to arbitration. Herd answered and initially requested a jury trial.[20] Herd then filed a last-minute joinder in the Arbitration Motion, claiming the "arguments and authorities cited are equally applicable to Herd."[21] This is a frivolous allegation given the subsequent Herd agreement which

---

[14] Exhibit 4, at § X (emphasis added).

[15] Exhibit 1.

[16] *See* Exhibit 5, Motion Under Rule 62.1 for Indicative Ruling (motion filed on June 4, 2019 listing Lanier firm as "Attorneys for Plaintiffs" in underlying BP litigation, including Allen).

[17] Exhibit 6, Order as to Motions for Reconsideration, at 3.

[18] Exhibit 6, at 3 (emphasis added).

[19] *See* Plaintiff's Original Petition and Request for Disclosure.

[20] *See* Herd's Original Answer (filed June 10, 2019).

[21] *See* Herd's Joinder in Co-Defendants' Plea in Abatement and Motion to Compel Arbitration (filed September 4, 2019), at ¶ 1.

requires mediation and litigation, not arbitration. For the reasons stated herein, the Arbitration Motion should be denied as to Allen's claims against all Defendants. Likewise, there is no grounds to abate this case pending any appeal of the underlying claims. Accordingly, the Alternative Request for Abatement should be denied.

## II
### RESPONSE TO ARBITRATION MOTION

The Arbitration Motion should be denied because (1) the Lanier firm agreement was revoked, replaced and superseded by the Herd agreement which did not contain an arbitration provision; (2) requiring Allen to pursue her claims against two groups of defendants in two separate forums would be unconscionable; and (3) Allen cannot afford the cost of arbitration, rendering enforcement of the arbitration provision substantively unconscionable.

### A.   The Lanier agreement was revoked, replaced and superseded by the Herd agreement which did not contain an arbitration provision – without an agreement to arbitrate, arbitration cannot be compelled.

Lanier moves to compel arbitration under the Federal Arbitration Act.[22] A party seeking to compel arbitration under the FAA must establish there is a valid agreement and that the claims fall within the agreement's scope. *See In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007) (orig. proceeding) (per curiam). "Because the court must determine the threshold issue of whether a valid arbitration agreement exists, it is the trial court's duty to determine whether a later agreement between the parties revokes or supersedes an arbitration clause." *FC Background, LLC v. Fritze*, No. 05-17-00277-CV, 2017 Tex. App. LEXIS 10821, 2017 WL 5559594, at *5 (Tex. App.— Dallas Nov. 16, 2017, pet. dism'd) (mem. op.). This is because "without an agreement to arbitrate,

---

[22] Arbitration Motion, at ¶ 8 (claiming the FAA "governs the subject arbitration provision").

4

arbitration cannot be compelled." *Valero Energy Corp. v. Teco Pipeline, Co.*, 2 S.W.3d 576, 586 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Although the initial Lanier firm contract contained an arbitration provision, the new agreement with the Herd firm did not.[23] In fact, it specifically provided that any dispute would be resolved **by litigation** in Harris County, Texas.[24] The Herd agreement superseded any prior agreement between the parties.[25] Although Lanier personally did not sign the agreement, the Herd agreement authorized the association of Lanier,[26] and bound Lanier as a third-party beneficiary with an assignment in Allen's case (his contingency fee interest).[27] Allen was told that the Herd agreement superseded the Lanier agreement.[28] Therefore, Allen (and undoubtedly Herd) considered the Lanier agreement revoked, along with the arbitration provision.[29] Because any agreement to arbitrate had been revoked and superseded by a new agreement to resolve disputes by mediation and litigation, compelling arbitration is improper. *See FC Background,* 2017 Tex. App. LEXIS 10821, at *6-*8 (trial court did not abuse its discretion by denying arbitration when subsequent agreement between the parties which superseded any prior agreement did not contain arbitration provision); *TransCore Holdings, Inc., v. Rayner*, 104 S.W.3d 317, 319 (Tex. App. – Dallas 2003, pet. denied) (affirming trial court's denial of arbitration because subsequent

---

[23] Exhibit 4.

[24] Exhibit 4, at ¶¶ 9-10.

[25] Exhibit 4, ¶ 13.

[26] Exhibit 4, ¶ 8.

[27] Exhibit 4, ¶ 11.

[28] Exhibit 1, at 2-3.

[29] Exhibit 1, at 2-3.

agreement which provided that "any action related to it shall be brought only in a court located in Texas … conflicts with an obligation to arbitrate.").

### B. Requiring Allen to pursue her claims against two groups of defendants in two separate forums would be unconscionable.

"Texas law renders unconscionable contracts unenforceable." *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010). Texas recognizes both procedural and substantive unconscionability. *See id.* Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision. *Id.* at 892. Enforcement of the arbitration provision would be substantively unconscionable because requiring Allen to arbitrate her claims against Lanier when she has a constitutional and contractual right to litigate her claims against Herd is oppressive and overly burdensome.

