## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE: OIL SPILL by the OIL RIG** | § | **MDL No. 2179** |
| **"DEEPWATER HORIZON" in the GULF** | § | |
| **OF MEXICO, on APRIL 20, 2010** | § | **SECTION J** |
| | § | |
| | § | |
| **This Documents Relates to:** | § | |
| *All Claims In Pleading Bundle B3* | § | **JUDGE BARBIER** |
| | § | **MAG. JUDGE WILKINSON** |

| | | |
|---|---|---|
| **Sergio Valdivieso** | § | **CIVIL ACTION NO. 2:12-cv-02004** |
| *Plaintiff* | § | |
| **vs.** | § | **SECTION: J** |
| | § | |
| **BP Exploration & Production, Inc., BP** | § | **JUDGE BARBIER** |
| **America Production Company, and BP, P.LC.** | § | |
| *Defendants* | § | **MAG. JUDGE WILKINSON** |

## AFFIDAVIT OF CHARLES F. HERD, JR.

My name is Charles F. Herd, Jr. I am over age 21, have never been declared mentally unfit, make this affidavit as my free act and deed, and make this affidavit based on my personal knowledge.

I am an attorney licensed to practice law in Texas, having passed the Texas Bar in 1985. I have practiced primarily maritime law since that time. I was an attorney at the Lanier Law Firm from approximately March, 2002 through July 31, 2018. Starting August 1, 2018, I began my own law firm, Herd Law Firm, PLLC, with offices in Houston, Texas.

I have been the primary handling attorney for claims in the BP Oil Spill for Plaintiff Sergio Valdivieso ("Valdivieso" or "Plaintiff"), whose claims arise from personal injuries he received while working as a deckhand on a commercial cleanup vessel. He qualifies as a "seaman" under the US Jones Act, which allows him to pursue certain distinct claims that only a Jones Act seaman can pursue. I have gathered information and documents from him, helped secure, finalize and file his Particular Statement of Claims ("PSOC") documents, and have filed various submissions and pleading on his behalf.

On March 1, 2012, Valdivieso filed his lawsuit against Southern Cat (his Jones Act employer), Energy Research Group ("ERG", who had engaged the services of Southern Cat) and BP, in state court in Harris County, Texas, alleging personal injuries related to his work as a Jones Act seaman. *See* Cause No. 2012-12858*; Sergio Valdivieso v. Southern Cat, Inc., et al.*; In the 164th District Court of Harris County, Texas. A true and correct copy of the lawsuit is attached as Exhibit 1.

A true and correct copy of Valdivieso's April 11, 2017 "Filing of Sworn Statement for Disclosure of B3 Claims, (Doc. 22295-1) in response to PTO 63 is attached as Exhibit 2. That document states that Valdivieso was not a member of the Medical Benefits Settlement Class. I never received any objection to Valdivieso's response.

Attached as Exhibit 3 are true, correct and relevant pages from the copy of the Declaration of Cameron Azari: Medical Benefits Notice plan; specifically pages 54-62 of 249. This declaration was attached to Document 6267.

Attached as Exhibit 4 is a true and correct copy of Valdivieso's response to PTO 66 (Doc. 24282-1). The attestation is dated October 8, 2018.

Attached as Exhibit 5 is a true and correct copy of Valdivieso's motion to remand his case from the Federal Court in the Southern District of Texas back to the Texas state court where his lawsuit was originally filed, which was filed on April 19, 2012. Valdivieso will re-urge that motion upon remand to the Southern District of Texas, Houston Division, in accordance with that court's prior orders.

Attached as Exhibit 6 is a true and correct copy of the Federal Court's order denying Valdivieso's Motion to Reconsider and Motion to Remand, dated June 4, 2012.

Based on my review of his medical records and my conversations with him, Valdivieso has not been diagnosed with any illness or injury related to exposure to hydrocarbons or dispersants, and has not been diagnosed with any of the Specified Medical Conditions detailed in the Medical Benefits Settlement Class.

Further, affiant sayeth not.

_____
CHARLES F. HERD, JR.


SWORN TO AND SUBSCRIBED BEFORE ME on this the 12th day of March. 2021, to certify which witness my hand and seal of office.


_____
Notary Public in and for
The State of Texas

My Commission expires: 8.02.2023



Christin G Pitcher
My Commission Expires
08/02/2023
ID No. 126803388

# EXHIBIT 1

Filed 12 March 1 P3:28
Chris Daniel - District Clerk
Harris County
ED101J016755465
By: Sharon Carlton

CAUSE NO. _____

| | | |
|---|---|---|
| SERGIO VALDIVIESO | § | IN THE DISTRICT COURT OF |
| | § | |
| v | § | |
| | § | |
| SOUTHERN CAT, INC. , EASTERN | § | HARRIS COUNTY, TEXAS |
| RESEARCH GROUP, INC., BP PLC, BP | § | |
| PRODUCTS NORTH AMERICA INC., and | § | |
| BP AMERICA INC. | § | |
| | § | |
| | § | _____ JUDICIAL DISTRICT |

### PLAINTIFF'S ORIGINAL PETITION
### AND REQUESTS FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, SERGIO VALDIVIESO, complaining of SOUTHERN CAT, INC. (hereafter sometimes called "SOUTHERN CAT"), EASTERN RESEARCH GROUP, INC. (hereafter sometimes called "ERG"), BP PLC, BP PRODUCTS NORTH AMERICA INC., BP AMERICA INC. (hereafter sometimes collectively called "BP"); and hereinafter referred to collectively as "Defendants", and for cause of action would respectfully show unto this Honorable Court the following:

**I**
**DISCOVERY PLAN LEVEL 2**

1.     Discovery is intended to be conducted under Level 2 of Texas Rules of Civil Procedure 190.

**II**
**REQUESTS FOR DISCLOSURE**

2.     Pursuant to Rule 194 of the Texas Rules of Civil Procedure, each Defendant is requested to disclose the information and material described in Rule 194.2 within fifty (50) days of the service of this request.

## III
## PARTIES

3.      Plaintiff, SERGIO VALDIVIESO is a resident of Bradenton, FL 34209.

4.      Defendant, SOUTHERN CAT, INC. is a foreign for-profit corporation doing business in the State of Texas and within the jurisdiction of this Honorable Court. Defendant may be served by and through its principal office located in Harris County, Texas, for service of process: 701 Brazos Street, Suite 720, Austin, TX 78701.

5.      Defendant, EASTERN RESEARCH GROUP, INC. is a foreign for-profit corporation doing business in the State of Texas and within the jurisdiction of this Honorable Court.  Defendant may be served by and through its principal office located in Harris County, Texas, for service of process: C T Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, TX 75201.

6.      Defendant, BP, PLC is a public limited company organized under the laws of the United Kingdom and at all times pertinent hereto, was qualified to do business and doing business in the State of Texas and within the jurisdiction of this Honorable Court.  Defendant can be served with process by serving the Texas Secretary of State, with process to be forwarded to Defendant via its Corporate Office, North American Headquarters, 28300 Torch Parkway, Warrenville, IL 60555-3938.

7.      Defendant, BP PRODUCTS NORTH AMERICA, INC. is a Maryland corporation, with its principal place of business in Houston, Texas, and doing business in the State of Texas and within this district.  Defendant may be served with process through its registered agent at: Prentice Hall Corp System, 211 E. 7th Street, Suite 620, Austin, TX 78701.

8.      Defendant, BP AMERICA, INC. is a Delaware corporation with its principal place of business in Warrenville, Illinois, but doing business in the State of Texas and within this

Unofficial Copy - Office of Marilyn Burgess District Clerk

district. Defendant may be served with process through its registered agent at: CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, TX 75201.

9.    Defendants, BP Products North America Inc. and BP America Inc., are wholly owned subsidiaries of the global parent corporation, BP PLC, and they shall all be referred to herein collectively as "BP."

## IV
## FACTUAL BACKGROUND

10.    At all times pertinent hereto, the Vessel, a twenty-four foot fiberglass fishing boat,  was a vessel operated or under the control of Defendant BP and chartered by Defendant SOUTHERN CAT and/or ERG, and is a vessel within the jurisdiction of the United States, including the United States Coast Guard and relevant United States federal regulations.

## V
## JONES ACT SEAMAN

11.    At the times pertinent hereto, Plaintiff, SERGIO VALDIVIESO, was employed by Defendant SOUTHERN CAT, as a Jones Act seaman and member of the crew of the subject Vessel, as provided in 46 USC § 30104, *et seq*., was assigned by Defendants to the Vessel, and was acting within the course and scope of his employment as a seaman aboard that Vessel at all times relevant to the events forming the basis of this suit.

## VI
## JONES ACT NEGLIGENCE
## COUNT I

12.    On or about June 9, 2010, as Plaintiff was performing his assigned duties as a seaman aboard the Vessel, while the Vessel was assisting in the cleanup of the BP Oil Spill and operating in or near Barataria Bay, located offshore Grand Isle, Louisiana, Plaintiff sustained serious and disabling personal injuries, including to Plaintiff's neck, shoulder, arm, and back,

and other parts of his body, while attempting to lift, position or reposition oil-absorbing boom. Said injuries were caused, in whole or in part, by the negligence of the Defendants, their agents, servants and/or employees.  In particular, SOUTHERN CAT failed to provide a safe place to work, failed to provide proper equipment, supervision and training, and failed to inspect the Vessel, and its appurtenances and equipment, including the lack of a proper crane required to hoist, position, or lay the boom, and failed to warn its employees, including Plaintiff, of the dangers associated with their work assignments on that Vessel.  Plaintiff was injured while working on the Vessel laying boom by hand, since the Vessel was not equipped with the proper crane or other mechanical hoisting equipment for the job.  Plaintiff was required to hoist, hold and pull boom from the main deck of the boat, work which was so heavy that it ripped tissue in his shoulder and/or neck and caused various other injuries.

## VII
## UNSEAWORTHINESS
## COUNT II

13.     Plaintiff's injuries were legally caused, in whole or in part, by the unseaworthiness of the Vessel, which at all relevant times was operated, controlled and/or chartered by Defendants.  The Vessel was not equipped to properly and safely move and lay boom. The Vessel also was unseaworthy because the master and crew were not properly trained for the task at hand, nor was Plaintiff properly supervised or instructed in the boom-reporting operation being conducted when Plaintiff was injured.

## VIII
## MAINTENANCE AND CURE
## COUNT III

14.     Plaintiff would show that on the above-mentioned and following dates, he was injured while acting as a seaman and employee of Defendant, SOUTHERN CAT, in the service

of the Vessel.  As a result, SOUTHERN CAT as his Jones Act employer had, and continues to have, a non-delegable duty to provide Plaintiff with all proper and timely maintenance and cure benefits.  Plaintiff would show that: he has required medical treatment as a result of the subject accident and injuries; he has not reached maximum medical improvement; and his seaman-employer's duties to provide maintenance and cure benefits continue.  Defendant SOUTHERN CAT has denied such payment and/or has paid benefits in an insufficient amount.  As a result of Defendant's failure to pay and/or delay in timely providing and/or paying the proper amount of maintenance and cure benefits, Plaintiff has suffered further injuries and damages, for which he now sues.

15.     In addition, Plaintiff would show that, after the injuries he received, he was owed the duty of maintenance and cure by SOUTHERN CAT, his Jones Act employer; that such duty began on the Vessel and has continued from day to day thereafter; and that said maritime employer failed to provide proper maintenance and cure benefits to Plaintiff.  Plaintiff asserts that Defendant SOUTHERN CAT has been callous, willful, wanton, or otherwise tortious, for which punitive damages are recoverable, in breaching this duty owed to Plaintiff.  Defendant SOUTHERN CAT also is liable for all reasonable and necessary attorneys' fees and costs incurred on Plaintiff's behalf in seeking to secure proper maintenance and cure benefits from Defendant.

