UNITED STATE DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MICHAEL BRANDON VICKERS | * | CIVIL ACTION NO. |
| | * | |
| versus | * | SECTION: |
| | * | |
| KNIGHT'S MARINE & INDUSTRIAL SERVICES, INC. | * | MAGISTRATE NO.: |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

### I. PARTIES

1. Plaintiff, Michael Brandon Vickers, (hereinafter "Plaintiff") is a person of the full age of majority and a citizen and resident of the State of Alabama.

2. Plaintiff is an individual who was injured as a result of the exposure to oil and/or oil-dispersing chemicals and/or decontaminants by virtue of his employment as a clean-up and/or response worker, by virtue of his employment in and around the navigable waters of Mississippi.

3. Defendant, Knight's Marines & Industrial Services, Inc. (herinafter "Knight's"), is a corporation doing business in the State Alabama with its primary business address at 2900 Colmer Road, Moss Point, Mississippi 39562.

### II. JURISDICTION AND VENUE

4. Jurisdiction exists before this Court pursuant to Article II, Section 2 of the United States Constitution, which the federal judiciary to hear "all Cases of admiralty and maritime Jurisdiction."

5. In addition, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1333, and the Admiralty Extension Action 46 U.S.C. § 30101.

1



6.    The claims presented herein are admiralty or maritime claims with the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Plaintiff hereby designates this case as an admiralty or maritime case.

7.    Venue is appropriate in this District under 28 U.S.C. § 1391, because defendant is subject to personal jurisdiction in the state of Louisiana.

8.    The amount in controversy exceeds $75,000.00 exclusive of interests and costs.

### III. FACTUAL ALLEGATIONS

A. The *Deepwater Horizon* Catastrophe

9.    The *Deepwater Horizon* was an ultra-deepwater dynamic positioned semi-submersible oil vessel built in 2001. It was one of the largest vessels of its kind.

10.    BP leased the *Deepwater Horizon* through Sepetember 2013 to drill exploratory wells at Macondo prospect site in Mississippi Canyon Block 252, a location on the Outer Continental Shelf off the coast of Louisiana.

11.    On April 20, 2010, the workers on the *Deepwater Horizon* oil rig lost control of the Mancondo well just after the final cementing work was completed. During the course of the cementing work, an explosion occurred on the *Deepwater Horizon* and it caught fire.

12.    The *Deepwater Horizon* has been connected to the wellhead at the seafloor by a 5,000 foot pipe called a riser. As the *Deepwater Horizon* tipped into the sea, it pulled the riser down with it, bending and breaking the pipe. Oil flowed from the now-open end of the riser, as well as through two breaks along its length. An emergency valve, installed on the wellhead for just such a disaster, failed to seal the wellhead as it should have, causing the blown-out well to spew oil into the Gulf waters (the "Oil Spill").

13. Crude oil was discharged before the *Deepwater Horizon* finally sank on April 22, 2010, and the rate of discharge increased once the *Deepwater Horizon* sank to the ocean floor.

14. After the explosions, BP attempted to downplay and conceal the severity of the Oil Spill. Government investigators have found BP's initial leak estimate of 1,000 barrels per day to be a fraction of its measured leakage amount, which in fact exceeded 50,000 barrels per day. Additionally, an internal BP document from around the time of the spill shows that the company's own analysis had actually estimated that the rate of oil spillage could reach 100,000 barrels, or 4,200,000 gallons per day.

15. Each day during the course of the Oil Spill, tens of thousands of barrels of crude oil gushed from the wellhead and broken riser, bubbling up to the surface and flattening out into a widening slick of oil, as well as spreading out in vast subsurface plumes. On the surface, the shifting mass was large enough to be visible from outer space, at times covering tens of thousands of square miles, and spreading with the wind and currents towards the Gulf States coastlines.

16. Beginning on or about April 30, 2010, oil made landfall along the Gulf Coast on white sand beaches, leased and privately owned subsurface areas, and in ecologically sensitive marshes and estuaries. Under water, immense plumes of oil and dispersant chemicals swirled through the entire water column, damaging ecosystems throughout the Gulf of Mexico.

17. The oil spewed from the well for over twelve (12) weeks until BP finally capped the well on July 15, 2010. Ultimately, almost five million barrels (210 million gallons) of crude oil spilled in the Gulf of Mexico.

18. The crude oil carried with it significant public health risks. Crude oil has many highly toxic chemical ingredients that can damage every system in the body.

### B. The Response Effort and the Use of Chemical Disperants

19. In the wake of the disaster, and pursuant to its duties BP began implementing a program to attempt to prevent the gushing oil from reaching the shores of the Gulf states. This disaster response plan had three primary components: offshore containment; shoreline protection; and subsea response.

