UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BRIAN J. DONOVAN, | CIVIL ACTION |
| PLAINTIFF | NO. 2:21-cv-237 |
| V. | SECTION |
| CARL J. BARBIER; STEPHEN J. HERMAN; JAMES P. ROY; KENNETH R. FEINBERG; AND PATRICK JUNEAU, | JUDGE CARL J. BARBIER |
| DEFENDANTS | MAGISTRATE DONNA PHILLIPS CURRAULT |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SANCTIONS AND TO ENJOIN FURTHER FRIVOLOUS FILINGS**

MAY IT PLEASE COURT, defendants, Stephen J. Herman and James P. Roy ("Herman and Roy") present this memorandum in support of their Motion for Sanctions and to Enjoin Further Frivolous Filings by plaintiff and counsel, Brian J. Donovan of The Donovan Law Group (collectively "Donovan"). The instant motion should be granted, because Donovan has filed repeated complaints asserting the same or similar claims arising from the same or similar conduct after this Court dismissed his prior claims and complaints as being untimely and without factual and legal merit and referred him for disciplinary proceedings. This, Donovan's most recent rendition of his abusive litigation tactics, again accuses this Court and highly respected members of the legal profession of conspiracy to conduct criminal activity. The allegations and claims are without legal or factual merit and are untimely. They also are defamatory *per se*.

Although Donovan has voluntarily dismissed his complaint without prejudice, this Court retains jurisdiction over him for purposes of imposing sanctions.   And because Donovan is clearly multiplying litigation by filing successive frivolous lawsuits, sanctions should be imposed, including awarding attorneys' fees incurred in defending his repeated, unjustified, and harassing lawsuits.  He should also be enjoined from any further filings arising from or related in any way to the BP Oil Spill or claims process without court approval.

The requested relief is justified, proportional, and warranted by existing law and should be granted.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Donovan is an attorney licensed to practice law in and by the State of Florida.  He, apparently, represented a handful of clients who alleged damages arising from the on April 20, 2010 explosion and fire aboard the Deepwater Horizon drilling platform and the resulting oil spill on the Gulf of Mexico ("Oil Spill").

### 1.   Donovan Closely Followed and Criticized The Oil Spill Claims Process.

Shortly after the Oil Spill, Donovan began publishing articles about the spill, the claims, process, and criticizing the MDL process.

- The Donovan Law Group, BP Oil Spill of April, 2010:  Why Class Action Lawsuits May Not be in the Best Interests of Potential Plaintiffs, May 9, 2010,[1]

- The Donovan Law Group BP Oil Spill Victims: Gulf Coast Claims Facility, Litigation or Oil Spill Liability Trust Fund, November 3, 2010,[2]

- Brian J. Donovan, BP Oil Spill: The "Fairness" Hearing, The Daily Kos, November 7, 2012,[3]

---

[1] available at: https://donovanlawgroup.wordpress.com/2010/05/09/bp-oil-spill-of-april-2010-why-class-action-lawsuits-may-not-be-in-the-best-interests-of-potential-plaintiffs/ (Last Visited March 4, 2021).

[2] available at: https://donovanlawgroup.wordpress.com/2010/11/03/bp-oil-spill-victims-gulf-coast-claims-facility-litigation-or-oil-spill-liability-trust-fund/ (Last Visited on March 4, 2021).

- The Donovan Law Group, The BP Oil Spill Multidistrict Litigation ("MDL 2179") is Not Right for America, August 12, 2013,[4]

- Brian J. Donovan, The Donovan Law Group, The BP Oil Spill Settlement is Wrong for America: Letter to the Editor, The Louisiana Record, September 26, 2013,[5]

- The Donovan Law Group, BP Oil Spill: Macondo Well Could Have Been Shut in Within 24 Days!, December, 22, 2013,[6]

- Brian J. Donovan, Oil Spills: Merely Increasing the Limit of Liability for Damages is Not the Solution!, The Daily Kos, March 20, 2014,[7]

- The Donovan Law Group, Sign the Petition: The Intended Purpose of the OSLTF Is to Fully Compensate Oil Spill Victims via Subrogation, March 28, 2014,[8]

- The Donovan Law Group, GM, Like BP, Will Use Multidistrict Litigation and the Fund Approach to Limit Its Liability, April 3, 2014,[9]

- The Donovan Law Group, Plaintiffs File Motion to Hold Kenneth R. Feinberg, et al. Accountable for Financially Ruining Them, April 25, 2014,[10]

- The Donovan Law Group, The Principal Reason Why BP Got Off, The Donovan Law Group, March 25, 2015,[11]

- The Donovan Law Group, Kenneth R. Feinberg: "BP oil spill victims were never under financial duress!," April 21, 2015,[12]

---

[3] available at: https://www.dailykos.com/stories/2012/11/7/1157828/-BP-Oil-Spill-The-Fairness-Hearing (Last Visited March 4, 2021)

[4] available at: https://www.dailykos.com/stories/2013/8/13/1230860/-The-BP-Oil-Spill-Multidistrict-Litigation-MDL-2179-Is-Not-Right-for-America, (Last Visited on March 4, 2021)

[5] available at: https://louisianarecord.com/stories/510583841-the-bp-oil-spill-settlement-is-wrong-for-america, (Last Visited on March 4, 2021)

[6] available at: https://donovanlawgroup.wordpress.com/2013/12/22/macondo-well/, (Last Visited on March 4, 2021).

