# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**DANIEL CABELLOS and
INDEPENDENCE SHIPPING
LINES, LTD., INC.,**

       **Plaintiffs,**

**v.**                         **Case No. 8:03-cv-138-T-30TBM**

**GREAT WHITE FLEET (US) LTD.,
PORT-TO-PORT INTERNATIONAL
CORP., et al,**

       **Defendants.**

---

## ORDER

THIS CAUSE comes before the Court on the following Motions:

1.      Defendant Great White Fleet (US) Ltd.'s Motion to Dismiss (Dkt. #14);

2.      Defendant Port-to-Port International Corp.'s Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #11);

3.      Defendant Cartainer Ocean Line, Inc.'s Motion to Dismiss (Dkt. #21);

4.      Defendants' Barnett and Casey & Barnett LLC Motion to Dismiss Pursuant to Fed.R.Civ.P., Rule 12(B)(6) for Failure to State a Claim Upon Which Relief Can Be Granted (Dkt. #18); and

5.      Motion of Defendants, Barnett and Casey & Barnett, LLC, for Sanctions Pursuant to Fed.R.Civ.P., Rule 11 and the Court's Inherent Disciplinary Power (Dkt. #48).

**Exhibit
3**

53

The Court heard oral argument on June 25, 2003, in Tampa, Florida. Upon consideration, it is determined that this cause should be dismissed.

Plaintiffs Daniel Cabellos ("Cabellos") and Independence Shipping Lines, Ltd., Inc. ("ISL") bring this action asserting Racketeer Influenced and Corrupt Organizations Act ("RICO") claims for "investment injury, fraud and conspiracy" pursuant to 18 U.S.C. §1962(a) (Counts One and Two), 18 U.S.C. §1962(c) (Count Three), and 18 U.S.C. §1962(d) (Count Four). The predicate acts for the RICO claims are alleged to be the faxing of shipping contracts for review and signature, the faxing of other related messages, and the placing of telephone calls concerning the contracts.

## FACTUAL BACKGROUND

From April, 1997, through June, 2000, Cabellos at first in his individual and then in a corporate capacity, entered into a series of six contracts with Great White Fleet ("GWF") for the transportation of pre-owned vehicles from Wilmington, Delaware, to Guatemala, Honduras, and also to Costa Rica. The last five of the six contracts were between GWF and a company formed by Cabellos and for which he was the principal officer and shareholder: DSCV Transport, Inc. ("DSCV"). For reasons that will become apparent, DSCV is not a plaintiff in this action.

Cabellos asserts that GWF and the other Defendants "agreed among themselves to induce . . . Cabellos to develop a market, together with an extensive client list, for the transportation of pre-owned vehicles from Wilmington, Delaware, to Central America." To

induce Cabellos to develop this market and client list, "GWF falsely stated in service contracts with Cabellos and Cabellos' company, DSCV Transport, Inc., that (1) GWF would provide Cabellos with a certain number of empty containers per weekly sailing, (2) GWF would provide Cabellos with additional containers on a 'best efforts' basis, (3) Cabellos would be able to transport his clients' pre-owned vehicles to Guatemala, Honduras, and Costa Rica, and (4) as per the terms and conditions of . . . service contracts #3, #4, #5 and #6, Cabellos would be able to transport pre-owned vehicles from the New York/New Jersey area." (Complaint, ¶ 3).

"GWF never provided Cabellos with the number of containers required under the terms and conditions of the service contracts. GWF never allowed Cabellos to transport pre-owned vehicles from Wilmington, Delaware, to Costa Rica aboard its container ships as per the terms and conditions of its six service contracts. GWF never allowed Cabellos to transport pre-owned vehicles from the New York/New Jersey area to Central America as per the terms of service contract #3, #4, #5 and #6. . . . In fact, GWF and its fellow conspirators never intended to provide Cabellos with the above." (Complaint, ¶ 5).

Cabellos then claims, because of these misrepresentations, he was defrauded and DSCV, the company he founded, was systematically put out of business. "This fraudulent scheme continued for over two years, with GWF and its fellow Conspirators making repeated misrepresentations to Cabellos in regard to the terms and conditions of his service contracts. As part of this fraudulent scheme, GWF provided Cabellos's extensive client list to Port-to-

Port. Port-to-Port also fraudulently obtained an updated client list from former employees of Cabellos whom it had hired away from Cabellos. Port-to-Port and Cartainer were and are Cabellos's direct competitors and two of GWF's fellow Conspirators." (Complaint, ¶ 4).

