# United States Court of Appeals
For the Eleventh Circuit

FILED
04 MAY 10 PM 12:35

No. 03-14268

District Court Docket No.
03-00138-CV-T-30TBM

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Feb 18, 2004
THOMAS K. KAHN
CLERK

DANIEL CABELLOS,
INDEPENDENCE SHIPPING LINES, LTD., INC.,

Plaintiffs-Appellants,

versus

GREAT WHITE FLEET (US) LTD.,
PORT-TO-PORT INTERNATIONAL CORP.,
CARTAINER OCEAN LINE, INC.,
GREGORY G. BARNETT, Esquire,
CASEY & BARNETT, LLC,

Defendants-Appellees.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit
By: _____
Deputy Clerk
Atlanta, Georgia

---

Appeal from the United States District Court
for the Middle District of Florida

---

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
MAY 0 6 2004
U.S. COURT OF APPEALS
ATLANTA, GA.

Entered: February 18, 2004
For the Court: Thomas K. Kahn, Clerk
By: Gilman, Nancy

**Exhibit 4**

75

FILED
[DO NOT PUBLISH]
04 MAY 10 PM 12: 35

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 18, 2004
THOMAS K. KAHN
CLERK

No. 03-14268
Non-Argument Calendar

D. C. Docket No. 03-00138-CV-T-30TBM

DANIEL CABELLOS,
INDEPENDENCE SHIPPING LINES, LTD., INC.,

Plaintiffs-Appellants,

versus

GREAT WHITE FLEET (US) LTD.,
PORT-TO-PORT INTERNATIONAL CORP., et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Florida

(February 18, 2004)

Before BLACK, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants, Daniel Cabellos ("Cabellos") and Independence Shipping Lines, Ltd., Inc. ("ISL"), appeal the district court's order dismissing their complaint for failure to state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, as to Defendants-Appellees Great White Fleet (US) Ltd., Inc. ("Great White"), Cartainer Ocean Line, Inc. ("Cartainer"), Gregory G. Barnett, Esq. ("Barnett"), and Casey & Barnett, LLC ("C&B"), and for lack of subject matter as to Defendant-Appellee Port-to-Port International Corp. ("PPIC"). Appellants also challenge the district court's order granting Barnett and C&B's motion for Fed. R. Civ. P. 11 sanctions.

We review de novo the dismissal of a complaint for failure to state a claim, accepting all allegations contained in the complaint as true and construing facts in a light most favorable to the plaintiff. See Harper v. Thomas, 988 F.2d 101, 103 (11th Cir. 1993). We also review de novo a district court's determinations regarding personal jurisdiction. See Francosteel Corp. v. M/V Charm, 19 F.3d 624, 626 (11th Cir. 1994). We review a district court's imposition of Rule 11 sanctions for abuse of discretion. See Jones v. Int'l Riding Helmets, Ltd., 49 F.3d 692, 694 (11th Cir. 1995).

Upon thorough review of the record, as well as careful consideration of the parties' briefs, we find no reversible error and affirm.

2

The district court summarized the relevant facts as follows. From April 1997 through June 2000, Cabellos executed a series of six contracts with Great White for the transportation of pre-owned vehicles from Wilmington, Delaware to Guatemala, Honduras, and Costa Rica. Cabellos entered the first contract in his individual capacity while the other contracts were between Great White and DSCV Transport, Inc. ("DSCV"), a company formed by Cabellos of which he was the principal shareholder and officer. In his complaint, Cabellos alleged that when he entered the contracts with Great White, Great White and the other defendants "agreed among themselves to induce . . . Cabellos to develop a market, together with an extensive client list, for the transportation of pre-owned vehicles from Wilmington, Delaware, to Central America."

Cabellos further alleged that Great White had misrepresented to him that it would provide a certain number of empty containers per weekly sailing and additional containers "on a 'best efforts' basis," that he would be able to transport his clients' pre-owned vehicles to Central America, and that he would be able to expand and transport vehicles from the New York/New Jersey area. According to the complaint, Great White did not provide the empty containers or additional containers and did not allow Cabellos to transport the vehicles. As to Defendant-PPIC, Cabellos alleged that Great White gave his client lists to PPIC, who was Cabellos's direct competitor, and

3

that PPIC hired Cabellos's former workers. Cabellos purported to state a RICO action based on the faxed transmissions of the contracts between him, in Virginia, and Great White, in Ohio.

The district court noted that in a previous action, in the United States District Court for the Eastern District of Louisiana, Great White had sued DSCV for failure to pay freight bills due under the same six contracts and that DSCV counterclaimed ("Louisiana Action"). DSCV's counterclaim in the Louisiana Action was based on the contracts between Great White and DSCV, the alleged preferential treatment accorded to Cartainer and PPIC, solicitation of DSCV's former customers, and DSCV's loss of customers to Cartainer and PPIC. In the Louisiana Action, the district court entered final judgment in favor of Great White and dismissed DSCV's counterclaims with prejudice. In the instant action, Cabellos claimed that the prior law suit was part of "a protracted litigation scheme" that furthered the RICO conspiracy, the goal of which was to put DSCV and Cabellos out of business. By representing Great White in the previous lawsuit, Cabellos alleged that Barnett and C&B were RICO co-conspirators.

The district court characterized the claims against Great White as a "shotgun attempt to convert previously litigated (and lost) claims into a RICO claim." Based on the complaint's allegations that Great White made fraudulent misrepresentations

4

in connection with the execution of its contracts with Cabellos and DSCV, the district court found that the claim was a compulsory counterclaim, under Fed. R. Civ. P. 13(a),[1] involving the same nucleus of operative facts, and that Cabellos, accordingly, was barred from asserting it in a later suit.

