IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:   OIL SPILL BY THE OIL RIG       "DEEPWATER HORIZON" IN       THE GULF OF MEXICO, ON       APRIL 20, 2010 | * * * * * | MDL NO. 2179 SECTION J  JUDGE BARBIER  MAGISTRATE JUDGE CURRAULT |
| **This Document Relates To:** *John DeSilva, Individually, and as the Sole Member, Owner, and Operator of The Bird of Paradise, LLC v. BP Expl. & Prod., Inc., et al* Case No. 16-cv-05277 | * * * * | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
BP'S MOTION TO DISMISS FOR LACK OF STANDING**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, John R. DeSilva ("DeSilva"), individually and as the former sole member of The Bird of Paradise, LLC ("BOP" or "LLC"), who files this Memorandum in Opposition ("Memorandum") to defendants, BP Exploration & Production, Inc. and BP America Production Company's (collectively "BP"), Motion to Dismiss ("Motion"). Said Motion, albeit erroneously and belatedly, now asserts a lack of standing to continue prosecuting Mr. DeSilva's claim at issue (the "Claim"), and seeks to improperly conflate the LLC with its owner at the time the Claim, short-form joinder, opt out form, and ensuing lawsuits were filed and perfected by John R. DeSilva.

As more fully shown below, BP's Motion lacks legal and factual efficacy, and essentially seeks to employ a double standard regarding the "standing" issue. The Claim at issue was properly and timely asserted and perfected during the Claims process, without objection from BP; Mr. DeSilva timely filed a short-form joinder reflecting his personal SSN and other personal information; Mr. DeSilva properly opted out of that Claims Process (again, listing his personal SSN, driver's license, address and other personal information), without objection from BP; and he also properly and timely filed not one, but two separate lawsuits, again, without any initial objection from BP, until years later.

Thus, for the reasons set forth below, it is respectfully submitted that BP's Motion should be denied in its entirety, and that the Claim is valid and should be fully paid.

**I.     BACKGROUND and FACTS**

BP asks this Court to dismiss what it calls the "Action", which is a timely and well-supported Claim, and ensuing lawsuits after Mr. DeSilva opted out of the Claims process, for significant, multi-million dollar business economic losses occasioned by BP's fault.  BP's faulty reasoning is "the simple reason that the Plaintiff, John R. DeSilva, sold the business entity that owned the claim and, along with it, the right to maintain  this lawsuit." However, BP offers no proof that Mr. DeSilva ever sold the BOP LLC (as opposed to real estate that was owned solely by Mr. DeSilva in his own name and personal capacity).  Moreover, there is no proof that the BOP LLC ever owned any assets, including the real estate located at 2707 Pass-A-Grille Way ("Property"), which Mr. DeSilva operated as a vacation rental, and was in the process of converting the existing luxury resort to facilitate the Celebrity Guest and Charity Venue.  There is no evidence that the LLC ever owned the Claim, and even if it did, there is no evidence that the Claim was ever sold or transferred to Mr. MacDonald or anyone else.

BP begins its legal argument with this premise: "In an equity sale, the rights and liabilities of the entity being sold convey with the equity interest unless specifically excluded." Mot. at p.6.  The premise is faulty as the sale by Mr. DeSilva was not an equity sale, but rather a real property or asset sale.  *See* BP Motion, Exhibit "A", Contract between John R. DeSilva and Steven A. MacDonald, dated May 15, 2017.  Additionally, see the HUD Settlement Statement that reflects the property being conveyed as 2707 Pass-A-Grille Way for the consideration of $5,395,000.  *See Exhibit 1 of Penton Declaration, Exhibit A*.  The deed, recorded at OR Book 19702, Page 236 of

the Pinellas County Public Records, also reflects the sale price of $5,395,000.00 for the real property based on documentary stamps of $37,765.00 ($7.00 per $1,000 of value. *See Exhibit 2 of Penton Declaration, Exhibit A.* There was no sale of stock and no stock purchase agreement was executed, as there was never any stock issued to be sold or bought.

