IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

In Re:

DAVID A. STEWART and
TERRY P. STEWART,

Debtors.

Case No. 15-12215-JDL

Chapter 7 (Jointly Administered)

**RUSTON C. WELCH AND WELCH LAW FIRM, P.C.'S RESPONSES TO
CREDITOR SE PROPERTY HOLDINGS, LLC'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

COMES NOW Ruston C. Welch ("Welch") and Welch Law Firm, P.C. ("WLF" and
collectively with Welch, the "Welch Parties"), and by way of response to SE Property Holdings,
LLC's First Set of Interrogatories and Requests for Production of Documents, state as follows:

**GENERAL OBJECTIONS**

(a)     Welch Parties object to each discovery request to the extent that it seeks any
documents prepared in anticipation of litigation or for trial or which are otherwise covered by
attorney work-product privilege or subject to or falls within the scope of the attorney/client
privilege and will not produce information or documents protected from discovery by virtue of
any such privileges.

(b)     Welch Parties object to each discovery request to the extent that it seeks any
document containing confidential, sensitive and/or proprietary information and will not produce
such documents.

(c)     Welch Parties object to each discovery request to the extent that it pertains to, or
is inclusive of, entities other than the Welch Parties, including present or former affiliates or
agents whom are not parties to this litigation.  The answers set forth herein are those of the
Welch Parties alone.

{00079878-4}

EXHIBIT
F

EXHIBIT
A

(d)      Welch Parties object to each discovery request to the extent that production of "all documents," "referring to," "relating to," or "concerning" the subject matter as being beyond the scope of this contested matter.  Such requests are overly broad, indefinite and consequently unduly burdensome or oppressive since they cover a potentially vast number of documents, many of which are confidential, irrelevant or not reasonably calculated to lead to the discovery of admissible evidence.  In response to such requests, Welch Parties will produce documents otherwise producible or which are relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

(e)      Welch Parties object to each discovery request to the extent that it may be interpreted to be unlimited or not properly limited in time.  Defendant's answers to these requests will be limited to documents created over a period of time relevant to the contested matter herein.

(f)      Welch Parties object to each discovery request to the extent that it seeks documents not under Welch Parties' control.

(g)      Welch Parties object to each request to the extent that it states or seeks a legal conclusion.

Each of the foregoing general objections is incorporated by reference into the following specific responses/objections.

The Welch Parties hereby disclose the unavailability of certain records, documents, and emails for the time period from approximately September 30, 2016 to January 30, 2017.  The loss of records was the result of a ransomware attack on the WLF server in October 2016 and the steps required to restore and recover the files and records.

## INTERROGATORIES

**INTERROGATORY NO. 1:**     Identify each specific factor the Welch Parties contend constitutes a basis for an order imposing less than the default sanction of full disgorgement in this matter.

## RESPONSE TO INTERROGATORY NO. 1:

### LEGAL STANDARD

It is the Welch Parties' position that the bankruptcy court in the original order effectively followed the 10th Circuit's direction to start with a presumption of full disgorgement but with proper justification, mitigating circumstances could be considered. The 10th Circuit provided no legal standard. This Court should at least consider.

> (1) the attorney's experience level in the subject area of practice, (2) the attorney's willfulness or recklessness, (3) whether the violation is a mere technical violation, (4) the attorney's level of cooperation with parties in interest to rectify the noncompliance, (5) the reason for the noncompliance, (6) harm to the estate and mitigation of any harm, (7) prior instances of noncompliance and the circumstances surrounding those instances, (8) the promptness of any cure of the subject noncompliance, (9) steps taken by the attorney to prevent similar conduct in the future, (10) the excessiveness of compensation and expenses charged by the attorney, and – although alone the means cannot justify the ends – (11) results obtained for the estate and (12) whether the attorney is operating under a reduced fee agreement or other concession.

### FACTUAL CONSIDERATION

1.      Circumstances of engagement

2.      Welch experience in bankruptcy

    2.1.     Primarily Creditor representation in Chapter 11 including:

USBC CD CAL:

| | | |
|---|---|---|
| LA 91-12265-WL | Bel Air Sepulveda No. 44 | 1/16/92 |
| LA 92-12996-WL | L.A. Olympic No. 27 | 1/30/92 |
| LA-91-82659-GM | Kenneth S. and Marie Hayashi | 5/11/92 |
| ND-92-70639-RR | 625 Montana | 7/24/92 |
| LA-93-25497-RA | Calamigos Ranch Corporation | 5/03/93 |
| LA 93-34507-RA | Malibu Conference Center | 7/09/93 |
| LA94-49091-GM | Westlake-Village Green Associates | 4/26/95 |
| LA95-22635-AA | Conversion Industries, Inc. | 6/22/95 |
| LA94-11730-AA | American Blood Institute, Inc., et al. (Jointly Administered) | 6/22/95 |

| SA95-18647-JB | Statordyne Corporation | 9/08/95 |
| LA 96-23683-SB | Enviropur West Corporation | 5/07/96 |

| USBC N.D. ILL 96-B-16783 | Enviropur Waste Refining and Technology, Inc. | 7/05/96 |
| USBC COL 94-13896-SBB | Sigman Meat Company, Inc., et al. (Jointly Administered) | |

| USBC ND OKLA 98-01114-M 98-ap-00223-M | In re Jean Ruth Waters | 07/30/98 |

| USBC WD OKLA | See attached Pacer List | Misc. |

2.2.    Associate representation of debtor in Chapter 11s

| USBC CD CAL LA95-10345-VZ | Jason Kyu Cho | 2/09/95 |

2.3.    Debtor representation in Chapter 11 as primary counsel

2.3.1    In re: Brookshire Place, LLC, USBC WD OKLA, Case No. 11-BK-10717-TMW

2.3.2    In re: Southern Oaks of Oklahoma, LLC, USBC WD OKLA, Case No. 12-BK-10356-TMW

2.4.    Employee of Chapter 11 / Chapter 7 debtor

2.4.1    Southern Medical Arts Companies et al., 00-18635

2.5.    Representation of Trustee

2.5.1    Capstone Oil & Gas, Inc. 05-18528, numerous adversaries

2.5.2    Southern Medical Arts Companies et al., 00-18635

2.6.    Representation of Unsecured Creditors Committee

2.6.1    In re Macco Properties, 10-16682.

2.7.    To the best of his memory and after search of available records, prior to Stewart, Welch never represented a Chapter 7 debtor as bankruptcy counsel.

3.    Very valuable services rendered to the estate.

4.    Neither debtors nor bankruptcy estate harmed, but estate was significantly improved by and benefited as a result of Welch's work and services. Welch's work enabled Trustee and SEPH to get access to documents and information which otherwise would not have been disclosed due to lack of representation. Welch's work and representation was key to global resolution of case, except discharge action, and favorable recovery to bankruptcy estate for creditors.

5.     The Welch Parties continued in the debtors' and related defendants representation after complying with the disclosure requirement, albeit untimely, despite SEPH's motion for disgorgement and at substantial risk to the Welch Parties, for the benefit of the debtors, defendants and the estate which resulted in the approved compromise motion.

6.     Welch has not had any prior or subsequent non-compliance with required disclosures.

7.     Funds paid were not property of this estate and neither this estate nor the debtors was harmed by the lack of disclosure or payments.

8.     WLF earned contingency fees in the BP matters not in connection with the bankruptcy but applied such fees to reduce the fees and costs incurred in connection with this bankruptcy. Welch Parties thought they were treating the bankruptcy estates and debtors fair and equitably in the application of the non-debtor contingency fees. The Welch Parties did not consider or understand the gratuitous application of fees earned outside of bankruptcy from non-debtors would trigger disclosure requirements, but understand from the bankruptcy court's Order that to be the case. Welch Parties have and continue to abide by the full disclosure that they believe the court expects. The BP claims' settlements are subject to a sealed Confidentiality Order in the BP Oil Spill case in the USDC for the Eastern District of Louisiana, Case No. MDL-2179 ("Confidentiality Order"). This confidentiality was constantly considered throughout and questioned ability to disclose.

9.     Welch has not had any disciplinary action or reprimand by any court, tribunal or association in 31 years of practice, other than in this case.

10.     SEPH has sought the recovery of the same funds directly through fraudulent transfer and other actions in three different states against the Welch Parties, as well as Neverve in Florida. Those claims are likely to be determined before this disgorgement contested matter.  If SEPH recovers funds or obtains judgment for fraudulent transfer, then disgorgement is at least partially mooted because the Welch Parties cannot be required to pay the funds twice.

11.     Any order of disgorgement will by statute be payable to the third party and non-debtor payor from which the funds were obtained. This estate will receive no economic benefit from a disgorgement.

12.     Once the disclosure mistake was brought to the Welch Parties, they promptly made full accounting which this Court approved and thereafter have continued to make full and complete accounting and disclosures.

13.     The Bankruptcy Court has publicly reprimanded Welch in open court and in the published opinion. The BAP and Tenth Circuit published decisions have equally chastised and criticized Welch's mistake.

14.     Ability to pay disgorgement / sanctions.  The Welch Parties do not have the ability to pay the disgorgement, whether approximately $523,000 (all payments received), $348,404.41 (amount of the disgorgement motion), $275,572.27 (Neverve BP proceeds), $144,591.85 (all BP contingency fees) or any substantial amount.

