## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

IN RE:

DAVID A. STEWART and
TERRY P. STEWART,

Debtors.

Case No. 15-12215-JDL
(Chapter 7)

### DEBTORS' RESPONSES TO CREDITOR SE PROPERTY HOLDINGS, LLC'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEBTORS DAVID A. STEWART AND TERRY P. STEWART

COMES NOW, David A. Stewart and Terry P. Stewart ("Debtors") and responds to *Creditor SE Property Holdings LLC's First Set Of Interrogatories And Requests For Production Of Documents To Debtors David A. Stewart And Terry P. Stewart* as follows:

### GENERAL OBJECTIONS

(a)     Debtors object to each discovery request to the extent that it seeks any document prepared in anticipation of litigation or for trial or that is otherwise covered by attorney work-product privilege or subject to or falls within the scope of the attorney/client privilege and will not produce information or documents protected from discovery by virtue of any such privileges.

(b)     Debtors object to each discovery request to the extent that it seeks any document containing confidential, sensitive and/or proprietary information and will not produce such documents.

(c)     Debtors object to each discovery request to the extent that it pertains to, or is inclusive of, entities other than the Debtors, including present or former affiliates or agents that are not parties to this litigation. These answers are only those of Debtors.

(d)     Debtors object to each discovery request to the extent that production of "all documents," "referring to," "relating to," or "concerning" the subject matter as being beyond the scope of this contested matter. Such requests are too broad, indefinite and consequently unduly

EXHIBIT
G

EXHIBIT
A

burdensome or oppressive because they cover a potentially vast number of documents, many of which are confidential, irrelevant or not reasonably calculated to lead to the discovery of admissible evidence. In response to such requests, Debtors will produce documents otherwise producible or that are relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

(e)     Debtors object to each discovery request to the extent that it may be interpreted to be unlimited or not properly limited in time. Debtors' answers to these requests will be limited to documents created over a period of time relevant to the contested matter.

(f)     Debtors object to each discovery request to the extent that it seeks documents not under Debtors' control.

(g)     Debtors object to each request to the extent that it states or seeks a legal conclusion.

Each of the foregoing general objections are incorporated by reference into the following specific responses/objections.

**INTERROGATORY NO. 1:** State the agreement, beginning in June 2015 and in any subsequent modifications thereof, between the Stewarts and the Welch Parties, regarding the Welch Parties' compensation for legal services to the Debtors in this bankruptcy proceeding, including the expected or planned sources of said compensation, the hourly rates or flat fees, the invoicing schedule, and payment terms (including the date when payment was due after invoicing.)

**RESPONSE TO INTERROGATORY NO. 1:** See, June 2015 Representation Agreement [Doc. 522-3]. Debtors anticipated paying for Mr. Welch's services from post-petition income. See, Representation Agreement [Doc. 522-4] ("Affiliate Representation Agreement").

By then, the expanded scope of claims against related parties and affiliates required expanding the representation and warranted guaranties by affiliates. The intended sources of compensation were then Debtors or affiliates other than property of the estate.

**INTERROGATORY NO. 2:** State the date(s) the Stewarts first knew or learned that the Welch Parties did not inform the Trustee, SEPH, or the Bankruptcy Court in August 2016 that the Welch Parties had received Neverve's and/or Shimmering Sands' BP monies and the date(s) the Stewarts first knew or learned that the Welch Parties did not turn said BP monies over to either the Trustee as property of the estate or SEPH based on its security interest therein.

**RESPONSE TO INTERROGATORY NO. 2:** Debtors are aware, but do not recall the date, when Welch had discussions with the Trustee. Debtors knew, but do not recall when, the Trustee claimed no interest in the BP monies.

**INTERROGATORY NO. 3:** State whether the Stewarts have received any BP monies, and if so, state the date(s) the BP monies were wired, transferred, or distributed to the Stewarts, the person or entity that possessed and/or owned the BP monies immediately prior the wire, transfer, or distribution to the Stewarts, the reason the Stewarts and/were holding the funds, the account into which the BP monies were wired, transferred, or deposited on behalf of the Stewarts, and the account in which the BP monies are presently located, hold, or otherwise deposited. If the Stewarts no longer have the BP monies, state the date(s) the Stewarts distributed or transferred the monies, the person to whom the funds were disbursed or transferred, and the reason(s) for the disbursement or transfer. For each account identified, state: the account number, the name of the financial institution, the branch of the financial institution, the address of the financial institution, and the name, address, date of birth, and social security number/taxpayer identification number/employer identification number of the account holder(s).

