# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SE PROPERTY HOLDINGS, LLC, <br>   as successor by merger with Vision <br>   Bank, <br>         Plaintiff, <br><br> v. <br><br> RUSTON C. WELCH, and <br> WELCH LAW FIRM, P.C., <br><br>         Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     Civil Action No. 5:19-852-PRW <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## SE PROPERTY HOLDINGS, LLC'S MOTION TO COMPEL WELCH DEFENDANTS TO RESPOND TO INTERROGATORIES AND PRODUCE DOCUMENTS AND BRIEF IN SUPPORT

Plaintiff SE Property Holdings, LLC, as successor by merger with Vision Bank ("SEPH"), moves to compel, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, Defendants Ruston C. Welch ("Welch") and Welch Law Firm, P.C. ("WLF") (collectively, the "Welch Defendants") to respond to interrogatories and produce documents. The Welch Defendants refuse to respond to numerous interrogatories and requests for production on the grounds of attorney-client privilege, work product, confidentiality and/or that such interrogatories and document requests seek information amounting to legal conclusions.[1] However, given SEPH's allegations of fraudulent transfer against the Welch Defendant and the relevance of the material sought to claims of fraud, the crime-fraud exception to the attorney-client privilege applies to the discovery sought by SEPH. Furthermore, SEPH is seeking factual information regarding whether certain

---

[1] Copies of Welch and WLF's discovery responses are attached hereto as "Exhibit A" and "Exhibit B" respectively. The responses are essentially identical other than changing the name of the responding party. Therefore, SEPH cites to the Welch discovery responses herein but seeks an order compelling both Welch Defendants.

**EXHIBIT M**

legal issues were discussed among the Welch Defendants and Neverve, LLC ("Neverve"). The information sought by SEPH is discoverable under the Federal Rules of Civil Procedure and is not privileged. Accordingly, SEPH respectfully requests the Court enter an order compelling the Welch Defendants to respond to the interrogatories and produce documents. In further support, SEPH states:

## FACTUAL BACKGROUND AND DISCOVERY AT ISSUE

1. On September 13, 2019, SEPH filed a Complaint against the Welch Defendants asserting claims, *inter alia*, for fraudulent transfer and conversion related to BP settlement proceeds due to Neverve arising out of the April 2010 Deepwater Horizon oil spill. Welch used these proceeds to pay Welch Defendants' attorneys fees in representing David A. Stewart ("Stewart"), his wife, Terry P. Stewart, and their affiliated entities in various matters, including the Stewarts' Chapter 7 bankruptcy case (the "Bankruptcy Case"). (Doc. 1.)

2. As explained more fully in the Complaint, SEPH has a security interest over the BP claims and proceeds of all entities that Stewart owned directly or indirectly, including Neverve, pursuant to the Second Supplement to Loan Documents ("Second Supplement") executed on or about June 23, 2011. (Doc. 1, ¶¶ 16-23).

3. SEPH also holds a judgment against Neverve (the "Neverve Judgment") for approximately $20 million dollars. (Doc. 1, ¶¶ 12-15).

4. Welch began representing David and Terry Stewart in the Bankruptcy Case in June 2015, triggering his responsibility to make certain disclosures required by 11 U.S.C. § 329 and Federal Rule of Bankruptcy 2016. Specifically, Welch was required to disclose his representation agreements with the Stewarts, the amount of his compensation, and the source of compensation. (*Id.*). These authorities required Welch to make subsequent disclosures "within 14 days after any

2

payment or agreement not previously disclosed." Rule 2016(b). In August 2016, Welch Law Firm received into the law firm's IOLTA account two wire transfers consisting of Neverve's BP settlement proceeds. The first wire transfer (in the amount of $73,638.45) represented the Welch Defendants' alleged but unauthorized contingency fee, which they purportedly received pursuant to a fee sharing agreement for their representation of Neverve in the BP litigation. The second wire transfer (in the amount of $275,572.27) represented Neverve's net proceeds from Neverve's BP claim. SEPH's security interest attached to the Neverve BP monies (to the $73,638.45 and to the $275,572.27).

5. Despite the Bankruptcy Trustee in the Stewarts' Bankruptcy Case being an owner of Neverve and despite SEPH having a security interest in the Neverve BP proceeds, Welch, Welch Law Firm, Neverve, and Stewart concealed the existence of the Neverve BP proceeds from the Bankruptcy Trustee and SEPH.

