UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | **MDL 2179**<br><br>**SECTION: J** |
| **This Document Relates to:**<br>*Donovan v. Barbier, et al.,*<br>2:21-cv-00237<br>_____/ | **JUDGE BARBIER**<br><br>**MAG. JUDGE CURRAULT** |

## MEMORANDUM OF LAW IN SUPPORT OF
## NOTICE OF VOLUNTARY DISMISSAL

The following Memorandum is respectfully submitted in support of Plaintiff's Notice of Voluntary Dismissal.

## INTRODUCTION

Plaintiff, on behalf of his business, himself, and all others similarly situated who or that have been denied access to the courts as a result of the tortious conduct of the Defendants, brings this action pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., alleging that the defendants engaged in an "Eight-Step" scheme to fraudulently limit BP's liability for the purpose of maximizing judicial efficiency and/or maximizing their compensation. Plaintiff Donovan has filed this suit because he believes that our federal justice system is not a sanctuary for Defendants to use for the purpose of carrying out their own massive, nefarious scheme in the name of "judicially-efficient" multidistrict litigation and to hold Defendants responsible for their "Eight-Step" fraudulent scheme which turns MDL 2179 into "the MDL 2179 Enterprise."

## **PROCEDURAL HISTORY**

On November 5, 2020, Plaintiff, on behalf of his business, himself, and those parties who were injured as a result of the tortious conduct of the RICO MDL 2179 Defendants and who are not able to assert their rights because they have been denied access to the courts, files this action against Defendants in the U.S. District Court for the Middle District of Florida ("MDFL"). In light of the concerns about the spread of the COVID-19 virus (coronavirus), Plaintiff only files the complaint. Plaintiff does not present a summons to the clerk for signature and seal. Contingent on the severity of the spread of the COVID-19 virus, Plaintiff intends to have the defendants served with a copy of the summons and complaint within the time allowed by FRCP Rule 4(m).

On November 23, 2020, the JPML files Conditional Transfer Order (CTO-140).

On November 30, 2020, Plaintiff files his Notice of Opposition to CTO-140.

On December 11, 2020, Plaintiff files his Motion to Vacate CTO-140 and Brief in Support of Motion to Vacate Conditional Transfer Order (CTO-140) with the JPML.

On December 14, 2020, Plaintiff, in accordance with his continuing duty to promptly inform the Court of the existence of any similar or related case or proceeding pending before any other court or administrative agency (*See* Local Rule 1.04(d)), files Plaintiff's Notice of Conditional Transfer Order (CTO-140) Filed by the JPML with the MDFL.

On January 4, 2021, four of the five named Defendants file a Response in Opposition to Plaintiff's Motion to Vacate CTO-140.

On January 11, 2021, Plaintiff files Plaintiff's Consolidated Reply in Support of Plaintiff's Motion to Vacate CTO-140,

On January 19, 2021, Judge Mary S. Scriven issues an Order staying and administratively closing this case pending a determination by the JPML as to whether this action shall be transferred to the Eastern District of Louisiana.

On January 25, 2021, Plaintiff files Plaintiff's Motion for Clarification with the JPML.

On January 26, 2021, the JPML denies Plaintiff's Motion for Clarification.

On February 4, 2021, the JPML issues a Transfer Order transferring *Donovan v. Barbier, et al*. to the Eastern District of Louisiana and, with the consent of that court, assigning the case to the Honorable Carl J. Barbier for coordinated or consolidated pretrial proceedings.

On February 8, 2021, transferred case *Donovan v.Barbier, et al*. is opened in the Eastern District of Louisiana as case 2:21-cv-00237.

## LEGAL STANDARD

Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure provides that a plaintiff "may dismiss an action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."

Plaintiff, though not required to, out of an abundance of caution, to avoid even an appearance that *Donovan v. Barbier, et al*. should not be fully litigated, provides the following reasons for his decision to voluntarily dismiss this case.

