## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL 2179 |
| | SECTION: J |
| This Document Relates to: *Donovan v. Barbier, et al.,* 2:21-cv-00237 | JUDGE BARBIER |
| | MAG. JUDGE CURRAULT |

_____/

### BRIAN J. DONOVAN'S RESPONSE IN OPPOSITION TO MOTION FOR <u>INJUNCTIVE RELIEF AND CONSIDERATION OF SANCTIONS</u>

Brian J. Donovan ("Donovan") hereby respectfully submits this Response in Opposition to Motion for Injunctive Relief and Consideration of Sanctions by Patrick A. Juneau ("Juneau") for the reasons set out herein.

### PRELIMINARY STATEMENT

Juneau adopts the arguments in the memorandum filed on behalf of Messrs. Herman and Roy in support of their Motion for Sanctions and to Enjoin Further Frivolous Filings.

### I.      Lack of Personal Jurisdiction

Donovan respectfully points out that this Honorable Court does not have personal jurisdiction over Juneau because the procedural requirement of service of summons has not been satisfied and Donovan has not even presented a summons to the clerk for signature and seal.

A civil action is commenced by filing a complaint with the court. (Fed. R. Civ. P. 3). However, service of process is an essential step in commencing a civil lawsuit. Service of process is so essential in a lawsuit that, if it is not performed properly, a lawsuit cannot proceed. Service of process is critical because it establishes that the court hearing the lawsuit has jurisdiction over the defendant. Service of process is also important because it notifies the

defendant that the plaintiff is bringing a lawsuit and that the courts will hear the impending lawsuit.

"Due process requires proper service of process for a court to have jurisdiction to adjudicate the rights of the parties." *O.J. Distrib*., *Inc*. *v*. *Hornell Brewing Co*., 340 F.3d 345, 353 (6th Cir. 2003). As the Supreme Court has stated on multiple occasions, service of a summons is a prerequisite for the exercise of personal jurisdiction. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1555-56 (2017) ("Congress' typical mode of providing for the exercise of personal jurisdiction has been to authorize service of process. Congress uses this terminology because, absent consent, a basis for service of a summons on the defendant is prerequisite to the exercise of personal jurisdiction." (citations omitted)); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co*., 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

## II.     Juneau Engaged in "Sewer Service"

Courts define "sewer service" as the practice of intentionally failing to serve a summons and complaint on a named party in a lawsuit, in order to prevent the party from having a chance to respond; then filing a fraudulent affidavit attesting to service. When the party fails to appear in court because he did not have notice of the lawsuit, a default judgment is obtained against him. (*See* Complaint, ¶ 147, attached hereto as Exhibit "A"). "Sewer Service" is considered a fraud on the court, and an attorney who knowingly participates in such a scheme can be disbarred. (*See Rotkiske v. Klemm*, 589 U.S. ___ (2019)).

In his Certificate of Service, Juneau certifies to this Honorable Court "that the above and foregoing Memorandum has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, as amended, and that the

foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 22nd day of March, 2021." This is false and misleading.

Donovan never received a notice of electronic filing from the Clerk of Court because the Motion for Injunctive Relief and Consideration of Sanctions was not electronically filed by Juneau with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System.

On March 23, 2021 at 3:35 AM, Donovan received via email the "03/22/2021 Daily E-Service Summary for LA US District Court Eastern District E-Service-Oil Spill" from File and ServeXpress. (See Exhibit "B"). There is a Motion for Injunctive Relief and Consideration of Sanctions but there is no reference to Donovan or the *Donovan v. Barbier, et al*. case. Donovan, now on alert as a result of the previous "sewer service" by Herman and Roy, opened the apparently unrelated motion filed by Stanley Reuter Ross Thornton & Alford LLC. Only after opening, did Donovan learn about the motion filed by Juneau.

Local Rule 7.2 provides "Counsel filing a motion must, at the time of filing, notice it for submission within a reasonable time. Unless otherwise ordered by the court, motions must be filed not later than the fifteenth day preceding the date assigned for submission and actual notice of the submission date must be given to opposing counsel at least fifteen days before the submission date, regardless of which *FRCP 5(b)* service method is used. The motion and supporting memorandum must also be served with the notice." Donovan never received a Notice of Submission from Juneau.

-3-

The strategy employed by Juneau is simple. Don't let Donovan know about the Motion for Injunctive Relief and Consideration of Sanctions until the Court has issued its Order granting the motion.

"Sewer Service" subverts the purpose of service and threatens to disrupt the administration of justice. Even when he files a motion for sanctions, Juneau, like Herman and Roy, appears to be incapable of refraining from fraudulent behavior.

The lack of personal jurisdiction and "sewer service" should be sufficient reasons for this Honorable Court to deny the instant Motion for Injunctive Relief and Consideration of Sanctions filed by Juneau. Nonetheless, Donovan believes it is instructive to address the baseless arguments raised by Juneau in turn.

## ARGUMENTS RAISED BY JUNEAU

Some of the arguments raised by Juneau are so clearly contradicted by the record that a reasonable person could easily conclude that he never actually read the civil RICO complaint.

I. FACTUAL AND PROCEDURAL BACKGROUND

**1. Donovan Closely Followed and Criticized the Oil Spill Claims Process.**
Donovan began publishing articles criticizing the MDL process when: (a) he realized that MDL 2179 is unconstitutional; and (b) he reviewed the unethical confidentiality agreement which he received from Herman and Roy. Donovan believed this Honorable Court, the public, and the non-PSC attorneys had a right to know the truth.

