UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In Re: Oil Spill by the Oil Rig**<br>"**Deepwater Horizon**"<br>**in the Gulf of Mexico,**<br>**on April 20, 2010** | **MDL 2179**<br><br><br>**SECTION: J** |
| *This Document Relates to:*<br>*Pinellas Marine Salvage Inc., et al. v. Feinberg, et al.,*<br>*2:11-cv-01987*<br>*Salvesen v. Feinberg, et al.,*<br>*2:11-cv-02533*<br>*Ditch v. Feinberg et al.,*<br>*2:13-cv-06014*<br>_____/ | **JUDGE BARBIER**<br>**MAG. JUDGE WILKINSON** |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO
### DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINTS

Plaintiffs, Pinellas Marine Salvage, Inc., John Mavrogiannis, Selmer M. Salvesen, and Andrew J. Ditch, by and through their undersigned counsel, respectfully submit this response in opposition to the motions to dismiss Plaintiffs' Complaints by Defendants Kenneth R. Feinberg, et al. for the reasons set out herein.

### BACKGROUND

The Judicial Panel on Multidistrict Litigation (JPML) created MDL 2179 and transferred cases relating to the "Deepwater Horizon" / Macondo Well incident to the Eastern District of Louisiana on August 10, 2010. On February 25, 2011, Plaintiffs Pinellas Marine Salvage Inc., et al. filed their action against Defendants Kenneth R. Feinberg and Feinberg Rozen, LLP, d/b/a GCCF, in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida. The case was subsequently transferred by the JPML to the MDL 2179 Court on August 9, 2011. On June 15, 2011, Plaintiff Salvesen filed his action against Defendants Kenneth R. Feinberg, Feinberg Rozen, LLP, d/b/a GCCF, and William G. Green, Jr. in the Circuit Court of the

Twentieth Judicial Circuit in and for Lee County, Florida. The case was subsequently transferred by the JPML to the MDL 2179 Court on October 6, 2011. On June 12, 2013, Plaintiff Ditch filed his action against Defendants Kenneth R. Feinberg, Feinberg Rozen, LLP, d/b/a GCCF, and William G. Green, Jr. in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida. The case was subsequently transferred by the JPML to the MDL 2179 Court on October 2, 2013. Each of the three cases asserts claims for gross negligence, negligence, negligence per se, fraud, fraudulent inducement, promissory estoppel, and unjust enrichment under Florida state law. Pursuant to this Court's Pretrial Order No. 15 (Rec. Doc. 676), "Pending further orders of this Court, all pending and future motions, including Motions to Remand [and Motions to Commence Formal Discovery], are continued without date unless a motion is specifically excepted from the continuance by the Court." All motions filed by Plaintiffs since August 2011, including Motions to Remand and Motions to Commence Formal Discovery, were continued without date. A copy of each of the three Complaints is attached hereto to refresh the Court's memory (*See* Exhibits "A," "B," and "C.").

I.   **Defendants' First Motions to Dismiss Were Not Granted by the U.S. District Court for the Middle District of Florida**

On April 25, 2011, Defendants filed their first Motion to Dismiss the Pinellas Marine Salvage, Inc., et al. v. Feinberg, et al. Complaint in the U.S. District Court for the Middle District of Florida (USMDFL). On August 16, 2011, the JPML transferred Pinellas Marine Salvage, Inc., et al. v. Feinberg, et al. to MDL 2179. The USMDFL had approximately four months to consider the merits of Defendants' Motion to Dismiss before the case was transferred by the JPML to the MDL 2179 Court. Rather than grant the motion, The Honorable Elizabeth A. Kovachevich expeditiously moved forward with the case.

-2-

On July 26, 2011, Defendants filed their first Motion to Dismiss the Salvesen v. Feinberg, et al. Complaint in the USMDFL. On September 19, 2011, the Case Management Report was filed in the USMDFL. On October 12, 2011, the JPML transferred Salvesen v. Feinberg, et al. to MDL 2179. The USMDFL had approximately two and one-half months to consider the merits of Defendants' Motion to Dismiss before the case was transferred by the JPML to the MDL 2179 Court. Rather than grant the motion, The Honorable John E. Steele expeditiously moved forward with the case.

