UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL 2179 SECTION: J(2) |
| Applies to: *No. 11-01987, Pinellas Marine Salvage Inc. & John Mavrogiannis v. Kenneth R. Feinberg, et al.* *No. 11-02533, Selmer M. Salvesen v. Kenneth R. Feinberg, et al.* *No. 13-06014, Andrew J. Ditch v. Feinberg, et al.* | * * * * | JUDGE BARBIER MAG. JUDGE CURRAULT |

## ORDER & REASONS
**[As to Feinberg's Motions to Dismiss the Donovan Plaintiffs' Complaints]**

The Gulf Coast Claims Facility ("GCCF") was established in 2010 to receive, process, determine, and pay (or reject) claims arising from the DEEPWATER HORIZON/Macondo Well oil spill. During its year-and-a-half existence, the GCCF processed over one million claims. The plaintiffs in the referenced member cases (collectively referred to herein as the "Donovan Plaintiffs," as they are all represented by attorney Brian J. Donovan) submitted three of those claims. Dissatisfied with the outcomes, the Donovan Plaintiffs sued the GCCF's administrator, Kenneth Feinberg and Feinberg Rozen, LLP d/b/a GCCF (collectively, "Feinberg").[1] Feinberg responded by moving to dismiss pursuant to FED. R. CIV. P. 12(b)(6). (Rec. Docs. 26431, 26432,

---

[1] Two of the Donovan Plaintiffs sued William G. Green, Jr., in addition to Feinberg (*See* Nos. 11-2533 and 13-6014). According to their complaints, "Green is 'Liaison' to GCCF and the 'Overseer' of all seafood claims for GCCF in the State of Florida who trained accountants to specifically handle claims of clam farmers." (Compl. ¶ 33, No. 13-6014, Rec. Doc. 1-1). The instant motions to dismiss were filed by Green and Feinberg. For ease of reading, however, this opinion will refer only to Feinberg.

26433).[2] Those motions, along with the Donovan Plaintiffs' opposition and Feinberg's reply (Rec. Docs. 26443, 26451), were submitted on the briefs and without oral argument. The Court, having considered the parties' arguments, the relevant record, and the applicable law, grants the motions and dismisses the Donovan Plaintiffs' complaints for the reasons set forth below.

## I. BACKGROUND

On April 20, 2010, a blowout, explosions, and fire occurred aboard the semi-submersible drilling rig DEEPWATER HORIZON as it was preparing to temporarily abandon a well, known as Macondo, it had drilled approximately 50 miles off the coast of Louisiana. These events resulted in eleven deaths, multiple injuries, and a massive oil spill in the Gulf of Mexico. Litigation followed. On August 10, 2010, the Judicial Panel on Multidistrict Litigation created Multidistrict Litigation No. 2179 ("MDL 2179") pursuant to 28 U.S.C. § 1407 and assigned it to this Court. (Rec. Doc. 1).[3] Nearly all federal cases resulting from the DEEPWATER HORIZON/Macondo Well blowout and oil spill have been consolidated with MDL 2179.

The majority of claims arising from the oil spill have been governed by the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701, et seq. Under OPA, the Coast Guard designates the source of the discharge, known as the "responsible party." *In re Settoon Towing Co.*, 859 F.3d 340, 344 (5th Cir. 2017) (citing 33 U.S.C. § 2714(a)). The responsible party is "'strictly liable for cleanup costs and damages and first in line to

---

[2] "Rec. Doc." citations are to the master docket, No. 10-md-2179, unless another docket is indicated.
[3] *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (*Deepwater Horizon*), 731 F. Supp. 2d 1352 (J.P.M.L. 2010).

