1              UNITED STATES DISTRICT COURT

2             EASTERN DISTRICT OF LOUISIANA

3

4  IN RE:  OIL SPILL BY THE OIL RIG   *   10-MD-2179
            *DEEPWATER HORIZON* IN THE    *
5          GULF OF MEXICO ON            *
           APRIL 20, 2010               *   Section J(2)
6                                       *
   Applies to:                          *
7                                       *   April 8, 2021
                                        *
   12-CV-2004 (*Sergio Valdivieso*)     *
8  17-CV-3367 (*Sheri Allen Dorgan*)    *
   * * * * * * * * * * * * * * * * * *

9

10
                  STATUS CONFERENCE BEFORE
11             THE HONORABLE CARL J. BARBIER
                UNITED STATES DISTRICT JUDGE
12

13  Appearances:

14
   For Sergio Valdivieso:      Herd Law Firm
15                             BY:  CHARLES F. HERD JR., ESQ.
                               19500 Tomball Parkway, Suite 250
16                             Houston, Texas 77070

17
   For Sheri Allen Dorgan:     Sheri Allen Dorgan
18                             4455 Clipper Cove
                               Destin, Florida 32541
19

20  For BP America Production   Kirkland & Ellis, LLP
   Company and BP Exploration  BY:  MATTHEW T. REGAN, ESQ.
21  & Production, Inc.:              KRISTOPHER RITTER, ESQ.
                               300 North LaSalle
22                             Chicago, Illinois 60654

23

24

25

1  <u>Appearances</u>:

2

3  For SWS Environmental          Juge Napolitano Guilbeau
   Services:                        Ruli Frieman & Whiteley
                                  BY:   JOSEPH B. GUILBEAU, ESQ.
4                                 3320 W. Esplanade Avenue North
                                  Metairie, Louisiana 70002
5

6  Also Participating:           Lance C. Kassab, Esq.

7

8  Official Court Reporter:      Toni Doyle Tusa, CCR, FCRR
                                  500 Poydras Street, Room B-275
                                  New Orleans, Louisiana 70130
9                                 (504) 589-7778

10

11 Proceedings recorded by mechanical stenography using
   computer-aided transcription software.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

10:00

**<u>PROCEEDINGS</u>**

**(April 8, 2021)**

         **THE COURT:**  Good morning.  We have two cases set for this morning.  We had three cases originally that were remanded by the Fifth Circuit.  In one of them, *Brian Gortney*, 15-1047, there has been a stipulation of dismissal, a voluntary dismissal filed, so we only need to talk about the other two.

         Counsel, make your appearances, please.

         **MR. HERD:**  Yes, Your Honor.  Charles Herd for Sergio Valdivieso and his wife.

         **MR. GUILBEAU:**  Joseph Guilbeau, Your Honor, for SWS Environmental Services.

         **THE COURT:**  I'm sorry, I didn't get your name.

         **MR. GUILBEAU:**  Joseph Guilbeau.

         **THE COURT:**  Guilbeau?  Oh, okay.  Yes.

         **MR. GUILBEAU:**  Guilbeau.

         **THE COURT:**  I see you now.  Okay.  Are your clients defendants in both of these cases or just the first case?

         **MR. GUILBEAU:**  I believe it's just Sergio Valdivieso.

         **THE COURT:**  Okay.  For BP, I see Mr. Regan.

         **MR. REGAN:**  Yes, Your Honor.  Good morning. Matthew Regan and Kristopher Ritter here on behalf of BP.

         **THE COURT:**  Okay.  So that's in 12-2004, *Sergio Valdivieso v. Southern Cat, Inc., et al.*  Then the other case is 17-3367, *Sheri Allen Dorgan v. BP, et al.*

10:09

1              Ms. Dorgan, are you on the line?

2         **MS. DORGAN:**  Yes, sir, I am.  Mr. Kassab is

3    representing me in a legal malpractice case, and we are in the

4    process of trying to get counsel right now for this case.

5         **THE COURT:**  Okay.  I can't see you, ma'am.  Is there

6    some reason we can't see you?

7         **MS. DORGAN:**  Can you see me now?

8         **THE COURT:**  No, I do not see you.

9         **MS. DORGAN:**  I'm sorry.

