IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179 |
| | | SECTION J(2) |
| | | |
| | | JUDGE BARBIER |
| This Document relates to: | * * | |
| | | MAGISTRATE JUDGE CURRAULT |
| *Global Disaster Recovery & Rebuilding Services LLC, et al. v. BP Expl. & Prod., Inc., et al.*, Case No. 16-cv-06585 | * * | |

**BP'S STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

In accordance with Rule 56(c) of the Federal Rules of Civil Procedure and Local Rule 56.1 of this Court, Defendants BP Exploration & Production, Inc. and BP America Production Company (collectively, "BP") respectfully submit the following statement of undisputed material facts in support of BP's Motion for Summary Judgment (the "Motion").

1. Billy Burkette founded Global Disaster Recovery & Rebuilding Services LLC ("Plaintiff") in 2009. *See* Ex. 1, Declaration of Austin L. Klar in Support of BP's Motion for Summary Judgment ("Klar Decl.") at Ex. B 24:24-25:2.

2. Mr. Burkette was Plaintiff's sole employee. *See* Klar Decl. at Ex. B 24:24-25:2.

3. Mr. Burkette also owned A-1 Towing & Hauling LLC ("A-1"). *See* Klar Decl. at Ex. A 16:8-22.

4. Prior to the Spill, Plaintiff had secured only one contract with a company named Airware, LLC ("Airware"), pursuant to which Plaintiff agreed to crush Airware's concrete at the Port of St. Bernard in Chalmette, Louisiana. *See* Klar Decl. at Ex. A 240:17-24; Klar Decl. at Ex. B 13:13-22; Ex. 2.

1

5. Prior to the Spill, Plaintiff had not performed any other disaster recovery or other services. *See* Klar Decl. at Ex. B 17:6-10.

6. Prior to the Spill, Plaintiff had not generated any taxable income. *See* Klar Decl. at Ex. B 19:14-16, 23:14-19.

7. Plaintiff paused its operations in 2010 and conducted no further business until 2013, unrelated to the Spill. *See* Klar Decl. at Ex. A 146:24-147:15; Klar Decl. at Ex. B 19:10-16.

## I. PLAINTIFF ALLEGES IT ATTEMPTED TO PROCURE GOODS AND SERVICES FOR BP IN THE SPILL RESPONSE

### A. Plaintiff Unsuccessfully Attempted To Procure Aqua N-Cap For BP

8. Aqua N-Cap is polymer used to remediate fuel, oil, and other hydrocarbon spills and was manufactured by RTASCo (Remediation Technologies & Applications Systems), aka RTA Systems, Inc. ("RTASCO") at the time of the Spill. *See* Ex. 3 at GLOBAL DISASTER 000151; *see also* Klar Decl. at Ex. C; Klar Decl. at Ex. D; Klar Decl. at Ex. E; Klar Decl. at Ex. F.

9. Plaintiff's alleged distribution contract with RTASCo, pursuant to which Plaintiff claims it could have earned commissions from the sale of Aqua N-Cap, was never reduced to writing. *See* Klar Decl. at Ex. B 61:18-22; *see also id.* at 55:13-17, 56:10-15.

10. Plaintiff's alleged distribution contract with RTASCo was contingent on securing a purchase order from BP. *See* Klar Decl. at Ex. A 95:4-13.

11. BP made clear that any orders it placed for Aqua N-Cap would be in writing. Klar Decl. at Ex. A 110:3-8.

12. BP never issued a written purchase order for Aqua N-Cap. *See* Klar Decl. at Ex. B 40:17-41:13, 43:4-6; Klar Decl. at Ex. A 110:3-8.

13. Plaintiff does not recall who at BP allegedly agreed orally to procure Aqua N-Cap through Plaintiff or with whom at BP he orally discussed the procurement of Aqua N-Cap. *See* Klar Decl. at Ex. A 97:12-18.

14. Plaintiff and BP never negotiated or agreed upon a price for Aqua N-Cap. S*ee* Klar Decl. at Ex. B 38:3-9.

15. Any commitment by BP to purchase Aqua N-Cap was contingent upon a determination by BP that locations to which Aqua N-Cap would be delivered had the need for the product, capacity to take delivery, and adequate equipment to deploy the product. *See* Klar Decl. at Ex. B 43:4-23, 49:12-24.

16. BP never determined the information required before an order would issue. *See* Klar Decl. at Ex. B 46:20-47:5, 49:12-24.

