1                  UNITED STATES DISTRICT COURT

2                  EASTERN DISTRICT OF LOUISIANA

3

4    IN RE:  OIL SPILL BY THE      *
     OIL RIG *DEEPWATER HORIZON*    *
5    IN THE GULF OF MEXICO ON      *
     APRIL 20, 2010                *
6                                  *
     THIS DOCUMENT RELATES TO:     *     Civil Action No.: 10-MD-2179
7                                  *     Section "J"
     *John DeSilva, Individually,*  *     New Orleans, Louisiana
8    *and as the Sole Member,*      *     April 21, 2021
     *Owner, and Operator of The*   *
9    *Bird of Paradise, LLC v. BP*  *
     *Expl. & Prod., Inc., et al.*  *
10   *Case No.: 16-CV-5277*         *
     *******************************

11

12            TRANSCRIPT OF ORAL ARGUMENT PROCEEDINGS
            HEARD BEFORE THE HONORABLE CARL J. BARBIER
13                 UNITED STATES DISTRICT JUDGE

14

     APPEARANCES:
15

16   For the Plaintiff:          The Penton Law Firm
                                 BY:  RONNIE G. PENTON, ESQ.
17                               209 Hoppen Place
                                 Bogalusa, Louisiana 70427
18

19
     For BP Exploration and
20   Production, Inc.:
                                 Kirkland & Ellis
21                               BY:  MATTHEW T. REGAN, ESQ.
                                 BY:  KRISTOPHER S. RITTER, ESQ.
22                               300 North LaSalle
                                 Chicago, Illinois  60654
23

24

25

                           OFFICIAL TRANSCRIPT

1    APPEARANCES:

2    For BP Exploration and
     Production, Inc.:              Kirkland & Ellis
3                                   BY:  CHRISTOPHER W. KEEGAN, ESQ.
                                    555 California Street
4                                   San Francisco, California 94104

5

6

7    Official Court Reporter:      Jodi Simcox, RMR, FCRR
                                    500 Poydras Street, Room HB-275
8                                   New Orleans, Louisiana 70130
                                    (504) 589-7780
9                                   Jodi_Simcox@laed.uscourts.gov

10

11

12

13

14   Proceedings recorded by mechanical stenography using

15   computer-aided transcription software.

16

17

18

19

20

21

22

23

24

25

OFFICIAL TRANSCRIPT

<u>**PROCEEDINGS VIA ZOOM**</u>

**(April 21, 2021)**

*******

(COURT CALLED TO ORDER)

**THE COURT:**  All right.  Good morning, everyone.

**MR. REGAN:**  Good morning, Judge.

**MR. PENTON:**  Good morning.

**THE COURT:**  Gail, let's call the case, please.

**THE DEPUTY CLERK:**  MDL-2179, *In re:  Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20th, 2010,* relating to 16-5277, *John DeSilva versus BP Exploration and Production, et. al.*

**THE COURT:**  All right.  Counsel, if you would make your appearances, please.

**MR. PENTON:**  May it please the Court, Your Honor, Ronnie Penton on behalf of John DeSilva and The Bird of Paradise, LLC.

**THE COURT:**  Okay.

**MR. REGAN:**  Good morning, Your Honor.  Matthew Regan on behalf of BP.

**MR. KEEGAN:**  Good morning, Your Honor.  Chris Keegan, with Matt, also on behalf of BP.

**MR. RITTER:**  Good morning, Your Honor.  Chris Ritter from Kirkland and Ellis on behalf of BP.

OFFICIAL TRANSCRIPT

1    THE COURT:  Okay.  Very well.

2        Okay.  I set this this morning to hear the

3    motion by BP to dismiss the complaint filed by John DeSilva for

4    lack of standing.  This is in the MDL, of course, but the

5    individual case number is 16-5277, and the motion is Record

6    Document No. 26922.

7        Who's going to argue on behalf of BP?

8    Mr. Regan, are you?

9    MR. REGAN:  Yes, Your Honor.

10   THE COURT:  Okay.  Go ahead.

11   MR. REGAN:  Your Honor, I'll be brief.  We have moved

12   to dismiss this claim for lack of standing because this

13   plaintiff does not have standing to bring this claim.  To try

14   to just focus on the very simple questions here, which

15   obviously are jurisdictional if there's no standing.

16       Who's the claimant?  Well, all the pleadings

17   that have been filed in this court, the claimant is The Bird of

18   Paradise, LLC.  The complaint is for The Bird of Paradise and

19   identifies them as the plaintiff.  The short form joinder that

20   was filed as Record 123736 was filed by The Bird of Paradise as

21   a business claim signed by Mr. DeSilva.  The opt-out form that

22   was filed, that was filed by The Bird of Paradise, signed by

23   Mr. DeSilva.  So there's no question who the claimant is here.

24       Then why are we having a standing question?

25   Well, that's because The Bird of Paradise was sold by

OFFICIAL TRANSCRIPT

1    Mr. DeSilva in 2017, and there has been no production of any

2    evidence that this claim was reserved with that sale.  So

3    Mr. DeSilva lacks standing.  He's no longer the owner of The

4    Bird of Paradise.  He lacks standing to bring The Bird of

5    Paradise's claim, whatever it might be, before this court.

6                   The case law, I won't go through --

7             **THE COURT:**  Let me interrupt you, if I could,

8    Mr. Regan.  I've got to tell you, there's a lot of -- well, I'm

9    not certain that the evidence is clear as to what went on here,

10   but the question I have, a more precise question, I guess, is:

11   What is the evidence that the LLC -- The Bird of Paradise, LLC,

12   was actually sold?  There seems to be some -- perhaps there's

13   some lack of evidence on that.  I don't know.

