**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL NO. 2179 |
| | * | SECTION J(2) |
| | * | |
| This Document relates to: | * | JUDGE BARBIER |
| | * | MAGISTRATE JUDGE CURRAULT |
| *Loggerhead Holdings, Inc. v. BP p.l.c., et al.,* Case No. 16-cv-05952 | * * | |

---

**BP'S STATEMENT OF UNDISPUTED MATERIAL FACTS**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

In accordance with Rule 56(c) of the Federal Rules of Civil Procedure and Local Rule 56.1 of this Court, Defendants BP Exploration & Production, Inc. and BP America Production Company (collectively, "BP") respectfully submit the following statement of undisputed material facts in support of BP's Motion for Summary Judgment (the "Motion").

1.      Plaintiff's subsidiaries operated scuba-diving cruises in the Caribbean—specifically, Mayaguana (just northwest of Turks and Caicos), Puerto Rico, the island of St. Croix, and multiple destinations in the Bahamas, including Medio Reef, Cay Sal Bank and Cay Lobos. *See* Ex. 1, Declaration of Ashley E. Littlefield in Support of BP's Motion for Summary Judgment ("Littlefield Decl.") at Ex. A 34:25–35:23, 42:21–43:3, 67:8–17; Littlefield Decl. at Ex. B 60:4–70:16; Littlefield Decl. at Ex. C; Ex. 2 at LOGGERHEAD0000391.

2.      Plaintiff's reservations and logistics operations were located in Fort Lauderdale, Florida.  *See* Littlefield Decl. at Ex. A 36:5–37:5.

1

3.      Plaintiff's cruises to the Bahamas departed from Fort Lauderdale, Florida.  *See* Littlefield Decl. at Ex. B 66:3–7, 66:25–67:19, 69:24–70:5; *see also* Littlefield Decl. at Ex. C at 10, 12, 14, 21.

4.      For Plaintiff's cruises that operated outside of the Bahamas, the vessels usually departed from a local port—for example, from Puerto Rico or from Turks and Caicos.  *See* Littlefield Decl. at Ex. B 60:16–23, 62:9–17; *see also* Littlefield Decl. at Ex. C at 6, 8, 16, 21.

5.      Plaintiff provided maintenance and support services for its vessels out of a shipyard on the Gulf County Canal, about five miles from the coast in Port St. Joe, Florida, located east of Panama City and south of Tallahassee.  *See* Littlefield Decl. at Ex. A 23:4–15, 54:21–55:8; Littlefield Decl. at Ex. B 116:6–8.

6.      Plaintiff's subsidiaries operated in a number of niche businesses that all supported Plaintiff's scuba-diving operations.  *See* Littlefield Decl. at Ex. A 22:17–24:13; Ex. 2 at LOGGERHEAD0000391.

7.      Plaintiff also offered engineering services and related shipyard logistics.  *See* Littlefield Decl. at Ex. A 23:16–24:9.

8.      Plaintiff sold the opportunity for divers to "enjoy looking at the fish and taking pictures of them." *See* Littlefield Decl. at Ex. A 25:24–26:16.

9.      Plaintiff testified its operations were "very similar" to commercial fishing.  *See* Littlefield Decl. at Ex. A 25:11–18.

10.     Plaintiff did not sell the destruction or death of fish.  *See* Littlefield Decl. at Ex. A 26:21–27:4.

11.     Plaintiff does not recall catching fish and selling them for revenue.  *See* Littlefield Decl. at Ex. A 25:7–10.

12.     Plaintiff reported gross receipts of ███████ in 2007.   Ex. 3 at LOGGERHEAD00000026.

13.     Plaintiff reported gross receipts of ███████ in 2008.   Ex. 4 at LOGGERHEAD00000044.

14.     Plaintiff reported gross receipts of ███████ in 2009.   Ex. 5 at LOGGERHEAD00000058.

15.     Plaintiff reported a net loss of ███████ in 2007.   Ex. 3 at LOGGERHEAD00000039.

16.     Plaintiff reported a net loss of ███████ in 2008.   Ex. 4 at LOGGERHEAD00000053.

17.     Plaintiff reported a net loss of ███████ in 2009.   Ex. 5 at LOGGERHEAD00000070.

18.     Plaintiff's monthly bookings data reflects when customers booked trips, as opposed to when customers went on the trips.  Littlefield Decl. at Ex. A 239:6–13.

