# Exhibit 12

# EXHIBIT A

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* <br> No. 10-MD-2179 <br><br> PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS) ||||
|---|---|---|---|
| Last Name | First Name | Middle Name/Maiden | Suffix |
| Business Name <br> Loggerhead Holdings, Inc. || Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) <br> 65-0857539 ||
| MDL 2179 Member Case Number <br> 2:16 CV5952 || Attorney Name and Firm <br> Anthony G. Buzbee and Caroline E. Adams, The Buzbee Law Firm ||

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation. Responses must be as specific and accurate as practicable and shall be given under penalty of perjury. It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading. **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.** Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question. Make sure to indicate the question you are continuing to answer.

1

**Exhibit 13**


**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

See response attached.  This report is subject to amendment and supplementation.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

See response attached. This report is subject to amendment and supplementation.

3

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

See response attached. This report is subject to amendment and supplementation.

4

> **Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions? (Yes or No)
> Yes.

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: **06 APRIL**, 2018

Location (City and State): **FORT LAUDERDALE, FLORIDA**

*John David Dixon, P.E.* (signature)
Signature of Plaintiff*

*Plaintiff's Attorney **Cannot** Sign on Plaintiff's Behalf. For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.*

John David Dixon
Print Name

Sole Member, Owner and Operator of Loggerhead Holdings, Inc.

Title/Position (if signed on behalf of a business or other entity)

**The verified statement, must be filed into the record of the plaintiff's <u>individual lawsuit</u> (as opposed to the master docket for MDL 2179) no later than <u>April 11, 2018</u>.**

5

Re: John Dixon, Individually and as the Sole Member, Owner and Operator of Loggerhead Holdings, Inc., 2:16 CV5952; EIN 65-0854016

Claimant Responses to PTO 65 as follows:

1. Compensatory damages are detailed in the attached report labeled Exhibit "A". Damages arise because of the suspension of the cruise operations directly due to the BP Oil Spill. Exhibit "A" details the consequences of the suspension of the cruise operations and loss of revenue and gross margin. The Claimant presents their calculations that provide an estimate of the compensatory damages caused by the suspension of the cruise operations.

   The attached report prepared by Claims Strategies Group, LLC, provides a detailed analysis of the claim and supporting documentation. The calculation in the report determines damages in the amount of $7,311,481.00 as compensation for failed business as defined in the Class Settlement Agreement and applicable MVIC. Additional costs of incurred and continuing storage, loss of future gross margin, continuing maintenance costs, continuing rental costs, continuing fixed costs (including financing costs), costs to repair the vessels, and continuing professional fees are detailed below. This evaluation of damages is subject to change but provides a partial analysis pursuant to the 2012 settlement agreement between the parties.

   The gross claim is calculated as follows:
   - Failed Business Compensation - $ 7,311,481.00
   - Dockage, Elec., Daily Checks 2010-2012 $ 3,288,360.00
   - Dockage, Elec., Daily Checks 2013 $ 1,235,620.00
   - Dockage, Elec., Daily Checks 2014 $ 1,235,620.00
   - Loss of Charters 2010-2012 $ 1,088,000.00
   - Loss of Charters 2013 $ 408,000.00
   - Loss of Charters 2014 $ 408,000.00
   - Base Rents, Transportation & Fixed Costs 2010-2012 $ 217,000.00
   - Base Rents, Transportation & FC 2013 $ 84,000.00
   - Base Rents, Transportation & FC 2014 $ 84,000.00
   - Vessel Repairs
     Nekton Pilot $ 6,681,730.00
     Nekton Rorqual $ 6,808,937.00
   - Professional Fees 2010-2012 $ 376,895.00
   - Professional Fees 2013 $ 145,896.00
   - Professional Fees 2014 $ 145,896.00
   - Consequential Damages (foreclosure)
     1550 Old Dynamite Dock Road $ 5,200,000.00
     520 SE 32nd St, Fort Lauderdale $    500,000.00
     **Total Damages** **$ 35,219,425.00**

   Plus interest, penalties, and other damages (included punitive damages) as decided by the Court. Please note that Claimant's calculation is dated through 2014, and will seek damages to present at the time of trial.

2. The evidence to be relied upon to prove damages consists of documents referred to in Exhibit "A."

3. The Deepwater Horizon Macondo well incident led directly to the closure of significant areas of Gulf of Mexico waters extending to the Florida Keys. The Claimant had painstakingly executed a plan over 24 years to construct cruise vessels that transported guests and housed them for diving excursions in waters affected by the BP Oil Spill. The BP Oil Spill directly led to the Claimant's suspension of cruise operations and extenuated costs all as detailed above.

