# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179<br><br>SECTION J(2) |
| | * | |
| This Document relates to: | * | Honorable CARL J. BARBIER |
| ***Global Disaster Recovery & Rebuilding Services LLC, et al. v. BP Expl. & Prod., Inc., et al.***, Case No. 16-cv-06585 | * * * * | Magistrate Judge CURRAULT |

## BP'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
Kristopher S. Ritter
(kristopher.ritter@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000

Christopher W. Keegan
(chris.keegan@kirkland.com)
Austin L. Klar
(austin.klar@kirkland.com)
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

R. Keith Jarrett (Bar # 16984)
Devin Reid (Bar #32645)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

**ATTORNEYS FOR BP AMERICA
PRODUCTION COMPANY AND BP
EXPLORATION & PRODUCTION, INC.**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................2

I.     BP Is Entitled To Summary Judgment On Plaintiff's Concrete-Based OPA Claim ..........2

     A.     Plaintiff Cannot Recover Damages Related To The Airware Contract..................2

     B.     Plaintiff Cannot Recover Damages Related To Lost Sales ...................................3
           1.     Plaintiff's Claim Related To Robins Fails ...................................................3
           2.     Plaintiff's Claim Related To Other Hypothetical Concrete Sales Fails............................................................................................................5

II.     BP Is Entitled To Summary Judgment On Plaintiff's Procurement-Based Fraud Claim.........................................................................................................................6
           1.     Plaintiff's Generic Pleadings Do Not Satisfy Rule 9(b) .............................7
           2.     Plaintiff Offers No Evidence Of Fraudulent Concealment Sufficient To Create A Triable Issue Of Fact................................................................7
           3.     Plaintiff Cannot Prove Fraudulent Concealment Damages ........................9

CONCLUSION......................................................................................................................10

## INTRODUCTION

Plaintiff's opposition (the "Opposition") demonstrates that this is precisely the case Rule 56 was designed to eliminate.[1]  Plaintiff has had numerous opportunities—in response to PTOs 60, 64, 65, 67, and 69, and the Motion—to come forward with ***evidence*** creating a triable issue of material fact.  In response to BP's Motion, Plaintiff provides no contracts or other contemporaneous documents or communications supporting its claims, or any other evidence or details supporting $310,000,000 in alleged damages.  Nor does Plaintiff address the legal bars to its claims.  Instead, Plaintiff continues to lob unsubstantiated, vague allegations and even change its theories of recovery at this stage.  But regardless of which theories Plaintiff is now pursuing, in view of the undisputed record, summary judgment is warranted on each of Plaintiff's claims.

BP is entitled to summary judgment on Plaintiff's OPA claim for damages related to Plaintiff's concrete business.  Plaintiff alleges that Airware was unable to perform under the Airware Contract "because of the impact by the Oil Spill," causing Plaintiff to lose $14,000,000.  *See* Plaintiff's Statement of the Material Fact in Opposition to BP's Motion of Summary Judgment ("Pl.'s SOF") ¶ 17.  There is no evidence that Airware's breach was Spill related.  Further, Plaintiff acknowledges that Airware already made Plaintiff whole by purportedly deeding concrete to Plaintiff allegedly worth tens, if not hundreds, of millions of dollars.

Nor can Plaintiff recover under OPA for hypothetical lost concrete sales.  There was no written agreement for any sale to Robins and there is no corroborative evidence required to prove an oral contract under Louisiana law.  Further, Plaintiff has not identified its lost profits from that purported sale opportunity or a way to calculate those profits.  Plaintiff admits it had no sale

---

[1]  Capitalized terms used herein but not otherwise defined shall have the meaning set forth in BP's Memorandum of Law in Support of its Motion for Summary Judgment (the "Motion").

contracts in place when the Coast Guard took over the Port of St. Bernard, puts forward no evidence of discussions with vendors regarding potential sales, and offers no other information from which jurors could reliably calculate lost profits from those hypothetical sales.

