# Exhibit 1

BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION

IN RE: OIL SPILL BY THE OIL RIG
"DEEPWATER HORIZON" IN THE
GULF OF MEXICO ON APRIL 20, 2010

This Document Relates to:                        MDL No.: 2179

SERGIO VALDIVIESO V. SOUTHERN CAT, INC., Eastern Research Group, Inc., BP Products North America, Inc., BP America, Inc., Southern District of Texas, Case No.: 4:12-cv-01018, Judge Hittner

WILLIAM KIBBY v. BP PRODUCTS NORTH AMERICA, INC., BP America, Inc., Subsea 7 (US), LLC, Offshore Inland Marine & Oilfield Services, Inc., Total Safety US, Inc., Southern District of Texas, Case No.: 3:12-cv-0102, Judge Hoyt

**PLAINTIFFS' BRIEF IN SUPPORT OF ITS MOTION TO**
**VACATE CONDITIONAL TRANSFER ORDER CTO-49**

Plaintiffs, SERGIO VALDIVIESO and WILLIAM KIBBY, through their undersigned counsel, file this, their brief in support of their combined motion to vacate Conditional Transfer Order 49, issued on April 11, 2012, conditionally ordering transfer of the above-captioned cases to the Eastern District of Louisiana for pretrial proceedings in accordance with 28 U.S.C. § 1407, and would respectfully show the Court as follows:

# I.

# INTRODUCTION

## A. SERGIO VALDIVIESO

Mr. Valdivieso originally brought claims in the 164th Judicial District Court of Harris County, Texas under the Saving to Suitors clause (28 U.S.C. § 1333)[1] seeking compensation for maritime torts occurring on a twenty-four foot fiberglass fishing boat, in the navigable waters of the Barataria Bay, located in Louisiana state territorial waters.[2]  At all material times, including on the date of the injury giving rise to his claims, Mr. Valdivieso was employed as a Jones Act seaman and member of the crew of the Vessel.  (Petition at ¶ 11).  The Vessel was chartered by Defendant Southern Cat, Inc., Mr. Valdivieso's employer, and/or Defendant Eastern Research Group, Inc., and was operated or under the control of Defendants BP Products North America Inc., BP America Inc., and BP plc.  (*Id.* at ¶¶ 10-11).  On or about June 9, 2010, Mr. Valdivieso was performing his duties as a deckhand on the Vessel, which required him to hoist, hold, and pull oil-absorbing boom, which had been washed ashore due to high waves, from his position on the main deck of the Vessel.  (*Id.* at ¶ 12). The Vessel was not equipped with the proper crane or other mechanical hoisting equipment for the job, so Mr. Valdivieso was required to lay the extremely heavy boom by hand.  (*Id.*)  While performing this work, the tissue in Mr. Valdivieso's shoulder and/or neck ripped, in addition to his suffering other injuries.  (*Id.*).

On March 1, 2012, Mr. Valdivieso filed his Petition in the 164th Judicial District Court of Harris County, Texas, alleging Jones Act and general maritime claims against

---

[1] While Mr. Valdivieso does not specifically reference the Saving to Suitors clause in his Petition, this "is not determinative as to whether his suit may be brought in state court under that clause." *Bonnette v. Shell Offshore, Inc.,* 838 F. Supp. 1175, 1181 (S.D. Tex. 1993).

[2] *See* Plaintiff's Original Petition and Requests for Disclosure, filed March 1, 2012, attached hereto as **Exhibit A**.

various defendants. (Petition at ¶¶ 1-28). On April 3, 2012, Defendants BP Products North America Inc. and BP America Inc. (collectively, the "BP Defendants") removed this action from Texas state court, arguing that federal courts properly had jurisdiction over Mr. Valdivieso's claims pursuant to the Outer Continental Shelf Lands Act of 1953, 43 U.S.C. § 1331, *et seq.*[3] On April 5, 2012, the BP Defendants filed a motion to stay the current proceedings, pending transfer of the case by the Judicial Panel on Multidistrict Litigation.[4]

