UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf of Mexico, on April 20, 2010, | MDL NO. 2179 |
| This Document Relates To: Civil Action No. 2:13-cv-01286 | SECTION: J |
| | JUDGE BARBIER |
| GULF MARINE INSTITUTE OF TECHNOLOGY, and BIOMARINE TECHNOLOGIES, INC. | MAGISTRATE JUDGE CURRAULT |
| v. | |
| BP AMERICA PRODUCTION COMPANY; ET AL. | |

## AFFIDAVIT OF DR. BARRY A. VITTOR

**MOBILE COUNTY**
**STATE OF ALABAMA**

      **BEFORE ME**, the undersigned notary public came and appeared,

**DR. BARRY A. VITTOR**

who, under oath, stated as follows:

1. I am a person of full age and majority and a resident of Mobile, Alabama. My business address is 8060 Cottage Hill Road, Mobile, Alabama 36695.

2. I hold a Bachelors of Arts degree in Zoology from the University of California, Riverside, which I received in 1966. I hold a Master of Arts degree in Marine Biology from California State University at San Diego, which I received in 1968. I hold a Doctoral degree in Marine Ecology from the University of Oregon, which I received in 1971.

3. I was appointed an Assistant Professor of Marine Science in the University of Alabama Marine Science Program in 1971. I was based at Bayou La Batre, Alabama until 1972, when I assisted in the development of the Dauphin Island Sea Lab. I was promoted to Associate Professor in 1976, then left the University in 1977 and founded Barry A. Vittor & Associates, Inc.

1

**EXHIBIT 5**

4. Barry A. Vittor & Associates, Inc. is an independent environmental research and consulting firm located at 8060 Cottage Hill Road, Mobile, Alabama 36695. My firm offers a variety of services, including Federal and state regulatory permitting and coastal, nearshore and offshore biological monitoring studies.

5. I have assisted in the Federal and state regulatory agency permitting of hundreds of public and private developments throughout the Southeast, including numerous Section 10 permits for offshore construction. In addition, I have conducted assessments of offshore petroleum development impacts on marine fisheries, benthic communities, and protected species in the Gulf of Mexico for clients such as Chevron, BHP-Billiton, Louisiana Offshore Oil Port, Arco, Union Oil, Shell Oil, and others. I have also performed major Gulf of Mexico environmental resource studies for National Oceanic and Atmospheric Administration, U.S. Environmental Protection Agency, U.S. Army Corps of Engineers, and Bureau of Ocean Energy Management. I have attached hereto as Vittor A, a true and correct copy of my March 10, 2021 expert report in this matter, including my *curriculum vitae* and expert witness case list. If called to testify, I would testify in accordance with the contents of my March 10, 2021 report attached hereto as Vittor A.

6. I have read the above and represent that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this May 25, 2021,

_____
Dr. Barry A. Vittor

Sworn to and subscribed before me
this 25 day of May, 2021.

_____
Notary Public

My Commission Expires Aug 21, 2022

2



# BARRY A. VITTOR & ASSOCIATES, INC.

ENVIRONMENTAL RESEARCH & CONSULTING

8060 Cottage Hill Road					Mobile, Alabama 36695

Phone (251) 633-6100     Fax (251) 633-6738

March 10, 2021

Mario de la Garza, Esq.
1616 S. Voss Road, Suite 870
Houston, TX 77057

Subject: BioMarine Technologies, Inc. and Gulf Marine Institute of Technology

Dear Mr. de la Garza:

The accompanying report has been prepared on behalf of BioMarine Technologies, Inc. (BMTI) and Gulf Marine Institute of Technology (GMIT) regarding their claim arising from the BP oil spill event in 2010. The report provides my expert opinions in regard to the status of permitting of BMTI/GMIT's proposed mariculture operation to be located in Federal waters off the coast of Alabama.

My standard rate for consulting services is $160.00/hour; my rate for providing legal depositions and court testimony is $240.00/hour.

Please feel free to call or email me if you have any questions or need any supporting information.

