UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL 2179 |
| PERTAINS TO  : <br> *Fin & Feather, LLC v. BP, plc, et al.*, **16-6118** <br> *Fin & Feather Adventures, LLC v. BP, plc, et al.*, **16-6126** <br> *Fin & Feather Cabins, LLC v. BP, plc, et al.*, **16-6131** | SECTION J-1 |

### FIN & FEATHER'S MEMORANDUM IN SUPPORT OF MOTION TO SEAL

On May 27, 2021, Defendants BP Exploration & Production, Inc. and BP America Production Company (collectively "BP") filed a Motion for Leave to File Certain Documents under Seal in Connection (Rec. Doc. 27125) with the Motion for Summary Judgment they filed related to the above-referenced cases on the same date. In its Motion to Seal, BP sought leave to file tax returns from the years 2007 to 2012 of the above-referenced entities, reservation calendars from 2007 through 2010 and 2012, and portions of records related to boat shed rentals on Plaintiffs' property. *See* Exhibits 2 through 14 and 16 through 22, which have already been forwarded to the Court by BP. Additionally, BP also sought to file references or quotes from the confidential exhibits in its Motion and associated Statement of Uncontested Material Facts in Support of its Motion for Summary Judgment.

1

Subsequently, on May 28, 2021, this Court granted BP's motion. Rec. Doc. 27127. On the same date, this Court issued an Order that Plaintiffs file a Motion to Seal providing justification as to why these documents should be filed under seal and that the failure to do so would result in the documents being filed publicly. Rec. Doc. 27128. Therefore, in accordance with this Court's May 28, 2021 Order, Plaintiffs submit this Memorandum in Support of Motion to Seal to provide justification as to why certain documents should be maintained under seal.

**I.   BACKGROUND**

This case arises from claims made by the Fin & Feather entities against BP seeking compensation for damages that resulted to their businesses as a result of the DEEPWATER HORIZON oil spill in April 2010. The Fin & Feather entities are all owned by Kirk and Denise Prest, who are lifelong residents of Plaquemines Parish. The Prests operate Fin & Feather via three separate limited liability companies: (1) Fin & Feather, LLC; (2) Fin & Feather Cabins, LLC, and (3) Fin & Feather Adventures, LLC. These three LLCs are collectively referred to herein as Fin & Feather, unless otherwise indicated. Fin and Feather, LLC was the first phase of the business that was established in 2004. Fin and Feather operates 39 boat storage sheds (26 are 40-feet in depth and 12 are 52-feet in depth). Additionally, Fin and Feather owns 2 cabins that are rented to clients. Fin and Feather Cabins, LLC owns eight cabins that are operated by the Prests. These cabins are also rented out to clients. Finally, the Prests operated guided tours through Fin & Feather Adventures, LLC. For the purposes of this motion, these entities are collectively referred to as "Fin & Feather."

2

Since 2004, Fin & Feather has catered to recreational anglers and sport fisherman seeking to fish and hunt in the heart of Louisiana's Sportsman's Paradise. Fin & Feather is located on Highway 23 in Boothville, Louisiana, which provides clients easy access to the inshore waters of the Barataria Basin and the areas around Barataria Bay. Fin & Feather clients are mostly from Louisiana, Mississippi, Florida, and Texas. They also have local clients who store their own boats in the Fin & Feather boat storage rental units and/or stay in cabins operated by the Prests on the premises. For the purposes of this motion, it is noteworthy that the Prests are not public figures and they have pursued this litigation after the BP oil spill has caused extensive damage to the marine life that made their facility a prime location for avid sportsman before the spill.

## II.     LAW AND ARGUMENT

This Court has directed the parties to the Fifth Circuit's recent decision in *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418–19 (5th Cir. 2021), which provides a detailed explanation for the working presumption that judicial records should <u>not</u> be sealed and the trial court's role in protecting the public's right of access to judicial proceedings. Recognizing two standards that apply, the Fifth Circuit wrote:

> In our view, courts should be ungenerous with their discretion to seal judicial records, which plays out in two legal standards relevant here. The first standard, requiring only "good cause," applies to protective orders sealing documents produced in discovery. The second standard, a stricter balancing test, applies "[o]nce a document is filed on the public record" — *when a document "becomes a 'judicial record.'*

Accordingly, in cases concerning protective orders sealing documents produced in discovery, the trial court's standard of review is "good cause." The Fifth Circuit addressed the stricter standard that applies when a document becomes a judicial record in *In Bradley on*

3

*behalf of AJW v. Acka*l, 954 F.3d 216, 224–25 (5th Cir. 2020), when it wrote:

> "In exercising its discretion to seal judicial records, the court must balance the public's common law right of access against the interests favoring nondisclosure." *Van Waeyenberghe,* 990 F.2d at 848. But, " '[t]he presumption however gauged in favor of public access to judicial records[ ]' [is] one of the interests to be weighed on the [public's] 'side of the scales.' " *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 434 (5th Cir. Unit A Aug. 1981) (quoting Nixon, 435 U.S. at 602, 98 S.Ct. 1306); *see also Van Waeyenberghe*, 990 F.2d at 848 n.4 (same).5 The "relevant facts and circumstances of the particular case" inform the factors that a court weighs on both sides. Belo Broadcasting Corp., 654 F.2d at 430 (quoting Nixon, 435 U.S. at 599, 98 S.Ct. 1306).