The arbitration provision in the superseded contract Allen signed with Lanier does not bind Herd or his law firm,[30] and he cannot be compelled to arbitration. *See Roe v. Ladymon*, 318 S.W.3d 502, 510 (Tex. App.—Dallas 2010, no pet.) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (quoting *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 648 (1986)). Herd contractually agreed to mediation and litigation, not arbitration.[31] The result is that Allen will be forced to pursue her claims against Lanier and his law firm in arbitration and her claims against Herd and his law firm here in litigation when these claims are inextricable intertwined and inseverable. This result would be procedurally unconscionable, rendering the arbitration provision unenforceable.

---

[30] Arbitration Motion, at Exhibit 1.

[31] Exhibit 4, ¶¶ 9, 10.

The case *Bruszewski v. Motley Rice, LLC*, 2012 WL 6691643, 2012 U.S. Dist. LEXIS 181187 (E.D. Ky. Dec. 21, 2012) is instructive on this point. There, a client sued two groups of lawyers for legal malpractice arising out of allegedly botched asbestosis claims. *Id.* at *2. The contract with the first group of lawyers contained an arbitration provision providing for any dispute with them to be handled by JAMS. *Id.* at *15-*16. The first group of lawyers associated a second group of lawyers, and the client signed a second contract calling for any dispute between them to be handled by a different set of arbitration procedures. *Id.* The court found this fact to render both arbitration provisions unenforceable:

> In all likelihood, Plaintiffs claims are not easily severed between the two law firms. Requiring Plaintiff to arbitrate her claims relating to the Defendants' joint representation in two separate arbitrations in distant locations would be most oppressive in this instance. Moreover, to do so would place Plaintiff at a substantial disadvantage to prove her claims. There is a substantial likelihood that Plaintiff would be subjected to inconsistent resolutions of her claim by the two arbitrations, particularly given that each is governed by different rules. Rather than promoting the goals of arbitration, **the effect of these two provisions is to create an oppressive and overly burdensome process stacked against the Plaintiff**. Accordingly, the Court finds these arbitration provisions unconscionable and Defendants' motions to compel arbitration is denied.

*Id.* at *16 (emphasis added). The same is true here, and the Court should therefore refuse to compel arbitration based on substantive unconscionability. *See id.*

## C.  Enforcement of arbitration is unconscionable because it is cost prohibitive.

A challenge that arbitration is cost prohibitive is grounded in substantive unconscionability. *Olshan*, 328 S.W.3d at 892. "Where [justifications for arbitration] are vanquished by excessive arbitration costs that deter individuals from bringing valid claims, the unconscionability doctrine may protect unfairly disadvantaged consumers." *Id.* at 193. Therefore, "excessive costs imposed by an arbitration agreement render a contract unconscionable **if the costs**

prevent a litigant from effectively vindicating his or her rights in the arbitral forum." *Id.* at 893 (emphasis added).

"The party opposing arbitration bears the burden to show that the costs of arbitration render it unconscionable." *Id.* "When a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* (internal quotations omitted). The burden is not high and requires only a showing of "**some** evidence that a complaining party will **likely incur** arbitration costs in such an amount as to **deter enforcement** of statutory rights in the arbitral forum." *Id.* (internal quotations omitted) (emphasis added). Texas law does not mandate that claimants actually incur the cost of arbitration before they can show its excessiveness but "parties must at least provide evidence of the likely cost of their particular arbitration, through invoices, expert testimony, reliable cost estimates, or other comparable evidence." *Id.* at 195. Whether enforcement of the arbitration provision would be unconscionable is decided on "a case-by-case analysis that focuses, among other things, upon  the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." *Id.* at 193.

### 1.    Cost of arbitration.

The superseded arbitration provision in the Lanier agreement provides that any arbitration shall be governed by the commercial rules of the American Arbitration Association ("AAA").[32] To initiate the arbitration with the AAA, Allen, as the claimant with damages in excess of $1,000,000, would be required to pay the initial filing fee of $7,700 and a final filing fee of

---

[32] Arbitration Motion, at Exhibit 1, at ¶ 10.

$8,475.[33] The initial filing fee is to be paid by the party bringing the claim at the time the demand or claim is filed with the AAA.[34] This does not include the arbitrator's compensation.[35]

To determine the potential costs that would likely be incurred by Allen relating to the arbitrator's compensation, Allen retained retired justice Alice Oliver-Parrott.[36] Justice Parrott, the former Chief Justice on the First Court of Appeals, has been an arbitrator since 1996 and has successfully resolved hundreds of disputes.[37]  Justice Parrott conservatively estimates, based on her review of the allegations in the petition and discussion with  counsel, that the cost of the arbitrator's compensation would be between $50,000.00 and $70,000.00 through resolution of the proceeding.[38] The AAA requires these fees to be split between the parties, meaning Allen would likely be responsible for $25,000 to $35,000 during the course of the arbitration.[39] A minimum of $12,500 would be required from Allen at the initiation of the arbitration and Allen would be responsible for another $25,000 to $30,000 at the eve of the final hearing.[40] Accordingly, Allen is likely to incur at least $30,000 to $40,000 in arbitration costs, including filing fees, final arbitration fees, and arbitrator compensation.[41]

---

[33] Exhibit 7, Judge Alice Oliver Parrot's Affidavit, at 2; Exhibit 8, AAA Commercial Arbitration Rules Administrative Fee Schedules.

[34] Exhibit 7; Exhibit 8.

[35] Exhibit 7, at 2.

[36] Exhibit 7, at 1.