<div align="center">

**IX**
**BP'S  NEGLIGENCE**
**COUNT IV**

</div>

16.     In addition to the above causes of action, Plaintiff would show that his exposure and resulting injuries were proximately caused by the negligence or other legal fault of Defendant, BP, acting through its officers, employees, representatives, agents or "company

men," in failing to inspect the area(s) and operation(s) in question, in failing to adhere to recognized safety guidelines, in failing to ensure that the work area was free of hazards conditions and/or dangerous chemicals, in failing to provide personal protective equipment to the crew or ensure that the Vessel and her equipment, appurtenances, Master and crew were in all respects fit for their intended service, in allowing the master and crew to continue their work in an unsafe manner, and otherwise as may be shown in the trial of this case.

## X
## ADDITIONAL CLAIMS
### COUNT IV

17.     Additionally, Plaintiff was exposed to dangerous chemicals, petroleum, and hydrocarbons from the oil spill and from dispersants which BP insisted on using to clean up the oil spill on the surface of the water.  Plaintiff and the crew were not properly trained regarding the hazard presented to them on the Vessel.  Plaintiff also was not provided with the necessary safety gear, or personal protective equipment, or adequate tools or machinery to hoist, retrieve or lay the boom or other oil-spill equipment.   Defendants failed to warn Plaintiff and the other members of the crew regarding the hazards, which were known or should have been known to BP, SOUTHERN CAT, and ERG.  Also, these Defendants failed to provide Plaintiff with a safe place to work, and proper and adequate protection from these hazards.  Finally, the Vessel was insufficiently supervised and manned, which forced Plaintiff and other members of the crew to be exposed to these hazards.  As a result of these acts of negligence, and others to be shown at trial, by BP, SOUTHERN CAT and/or ERG, Plaintiff sustained injuries for which he now sues.

## XI
## PUNITIVE DAMAGES, FROM DEFENDANTS' GROSS NEGLIGENCE

18..    Plaintiff also sues for punitive and exemplary damages, due to the gross negligence of Defendants.

## XII
## VENUE

19.    Plaintiff would show that one or more of the Defendants' principal offices, on information and belief, is in Harris County, Texas.  On that basis, venue is proper in Harris County, Texas.

## XIII
## DAMAGES

20.    By reason of the occurrences made the basis of this action, including conduct on the part of all Defendants, Plaintiff sustained disabling bodily injuries.  Plaintiff has suffered physical pain and mental anguish and needs additional medical treatment.

21.    As a result of the foregoing injuries, Plaintiff has suffered a loss of wages in the past and a loss of capacity to work and earn money in the future and his earning capacity may have been impaired permanently.

22.    Additionally, Plaintiff has incurred reasonable and necessary medical expenses in the past and, in reasonable probability, will incur reasonable medical expenses in the future.

23.    As a result of the injuries sustained in the occurrence of June 9, 2010, and the continuing days thereafter, Plaintiff has suffered in the past and, in reasonable medical probability, will continue to suffer in the future.

24.    Plaintiff is physically impaired as a result of the injuries he sustained on or about July 21, 2010, as a consequence, he has lost the ability to perform household services.

25. The long term effects of exposure to chemical dispersants and petroleum in the degree and duration sustained by Plaintiff are largely unknown. Plaintiff will require medical monitoring to guard against the potential serious and life-threatening chronic health effects from this exposure for the rest of his life.

## XIV
## OTHER PROVISIONS

26. Plaintiff did not cause or contribute to the injuries asserted or damages claimed herein.

27. Pleading further, in the alternative, if it be shown that Plaintiff was suffering from some pre-existing injury, disease and/or condition, then such was aggravated and/or exacerbated as a result of the occurrences made the basis of this lawsuit.

## XV
## JURY DEMAND

28. Pursuant to Texas Rule of Civil Procedure 216, Plaintiff requests a trial by jury.

## XVI

WHEREFORE, Plaintiff requests that Defendants be summoned to appear and answer, and that, on final trial, Plaintiff have Judgment against Defendants SOUTHERN CAT, INC.; EASTERN RESEARCH GROUP, INC.; BP PLC; BP PRODUCTS NORTH AMERICA INC.; and BP AMERICA INC. for:

1. All damages permitted at law;

2. Reasonable attorneys' fees;

3. Pre-judgment interest;

4. Post-judgment interest;

5. Costs of suit;

6.      Punitive damages; and

7.      Such other and further relief, in admiralty, at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**THE LANIER LAW FIRM P.C.**

By: _____

W. MARK LANIER
TBA # 11934600
CHARLES F. HERD, JR.
TBA # 09504480
LAWRENCE P. WILSON
TBA # 21704100
6810 F.M. 1960 West
Houston, Texas 77069
Telephone: 713-659-5200
Fax: 713-659-2204

**ATTORNEYS FOR PLAINTIFF**

'

# EXHIBIT 2

## EXHIBIT A

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
Civil Action No. 10-MD-2179-CJB-SS

FORM FOR DISCLOSURES REGARDING REMAINING CLEAN-UP, MEDICAL MONITORING, AND
POST-APRIL 20 PERSONAL INJURY CLAIMS, VESSELS OF OPPORTUNITY CHARTER CLAIMS, AND
ALL OTHER B3 CLAIMS

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Valdivieso | Sergio | | |

| Phone Number | E-Mail Address |
|---|---|
| 941-545-9778 | |

| Current Mailing Address | City / State / Zip |
|---|---|
| 6708 36th Avenue Dr. W | Bradenton, Fl 34209 |

| Employer at Time of Incident | Date of Birth |
|---|---|
| Southern Cat | 1-19-1953 |

| Attorney Name and Firm | Attorney E-Mail Address |
|---|---|
| Charles Herd The Lanier Law Firm | CFH@Lanierlawfirm.com |

All previous addresses where Plaintiff resided from April 2010 to present, including the date ranges
Plaintiff resided at each address?

Same as above —

Any prior name used by Plaintiff from April 2010 to present?

NO —

| The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff | Business Name (for non-medical, non-personal injury claims) |
|---|---|
| XXX-XX-5366 | |

Please indicate your status:

☐ Properly opted out of the Medical Benefits Settlement*

☑ Not a member of the Medical Benefits Settlement Class

☐ Member of the Medical Benefits Settlement Class

☐ Other:_____

*If you opted out, a copy of your valid opt-out form must be included with your service of this Exhibit A.

---

Did you participate in any of the following Response Activities* in response to the *Deepwater Horizon* incident?

☐ Captain, crew, or other worker employed under the Vessels of Opportunity ("VoO") program who performed Response Activities.

☐ Workers employed to perform the decontamination of vessels involved in Response Activities.

☑ Captains, crew, and other workers on vessels other than VoO who performed Response Activities.

☐ Onshore personnel employed to perform Response Activities.

☐ Persons involved in the recovery, transport, and decontamination of wildlife affected by the *Deepwater Horizon* incident.

* Response Activities is defined as the clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances that were done under the auspices of the Unified Command, BP, or a federal, state, or local authority.

---

You are pursuing a claim against at least one B3 Defendant by way of (*select all that apply*):

☑ Previously-Filed Individual Action, Eastern District of Louisiana Case No. 2:12-cv-02004

☐ A New Individual Action (filed because plaintiff previously had only a short-form joinder* on file), Eastern District of Louisiana Case No. _____.

☐ A New Individual Action (filed because plaintiff previously was part of Complaint with more than one plaintiff or a putative class action). List both prior Eastern District of Louisiana Case No. _____ and new Individual Action Case No._____

☐ Other:_____

* A copy of your timely SFJ(s) (and any PPFs) must be included with your service of this Exhibit A.

2

**You are pursuing a claim against at least one B3 Defendant for (*select all that apply*):**

☒ Personal injury or wrongful death arising from circumstances <u>other than</u> alleged exposure to crude oil or dispersants.

> If so, describe the alleged injury and identify the location and approximate date of the alleged injury: On or about June 9, 2010- injured neck, shoulder arm and back while lifting oil absorbing booms in or Near Baratarua Bay, offshore Grand Isle Louisiana

☐ Medical monitoring, personal injury, or wrongful death arising from alleged exposure to crude oil or dispersants.

> If so, identify the location and approximate date of the alleged exposure: _____
>
> _____
>
> _____
>
> If so, describe the alleged injury and identify the location and approximate date of the alleged injury: _____
>
> _____

☐ Vessels of Opportunity Contract Claim.

☐ Non-Vessels-of-Opportunity Contract Claim Related to the Response.

☐ Other.  Please specify: _____.

**GCCF Claim:**

Did you, the plaintiff seeking relief, present this claim to the Gulf Coast Claims Facility ("GCCF")?

> Yes _____.   No ___X___.

If Yes, please identify:

1.  The claim number(s) (if available)._____.

2.  Did you execute a release of your claims upon receiving payment through the GCCF:

> Yes _____.   No _____.

I state under penalty of perjury that the foregoing is true and correct.   Executed on the following date at the following location:

Date: __4-6-17__, 2017

Location (City and State): __Bradenton, Fl__

X _____

Signature of Plaintiff (*Plaintiff's Attorney* <u>*Cannot*</u> *Sign on Plaintiff's Behalf*)

_SERGIO VALDIVIESO_
Print Name

This Sworn Statement and any supporting information must be filed with the Court and served on both Counsel for BP and the PSC on or before <u>April 12, 2017</u>.  Service on Counsel for BP and the PSC can be made via United States mail at the following addresses:

| Counsel for BP | MDL 2179 Plaintiffs' Steering Committee |
|---|---|
| Attn: J. Andrew Langan | Attn: Steven J. Herman |
| Kirkland & Ellis LLP | Herman, Herman, Katz & Cotlar, LLP |
| 300 North LaSalle St, | 820 O'Keefe Avenue |
| Suite 2400 | New Orleans, LA 70113 |
| Chicago IL 60654 | |

Claimants represented by counsel may additionally or alternatively serve the sworn statements and any supporting information upon the PSC and Counsel for BP via File & ServeXpress ("F&S").

# EXHIBIT 3

Exhibit 2 to Declaration of Cameron Azari:
Medical Benefits Notice Plan



<div style="border: blue box">

# *Deepwater Horizon Oil Spill Litigation*
## *Medical Benefits*
### *Settlement Notice Plan*

</div>

# *Table of Contents*

|  | *Page* |
|---|---|
| 1. Introduction | 4 |
| 2. Overview/Summary | 6 |
| 3. Notice Schedule Flow Chart | 12 |
| 4. Target Audience | 13 |
| 5. Individual Notice | 14 |
| 6. Media Selection | 17 |
| 7. Plan Delivery Summary | 19 |
| 8. Net Reach | 20 |
| 9. Average Frequency of Exposure | 22 |
| 10. Geographic Coverage | 23 |
| 11. Nationwide Publication Plan | 24 |
| 12. Nationwide Publication Details | 25 |
| 13. Nationwide Publication Coverage | 28 |
| 14. Nationwide Publication Circulation | 29 |
| 15. Publication Secondary Reader Data | 30 |
| 16. Nationwide Publication Audience Data | 31 |
| 17. Nationwide Publication Gross Impressions | 32 |
| 18. Trade, Business and Specialty Publications | 33 |
| 19. Local Newspapers | 35 |

20. African-American and Vietnamese and Spanish Language Publications          37

21. Local Television                                                           39

22. TV Dayparts/Programming                                                    40

23. TV Rating Points (GRPs)                                                    41

24. TV Gross Impressions                                                       42

25. Local Radio Programming                                                    43

26. Internet Banner Notices                                                    44

27. Placing Notices to Be Highly Visible                                       45

28. Informational Release                                                      46

29. TV Public Service Announcements                                            47

30. Case Website                                                               48

31. Sponsored Search Listings                                                  49

32. Notice Design Strategy                                                     50

33. Draft Forms of Notice                                                      52

**Attachment 1** - *Drafts of Notice*

**Attachment 2** – *Parade, USA Weekend and American Profile Newspaper List*

**Attachment 3** – *Local Newspapers*

# *1. Introduction*

The "Notice Plan" (or "Plan") that follows details the dissemination effort that will be undertaken to provide comprehensive notice to Medical Benefits Settlement Class Members in connection with the proposed Medical Benefits Class Action Settlement in *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179. The Plan utilizes extensive and appropriate prior class action notice experience.