20. As part of its offshore containment response program, BP directed the use of vessels to, *inter alia,* recover oil coming to the surface of the Gulf of Mexico; skim oil from the surface of the water; and conduct in-*situ* burning of oil that had reached the surface of the water. BP also employed vessels to tow and deploy booms-floating barriers intended to contain, deflect, or hold back oil floating in the water's surface.

21. In addition, BP's response plan included the use of chemical dispersants that were intended to break down the oil into finely dispersed droplets.

22. The dispersants used by BP are known to cause, *inter alia,* headaches; nausea; vomiting; diarrhea; abdominal pains; dizziness; chest pains and tightness; irritation fo the skin, eyes, nose, throat and lung; breathing difficulties and respiratory system damage; asthma attacks; hypertension; damage to the liver and kidneys; central nervous system depression; neurotoxic effects; damage to red blood cells; genetic damage and mutations; reproductive and development damage; immune system damage; cardiac arrhythmia; cardiovascular damage; and increased severity of chronic obstructive pulmonary disease.

23. To date, BP and its contractors have used more than 1.8 million gallons of chemical dispersants in the Gulf of Mexico in connection with the Oil Spill.

### C. Plaintiff's Exposure to Oil and Harmful Chemicals and their Resulting Injuries and Damages

24.  Between July 1, 2010 and August 6, 2010, Plaintiff was employed by Knight's Marine & Industrial Services, Inc., as a foreman to assist in the *Deepwater Horizon* clean-up and response activities. Knight's was subcontracted by an entity hired by BP to assist in the clean-up and remedial efforts. In this capacity, Plaintiff was exposed to oil and dispersants.

25.  Each morning of work as an employee of Knight's, the plaintiff would meet his fellow co-workers at the Mississippi office location of Knight's. The plaintiff and his co-workers would then occasionally load a trailer with their work material consisting of the fence panels, fence supports, tools, etc. On other days the trailer was already loaded with the fence panels, fence supports, tools, etc. The plaintiff would then take his own vehicle or, on a few occasions ride over to the boat launch in a work van. When the plaintiff and his co-workers reached the boat launch at Galvatine Bayou they would off load the aforementioned work materials on to a work barge, board the crew board and ride to their work site which was in Galvatine Bay at the end of Landier Road in Gautier, Mississippi. A push boat would push the work barge loaded with materials to the work site.

26.  Upon their arrival at the work site in Galvatine Bay, Mississippi, the plaintiff and his co-workers began their task of building a protective fence made to block the crude oil in the waters from the oil spill from reaching land or wet lands. The materials to build this protective fence was made of fabric and metal fencing and metal supports. During the work day the aforementioned materials were stored on a work barge at the work site in the Galvatine Bay, Mississippi.

27. A work day of building this protective fencing was 10-12 hour days in waist to chest deep water contaminated with chemicals, crude oil and oil disperants, only to take a break for lunch, which was eaten on the push boat. The work was an intergral part of the mission of the fleet of

5

vessels operated by defendant. Plaintiff had to purchase his own hand sanitizer to wash his hands prior to eating lunch, as it was not provided by Knight's. At the end of a work day the plaintiff and his co-workers would ride in on the crew boat and follow the push boat and work barge back to the boat launch in Galvatine Bayou, Mississippi.

28.    At all material times hereto, the Plaintiff worked as a crew member of the crew onboard a crew boat and push boat which was owned, provided, supplied, leased, and/or chartered by Knight's. During this time Plaintiff was not instructed to wear a haz-mat suit, face mask or respirator and the crew boat and push boat was not furnished with the aforementioned safety equipment notwithstanding its proximity to heavily polluted waters. In addition, the crew boat was understaffed, its crew was overworked and it did not have an operable toilet onboard.

29.    While employed by Knight's, Plaintiff was unnecessarily exposed to crude oil and chemical dispersants for approximately 5 weeks.

30.    In additional to the exposure suffered onboard the crew boat and push boat, Plaintiff was exposed to the crude oil and chemical dispersants while sailing in and around the navigable waters in the Gravaline Bay in Mississippi.

31.    As a result of his exposure to the crude oil and chemical dispersants, Plaintiff began to suffer from a myriad of physical symptoms including, but not limited to, breathing difficulties, kidney problems, skin peeling, skin rashes, skin irritation, respiratory problems, muscle cramps, muscle spasms, swollen testicles, chest pains, heart racing, headaches, vision problems and problems with his left leg giving out on him. Since his chemical exposure, Plaintiff continues to suffer from the aforementioned symptoms. The chemical exposure Plaintiff suffered has greatly diminished his opportunities to make a living and his quality of life.

### D. Knight's Marine & Industrial Willful and Wanton Conduct

32.Knight's disregarded the safe keeping of it's workers, among other things:

a.failing to provide Plaintiff with safety equipment, clothing and other materials that could be used to protect Plaintiff from the bodily contact with crude oil and oil dispersant chemicals.

b.failing to provide Plaintiff with a safe place to work.