[7] available at: https://www.dailykos.com/stories/2014/3/20/1286268/-Oil-Spills-Merely-Increasing-the-Limit-of-Liability-for-Damages-Is-Not-the-Solution, (Last Visited on March 4, 2021)

[8] available at: https://donovanlawgroup.wordpress.com/2014/04/03/gm-like-bp-will-use-multidistrict-litigation-and-the-fund-approach-to-limit-its-liability/, (Last Visited on March 4, 2021).

[9] available at: https://donovanlawgroup.wordpress.com/2014/04/03/gm-like-bp-will-use-multidistrict-litigation-and-the-fund-approach-to-limit-its-liability/, (Last Visited on March 4, 2021).

[10] available at: https://donovanlawgroup.wordpress.com/2014/04/25/plaintiffs-file-motion-to-hold-kenneth-r-feinberg-et-al-accountable-for-financially-ruining-them/, (Last Visited on March 4, 2021).

[11] available at: https://donovanlawgroup.wordpress.com/2015/03/25/the-principal-reason-why-bp-got-off/, (Last Visited March 4, 2021)

- The Donovan Law Group, Kenneth R. Feinberg to SCOTUS: "The BP Oil Spill Fund has been extraordinarily effective, by any measure, at efficiently and fairly compensating victims!," May 10, 2015,[13]

- The Donovan Law Group, Collusion – Judicial Discretion vs. Judicial Deception: The Impending Meltdown of the United States Federal Judicial System, July 26, 2018,[14]

- The Donovan Law Group, The Definition of Collusion, August13, 2018,[15]

- The Donovan Law Group, How MDLs Have Morphed U.S. Federal Courts into Merely Administrative Agencies, February 23, 2019.[16]

Clearly, Donovan was no stranger to the Oil Spill claims process or the MDL.

**2. Donovan Filed Lawsuits For Clients Allegedly Harmed By The Oil Spill And The Claims Process -*The Feinberg Actions***

Meanwhile, "[b]etween 2011 and 2013, Donovan filed three cases on behalf of four clients who had submitted claims to the GCCF but were unsatisfied with the results." *See* Case 2:19-cv-12014, Doc. #28, at 2.

### *a. Pinellas Marine Savage, Inc. v. Feinberg*

Specifically, on August 16, 2011, Donovan filed a complaint against Kenneth Feinberg and others arising from the Feinberg Defendants' handling of claims submitted by Pinellas Marine Savage, Inc. and John Mavrogiannis in Florida State Court.  *See Pinellas Marine Savage, Inc. v. Feinberg,* #11-1987, E.D. La., Doc. #1-2.  Donovan, on behalf of Pinellas Marine, alleged that Feinberg failed to properly process his client's claim and circumvented the rights provided

---

[12] available at: https://donovanlawgroup.wordpress.com/2015/04/21/kenneth-r-feinberg-bp-oil-spill-victims-were-never-under-financial-duress/, (Last Visited on March 4, 2021)

[13] available at: https://donovanlawgroup.wordpress.com/2015/05/10/kenneth-r-feinberg-to-scotus-the-bp-oil-spill-fund-has-been-extraordinarily-effective-by-any-measure-at-efficiently-and-fairly-compensating-victims/, (Last Visited on March 4, 2021)

[14] available at: https://donovanlawgroup.wordpress.com/2018/07/26/collusion-judicial-discretion-vs-judicial-deception-the-impending-meltdown-of-the-united-states-federal-judicial-system/, (Last Visited on March 4, 2021)

[15] available at: https://donovanlawgroup.wordpress.com/category/collusion/, (Last Visited on March 4, 2021)

[16] available at: https://donovanlawgroup.wordpress.com/tag/jpml/, (Last Visited on March 4, 2021).

to him under the Oil Pollution Act ("OPA").  He alleged that the defendants, "misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly stating the protocol under which [the Gulf Coast Claims Facility] operates is structured to be compliant with OPA and apply the standards of OPA."  *Id*. at ¶¶ 3; 70.

According to Donovan, the Feinberg defendants engaged in pattern of "Delay, Deny, Defend" as it pertained to evaluation and processing BP Oil Spill claims.  *Id*. at ¶ 4.  The alleged purpose was to benefit the Feinberg defendants while simultaneously limiting BP's liability through fraudulent, reckless, and negligent representations or misrepresentations.  *Id*. at ¶¶ 12; 70.  Donovan, for his clients, asserted gross negligence, negligence, negligence per se, fraud, fraudulent inducement, promissory estoppel, and unjust enrichment against the Feinberg Defendants.  *Id* at ¶ 14.

### b.  *Salvesen v. Feinberg*

On October 12, 2011, Donovan filed a virtually identical complaint against Kenneth Feinberg and others arising from the Feinberg Defendants handling of claims submitted by Selmer M. Salvesen.  *See Salvesen v. Feinberg*, #11-2533, E.D. La., Doc. #1-2.  Other that the factual allegations related to the Salvesen claim, all acts, omissions, and claims were identical.