The first act of wire fraud is found in paragraph 36 of the Complaint and is typical of the other alleged predicate acts. It asserts that on January 29, 1998, service contract #2 (between GWF and DSCV) "was faxed from GWF, in Ohio, to Cabellos, in Virginia, for Cabellos' review and signature. This faxed transmission was part of the conspirators' fraudulent scheme to induce Cabellos to continue to develop a market for the transportation of pre-owned vehicles aboard GWF's ships from Wilmington, Delaware to Guatemala, Honduras, and Costa Rica. . . . GWF falsely represented, with a specific intent to defraud, that: (a) it would supply the necessary number of empty containers to Cabellos; and (b) that Cabellos would be allowed to ship vehicles to Costa Rica aboard GWF's ships." While Cabellos asserts these representations were made to him, other allegations clarify that the "representations" were the acts to be performed by GWF under its contract with DSCV which is not a party to this action.

In an action previous to the case presently before this Court, GWF sued DSCV for failure to pay the freight bills due under these same contracts and DSCV counter-claimed. On April 16, 2002, the Court in that earlier action entered a final judgment in favor of GWF and dismissed DSCV's counter-claims with prejudice. (Complaint, ¶ 82-85). Plaintiffs assert the prior suit and a subsequent suit against ISL, Fraternidad Services Corp. and

Cabellos in this Court constitute a "protracted litigation scheme" in furtherance of the conspiracy to put Plaintiffs out of business. By representing GWF in those lawsuits, Plaintiffs assert that GWF's lawyer and his law firm have themselves furthered the RICO conspiracy and are thereby also liable as conspirators. (Complaint, ¶¶ 78-86).

## STANDARD OF REVIEW

At the motion to dismiss stage, the Court must view the complaint in a light most favorable to the plaintiff and construe all allegations in the complaint as true. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). A court may, however, dismiss a complaint on a dispositive issue of law. Marshall Cty Bd. of Educ. v. Marshall Cty Gas Dist., 992 F.2d 1171 (11th Cir.1993). Conclusory allegations "will not survive a motion to dismiss if not supported by facts constituting a legitimate claim for relief. . . However, the alleged facts need not be spelled out with exactitude, nor must recovery appear imminent." Quality Foods DeCentro America S.A. v. Latin Am. Agribusiness Dev. Corp., 711 F. 2d 989, 995 (11th Cir. 1983). A motion to dismiss is appropriate when it appears "beyond a reasonable doubt" that the Plaintiff can prove no set of facts to support his claim. Connelly v. Gibson, 355 U.S. 41, 45-46 (1957); South Florida Water Mgt. Dist. v. Montalvo, 84 F. 3d 402, 406 (11th Cir. 1996). Where a complaint alleges mail or wire fraud, the pleading requirements of Fed.R.Civ.P. 9(b) apply. McLaughlin v. Anderson, 962 F. 2d 187 (2d Cir. 1992).

## DISCUSSION

### *As to Great White Fleet*

Plaintiffs' shotgun attempt to convert previously litigated (and lost) claims into a RICO claim is unavailing. As to Defendant GWF, the so-called predicate acts are the faxing of contracts for review and execution by Cabellos as an officer of DSCV. The alleged fraud was directed at DSCV and is neither Cabellos' claim nor that of ISL, the two Plaintiffs in this action. If Cabellos individually claimed rights under these contracts, he is in no better position.

The Complaint asserts misrepresentations in the service contracts "induced" Cabellos to enter into contracts which were never intended to be performed by GWF. Thus, Cabellos is claiming he was fraudulently induced into entering the contracts. Fraudulent inducement would have been a defense and compulsory counter-claim in the earlier action for breach of those contracts.