On appeal, Cabellos argues that his RICO claim against Great White is not barred by the compulsory-counterclaim rule because it arises out of a different set of facts.[2] From our review of Cabellos's complaint, it is clear that the RICO claims in this case <u>are</u> based on "the transaction or occurrence," within the meaning of Rule 13(a), that formed the basis of the Louisiana action: the series of contracts between DSCV and Great White. "For the purposes of Rule 13(a), '[t]ransaction is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.'" Alexander v. Fulton County, Ga., 207 F.3d 1303, 1323 (11th Cir. 2000) (quoting

---

[1] Rule 13(a) provides the following:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

[2] Carbellos also asserts, in conclusory fashion, that the RICO claim was not a compulsory counterclaim because it required the presence of third parties over whom the Louisiana district court could not have exercised jurisdiction. Because Carbellos offers no analysis or legal authority to guide our review, we decline to address his argument.

5

Moore v. New York Cotton Exch., 270 U.S. 593, 610, 46 S. Ct. 367, 371, 70 L. Ed. 750 (1926)).

A claim arises out of the same transaction or occurrence if there is a "logical relationship" between the claims. See Republic Health Corp. v. Lifemark Hosps. of Fla., Inc., 755 F.2d 1453, 1455 (11th Cir. 1985). In the Louisiana Action, Great White asserted claims based on DSCV's failure to pay amounts owing under the contracts. DSCV counterclaimed and asserted the same facts that Cabellos now utilizes as the factual basis for his RICO claims. We fail to see how the claims in this action, in which Cabellos attacks the same contracts as fraudulently induced and asserts that they form the basis of a RICO conspiracy, are not "logically related" to the Louisiana Action, within the broad meaning of Rule 13(a). Both claims undoubtedly arise out of the same nucleus of operative facts, i.e., the contractual relationship between DSCV and Great White, and accordingly the district court did not err by dismissing the complaint as to Great White on this basis.[3]

We are likewise unpersuaded by Cabellos's assertion that the district court erred by dismissing his action against Cartainer based on the expiration of the statute

---

[3] Because we conclude that the claim against Great White is barred by the compulsory-counterclaim rule, we need not and do not address his other arguments concerning the dismissal of the complaint as to Great White.

6

of limitations.[4] In the complaint, Cabellos predicated his claim against Cartainer on the execution of a contract between Cartainer and Great White sometime in the spring of 1998. Cabellos filed the complaint in this action in January 2003, which was beyond the four-year statute of limitations for a civil RICO action. See McCaleb v. A.O. Smith Corp., 200 F.3d 747, 750 (11th Cir. 2000) (holding that the statute of limitations for civil RICO actions is four years). "Under the injury discovery rule, unless tolled, the statute of limitations under RICO is four years from the date the plaintiff knew it was injured." Pacific Harbor Capital, Inc. v. Barnett Bank, N.A., 252 F.3d 1246, 1251 (11th Cir. 2001) (citing Rotella v. Wood, 528 U.S. 549, 552-53, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000)). According to the allegations in Cabellos's complaint, he knew about the contract between Great White and Cartainer as early as April 1998 when Great White advised him that it had reserved the Costa Rican market for Cartainer. And, our review of the complaint reveals that Cabellos knew he was injured, for purposes of the injury-discovery rule, no later than August or September 1998; in the complaint Cabellos states that he lodged complaints with Great White about its arrangements with Cartainer as early as August 1998. Regardless of when

---

[4] We hesitate even to address this issue, given Cabellos's unsupported assertion of this argument on which he has failed to provide legal authority or analysis.

in 1998 Cabellos discovered the Cartainer-Great White arrangement, his January 2003 complaint was not timely filed and his claim against Cartainer was time-barred.

Next, Cabellos argues that the district court erroneously dismissed the complaint as to PPIC for lack of jurisdiction.[5] Again, we disagree. The district court correctly stated the general principle that in a diversity action such as this one a district court may assert personal jurisdiction over a non-resident only to the extent permitted by the long-arm statute, and that the exercise of such jurisdiction must satisfy traditional notions of fair play and substantial justice under the Due Process Clause of Fourteenth Amendment. See Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996). Because PPIC has no activities in the state of Florida that would bring it within the long-arm statute, the district court did not err by dismissing the complaint as to PPIC.

Finally, Cabellos's RICO claim against Barnett and his law firm, based on Barnett's representation of Great White in the Louisiana Action is without any merit. The district court noted: "[n]owhere in the Complaint are there any acts of racketeering activity specifically alleged to have been committed by or assented to by Barnett or his firm." On this record, we agree that the prosecution of two lawsuits

---

[5] We only briefly address this issue since Cabellos does not support it with any legal authority to aid us in our analysis.

8

by Barnett or his firm." On this record, we agree that the prosecution of two lawsuits on behalf of his client, Great White, does not form the basis for a RICO action against Barnett and his law firm. Prior to sanctioning Cabellos for asserting RICO claims against Barnett and his firm, the district court characterized Cabellos's claims against these defendants as "baseless and directly contrary to the express language" of the Supreme Court's decision in Reves v. Ernst & Young, 507 U.S. 170, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993) (holding that civil RICO liability does not extend to an outside accounting firm which had provided accounting services to RICO enterprise but did not participate in the operation or management of the enterprise). The district court also observed that Cabellos, "trying to circumvent the preclusive effect of the prior litigation[,] . . . played fast and loose with the Courts" by recasting the claims in this case as his own claims, as opposed to the claims of DSCV, who was a party to the Louisiana Action's claims. On this record, we can find no abuse of the district court's discretion in its decision to impose Rule 11 sanctions in light of the baseless nature of the claims asserted against Barnett and C&B.

**AFFIRMED.**

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit
By: Deputy Clerk
Atlanta, Georgia

9