The record is also replete with evidence that Mr. DeSilva is the proper party to prosecute the lawsuit at issue. Mr. DeSilva, at all times, listed himself as a party-plaintiff, as the lawsuits were filed in his name "individually" as well as in his titular capacity as the sole member of BOP, LLC. Moreover, the short-form joinder document clearly lists Mr. DeSilva's personal social security number, xxx-xx-8841, and the BOP, LLC never filed a tax return.[1] Further, as evidenced by the affidavit of Mr. DeSilva's CPA, Mr. Tom Limroth, the BOP LLC was treated as a "disregarded entity" for federal tax purposes, as it was "only the business license holder for the related rental properties, and all "rental income and expense activities were reported on (Mr. DeSilva's) personal income tax returns, Schedule E of form 1040." *See Exhibit 3 of Penton Declaration, Exhibit A*. Even more compelling is the Opt Out Exclusion Election form, which also clearly evidences Mr. DeSilva's personal SSN, is devoid of any EIN for the LLC, contains Mr. DeSilva's personal driver's license number, personal address, and states "I wish to be excluded from the Economic & Property Damage Class." *See Exhibit 4 of Penton Declaration, Exhibit A*. Thus, it is abundantly clear that the claim, short-form joinder, opt out form and lawsuits (both the 2013 and 2016 complaints) all reference Mr. DeSilva individually and contain his personal SSN and other information. Conversely, the LLC never owned the business property located at 2707

---

[1] To the extent BP argues that Mr. DeSilva did not file an "individual claim" via the short-form joinder, that is merely a form over substance argument that the Court should, respectfully, disregard as a semantic anomaly, especially given that Mr. DeSilva's SSN is listed on said short-form, as is his personal address and other personal information that was correct at that time. Mr. DeSilva signed as Plaintiff on his PTO 65 Verified Statement.

Pass-A-Grille Way ("Property") which was damaged due to the Macondo oil spill, never owned any assets, never filed an LLC tax return, and neither the LLC nor Mr. DeSilva's BP claim were ever sold to Mr. Steven MacDonald[2] (or anyone else). In fact, Mr. MacDonald clearly admits that he never purchased Mr. DeSilva's BP Claim. *See Exhibit 5 of Penton Declaration, Exhibit A*. BP seeks to foist a canard upon this Court that the Claim (and ensuing lawsuits) was "owned" by BOP (and thus, was not DeSilva's personal asset), despite Mr. DeSilva's clear use of his personal SSN and other identifying information. Curiously, BP never challenged Mr. DeSilva's standing until approximately nine (9) years later. BP's flawed reasoning is nothing more than another delay tactic to avoid its responsibility to pay this significant Claim.

As the Court may recall, Mr. DeSilva's Claim is premised on the loss of financing[3] and bookings he suffered, after the April 2010 oil spill and subsequent invasion of the Tampa/St. Pete beaches with Macondo oil from said spill. Mr. DeSilva, at all relevant times, solely owned the water-front real estate located at 2707 Pass-A-Grille Way ("Property"), which he operated as a luxury resort, catering to celebrity golf events, and high-end vacation rentals. Mr. DeSilva had arranged and been approved for a multi-million dollar infusion of capital to finance improvements and renovations, again solely in his personal capacity and not in the name of the LLC, from investors who rescinded their loan commitment in the wake of the Macondo oil contamination. Specifically, the investors' concerns, and resulting withdrawal of financing, were the direct result of their perception of the negative impact of the Macondo oil contamination. Mr. DeSilva also lost a number of bookings, as cancellations due to the oil spill were rampant after April 2010.

---

[2] The fact that Mr. MacDonald's name appears in the Florida records as a member of the LLC is also of no moment, as Mr. MacDonald simply unilaterally listed himself as a member subsequently, in 2018. No proof of sale of the BOP, LLC is evident because the BOP, LLC was never sold.

[3] The financing at issue, like to short-form joinder and opt-out form, were in Mr. DeSilva's personal capacity, utilizing his personal SSN and was not in the LLC's name.