15.    The financial impact of the representation of the Stewarts, the disgorgement proceedings, appeals and fraudulent transfer litigation in three states has led Welch to probable personal bankruptcy and dissolution and winding down of WLF.

**INTERROGATORY NO. 2:**      Identify each instance in which Welch was orally or in writing admonished, chastened, reprimanded, or sanctioned by a court or other judicial tribunal or governmental entity (including the Oklahoma Bar Association) for conduct related to or arising out of the practice of law and/or provision of legal services.  For each instance, state the admonishment, chastisement, reprimand, or sanction, the date thereof, a description of your actions or conduct which resulted in the admonishment, chastisement, reprimand, or sanction, and the name of the court, tribunal, or entity.

**RESPONSE TO INTERROGATORY NO. 2:**  None, other than the subject contested matter before this Bankruptcy Court, as appealed to the Tenth Circuit BAP and Tenth Circuit.

**INTERROGATORY NO. 3**:      State the agreement, beginning in June 2015 and in any subsequent modifications thereof, between the Welch Parties and Stewart and T. Stewart, regarding the Welch Parties' compensation for legal services to the Debtors in this bankruptcy proceeding, including the expected or planned sources of said compensation, the hourly rates or flat fees, the invoicing schedule, and payment terms (including the date when payment was due after invoicing).

**RESPONSE TO INTERROGATORY NO. 3**:   See, June 2015 Representation Agreement, [Doc. # 522-3]. At that time, no specific compensation source was identified. I hoped post-petition income from the debtors would be used. See, Representation Agreement, [Doc. # 522-4] ("Affiliate Representation Agreement"). By that time, the expanded scope of claims against related parties and affiliates required expanding the representation and warranted guaranties by affiliates. The intended source was then Debtors or affiliates other than property of this estate.

{00079878-4}                                    6

**INTERROGATORY NO. 4:**     State the date(s) when the Welch Parties began providing legal services to or on behalf of each of the following entities with respective to their BP claims and/or settlements, pursuant to a purported fee sharing agreement or otherwise, including the "Fee Sharing Agreement" dated April 19, 2016 and signed by Welch on behalf of WLF and by Steve Martino on behalf of Taylor Martino: Neverve, Shimmering Sands, S&S, and Zeke's Lady.

**RESPONSE TO INTERROGATORY NO. 4**:  June 2015.

**INTERROGATORY NO. 5:**     State why the Welch Parties did not inform the Trustee, SEPH, or the Bankruptcy Court in August 2016 that the Welch Parties had received Neverve's and/or Shimmering Sands' BP monies and why the Welch Parties did not turn said BP monies over to either the Trustee as property of the estate or SEPH based on its security interest therein.

**RESPONSE TO INTERROGATORY NO. 5**:  Prior discussions with Doug Gould as case trustee in the jointly administered cases lead WLF and Welch to believe that the bankruptcy estate claimed no interest in the BP opt-out claim proceeds recovered on behalf of Neverve or Shimmering Sands.  The opt-out settlements were subject to the Confidentiality Order.  The opt-out settlements were not property of this estate.  SEPH has no security interest in these funds.

**INTERROGATORY NO. 6:**     For each of the following entities, state the number of hours (separately for each entity and in total) of legal services the Welch Parties provided to or on behalf of each entity regarding the entity's BP claims and settlements, pursuant to purported a fee sharing agreement including the "Fee Sharing Agreement" dated April 19, 2016 and signed by Welch on behalf of WLF and by Steve Martino on behalf of Taylor Martino: Neverve, Shimmering Sands, S&S, and Zeke's Lady.

**RESPONSE TO INTERROGATORY NO. 6**: The Welch Parties are unable to specifically separate this time between identified claims together with other Stewart related BP opt out claims handled substantially simultaneously. A good faith estimate of the total time was approximately 93 hours. The time to understand the procedures and negotiations of the form of settlement agreements were overlapping but the damages and providing supporting documentation for each were unique. The Welch Parties respectfully show the Court that the Shimmering Sands BP settlement proceeds and the reasonableness of any of the BP contingency fees are beyond the scope of this disgorgement action and therefore object to that part of the Interrogatory and can file a motion for a protective order if necessary.

**INTERROGATORY NO. 7**: Identify each bankruptcy case in which you have represented the debtor, from 2005 through 2017. For each case identified, state the name of the debtor you represented, the case name (if different from the debtor), the case number, the bankruptcy court in which the case was pending, and whether you filed compensation disclosure statements therein.

**RESPONSE TO INTERROGATORY NO. 7**: The Stewart bankruptcies and subsequent P & P Acquisitions, LLC are the only Chapter 7 bankruptcies Welch has handled representing the Debtor. Welch has represented the Chapter 11 debtors in the following cases:

In re: Brookshire Place, LLC, USBC WD OKLA, Case No. 11-BK-10717-TMW.

In re: Southern Oaks of Oklahoma, LLC, USBC WD OKLA, Case No. 12-BK-10356-TMW.

**INTERROGATORY NO. 8:** Identify the Welch Parties' IOLTA account into which Neverve's, Shimmering Sands', S&S', and Zeke's Lady's BP monies were wired, transferred, distributed, remitted, held, or otherwise deposited upon the Welch Parties' receipt of same from Taylor Martino, and each account in which Welch or WLF subsequently wired, transferred,

distributed, remitted, held, or otherwise deposited said monies, stating the date(s) the Welch

Parties received the monies, the date(s) the Welch Parties distributed or transferred the monies,

the reason they are/were holding the funds, and, if they no longer have the funds, the person to

whom the funds were disbursed or transferred and the reason(s) for the disbursement or transfer.

For each such account, state:  the account number, the name of the financial institution, the

branch of the financial institution, the address of the financial institution, and the name, address,

date of birth, and social security number/taxpayer identification number/employer identification

number of the account holder(s).

**RESPONSE TO INTERROGATORY NO. 8**: No BP monies were ever transferred

from WLF's IOLTA account to Welch. During the time in question, WLF had one IOLTA trust

account at Bank of America with the last four numbers 8929 into which the BP funds were

received and disbursed.   The details of the flow of funds and supporting information has

previously been provided in this case including [Docs #461, #464, #522, #579, #585 and #598].

The dates, amounts and payee of payments from the WLF IOLTA has also been previously

produced to SEPH and is restated below:

| Date | Description | Amount |
|------|-------------|--------|
| 8/3/2016 | Payment to WLF | ($5,940.00) |
| 8/3/2016 | Payment to WLF | ($14,010.00) |
| 8/4/2016 | Payment to WLF | ($42,915.00) |
| 9/15/2016 | Payment to WLF | ($16,570.32) |
| 9/22/2016 | Payment to WLF | ($10,000.00) |
| 9/23/2016 | Payment to WLF | ($5,000.00) |
| 9/29/2016 | Payment to WLF | ($15,000.00) |
| 10/12/2016 | Payment to WLF | ($4,507.96) |
| 10/31/2016 | Payment to WLF | ($15,000.00) |
| 11/9/2016 | Check 1112 to Dodson Ct Rpt | ($782.85) |
| 11/15/2016 | Payment to WLF | ($5,000.00) |
| 11/25/2016 | Payment to WLF | ($10,000.00) |
| 11/29/2016 | Payment to WLF | ($10,000.00) |
| 12/7/2016 | Payment to WLF | ($10,000.00) |

| 12/29/2016 | Payment to WLF | ($15,000.00) |
| 2/24/2017 | Payment to WLF | ($13,000.00) |
| 4/24/2017 | Payment to WLF | ($15,000.00) |
| 5/1/2017 | Payment to WLF | ($10,000.00) |
| 5/2/2017 | Payment to WLF | ($5,000.00) |
| 5/16/2017 | Payment to WLF | ($5,000.00) |
| 5/23/2017 | Payment to WLF | ($10,000.00) |
| 5/31/2017 | Payment to WLF | ($10,000.00) |
| 6/9/2017 | Payment to WLF | ($5,000.00) |
| 6/19/2017 | Payment to WLF | ($3,000.00) |
| 7/24/2017 | Payment to WLF | ($5,000.00) |
| 7/31/2017 | Payment to WLF | ($15,000.00) |
| 8/17/2017 | Payment to WLF | ($5,000.00) |
| 9/13/2017 | Payment to WLF | ($68,461.13) |
| 10/5/2017 | Check 1134 to J. Ring, Ct Rpt | ($1,089.90) |
| 5/3/2018 | Payment to WLF | ($44,742.26) |
| 6/29/2018 | Payment to WLF | ($25,109.70) |

Funds paid out of the WLF IOLTA to WLF were electronically transferred to WLF's Operating Account at Bank of America with the last four numbers 1690. Funds paid out of the WLF IOLTA directly to court reporters were by Trust account checks identified above.

**INTERROGATORY NO. 9**:  Identify each act or communication with, on behalf of, or at the direction of Neverve and/or Shimmering Sands by the Welch Parties, from April 1, 2015 through the present.