3

**RESPONSE TO INTERROGATORY NO. 3:** Debtors recall receiving some funds within approximately 6 months of the BP oil spill. Debtors do not recall the amount or date but believe the funds to have been less than $30,000 because Debtors owned some real property in the are of the BP oil spill.

**INTERROGATORY NO. 4:** Identify each act or communication with, on behalf of, or at the direction of Neverve and/or Shimmering Sands by the Stewarts, from April 1, 2015 through present.

**RESPONSE TO INTERROGATORY NO. 4:** Debtors object to Interrogatory No. 4 on the grounds that it is too broad, unduly burdensome, vague and lacks sufficient particularity. Further, Debtors object because the request is not relevant or proportional to the needs of this case. Requiring Debtors to identify each "act" or "communication" on behalf of, or at the direction of Neverve and/or Shimmering Sands by David Stewart as a debtor and also as a manager of Neverve and Shimmering Sands is virtually impossible. The Trustee expressly declined to assume any management role in either of these entities. Between April 1, 2015 to the present, there were hundreds if not thousands of "acts" and "communications" on numerous topics including numerous affiliated entities, including Neverve and Shimmering Sands. More often than not one "communication" would address numerous topics and entities. David Stewart wore many hats, personally and as manager of numerous entities. The topics and entities involved his role in each of those entities. The dates of most, but not all, communications are documented in the time records in [Docs. 522-5 and 585-1].

The substance of the communications are subject to a claim of attorney client privilege that has not been waived. In addition, all aspects of the BP claims settlement process are subject to the Confidentiality Order. There have been numerous hearings in which evidence has been

admitted dealing with Neverve or Shimmering Sands' legal rights. Those acts are reflected in the multiple transcripts and are equally available to all parties. No claim of privilege is made as to those acts. Beyond that description, Debtors are unable to answer Interrogatory No. 4 more specifically. Debtors respectfully show the Court that the Shimmering Sands BP settlement proceeds are beyond the scope of this disgorgement action and, therefore, object to that part of this Interrogatory.

**INTERROGATORY NO. 5:** Identify each act and/or communication with, or on behalf of, or at the direction of, the following entities by the Stewarts, related to the settlement of those entities' BP claims and/or to the transfer, distribution, and/or payment of those entities' BP monies to the Welch Parties or any other person, from April 1, 2015 through the present: Neverve, Shimmering Sands, S&S, and Zeke's Lady.

**RESPONSE TO INTERROGATORY NO. 5:** See response to Interrogatory No. 9 as to Neverve and Shimmering Sands which equally apply to S&S, LLC and Zeke's Lady. Any "acts" or "communications" involving S&S, LLC or Zeke's Lady would have occurred primarily between April 18, 2016 and August 3, 2016 with additional acts or communications both before and after. Debtors' counsel handled the settlement of those claims. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. Debtors respectfully show the Court that the Shimmering Sands BP settlement proceeds are beyond the scope of this disgorgement action and therefore object to that part of this Interrogatory.

**INTERROGATORY NO. 6:** Identify each act and/or communication with, or on behalf of, or at the direction of, the Stewarts relating to the Neverve Judgment and the legal effects of the Neverve Judgment as to Neverve's BP claim and BP monies. Debtors object to any information responsive to this request that is subject to attorney client privilege.

**RESPONSE TO INTERROGATORY NO. 6:** Debtors only communicated with Welch. The "acts" and "communications" involving the Neverve Judgment are partially reflected in Welch's time records. Welch reviewed the Neverve judgment and determined it had no legal effect on the Neverve BP claim and potential recovery. The claims were resolved with that understanding. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order.

**INTERROGATORY NO. 7:** Identify each act and/or communication with, or on behalf of, or at the direction of, the Stewarts relating to the Second Supplement, the legal effects of the Second Supplement as to Neverve's, S&S' and/or Shimmering Sands' BP claims and BP monies, and SEPH's asserted security interest thereunder.