6. The Welch Defendants used Neverve's BP proceeds to pay the Stewarts' bankruptcy attorneys fees that the Stewarts owed to the Welch Defendants. Specifically, the Welch Defendants double-credited the contingency attorneys fees they allegedly earned in the BP litigation toward their Bankruptcy attorneys fees owed by the Stewarts, and the Welch Defendants also transferred Neverve's BP net proceeds to themselves to pay the Stewarts' personal bankruptcy attorneys fees.

7. The Welch Defendants actively concealed their receipt and transfer to themselves of the Neverve BP proceeds in many ways over a protracted period. The primary means of concealment was Welch's intentional failure to file the required disclosures under § 329 and Rule 2016 of his representation agreements (including the representation agreement in which Neverve purported to guarantee payment of the Stewarts' personal bankruptcy attorney's fees), the amount

3

of his compensation, and the source of his compensation. The Tenth Circuit Court of Appeals found Welch's failure to make the mandatory disclosures for two years to be "egregious", observing that Welch finally filed such disclosures only after the Bankruptcy Court ordered him to do so. *See In re Stewart*, 970 F.3d 1255, 1268 (10th Cir. 2020).[2] (See also, Doc. 1, ¶¶ 24-37.)

8. Once Welch finally filed the disclosures after being so ordered by the Bankruptcy Court, SEPH moved the Bankruptcy Court to sanction Welch for his failure to file required disclosures and to require Welch to disgorge all of his compensation (at that point, approximately $350,000) for this failure, in accordance with Tenth Circuit law. The Bankruptcy Court sanctioned Welch in the amount of $25,000. *See* 970 F.3d at 1262. SEPH appealed, arguing that Tenth Circuit law required disgorgement of all of Welch's compensation.

9. Ultimately, the Tenth Circuit reversed the Bankruptcy Court, and in its opinion noted that a key issue for the Bankruptcy Court to examine on remand was Welch's intent in failing to disclose the payment to Welch of Neverve's funds. For example, the Tenth Circuit stated that SEPH's claim of a security interest in Neverve's BP settlement proceeds may have caused Welch "sufficient concern to induce him to avoid challenges by keeping the payments secret." *Id.* at 1269. The Tenth Circuit additionally questioned the value of the work performed by Welch regarding the BP settlement. *Id.* at 1268.

10. On October 23, 2020, SEPH served discovery in this matter on Welch, seeking in part information related to the same issues outlined by the Tenth Circuit. (Docs. 31 & 32.) The issue of Welch's intent in concealing the payments is relevant in this fraudulent transfer and conversion action as well as in the disgorgement proceedings in the Bankruptcy Court. In its interrogatories and requests for production, SEPH sought discovery related to:

---

[2] A copy of the Tenth Circuit's Opinion is attached hereto as "Exhibit C."

4

      a. Communications between Neverve and the Welch Defendants regarding the legal effects of SEPH's judgment against Neverve as it relates to Neverve's BP claim and settlement proceeds (*see* Ex. A, Interrogatory No. 5, Request for Production No. 9);

      b. Communications between Neverve and the Welch Defendants related to a document titled the "Second Supplement to Loan Documents" which is the basis of SEPH's claimed security interest in Neverve funds (*see* Ex. A, Interrogatory No. 6, Request for Production No. 10); and

      c. Neverve's transfer BP settlement proceeds to the Welch Defendants' trust account (including any agreements related thereto), the work performed by Welch regarding Neverve's BP claims (including communications between Neverve and Welch and between Welch and Neverve's Alabama counsel for its BP claims and communications regarding the sharing of fees between counsel), and documents showing work performed by Welch related to BP claims (such as timesheets, billing statements, and invoices) (*see e.g.*, Ex. A, Interrogatory Nos. 7, 8, 9, 10, & 15; Request for Production No. 2, 7, 12, 14, 18, & 23.)

    11. The Welch Defendants served their discovery responses on December 17, 2020. The Welch Defendants objected to many of the above-detailed requests on the grounds of attorney-client privilege. (*See, e.g.*, Interrogatories Nos. 5, 6, 10, & 15; Requests for Production Nos. 2, 7, 9, 10, 12, 14, 18, & 23.) Additionally, as to requests related to Neverve regarding the effect of SEPH's judgment against Neverve and the Second Supplement as they relate to BP proceeds, Welch additionally objected on the grounds that SEPH sought information amounting to legal,

5

rather than factual, information. (*See* Ex. A, response to Interrogatories 5 & 6, and response to Request for Production 9 & 10.)