## REASONS FOR VOLUNTARILY DISMISSING THIS CASE

**I.     Reason No. 1**
**The MDL 2179 Court improperly applies Louisiana law rather than the choice-of-law rules of the state in which the transferor court sits.**
The U.S. Supreme Court held in *Van Dusen* and *Ferens* that the policies underlying the holdings of *Erie* and *Klaxon* mandated that the law, including the choice-of-law rules, of the

-3-

transferor court, rather than those of the transferee court, must be applied to a case that has been transferred to an MDL Court. *Ferens v. John Deere Co.*, 494 U.S. 516, 532 (1990); *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). In its March 27, 2020 Order, the MDL 2179 Court's uniquely creative reasoning allowed the Court to circumvent the U.S. Supreme Court's holdings in *Van Dusen* and *Ferens* and hold that "Louisiana law, rather than Florida law, governs this dispute." This decision allows the MDL 2179 Court to conveniently and unfathomably find, "As a result, Donovan's [twelve] claims are untimely under La. R.S. 9:5605(a)." This decision also allows the MDL 2179 Court to maximize judicial efficiency and ensure that the RICO MDL 2179 Defendants will never be held accountable for their tortious acts.

Plaintiff respectfully points out that Florida law, rather than Louisiana law, would govern *Donovan v. Barbier, et.*

## II. Reason No. 2
**The Honorable Carl J. Barbier refuses to recuse himself from *Donovan v. Barbier, et al.***

The two principal statutes governing the disqualification or recusal of federal judges are 28 U.S.C. § 455 ("Disqualification of justice, judge or magistrate judge") and 28 U.S.C. § 144 ("Bias or prejudice of judge"). 28 U.S.C. § 144 deals exclusively with *actual* bias or prejudice, whereas 28 U.S.C. § 455(a) deals with the *appearance* of partiality. 28 U.S.C. § 144 is triggered by a party's affidavit, whereas 28 U.S.C. § 455 may be invoked in a motion by a party **or sua sponte by the judge**.

### A. 28 U.S.C. § 455(a)

Any justice, judge or magistrate of the United States *shall* disqualify himself in any proceeding in which his impartiality might reasonably be questioned. 28 U.S.C. § 455(a). As the U.S. Supreme Court has explained, that provision requires that the judicial conduct at issue:

be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance. Quite simply and quite universally, recusal was required whenever "impartiality might reasonably be questioned."

*Liteky v. United States*, 510 U.S. 540, 548 (1994)(Scalia, J.). Thus, it is the appearance of partiality - and not actual bias - that is the test for recusal under Section 455(a): "In applying § 455(a), the judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993).

Even if the decision to recuse in a particular case were a close one, the statute's purpose of promoting public confidence in the judiciary requires that judges must resolve any doubts in favor of recusal. *See, e.g.*, *Republic of Panama v. American Tobacco Co.*, 217 F.3d 343, 347 (5th Cir. 2000)("[I]f the question of whether § 455(a) requires disqualification is a close one the balance tips in favor of recusal."); *In re United States*, 158 F.3d 26, 30 (1st Cir. 1998), *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995); *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993)("Where the question is close, the judge must recuse himself."); *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989) (Section 455(a) "requires judges to resolve any doubts they may have in favor of disqualification.").

Congress established the "appearance of impartiality" standard "to promote public confidence in the integrity of the judicial process." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988). The legislative history of § 455(a) is clear:

> This general standard is designed to promote public confidence in the impartiality of the judicial process by saying, in effect, if there is a reasonable factual basis for doubting the judge's impartiality, he should disqualify himself and let another judge preside over the case.

H. Rep. No. 93-1453, p. 5 (1974), U.S. Code Cong. & Admin. News 1974, p. 6355. In the words of the Seventh Circuit, "Once a judge whose impartiality toward a particular case may

reasonably be questioned presides over that case, the damage to the integrity of the system is done." *Durhan v. Neopolitan*, 875 F.2d 91, 97 (1989).

Plaintiff respectfully points out that the Honorable Carl J. Barbier's impartiality "might reasonably be questioned," and the public's confidence in the integrity of the judicial process is damaged, when Judge Barbier is presiding over a civil RICO case in which he is a defendant.