MDL 2179 is unconstitutional. Donovan fully addresses this issue in the *Donovan v. Barbier, et al.* complaint (*See* Complaint, ¶ ¶ 51 - 83, attached hereto as Exhibit "A").

On November 14, 2011, after Donovan had already rejected Herman's offer to "come

into the fold" on November 7, 2011, Donovan received an unsolicited GCCF Outreach Workgroup Invitation, GCCF Jurisdiction and Court Oversight Workgroup Invitation, Invoice and Limited Joint Prosecution and Confidentiality Agreement from Herman and Roy. (*See* Exhibit "C" and Exhibit "D"; *See also* Exhibit "A", ¶ ¶ 308 - 317).

### 2. Donovan Filed Lawsuits For Clients Allegedly Harmed By The Oil Spill And The Claims Process - The Feinberg Actions

On February 25, 2011, Plaintiffs Pinellas Marine Salvage Inc., et al. filed their action against Feinberg, et al. in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida. The case was subsequently transferred by the JPML to the MDL 2179 Court on August 9, 2011.

On June 15, 2011, Plaintiff Salvesen filed his action against Feinberg, et al. in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida. The case was subsequently transferred by the JPML to the MDL 2179 Court on October 6, 2011.

On June 12, 2013, Plaintiff Ditch filed his action against Feinberg, et al. in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida. The case was subsequently transferred by the JPML to the MDL 2179 Court on October 2, 2013.

Each of the three cases asserts claims for gross negligence, negligence, negligence per se, fraud, fraudulent inducement, promissory estoppel, and unjust enrichment under Florida state law.

Pursuant to the MDL 2179 Court's Pretrial Order No. 15 (Rec. Doc. 676), "Pending further orders of this Court, all pending and future motions, including Motions to Remand [and Motions to Commence Formal Discovery], are continued without date unless a motion is specifically excepted from the continuance by the Court."

Plaintiffs' allegations are not, and could not be, brought under OPA because Feinberg, et al. are independent contractors, not agents or representatives of BP (the "Responsible Party"); and Plaintiffs' damages "resulted from" the conduct of the defendants, not BP and the BP oil spill incident.

Plaintiffs' damages did not "result from" the oil spill and Feinberg, et al. are not "Responsible Parties" under OPA. *See* 33 U.S.C. §2701(32)(C). Feinberg, et al., with 13 offices located in the State of Florida, are *independent contractors* that administer, settle and authorize the payment of certain claims asserted against BP as a result of the explosion at the Deepwater Horizon rig and consequent spillage of oil into the Gulf of Mexico. Accordingly, the damages incurred by Plaintiffs as a result of the tortious acts of Feinberg, et al. are not recoverable by Plaintiff under OPA. (*See* Exhibit "E").

On July 2, 2020, *approximately* **9.5 years** *after Pinellas Marine Salvage Inc., et al. filed their action against Feinberg, et al*., Judge Barbier granted the Feinberg Defendants' motions to dismiss all three cases.

> Judge Barbier, in his Order and Reasons (Rec. Doc. 26571 at 8, July 2, 2020), held: "Plaintiffs urge that OPA imposed on the GCCF a duty to settle the Donovan Plaintiffs' claims. OPA contains no such duty. OPA is intended "to promote settlement and avoid litigation….**there is a wide chasm between a process that "promotes" settlement (what Congress enacted) and one that "requires" settlements (what the Donovan Plaintiffs apparently wish Congress enacted)**…." (*See* Exhibit "F")

Donovan, again, respectfully points out that Judge Barbier's reasoning is flawed.

OPA is a strict liability statute. In order to recover damages, a claimant merely needs to show that his or her damages "resulted from" the oil spill. OPA provides, "Each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive

economic zone is liable for the removal costs and damages that result from such incident." 33

U.S.C. § 2702(a).

The damages referred to in 33 U.S.C. § 2702(a) include, but are not limited to:

"Damages equal to the loss of profits or impairment of earning capacity due to the injury,

destruction, or loss of real property, personal property, or natural resources, which ***shall*** be

recoverable by any claimant." 33 U.S.C. § 2702(b)(2)(E).

> OPA further provides,
> (a) "Payment or settlement of a claim for interim, short-term damages representing less
> than the full amount of damages to which the claimant ultimately may be entitled ***shall
> not*** preclude recovery by the claimant for damages not reflected in the paid or settled
> partial claim." 33 U.S.C. § 2705(a); and
> (b) "Payment of such a claim [i.e. payment to a claimant for interim, short-term damages
> representing less than the full amount of damages to which the claimant ultimately may
> be entitled] ***shall not*** foreclose a claimant's right to recovery of all damages to which the
> claimant otherwise is entitled under this Act or under any other law." 33 U.S.C. §§
> 2715(b)(1) and (2).

Use of "shall" and "may" in statutes also mirrors common usage; ordinarily "shall"

is mandatory and "may" is permissive. "The mandatory 'shall' ……normally creates an

obligation impervious to judicial discretion." *Lexecon, Inc. v. Milberg Weiss Bershad Hynes &

Lerach*, 523 U.S. 26, 35 (1998).

Moreover, OPA's legislative history is shot through with general statements indicative of

congressional intent to ensure that all oil spill victims are fully compensated.

The precedent established by MDL 2179 ensures that the offshore oil and gas industry

will never be held strictly liable for damages resulting from an oil well blowout in the Gulf of

Mexico. (*See* Complaint, ¶ ¶ 363 - 371, attached hereto as Exhibit "A").