The arguments set forth in Defendants' Motions to Dismiss in 2020 are virtually identical to those set forth by Defendants in 2011.

## II. The Honorable MDL 2179 Court Granted Defendants' Motion to Unilaterally Commence Discovery

On February 11, 2020, Defendants Kenneth R. Feinberg, et al. substituted the Long Law Firm, L.L.P. as counsel of record. Louisiana Senator Russell Long, one of the longest-serving senators in U.S. history and son of former Louisiana governor and U.S. Senator Huey P. Long, founded the firm in 1988. Long Law Firm has deep roots in Democratic politics, governmental relations, and legislative practice in Louisiana. Fortunately for Plaintiffs, an impenetrable Chinese wall exists between Louisiana Politics and Louisiana Law.

On March 5, 2020, Defendants filed three Motions for Court Approval to Compel the Production of Claims Information by the Claims Administrator Patrick Juneau. (Rec. Docs. 26367- 26369) (*See, e.g.,* Exhibit "D"). On March 10, 2020, the Court, without notifying Plaintiffs either directly or via File and Serve, granted Defendants' three Motions to Compel. Plaintiffs respectfully point out that the surreptitious granting of these three Motions to Compel by the Honorable MDL 2179 Court was tantamount to granting Defendants a unilateral and

unjust right to commence discovery. The claims information produced by Patrick Juneau serve as the basis for Defendants' motions to dismiss Plaintiffs' Complaints.

## PRELIMINARY STATEMENT

Demonstrating a complete lack of understanding of the intent and objectives of Congress in its passage of the Oil Pollution Act of 1990 ("OPA"), Defendants move to dismiss Plaintiffs' Complaints on the grounds that:

> "Permitting Plaintiffs to attack the pre-litigation OPA claims process would interfere with and inhibit the claims resolution structure prescribed by Congress in OPA;
>
> Plaintiffs have not suffered a cognizable injury as a result of conduct alleged. Because Plaintiffs retained all of their rights to recover any losses, the GCCF could not have caused their loss. That Plaintiffs elected not to pursue the wide range of available remedies cannot be blamed on the GCCF;
>
> If a claim presented to the Responsible Party is not settled, or 90 days pass without a response from the Responsible Party, then 'the claimant may elect to commence an action in court against the responsible party' or 'to present the claim to the' Oil Spill Liability Trust Fund ("OSLTF");
>
> OPA does not impose a duty to *actually settle a claim* or to conduct a claims process in any specific manner. Defendants, therefore, did not breach any duty to Plaintiffs with respect to the manner in which they administered the claims process;
>
> Pursuant to OPA, a Responsible Party's claims process is subject to only two requirements: that such a claims process be established and that the process be advertised. There is no requirement to establish a claims process that abides by any legally recognized standard of care or that results in the settlement of any claims;
>
> Plaintiffs' state law claims are preempted because they would frustrate the Congressional intent behind OPA's requirement that a Responsible Party establish a claims process; and
>
> Plaintiffs' claims are barred by the Economic and Property Damage Settlement Agreement."

For almost a decade the USMDFL Court and this Honorable Court have been fully briefed, on numerous occasions, in regard to each and every issue raised by Defendants in Their

Motions to Dismiss (*See, e.g.*, Exhibit "E," Exhibit "F," and Exhibit "G").

Defendants' Motions to Dismiss are without merit for at least three reasons. First, Plaintiffs' fact-bound and situation-specific allegations in their Complaints are not, and could not be, brought under OPA because Defendants are independent contractors, not agents or representatives of BP (the "Responsible Party"); and Plaintiffs' damages "resulted from" the conduct of the defendants, not BP and the BP oil spill incident. Second, even if Plaintiffs had brought this Complaint under OPA - which they have not - OPA does not preempt their state law claims. Third, Plaintiffs' claims are valid under Florida law because OPA, a strict liability statute, imposes a duty to fully compensate claimants for damages, settle claims, and pay interest on the amount paid in satisfaction of a claim; Plaintiffs can establish reliance; and Plaintiffs can prove they suffered damages as a direct and proximate result of Defendants' conduct.