2

pay any claims for removal costs or damages that may arise under OPA.'" *Id.* (quoting *United States v. Am. Commercial Lines, L.L.C.*, 759 F.3d 420, 422 n.2 (5th Cir. 2014)). "Individuals and entities harmed by an oil spill may file claims against the responsible party for damages. However, to promote settlement and avoid litigation, . . . OPA establishes specific procedures which claimants must follow." *Nguyen v. Am. Commercial Lines, L.L.C.*, 805 F.3d 134, 138 (5th Cir. 2015) (quotations and citation omitted). Specifically, claimants typically must first present their claims to the responsible party. 33 U.S.C. § 2713(a); *Nguyen*, 805 F.3d at 139. If the responsible party denies all liability or fails to settle the claim within 90 days, the claimant may then commence an action in court or submit the claim to the Oil Spill Liability Trust Fund, a public trust fund administered by the Coast Guard's National Pollution Funds Center. *See* 33 U.S.C. § 2713(c); *Nguyen*, 805 F.3d at 139. This presentment procedure is "'a mandatory condition precedent barring all OPA claims unless and until a claimant has presented her claims in compliance with § 2713(a) . . . .'" *Nguyen*, 805 F.3d at 139 (quoting *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir.1995)).

As this Court previously recounted,

> BP [, who leased the relevant block of the Outer Continental Shelf and owned a majority interest in the Macondo Well,] was designated by the Coast Guard as a "responsible party" for the DEEPWATER HORIZON/Macondo Well oil spill. Within days of the blowout and explosion, BP established a process to receive and pay claims arising from the oil spill ("Initial BP Claims Facility"). . . . Between May 3, 2010 and August 22, 2010, the Initial BP Claims Facility made over 127,000 payments, totaling nearly $400 million, to over 30,000 claimants. . . .
>
> Following discussions between BP and the U.S. Government, the

3

> White House announced on June 16, 2010, that BP would establish a $20 billion trust to fulfill [its] legal obligations, which would be administered by a new claims facility, the GCCF. [Feinberg] was selected to administer the GCCF. On August 23, 2010, the GCCF replaced the Initial BP Claims Facility. . . .
>
> . . .
>
> The GCCF ended in 2012 after BP agreed to a class-wide settlement, the Deepwater Horizon Economic and Property Damages Settlement ("Economic Settlement"). During its one-and-a-half-year existence, the GCCF processed over one million claims and paid over $6.2 billion to approximately 220,000 claimants. . . .[4]

(Order & Reasons of Oct. 20, 2017 at 3-5, Rec. Doc. 23560 (footnotes and citations omitted)).[5]

Each of the Donovan Plaintiffs—Pinellas Marine Salvage, Inc. and John Mavrogiannis (together, "Pinellas"), Selmer Salvesen ("Salvesen"), and Andrew Ditch ("Ditch")—allegedly suffered economic losses due to the oil spill and submitted claims to the GCCF.

Pinellas alleges it is a full-service marine salvage facility in Tarpon Springs, Florida. (Compl. ¶ 18, No. 11-1987, Rec. Doc. 1-2). On July 3, 2010, Pinellas submitted

---

[4] As for the Economic Settlement, it has paid $12.2 billion to some 134,000 claimants. *See* Public Statistics for the Economic Settlement, July 1, 2020, *available at* www.deepwaterhorizoneconomicsettlement.com/reporting.php. This does not include class members who settled with BP via the Court-Appointed Neutrals Process while their claims were pending with the Economic Settlement. The Court understands that approximately 20,000 claimants resolved their claims in this fashion, and the aggregate amount of those settlements is roughly $5.1 billion. Furthermore, claimants who were paid under either the Economic Settlement or through the Neutrals Process just described also received a share of $350 million under the Assigned Claims portion of the Halliburton & Transocean Class Action Settlements. (*See* Rec. Docs. 25122-2, 25128). Thus, around $17.6 billion has been paid to 154,000 members of the Economic Settlement Class. Additionally, many of these claimants have or will receive yet another payment under the Punitive Damages portion of the Halliburton & Transocean Class Action Settlements. (*See* Rec. Doc. 25899-2, 26497-2).

[5] *Deepwater Horizon*, No. 10-md-2179, 2017 WL 4764365, at *2-3 (E.D. La. Oct. 20, 2017), *aff'd sub nom. In Re: Deepwater Horizon*, 751 F. App'x 438 (5th Cir. 2018) (unpublished), *and* 761 F. App'x 311 (5th Cir. 2019) (unpublished).