10        **THE COURT:**  I can hear you fine, but I can't see you.

11   Do you have your camera turned off?

12        **MS. DORGAN:**  Let me see in settings.

13        **MR. REGAN:**  Ms. Dorgan, right in the bottom left

14   corner, there's a thing next to your mute button that says

15   "Start Video."  That may be the button you need.

16        **MS. DORGAN:**  Okay.  See if that's better.

17        **THE COURT:**  There you are.  Now we can see you.

18        **MS. DORGAN:**  I'm sorry.

19        **THE COURT:**  That's okay.  Thank you, ma'am.

20        **MS. DORGAN:**  Yes, sir.

21        **THE COURT:**  There is an attorney on the line who

22   represents you in a different case, but not in this case; is

23   that correct?

24        **MS. DORGAN:**  That is correct, sir.  Lance Kassab.

25        **MR. KASSAB:**  Judge, Lance Kassab.  Sheri Dorgan is

10:11

1    correct.  I represent her in the legal malpractice case against

2    the lawyers that allowed the case to be dismissed.  I just

3    wanted to let the Court know that I was here.  I wanted to find

4    out what's going on.  I am attempting to find her a lawyer to

5    handle this case.  I do not represent her in this case.

6         THE COURT:  So that malpractice case is still pending

7    somewhere?

8         MR. KASSAB:  Yes, sir.

9         THE COURT:  Where is that, in state court somewhere?

10        MR. KASSAB:  State court.  There was a motion to

11   compel arbitration which was denied and is now on appeal.

12        THE COURT:  Okay.  I don't know if it makes a

13   difference which case we take first.  Mr. Regan, do you have a

14   suggestion which one we discuss first?

15        MR. REGAN:  Yes, Your Honor.  If we handle

16   Ms. Dorgan's claim first, particularly as pro se, I think it's

17   a simpler issue, and then we can move on to the other one.

18        THE COURT:  Okay.  That makes sense.

19             Ms. Dorgan, in her particularized statement of

20   claim which she did file, alleges that she lived in Gulf Shores

21   during the time of the oil spill, so this is a claim by someone

22   who claims to have been exposed by residing near the Gulf.

23   Because this case was dismissed and while it was on appeal the

24   Court issued another pretrial order, No. 68, I think there was

25   no opportunity for these plaintiffs to comply with PTO 68.

1          Is my understanding correct on that?

2          **MS. DORGAN:**  I believe you are correct, sir.

3          **THE COURT:**  Mr. Regan, you agree with that?

4          **MR. REGAN:**  Matthew Regan for BP.  Yes, Your Honor.

5   I think for Ms. Dorgan it's just finding a new deadline for

6   that PTO 68 production.

7          **THE COURT:**  Okay.  Is this a case that would be

8   expected to stay in this Court or not, as a B3 case?  Do we

9   know that yet?

10          **MR. REGAN:**  Matthew Regan for BP.  I don't think we

11   know that yet, Your Honor.  I think that may be a question for

12   once counsel is retained by Ms. Dorgan as to that.  We know

13   that an SFJ was filed in this Court in 2012 and then a

14   complaint in 2013 in this Court, which was a group complaint

15   with Ms. Dorgan.  If I have it correct, sometimes it was

16   "Sheri Allen Dorgan" and sometimes "Sheri Dorgan," but the same

17   person.  I think the question ultimately of venue is one that

18   it's open, but all the filings today have been in your Court,

19   Your Honor.

20          **THE COURT:**  Okay.  Ms. Dorgan, do you still live in

21   Gulf Shores or you live elsewhere?

22          **MS. DORGAN:**  No, sir.  I'm in Florida.

23          **THE COURT:**  In Florida?

24          **MS. DORGAN:**  I'm in Destin, Florida.

25          **THE COURT:**  In Florida.

10:15

1       MS. DORGAN:  Yes, sir.

2       THE COURT:  All right.  I don't know if I made myself

3   clear for Ms. Dorgan as to what I said a few minutes ago.

4   After your case was originally dismissed and while your case

5   was on appeal, there was another pretrial order which required

6   additional information to be exchanged, both from you and from

7   BP.  Of course, you weren't required or didn't have an

8   opportunity to comply with that, but we are going to have to

9   have you comply with that now.  I will give you some time to do

10   that, and then we will decide how to proceed.