17. BP informed Mr. Burkette that another person, who Mr. Burkette believes was named Lynn DeHaven, would have to be contacted to approve Aqua N-Cap for BP's use. *See* Ex. 4; Klar Decl. at Ex. A 137:6-24.

18. Plaintiff never received approvals from BP for the purchase of Aqua N-Cap or other requests from BP to schedule delivery. *See* Klar Decl. at Ex. B 46:20-47:5, 49:12-24.

19. There is no reference to Aqua N-Cap in BP's Gulf of Mexico Regional Oil Spill Response Plan dated June 30, 2009—the emergency response plan in force at the time of the Spill. *See* Ex. 5.

**B. Plaintiff Unsuccessfully Attempted To Procure Other Goods And Services For BP Directly And Through Other Contractors**

20. Plaintiff does not recall who at BP allegedly agreed orally to procure other goods and services through Plaintiff or when those discussions occurred. *See* Klar Decl. at Ex. A 170:17-171:3, 97:12-19.

21. Plaintiff cannot identify which goods or services BP agreed to procure through Plaintiff, the cost of those goods or services, or the timing and location of delivery for those goods or services. *See* Klar Decl. at Ex. B 119:9-20, 121:3-17, 122:8-17, 123:5-10.

22. Plaintiff and BP never discussed a price that BP would pay Plaintiff for Plaintiff's alleged procurement efforts. *See* Klar Decl. at Ex. B 114:3-7, 123:5-10; Klar Decl. at Ex. A 149:3-7.

23. BP informed Plaintiff repeatedly that it would only enter into contracts with Plaintiff, if at all, in writing. *See* Ex. 6 at GLOBAL DISASTER 000108; Ex. 7 at GLOBAL DISASTER 000159; Ex. 8 at GLOBAL DISASTER 000104.

24. Plaintiff never entered into any written agreement with BP for the procurement of any land, good or service. *See* Klar Decl. at Ex. B 89:18-22.

25. The other contractors with whom Plaintiff allegedly discussed procuring goods and services for BP would only enter into procurement contracts with Plaintiff, if at all, in writing. *See* Ex. 9 at GLOBAL DISASTER 000123; Ex. 10 at GLOBAL DISASTER 000140; Klar Decl. at Ex. A 153:13-21.

26. Plaintiff's unexecuted contract with Environmental Safety & Health Consulting Services Inc. (the "ES&H Contract") provided that products or services ES&H would acquire through Plaintiff would be specified in "a written purchase order or statement of work[.]" Ex. 9 at GLOBAL DISASTER 000123 § I(b).

27. ES&H never issued a written purchase order to Plaintiff, and Plaintiff never furnished any labor, goods, services, or equipment to ES&H. *See* Klar Decl. at Ex. A 153:19-25, 156:9-11.

4

28. Plaintiff's unexecuted letter of intent with Strategic Services USA, LLC ("SSU") provided that SSU would "enter into a formal subcontract agreement with [Plaintiff], provided [Plaintiff], discloses their contract with ES&H on payment schedule and Insurance coverage required for the Project." Ex. 10 at GLOBAL DISASTER 000140.

29. Mr. Burkette does not recall ever entering into a formal subcontract with SSU. *See* Klar Decl. at Ex. A 164:2-7.

30. Mr. Burkette does not recall any other discussions with SSU about a subcontract. *See* Klar Decl. at Ex. A 164:8-11.

31. Mr. Burkette does not recall ever providing SSU with the insurance coverage or ES&H Contract. *See* Klar Decl. at Ex. A 165:6-13.

**C. Plaintiff Unsuccessfully Attempted To Sublease Land To BP At The Port Of St. Bernard**

32. Plaintiff did not own the land at the Port of St. Bernard that it sought to lease to BP. *See* Klar Decl. at Ex. A 174:3-8.

33. Plaintiff does not know whether it had authority from the Port of St. Bernard to sublease land to BP. *See* Klar Decl. at Ex. B 86:8-11.

34. Plaintiff does not recall with whom at BP it discussed potentially subleasing storage space from Plaintiff at the Port of St. Bernard, or when those discussions occurred. *See* Klar Decl. at Ex. B 78:6-15; Klar Decl. at Ex. A 172:22-174:8.

35. Plaintiff and BP never agreed upon the price of rent. *See* Klar Decl. at Ex. B 71:15-18, 76:8-12.

36. Plaintiff and BP never agreed upon the lease's duration. *See* Klar Decl. at Ex. A 191:8-20.

37. Plaintiff and BP never agreed upon a move-in date. *See* Klar Decl. at Ex. B 73:20-74:6.

38. Plaintiff's discussions with BP to potentially sublease land at the Port of St. Bernard never materialized into a formal lease agreement between Plaintiff and BP. *See* Klar Decl. at Ex. B 78:13-15.