14            **MR. REGAN:**  Well, Your Honor, in our motion, we

15   attached the state filings with the Florida Secretary of State

16   that indicates that it has a new owner.  We also have

17   Mr. DeSilva's own filings where he identifies himself as the

18   former owner.  So to us, there is no dispute that it was sold.

19   We see some arguments that were made for the first time in this

20   response to our motion that somehow it wasn't sold.  We think

21   those are just counterfactual.

22                   So to us, both the actual filing in the Florida

23   Secretary of State's office, and Mr. DeSilva's own

24   representations to the court and where he identifies himself as

25   the former owner.  And I will say, when this was first

1    identified and discussed with Your Honor in September, it was

2    represented that the business had been sold.  So I don't think

3    there's a dispute of fact on that, but that's what I would

4    identify to you.

5            **THE COURT:**  So the question would be, if you're right

6    that The Bird of Paradise, LLC, was sold along with the real --

7    there's no question real property was sold, I believe, by

8    Mr. DeSilva to Mr. MacDonald or some entity controlled by

9    Mr. MacDonald.  I guess the interesting thing is, what am I to

10   make of this affidavit from Mr. MacDonald which seems to

11   dispute -- or deny that he obtained this claim -- that he

12   bought this claim?

13           **MR. REGAN:**  Well, what I make of it, it is that --

14           **THE COURT:**  Because theoretically, at least -- I'm

15   sorry.  Theoretically, at least, you could transfer the LLC but

16   reserve, I guess, the claim.  Right?

17           **MR. REGAN:**  Matthew Regan, Your Honor.

18           Theoretically, yes.  And as the plaintiff, it's

19   his burden to show you that he has standing to pursue the

20   claim.

21           But what I'd say about that affidavit is it's

22   more interesting for what it does not say.  It does not say

23   that in the transaction the claim was excluded.  It actually

24   even avoids the question that was raised by Your Honor:  What

25   was sold in this?  It only talks about the real estate, but we

1    know from the Secretary of State filings that The Bird of
2    Paradise was purchased by MacDonald because he filed himself as
3    the owner that same calendar year for 2018.
4              So either he falsified the state court filings
5    in Florida, which I don't think is true, or The Bird of
6    Paradise, LLC, was sold in 2017, just like we were told it was
7    sold when we started down this entire path.
8              So to summarize, Your Honor, I think the
9    plaintiff has the burden to show you the transactions of the
10   sale.  The plaintiff has only shown you the house, but not
11   shown you anything else, or shown BP it.  The plaintiff has
12   repeatedly said that The Bird of Paradise, that he was the
13   former owner of it.
14             And then the last point would be this, Your
15   Honor.  I think a lot of this is just to try to cloud the issue
16   as to what really happened here.  I don't think there's any
17   doubt that The Bird of Paradise was sold because it was what
18   held the license.  Right?  You had to have a license to operate
19   this business that was allegedly damaged.  That's what their
20   own accountant says.  Right?
21             So the notion that there's something here
22   individually or left, well, by whom?  And, I guess -- I mean,
23   Mr. Penton can speak for his own client, but there's been
24   nothing presented that suggests that Mr. DeSilva still owns The
25   Bird of Paradise, LLC.  And if he doesn't, he has no standing

OFFICIAL TRANSCRIPT

1  to be before Your Honor.

2          **THE COURT:**  All right.

3          **MR. REGAN:**  I'm happy to answer any questions, Your

4  Honor.

5          **THE COURT:**  I have one more question for you and then

6  I'll let Mr. Penton respond.

7                  I guess my question is, and there seems to be

8  some different -- the case law seems to be not totally clear on

9  whether this issue -- kind of type of issue would really be a

10 Rule 12(b)(1) standing question, or is it more properly a

11 Rule 17, real person in interest?  I don't know if, as a

12 practical matter, if it makes a difference, but do you have any

13 thoughts on that?

14         **MR. REGAN:**  Not specifically.  I think as a practical

15 matter, we know that whether it's Rule 12 or 17, the party

16 before Your Honor has to have the authority to bring the claim.

17 Right?  And I don't think there's a factual issue here.  It

18 hasn't been -- I mean, even in their own briefing, they say

19 they're the former owners.  So you probably could bring it

20 under either basis, Your Honor.  I don't think they're

21 exclusive.