19.     Customers sometimes booked trips years in advance.  Littlefield Decl. at Ex. A 246:11–247:3.

20.     Plaintiff's monthly bookings data are as follows: 67 bookings in March 2008; 87 bookings in March 2009; 71 bookings in March 2010; 193 bookings in April 2008; 61 bookings in April 2009; 49 bookings in April 2010; 104 bookings in May 2008; 46 bookings in May 2009; 13 bookings in May 2010.  *See* Ex. 6 at LOGGERHEAD00000161; Ex. 7 at LOGGERHEAD00000144; Ex. 8 at LOGGERHEAD00000164.

21.     In the late 1990s or early 2000s, Plaintiff took out loans on each of its two vessels totaling approximately $2.6 to $2.8 million dollars.  Littlefield Decl. at Ex. B 100:16–101:14.

22.     Before the Spill, Plaintiff missed payments on the loans on its two vessels beginning in late 2007 and continuing through approximately January 2010.  *See* Littlefield Decl. at Ex. B 105:7–11.

23.     On May 19, 2010, Nekton Diving Cruises, LLC ("Nekton Diving"), Plaintiff's subsidiary that operated diving cruises, made an assignment for the benefit of creditors.  Ex. 9 at BPB1-Loggerhead_00000481–85; Ex. 2 at LOGGERHEAD00000391; Littlefield Decl. at Ex. A 42:21–43:3.

24.     As of filing, Nekton Diving had less than $100,000 in assets and approximately $4.8 million in debts that it could not pay as they became due.  *See* Ex. 9 at BPB1-Loggerhead_00000491–92; *see* Littlefield Decl. at Ex. B 75:10–13; 77:10–13.

25.     Of that $4.8 million debt, approximately $3.4 million were in unsecured claims. Ex. 9 at BPB1-Loggerhead_00000491.

26.     Nekton Diving's $3.4 million in unsecured claims included $47,310.47 in unpaid wages.  Ex. 9 at BPB1-Loggerhead_00000491; Littlefield Decl. at Ex. B 82:16–19.

27.     About half of this amount were the current wages for the crew at the time of filing in May 2010, and the other half was for wages up to one to two years before the time of filing. Littlefield Decl. at Ex. B 83:23–85:4.

28.     Nekton Diving's $3.4 million in unsecured claims included $417,492.75 in consumer deposits that Plaintiff collected for trips that were cancelled, and these deposits were never returned.  *See* Littlefield Decl. at Ex. B 86:24–87:12; *see also* Ex. 9 at BPB1-Loggerhead_00000491.

29.     Plaintiff's two vessels, the *Nekton Pilot* and the *Nekton Rorqual*, were built in 1994 and 2001, respectively.  *See* Littlefield Decl. at Ex. A 20:20–22; 80:22–81:3.

30.     After the *Nekton Pilot*'s trip in September 2009, Plaintiff dry-docked the vessel at its shipyard in Port St. Joe in order to conduct an extended refit of the vessel, not intending to put the vessel back into service for at least eight months.  *See* Littlefield Decl. at Ex. B 46:20–22; Littlefield Decl. at Ex. A 98:7–24, 100:7–14, 101:9–23.

31.     Plaintiff estimated the refit of the *Nekton Pilot* would cost approximately $180,000, and by April 2010 Plaintiff had only spent approximately $30,000.  *See* Littlefield Decl. at Ex. A 136:7–138:18.

32.     Plaintiff planned to rebuild the *Nekton Pilot*'s main engines at $60,000 per engine in Alabama, followed by a Coast Guard inspection.  *See* Littlefield Decl. at Ex. A 139:3–16, 141:12–21; Littlefield Decl. at Ex. B 48:12–23.

33.     At the time of the Spill, the *Nekton Pilot* had no engine, no engine rebuild in progress, and no reservations.  *See* Littlefield Decl. at Ex. B 48:12–14; *see* Littlefield Decl. at Ex. A 115:13–25, 139:24–140:9.

34.     Plaintiff testified it wanted to see if there was sufficient cash from reservation deposits in May and June 2010 before moving forward with the rebuild.  *See* Littlefield Decl. at Ex. A 141:12–142:24.

35.     Plaintiff testified that it used cash deposits for future trips to pay current expenses. *See* Littlefield Decl. at Ex. B 88:2–4.

36.     Plaintiff was unable to pay for the *Nekton Pilot*'s refit absent income from the *Nekton Rorqual*.  *See* Littlefield Decl. at Ex. B 227:9–13.

37.     On or around April 10, 2010, the *Nekton Rorqual* had a casualty to its starter generator that rendered it "inoperable . . . until [Plaintiff] repaired it or replaced it." *See* Littlefield Decl. at Ex. A 169:18–170:14.