   Photos of the vessels are attached. The Claimant was directly affected by the discharge of oil and has a commercial interest in navigable waters that is akin to that of a commercial fisherman.

   Because of the suspension of the cruise operations, the Claimant suffered loss of earnings in 2010 and continuing losses as well as directly consequential loss due to foreclosures on Loggerhead real properties.

4. Yes. Claimant relies upon the expert opinions and analysis of Claims Strategies Group, LLC, and other experts to be determined in accordance with the Court's scheduling order.



Date of Preparation: March 12, 2018

# FULL REVIEW FINAL PAYMENT CLAIM
# OF

Loggerhead Holdings, Inc.
1107 Key Plaza #147
Key West, Florida 33040

## Claimant Specific Data

| NAICS Code | 483114 – Cruise lines- deep sea transportation of passengers to and from domestic ports |
|---|---|

| Type of Claim | Zone | MVIC |
|---|---|---|
| Business Economic Loss<br>Failed Business Compensation | A | 7.1 |

Resulting from the

**Deepwater Horizon Gulf Oil Spill**

Report prepared by:

**Claims Strategies Group, L.L.C.
Loss Consultants / Business Analysts**

Corporate Office: 401 East Las Olas Blvd.
Unit 130-327
Fort Lauderdale, FL 33301
(954) 527-8533
(866) 270-2423 Fax

Loggerhead Holdings Inc.

**LIST OF DOCUMENTS REVIEWED**

1. Client Description and Claim Summary
2. Schedule of Claim Calculation - EBITDA
3. Federal tax returns 2007- 2010
4. Monthly Profit and Loss statements 2007 - 2010
5. Loggerhead Holdings Sworn Statement
6. Loggerhead Articles of Incorporation
7. Loggerhead FL Certificate of Incorporation
8. Loggerhead 2012 W9
9. Nekton Diving Cruises, LLC Articles of Incorporation
10. Nekton Pilot USCG Cert of Documentation
11. Nekton Rorqual USCG Cert of Documentation
12. Nekton IRS Form W9
13. Photo of Nekton Scuba Cruise Vessels
14. Nekton Diving Cruises P & L April 08-May 2010 with Balance Sheet to December 31, 2009
15. Loggerhead Tax Returns 2007 Amended 1120s 2008 Amended 1120S 2009 1120S
16. NP Leasing Statement May 09 TO APR 2010
17. NR Holdings Statement May 2009 TO APR 2010
18. Laughing Gull Aviation May 2009 TO APR 2010
19. Shipyard Holdings Statement May 2009 TO APR 2010
20. Lease Agreements Nekton Pilot Bareboat Charter Agreement, Nekton Rorqual Bareboat Charter Agreement USCG
21. Title Abstracts for US Cruise Vessels Pilot USCG Title Abstract, Rorqual USCG Title Abstract
22. Annual Sales since 1993
23. ABC Filing -  Nekton ABC Filing
24. Asset Values - Nekton Asset list assigned to creditors
25. Helix Anchor Drive Head picture
26. Honda Engine Hyd Power Pak picture
27. Hydraulic hose picture
28. Stanley Hydraulic drill picture
29. Repair Estimate for Nekton Pilot & Nekton Rorqual, March 2018

Curriculum Vitae



2

Loggerhead Holdings Inc.

**Background of Business and Founder**

Loggerhead Holdings, Inc. includes the operation of two multi-million dollar cruise vessels (Live-aboard dive boats) that cater to scuba divers sailing on weeklong cruises. The Claimant designed, constructed and operated the NEKTON PILOT and her sister-ship the NEKTON RORQUAL, both unique Small Waterplane Area Twin Hull (SWATH) live-aboard dive vessels. The Claimant business started in 1986 and the cruise vessels Nekton Pilot and Nekton Rorqual have operated, since built in 1994 and 2001 respectively, under charter to the operating entity owned by Loggerhead Holdings known as Nekton Diving Cruises, LLC. (see Organization Chart attached).

The launch of the NEKTON PILOT signified a major breakthrough in small passenger vessel travel as the NEKTON PILOT was the world's first SWATH vessel specifically designed to safely and comfortably carry small groups to remote areas for the purpose of scuba diving and water sports. In the course of utilizing the SWATH technology in the design of a specific purpose-built SWATH live-aboard dive vessel, two United States Patents were obtained numbered 5,140,924 and 5,282,763. These patents are for the elevating dive platform that is used to enable divers and snorkelers to easily enter and exit the water and for rotating bow thrusters. The NEKTON PILOT has won numerous accolades including Popular Mechanic's "Design and Engineering Award", Business Week magazine's "Best New Product" and a special feature on the internationally syndicated television show Beyond 2000.