Plaintiff's record also warrants summary judgment on its fraud claim. Plaintiff's vague assertions of misrepresentations do not even identify the bare minimum information required to move past the early pleading stage under Rule 9(b). And, more importantly, Plaintiff has not come forward with *evidence* supporting those allegations required to create a disputed issue of material fact for trial. Plaintiff has not identified the actual misrepresentations made and admits it cannot recall who made them or when. Nor has it put forth any evidence that BP had intent to deceive. And the record entirely defeats any allegation that BP promised to compensate Plaintiff for procurement work or that Plaintiff reasonably relied on such purported promises. BP repeatedly made clear that any orders it placed would be in writing and never issued any such orders. Further, Plaintiff does not dispute that it never even discussed payment for procurement work with BP. Nor has Plaintiff offered any evidence that it expended effort procuring items for BP. Finally, Plaintiff has not adduced evidence from which one could reliably ascertain damages, including evidence identifying what BP wrongfully procured through other sources or the cost of those items.

For these reasons, and those below and in the Motion, summary judgment is warranted.[2]

## ARGUMENT

### I.     BP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CONCRETE-BASED OPA CLAIM

#### A.     Plaintiff Cannot Recover Damages Related To The Airware Contract

The sole basis for Plaintiff's claim for $14,000,000 on account of the Airware Contract is

---

[2]   Plaintiff acknowledges it is no longer pursuing its first cause of action for negligence, gross negligence or willful misconduct under maritime law, or its second cause of action under the FPDPCA. *See* Opp'n at 4.

the bare allegation that Airware could not perform its obligations to Plaintiff "because of the impact by the Oil Spill." Pl.'s SOF ¶ 17. There is no further evidence provided; significantly more than that conclusory, unsubstantiated allegation is required to survive summary judgment. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (holding that a party opposing summary judgment cannot satisfy their burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence").[3] Even if Plaintiff had adduced any evidence supporting that assertion (it has not), Plaintiff cannot recover $14,000,000 from BP for Airware's alleged breach because Airware already made Plaintiff whole when Airware purportedly deeded all of its concrete to Plaintiff. *See* Pl.'s SOF ¶ 16.[4]

## B.    Plaintiff Cannot Recover Damages Related To Lost Sales

Plaintiff next alleges that it had a "secondary plan" to sell crushed concrete to third parties that allegedly was "derailed when BP took possession of the Port [of St. Bernard] and the concrete." Opp'n at 7. These allegations are likewise unsupported and speculative, and therefore not compensable under OPA, as Plaintiff produced zero evidence of any agreement to sell concrete, or evidence sufficient to reliably calculate lost profits from those hypothetical sales.

### 1.    Plaintiff's Claim Related To Robins Fails

Plaintiff acknowledges that the A-1 Contract—purportedly worth $67,500,000—was not in writing, and asserts that "specific facts of the contract" are "irrelevant." Opp'n at 11; Klar Decl. at Ex. A 65:14-22; Pl.'s SOF ¶ 18. Not so. As discussed in Argument §§ I.C and II.B of the

---

[3]    To the extent that Plaintiff relies on discussions with Airware's owner regarding Airware's inability to perform, such discussions are inadmissible hearsay and cannot be considered. *See Miller v. Gaston*, 358 F. App'x 573, 575 (5th Cir. 2009) (reversing denial of summary judgment for relying solely on hearsay deposition testimony).

[4]    Plaintiff alleges that selling a portion of that concrete to Robins would have yielded $67,500,000, and still left Plaintiff millions of cubic yards of additional concrete to sell to others. Klar Decl. at Ex. A 65:14–22; Pl.'s SOF ¶ 18. Having purportedly received hundreds of millions of dollars' worth of concrete from Airware, Plaintiff cannot claim it was harmed by Airware's inability to pay Plaintiff $14,000,000.