### B. WILLIAM KIBBY

Mr. Kibby originally brought his maritime claims in Galveston County, Texas under the Saving to Suitors clause (28 U.S.C. § 1333), seeking compensation for maritime torts occurring on a vessel, the M/V SKANDI NEPTUNE, then located on the navigable waters of the Gulf of Mexico.[5] At all material times, including on the date of the injury giving rise to his claims, Mr. Kibby was employed as a Jones Act seaman and member of the crew of the Vessel. (Petition at ¶ 12). The Vessel was managed, operated and/or chartered by Defendant Subsea 7 (US), LLC and/or Defendants BP Products North America Inc., BP America Inc., and BP plc. (*Id.* at ¶ 11). Beginning on or about April 23, 2010, and continuing for about three weeks thereafter, Mr. Kibby was performing his duties as a seaman aboard the Vessel while it was offshore Venice, Louisiana, located on the navigable waters of the Gulf of Mexico in the vicinity of and above the erupting BP Macondo oil well. (*Id.* at ¶ 13). Specifically, Mr. Kibby was welding and securing equipment to the main deck of the Vessel, so that equipment could be used to help apply

---

[3] *See* Notice of Removal, *Valdivieso v. Southern Cat, Inc, et al.*, No. 4:12-cv-01018 (S.D. Tex. April 3, 2012) ECF No. 1 at ¶¶ 6-15.

[4] *See* Motion for Stay of Proceedings and Suspension of all Responsive Pleading and Answer Deadlines Pending Transfer by the Judicial Panel on Multidistrict Litigation by Defendants BP Products North America Inc. and BP America Inc, *Valdivieso v. Southern Cat, Inc, et al.*, No. 4:12-cv-01018 (S.D. Tex. April 5, 2012) ECF No. 3.

[5] *See* Plaintiff's Original Petition, filed February 17, 2012, attached hereto as **Exhibit B**.

3

undiluted oil dispersants directly to the oil spilling into the Gulf. (*Id.* at ¶ 14). While Mr. Kibby was performing these duties, the deck of the Vessel was awash with these dispersants as they leaked from equipment and improperly marked containers being used by him and the rest of the crew. (*Id.*). As a result of his long-term exposure to the dispersants and hydrocarbons through inhalation and/or absorption, Mr. Kibby sustained serious and disabling personal injuries to his throat, lungs, and other internal organs. (*Id.* at ¶¶ 13-14).

On February 17, 2012, Mr. Kibby filed his Petition in County Court at Law No. 2, in Galveston County, Texas, alleging Jones Act and general maritime claims against various defendants. (Petition at ¶¶ 1-32). On April 2, 2012, Defendants BP Products North America Inc. and BP America Inc. (collectively, the "BP Defendants") removed this action from Texas state court, arguing that federal courts have jurisdiction over Mr. Kibby's claims pursuant to the Outer Continental Shelf Lands Act of 1953, 43 U.S.C. § 1331, *et seq*.[6] On April 5, 2012, the BP Defendants filed a motion to stay the current proceedings, pending transfer of the case by the Judicial Panel on Multidistrict Litigation.[7]

## II.

## SUMMARY OF THE ARGUMENT

Plaintiffs Sergio Valdivieso and William Kibby have asserted general maritime claims against multiple defendants, including BP, for injuries sustained during the clean-up efforts, occurring many days and even months following the explosion of the DEEPWATER HORIZON. Plaintiffs have not asserted *any* claims against BP for losses related to the

---

[6] *See* BP's Notice of Removal, *Kibby v. BP P.L.C., et al.*, 3:12-cv-0102 (S.D. Tex. April 2, 2012) ECF No. 1 at ¶¶ 6-15.

[7] *See* Motion for Stay of Proceedings and Suspension of all Responsive Pleading and Answer Deadlines Pending Transfer by the Judicial Panel on Multidistrict Litigation by Defendants BP Products North America Inc. and BP America Inc, *Kibby v. BP P.L.C., et al.*, 3:12-cv-0102 (S.D. Tex. April 5, 2012) ECF No. 3