Sincerely,

Barry A. Vittor, PhD
President

**EXHIBIT Vittor A**

**FEDERAL AND STATE REGULATORY PROVISIONS FOR BIOMARINE TECHNOLOGIES, INC./GULF MARINE INSTITUTE OF TECHNOLOGY'S PROPOSED MARICULTURE FACILITY IN THE NORTHEASTERN GULF OF MEXICO**

**INTRODUCTION**

This report has been prepared by Dr. Barry A. Vittor, who has been retained as an expert in Federal and state coastal development regulatory matters by BioMarine Technologies, Inc. (BMTI) and Gulf Marine Institute of Technology, Inc. (GMIT), in regard to a claim arising from the Deepwater Horizon explosion and subsequent oil spill in April 2010. That claim was based on BMTI/GMIT's loss of opportunity to implement its plans for constructing and operating a fish farm in Federal waters in the Gulf of Mexico, due to the oil spill. This report addresses the status of the project at the time of the spill with regard to necessary regulatory permits, and the reasonable basis for BMTI/GMIT's belief that all required permits had in fact been obtained that would allow construction and operation of the farm.

BMTI/GMIT first obtained U.S. Army Corps of Engineers and State of Alabama approvals in 1993 (permit number MD93-01004-M) for construction of its proposed mariculture operation in the northeastern Gulf of Mexico south-southeast of Fort Morgan (Baldwin County, Alabama). As designed, this fish farm was a pioneering effort to raise in open ocean waters a variety of fish species native to the northern Gulf. BMTI/GMIT's permit was modified/extended three times prior to issuance of a new permit in 2003 (MD02-02232-G); that permit was modified in 2004 to provide for relocation of the facility to deeper water off Fort Morgan, and the 2004 permit was renewed in 2008 and again in 2013. In each case, these permits were issued and modified in accordance with regulatory procedures provided in Section 10 of the Rivers and Harbors Act of 1899, including coordination with other Federal agencies, the State of Alabama and local agencies, and other public and private interests. The focus of these coordination efforts involved ensuring that the proposed project was in compliance with other Federal and state statutes and was also in the public interest. The following sections discuss regulatory requirements in place in April 2010, permits held by BMTI/GMIT in April 2010, and the role of National Oceanic Atmospheric Administration (NOAA) in regulating mariculture in Federal waters.

**REGULATORY REQUIREMENTS FOR MARICULTURE OPERATIONS IN THE GULF OF MEXICO**

Prior to April 2010 the only Federal and State of Alabama statutes that applied to mariculture activities in Federal waters of the Gulf of Mexico included Section 10 of the Rivers and Harbors Act of 1899, which required authorization from the U.S. Army Corps of Engineers (USACE) to install or construct mariculture facilities, Section 402 of the Clean Water Act of 1972, which required authorization from the U.S. Environmental Protection Agency (USEPA) for waste discharges under the National Pollutant Discharge Elimination System (NPDES), and the Coastal Zone Management Act of 1972, which required State of Alabama certification that proposed activities in Federal waters would be consistent with

Alabama's coastal zone management plan. There were no regulatory requirements in place at that time, for authorization from NOAA for operation of a commercial mariculture operation.

The processes through which BMTI/GMIT's construction and operations permit applications were assessed were very comprehensive and thorough and extended over many years of agency review. In his August 10, 2004 information transmittal letter to NOAA/National Marine Fisheries Service (NMFS) and the USEPA, Larry Godwin (USACE Regulatory Branch Project Manager) cited eleven years of regulatory review of the proposed mariculture development, which culminated in Findings of No Significant Impact. The USEPA itself conducted extensive assessments of potential environmental impacts of the BMTI/GMIT fish farm in its review of each application for a National Pollutant Discharge Elimination System (NPDES) permit and concluded that the facility would have no significant adverse impact on water quality or other environmental resources. All of these numerous reviews represented extensive coordination with cognizant local, state, and Federal agencies as well as with interested stakeholders and non-governmental organizations and addressed water and sediment quality, nutrient enrichment, benthic and pelagic biota, potential for fish escape, effects on natural fisheries, protected species effects, facility constructability and maintenance, personnel access and vessel operations, harvesting methods, potential for storm damage, and facility safety and security.