In the same case, the Fifth Circuit noted that the public's common law right of access is not absolute, and the "common law merely establishes a presumption of public access to judicial records." 954 F.3d at 225 c*iting Van Waeyenberghe,* 990 F.2d at 848. Moreover, the Fifth Circuit recognized that it has not assigned a particular weight to the presumption, nor has it interpreted the presumption in favor of access as creating a burden of proof. *Id.* at 848 n.4., *citing Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 454 (5th Cir. 2019).

In *Vantage Health Plan, Inc.* the Fifth Circuit recognized that "[t]he decision whether to allow public access to court records 'is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.'" Citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599, 98 S.Ct. 1306, 1312–13, 55 L.Ed.2d 570 (1978). Finally, in *Cruz v. City of Hammond*, No. CIV.A. 09-6304, 2015 WL 1525758, at *2 (E.D. La. Apr. 2, 2015), Judge Wilkinson wrote

> Public concerns are especially significant when considering whether to prevent disclosure of litigation matters that involve a government party. "The public's interest is particularly legitimate and important where ... at least one of the parties to the action is a public entity or official." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 784 (3d Cir.1994); accord Arnold v. Pa. Dep't of Transp., 477 F.3d 105, 111 (3d Cir.2007) (*citing Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir.2005)); *Marcus*, 1997 WL 313418, at 5. Moreover, "privacy interests

4

> are diminished when the party seeking protection is a public person subject to legitimate public scrutiny. [T]he public has a substantial interest in the integrity or lack of integrity of those who serve them in public office.' " *Pansy*, 23 F.3d at 787 (quotation and citation omitted); *accord Marcus*, 1997 WL 313418, at *5.

In short, the present motion requires this court to exercise its sound discretion in light of the relevant facts and circumstances of this case.

The documents that Plaintiffs seek to file under seal were business records that were produced by Plaintiffs to BP in support of its claims in this litigation. The documents that Plaintiffs seek to protect under seal fall under three categories: (1) tax returns for the related entities for the time period from 2007 through 2012 (Exhibits 2-4, 6-8, 16-17, and 19-22); (2) reservation calendars for the time period from 2007 through 2010 and 2012 (Exhibits 9-14, and 18); and (3) records related to boat shed rentals on Plaintiffs' property (Exhibit 5). The following outlines the Plaintiffs' considerations for keeping these documents under seal and details how such interest outweighs the public's right of access to judicial documents.

### A. Fin & Feather Tax Records

By statute, federal tax "[r]eturns and return information shall be confidential," and, except under circumstances not relevant here, "no officer or employee of the United States . . . shall disclose any return or return information . . . ." 26 U.S.C. § 6013(a). This statute "reflects the strong public interest in safeguarding the confidentiality of tax return information" and "prioritizes the confidentiality" thereof. *United States v. Tillman*, No. 07 Cr. 1209(LTS), 2009 WL 976818, at *3-4 (S.D.N.Y. Apr. 6, 2009). "[T]he presumption of public access to Court files is [thus] outweighed by [a party]'s interest in privacy in his [or her] tax records." *Carbajal v. Warner*, 581 F. App'x 759, 764 2014 WL 2110027, at *4 (10th Cir. 2014) (internal quotation

5

marks omitted); cf. FED. R. CIV. P. 5.2(a)(1) (requiring redaction of all but final four digits of individual taxpayer-identification number). Accordingly, numerous courts have found that good cause exists to seal tax returns from public disclosure. *See Carbajal*, 581 F. App'x at 764; *Tillman*, 2009 WL 976818, at *3-4, *Ross v. Bar None Enters., Inc.*, No. 2:13-CV-00234-KJM-KJN, p. 4 (E.D. Cal. Jun. 12, 2014).

Tax returns, by their nature, are considered private information that are treated as protected and confidential records. In the present-day environment, the necessity of maintaining the privacy of personal records has been heightened because of the digital nature of our records. Until relatively recent times, filing court records in the public record was not considered a high-risk activity because they were afforded privacy by obscurity due to the difficulty that it was to obtain copies of physical papers. Now, however, due to the digital nature of documents and the ease of accessing them, it is a straightforward process to obtain copies of court records via PACER. Furthermore, projects like RECAP operated by the Free Law project, scrape the PACER system and make documents freely available to the general public.