[37] Exhibit 7, at 1.

[38] Exhibit 7, at 2.

[39] *See* Exhibit 9, AAA Commercial Rules, at R. 55, R. 56.

[40] Exhibit 7, at 2.

[41] Exhibit 7, at 1-2.

### 2.     Comparative cost of litigation.

On the other hand, Allen will incur no costs to proceed with this case in litigation.[42] Allen (through her counsel) already paid the minimal filing fee and jury fee, and any further costs of litigation (not arbitration) are to be paid by Allen's counsel.[43] Unlike an arbitrator, the Court and the jury will not charge Allen $25,000 to $35,000 to preside over this dispute, and there is no $8,475 final filing fee. Accordingly, the costs of litigation are minimal, and Allen personally will not incur **any litigation costs** unless and until there is a recovery in this case.[44]

On the other hand, Allen is required to pay any costs of arbitration as her agreement with the undersigned counsel provides, "Costs of arbitration are not considered Costs and Expenses and Client **will be solely responsible for arbitration costs**, if any."[45] Allen's counsel will not advance these arbitration costs.[46] Therefore, the expected cost differential between arbitration and litigation (approximately $16,175 in filing fees and $25,000 to $35,000 for arbitrator's fees) is substantial and will deter enforcement of Allen's statutory rights in the arbitral forum.

### 3.     Allen's inability to pay arbitration fees and costs.

Allen is unable to pay the expected arbitration fees and costs because she has no source of income.[47] Beginning in April of 2010, Allen became sick from the chemical exposure resulting from the BP oil spill.[48] After walking her dogs on the beach the days following the oil spill, Allen

---

[42] Exhibit 10, Declaration of David Eric Kassab.

[43] Exhibit 1-A, at ¶ 6.

[44] Exhibit 1-A, ¶ 6; Exhibit 10, at 2.

[45] Exhibit 1-A, at ¶ 6 (emphasis added).

[46] Exhibit 10, at 2.

[47] Exhibit 4.

[48] Exhibit 1, at 1.

suffered from blood blisters on her arms, legs and side, progressive respiratory issues, chemical pneumonia and was diagnosed with benzene toxicity and auto immune disease.[49] Due to her physical injuries, Allen has been unable to work and has been unemployed with no income since approximately May of 2010.[50] Allen's husband of thirty years, Richard Allen, was employed and supported her since that time.[51] However, Richard passed away in October of 2018, and Allen has no source of income.[52]

Nor does Allen have any savings to pay the arbitration costs. Richard and Allen had approximately $12,000 to $14,000 in savings, but much of this money was spent on Richard's funeral.[53] Allen used the remainder to support herself since Richard's death.[54] Richard and Allen owned a home, but the value of that home suffered a severe loss due to the oil spill and Allen was forced to sell the home and received less than $5,000 after she paid the balance of the mortgage.[55]

Allen's only income since her husband's death has been litigation loans or advances on her case against BP and this litigation.[56] Without the ability to work or support herself, Allen was required to take out two litigation advances, one for approximately $15,000 in June of 2019 and another for approximately $5,000 in August of 2019.[57] Allen has used this money to support herself

---

[49] Exhibit 1, at 1.

[50] Exhibit 1, at 1.

[51] Exhibit 1, at 1.

[52] Exhibit 1, at 1.

[53] Exhibit 1, at 1.

[54] Exhibit 1, at 1.

[55] Exhibit 1, at 1.

[56] Exhibit 1, at 1.

[57] Exhibit 1, at 1.

and has no other income because she cannot work due to her injuries.[58] Between March of 2019 and June of 2019 Allen lived in her car because she literally had no place to live and no way to pay rent.[59]

Allen uses the litigation advances to pay her living expenses. Once Allen received the advance of $15,000, she leased a cottage in Silver Hill, Alabama on or about June 2, 2019.[60] Allen pays $1,300 per month in rent on this lease using the litigation advances that she received.[61] Allen's other expenses include approximately $60 for telephone and approximately $300 for electricity, water and garbage.[62] Allen usually spends approximately $160 per week in groceries, and her health insurance costs approximately $66 per month.[63] Therefore, Allen's total monthly expenses are approximately $1,886.[64] At this rate, the litigation advances that Allen received will be depleted within a few months, and she will have no income or savings whatsoever.[65]

Allen is dirt poor and simply has no ability to afford this case if it proceeds in arbitration.[66] Allen clearly lacks the necessary income after expenses to afford approximately $16,175 in filing fees and $25,000 to $35,000 for arbitrator's fees.[67] Allen has no income at all. Therefore, the cost

---

[58] Exhibit 1, at 2.

[59] Exhibit 1, at 1-2.

[60] Exhibit 1, at 2.

[61] Exhibit 1, at 2.

[62] Exhibit 1, at 2.

[63] Exhibit 1, at 2.

[64] Exhibit 1, at 2.

[65] Exhibit 1, at 2.

[66] Exhibit 1, at 2.

[67] Exhibit 1, at 2.