Two separate class action settlements within the MDL No. 2179 litigation—a Medical Benefits Settlement and an Economic and Property Damages Settlement— have been proposed related to the Deepwater Horizon Incident. Each settlement contemplates contemporaneous notice.

To prevent confusion over the two class action settlements, the proposed Medical Benefits Settlement Notice Plan effort highlights that the Court is considering two separate settlements. Print publication notice consists of a single advertising unit that includes one summary notice that addresses the Medical Benefits Settlement, and a separate summary notice that addresses the Economic and Property Damages Settlement. Broadcast and Internet banner efforts provide the message that there is one settlement addressing medical claims, and a separate settlement addressing economic and property damage claims. Finally, one individual notice for the Medical Benefits Class Action Settlement will be mailed to known individuals who are likely members of the Medical Benefits Class, and a separate individual notice for the Economic and Property Damages Settlement will be mailed to all known, likely members of the Economic and Property Damages Settlement Class.

The Medical Benefits Settlement and the Economic and Property Damages Settlement notices will include a common website address and toll-free number. The content of the website and toll-free numbers will make clear to visitors/callers that two separate settlements have been reached, and provide appropriate information about each respective settlement.[1]

Hilsoft Notifications has designed and will implement this Notice Plan if and when the Medical Benefits Class Action Settlement receives Preliminary Approval by the Court. At the appropriate time Hilsoft may also develop and implement subsequent notice efforts as agreed to by the parties and/or directed by the Court,

---

[1] If either settlement is not approved or the two Settlements are approved on substantially different schedules, the Notice content will be adjusted accordingly.

including a reminder notice effort in advance of the claim deadline.

Hilsoft Notifications' principals have been recognized as class action notice experts by judges, and have specific experience designing and implementing large-scale class action notice plans.  Principals Cameron Azari, Esq., Director of Legal Noticing, and Lauran Schultz, Executive Director, have designed the Plan and Notices, and will oversee implementation to successful completion.

With experience in more than 200 cases, notices prepared by Hilsoft Notifications have appeared in 53 languages with distribution in almost every country, territory and dependency in the world.  Judges, including in published decisions, have recognized and approved notice plans developed by Hilsoft Notifications, which have always withstood collateral reviews by other courts and appellate challenges, including to the U.S. Supreme Court.

The proposed draft notice documents (the "Notice" or "Notices") follow the principles in the Federal Judicial Center's ("FJC") illustrative model notices that were written and designed to embody the satisfaction of the plain language requirements of Federal Rule of Civil Procedure 23(c)(2).  To assist judges and attorneys in federal as well as state courts, the FJC has posted the notices at www.fjc.gov.

© 2012 Hilsoft Notifications

# *2. Overview/Summary*

- **Objective.**  To notify the greatest practicable number of Medical Benefits Settlement Class Members (hereinafter "Settlement Class Members" or "Class Members") and provide them with opportunities to be exposed to the Notice, to see, review, understand, and be reminded about it, and to respond appropriately if they choose.

- **Imperatives.**  Key factors guide the dissemination methods needed to achieve a reasonable and effective notice effort:

  1. The majority of Class Members are located within a limited geographic area and the primary thrust of the Notice Plan must be focused there.
  2. Some Class Members (primarily Clean-Up Workers) could be located throughout the U.S., including large cities and rural areas.
  3. Mailing addresses, compiled from various lists, are available for a portion of the Class.
  4. High quality notice methods are needed to convey the importance of information affecting Settlement Class Members' rights.

- **Target Audience.**  The Medical Benefits Settlement Class consists of:

  All "Natural Persons" who resided in the United States as of April 16, 2012, and who:

  - Worked as "Clean-Up Workers" at any time between April 20, 2010 and April 16, 2012; or
  - Resided in Zone A for some time on each of at least sixty days between April 20, 2010, and September 30, 2010 ("Zone A Resident"), and developed one or more "Specified Physical Conditions" between April 20, 2010, and September 30, 2010; or
  - Resided in "Zone B" for some time on each of at least sixty days between April 20, 2010, and December 31, 2010 ("Zone B Resident").

  We further understand that the capitalized terms in the Class Definition have the following meanings:

  **"Natural Person"** shall mean a human being and, in the case of a human being who died on or after April 20, 2010, shall include such human being's estate. For purposes of the Medical Settlement Agreement, a Natural Person who is (1)

a minor, (2) lacking capacity or incompetent, or (3) an estate of a deceased human being shall be deemed to act through his, her, or its Authorized Representative.

**"Clean-Up Workers"** shall mean all Natural Persons who performed Response Activities, including:

- Captains, crew, and other workers employed under the Vessels of Opportunity ("VoO") program who performed Response Activities;
- Workers employed to perform the decontamination of vessels involved in Response Activities;
- Captains, crew, and other workers on vessels other than VoO who performed Response Activities;
- Onshore personnel employed to perform Response Activities; and
- Persons involved in the recovery, transport, and decontamination of wildlife affected by the Deepwater Horizon Incident.

**"Zone A"** and **"Zone B"** are defined geographic locations along the Gulf Coast. In general, Zone A includes certain beachfront areas in Louisiana, Mississippi, Alabama, and the Florida Panhandle within at least 1/2 mile of the water. Zone B includes certain wetlands within at least 1 mile of the water.

**"Specified Physical Condition"** means one or more of the Acute Conditions or Chronic Conditions identified in Exhibit 10 of the Settlement Agreement that arose out of a Medical Benefits Settlement Class Member's exposure to oil, other hydrocarbons, or other substances released from the MC252 Well and/or the Deepwater Horizon and its appurtenances, and/or dispersants and/or decontaminants used in connection with the Response Activities, and that first manifested or was exacerbated within the timeframes set forth in Exhibit 10 of the Settlement Agreement. Notwithstanding any of the foregoing, a Specified Physical Condition shall not include any conditions or symptoms claimed by a Medical Benefits Settlement Class Member which conditions or symptoms resulted from the August 23, 2010, ammonia leak reported at Millard Refrigerated Services in Theodore, Alabama.

The Medical Benefits Notice Plan will proceed contemporaneously with the proposed Economic and Property Damages Settlement Notice Plan, appearing as separate publication notices in a single ad unit and as shared broadcast spots. Because of this, the local media portion of the Medical Benefits Notice Plan necessarily must be as broad as the proposed Economic and Property Notice

Plan. Therefore, the scope of joint media effort is defined by the "Gulf Coast Areas" specified in the Economic and Property Damages Settlement Agreement.

 "**Gulf Coast Areas**" means the States of Louisiana, Mississippi, and Alabama; the counties of Chambers, Galveston, Jefferson and Orange in the State of Texas; and the counties of Bay, Calhoun, Charlotte, Citrus, Collier, Dixie, Escambia, Franklin, Gadsden, Gulf, Hernando, Hillsborough, Holmes, Jackson, Jefferson, Lee, Leon, Levy, Liberty, Manatee, Monroe, Okaloosa, Pasco, Pinellas, Santa Rosa, Sarasota, Taylor, Wakulla, Walton and Washington in the State of Florida.

To guide the selection of measured media in reaching unknown Class Members, this Medical Benefits Settlement Notice Plan has a primary target audience of: all adults 18 years and older, currently living in the Gulf Coast Areas. To further extend the reach of the Plan to unknown Class Members who do not currently reside in the Gulf Coast Areas, the Plan includes a broad national effort to reach adults 18 years and older across the United States.

To verify the notice program's effectiveness, GfK Mediamark Research & Intelligence, LLC ("MRI")[2] data was studied among all adults aged 18 years and older. This data formed the basis for the national program. Additionally, MRI, Nielsen Media Research and other data sources were studied for adults who live in the Gulf Coast Areas.

- ***Strategies.*** Notice will be mailed to individuals who are known or likely Class Members, compiled from various lists provided by the settling parties and their experts. An extensive schedule of local newspaper, radio, television and Internet placements has been developed to reach Class Members in the Gulf Coast Areas. To reach Class Members across the United States, the schedule includes well-read consumer magazines, a national daily business newspaper, highly trafficked websites and Sunday local newspapers (via newspaper supplements). Although not measurable, notice placements will also appear in trade, business and specialty publications, African-American, Vietnamese and Spanish language publications, and Cajun radio programming. An

---

[2] GfK Mediamark Research & Intelligence, LLC ("MRI") is a leading source of publication readership and product usage data for the communications industry. MRI offers comprehensive demographic, lifestyle, product usage and exposure to all forms of advertising media collected from a single sample. As the leading U.S. supplier of multimedia audience research, MRI provides information to magazines, televisions, radio, Internet, and other media, leading national advertisers, and over 450 advertising agencies—including 90 of the top 100 in the United States. MRI's national syndicated data is widely used by companies as the basis for the majority of the media and marketing plans that are written for advertised brands in the U.S.

# EXHIBIT 4

**EXHIBIT A**

---

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
Civil Action No. 10-MD-2179-CJB-SS

**PTO 66 PARTICULARIZED STATEMENT OF CLAIM
FOR REMAINING B3 PLAINTIFFS**

---

**PLAINTIFF'S FULL NAME:** Sergio V. Valdivieso

Please answer every question to the best of your knowledge.

You are signing and submitting this Particularized Statement of Claim under penalty of perjury and therefore must provide information that is true and accurate.

If you **cannot** recall all of the details requested, please provide as much information as you can.

For each question where the space provided does not allow for a complete answer, please attach as many additional sheets of paper as necessary to fully answer the question.

**NOTE**:  Please provide information regarding the person **who claims injury or damages**. The terms "you" and "your" refer only to that person, not to the individual who may be completing this form in a representative capacity.  If the person who claims injury or damages is deceased, the personal representative should respond as of the time immediately prior to his or her death unless a different time period is specified.

**A.      YOUR BACKGROUND INFORMATION**

1.      Current address:

Address Line 1:  6708 36th Avenue Drive West

Address Line 2:  _____

City:  Bradenton          State:  Florida          Zip:  34209

2.      Telephone number:  941-896-1345

3.      Maiden or other names used or by which you have been known, and the dates during which you were known by such names:  N/A

4.      Date and Place of Birth:  1/19/1953; Santiago, Chile

5.      Male XXX     Female_____



**PLAINTIFF'S EXHIBIT**

*A*

tabbies'

19-30440_5604

6.    Each address (other than your current address) at which you have lived during the last ten (10) years, and list the dates of residence for each one:

| Address | Dates of Residence |
|---|---|
| Same as address listed above | |
| | |
| | |

7.    Employment Information:

      A.    Current and past employer(s) over the last 10 years, 2008-2018 (if unemployed, last employer):

| Employer | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
| Self Employed | 6708 36th Avenue Drive West, Bradenton, Fl | 2010 - 2016 | Fisherman, deckhand, boat captain |
| Erick Erickson | 941-348-8142 | 2016 - 2018 | Rebuilding and remodeling houses |
| | | | |
| | | | |

8.    Have you ever been out of work for more than thirty (30) days for reasons related to your health (other than pregnancy)?  Yes _____  No XXX   If *"Yes,"* when were you out of work and why?  Only due to injuries sustained. _____

_____

19-30440.5605

**B.    THE PLAINTIFF AND THE *DEEPWATER HORIZON* OIL SPILL**

9.    Did BP, a government entity, or another company or entity hire you to perform cleanup work in response to the oil spill?