33.Knight's Marine & Industrial Services, Inc. by its conscious and/or deliberate unreasonable acts and/or omissions complained of herein, displayed gross negligence, reckless indifference, willfulness, and/or wantonness.

## IV. CAUSES OF ACTION

### A. FOR A FIRST CAUSE OF ACTION AS TO Knight's MARINE & INDUSTRIAL SERVICES, INC. (THE JONES ACT)

34.Plaintiff realleges each and every allegation set forth in all proceeding paragraphs as if fully restated herein.

35.Plaintiff was injured while acting as seaman in the service of the vessels operated and/or chartered by Knight's at the above referenced locations in the Gravaline Bay, Mississippi, on the above-cited occasions in question between July 1, 2010 through August 6, 2010. At all times material to this cause, Plaintiff was a "seaman," as the term is defined and applied by state and federal courts.

36.Specifically, in connection with the activities he performed for Knight's, Plaintiff had a permanent connection with the boats from which he worked, that were furnished to him by defendants; the vessels were engaged in navigation in navigable waters of the United States; and the capacity in which Plaintiff was employed and the duties which he performed for the defendants

contributed to the function of the vessels and the maritime operations of those companies, the accomplishment of the vessels' missions or their operation or welfare in terms of their maintenance during their movement.

37. Further, at all times material to this cause, the vessels which Knight's provided to Plaintiff were used to transport him to work areas; were used to carry all tools and equipment necessary; were used to assist Knight's' operations at those locations; and were the vessels actually used as the point of entry into the navigable water and the point of exit from the navigable waters.

38. Based on the allegations herein, Plaintiff has suffered injuries and its entitled to be awarded actual damages including, but not limited to, past and future lost wages, past and future medical expenses, past and future loss of personal services, and past and future intangible losses including those pain and suffering, plus costs and pre-judgment interest.

**B. FOR A SECOND CAUSE OF ACTION AS TO Knight's MARINE & INDUSTRIAL SERVICES, INC. (BREACH OF WARRANTY OF UNSEAWORTHINESS *IN PERSONAM* AGAINST Knight's MARINE & INDUSTRIAL SERVICES, INC.)**

39. Plaintiff alleges each and every allegation set forth in all preceding paragraphs as if fully restated herein.

40. At all times and places alleged herein, by the provision of the General Maritime Law of the United States, Defendant, Knight's Marine & Industrial Services, Inc., through their agents, employees and servants, warranted to Plaintiff the boats, and their gear, equipment, appurtenances, tools, crew members, and work methods were seaworthy and in compliance with applicable laws, statutes and regulations enacted for the safety of the crew.

41. Defendants violated and breached said warranties in, among others, the following respects:

    a. In their failure to exercise ordinary care under the circumstances to ensure that the

8

      personnel involved in operating the boats were properly trained in their duties;

b. In their failure to provide Plaintiff with a safe and sanitary place to work, including their failure to provide competent and trained crew;

c. In giving orders and instructions or failing to give such orders and instructions to the personnel involved in operating said vessels that cause Plaintiff to suffer serious bodily harm.

d. In violating laws, statues and regulations enacted to promote safety to workers, including seaman, and of life at sea;

e. In failing to analyze and identify specific job hazards associated with exposure to crude oil and cleaning dispersants; and

f. In failing to provide the necessary gear, equipment, and work methods that would have made it safer for workers being exposed to crude oil and cleaning dispersants.

42. As a proximate or direct and substantial result of these branches. Plaintiff sustained injuries set forth herein and suffered and continues to suffer the general and special damages as set forth herein and, therefore, is entitled to actual punitive damages.

### C. FOR A THRID CAUSE OF ACTION AS TO KNIGHT'S (NEGLIGENCE UNDER GENERAL MARITIME LAW)

43. Plaintiff realleges each and every allegation set forth in all preceding paragraphs as if fully stated herein.

44. The existence and breach of Defendant Knight's legal duties are established under general maritime law.

45. At all times material hereto, Knight's owed duties of ordinary and reasonable care to Plaintiff in connection with the clean-up operations, including it appurtenances and equipment.

9

Knight's additionally owed duties to guard against and/or prevent the risk of effects of crude oil and oil dispersants.

46. Further, Knight's owed duty to Plaintiff to exercise due care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures.

47. Knight's had a heightened duty of care to Plaintiff because of the great danger associated with exposure to oil, dispersants and/or other hazardous chemicals.

48. The risk of injury and loss to Plaintiff was reasonably foreseeable, and Knight's knew of the dangers associated with deep water drilling. Specifically, at all time relevant to this litigation, Knight's knew or should have known that:

    a. crude oil contains chemicals hazardous to human health;

    b. chemical dispersants contain chemicals hazardous to human health;

    c. Plaintiff should have been adequately and timely warned of the harmful effects of crude oil and chemical dispersants, and the hazardous substances that they contain; and

    d. failure to exercise reason able care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures would result in harm to Plaintiff.