### c.  *Ditch v. Feinberg*

On October 31, 2013, Donovan filed another virtually identical complaint against Kenneth Feinberg and others arising from the Feinberg Defendants' handling of claims submitted by Andrew J. Ditch.  *See Ditch v. Feinberg*, #13-6014, E.D. La.  Doc. #1-1

All three lawsuits (hereinafter the "Feinberg Actions") were removed to the United States District Court for the Middle District of Florida, transferred to MDL-2179, which was

established to handle the lawsuits filed as a result of the BP Oil Spill, and stayed.  *See Salvesen*, 11-2533, Doc. #4 at 6.

On July 2, 2020, Judge Barbier granted the Feinberg Defendants' motions to dismiss all three *Feinberg Actions*, and noted that, after the claims submitted by Donovan's clients were denied, they did not file suit against BP, present their claims to the Oil Spill Liability Trust Fund, or participate in Economic Settlement."  *Id*. at 7-8.  Instead, they sued the Feinberg Defendants under Florida state law, in an apparent attempt to avoid their own respective failures to prosecute their claims and to circumvent prior rulings from the MDL court.  *Id*. at 8.  Although Donovan's clients argued that they were somehow barred from seeking recovery under the OPA, Judge Barbier found that "their complaints rely extensively and explicitly on OPA."  *Id*.  Finding no private cause of action under OPA for failure to settle, Judge Barbier dismissed *the Feinberg Actions* with prejudice after specifically finding that amendment would be futile.

None of Donovan's clients appealed.

### 3. Donovan Also Previously Sued On His Own Behalf.

#### a. *Donovan I.*

On February 12, 2019, in a 130-page complaint, Donovan sued Mr. Herman in the matter *Donovan v. Herman*, 19-cv-12014, EDLA, ("*Donovan I*") alleging that he "colluded with BP in order to limit BP's liability in exchange for increasing the compensation to himself and the PSC. Much of the alleged collusion concerns the Economic and Property Damages Settlement ("Settlement"), a class action settlement that replaced the GCCF in 2012."  *See Donovan v. Herman*, 19-cv-12014, Doc. #28 (Order and Reasons).  Again, Donovan repeated the history and "Delay, Deny, Defend" allegations from the Feinberg Actions.

Donovan alleged that:

- "the Settlement, which was negotiated by the [Plaintiff Steering Committee] on behalf of the class, was unfair to class members because it 'limits a claimant's recovery of damages to geographic bounds and certain business activities while requiring a heightened and vague proof of causation.'" *See* Doc. #28

- "many parties were excluded from participating in the Settlement, specifically those who had executed a release in exchange for a payment from the GCCF;"

- "Herman 'aid[ed] and abett[ed] the [GCCF] to circumvent OPA,'

- "Herman did not properly plead OPA claims in one of the master complaints drafted by the PSC, and that"

- "Herman 'breached his fiduciary and ethic duties to [Donovan], [Donovan's] clients, and all others similarly situated.'"

*Id*. at 3 (citations omitted).

On March 27, 2020, Judge Barbier dismissed Donovan's claims against Mr. Herman as untimely under Louisiana law and specifically in accordance with La. R.S. 9:5605. *Id*. That statute provides that an action against a Louisiana attorney must be brought within one year of the discovery of the alleged wrongful conduct or three years from that date of the wrongful conduct. *Id*. at 4. Judge Barbier held that "Donovan's complaint centers on acts or omissions that allegedly occurred between 2010 and 2013." *Id*.

Judge Barbier also held that "Donovan . . . failed to articulate a concrete and particularized injury in fact." *Id*. at 6-7. Judge Barbier noted that Donovan lacked standing to complain about the terms of the BP settlement and that, even if he had standing, his claims were untimely because they should have been asserted in 2012. *Id*. at 6. He also noted that

Donovan's allegations against Mr. Herman that were related to judicial acts were "not facially plausible" and that Donovan was owed no fiduciary duty by Mr. Herman. *Id*. at 7.

Because Donovan's lawsuit filed in 2019 was clearly time barred and his claims lacked factual and legal merit, his claims were dismissed with prejudice on March 27, 2020.

Donovan did not appeal.

### b.    *Donovan II.*

On February 24, 2020, Donovan commenced the *qui tam* action captioned *Donovan v. Barbier, et. al.*, 8:20-cv-418, in the United States District Court for the Middle District of Florida, by filing a 144-page complaint ("*Donovan II*").  *See* Complaint attached as **Exhibit 1.** Donovan purported to bring this lawsuit on behalf of the United States of America and himself under the Federal False Claims Act, 31 U.S.C. § 3729.  Among the numerous defendants were Stephen Herman and James Roy, defendants in this case.  The allegations in *Donovan II* bear a striking similarity to those previously alleged against Mr. Herman in *Donovan I* and that appear in the instant case.

Donovan alleged that there was an "'Eight Step' fraudulent scheme to maximize judicial efficiency and/or maximize [defendants] compensation in exchange for limiting the liability of BP."  *Id* at 3, ¶ 4.  He further alleged that MDL 2179 was unconstitutional because there was no case or controversy for the court to consider.  *Id*. at 24-25.  He also alleged collusion within the context of settlements. *Id*. at 26.  Donovan asserted claims under the Federal False Claims Act, Indirect False Claim, 31 U.S.C. § 3729(a)(1)(A); Federal False Claims Act, Indirect False Claim, 31 U.S.C. § 3729(a)(1)(B); Federal False Claims Act, Indirect Reverse False Claim, 31 U.S.C. § 3729(a)(1)(G); and, Racketeer Influenced and Corrupt Organizations (RICO) 18 U.S.C. § 1961, et seq.