Rule 13(a) of the Federal Rules of Civil Procedure provides, in relevant part:

A pleading shall state as a counter-claim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Plaintiffs cannot bring subsequent RICO claims arising out of transactions which were the subject of a suit on a debt in a previous action. See Fox v. Maulding, 112 F. 3d 453 (10th Cir. 1997); Puff 'N Stuff of Winter Park, Inc. v. Federal Trust Bank, 945 F. Supp. 1523

(M.D. Fla. 1996), *aff'd*, 129 F. 3d 616 (11th Cir. 1997).  Even though the earlier counter-claim did not include a claim for RICO violations, it did involve the same nucleus of operative facts.  When a case arises out of the same nucleus of operative facts as a former action, then the two cases are really the same cause of action for purposes of claim preclusion.  City Bank, N.A. v. Data Lease Finance Corp., 904 F. 2d 1498 (11th Cir. 1990); I. A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F. 2d 1541 (11th Cir. 1986).

Cabellos' attempt to avoid the compulsory counter-claim rule by bringing this suit in his individual name and that of his new corporation also fails.  Insofar as fraud involving the contracts is concerned, Cabellos and all other privies are bound by the preclusion of the compulsory counter-claim rule.

> When a court of competent jurisdiction has entered a final judgment on the merits of the cause of action, the parties to the suit and their privies are therefore bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter that might have been offered for that purpose.

Puff 'N Stuff, 945 F. Supp. at 1529, quoting Commissioner v. Sunnen, 333 U.S. 591, 597 (1948).

Further, the Complaint is deficient in that it does not state with particularity the specific misrepresentation alleged to have been relied upon.  The Court has not used this deficiency in dismissing the action, however, because such deficiency might be curable with leave to amend.  The preclusion by the compulsory counter-claim rule is not curable.  Therefore, the claim against GWF (Counts One, Three, and Four) should be dismissed with

prejudice. As to Plaintiff ISL, there is no RICO claim alleged. All of the so-called predicate acts are aimed at DSCV, not ISL.

### *As to Cartainer*

The claims against Cartainer also fail. The predicate acts are not even alleged to have involved Cartainer.[1] Notably, there is no allegation that Cartainer was involved in any way with the unauthorized use of DSCV's customer lists or the alleged efforts to steal its business. Additionally, from the face of the Complaint, the asserted claim against Cartainer is barred by the statute of limitations.

In paragraph 37, the Complaint alleges that in April, 1998, at a time when Cabellos was interested in expanding his operation into Costa Rica, he was advised by GWF that it had reserved the Costa Rican market for Cartainer. Subsequently, GWF entered into a contract with Cartainer to ship vehicles to Costa Rica at rates lower than those charged to DSCV. As a result of complaints from DSCV in August and September of 1998 about these lower rates, GWF entered into contract #3 with DSCV on September 2, 1998, which included the more favorable terms given to Cartainer. In November, 1998, Cabellos noticed a shortage in the number of containers that were available to him on GWF's ships. (Complaint, ¶ 45).

These facts are sufficient to trigger the running of the statute of limitations of four years. The statute of limitations begins to run from the date of discovery of the injury, not from the date that Plaintiffs realized the injury flowed from a pattern of racketeering activity.

---

[1] Perhaps this explains why Cartainer is not listed in any ad damnum clause of any Count.

Pacific Harbor Capital, Inc. v. Barnett Bank, N.A., 252 F. 3d 1246 (11th Cir. 2001). The statute of limitations would have run in August or September of 2002, well before the filing of this action on January 28, 2003.

Because no predicate acts are alleged against Cartainer and because the action is barred by the statute of limitations, the Complaint should be dismissed as to this Defendant. Since Plaintiff might successfully replead some cause of action against Cartainer, this dismissal should be without prejudice. Any such action, however, would not find proper venue in this Court. It appears that any acts of Cartainer would have taken place outside Florida.

### *As to Port-to-Port*

As to Port-to-Port, Plaintiffs allege that "as a part of this fraudulent scheme, GWF provided Cabellos' extensive client list to Port-to-Port. Port-to-Port also fraudulently obtained an updated client list from former employees of Cabellos whom it had hired away from Cabellos. Port-to-Port and Cartainer were and are Cabellos' direct competitors and two of GWF's fellow conspirators." (Complaint, ¶ 4). Other than general conclusory allegations that Port-to-Port was part of some overall conspiracy with GWF, there is no predicate act alleged against Port-to-Port. While these allegations may or may not state a cause of action for theft of trade secrets, this Court does not have personal jurisdiction over Port-to-Port to entertain the claim.