Without said financing and because of the cancellation of prior bookings due to the oil spill, Mr. DeSilva was unable to continue operations as planned, and eventually the Property had to be sold, in 2017 (at a significant loss) to Steven A. MacDonald ("MacDonald"). *BP Memo*, p. 4. The "resort license . . . to operate as a vacation rental property", *BP Memo*, pp. 2-3, was not transferred to Mr. MacDonald until in 2018. *Id.* Thus, at all relevant times, the financing and revenue that was lost due to the Macondo oil spill caused by BP's gross negligence was for, and in the name of, John R. DeSilva. Thus, Mr. DeSilva occasioned the timely and proper filing of the Claim, short-form joinder, opt out form and subsequent lawsuits, individually and as the sole member of BOP.

As such, there is no legitimate factual dispute that Mr. DeSilva timely filed his Claim, timely opted out of the settlement claim process, timely filed his short-form joinder, and timely filed his lawsuits, all to preserve and prosecute his claim for damages resulting from BP's fault. There is also no legitimate dispute that all of those actions by Mr. DeSilva, including the filing of this lawsuit, occurred well before the Property or operating license were acquired by Mr. MacDonald "in early 2018," and also occurred well before the Property was sold "[i]n 2017." *BP Memo,* p. 4.

There is also no legitimate reason why Mr. DeSilva's Claim should be dismissed simply because of a change in ownership of the LLC; a position that essentially seeks dismissal of an admittedly timely Claim and lawsuit simply by virtue of a change in ownership that occurred after standing was perfected. Put another way, regardless of subsequent actions, Mr. DeSilva's Claim and right to damages exists and is meritorious. It is therefore respectfully submitted that BP's Motion should be dismissed, in its entirety, and at BP's sole cost and expense.

## II.     LAW and ARGUMENT

BP's sole argument is that dismissal of Mr. DeSilva's timely asserted Claim, timely short-form joinder, timely opt out using Mr. DeSilva's personal SSN and other personal information, and timely lawsuits are mandated solely because Mr. DeSilva somehow lost standing **after** timely and properly perfecting his Claim, MDL joinder, opting out of the settlement class, and initiating his lawsuits. *BP Memo, passim.* However, BP offers no apposite authority to support its novel claim that standing is somehow lost or evaporates **after** the filing of a lawsuit (or Claim/joinder). BP also tacitly admits that the Mr. DeSilva's right to damages continues, regardless of whether Mr. DeSilva or Mr. MacDonald owned the LLC, when it asserts that "[p]laintiff has not amended his (sic) pleadings following the sale of the business (BOP) to indicate the new owner." *BP Memo*, p. 4. Simply put, BP is wrong.

### A.     Standing Is Determined As Of The Filing Of The Lawsuits

Whether analyzed under federal or state law, the result is the same: standing is determined as of the filing of a lawsuit, and not at some point thereafter, as BP would have this Court believe. The rule in the Federal 5th and 11th Circuits is virtually uniform and unequivocal. Article III standing is a jurisdictional prerequisite and if a party lacks standing to bring a claim, the Court lacks subject matter jurisdiction over the claim. Further, the party seeking to invoke federal jurisdiction bears the burden of showing that "standing existed at the time the lawsuit was filed." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Harding v. Edwards,* 484 F.Supp.3d 299, 308 (M.D. La. 2020). Standing is determined at the time the plaintiff files its complaint. *Arcia v. Fla. Sec'y of State,* 772 F.3d 1335, 1340 (11th Cir. 2014); *Coral Springs St. Sys., Inc. v. City of Sunrise,* 371 F.3d 1320,

1328 (11th Cir. 2004); *Cook v. Bennett*, (11th Cir. 2015).