**RESPONSE TO INTERROGATORY NO. 9**:  It is not possible to identify each "act" or "communication" on behalf of, or at the direction of David Stewart as a debtor and also as a manager of Neverve and Shimmering Sands.  The case trustee expressly declined to assume any management role in either of these entities.  Through the five years the Welch Parties have dealt with David Stewart, there were thousands of "acts" and "communications" on numerous topics including numerous affiliated entities, including Neverve and Shimmering Sands.  More often than not one "communication" would address numerous topics and entities. At all times, David Stewart wore many hats, personally and as manager of numerous entities. The topics and

entities discussed involved his role in each of those entities. To the extent Stewart's representation spent time on numerous entities, the time was captured and billed together as an administrative convenience and separate and split billing would have been extremely difficult and result in multiples of the amount of time incurred. The dates of most, but certainly not all, communications are documented in the time records in [Docs #522-5 and #585-1 and subsequent invoices to which any payment was applied will be produced.

The substance of the communications are subject to a claim of attorney client privilege which has not been waived. In addition, all aspects of the BP claims settlement process are subject to the Confidentiality Order. There have been numerous hearings in which evidence has been admitted dealing with Neverve or Shimmering Sands legal rights.  Those acts are reflected in the multiple transcripts and are equally available to all parties.  No claim of privilege is made as to those acts.   Beyond that description, the Welch Parties are unable to answer this Interrogatory more specifically.   The Welch Parties respectfully show the Court that the Shimmering Sands BP settlement proceeds are beyond the scope of this disgorgement action, and therefore object to that part of the Interrogatory.

Pursuant to an agreement with SEPH and without generally waiving the attorney client communication and work product privileges, the Welch Parties are willing to produce the emails addressing the asserted claims of SEPH in the BP claims of ZLM Acquisitions, LLC, Zeke's Landing Marina, LLC, Zeke's Lady, LLC, S&S, LLC, Neverve, LLC and Shimmering Sands Development Company, LLC, subject to satisfactory lifting of the Confidentiality Order.

**INTERROGATORY NO. 10:**  Identify each act and/or communication with, or on behalf of, or at the direction of, the following entities by the Welch Parties, related to the settlement of those entities' BP claims and/or to the transfer, distribution, and/or payment of

those entities' BP monies to the Welch Parties or any other person, from April 1, 2015 through the present: Neverve, Shimmering Sands, S&S, and Zeke's Lady.

**RESPONSE TO INTERROGATORY NO. 10:** See the response to Interrogatory Number 9 as to Neverve and Shimmering Sands which equally apply to S & S, LLC and Zeke's Lady. Any "acts" or "communications" involving S & S, LLC or Zeke's Lady would have occurred primarily between April 18, 2016 and August 3, 2016 with additional acts or communications both before and after. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. . The Welch Parties will produce a privilege log. The Welch Parties respectfully show the Court that the Shimmering Sands BP settlement proceeds are beyond the scope of this disgorgement action and therefore object to that part of the Interrogatory.

**INTERROGATORY NO. 11:** Identify each act (including co-counsel service and assistance) and/or communication with, or on behalf of, or at the direction of, the following entities pursuant to purported a fee sharing agreement, including the "Fee Sharing Agreement" dated April 19, 2016 and signed by Welch on behalf of WLF and by Steve Martino on behalf of Taylor Martino: Neverve, Shimmering Sands, S&S, and Zeke's Lady.

**RESPONSE TO INTERROGATORY NO. 11:** See, Answer to Interrogatory No. 9 and 10. The "acts" and "communications" involving the topics covered by the "Fee Sharing Agreement" are partially reflected in the time records. Time records for other worked performed in connection with the BP claims was not recorded or entered into the fee statements. Time was spent prior to April 19, 2016 as to all four entities, but the referenced agreement was dated as noted and efforts pursuant to the BP opt out claims were primarily concluded by August, 2016. The specific activities included working with Stewart and Taylor Martino, collecting damage

data for each entity, getting proper supporting documents to Taylor Martino and negotiating language in the settlement agreements. The subject of this Interrogatory has been the subject of previous discovery, document production and depositions and are equally available to SEPH's counsel. Subsequent acts for related claims from the BP oil spill were also performed and mostly reflected in the time records.

**INTERROGATORY NO. 12:**  Identify each act and/or communication relating to the Neverve Judgment and the legal effects of the Neverve Judgment as to Neverve's BP claim and BP monies.

**RESPONSE TO INTERROGATORY NO. 12:** The "acts" and "communications" involving the Neverve Judgment are partially reflected in the time records.  Independent of the opt out negotiations, Welch reviewed the Neverve judgment and determined it had no legal effect on the Neverve BP claim and potential recovery. The claims were resolved with that understanding. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order.

**INTERROGATORY NO. 13:**  Identify each act and/or communication relating to the Second Supplement, the legal effects of the Second Supplement as to Neverve's, S&S', and/or Shimmering Sands' BP claims and BP monies, and SEPH's asserted security interest thereunder.

**RESPONSE TO INTERROGATORY NO. 13:**  The "acts" and "communications" involving the Second Supplement are partially reflected in the time records. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. Independent of the opt out negotiations, WLF reviewed the Second Supplement and determined it had no legal effect on Neverve's or Shimmering Sands' BP claims or BP monies. The independent review further determined that the Second Supplement, along with the UCC filings, did have the a legal effect

of evidencing a security interest in 50% of the S & S, LLC's BP claim and recovery. The legal effect of the SEPH claims on the P&P Acquisitions, LLC BP claim and recovery was subject to a prior legal determination and also considered. These claims were resolved in accordance with these understandings.

Welch had subsequent acts and communications with Trustee Terri Owens regarding the BP proceeds of S & S, LLC and Zeke's Lady, LLC and with Von Memory regarding the balance of BP proceeds of S & S, LLC. These acts can be found in the time records filed or documents to be produced.  The Shimmering Sands BP claims are outside the scope of this contested matter.

**INTERROGATORY NO. 14:**  Describe and state the value of all consideration the Welch Parties gave Neverve and/or Shimmering Sands for executing the Representation Agreement (dated June 17, 2015, but allegedly signed by Stewart in January 2016 and bearing a purported effective date of June 12, 2015) and thereby guaranteeing payment of Stewart's and Terry Stewart's individual bankruptcy legal fees owed to the Welch Parties.

**RESPONSE TO INTERROGATORY NO. 14:** Much of the initial Stewart representation involved investigating, reviewing, acquiring institutional knowledge about the Stewarts' numerous affiliates and related parties, including Neverve and Shimmering Sands, and advising Mr. Stewart in his numerous capacities as manager of the affiliates. Around the time of the Welch Parties engagement, the Stewart related entities lost the employed in-house legal counsel. Throughout the Stewart bankruptcy, the representation of the Stewarts involved the defense of Neverve, the largest and only debt owed to SEPH by both of the Stewarts. Defending such indebtedness and the extensive involvement of all of the related entities in the Stewart bankruptcy included the review of assets, claims, liabilities, historical documents, business dealings, inter-related activities, as well as

substantial document review and production involving all such matters. Early in the bankruptcy representation, it become clear that the bankruptcy case was going to involve the broadest scope of inquiry and impact on any and all Stewart related entities and entangle them within the cost and impairment of the bankruptcy.

By January 2016, SEPH had prepared and provided an adversary complaint to the Trustee.  The Trustee filed the adversary against the Stewarts as well as family members and related entities. At that time, the affiliated entities required legal representation. The Welch Parties agreed and undertook the broadly expanded representation of numerous Stewart related entities in connection with the bankruptcy, adversaries and general representation and continued to provide the representation of and services to the Stewarts and Stewart related entities in the defense of the collection of primarily Neverve's indebtedness. Most all affiliates were the subject and target of creditors' actions.  Both Neverve and Shimmering Sands were benefited from the time and services that the Welch Parties had performed and institutional knowledge acquired which would have cost prohibitive amounts to have hired separate counsel and paid for them to acquire such knowledge of the Welch Parties. The value of this consideration exceeded the collective guaranteed obligations.

By entering into the Affiliate Representation Agreement, Neverve, Shimmering Sands and the other affiliates received the benefit of the time, services and institutional knowledge of the Welch Parties as well as the ongoing engagement to provide services. The value of this consideration exceeded the collective guaranteed obligations. The Welch Parties continued to perform numerous services that benefited the affiliates, including Neverve and Shimmering Sands. These continued services were further expanded and fundamental in the representation and defense of SEPH's substantive consolidation

adversary which directly targeted Shimmering Sands and indirectly impacted Neverve. Ultimately, Neverve and Shimmering Sands were substantially benefited and obtained a release, abandonment, and dis-entanglement from the bankruptcy by the global settlement of all issues, except the individual Stewarts' discharge adversary. The value of such settlement, release and abandonment for each Shimmering Sands and Neverve exceeds the total amount of all of the Welch Parties services, and at a minimum was collective valued at the approved $750,000 cash payment to the estate.

Moreover, the subject of this request has also been the subject of prior proceedings, pleadings and discovery known to and in the possession of SEPH's counsel.  Ultimately this court approved a settlement and compromise that was beneficial to Neverve and Shimmering Sands.