**RESPONSE TO INTERROGATORY NO. 7:** The "acts" and "communications" involving the Second Supplement are partially reflected in Welch's time records. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. Independent of the opt out negotiations, WLF reviewed the Second Supplement and determined it had no legal effect on Neverve's or Shimmering Sands' BP claims or BP monies. The independent review further determined that the Second Supplement, along with the UCC filings, did have a legal effect of evidencing a security interest in 50% of the S&S, LLC's BP claim and recovery. The legal effect of the SEPH claims on the P&P Acquisitions, LLC BP claim and recovery was subject to a prior legal determination and also considered. These claims were resolved in accordance with these understandings.

Welch had subsequent acts and communications with Trustee Terri Owens regarding the BP proceeds of S&S, LLC and Zeke's Lady, LLC and with Von Memory regarding the balance of BP proceeds of S&S, LLC. These acts can be found in Welch's time records filed or

Case: 15-12215  Doc: 804-1  Filed: 03/11/21  Page: 7 of 20

documents to be produced. The Shimmering Sands BP claims are outside the scope of this contested matter.

**INTERROGATORY NO. 8:** Describe and state the value of all consideration the Stewarts gave Neverve and/or Shimmering Sands for executing the Representation Agreement (dated June 17, 2015, but allegedly signed by Stewart in January 2016 and bearing a purported effective date of June 12, 2015) and thereby guaranteeing payment of the Stewarts' individual bankruptcy legal fees owed to the Welch Parties.

**RESPONSE TO INTERROGATORY NO. 8:** Object, not relevant and not likely to lead to discoverable evidence.

**INTERROGATORY NO. 9:** Describe and state the value of all consideration the Stewarts gave Neverve and/or Shimmering Sands for authorizing and agreeing to the distribution or transfer of Neverve's and/or Shimmering Sands' BP monies from WLF's IOLTA account to Welch, Kirkpatrick Bank, or any other person.

**RESPONSE TO INTERROGATORY NO. 9:** Object, not relevant and not likely to lead to discoverable evidence.

**INTERROGATORY NO. 10:** Identify all written and oral agreements, including modifications thereof, between the Stewarts and the Welch Parties, between April 1, 2015 through the present, regarding the Welch Parties' representation of the Stewarts.

**RESPONSE TO INTERROGATORY NO. 10:** See, June 2015 Representation Agreement [Doc. 522-3]. Debtors anticipated paying for Mr. Welch's services from post-petition income. See, Representation Agreement [Doc. 522-4] ("Affiliate Representation Agreement"). By then, the expanded scope of claims against related parties and affiliates required expanding

Case 2:15-12215-DPC Doc 804-1 Filed 03/11/21 Page 8 of 20

the representation and warranted guaranties by affiliates. The intended sources of compensation were then Debtors or affiliates other than property of the estate.

**INTERROGATORY NO. 11:** Identify all payments by date and amount that Neverve made to the Welch Parties at the direction, or on behalf, of the Stewarts, from April 1, 2015 through the present, and whether the payments were for services rendered to the Stewarts or to another person.

**RESPONSE TO INTERROGATORY NO. 11:**

No BP monies were ever transferred from WLF's IOLTA account to Welch. The details of the flow of funds and supporting information has previously been provided in this case, including [Docs. 461, 464, 522, 579, 585, 598]. The only payments by Neverve were from BP funds from the WLF IOLTA trust account to WLF were applied to the combined billing of Stewarts' bankruptcy cases and affiliates' representation from approximately June 15, 2015 to October 2017. The dates, amounts and payee of payments from the WLF IOLTA has also been previously produced to SEPH and are restated below:

| Date | Description | Amount |
|---|---|---|
| 8/3/2016 | Payment to WLF | ($5,940.00) |
| 8/3/2016 | Payment to WLF | ($14,010.00) |
| 8/4/2016 | Payment to WLF | ($42,915.00) |
| 9/15/2016 | Payment to WLF | ($16,570.32) |
| 9/22/2016 | Payment to WLF | ($10,000.00) |
| 9/23/2016 | Payment to WLF | ($5,000.00 |
| 9/29/2016 | Payment to WLF | ($15,000.00) |
| 10/12/2016 | Payment to WLF | ($4,507.96) |
| 10/31/2016 | Payment to WLF | ($15,000.00 |
| 11/9/2016 | Check 1112 to Dodson Ct. Rpt | ($782.85) |
| 11/15/2016 | Payment to WLF | ($5,000.00) |
| 11/25/2016 | Payment to WLF | ($10,000.00) |
| 11/29/2016 | Payment to WLF | ($10,000.00) |
| 12/7/2016 | Payment to WLF | ($10,000.00) |
| 12/29/2016 | Payment to WLF | ($15,000.00) |
| 2/24/2017 | Payment to WLF | ($13,000.00 |
| 4/24/2017 | Payment to WLF | ($15,000.00) |