12. Welch Defendants object to producing documents as being subject to a Confidentiality Order entered in BP Oil Spill MDL case in the United States District Court for the Southern District of Louisiana, Case No. MDL-2179.[3] (*See, e.g.*, Ex. A, response to Request for Production Nos. 3, 8, 9, 13.) The Confidentiality Order provides in part that "[p]ursuant to the Court's inherent jurisdiction and Federal Rule of Evidence 408, every recipient of this Order shall treat as strictly confidential all documentation, draft or otherwise, of all term sheets, release agreements, or other settlement-related documentation, and all communications regarding resolution of claims or lawsuits related to this multi-district litigation (including both the fact and substance of any discussions and any document prepared in connection therewith)." (Ex. D.) Welch Defendants assert that the Confidentiality Order covers any document or communication related in any way to the Stewart Entities' BP claims, including for example any communication between Stewart, the Stewart Entities, and their counsel or among counsel for the Stewart Entities. The Confidentiality Order however seems to apply only to information related to settlement and claims resolution, particularly given the reference to Federal Rule of Evidence 408.

13. Regardless of whether Welch Defendants' interpretation of the order is correct, they have selectively produced some documents that would also be subject to the order based on the Welch Defendants' stance that the Confidentiality Order is broad and covers essentially any document or communication in any way related to the settlement. For example, Welch Defendants have produced communications between Welch and counsel for Kirkpatrick Bank showing the

---

[3] A copy of the Confidentiality Order is attached hereto as "Exhibit D." While the Confidentiality Order states that it is "Under Seal", it is no longer maintained under seal, as counsel for SEPH was able to obtain a copy of the Confidentiality Order from Pacer.

6

amount of the BP Settlement of Shimmering Sands Development Company, LLC ("Shimmering Sands"). (*See* Documents bates-labeled WLF___03902-3904, attached hereto as "Exhibit E".) Welch Defendants have not explained how some documents and communications sought are subject to the Confidentiality Order and others are not. In fact, numerous filings in the Stewart Bankruptcy Case were originally made under seal based on Welch's initial assertions that the Confidentiality Order applied. (*See* Docket in the Bankruptcy Case.) However, once Welch publicly filed his late compensation disclosures in that case which included information related to BP settlements, the Bankruptcy Court unsealed those documents. (*See* Doc. 570 in the Bankruptcy Case, attached hereto as "Exhibit F.") The Bankruptcy Court unsealed the documents because it found that "concern for confidentiality was waived by Counsel Welch's filing of his *Amended Disclosure of Compensation of Attorney for Debtor* on September 20, 2017 [Doc. 464]." (*Id.* at 3.) The Bankruptcy Court concluded that "[g]iven the fact that Mr. Welch voluntarily filed with the Court a pleading detailing the information regarding the BP settlement which the *Sealing Orders* were meant to protect, there is no longer any compelling reason, *if any reason at all*, to prohibit the public's access to such information." (*Id.* at 4 (emphasis added).)

14. Pursuant to Local Rule 37-1, Counsel for SEPH and Mr. Ruston C. Welch have engaged in a good faith and sincere effort to resolve these discovery disputes via telephone because given the distance between counsel for SEPH (who reside in Alabama) and Mr. Welch, an in-person conference was infeasible.

## LEGAL ARGUMENT

### A. The information sought by SEPH is relevant.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides, in part: "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding

7

any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." SEPH has raised counts under Oklahoma and Alabama's Uniform Fraudulent Transfer Act ("UFTA") for both actual and constructive fraud. (Doc. 1, pp. 16-21.) Regarding claims for actual fraudulent transfer, the Oklahoma UFTA provides, in part:

> A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> 1. with *actual intent to hinder, delay, or defraud any creditor of the debtor* . . . .
>
> B. In determining actual intent pursuant to the provisions of paragraph 1 of subsection A of this section, consideration may be given, among other factors, to whether:
>> 1. the transfer or obligation was to an insider;
>> 2. the debtor retained possession or control of the property transferred after the transfer;
>> 3. *the transfer or obligation was disclosed or concealed;*
>> 4. before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>> 5. the transfer was of substantially all the debtor's assets;
>> 6. the debtor absconded;
>> 7. *the debtor removed or concealed assets*;
>> 8. *the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred*;
>> 9. the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>> 10. the transfer occurred shortly before or shortly after a substantial debt was incurred; and
>> 11. the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

24 Okla. Stat. § 116 (emphasis added). Additionally, Section 117(A) of the Oklahoma UFTA provides, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for

8

the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." 24 Okla. Stat. § 117. The Alabama UFTA contains substantially similar provisions. *See* Ala. Code §§ 8-9A-4a & 8-9A-5.