### B. There is a Heightened Need to Preserve the Appearance of Impartiality in Bench Trials

The question has sometimes arisen as to whether the standard for disqualification differs in a bench trial where the judge's role is even more pivotal than in a jury trial. In *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155 (3d Cir. 1993), the court of appeals said: "We cannot overlook the fact that this is a non-jury case, and that [the judge] will be deciding each and every substantive issue at trial….When the judge is the actual trier of fact, the need to preserve the appearance of impartiality is especially pronounced." Plaintiff respectfully points out that there is a heightened need to preserve the appearance of impartiality in *Donovan v. Barbier, et al.*

### C. The Transfer Order

In its transfer order, dated February 4, 2021, the JPML states,

"Plaintiff does raise one argument against transfer with some substance. The *Donovan* complaint asserts a claim that defendants engaged in a RICO conspiracy designed to maximize the compensation of counsel in MDL leadership in exchange for limiting the liability of BP. Among the defendants named in the complaint is the transferee judge, the Honorable Carl J. Barbier. Plaintiff asserts that, if we transfer *Donovan* to MDL No. 2179, Judge Barbier will not recuse himself and will dismiss his case. If Judge Barbier determines that he must recuse from this action - a question about which the Panel expresses no opinion - the Panel, in consultation with the Chief Judge of the Eastern District of Louisiana, will assign *Donovan* to another judge in the district. If Judge Barbier declines to recuse from this matter, plaintiff can seek whatever appellate relief is appropriate."

Given that Judge Barbier has declined to recuse himself from this matter, Plaintiff does not agree that being required to file an appeal to the U.S. Court of Appeals for the Fifth Circuit

will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.

### III. Reason No. 3
**The MDL 2179 Court's narrow focus on judicial efficiency results in the circumvention of the core democratic premises of representation, transparency, and accountability.**

Efficiency is not the only touchstone of justice. A substantial body of opinion and a respect for jurisdictional principles suggest that a plaintiff ordinarily has a right to a trial in the forum of his or her choosing. *See*, e.g., *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) (noting that a plaintiff ordinarily should not be denied the advantages of his chosen jurisdiction). Aggregation of cases for the purpose of facilitating settlement is a byproduct of §1407, but is not its central statutory purpose. *See In re Patenaude*, 210 F.3d 135, 144 (3d Cir. 2000). *Id.*

Judicial economy is undoubtedly well-served by MDL consolidation when scores of similar cases are pending in the courts. Nevertheless, the excessive delay and marginalization of juror fact finding (i.e., dearth of jury trials) associated with traditional MDL practice are developments that cannot be defended. *Delaventura v. Columbia Acorn Trust*, 417 F. Supp. 2d at 153 (D. Mass. 2006). The appropriate focus for the MDL 2179 Court should be justice for the victims of the BP oil well blowout, not merely judicial economy and closure for the corporate misfeasor.

### IV. Reason No. 4
**The Honorable Carl J. Barbier has made it abundantly clear that he believes the issues raised by Plaintiff are "completely frivolous."**

On December 10, 2020, the MDL 2179 Court issued an Order to Show Cause that provided notice of a proposed order that would initiate the closure and winddown of the Court Supervised Settlement Program. (Rec. Doc. 26811). Any party that opposed entry of the

proposed order was required to file a written objection by January 8, 2021. Only one person filed a timely objection, Brian J. Donovan. (Rec. Doc. 26838). On January 22, 2021, the MDL 2179 Court concluded that Donovan's objection is "completely frivolous." (Rec. Doc. 26872).

Plaintiff Donovan raised the following issues in his objection to the closure and winddown of the Court Supervised Settlement Program. (Rec. Doc. 26838).

(a) MDL 2179 is Unconstitutional: MDL 2179, which employs a victims' compensation fund on the frontend and a settlement class action on the backend, involves no case or controversy and infringes individual claimants' procedural due process rights.

(b) The aggregate settlement rule governs global MDL settlements.

(c) The primary purpose of the appointment of Lead Counsel in MDL 2179 is judicial efficiency. (*See* Stephen J. Herman, *Duties Owed by Appointed Counsel to MDL Litigants Whom They Do Not Formally Represent*, 64 Loy. L. Rev. 1, 8 - 12 (2018)).

(d) MDL is really a dispositive, not pretrial, action.

(e) Lead Counsel breached their fiduciary and ethical duties to the victims of the BP oil well blowout.

(f) The MDL 2179 Court and Lead Counsel did not hold BP accountable.

(g) Lead Counsel retained highly compensated "Thought Leaders" to deceptively promote the proposed settlement.

(h) Unbeknownst to the victims of the BP oil well blowout, Herman, Roy, and BP made the business decision to have BP pay a total amount of **$20 billion** to compensate all the BP oil well blowout victims in the settlement class action.

(i) The Feinberg-administered victims' compensation fund denied payment to approximately **61.46%** of the claimants who filed claims.