### 3. Donovan Also Previously Sued On His Own Behalf.

a.    *Donovan v. Herman* **(Filing # 84809671 E-Filed 02/12/2019)**

"OPA applies of its own force, because that act governs, *inter alia*, private claims for property damage and economic loss resulting from a discharge of oil in navigable waters. *See* 33 U.S.C. § 2702(a), (b)(2)(B), (b)(2)(C), (b)(2)(E)."
The Honorable Carl J. Barbier, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, on April 20, 2010 (Rec. Doc. 3830 at 11, August 26, 2011).

Herman's filing of the "B1" Master Complaint as an admiralty or maritime case artfully circumvented the OPA. As a result, approximately 220,000 Feinberg victims who or that executed a "Release and Covenant Not to Sue" in exchange for a one-time final payment ($5,000 for individuals and $25,000 for businesses) were excluded from the settlement class action. There is no evidence that these amounts even remotely represent adequate consideration to compensate claimants for the damages that claimants did or will suffer as a result of the BP oil well blowout.

Circumventing the OPA also allowed the settlement to limit a claimant's recovery of damages by geographic bounds, pertain solely to certain business activities, and require a heightened and vague proof of causation between his or her damages and the BP oil well blowout incident. (*See* Complaint, ¶¶ 220 - 250, attached hereto as Exhibit "A").

### I.    Donovan, Donovan's clients, and others similarly situated are owed a fiduciary duty by Juneau.

Herman explains in a Loyola Law Review article (64 Loy. L. Rev. 1) which he authored in 2018: (1) the primary purpose of his appointment as Lead Counsel in MDL 2179 is to further the interests of judicial efficiency and economy [while maximizing his compensation]; and (2) his primary fiduciary duty is to Judge Barbier. Herman states "the notion that some 'fiduciary duty' extends to individually retained counsel, in my view, goes too far." Here,

Herman illustrates a central problem with MDL 2179, namely, the Court's sole focus is on judicial economy without any consideration for justice, accountability or transparency. (*See* Complaint, ¶ ¶ 6, 187, 188, 216, attached hereto as Exhibit "A") (See also, Stephen J. Herman, *Duties Owed by Appointed Counsel to MDL Litigants Whom They Do Not Formally Represent*, 64 Loy. L. Rev. 1, 8 - 12 (2018)).

Other than citing to his authoritative self, Herman's argument that he does not owe a fiduciary duty *to Donovan, Donovan's clients and others similarly situated* rests, as Judge Patrick E. Higginbotham would say, on little more than empty air.

> Judge Barbier, in his Order and Reasons (Rec. Doc. 28, Filed 03/27/20), states: "….Herman cites Louisiana case law indicating that no fiduciary duty exists between these parties. (Rec. Doc. 26269-1 at 2 (citing *Scheffler v. Adams & Reese*, 950 So. 2d 641, 652-53 (La. 2007))."

In *Scheffler*, the Court held that, as a matter of public policy….no cause of action will exist *between co-counsel based on the theory that co-counsel have a fiduciary duty to protect one another's prospective interests in a fee.*

Herman, now with the concurrence of Juneau, intentionally misleads the Court by citing *Scheffler*. In MDL 2179, Donovan and Herman are not co-counsel (*See* Exhibit "D") and the issue is not whether *co-counsel have a fiduciary duty to protect one another's prospective interests in a fee.*"

> The *Scheffler* Court further explained, and Herman conveniently failed to mention, "Louisiana law recognizes that an attorney's paramount duty is, and must be, to his client. *Penalber v. Blount*, 550 So.2d 577, 581 (La. 1989). In fact, our law adheres to the principle that in no other agency relationship is a greater duty of trust imposed than in that involving an attorney's duty to his client. *Plaquemines Parish Commission Council*, 502 S.2d at 1040. As noted by the court of appeal in *Searcy v. Novo*, 188 So. 490 (La. App. 2d Cir. 1939): The law leaves no uncertainty in defining the character of duty which an attorney owes to his client. The relation of attorney and client is more than a contract. It superinduces a trust status of the highest order and devolves upon the attorney the

imperative duty of dealing with the client only on the basis of the strictest fidelity and honor. *Searcy*, 188 So. at 498."

## II.   Judge Barbier Improperly Applies Louisiana Law Rather Than the Choice-of-Law Rules of the State in Which the Transferor Court Sits

On February 26, 2020, Donovan filed a Motion for Clarification (Rec. Doc. 26344) moving the Court to enter an order clarifying whether the Honorable MDL 2179 Court applies the choice-of-law rules of the state in which the transferor court sits. On March 2, 2020, the Honorable MDL 2179 Court issued an Order (Rec. Doc. 26357) denying the Motion for Clarification. In sum, Plaintiffs were left in the dark in regard to the choice-of-law rules applied by the Honorable MDL 2179 Court.

The U.S. Supreme Court held in *Van Dusen* and *Ferens* that the policies underlying the holdings of *Erie* and *Klaxon* mandated that the law, including the choice-of-law rules, of the transferor court, rather than those of the transferee court, must be applied to a case that has been transferred pursuant to 28 U.S.C. § 1404(a). *Ferens v. John Deere Co*., 494 U.S. 516, 532 (1990); *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

In its March 27, 2020 Order, the MDL 2179 Court's uniquely creative reasoning allows Judge Barbier to circumvent the U.S. Supreme Court's holdings in *Van Dusen* and *Ferens* and hold that Louisiana law, rather than Florida law, governs this dispute. This allows Judge Barbier to conveniently and unfathomably find, "As a result, Donovan's [twelve] claims are untimely under La. R.S. 9:5605(a)." (*See* Complaint, ¶¶ 372 – 375).