## INTRODUCTION

**I.     The Oil Pollution Act of 1990 ("OPA")**

    **A.     The Purpose of OPA**
In their Motions to Dismiss, Defendants concede that OCSLA does not apply to these cases by correctly stating, "In enacting OPA, Congress intended 'to create a single Federal law providing cleanup authority, penalties, and liability for oil pollution.'" *In re Deepwater Horizon*, 745 F.3d 157, 168 (5th Cir. 2014) (quoting S. Rep. No. 101–94, at 9 (1989), reprinted in 1990 U.S.C.C.A.N. 722, 730). *See* Motion to Dismiss, p. 7.

    **B.     Defendants' Unique Interpretation of OPA**
Defendants, who cannot cite to a single authority, statutory provision, or fragment of legislative history supporting their position, self-servingly argue that (a) "OPA does not impose a duty to *actually settle a claim* or to conduct a claims process in any specific manner." (Emphasis

-5-

added by Defendants) *See* Motion to Dismiss, p. 12; and (b) "Pursuant to OPA, a Responsible Party's claims process is subject to only two requirements: that such a claims process be established and that the process be advertised. There is no requirement to establish a claims process that abides by any legally recognized standard of care or that results in the settlement of any claims." *See* Motion to Dismiss, p. 16.

In sum, Defendants are asking this Court to completely ignore legislative intent and judicial precedent and believe that Congress intended OPA to be merely a "speed bump" on the road to inevitable protracted litigation.

The Eleventh Circuit held, "The overarching purpose of OPA's mandatory alternative dispute resolution process is to encourage settlement and avoid litigation." *Boca Ciega Hotel, Inc. v. Bouchard Trans. Co.*, 51 F. 3d 235, 240 (11th Cir. 1995). In the instant cases, the overarching purpose of Defendants' "Delay, Deny, Defend" strategy is to avoid settlement and encourage protracted litigation.

## II. The Oil Spill Liability Trust Fund
Defendants knowingly err in contending that:

> "If a claim presented to the Responsible Party is not settled, or 90 days pass without a response from the Responsible Party, then 'the claimant may elect to commence an action in court against the responsible party' or 'to present the claim to the' Oil Spill Liability Trust Fund ("OSLTF")." *See* Motion to Dismiss, p. 4.

The OSLTF, which is administered by U.S. Coast Guard's National Pollution Funds Center ("NPFC"), is subject to a statutory $1 billion cap on the total amount of expenditures per incident, with a concurrent limit of $500 million per incident for natural resource damage assessments and claims. This $1 billion expenditure limit applies even if the OSLTF is fully reimbursed by the responsible party and net expenditures are zero.

GAO reports OSLTF costs of about $629.5 million as of March 31, 2011. *See* GAO-11-397R (April 18, 2011). The OSLTF will very likely reach the $1 billion per incident cap on total expenditures in the very near future. Once the expenditures reach the cap, NPFC will be precluded from paying any additional claims related to the *Deepwater Horizon* oil spill. As of March 31, 2011, NPFC had received over 629 claims, totaling $186 million from individuals and businesses for this spill. NPFC had issued determinations for more than 538 of these claims (for about $163 million), **all of which were denials**. *Id.*

In sum, OSLTF cannot pay claims because it does not have the money. Furthermore, since only claims *paid by the OSLTF* may be subrogated, the Justice Department will not be able to pursue the responsible party for any payment. Defendants fully realize that OSLTF is not a "backstop." Therefore, they are free to recklessly engage in their "Delay, Deny, Defend" strategy.

## LEGAL STANDARD

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads facts that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court, however, is not bound to accept as true a legal

conclusion stated as a "factual allegation" in the complaint. *Id.* Therefore, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

Although Federal Rule of Civil Procedure 8 does not require a claimant to set out in detail the facts upon which he bases his claim, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts, accepted as true, to state a plausible claim for relief. *Id.* Where a complaint contains well-pleaded facts, if those facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint stops short of plausibility and does not show the plaintiff is entitled to relief. *Id.* at 1950. Furthermore, while the Court must assume that all of the factual allegations in the complaint are true, this assumption is inapplicable to legal conclusions. *Id.* at 1949. The door to discovery will not open for a plaintiff "armed with nothing more than legal conclusions." *Id.* at 1950.