4

a claim for $78,000 to the Initial BP Claims Facility. (*Id.* ¶ 32). In July and August, Pinellas received two interim payments totaling $10,000. (*Id.* ¶¶ 33-34). On August 23, 2010, Pinellas refiled its claim with the GCCF. (*Id.* ¶ 37). Pinellas increased the amount of its claim several times, ultimately demanding $900,000 to fully resolve its claim. (*Id.* ¶¶ 41-44). In December 2010, the GCCF made another interim payment to Pinellas in the amount of $78,000.00 (for a total of $88,000). (*Id.* ¶¶ 51, 53). It appears that Feinberg subsequently offered Pinellas an additional $173,143.09 to fully settle its claim, which Pinellas rejected. (Rec. Doc. 26431-1 at 6 & n.8).

Salvesen allegedly grew clams near St. James City, Florida. (Compl. ¶ 17, No. 11-2533, Rec. Doc. 1-2). On July 22, 2010, Salvesen submitted a claim for $175,760 to the Initial BP Claims Facility. (*Id.* ¶ 31). Salvesen re-filed this claim with the GCCF on August 25, 2010. (*Id.* ¶ 35). Salvesen increased the amount of his demand to $645,760 in January 2011, and then to $737,656 in March 2011. (*Id.* ¶¶ 47, 56). On April 22, 2011, the GCCF denied Salvesen's claim because his supporting documentation was not "sufficient to establish that [his] financial loss occurred as a result of the Oil Spill." (*Id.* ¶ 61).

Ditch also allegedly grew clams near St. James City, Florida. (Compl. ¶ 29, No. 13-6014, Rec. Doc. 1-1). On November 23, 2010, Ditch submitted a claim to the GCCF in the amount of $51,863. (*Id.* ¶ 62). On December 6, 2010, the GCCF denied Ditch's claim because his submission "did not provide sufficient documentation to support [his] claim." (*Id.* ¶ 63).

The Donovan Plaintiffs each filed substantially similar complaints against

5

Feinberg in Florida state court. In short, they seek to hold Feinberg liable under Florida common law for failing to settle their claims. The complaints allege the GCCF breached various duties purportedly owed to the Donovan Plaintiffs under OPA. For example, the Donovan Plaintiffs claim the GCCF employed a "Delay, Deny, Defend" strategy whereby it would intentionally delay paying a claim, starving the claimant in hopes that it will accept an unreasonably small offer. (*See, e.g.*, Salvesen Compl. ¶ 4). The Donovan Plaintiffs' cases were removed to the Middle District of Florida and then transferred to this Court pursuant to 28 U.S.C. § 1407, where they were consolidated with MDL 2179.[6]

## II. LEGAL STANDARD

Feinberg moves to dismiss the Donovan Plaintiffs' complaints for failure to state a claim. *See* FED. R. CIV. P. 12(b)(6). To survive such a motion,

> a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citations and some quotation marks omitted). Although courts must accept factual allegations in the complaint as true, they "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

---

[6] The Donovan Plaintiffs moved to remand their cases to state court. The Court has denied those motions in a separate order that issued simultaneously with this decision.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The plaintiff must allege enough factual content "to 'nudge' his claim . . . 'across the line from conceivable to plausible.'" *Id.* at 683 (quoting *Twombly*, 550 U.S. at 570). Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. DISCUSSION

The Donovan Plaintiffs accurately describe OPA's presentment procedure in their complaints. They state:

> Under OPA, claims for damages must be presented first to the responsible party. In the event that a claim for damages is either denied or not paid by the responsible party within 90 days, the claimant may elect to commence an action in court ***against the responsible party*** or to present the claim to the Oil Spill Liability Trust Fund . . . .

(Salvesen Compl. ¶ 5 (emphasis added)). The Donovan Plaintiffs' complaints also accurately state that BP was the designated "responsible party" for the DEEPWATER HORIZON/Macondo Well oil spill. (*Id.* ¶ 23). Furthermore, the Donovan Plaintiffs' complaints reflect their understanding that Feinberg and the GCCF are separate people/entities from BP, and that Feinberg/GCCF "perform[ed] BP's obligations under OPA with respect to private economic loss claims." (*Id.* ¶¶ 29-30). Despite this knowledge, the Donovan Plaintiffs did not commence an action in court against BP or present their claims to the Oil Spill Liability Trust Fund after the GCCF failed to settle their claims. Nor did they participate in the Economic

7

Settlement.[7] Instead, and for reasons known perhaps only to the Donovan Plaintiffs' attorney, they sued Feinberg.