11       What we have done in all the other B3 medical

12   cases similar to yours is that once that pretrial order is

13   complied with, the Court and the parties look at the case and

14   decide whether the case will ultimately stay here to be

15   resolved or whether it will be transferred elsewhere.  So

16   that's where we are.

17       MS. DORGAN:  Yes, sir.

18       THE COURT:  Mr. Regan, I will ask you first if you

19   have a suggestion as to anything else, how we proceed here.

20       MR. REGAN:  Matthew Regan, Your Honor.  As I think

21   about it, we need a deadline for the PTO 68 compliance.  As

22   Ms. Dorgan has shared, she is searching for a counsel in this

23   case.  I think those are the two things that need to happen.

24   In terms of how much time to do that, we are happy to hear what

25   Ms. Dorgan's suggestion would be, but we don't have a

10:17

1  particular view.  Those are the things that need to happen.

2        THE COURT:  Ms. Dorgan, go ahead.

3        MS. DORGAN:  Yes, sir.  I would like to request

4  30 days, if that's acceptable.

5        THE COURT:  Yes, that's reasonable.  30 days to find

6  a lawyer, is that what you are saying?

7        MS. DORGAN:  Well, to find a lawyer and have this

8  answered, this PTO 68.

9        THE COURT:  Do you think you can get that answered?

10 That's a pretty quick deadline there.  I was going to give you

11 a little more time than that.

12       MS. DORGAN:  Okay.  Well, I will take your

13 suggestion, sir.

14       THE COURT:  Mr. Kassab, you wanted to say something?

15       MR. KASSAB:  I was going to say what Your Honor has

16 said.  I think she probably needs a little more time, maybe

17 30 days to get a lawyer and maybe another 30 days or so to

18 comply with the order, something to that effect.  You are more

19 familiar with it than I am.

20       THE COURT:  Well, I think 90 days is typically what

21 we have given other claimants in this category to comply.

22            Isn't that right, Mr. Regan?

23       MR. REGAN:  Yes, Your Honor, that's correct.

24       THE COURT:  Ms. Dorgan, I'm going to give you 90 days

25 to comply with PTO 68.

10:19

1       **MS. DORGAN:**  Thank you, sir.

2       **THE COURT:**  Please don't wait 90 days to find a

3  lawyer and then have that lawyer come in and need to ask for

4  more time.  Get right on it.  The sooner you can find a lawyer,

5  get a lawyer on board to help you -- or if you are not going to

6  have a lawyer, you need to work through it yourself.  Have you

7  seen or do you know what we are talking about when we say

8  PTO 68?

9       **MS. DORGAN:**  Yes, sir.

10       **THE COURT:**  Okay.  Great.

11       **MS. DORGAN:**  I know how to find it, yes, sir.

12       **THE COURT:**  Okay.  Perfect.

13             Is there anything else we need to do right now,

14  Mr. Regan or Ms. Dorgan, in this case?

15       **MS. DORGAN:**  I would like to ask who the lead

16  attorney for BP on my case is, please.

17       **THE COURT:**  Mr. Regan, do you want to respond to

18  that?

19       **MR. REGAN:**  Ms. Dorgan, I am the lead lawyer for BP.

20  I have other partners and lawyers who help me, but I am the

21  lead lawyer.

22       **MS. DORGAN:**  Thank you.  Thank you, sir.

23       **MR. REGAN:**  You're welcome.

24             Your Honor, to your question -- again,

25  Matthew Regan -- nothing further with respect to Ms. Dorgan's

10:20   1   case for today's hearing.

2           **THE COURT:**  Okay.  Ms. Dorgan, do you have anything

3   else right now that you need to say or any questions you need

4   to ask the Court?

5           **MS. DORGAN:**  No, sir.  I thank you for your time and

6   your patience with me.

7           **THE COURT:**  Okay.  You're welcome.  You're free to

8   get off the call if you wish.  Mr. Kassab, you too.  Thank you

9   very much.

10          **MR. KASSAB:**  Thank you.

11          **MS. DORGAN:**  Okay.

12          **THE COURT:**  Let's go to the other case,

13  Mr. Valdivieso.

14              Mr. Herd.

15          **MR. HERD:**  Yes, Your Honor.