    **D.**    **Plaintiff Unsuccessfully Attempted To Lease Land To BP At Port Fourchon Marina**

39. Plaintiff did not own the land at Port Fourchon Marina that it sought to lease to BP. *See* Klar Decl. at Ex. A 183:13-184:16; Ex. 11 at GLOBAL DISASTER 000075.

40. BP never asked Mr. Burkette to purchase that land at Port Fourchon Marina. *See* Klar Decl. at Ex. A 190:18-22.

41. Mr. Burkette does not recall with whom at BP he spoke about leasing land from Plaintiff at Port Fourchon Marina. *See* Klar Decl. at Ex. A 184:21-25.

42. Plaintiff and BP never agreed upon a price per month for the lease. *See* Klar Decl. at Ex. A 191:8-10.

43. Plaintiff and BP never agreed upon the lease's duration. *See* Klar Decl. at Ex. A 191:11-23.

44. Plaintiff did not have the funds necessary to purchase the land at Port Fourchon Marina that Plaintiff claims it sought to lease to BP. *See* Klar Decl. at Ex. A 189:2-5.

45. Plaintiff never purchased the land at Port Fourchon Marina. *See* Klar Decl. at Ex. A 190:23-24.

**II.**    **PLAINTIFF SEEKS LOST PROFITS FOR A CONTRACT TO WHICH NEITHER IT NOR BP WAS A PARTY**

46. Plaintiff is not a party to the alleged contract between A-1 and Robins Seafood ("Robins"). *See* Klar Decl. at Ex. A 51:11-13, 54:5-9.

47. Plaintiff did not produce a copy of the alleged contract between A-1 and Robins.

48. Had A-1 performed under the alleged contract between A-1 and Robins, Robins would have owed money to A-1, not Plaintiff. *See* Klar Decl. at Ex. A 54:12-18.

49. On July 14, 2016, Mr. Burkette, on behalf of A-1, entered into a Full and Final Release, Settlement, and Covenant Not to Sue with BP. *See* Ex. 12 (the "A-1 Settlement").

50. The A-1 Settlement released ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* ¶¶ 1.p., 6.

## III. PLAINTIFF'S FRAUDULENT CONCEALMENT CLAIM

51. Prior to the Spill, Plaintiff had knowledge of or access to the information it claims BP concealed regarding Corexit. *See* Klar Decl. at Ex. B 143:6-15; 138:24-139:9.

52. Plaintiff is not an environmental expert. *See* Klar Decl. at Ex. B 147:3-14, 151:11-13; Klar Decl. at Ex. A 206:22-207:7, 228:4-19.

## IV. PLAINTIFF'S MARITIME LAW CLAIMS

53. On February 22, 2017, the Court entered Pretrial Order No. 64, *see* MDL No. 2179, Rec. Doc. 22297 ("PTO 64"), requiring "each Remaining B1 Plaintiff who wishes to pursue a general maritime law claim [to] complete, sign, and serve" a sworn statement "stating whether the plaintiff owned or otherwise held a proprietary interest in property that was physically damaged by oil from the" Spill. PTO 64 ¶ 3.

54. PTO 64 further provided that such claims would be "waived" and "dismissed . . . with prejudice" if such a statement was not served in accordance with PTO 64 by April 5, 2017. *Id.*

55. Plaintiff did not submit the sworn statement required by PTO 64. *See* Klar Decl. at Ex. B 130:2-23.

56. Plaintiff is not a commercial fisherman. *See* Klar Decl. at Ex. B 26:2-6.

7

57. Plaintiff did not suffer physical damage to a proprietary interest by oil. *See* Klar Decl. at Ex. B 26:20-25.

April 16, 2021                                    Respectfully submitted,

                                                  */s/ Devin C. Reid*

R. Keith Jarrett (Bar # 16984)
Devin Reid (Bar #32645)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
Kristopher S. Ritter
(kristopher.ritter@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000

Christopher W. Keegan
(chris.keegan@kirkland.com)
Ashley Littlefield
(ashley.littlefield@kirkland.com)
Anna Terteryan
(anna.terteryan@kirkland.com)
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

*Attorneys for BP America Production Company and BP Exploration & Production, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **BP's Statement of Undisputed Material Facts In Support of Its Motion for Summary Judgment** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 16th day of April, 2021.

*/s/ Devin C. Reid*
Devin C. Reid