22                 But the fundamental question is, just like we

23 had when we were exploring potential mediation of this claim,

24 if this plaintiff doesn't have authority to bring this claim,

25 nothing we're doing matters.  And whether it's Rule 12,

OFFICIAL TRANSCRIPT

 1 | Rule 17, those are designed to avoid this situation.
 2 |        **THE COURT:**  Well, under Rule 17, for example, I would
 3 | allow, or invite -- I'm not sure how to characterize that --
 4 | whoever the real party in interest might be to come in and
 5 | substitute themselves; correct?
 6 |        **MR. REGAN:**  I believe you could.  I think -- I mean,
 7 | I think there would be a question as to whether that makes
 8 | sense to do, but I believe you would have that authority under
 9 | the rule.  But I think Mr. DeSilva -- the new owner has
10 | essentially disclaimed the claim.
11 |        **THE COURT:**  Well, I'll tell you what just as a
12 | practical matter kind of troubles me about this whole thing,
13 | assume -- and I'm going to assume for the sake of argument here
14 | today that The Bird of Paradise, the LLC, which had the
15 | license, was the legitimate owner of the business and that it
16 | suffered some type of economic business loss.
17 |        If that's the case, then someone has a claim for
18 | that -- or someone should have a claim for that, Mr. DeSilva,
19 | Mr. MacDonald, unless there's some other party that we haven't
20 | identified as the proper party in interest here.  I'm not sure
21 | who, but somebody should.
22 |        So it, frankly, kind of troubles me to -- I
23 | hesitate to just grant your motion dismissing this without --
24 | I'm not sure I have the whole picture here, I guess is what I'm
25 | saying.  There seems to be something lacking here.  And, of

1  course, as you say, it is true, it's the plaintiff's burden to
2  prove that they have the right to bring this claim.

3          So let me hear from Mr. Penton on that.

4          Good morning, Mr. Penton.

5  **MR. PENTON:**  Thank you, Your Honor.

6  **THE COURT:**  Thank you.

7  **MR. PENTON:**  Good morning, Judge.

8          To address the first issue raised by counsel,
9  who is the claimant?  A review of the --

10  **THE COURT:**  Well, before you get to that, even more
11  fundamental:  What is your claim?  What is the claim here?  Is
12  it strictly a business economic loss type claim --

13  **MR. PENTON:**  Yes, Your Honor.

14  **THE COURT:**  -- for whoever owned and operated that
15  resort?

16  **MR. PENTON:**  Yes, Your Honor.  Mr. DeSilva secured a
17  special resort license for this property and secured financing
18  in the amount of $10 million.  He lost that financing a few
19  weeks after the spill due directly to the cancelation of all
20  obligations in the Gulf Coast.  So he had no capital.  He lost
21  it as a direct result of that.

22  **THE COURT:**  So what is the claim?  Is the claim for
23  loss -- as I appreciate it, this was an ongoing business, at
24  least in 2009 before the oil spill; correct?

25  **MR. PENTON:**  Yes, Your Honor.  It was -- it was --

OFFICIAL TRANSCRIPT

1  for many years, the Anheuser-Busch estate, which is this
2  property, was a resort.  And it was -- it was a high rate
3  luxury resort.  And it was rented out, all the facilities.
4  This particular license allowed Mr. DeSilva to go forward with
5  the building of additional facilities there.  And so that's
6  where the financing came from for the license that we're
7  speaking of.

8          THE COURT:  Yeah.  But my question is:  It was an
9  ongoing operating business with regular income for rentals, and
10 then the oil spill occurs --

11         MR. PENTON:  Yes.

12         THE COURT:  -- and the allegation is -- the claim is
13 that a lot of people canceled, and so they lost business
14 income -- I don't know for what period of time -- after the oil
15 spill.  Is that accurate?

16         MR. PENTON:  That's correct.  That's correct, Your
17 Honor.

18         THE COURT:  But you're also making some type of claim
19 beyond that, it seems like, for some type of loss of financing.
20 I'm not sure what the nature of that claim is, but...

21         MR. PENTON:  Yes, Your Honor.  This is what happened.
22 It was being rented out as a luxury resort.  When Mr. DeSilva
23 went to get the building permits to enhance the property by
24 building on to the estate, then at that point, he was required
25 to go get permits for that.  And when he did that, he had to go

OFFICIAL TRANSCRIPT

```
 1    into litigation to get the City of St. Petersburg to issue
 2    those permits, which they did.  The litigation was won, and the
 3    permits were issued.
 4                  He secured a $10 million loan guarantee in order
 5    to improve the property and enhance and improve and expand the
 6    resort facilities and activities.  So that's where that loan
 7    came from to be able to follow the license and the permit as
 8    they issued it.
 9          THE COURT:  So there's no real property damage claim
10    here; right?
11          MR. PENTON:  No, sir, there is not.
12          THE COURT:  Okay.  All right.  So you were going to
13    tell me about -- here's the question:  It's clear that
14    Mr. DeSilva individually owned the real property; correct?
15          MR. PENTON:  That's correct, Judge.
16          THE COURT:  And there's no question that he sold that
17    in 2017 to Mr. MacDonald or some entity controlled by
18    Mr. MacDonald; right?
19          MR. PENTON:  To Mr. MacDonald as a real estate
20    sale --
21          THE COURT:  Okay.
22          MR. PENTON:  -- solely owned by John DeSilva.
23          THE COURT:  So at that time in 2017, at the same
24    time, did he transfer -- what did MacDonald do with this
25    property?  Did he continue to operate it as a resort as
```

OFFICIAL TRANSCRIPT

1   Mr. DeSilva was doing?

2           **MR. PENTON:**  Judge, he bought the property and

3   occupied the property and continued doing whatever Mr. DeSilva

4   was doing, to some extent.

5           **THE COURT:**  So he had -- the license from the State

6   of Florida, permits, license, whatever it's called, were

7   transferred to him; correct?

8           **MR. PENTON:**  He didn't -- no, sir.  He didn't get

9   that license until 2018.  The sale was 2017.  And in 2018,

10  DeSilva gave him the license.  There was never -- BP has called

11  this an equity sale.  This wasn't an equity sale.  It was a

12  real estate transaction selling the -- just the real estate.