38.     During the week of April 11, 2010, Plaintiff unsuccessfully attempted to install a new generator while continuing to operate. *See* Littlefield Decl. at Ex. A 176:11–177:25.

39.     This resulted in a "low oil pressure issue" that was "the precipitating factor" for bringing the *Nekton Rorqual* back to Plaintiff's Port St. Joe shipyard for repairs. *See* Littlefield Decl. at Ex. A 177:12–178:23.

40.     Because of these needed repairs and refits unrelated to the Spill, in April 2010 Plaintiff cancelled all trips from April 24 to May 22, 2010. *See* Littlefield Decl. at Ex. B 56:22–58:16.

41.     Plaintiff did not complete repairs or refits to either vessel. *See* Littlefield Decl. at Ex. A 104:11–12, 191:5–9.

42.     To conduct the *Nekton Rorqual*'s generator repairs, the vessel departed Mayaguana in the southeastern Bahamas on April 25, 2010. *See* Littlefield Decl. at Ex. D; *see* Littlefield Decl. at Ex. B 52:11–23, 151:7–17.

43.     The *Nekton Rorqual* traveled past Key West and the Marquesas, continuing north to Port St. Joe. *See* Littlefield Decl. at Ex. A 174:2–13; Ex. 10 at LOGGERHEAD00001918–24.

44.     On May 2, 2010, the *Nekton Rorqual* approached Port St. Joe from the south, veering no more than "[m]aybe just slightly" five or ten miles west of Port St. Joe. *See* Littlefield Decl. at Ex. B 166:3–17; Ex. 10 at LOGGERHEAD00001922–24.

45.     Port St. Joe is more than one-hundred miles east of the *Deepwater Horizon* oil rig. *See* Littlefield Decl. at Ex. E.

46.     On April 30, 2010, NOAA forecast oil potentially extending approximately fifty miles south of Pensacola, Florida on May 1, 2010.  *See* Littlefield Decl. at Exs. F, G.

47.     On May 1, 2010, through its Emergency Response Management Application, NOAA calculated that oil was unlikely to extend past the line of longitude extending south from Milton, Florida.  *See* Littlefield Decl. at Ex. H; *see also* Littlefield Decl. at Ex. F.

48.     On May 2, 2010, NOAA's forecast showed oil was unlikely to extend past Mobile Bay on May 3, 2010, and no farther east than Pensacola and Milton, Florida.  *See* Littlefield Decl. at Ex. I.

49.     On May 2, 2010, the *Nekton Rorqual* was just south of Port St. Joe.  *See* Ex. 10 at LOGGERHEAD00001922–24.

50.     Plaintiff testified that the vessel drove through oil the night of May 2 and into May 3, 2010 before it reached Port St. Joe and travelled up the Gulf County Canal to Plaintiff's shipyard. *See* Littlefield Decl. at Ex. A 178:24–179:7.

51.     Mr. Dixon could not recall anyone aboard the *Nekton Rorqual* seeing oil on May 2 or May 3, 2010.  *See* Littlefield Decl. at Ex. A 180:3–184:2.

52.     Plaintiff's president, Mr. Dixon, testified that a captain onboard the vessel reported "smelling" oil during the night on May 2, 2010.  *See* Littlefield Decl. at Ex. A 180:3–181:13.

53.     Mr. Dixon testified that, approximately a week later, he observed a clear plastic hose on the vessel that he believed was "obviously stained and the color of oil" as well as an "oily sheen and residue" that he believed was oil from the Macondo Well.  *See* Littlefield Decl. at Ex. A 184:6–10, 187:19–188:14.

54.     Plaintiff created no contemporaneous written communications concerning the oil and does not recall whether it took photographs or video of oil on the vessel.  *See* Littlefield Decl. at Ex. B 172:21–173:2, 174:24–175:5.

55.     Plaintiff did not, and has not, had any substance tested or performed any fingerprinting analysis of the alleged oil in order to determine whether it came from the Macondo Well.  *See* Littlefield Decl. at Ex. A 188:18–20, 189:17–24; Littlefield Decl. at Ex. B 175:21–176:4.

56.     Plaintiff left the alleged oil on the *Nekton Rorqual*.  Plaintiff did not take any steps to formally collect and preserve samples of any alleged oil on the *Nekton Rorqual* for testing today. *See* Littlefield Decl. at Ex. B 175:16–20.

57.     Plaintiff alleges the substance "remains on the *Rorqual*," with the exception of any oil that Plaintiff cleaned out of the vessel's ballast tanks after the Spill.  *See* Littlefield Decl. at Ex. B 175:6–20, 176:24–177:12.