These two vessels were built in the United States by American labor; they remain United States vessels flying the flag of the United States, and when in operation, are responsible for the direct employment of 55 Americans. The vessels are also inspected and certified for operation by the United States Coast Guard (USCG). They are operated under the command of USCG licensed captains and crew.

Mr. John Dixon is the founder and principal of the Claimant cruise business, which he started 25 years ago in 1986. Mr. Dixon is a current and active Florida Registered Professional Engineer (No. 42542). He attended Florida Institute of Technology earning an undergraduate degree in Ocean Engineering. He is a practicing Naval Architect and Marine Engineer. His graduate degree is a Master in Business Administration (MBA) from Florida Atlantic University. Mr. Dixon is also a PADI Master Scuba Diver Instructor, 100 Ton USCG Licensed Captain and an FAA Private Pilot with an instrument rating and over 4,000 hours as Pilot-in-Command.



3

Loggerhead Holdings Inc.




Nekton Rorqual & Nekton Pilot             Patented Dive Deck of the Nekton Rorqual

The Claimant business managed all areas of operating the "niche-cruise vessels" including staffing, marketing, reservations, telemarketing, direct mail, collateral fulfillment, shore-side support, ground transportation for arriving and departing guests, cruise services including cabin service, meal service, scuba diving instruction and supervision, ship maintenance and repairs, fuel bunkering, bookkeeping, accounting and finance, regulatory compliance, international operations and industry relations.

The two vessels are each staffed with a total of seventeen crew members of which twelve are aboard any given week and five are off on rotation. The onboard crew of twelve includes at a minimum two U.S. Coast Guard certified captains, a ship's engineer, chef, an activities director, and six scuba diving instructors. All of the crew members are cross-trained to allow crew relief on a regular rotating basis. Complementing the crew is a riding maintenance support crew of five and the administrative office staff of sixteen employees.

Repair cost calculated in March of 2018 for these vessels is approximately $8 million dollars each. The Nekton Pilot was built in 1994 and the Nekton Rorqual was built in 2001. The business reported IRS Form 1020S revenue as follows:

|      | IRS FORM 1120S | AVERAGE Monthly |
|------|----------------|-----------------|
| 2007 | $3,869,698.00  | $322,474.83     |
| 2008 | $3,352,031.00  | $279,335.92     |
| 2009 | $2,773,751.00  | $231,145.92     |

**Failed Business Compensation**

The claimant's business suspended cruise operations. Following the Oil Spill, the claimant noted cancellations of reservations handled through its captive agent, Shoreside Travel and Reservation Service, Inc. for Nekton Diving Cruises, LLC. Initially, the Gulf of Mexico was closed to all activity following the Oil Spill and reports of oil and dispersants in the waters, convinced scuba diving enthusiasts that it was unsafe to dive in the Gulf of Mexico and connected waters. In fact, the claimant was not unusual in experiencing affects on his business. Scuba dive businesses throughout the region experienced cancellations, like all tourism-related businesses in the area.

The claimant's business was essentially transporting the general public into the potentially hazardous environment of the ocean. If a business that operates in a potentially hazardous environment like the ocean attempts to do so underfunded, then safety is undermined and people can be injured or worse. With foremost consideration for the safety of passengers and crew, the



4

Loggerhead Holdings Inc.

business founder made the very difficult decision to suspend operations after 24 years of growing the business.

A major factor in the ability of a business to operate after a catastrophe is the duration of the catastrophe. A natural disaster like a hurricane might start forming a week or so before landfall. The time prior to landfall the storm is not impacting shore and it is being tracked. When the storm comes ashore its' impact is over in a day or less. Even a hurricane as large and destructive as Katrina moves out within a day. Katrina's storm surge led to 53 levee breaches in the federally built levee system protecting metro New Orleans and approximately 20 breaches of the Mississippi River Gulf Outlet (MR-GO) which left approximately 80% of the city flooded.

As bad as the flooding of New Orleans was it was mostly pumped out within a month. Contrast this with the BP Spill that continued for four months. And every day of the four months the discharging oil was the primary focus of national and international media. This is an extremely significant factor for the operator of a business trying to decide whether to continue operating the business. With the hurricane, the window of uncertainty is over within hours. If your business is still intact or slightly damaged, you continue to operate. If your business is under seven feet of water you don't start operating. The decision is much easier.