Motion, under Louisiana law, agreements for goods in excess of $500 that are not in writing require other corroborating evidence to be enforceable.  *See, e.g.,* LA. CIV. C. ARTS. 1846; 1839; 2623. Plaintiff produced nothing corroborating any agreement with Robins.  In fact, Plaintiff is, at best, uncertain whether it or A-1 would profit from selling, as opposed to delivering, the concrete to Robins.  *See* Pl.'s SOF ¶ 18 ("A-1 ***and/or*** Global Disaster purportedly had entered into a separate contract with Robins Seafood, pursuant to which ***A-1 would sell*** . . . concrete") (emphasis added).

Even if an agreement existed, Plaintiff acknowledges that consummating that contract required government approval, and there is no evidence suggesting that Plaintiff or anyone else applied for or secured that approval.  *See* Klar Decl. at Ex. A 50:8–51:10 ("Dan [Robin] said, 'Hey . . . if you can get the State of Louisiana to approve that crushed concrete . . . , then I will buy'"). Courts routinely reject lost profits damages as too speculative when they are contingent on obtaining government approvals.  *See, e.g., Peaker Energy Grp., LLC v. Cargill, Inc.,* No. CV 14-2106, 2016 WL 7491851, at *1 (E.D. La. Dec. 30, 2016), *aff'd sub nom. Peaker Energy Grp., L.L.C. v. Cargill, Inc.*, 706 F. App'x 191 (5th Cir. 2017) (declining to award lost profits, in part, because plaintiff had yet to secure customer agreements, approval from directors, necessary financing, or government permits); *Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1344–45, 49 (S.D. Fla. 2006), *aff'd,* 294 F. App'x 501 (11th Cir. 2008) (denying lost profits where FDA approval had not been obtained to market a new product).

Plaintiff's claim also fails because it does not identify how much Plaintiff would have profited from that sale, a methodology for calculating such profit, or any evidence from which a jury could reliably calculate that amount.  Indeed, Plaintiff acknowledges that calculating the portion Plaintiff would have earned for selling concrete is "more difficult to determine" because "some portion . . . would have gone to A-1" as a delivery fee.  Opp'n at 15.  Lost profits are

awardable under OPA only if they can be "proven with reasonable certainty and [are not] based on conjecture and speculation." *Gulf Eng'g Co., L.L.C. v. Dow Chemical Co.*, 961 F.3d 763, 768 (5th Cir. 2020).  Plaintiff must show that the lost profits it seeks are "more probable than not" and support a claim "by more than mere estimates of loss." *Id.* (internal quotations omitted).  Plaintiff has not provided even an estimate of those losses, let alone facts sufficient to calculate such losses "with reasonable certainty"; it relies entirely on "conjecture and speculation." *Id.*  Accordingly, Plaintiff cannot recover damages relating to the alleged A-1 Contract.

2.      Plaintiff's Claim Related To Other Hypothetical Concrete Sales Fails

Plaintiff's lost profits regarding other hypothetical lost sale opportunities are even more speculative.  Plaintiff conclusorily alleges, with no supporting evidence, that "the crushed concrete had value" and "would have been available for sale and shipment."  Opp'n at 11.  But Plaintiff acknowledges that, other than the concrete it purportedly agreed to sell to Robins, the remaining concrete "was not under contract at the time of the Port takeover to be sold to any business." Newell Decl. at Ex. A 244:6-14.  Nor has Plaintiff adduced evidence reflecting any discussions it had with third parties regarding potential sales, what quantities would have been available to sell, under what timeline the sales would have occurred, or at what prices the concrete would have been sold.  The conclusory assertion that a product has value and might be useful to third parties is a far cry from reasonably certain sale prospects.

Further, Plaintiff has not identified its potential profits from those alleged sales.  For example, Plaintiff has not produced evidence reflecting what unidentified third parties would pay, the costs associated with operating a complex crushing operation, or the portion of revenues from those hypothetical contracts that A-1 would have earned from hauling concrete to end customers.