DEEPWATER HORIZON explosion or the Macondo well. Contrary to Defendants' claims and 28 U.S.C. § 1407, Plaintiffs' general maritime claims against non-BP defendants have no common questions of fact with those currently pending in the federal MDL. Indeed, Plaintiffs' claims against the non-BP defendants center on their post-explosion negligence and their failure to provide required maintenance and cure. Stated differently, both Plaintiffs, as seamen, are entitled to full maintenance and cure benefits during the pendency of their trial, since such payments are not contingent on any Defendants' liability.[8] Nevertheless, Defendants have denied full payment of such benefits, forcing Plaintiffs to bring this suit. Defendants' improper removal, combined with the denial of their duties to provide proper maintenance and cure benefits, has and will result in serious prejudice to Plaintiffs' legal position and will substantially interfere with their ability to support themselves during the pendency of their litigation. Additionally, discovery and adjudication of the issues surrounding the non-BP defendants may negate the necessity to enter into extensive litigation with BP. As such, transfer of these claims would be an inconvenience for all parties and witnesses and would result in the unjust and inefficient resolution of Plaintiffs' claims.

## III.

## MDL TRANSFER STANDARD

The Judicial Panel for Multidistrict Litigation ("the Panel") may consolidate pretrial proceedings where civil actions pending in different districts contain one or more common questions of fact, for the convenience of parties and witnesses and the just and efficient conduct of such actions. 28 U.S.C. § 1407(a). The conditional transfer order is an administrative act

---

[8] William Kibby's Jones Act employer has denied all maintenance and cure payments. Sergio Valdivieso's Jones Act employer has made partial payments, but continues to improperly delay the award of required payments through various means.

5

"which can be and will be vacated upon the showing of good cause by any party." *In re Grain Shipments*, 319 F. Supp. 533 (J.P.M.L. 1970).

When deciding whether to consolidate actions, the Panel must consider the interest of all plaintiffs and all defendants, and must consider multidistrict litigation as a whole in light of the purposes of section 1407 authorizing transfer. *In re Commonwealth Oil/Tesoro Petroleum Securities Litigation* 458 F.Supp. 225 (J.P.M.L. 1978); *In re Nat. Student Marketing Litigation*, 368 F. Supp. 1311 (J.P.M.L 1972). Where centralization would neither serve the convenience of the parties and witnesses nor further just and efficient conduct of the litigation, transfer is inappropriate. Specifically, where common questions of fact and law are not sufficiently complex, unresolved and/or numerous, or there are alternatives to transfer that could minimize the possibilities of duplicative discovery and/or inconsistent rulings, transfer to an MDL is routinely denied. *See In re Sumatriptan Succinate Patent Litigation*, 381 F. Supp. 2d 1378 (J.P.M.L. 2005); *In re Georgeson Shareholder Communications, Inc.*, 277. F.Supp.2d 1372 (J.P.M.L. 2003); *In re Personalized Media Communications, L.L.C.*, 261 F.Supp.2d 1380 (J.P.M.L. 2003).

Additionally, the Panel may separate any claim and order its remand before the remainder of the action is remanded. 28 U.S.C. § 1407(a); *see AT&T Mobility Wireless Data Services Sales Tax Litigation*, 710 F. Supp. 2d 1378 (J.P.M.L. 2010) (Transfer of action, for inclusion in coordinated or consolidated pretrial proceedings in centralized action alleging that cellular telephone company's collection of particular state and local sales taxes violated the federal Internet Tax Freedom Act (ITFA) prohibition against the imposition of such taxes on internet

6

access, was not warranted, where claims alleged in the action derived entirely from Texas law and did not arise under ITFA).[9]

## IV.

## ARGUMENT & AUTHORITIES

A. **CONSOLIDATION OF PLAINTIFFS' ACTIONS WILL ONLY INCONVENIENCE PARTIES AND WASTE VALUABLE COURT RESOURCES**

Plaintiffs' claims are, at best, only tangentially related to the DEEPWATER HORIZON explosion and the loss of the Macondo Well, such that consolidation of Plaintiffs' claims will severely inconvenience all parties to this action and waste the much-needed resources of the Eastern District of Louisiana and Judge Barbier. The only connection between Plaintiffs' claims and the DEEPWATER HORIZON is the unforeseeable consequence that BP failed to properly supervise the clean-up efforts, which were initiated in response to the oil spill. More importantly, however, Plaintiffs' claims against the non-BP defendants, which make up the majority of Plaintiffs' complaints, have no connection to the DEEPWATER HORIZON whatsoever. Plaintiffs' claims are far removed in time, locale, and causation. Moreover, the issue to be weighed is not whether the claims are similar, but rather whether transfer will aid in the expedition and fair exercise of justice and convenience of the parties and witnesses. *See* 28 U.S.C. § 1407(a). Here, discovery of the unique fact issues in dispute is not made more efficient by a transfer. Indeed, Plaintiffs' claims lack any causal nexus to the DEEPWATER HORIZON explosion, as the crux of the pretrial proceedings in the MDL have been focused on liability

---

[9] Indeed, under newly amended 28 U.S.C. § 1441, the district court is required to sever and remand claims which have been made non-removable by statute, such as Plaintiffs' Jones Act claims.