## PERMITS HELD BY BIOMARINE TECHNOLOGIES, INC. (BMTI)/GULF MARINE INSTITUTE OF TECHNOLOGY, INC. (GMIT) IN APRIL 2010

At the time of the BP oil spill in April 2010, BMTI/GMIT had secured all permits required to construct and operate a commercial mariculture operation in Federal waters off the coast of Alabama. This included the Section 10 permit issued by the USACE in 2008, the National Pollutant Discharge Elimination System (NPDES) permit issued by the USEPA in 2008, and certification of coastal consistency issued by the State of Alabama (Alabama Department of Environmental Management) in 2008. Although BMTI/GMIT had applied to NOAA for an Exempted Fishing Permit (EFP) as requested by the USACE, NOAA denied that application in 2008 on the basis that the application did not include "appropriate justification for issuance of an EFP." The Magnuson-Stevens Fishery Conservation and Management Act of 1976 (MSA) provided for issuance of an EFP for "limited testing, public display, data collection, exploratory, health and safety, environmental cleanup, and/or hazardous removal purposes, the target or incidental harvest of species managed under an FMP or fishery regulations that would otherwise be prohibited." The proposed project represented a commercial mariculture operation that was not "otherwise prohibited" nor did it involve any of the cited activities that would justify an EFP.

## REGULATORY AUTHORITY OF NATIONAL OCEANIC ATMOSPHERIC ADMINISTRATION (NOAA) WITH REGARD TO MARICULTURE ACTIVITIES IN THE GULF OF MEXICO

NOAA has oversight authority over implementation of the MSA, and has delegated that

responsibility to the National Marine Fisheries Service (NMFS). The MSA was structured to provide for management of native fishery stocks to result in sustainable fishery production. This included provisions for managing harvest methods and levels for commercially important species of wild populations of finfish and shellfish, as well as for protecting Essential Fish Habitat (EFH) for managed species. The MSA included no provision for managing or regulating mariculture activities that involved endemic fish species; furthermore, the absence of any such regulatory authority prior to April 2010 was evident in NOAA's June 2008 letter to Dr. Phillip Lee, Director and Chief Biologist at BMTI/GMIT, in which Dr. Roy E. Crabtree, Regional Administrator of NMFS stated that "The (Gulf of Mexico Fishery Management) Council is currently developing an amendment to establish a regulatory scheme for managing offshore aquaculture in federal waters of the Gulf of Mexico." In January 2009, the Council issued an aquaculture fishery management plan that addressed all managed species other than corals or shrimps in waters for which it had jurisdiction. However, NOAA declined to either approve or deny this plan and it had no regulatory effect until 2013, when NOAA finalized its national aquaculture policy and indicated that it would issue regulations implementing that policy. In fact, it wasn't until 2016 that such regulations were issued in NOAA's Final Rule. The Final Rule was struck down by the U.S. District Court for the Eastern District of Louisiana in September 2018 and that decision was affirmed by the Fifth Circuit Court in August 2020. NOAA never had authority under MSA to regulate BMTI/GMIT's planned mariculture activities in Federal waters.

## DOCUMENTS USED IN PREPARING THE OPINIONS EXPRESSED IN THIS REPORT

- Clean Water Act of 1972; Section 402, National Pollutant Discharge Elimination System
- Coastal Zone Management Act of 1972 and Alabama Coastal Area Management Program, 1979
- Magnuson-Stevens Fishery Conservation and Management Act of 1976.
- Department of Defense, Regulatory Programs of the Corps of Engineers, 1982; Section 10 of the Rivers & Harbors Act of 1899
- Department of the Army, Final Permit Number AL93-01004-M; Sea Pride Industries, Inc. (Gulf Marine Institute of Technology); November 3, 1993
- Mod. Number 3 to Department of the Army Permit Number MD93-01004-M; October 2, 1996
- Mod. Number 4 to Department of the Army Permit Number MD93-01004-M; April 27, 1999
- U.S. Environmental Protection Agency Region IV, NPDES Permit Number AL0067237; BioMarine Technologies, Inc. and Affiliates; December 6, 2001
- Alabama Department of Environmental Management, Coastal Section Letter to Mobile District Corps of Engineers; June 18, 2002
- Alabama Department of Environmental Management coastal zone management certification for Permit Number MD02-02232-G; October 29, 2002