The availability of such projects and advances in computer technology now make it easy for these records to be searched in mass for certain patterns or identities, such that programmers can write scripts that will simply search the PACER/RECAP records for tax documents. Thereafter, these documents can be used to facilitate identify theft and/or fraudulent tax filings such that Fin & Feather has a compelling interest to maintain its tax filings that far outweighs the public's right to access. Notably, the records that have been provided under seal to the court have a multitude of personally-identifying information,

6

including social security numbers and other personally-identifying information. Given the nature of BP's Motion for Summary Judgment, Fin & Feather submits that there is no viable public interest that would be served by filing their tax returns publicly. Accordingly, Fin & Feather urges this Court to order that the Clerk of Court maintain Exhibits 2-4, 6-8, 16-17, and 19-22 under seal.

### B. Fin & Feather Reservation Calendars

Fin & Feather does not object to the filing of its reservation calendars as long as Plaintiffs are permitted to redact the documents that will be filed publicly to only show the first name of the clients thereon. Fin & Feather submits that redacting all other identifying information will serve two important purposes. First, as an innkeeper, Fin & Feather's clients have a reasonable expectation that their information will not be disclosed publicly. If released in the current form, there are many full names, physical and/or email addresses, and phone numbers of third parties to this litigation that will be filed in the public record. These records, associate those names with being in a certain location on a certain date. Fin & Feather has a strong interest in protecting the privacy of its clients by preventing such information from being released publicly—especially when considering that such persons are not parties to this dispute.

Similarly, Fin & Feather has long-term clients, including many business clients who still entertain their own clientele at Fin & Feather on a regular basis. Any entity that serves outdoorsman, if sufficiently motivated, could access the Fin & Feather calendars to identify repeat customers and target advertisements and efforts to persuade them to try other locations. In short, in addition to containing private information of third parties, the

7

reservation calendars are a source of Fin & Feather's competitive and/or trade secret information. The 5th Circuit has acknowledged that competitive harm is a sufficient reason to enter a protective order prohibiting disclosure of confidential information. *See United States v. United Fruit Co.*, 410 F.2d 553, 557 n. 11 (5 Cir. 1969) (holding confidential and commercially sensitive marketing plans of a company protected from disclosure).

Notwithstanding the foregoing, Fin & Feather recognizes that the public may have interest is seeing its reservation calendars. In that regard, it asks this Court to afford them the opportunity to review and redact those portions of the calendar that contain any personally identifying information beyond a client's first name. Although the redactions may be substantial, the public will be able to review them and obtain a genuine understanding of their contents. Accordingly, Fin & Feather urges this Court to provide them two weeks (or 14 days) to provide the Court with redacted copies of reservation calendars for the time period from 2007 through 2010 and 2012 (Exhibits 9-14, and 18) so that they may be filed in the record and to maintain the current copies filed under seal.

### C. Fin & Feather Boat Shed Rentals

BP has filed an unredacted and redacted version of its records related to boat shed rentals on Plaintiffs' property (Exhibit 5). The redacted version does not contain any of Fin & Feather's client names or other personally-identifying information and Fin & Feather does not seek to seal the redacted version that is in the record. Fin & Feather, however, urges this Court to keep the unredacted version of Exhibit 5 under seal for the same reasons that it seeks to seal the reservation calendars. Accordingly, Fin & Feather urges this Court to order that the Clerk of Court maintain Exhibit 5 under seal.

8

**III.   CONCLUSION**

Plaintiffs' interest in privacy of their tax records outweigh the presumption of public access to court files under the circumstances of this case. Furthermore, the Plaintiffs submit that the reservation calendars contain identifying information of their customers (third parties to the present litigation) and that filing such information in the public record would both violate the reasonable expectation of their customers' privacy and also result in competitive harm for the reasons detailed herein.

Although there is presumption that judicial records should not be sealed, Fin & Feather has compelling reasons to protect its own privacy interests, those of its customers, and its trade secret information. Plaintiffs do not ask this Court to seal the information referenced from the tax returns and reservation calendars in BP's Statement of Undisputed Material Facts and Memorandum in Support, such that the public will still have access to, and an understanding of, the issues presented to this Court by BP's Motion for Summary Judgment. Inasmuch, Fin & Feather urges this Court to seal the records requested herein.

Respectfully submitted,

*/s/ Stephen Kreller*
Stephen Skelly Kreller (Bar No. 28440)
757 Saint Charles Avenue, Suite 301
New Orleans, Louisiana 70130
T: (504) 484-3488
F: (888) 294-6091
E: ssk@krellerlaw.com

- and -

9

*s/Al J. Robert, Jr.*
Al J. Robert, Jr., Bar No. 29401
**AL J. ROBERT, JR., LLC**
757 St. Charles Avenue, Suite 301
New Orleans, Louisiana 70130
504.309.4852
ajr@ajrobert.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I, Stephen Kreller, hereby certify that on this June 4, 2021, I emailed the foregoing to all counsel of record.

*/s/ Stephen Kreller*
Stephen Skelly Kreller

10