CAUSE NO. 2019-31827

| | | |
|---|---|---|
| **SHERI ALLEN DORGAN a/k/a** | | |
| **SHERI DORGAN ALLEN** | § | **IN THE DISTRICT COURT OF** |
| **Plaintiff** | § | |
| | § | |
| **V.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **W. MARK LANIER, THE LANIER LAW** | § | |
| **FIRM, PC, CHARLES F. HERD, JR and** | § | |
| **HERD LAW FIRM, PLLC** | § | |
| **Defendants** | § | **234ᵗʰ JUDICIAL DISTRICT** |

### PLAINTIFF'S RESPONSE TO THE LANIER DEFENDANTS'
### PLEA IN ABATEMENT AND MOTION TO COMPEL ARBITRATION, RESPONSE TO
### ALTERNATIVE MOTION TO ABATE, AND MOTION FOR SANCTIONS

Plaintiff, Sheri Dorgan Allen files this Response to Defendants, W. Mark Lanier and The

Lanier Law Firm, PC's Plea in Abatement and Motion to Compel Arbitration,[1] Response to

Charles F. Herd and Herd Law Firm, PLLC's Alternative Motion to Abate, and Motion for

Sanctions and would respectfully show as follows.

**I**

**FACTUAL BACKGROUND**

This is a legal malpractice case arising out of underlying claims against British Petroleum

("BP") related to the Deepwater Horizon oil spill. Plaintiff Sheri Dorgan Allen ("Allen") was

exposed to benzene and other carcinogenic chemicals as a result of the spill and suffered severe

personal injuries.[2] Allen hired W. Mark Lanier and The Lanier Law Firm (the "Lanier") to bring

---

[1] Defendants Charles F. Herd and Herd Law Firm, PLLC have joined in the motion filed by Lanier, and this response
will also address that joinder.

[2] Exhibit 1, Declaration of Sheri Dorgan Allen, at 1.

1



claims for personal injury and economic loss against BP.[3] The contract Allen signed with the Lanier firm contained an arbitration provision.[4]

Charles F. Herd, Jr. ("Herd") handled Allen's case while at the Lanier firm.[5] During the pendency of the case, Herd left the Lanier firm and started his own firm, the Herd Law Firm, PLLC.[6] The Lanier firm notified Allen of this fact and requested her consent to the association and sharing of attorney's fees, since the two lawyers were no longer in the same firm.[7] *See* TEX. DISC. R. PROF. COND. 1.04(f) (permitting a division of attorney's fees between lawyers not in the same firm only upon the client's written consent). Lanier represented to Allen that he and Herd wanted to "keep working on [Allen's] case together"[8] and Lanier agreed to "assume joint responsibility for the representation."[9]

Allen agreed, but the parties ultimately entered into a separate contract directly with the Herd law firm.[10] This new agreement permitted the association of Lanier.[11] The agreement was binding on  assigns, such as Lanier,[12] and superseded any prior agreement between the parties, including the Lanier firm contract.[13] Most notably, the new agreement **did not contain an**

---

[3] *See* Arbitration Motion, at Exhibit 1.

[4] *See* Arbitration Motion, at Exhibit 1, § X, ¶ 10.

[5] Exhibit 2, August 3, 2018 Letter.

[6] Exhibit 2.

[7] Exhibit 2.

[8] Exhibit 2.

[9] Exhibit 3, at Consent to Refer.

[10] Exhibit 4, Herd Power of Attorney and Attorney Engagement Agreement.

[11] Exhibit 4, at § VIII.

[12] Exhibit 4, at § XI.

[13] Exhibit 4, at § XIII.

**arbitration provision**: it required mediation and "[i]f mediation is not successful in resolving the dispute, **suit may be filed** by either party in the state or federal courts in Harris County, Texas."[14] Because this new agreement superseded the old Lanier agreement, and Allen considered that prior agreement revoked, along with any agreement to arbitrate.[15]

The Lanier firm did not withdraw, they retained a fee interest in the case, and they remained jointly responsible for the representation as attorneys for Allen.[16]

Unfortunately, Lanier and Herd failed to respond to orders of the federal court which caused Allen's claims against BP to be dismissed with prejudice.[17] The federal court noted that Allen's claims were dismissed because of her "**attorneys' own fault**."[18]

Allen filed suit against Lanier and Herd for legal malpractice on May 7, 2019.[19] Both Lanier and Herd have answered the lawsuit. Lanier filed the instant Plea in Abatement and Motion to Compel Arbitration (the "Arbitration Motion"), requesting Allen's claims against him to be compelled to arbitration. Herd answered and initially requested a jury trial.[20] Herd then filed a last-minute joinder in the Arbitration Motion, claiming the "arguments and authorities cited are equally applicable to Herd."[21] This is a frivolous allegation given the subsequent Herd agreement which

---

[14] Exhibit 4, at § X (emphasis added).

[15] Exhibit 1.

[16] *See* Exhibit 5, Motion Under Rule 62.1 for Indicative Ruling (motion filed on June 4, 2019 listing Lanier firm as "Attorneys for Plaintiffs" in underlying BP litigation, including Allen).

[17] Exhibit 6, Order as to Motions for Reconsideration, at 3.

[18] Exhibit 6, at 3 (emphasis added).

[19] *See* Plaintiff's Original Petition and Request for Disclosure.

[20] *See* Herd's Original Answer (filed June 10, 2019).