Yes <u>XXX</u>        No<u>_____</u>

*If you responded "Yes" to Question No. 9, please proceed to Question No. 10.*

*If you responded "No" to Question No. 9, please skip to Question No. 14.*

   **1.    Cleanup Workers**

(The term "cleanup worker" shall have the same meaning as that defined in the Medical Benefits Settlement Agreement.  (Rec. Doc. 6427-1 at 11-12, 25).)

10.    Was your cleanup work performed onshore (on land) or offshore (on the water)?

Onshore<u>_____</u>        Offshore <u>XXX</u>        Both<u>_____</u>

11.    Were you hired as part of the Vessels of Opportunity ("VoO") Program?

Yes<u>XXX</u>        No<u>_____</u>

12.    Did you handle hazardous materials as part of your cleanup work?

Yes<u>XXX</u>        No<u>_____</u>

13.    Please set forth the following information about your cleanup work:

   A.    Your employer(s): <u>E. R. G. or Southern Cat.</u>

   B.    Your supervisor(s) at the employer(s) identified in Question No. 13(A):
   <u>Jeff Adams, Southern Cat/E.R.G.</u>

   C.    A description of the work performed for employer(s) identified in Question No. 13(A): <u>Placing booms on islands and positioning oil absorbed float booms from workboat.</u>

   D.    The date(s), time(s), and location(s) you performed the work described in Question No. 13(C): <u>For 3 months; 7 days a week, and worked 10 hours per day. Waters near Grand Isle, Louisiana.</u>

E.   The names of any vessel(s) on which or facility(ies) where you performed the work described in Question No. 13(C): <u>Vessels owned by me, specifically Carolina Skiff</u> <u>21 MC 252.</u>

F.   Any person(s) or entity(ies) other than your employer who oversaw, supervised, or managed your work described in Question No. 13(C): <u>TJeff Adams and Jeff</u> <u>Ellis, Captains of the Boats.  Last known number 941-779-4272</u>

**2.   Residents/Tourists**

14.  Do you allege that you were exposed to oil or chemical dispersants while a ***resident*** of a Gulf Coast State (*i.e.*, Alabama, Florida, Louisiana, Mississippi, or Texas)?

Yes <u>XXX</u>      No <u>_____</u>

15.  Do you allege that you were exposed to oil or chemical dispersants while a ***tourist*** in a Gulf Coast State (*i.e.*, Alabama, Florida, Louisiana, Mississippi, or Texas)?

Yes <u>_____</u>      No <u>XXX</u>

16.  List all address(es) at which you resided in 2010: <u>6708 36th Avenue</u> <u>Drive West,</u> <u>Bradenton, Fl</u>

## C.   INFORMATION ABOUT YOUR B3 CLAIM

17.  Are you claiming that you suffered damages from (*Check all that apply*):

<u>XXX</u>  Bodily injury from exposure to oil and/or dispersants

<u>XXX</u>  Bodily injury other than from exposure to oil and/or dispersants

<u>_____</u> A breach of contract

*If you checked "Bodily injury from exposure to oil and/or dispersants," answer the questions in Parts D & F below.*

*If you checked "Bodily injury other than from exposure to oil and/or dispersants," answer the questions in Part E & F below.*

*If you checked "A breach of contract," answer the questions in Part G below.*

19-30440.5607

## D.   EXPOSURE CLAIMS

18.   Were you exposed to oil, dispersants, or both?

   Oil_____          Dispersants_____          Both XXX____

19.   How were you exposed? (*Check all that apply*)

   A.   Inhalation          Yes XXX____   No_____

   B.   Dermal (skin) contact    Yes XXX____   No_____

   C.   Ingestion           Yes_____   No_____

   D.   Other (please describe):   N/A_____

20.   What was the date(s) of your exposure?   Daily During BP Oil Spill Cleanup 10 hours a day.

   Day: _____   Month: _____   Year: _____

21.   How many time(s) were you exposed to oil or dispersants (for each time, please note whether the exposure was to oil, dispersants, or both)?

   Daily.  Exposed to both.   I handled oil and dispersment soaked booms daily.
   _____
   _____

22.   What was the geographic location(s) of your exposure (for each location, please note on what date this exposure occurred and whether the exposure was to oil, dispersants, or both)?

   Waters and at Grand Isle, LA
   _____
   _____
   _____

23.   For each time that you were exposed to oil or dispersants or both, for how long were you exposed to this substance or chemical?

   Daily.  10 Hours per day, for approximately 13 weeks straight, during the BP oil clean-up.
   _____
   _____

19-30440.5608

24. Describe in as much detail as possible the circumstance(s) in which your exposure to the oil spill and/or chemical dispersant occurred:  I worked as a deckhand on a 21 foot skiff handling and positioning oil-soaked booms as a clean-up worker.

25. *For cleanup workers only*:  Did you report your exposure to oil and/or dispersants to your direct supervisor?

    Yes XXX       No _____

26. *If you answered "Yes" to Question No. 25,* Provide the name of the supervisor to whom you reported your exposure and the date you first reported the exposure:
    Jeff Adams, Southern Cat/E.R.G. and Jeff Ellis, Boat Captain.

**E.    NON-EXPOSURE PERSONAL INJURY CLAIMS**

27. For your non-exposure personal injury, please state:

    A.    The nature of your injury: Left torn shoulder and injuries to neck and arm.

    B.    The date(s) of your injury: June 9, 2010

    C.    The location(s) of your injury: boat located in Barataria Bay, LA

    D.    The work that you were performing when you sustained your injury: lifting an oil-soaked boom to reposition it.  Captain told me to hold boom in my hands as it was being repositioned by the boat.

    E.    Identify any individual(s) who witnessed your injury: Jeff Ellis, boat Captain.

28. Describe in as much detail as possible the circumstance(s) of your injury: _____
    Lifting oil boom from bow of boat with Jeff Ellis (Boats Captain) repositioning the boat backing up the boat.

19-30440.5609

## F.   INFORMATION ABOUT YOUR INJURY OR ILLNESS

29.   Describe in as much detail as possible the bodily injury (or medical condition) that you claim resulted from the spill or your cleanup work in response to the oil spill: _____

Left CTS; Left Ulnar Neuropathy; radiating pain from neck to hand with numbness in fingers;

cervical radiculopathy, disc herniation; ulnar entrapment neuropathies at left elbow and wrist

misdiagnosed carpal tunnel syndrom.

30.   Please explain how your injury (or medical condition) resulted from the spill or your cleanup work in response to the oil spill:

I was told by Captain to grab and hold on to the oil soaked boom and hold it in place while

he reversing the boat.  I could not hold it it.  The weight and torque of the boom tore my

shoulder and injured my neck and arm.

31.   On what date did you first report or seek treatment for your injury or illness:
June 9, 2010.  The day the injury occurred.

32.   On what date was your injury first diagnosed: June 9 and 10, 2010.

33.   Identify the doctor(s) (or other healthcare providers) who first diagnosed your injury (or condition):

| Name | Address |
|------|---------|
| See attached. |  |
|  |  |

19-30440.5610

34.   Identify doctor(s) (or other healthcare providers) who have treated your injury (or condition):

| Name | Address |
|------|---------|
| See attached | |
| | |
| | |
| | |

35.   Have you ever suffered this type of injury or condition before (i.e., before the date given in your answer to Question No. 32)? Yes _____ No _XXX_. If "*Yes,*"

    A.   When? N/A _____

    B.   Who diagnosed the injury (or condition) at that time? N/A _____

       _____

       _____

    C.   Who treated the injury (or condition) at that time? N/A _____

36.   Do you claim that your exposure to the oil spill and/or chemical dispersant worsened an injury (or condition) that you already had or had in part?

    Yes _____ No XXX . If "*Yes,*"

    A.   What date did you first experience such injury or condition? N/A _____

    B.   What injury (or condition) was made worse? N/A _____

       _____

37.     Please list your family and/or primary care physician(s) for the past ten (10) years:

| Name | Address |
|---|---|
| Dr. Raul Correa | 2505 Manatea Avenue West, Bradenton, FL 34205 |
|  |  |
|  |  |
|  |  |
|  |  |

38.     Do you have in your possession, custody, or control, any medical records, bills, and any other documents, from physicians, healthcare providers, hospitals, pharmacies, insurance companies, or others who have provided treatment to you relating to the diagnosis or treatment of any injuries or illnesses arising from the *Deepwater Horizon* oil spill or response efforts, or that you otherwise identified in this Form?

Yes XXX     No _____

39.     Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount: 1) Loss of wages and wage earning capacity in past; 2) past medical; 3; medical care in the future; 4) Impairment in the past and future including loss of use of arm, hand and shoulder; 5) Pain and suffering in the past and future; 6) Loss of Maintenance & Cure in the past and future; 7)attorneys fees; 8) loss of wages and wage earning capacity in future; 9) medical mal-practice; 10 Punitive damages.

40.     Have you received workers compensation or other compensation or reimbursement for the injury alleged or associated expenses?

Yes_____     No XXX

If "Yes":

A.     From whom did you receive this compensation or reimbursement? N/A

_____

19-30440.5612

B.  When did you receive this compensation or reimbursement? NA _____

_____

C.  What was the amount of the compensation or reimbursement? NA _____

_____

**G.  CONTRACT CLAIMS**

*(For plaintiffs claiming breach of contract.)*

41.  Is your claim based on a breach of contract?

Yes_____    No XXX _____

42.  Was the contract that you claim was breached made as part of the VoO Program?

Yes_____    No_____

43.  Identify the contract that you allege was breached including any associated contract number (e.g., MVCA number and the parties to the contract):

_____

_____

44.  Describe how the contract was breached: _____

_____

_____

45.  *If you were part of the VoO Program*:  Describe whether or not you were placed on-hire and, if applicable, the date(s) you were on-hire:

_____

_____

46.  *If you allege that you were placed on-hire:* Provide the date(s) you were placed off-hire:

_____

47.  Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that  amount: _____

_____

_____

_____

48.  Describe specifically how the breach of contract you allege in response to Question No. 44
     caused the damages you allege in response to Question No. 47.

_____

_____

_____

19-30440.5614

## ATTESTATION

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that any damages described in response to Questions Nos. 39 or 47 were caused by any injury or breach of contract alleged in response to Questions Nos. 29 and 44.

I acknowledge that I have an obligation to supplement the above responses if I learn that they are in any material respect incomplete or incorrect.