49. Knight's breached its duty of care to Plaintiff in the following non-exclusive respects:

    a. failing to warn Plaintiff, public officials, and government agencies of the harmful effects of crude oil, chemical dispersants and any mixture thereof, and the hazardous chemicals they contain; and

    b.      failing to otherwise exercise reasonable care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures.

50.    Defendant's breach of their duties posed an unreasonable risk of harm to Plaintiff.

51.    Plaintiff suffered injury, loss and damages as a direct and proximate result of Defendant's willful, wanton, reckless, and/or grossly negligent breach of their aforementioned duties and, therefore, Plaintiff is entitled to recover actual and punitive damages.

### D. FOR A FOURTH CAUSE OF ACTION AS TO KNIGHT'S MARINE & INDUSTRIAL SERVICES, INC.(GROSS NEGLIGENCE UNDER THE GENERAL MARITIME LAW)

52.    Plaintiff realleges each and every allegation set forth in all proceeding paragraphs as if fully restated herein.

53.    Knight's had a heightened duty of care to Plaintiff because of the great danger associated with exposure to oil dispersants, and/or hazardous chemicals.

54.    Knight's knew or should have known that their wilful, wanton, and reckless conduct would cause injury to Plaintiff.

55.    Plaintiff's injury and damages were caused by Defendant's wilful, wanton, and reckless, and/or grossly negligent conduct and, therefore, Plaintiff is entitled to recover actual and punitive damages.

56.    Plaintiff also bring claims against defendants for maintenance and cure pursuant to the General Maritime Law. Additionally, to the extent that plaintiff, Michael Brandon Vicker's condition may have worsened as a result of the failure of defendant to provide him with maintenance and cure, Plaintiff is seeking enhanced compensatory damages.

### E. FOR A FIFTH CAUSE OF ACTION - MAINTENANCE AND CURE

57.    As a result fo the exposure to the oil and dispersants plaintiff became ill while in the

11

58. Plaintiff is currently in need of medical care as a result of this illness.

59. Plaintiff is entitled to maintenance at the rate of $50.00 per day from the date of first illness or on or about July 10, 2010 until he reaches maximum cure.

60. Plaintiff is entitled to punitive damages for the defendant's arbitrary and capricious failure to provide maintenance and cure.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

1. compensatory damages in amounts to be determined at trial;

2. actual damages including, but not limited to:
   a. past and future loss wages;
   b. past future medical expenses;
   c. past and future loss of personal services; and
   d. past and future intangible losses, including those for pain and suffering.

3. punitive damages;

4. pre-judgment and post-judgment interest at the maximum rate allowable by law;

5. maintenance and cure;

6. attorney's fees and costs of litigation; and

7. any other relief the Court deems just and proper.

Respectfully submitted,

/s/ Timothy J. Falcon
Timothy J. Falcon, #16909
FALCON LAW FIRM
5044 Lapalco Boulevard
Marrero, LA 70072

Telephone: 504.341.1234
Facsimile: 504.341.8115
Email: tim@falconlaw.com

and

Allen W. Lindsay, Jr., Esq.,
Florida Bar Roll No. 104956
LINDSAY & ANDREWS
5218 Willing Street
Milton, FL 32570
Telephone: 850.623.3200
Facsimile: 850.623.0104
Email: awl@lal-law.com

*Attorneys for Plaintiff,
Michael Brandon Vickers*

**PLEASE SERVE**:
**Knight's Marine and Industrial Services, Inc.**,
through its registered agent:
Incorp Services, Inc.
17888 67th Court North
Loxahatchee, FL 33470

13

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Michael Brandon Vickers

**DEFENDANTS**
Knights Marine & Industrial Services, Inc.

(b) County of Residence of First Listed Plaintiff  Mobile County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Jackson County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Timothy J. Falcon, #16909
Falcon Law Firm, 5044 Lapalco Blvd., Marrero, LA 70072
(504) 341-1234

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government - Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS |  | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  |  | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander |  |  | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability |  |  | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☒ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability |  | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability |  |  | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
|  |  |  | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
|  |  |  |  |  | ☐ 895 Freedom of Information Act |
|  |  |  |  |  | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |  |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence |  |  |  |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General |  |  |  |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** |  |  |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application |  |  |
|  | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions |  |  |
|  |  | ☐ 550 Civil Rights |  |  |  |
|  |  | ☐ 555 Prison Condition |  |  |  |
|  |  | ☐ 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
Chemical Exposure

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE  Judge Carl J. Barbier
DOCKET NUMBER  13-304

DATE
02/26/2013

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____