Allegedly because the United States Government did not intervene, on October 26, 2020, Donovan filed a notice of voluntary dismissal without prejudice pursuant to F.R.C.P. 41(a)(1). *See* Voluntary Dismissal attached as **Exhibit 2.**

### 4.   Donovan's Unsuccessful Efforts To Recuse Judge Barbier.

In the *Feinberg Actions* and in *Donovan I*, Donovan, personally and on behalf of his clients, filed motions to recuse Judge Barbier arguing that the judge had a conflict of interest because, years before, he had "owned debt instruments issued by Halliburton and Transocean," and that the judge's "impartiality might be reasonably questioned based on various events, rulings, or statements."  *In re: Oil Spill by The Oil Rig "Deepwater Horizon" in The Gulf Of Mexico*, on April 20, 2010, 2019 WL 5864740, at pg. *1 (E.D. La. 11/08/2019).

In the motions, Donovan also accused Judge Barbier of collusion with Mr. Herman, violating or contravening federal law, forcing BP claimants into settlements, intentionally mislead the public and claimants about and how many claims may be paid and BP's potential monetary exposure, forced common benefit attorneys to pay for inclusion, and inflated the amounts paid in settlement to support the conclusion that the proposed settlement was fair.  *Id*. at 4-6.  Judge Barbier denied the motions after finding that they were untimely as to the arguments related to his prior investments that he sold in 2010.  *Id*. at 1-2. Further, he held that, even if timely, the motions were without merit. *Id*. at 2.  Pertinent to the issues in the instant motion, Judge Barbier held:

> Donovan may have violated the following Louisiana Rules of Professional Conduct, which have been adopted by this Court: Rule 8.2(a) (making statements that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge), Rule 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation), and Rule 8.4(d) (engaging in conduct that is prejudicial to the administration of justice).

> *Id*. at 5.

Accordingly, Donovan was referred "to the Clerk of Court for the initiation of a disciplinary proceeding pursuant to the Eastern District of Louisiana's Rules for Lawyer Disciplinary Enforcement." *Id.*

### 5. Donovan Commenced This Action After Prior Dismissals And With Full Knowledge That His Claims Are Untimely And That His Allegations May Be Sanctionable.

Apparently undeterred, on November 5, 2020, Donovan commenced this action, ("*Donovan III*"), in Florida state court against Judge Barbier, Mr. Herman, Mr. Roy, Mr. Feinberg, and Patrick A. Juneau, all of whom were named defendants in *Donovan II*. The claims contained in the 188-page complaint are based on the same basic factual allegations arising from or related to the BP Oil Spill and the ensuing claims process and MDL 2179 that Donovan began writing about in 2010 and were contained in *the Feinberg Actions* and in *Donovan I* and *Donovan II*.

In an apparent attempt to avoid the preclusive effects of the earlier dismissals, Donovan framed his new complaint as a putative class action where he represents himself, his business, and unidentified persons who were allegedly injured by the denial of their BP Oil spill claims. Like *Donovan II*, he again asserts RICO claims.

This case was again removed to the United States District Court for the Middle District of Florida and transferred to this Court for handling as part of MDL 2197. Apparently, understanding that his claims in this case would meet the same fate as those prior claims and cases filed by him personally and on behalf of his clients, on February 17, 2021, Donovan moved to voluntarily dismiss his claims without prejudice under F.R.C.P. 41(a)(1)(A). *See* 2:10-md-02179-CJB-DPC, Doc. #26916. In his supporting memorandum, Donovan claims that he never requested that summons be issued to serve his complaint due to concerns over COVID-19. *See*

2:10-md-02179-CJB-DPC, Doc. #26916-1 at 2.  He then provides a number of "reasons" for his decision to dismiss, including that the MDL 2179 court applies the wrong law (despite prior appellate review of that issue); Judge Barbier refused to recuse himself (despite no apparent motion being filed in this matter); the MDL process and structure prevents due process; and, he believes that Judge Barbier has somehow prejudged his case and claims because his objections to the "winddown of the Court Supervised Settlement Program" were held to be "completely frivolous."  Donovan concluded his justification for seeking dismissal with a nonsensical statement that, if Judge Barbier was correct that his objection to the winddown of the BP claims process was frivolous, then somehow the "entire federal judicial system is 'completely frivolous.'"  *Id.* at 10.

## II.  LAW AND ARGUMENT

### 1.  This Court Should Sanction Donovan For Litigation Abuse And Multiplying Litigation.

Even though Donovan voluntarily dismissed his case, this Court maintains its inherent supervisory powers to consider whether to impose sanctions, including "an injunction against future filings." *Qureshi v. U.S.*, 600 F.3d 523, 525-6 (5th Cir. 2010) (citations omitted).  Initially, because Donovan's case is subject to the "two dismissal" rule provided for by Federal Rule of Civil Procedure 41, that same Rule provides for recovery of "all or part of the costs of that previous action."  F.R.C.P. 41(d).