The Complaint clearly states that the acts committed by Port-to-Port occurred in Delaware. Port-to-Port is a Delaware corporation with its principal place of business located in New Castle, Delaware. It has never been a Florida corporation and has never done business in the State of Florida. Port-to-Port transports pre-owned vehicles from Wilmington, Delaware, to countries in Central America, including Costa Rica. Costa Rica requires that these vehicles be accompanied by certificates that assure compliance with Costa Rica's emission restrictions. These certificates must be authenticated by a consulate of Costa Rica. Port-to-Port sends these certificates for authentication by Costa Rica's consulate in Washington, D.C., or Miami, Florida. Additionally, some of the items shipped by Port-to-Port on common carriers have traveled through the State of Florida in route to its final destination in either Wilmington, Delaware, or Charlotte, North Carolina.

Port-to-Port has never shipped pre-owned vehicles or any other goods to the State of Florida. It has never appointed an agent to act for it or to accept service anywhere in the State of Florida, has never owned any real estate or personal property in the State of Florida, and has never maintained a telephone number, mailing address, bank account or business office anywhere in the State of Florida.

This Court's jurisdiction has been invoked by a claim of diversity. A federal court sitting in diversity may assert jurisdiction over a non-resident defendant only to the extent permitted by the long-arm statute of the forum state, and, then, only if the exercise of jurisdiction comports with the requirements of the due process clause of the Fourteenth

Amendment. <u>Sculptchair, Inc. v. Century Arts, Ltd.</u>, 94 F. 3d 623 (11th Cir. 1996). Neither requirement is met here. Port-to-Port has no activities in the State of Florida to bring it within Florida's long-arm statute to invoke jurisdiction in this Court. <u>Kellan v. Holster</u>, 518 F. Supp. 175 (M.D. Fla. 1981). And, there are insufficient "minimum contacts" with Florida to satisfy Fourteenth Amendment due process requirements. <u>Williams Electric Co., Inc. v. Honeywell, Inc., J.V.</u>, 854 F. 2d 389 (11th Cir. 1988).

Therefore, the Complaint should be dismissed as to Port-to-Port (Count Two) for lack of personal jurisdiction.

### *As to Barnett and Casey & Barnett, LLC*

There is no Count in the Complaint that actually seeks damages in its ad damnum clause against Barnett or Casey & Barnett, LLC. This deficiency is not used by this Court for dismissal since it would be subject to being cured by amendment. The remaining deficiencies cannot be cured.

Plaintiffs bring this action against Barnett individually and his law firm, Casey & Barnett, LLC, because Barnett represented GWF in a breach of contract action against DSCV for unpaid shipping bills and in a subsequent suit claiming ISL possesses assets wrongfully transferred to it by DSCV in fraud of creditors. In conclusory fashion, Plaintiffs describe this as "a scheme of protracted litigation" to force the dissolution of DSCV and other Cabellos-owned companies.

Plaintiffs' allegations do not support a RICO action against Barnett or his law firm. First, Plaintiffs' alleged predicate RICO acts are insufficient to establish that these Defendants participated in, or conspired with others to establish a pattern of racketeering activity. Second, "protracted litigation" is not a RICO violation. The remedy for protracted litigation is to seek sanctions in the litigation in which it occurs, not in a separate action unless the facts support an independent action for malicious prosecution. But, the tort of malicious prosecution is not an act of racketeering activity. Nowhere in the Complaint are there any two acts of racketeering activity specifically alleged to have been committed by or assented to by Barnett or his firm.

"Racketeering activity" is defined in 18 U.S.C. §1961(1). "A scheme of protracted litigation" is not listed as a prohibited activity in §1961. In a civil RICO case alleging wire fraud, the following elements must be proven: (1) that defendants knowingly devised or participated in a scheme to defraud plaintiffs; (2) that they did so willingly with an intent to defraud; and (3) that the defendants used the U. S. Mails or the interstate wires for the purpose of executing the scheme. Langford v. Rite-Aid of Alabama, Inc., 231 F. 3d 1308 (11th Cir. 2000). The conduct alleged to have been committed by Barnett and his law firm, the prosecution of two lawsuits to collect a debt, does not meet these requirements. Since protracted litigation is not racketeering activity, the RICO allegations in the Complaint fail as to Barnett and his law firm.