State law is also consistent with controlling federal law. In Florida, "a party's standing is determined at the time the lawsuit was filed." *McLean v. JP Morgan Chase Bank Nat'l Ass'n,* 79 So.3d 170, 173 (Fla. 4th DCA 2012); *Elsman v. HSBC Bank USA,* 182 So.3d 770 (Fla. 5th DCA 2015); *May v. PHH Mortgage Corp.,* 150 So.3d 247, 248 (Fla. 2d DCA 2014). Further, "a party is not permitted to establish the right to maintain an action retroactively by acquiring standing after the case is filed." *McLean,* 79 So.3d at 173; *Marianna & B.R. Co. v. Maund*, 62 Fla. 538, 56 So. 670 (Fla. 1911).

Applying the controlling law to the uncontroverted facts yields the inescapable conclusion that Mr. DeSilva has proper standing. BP's entire Motion is premised on the argument that the LLC's composition changed from Mr. DeSilva to Mr. MacDonald at some point in 2018, well **after** suit was filed in 2013 and 2016. BP thus tacitly admits that standing was proper as of the filing of the lawsuits, and as such, their Motion should be denied.

**B.    BP's Reliance On Corporate Law Is Misplaced**

BP's argument that corporate law mandates that Mr. DeSilva somehow lost standing when the composition of the LLC changed in 2018 is a red herring, and misapplication of the law. First, from a purely logical standpoint, if the Claim was "owned" by the BOP LLC, which is denied, without waiver, then the LLC continues to own the Claim regardless of its composition, i.e., regardless of whether Mr. DeSilva or Mr. MacDonald was the sole member. Second, if BP is somehow correct, which again is denied, without waiver, that the pleadings need to be amended to reflect the new composition of the LLC, then it is respectfully submitted that leave to do so should be granted.

Third, the only entity that is claiming that the LLC "owns" the Claim is BP; both Mr. DeSilva and Mr. MacDonald consistently maintain that the Claim was never sold or transferred to Mr. MacDonald. *See Exhibit 5 of Penton Declaration, Exhibit A*.  The sale of the Property was undeniably individual to Mr. DeSilva and Mr. MacDonald, and the LLC never owned the Property, nor was the Property address, 2707 Pass-A-Grille Way, ever listed on the Claim, short-form joinder, opt out form, or other relevant documents.

Fourth, there is zero evidence that Mr. DeSilva ever sold or otherwise actively transferred the LLC to Mr. MacDonald (or anyone else).  BP offers no sales contract or other indicia of conveyance.  Rather, all BP can allude to is a Florida state record that purportedly reflects a change in the LLC's composition. The truth is that after selling the Property to Mr. MacDonald, which was owned solely by Mr. DeSilva and never by the LLC, Mr. DeSilva had no reason to continue filing annual reports for the LLC (which owned no assets and had no debts), and essentially abandoned it as unnecessary. Apparently, the composition of the LLC was thereafter changed, without the active involvement of, or even any knowledge by, Mr. DeSilva.

Fifth, this case does not involve a standard business entity transaction, be it corporate or as a limited liability company. This case is a matter involving predominantly federal admiralty law, with a claims process that was predicated on a liberal interpretation of claim presentment, a short-form joinder process, an opt out mechanism, and the right to file stand-alone lawsuits. As reflected on the Claim, short-form joinder document, opt out documents, Property sales documents and Mr. DeSilva's income tax process, Mr. DeSilva's personal SSN all related information was used exclusively, at each and every stage of the BP Settlement, joinder, opt out and litigation process. The BOP, LLC never filed a tax return, never owned any assets, was never sold, and was always

treated as a "disregarded entity" by Mr. DeSilva and his CPA. Rather than being an actual operating business, the LLC was more akin to a d/b/a for Mr. DeSilva. As such, the cases BP cites regarding stock sales and entity purchases are factually irrelevant and are inapposite.