**INTERROGATORY NO. 15:**  Describe and state the value of all consideration the Welch Parties gave Neverve and/or Shimmering Sands for authorizing or agreeing to the distribution or transfer of Neverve's and/or Shimmering Sands' BP monies from WLF's IOLTA account to Welch, Kirkpatrick Bank, or any other person.

**RESPONSE TO INTERROGATORY NO. 15:** No BP monies were ever transferred from WLF's IOTA account to Welch. The Welch Parties object to this interrogatory as irrelevant to the issues in this case. Without waiving the objection, the Welch Parties incorporate the Response to Interrogatory No. 14. In addition, the Welch Parties agreed and undertook the broadly expanded representation of numerous Stewart related entities in connection with the bankruptcy, adversaries and general representation and continued to provide the representation of and services to the Stewarts and Stewart related entities in the defense of the collection of primarily Neverve's indebtedness. The Welch Parties provided significant

services and earned the payments from Neverve and related parties. The related parties, including Neverve received a dollar for dollar credit for each payment made to their guaranty obligation. Moreover, the subject of this request has also been the subject of prior proceedings, pleadings and discovery known to and in the possession of SEPH's counsel.

Transfers to WLF were pursuant to the Representation Agreements and the legal services rendered thereto.   Transfers of Shimmering Sands BP proceeds to Kirkpatrick Bank were pursuant to the bank's direction and purported security interest and at the direction of Shimmering Sands.  The relevant value of the consideration is not likely to be relevant to this contested matter. Although no exact amount has been calculated, the consideration received was a fair and reasonably equivalent value. All affiliates, including Neverve, have received a release from the estate and been abandoned from the entanglement of the bankruptcy. There were also intercompany debts between Neverve and the other affiliates which are still under investigation to quantify.

**INTERROGATORY NO. 16:**  To the extent not disclosed above, as to the Welch Parties' receipt and/or disbursement of funds owned by Neverve and/or received by or on behalf of Neverve at any time from April 1, 2015 through the present, identify the account and financial institution in which the funds are/were located, the address of the financial institution, the date(s) they received the funds, the source of the funds, the reason they are/were holding the funds, and, if they no longer have the funds, the person to whom the funds were disbursed or transferred and the reason(s) for the disbursement or transfer.

**RESPONSE TO INTERROGATORY NO. 16:**  No BP monies were ever transferred from WLF's IOTA account to Welch. See, response to Interrogatory No. 8;  [Docs #461, #464, #522 and #522-6]. Payments from the Neverve BP funds were made from the WLF IOLTA

account by check no. 1112 on November 9, 2016 to Dobson Court Reporters in the amount of $792.85 for deposition transcripts and by check no. 1134 on October 5, 2017 to J. Ring Court Reporting in the amount of $1,089.90 for hearing transcripts. See also, bank statements to be produced in response to Request No. 34.

**INTERROGATORY NO. 17:**   Identify all written and oral agreements, including modifications thereof, between Neverve and the Welch Parties, between April 1, 2015 through the present, regarding the Welch Parties' representation of Neverve.

**RESPONSE TO INTERROGATORY NO. 17:**   The agreements were with WLF on the terms set forth therein to provide necessary legal services as requested for $300 an hour billed monthly, and payable as funds allowed. See, also Disclosures and Representation Agreements, [Docs #522, #522-3, #522-4, #694 and #694-1].

**INTERROGATORY NO. 18:**   Identify all payments by date and amount that Neverve made to the Welch Parties from April 1, 2015 through the present, and whether the payments were for services rendered to Neverve or to Stewart or to another entity or person.

**RESPONSE TO INTERROGATORY NO. 18:**   No BP monies were ever transferred from WLF's IOLTA account to Welch. The only payments by Neverve were from BP funds from the WLF IOLTA trust account to WLF previously identified and as shown applied to the combined billing of Stewart bankruptcy cases and affiliates' representation from approximately June 15, 2015 to October, 2017.  See responses to Interrogatory Nos. 8 and 16 and references therein.

**INTERROGATORY NO. 19:**   Identify all documents the Welch Parties contend constitutes Neverve's guaranty of, or obligation to indemnify or pay contribution to, Stewart in any capacity.

**RESPONSE TO INTERROGATORY NO. 19:**  Neverve's guaranty is contained in the Affiliate Representation Agreement. See, [Doc #522-4]. Although the 2006 Operating Agreement for Neverve, LLC contains obligations of indemnification and defense, Welch knows of no payments under the indemnity or contribution to Stewart.

**INTERROGATORY NO. 20:**  Identify all acts and communications with the Trustee, George Skipper, Von Memory and/or Bill Barranco related to Neverve and/or S&S in any way, including Neverve's and/or S&S' BP claims and/or settlements (including the value, ownership, right to control, receipt, distribution and/or transfer thereof); Neverve's and/or S&S' members and/or managers;  proposed or actual changes of Neverve's and/or S&S' members, managers, and/or membership interests;  tax returns, forms, and documents and/or other tax matters; the Neverve Judgment;  the Second Supplement;  and SEPH's asserted security interest in Neverve's and/or S&S' BP claims and/or BP monies.

**RESPONSE TO INTERROGATORY NO. 20:**  The acts and communications with the Trustee, and some with Von Memory and Bill Barranco were discussed and detailed in the lengthy hearing on the Compromise Motion and have been subject of discovery and depositions of the Welch Parties and are equally available to SEPH counsel. The acts and communications are partially contained in the invoice time entries which have been produced [Doc. #522-5 and #585-1] and the documents to be produced including subsequent invoices and emails with Trustee Douglas Gould, Von Memory and/ or Bill Barranco.

**INTERROGATORY NO. 21:**  Identify all acts and communications with the Trustee, Troy Martin, George Drew, Bart Boren, and/ or Kirkpatrick Bank related to Shimmering Sands' BP claim and/or settlement (including the value, ownership, right to control, receipt, distribution and/or transfer thereof); Shimmering Sands' loans, guaranties, pledges, or other debt obligations,

financing statements, and mortgages or other security instruments; the Second Supplement; and/or SEPH's asserted security interest in Shimmering Sands' BP claims and BP monies.

**RESPONSE TO INTERROGATORY NO. 21:**  The Shimmering Sands BP monies and financial documents are outside of the scope of this contested matter, and therefore are irrelevant.  SEPH has never asserted a security interest in the Shimmering Sands BP claim or settlement proceeds. Documents evidencing acts and communications regarding Kirkpatrick Bank and Shimmering Sands have been produced and the subject of hearings. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. The Welch Parties will produce a privilege log. See, documents produced in response to Request No. 45.

**INTERROGATORY NO. 22:**  Identify all persons, entities, and/or documents the Welch Parties consulted or relied upon, in whole or in part, to answer or to assist you in answering these interrogatories.

**RESPONSE TO INTERROGATORY NO. 22:**  David A. Cheek, Legal Counsel.  The documents which are exhibits to the hearings on Motion to Approve Settlement and Compromise and  Motion to Abandon and pleadings in this case and discovery in related cases were considered.

**REQUESTS FOR PRODUCTION**

**REQUEST NO. 1:**  Produce all documents that the Welch Parties have in their possession, custody, or control that they assert is, or intend to submit as, a basis for an order imposing less than the default sanction of full disgorgement.

**RESPONSE NO. 1:**  In large parts the pleadings herein and exhibits admitted in the Motion to Approve Compromise, Motion to Abandon and Disclosures are relevant and equally

available to SEPH's counsel.  The tax returns and financial records of WLF and Welch will be produced.

**REQUEST NO. 2:**   To the extent not included in the compensation disclosure statements filed in this bankruptcy proceeding, produce all timesheets, billing statements, and invoices for legal services provided by the Welch Parties which the Welch Parties contend is a basis for an order imposing less than the default sanction of full disgorgement.

**RESPONSE NO. 2:**  Invoices to which payments have been made after disclosed filings will be produced.

**REQUEST NO. 3:**   Produce all orders, decisions, rulings, transcripts, or other documents issued by a court or other judicial tribunal or governmental entity (including the Oklahoma Bar Association) admonishing, chastening, reprimanding, and/or sanctioning Welch for conduct related to or arising out of the practice of law and/or provision of legal services.

**RESPONSE NO 3:**  None.

**REQUEST NO. 4:**   Provide all federal and state tax returns, including supporting schedules and forms, and amendments, filed by Welch and/or WLF for tax years 2014 through the present.

**RESPONSE NO. 4:**  To be produced subject to appropriate redaction.

**REQUEST NO. 5:**   Provide all financial statements of Welch and/or WLF submitted to any financial or credit institution, that were prepared in or for 2014 through the present.

**RESPONSE NO 5:**  None.

**REQUEST NO. 6:**   Provide all documents (including schedule K-1s, paystubs, and Form 1099s) evidencing income or other forms of compensation paid or distributed to Welch from any source in or for 2014 through the present.

**RESPONSE NO. 6:**  See tax returns produced.

**REQUEST NO. 7:**   If the Welch Parties assert that their financial condition is a basis for an order imposing less than the default sanction of full disgorgement, provide all audits, appraisals, valuations, or third-party accountings of WLF in or for 2014 through the present.