| | | |
|---|---|---|
| 5/1/2017 | Payment to WLF | ($10,000.00) |
| 5/2/2017 | Payment to WLF | ($5,000.00) |
| 5/16/2017 | Payment to WLF | ($5,000.00) |
| 5/23/2017 | Payment to WLF | ($10,000.00) |
| 5/31/2017 | Payment to WLF | ($10,000.00) |
| 6/9/2017 | Payment to WLF | ($5,000.00) |
| 7/24/2017 | Payment to WLF | ($5,000.00) |
| 7/31/2017 | Payment to WLF | ($15,000.00) |
| 8/17/2017 | Payment to WLF | ($5,000.00) |
| 9/13/2017 | Payment to WLF | ($68,461.13) |
| 10/5/2017 | Check 1134 to J. Ring, Ct. Rpt | ($1,089.90) |
| 5/3/2018 | Payment to WLF | ($44,742.26) |
| 6/29/2018 | Payment to WLF | ($25,109.70) |

**INTERROGATORY NO. 12:** Identify all payments by date and amount that Shimmering Sands made to the Welch Parties at the direction, or on behalf, of the Stewarts, from April 1, 2015 through the present, and whether the payments were for services rendered to the Stewarts or to another person.

**RESPONSE TO INTERROGATORY NO. 12:** There were no payments made by Shimmering Sands to the Welch Parties.

**INTERROGATORY NO. 13:** Identify all documents the Stewarts contend constitutes Neverve's guaranty of, or obligation to indemnify or pay contribution to, the Stewarts in any capacity.

**RESPONSE TO INTERROGATORY NO. 13:** See the Affiliate Representation Agreement [Doc. 522-4], and 2006 Operating Agreement.

**INTERROGATORY NO. 14:** Identify all documents the Stewarts contend constitutes Shimmering Sands' guaranty of, or obligation to indemnify or pay contribution to, the Stewarts in any capacity.

**RESPONSE TO INTERROGATORY NO. 14:** Shimmering Sands is not relevant to this action. No documents will be identified or produced.

9

**INTERROGATORY NO. 15:** Identify all acts and communication with the Trustee, George Skipper, Von Memory and/or Bill Barranco related to Neverve and/or S&S in any way, including Neverve's and/or S&S' BP claims and/or settlements (including the value, ownership, right to control, receipt, distribution and/or transfer thereof); Neverve's and/or S&S' members and/or managers; proposed or actual changes of Neverve's and/or S&S' members, managers, and/or membership interests; tax returns, forms, and documents and/or other tax matters; the Neverve Judgment; the Second Supplement; and SEPH's asserted security interest in Neverve's and/or S&S' BP claims and/or BP monies.

**RESPONSE TO INTERROGATORY NO. 15:** The acts and communications with the Trustee and some with Von Memory and Bill Barranco were discussed and detailed in the lengthy hearing on the Compromise Motion and have been the subject of discovery and depositions of the Debtors are equally available to SEPH's counsel. The acts and communications are partially contained in the invoice time entries that have been produced [Doc. 522-5 and 585-1] and the documents to be produced including subsequent invoices and emails with Trustee Douglas Gould, Von Memory and/or Bill Barranco.

**INTERROGATORY NO. 16:** Identify all acts and communication with the Trustee, Troy Martin, George Drew, Bart Boren, and/or Kirkpatrick Bank related to Shimmering Sands' BP claim and/or settlement (including the value, ownership, right to control, receipt, distribution and/or transfer thereof); Shimmering Sands' loans guaranties, pledges, or other dept obligations, financing statements, and mortgages or other security instruments; the Second Supplement; and/or SEPH's asserted security interest in Shimmering Sands' BP claims and BP monies.

**RESPONSE TO INTERROGATORY NO. 16:** The Shimmering Sands BP monies and financial documents are outside the scope of this contested matter, and therefore are irrelevant.