Under these provisions, information pertinent to Welch's motive for violating bankruptcy law by concealing the transfer of Neverve BP proceeds to Welch is relevant to SEPH's claims that he was a participant in a fraudulent transfer scheme and, particularly, evidence that the Neverve transfers were made with the actual intent to hinder, delay, or defraud SEPH (a creditor of Neverve). Welch Defendants object to discovery requests on the ground that they seek "legal conclusions" regarding the effects of SEPH's judgment and the second supplement and whether SEPH had a security interest in those fees. While Welch may have reached legal conclusions regarding whether SEPH had a security interest, in this case, whether Welch came to any legal conclusions on that matter and communicated them to Stewart/Neverve is a relevant fact in this litigation. For example, if Welch communicated to David Stewart that Neverve's BP proceeds were likely or even possibly subject to a security interest by SEPH, this would supply evidence that the concealment of the payment of BP proceeds was done with fraudulent intent to shield assets from SEPH. Therefore, this information sought by SEPH is relevant factual information regarding SEPH's claims for actual fraudulent transfer.

Similarly, information related to the services provided by Welch to Neverve is discoverable. The value of the work actually performed by Welch in relation to the BP claims is relevant to determining whether Neverve "received a reasonably equivalent value in exchange" for transferring BP settlement proceeds to WLF. SEPH is therefore entitled to receive documents and answers to interrogatories regarding the work performed by Welch for Neverve. The Tenth

9

Circuit addressed Welch's $144,591.85 contingency fee for representing Neverve in the BP claims as follows:

> The only document entitling him to that fee is dated shortly before the BP settlement and about a month after he had informed the Trustee that there was movement in the BP litigation. That is pretty late in the litigation to be adding a recipient of a contingency fee, yet there is no evidence that he had been promised any contingency fee before the document was executed. Also, there is a question about the value of the work he purportedly performed . . . . Mr. Welch would not be entitled to the fee if it were merely a device to divert to him money that would otherwise be available for creditors of the Stewarts' companies.

970 F.3d at 1268-69. The payment of a contingency fee to WLF late in the BP litigation suggests WLF may have received more than an equivalent exchange for the value of its services. As such, information regarding Welch's participation in that litigation and value of the work performed in such litigation is relevant in this case to claims of both actual and constructive fraudulent transfer.

### B. **Welch Defendants' claims of privilege fail because the crime-fraud exception applies and allows SEPH to discover the information sought.**

Welch also objects on the ground that the discovery sought by SEPH involves matters protected by the attorney-client privilege. However, both Oklahoma and federal law recognize the "crime-fraud" exception to attorney-client privilege. *See, e.g.*, 12 Okla. Stat. § 2502(D)(1) ("There is no privilege under this section: If the services of the attorney were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud."); *White v. American Airlines, Inc.*, 915 F.2d 1414, 1424 (10th Cir. 1990)(interpreting Oklahoma law); *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995). Under Tenth Circuit precedent, "[t]he party claiming that the crime-fraud exception applies must present prima facie evidence that the allegation of attorney participation in crime or fraud has some foundation in fact." *Motley*, 71 F.3d at 1551. The crime-fraud exception has been

10

applied in the fraudulent transfer context as well. *See, e.g.*, *Cendant Corp. v. Shelton*, 246 F.R.D. 401, 405 (D. Conn. 2007)(applying exception where "probable cause exists to believe that defendant Shelton engaged in a fraudulent transfer of assets"); *Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 342 B.R. 416, 427 (S.D.N.Y. 2006)("[T]he fraud exception applies in fraudulent transfer cases and in the bankruptcy context.")(internal quotations omitted); *see also United Bank v. Buckingham*, 301 F. Supp. 3d 547, 554 (D. Md. 2018)("For an alleged conveyance deemed fraudulent under the statute to trigger application of the exception, the allegations must present sufficient evidence of deception, dishonesty, misrepresentation, falsification, or forgery.")(internal quotations omitted).