(j) Approximately **220,000** Feinberg-administered victims' compensation fund claimants who executed a "Release and Covenant Not to Sue" in exchange for a one-time miniscule final payment (**$5,000** for individuals and **$25,000** for businesses) were subsequently excluded by Judge Barbier, Herman, and Roy from the settlement class action.

(k) The compensation paid to Kenneth R. Feinberg by BP from June 15, 2010 to April 15, 2012 was approximately **$24,700,000**.

(l) Lead Counsel and BP fraudulently induced the MDL 2179 plaintiffs not to opt-out of the settlement.

(m) Patrick Juneau denied payment to approximately **60.03%** of the claims submitted to the Deepwater Horizon Claims Center **("**DHCC"). The compensation paid to Patrick Juneau is unknown but ongoing.

(n) Lead Counsel and BP negotiated a Medical Benefits Class Action Settlement Agreement which Judge Barbier approved on January 11, 2013. In order to limit BP's liability, the MDL 2179 Court and Lead Counsel knowingly ignored the fact that public policy dictates that a toxic tort is a *strict liability* tort. Seventy-eight percent (**78%**) of Specified Physical Condition ("SPC") claims submitted to Garretson received either a "Request for Additional Information" or a "Notice of Defect." In the end, only 20% of claimants received any compensation. These claimants were forced to accept the lowest payment of **$1,300** because they could no longer wait for the money to cover their medical expenses.

(o) As part of the overall strategy to limit BP's liability, Judge Barbier knowingly failed to hold BP fully accountable in regard to the Clean Water Act ("CWA") civil penalty. Judge Barbier saved BP approximately **$4.30 billion** by finding that only 4.0 million barrels of oil, rather than 5.0 million barrels of oil proposed by the United States, exited the reservoir.

(p) On October 5, 2015, the DOJ released the following statement: "….This global settlement resolves the governments' civil claims under the Clean Water Act and natural resources damage claims under the Oil Pollution Act, as well as economic damage claims of the five Gulf states and local governments. Taken together this global resolution of civil claims is worth $20.8 billion." The DOJ failed to point out that **BP is able to deduct $15.3 billion of this $20.8 billion on its U.S. tax return**. In short, this "global settlement" requires U.S. taxpayers to pay $15.3 billion and BP is only required to pay $5.5 billion. BP also wrote off the cost of its $32 billion cleanup effort after the spill, costing U.S. taxpayers roughly $10 billion.

(q) The total compensation paid to Herman, Roy, and the seventeen members of the MDL 2179 PSC was **$3.035 billion**.

(r) The MDL 2179 Court **improperly applies Louisiana law rather than the choice-of-law rules of the state in which the transferor court sits**.

(s) In its July 2, 2020 Order, the MDL 2179 Court held "**OPA does not impose on the Responsible Party a duty to settle Plaintiffs' claims**…." Although the durability of Judge Barbier's uniquely creative reasoning in regard OPA is questionable, the precedent established by MDL 2179 is clear: the offshore oil and gas industry will never be held strictly liable for damages resulting from an oil well blowout in the Gulf of Mexico.

For the reasons given above, Plaintiff respectfully requested the Court <u>not</u> to enter the proposed order [Rec. Doc. 26811-1] that would initiate the closure and winddown of the CSSP. Plaintiff explained that the reason for the Honorable MDL 2179 Court not to enter the proposed order applies with particular force here, (a) where victims of the BP oil well blowout have not been "fully compensated;" (b) where the parties' use of our federal justice system as a sanctuary for the purpose of carrying out their own massive, nefarious scheme in the name of "judicially-efficient" multidistrict litigation is ongoing; and (c) where the potential harm to the public's perception of the judicial process is especially acute because of the large number of plaintiffs in MDL 2179.

The Honorable Carl J. Barbier believes the issues that Plaintiff raised in his objection to the closure and winddown of the Court Supervised Settlement Program (Rec. Doc. 26838) are "completely frivolous." Plaintiff Donovan respectfully disagrees with the Honorable Carl J. Barbier. If Judge Barbier is correct, then a reasonable person could justifiably conclude that our entire federal judicial system is "completely frivolous."

DATED: February 17, 2021                             Respectfully submitted,

**/s/ Brian J. Donovan**
Brian J. Donovan
Florida Bar No. 143900
The Donovan Law Group, PLLC
3102 Seaway Court, Suite 304
Tampa, FL 33629
Tel: (352)328-7469
BrianJDonovan@verizon.net

-10-