### b.   *Donovan v. Barbier, et al*., 8:20-cv-418

On February 24, 2020, Donovan commenced a *qui tam* action in the United States District Court for the Middle District of Florida.

-10-

Donovan, on behalf of the Government and himself, brought this action to recover damages and civil penalties for violations of 31 U.S.C. § 3729(a)(1)(A), 31 U.S.C. § 3729(a)(1)(B), and 31 U.S.C. § 3729(a)(1)(G) by the defendants. Donovan filed this suit because he believes that our federal justice system is not a sanctuary for Defendants to use for the purpose of carrying out their own massive, nefarious scheme in the name of "judicially-efficient" multidistrict litigation and to hold Defendants responsible for their "Eight-Step" fraudulent scheme which (1) transfers the BP oil well blowout economic and medical costs from BP (the "responsible party") to the Government and (2) turns "MDL 2179" into "the MDL 2179 Enterprise."

On October 26, 2020, Donovan filed a notice of voluntary dismissal without prejudice pursuant to F.R.C.P. 41(a)(1) because the United States, after having reviewed the matter for 8 months, finally decided not to intervene in this action.

**4. Donovan's Unsuccessful Efforts To Recuse Judge Barbier.**

Here, Juneau attempts to focus the Court's attention on the debt instruments issued by Halliburton and Transocean that Judge Barbier owned and sold in 2010. This is misleading. Donovan moved for the recusal of Judge Barbier from all proceedings involving cases in MDL 2179 in order to redress an appearance of impropriety and to restore public confidence in the integrity of MDL 2179.

In his motion, Donovan pointed out "Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. 28 U.S.C. § 455(a). As the U.S. Supreme Court has explained, that provision requires that the judicial conduct at issue: be evaluated on an objective basis, so that what

-11-

matters is not the reality of bias or prejudice but its appearance. Quite simply and quite universally, recusal was required whenever "impartiality might reasonably be questioned." *Liteky v. United States*, 510 U.S. 540, 548 (1994)(Scalia, J.). Thus, it is the appearance of partiality - and not actual bias - that is the test for recusal under Section 455(a)."

Donovan respectfully pointed out that his motion to recuse is timely because "the damage to the integrity of the system" is being done right now. The following facts more than satisfy Section 455(a), which mandates recusal merely when a Judge's impartiality "might reasonably be questioned." Not only is this Honorable Court's reputation at stake; if Judge Barbier is not recused, the public may not view his decisions as legitimate.

I. Judge Barbier Has Demonstrated a Pattern of Failing to Recuse Himself.

II. Judge Barbier Must Recuse Himself from MDL 2179 Based on 28 U.S.C. § 455(a):
A. Judge Barbier's Impartiality "Might Reasonably be Questioned" Because the Transfer Order Establishing MDL 2179 Requires Judge Barbier to "Facilitate Closer Coordination with Kenneth Feinberg's Administration of the BP Compensation Fund."
B. Judge Barbier's Impartiality "Might Reasonably be Questioned" Because the JPML Knowingly Selected a Transferee Judge to Preside Over MDL 2179 Who Should Have Recused Himself.
C. Judge Barbier's Impartiality "Might Reasonably be Questioned" as a Result of Fraudulent Inducement.
D. Judge Barbier's Impartiality "Might Reasonably be Questioned" When  He States "The Settlement Agreement Appears Fair, Has No Obvious Deficiencies….*Does Not Grant Excessive Compensation to Attorneys*."
E. Judge Barbier's Impartiality "Might Reasonably be Questioned" When  He Requires Common Benefit Attorneys to Enter into an Onerous and Unethical Agreement with the PSC.
F. Judge Barbier's Impartiality "Might Reasonably be Questioned" When  He Awards US$18,290,494.18 in Common Benefit Fees to Mikal C. Watts.
G. Judge Barbier's Impartiality "Might Reasonably be Questioned" When  He Strongly Urges Plaintiffs to Accept the BP Settlement and Accuses Plaintiffs' Attorneys ("Professional Objectors") of Filing Their Objections "For the Sole Purpose of Attempting to Extract a Side-Deal Pay-Off to Go Away."
H. Judge Barbier's Impartiality "Might Reasonably be Questioned" When  He Colludes with Stephen J. Herman to Develop / Facilitate an 8-Step Plan to Maximize Judicial Efficiency While Minimizing Justice For the Plaintiffs.

I. Judge Barbier's Impartiality "Might Reasonably be Questioned" When, After Eight Years, He Continues to Deny Plaintiffs Their Right to Conduct Formal Discovery Against Kenneth R. Feinberg, et al.

J. Judge Barbier's Impartiality "Might Reasonably be Questioned" Due to His Intentional Lack of Transparency and Lack of Accountability.

III. News Articles Have Led to Reasonable Questions About Judge Barbier's Impartiality.

IV. There is a Heightened Need to Preserve the Appearance of Impartiality in Bench Trials. (See Exhibit "G" and Exhibit "H")

**5. Donovan Commenced This Action After Prior Dismissals And With Full Knowledge That His Claims Are Untimely And That His Allegations May Be Sanctionable.**

**c.      *Donovan v. Barbier, et al*., 8:20-cv-02598**

Again, Juneau is confused. He states "Donovan commenced this action in Florida state court…. This case was again removed to the United States District Court for the Middle District of Florida." On November 5, 2020, Donovan filed his civil RICO complaint in the USMDFL, not in Florida state court.