## ARGUMENT AND AUTHORITIES

**I.  Plaintiff's Allegations Are Not, And Could Not Be, Brought Under OPA**

Plaintiffs' fact-bound and situation-specific allegations are not, and could not be, brought under OPA because Defendants are independent contractors, not agents or representatives of BP (the "Responsible Party"); and Plaintiffs' damages "resulted from" the conduct of the defendants, not BP and the BP oil spill incident.

OPA is a strict liability statute. In order to recover damages, a claimant merely needs to show that his or her *damages "resulted from" the oil spill*. OPA states, "*The responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive

economic zone *is liable for the removal costs and damages that result from such incident.*" See 33 U.S.C. § 2702(a) (Emphasis added).

The damages referred to in 33 U.S.C. § 2702(a) include, but are not limited to: "Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which *shall* be recoverable by any claimant." 33 U.S.C. § 2702(b)(2)(E) (Emphasis added).

In the present cases, Plaintiffs' damages did not "result from" the oil spill and Defendants are not "Responsible Parties" under OPA. *See* 33 U.S.C. § 2701(32)(C). Defendants, with 13 offices located in the State of Florida, are *independent contractors* (Complaint, ¶ 30) that administer, settle and authorize the payment of certain claims asserted against BP as a result of the explosion at the Deepwater Horizon rig and consequent spillage of oil into the Gulf of Mexico. Accordingly, the damages incurred by Plaintiffs as a result of Defendants' tortious acts are not recoverable by Plaintiff under OPA.

## II.     OPA Does Not Preempt Plaintiff's State Law Claims

Even if Plaintiffs had brought their Complaints under OPA - which they have not - OPA does not preempt his state law claims.

Under OPA, an injured person may also bring a claim under state common law pursuant to 33 U.S.C. § 2718, which states in relevant part:

> (a) Nothing in this Act….shall -
>     (1) affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to -
>     (A) the discharge of oil or other pollution by oil within such State; or
>     (2) affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under….State law, *including common law*.

> (c) Nothing in this Act….shall in any way affect, or be construed to affect, the authority of the United States or any State or political subdivision thereof -
>> (1) to impose additional liability or additional requirements…..relating to the discharge, or substantial threat of a discharge, of oil.

In addition to explicitly preserving state statutory and common law claims for oil spill damages, OPA also expressly provides that these claims may be prosecuted in state court. In particular, 33 U.S.C. § 2717 provides that:

> (c) A State trial court of competent jurisdiction over claims for removal costs or damages, as defined under this Act, may consider claims under this Act or State law and any final judgment of such court (when no longer subject to ordinary forms of review) shall be recognized, valid, and enforceable for all purposes of this Act.

The intent of Congress is "the ultimate touchstone in every pre-emption case." *Gabarick et al v. Laurin Maritime (America) Inc.*, 623 F. Supp.2d 741, 749 (E.D. La. 2009).

The legislative history clearly demonstrates that Congress intended for OPA not to preempt state law claims.

In the course of debating and enacting OPA, Congress articulated that its purpose was to consolidate several oil spill remediation regimes into a single act, which would benefit the victims of spills and give them the procedural advantage:

> What the Nation needs is a package of complimentary international, national, and State laws that will adequately compensate victims of oil spills….Instead, there is a fragmented collection of Federal and State laws providing inadequate cleanup and damage remedies, taxpayer subsidies to cover cleanup costs, third party damages that go uncompensated, and substantial barriers to victim recoveries - such as legal defenses, statutes of limitation, the corporate form, and the burdens of proof that favor those responsible for the spill. *See* S. Rep. No. 101-94, at *2 (1989), reprinted in 1990 U.S.C.C.A.N. 722.

The "fragmented collection" of pre-OPA federal statutes included OCSLA, the Clean Water Act, the Limitation of Liability Act of 1851 (for maritime claims), the Deepwater Ports Act, and the Trans-Alaska Pipeline Authorization Act. *Id.* at *3, *6. The Legislature's intent to

-10-

package these conflicting regimes into one cohesive whole did not, however, extend to an intent to deprive the states of their power to provide rights of action for their own citizens. As noted in the Senate debate over OPA:

> To date, Federal legislation has affirmed the rights of States to protect their own air, water, and land resources by permitting them to establish State standards which are more restrictive than Federal Standards.
>
> [OPA] would permit such State laws to continue and would not preclude enactment of new State laws.
>
> The theory behind the Committee action is that the Federal statute is designed to provide basic protection for the environment and victims damaged by spills of oil. Any State wishing to impose a greater degree of protection for its own resources and citizens is entitled to do so. On the other hand, a State might feel adequately protected by the Federal statute and therefore choose not to enact additional State law. <u>In any event, the Committee chose not to impose, arbitrarily, the constraints of the Federal regime on the States while at the same time preempting their rights to their own laws</u>. *Id.* at *6.