As mentioned above, the Donovan Plaintiffs attempt to plead claims under Florida common law. The Court has previously ruled in this MDL that state law is preempted, and in doing so rejected arguments based on OPA's savings clause, 33 U.S.C. § 2718—the very arguments the Donovan Plaintiffs press here. (*See* Order & Reasons of Aug. 26, 2011 at 14-18, Rec. Doc. 3830;[8] Order & Reasons of Nov. 14, 2011 at 7-17, Rec. Doc. 4578;[9] Order & Reasons of Dec. 9, 2011 at 4-8, Rec. Doc. 4845[10]). Furthermore, the Fifth Circuit has agreed with the Court's conclusion and rationale. *See In re Deepwater Horizon*, 745 F.3d 157, 172-74 (5th Cir. 2014) (holding civil penalties under Louisiana law are preempted; rejecting arguments based on OPA's savings clause). The Donovan Plaintiffs ignore these decisions. Consequently, they fail to distinguish their state law claims from those previously dismissed in this MDL.

The Court could end the discussion here, but one more observation is warranted. While the Donovan Plaintiffs chose not to bring an action under OPA—in fact, they emphatically state that their claims "are not, and could not be, brought under OPA" (Rec. Doc. 26443 at 8)—their complaints rely extensively and explicitly on OPA. Notably, the Donovan Plaintiffs urge that OPA imposed on the GCCF a duty to settle the Donovan Plaintiffs' claims. (*Id.* at 13-14). OPA contains no such duty.

---

[7] Pinellas and Salvesen opted out of the Economic Settlement. (*See* Rec. Doc. 8001-39). Ditch submitted an untimely opt out. (Rec. Doc. 8001-39). However, he did not file a claim with the Settlement Program and the deadline for doing so passed in 2015. As noted above, enormous sums have been paid to eligible members of the Economic Settlement class. *Supra* note 4.

[8] *Deepwater Horizon*, 808 F. Supp. 2d 943, 955-58 (E.D. La. 2011).

[9] *Deepwater Horizon*, 2011 WL 5520295, at *3-*8 (E.D. La. Nov. 14, 2011).

[10] *Deepwater Horizon*, 835 F. Supp. 2d 175, 178-80 (E.D. La. 2011).

8

OPA is intended "to promote settlement and avoid litigation." *Nguyen*, 805 F.3d at 138. How does it do this? As mentioned, OPA's presentment procedure requires a claimant to give the responsible party the opportunity (90 days) to settle her claim before she may sue in court. 33 U.S.C. § 2713. OPA also provides that interest typically begins to accrue following the 30th day after the claim is presented, which incentivizes early settlement. *Id.* § 2705. But there is a wide chasm between a process that "promotes" settlement (what Congress enacted) and one that "requires" settlements (what the Donovan Plaintiffs apparently wish Congress enacted). Indeed, OPA provides two remedies when a claim is presented and not settled within 90 days: sue the responsible party for any uncompensated removal costs or damages allegedly owed under § 2702 (plus interest) or file a claim with the Oil Spill Liability Trust Fund. *Id.* § 2713(c). However, OPA provides no private cause of action to a claimant for the mere fact that the responsible party (or a third party engaged to fulfill the responsible party's obligations, as occurred here) failed to settle a claim.

Feinberg raises several other plausible arguments in favor of dismissal. In light of the foregoing, the Court need not address these. Accordingly, the Court will grant Feinberg's motions to dismiss. The Court further finds that any amendment to the Donovan Plaintiffs' complaints would be futile, therefore, the complaints will be dismissed with prejudice.

IV. CONCLUSION

For the reasons above,

IT IS ORDERED that Feinberg's Motions to Dismiss (Rec. Docs. 26431, 26432,

9

26433) are GRANTED.

IT IS FURTHER ORDERED that the Donovan Plaintiffs' complaints (Nos. 11-1987, 11-2533, 13-6014) are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 2nd day of July, 2020.

_____
United States District Judge

**Note to Clerk: File in 10-md-2179 and in each of the referenced member cases.**