16          **THE COURT:**  Somebody can tell me where we are in this

17  case.  This case is a little different because, as I read the

18  particularized statement that was filed in response to PTO 66

19  on plaintiff's behalf, he seems to be alleging a combination of

20  an exposure injury, but also a nonexposure injury that relates

21  to some specific event where he says he injured his shoulder or

22  neck or something.  Mr. Herd, maybe you can explain that.

23          **MR. HERD:**  Yes, Judge, I can address that quickly.

24  Sergio was a Jones Act seaman and was working as a deckhand on

25  one of the cleanup vessels/response vessels when he was told by

the captain to use his arm and grab one of the booms; and the
captain would put the boat in reverse, and Sergio was supposed
to hold the boom while the boat backed up because they didn't
have any equipment to attach to the boom.  It tore out his
shoulder and did some other orthopedic injuries to his spine.

On March 12 we filed our disclosures under
PTO 68 and were very clear in saying that he is not asserting
any specified injury, a specific condition.  He is not
asserting exposure to hydrocarbons or dispersants.  He is
strictly a Jones Act seaman bringing classic personal injury
claims from the injury sustained when he grabbed the boom and
the boat backed up.  I tried to make it as clear as I could.
In Exhibit A to Pretrial Order 68, I highlighted:

"Note:  These are injuries sustained on June 10,
2010, while working as a Jones Act seaman; specifically, a
deckhand on a cleanup response vessel.  These are not specified
physical conditions as described in the medical benefits
settlement agreement."

We scrambled, of course, to comply with that
March 12 deadline.  We also filed plaintiff's opposed motion to
sever and for suggestion of remand and/or motion to transfer
venue.  We notified BP that this is strictly a Jones Act case
and that we were not asserting any of the typical -- in fact,
any of the B3-type claims.  At the time BP said that they were
opposed, but they might reconsider.

10:24

1          So as to the specific items that Your Honor is
2    addressing in today's hearing, I would suggest that we have
3    already complied with filing the Pretrial Order 68 and the
4    deadline for filing motions to transfer, suggestions of remand,
5    etc.  If BP agrees, then the third item on your order for today
6    is to set any other deadlines that may be appropriate.
7          **THE COURT:**  Mr. Regan.
8          **MR. REGAN:**  Matthew Regan for BP, Your Honor.  The
9    *Valdivieso* case is different than what we just heard, and I
10   will walk through the differences and what we believe needs to
11   happen next.
12          First, this plaintiff is not an opt-out, and
13   that's important because during the time that this plaintiff
14   was dismissed -- it was dismissed in January 2019.  During that
15   time Your Honor heard a summary judgment motion as to B3
16   claimants who were class members, and I think you dismissed
17   12 class members under that motion.  That was July of 2019.
18          Had Mr. Valdivieso still been a plaintiff before
19   you, he would have been subject to that motion.  The reason I
20   can say that with certitude is that the basis for many of those
21   dismissals was materials from GRG, and GRG expressly identified
22   Mr. Valdivieso as a class member.  In fact, he filed one of the
23   data forms with GRG, and they identified him as a cleanup
24   worker.
25          So the question of whether Mr. Valdivieso was a

10:25

1    class member and, therefore, has claims against BP that are
2    barred by the class release is one that Your Honor has answered
3    as to other plaintiffs before you, but still has not addressed
4    with respect to Mr. Valdivieso.
5              Secondly, we are not here to argue that motion
6    here today, but in response to what Mr. Herd just said, the
7    class definition is not based on specific types of injuries.
8    It's not an SPC class definition.  The class definition is
9    based on whether the claims are a result of exposure or
10   dispersants.  Your Honor is very familiar with the MSA.
11             Now, finally, what is the claim here is actually
12   also a question that I think that motion practice would clarify
13   because, in contrast to what we have heard this morning, both
14   the complaint and the PTO 66 filings by this plaintiff claim
15   expressed exposure and exposure allegations.  It's our view
16   that if we have a briefing process where we file the same
17   motions that we did in July 2019, the same basis that we did
18   before, we could hear whatever the response is formally from
19   this plaintiff as to whether or not they are a class member.
20             We think at that point we would then have
21   clarity in two respects.  Number one, is he a class member and,
22   therefore, does he have claims barred by the class release?
23   Our contention would be that he is.  Number two, if that's
24   true, what claims are even left with respect to BP?  We think
25   the Court could answer both those questions in that motion

10:27

1  before we then transfer, because our belief is there's nothing

2  to transfer or for BP to be a defendant in any potential future

3  litigation based on the class release.