13  There was never ever any type of transaction selling any

14  business, The Bird of Paradise, stock, or anything else, Judge.

15              And as far as the Secretary of State filings in

16  the state of Florida, Mr. DeSilva just simply quit filing

17  annual reports in 2017 when he sold the real estate.

18  Mr. MacDonald, on his own, unilaterally simply went into the

19  Secretary of State and filed reports and basically took that

20  over.  There was never a sale of any --

21          **THE COURT:**  So he just did that unilaterally even

22  though you're saying he was not the legal owner of the LLC?

23  That's accusing him of a crime essentially; right?

24          **MR. PENTON:**  Well, now -- who was the owner,

25  Mr. MacDonald, is that what you said, Judge?

 1          **THE COURT:**  No, that's what you said.  You said

 2    MacDonald, after 2017, just went in unilaterally and, quote,

 3    took over the LLC, and filed reports.  And, ultimately, he

 4    filed -- in 2020, he filed a dissolution of the LLC.  Correct?

 5          **MR. PENTON:**  That's my understanding, Judge.

 6          **THE COURT:**  So how does MacDonald, who you say never

 7    owned the LLC, how can he legally dissolve it?

 8          **MR. PENTON:**  Well, I'm telling you this, Mr. DeSilva

 9    never sold the LLC to Mr. MacDonald nor anyone else.  He simply

10    quit filing his annual reports.  Simply.  That's what he did.

11    And then according to Secretary of State records,

12    Mr. MacDonald, someone on his behalf, filed reports and took

13    over the Secretary of State filing for that LLC.

14          **THE COURT:**  Why did he continually refer to himself

15    as the former owner of the LLC?

16          **MR. PENTON:**  And you're speaking of Mr. DeSilva?

17          **THE COURT:**  Yes.  Yes.

18          **MR. PENTON:**  Because he just simply abandoned this

19    LLC, is what he did.  You see, Judge, it had never filed a tax

20    return ever.  It was always Mr. DeSilva's tax returns and

21    social security number.  So it was -- it was -- and we have an

22    exhibit of the CPA.

23          **THE COURT:**  So what was the purpose of -- the LLC --

24    now, the LLC is legal, you know, in state law, Florida law,

25    it's pretty standard around the country, is an independent,

1  separate legal entity.  It's not like a DBA.  You're not just

2  doing business as.  It's not a trade name.

3  　　　　　MR. PENTON:  Right.

4  　　　　　THE COURT:  It's a separate legal entity that people

5  usually do either for tax purposes or I guess legal protections

6  or whatever.  There are different reasons you could do it.

7  　　　　　MR. PENTON:  Yeah.  Right.

8  　　　　　THE COURT:  So I'm not understanding what you're

9  saying about -- you sound like you're saying DeSilva just

10 disregarded all the legal formalities.

11 　　　　　MR. PENTON:  Well, Judge, the CPA handled it as a

12 disregarded entity.  He filed it -- he filed it as a

13 disregarded entity.  And when you look at all the paperwork of

14 the claims process, the opt-outs, all the verified statements,

15 everything that went in to the claims process, it was always

16 John DeSilva's personal social security number, personal

17 driver's license, because the CPAs called it a --

18 　　　　　THE COURT:  Well, the CPA's can call it -- I guess

19 they can call it anything they want, but that doesn't change

20 the law.  It's a separate entity.

21 　　　　　　But the question is:  When you say the claim,

22 the claim -- as Mr. Regan pointed out, the claim -- everything

23 we've seen, it wasn't -- DeSilva didn't make an individual

24 claim here.  This was a business economic claim on behalf of

25 Bird of Paradise, LLC, signed by Mr. DeSilva on behalf of --

| | |
|---|---|
| 1 | you know, somebody's got to sign the document.  But it's like |
| 2 | I'm signing as the president of a company or a member of an |
| 3 | LLC.  It doesn't make it an individual claim. |
| 4 | So everything we see in the court record in the |
| 5 | claim file shows that the claimant is The Bird of Paradise, |
| 6 | LLC. |
| 7 | **MR. PENTON:**  Your Honor, the short form joinder lists |
| 8 | John DeSilva as making the claim.  It identifies the business |
| 9 | name as Bird of Paradise.  The Tampa lawsuit is Bird of |
| 10 | Paradise and John DeSilva.  The unbundling order that we |
| 11 | complied with, it, likewise, lists John DeSilva individually |
| 12 | and as the sole member of The Bird of Paradise. |
| 13 | **THE COURT:**  So you're saying this is John DeSilva and |
| 14 | always was his individual claim? |
| 15 | **MR. PENTON:**  Yes. |
| 16 | **THE COURT:**  Did he opt out of the settlement, John |
| 17 | DeSilva? |
| 18 | **MR. PENTON:**  Yes, he did, Your Honor.  And my |
| 19 | declaration in Exhibit 4, the transmittal letter to BP was, |
| 20 | "Please see the original opt out exclusion on behalf of John |
| 21 | DeSilva and The Bird of Paradise."  On the opt out exclusion |
| 22 | election form that I filed with them is a quote from John |
| 23 | DeSilva, "I wish to be excluded from the economic property |
| 24 | damage class, John DeSilva." |
| 25 | So, Judge, in all of the process documents of |

1    this case for the class, as well as for the claims process,

2    John DeSilva and The Bird of Paradise -- in fact, it was -- we

3    were ordered to unbundle them with that caption that I just --

4    that I just read to the Court.  At all times, he made -- John

5    DeSilva made an individual claim with it and opted out of the

6    class as a result of it.