58.     Plaintiff does not allege that any other property was oiled.  *See* Littlefield Decl. at Ex. A 205:24–206:18.

59.     On May 17, 2010, Plaintiff publicly announced via its website that it was ceasing operations "[d]ue to the continually increasing cost of operations, decreased discretionary income of consumers, and overall economic difficulty[.]"  *See* Littlefield Decl. at Ex. J at 1; Littlefield Decl. at Ex. K at 2; Littlefield Decl. at Ex. A 220:7–10.

60.     Plaintiff's May 17, 2010 announcement made no mention of the Spill.  *See* Littlefield Decl. at Ex. J; Littlefield Decl. at Ex. K.

61.     Plaintiff produced a copy of its website dated July 7, 2010, which contained a modified announcement that added "lionfish invasion" and "BP oil catastrophe" to the list of reasons for ceasing operations.  *See* Ex. 11 at LOGGERHEAD00000387.

62.     Plaintiff does not know who modified the announcement, but the modification was made with Mr. Dixon's "input."  Littlefield Decl. at Ex. A 223:4–13.

63.     Mr. Dixon testified that, even though "[t]he other factors were obviously a concern," the Spill was "the precipitating event that stopped" Plaintiff's operations.  Littlefield Decl. at Ex. A 225:4–13.

64.     Plaintiff testified that the media's coverage of the Spill in May 2010 "[a]bsolutely far and away destroyed tourism throughout the Gulf, throughout Florida, throughout the Keys[.]" *See* Littlefield Decl. at Ex. A 229:14–230:23.

65.     Mr. Dixon testified that he believed it was a "panic" of "imminent oils into the Keys."  *See* Littlefield Decl. at Ex. A 229:14–230:23.

66.     Mr. Dixon testified that he believed "diver[s] anywhere" would not choose to book scuba cruises with Plaintiff because of the fear of oil entering the Loop Current and Gulf Stream, a fear Plaintiff believes caused its bookings to "just stop[]."  *See* Littlefield Decl. at Ex. A 231:5– 232:12.

67.     Plaintiff testified that a "small handful" of customers—"[m]aybe half a dozen to a dozen"—cancelled reservations allegedly due to the Spill.  *See* Littlefield Decl. at Ex. B 229:16– 230:7.

68.     Mr. Dixon did not speak with any of these customers.  *See* Littlefield Decl. at Ex. B 232:9–13, 233:8–15.

69.     Plaintiff cannot remember who the customers were that cancelled reservations.  *See* Littlefield Decl. at Ex. B 229:25–230:10.

70.     Plaintiff has not produced any "statement[s] showing" such cancellations.  *See* Littlefield Decl. at Ex. B 233:16–234:10.

71.     Plaintiff's competitors continued to run trips during the summer of 2010 in locations where Plaintiff operated.  *See* Littlefield Decl. at Ex. B 223:20–226:17; Littlefield Decl. at Ex. A 217:19–25; Ex. 11 at LOGGERHEAD00000387–388.

72.     One competitor offered fifty-percent discounts to Plaintiff's customers after Plaintiff cancelled their trips.  *See* Littlefield Decl. at Ex. A 217:10–18; Littlefield Decl. at Ex. B 222:21–223:19; Ex. 11 at LOGGERHEAD00000388.

73.     Plaintiff advertised some of its competitors' scuba-diving offerings on its website, since its vessels were inoperable.  *See* Ex. 11 at LOGGERHEAD00000387; Littlefield Decl. at Ex. B 221:17–222:14, 225:13–24, 226:11–227:13.

74.     Plaintiff testified that oil threatened three of its summer 2010 itineraries—Cay Sal Bank, Cay Lobos, and Medio Reef, all in the western Bahamas.  *See* Littlefield Decl. at Ex. A 151:12–21; 155:11–156:9.

75.     In May 2010, Plaintiff did not consider operating any trips during the summer of 2010 in the southern Bahamas, where it regularly conducted cruises and where its competitors continued to make trips.  *See* Littlefield Decl. at Ex. B 224:2–225:24.

76.     Plaintiff contended that rescheduling trips to the southern Bahamas would have inconvenienced customers.  *See* Littlefield Decl. at Ex. B 195:21–196:9.

77.     Plaintiff cancelled customers' trips and did not refund the approximately $417,000 in customer deposits that it received as of May 19, 2010.  *See* Littlefield Decl. at Ex. B 86:24–87:15.

78.     Before the Spill, Plaintiff planned to operate itineraries in Puerto Rico beginning in October 2010, but Plaintiff did not conduct these planned trips or continue to accept bookings for such trips after May 17, 2010.  *See* Littlefield Decl. at Ex. B 203:5–19; *see* Littlefield Decl. at Ex. A 257:12–21.