In the case of this Claimant, the steady drumbeat of increasingly bad news including increasing estimates of the volume of the daily oil discharge, failed attempts to stop the oil flow at the seafloor, the known months required to drill the relief well and the NOAA reports showing near certain oiling of the Claimant's area of operation, the Claimant was forced to continue the cessation of operations until the oil stopped flowing and the reefs were confirmed to have survived. The Claimant laid off dozens of employees and began storing the two scuba cruise vessels at Gulf County Shipbuilding, Inc. in Port St. Joe, Florida where they remain today (www.gcship.com/webcams). Further, Loggerhead Holdings filed an Assignment for the Benefit of Creditors (ABC) for the operating entity Nekton Diving Cruises, LLC. While storing the vessels is a physical cessation of operations, the ABC is the legal equivalent for the corporation to legally bar actions or claims against it as a result of the suspension of cruise operations..

The Claimant owned the scuba cruise vessels in holding companies separate from the operating entity. The Claimant immediately began pursuing a restart of the scuba cruise vessels pending stoppage of the discharging BP oil and sufficient clean-up and survival of the reefs. The Claimant made immediate claim to BP and then to the GCCF for interim, short-term payments to be able to continue the financing payments, pay for storage and dockage of the vessels and ongoing maintenance until the region re-opened for scuba cruises and customers would return.

The cost to restart cruises would include advertising costs to announce the restart of the scuba cruises and re-branding the image after being shut-down. An insignificant initial payment was made after many months and despite repeated and well-documented appeals for further financial assistance, no funding was received by the Claimant that would have allowed for a resumption of operations. Consequently, the continued cessation of operations and lack of cash flow caused all operating divisions of Loggerhead Holdings, Inc. to suffer economic loss and suspend.



5

Loggerhead Holdings Inc.

Loggerhead Holdings, Inc. is the consolidated holding company for all related companies operated by the claimant. The two vessels are separately owned by single asset holding companies; the Nekton Pilot is owned by NP Leasing, Inc. and the Nekton Rorqual is owned by NR Holding, LLC. The operating entity for both vessels was Nekton Diving Cruises, LLC. The travel and reservations company Shoreside Travel And Reservations, Inc. (dba STARS) and the shipyard and maintenance or storage companies, Gulf County Shipbuilding, Inc. and Port St. Joe Boatworks & Dry Storage, LLC. are also separate entities. The land for the shipyard businesses is owned by Shipyard Holdings, Inc. Loggerhead Holdings, Inc. owns the office building that was the shoreside support for the scuba cruise vessels. Laughing Gull Aviation, Inc. was the Claimant's entity for the single engine plane that serviced the emergency needs of the cruise vessels. If the boats were on a cruise and either needed supplies or some emergency parts, rather than return to port, the Claimant would pilot the plane and drop the needed materials to the boat on cruise. Rapid Reef Work, LLC was a new business that was leveraging the staff, experience, equipment and IP knowledge of the Loggerhead entities to provide reef restoration repair after ship groundings and to install environmental moorings.

All company incomes and expenses are consolidated under Loggerhead Holdings, Inc. for tax reporting purposes and Loggerhead has provided tax filing for all companies under consolidated return form 1120S as it owns 99% of Nekton Diving Cruises, LLC. and 100% of all other companies. Without the revenues being derived by Nekton Diving Cruises, LLC, all of the various operating entities owned by Loggerhead Holdings, and Loggerhead Holdings itself, were forced to suspend business and have effectively failed.

The calculation of the claim forwarded is based upon the consolidated statements of Loggerhead and the additional interest and depreciation expenses that are accounted on the affiliated operating companies for each other entity before consolidation. Correspondence from the Claimant's accountants is available to verify the depreciation and interest expenses that are included in our summary calculations of the EBITDA. The results of this consolidation of the financial statements for the periods May 2009 – April 2010, are stated on the Summary Schedule. .

| Summary of Loss | |
|---|---|
| EBTIDA as calculated | $1,029,786 |
| MVIC multiplier (44 – Water Transportation) | 7.1 |
| Total Claim - TEV | $7,311,481 |
| Less Liquidated Value of Assets | $         0 |
| Total Claim before Fees and Prior Payments | $7,311,481 |



6

Loggerhead Holdings Inc.

**NAICS / Pratt Code:**

The NAICS code applicable is stated above on the cover of the report section. This code includes water transportation services and cruise vessels and corresponds to the Pratt code in the MVIC multiplier codes for Water Transportation. The MVIC multiplier contemplates substantial investment in vessels and thus is a higher multiplier than most categories.

Respectfully submitted,

Henry Sienema, MA, AIIC, FPOIII, CMEA, SBA
Senior Business Analyst,
For, Claims Strategies Group, LLC.



7