Those costs would necessarily have to be subtracted from revenue to arrive at a lost profits figure. Absent such information, calculating lost profits to any degree of certainty is impossible.[5]

Finally, Plaintiff cannot recover damages from purported lost sale opportunities because there is no evidence Plaintiff attempted to mitigate damages by monetizing the millions of tons of concrete it purportedly owned after the Coast Guard's presence at the Port of St. Bernard ended. *See In re Deepwater Horizon*, 910 F. Supp. 2d 891, 928 (E.D. La. 2012), *aff'd*, 739 F.3d 790 (5th Cir. 2014) (noting that "OPA includes a mitigation requirement.") (citing 33 C.F.R. § 136.235); *Pontchartrain State Bank v. Duden*, 503 F. Supp. 764, 769 (E.D. La. 1980) (noting plaintiffs must "use all reasonable means to minimize, or mitigate, any losses sustained").

## II.   BP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S PROCUREMENT-BASED FRAUD CLAIM

Plaintiff concedes it is not pursuing procurement-based damages under OPA, and instead asserts that such damages are recoverable as part of its fraudulent concealment claim.  *See* Opp'n ARGUMENT § C.  Specifically, Plaintiff alleges that BP made three misrepresentations to Plaintiff regarding: (1) "their preparedness for the Spill," (2) "their willingness to compensate Global Disaster for the work they did filling in those gaps in readiness," and (3) "the reasons their choices

---

[5]    Nor is Plaintiff qualified to opine on such matters.  Plaintiff's concrete crushing business was one year old before the Spill, and had one contract.  *See* BP's SOF ¶¶ 4–5 (uncontested by Plaintiff).  Plaintiff had no history of earnings—let alone profits—on which it could base any estimate of what it may have earned, *see* BP's SOF ¶¶ 6-7, and only one month of experience crushing concrete.  Klar Decl. at Ex. A 49:2–19, 56:5–7; Pl.'s SOF ¶ 14.  In the absence of meaningful experience, Plaintiff cannot opine on the price of crushed concrete or assumed operating costs.  *See DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 685 (5th Cir. 2003) ("[L]ay opinion testimony may be elicited only if it is based on the witness's first-hand knowledge or observations."); *White Haute, LLC v. Mayo*, 38 So. 3d 944, 952–53 (La. Ct. App. 2010) (finding that, even where plaintiff had 30 years of experience, the "lack of even a minimal degree of detail and specificity in the plaintiff's testimony [] regarding the issue of lost profits" or evidence of profits at plaintiff's former restaurants precluded an award of lost profits); *see also Al-Saud v. Youtoo Media, L.P.*, 754 F. App'x 246, 255 (5th Cir. 2018) (rejecting lost profits for "a new venture with no history of profitability" from which to estimate lost profits, without agreements with potential broadcasters); *Pontchartrain State Bank*, 503 F. Supp. at 769 (denying lost profits in part because it was "conjectural at best" whether the plaintiffs' business venture would have profited).

in how to deal with the Spill [sic]." Opp'n at 13.  Plaintiff's vague allegations do not satisfy Rule 9(b)'s heightened pleading standard, let alone create a triable issue of fact.

        1.      Plaintiff's Generic Pleadings Do Not Satisfy Rule 9(b)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Rule 9(b) requires a Plaintiff to identify "the who, what, when, and where" of the fraud.  *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997); *see also In re Deepwater Horizon*, MDL No. 2179, Rec. Doc. 27004 (ruling plaintiff failed to satisfy Rule 9(b)'s particularity standard, because it did not "specify the statements contended to be fraudulent, identify the speaker, state when the statements were made, or why the statements were fraudulent" (citing *Williams*, 112 F.3d at 177)).  Here, Plaintiff acknowledges that its Complaint makes only a "'generic' claim for Fraudulent Concealment related to BP," Opp'n at 4, and has not otherwise identified with particularity what BP's specific representations to Plaintiff were, who made such representations, or when they were made.  Nor can it, as Plaintiff acknowledges it "does not recall" when discussions occurred or with whom from BP Plaintiff spoke.  *See* Opp'n at 8; Pl.'s SOF ¶ 28; BP's SOF ¶¶ 13, 20, 34, 41.