7

between co-defendants, in a Limitation of Liability trial, on behalf of several non-parties to the Plaintiffs' claims.

As further explained below, Plaintiffs' claims are so unique that there is virtually no overlap between the facts, issues, and liabilities in their cases and the issues presently before the MDL court. Because the MDL court's role in mass litigation is to manage pre-trial proceedings which in the interests of justice and expedience are better served when consolidated with other *similar* claims, the inclusion of these separate claims, which have no common questions of fact or law with the actions presently before the MDL, is not proper under Section 1407.

Attempts to include these two claims, among the thousands of other claims currently pending before Judge Barbier, would serve only as an inconvenience to all parties and the Court, resulting in a waste of valuable judicial resources, currently needed for matters which are properly before Judge Barbier. Defendants seek to misuse Section 1407 as a procedural device for which it was never intended. Based on BP's form removal notice and the obvious lack of removal jurisdiction over these maritime claims, it is clear that BP desires to utilize Section 1407 as a method to *delay* the cases pending against it, so that it can handle each one at BP's own comfortable pace, while *all* remaining cases lie dormant, stayed until further notice. Without regard for common questions of fact, convenience, and the just and efficient resolution of claims, BP's use of Section 1407 contravenes the intent of the statute and deprives Plaintiffs of their constitutional rights to due process, as well as their statutory right to bring and keep these claims in state court.[10]

---

[10] Under the "Saving to Suitors" clause of 28 U.S.C. § 1333, a plaintiff who is asserting a maritime claim can choose either a federal forum or a state forum. 28 U.S.C. § 1333(1) (1949). A defendant is not permitted to remove an action based upon admiralty or maritime jurisdiction alone because to do so would eviscerate the plaintiff's right to choose his forum under the Savings clause. *See Romero v. Int'l Terminal Operating Co.,* 358 U.S. 354, 371-72 (1959),

**B.    CONSOLIDATION OF PLAINTIFFS' ACTIONS WILL HAVE AN UNJUST AND INEFFICIENT EFFECT ON THE CONDUCT OF THIS LITIGATION**

Both *Valdivieso* and *Kibby* are simple maritime claims, limited in scope and the number of parties. Consolidation of these actions with the MDL would have an unjust and inefficient effect on the conduct of this litigation, turning a simple eight month process into an indefinite, complex, and expensive process. Such effects are the antithesis of what multidistrict litigation stands for. These two seamen's cases do not belong in the MDL.

Indeed, if they are combined with MDL 2179, Plaintiffs' claims will become a needle in a haystack, resulting in unjust and inefficient proceedings. While Plaintiffs concede that some tenuous issues of fact exist between the cases before Judge Barbier and the instant actions, these common issues are undisputed, and are of no help to the efficient resolution of Plaintiffs' claims. Instead, the disputed questions of fact are unique to each case and have nothing in common with MDL 2179.

William Kibby is a Jones Act seaman who has filed claims against individuals other than BP. Indeed, the crux of Mr. Kibby's claims center around his employer's failure to provide maintenance and cure, required under the general maritime law, regardless of fault. Such issues are not germane to any issue currently before the MDL, and enforcement of Defendants' maintenance and cure obligations simply has no place in the MDL. As a result, in the face of well-established law which purposely provides a swift avenue of redress for Jones Act seamen to

---

*superseded by statute on other grounds, Miles v. Apex Marine Corp.,* 498 U.S. 19 (1990); *Williams v. M/V SONORA,* 985 F.2d 808, 812 (5th Cir.); *See also* 46 U.S.C. § 30104 (applying laws regulating railway employees to injured seamen, which under 28 U.S.C. 1445(a) are statutorily non-removable).

expeditiously receive relief and medical assistance[11], BP has developed a scheme to delay and block such benefits, for an indefinite period of time. Such actions result in extreme and profound prejudice.