- Department of the Army, Final Permit Number MD02-02232-G; BioMarine Technologies, Inc./Gulf Marine Institute of Technology; September 9, 2003
- Department of the Army, Mobile District Corps of Engineers letter to Gulf of Mexico Fishery Management Council; February 4, 2004
- Alabama Department of Environmental Management modified coastal consistency certification to Federal Section 10 Permit MD02-02232-G-Mod. 1; March 15, 2004
- Mod. Number 1 to Department of the Army Permit Number MD02-02232-G; July 29, 2004
- Department of the Army, Mobile District Corps of Engineers transmittal letter to NMFS, USEPA, and Dr. Ed Cake with executive summary of the regulatory process for Permit Number MD02-02232-G; August 30, 2004
- U.S. Environmental Protection Agency Region IV, Final Issuance of NPDES Permit No. AL0067237; BioMarine Technologies, Inc./Gulf Marine Institute of Technology; February 25, 2008
- U.S. Department of Commerce, National Oceanographic and Atmospheric Administration, National Marine Fisheries Service letter to BioMarine Technologies, Inc.; June 3, 2008
- Mod. Number 2 to Department of the Army Permit Number SAM-2002-2232-MBM; June 23, 2008
- Emmett Environmental Law & Policy Clinic/Environmental Law Institute/The Ocean Foundation; Offshore Aquaculture Regulation Under the Magnuson-Stevens Act; June, 2013
- U.S. District Court for the Eastern District of Louisiana, Civil Action No. 16-1271; Gulf Fishermens Association et al. vs National Marine Fisheries Service et al.; September 24, 2018
- U.S. District Court of Appeals for the Fifth Circuit, Case No. 19-30006; Gulf Fishermens Association et al. vs National Marine Fisheries Service et al.; August 3, 2020
- Depositions of John D. Ericsson, Gulf Breeze, Florida; February 18-19, 2021

**QUALIFICATIONS OF DR. BARRY A. VITTOR**

<u>Educational Background</u>

Bachelor of Arts degree in Zoology: University of California, Riverside; June, 1966.
Master of Arts degree in Marine Biology: California State University at San Diego, August, 1968; Dr. Richard Ford, Advisor.
Doctoral degree in Marine Ecology: University of Oregon; September, 1971; Dr. Peter W. Frank, Advisor.

<u>Honors</u>

University of California Regents Scholar, 1962-66
Membership in Society of the Sigma Xi, 1971-

**Professional Experience**

Dr. Vittor's principal areas of research have involved benthic ecology and coastal wetlands. He has conducted extensive studies of the effects of petroleum developments and channel dredging on marine and estuarine biota, water quality, and sediments, as well as the potential beneficial uses of dredged material for coastal marsh restoration. He also is recognized as an expert in the taxonomy of benthic polychaetous annelids, which comprise a critical component of estuarine and marine bottom-dwelling biota.

Since the inception of Vittor & Associates, Dr. Vittor has managed numerous investigations of biological resources and sediments at ocean dredged material disposal sites for the U.S. EPA and U. S. Army Corps of Engineers. He has provided numerous clients with assistance in pursuing Federal permits for activities such as offshore petroleum exploratory and production drilling, installations of petroleum production platforms and pipelines, sand borrow for beach renourishment, navigation channel construction and maintenance dredging, and sub-bottom utility installations. He has also been involved in studying the toxicity of sediments and effluents to a wide variety of aquatic and marine organisms. This work has focused especially on bioassay, bioaccumulation and risk assessment of dredged material in inland and coastal waters.