[21] *See* Herd's Joinder in Co-Defendants' Plea in Abatement and Motion to Compel Arbitration (filed September 4, 2019), at ¶ 1.

requires mediation and litigation, not arbitration. For the reasons stated herein, the Arbitration Motion should be denied as to Allen's claims against all Defendants. Likewise, there is no grounds to abate this case pending any appeal of the underlying claims. Accordingly, the Alternative Request for Abatement should be denied.

## II
### RESPONSE TO ARBITRATION MOTION

The Arbitration Motion should be denied because (1) the Lanier firm agreement was revoked, replaced and superseded by the Herd agreement which did not contain an arbitration provision; (2) requiring Allen to pursue her claims against two groups of defendants in two separate forums would be unconscionable; and (3) Allen cannot afford the cost of arbitration, rendering enforcement of the arbitration provision substantively unconscionable.

**A.      The Lanier agreement was revoked, replaced and superseded by the Herd agreement which did not contain an arbitration provision – without an agreement to arbitrate, arbitration cannot be compelled.**

Lanier moves to compel arbitration under the Federal Arbitration Act.[22] A party seeking to compel arbitration under the FAA must establish there is a valid agreement and that the claims fall within the agreement's scope. *See In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007) (orig. proceeding) (per curiam). "Because the court must determine the threshold issue of whether a valid arbitration agreement exists, it is the trial court's duty to determine whether a later agreement between the parties revokes or supersedes an arbitration clause." *FC Background, LLC v. Fritze*, No. 05-17-00277-CV, 2017 Tex. App. LEXIS 10821, 2017 WL 5559594, at *5 (Tex. App.—Dallas Nov. 16, 2017, pet. dism'd) (mem. op.). This is because "without an agreement to arbitrate,

---

[22] Arbitration Motion, at ¶ 8 (claiming the FAA "governs the subject arbitration provision").

arbitration cannot be compelled." *Valero Energy Corp. v. Teco Pipeline, Co.*, 2 S.W.3d 576, 586 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Although the initial Lanier firm contract contained an arbitration provision, the new agreement with the Herd firm did not.[23] In fact, it specifically provided that any dispute would be resolved **by litigation** in Harris County, Texas.[24] The Herd agreement superseded any prior agreement between the parties.[25] Although Lanier personally did not sign the agreement, the Herd agreement authorized the association of Lanier,[26] and bound Lanier as a third-party beneficiary with an assignment in Allen's case (his contingency fee interest).[27] Allen was told that the Herd agreement superseded the Lanier agreement.[28] Therefore, Allen (and undoubtedly Herd) considered the Lanier agreement revoked, along with the arbitration provision.[29] Because any agreement to arbitrate had been revoked and superseded by a new agreement to resolve disputes by mediation and litigation, compelling arbitration is improper. *See FC Background,* 2017 Tex. App. LEXIS 10821, at *6-*8 (trial court did not abuse its discretion by denying arbitration when subsequent agreement between the parties which superseded any prior agreement did not contain arbitration provision); *TransCore Holdings, Inc., v. Rayner*, 104 S.W.3d 317, 319 (Tex. App. – Dallas 2003, pet. denied) (affirming trial court's denial of arbitration because subsequent

---

[23] Exhibit 4.

[24] Exhibit 4, at ¶¶ 9-10.

[25] Exhibit 4, ¶ 13.

[26] Exhibit 4, ¶ 8.

[27] Exhibit 4, ¶ 11.

[28] Exhibit 1, at 2-3.

[29] Exhibit 1, at 2-3.

agreement which provided that "any action related to it shall be brought only in a court located in Texas … conflicts with an obligation to arbitrate.").

### B. Requiring Allen to pursue her claims against two groups of defendants in two separate forums would be unconscionable.

"Texas law renders unconscionable contracts unenforceable." *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010). Texas recognizes both procedural and substantive unconscionability. *See id.* Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision. *Id.* at 892. Enforcement of the arbitration provision would be substantively unconscionable because requiring Allen to arbitrate her claims against Lanier when she has a constitutional and contractual right to litigate her claims against Herd is oppressive and overly burdensome.

The arbitration provision in the superseded contract Allen signed with Lanier does not bind Herd or his law firm,[30] and he cannot be compelled to arbitration. *See Roe v. Ladymon*, 318 S.W.3d 502, 510 (Tex. App.—Dallas 2010, no pet.) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (quoting *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 648 (1986)). Herd contractually agreed to mediation and litigation, not arbitration.[31] The result is that Allen will be forced to pursue her claims against Lanier and his law firm in arbitration and her claims against Herd and his law firm here in litigation when these claims are inextricable intertwined and inseverable. This result would be procedurally unconscionable, rendering the arbitration provision unenforceable.

---

[30] Arbitration Motion, at Exhibit 1.

[31] Exhibit 4, ¶¶ 9, 10.