Executed on the following date at the following location:

Date: _____ 10 - 8 - _____, 2018

Location (City and State): _Braydenton, Fl_

_____
Signature of Plaintiff*

***Plaintiff's Attorney _Cannot_ Sign on Plaintiff's Behalf. For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.**

_SERGIO V VALDIVIESO_
Print Name

_____
Title/Position (*if signed on behalf of a business or other entity*)

By no later than **Monday, July 9, 2018**, this Particularized Statement of Claim must be served on Counsel for BP and the MDL 2179 Plaintiffs' Steering Committee by mailing it to the following addresses:

| Counsel for BP<br>Attn: J. Andrew Langan<br>Kirkland & Ellis LLP<br>300 North LaSalle St., Suite 2400<br>Chicago, IL 60654 | MDL 2179 Plaintiffs' Steering Committee<br>c/o: Steve Herman<br>820 O'Keefe Ave.<br>New Orleans, LA 70113 |
|---|---|

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

In Re: Oil Spill by the Oil Rig "Deepwater    §    MDL 2179
Horizon" in the Gulf of Mexico on April       §
20, 2010                                       §    SECTION: J
                                               §
                                               §    JUDGE BARBIER

-----------------------------------------------------------------------------------------------------------------

Sergio Valdivieso                            §    CIVIL ACTION NO. 2:12-cv-02004
                  Plaintiff                  §
vs.                                          §    SECTION: J
                                             §
BP Exploration & Production, Inc., BP        §    JUDGE BARBIER
America Production Company and BP, p.l.c.     §
                  Defendants                  §

## RESPONSE TO QUESTIONS 33 AND 34

Lady of the Sea, 200 West 134th Place, Cut Off, LA

Blake Hospital LW, 2020 59th Street, West Bradenton, Fl 34209

Marina's Medical Center, LLC, Dr. Adolfo L. Narvaez, 5591 Cortez Road West, Bradenton, FL 34280

International Center for Advanced Spine and Orthopedic Surgery, Dr. Sajeev Nair, 1922 53rd Avenue East, Bradenton, FL 34203

Manatee Memorial Hospital, 206 Second Street East, Bradenton, Fl 34208

West Coast Neurology and Imaging Centers, Dr. Harish J. Patel, M.D. 5649 49th Street North, St. Petersburg, FL 33709

# EXHIBIT 5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| SERGIO VALDIVIESO, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:12-cv-01018 |
| | § | |
| SOUTHERN CAT, INC., EASTERN | § | |
| RESEARCH GROUP, INC., BP plc, | § | |
| BP PRODUCTS NORTH AMERICA | § | |
| INC., and BP AMERICA INC., | § | |
| Defendants. | § | |

## PLAINTIFF'S MOTION TO REMAND

COMES NOW Plaintiff, SERGIO VALDIVIESO, and files this his Motion to Remand and would respectfully show this Honorable Court as follows:

## I. BACKGROUND

1.     Mr. Valdivieso originally brought claims in the 164th judicial district court of Harris County, Texas under the Saving to Suitors clause (28 U.S.C. § 1333)[1] seeking compensation for maritime torts occurring on a twenty-four foot fiberglass fishing boat (the "Vessel"), in the navigable waters of the Barataria Bay, located in Louisiana state territorial waters.[2] At all material times, including on the date of the injury giving rise to his claims, Mr. Valdivieso was employed as a Jones Act seaman and member of the crew of the Vessel.

---

[1]   While Mr. Valdivieso does not specifically reference the Saving to Suitors clause in his Petition, this "is not determinative as to whether his suit may be brought in state court under that clause." *Bonnette v. Shell Offshore, Inc.,* 838 F. Supp. 1175, 1181 (S.D. Tex. 1993).

[2]   *See* Plaintiff's Original Petition and Requests for Disclosure (the "Petition"), filed March 1, 2012, attached hereto as **Exhibit A**.

(Petition at ¶ 11). The Vessel was chartered by Defendant Southern Cat, Inc., Mr. Valdivieso's employer, and/or Defendant Eastern Research Group, Inc., and was operated or under the control of Defendants BP Products North America Inc., BP America Inc., and BP plc. (*Id.* at ¶¶ 10-11). On or about June 9, 2010, Mr. Valdivieso was performing his duties as a deckhand on the Vessel, which required him to hoist, hold, and pull oil-absorbing boom from the main deck of the Vessel which had been washed ashore due to high waves. (*Id.* at ¶ 12). Because the Vessel was not equipped with the proper crane or other mechanical hoisting equipment for the job, Mr. Valdivieso was laying the extremely heavy boom by hand. (*Id.*) While performing this work, the tissue in Mr. Valdivieso's shoulder and/or neck ripped, in addition to him suffering other injuries. (*Id.*).

2. On March 1, 2012, Mr. Valdivieso filed his Petition in the 164th judicial district court of Harris County, Texas alleging Jones Act and general maritime claims against various defendants. (Petition at ¶¶ 1-28). On April 3, 2012, Defendants BP Products North America Inc. and BP America Inc. (collectively, the "BP Defendants") removed this action from Texas state court, arguing that this Court has jurisdiction over Mr. Valdivieso's claims pursuant to the Outer Continental Shelf Lands Act of 1953 ("OCSLA"), 43 U.S.C. § 1331, *et seq.*[3] On April 5, 2012, the BP Defendants filed a motion to stay the current proceedings pending transfer of the case by the Judicial Panel on Multidistrict Litigation.[4]

---

[3] *See* BP's Notice of Removal to the United States District Court for the Southern District of Texas [Dkt. No. 1] ("Notice of Removal"), at ¶¶ 6-15.

[4] *See* Motion for Stay of Proceedings and Suspension of all Responsive Pleading and Answer Deadlines Pending Transfer by the Judicial Panel on Multidistrict Litigation by Defendants BP Products North America Inc. and BP America Inc. [Dkt. No. 3].

3.    On April 9, 2012, this Court granted the BP Defendants' motion for stay and administratively closed the case.[5]  On April 11, 2012, Mr. Valdivieso filed a motion for reconsideration and request to reopen the case, which is currently pending.[6]  Mr. Valdivieso also filed a response to the BP Defendants' motion for stay on April 16, 2012.[7]

## II.  SUMMARY OF ARGUMENT

4.    The BP Defendants improperly removed this action.  Lacking any basis for diversity jurisdiction, the BP Defendants rely on OCSLA in an effort to bootstrap themselves into federal court based on federal question jurisdiction.  (Notice of Removal at ¶¶ 6-15).  The BP Defendants argue that this Court "has original subject matter jurisdiction under [OCSLA] § 1349(b)(1)(A)," and that Mr. Valdivieso's claims "arise under a federal statute, namely, OCSLA, 43 U.S.C. § 1331. . ."  (Notice of Removal at ¶¶ 11-12).  These arguments are without merit for several reasons.  <u>First</u>, Mr. Valdivieso has not made any claim arising under OCSLA.  Indeed, Mr. Valdivieso's claims could not have fallen within the jurisdictional grant of OCSLA even if he wanted to assert such claims (which he does not).  <u>Second</u>, Mr. Valdivieso's claims are governed by general maritime law, not OCSLA, and are, therefore, not removable.  Even if he could have brought claims under OCSLA (which he disputes), he chose not to do so.  <u>Third</u>, regardless of whether OCSLA applies to Mr.

---

[5]    *See* Order Granting Motion for Stay of Proceedings and Suspension of all Responsive Pleading and Answer Deadlines [Dkt. No. 4]; Order [Dkt. No. 5].

[6]    *See* Motion to Reconsider Order Granting Motion for Stay of Proceedings and to Reopen Case [Dkt. No. 6].

[7]    *See* Plaintiff's Response in Opposition to Defendants' Motion for Stay of Proceedings and Suspension of all Responsive Pleading and Answer Deadlines Pending Transfer by the Judicial Panel on Multidistrict Litigation [Dkt. No. 7].

Valdivieso's claims against the BP Defendants, his claims against the other Defendants are non-removable Jones Act and maritime claims. At a minimum, these claims must be severed and remanded to Texas state court.

## III. ARGUMENT AND AUTHORITIES

### A. LEGAL STANDARD

5.      It is well established that "[f]ederal courts are courts of limited jurisdiction," possessing "only that power authorized by [the] Constitution and statute . . ., which is not to be expanded by judicial decree." *Kokkhonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994) (internal citations omitted). There is a presumption that a case lies outside this limited jurisdiction. *Id. See also Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th Cir. 2001). As the removing parties, the BP Defendants bear the burden of establishing that removal is proper pursuant to 28 U.S.C. § 1441. *See Gutierrez v. Flores,* 543 F.3d 248, 251 (5th Cir. 2008); *Howery,* 243 F.3d at 916. As "removal raises significant federalism concerns, the removal statute is strictly construed." *Gutierrez,* 543 F.3d at 251. All doubts regarding whether an action is properly removable must be resolved against removal and in favor of remand. *Id. See also In re Hot-Hed, Inc.,* 477 F.3d 320, 323 (5th Cir. 2007).

6.      The plaintiff is always the master of his own claims. *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987). Under the "Saving to Suitors" clause of 28 U.S.C. § 1333, a plaintiff who is asserting a maritime claim can choose either a federal forum or a state forum. 28 U.S.C. § 1333(1) (1949). A defendant is not permitted to remove an action based upon admiralty or maritime jurisdiction alone because to do so would eviscerate the

plaintiff's right to choose his forum under the Savings clause. *See Romero v. Int'l Terminal Operating Co.,* 358 U.S. 354, 371-72 (1959), *superseded by statute on other grounds, Miles v. Apex Marine Corp.,* 498 U.S. 19 (1990); *Williams v. M/V SONORA,* 985 F.2d 808, 812 (5th Cir. 1993). Thus, actions brought in state court under 28 U.S.C. § 1333 can only be removed to federal court only when there is diversity jurisdiction or the plaintiff's complaint raises an independent federal question. *See Romero,* 358 U.S. at 371-72; *Williams,* 985 F.2d at 812. Whether "a cause of action presents a federal question depends upon the allegations of the plaintiff's well-pleaded complaint." *Carpenter v. Wichita Falls Indep. Sch. Dist.,* 44 F.3d 362, 366 (5th Cir. 1995). *See also Caterpillar,* 482 U.S. at 392. "A federal question exists 'if there appears on the face of the complaint some substantial, disputed question of federal law.' " *Hot-Hed,* 477 F.3d at 323 (quoting *Carpenter,* 44 F.3d at 366).

## B. Mr. Valdivieso's Claims do not Fall under the Jurisdictional Grant of OCSLA.

### (i) OCSLA § 1349(b)(1) does not grant this Court original jurisdiction under the circumstances of this case.

7.     Mr. Valdivieso disputes the BP Defendants' contention that OCSLA § 1349(b)(1) gives this Court original jurisdiction over this action. Section 1349(b)(1) provides, in relevant part, that

> district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals.

43 U.S.C. § 1349(b)(1). Courts in the Fifth Circuit apply a "but-for" test to determine whether an action arises under OCSLA for jurisdictional purposes. *See Hufnagel v. Omega*

*Service Industries, Inc.,* 182 F.3d 340, 350 (5th Cir. 1999). Under this test, OCSLA will apply where "(1) the plaintiff's employment furthered mineral development on the Outer Continental Shelf, and (2) the plaintiff's injury would not have occurred 'but for' his employment." *Barker v. Hercules Offshore, Inc.,* Civ. A. No. H-10-0898, 2011 WL 338812, at *4 (S.D. Tex. Feb. 1, 2011) (citing *Recar v. CNG Producing Co.,* 853 F.2d 367, 369 (5th Cir. 1988)).[8]

8.      In this case, Mr. Valdivieso's employment did not further mineral development on the Outer Continental Shelf ("OCS"). Mr. Valdivieso was employed as seaman aboard the shallow-water Vessel. (Petition at ¶ 12.) He was performing his duties as a deckhand of the Vessel when he was hoisting and laying the oil-absorbing boom. (*Id.*) Mr. Valdivieso did not work on the OCS, nor did he ever come into contact with the OCS. Indeed, the Vessel was nowhere near the OCS, but rather was operating within state waters and very near the shore of Louisiana. (*Id.*) Mr. Valdivieso, and the rest of the Vessel's crew, were in no way involved with BP's mineral development out on the OCS.

**(ii)      Mr. Valdivieso's claims do not arise from an OCSLA situs.**

9.      The Fifth Circuit recently indicated that § 1349(b)(1) should be read in conjunction with OCSLA's situs requirement under § 1333(a)(1):

> For OCSLA jurisdictional purposes, [the district court] must take into account the location of incidents giving rise to the lawsuit. Here, the undisputed facts show that the helicopter accident giving rise to [plaintiff's] lawsuit did not occur on the Continental Shelf. The helicopter crash instead occurred in a field near Mouton Cove, Louisiana. Therefore, the district court cannot exercise jurisdiction over [the] instant lawsuit under OCSLA.

---

[8]      *See also Hufnagel,* 182 F.3d at 350.

6

*Golden v. Omni Energy Services Corp.,* 242 Fed. Appx. 965, 967-68, 2007 WL 2164261 (5th Cir. July 27, 2007) (rejecting defendant's argument that § 1349(b)(1)(A) "[did] not entail a situs requirement"). Here, Mr. Valdivieso's injuries occurred on the Vessel, which was floating in Louisiana territorial waters far from the OCS. Section 1333(a)(1) of OCSLA provides, in relevant part:

> The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device **(other than a ship or vessel)** for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State. . .