In addition, this Court may impose sanctions under 28 U.S.C. §1927[17], which provides:

> Any attorney . . . admitted to conduct cases in any court of the United States . . .
> who so multiplies the proceedings in any case unreasonably and vexatiously may

---

[17] Mr. Herman and Mr. Roy do not seek sanctions under F.R.C.P. 11(2) because plaintiff filed a Notice of Voluntary Dismissal before they could meet the dictates of the Rule.  That being said, "the court may *sua sponte* order a party to show cause why conduct specifically described in the order has not violated Rule 11(b)." *Martin v. Bravenec*, 627 Fed.Appx. 310, 313 (5th Cir. 2015).  "[S]anctions awarded on the court's initiative under Rule 11 'are limited to nonmonetary sanctions or a monetary penalty paid to the court.'" *Id.* (citation omitted).

be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

"Since 1980, federal courts have awarded stiff sanctions under modern § 1927 to punish the wrongful prolongation of litigation." *Morrison v. Walker*, 939 F.3d 633, 640 (5th Cir. 2019). "Court-ordered sanctions should be neither 'consequence' of a voluntary dismissal without prejudice nor a 'condition' placed upon such dismissal." *Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 292-3 (5th Cir. 2016)(citation omitted).

In *Clark v. Mortenson*, 93 Fed.Appx. 643 (5th Cir. 2004), the Fifth Circuit explained that federal courts have inherent power to manage their respective dockets and to can act to impose sanctions in "instances of 'bad faith or willful abuse of the judicial process.'" *Id*. at 650 (citations omitted). In addition, courts can impose sanctions under 28 U.S.C. 1927 and "Federal Rule of Civil Procedure 11 [that] directs district courts to impose sanctions against a litigant who signs frivolous or abusive pleadings." *Id*.

The *Clark* court specifically noted that the "safe harbor" provision of F.R.C.P. 11(c)(2), which provide the litigant with a 21-day notice to correct or withdraw the abusive pleadings, does not apply to sanctions imposed by the court on its own initiative. In addition, while F.R.C.P. 11 provides that anyone can be sanctioned, 28 U.S.C. § 1927 is limited to addressing attorney misconduct. A district "court may use its inherent power to reach conduct that is beyond the scope of Rule 11 and § 1927." In other words, persons who abuse the judicial system or its processes cannot escape the power of the federal courts to control their dockets simply by dismissing their abusive or frivolous lawsuits.

In *Clark*, three Baum family members, only one of which was an attorney, enlisted four investors and victims of a ponzi scheme to serve as plaintiffs in a lawsuit against the receiver of the failed institution and her attorney. The plaintiffs sued the receiver and her attorney asserting

claims of conspiracy to violate federal law, embezzlement of federal property, fraud upon the government, mail fraud and various RICO violations.  The trial court ordered the plaintiffs to amend to set forth facts supporting their claims and explain how the receiver had acted outside of her authority such that she lost her immunity from suit.  The plaintiffs were cautioned that they would face sanctions if the amended complaint was unsupported in fact or law.  *Id*. at 646.

After amendment, plaintiff still accused the receiver of breaching her fiduciary duty to provide investors with a detailed accounting, pursuing worthless claims that only served to financially benefit her and her attorney, and improperly changed law firms, which undermined investor confidence.  *Id*. The receiver and attorney moved to dismiss and for sanctions as well as an injunction against further litigation.  Finding that the complaint lacked any factual support, the court granted the motion and dismissed the complaint for failure to state a cause of action upon which relief could be granted and awarded sanctions.

The trial court found that the Baums: enlisted the plaintiffs through misrepresentations and none had a valid reason to sue the receiver; repeatedly lied to the court; and, were previous abusers of the legal system, including filing other frivolous lawsuits and violating an injunction against filing pleadings in another matter.  The court imposed short jail terms against two of the Baums and ordered them to pay the receiver $100,000 for legal fees incurred in defending the action, and barred all of them "from filing, directly or indirectly, any papers in the courts of Texas or Louisiana, state or federal, or with an executive agency without written permission of a judge."  *Id*. at 649.

Finding no abuse of the district court's discretion and that the sanctions were properly justified by the Baum's actions, the Fifth Circuit affirmed in all respects.

Similarly, in *Morrison v. Walker*, 939 F.3d 633 (5th Cir. 2019), attorney Stella Morrison represented a client in a criminal proceeding in 2006. *Id*. at 635-6. During the proceeding, the presiding judge, Layne Walker, accused Morrison of suborning perjury and reported her to the district attorney and the state bar. *Id*. A criminal investigation and an ethics review ensued. *Id*.

Years later, Morrison, represented by attorney John Morgan, sued Judge Walker and others claiming that the perjury charge was fabricated and that it arose from actions unrelated to any matters pending before the judge. *Id*. at 636. The factual allegations were sparse, apparently, due to Morrison's claimed memory issues. *Id*.

Judge Walker moved to dismiss the complaint based on judicial immunity. The motion was granted in part but denied on the claims surrounding the fabricated perjury charge and Morrison was ordered to amend to provide additional facts indicating that judicial immunity should not attach.

Morgan amended the complaint and, based on Morrison's testimony, largely reiterated the allegations that Judge Walker's allegations were unrelated to any judicial proceeding and that judicial immunity could not attach. Judge Walker again moved to dismiss the complaint and included the transcript from the underlying criminal proceeding from which his perjury allegation was born. *Id*. In response, Morgan filed a surreply and indicated that his client, Morrison, would review and respond. After no response was provided to Judge Walker's transcript, the court ordered Morrison to provide a detailed factual explanation for her claim against the judge and clearly state whether they arose from conduct in his court. *Id*. at 637. Only then did Morrison admit that the transcript was accurate and that her claims against the judge were barred by judicial immunity. Thereafter, Morison, acting through Morgan, dismissed the claims against Judge Walker.