A review of the RICO statute reveals the lack of fit to the facts alleged here. 18 U.S.C. §1962(a) states in pertinent part:

> It shall be unlawful for any person who has received any income derived . . . from a pattern of racketeering activity . . . to use or invest . . . any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Plaintiffs fail to assert any specific acts or conduct by Barnett or his law firm that falls within the provisions of §1962(a). Plaintiffs do not assert that these Defendants received any income from a pattern of racketeering activity or that they used or invested such income. Section 1962(a) cannot be the basis of a RICO claim when the Complaint fails to specifically link the fraudulent activities of the Defendants to the use of income by them in the enterprise. Rose v. Bartle, 871 F. 2d 331 (3rd Cir. 1989).

18 U.S.C. §1962(b) states:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Defendant Barnett and his law firm are not alleged to have acquired or maintained "any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Therefore, this section does not apply to these Defendants.

Likewise, 18 U.S.C. §1962(c) does not apply to these Defendants. Section 1962(c) provides in pertinent part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate in the conduct of such enterprises affairs through a pattern of racketeering activity . . .

While the Complaint does state in conclusory fashion that Barnett formed "an association-in-fact enterprise" with the other co-Defendants for the purposes of defrauding the Plaintiffs and that Barnett conducted or participated in the conduct of the enterprise's affairs through a pattern of "racketeering activity," it does not set forth with any particularity how Barnett supposedly participated in the conduct of the affairs of GWF or any of the other co-Defendants. The only specific allegations concerning acts of Barnett were in his role as a lawyer in bringing the two lawsuits to obtain a judgment for unpaid shipping bills and to collect on the judgment once it was obtained. That is not participating "in the conduct of such enterprise's affairs through a pattern of racketeering activity" to come within the provisions of §1962(c). See Reves v. Ernst & Young, 507 U.S. 170, 113 S.Ct. 1163 (1993); Nolte v. IFC Leasing Corp., 994 F. 2d 1311 (8th Cir. 1993).

Reves held that civil RICO liability should not be extended to an outside accounting firm which had provided services for a RICO enterprise. Plaintiff attempts to overcome the impediment presented by Reves ("in order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." 113 S.Ct. at 1170) by citing United States v. Starrett, 55 F. 3d 1525 (11th Cir. 1995) for the proposition that the Reves' management and control test does not apply to a RICO

conspiracy claim. To the contrary, the holding in <u>Starrett</u> is the direct opposite of that claimed by Plaintiff.

<u>Starrett</u> was a criminal RICO prosecution against the South Florida Chapter of the Outlaws Motorcycle Club. There was a split in the Circuits as to whether <u>Reves</u>, which arose in a civil RICO context, even applied in a criminal RICO context. The Eleventh Circuit joined those Circuits that concluded that the <u>Reves</u> management test applied to criminal RICO cases as well as civil ones. It did, however, point out that <u>Reves</u> acknowledged that RICO liability was not limited to just upper management, but that an enterprise could be "operated" also by lower-rung participants in an enterprise under the direction of upper management. That is, RICO liability is not limited only to those with primary responsibility for the enterprise's affairs or with a formal position in the enterprise, "but *some* part in directing the enterprise's affairs is required." <u>Starrett</u>, 55 F. 3d at 1542, citing <u>Reves</u>, 113 S.Ct. at 1170. In the case presently before this Court, Barnett and his law firm merely acted as outside professionals handling legal matters at the request of GWF, the exact conduct which the U. S. Supreme Court in <u>Reves</u> held was outside the reach of the RICO statutes.

18 U.S.C. §1962(d) provides:

> It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

To be liable under this conspiracy section, a person or entity must be alleged to have knowingly joined in a scheme and been involved, directly or indirectly, in the commission of at least two predicate offenses. <u>Feinstein v. Resolution Trust Corp.</u>, 942 F. 2d 34 (1st Cir.