Additionally, the damage Mr. DeSilva suffered due to BP's gross negligence resulted specifically from the Macondo oil contamination BP caused. The LLC never owned the Property at issue. Under Florida state law, damage to one's property is an individual right and claim that does not automatically transfer to a new owner upon sale of the real estate. *Siegel v. Whitaker*, 946 So.2d 1079, 1082-83 (Fla. 5th DCA 2006) (citing *Florida Power Corp. v. McNeely*, 125 So.2d 311, 318 (Fla. 2nd DCA 1960); *State Road Dep't v. Bender*, 2 So.2d 298, 300 (Fla. 1941). Again, BP has produced absolutely zero proof that Mr. DeSilva sold or otherwise transferred the Claim to Mr. MacDonald, either at the time of the sale of the Property, or at any time thereafter.

Moreover, it is clear that there was no "meeting of the minds" to create a valid contract of sale of the Claim, as both Mr. MacDonald and Mr. DeSilva clearly maintain that the Claim was not part of the real estate sale, was never sold or purchased as an asset, and was not owned by the LLC (despite BP's attempt to recharacterize the Claim as an LLC asset). BP's reliance on run-of-the-mill corporate law pertaining to equity sales simply does not pertain to the facts of this case.

Louisiana law provides the same result. Under Louisiana law, when property is damaged through the actions of another, the owner of the property obtains a personal right to demand that the tortfeasor repair the damage to the property. *See* La. Civ. Code art. 2315 ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."). Stemming from this premise, the "subsequent purchaser rule," holds that a subsequent owner of property has no right of action against a third-party for damage the third-party inflicted prior to the

subsequent owner's acquiring the property, absent an assignment or subrogation of the prior owner's personal right of action. *See Cotton Exchange Investment v. Xcel Air Conditioning*, 2019 WL 2142075, slip op at *3 (E.D. La., May 16, 2019); *Crooks v. La. Dep't Natural Resources,* 2017-750, pp. 31-32 (La. App. 3 Cir. 12/28/18), 263 So.3d 540, 562-63; *Catahoula Lake Invests., LLC v. Hunt Oil Co.*, 2017-649, p. 2 (La. App. 3 Cir. 1/10/18), 237 So.3d 585, 587. Essentially, because the damage was inflicted before the subsequent purchaser had any legal interest in the property, she did not sustain the injury, and therefore, has no personal right of action against the tortfeasor. *See Clark v. J.L. Warner & Co.*, 6 La. Ann. 408 (1851) ("[T]he reparation must be made to him who suffered the injury."). Thus, although "the purchaser of property is presumed to acquire all actions appurtenant to the property, and necessary to its perfect enjoyment, ... as to damages actually suffered by the vendor before the sale, they are personal to him, and cannot be recovered by the purchaser, without an express subrogation." *Payne v. James*, 7 So. 457, 458 (1890). This rule applies regardless of whether the damage is apparent at the time of sale. *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 2010-2267, p. 8–10 (La. 10/25/11), 79 So. 3d 246, 256–57. BP has provided no proof or cogent argument as to why Mr. DeSilva lacks standing, or conversely, why or how Mr. MacDonald allegedly came into possession of the Claim (which he did not, by his own express averment).

      **C.**      **BP Has Waived, And Should Be Estopped From Asserting, Dismissal**

BP should not be heard, at this eleventh hour, to claim that Mr. DeSilva lacks standing. Obviously, BP could have raised Mr. DeSilva's personal standing at any point during the past 8-9 years. However, BP did not contest standing during the claims process, when Mr. DeSilva filed a short-form joinder using his personal SSN, when Mr. DeSilva opted out using his personal SSN,

when Mr. DeSilva filed the first lawsuit in 2013, *inter alia* in his individual capacity, and again, not immediately when Mr. DeSilva filed suit, *inter alia* in his individual capacity, in 2016. BP did not challenge standing during the initial settlement discussions or mediation of the lawsuits. As such, BP should not be allowed to argue a lack of standing at this late stage of this dispute.

Florida has a long-standing public policy in favor of adjudication of disputes on the merits wherever possible." *Westgate Miami Beach, Ltd. v. Newport Operating Corp.,* 55 So.3d 567, 574 (Fla. 2010) (quoting *Westgate Miami Beach, Ltd. v. Newport Operating Corp.*, 16 So.3d 855, 860 (Fla. Dist. Ct. App. 2009) (Cope, J., concurring)).