**RESPONSE NO. 7:**  None, other than the 2015 WLF tax return.

**REQUEST NO. 8:**   If the Welch Parties assert that their financial condition is a basis for an order imposing less than the default sanction of full disgorgement, produce all documents related to their assets or debts (including guaranties and contingent liabilities) for 2014 through the present.

**RESPONSE NO. 8:**  See Tax Returns. The Welch Parties do not maintain lists of assets or debts, but will produce available documents evidencing such.

**REQUEST NO. 9:**   If the Welch Parties assert that their financial condition is a basis for an order imposing less than the default sanction of full disgorgement, produce all of their account records (including bank accounts, securities accounts, retirement accounts, credit accounts, and any other type of accounts) for 2014 through the present.

**RESPONSE NO. 9:**   WLF will produce available bank statements for WLF's operating, payroll and IOLTA accounts and three years of credit card statements. Welch will produce current retirement account statement and available bank statements for four years of personal joint checking account and three years of Welch credit card statements.

**REQUEST NO. 10:**  If the Welch Parties assert that their financial condition is a basis for an order imposing less than the default sanction of full disgorgement, produce all documents related to any transfers by Welch or WLF of assets during 2014 through the present.

**RESPONSE NO. 10:**   The Welch Parties do not maintain lists of transfers, but will produce available documents evidencing such. The Welch Parties will produce a list of transfers or payments to or for the benefit of insiders within 2 years. The Welch Parties had no material transfers between 2014-2018, other than in the ordinary course, support of dependents, children in school, student loans, parent plus loans, auto trade-ins or purchases.

**REQUEST NO. 11:** If documents filed in any case identified in response to Interrogatory No. 7 are not available on PACER, provide a file-stamped copy of each compensation disclosure statement the Welch Parties filed therein.

**RESPONSE NO. 11:** N/A.

**REQUEST NO. 12:** Produce all written agreements, including modifications thereof, between Neverve and the Welch Parties', between April 1, 2015 through the present, regarding the Welch Parties' representation of Neverve, and all communications related to said representation agreements.

**RESPONSE NO. 12:**   See initial Representation Agreement [Doc #522-3], Affiliate Representation Agreement [Doc #585-1] and Neverve Representation Agreement [Doc #694-1]. See also, Taylor Martino fee agreements and Fee Sharing Agreement with WLF [Doc #522-7]. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. The Welch Parties will produce a privilege log.

**REQUEST NO. 13:** Produce all written agreements, including modifications thereof, between Shimmering Sands and the Welch Parties', between April 1, 2015 through the present, regarding the Welch Parties' representation of Shimmering Sands, and all communications related to said representation agreements.

**RESPONSE NO. 13:**  Shimmering Sands is not relevant to this action.  Welch Parties can file a Motion for Protective Order if necessary. See, [Doc #522-4].

**REQUEST NO. 14:**  Produce all written fee agreements (contingency or otherwise) entered into or consented to by Neverve with the Welch Parties, and all communications related to said fee agreements.

**RESPONSE NO. 14:**   See, Response to Request 12.

**REQUEST NO. 15:**  Produce all written fee agreements (contingency or otherwise) entered into or consented to by Shimmering Sands with the Welch Parties, and all communications related to said fee agreements.

**RESPONSE NO. 15:**  Shimmering Sands is not relevant to this action.  Welch Parties can file a Motion for Protective Order if necessary. See, Doc #527-4 and #522-7. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. The Welch Parties will produce a privilege log.

**REQUEST NO. 16:**  Produce all fee sharing agreements entered into or consented to by Neverve regarding its BP claim and settlement thereof, and all communications related to said fee sharing agreements.

**RESPONSE NO. 16:**  See Taylor Martino fee agreements and Fee Sharing Agreement with WLF [Doc #522-7]. Communications between Stewart, Neverve, Taylor Martino and Welch Parties are protected by the attorney client communication privilege and work product privilege. The opt-out settlements are subject to the Confidentiality Order. The Welch Parties will produce a privilege log.

**REQUEST NO. 17:**  Produce all fee sharing agreements entered into or consented to by Shimmering Sands regarding its BP claim and settlement thereof, and all communications related to said fee sharing agreements.

**RESPONSE 17:**  Shimmering Sands is not relevant to this action.  The Welch Parties can file a Motion for Protective Order if necessary. See, Response No. 16.

**REQUEST NO. 18:**  Produce all documents in which Neverve states its consent to the "Fee Sharing Agreement" dated April 19, 2016 and signed by Welch on behalf of WLF and by Steve Martino on behalf of Taylor Martino, and all communications related to said consent.

**RESPONSE NO 18:**  See Taylor Martino fee agreements and Fee Sharing Agreement with WLF [Doc #522-7]. Communications between Stewart, Neverve, Taylor Martino and WLF/Welch are protected by the attorney client communication privilege and work product privilege. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. The Welch Parties will produce a privilege log.

**REQUEST NO. 19:**  Produce all documents in which Shimmering Sands states its consent to the "Fee Sharing Agreement" dated April 19, 2016 and signed by Welch on behalf of WLF and by Steve Martino on behalf of Taylor Martino, and all communications related to said consent.

**RESPONSE NO 19:**  Shimmering Sands is not relevant to this action.  The Welch Parties can file a Motion for Protective Order if necessary. See Response No. 18.

**REQUEST NO. 20:**  Produce all documents in which Neverve agrees or authorizes the use of its BP monies to pay Stewart's and/or T. Stewart's attorney's fees owed to the Welch Parties in this bankruptcy proceeding, and all communications related to such agreement or authorization.

**RESPONSE NO 20:**  See, Representation Agreements and Response No. 12.

**REQUEST NO. 21:**  Produce all documents in which Shimmering Sands agrees or authorizes the use of its BP monies to pay Stewart's and/or T. Stewart's attorney's fees owed to the Welch Parties in this bankruptcy proceeding or the distribution of its BP monies to Kirkpatrick Bank, and all communications related to such agreement or authorization.

**RESPONSE NO 21:**  Shimmering Sands is not relevant to this action.  The Welch Parties can file a Motion for Protective Order if necessary. See, Representation Agreements and Response No. 12.  Documents including emails with Kirkpatrick Bank, Kirkpatrick Bank Security Agreement and UCC filings have been produced and any additional documents responsive will be produced.

**REQUEST NO. 22:**  Produce all documents the Welch Parties contend constitutes Neverve's guaranty of, or obligation to indemnify or pay contribution to, Stewart in any capacity, and all communications related thereto, from April 1, 2015 through the present.

**RESPONSE NO. 22:**  See Affiliate Representation Agreement [Doc #522-4], and 2006 Neverve Operating Agreement.

**REQUEST NO. 23:**  Produce all documents the Welch Parties contend constitutes Shimmering Sands' guaranty of, or obligation to indemnify or pay contribution to, Stewart in any capacity, and all communications related thereto, from April 1, 2015 through the present.

**RESPONSE NO. 23:**  Shimmering Sands is not relevant to this action.  The Welch Parties can file a Motion for Protective Order if necessary.

**REQUEST NO. 24:**  Produce all documents and communications related to any consideration the Welch Parties gave Neverve for executing the Representation Agreement (dated June 17, 2015, but allegedly signed by Stewart in January 2016 and bearing a purported

effective date of June 12, 2015) and thereby guaranteeing payment of Stewart's and T. Stewart's attorneys' fees owed to the Welch Parties' in this bankruptcy proceeding.

**RESPONSE NO. 24:**  See, Response to Interrogatory No. 14, Representation Agreement [Doc #522-3], Affiliate Representation Agreement [Doc #585-1] and Neverve Representation Agreement [Doc #694-1]. See also, Taylor Martino fee agreements and Fee Sharing Agreement [Doc #522-7], and invoices [Docs #522-5, #585-1] and invoices to be produced.

**REQUEST NO. 25:**  Produce all documents and communications related to any consideration the Welch Parties gave Shimmering Sands for executing the Representation Agreement (dated June 17, 2015, but allegedly signed by Stewart in January 2016 and bearing a purported effective date of June 12, 2015) and thereby guaranteeing payment of Stewart's and T. Stewart's attorneys' fees owed to the Welch Parties in this bankruptcy proceeding.

**RESPONSE NO. 25:**  Shimmering Sands is not relevant to this action.  The Welch Parties can file a Motion for Protective Order if necessary. See Response No. 24.

**REQUEST NO. 26:**  Produce all timesheets, billing statements, and invoices related to or arising out of the Welch Parties' representation of Neverve, and all communications related thereto, from April 1, 2015 through the present.

**RESPONSE NO. 26:**   None were kept separately until November 2018, after the relevant time period of this contested matter. See Response to Interrogatory Nos. 10 and 11 and Docs #522-5 and #585-1 and invoices to be produced. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order.

**REQUEST NO. 27:**  Produce all timesheets, billing statements, and invoices related to or arising out of the Welch Parties' representation of Shimmering Sands, and all communications related thereto, from April 1, 2015 through the present.

**RESPONSE NO. 27:** None were kept separately. See Docs #522-5 and #585-1 and invoices to be produced. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. The Welch Parties will produce a privilege log.