10

SEPH has never asserted a security interest in the Shimmering Sands BP claim or settlement proceeds. Documents evidencing acts and communications regarding Kirkpatrick Bank and Shimmering Sands have been produced and the subject of hearings. The specifics of the BP negotiations and settlements are subject to the Confidentiality Oder.

**INTERROGATORY NO. 17:** Identify all persons, entities, and/or documents the Stewarts consulted or relied upon, in whole or in part, to answer or to assist you in answering these interrogatories.

**RESPONSE TO INTERROGATORY NO. 17:** Gary D. Hammond, Legal Counsel. Documents that are exhibits to the hearings on the Motion to Approve Settlement Compromise and Motion to Abandon and pleadings in this case and discovery in related cases were considered.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:** Produce all written agreements, including modifications thereof, between the Stewarts and the Welch Parties, between April 1, 2015 through the present, regarding the Welch Parties' representation of the Stewarts.

**RESPONSE TO REQUEST NO. 1:** See, initial Representation Agreements [Doc. 585-1] and Neverve Representation Agreement [Doc. 694-1]. See also, Taylor Martino fee agreements and Fee Sharing Agreements with Welch [Doc. 522-7]. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. Debtors object to the production of any documents subject to the attorney client privilege.

**REQUEST NO. 2:** Produce all documents in which Neverve agrees or authorizes the use of its BP monies to pay the Stewarts' attorney's fees owed to the Welch Parties in this

bankruptcy proceeding, and all communication related thereto, from April 1, 2015 through the present.

**RESPONSE TO REQUEST NO. 2:** See, initial Representation Agreements [Doc. 585-1] and Neverve Representation Agreement [Doc. 694-1]. See also, Taylor Martino fee agreements and Fee Sharing Agreements with Welch [Doc. 522-7]. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. Debtors object to the production of any documents subject to the attorney client privilege.

**REQUEST NO. 3:** Produce all documents in which Shimmering Sands agrees or authorizes the use of its BP monies to pay the Stewarts' attorney's fees owed to the Welch Parties in this bankruptcy proceeding, and all communications related thereto, from April 1, 2015 through the present.

**RESPONSE TO REQUEST NO. 3:** Shimmering Sands is not relevant to this action. See, Representation Agreements. Documents, including emails with Kirkpatrick Bank, Kirkpatrick Bank Security Agreement and UCC filings have been produced and any additional documents responsive will be produced.

**REQUEST NO. 4:** Produce all documents the Stewarts contend constitutes Neverve's guaranty of, or obligation to indemnify or pay contribution to, the Stewarts in any capacity, and all communications related thereto, from April 1, 2015 through the present.

**RESPONSE TO REQUEST NO. 4:** See Affiliate Representation Agreement [Doc. 522-4], and 2006 Neverve Operating Agreement.

**REQUEST NO. 5:** Produce all documents the Stewarts contend constitutes Shimmering Sands guaranty of, or obligation to indemnify or pay contribution to, Stewart in any capacity, and all communications related thereto, from April 1, 2015 through the present.

12

**RESPONSE TO REQUEST NO. 5:** Shimmering Sands is not relevant to this action.

**REQUEST NO. 6:** Produce all documents and communications related to any consideration the Stewarts gave Neverve for executing the Representation Agreement (dated June 17, 2015, but allegedly signed by Stewart in January 2016 and bearing a purported effective date of June 12, 2015) and thereby guaranteeing payment of the Stewarts' attorney's fees owed to the Welch Parties in this bankruptcy proceeding.

**RESPONSE TO REQUEST NO. 6:** See Response to Interrogatory No. 8. Representation Agreement [Doc. 522-3], Affiliate Representation Agreement [Doc. 585-1] and Neverve Representation Agreement [Doc. 694-1]. See also, Taylor Martino fee agreements and Fee Sharing Agreement [Doc. 522-7], and invoices [Docs. 522-5 and 585-1] and invoices to be produced.

**REQUEST NO. 7:** Produce all documents and communications related to any consideration the Stewarts gave Shimmering Sands for executing the Representation Agreement (dated Jne 17, 2015, but allegedly signed by Stewart in January 2016 and bearing a purported effective date of June 12, 2015) and thereby guaranteeing payment of the Stewarts' attorney's fees owed to the Welch Parties in this bankruptcy proceeding.