There is prima facie evidence that Welch participated in fraud by engaging in fraudulent transfers and concealing those transfers despite being obligated to disclose them. It is undisputed that Welch did not file required disclosures in the bankruptcy proceedings for more than two years before finally filing such disclosures after being ordered to do so by the Bankruptcy Court. SEPH obtained a judgment against Neverve and asserts a security interest in Neverve BP proceeds, which Welch transferred to his firm rather than to SEPH or to the bankruptcy trustee in Stewart's case. Rather than notify SEPH upfront that Neverve was receiving BP proceeds, Welch concealed the transfer and failed to disclose it as required by law for years. The Tenth Circuit concluded that Welch's violation of the disclosure requirements was "egregious", and the Bankruptcy Court sanctioned Welch for this violation, stating that it was "incredulous" Welch would commit such misconduct. *Stewart*, 970 F.3d at 1262, 1268. Furthermore, Welch failed to correct misstatements he knew were falsely made by Stewart regarding his compensation. (*See* Excerpts of Stewart's June 27, 2017 Deposition, attached hereto as "Exhibit G.") Specifically, Stewart testified that he had paid Welch "personally out of our funds." (Ex. G, 190.) Welch further refused to disclose the

11

amount of his compensation during that deposition. (*Id.* at 191.) Stewart stated he did not know at that time whether Neverve had received BP funds. (*Id.* at 193.) Welch knew, had a duty to disclose that he knew, and knowingly failed to notify counsel for SEPH regarding these issues. The bankruptcy court also noted "the lack of candor and honesty of his clients." 970 F.3d at 1268. These circumstances, including Welch's participation in concealment of transfers to himself that were required to be disclosed by law, are evidence of his participation in a scheme with an *actual intent to hinder, delay, or defraud any creditor of the debtor.* 24 Okla. Stat. § 116. As the Tenth Circuit noted:

> Most importantly, however, the bankruptcy court failed to examine the source of the payments to Mr. Welch. The court seems to have inferred from Mr. Welch's talent and experience that his failures to disclose must have been inadvertent. But an alternative hypothesis is that he surely knew of his duty and must have had some very strong reason to keep the payments secret. If, for example, he had thought that disclosure would lead to substantial challenges to the payments (as indeed occurred), he would have had a motive not to disclose. The lure of an uncontested $350,000 might induce some people to violate the disclosure requirements, particularly if the downside risk was limited to a $25,000 penalty and criticism in a bankruptcy-court opinion.

970 F.3d at 1268. SEPH seeks discovery directly related to the motives of Welch in keeping secret the sources of his compensation in the bankruptcy case, specifically whether Welch anticipated challenges to the payments prior to transferring the Neverve BP funds to WLF. Because SEPH has presented prima facie evidence that Welch participated in a fraudulent transfer and, in fact, actively concealed the transfer through "egregious" and "incredulous" failures to disclose, the crime-fraud exception to the attorney-client privilege applies.

C. **Even if protected under the work product doctrine, SEPH is entitled to discover the information sought pursuant to Rule 26(b)(3)(A).**

The Welch Defendants also object that certain discovery requested is subject to protection from discovery as work product. However, Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But . . . those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A). As set forth above, the information sought is discoverable under Rule 26(b)(1). Furthermore, in this case, SEPH cannot obtain the substantial equivalent of the information sought by other means. Such information, particularly communications between Welch Defendants and Neverve, is within the sole possession of Neverve and Welch Defendants. Therefore, SEPH has a substantial need for the materials to prove its claims in this litigation and cannot obtain their equivalent by other means.

D. **Welch Defendants' assertions regarding the Confidentiality Order are hollow and designed solely to prevent disclosure of documents at the selection of the Welch Defendants.**

As noted above, Welch Defendants object to producing some documents on the grounds that such documents are subject to the Confidentiality Order. Welch Defendants' interpretation of the Confidentiality Order is that it applies to any document or communication related in any way to the Stewart Entities' BP claims. For instance, if Welch and Stewart exchanged an email wherein Welch communicated to Stewart that SEPH had a security interest in Neverve's BP claim, such

13

would purportedly be confidential under the terms of the Confidentiality Order. SEPH asserts that the scope of the Confidentiality Order is not so broad as to prevent production of all documents related to an entity's BP claims but is instead directed to settlement communications and settlement amounts. The reference to Rule 408 of the Federal Rules of Evidence confirms this interpretation. In any event, documents referencing settlement amounts and/or communications/offers between counsel and BP representatives may be subject to the Confidentiality Order, but such protected information could be redacted by Welch Defendants.