**I.      Donovan's Claims in *Donovan v. Barbier, et al*. Are Not Untimely**
As Donovan fully explains in *Donovan v. Barbier, et al*. the statutes of limitations are tolled and defendants are estopped from asserting statutes of limitations as defenses**.** (*See* Complaint, ¶ ¶ 101 - 111).

**II.     Donovan Did Not File *Donovan v. Barbier, et al*. "In an Apparent Attempt to Avoid the Preclusive Effects of the Earlier Dismissals."**
Donovan filed this suit because he believes that our federal justice system is not a sanctuary for Defendants to use for the purpose of carrying out their own massive, nefarious scheme in the name of "judicially-efficient" multidistrict litigation and to hold Defendants responsible for their "Eight-Step" fraudulent scheme which turns MDL 2179 into "the MDL

2179 Enterprise."

On February 17, 2021, Donovan moved to voluntarily dismiss his claims without

prejudice under F.R.C.P. 41(a)(1)(A) because:

(a) He did not want Louisiana law, rather than Florida law, to govern this dispute;
(b) The Honorable Carl J. Barbier refused to recuse himself from *Donovan v. Barbier, et al.* 28 U.S.C. § 455(a) deals with the ***appearance*** of partiality and may be invoked in a motion by a party **or sua sponte by the judge**. Donovan points out that Judge Barbier's impartiality "might reasonably be questioned," and the public's confidence in the integrity of the judicial process is damaged, when Judge Barbier is presiding over a civil RICO case in which he is a defendant. Moreover, there is a heightened need to preserve the appearance of impartiality in bench trials;
(c) Since 2010, The MDL 2179 Court's narrow focus on judicial efficiency results in the circumvention of the core democratic premises of representation, transparency, and accountability; and
(d) The Honorable Carl J. Barbier has made it abundantly clear that he believes the issues previously raised by Donovan are "completely frivolous." They are not.
(See Exhibit "I").

### III.    Donovan Had No Reason to Believe His Claims in *Donovan v. Barbier, et al.* May Be Sanctionable.

Juneau is fully aware that the disciplinary complaint filed against Donovan by Judge

Barbier has been recommended for dismissal.

On November 8, 2019, the Court issued an order denying the two motions to recuse and

instructing the Clerk of Court to commence a disciplinary proceeding against Donovan. This

disciplinary complaint is unique in that Judge Barbier filed it as part of the order denying the two

motions to recuse and then publicly posted the order/disciplinary complaint on the EDLA's

website.

On November 14, 2019, Donovan filed his response to disciplinary complaint

No. 19-13531. (*See* Exhibit "J")

On August 6, 2020, a Zoom interview was held between Donovan and the E.D. La.'s

Lawyer's Disciplinary Committee attorney in regard to disciplinary complaint No. 19-13531. At

the conclusion of the interview, Donovan was informed that a recommendation would be made

to dismiss the disciplinary complaint filed against Donovan by the Honorable Carl J. Barbier.

## II. LAW AND ARGUMENT

**1. This Court Should Sanction Donovan For Litigation Abuse And Multiplying
    Litigation.**

*Donovan v. Barbier, et al.* is not subject to the "two dismissal" rule provided for by

Federal Rule of Civil Procedure 41 because the previous action, *Donovan v. Barbier, et. al.*,

8:20-cv-418, as explained *supra*, was a *qui tam* action which Donovan voluntarily dismissed

without prejudice pursuant to F.R.C.P. 41(a)(1) because the United States, after having reviewed

the matter for 8 months, finally decided not to intervene in this action.

**I.      Defendant's Motion is Completely Baseless: Juneau Knows or
          Should Know That 28 U.S.C. § 1927 Does Not Apply to Initial Pleadings**

In *Gerhard Emil Maale, III v. Kim Francis Kirchgessner, et al*., 9:08-cv-80131 (S.D. Fla.

2011), the Court held "Section 1927 sanctions cannot be based solely on having to defend

against a frivolous complaint. *Ellis v. All My Sons Moving and Storage of Orlando, Inc*., 2009

WL 2496626 *3 (M.D.Fla .2009). Instead, section 1927 is limited to conduct which multiplies

the proceedings. The movant must show that (1) counsel engaged in "unreasonable and

vexatious" conduct; (2) counsel's conduct multiplied the proceedings, and (3) the amount of

sanction equals the amount of excess fees and costs caused by the objectionable conduct. *Peer v.

Lewis*, 606 F. 3d 1306, 1314 (11th Cir. 2010). The conduct must be "so egregious that it is

'tantamount to bad faith.'" *Amlong & Amlong P.A. v. Denny's, Inc*., 500 F.3d 1230, 1239 (11th

Cir. 2007).

In *Gerhard*, the defendants seek sanctions for filing a complaint which was multiplicative

-15-

of pre-existing litigation. But 1927 does not apply to the initial complaint. *Macort v. Prem, Inc*., 208 Fed.Appx. 781, 786 (11th Cir. 2006)("The filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not be sanctioned pursuant to § 1927. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996)."). See, *Ellis v. All of My Sons Moving & Storage of Orlando, Inc*., 2009 WL 2496626 *3 (M.D.Fla. 2009).

The *Gerhard* Court further notes that the defendants failed to demonstrate the specific fees required to be expended as a result of any alleged misconduct…..Clearly the motion to dismiss the original complaint would not qualify for fees under § 1927. *Macort*, 208 Fed.Appx. at 786. Without determining whether counsel engaged in unreasonable and vexatious conduct which caused the litigation proceedings to multiply, the Court finds that the defendants failed to demonstrate the third requirement of the statute, that they identify "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." It is insufficient to simply point to the whole litigation. *Grey*, 2010 WL 2593608 at *13." Accordingly, the Court denied the defendants' motion for sanctions pursuant to 28 U.S.C. § 1927.