The Senate report also notes that:

> Preemption has been discussed by the members of the Committee more than any other single issue. [OPA] does not embrace any preemption of State oil spill liability laws….*Id.* at *17.

The joint Congressional conference report also reaffirmed that OPA was not intended to preempt state causes of action when it reported that:

> [The OPA] states explicitly that nothing in the substitute...shall affect in any way the authority of a State or local government to impose additional liability or other requirements with respect to oil pollution….*See* H.R. Rep. No. 101-653, at *21 (1990)(Conf. Rep.), reprinted in 1990 U.S.C.C.A.N. 779.

In considering a preemption argument made under OPA, the First Circuit held, "Congress did not intend the OPA to bar the imposition of additional liability by the States." *S. Port Marine, LLC v. Gulf Oil L.P.*, 234 F.3d 58, 65 (1st Cir. 2000).

The argument that OPA preempts state common law causes of action to recover damages in oil spill cases because the state actions would somehow conflict with OPA "was

effectively put to rest in *U.S. v. Locke*, decided by the Supreme Court." *Williams v. Potomac Elec. Power Co.*, 115 F. Supp. 2d at 564-65 (D. Md. 2000)(citing *United States v. Locke*, 529 U.S. 89, 105 (2000)). Indeed, the state law "savings clause" contained in 33 U.S.C. § 2718 "was meant to allow the states to go beyond the basic protection of the federal law. The beneficiaries of the savings clause, therefore, are the victims of oil spills." *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1448 (E.D. Va. 1996).

The general rule is that state law claims are not preempted by a federal statute absent "extraordinary" language in the statute indicating Congressional intent to displace those state claims. *Ortega v. HomEq Servicing*, 2010 WL 383368 at *4 (C.D. Cal. Jan. 25, 2010). The "dispositive question" is whether or not the supposedly preemptory statute "provides the exclusive cause of action." *Ortega*, 2010 WL 383368 at *4. Here, OPA's own state law savings clause renders it unambiguously non-exclusive. 33 U.S.C. § 2718.

Further evidence that OPA does not preempt state law claims can be found in a line of OPA cases considering whether a plaintiff asserting state law claims against an oil spill defendant must comply with a pre-suit presentment requirement imposed by OPA § 2713. Those courts hold that presentment under OPA is unnecessary because claims under state law do not arise under OPA, a result fundamentally inconsistent with preemption. *See Russo v. M/T Dubai Star*, No. C 09-05158 SI, 2010 WL 1753187, at *3 (N.D. Cal. Apr. 29, 2010) ("The remainder of Plaintiffs' causes of action, however, arise not under OPA but under state law. The presentation requirement does not apply to these claims") (*citing Williams*, 115 F. Supp. 2d at 565 & n.3 (holding that that state law claims are not preempted by OPA, and that "there is, in consequence, no requirement for the presentment of claims under OPA prior to commencing suit")). Likewise,

when the oil spill defendant is not one of the "responsible parties" as defined by OPA, the plaintiff's state law causes of action do not need to be presented under OPA § 2713 - an unsurprising result given that such claims do not arise under OPA in the first place, and are accordingly not preempted. *Marathon Pipe Line Co. v. LaRoche Indus., Inc.*, 944 F. Supp. 476, 480 (E.D. La. 1996) (holding "in this suit, [plaintiff] seeks damages from LaRoche, not [the responsible party]. Such claims against LaRoche, who is not a responsible party, do not invoke § 2713's presentation requirement").

In sum, OPA permits a plaintiff to assert state statutory and common law claims for damages incurred as a result of an oil spill, that such claims are not preempted, and that such claims may be asserted in state court.