4                    So, in summary, Your Honor, he is not an

5  opt-out.  He has been identified as a class member.  He just

6  wasn't in our case when that issue was before Your Honor as to

7  other B3 plaintiffs.  We could very quickly file that motion.

8  We would have his specific allegations, but it's a near carbon

9  copy to what we have done in this litigation.  At that point he

10 would then be put in the same position.  That question has been

11 answered as to the other B3 plaintiffs that you are

12 transferring out.  It should be answered as to Valdivieso

13 before any transfer decision is made.  That would be our view

14 of what the appropriate next step would be.

15         **THE COURT:**  Let me ask Mr. Herd.  Your client did

16 allege exposure claims.  I looked at his particularized

17 statement.  He alleged both.  He alleged some type of exposure

18 claims and he alleged nonexposure claims, the shoulder injury

19 that you have described.  Is there a dispute, as to any

20 exposure claims that he might have had, that he would have been

21 a class member?

22         **MR. HERD:**  I think that's true, Judge, but I talked

23 with him at length recently and, in fact, he has no exposure

24 claims.  I was mistaken when I filed initially because I

25 assumed that because he was on a cleanup vessel, he also had

10:29

1  exposure claims.  That was my mistake.  He did not have

2  exposure claims, and I have tried to be as clear as I possibly

3  can be.  This is a Jones Act case.  It was filed in state court

4  as a Jones Act case.  It's still a Jones Act case.  He, in

5  fact, confirmed to me that he has no injuries from exposure

6  either to hydrocarbons or to dispersants.

7        THE COURT:  I guess I'm trying to understand whether

8  he initially alleged exposure claims but now is essentially

9  waiving them --

10        MR. HERD:  Yes.  That's correct, Judge.  Initially he

11  was in the group that we believed had exposure claims, but

12  those are abandoned and waived because, in fact, I now know he

13  did not sustain any exposure injuries.

14        THE COURT:  Never sought any medical treatment and

15  never complained of any exposure-type injuries or conditions?

16        MR. HERD:  That's correct.  That's correct.  His

17  original medical care was to his shoulder in Cutoff, Louisiana,

18  and the remainder of his care is near his home near Tampa.  I

19  can certainly confirm it, but to my knowledge he never sought

20  or received any medical care related to hydrocarbons or

21  dispersants.

22        THE COURT:  Now, let me ask Mr. Regan a question.

23  Even assuming he is a class member, Mr. Regan, but he is

24  waiving, withdrawing, or whatever alleging that he really --

25  not pursuing any exposure-type claims, his claims for the

alleged shoulder injury obviously would not have been released
by the class release, correct?

**MR. REGAN:**  I believe that's correct, but I don't
think he has any claims left, then, against BP.

**THE COURT:**  You're limiting your argument to no
remaining claims against your client?

**MR. REGAN:**  That's right.

**THE COURT:**  Excuse me.  That would be based on what,
that you're not a Jones Act employer?

**MR. REGAN:**  Correct, Your Honor, so two things.  One,
we would need both a statement and a dismissal with prejudice
that he is a class member and, therefore, has no right to ever
bring those claims.  Secondly -- again, this is where the
clarity or lack of in the complaint is critical and could be
improved -- we are not identified as the Jones Act employer and
we weren't.  His MDL 2179 filing where he makes exposure
allegations and adds BP as a defendant, we think that should be
dismissed with prejudice.  We do not believe he has a basis for
any other claims against BP.

**THE COURT:**  Okay.  Mr. Guilbeau, do you want to jump
into this?

**MR. GUILBEAU:**  Your Honor, I don't have a whole lot
to add.  We are not the employer either.

**THE COURT:**  You're not the employer either?  What's
the name of your client again?

10:32

1     **MR. GUILBEAU:**  That was SWS.  He claimed to have
2  multiple employers, I guess, under a -- it's not real clear in
3  the complaint, but under, I would assume, a borrowing theory of
4  some sort.