7                    But what is an absolute fact, Judge, is The Bird

8    of Paradise as an LLC was never sold to anyone, ever.

9            **THE COURT:**  Well, one thing that I have not seen is

10   any -- any documentation about -- we haven't seen documentation

11   on the LLC.  How is it that the -- how was the license

12   transferred to Mr. MacDonald?

13           **MR. PENTON:**  Your Honor, my understanding is it was

14   simply given to Mr. MacDonald.  It was just signed over to him.

15   And that was -- that happened late.  That happened in late

16   2018.  There was no consideration for that.  There was no

17   transaction for that.  But it did not happen in 2017 when the

18   sale occurred.  The only sale.

19           **THE COURT:**  All right.  Well, I'm not clear on the

20   opt out issue because --

21                    Mr. Regan, do you want to respond briefly just

22   to that?  Because I think you all represented to the Court that

23   DeSilva individually did not opt out of the economic

24   settlement.

25           **MR. REGAN:**  Thank you, Your Honor.  Matthew Regan for

1  BP.

2              It's actually an attachment to the plaintiff's

3  own response brief.  The opt out exclusion election -- I can't

4  share the document with you right now based on the Zoom rules

5  we have here for this hearing, Your Honor.  But I'm looking at

6  it, and it's page 27 of their response brief.  It's titled "Opt

7  Out Exclusion Election.  Claimant Name:  The Bird of Paradise,

8  LLC, by John DeSilva."

9              Mr. Penton -- I don't think it was intentional,

10  but when he quoted the signature, it says, "I wish to be

11  excluded from the economic and property damage class."  It does

12  say that.  It's signed by John DeSilva over the following

13  typewritten words "The Bird of Paradise, LLC, by John DeSilva."

14              There is no question on earth that this was The

15  Bird of Paradise opt out exclusion.  And there is zero evidence

16  of Mr. DeSilva ever filing an individual opt out form.

17              Even further, the short form joinder form,

18  which, again, all of this is in the record and cited in the

19  briefings, was filed as a business claim.  There's two boxes to

20  check, individual, business.  Filed as a business claim.  Name

21  of the business, The Bird of Paradise.  So the documents could

22  not be more clear.

23              And there's also -- it's clear why this argument

24  is being made today.  It's being made because he has no

25  ownership interest in The Bird of Paradise.  Now, let me go to

OFFICIAL TRANSCRIPT

1    that for a second.

2                    So now we hear that The Bird of Paradise, LLC,

3    was -- essentially, the license was given to Mr. MacDonald.   If

4    he -- whether it was sold, given, it's not in Mr. DeSilva's

5    possession, and he can't pursue a claim in its name.

6                    Further, it's been dissolved.   And I'm going to

7    get to your Rule 17 question here, Your Honor, because I think

8    there's some relevance there too.   But whether it was sold for

9    a dollar, or nothing, or a million dollars, it's not in

10   Mr. DeSilva's possession and he's purporting to bring a claim

11   on its behalf today.   That's the second point.

12                   Point number three.   The idea of it being a

13   disregarded entity.   Well, it wasn't disregarded in this court

14   in MDL-2179 when the complaint, the opt out form, the short

15   form joinder are all in the name of The Bird of Paradise.   And

16   the PTO 65 filings, all of those filings in the name of this

17   business claim.   Which, as Your Honor asked, the claim isn't

18   about the real property.   It's about the use of the real

19   property to make money.   It's not about damage to the real

20   property.   It's about the business license owned by The Bird of

21   Paradise.

22                   And then let me get to your last point, which I

23   think this is the one, Your Honor, is a very fair question.

24   All of the evidence I've just cited, which is -- many of those

25   things were statements under oath in filings, make clear who is

1    the claimant before you.  It's The Bird of Paradise.

2           We've also heard today further confirmation that

3    that entity is not owned by Mr. DeSilva today.  It's not.  So

4    is there someone out there who theoretically could be the

5    plaintiff before you?  I think I have to say, yes, Your Honor,

6    there is.  Theoretically.

7           This is your Rule 17 question.  Is there some

8    potential real party of interest out there who could be there?

9    I think we have to say yes.  It's not Mr. DeSilva.  Is it

10    Mr. MacDonald?  Potentially.

11           But under Rule 17, Your Honor, you know, you

12    have to give a reasonable period of time for that person to

13    show up and say, "I want to take over this claim."  Right?

14    That would be the process under Rule 17.  But Mr. DeSilva

15    dissolved the entity in 2020, I believe, in the filings.  So I

16    think there could be a question about whether there's any

17    interest by -- Mr. MacDonald dissolved it -- if there's any

18    interest by him to pursue it.

19      **THE COURT:**  Which raises another interesting

20    question, and I don't know the answer to it.  I guess it would

21    be under Florida state law.  If you have an LLC and it's

22    dissolved, what happens to its assets, a claim that it may have

23    owned?  Who then inherits that?  Does someone inherit that or

24    what?

25      **MR. REGAN:**  I think that's right.  I think that's a

1    question that we would need to have with Mr. MacDonald in the

2    room rather than Mr. DeSilva.