79.     Plaintiff testified that he "ha[d]n't really considered" whether Macondo oil flowed to Puerto Rico.  To the extent any Macondo Oil flowed to Puerto Rico, Plaintiff testified that "[i]t would have had to circle all the way around the Atlantic first and then come across on the mid equatorial current.  So for sure the dilution would have been significant by then."  *See* Littlefield Decl. at Ex. B 195:8–20.

80.     Plaintiff received $325,000 in short-term assistance from BP by the end of September 2010.  *See* Littlefield Decl. at Ex. B 114:9–16, 203:10–19.

81.     Plaintiff's alleged damages include the "costs of incurred and continuing storage" of the *Nekton Rorqual* and *Nekton Pilot* since 2010.  *See* Ex. 12 at 6.

82.     Plaintiff's subsidiary Gulf County Shipbuilding, Inc. operated the Port St. Joe shipyard.  *See* Littlefield Decl. at Ex. A 46:10–20, 83:14-22; Ex. 2.

83.     Plaintiff's subsidiary NP Leasing, Inc. owned the *Nekton Pilot*.  *See* Littlefield Decl. at Ex. A 47:8–9; Ex. 2.

84.     Plaintiff's subsidiary NR Holdings, Inc. owned the *Nekton Rorqual*. *See* Littlefield Decl. at Ex. A 49:25–50:2; Ex. 2.

85.     Once both of Plaintiff's vessels were laid up in Port St. Joe, Gulf County Shipbuilding, Inc. billed NR Holdings, Inc. and NP Leasing, Inc. over $3 million for costs associated with the lay-up.  *See* Ex. 13; Littlefield Decl. at Ex. B 122:13–124:21.

86.     These expenses were not associated with costs to third parties, and these costs were "well below market" rate.  *See* Littlefield Decl. at Ex. B 135:19–136:6, 136:11–14, 140:8–141:8.

87.     When one of Plaintiff's subsidiaries paid money to another subsidiary, Plaintiff did not net any profits or incur any losses from such transactions.  *See* Littlefield Decl. at Ex. B 27:16–22.

88.     Plaintiff seeks "on the order of $40 million" in damages "[f]rom 2010 to whenever this litigation is resolved."  *See* Littlefield Decl. at Ex. A 275:18–23, 283:7–11.

89.     Plaintiff testified that its final damages will differ from the damages reports that it previously produced.  *See* Littlefield Decl. at Ex. A 260:22–261:9, 264:20–265:10.

90.     Port St. Joe is approximately 122 miles from Pensacola, Florida.  *See* https://www.distance-cities.com/distance-pensacola-fl-to-port-saint-joe-fl;   *see      also* https://www.mapdevelopers.com/distance_finder.php?polylines=%5B%5B%5B%5B29.8083009 77061688%2C-85.29966595094612%5D%2C%5B30.423240092643198%2C-87.22958713340068%5D%5D%2C%22%23000000%22%5D%5D.

May 10, 2021                                  Respectfully submitted,

                                             */s/ Devin C. Reid*
                                             _____
                                             R. Keith Jarrett (Bar # 16984)
                                             Devin Reid (Bar #32645)
                                             **LISKOW & LEWIS**
                                             One Shell Square
                                             701 Poydras Street, Suite 5000
                                             New Orleans, Louisiana 70139-5099
                                             Telephone: (504) 581-7979
                                             Fax No. (504) 556-4108

                                             Matthew T. Regan, P.C.
                                             (matthew.regan@kirkland.com)
                                             Kristopher S. Ritter
                                             (kristopher.ritter@kirkland.com)
                                             **KIRKLAND & ELLIS LLP**
                                             300 North LaSalle
                                             Chicago, IL 60654
                                             Telephone:  (312) 862-2000

                                             Christopher W. Keegan
                                             (chris.keegan@kirkland.com)
                                             Ashley Littlefield
                                             (ashley.littlefield@kirkland.com)
                                             Anna Terteryan
                                             (anna.terteryan@kirkland.com)
                                             **KIRKLAND & ELLIS LLP**
                                             555 California Street
                                             San Francisco, CA 94104
                                             Telephone: (415) 439-1400

                                             *Attorneys for BP America Production Company*
                                             *and BP Exploration & Production, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing **BP's Statement of Undisputed Material Facts In Support of Its Motion for Summary Judgment** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 10th day of May, 2021.

*/s/ Devin C. Reid*
_____
Devin C. Reid