        2.      Plaintiff Offers No Evidence Of Fraudulent Concealment Sufficient To Create A Triable Issue Of Fact

Setting aside what Plaintiff must ***allege*** to state a claim for fraudulent concealment, at the summary judgment stage, Plaintiff must come forward with ***evidence*** sufficient to create a triable issue of fact as to each element.  *See Little*, 37 F.3d at 1075 ("We do not, . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." (citing *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990)).  Plaintiff failed to do so here.

First, Plaintiff has not offered any evidence that BP intended to deceive Plaintiff, a necessary element to its claim.  Plaintiff's conclusory assertion that BP made unidentified

misrepresentations "knowing that they were deceiving Global Disaster and the general republic," Opp'n at 13, is not ***evidence*** sufficient to create a genuine dispute as to a material fact. *See Murungi v. Texas Guaranteed*, 693 F. Supp. 2d 597, 605 (E.D. La. 2010), *aff'd*, 402 F. App'x 849 (5th Cir. 2010) (general allegations of widespread and systematic fraud "do not suggest a specific intent to deceive"); *Little*, 37 F.3d at 1075.

Second, Plaintiff offers nothing in support of its contention of justifiable reliance. *See Annie Sloan Interiors, Ltd. v. Davis Paint Co.*, No. CV 18-8431, 2019 WL 329581, at *4 (E.D. La. Jan. 25, 2019) (finding plaintiff failed to allege element of justifiable reliance). Plaintiff contends it "continued investing in the project at the Port [of St. Bernard] after the Spill began, ***in part***, because of BP's misrepresentation regarding how the Spill would affect the area." Opp'n at 12 (emphasis added). Aside from that vague allegation, Plaintiff has not identified any of those investments—indeed, it claims its concrete operations began "well ***before*** the Spill," Opp'n at 6 (emphasis added)—or any evidence from which a juror could discern what investments were made in reliance on purported representations by BP as opposed to other factors. *See id.* at 12 (alleging that representations were "in part" why Plaintiff continued investing).

Plaintiff also contends that it "did a lot of [procurement] work for BP" based on promises of compensation. Opp'n at 11. Once again, Plaintiff produced zero evidence of any efforts expended in reliance on purported promises by BP to compensate Plaintiff. Even if it had, Plaintiff cannot show those representations were made or justifiable reliance in light of the clear record. BP repeatedly told Plaintiff that any orders or agreements it entered into with Plaintiff would be ***in writing***. BP's SOF ¶¶ 11, 23 at Ex. 6 ("Under no circumstance is the product . . . you refer to in the email below committed to BP unless you have a signed Purchase Order, from BP"); BP's SOF ¶ 23 at Ex. 8 ("If we do place an order with you, we will provide you with a purchase order.").

Moreover, Plaintiff does not dispute that it never discussed a price BP would pay Plaintiff for any alleged procurement work, rent that BP would pay for alleged leases, or the price BP would pay for any good or service Plaintiff allegedly worked to procure for BP. *See* BP's SOF ¶¶ 22, 35–37, 42-43; *see also* Klar Decl. at Ex. B 85:9–14; Klar Decl. Ex. A 173:2–11, 190:25-192:23. Plaintiff also acknowledges that BP never entered into any written agreement with Plaintiff or issued a purchase order for any goods or services, and never formalized any lease agreement with Plaintiff. *See* BP's SOF ¶¶ 14–18, 24; Pl.'s SOF ¶ 28. Given BP's clear statements and Plaintiff's understanding that orders from BP would issue, if at all, in writing, Plaintiff cannot claim it performed work for BP (of which it has no evidence) in reliance on some unidentified oral representations by unidentified individuals from BP.