Sergio Valdivieso suffers from a similar situation. While his Jones Act employer has not fully denied his maintenance and cure benefits, his employer is improperly denying claims and requesting unnecessary documentation in order to prevent payment of its legally-mandated maintenance and cure obligations. If included in the MDL, Mr. Valdivieso's rights to maintenance and cure payments from his Jones Act employer are essentially negated, forcing him to wait out the MDL process before a court can hear his specific and unique claims, and order the proper maintenance and cure payments to which Mr. Valdivieso is entitled.

Both Plaintiffs also would suffer from unjust and completely unnecessary inefficiency, in contrast to Texas law provisions, which guarantee Jones Act seamen *expedited* trial settings. *See* TEX. GOV'T CODE § 23.101(a)(5). Clearly, the Texas legislature has recognized the importance of enforcing maritime claims in a speedy and expeditious manner. Indeed, Texas courts routinely grant expedited settings. These claims are typically fully adjudicated within eight to ten months. Thus, if left to follow its own course, Mr. Kibby's claim would likely be resolved no later than October or November of 2012. Likewise, Mr. Valdivieso's claims would be fully adjudicated soon, likely by the end of the year. If forced to proceed under the MDL, Plaintiffs' pretrial proceedings will likely not begin until sometime next year. Meanwhile, Messrs. Valdivieso and Kibby are denied legally-mandated maintenance and cure benefits. Any delay will result in

---

[11]*See* TEX. GOV'T CODE § 23.101(a)(5). ("The trial courts of this state shall regularly and frequently set hearings and trials of pending matters, giving preference to hearings and trials of the following:…claims under the Federal Employers' Liability Act and the Jones Act."). Additionally, seamen are traditionally viewed as wards of the admiralty courts for individuals whose maintenance and cure have been denied by their Jones Act employer. *Vaughan v. Atkinson*, 369 U.S. 527, 531-32 (1962), citing *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528.

10

profound prejudice to each of these plaintiffs. At this point, vacating CTO-49 as it pertains to Plaintiffs' claims would be the most expeditious way for these cases to proceed.

      **C.    THERE ARE NO COMMON QUESTIONS OF FACT REASONABLY IN DISPUTE WHICH WOULD BENEFIT FROM CONSOLIDATED PRE-TRIAL PROCEEDINGS**

It cannot be doubted that multiple common questions of fact and law are pending before Judge Barbier's Court regarding the Oil Spill, so that consolidation under Section 1407 benefits multiple parties with claims against BP. These benefits, however, do not extend to Mr. Valdivieso or Mr. Kibby, as there are no common questions of fact reasonably in dispute between Plaintiffs' actions and those currently before the MDL. Disputed common questions currently before the MDL include: liability for the spill, limitation, exoneration, and fault allocation.[12] But none of these issues are present in *Valdivieso* and *Kibby*.

Further, the MDL court has not reached any issues dealing with the claims of seamen such as the claims alleged by Plaintiffs. Indeed, seamen's claims are not currently a topic to be addressed before the MDL court, and these claims make up the crux of Plaintiffs' disputes.[13] While CMO No. 3, lists "issues pertaining to the efforts by various parties, third parties, and non-parties aimed at containing oil discharged [from the Macondo well]," this hardly provides any clue as to where common issues of fact will occur among those involved in the MDL, nor any indication of when phase three will begin, given that it has taken nearly two years to reach the phase one trial, which will undoubtedly be further burdened by post-trial motions and appeals. Moreover, issues pertaining to the non-BP defendants are highly unlikely to be addressed during phase three, and will therefore remain in limbo until the conclusion of MDL 2179.

---

[12] *See* Case Management Order No. 3, ECF No. 4083 (Sept. 9, 2011).
[13] *See id.*

11

Additionally, the medical benefits class action also before the MDL court provides little help to Plaintiffs' claims, as it does not facilitate an avenue for discovery of Plaintiffs' claims against BP or the non-BP defendants, nor the appropriate recovery. Moreover, the medical monitoring issue related to the exposure to chemical dispersants is intended to establish a resource for injured individuals to obtain medical services at a future date, if and when the exposed individuals experience complications related to exposure, *not currently present* during the immediate lawsuit. Obviously, individuals exposed to these dangerous chemicals who do not currently display symptoms or are not currently exhibiting health problems as a result of exposure to chemical dispersants cannot file suit for hypothetical injuries. The dangerous nature of these chemicals, however, makes it a very real possibility that a majority of individuals exposed to chemical dispersants will at some point in the future exhibit symptoms related to exposure, following the adjudication of claims against Defendants for their role in the DEEPWATER HORIZON explosion.