Dr. Vittor has worked for years with wetlands delineation, restoration and management and threatened/endangered species, and has assisted in regulatory agency permitting of hundreds of public and private developments throughout the Southeast. He has managed numerous wetland mitigation design and implementation projects, including supervision and monitoring of wetland mitigation banks in Mississippi and Alabama.

As a Director of the Alabama Coastal Foundation, and a member of the Mobile Bay National Estuary Program Management Committee, he has been very active in coastal resource management. As President and Senior Scientist at Vittor & Associates, Dr. Vittor has responsibility for planning and coordination of a wide range of environmental programs, including wetlands assessments, ecological restoration, toxicity studies, water quality monitoring, resource characterization and management, and long-range planning for dredged material disposal.

Dr. Vittor has managed numerous major environmental projects, including the following selected programs:

-Program Manager, Environmental services task order contract for New York District, U.S. Army Corps of Engineers.

-Program Manager for a task order contract for environmental services required by the Coastal Ecology Section of the U.S. Army Corps of Engineers Waterways Experiment Station.

-Program Manager for preparation of a guidance document for ecological parameters in environmental restoration, for U.S. Army Corps of Engineers Waterways Experiment Station.

-Program Manager for monitoring program implementation for wetland mitigation banks in Jackson and George Counties, MS for Wetland Solutions, Inc.

-Program Manager for dredged material sampling, chemical analysis and bioassay/ bioaccumulation testing for Port Canaveral, Florida/Gee & Jenson.

-Program Manager for evaluation of dredged material from Brunswick Harbor, Georgia for ocean disposal, and Section 103 report preparation, for Savannah District, U.S. Army Corps of Engineers.

-Program Manager for benthic community analysis of the New York mud dump, for U.S. EPA/Battelle.

-Program Manager for benthic macroinfauana and Sediment Profile Imagery (SPI) surveys of New York Harbor, for the New York District, U.S. Army Corps of Engineers.

-Program Manager for dredged material bioassays for San Juan Harbor, Puerto Rico and Miami River, Florida.

-Project Manager for ecological risk assessment at the THAN Superfund site at Montgomery, Alabama.

-Project Manager for wetland delineation and permitting for a 250-acre port development in Mobile Bay, Alabama; including EIS preparation and creation of a 50-acre tidal marsh, for North American Gulf Terminals, Inc.

-Program Manager for wetland permitting and mitigation, and Section 7 consultation (Endangered Species Act) for a natural gas liquids pipeline in coastal Alabama and Mississippi for Koch Pipeline Southeast.

-Program Manager for wetland permitting and mitigation, and Section 7 consultation (Endangered Species Act) for a proposed steel mill, Mobile County, AL for IPSCO Steel, Inc.

-Program Manager for assessment of water quality and biological effects of offshore gas pipeline construction, and Section 10 permitting, for several major producers in the northeastern Gulf of Mexico.

-Project Manager for monitoring of potential impacts of drilling mud discharges on hardbottom biota and essential fish habitat in the Destin Dome area, for Chevron U.S.A.

-Project Manager for coastal and deep sea benthic community impact studies related to the Deepwater Horizon oil spill event, with Cardno-Entrix, for BP.

-Program Manager for environmental assessments of potential hydrocarbon exploration and development impacts on water and sediment quality, protected species, and essential fish habitat in Desoto Canyon and Green Canyon (Gulf of Mexico), for BHP Billiton.

-Program Manager for the Biological Monitoring Program for evaluation of wastewater treatment plant effluent impacts in St. Andrew Bay (Florida), for Bay County Utilities.

***Professional Society Memberships:***

Society of Wetland Scientists
Society of Sigma Xi

***Relevant Scientific Publications and Reports Since 2011:***

2012. Site Specific Environmental Impact Analysis for the Sake Prospect, Desoto Canyon Block 726. Prepared for BHP Billiton Petroleum, Inc.

2012. Site Specific Environmental Analysis for the Ness Deep Prospect, Green Canyon Block 507. Prepared for BHP Billiton Petroleum, Inc.