The case *Bruszewski v. Motley Rice, LLC*, 2012 WL 6691643, 2012 U.S. Dist. LEXIS 181187 (E.D. Ky. Dec. 21, 2012) is instructive on this point. There, a client sued two groups of lawyers for legal malpractice arising out of allegedly botched asbestosis claims. *Id.* at *2. The contract with the first group of lawyers contained an arbitration provision providing for any dispute with them to be handled by JAMS. *Id.* at *15-*16. The first group of lawyers associated a second group of lawyers, and the client signed a second contract calling for any dispute between them to be handled by a different set of arbitration procedures. *Id.* The court found this fact to render both arbitration provisions unenforceable:

> In all likelihood, Plaintiffs claims are not easily severed between the two law firms. Requiring Plaintiff to arbitrate her claims relating to the Defendants' joint representation in two separate arbitrations in distant locations would be most oppressive in this instance. Moreover, to do so would place Plaintiff at a substantial disadvantage to prove her claims. There is a substantial likelihood that Plaintiff would be subjected to inconsistent resolutions of her claim by the two arbitrations, particularly given that each is governed by different rules. Rather than promoting the goals of arbitration, **the effect of these two provisions is to create an oppressive and overly burdensome process stacked against the Plaintiff**. Accordingly, the Court finds these arbitration provisions unconscionable and Defendants' motions to compel arbitration is denied.

*Id.* at *16 (emphasis added). The same is true here, and the Court should therefore refuse to compel arbitration based on substantive unconscionability. *See id.*

## C. Enforcement of arbitration is unconscionable because it is cost prohibitive.

A challenge that arbitration is cost prohibitive is grounded in substantive unconscionability. *Olshan*, 328 S.W.3d at 892. "Where [justifications for arbitration] are vanquished by excessive arbitration costs that deter individuals from bringing valid claims, the unconscionability doctrine may protect unfairly disadvantaged consumers." *Id.* at 193. Therefore, "excessive costs imposed by an arbitration agreement render a contract unconscionable **if the costs**

**prevent a litigant from effectively vindicating his or her rights in the arbitral forum**." *Id.* at 893 (emphasis added).

"The party opposing arbitration bears the burden to show that the costs of arbitration render it unconscionable." *Id.* "When a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* (internal quotations omitted). The burden is not high and requires only a showing of "**some** evidence that a complaining party will **likely incur** arbitration costs in such an amount as to **deter enforcement** of statutory rights in the arbitral forum." *Id.* (internal quotations omitted) (emphasis added). Texas law does not mandate that claimants actually incur the cost of arbitration before they can show its excessiveness but "parties must at least provide evidence of the likely cost of their particular arbitration, through invoices, expert testimony, reliable cost estimates, or other comparable evidence." *Id.* at 195. Whether enforcement of the arbitration provision would be unconscionable is decided on "a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." *Id.* at 193.

### 1. Cost of arbitration.

The superseded arbitration provision in the Lanier agreement provides that any arbitration shall be governed by the commercial rules of the American Arbitration Association ("AAA").[32] To initiate the arbitration with the AAA, Allen, as the claimant with damages in excess of $1,000,000, would be required to pay the initial filing fee of $7,700 and a final filing fee of

---

[32] Arbitration Motion, at Exhibit 1, at ¶ 10.

$8,475.[33] The initial filing fee is to be paid by the party bringing the claim at the time the demand or claim is filed with the AAA.[34] This does not include the arbitrator's compensation.[35]

To determine the potential costs that would likely be incurred by Allen relating to the arbitrator's compensation, Allen retained retired justice Alice Oliver-Parrott.[36] Justice Parrott, the former Chief Justice on the First Court of Appeals, has been an arbitrator since 1996 and has successfully resolved hundreds of disputes.[37] Justice Parrott conservatively estimates, based on her review of the allegations in the petition and discussion with counsel, that the cost of the arbitrator's compensation would be between $50,000.00 and $70,000.00 through resolution of the proceeding.[38] The AAA requires these fees to be split between the parties, meaning Allen would likely be responsible for $25,000 to $35,000 during the course of the arbitration.[39] A minimum of $12,500 would be required from Allen at the initiation of the arbitration and Allen would be responsible for another $25,000 to $30,000 at the eve of the final hearing.[40] Accordingly, Allen is likely to incur at least $30,000 to $40,000 in arbitration costs, including filing fees, final arbitration fees, and arbitrator compensation.[41]

---

[33] Exhibit 7, Judge Alice Oliver Parrot's Affidavit, at 2; Exhibit 8, AAA Commercial Arbitration Rules Administrative Fee Schedules.

[34] Exhibit 7; Exhibit 8.

[35] Exhibit 7, at 2.

[36] Exhibit 7, at 1.

[37] Exhibit 7, at 1.

[38] Exhibit 7, at 2.

[39] *See* Exhibit 9, AAA Commercial Rules, at R. 55, R. 56.

[40] Exhibit 7, at 2.

[41] Exhibit 7, at 1-2.

9

### 2.  Comparative cost of litigation.

On the other hand, Allen will incur no costs to proceed with this case in litigation.[42] Allen (through her counsel) already paid the minimal filing fee and jury fee, and any further costs of litigation (not arbitration) are to be paid by Allen's counsel.[43] Unlike an arbitrator, the Court and the jury will not charge Allen $25,000 to $35,000 to preside over this dispute, and there is no $8,475 final filing fee. Accordingly, the costs of litigation are minimal, and Allen personally will not incur **any litigation costs** unless and until there is a recovery in this case.[44]

On the other hand, Allen is required to pay any costs of arbitration as her agreement with the undersigned counsel provides, "Costs of arbitration are not considered Costs and Expenses and Client **will be solely responsible for arbitration costs**, if any."[45] Allen's counsel will not advance these arbitration costs.[46] Therefore, the expected cost differential between arbitration and litigation (approximately $16,175 in filing fees and $25,000 to $35,000 for arbitrator's fees) is substantial and will deter enforcement of Allen's statutory rights in the arbitral forum.