43 U.S.C. § 1333(a)(1) (emphasis added). This "situs" requirement under § 1333(a) has not been met here. "The Fifth Circuit has conclusively stated the 'situs' required to trigger OCSLA refers to the location of the injury." *Landry v. Island Operating Co. Inc.,* Civ. A. No. 09-1051, 2009 WL 3241560, at *3 (W.D. La. Sept. 30, 2009) (citing *Golden*, 242 Fed. Appx. at 967).[9] There is no dispute that Mr. Valdivieso's injuries occurred on the Vessel. It is well established that OCSLA does not govern claims for injuries taking place on vessels on navigable water. *See Grand Isle Shipyard, Inc. v. Seacor Marine, LLC,* 589 F.3d 778, 784 (5th Cir.

---

[9]   In *Landry*, the defendants argued that the cause of action arose where the allegedly negligent acts took place, on an OCS platform, and not on land, where the plaintiff's injury occurred. *See* 2009 WL 3241560, at *3. The court was not persuaded by the defendants' argument, stating: "Defendants' argument is without merit, regardless of the semantics employed. Defendants' theory, taken to its logical conclusion, would essentially immunize them from state courts (or give them unqualified powers of removal to federal court) simply through the nature of their industry. Such a suggestion does not comport with the regulatory scheme Congress set out to create when fashioning the remedies afforded under OCSLA." *Id.*

2009) ("If the tort occurs on navigable water instead of a fixed platform (or other structure attached to the seabed), the OCSLA situs requirement is not met."); *U.S. v. Pickett,* 598 F.3d 231, 236 (5th Cir. 2010) (Clement, J., concurring) (OCSLA not applicable to vessels designed to float on water) (citing *Parks v. Dowell Division of Dow Chemical Corp.,* 712 F.2d 154, 158 (5th Cir. 1983)).[10]

10.    More importantly, the Vessel was nowhere near the OCS. In an analogous case, the United States Supreme Court refused to interpret OCSLA as "requir[ing] or permit[ting] [the court] to extend the coverage of the statute to the platform workers in [that] case who were killed miles away from the platform and on the high seas simply because they were platform workers." *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 219 (1986). Similarly, in *Golden*, the Fifth Circuit held that it did not have subject matter jurisdiction under OCSLA over an action involving injuries from a helicopter crash which took place on land in Louisiana, even though the plaintiff was being transported by that helicopter to his job on an offshore platform on the OCS. *See* 242 Fed. Appx. at 967-68.[11] Here, Mr. Valdivieso's claims are even further removed than those in *Offshore Logistics* and

---

[10]    Indeed, cases governed by OCSLA almost always involve a fixed offshore platform. *See Walsh v. Seagull Energy Corp.,* 836 F. Supp. 411, 416 (S.D. Tex. 1993) (noting that because OCSLA will not apply to claims governed by maritime law, "the application of federal law under OCSLA [is effectively limited] to events occurring on permanently fixed platforms"); *Bonnette,* 838 F. Supp. at 1181 (noting that courts analyzing whether remand is appropriate in cases removed under alleged OCSLA jurisdiction first look at "whether the tort is strictly a platform tort, or whether there are maritime implication"); *Lopez v. Air Logistics, LLC,* Civ. A. No. 01-3407, 2002 WL 356305, at *2 (E.D. La. March 5, 2002) ("To determine if a claim is connected to Shelf operations and is therefore governed by [OCSLA], the Court must determine if the accident involved a fixed offshore platform."). There is no fixed offshore platform at issue in this case.

[11]    *See also Landry,* 2009 WL 3241560, at *5 (holding that OCSLA did not provide basis for federal court jurisdiction where the plaintiff alleged that an explosion occurred on land within the state of Louisiana as a result of negligence which had taken place on a fixed platform on the OCS).

*Golden*, because he is not a platform worker and had no interaction whatsoever with the OCS. Thus, it is clear that this Court does not have jurisdiction over Mr. Valdivieso's claims in this case under OCSLA § 1349(b)(1). On this basis alone, this Court should remand this case to Texas state court.

## C. EVEN IF OCSLA APPLIED, REMOVAL WAS IMPROPER BECAUSE MR. VALDIVIESO'S UNDERLYING CLAIMS ARE GOVERNED BY GENERAL MARITIME LAW.

11. Further, even if OCSLA grants this Court original jurisdiction over this action (which it does not), Mr. Valdivieso's claims are governed by maritime law, not OCSLA. As noted above, OCSLA does not apply to tortious activity taking place on a vessel. *See Grand Isle*, 589 F.3d at 784; *Pickett*, 598 F.3d at 236. Nor does OCSLA allow for the application of adjacent state law as surrogate federal law in this case. Three conditions must be met to apply state law as surrogate federal law under OCSLA: (1) "[t]he controversy must arise on a situs covered by OCSLA (i.e., the subsoil, seabed, or artific[i]al structures permanently or temporarily attached thereto);" (2) "[f]ederal maritime law must not apply of its own force;" and (3) "[t]he state law must not be inconsistent with Federal law." *Alleman v. Omni Energy Services Corp.,* 580 F.3d 280, 283 (5th Cir. 2009).[12] Mr. Valdivieso's injuries clearly did not occur on an OCSLA situs. Additionally, maritime law applies of its own force to Mr. Valdivieso's claims.

### (i) Mr. Valdivieso's claims are governed by general maritime law.

12. The test for deciding whether maritime law governs a tort claim is whether the incident involves both (1) a "maritime situs;" and (2) a "connection to traditional maritime

---

[12] *See also Bonnette,* 838 F. Supp. at 1181.

activity." *See Hufnagel,* 182 F.3d at 351.   The maritime situs test is easily met here.  A maritime situs exists where the tort occurred on navigable waters.  *Id.*[13]   To determine where the tort occurred, the place of injury controls, not the place where the negligent act occurred.  *See Bonnette,* 838 F. Supp. at 1182.  Here, it is undisputed that Mr. Valdivieso's injuries occurred on the Vessel, over navigable waters, far from the OCS.[14]

13.     Mr. Valdivieso's claims also have a connection to traditional maritime activity. A maritime connection exists where the incident has a potentially disruptive impact on maritime commerce and the activity giving rise to the incident bears a substantial relationship to traditional maritime activity.  *See Hufnagel,* 182 F.3d at 352 n.9.  It is well established that "a vessel worker's injuries can have a disruptive impact on maritime commerce by stalling or delaying the primary activity of the vessel, and, therefore, have a substantial relationship to maritime activity."  *Patlan,* 2010 WL 2293272, at *5 (citing *Coats v. Penrod Drilling Corp.,* 61 F.3d 1113, 1119 (5th Cir. 1995) (en banc) ("Without a doubt, worker injuries, particularly to those involved in repair and maintenance, can have a disruptive impact on maritime commerce by stalling or delaying the primary activity of the vessel."")).[15]  The cleanup, which

---

[13]   This is true even when the tort occurs on navigable water on the OCS.  *See Patlan v. Apache Corp.,* Civ. A. No. 1:09-CV-926, 2010 WL 2293272, at *4 (E.D. Tex. May 11, 2010) (maritime law applies to torts occurring "on navigable water on the Outer Continental Shelf (OCS), as opposed to, for example, a stationary platform. . ."").  In this case, not only is Mr. Valdivieso asserting a typical maritime claim involving a maritime vessel, said vessel was *nowhere near* the OCS.

[14]   And in fact, the BP Defendants' negligent acts also occurred on the Vessel, over navigable waters, far from the OCS.  Mr. Valdivieso has not sued the BP Defendants for their actions leading to the oil spill. Rather, his claims are based on the BP Defendants' negligent failure to supervise the cleanup operations aboard the shallow-water Vessel to which Mr. Valdivieso was assigned as part of the cleanup effort, which occurred months after spill began.  (Petition at ¶¶ 16-17).

[15]   *See also Nase v. Teco Energy,* 347 F. Supp.2d 313, 320-21 (E.D. La. 2004) (holding that exposure to toxic substances aboard a jack-up vessel could have a disruptive effect on maritime commerce).

10

gave rise to Mr. Valdivieso's injuries, also is substantially related to traditional maritime activity. *See Dolan Brothers Shellfish Co., Inc. v. Boissoneault,* No. 3:05-CV-1385, 2007 WL 963203, at \*2 (D. Conn. March 29, 2007) (agreeing with plaintiff's assertion that defendant's "cleanup operation, because it was attempted in order to remedy the problem, had a substantial relationship to traditional maritime activity in that it was conducted to correct a condition of the waters and to protect the commerce conducted therein"). There is no question that this oil spill disrupted maritime commerce in the Gulf of Mexico and the navigable waters near the shore of Louisiana. By repositioning a boom used in cleaning up the spill, Mr. Valdivieso was helping improve the condition of the water, which helped minimize such disruption and allowed maritime commerce to resume sooner.

14. It is well established that claims relating to injuries suffered by a seaman while performing his duties aboard a vessel are classic maritime claims. *See Coats,* 61 F.3d at 1119 ("Providing compensation for shipboard injuries is a traditional function of the admiralty laws."); *Bonnette,* 838 F. Supp. at 1185 ("It is unquestionable that maritime law is generally concerned with injuries to seamen in the performance of their duties."). Indeed, the Fifth Circuit has held that a seaman, such as Mr. Valdivieso, is not subject to OCSLA. *See Parks,* 712 F.2d at 158 (where drilling tender was vessel designed to float on water, injured worker was permanently assigned to the vessel at time of accident, he performed almost all of his work on vessel, he was in charge of insuring that vessel's missions were accomplished, and he was injured while taking part in and as a result of operation essential to the mission of vessel, worker was a "seaman" and maritime law, rather than OCSLA, applied to his claims). Further, Mr. Valdivieso has alleged that the BP Defendants failed to provide a safe working

11

environment. (Petition at ¶¶ 16-17). The Fifth Circuit has held that failing to provide a safe workplace for crew members aboard vessels constitutes a maritime tort. *See Strong v. B.P. Exploration & Production, Inc.,* 440 F.3d 665, 669 (5th Cir. 2006) ("We agree with B.P. that failing to provide a safe workplace aboard a vessel is a maritime tort.").

### (ii) The grant of "original jurisdiction" under OCSLA § 1349(b)(1) does not transform non-removable maritime claims into removable federal question claims.

15.     Even if Mr. Valdivieso could have originally brought his claims in federal court under § 1349(b)(1) (which he disputes), it is well established "that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action." *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 479 (1981). In *Gulf Offshore,* the Supreme Court permitted a plaintiff to assert tort claims in state court for injuries sustained on the OCS because "nothing in the language, structure, legislative history, or underlying policies of OCSLA suggests that Congress intended federal courts to exercise exclusive jurisdiction over personal injury actions arising under OCSLA." *Id.* at 484. Thus, a plaintiff is not precluded from asserting maritime or state law claims simply because such claims arise out of conduct occurring on the OCS.

16.     In this case, Mr. Valdivieso has not alleged, nor does he intend to pursue, federal claims under OCSLA. Rather, he has elected to proceed under the Jones Act and general maritime law and bring his claims under the Saving to Suitors clause in Texas state court, and has pled facts sufficient to allege a maritime claim. Thus, the fact that Mr. Valdivieso allegedly *could* have asserted an OCSLA claim does not vest this Court with federal question jurisdiction. *See Fogleman v. Tidewater Barges, Inc.,* 747 F. Supp. 348, 355, 356

(E.D. La. 1990) ("even if the facts alleged in the state court petition were to satisfy the 'but for' test," where the "plaintiff elects to proceed under the saving to suitors clause and he is able to plead facts sufficient to meet the . . . test for admiralty jurisdiction, the mere fact that he may also have asserted a claim under OCSLA will not vest the court with federal question jurisdiction").[16]   Mr. Valdivieso's maritime claims, filed in state court, are not magically transformed into federal question claims just because they arguably could have been brought within OCSLA's jurisdictional grant.  *See Bonnette,* 838 F. Supp. at 1180-81.  And it is well settled that "maritime claims do not 'arise under' federal law for purposes of federal removal jurisdiction." *Hufnagel,* 182 F.3d at 350.[17]  Accordingly, maritime claims brought in state court under the Saving to Suitors clause are not removable as federal question claims.