Judge Walker then moved to recover attorneys' fees and costs under 28 U.S.C. § 1927. After concluding that Morrison did not have any memory issues related to the underlying criminal case, the court-imposed sanctions for conduct occurring within a window of time and awarded a fraction of the damages sought.   On appeal, the Fifth Circuit found no abuse of discretion and affirmed the award.

The *Morrison* court held that Morgan multiplied the proceedings, by repeatedly filing pleadings on a meritless claim in "reckless disregard for his duty to the court." *Id*. at 638.  The court found that the record established that there was no evidence supporting the allegation that the claims against Judge Walker were not barred by judicial immunity.  Therefore, the claims were baseless, and Morgan violated his duties under F.R.C.P. 11 to conduct a reasonable inquiry into his client's allegations before filing the complaint. *Id*. at 638-9.  Moreover, Morgan ignored "glaring red flags" that should have caused him to investigate his client's allegations.  And when faced with Judge Walker's judicial immunity defense, he "disregarded overwhelming evidence that the bar applied." *Id*. at 639-40.  Therefore, the sanction and the award were justified and affirmed. *Id*. at 640.

*Clark* and *Morrison* are instructive and support imposing sanctions against Donovan, including enjoining him from suing again without prior court approval.

In the instant action, Donovan claims to represent himself, his business and "those parties who were injured as a result of an alleged RICO enterprise and allegedly were "denied access to the courts." *See* Complaint, Doc. #1. at pg. 1, ¶ 8.  There is no allegation or evidence that Donovan or his business were ever a claimant or asserted any personal or busines related claims arising or resulting from the Oil Spill.  In fact, Judge Barbier previously held that Donovan lacked standing to sue for claims arising from the BP Oil Spill claims process.  Regardless, if

Donovan had standing his claims arose from alleged actions occurring as far back as 2012.  Civil RICO actions are governed by the four-year limitations period contained in the Clayton Act, 15 U.S.C. §15(b).  *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 156 (1987). Those claims, as meritless as they are, were clearly untimely when filed.

Given this Court's prior rulings against Donovan and his clients in *the Feinberg Actions* and in *Donovan I* as well as his prior voluntary dismissal of *Donovan II*, this new complaint appears "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and the allegations and claims are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  F.R.C.P. 11 (b)(1)(2).  In addition, the repeated allegations and claims in this action, wherein he again accuses a sitting federal judge, respected members of the bar and legal profession of criminal activity, are without factual and legal merit and are defamatory *per se*.

Moreover, in this Court's denial of the recusal motions filed by Donovan in *the Feinberg Actions* and in *Donovan I*, it noted that:

> Movants also make a habit of improperly focusing on isolated incidents while ignoring the entire course of judicial proceedings or even the immediate context. Some of Movants' claims are so clearly contradicted by the record that I wonder if Movants' attorney actually read the document he criticizes. Many of Movants' arguments are nothing more than collateral attacks on prior rulings. Some of Movants' arguments defy logic.

*In re: Oil Spill*, 2019 WL 5864740, at pg. *4 (E.D. La. 11/08/2019) (citations omitted).

Because the allegations in Donovan I were without merit, on November 8, 2019, this Court referred Donovan to the Clerk of Court to commence a disciplinary proceeding for potential violations of the Louisiana Rules of Professional Conduct.  *Id*. at 6.

Months later, on February 24, 2020, he filed *Donovan II* in the Middle District of Florida and subsequently voluntarily dismissed it. He then filed this action, on November 5, 2020 (a year after being referred for disciplinary action), and repeats many of the same false allegations and frivolous accusations from the *Feinberg Actions* and *Donovan I* and *Donovan II*. Clearly, Donovan is acting in complete disregard of his obligations to this Court and to opposing parties and counsel. More importantly, he is actively disregarding this Court's prior rulings and the referral of his behavior for disciplinary action.

This Court should impose monetary sanctions against Donovan, including awarding Mr. Herman and Mr. Roy their attorneys' fees and costs incurred in responding to his frivolous claims and meritless lawsuits, *Donovan I*, *Donovan II*, and *Donovan III*.

### 2. This Court Should Enjoin Donovan From Filing Any Further Lawsuits Arising From Or In Any Way Related To The BO Oil Spill Or The Claims Process Without Prior Court Approval.

"Federal courts . . . have authority to enjoin vexatious litigants under the All Writs Act, 28 U.S.C. § 1651." *Matter of Carroll*, 850 F.3d 811, 815 (5th Cir. 2017)(citation omitted). The Fifth Circuit has provided four criteria that a district court should consider before imposing a pre-litigation injunction:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

> *Id.* (citation omitted).

In *Carroll*, the district court affirmed monetary sanctions and a pre-litigation injunction imposed by the bankruptcy court due to the litigants' bad faith conduct within the context of a bankruptcy proceeding. The Fifth Circuit affirmed the district court's decision and noted that

there was clear evidence that the litigants acted in bad faith and "engaged in conduct intended to harass and delay." *Id*. at 815-6.  The *Carroll* court also found evidence of "repeated attempts to litigate issues that have been conclusively resolved against them or that they had no standing to assert and by their unsupported and multiple attempts to remove . . . the trustee." *Id*. at 816. The Carrolls also ignored a prior contempt ruling and "remained undeterred, persisted in their unsupported filings." *Id*.  Therefore, the orders imposing monetary sanctions and the pre-litigation injunction were affirmed.