1991). The only acts alleged to have been joined in by Barnett and his law firm were: (1) a May 5, 2000, telephone conversation between GWF and Barnett in which GWF instructed Barnett to initiate legal action against DSCV (Complaint, ¶ 79); (2) on May 30, 2000, Barnett sent a complaint letter to the Federal Maritime Commission falsely stating that GWF had failed to pay for past due freight (Complaint, ¶ 81); and (3) on May 30, 2000, Barnett and his firm filed a complaint against DSCV Transport in federal court in New York, an improper venue (Complaint, ¶ 82). These acts are not wrongful under RICO, not the commission of a predicate act, and not sufficient to support a conspiracy action under §1962(d). <u>Beck v. Prupis</u>, 529 U.S. 494, 120 S.Ct. 1608 (2000). Since these Defendants have only participated in what is asserted to be protracted litigation, the RICO actions fail and the Complaint should be dismissed as to these Defendants.

### Motion of Defendants Barnett and Casey & Barnett LLC for Rule 11 Sanctions

Defendants Barnett and Casey & Barnett LLC have moved for sanctions pursuant to Fed.R.Civ.P., Rule 11, and the Court's inherent disciplinary power. In this regard, the Court is guided by <u>Pelletier v. Zweifel</u>, 921 F. 2d 1465 (11th Cir. 1991), a civil RICO action brought against a former attorney for a corporation and its former president. There, the Eleventh Circuit began its lengthy opinion by pointing out that Rule 11 "requires district courts to sanction attorneys and the parties they are representing when they prosecute baseless claims." (<u>Pelletier</u>, 921 F. 2d at 1469).

Plaintiffs' claims against Barnett and his law firm are baseless and directly contrary to the express language in <u>Reves</u> that outside professionals are not subject to RICO allegations unless they can be tied directly to the underlying predicate acts. Plaintiffs' attempt to circumvent <u>Reves</u> by alleging that Barnett is an "insider" with GWF has no bearing on whether Barnett engaged in or conducted the enterprise's affairs through a pattern of racketeering activity. Even if Barnett were an "insider" and GWF did commit RICO violations, this would not make Barnett and his law firm liable under the RICO statute. Every employee of a company liable under RICO is not automatically liable under RICO just because they are an employee. That is why a RICO plaintiff must plead predicate acts committed by each defendant with specificity.

The only actions alleged against Barnett and his law firm are: (1) a May 5, 2000, telephone call from Chris Schwartz of GWF to hire Barnett to initiate legal action against DSCV (not a plaintiff); (2) a May 30, 2000, complaint letter sent by Barnett to the Federal Maritime Commission in regards to the alleged non-payment of freight owed by DSCV; (3) the filing of a lawsuit on May 30, 2000, on behalf of GWF against DSCV in New York alleging that DSCV owed GWF approximately $415,000 in unpaid shipping bills; and (4) that Barnett and his firm filed a complaint on behalf of GWF on November 13, 2002, against Cabellos, ISL and Fraternidad Services Corporation before this Court in the Middle District of Florida alleging the improper transfer of assets out of DSCV.

None of these alleged acts are predicate acts sufficient to support a RICO claim. No reasonable attorney would think they would be. There are no allegations that these Defendants participated in any of the acts of alleged wire fraud. And, the predicate acts that are alleged were not directed to these Plaintiffs, but rather to DSCV which raised the same claims in a prior Counter-Claim only to have them dismissed with prejudice.

Further, in trying to circumvent the preclusive effect of the prior litigation, Plaintiffs have played fast and loose with the Courts. For example, compare Cabellos' statements in the Complaint before this Court with the statements made by his company, DSCV, in its opposition to GWF's motion for summary judgment filed before the Court in the Eastern District of Louisiana. (See Exhibit 13 attached to Barnett's memo in support of his motion for sanctions).

**Complaint ¶¶ 30, 35:** "On or about April 1, 1997, <u>Cabellos</u> entered into his first service contract with GWF. This service contract was entered into between <u>Cabellos</u> personally and GWF. ... On or about February 1, 1998, GWF entered into a second service contract with <u>Cabellos</u>. This second contract was executed between GWF and DSCV Transport, Inc. ..."

**DSCV Opp. page 1, ¶ 2:** "<u>DSCV</u> and GWF have executed four service contracts for the transportation of <u>DSCV's</u> vehicles since April 1997. The first contract was successfully completed by <u>DSCV</u>. The next contract (SC No. 98-100) was from February 1, 1998 through January 31, 1999.