The elements of the common law doctrine of equitable estoppel are: (1) good faith reliance; (2) on some act or omission; and (3) a substantial change in position or the incurring of excessive obligations and expenses so that it would be highly inequitable and unjust to destroy the right a party acquired. *Franklin County v. Leisure Properties, Ltd.,* 430 So.2d 479 (Fla. 1st DCA), *pet. rev. denied,* 440 So.2d 352 (Fla.1983).  BP's last-ditch effort to avoid paying this claim would destroy Mr. DeSilva's long-asserted right to just compensation for the damage suffered due to the Macondo oil contamination. Judicial estoppel also bars BP's standing argument, as Mr. DeSilva has shown the requisite four elements, which are: 1) a claim or position successfully maintained in a former action or judicial proceeding; 2) that bars a party from making a completely inconsistent claim or taking a clearly conflicting position in a subsequent action or judicial proceeding; 3) which prejudices the adverse party; and 4) when the parties are the same in both actions. *Salazar-Abreu v. Walt Disney Parks and Resorts U.S., Inc.*, 277 So. 3d 629, 631 (Fla. 5th DCA  2018)  (quoting *Landmark Funding, Inc. ex rel. Naples  Syndications, LLC v. Chaluts*, 213

So.3d 1078, 1080 (Fla. 2d DCA 2017)). That is exactly what BP has done throughout the claims process and during the prior litigation.

### D. Mr. DeSilva Did Opt Out And Did File Suit Individually

As shown above, Mr. DeSilva did indeed opt out of the claims phase of the litigation and did pursue redress individually. All relevant documents, including the short-form joinder and the Opt Out Form, use Mr. DeSilva's personal SSN and his personal address and other information. In fact, the opt out language is specifically in the first person and uses the term "I" when discussing opt out. Conversely, the BOP LLC's EIN does not appear anywhere on said documents. The lawsuit at issue clearly states that it is being brought by Mr. DeSilva "individually", as well as o/b/o BOP LLC. Any argument that Mr. DeSilva did not prosecute the Claim in his personal capacity simply lacks any factual (or legal) efficacy. BP's Motion should be denied for these reasons as well.

### III. CONCLUSION

In sum, for the reasons set forth above, it is respectfully submitted that BP's Motion should be denied, in its entirety, and at BP's sole cost and expense. BP has provided absolutely no proof that Mr. DeSilva ever sold the Claim at issue, let alone any proof that the Claim was sold to Mr. MacDonald. Likewise, the BOP, LLC never owned the Property at issue, and the Property was not sold to Mr. MacDonald with an assignment of the Claim. In fact, the BOP LLC was never sold by Mr. DeSilva, and Mr. MacDonald specifically averred that he did not intend to, nor did he actually, buy the Claim, either when he bought the Property or thereafter. To the contrary, Mr. DeSilva, always used his personal SSN and other information when pursuing the Claim, using a short-form joinder, opting out of the settlement process, or filing lawsuits. As such, as of the time

the lawsuits were filed, only Mr. DeSilva had standing.  BP's Motion should thus be denied.

        THE PENTON LAW FIRM
        209 HOPPEN PLACE
        BOGALUSA, LOUISIANA 70427
        PHONE:      985-732-5651
        EMAIL:       fedcourtmail@thepentonlawfirm.com

        /s/ Ronnie G. Penton
        Ronnie G. Penton
        Trial Counsel for Plaintiff, *John DeSilva, Individually, and*
        *as the Sole Member, Owner, and Operator of*
        *The Bird of Paradise, LLC*
        Louisiana Bar Roll Number 10462

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Plaintiff's Memorandum in Opposition to BP's Motion to Dismiss for Lack of Standing* has been served on all Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electric filing, in accordance with the procedures established in MDL 2179, on this the 23rd day of February, 2021.

        /s/ Ronnie G. Penton
        Ronnie G. Penton