**REQUEST NO. 28:** Produce all timesheets, billing statements, and invoices related to or arising out of the legal services provided by the Welch Parties to Neverve and/or Taylor Martino pursuant to a purported fee sharing agreement regarding Neverve's BP claim and settlement thereof, including the "Fee Sharing Agreement" dated April 19, 2016 and signed by Welch on behalf of WLF and by Steve Martino on behalf of Taylor Martino, and all communications related to said timesheets, billing statements, and invoices.

**RESPONSE NO. 28:** The time entries for some, but certainly not all, are documented in the invoices in Docs #522-5 and 585-1 and invoices to be produced. None were kept separately. It was a contingency fee case.  Time sheets were not relevant. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. A privilege log will be produced.

**REQUEST NO. 29:** Produce all timesheets, billing statements, and invoices related to or arising out of the legal services provided by the Welch Parties to Shimmering Sands and/or Taylor Martino pursuant to a purported fee sharing agreement regarding Shimmering Sands' BP claim and settlement thereof, including the "Fee Sharing Agreement" dated April 19, 2016 and signed by Welch on behalf of WLF and by Steve Martino on behalf of Taylor Martino, and all communications related to said timesheets, billing statements, and invoices.

**RESPONSE NO. 29:** Shimmering Sands is not relevant to this action. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. The Welch Parties can file a Motion for Protective Order if necessary. See Response No. 28.

**REQUEST NO. 30:**  Produce all invoices, timesheets, billing statements, and/or requests for reimbursement submitted by the Welch Parties to Neverve for payment or reimbursement pursuant to Neverve's purported guaranty(ies) or indemnification or contribution obligations, and all communications related to invoices, timesheets, billing statements, and/or requests for reimbursement.

**RESPONSE NO. 30:**  See invoices in Docs #522-5 and #585-1 and subsequent invoices which will be produced up to the date of invoices to which Neverve funds or other payments applied.

**REQUEST NO. 31:**  Produce all invoices, timesheets, billing statements, and/or requests for reimbursement submitted by the Welch Parties to Shimmering Sands for payment or reimbursement pursuant to Shimmering Sands' purported guaranty(ies) or indemnification or contribution obligations, and all communications related to invoices, timesheets, billing statements, and/or requests for reimbursement.

**RESPONSE NO. 31:**  Shimmering Sands is not relevant to this action.  The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. The Welch Parties can file a Motion for Protective Order if necessary. Some documents will be produced.

**REQUEST NO. 32:** Produce all documents the Welch Parties created, drafted, received, reviewed, revised, or filed, or assisted therewith, in their provision of legal services regarding Neverve's BP claim and settlement thereof, and all communications related thereto.

**RESPONSE NO. 32:**  The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. The Welch Parties will produce a privilege log. Some documents have already produced by, and the subject of depositions of, the Welch Parties to SEPH in the Florida litigation. Other non-privileged or non-confidential documents will be produced. See also,

Response to Interrogatory No. 9, 12, and 13.  The independent review of the SEPH judgment and Second Supplement were limited to the four corners of the documents because they are unambiguous and have been produced many times in this case. Those documents speak for themselves.

**REQUEST NO. 33:**  Produce all documents the Welch Parties created, drafted, received, reviewed, revised, or filed, or assisted therewith, in their provision of legal services regarding Shimmering Sands' BP claim and settlement thereof, and all communications related thereto.

**RESPONSE NO. 33:**  Shimmering Sands is not relevant to this action.  Welch Parties can file a Motion for Protective Order if necessary.

**REQUEST NO. 34:**  Produce all documents (including bank statements and wire transfer notices) evidencing the transfer, distribution, remittance, payment and/or receipt of Neverve's BP monies from Taylor Martino to the Welch Parties' IOLTA account, and all communications related thereto, from April 1, 2015 through the present.

**RESPONSE NO. 34:**  See Answer to Interrogatory No. 8, Docs #461 and #464. WLF objects to the request for bank statements before receipt of the BP monies because it is a client IOLTA account and contains unrelated privileged information of other clients.  Production of WLF IOLTA bank statements will be subject to extensive redaction.  WLF will produce wire transfer advices as equivalent evidence of the remittance and receipt of the BP funds. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. The Welch Parties will produce a privilege log.

**REQUEST NO. 35:**  Produce all documents (including bank statements and wire transfer notices) evidencing the transfer, distribution, remittance, payment and/or receipt of

Shimmering Sands' BP monies from Taylor Martino to the Welch Parties' IOLTA account, and all communications related thereto, from April 1, 2015 through the present.

**RESPONSE NO. 35:**  Shimmering Sands is not relevant to this action.  Welch Parties can file a Motion for Protective Order if necessary.

**REQUEST NO. 36:**  Provide all documents (bank statements, checks (front and back), draw or debit slips or receipts, or any other form of written instruction, direction, authorization, and/or documentation) evidencing the transfer, distribution, remittance, payment, and/or receipt of Neverve's BP monies from the Welch Parties' IOLTA account to Welch or any other person, and all communications related thereto, from April 1, 2015 through the present.

**RESPONSE NO. 36:**  No BP monies were ever transferred from WLF's IOTA account to Welch. As to WLF and others see Response to Interrogatory No. 8 and 16 and Response No. 34. Bank statements reflecting the BP monies will be produced subject to a extensive redaction. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. The Welch Parties will produce a privilege log.

**REQUEST NO. 37:**  Provide all documents (bank statements, checks (front and back), draw or debit slips or receipts, or any other form of written instruction, direction, authorization, and/or documentation) evidencing the transfer, distribution, remittance, payment, and/or receipt of Shimmering Sands' BP monies from the Welch Parties' IOLTA account to Welch or any other person (including Kirkpatrick Bank), and all communications related thereto, from April 1, 2015 through the present.

**RESPONSE NO. 37:**  No BP monies were ever transferred from WLF's IOTA account to Welch.  As to WLF, see,  [Doc # 779 and Doc #793]. Documents evidencing the payment of substantially   all   of   Shimmering   Sands   BP   Proceeds   to   Kirkpatrick   Bank   and   related

communications have previously been produced and will also be included in documents produced for communications with Kirkpatrick Bank.   Documents evidencing refund of Shimmering Sands BP monies to be produced.

**REQUEST NO. 38:**  To the extent not otherwise produced herein, produce all documents evidencing payments by Neverve to the Welch Parties, between April 1, 2015 through the present, and evidencing whether the payments were for services rendered to Neverve, Stewart, T. Stewart, or to another person.

**RESPONSE NO. 38:**  See Response to Interrogatory No. 8, 9 and 16 and Response Nos. 34 and 36.

**REQUEST NO. 39:**  To the extent not otherwise produced herein, produce all documents evidencing payments by Shimmering Sands to the Welch Parties, between April 1, 2015 through the present, and evidencing whether the payments were for services rendered to Shimmering Sands, Stewart, T. Stewart, or to another person.

**RESPONSE NO. 39:**   No monies were ever transferred from WLF's IOLTA account to Welch. As to WLF, see Docs #779 and #793. Documents evidencing refund of Shimmering Sands BP monies to be produced.

**REQUEST NO. 40:**  Produce all documents evidencing any consideration the Welch Parties gave Neverve for authorizing or agreeing to the transfer, distribution, remittance, and/or payment of Neverve's BP monies from the Welch Parties' IOLTA account to Welch or any other person, and all communications related thereto, from April 1, 2015 through the present.

**RESPONSE NO. 40:**  No monies were ever transferred from WLF's IOTA account to Welch.  See, Representation Agreements, Docs #522-3, #522-4, #522-7 and the legal services rendered as described in the invoices in Docs #522-5, #585-1 pleadings and exhibits in

connection with the Motion to Approve Settlement and Compromise and Motion to Abandon and invoices to be produced. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. The Welch Parties will produce a privilege log. No separate documents exist as to Welch.

**REQUEST NO. 41:**  Produce all documents evidencing any consideration the Welch Parties gave Shimmering Sands for authorizing or agreeing to the transfer, distribution, remittance, and/or payment of Shimmering Sands' BP monies from the Welch Parties IOLTA account to Welch or any other person, and all communications related thereto, from April 1, 2015 through the present.

**RESPONSE NO. 41:**   No monies were ever transferred from WLF's IOLTA account to Welch. See Representation Agreements, Docs #522-3, #522-4, #522-7 and the legal services rendered as described in the invoices in Doc #522-5, #585-1, pleadings and exhibits in connection with the Motion to Approve Settlement and Compromise and Motion to Abandon and invoices to be produced.  The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. The Welch Parties will produce a privilege log. No separate documents exist as to Welch.

**REQUEST NO. 42:**  Produce all communications, and documents related thereto, relating to the Neverve Judgment and the legal effects of the Neverve Judgment as to Neverve's BP claim and BP monies.

**RESPONSE NO. 42:**  The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. The Welch Parties will produce a privilege log. Pursuant to an agreement with SEPH and without generally waiving the attorney client communication and work product privilege, the Welch Parties are willing to produce the emails addressing the

asserted claims of SEPH in the BP claims of Neverve, LLC, S&S, LLC,  and Shimmering Sands Development Company, LLC, subject to satisfactory lifting of the Confidentiality Order. Non-privileged or non-confidential documents will be produced.  The independent review of the Neverve Judgment was limited to the four corners of the documents because they are unambiguous and have been produced many times in this case. Those documents speak for themselves

**REQUEST NO. 43:**  Produce all communications, and documents related thereto, relating to the Second Supplement, the legal effects of the Second Supplement as to Neverve's, S&S', and/or Shimmering Sands' BP claims and BP monies, and SEPH's asserted security interest thereunder.