**RESPONSE TO REQUEST NO. 7:** Shimmering Sands is not relevant to this action.

**REQUEST NO. 8:** Produce all timesheets, billing statements, and invoices related to or arising out of the Welch Parties' representation of the Stewarts, from April 1, 2015 through the present.

**RESPONSE TO REQUEST NO. 8:** Debtors object to the scope of the Request to the extent that is seeks documents that are not relevant to this contested matter and that are subject to the attorney client privilege. See, invoices [Docs. 522-5 and 585-1] and invoices to be produced

13

up to the date of any payment credited. Invoices to which payments have been made after disclosed filings will be produced by Welch.

**REQUEST NO. 9:** Produce all documents evidencing any consideration the Stewarts gave Neverve for authorizing or agreeing to the transfer, distribution, remittance, and/or payment of Neverve's BP monies from the Welch Parties' IOLTA account to Welch or any other person, and all communications related thereto, from April 1, 2015 through the present.

**RESPONSE TO REQUEST NO. 9:** No monies were ever transferred from WLF's IOLTA account to Welch. See, Representation Agreements [Docs. 522-3, 522-4, 522-7], and the legal services rendered as described in the invoices in [Docs. 522-5 and 585-1], pleadings and exhibits in connection with the Motion to Approve Settlement and Compromise and Motion to Abandon and invoices to be produced. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order.

**REQUEST NO. 10:** Produce all documents evidencing any consideration the Stewarts gave Shimmering Sands for authorizing or agreeing to the transfer, distribution, remittance, and/or payment of Shimmering Sands' BP monies from the Welch Parties' IOLTA account to Welch or any other person, and all communications related thereto, from April 1, 2015 through the present.

**RESPONSE TO REQUEST NO. 10:** No monies were ever transferred from WLF's IOLTA account to Welch. See Representation Agreements [Docs. 522-3, 522-4, 522-7] and the legal services rendered as described in the invoices [Docs. 522-5 and 585-1], pleadings and exhibits in connection with the Motion to Approve Settlement and Compromise and Motion to Abandon and invoices to be produced. The specifics of the BP negotiations and settlements are subject to the Confidentiality Order.

**REQUEST NO. 11:** To the extent not otherwise produced herein, produce all communications, and documents related thereto, relating to the Neverve Judgment and the legal effects of the Neverve Judgment as to Neverve's BP claim and BP monies.

**RESPONSE TO REQUEST NO. 11:** The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. Debtors relied on Debtors' counsel to handle all communications and documents.

**REQUEST NO. 12:** Produce all communications, and documents related thereto, relating to the Second Supplement, the legal effects of the Second Supplement as to Neverve's, S&S' and/or Shimmering Sands' BP claims and BP monies, and SEPH's asserted security interest thereunder.

**RESPONSE TO REQUEST NO. 12:** The specifics of the BP negotiations and settlements are subject to the Confidentiality Order. Debtors relied on Debtors' counsel to handle all communications and documents. Assuming an agreement is reached between Welch and SEPH regarding the production of certain emails set forth in Welch's Discovery Responses, Debtors have no objection to the production of such documents, subject to the satisfactory resolution of the Confidentiality Order. Debtors object to the production of any other documents that are subject to the attorney client privilege and will not produce such documents.

**REQUEST NO. 13:** Produce all communications, and documents related thereto, with the Trustee, George Skipper, Von Memory, and/or Bill Barranco related to Neverve and/or S&S in any way, including Neverve's and/or S&S's BP claims and/or settlements (including the value, ownership, right to control, receipt, distribution and/or transfer thereof); Neverve's and/or S&S' members and/or managers; proposed or actual changes of Neverve's and/or S&S' members, managers, and/or membership interests; tax returns, forms, and documents and/or

other tax matters; the Neverve Judgment; the Second Supplement; and SEPH's asserted security interest in Neverve's and/or S&S' BP claims and/or BP monies.

**RESPONSE TO REQUEST NO. 13:** Documents have been previously produced to SEPH in the Florida litigation.

**REQUEST NO. 14:** Produce all documents and communications with the Trustee, Troy Martin, George Drew, Bart Boren, and/or Kirkpatrick Bank related to Shimmering Sands' BP claim and/or settlement (including the value, ownership, right to control, receipt, distribution and/or transfer thereof); Shimmering Sands' loans, guaranties, pledges, or other debt obligations, financing statements, and mortgages or other security instruments; the Second Supplement; and/or SEPH's asserted security interest in Shimmering Sands' BP claims and BP monies.