Furthermore, Welch Defendants have not explained how some documents and communications sought are subject to the Confidentiality Order and others are not. In fact, they seem to be cherry-picking what they claim is confidential to suit their purposes. Numerous filings in the Stewart Bankruptcy Case were originally made under seal based on Welch's initial assertions that the Confidentiality Order applied but were later unsealed following Welch's public disclosures which contained information that had been claimed to be subject to the Confidentiality Order. (*See* Ex. E.) In fact, Welch filed publicly numerous details concerning proceeds from the BP settlements. (See Doc. 464 in the Bankruptcy Case, attached hereto as Exhibit H, at 4.) Additionally, Welch Defendants have produced select documents to SEPH in response to SEPH's request that would also be subject to the Confidentiality Order under the Welch Defendants' interpretation. (*See* Ex. E.) The Welch Defendants produced this communication clearly stating the amount of Shimmering Sands's BP settlement. The dividing line made by the Welch Defendants in their responses and production seems not to be the terms and scope of the Confidentiality Order itself, but rather what information Welch Defendants wish to keep secret from SEPH for as long as possible. As the Bankruptcy Court noted, there is no compelling reason, "*if any reason at all*," to keep information regarding the BP claims at issue here sealed given the

14

public disclosure of settlement information previously by Welch Defendants. (Ex. F, at 4 (emphasis added).) The Court should not deny SEPH discovery based on the Confidentiality Order, which Welch Defendants continue to use as both a sword and a shield. Rather, responsive and relevant documents should be produced by Welch Defendants without regard to their feigned interest to follow a Confidentiality Order they have seemingly been willing to violate repeatedly with respect to some information. Despite Welch Defendants selective disclosure of materials subject to the Confidentiality Order, SEPH is willing to agree to a reasonable protective order in this case to maintain the confidentiality of materials deemed confidential. SEPH requests that the Court rule on Welch Defendants' claim of attorney-client and work product protection. These objections are separate and apart from the Confidentiality Order and can be ruled upon without reference to the Confidentiality Order.

WHEREFORE, SEPH respectfully requests the Court enter an order compelling the Welch Defendants to respond further to SEPH's discovery requests referenced above and to produce responsive documents. SEPH further requests any additional relief to which the Court deems SEPH entitled to under the circumstances.

Respectfully submitted,

*/s/ Richard M. Gaal*
RICHARD M. GAAL (ASB-3999-A58R)
rgaal@mcdowellknight.com
S. FRASER REID, III (ASB-7483-L67R)
freid@mcdowellknight.com
MCDOWELL KNIGHT ROEDDER
& SLEDGE, L.L.C.
11 North Water Street, Ste. 13290 (36602)
Post Office Box 350
Mobile, AL 36601
Phone: 251-432-5300
Fax: 251-432-5303
*Attorneys for SE Property Holdings, LLC*

                      -and-

                      */s/ Mark B. Toffoli*
                      (Signed by Richard M. Gaal
                      with permission of Mark B. Toffoli)
                      Mark B. Toffoli  OBA # 9045
                      THE GOODING LAW FIRM
                      A PROFESSIONAL CORPORATION
                      204 North Robinson Avenue, Suite 650
                      Oklahoma City, Oklahoma 73102
                      Telephone:  (405) 948-1978
                      Facsimile:  (405) 948-0864
                      Email:  mtoffoli@goodingfirm.com
                      *Local Counsel for SE Property Holdings, LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that, on February 25, 2021, a copy of the foregoing has been served upon the following listed person(s) through the Court's CM/ECF system, by electronic mail, and/or by placing a copy in the United States Mail properly addressed and first-class postage prepaid:

| | |
|---|---|
| Ruston C. Welch | Mark B. Toffoli |
| Welch Law Firm, P.C. | The Gooding Law Firm |
| 4101 Perimeter Center Dr., Ste. 360 | A Professional Corporation |
| Oklahoma City, OK  73112-2309 | 204 North Robinson Avenue, Suite 650 |
| RWelch@WelchLawPC.com | Oklahoma City, Oklahoma 73102 |
| | mtoffoli@goodingfirm.com |

                      */s/ Richard M. Gaal*