In *Gerhard*, the Court further explained "Federal courts have the authority to assess attorney's fees under the inequitable conduct doctrine by making express findings of bad faith conduct, supported by detailed factual findings describing the specific acts of bad faith conduct which resulted in the unnecessary incurrence of attorneys' fees. (Citing *Dogherra v. Safeway Stores, Inc*., 679 F.2d 1293 (9th Cir. 1982)."

Again, 28 U.S.C. § 1927 does not apply to the initial pleadings. *See In re Keegan Management Co.*, 78 F.3d 431, 435 (9th Cir. 1996): Because the section authorizes sanctions only for the "multipli[cation of] proceedings," it applies only to unnecessary filings and tactics

-16-

once a lawsuit has begun. *See Zaldivar v. Los Angeles*, 780 F.2d  823, 829 (9th  Cir. 1986)] 780

F.2d at 831 (under § 1927, "the multiplication of proceedings is punished, thus placing initial

pleadings beyond" the section's reach) (emphasis in original); *Matter of Yagman*, 796 F.2d 1165,

1187 (9th  Cir.) ("Section 1927 does not apply to initial pleadings, since it addresses only the

multiplication of proceedings. It is only possible to multiply or prolong proceedings after the

complaint is filed."), amended, 803 F.2d 1085 (9th Cir. 1986), cert. denied, 484 U.S. 963

(1987)....The Court held that since the  matter at hand involves a Motion to Dismiss the initial

pleading, pursuant to *Keegan, Zaldivar and Yangman*, a motion pursuant to 28 U.S.C. § 1927 is

unwarranted.

With respect to 28 U.S.C. § 1927, the Court may require "[a]ny attorney….who so

multiplies the proceedings in any case unreasonably and vexatiously….to satisfy personally the

excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The

imposition of sanctions under § 1927 is an "extraordinary remedy," which should be used

sparingly. *See Monk v. Roadway Exp., Inc.*, 599 F.2d 1378, 1382 (5th Cir. 1979) (classifying

§ 1927's provision for assessment of fees, expenses and costs as an "extraordinary remedy").

Given the permissive language contained in § 1927 (i.e. "may") the issue of whether to impose

the requested sanctions is left to the sound discretion of the court. *See, e.g., Fogerty v. Fantasy,*

*Inc.*, 510 U.S. 517, 533 (1994) ("The word 'may' clearly connotes discretion"); *Amlong &*

*Amlong, P.A. v. Denny's, Inc*., 500 F.3d 1230, 1237-38 (11th Cir. 2007) (section 1927 is

discretionary). The statute's plain language sets forth three (3) requirements that must be met

before the court may impose sanctions under § 1927:
     (1) The attorney must have engaged in unreasonable and vexatious conduct;
     (2) Such unreasonable and vexatious conduct must have multiplied the proceedings; and

(3) The monetary sanction cannot exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Norelus v. Denny's, Inc*., 628 F.3d 1270, 1281 (11th Cir. 2010) (citing *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001)).

An attorney multiplies court proceedings "unreasonably and vexatiously," thereby justifying sanctions under § 1927, "only when the attorney's conduct is so egregious that it is tantamount to bad faith." *Amlong*, 500 F.3d at 1239 (internal quotations omitted). The standard for determining the existence of bad faith is an objective one, turning on how a reasonable attorney would have acted under the circumstances rather than on the particular attorney's subjective intent. *Norelus*, 628 F.3d at 1282 (citing *Amlong*, 500 F.3d at 1239). An attorney's negligent conduct or the ultimate determination that the claim at issue lacked merit, standing alone, are not enough to support a finding of bad faith. *Amlong*, 500 F.3d at 1241-42 (quoting *Schwartz v. Millon Air, Inc*., 341 F.3d 1220, 1225 (11th Cir. 2003)). Rather, a finding of bad faith is warranted where an attorney "knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Schwartz*, 341 F.3d at 1225.

## II.    Not a Single Lawsuit Filed By Donovan Is Abusive or Frivolous

### A.    Judge Barbier Does Not Have Judicial Immunity in the RICO Complaint
The allegations in the *Donovan v. Barbier, et al*. civil RICO complaint are brought against The Honorable Carl J. Barbier under each of the two exceptions to absolute judicial immunity. (*See* Complaint, ¶ ¶ 84 - 100).

### B.    Donovan Has Standing and Is the Proper Party to Invoke Judicial Resolution of This Matter
The injuries suffered by Donovan and his business include, but are not limited to, lost time value of money and the excess legal expenses incurred, loss of profit, loss of business reputation, loss of livelihood, loss of income, and other economic loss, warranting compensatory

-18-

and punitive damages. Moreover, many cases allow standing to third parties who demonstrate a requisite degree of injury to themselves and if under the circumstances the injured parties whom they seek to represent *would likely not be able to assert their rights*. See *Barrows v. Jackson*, 346 U.S. 249 (1953).

Donovan points out that this Complaint was filed after a careful consideration of context, that is, the entire course of judicial proceedings, rather than isolated incidents. Indeed, it was only after the benefit of hindsight developed over a period of *more than ten years* that Donovan realized that this Civil RICO Complaint was justified and appropriate. (*See* Complaint, ¶ ¶ 153 - 164).