### III.    Plaintiff's Claims Are Valid Under Florida Law

Since 2011, Plaintiffs filed lawsuits against Kenneth R. Feinberg, et al. in Florida state courts asserting claims for gross negligence, negligence, negligence per se, fraud, fraudulent inducement, promissory estoppel, and unjust enrichment under Florida state law. In each case, the complaint alleges, in part, that Kenneth R. Feinberg, et al. misled the BP oil well blowout claimants by employing a "Delay, Deny, Defend" tactic against them. This tactic, commonly used by unscrupulous insurance companies, is as follows: "Delay payment, starve claimant, and then offer the economically and emotionally-stressed claimant a miniscule percent of all damages to which the claimant is entitled. If the financially ruined claimant rejects the settlement offer, he or she may sue."  In sum, Plaintiffs allege that BP is responsible for the oil well blowout incident; Feinberg, et al. (independent contractors), via employment of their "Delay, Deny, Defend" tactic, are responsible for not compensating them and thereby financially ruining them.

Plaintiffs' claims are valid under Florida law because OPA, a strict liability statute,

-13-

imposes a duty to fully compensate claimants for damages, settle claims, and pay interest on the amount paid in satisfaction of a claim; Plaintiffs can establish reliance; and Plaintiffs can prove they suffered damages as a direct and proximate result of Defendants' conduct.

### A. OPA Imposes a Duty to Fully Compensate Claimants for Damages.

OPA is a strict liability statute. In order to recover damages, a claimant merely needs to show that his or her *damages "resulted from" the oil spill*. OPA states, "*The responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages that result from such incident*." See 33 U.S.C. § 2702(a) (Emphasis added).

The damages referred to in 33 U.S.C. § 2702(a) include, but are not limited to: "Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which *shall* be recoverable by any claimant." *See* 33 U.S.C. § 2702(b)(2)(E) (Emphasis added).

### B. OPA Imposes a Duty to Encourage Settlement and Avoid Litigation.

"The overarching purpose of OPA's mandatory alternative dispute resolution process is 'to encourage settlement and avoid litigation.'" *Boca Ciega Hotel, Inc. v. Bouchard Trans. Co.*, 51 F. 3d 235, 240 (11th Cir. 1995). The court in *Boca* cited statements of Representative Hammerschmidt ("The system of liability and compensation….is intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation.") and Representative Lent ("The trust of this legislation is to eliminate, to the extent possible, the need for an injured person to seek recourse through the litigation process, which - as we know - can take years."). 135 Cong. Rec. at H7962, 7965.

Defendants, who cannot cite to a single authority, statutory provision, or fragment of legislative history supporting their position, self-servingly argue that (a) "OPA does not impose a duty to *actually settle a claim* or to conduct a claims process in any specific manner." (Emphasis added by Defendants) *See* Motion to Dismiss, p. 12; and (b) "Pursuant to OPA, a Responsible Party's claims process is subject to only two requirements: that such a claims process be established and that the process be advertised. There is no requirement to establish a claims process that abides by any legally recognized standard of care or that results in the settlement of any claims." *See* Motion to Dismiss, p. 16.

### C. Plaintiffs' Claims Are Valid Under Florida State Law.

For a complete discussion of Plaintiffs' claims, see Plaintiff's Response in Opposition to Defendants' Motion to Dismiss the Complaint, Case No. 2:11-cv-00375-JES-SPC (August 9, 2011), pp. 13 - 19, attached hereto as Exhibit "E."

## IV. The Credibility of a Court's Ruling is Inversely Proportional to the Court's Uniquely Creative Reasoning.

Plaintiffs respectfully point out that as the MDL 2179 Court's reasoning becomes more and more uniquely creative in its Orders, this Honorable Court's credibility decreases. The following examples are instructive.

### A. The Heyburn Rule

The Honorable John G. Heyburn II, Chair of the JPML, addressed the *Lexecon* decision in his article, "A View From the Panel: Part of the Solution." Judge Heyburn finds the *Lexecon* decision to be merely a "conundrum" which may be avoided by "resourceful" transferee judges. The undersigned disagrees. The *Lexecon* decision is not a conundrum. It is not an obstacle which judicial discretion may circumvent in the name of judicial efficiency/economy or political

expediency. It is the law. (*See* Exhibit "H," pp. 10 - 12).