5          I don't know that all those parties are even
6  represented today, but there was a DRG entity.  Southern Cat
7  was his direct employer.  He says he is a Jones Act seaman at
8  all times.  He was employed by defendant Southern Cat, ERG,
9  SWS, and/or DRS.  It's true he does not mention BP, but he
10  names four potential employers.

11          We have disputed that, of course.  I don't
12  represent all those entities.  There's only one other attorney
13  that hasn't spoken, Kristopher.  I'm not sure who Kristopher
14  represents.

15     **THE COURT:**  Mr. Ritter is with Mr. Regan.  They
16  represent BP.

17     **MR. GUILBEAU:**  I had sent some emails about this to
18  Mr. Herd to see who he intended to leave in the case because I
19  know some of these contractors have been dismissed on that
20  derivative immunity.  I think Your Honor has ruled in a
21  similarly situated case on that.

22     **THE COURT:**  I guess we are all kind of focusing, at
23  least I am, on who would be potentially liable as a Jones Act
24  employer for his alleged shoulder injury.  We know a Jones Act
25  seaman can have multiple employers.

1    **MR. GUILBEAU:**  Right.

2    **THE COURT:**  There's no doubt about that.  I am not

3    saying who is or isn't right now in this case.

4    Mr. Herd, what's your view or your client's view

5    as to who actually employed him?

6    **MR. HERD:**  Well, I believe his original or his

7    payroll employer was Southern Cat, Inc., but I understand that

8    they were working under instructions from Eastern Research

9    Group, Inc., which I understand was working under instructions

10   from BP.  So it is a little complicated to try to tease out who

11   the managing employer is, but there's no question that he is a

12   seaman.  We have claims against those three entities.

13   We have not been able to do any discovery in the

14   case, either the state court case or the federal case in

15   Houston or in your case, to really determine what the

16   relationship is between Sergio and the various defendants.

17   That's been a bit frustrating for us, but we can certainly do

18   that discovery when the case gets reassigned.

19   We have alleged, of course, unseaworthiness and

20   maintenance and cure, as you would be familiar with in a

21   maritime PI case like this.  We have alleged that BP is

22   negligent ultimately in having an improper and unseaworthy

23   vessel out doing the cleanup work and ultimately calling the

24   shots and giving instruction to these various response

25   companies.

10:35

1       **THE COURT:**  Am I wrong this was not part of the
2   Vessels of Opportunity program?
3       **MR. HERD:**  I don't know that.  I don't know that yet.
4   It was a response vessel.  Whether it was a VoO vessel, I don't
5   know.
6       **THE COURT:**  Mr. Regan, do you know?
7       **MR. REGAN:**  I don't and I think it's the challenge.
8   We read the complaint, and the allegations against BP are based
9   on the fact that there was an oil spill and dispersants to
10  which he was exposed to.  I understand we are hearing something
11  different today, but that's part of the challenge for us here
12  too.
13      **THE COURT:**  Well, in his particularized statement --
14  I'm looking at it now -- he seems to say that he was working on
15  vessels which he owned.  These were his own vessel or vessels.
16  I don't know if it's more than one.  A Carolina Skiff, so I
17  assume it was part of the Vessels of Opportunity program.
18  Mr. Herd, do you know anything about that?
19      **MR. HERD:**  I don't know factually, Judge.  It may
20  well be the case, but I don't know because we haven't done
21  discovery.  I don't know those details.  I know he was working
22  as a crew member on a response vessel.  What the arrangements
23  were, who hired the vessel, who paid for the vessel, I don't
24  know any of that yet.
25      **THE COURT:**  Okay.  Your client has complied with

10:37

1  PTO 68 already, is what you are saying, right?

2          **MR. HERD:**  Yes, Your Honor.

3          **THE COURT:**  Is there any dispute about that,

4  Mr. Regan?

5          **MR. REGAN:**  Your Honor, Matthew Regan.  We have

6  received the materials.  As long as there's a representation

7  that production is complete, then we would not have a dispute.

8          **THE COURT:**  There was a requirement that BP provide

9  documentation also.  Have you-all done that already?

10          **MR. REGAN:**  I believe so.