3              But I think, ultimately, you could have issues

4    of notice as well.  Right?  Was he aware that this was out

5    there?  Did he act and say, "I want to dissolve the LLC," and

6    essentially put it in sort of a liquidation posture -- right?

7    I think is where you're going, Your Honor -- to where those

8    claims are extinguished?

9              But for today, and I think just to bring us full

10   circle, we can't go any further in this litigation with the

11   plaintiff that's in front of us because we don't believe he has

12   the authority to take actions for this plaintiff or to bind

13   this plaintiff.  And in that scenario, it's hard for us to

14   really do anything further with this claimant.

15        **THE COURT:**  Has anyone considered taking the

16   deposition of Mr. MacDonald?  I know he submitted an affidavit,

17   but as you pointed out, the affidavit is not entirely

18   clarifying the issues for us here.

19        **MR. REGAN:**  Matthew Regan, Your Honor.

20              We're happy to do it.  We thought that it was

21   pretty straightforward, which is what we talked about last

22   September on this legal question.  But I think a deposition of

23   Mr. MacDonald would probably square up the issues further about

24   what actually happened with this business.  Because my last

25   point, Your Honor, is this one, which, again, is a practical --

OFFICIAL TRANSCRIPT

1       **THE COURT:**  It would be interesting to ask him how he

2 happened to, quote, take over the LLC and dissolve it and so

3 forth and what his take is on that.

4       **MR. REGAN:**  Matthew Regan, Your Honor.

5       Particularly if he continued to do any rental of

6 that property with respect to that was only authorized under a

7 license that was held by the LLC.  Right?  Because, otherwise,

8 there's some real questions about what happened.

9       I think, you know -- let me speculate, but it

10 makes sense that if he purchased the underlying house, that he

11 also took the LLC, which is the way that Florida law allowed it

12 to even operate and have this potential.

13       Which brings me to my final point, Your Honor,

14 which is that the -- if, in fact, Mr. DeSilva didn't sell the

15 LLC and he decided to just abandon it, then I think that's his

16 decision, and I think that decision, you know, further

17 eliminates his standing to bring this claim.

18       But on the record, and, again, the citations are

19 in our brief, I would look at the attachments to the

20 plaintiff's own response.  The opt out form could not be more

21 clear.  And we have zero evidence of an opt out form signed by

22 Mr. DeSilva individually.

23       So I would conclude by, if that's what this case

24 is now, if Mr. Penton's argument is, "No, this is John

25 DeSilva's individual claim," then there's zero doubt, Your

OFFICIAL TRANSCRIPT

1   Honor, that under the Court's authority and the settlement

2   release, that his failure to produce an individual opt out for

3   himself rather than one signed for The Bird of Paradise means

4   that his claim should be dismissed.

5           **THE COURT:**  All right.

6           **MR. PENTON:**  Your Honor, may I respond?

7           **THE COURT:**  Yeah.  Mr. Penton, I was about to say,

8   I'm getting back to you now.  Go ahead, sir.

9           **MR. PENTON:**  Your Honor, on the opt out issue.  The

10  letter is very clear that the election was made on behalf of

11  both John DeSilva as well as Bird of Paradise.

12          **THE COURT:**  I'm sorry.  What letter are you speaking

13  of?

14          **MR. PENTON:**  It's November the --

15          **THE COURT:**  Because there was an opt out form, was

16  there not, in this case?  There was a form.

17          **MR. PENTON:**  No, sir.

18          **THE COURT:**  Was there not an opt out --

19          **MR. PENTON:**  The form, Judge, called the "Opt Out

20  Exclusion Election" is a form that we used just to get the

21  information to BP.  But the transmittal letter very

22  specifically opts out on behalf of both John DeSilva and The

23  Bird of Paradise in November of 2012, and that's Exhibit 4 of

24  our brief.  There is no question.  Even the presentment, Judge,

25  was John DeSilva and The Bird of Paradise.

1    THE COURT:  Well, even -- let me assume for purposes

2  of our present argument that you're right on that, that he

3  opted out too.  He's still got to prove that this was his claim

4  and not the LLC's claim.  And it certainly seems -- everything

5  I've seen sounds like this is the LLC's claim because he owned

6  the real property, but the LLC owned the business and had --

7  the license from the state of Florida was in the name of the

8  LLC, right, not in the name of John DeSilva individually?

9    So all indications are to me that you had a

10  situation where John DeSilva owned -- individually owned the

11  real estate on which he operated a business by virtue of an

12  entity called The Bird of Paradise, LLC, which I'm assuming he

13  was a single member.  I don't know.

14    MR. PENTON:  Yes, he was, Judge.

15    THE COURT:  And he obtained this license to operate

16  this business from the state of Florida in the name of the --

17  the license was in the name of The Bird of Paradise, LLC.

18  Correct?

19    MR. PENTON:  The permit that was issued, yes, Judge,

20  the license was in The Bird of Paradise.

21    THE COURT:  Okay.  So whether DeSilva opted out

22  individually or not may be totally irrelevant because it still

23  seems like it's The Bird of Paradise, LLC, that has a claim.