3.      Plaintiff Cannot Prove Fraudulent Concealment Damages

**Aqua N-Cap**: After initially claiming "hundreds of millions" of dollars in damages relating to its alleged efforts to procure Aqua N-Cap, Klar Decl. at Ex. A 215:21–216:6, 207:22–208:10, Plaintiff now seeks $10,000,000, calculated by multiplying four million pounds of Aqua N-Cap by $2.50, the commission Plaintiff alleges it was entitled to pursuant to its purported agreement with RTASCo. *See* Opp'n at 8. But Plaintiff acknowledges that BP never agreed on a specific price it would pay for Aqua N-Cap; indeed, Plaintiff's claim now that the price would be ***either $7 or $9*** per pound, demonstrates there was never any agreement on price, and there is no evidence from which a jury could discern what price is correct. *See id.; see also* Pl.'s SOF ¶ 28. Nor is there evidence of any agreement on the quantity that BP would purchase. To the contrary, as Plaintiff does not dispute, BP confirmed any purchase orders would be in writing, which BP never issued, and any agreement regarding Aqua N-Cap was contingent on determining need and capacity at several locations, and approval by other BP personnel, which never occurred. *See* BP's SOF ¶¶ 15–18; Pl.'s SOF ¶ 28. Further, without agreement with BP on price or quantity, nor any

9

purchase order from BP, Plaintiff could not earn a commission pursuant to a purported agreement with RTASCo that was contingent on securing a purchase order from BP. *See* Pl.'s SOF ¶¶ 21.

**Other Goods and Services**: Plaintiff asserts it is "entitled to a commission of 20% of the cost of goods and services BP ultimately procured from other sources." Opp'n at 14. Setting aside that BP never agreed to pay Plaintiff a 20% commission, *see* Pl.'s SOF ¶ 37, BP's SOF ¶ 22, and that the sole basis for Plaintiff's claim is that an unidentified person allegedly told Mr. Burkette 20% was BP's procurement rate, *see* Pl.'s SOF ¶ 37, Plaintiff has not provided evidence from which a reasonable juror could reliably calculate that 20% figure. Plaintiff has not identified—indeed it "cannot" identify—what goods or services BP agreed to procure through Plaintiff, what BP wrongfully procured through other sources, the quantities of those goods or services, or the cost of those goods or services. *See* Pl.'s SOF ¶ 36. Without that information, a jury cannot calculate a 20% commission. That inability to reliably calculate damages warrants summary judgment. *See Gulf Eng'g Co.*, 961 F.3d at 768 (plaintiffs must show "loss of profits is more probable than not" and support a claim "by more than mere estimates of loss").

**Investments in the Port Project**: As discussed above, Plaintiff has not offered any evidence reflecting what investments it made at the Port of St. Bernard in justifiable reliance on representations from BP regarding the potential impact of the Spill. *See* Opp'n at 11–12.

## CONCLUSION

For the foregoing reasons, this Court should enter summary judgment for BP.

May 19, 2021                          Respectfully submitted,

                                      */s/ Devin C. Reid*
                                      _____
                                      R. Keith Jarrett (Bar # 16984)
                                      Devin Reid (Bar #32645)
                                      **LISKOW & LEWIS**
                                      One Shell Square
                                      701 Poydras Street, Suite 5000
                                      New Orleans, Louisiana 70139-5099
                                      Telephone: (504) 581-7979
                                      Fax No. (504) 556-4108

                                      Matthew T. Regan, P.C.
                                      (matthew.regan@kirkland.com)
                                      Kristopher S. Ritter
                                      (kristopher.ritter@kirkland.com)
                                      **KIRKLAND & ELLIS LLP**
                                      300 North LaSalle
                                      Chicago, IL 60654
                                      Telephone:  (312) 862-2000

                                      Christopher W. Keegan
                                      (chris.keegan@kirkland.com)
                                      Austin L. Klar
                                      (austin.klar@kirkland.com)
                                      **KIRKLAND & ELLIS LLP**
                                      555 California Street
                                      San Francisco, CA 94104
                                      Telephone: (415) 439-1400

                                      *Attorneys for BP America Production Company
                                      and BP Exploration & Production, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **BP's Reply In Support of its Motion for Summary Judgment** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 19th day of May, 2021.

*/s/ Devin C. Reid*

Devin C. Reid