Contrary to the above-mentioned scenario, Mr. Kibby *currently* exhibits debilitating symptoms related to dispersant exposure. Indeed, extensive records, comprising of logs and spreadsheets, prepared by the medic and other officers or crew workers aboard the Vessel, document the ongoing complaints from acute exposure to chemical dispersants by Mr. Kibby. Thus, Mr. Kibby's claims are not related to the medical monitoring claim in the MDL.

**D. ALTERNATIVE METHODS EXIST TO MINIMIZE DUPLICATIVE DISCOVERY AND/OR INCONSISTENT RULINGS**

Throughout this litigation, BP has consistently relied on the potential of duplicative discovery and/or inconsistent rulings as a reason for the MDL. BP cannot be permitted to use this unlikely scenario as both a sword and a shield, thus permitting it to stay discovery outside of the

MDL and indefinitely within the MDL. Such practice is an unjust abuse of pretrial discovery proceedings and must not be permitted to continue.

Currently, discovery by Plaintiffs' in the MDL is foreclosed by pretrial orders and deadlines imposed by Judge Barbier, and as a result of the pending settlement of the economic and property damages class liability cases. Additionally, Plaintiffs' claims have nothing to do with the issues presently before the MDL Court. Plaintiffs' are not alleging any injuries as a result of the DEEPWATER HORIZON explosion, the oil leaked from the well, or the overall spill. Nor are Plaintiffs seeking any medical monitoring for future symptoms as a result of exposure to chemical dispersants. There can be no increase of duplicative discovery by returning these cases to the transferor court, since there has been no discovery on these issues before Judge Barbier, nor will there be any in the upcoming MDL proceedings. Instead, most discovery conducted so far relates to the pending Limitation of Liability trial, involving the MDL Defendants' attempts to apportion fault among themselves, which is wholly irrelevant to Plaintiffs' claims.

### E. AT THE VERY LEAST, THIS COURT MUST PARTIALLY VACATE THE CTO AS TO PLAINTIFFS' JONES ACT AND RELATED MARITIME CASES PURSUANT TO 28 U.S.C. § 1441 SINCE THEY ARE STATUTORILY NON-REMOVABLE AND MUST BE SEVERED AND REMANDED TO STATE COURT

Alternatively, even if this Court desires to transfer Plaintiffs' claims against BP to the Eastern District of Louisiana for consolidated pre-trial proceedings, it should not allow this case to move into the MDL without vacating the transfer as to Plaintiffs' Jones Act and other maritime-related claims against other defendants, so that the transferor court can sever those maritime claims and remand them to state court. 28 U.S.C. § 1441(c)(2) ("Upon removal of an action described in paragraph (1) [actions which include federal and non-removable state law claims], the district court *shall* sever from the action all claims described in paragraph (1)(B)

13

[non-removable claims] and *shall* remand the severed claims to the State court from which the action was removed") (emphasis added).

Section 1407 expressly provides the Panel with such power to sever claims which do not belong in the MDL. *See* 28 U.S.C. § 1407(a) ("the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded."). It is beyond dispute that Jones Act claims are non-removable, as pleaded in Plaintiff's petition. *See* 46 U.S.C. § 30104 (2008); 28 U.S.C. § 1445(a) (1996).[14] Further, general maritime claims, such as Plaintiff's claims against the non-BP Defendants, do not "arise under" federal law for purposes of federal question removal. *See Walsh,* 836 F. Supp. at 418. Therefore, under newly amended Section 1441, even if this Court transfers Plaintiffs' actions against BP pursuant to Section 1407, this Court should, at the very least, vacate CTO-49 as it pertains to Plaintiffs' non-removable Jones Act claims and related maritime claims, and remand those claims to the transferor courts, so that these courts can then remand them to state court pursuant to Section 1441.