2017. Coastal Habitats of the Gulf of Mexico. Chapter 6 in Habitats and Biota of the Gulf of Mexico: Before the Deepwater Horizon Oil Spill. Co-Author with I.A. Mendelssohn, M.R. Byrnes, and R.T. Kneib. Springer Publ.

> 200 Professional Presentations and Reports since 1971.

## Expert Witness Testimony

1972  Accepted as expert witness in estuarine ecology, in Baldwin County (Alabama) District Court, regarding impacts of shell dredging on Mobile Bay; for Alabama State Attorney General.

1980  Accepted as expert witness in estuarine ecology, in U.S. Federal Court, Mobile, regarding impacts of reconstruction of the Dauphin Island bridge; for Alabama Highway Department and Federal Highway Administration.

1981  Accepted as expert witness in marine and estuarine ecology in U.S. Federal Court, New Orleans, regarding impacts of brine discharge on biological resources of coastal Louisiana; for State of Louisiana Department of Natural Resources.

1986, 1989  Accepted as expert witness in estuarine ecology in Alabama adjudicatory hearings, regarding impacts of drilling waste discharges in offshore state waters; for Shell Offshore, Inc.

1989  Expert witness in estuarine ecology, in deposition regarding impacts of paper mill discharges on Perdido Bay (Alabama and Florida); for Perdido Bay Environmental Association.

1991  Expert witness in wetlands permitting, in deposition regarding likelihood of obtaining dredge/fill permit; for private landowner, Mobile, Alabama.

1991  Accepted as expert witness in State Court (Montgomery, Alabama), regarding oyster reef biology; for South Alabama Seafood Association.

1991  Expert witness on wetlands permitting, in deposition (and pending court hearing) regarding permit approval and alternatives in Harrison County, Mississippi; for U.S. Department of Justice.

1992-1993  Advisor to legal team defending litigation over impacts of historic effluent discharge from Bay County Utilities into St. Andrew Bay, on benthic organisms and sediment quality; for Bay County Utilities and Stone Container.

1992-1993  Expert witness in water quality and biological effects of sediment dispersion in Mobile Bay, during gas pipeline construction; for Exxon Company, U.S.A.

1994  Expert witness in water quality implications of stormwater runoff onto adjoining property; for landowner in Mobile County.

1996  Expert witness in wetlands permitting and mitigation, in Federal court hearing; for City of Mobile.

1997  Expert witness regarding wetlands permitting and mitigation, and estuarine ecosystem impacts in St. Louis Bay, Mississippi, before the Mississippi Commission on on Environmental Quality; for Pine Hills Development Corporation.

1996  Expert Witness regarding wetland permitting and restoration concerning a temporary gas well access road in Mobile County, Alabama, for The Offshore Group.

1996   Expert witness in a State of Indiana adjudicatory hearing regarding water quality and biological impacts of dredging and construction in the Ohio River; for RDI/Caesars.

1999-2005 Expert witness in wetlands permitting, in Mobile County Probate Court; for Dr. George Inge.

1996  Expert witness in estuarine water and sediment quality issues, in Baldwin County Circuit Court; for James Boothe.

2003  Expert witness in wetland delineation, development, and permitting, in Baldwin County Circuit Court, for Marion Uter.

2005-2006  Expert witness regarding oyster reef ecology and mapping, in Mobile County Circuit Court, for Allen Lee and Chris Zirlott.

2005-2006 Expert witness regarding wetland and benthic ecology in relation to stream siltation, in Mobile County Circuit Court, for Bredero-Shaw.

2009 Expert witness (deposition) regarding dredging impacts and tidal creek restoration in Deer River (Mobile County) for Millard Refrigerated Services.

2007-2013  Expert witness (U.S. District Court for the Southern District of AL) and consultant in regard to wetland impacts associated with forestry practices in Baldwin County, Alabama; for Hamilton Smith.

Submitted By: _Barry A. Vittor_ (signature)   Date: _March 10, 2021_