### 3.  Allen's inability to pay arbitration fees and costs.

Allen is unable to pay the expected arbitration fees and costs because she has no source of income.[47] Beginning in April of 2010, Allen became sick from the chemical exposure resulting from the BP oil spill.[48] After walking her dogs on the beach the days following the oil spill, Allen

---

[42] Exhibit 10, Declaration of David Eric Kassab.

[43] Exhibit 1-A, at ¶ 6.

[44] Exhibit 1-A, ¶ 6; Exhibit 10, at 2.

[45] Exhibit 1-A, at ¶ 6 (emphasis added).

[46] Exhibit 10, at 2.

[47] Exhibit 4.

[48] Exhibit 1, at 1.

10

suffered from blood blisters on her arms, legs and side, progressive respiratory issues, chemical pneumonia and was diagnosed with benzene toxicity and auto immune disease.[49] Due to her physical injuries, Allen has been unable to work and has been unemployed with no income since approximately May of 2010.[50] Allen's husband of thirty years, Richard Allen, was employed and supported her since that time.[51] However, Richard passed away in October of 2018, and Allen has no source of income.[52]

Nor does Allen have any savings to pay the arbitration costs. Richard and Allen had approximately $12,000 to $14,000 in savings, but much of this money was spent on Richard's funeral.[53] Allen used the remainder to support herself since Richard's death.[54] Richard and Allen owned a home, but the value of that home suffered a severe loss due to the oil spill and Allen was forced to sell the home and received less than $5,000 after she paid the balance of the mortgage.[55]

Allen's only income since her husband's death has been litigation loans or advances on her case against BP and this litigation.[56] Without the ability to work or support herself, Allen was required to take out two litigation advances, one for approximately $15,000 in June of 2019 and another for approximately $5,000 in August of 2019.[57] Allen has used this money to support herself

---

[49] Exhibit 1, at 1.

[50] Exhibit 1, at 1.

[51] Exhibit 1, at 1.

[52] Exhibit 1, at 1.

[53] Exhibit 1, at 1.

[54] Exhibit 1, at 1.

[55] Exhibit 1, at 1.

[56] Exhibit 1, at 1.

[57] Exhibit 1, at 1.

and has no other income because she cannot work due to her injuries.[58] Between March of 2019 and June of 2019 Allen lived in her car because she literally had no place to live and no way to pay rent.[59]

Allen uses the litigation advances to pay her living expenses. Once Allen received the advance of $15,000, she leased a cottage in Silver Hill, Alabama on or about June 2, 2019.[60] Allen pays $1,300 per month in rent on this lease using the litigation advances that she received.[61] Allen's other expenses include approximately $60 for telephone and approximately $300 for electricity, water and garbage.[62] Allen usually spends approximately $160 per week in groceries, and her health insurance costs approximately $66 per month.[63] Therefore, Allen's total monthly expenses are approximately $1,886.[64] At this rate, the litigation advances that Allen received will be depleted within a few months, and she will have no income or savings whatsoever.[65]

Allen is dirt poor and simply has no ability to afford this case if it proceeds in arbitration.[66] Allen clearly lacks the necessary income after expenses to afford approximately $16,175 in filing fees and $25,000 to $35,000 for arbitrator's fees.[67] Allen has no income at all. Therefore, the cost

---

[58] Exhibit 1, at 2.

[59] Exhibit 1, at 1-2.

[60] Exhibit 1, at 2.

[61] Exhibit 1, at 2.

[62] Exhibit 1, at 2.

[63] Exhibit 1, at 2.

[64] Exhibit 1, at 2.

[65] Exhibit 1, at 2.

[66] Exhibit 1, at 2.

[67] Exhibit 1, at 2.

of arbitration places an oppressive burden on Allen and her ability to effectively vindicate her rights.[68] Allen will likely be unable to pursue the dispute if arbitration is granted.[69] The disparity between Allen's financial status and the amount charged to arbitrate the controversy as well as the expected cost differential between litigation and arbitration is so large as to render the arbitration agreement unconscionable. These circumstances require a finding of substantive unconscionability.

The case *Olshan Found. Repair Co. v. Ayala*, 180 S.W.3d 212 (Tex. App. – San Antonio 2005, pet. denied) is instructive. There, the party opposing arbitration supported their motion "with specific information regarding the fees they would be required to pay for the arbitration." *Id.* at 215-216. Like here, this evidence in *Ayala* included an estimation of fees and expenses for the AAA arbitrators to preside over the dispute. *Id.* at 216. It also included testimony from the plaintiff stating she would not be in a position to adjudicate her legal rights if she had to pursue her claims in arbitration because the cost represented approximately 45% of her gross annual earnings. *See id.* Here, the costs of arbitration account for more than 100% of Allen's annual earnings because she is unemployed due to her injuries.[70] Allen has testified that if compelled to arbitration, she will not be able to afford it and have no forum to vindicate her rights.[71] Accordingly, enforcement of the arbitration provision is unconscionable because the costs would effectively deprive Allen the opportunity to bring her claims. *See id.*

---

[68] Exhibit 1, at 2.