17.     Even if *both* OCSLA and general maritime law could apply to Mr. Valdivieso's claims, under such circumstances, substantive maritime law controls.  *See Hufnagel,* 182 F.3d at 350 ("Because OCSLA does not displace general maritime law, substantive maritime law

---

[16] *See also Coody v. Exxon Corp.,* 630 F. Supp. 202, 205-06 (M.D. La. 1986) ("[I]n the present case it is . . . 'immaterial' that the plaintiffs could have elected to assert a claim under OCSLA.  Since plaintiffs did not elect to assert such a claim, there is no basis for subject matter jurisdiction in this court.  For these reasons, this case must be remanded to state court."); *Peters v. Pumpkin Air, Inc.,* 635 F. Supp. 825, 830 (M.D. La. 1986) (where defendant removed case to federal court pursuant to OCSLA § 1349(b)(1), court granted motion to remand, stating: "[T]his court finds that if the plaintiff has elected not to assert a claim pursuant to OCSLA, then subject matter jurisdiction in this court cannot be premised on such an unasserted claim.  Therefore, the court has no jurisdiction under OCSLA in the present case."); *Stroud v. Petroleum Helicopters, Inc.,* Civ. A. No. 92-1826, 1992 WL 300828, at *2 (E.D. La. Oct. 14, 1992) ("Even though a plaintiff might allege facts sufficient to satisfy the 'but for' test under OCSLA, a federal court does not have jurisdiction over the claim if the plaintiff does not assert an OCSLA cause of action.").

[17] *See also Benjamin v. Natural Gas Pipeline Co. of America,* 793 F. Supp. 729, 731 (S.D. Tex. 1992) ("The Fifth Circuit has consistently applied the general rule that, when a plaintiff exercises the option to bring an action in state court under the saving to suitors clause, rather than under the admiralty jurisdiction of the federal courts, defendants cannot remove the case by asserting federal question jurisdiction under 28 U.S.C. § 1331.").

continues to govern where both OCSLA and general maritime law could apply.").[18] This is true even if the event giving rise to the claims occurred on an OCSLA situs. *See Smith,* 960 F.2d at 459; *Walsh,* 836 F. Supp. at 416. So it would certainly be true in this case, where Mr. Valdivieso's claims are based on events occurring nowhere near an OCSLA situs. Accordingly, Mr. Valdivieso's claims should not have been removed and should be remanded. *See Bonnette,* 838 F. Supp. at 1180, 1181 (finding that "maritime law trumps OCSLA jurisdiction in a removal situation when the two overlap" and holding that where the plaintiff has "a right to proceed in admiralty, then [his] decision to pursue state law claims rather than under OCSLA is given deference, and the case should be remanded").[19]

### (iii)    This case is not removable based on diversity jurisdiction.

18.    As it is clear this Court does not have federal question jurisdiction over Mr. Valdivieso's claims, the only other possible basis for removal is diversity jurisdiction. An action is only removable based on diversity jurisdiction if none of the defendants are "citizen[s] of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). The BP Defendants have not asserted diversity in their Notice of Removal and in any case could not

---

[18]    *See also Strong,* 440 F.3d at 670 ("Because [plaintiff] has alleged a traditional maritime tort, federal maritime law applies of its own force, precluding incorporation of state law under OCSLA . . ."); *Walsh,* 836 F. Supp. at 416 ("[I]f maritime law and OCSLA overlap, OCSLA is a nullity.") (citing *Smith v. Penrod Drilling Corp.,* 960 F.2d 456 (5th Cir. 1992), *overruled on other grounds, Grand Isle,* 589 F.3d 778).

[19]    *See also Case v. Omega Natchiq, Inc.,* Civ. A. No. H-08-0835, 2008 WL 2714124, at *11 (S.D. Tex. July 10, 2008) ("A claim that alleges a maritime tort cannot be removed."); *Fogleman,* 747 F. Supp. at 355-56 (where claims are governed by maritime law, "OCSLA cannot be a basis for federal question removal because the case necessarily has a maritime character").

avail itself of diversity removal because three of the Defendants, including one of the BP Defendants, are citizens of Texas, the state in which this civil action was brought.[20]

## D. ALTERNATIVELY, MR. VALDIVIESO'S JONES ACT AND GENERAL MARITIME CLAIMS AGAINST THE NON-BP DEFENDANTS MUST BE SEVERED AND REMANDED BACK TO STATE COURT.

19. Alternatively, even if Mr. Valdivieso's claims against the BP Defendants were properly removed (which Mr. Valdivieso disputes), this Court should not allow this case to move into the MDL without first severing and remanding his Jones Act and other maritime claims against the non-BP Defendants. 28 U.S.C. § 1441(c)(2) ("Upon removal of an action described in paragraph (1) [actions which include federal and non-removable state law claims], the district court *shall* sever from the action all claims described in paragraph (1)(B) [non-removable claims] and *shall* remand the severed claims to the State court from which the action was removed.") (emphasis added). It is beyond dispute that Jones Act claims are not removable, as pleaded in Mr. Valdivieso's petition. *See* 46 U.S.C. § 30104 (2008); 28 U.S.C. § 1445(a) (1996).[21] Further, general maritime claims, such as Mr. Valdivieso's claims against the non-BP Defendants, do not "arise under" federal law for purposes of federal question removal. *See Walsh,* 836 F. Supp. at 418. Nor is removal of these claims warranted based on diversity jurisdiction, as three of the Defendants in this case are citizens of Texas, the state in which this action was brought. (Petition at ¶¶ 4, 5, 7). *See* 28 U.S.C. § 1441(b)(2).

---

[20] Defendants Southern Cat, Inc. and Eastern Research Group, Inc. are both Texas corporations, and Defendant BP Products North America, Inc.'s principal place of business is in Texas. (Petition at ¶¶ 4, 5, 7). *See Howery,* 243 F.3d at 920 (a corporation "is a citizen of two states: its state of incorporation, and the state of its principal place of business").

[21] *See also Hufnagel,* 182 F.3d at 345.

Therefore, under newly amended Section 1441, even if this Court determines that Mr. Valdivieso's claims against the BP Defendants are removable, this Court should, at the very least, sever and remand Mr. Valdivieso's non-removable Jones Act claims and related maritime claims against all of the non-BP Defendants so that they can proceed in state court.

## IV.  CONCLUSION

This Court should grant Mr. Valdivieso's Motion for Remand.  Mr. Valdivieso has not asserted claims under OCSLA, nor do his claims fall within the jurisdictional grant of OCSLA.  Mr. Valdivieso's well pleaded complaint brings only such actions as are permitted to be brought under maritime law in state court under the Saving to Suitors Clause.  Even if this Court were to find that OCSLA issues were raised by Mr. Valdivieso's Petition, maritime law controls, and removal is not appropriate.  Accordingly, this Court lacks subject matter jurisdiction, and the case should be remanded to state court.

For these reasons, Mr. Valdivieso respectfully requests that the Court remand this case to the 164th Judicial District Court of Harris County, Texas.  Alternatively, Mr. Valdivieso requests that his Jones Act claims and other maritime claims against the non-BP Defendants be severed and remanded to the 164th Judicial District Court of Harris County, Texas, as required by 28 U.S.C. § 1441(c)(2).

Respectfully submitted,

THE LANIER LAW FIRM, P.C.

By:_____
      W. MARK LANIER
      State Bar No. 11934600
      KEVIN P. PARKER
      State Bar No. 15494040
      CHARLES F. HERD, JR.
      State Bar No. 09504480
      M. MICHELLE CARRERAS
      State Bar No. 24040647
      P.O. Box 691448
      6810 FM 1960 West (77069)
      Houston, Texas 77269-1448
      Telephone: (713) 659-5200
      Fax: (713) 659-2204
      Direct Fax: (281) 866-6963

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF CONFERENCE

The undersigned has conferred with counsel for the BP Defendants and counsel for

Defendant Eastern Research and they are opposed to this motion.

_____
Charles F. Herd, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on this the 19th day of April, 2012, a true and correct copy of

the above and foregoing document has been sent to the following counsel of records:

Brittani W. Rollen
George C. Haratsis
McDonald Sanders
777 Main Street, Suite 1300
Fort Worth, TX 76102
**Attorneys for Defendant Eastern Research Group, Inc.**

Thomas W. Taylor
Andrews Kurth LLP
600 Travis, Suite 4200
Houston, TX 77002
**Attorney for BP Defendants**

J. Andrew Langan
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
**Attorney for BP Defendants**

_____
Charles F. Herd, Jr.

18

Trace Number - ED101J016755465

**2012-12858 / Court: 164**

CAUSE NO. _____

Filed 12 March 1 P3:28
Chris Daniel - District Clerk
Harris County
ED101J016755465
By: Sharon Carlton

| | | |
|---|---|---|
| SERGIO VALDIVIESO | § | IN THE DISTRICT COURT OF |
| | § | |
| v | § | |
| | § | |
| SOUTHERN CAT, INC. , EASTERN | § | HARRIS COUNTY, TEXAS |
| RESEARCH GROUP, INC., BP PLC, BP | § | |
| PRODUCTS NORTH AMERICA INC., and | § | |
| BP AMERICA INC. | § | |
| | § | |
| | § | _____ JUDICIAL DISTRICT |

### PLAINTIFF'S ORIGINAL PETITION
### AND REQUESTS FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, SERGIO VALDIVIESO, complaining of SOUTHERN CAT, INC. (hereafter sometimes called "SOUTHERN CAT"), EASTERN RESEARCH GROUP, INC. (hereafter sometimes called "ERG"), BP PLC, BP PRODUCTS NORTH AMERICA INC., BP AMERICA INC. (hereafter sometimes collectively called "BP"); and hereinafter referred to collectively as "Defendants", and for cause of action would respectfully show unto this Honorable Court the following:

### I
### DISCOVERY PLAN LEVEL 2

1.     Discovery is intended to be conducted under Level 2 of Texas Rules of Civil Procedure 190.

### II
### REQUESTS FOR DISCLOSURE

2.     Pursuant to Rule 194 of the Texas Rules of Civil Procedure, each Defendant is requested to disclose the information and material described in Rule 194.2 within fifty (50) days of the service of this request.

Certified Document Number: 51507551 - Page 1 of 9

<div style="border:1px solid">EXHIBIT A</div>

## III
## PARTIES

3.     Plaintiff, SERGIO VALDIVIESO is a resident of Bradenton, FL 34209.

4.     Defendant, SOUTHERN CAT, INC. is a foreign for-profit corporation doing business in the State of Texas and within the jurisdiction of this Honorable Court.  Defendant may be served by and through its principal office located in Harris County, Texas, for service of process: 701 Brazos Street, Suite 720, Austin, TX 78701.

5.     Defendant, EASTERN RESEARCH GROUP, INC. is a foreign for-profit corporation doing business in the State of Texas and within the jurisdiction of this Honorable Court.  Defendant may be served by and through its principal office located in Harris County, Texas, for service of process: C T Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, TX 75201.

6.     Defendant, BP, PLC is a public limited company organized under the laws of the United Kingdom and at all times pertinent hereto, was qualified to do business and doing business in the State of Texas and within the jurisdiction of this Honorable Court.  Defendant can be served with process by serving the Texas Secretary of State, with process to be forwarded to Defendant via its Corporate Office, North American Headquarters, 28300 Torch Parkway, Warrenville, IL 60555-3938.