In *Newby v. Enron Corp.*, 302 F.3d 295 (5th Cir. 2002), a lawyer representing clients who had claims against Enron attempted to avoid the MDL by filing numerous state court lawsuits in Texas against the accounting firm for Enron.  The lawsuits were limited to less than fifty plaintiffs to avoid application of the Securities Litigation Uniform Standards Act and sought *ex parte* temporary restraining orders enjoining the destruction of Enron related documents, which were being granted by the state court judges.  The executive officers of Enron moved the federal court to enjoin the attorney from any further filings without court approval and to dissolve one of the temporary restraining orders, which was granted.  The attorney and his clients appealed.  The Fifth Circuit acknowledged "that federal courts possess power under the All Writs Act to issue narrowly tailored orders enjoining repeatedly vexatious litigants from filing future . . . actions without permission from the court." *Id*. at 301 (citation omitted).  That power extends to both federal and state courts. *Id*. (citation omitted).  Finding no abuse of the district court's discretion to impose the pre-filing injunction, the Fifth Circuit affirmed. *Id*. at 303.

In *Farguson v. MBank Houston, N.A.*, 808 F.2d 358 (5th Cir. 1986), a *pro se* plaintiff filed suit alleging fraud, breach of contract, usury, and RICO violations against a number of defendants.  The district court dismissed the case with prejudice after finding that the claims

were "'frivolous and irrational.'"  *Id.* at 359.  The plaintiff then filed another lawsuit against the same parties and asserting the same claims.  *Id.*  The district court again dismissed the complaint and imposed F.R.C.P. 11 sanctions and enjoined the plaintiff from filing any more lawsuit against any of the same defendants based on the same claims.  *Id.*

Finding that the plaintiff's claims were "manifestly and patently frivolous" and that an injunction was appropriate to prevent him from harassing the defendants and overburdening the courts with meritless litigation, the Fifth Circuit affirmed.  Specifically, the *Farguson* court held that the pre-litigation injunction was "specific and limited" to the "same claims against the same defendants."  *Id.* at 360.  The court also affirmed the monetary sanctions imposed by the district court and, *sua sponte*, imposed an additional monetary sanction to be paid to the clerk of court and enjoined the plaintiff from further filings in any federal court where there was an outstanding sanction award.  *Id.* at 360.

In *Dantzler v. Montecino*, 2009 WL 8689939 (E.D. La. 2009), the district court imposed a pre-litigation injunction against a <u>pro se</u> plaintiff who filed repetitious lawsuits arising from his termination from the Hammond Louisiana Police Department.  *Id.* at 1.  After every dismissal of his claims, he would file another lawsuit adding more parties and claims, including opposing counsel, but all arising from his termination.  The district court ordered him to show cause why an injunction enjoining further litigation should not issue.  Finding that an injunction was justified by the facts, the court enjoined him from filing any additional lawsuits "related to his termination" unless leave of court was provided and after "a finding that his pleadings are neither frivolous nor vexatious."  *Id.* at 4.

This Court has already held that Donovan's claims against Louisiana attorneys are subject to application of La. R.S. 9:5605 and a three-year peremptive period.  Because this Court

also previously held that his complaints involve alleged acts or omissions occurring between 2010 and 2013, the re-filing of claims against Mr. Herman is frivolous and vexatious.  Further, Donovan's complaint – a developing rendition of *the Feinberg Actions*, *Donovan I,* and *Donovan II* – simply parrots and adds on those prior baseless actions. This complaint, however, is devoid of any specific mention of persons or parties injured or that were supposedly denied access to the courts.  There is nothing new presented in this case.  More importantly, given that this Court referred Donovan for disciplinary action in November 2019, his filing of *Donovan II,* on February 24, 2020, in which he repeated many of the false and defamatory allegations and claims that this Court referred for disciplinary review evidences a complete and utter disregard for this Court, Louisiana Rules of Professional Conduct, as well as the correlative Florida Rules of Professional Conduct.[18]

In addition to Donovan's clear disregard for the Florida and Louisiana Rules of Professional Conduct and this Court's authority and rulings, this is not Donovan's first frivolous RICO action (setting aside *Donovan II*).  Nor is it the first time that sanctions have been sought because of such a filing.  In 2003, in the case *Cabellos, et. al. v. Great White Fleet (US) Ltd., et. al*, 8:03-cv-138, USDC MD FL, Donovan represented the plaintiffs in asserting RICO claims against the defendants, which included former counsel for one of the corporate entities.  *See* Doc. #53, attached as **Exhibit 3**.  Finding that the case was an attempt to circumvent the preclusive effect of prior litigation in the Eastern District of Louisiana, the court sanctioned Donovan pursuant to F.R.C.P. 11 and its inherent disciplinary power, and explained, in relevant part,

It appears the sanctions should be entirely against the attorney that brought the

---

[18] "A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs.  A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others.  A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials.  While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process."  Rules Regulating The Florida Bar, Ch. 4, Rules of Professional Conduct, Preamble.

action.  A client ordinarily would not know the pleading requirements necessary to support a RICO action.  The attorney should.  Any reasonable attorney, given these facts, would know not to bring a RICO action against opposing counsel. The bringing of such an action can only be the result of a bad heart or an empty head.  Either is grounds for sanctions.