**Complaint ¶¶ 34, 39:** "In or about January, 1998, Cartainer, a direct competitor of Cabellos, began to compete for Cabellos's customers. ... In or about July, 1998, GWF and Cartainer entered into a service contract that provided Cartainer with significantly lower rates than the rates that GWF had provided to Cabellos. In addition, these reduced rates were not only from Cartainer's Linden, NJ facility, but from Wilmington, Delaware, which is the site of Cabellos's main operational facility."

**DSCV Opp. page 2, ¶ 2:** "One of DSCV's primary competitors is a company named Cartainer, Inc. ... "In or about July 1998, GWF and Cartainer entered into a contract that provided significantly lower rates than those in DSCV's SC No. 98-110. These rates were not only from Cartainer's Linden facility, but from Wilmington, Delaware, the site of DSCV's main operational facility, ..."

**Complaint ¶ 42:** On or about September 2, 1998, Cabellos entered into a new service contract with GWF. This third service contract included the more favorable terms that Cartainer had been granted in its service contract with GWF. Cabellos did this by properly invoking the "me too" clause of the Shipping Act of 1984 and, as it was legally required to do, GWF provided DSCV Transport, Inc. with a service contract containing the same essential terms and conditions as the Cartainer contract."

**DSCV Opp. page 2, ¶ 2:** "Shortly thereafter, <u>DSCV</u> exercised its lawful right under the Shipping Act of 1984 to "me-too" the Cartainer service contract, and, as it was legally required to do, GWF provided DSCV with a service contract (SC No. 98-120) containing the same essential terms and conditions as the Cartainer contract."

The Court cannot imagine anything more chilling to the profession than the risk of becoming a defendant in RICO litigation merely for bringing a lawsuit at the request of a client. And, this Court is not the only one with such concerns. In <u>Pelletier</u>, the Eleventh Circuit said:

> At a time when the federal courts--which are a scarce dispute resolution resource, indeed--are straining under the pressure of an ever-increasing caseload, we simply cannot tolerate this type of litigation. Particularly with regard to civil RICO claims, plaintiffs must *stop and think* before filing them. If used correctly, the civil RICO provisions may have many salutary effects. When used improperly, as in this case, those provisions allow a complainant to shake down his opponent and, given the expense of defending a RICO charge, to extort a settlement. Such improper use of the civil RICO provisions comes at the expense of the federal judiciary and those who need ready access to the courts.

<u>Pelletier</u>, 921 F. 2d at 1522.

For the reasons stated above, the Court determines that Rule 11 sanctions are appropriate. The issues remaining are: (1) whether the sanctions should be applied against either the Plaintiff or his counsel, or both; and (2) the amount of the sanction. Ordinarily, the sanction is against the client unless the attorney has had the opportunity to investigate the

claim so that it is fair to charge the attorney as well for bringing a baseless claim. See Pelletier, 921 F. 2d 1465. Here, it appears the sanction should be entirely against the attorney that brought this action. A client ordinarily would not know the pleading requirements necessary to support a RICO action. The attorney should. Any reasonable attorney, given these facts, would know not to bring a RICO action against opposing counsel. The bringing of such an action can only be the result of a bad heart or an empty head. Either is grounds for sanctions. Lancellotti v. Fay, 909 F. 2d 15, 20 (1st Cir. 1990).

Therefore, for the reasons set forth above, it is

ORDERED AND ADJUDGED that:

1.    Defendant Great White Fleet (US) Ltd.'s Motion to Dismiss (Dkt. #14) is GRANTED with prejudice.

2.    Defendant Port-to-Port International Corp.'s Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #11) is GRANTED without prejudice.

3.    Defendant Cartainer Ocean Line, Inc.'s Motion to Dismiss (Dkt. #21) is GRANTED without prejudice.

4.    Defendants' Barnett and Casey & Barnett LLC Motion to Dismiss Pursuant to Fed.R.Civ.P., Rule 12(B)(6) for Failure to State a Claim Upon Which Relief Can Be Granted (Dkt. #18) is GRANTED with prejudice.

5.    Motion of Defendants, Barnett and Casey & Barnett, LLC, for Sanctions Pursuant to Fed.R.Civ.P., Rule 11 and the Court's Inherent Disciplinary Power (Dkt. #48)

is GRANTED. Barnett and Casey & Barnett, LLC, are directed to file an appropriate affidavit as to fees and costs incurred in this matter, together with supporting documentation, within thirty (30) days of the date of this Order. Plaintiffs shall have fifteen (15) days within which to respond.