**RESPONSE NO. 43:**  The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. The Welch Parties will produce a privilege log. Pursuant to an agreement with SEPH and without generally waiving the attorney client communication and work product privilege, the Welch Parties are willing to produce the emails addressing the asserted claims of SEPH in the BP claims of Neverve, LLC, S&S, LLC,  and Shimmering Sands Development Company, LLC, subject to satisfactory lifting of the Confidentiality Order. Non-privileged or non-confidential documents will be produced.  The independent review of the Second Supplement was limited to the four corners of the documents because they are unambiguous and have been produced many times in this case. Those documents speak for themselves.

**REQUEST NO. 44:**  Produce all communications, and documents related thereto, with the Trustee, George Skipper, Von Memory, and/or Bill Barranco related to Neverve and/or S&S in any way, including Neverve's and/or S&S' BP claims and/or settlements (including the value,

ownership, right to control, receipt, distribution and/or transfer thereof); Neverve's and/or S&S' members and/or managers; proposed or actual changes of Neverve's and/or S&S' members, managers, and/or membership interests; tax returns, forms, and documents and/or other tax matters; the Neverve Judgment; the Second Supplement; and SEPH's asserted security interest in Neverve's and/or S&S' BP claims and/or BP monies.

**RESPONSE NO. 44:** Documents have been previously produced to SEPH in the Florida litigation. Documents will be produced.

**REQUEST NO. 45:** Produce all documents and communications with the Trustee, Troy Martin, George Drew, Bart Boren, and/ or Kirkpatrick Bank related to Shimmering Sands' BP claim and/or settlement (including the value, ownership, right to control, receipt, distribution and/or transfer thereof); Shimmering Sands' loans, guaranties, pledges, or other debt obligations, financing statements, and mortgages or other security instruments; the Second Supplement; and/or SEPH's asserted security interest in Shimmering Sands' BP claims and BP monies.

**RESPONSE NO. 45:** SEPH never asserted a security interest in Shimmering Sands BP claims or recovery. As to the trustee: See transcripts of Doug Gould's depositions and hearing testimony; Troy Martin – None; George Drew and Bart Boren – as to BP claims documents will be produced. Over 5 years there have been numerous communications, generally relating to Shimmering Sands Development Company, LLC, none of which are relevant or reasonably likely to lead to relevant information to this contested matter.

**REQUEST NO. 46:** Produce a copy of the documents the Welch Parties produced to SEPH in response to the subpoena duces tecum served by SEPH on WLF in this bankruptcy proceeding in August 2017.

**RESPONSE NO. 46:** Object – duplication of effort.

**REQUEST NO. 47:**  To the extent not otherwise produced herein above, produce any other documentary evidence which you contend supports a basis for an order imposing less than the default sanction of full disgorgement.

**RESPONSE NO. 47:**  None known at this time.

**REQUEST NO. 48:**  Produce all documents referenced, consulted, or relied upon to answer SEPH's interrogatories set out above.

**RESPONSE NO. 48:**  See all exhibits and pleadings. and produced documents

Respectfully submitted,

DAVID A. CHEEK, OBA #1638
CHEEK & FALCONE, PLLC
6301 Waterford Blvd., Suite 320
Oklahoma City, OK 73118-1168
Telephone: (405) 286-9191
Facsimile: (405) 286-9670
dcheek@cheekfalcone.com
*Counsel for Ruston C. Welch and*
*Welch Law Firm, P.C.*

## CERTIFICATE OF MAILING

The undersigned does hereby certify on the 22nd day of February, 2021, a true and correct copy of the above and foregoing document was mailed first class, postage prepaid, to:

| | |
|---|---|
| **Douglas N. Gould**<br>5500 N. Western Ave., Ste. 150<br>Oklahoma City, OK 73118<br>dg@dgouldlaw.net | **Bart A. Boren**<br>Williams, Boren, & Associates, P.C.<br>401 North Hudson, Suite 200<br>Oklahoma City, OK 73102<br>bboren100@gmail.com |
| **David A. Cheek**<br>Cheek & Falcone, PLLC<br>6301 Waterford Blvd., Suite 320<br>Oklahoma City, OK 73118-1168<br>dcheek@cheekfalcone.com | **Kiran A. Phansalkar**<br>Conner & Winters, P.C.<br>211 North Robinson – Ste. 1700<br>Oklahoma City, OK 73102<br>kphansalkar@cwlaw.com |
| **William H. Hoch**<br>Crowe & Dunlevy<br>Braniff Building<br>324 North Robinson Avenue, Ste. 100<br>Oklahoma City, OK 73102<br>will.hoch@crowedunlevy.com | **Mark B. Toffoli**<br>The Gooding Law Firm<br>A Professional Corporation<br>204 North Robinson Avenue, Suite 650<br>Oklahoma City, Oklahoma 73102<br>mtoffoli@goodingfirm.com |
| **Judy Hamilton Morse**<br>Crowe & Dunlevy, P.C.<br>Braniff Building<br>324 North Robinson Ave., Ste. 100<br>Oklahoma City, OK 73102<br>judy.morse@crowedunlevy.com | **Christopher M. Staine**<br>Crowe & Dunlevy PC<br>Braniff Building<br>324 North Robinson Avenue, Ste. 100<br>Oklahoma City, OK 73102<br>christopher.staine@crowedunlevy.com |
| **Joshua D. Burns**<br>Crowe & Dunlevy, P.C.<br>Braniff Building<br>324 North Robinson, Ste. 100<br>Oklahoma City, OK 73102<br>joshua.burns@crowedunlevy.com | **Gary D. Hammond**<br>512 NW 12th Street<br>Oklahoma City, OK 73013<br>gary@okatty.com |

DAVID A. CHEEK

S:\10437.102\(108017).docx

## **VERIFICATION**

STATE OF OKLAHOMA      )
                            ) ss.
COUNTY OF OKLAHOMA   )

       I, Ruston C. Welch, of legal age, being first duly sworn and upon my oath state:

       1.    That I am the President of Welch Law Firm, P.C. in the above referenced case.

       2.    That I have reviewed Ruston C. Welch and Welch Law Firm, P.C.'s Responses to Creditor SE Property Holdings, LLC's First Set of Interrogatories and Requests for Production of Documents, and I believe the answers to be true and accurate.

       SIGNED this 22nd day of February, 2021.

                                  *Ruston C. Welch*
                                  Ruston C. Welch

       SUBSCRIBED AND SWORN to before me on this _____ day of February, 2021.

                            _____
                            NOTARY PUBLIC

My Commission _____ Expires:

_____
[SEAL]

## VERIFICATION

STATE OF OKLAHOMA          )
                          ) ss.
COUNTY OF OKLAHOMA          )

      I, Ruston C. Welch, of legal age, being first duly sworn and upon my oath state:

      1.    That I am the President of Welch Law Firm, P.C. in the above referenced case.

      2.    That I have reviewed Ruston C. Welch and Welch Law Firm, P.C.'s Responses to Creditor SE Property Holdings, LLC's First Set of Interrogatories and Requests for Production of Documents, and I believe the answers to be true and accurate.

      SIGNED this 22nd day of February, 2021.

_____
Ruston C. Welch


      SUBSCRIBED AND SWORN to before me on this 22nd day of February, 2021.

_____
NOTARY PUBLIC

My Commission 09004054 Expires: 5-11-2021

[SEAL]

# Select a Case

**There were 2 matching persons.**

**There were 63 matching cases.**

| Name | Case No. | Case Title | Chapter / Lead BK case | Date Filed | Party Role | Date Closed |
|---|---|---|---|---|---|---|
| Welch, Ruston C (cr) (2 cases) | 00-18635 | Southern Medical Arts Companies, Inc. and Southern Medical Arts Laboratory, Inc. | 7 | 10/26/00 | Creditor | 11/07/07 |
| | 15-12215 | David A Stewart and Terry P Stewart | 7 | 09/30/14 | Respondent | N / A |
| Welch, Ruston C. (aty) (61 cases) | 95-12095 | Freymiller Trucking, Inc. | 11 | 04/20/95 | N / A | 05/24/00 |
| | 96-19466 | Hunter's Glen Apartments, Inc. | 7 | 11/27/96 | N / A | 01/30/01 |
| | 96-19826 | Double HL Farms, Inc. and Clifford W. Leonard | 12 | 12/10/96 | N / A | 03/10/00 |
| | 97-15040 | Kathryn Louise Bennett | 11 | 05/22/97 | N / A | 04/29/98 |
| | 97-23008 | Jerry Max Hooper and Deborah Paulette Hooper | 7 | 12/31/97 | N / A | 06/08/98 |
| | 98-22459 | Mollie Gates Huddleson | 7 | 12/22/98 | N / A | 07/06/99 |
| | 99-17696 | Premiere Care Physicians, P.C. | 11 | 08/27/99 | N / A | 09/30/04 |
| | 00-18635 | Southern Medical Arts Companies, Inc. and Southern Medical Arts Laboratory, Inc. | 7 | 10/26/00 | N / A | 11/07/07 |
| | 04-17703 | James Philip Sweet and Shirley Ann Sweet | 7 | 07/16/04 | N / A | 01/21/05 |
| | 04-22332 | Four Walkers Inc | 7 | 11/10/04 | N / A | 11/06/08 |
| | 04-22333 | Gilbert D Walker and Mary Netta Walker | 7 | 11/10/04 | N / A | 11/06/08 |
| | 04-22334 | Travis Walker | 7 | 11/10/04 | N / A | 11/09/06 |
| | 05-01243 | Tarrant et al v. Holder et al | *Lead BK:* 05-18230 Capstone Oil & Gas, | 07/27/05 | N / A | 05/11/09 |