**RESPONSE TO REQUEST NO. 14:** SEPH never asserted a security interest in Shimmering Sands BP claims or recovery. As to the Trustee: See transcripts of Doug Gould's depositions and hearing testimony; Troy Martin – None; George Drew and Bart Boren – as to BP claims, documents will be produced. Over 5 years there have been numerous communications, generally relating to Shimmering Sands Development Company, LLC, none of which are relevant or reasonably likely to lead to relevant information to this contested matter.

**REQUEST NO. 15:** Produce all documents referenced, consulted, or relied upon to answer SEPH's interrogatories set out above.

**RESPONSE TO REQUEST NO. 15:** See all exhibits, pleadings and produced documents.

Respectfully submitted,

_____
GARY D. HAMMOND, #013825

OF COUNSEL:

MITCHELL& HAMMOND
An Association of Professional Entities
512 N.W. 12th Street
Oklahoma City, Oklahoma 73103
405.216.0007 Telephone
405.232.6358 Facsimile
gary@okatty.com  Email
**ATTORNEYS FOR DAVID STEWART
AND TERRY STEWART**

# CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2021, a true and correct copy of this document was emailed and mailed, postage prepaid to:

Joshua D. Burns
Crowe & Dunlevy, P.C.
324 N. Robinson, Ste. 100
Oklahoma City, OK 73102
Email: Joshua.burns@crowedunlevy.com

Richard M. Gaal
McDowell, Knight, Roedder & Sledge
Post Office Box 350 (36601)
11 North Water Street, Suite 13290
Mobile, AL 36602
Email: rgaal@mcdowellknight.com

William H. Hoch
Crowe & Dunlevy
Braniff Building
324 North Robinson Ave., Suite 100
Oklahoma City, OK 73102
Email: will.hoch@crowedunlevy.com

Samuel Fraser Reid, III
McDowell Knight Roeder & Sledge LLC
Post Office Box 350
Mobile, AL 36601
Email: freid@mcdowellknight.com

Douglas N. Gould
5500 N. Western Ave., Ste. 150
Oklahoma City, OK 73118
Email: dg@dgouldlaw.net

David A. Cheek
Cheek & Falcone, PLLC
6301 Waterford Blvd., Suite 320
Oklahoma City, OK 73118-1168
Email: dcheek@cheekfalcone.com

Case 15-1221E Doc: 804-1 Filed 03/11/21 Page 19 of 20

Judy Hamilton Morse
Crowe & Dunlevy, P.C.
324 N. Robinson, Ste. 100
Oklahoma City, OK 73102
Email: judy.morse@crowedunlevy.com

Bart A. Boren
Williams, Boren & Associates, PC
401 North Hudson, Suite 200
Oklahoma City, OK 73102
Email: bboren100@gmail.com

Kiran A. Phansalkar
Conner & Winters, P.C.
211 North Robinson, Ste. 1700
Oklahoma City, OK 73102
Email: kphansalkar@cwlaw.com

Mark B. Toffoli
The Gooding Law Firm
A Professional Corporation
204 North Robinson, Suite 650
Oklahoma City, OK 73102
Email: mtoffoli@goodingfirm.com

Christopher M. Staine
Crowe & Dunlevy, P.C.
324 N. Robinson, Ste. 100
Oklahoma City, OK 73102
Email: christopher.staine@crowedunlevy.com

Gary D. Hammond, OBA# 13825

Case: 15-12215  Doc: 804-1  Filed: 03/11/21  Page: 20 of 20

# VERIFICATION

STATE OF Maryland )
)ss.
COUNTY OF St. Mary's )

We, David A. Stewart and Terry P. Stewart, of legal age, being first duly sworn and upon

oath state:

1.      That we have reviewed Debtors' Responses to Creditor SE Property Holdings,

LLC's First Set of Interrogatories and Requests for Production of Documents to Debtors David

A. Stewart and Terry P. Stewart, and we believe the answers to be true and accurate.

SIGNED this 24th day of February 2021.

_____
DAVID A. STEWART

_____
TERRY P. STEWART

SUBSCRIBED AND SWORN to before me on this the 24th day of February 2021.

_____
NOTARY PUBLIC

My Commission Feb 25, Expires:
2023

[SEAL]