### C.    Statutes Of Limitations Are Tolled and Juneau Is Estopped From Asserting Statutes of Limitations As Defenses

Again, as Donovan fully explains in the *Donovan v. Barbier, et al*. civil RICO complaint, the statutes of limitations are tolled and defendants are estopped from asserting statutes of limitations as defenses. (*See* Complaint, ¶ ¶ 101 – 111).

### 2. This Court Should Enjoin Donovan From Filing Any Further Lawsuits Arising From or in Any Way Related To The BP Oil Spill or The Claims Process Without Prior Court Approval.

There is no reason for the Honorable MDL 2179 Court to impose a pre-litigation injunction. Donovan stipulates that he shall not file any further lawsuits arising from or in any way related to the BP oil well blowout or the claims process. After having zealously advocated on behalf of his clients, himself, and the government for approximately ten years, Donovan concedes, given that Herman believes the primary purpose of his appointment as Lead Counsel in MDL 2179 is to further the interests of judicial efficiency and economy [while maximizing his compensation]; and (2) his primary fiduciary duty is to Judge Barbier, the transfer of any lawsuit

-19-

to MDL 2179 allegedly for coordinated or consolidated pretrial proceedings will not be for the convenience of parties and witnesses and will not promote the just and efficient conduct of such action.

### I.      Donovan Specifically Mentions Parties That Were Denied Access to the Courts.

Again, Juneau misleads this Honorable Court by claiming "This complaint, however, is devoid of any specific mention of persons or parties injured or that were supposedly denied access to the courts." This is false. Donovan states, "Plaintiff Donovan can clearly demonstrate injury to himself and his business resulting from the tortious conduct of the RICO MDL 2179 Defendants and can also represent the following parties who were injured as a result of the tortious conduct of the RICO MDL 2179 Defendants and who are not able to assert their rights:…" (*See* Complaint, ¶¶ 158(a) - 158(e)).

In desperation, Juneau argues "In 2003, in the case *Cabellos, et. al. v. Great White Fleet (US) Ltd., et. al*, 8:03-cv-138, USDC MD FL, Donovan represented the plaintiffs in asserting RICO claims against the defendants, which included former counsel for one of the corporate entities." It is true that sanctions were sought in this case which was filed *18 years ago*. However, Donovan has never been referred to the Florida Bar for disciplinary action. Moreover, as explained *supra*, Juneau is fully aware that the only disciplinary complaint ever filed against Donovan in any State Bar is the one filed by Judge Barbier, resulting from Donovan's two motions to recuse Judge Barbier. As Juneau is fully aware, this disciplinary complaint has been recommended for dismissal.

### 3. Sanctions and A Pre-Litigation Injunction Are Consistent With The Dictates of Federal Procedural Law and The "Two Dismissal" Rule.

The issues raised by Juneau in this section are addressed *supra*.

## SUMMARY

On July 2, 2020, *approximately* **9.5 years** *after Pinellas Marine Salvage Inc., et al. filed their action against Feinberg, et al*., Judge Barbier granted the Feinberg Defendants' motions to dismiss three cases. Plaintiffs Pinellas Marine Salvage Inc., et al., Salvesen, and Ditch were denied their day-in-court based on this Honorable Court's seriously flawed reading of the OPA statute, OPA's legislative history, and *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998). (See Exhibit "F").

On February 12, 2019, Donovan filed a complaint against Herman in Florida State Court. On March 27, 2020, Donovan was denied his day-in-court when Judge Barbier granted Herman's motion and dismissed Donovan's complaint with prejudice based on uniquely creative reasoning which circumvented the U.S. Supreme Court's holdings in *Van Dusen* and *Ferens* and held that Louisiana law, rather than Florida law, governs this dispute. This allowed Judge Barbier to conveniently and unfathomably find, "As a result, Donovan's [twelve] claims are untimely under La. R.S. 9:5605(a)." (See Exhibit "K").

On February 24, 2020, Donovan commenced a *qui tam* action in the United States District Court for the Middle District of Florida (*Donovan v. Barbier, et. al.*, 8:20-cv-418) on behalf of the Government and himself to recover damages and civil penalties for violations of 31 U.S.C. § 3729(a)(1)(A), 31 U.S.C. § 3729(a)(1)(B), and 31 U.S.C. § 3729(a)(1)(G) by the defendants. On October 26, 2020, Donovan filed a notice of voluntary dismissal without prejudice pursuant to F.R.C.P. 41(a)(1) because the United States, after having reviewed the matter for 8 months, finally decided not to intervene in this action.

On November 5, 2020, Donovan filed a civil RICO complaint in the USMDFL (*Donovan*

*v. Barbier, et al.*, 8:20-cv-02598). On February 17, 2021, Donovan moved to voluntarily dismiss his claims without prejudice under F.R.C.P. 41(a)(1)(A) for the reasons stated *supra*.

Donovan has never presented a complaint to this Honorable Court for any improper purpose, such as to harass, defame, cause unnecessary delay, or needlessly increase the cost of litigation. The allegations and claims in each complaint are "warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law."

For example, since 2010, Donovan has respectfully pointed out the following issues to the Honorable MDL 2179 Court:

(a) MDL 2179 is Unconstitutional: MDL 2179, which employs a victims' compensation fund on the frontend and a settlement class action on the backend, involves no case or controversy and infringes individual claimants' procedural due process rights.

(b) The aggregate settlement rule governs global MDL settlements.

(c) The primary purpose of the appointment of Lead Counsel in MDL 2179 is judicial efficiency. (*See* Stephen J. Herman, *Duties Owed by Appointed Counsel to MDL Litigants Whom They Do Not Formally Represent*, 64 Loy. L. Rev. 1, 8 - 12 (2018)).

(d) MDL is really a dispositive, not pretrial, action.

(e) Lead Counsel breached their fiduciary and ethical duties to the victims of the BP oil well blowout.

(f) The MDL 2179 Court and Lead Counsel did not hold BP accountable.

(g) Lead Counsel retained highly compensated "Thought Leaders" to deceptively promote the proposed settlement.

(h) Unbeknownst to the victims of the BP oil well blowout, Herman, Roy, and BP made the business decision to have BP pay a total amount of **$20 billion** to compensate all the BP oil well blowout victims in the settlement class action.

(i) The Feinberg-administered victims' compensation fund denied payment to approximately **61.46%** of the claimants who filed claims.

(j) Approximately **220,000** Feinberg-administered victims' compensation fund claimants who executed a "Release and Covenant Not to Sue" in exchange for a one-time miniscule final payment (**$5,000** for individuals and **$25,000** for businesses) were subsequently excluded by Judge Barbier, Herman, and Roy from the settlement class action.

(k) The compensation paid to Kenneth R. Feinberg by BP from June 15, 2010 to April 15, 2012 was approximately **$24,700,000**.

(l) Lead Counsel and BP fraudulently induced the MDL 2179 plaintiffs not to opt-out of the settlement. (*See* Complaint, ¶ ¶ 177, 178, 253, 641, 642).

(m) Patrick Juneau denied payment to approximately **60.03%** of the claims submitted to the Deepwater Horizon Claims Center (**"DHCC"**). The compensation paid to Patrick Juneau is unknown but ongoing.

(n) Lead Counsel and BP negotiated a Medical Benefits Class Action Settlement Agreement which Judge Barbier approved on January 11, 2013. In order to limit BP's liability, the MDL 2179 Court and Lead Counsel knowingly ignored the fact that public policy dictates that a toxic tort is a *strict liability* tort. Seventy-eight percent (**78%**) of Specified Physical Condition ("SPC") claims submitted to Garretson received either a "Request for Additional Information" or a "Notice of Defect." In the end, only 20% of claimants received any compensation. These claimants were forced to accept the lowest payment of **$1,300** because they could no longer wait for the money to cover their medical expenses.

(o) As part of the overall strategy to limit BP's liability, Judge Barbier knowingly failed to hold BP fully accountable in regard to the Clean Water Act ("CWA") civil penalty. Judge Barbier saved BP approximately **$4.30 billion** by finding that only 4.0 million barrels of oil, rather than 5.0 million barrels of oil proposed by the United States, exited the reservoir.

(p) On October 5, 2015, the DOJ released the following statement: "….This global settlement resolves the governments' civil claims under the Clean Water Act and natural resources damage claims under the Oil Pollution Act, as well as economic damage claims of the five Gulf states and local governments. Taken together this global resolution of civil claims is worth $20.8 billion." The DOJ failed to point out that **BP is able to deduct $15.3 billion of this $20.8 billion on its U.S. tax return**. In short, this "global settlement" requires U.S. taxpayers to pay $15.3 billion and BP is only required to pay $5.5 billion. BP also wrote off the cost of its $32 billion cleanup effort after the spill, costing U.S. taxpayers roughly $10 billion.

(q) The total compensation paid to Herman, Roy, and the seventeen members of the MDL 2179 PSC was **$3.035 billion**.

(r) The MDL 2179 Court awarded **$18,290,494.18** in Common Benefit Fees to Mikal C. Watts for "representing" 40,000 *non-existent* "clients."

(s) The MDL 2179 Court **improperly applies Louisiana law rather than the choice-of-law rules of the state in which the transferor court sits**.

(t) In its July 2, 2020 Order, the MDL 2179 Court held "**OPA does not impose on the Responsible Party a duty to settle Plaintiffs' claims**...." Although the durability of Judge Barbier's uniquely creative reasoning in regard OPA is questionable, the precedent established by MDL 2179 is clear: the offshore oil and gas industry will never be held strictly liable for damages resulting from an oil well blowout in the Gulf of Mexico.

Judge Barbier believes these issues are "completely frivolous." Donovan respectfully disagrees with the Honorable Carl J. Barbier. (See Exhibit "L," Exhibit "M," and Exhibit "I").

## CONCLUSION

Juneau requests that the Court enjoin Donovan from filing any lawsuits in state or federal court against Juneau in any capacity arising from or in any way related to the BP Oil Spill or the CSSP without pre-litigation approval from this Court, and that the Court consider exercising its inherent authority to impose sanctions under 28 U.S.C. § 1927 should it deem them to be appropriate.

For all the foregoing reasons, Donovan requests that this Court: (a) deny the Motion for Injunctive Relief and Consideration of Sanctions; and (b) use its inherent authority to impose sanctions on Juneau for engaging in "sewer service."

DATED: April 11, 2021                                    Respectfully submitted,

**/s/ Brian J. Donovan**
Brian J. Donovan
Florida Bar No. 143900
The Donovan Law Group, PLLC
3102 Seaway Court, Suite 304
Tampa, FL 33629
Tel: (352)328-7469
BrianJDonovan@verizon.net

-24-

## <u>CERTIFICATE OF SERVICE</u>

Juneau has not been served with a copy of the summons and complaint. Accordingly, this Honorable Court does not have, nor did it ever have, personal jurisdiction over Juneau. Moreover, case 2:21-cv-00237 was closed on February 17, 2021. I hereby certify that, for these reasons, the foregoing has not been, nor could it be, served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this <u>11</u><sup>th</sup> day of April, 2021.

<u>**/s/ Brian J. Donovan**</u>
Brian J. Donovan