### B. The Court's Reasoning in *Donovan v. Herman* is Instructive

On February 12, 2019, the undersigned filed a lawsuit against Defendant Stephen J. Herman in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. (*See* Exhibit "I"). The Complaint, when read in its entirety, proves that the undersigned stated with particularity each of the twelve causes of action filed against Defendant Herman in the instant case. Hence, the complaint is 130 pages in length. The Complaint is pled with specificity. It is not merely "a sprawling document" as this Honorable Court alleges in its Order and Reasons.

On April 1, 2019, Defendant Herman filed his first Motion to Dismiss with the USMDFL. The case was subsequently transferred by the JPML to the MDL 2179 Court on July 31, 2019.

On February 5, 2020, Defendant Herman filed his second Motion to Dismiss in the MDL 2179 Court. (*See* Exhibit "J").

On February 19, 2020, the undersigned filed his response in opposition to Defendant Herman's motion to dismiss. *See* Exhibit "K" (*See also, generally*, Exhibit "L").

On March 27, 2020, the MDL 2179 Court grants Herman's motion and dismisses Donovan's complaint with prejudice. (*See* Exhibit "M").

In his second Motion to Dismiss, Defendant Herman alleges, in pertinent part, "All of the claims which appear to be asserted in the Complaint are perempted under Louisiana Revised Statute 9:5605(a)."

Defendant Herman fails to mention that the U.S. Supreme Court held in *Van Dusen* and *Ferens* that the policies underlying the holdings of *Erie* and *Klaxon* mandated that the law,

-16-

including the choice-of-law rules, of the transferor court, rather than those of the transferee court, must be applied to a case that has been transferred pursuant to 28 U.S.C. § 1404(a). *Ferens v. John Deere Co.*, 494 U.S. 516, 532 (1990); *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

The following is an example of how the MDL 2179 Court's uniquely creative reasoning allows it to circumvent the U.S. Supreme Court's holdings in *Van Dusen* and *Ferens*.

> "….the Court's own research reveals that **Florida's choice of law regime applies the law of the state that has most this significant relationship to the parties and the occurrence**. *See Merkle v. Robinson*, 737 So.2d 540, 542 (Fla. 1999). Donovan is an attorney in Florida. Herman is an attorney in Louisiana. No contract exists between them. Donovan's claims concern actions Herman allegedly took in his role as a member of the PSC and as Plaintiffs' Co-Liaison Counsel, leadership positions in an MDL that is centralized in Louisiana. Herman's appointments came from this Court, which sits in Louisiana. (Rec. Docs. 110, 506). **All attorneys who appear in this MDL, including both Donovan and Herman, are subject to this Court's disciplinary authority** (Rec. Doc. 7812) and Louisiana's Rules of Professional Conduct. *See In Re: Deepwater Horizon*, 824 F.3d 571 (5th Cir. 2015) (affirming this Court's decision to sanction attorneys in MDL 2179 for violations of the Louisiana Rules of Professional Conduct); *see also* Rec. Doc. 26089 at 8. **Considering these factors, the Court holds that Louisiana has the most significant relationship to the parties and the events giving rise to this dispute**. **As a result, Donovan's claims are untimely under La. R.S. 9:5605(a)**....Herman cites Louisiana case law indicating that no fiduciary duty exists between these parties. (Rec. Doc. 26269-1 at 2 (citing *Scheffler v. Adams & Reese*, 950 So. 2d 641, 652-53 (La. 2007)). As explained above, **Louisiana law governs this dispute.**" (Rec. Doc. 28, Filed 03/27/20, attached hereto as Exhibit "M").

Plaintiffs very respectfully point out that all parties seeking justice, and not merely judicial efficiency, deserve less creative and more thoughtful reasoning from our courts.

## CONCLUSION

For all the foregoing reasons, Plaintiffs request that this Court (1) deny Defendants' Motions to Dismiss; and (2) grant Plaintiffs all other appropriate relief.

DATED: April 6, 2020                                                                 Respectfully submitted,

**/s/ Brian J. Donovan**
Brian J. Donovan
Attorney for Plaintiffs
Florida Bar No. 143900
3102 Seaway Court, Suite 304
Tampa, FL 33629
Tel: (352)328-7469
BrianJDonovan@verizon.net

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 6th day of April, 2020.

**/s/ Brian J. Donovan**
Brian J. Donovan