11          **MR. HERD:**  I'm not aware of any documents that we

12  have received from BP on this case.  Maybe we can confer

13  further about that.

14          **THE COURT:**  All right.  What I would like to do, if

15  we can move past the PTO 68 issue, compliance with that, then I

16  guess the next step -- it sounds like we are going to have to

17  engage in some motion practice before we decide whether and

18  where to remand this case.

19              Mr. Regan, I'm hearing that BP intends to file

20  some type of motion.  Correct?

21          **MR. REGAN:**  We would, Your Honor.  We would file the

22  motion.  From my position, I think that motion will provide

23  clarity on several of the issues that we have discussed here

24  today.

25          **THE COURT:**  Okay.  How much time do you need to file

10:38

1   that motion?

2           **MR. REGAN:**  14, 21 days.  We can do it quickly.

3           **THE COURT:**  Okay.  We will give you 21 days that BP

4   will file a motion.

5                Mr. Guilbeau, I don't know where your clients

6   are in all of this.  Any motions your client or clients intend

7   to file?

8           **MR. GUILBEAU:**  I think we need discovery first,

9   Your Honor.

10          **THE COURT:**  Well, you are going to have to wait for

11   that, I think, until you get wherever the case is going to end

12   up.

13          **MR. GUILBEAU:**  Right.  I don't have anything.

14          **THE COURT:**  You are in a different posture than BP

15   is.  It sounds like, at least.

16          **MR. GUILBEAU:**  I am.  Your Honor, I would point out

17   some of the defendants named used to have attorneys, according

18   to the docket sheet, and they are not here today.  That's the

19   Disaster Response Group and even the direct employer,

20   Southern Cat, Inc., and I was going to ask Your Honor or maybe

21   Mr. Herd --

22          **THE COURT:**  Who represents ERG or Southern Cat?

23          **MR. GUILBEAU:**  Well, at one time -- I have a civil

24   docket sheet for this case -- Southern Cat was represented by

25   an Alexander Chae, C-H-A-E, with the Gardere Wynne firm out of

10:40

1    Houston, Eastern Research Group at one time by Brittani Wilmore
2    Rollen, and --
3              **THE COURT:**  That may have been when the case was in
4    state court perhaps.
5              **MR. GUILBEAU:**  It could be.  I'm not sure.  I called
6    some of these.  Disaster Response Group I don't think was ever
7    represented by anybody.
8              **THE COURT:**  My law clerk, Ben Allums, just pointed
9    out to me that in this order scheduling this status conference,
10   we said that counsel for the plaintiffs, if represented, and
11   counsel for BP are required to attend.  If a plaintiff is not
12   represented, the plaintiff should attend, of course.  Then it
13   says counsel for any other defendants may attend, but are not
14   required to do.  Maybe that explains why no one else is here.
15   You-all can sort all that out, try to figure out who's in and
16   who's out and who represents them.
17              Okay.  So 21 days for BP to file any motions in
18   line with what we discussed here this morning.  Mr. Herd, I
19   will give you 14 days thereafter to respond.
20              **MR. HERD:**  Yes, Your Honor.
21              **THE COURT:**  Afterwards BP will have seven days to
22   file any reply.  Then the Court will take it under advisement.
23   If I think it requires oral argument, we will set that; if not,
24   we will just decide it on the briefs.
25              **MR. HERD:**  Yes, Your Honor.

10:41

1    **MR. REGAN:**  Thank, Your Honor.

2    **THE COURT:**  Anything else today on this matter?

3    **MR. HERD:**  Not from our standpoint, Judge.  Thank

4    you.

5    **MR. REGAN:**  Matthew Regan.  No, Your Honor.

6    **THE COURT:**  Everyone have a good day.

7    (Proceedings adjourned.)

8                    * * *

9                    <u>**CERTIFICATE**</u>

10        I, Toni Doyle Tusa, CCR, FCRR, Official Court

11   Reporter for the United States District Court, Eastern District

12   of Louisiana, certify that the foregoing is a true and correct

13   transcript, to the best of my ability and understanding, from

14   the record of proceedings in the above-entitled matter.

15

16

17                         <u>*/s/ Toni Doyle Tusa*</u>
                          Toni Doyle Tusa, CCR, FCRR
18                        Official Court Reporter

19

20

21

22

23

24

25