24  That's a separate entity.  That's not him individually.

25    So one thing, counsel for BP said it when we

OFFICIAL TRANSCRIPT

| | |
|---|---|
| 1 | started, and he's correct, is all -- I mean, when push comes to |
| 2 | shove, your client has to -- you have to prove that your |
| 3 | client, DeSilva or the LLC, either that he still owns the LLC, |
| 4 | which, of course, has now been dissolved which raises all sorts |
| 5 | of other issues, but that he owns -- you have to prove that |
| 6 | DeSilva somehow owns this claim, and you're not -- |
| 7 | Are you representing The Bird of Paradise, LLC, |
| 8 | here, or are you representing DeSilva individually, or what? |
| 9 | MR. PENTON:  Well, Judge, I mean, obviously, when |
| 10 | things started changing in 2017 and '18 -- |
| 11 | THE COURT:  I don't know how you can represent a |
| 12 | dissolved entity right now. |
| 13 | MR. PENTON:  I agree with you.  I agree with you, |
| 14 | Judge.  In the court record, obviously, I did represent The |
| 15 | Bird of Paradise until Mr. DeSilva no longer operated it.  But |
| 16 | the purpose -- the practical purpose of both DeSilva having a |
| 17 | claim as well as The Bird of Paradise would be the fact that |
| 18 | The Bird of Paradise had nothing.  It had no assets.  It got -- |
| 19 | THE COURT:  It had the license.  That was a valuable |
| 20 | asset, I would assume. |
| 21 | MR. PENTON:  I agree with you.  But Mr. DeSilva had |
| 22 | millions of dollars invested into this business and into this |
| 23 | property.  So, therefore, a claim was made on his behalf as |
| 24 | well.  So I think all the documentation once the Court looks at |
| 25 | the entire record, you're going to see John DeSilva throughout |

 1  making these claims.  We're happy to go -- we had scheduled the

 2  depositions to go over and possibly take a couple of these, but

 3  BP decided to file the motion.

 4         **THE COURT:**  Let me ask you this, Mr. Penton --

 5         **MR. PENTON:**  Yes, Judge.

 6         **THE COURT:**  -- other than the sale of this property

 7  from DeSilva to MacDonald in 2017, is there some relationship

 8  between these two parties that is not apparent right now to the

 9  Court?

10         **MR. PENTON:**  Your Honor, I have to tell you, I do not

11  have knowledge that there is some relationship between the two

12  parties.  But to me, the best way to find out is, let's go take

13  some sworn testimony.

14         **THE COURT:**  They're not like brothers-in-law or

15  something?  I'm not trying to make light of it, but I'm trying

16  to see if there's something behind the curtain here that is not

17  apparent to us -- or not apparent to me.

18         **MR. PENTON:**  Not to my knowledge, Your Honor, but I

19  certainly can inquire and report to the Court and BP.  But not

20  to my knowledge.

21         **THE COURT:**  Okay.

22         **MR. PENTON:**  An arm's length transaction where a

23  piece of real estate was sold, and it was sold for quite a bit

24  of money less than the value of that real estate, and so there

25  is a residual loss just in the sale of that property.

1            And in our brief, Judge, we cite the old 1911

2   Florida Supreme Court of *Marianna*, which is very similar to

3   our -- to our rule that an owner such as Mr. MacDonald does not

4   have a right to proceed on a loss or a damage that occurred

5   before he purchased the property unless there's an express

6   reservation, assignment, or subrogation agreement.

7            **THE COURT:**  You're talking about -- but I think the

8   principle you're talking about pertains to damage to the

9   property.  Like that's occurred in Louisiana under these cases

10  where someone buys a piece of property and later learns or

11  finds that there was contamination from old oil and gas

12  operations.  It says, you buy it -- you bought it with that,

13  and you knew or should have known, I guess is the theory, what

14  you were buying.

15           **MR. PENTON:**  That's correct, Judge.

16           **THE COURT:**  Yeah.  So you don't inherit a former

17  owner's claim for that type of damage, but we're talking about

18  a business loss here.  I'm not sure the same principle applies.

19           **MR. PENTON:**  Well, Judge, I think because this is a

20  piece of real estate and that is a real estate principle is why

21  we cited it.  We believe it applies.

22           **MR. REGAN:**  Your Honor, if I might respond to that

23  briefly.

24           **THE COURT:**  Go ahead.  Go ahead.

25           **MR. REGAN:**  A couple of thoughts.  First of all, the

OFFICIAL TRANSCRIPT

| | |
|---|---|
| 1 | claim here is not about the real estate, so it's irrelevant. |
| 2 | So that's point number one. |
| 3 | Point number two is, if there is going to be |
| 4 | discovery, it should be exclusively jurisdictional discovery |
| 5 | and just on this narrow question of:  Does this plaintiff have |
| 6 | the right go forward?  Because it's a simple question, but it's |
| 7 | a fundamental one is:  Who does Mr. Penton represent here? |
| 8 | And if we go and take a deposition of his |
| 9 | client, Mr. DeSilva, who it sounds like Mr. Penton absolutely |
| 10 | represents Mr. DeSilva.  No question.  But if we go and take a |
| 11 | deposition of Mr. MacDonald, we can do that, and answer some of |
| 12 | these very simple questions as to who the real party in |
| 13 | interest is here.  But the notion of the property itself, this |
| 14 | is the challenge. |
| 15 | Lastly, again, you do have the clear documents |
| 16 | in front of you as to whether -- what is this claim?  Who's |
| 17 | bringing it?  But the question of the dissolution is something |
| 18 | that we could also frame-up for Your Honor.  If there's a -- |
| 19 | and that has to be for jurisdictional discovery about who the |
| 20 | real party in interest is here. |
| 21 | **THE COURT:**  Okay.  Anyone need to say anything else? |
| 22 | I think there's still a lack of information that |
| 23 | would make me fully confident in ruling on this right now. |
| 24 | I've got to say, Mr. Penton, there is -- I |
| 25 | think, though, there is evidence in the record which could |

1   certainly be construed as showing that while Mr. DeSilva owned

2   the real estate, the business and the business loss claim was

3   owned solely by this LLC.

4            The question is whether he sold or transferred

5   the LLC when he sold or transferred -- when he sold the real

6   estate.  Somehow the person he sold the real estate to took

7   over control of that LLC -- I don't think there's any dispute

8   about that -- and then dissolved it in the state of Florida.

9   Again, that's some indication that it was transferred to him.

10           I'm looking at this more of a Rule 17 issue

11   right now.  But before I rule on it, what I'm going do is I'm

12   going to allow some limited -- very limited -- jurisdictional

13   discovery.  Whether it's jurisdictional or real party in

14   interest, but some discovery just limited to that narrow issue.

15   And right now I can't envision what that would be other than

16   deposing Mr. MacDonald.  Has Mr. DeSilva -- no one's been

17   deposed on this claim, I guess, right, as discovery's been

18   stayed?

19           **MR. PENTON:**  No, they have not, Judge.

20           **THE COURT:**  Other than the two parties, Mr. Regan,

21   can you envision any -- what other discovery would you

22   envision?

23           **MR. REGAN:**  Matthew Regan, Your Honor.

24           I think those are the two people for deposition

25   discovery.  I think it's possible that we might need -- well,

```
 1   if we do take the depositions, then we don't need any written
 2   discovery anyway because the deposition is under oath and we
 3   can ask whatever relevant questions we would say.
 4                 I think -- again, we've asked this question
 5   multiple times, and Mr. Penton has provided some materials.  I
 6   think the deposition would confirm that there's nothing else
 7   out there that's a piece of paper on this deal, but if there is
 8   a piece of paper on the transfer of the LLC, I mean, again,
 9   just that question, then, Your Honor, that would be to me the
10   final piece of it.  Is there actual documentation, not of the
11   home sale -- we received that from Mr. Penton -- but is there
12   anything in writing about the LLC transfer?
13                 Those would be my only additional thoughts, Your
14   Honor.
15            THE COURT:  Okay.  Any reason you all can't get that
16   done within, say, 30 days?
17            MR. PENTON:  Your Honor, I think we should be able
18   to.  Not a problem.
19            THE COURT:  Okay.
20            MR. PENTON:  Now, I don't control Mr. MacDonald.  In
21   fact, I've never spoken to him except one time as I recall, but
22   I'm sure he has a lawyer, and we can find that out and work
23   through him to make him available without a subpoena.
24            THE COURT:  Where does he reside?
25            MR. PENTON:  I understand somewhere in St. Petersburg
```

OFFICIAL TRANSCRIPT

1  area, Judge.  Tampa, St. Pete.

2          **THE COURT:**  And what about Mr. DeSilva?

3          **MR. PENTON:**  He lives in St. Petersburg, Judge.

4          **THE COURT:**  Okay.  So you all may be able do them

5  both at the same -- not at the same time, but the same trip

6  there.

7          **MR. PENTON:**  Yeah.  What I'm saying is Mr. DeSilva is

8  not a problem, but Mr. MacDonald, I will ask local counsel

9  there about who his counsel is, and we'll work through it

10  without a subpoena.  We should be able to.

11          **THE COURT:**  Okay.  All right.  So I'm going to defer

12  ruling on this for 30 days.  I'm going to allow the parties to

13  take the limited discovery that we just mentioned, which would

14  be depositions of Mr. DeSilva and Mr. MacDonald and a

15  production of any additional relevant documents on this issue.

16          Then following the completion of those

17  depositions, I'll give each side an additional 21 days to file

18  supplemental briefing and submit additional evidence such as

19  deposition testimony or any other documents that may come to

20  light.

21          Okay.  Is there anything else we need to talk

22  about on this issue or any other issue today, Mr. Regan?

23          **MR. REGAN:**  No, Your Honor.  Understood.  Thank you.

24          **THE COURT:**  Mr. Penton, anything from you?

25          **MR. PENTON:**  No, Your Honor.  Thank you.

OFFICIAL TRANSCRIPT

1    **THE COURT:**   Okay.  You all have a good day.  All

2  right.   Thank you.

3    **MR. REGAN:**   Thank you, Your Honor.

4    **MR. PENTON:**   Thank you, Your Honor.

5    (WHEREUPON, the proceedings were concluded.)

6    *******

7    **CERTIFICATE**

8    I, Jodi Simcox, RMR, FCRR, Official Court Reporter

9  for the United States District Court, Eastern District of

10  Louisiana, do hereby certify that the foregoing is a true and

11  correct transcript, to the best of my ability and

12  understanding, from the record of the proceedings in the

13  above-entitled and numbered matter.

14

15

16    *s/Jodi Simcox, RMR, FCRR*
                                Jodi Simcox, RMR, FCRR
17                               Official Court Reporter

18

19

20

21

22

23

24

25

OFFICIAL TRANSCRIPT