## V.

## **CONCLUSION**

All factors listed under 28 U.S.C. § 1407 militate against transfer of Plaintiffs' actions into the MDL, and the transfer of these claims would be an inconvenience for all parties and witnesses, resulting in the unjust and inefficient resolution of Plaintiffs' claims, for the reasons briefly restated below:

---

[14] *See also Hufnagel,* 182 F.3d at 345.

14

1. Consolidation of Plaintiffs actions with those currently pending in the Eastern District of Louisiana will serve only to inconvenience the parties and waste valuable court resources.

2. The consolidation of Plaintiffs' actions will have a profound, unjust and inefficient effect on the conduct of this litigation and the ultimate adjudication of Plaintiffs' claims.

3. Plaintiffs' cases are materially different from those asserted by the plaintiffs in the Eastern District of Louisiana, and they lack any common question of fact reasonably in dispute which would benefit from consolidated pre-trial proceedings.

4. Vacating the transfer will not increase the likelihood of duplicative discovery or motion practice, since these issues have not and will not be addressed by other parties. Plaintiffs' claims are each unique to their injuries, so there is no risk of inconsistent rulings.

5. Plaintiffs' Jones Act and other maritime related claims are non-removable by statute. Consequently 28 U.S.C. § 1441 requires severance and remand of these claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request this Panel vacate CTO-49 as it relates to the aforementioned Plaintiffs, and remand these cases to the District Court for the Southern District of Texas for further proceedings, as they do not comport with the statutory requirements of Section 1407. In the event this Panel finds that Plaintiffs' claims against BP comport with the maxims of Section 1407, Plaintiffs request that this Court sever and remand Plaintiffs' state law claims, in accordance with 28 U.S.C. § 1407(a).

Respectfully submitted,

THE LANIER LAW FIRM, P.C.

By: _____
W. MARK LANIER

15

                                                      State Bar No. 11934600  
                                                      KEVIN P. PARKER  
                                                      State Bar No. 15494040  
                                                      CHARLES F. HERD, JR.  
                                                      State Bar No. 09504480  
                                                      P.O. Box 691448  
                                                      6810 FM 1960 West (77069)  
                                                      Houston, Texas 77269-1448  
                                                      Telephone: (713) 659-5200  
                                                      Fax: (281) 866-6963  
                                                      cfh@lanierlawfirm.com  

                                                  **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 2nd day of May, 2012, a true and correct copy of the above and foregoing Notice of Opposition to Conditional Transfer Order has been electronically filed with the Judicial Panel on Multidistrict Litigation by using the *CM/ECF* System, by United States first-class postage prepaid mail to the Clerk of the Transferor Court, and by electronic e-mail to the following counsel:

*Attorneys for BP p.l.c., BP Exploration & Production Inc., BP America Inc., and BP Products North America Inc.:*

Thomas W. Taylor
Andrews & Kurth LLP
600 Travis, Suite 4200
Houston, Texas 77002
ttaylor@andrewskurth.com

J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654

*Attorneys for Defendant Eastern Research Group, Inc.:*

Brittani W. Rollen
George C. Haratsis
McDonald Sanders
777 Main Street, Suite 1300
Fort Worth, Texas 76102
gharatsis@mcdonaldlaw.com

*Attorney for Total Safety U.S., Inc.:*

James M. Kimbell
Strasburger & Price, LLP
1401 McKinney Street, Suite 2200
Houston, Texas 77010
james.kimbell@strasburger.com

17

*Attorneys for Subsea 7, LLC:*

Boris A. Hidaglo
Thompson & Knight LLP
333 Clay Street
Suite 3300
Houston, Texas 77002
boris.hidalgo@tklaw.com

*Attorney for Offshore Inland Marine & Oilfield Services Inc.:*

Kelly C. Hartmann
Galloway Johnson
1301 McKinney
Suite 1400
Houston, Texas 77010
khartmann@GJTBS.com

*Clerk of Transferor Court:*

Clerk of Court
Southern District of Texas
Galveston Division
P.O. Drawer 2300
Galveston, Texas 77553

Clerk of Court
Southern District of Texas
Houston Division
David J. Bradley
P. O. Box 61010
Houston, Texas 77208

_____
Charles F. Herd, Jr.