[69] Exhibit 1, at 2.

[70] Exhibit 1, at 2.

[71] Exhibit 1, at 2.

13

### III
### RESPONSE TO ALTERNATIVE MOTION TO ABATE

In the alternative, Herd asks the Court to abate this case pending resolution of the appeal he filed in federal court challenging the dismissal of the underlying case.[72] The request for abatement should be denied at this time. Abatement is within the sound discretion of the trial court. *See Liberty National Fire Insurance Company v. Akin*, 927 S.W.2d 627, 629 (Tex.1996). It would be unjust to abate this proceeding entirely pending resolution of an appeal to a court of discretionary review. Trial in this case is set for June 20, 2020. Surely the Fifth Circuit Court of Appeals will render a decision prior to this trial date. In the unlikely event the Fifth Circuit grants relief and reverses the dismissal, this malpractice case can be abated at that time to determine if Allen is made whole in the underlying proceedings. However, in the more likely event that discretionary review is denied, or relief is not granted, this case can timely proceed to trial on June 20, 2020. The Court should act within its discretion and deny the abatement at this time to allow discovery to move forward. Allen has suffered long enough, and she should be entitled to move forward with this litigation to timely obtain the recovery that she was wrongly denied.

### IV
### MOTION FOR SANCTIONS

Chapter 10 of the Texas Civil Practice & Remedies Code required Herd's counsel to warrant, with respect to the joinder, that "each claim, defense, or other legal contention in the pleading or motion is warranted by existing law" and "each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support[.]" TEX. CIV. PRAC. & REM. CODE § 10.001(2), (3). Yet, the joinder contains allegations which are demonstratable false and violate this

---

[72] Alternative Motion to Abate, at 2-3.

14

section. Specifically, Herd claims that the "arguments and authorities cited" in the Arbitration Motion file by Lanier "are equally applicable to Herd."[73] Herd also claims that "there is a valid, enforceable arbitration agreement" and that Allen's "claims fall within the purview of the arbitration agreement."[74] These allegations are demonstrably false and lack factual or evidentiary support because Herd is not a party to the Lanier agreement[75] and executed a new agreement with Allen which superseded the Lanier agreement and which did not contain an arbitration provision.[76] Herd knows this, but he and his counsel who signed the pleading (Cory Reed) knowingly concealed this fact from the Court. This gamesmanship should not be condoned, and sanctions are warranted.

This is not the first time the undersigned counsel has requested that Mr. Reed be sanctioned for his misconduct. Previously, the undersigned counsel moved for sanctions against Mr. Reed and his clients because of their discovery abuse in another matter. Judge Robert Shaffer of the 152nd Judicial District Court granted that motion for sanctions and ordered Mr. Reed's clients to pay the undersigned counsel $500 "as a sanction due to Defendants' discovery abuse" in that case.[77] It appears Mr. Reed is up to his old antics.

The false allegations made by Mr. Reed in the joinder support a violation of Chapter 10. Accordingly, Allen requests the Court to sanction Herd's counsel in the amount of the "reasonable expenses incurred by [Allen] because of the filing of the pleading or motion, including reasonable attorney's fees." TEX. CIV. PRAC. & REM. CODE § 10.004(c)(3). Allen has incurred six hours

---

[73] Alternative Motion to Abate, at ¶ 1.

[74] Alternative Motion to Abate, at ¶ 2.

[75] Arbitration Motion, at Exhibit 1.

[76] Exhibit 4.

[77] Exhibit 11, Order on Sanctions in Wonders.

responding to the Arbitration Motion.[78] Having joined in that motion, Herd should be held equally responsible for the time incurred by Allen's counsel to respond. At minimum, the Court should sanction Herd and his counsel half of those expenses, or $1,050. Allen requests such sanctions to be paid within ten days from the date of the order.

**V**

**CONCLUSION AND PRAYER**

For the reasons stated herein, Plaintiff, Sheri Dorgan Allen, prays that the Court (1) deny Defendants, W. Mark Lanier and The Lanier Law Firm, PC's Plea in Abatement and Motion to Compel Arbitration; (2) deny Defendants, Charles F. Herd and Herd Law Firm, PLLC's Alternative Motion to Abate; and (3) grant Plaintiff's Motion for Sanctions and order Defendants Charles F. Herd and Herd Law Firm, PLLC and their counsel, Corey Reed, to pay The Kassab Law Firm a just and reasonable sanction sufficient to deter any further misconduct within ten days.

Respectfully submitted,

**THE KASSAB LAW FIRM**

LANCE CHRISTOPHER KASSAB
Texas State Bar No. 00794070
lance@kassab.law
DAVID ERIC KASSAB
Texas State Bar No. 24071351
david@kassab.law
NICHOLAS R. PIERCE
Texas State Bar No. 24098263
nicholas@kassab.law
1214 Elgin Street
Houston, Texas 77004
Telephone: 713-522-7400
Facsimile:  713-522-7410

**ATTORNEYS FOR PLAINTIFF**

---

[78] Exhibit 10.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all parties pursuant to the Texas Rules of Civil Procedure on this the 4th day of September, 2019.

_____
David Eric Kassab