7.     Defendant, BP PRODUCTS NORTH AMERICA, INC. is a Maryland corporation, with its principal place of business in Houston, Texas, and doing business in the State of Texas and within this district.  Defendant may be served with process through its registered agent at: Prentice Hall Corp System, 211 E. 7th Street, Suite 620, Austin, TX 78701.

8.     Defendant, BP AMERICA, INC. is a Delaware corporation with its principal place of business in Warrenville, Illinois, but doing business in the State of Texas and within this

Certified Document Number: 51507551 - Page 2 of 9

Certified Document Number: 51507551 - Page 3 of 9

district. Defendant may be served with process through its registered agent at: CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, TX 75201.

9.  Defendants, BP Products North America Inc. and BP America Inc., are wholly owned subsidiaries of the global parent corporation, BP PLC, and they shall all be referred to herein collectively as "BP."

## IV
## FACTUAL BACKGROUND

10.  At all times pertinent hereto, the Vessel, a twenty-four foot fiberglass fishing boat, was a vessel operated or under the control of Defendant BP and chartered by Defendant SOUTHERN CAT and/or ERG, and is a vessel within the jurisdiction of the United States, including the United States Coast Guard and relevant United States federal regulations.

## V
## JONES ACT SEAMAN

11.  At the times pertinent hereto, Plaintiff, SERGIO VALDIVIESO, was employed by Defendant SOUTHERN CAT, as a Jones Act seaman and member of the crew of the subject Vessel, as provided in 46 USC § 30104, *et seq.*, was assigned by Defendants to the Vessel, and was acting within the course and scope of his employment as a seaman aboard that Vessel at all times relevant to the events forming the basis of this suit.

## VI
## JONES ACT NEGLIGENCE
## COUNT I

12.  On or about June 9, 2010, as Plaintiff was performing his assigned duties as a seaman aboard the Vessel, while the Vessel was assisting in the cleanup of the BP Oil Spill and operating in or near Barataria Bay, located offshore Grand Isle, Louisiana, Plaintiff sustained serious and disabling personal injuries, including to Plaintiff's neck, shoulder, arm, and back,

and other parts of his body, while attempting to lift, position or reposition oil-absorbing boom. Said injuries were caused, in whole or in part, by the negligence of the Defendants, their agents, servants and/or employees. In particular, SOUTHERN CAT failed to provide a safe place to work, failed to provide proper equipment, supervision and training, and failed to inspect the Vessel, and its appurtenances and equipment, including the lack of a proper crane required to hoist, position, or lay the boom, and failed to warn its employees, including Plaintiff, of the dangers associated with their work assignments on that Vessel. Plaintiff was injured while working on the Vessel laying boom by hand, since the Vessel was not equipped with the proper crane or other mechanical hoisting equipment for the job. Plaintiff was required to hoist, hold and pull boom from the main deck of the boat, work which was so heavy that it ripped tissue in his shoulder and/or neck and caused various other injuries.

## VII
## UNSEAWORTHINESS
## COUNT II

13.     Plaintiff's injuries were legally caused, in whole or in part, by the unseaworthiness of the Vessel, which at all relevant times was operated, controlled and/or chartered by Defendants. The Vessel was not equipped to properly and safely move and lay boom. The Vessel also was unseaworthy because the master and crew were not properly trained for the task at hand, nor was Plaintiff properly supervised or instructed in the boom-reporting operation being conducted when Plaintiff was injured.

## VIII
## MAINTENANCE AND CURE
## COUNT III

14.     Plaintiff would show that on the above-mentioned and following dates, he was injured while acting as a seaman and employee of Defendant, SOUTHERN CAT, in the service

Certified Document Number: 51507551 - Page 4 of 9

of the Vessel. As a result, SOUTHERN CAT as his Jones Act employer had, and continues to have, a non-delegable duty to provide Plaintiff with all proper and timely maintenance and cure benefits. Plaintiff would show that: he has required medical treatment as a result of the subject accident and injuries; he has not reached maximum medical improvement; and his seaman-employer's duties to provide maintenance and cure benefits continue. Defendant SOUTHERN CAT has denied such payment and/or has paid benefits in an insufficient amount. As a result of Defendant's failure to pay and/or delay in timely providing and/or paying the proper amount of maintenance and cure benefits, Plaintiff has suffered further injuries and damages, for which he now sues.

15. In addition, Plaintiff would show that, after the injuries he received, he was owed the duty of maintenance and cure by SOUTHERN CAT, his Jones Act employer; that such duty began on the Vessel and has continued from day to day thereafter; and that said maritime employer failed to provide proper maintenance and cure benefits to Plaintiff. Plaintiff asserts that Defendant SOUTHERN CAT has been callous, willful, wanton, or otherwise tortious, for which punitive damages are recoverable, in breaching this duty owed to Plaintiff. Defendant SOUTHERN CAT also is liable for all reasonable and necessary attorneys' fees and costs incurred on Plaintiff's behalf in seeking to secure proper maintenance and cure benefits from Defendant.

## IX
## BP'S NEGLIGENCE
## COUNT IV

16. In addition to the above causes of action, Plaintiff would show that his exposure and resulting injuries were proximately caused by the negligence or other legal fault of Defendant, BP, acting through its officers, employees, representatives, agents or "company

Certified Document Number: 51507551 - Page 5 of 9

men," in failing to inspect the area(s) and operation(s) in question, in failing to adhere to recognized safety guidelines, in failing to ensure that the work area was free of hazards conditions and/or dangerous chemicals, in failing to provide personal protective equipment to the crew or ensure that the Vessel and her equipment, appurtenances, Master and crew were in all respects fit for their intended service, in allowing the master and crew to continue their work in an unsafe manner, and otherwise as may be shown in the trial of this case.

## X
## ADDITIONAL CLAIMS
## COUNT IV

17.     Additionally, Plaintiff was exposed to dangerous chemicals, petroleum, and hydrocarbons from the oil spill and from dispersants which BP insisted on using to clean up the oil spill on the surface of the water.  Plaintiff and the crew were not properly trained regarding the hazard presented to them on the Vessel.  Plaintiff also was not provided with the necessary safety gear, or personal protective equipment, or adequate tools or machinery to hoist, retrieve or lay the boom or other oil-spill equipment.   Defendants failed to warn Plaintiff and the other members of the crew regarding the hazards, which were known or should have been known to BP, SOUTHERN CAT, and ERG.  Also, these Defendants failed to provide Plaintiff with a safe place to work, and proper and adequate protection from these hazards.  Finally, the Vessel was insufficiently supervised and manned, which forced Plaintiff and other members of the crew to be exposed to these hazards.  As a result of these acts of negligence, and others to be shown at trial, by BP, SOUTHERN CAT and/or ERG, Plaintiff sustained injuries for which he now sues.

Certified Document Number: 51507551 - Page 6 of 9

## XI
### PUNITIVE DAMAGES, FROM DEFENDANTS' GROSS NEGLIGENCE

18.. Plaintiff also sues for punitive and exemplary damages, due to the gross negligence of Defendants.

## XII
### VENUE

19. Plaintiff would show that one or more of the Defendants' principal offices, on information and belief, is in Harris County, Texas. On that basis, venue is proper in Harris County, Texas.

## XIII
### DAMAGES

20. By reason of the occurrences made the basis of this action, including conduct on the part of all Defendants, Plaintiff sustained disabling bodily injuries. Plaintiff has suffered physical pain and mental anguish and needs additional medical treatment.

21. As a result of the foregoing injuries, Plaintiff has suffered a loss of wages in the past and a loss of capacity to work and earn money in the future and his earning capacity may have been impaired permanently.

22. Additionally, Plaintiff has incurred reasonable and necessary medical expenses in the past and, in reasonable probability, will incur reasonable medical expenses in the future.

23. As a result of the injuries sustained in the occurrence of June 9, 2010, and the continuing days thereafter, Plaintiff has suffered in the past and, in reasonable medical probability, will continue to suffer in the future.

24. Plaintiff is physically impaired as a result of the injuries he sustained on or about July 21, 2010, as a consequence, he has lost the ability to perform household services.

Certified Document Number: 51507551 - Page 7 of 9

25.     The long term effects of exposure to chemical dispersants and petroleum in the degree and duration sustained by Plaintiff are largely unknown.  Plaintiff will require medical monitoring to guard against the potential serious and life-threatening chronic health effects from this exposure for the rest of his life.

### XIV
### OTHER PROVISIONS

26.     Plaintiff did not cause or contribute to the injuries asserted or damages claimed herein.

27.     Pleading further, in the alternative, if it be shown that Plaintiff was suffering from some pre-existing injury, disease and/or condition, then such was aggravated and/or exacerbated as a result of the occurrences made the basis of this lawsuit.

### XV
### JURY DEMAND

28.     Pursuant to Texas Rule of Civil Procedure 216, Plaintiff requests a trial by jury.

### XVI

WHEREFORE, Plaintiff requests that Defendants be summoned to appear and answer, and that, on final trial, Plaintiff have Judgment against Defendants SOUTHERN CAT, INC.; EASTERN RESEARCH GROUP, INC.; BP PLC; BP PRODUCTS NORTH AMERICA INC.; and BP AMERICA INC. for:

1.     All damages permitted at law;

2.     Reasonable attorneys' fees;

3.     Pre-judgment interest;

4.     Post-judgment interest;

5.     Costs of suit;

Certified Document Number: 51507551 - Page 8 of 9

6.   Punitive damages; and

7.   Such other and further relief, in admiralty, at law and in equity, to which Plaintiff may be justly entitled.


Respectfully submitted,

**THE LANIER LAW FIRM P.C.**

By: _Charles F. Herd_

W. MARK LANIER
TBA # 11934600
CHARLES F. HERD, JR.
TBA # 09504480
LAWRENCE P. WILSON
TBA # 21704100
6810 F.M. 1960 West
Houston, Texas 77069
Telephone: 713-659-5200
Fax: 713-659-2204

**ATTORNEYS FOR PLAINTIFF**

Certified Document Number: 51507551 - Page 9 of 9



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 2, 2012

Certified Document Number:        51507551

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| SERGIO VALDIVIESO, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:12-cv-01018 |
| | § | |
| SOUTHERN CAT, INC., EASTERN | § | |
| RESEARCH GROUP, INC., BP plc, | § | |
| BP PRODUCTS NORTH AMERICA | § | |
| INC., and BP AMERICA INC., | § | |
| Defendants. | § | |

## <u>ORDER</u>

After considering the Plaintiff's Motion to Remand, this Court finds that the law and the facts favor granting of such Motion. It is, therefore,

ORDERED that this case be remanded to the 164th Judicial District Court of Harris County, Texas within ____ days of the entry of this Order.

SIGNED this ____ day of _____, 2012.

_____
UNITED STATES DISTRICT JUDGE

1

# EXHIBIT 6



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SERGIO VALDIVIESO, §
§
Plaintiff, §
§
v. § Civil Action No. H-12-1018
§
SOUTHERN CAT, INC., *et al.*, §
§
Defendants. §

## ORDER

Pending before the Court is Plaintiff's Motion to Reconsider Order Granting Motion for Stay of Proceedings and to Reopen Case (Document No. 6) and Plaintiff's Motion to Remand (Document No. 9). Having considered the motions, submissions, and applicable law, the Court determines the motions should be denied without prejudice to be refiled should the Judicial Panel on Multidistrict Litigation decline to accept this case by transfer. Accordingly, the Court hereby

ORDERS that Plaintiff's Motion to Reconsider Order Granting Motion for Stay of Proceedings and to Reopen Case (Document No. 6) and Plaintiff's Motion to Remand (Document No. 9) are DENIED WITHOUT PREJUDICE. Plaintiff may refile these motions once a determination on transfer has been made by the Judicial Panel on Multidistrict Litigation.

SIGNED at Houston, Texas, on this ___4___ day of June, 2012.


_____
DAVID HITTNER
United States District Judge

2