*Id*. at 21 (citation omitted).

The Eleventh Circuit affirmed that sanction award after finding "no abuse of the district court's discretion in its decision to impose Rule 11 sanctions in light of the baseless nature of the claims asserted against" the former attorneys.  *Id*. at 10. *See* Doc. #75 attached as **Exhibit 4.** After remand, the *Cabellos* district court ordered Donovan to pay approximately $20,000 in attorneys' fees to the attorneys he improperly sued.  *See* Doc. #82 attached as **Exhibit 5**.

Given Donovan's prior sanction for filing and pursuit of a frivolous RICO action and his previous referral for disciplinary action, he cannot claim ignorance of his duties to the Court or to those he has sued.  And because all of the cases and claims that he has filed arising from or are related to the Oil Spill have been dismissed by final judgment or voluntarily by him, the filing of this action was clearly intended to harass and defame.  Donovan should not be permitted to escape the consequences of his actions, simply because he once again voluntarily dismissed his baseless claims.

### 3.  Sanctions and A Pre-Litigation Injunction Are Consistent With The Dictates of Federal Procedural Law and The "Two Dismissal" Rule.

Because Donovan previously voluntarily dismissed another case against the same parties and based on or including the same claims as asserted in this case, the "two-dismissal" rule supports the imposition of a pre-litigation injunction.

According to Federal Rule of Civil Procedure 41, "the plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."  Fed. R. Civ. Proc. 41(a)(1)(A)(i).  "[T]he dismissal

is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on *or including the same claim*, a notice of dismissal operates as an adjudication on the merits." Fed. R. Civ. Proc. 41(a)(1)(B).

Donovan's F.R.C.P. 41(a)(1)(A)(i) notice of dismissal in this case is self-effectuating and, had he not previously filed and dismissed a similar lawsuit, would normally result in a dismissal without prejudice. *See Qureshi v. U.S.*, 600 F.3d 523, 525 (5th Cir. 2010)(citation omitted). But, because he previously voluntarily dismissed his claims asserted in *Donovan II*, according to Federal Rule of Civil Procedure 41, his voluntary dismissal of this case that is based on or including the same claims, the "dismissal operates as an adjudication on the merits." Fed. R. Civ. Proc. 41(a)(1)(B). *See also, Cabot Golf CL-PP 1, LLC v. Nixon Peabody, LLP*, 575 Fed.Appx. 216, 218 (5th Cir. 2014)(party voluntarily dismissing a second suit based on the same acts or claims is barred by the "two-dismissal rule" and *res judicata* from filing further actions).

Federal courts apply the "two dismissal" rule to bar future litigation after the plaintiff filed a third complaint based on the same acts or claims. *See Rozelle v. Lowe*, No. SA-16-CV-489-XR, 2016 WL 7228768, at *7 (W.D. Tex. Dec. 13, 2016) ("Whether these dismissals are with or without prejudice is not a question properly before this Court because the dismissals were effective immediately, depriving this Court of jurisdiction to determine the merits of these already dismissed claims or place conditions on these dismissals. Should Plaintiffs file another related action, the effect of their notices of dismissal in this case will be a question properly before that court."); *see also Theard v. Dep't of Civ. Serv., Louisiana*, No. CIV.A. 10-4165, 2012 WL 6161944, at *10 (E.D. La. Dec. 11, 2012) ("Theard does not seek to file her claim against LSBN for a third time, which would traditionally implicate the two dismissal rule if the first two dismissals were pursuant to Rule 41(a)(1)"). Because the "two-dismissal" rule will normally bar

future litigation of the same claims against the same parties and because Donovan has been acting in complete disregard of his professional duties and in defiance of this Court's prior rulings, there is a very good chance that Donovan will strike again and file another frivolous lawsuit.  Accordingly, a pre-litigation injunction that prevents him from filing any more actions without court approval is appropriate.  It will shield the current victims of Donovan's vexatious litigation tactics from future abuse, including the cost of filing responsive pleadings.

### 4.  CONCLUSION

Donovan has repeatedly filed baseless lawsuits and claims arising from the BP Oil Spill and the ensuing claims process.  His claims and those of his clients have been dismissed with prejudice or have been voluntarily dismissed by him and he has been warned that his allegations and actions may run afoul of his professional obligations.  Yet, he has continued to file lawsuits against respected members of the bench and bar that are without factual and legal merit and are defamatory *per se*.  Consequently, this Court should enter an order imposing sanctions on Donovan, including awarding all attorneys' fees and costs incurred by Mr. Herman and Mr. Roy in responding to this complaint and to *Donovan I* and *Donovan II*.  This Court should also enjoin Donovan from filing any lawsuits in state or federal court against any persons or companies arising from or in any way related to the Oil Spill or the claims process without pre-litigation approval from this Court.

Respectfully submitted,

*/s/ Edward W. Trapolin*
Edward W. Trapolin, Esq. (Bar No. 27667)
Gus A. Fritchie, III (Bar No. 5751), T.A.
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Phone:  (504) 310-2100
FAX:  (504) 310-2101

*Attorneys for Stephen J. Herman and James P. Roy*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Memorandum in Support of Motion for Sanctions and to Enjoin Further Frivolous Filings* has been served on All Counsel by electronically uploading the same to File and ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 18th day of March 2021.