      6.      The Clerk is directed to CLOSE this file and terminate all pending motions. Jurisdiction is reserved for the imposition of attorney's fees and costs.

      **DONE** and **ORDERED** in Tampa, Florida on this _22_ day of July, 2003.

                                    JAMES S. MOODY, JR.
                                    UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

F:\Docs\2003\03-cv-138 order.wpd

F I L E   C O P Y

Date Printed: 07/24/2003


Notice sent to:

____    Brian J. Donovan, Esq.
        Law Office of Brian J. Donovan
        P. O. Box 13272
        Tampa, FL  33681

        8:03-cv-00138    bls

____    Steven E. Siff, Esq.
        McDermott, Will & Emery
        201 S. Biscayne Blvd., Suite 2200
        Miami, FL  33131-4336

        8:03-cv-00138    bls

____    Bryan T. West, Esq.
        McDermott, Will & Emery
        201 S. Biscayne Blvd., Suite 2200
        Miami, FL  33131-4336

        8:03-cv-00138    bls

____    Michael Byrley Colgan, Esq.
        Glenn, Rasmussen, Fogarty & Hooker, PA
        100 S. Ashley Dr., Suite 1300
        P.O. Box 3333
        Tampa, FL  33601-3333

        8:03-cv-00138    bls

____    Lisa Norton Kellogg, Esq.
        Glenn, Rasmussen, Fogarty & Hooker, PA
        100 S. Ashley Dr., Suite 1300
        P.O. Box 3333
        Tampa, FL  33601-3333

        8:03-cv-00138    bls

____    Nathaniel G. W. Pieper, Esq.
        Lau, Lane, Pieper, Conley & McCreadie, P.A.
        100 S. Ashley Dr., Suite 1700
        P.O. Box 838
        Tampa, FL  33601-0838

        8:03-cv-00138    bls

____    Mary A. Lau, Esq.
        Lau, Lane, Pieper, Conley & McCreadie, P.A.
        100 S. Ashley Dr., Suite 1700
        P.O. Box 838
        Tampa, FL  33601-0838

8:03-cv-00138    bls

_____  Gregory G. Barnett, Esq.
       Casey & Barnett, LLC
       630 3rd Ave., 21st Floor
       New York, NY  10017

8:03-cv-00138    bls

_____  Martin Casey, Esq.
       Casey & Barnett, LLC
       630 3rd Ave., 21st Floor
       New York, NY  10017

8:03-cv-00138    bls

_____  Jacob J. Munch, Esq.
       Munch and Munch, P.A.
       324 S. Hyde Park Ave., Suite 206
       Tampa, FL  33606

8:03-cv-00138    bls

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DANIEL CABELLOS and
INDEPENDENCE SHIPPING LINES,
LTD., INC.,

      Plaintiffs,

v.                                  Case No. 8:03-cv-138-T-30TBM

GREAT WHITE FLEET (US) LTD.,
PORT-TO-PORT INTERNATIONAL
CORP., et al,

      Defendants.

---

## ORDER

THIS CAUSE comes before the Court upon the Motion to Reopen Case for the Purpose of Entry of a Judgment After Appeal (Dkt. 81). Upon review and consideration, it is ORDERED AND ADJUDGED that:

1.     The Motion to Reopen Case for the Purpose of Entry of a Judgment After Appeal (Dkt. 81) is **GRANTED in part and DENIED in part**.

2.     In accordance with this Court's Order dated December 5, 2003 (Dkt. 71), the Clerk is directed to enter judgment against Brian J. Donovan, Esq., and in favor of Casey & Barnett, LLC, in the total amount of **$18,082.00**.

3.     The Clerk is directed to enter judgment against Brian J. Donovan, Esq., and in favor Gregory G. Barnett and Casey & Barnett, LLC, in the total amount of **$2,030.00**.

4.     The Clerk is directed to enter judgment as referenced herein without reopening

this case.

**DONE** and **ORDERED** in Tampa, Florida on November 14, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>**Copies furnished to:**</u>
Counsel/Parties of Record

S:\Even\2003\03-cv-138.mt judgment.frm