| | | Inc. | | | |
|---|---|---|---|---|---|
| 05-18230 | Capstone Oil & Gas, Inc. | 11 | 07/11/05 | N / A | 08/27/08 |
| 05-18528 | Bruce Keith Compton | 7 | 07/15/05 | N / A | 03/10/06 |
| 07-01113 | Payne v. Acidizing & Cementing Services, Inc. | *Lead BK:* 05-18230 Capstone Oil & Gas, Inc. | 07/09/07 | N / A | 10/09/08 |
| 07-01114 | Payne v. Baytide Petroleum, Inc. | *Lead BK:* 05-18230 Capstone Oil & Gas, Inc. | 07/09/07 | N / A | 10/09/08 |
| 07-01115 | Payne v. Beard Oil Company | *Lead BK:* 05-18230 Capstone Oil & Gas, Inc. | 07/09/07 | N / A | 10/09/08 |
| 07-01116 | Payne v. Broughton Petroleum, Inc. | *Lead BK:* 05-18230 Capstone Oil & Gas, Inc. | 07/09/07 | N / A | 10/09/08 |
| 07-01117 | Payne v. East-Co. Rental Tools, Inc. | *Lead BK:* 05-18230 Capstone Oil & Gas, Inc. | 07/09/07 | N / A | 10/09/08 |
| 07-01118 | Payne v. L & M Supply Corp. | *Lead BK:* 05-18230 Capstone Oil & Gas, Inc. | 07/09/07 | N / A | 10/09/08 |
| 07-01121 | Payne v. Weatherford Artificial Lift Systems, Inc. | *Lead BK:* 05-18230 Capstone Oil & Gas, Inc. | 07/09/07 | N / A | 10/09/08 |
| 07-01122 | Payne v. Wilcoxen Packer & Supply Co. | *Lead BK:* 05-18230 Capstone Oil & Gas, Inc. | 07/09/07 | N / A | 10/09/08 |
| 07-01123 | Payne v. Longhorn Service Company et al | *Lead BK:* 05-18230 Capstone Oil & Gas, Inc. | 07/09/07 | N / A | 10/09/08 |
| 07-01126 | Payne v. H & H Equipment & Sales, Inc. et al | *Lead BK:* 05-18230 Capstone Oil & Gas, Inc. | 07/09/07 | N / A | 10/09/08 |
| 07-01131 | Payne v. Brown & Borelli, Inc. | *Lead BK:* 05-18230 Capstone Oil & Gas, Inc. | 07/09/07 | N / A | 10/09/08 |
| 07-01132 | Payne v. Cox et al | *Lead BK:* 05-18230 Capstone Oil & Gas, Inc. | 07/10/07 | N / A | 10/09/08 |
| 07-01133 | Payne v. First Capital Bank et al | *Lead BK:* 05-18230 Capstone Oil & Gas, Inc. | 07/10/07 | N / A | 10/09/08 |
| 07-01134 | Payne v. First Capital Bank | *Lead BK:* 05-18230 | 07/10/07 | N / A | 10/09/08 |

| | | | | | |
|---|---|---|---|---|---|
| | | Capstone Oil & Gas, Inc. | | | |
| <u>07-01135</u> | Payne v. Capstone Oilfield Disposal Service, Inc. et al | *Lead BK:* 05-18230 Capstone Oil & Gas, Inc. | 07/10/07 | N / A | 10/09/08 |
| <u>07-01136</u> | Payne v. Holder et al | *Lead BK:* 05-18230 Capstone Oil & Gas, Inc. | 07/11/07 | N / A | 10/09/08 |
| <u>07-01137</u> | Payne v. First Capital Bank et al | *Lead BK:* 05-18230 Capstone Oil & Gas, Inc. | 07/11/07 | N / A | 10/09/08 |
| <u>07-01138</u> | Payne v. Tracy Tarrant, d/b/a Trace Oil, d/b/a Trace Oil Co | *Lead BK:* 05-18230 Capstone Oil & Gas, Inc. | 07/11/07 | N / A | 10/09/08 |
| <u>07-12910</u> | Tamara Lynn Allard | 7 | 08/14/07 | N / A | 03/28/08 |
| <u>08-01077</u> | Friedman v. Craig | *Lead BK:* 08-11152 Steven Lee Craig | 06/23/08 | N / A | 01/13/09 |
| <u>08-11152</u> | Steven Lee Craig | 7 | 03/25/08 | N / A | 01/22/09 |
| <u>08-13731</u> | Jimmie Dean Earley and Camelia Ruth Earley | 7 | 08/27/08 | N / A | 05/13/11 |
| <u>08-14559</u> | Iron Tree Trucking Inc | 11 | 10/15/08 | N / A | 12/02/10 |
| <u>08-14795</u> | Phillip Lynn Calfy | 7 | 10/29/08 | N / A | 11/20/09 |
| <u>08-15008</u> | Skin Rituals Body Piercing, LLC | 7 | 11/06/08 | N / A | 06/26/09 |
| <u>08-15258</u> | Florence Louise Gavigno | 7 | 11/21/08 | N / A | 08/18/09 |
| <u>09-10596</u> | Crossroads Wireless Holding, LLC and Crossroads Wireless, Inc. | 11 | 02/13/09 | N / A | 08/01/12 |
| <u>10-13881</u> | Twin Lakes Apartments, LLC | 11 | 06/25/10 | N / A | 07/10/13 |
| <u>10-16682</u> | Macco Properties, Inc. | 7 | 11/02/10 | N / A | 08/17/17 |
| <u>11-01053</u> | Official Unsecured Creditors' Committee v. AP Bristol Park Apartments, LLC et al | *Lead BK:* 10-16682 Macco Properties, Inc. | 04/07/11 | N / A | 09/24/15 |
| <u>11-01099</u> | Price v. Deeba | *Lead BK:* 10-16682 Macco Properties, Inc. | 07/06/11 | N / A | 04/08/15 |
| <u>11-10717</u> | Brookshire Place, LLC | 11 | 02/23/11 | N / A | 12/17/12 |
| <u>12-10356</u> | Southern Oaks of Oklahoma LLC | 11 | 01/31/12 | N / A | 09/19/16 |
| <u>13-01013</u> | Official Unsecured Creditors' Committee v. McGinnis et al | *Lead BK:* 10-16682 Macco Properties, | 02/01/13 | N / A | 04/30/14 |

| | | Inc. | | | |
|---|---|---|---|---|---|
| <u>13-11456</u> | GMX Resources, Inc. | 11 | 04/01/13 | N / A | 09/18/19 |
| <u>14-14030</u> | Hillary Watkins | 7 | 09/28/14 | N / A | 02/05/15 |
| <u>15-01077</u> | Madden v. Bancfirst, c/o Black Gold Logistics Corporation | *Lead BK:* 13-11456 GMX Resources, Inc. | 03/27/15 | N / A | 11/23/15 |
| <u>15-12215</u> | David A Stewart and Terry P Stewart | 7 | 09/30/14 | N / A | N / A |
| <u>15-12216</u> | Terry P Stewart | 7 | 09/30/14 | N / A | N / A |
| <u>15-13979</u> | P & P Acquisitions LLC | 7 | 10/16/15 | N / A | 03/15/16 |
| <u>16-01002</u> | Gould v. Stewart et al | *Lead BK:* 15-12215 David A Stewart and Terry P Stewart | 01/05/16 | N / A | N / A |
| <u>16-01087</u> | SE Property Holdings, LLC v. Stewart et al | *Lead BK:* 15-12215 David A Stewart and Terry P Stewart | 08/26/16 | N / A | N / A |
| <u>16-01117</u> | SE Property Holdings, LLC v. Stewart et al | *Lead BK:* 15-12215 David A Stewart and Terry P Stewart | 11/22/16 | N / A | N / A |
| <u>16-14226</u> | Foundation Healthcare Affiliates, L.L.C. | 11 | 10/20/16 | N / A | 12/20/17 |
| <u>18-12776</u> | Thomas Ray Snow, II and Jennifer Noelle Snow | 7 | 06/29/18 | N / A | 02/07/19 |
| <u>20-10550</u> | Sandra D. Johnson | 13 | 02/23/20 | N / A | N / A |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/17/2021 08:56:36 | | | |
| **PACER Login:** | rustywelch:2561525:0 | **Client Code:** | 1100-8005 |
| **Description:** | Search | **Search Criteria:** | LName: welch FName: ruston |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |