# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | **MDL NO. 2179**<br><br>**SECTION J(2)** |
| | * | |
| **This Document relates to:** | * | **HONORABLE CARL J. BARBIER** |
| ***Gulf Marine Institute of Technology and*** | * | |
| ***BioMarine Technologies, Inc. vs.*** | * | **MAGISTRATE JUDGE CURRAULT** |
| ***BP America Production Company and BP*** | * | |
| ***Exploration & Production Inc. et al.,*** | * | |
| ***Case No. 2:13-cv -01286-CJB-DPC*** | * | |

## BP'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT[1]

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
Kristopher S. Ritter
(kristopher.ritter@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000

Christopher W. Keegan
(chris.keegan@kirkland.com)
Anna Terteryan
(anna.terteryan@kirkland.com)
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

R. Keith Jarrett (Bar # 16984)
Devin Reid (Bar # 32645)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

**ATTORNEYS FOR BP AMERICA PRODUCTION COMPANY, BP EXPLORATION & PRODUCTION, INC., AND BP P.L.C.**

---

[1]    Having determined that service was waived for BP P.l.c., BP P.l.c. also joins in this motion for summary judgment and this reply, and is incorporated in the definition of "BP" in these filings.  Capitalized terms used but not otherwise defined herein shall have the meaning set forth in BP's Memorandum of Law in Support of its Motion for Summary Judgment (Rec. Doc. 27078) (the "Motion").

## <u>TABLE OF CONTENTS</u>

Page

**INTRODUCTION**................................................................................................................1

**ARGUMENT**......................................................................................................................1

**I.     PLAINTIFFS HAVE THE BURDEN TO SHOW A TRIABLE ISSUE OF FACT**...........................................................................................................................1

**II.    BP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' OPA CLAIMS**..................................................................................................................3

      A.     Plaintiffs Cannot Prove That the Spill Caused Their Losses....................................3

          1.     Plaintiffs Cannot Show That the Spill Caused *Their* Losses......................3

          2.     Plaintiffs Admit That They Faced Regulatory Uncertainty.........................4

          3.     Plaintiffs Lacked Financing to Start Their Proposed Business...................5

          4.     Plaintiffs Failed to Mitigate Their Losses Following the Spill...................7

      B.     Plaintiffs Cannot Prove Damages to a Reasonable Certainty....................................7

          1.     Plaintiffs Cannot Recover Under OPA § 2702(b)(2)(B). ..........................7

          2.     Lost Profits Cannot Be Calculated to A Reasonable Certainty. .................8

          3.     Gulf Marine Cannot Show a Financial Stake in the FlorAbama Project. ........................................................................................................9

**III.   PLAINTIFFS' MARITIME LAW CLAIMS ARE MERITLESS. ...........................10**

**CONCLUSION** .................................................................................................................10

i

## INTRODUCTION

Plaintiffs' opposition brief ("Opposition") raises no triable issue of material fact.  If anything, it confirms that this litigation is founded solely on conjecture and unsupported allegations.  Plaintiffs incorrectly argue that they had the regulatory authorizations necessary to launch.  They ignore the undisputed uncertainty as to the legality of their proposed venture, given that NOAA had rejected their permit application and was engaged in rulemaking for precisely such operations.  Plaintiffs admit they lacked the financing to launch their business, and had no binding commitments for those necessary funds as of the Spill.  And, although Plaintiffs claim that they can prove damages through expert opinion, no expert can calculate non-speculative damages given the undisputed uncertainty about what might have happened had Plaintiffs attempted to launch a business that had never operated and had no comparable in the United States.  Plaintiffs have no claims for property damage under OPA, as they admit none of their property was oiled and they did not "own or lease" any federal waters.  Finally, to the extent Plaintiffs claim their assets lost value, they point to no evidence showing any purported losses were realized.  In short, Plaintiffs cannot show that the Spill caused the failure of the FlorAbama Project and cannot quantify damages to a reasonable certainty.  Plaintiffs' maritime claims are barred because none of their property was oiled and their non-operational fish farm does not satisfy the commercial fisherman exception; and their state law claims are preempted by OPA.  Summary judgment is warranted.

## ARGUMENT

## I.    PLAINTIFFS HAVE THE BURDEN TO SHOW A TRIABLE ISSUE OF FACT.

"On summary judgment, once the moving party establishes that there are no factual issues, the burden shifts to the nonmoving party to produce evidence that a genuine issue of material fact exists for trial.  The nonmoving party must then 'go beyond the pleadings,' and by affidavits or other competent summary judgment evidence cite 'specific facts' that show there is a genuine issue

for trial." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (same).   "[C]onclusory allegations, improbable inferences, and unsupported speculation" are insufficient to carry the nonmovant's burden. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (quoting *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993)).   Nor may Plaintiffs simply point to "[a]ffidavits that supply 'ultimate or conclusory facts and conclusions of law [because they] are insufficient' to create a genuine issue of material fact." *Anderson v. Tupelo Reg'l Airport Auth.*, 568 F. App'x 287, 292 (5th Cir. 2014), as revised (May 19, 2014); *see also Stagliano v. Cincinnati Ins. Co.*, 633 F. App'x 217, 220 (5th Cir. 2015) (affirming summary judgment where expert opinion was insufficient to create a genuine issue of fact on an essential element of nonmovant's claim).

Plaintiffs offer just that: conclusory allegations, improbable inferences, and unsupported speculation that their hypothetical venture would have succeeded despite actual evidence to the contrary.   BP pointed to an "absence of facts supporting the elements of the plaintiffs' theory of recovery" and submitted competent evidence in its Motion establishing that Plaintiffs' claims are barred.   *Little*, 37 F.3d at 1076 n. 16.   Because Plaintiffs did not identify admissible evidence raising a triable issue of material fact on any of their claims, they have failed to carry their respective burden.   *See id.*; *Krim*, 989 F.2d at 1443 ("If plaintiff believed that he possessed facts presenting a genuine issue requiring a trial . . . he should have stated before the district court the precise manner in which those facts supported his claims."); Fed. R. Civ. P. 56; Local Rule 56.2.[2]

---

[2]   Plaintiffs' objection that BP's Motion goes beyond the scope of Pretrial Order No. 69 (Rec. Doc. 26709) ("PTO 69") and requires further discovery, *see* Opp. 7, is unfounded.   PTO 69 provides **without limitation** that "motion practice may serve to narrow or resolve" Plaintiffs' claims and that defendants "shall file any dispositive motions." PTO 69 at 3–4.   Plaintiffs have had ample opportunity, and obligation, to produce evidence necessary to prove their claims over the past several **years**.   Pretrial Order No. 65 required Plaintiffs to disclose their theories of causation and damages in detail, *see* (Rec. Doc. 23825), and Pretrial Order No. 67 required production of "any" documents Plaintiffs "intend[ed] to offer as evidence in litigation in support of [their] claim that [their] losses were caused by the Gulf oil spill and the quantum of those losses," (Rec. Doc. 25370), Ex. 1 at 1.

## II.     BP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' OPA CLAIMS.

### A.     Plaintiffs Cannot Prove That the Spill Caused Their Losses.

Plaintiffs raise no triable issue of fact on causation, instead reiterating conclusory allegations that the Spill caused their losses and relying on a general map of oiling in the Gulf of Mexico.  On this record, no fact finder could validly find the Spill caused Plaintiffs' alleged losses.

#### 1.     Plaintiffs Cannot Show That the Spill Caused *Their* Losses.

Plaintiffs point to the closure of certain federal fishery waters after the Spill and a map showing the proposed location of the FlorAbama Project relative to oiling from the Spill as "evidence" that the Spill caused the failure of their hypothetical fish farm.  *See* Opp. 17.  But the mere fact that federal waters were temporarily closed or oiled is insufficient to meet Plaintiffs' burden.  Plaintiffs identify no evidence showing the physical impact of purported oiling of the proposed project site, the duration of any impact, or that investors withdrew financing due to the Spill or declined ever to fund the project.[3]  Plaintiffs admit they had no equipment in the water at the time of the Spill, *see* Opp. 5; none of their assets were oiled, SOF ¶ 11;[4] they had no idea when they would raise the funds needed to launch, how much they would raise, or from whom, *see* SOF ¶ 46; and they called off their efforts to launch within weeks of the Spill, not to revive them save a brief crowdfunding effort in 2016, *see id.* ¶¶ 58, 59.  Plaintiffs cannot prove the Spill caused the unviability of their project, much less do so based on general evidence of oiling.  *See* Mot. 7–9.

---

[3]     Plaintiffs cite to a journal article discussing shoreline oiling during the first two years after the Spill, *see* Opp. Ex. 13; an article from September 28, 2020 discussing oil of unknown origins that washed up on a five mile stretch of Florida's coastline after Hurricane Sandy, *see* Opp. Ex. 1E; and excerpts of testimony from an expert for the United States in the MDL 2179 Penalty Phase trial discussing certain impacts of oiling generally on the Gulf ecosystem, *see* Opp. Ex. 16.  This generic evidence is insufficient to show that the federal waters at the FlorAbama site, which has never been used by Plaintiffs in any form and to which they have no property rights, were in fact oiled and rendered unusable for Plaintiffs' proposed fish farm since April 2010, as Plaintiffs contend.

[4]     *See also* Plaintiffs' Response to BP's Statement of Uncontested Facts ("Pls. Resp. to SOF") at 3 (only contesting SOF ¶ 11 on the ground that the federal waters where Plaintiffs sought to launch their fish farm were oiled).

3

2.      Plaintiffs Admit That They Faced Regulatory Uncertainty.

Plaintiffs argue that they only needed the USACOE and NPDES Permits to launch their commercial aquaculture business and argue that, because NOAA lacked authority to regulate aquaculture, Plaintiffs would have proceeded without NOAA's authorization, retained counsel, and successfully prevailed in future legal efforts by NOAA to stop their hypothetical operations. *See* Opp. 10–13. There is no evidence that Plaintiffs ever actually tried to start operations or to sue NOAA; there is only evidence that Plaintiffs sought authorization from NOAA that was denied. *See* Mot. 9–13. Now, in litigation, Plaintiffs' self-serving prediction that they would have won their legal battle because "[t]he district court would have reached the same conclusions as [the district court in *Gulf Fishermen's Association*] . . . and the Fifth Circuit would have reached the same conclusions[,]" Opp. 13, does not prove that Plaintiffs would have overcome their regulatory obstacles, let alone when, under what circumstances, or on what timeframe. Indeed, the rulings Plaintiffs rely on occurred more than ten years ***after*** the Spill. And, there is no evidence that Plaintiffs have attempted to start operations after those 2020 rulings.

 Nor could a reasonable jury could find that investors would have supported such a speculative venture during years of litigation with regulators on Plaintiffs' say-so. *See Van Tiem v. First Am. Home Warranty Corp.,* No. 1:18-CV-458, 2020 WL 6255381, at *3 (E.D. Tex. Aug. 5, 2020) ("[T]he court's obligation to draw reasonable inferences does not extend so far as to allow a wholly unreasonable inference or one which amounts to mere speculation and conjecture.") (internal quotation marks omitted). Tellingly, Plaintiffs were unable to raise the millions necessary for the Texas Project during the Texas platform litigation either. *See* SOF ¶¶ 30, 39.

Plaintiffs also admit they would have to speculate as to what federal agencies would have done had Plaintiffs actually tried to start operations with only their existing two permits. *Id.* ¶ 29. Plaintiffs protest that they "have no way of knowing if and when any federal agency might attempt

to exceed its authority granted by Congress under the Magnuson-Stevens Fishery Conservation and Management Act of 1976 (MSA)." Pls. Resp. to SOF 5.  It is irrefutable, however, that NOAA was in the process of implementing a commercial aquaculture permitting scheme from the time the Gulf Council's Aquaculture Management Plan became effective in 2009 through NOAA's promulgation of a final rule implementing that plan in 2016.  *See* Final Rule, 81 Fed. Reg. 1,762 (Jan. 13, 2016).  And there can be no dispute that the regulatory landscape for aquaculture in federal Gulf waters was too uncertain for the past decade to show that the Spill is the reason that Plaintiffs did not launch their project.  *See, e.g.*, *Peaker Energy Grp., LLC v. Cargill, Inc.,* No. 14-2106, 2016 WL 7491851, at *1 (E.D. La. Dec. 30, 2016), *aff'd* 706 F. App'x 191 (5th Cir. 2017) (denying lost profits where plaintiffs had not secured customer contracts, director approval, necessary financing, or government permits).  Plaintiffs' assertions, resting on an expert who seeks to offer legal opinions,[5] do not show that the Spill prevented them from launching their business.

### 3.    Plaintiffs Lacked Financing to Start Their Proposed Business.

Plaintiffs also needed millions in capital to launch, which they had not secured as of the Spill.  *See* SOF ¶ 30; Pls. Resp. to SOF 1 (admitting SOF ¶ 30).  Thus, Plaintiffs' recitation of their physical assets and narrative of their failed funding attempts are irrelevant and do not establish a triable issue of fact on causation.  And, unsworn speculation by Plaintiffs' financial advisor that Plaintiffs would have secured the necessary additional funds is both inadmissible and unsupported.

Though Plaintiffs describe their shareholder investments and assets at length, their prior funding had been spent long before the Spill, *see* Pls. Resp. to SOF 1 (admitting SOF ¶ 45, that

---

[5]    Plaintiffs do not refute Defendants' argument that Dr. Vittor offers only impermissible legal conclusions that invade the province of this Court. *See* Mot. 5 n.4.  They simply state that, even if interpreting federal regulations is a question of law (it is), Dr. Vittor's analysis "is nevertheless helpful to the Court." Opp. 14, n.5.  This Court needs no expert assistance to determine what the law permitted.  *See* Mot. 5 n.4; *Fontenot v. Safety Council of Sw. La.,* No. 2:16-CV-84, 2017 WL 3588200, at *6 (W.D. La. Aug. 16, 2017) ("[t]he law requires only one spokesman, the court").

Plaintiffs had a total of $16,195 in cash on hand in 2010), and Plaintiffs' physical assets were in storage, Opp. 5, SOF ¶ 4.  Plaintiffs do not deny they have no personal knowledge of when, how, from whom, or how much funding they might have raised in 2010 or after, *see* SOF ¶¶ 33, 46. Plaintiffs' many efforts to obtain funding to launch had not been successful for two and a half decades before the Spill, which cannot reasonably support an inference that they would have been successful after April 2010, but for the Spill.  *See Jones v. Potter*, No. 06-0048, 2007 WL 2071613, at *5 (E.D. La. July 16, 2007) ("only *reasonable* inferences can be drawn from the evidence").

Plaintiffs' only evidence that they would have obtained funding is an unsworn letter by George J.M. Hersbach of Heartstream Corporate Finance B.V. (the "Heartstream Letter").  The Heartstream Letter is inadmissible hearsay composed "to the best of [Hersbach's] knowledge," Opp. Ex. 14 at 9, from outside the United States and not signed under penalty of perjury.  *See, e.g.*, 28 U.S.C. § 1746(1) (unsworn declarations outside the United States must be signed "under penalty of perjury under the laws of the United States of America"); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) ("It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment."); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (affirming summary judgment because "[n]either the district court nor this court may properly consider hearsay evidence in affidavits and depositions" nor "[u]nsworn documents" on summary judgment).  Nor can Plaintiffs point to any other admissible evidence showing that they would have obtained funding because, as they testified, they have no personal knowledge of Hersbach's interactions with investors.  *See* SOF ¶ 33; Pls. Resp. to SOF 6 (objecting to SOF ¶ 33 "only because Mr. Ericsson testified that he **believes** that Heartstream investors were shown a PPM") (emphasis added).

Moreover, Hersbach's vague statements that Heartstream "would have been in position to update the Investors" and that it was "more likely than not" that Plaintiffs would have raised funding, Opp. Ex. 14 at 9, are wholly speculative and unsubstantiated.  To the contrary, after decades of unsuccessful efforts, including by Hersbach, there is no reasonable basis to believe Plaintiffs would have obtained millions but for the Spill.  Hersbach's unsworn speculation cannot defeat summary judgment.  *Anderson*, 568 F. App'x at 292; *Stagliano*, 633 F. App'x at 220.

4.   <u>Plaintiffs Failed to Mitigate Their Losses Following the Spill.</u>

In contrast to unsworn statements by Hersbach, Ericsson testified under oath repeatedly that he did not seek funding after the Spill "by choice" because he believed that the project was futile.  SOF ¶ 58.[6]  Plaintiffs were obligated to mitigate any losses following the Spill, but Ericsson immediately called off the project on his own.  *See* Mot. 15–17.  He only attempted to revive the project in 2016 through a short-lived and unsuccessful internet crowdfunding effort, *see* SOF ¶ 59, coincidentally when NOAA's rule for permitting commercial aquaculture went into effect, *see* Final Rule, 81 Fed. Reg. 1,762 (Jan. 13, 2016).  On these facts, Plaintiffs cannot prove that the Spill caused them to lose any profits, let alone over $100 million.

**B.   Plaintiffs Cannot Prove Damages to a Reasonable Certainty.**

1.   <u>Plaintiffs Cannot Recover Under OPA § 2702(b)(2)(B).</u>

Plaintiffs misconstrue OPA to seek $8.875 million in "[d]amages for ***injury to***, or economic losses resulting from ***destruction of***, real or personal property, which shall be recoverable by a claimant who ***owns or leases*** that property[,]" 33 U.S.C. 2702(b)(2)(B) (emphases added), despite admitting that none of their property was oiled, *see* SOF ¶ 11.  Plaintiffs' theory of recovery

---

[6]   Plaintiffs' accusation that BP was acting in bad faith by quoting Ericsson's repeated and in-context testimony that he chose not to seek funding after the Spill is unfounded and patently wrong.  *See* Pls. Resp. to SOF 8.

appears to rely solely on the oiling of the federal waters where Plaintiffs intended to launch the FlorAbama Project.  *See* Pls. Resp. to SOF 3.  Yet, Plaintiffs cannot prove that they either owned or leased the FlorAbama site.  Ericsson testified that Plaintiffs did not own or lease the property covered by their permits.  Terteryan Declaration in Further Support of BP's Motion for Summary Judgment at Ex. M 73:22–74:3, 74:19–25.  And the USACOE Permit states "[t]his permit does not grant any property rights or exclusive privileges." Mot. Ex. 12 at BIOM-GMIT0000160.

Moreover, Plaintiffs have put forth no evidence demonstrating that they suffered any ***actual*** damage to their purported "personal property."  Plaintiffs claim that they lost $8,875,000 in the value of their "personal property" due to the Spill, Opp. 18, but, as this Court has held, Plaintiffs cannot recover for "***unrealized*** diminution of [] value."  *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 902 F. Supp. 2d 808, 816 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 741 F. App'x 185 (5th Cir. 2018) (emphasis added); 33 C.F.R. § 136.235 (Coast Guard's regulations interpreting OPA's economic loss provision note compensation "is limited to the ***actual*** net reduction or loss of earnings or profits suffered") (emphasis added).  Plaintiffs have no evidence of an actual $8,875,000 loss.

2.    Lost Profits Cannot Be Calculated to A Reasonable Certainty.

Plaintiffs argue they may prove damages with an expert report.  But this reaffirms the speculative nature of their claim: namely, that there was no actual business, and Plaintiffs assume they would have overcome regulatory obstacles, raised enough funds to launch, begun operations, executed sales contracts, and successfully farmed seafood, such that the products would be well-received in the market.  *See* Mot. 20–23.  The record shows that Plaintiffs were out of money and, at best, would have encountered years of litigation due to regulatory uncertainty over commercial aquaculture in the past decade.  *See id.* 9–15.  Plaintiffs cannot negate this record by offering their speculation through a damages expert.  *See Oracle Oil, LLC v. EPI Consultants*, 391 F. Supp. 3d

634, 640 (E.D. La. 2019) (excluding expert testimony based on "numerous assumptions and estimates" and unverified information as "too speculative to support a damages award and [] too speculative to be reliable and admissible"); *Forsyth*, 19 F.3d at 1533 ("conclusory allegations, improbable inferences, and unsupported speculation" cannot defeat summary judgment).

Moreover, Plaintiffs' reliance on *Chemical Distributors* confirms how different their situation is from an established business claim. In that case, the parties were established businesses that executed a contract estimating that Exxon would require 500,000 gallons of cleaner per year from Chemical Distributors Inc. ("CDI"). *Chem. Distribs., Inc. v. Exxon Corp.*, 1 F.3d 1478, 1480 (5th Cir. 1993). After Exxon only purchased 38,000 gallons, it terminated the contract, and CDI sued for breach. *Id.* at 1480–81. The Court found CDI's damages calculations were not speculative because its expert "did a pro forma analysis of CDI's income and profit potential based on existing sales volumes, anticipated Exxon sales, product costs, overhead, operating expenses, and other costs." *Id.* at 1487. Here, ***Plaintiffs' business was never operational.*** Any damages calculation requires speculation because Plaintiffs had no operations, no sales contracts, no known operating costs, and no history of sales or profitability. *See* Mot. 20–23.

3. Gulf Marine Cannot Show a Financial Stake in the FlorAbama Project.

Plaintiffs point to a Texas Project joint development agreement ("JDA") between BioMarine and Gulf Marine as purported evidence of Gulf Marine's stake in the FlorAbama Project. Opp. 22. But the JDA concerns ***a different site*** in Texas, *see* Opp. Ex. 8 at 1, § 11, and terminated by its own terms after Plaintiffs lost their rights to that site in 2008 by court order. The JDA states it "shall continue in effect until the expiration of GMIT's State Lease M-74563 or unless earlier terminated by" a "Termination Event," including "[t]hird-party legal action against the interest and ownership of GMIT which adversely affects the use of the Property by BioMarine as contemplated by this Agreement[.]" *Id.* § 12. In 2008, a Texas appeals court held that Gulf

9

Marine's lease to the Texas site had expired.  *Patterson v. Gulf Marine Inst. of Tech.*, No. 13-06-067-CV, 2008 WL 525424 (Tex. App. Feb. 28, 2008); SOF ¶ 13.  This "Termination Event" ended Gulf Marine's financial interests under the JDA.  Because Gulf Marine cannot show a cognizable financial stake in the FlorAbama Project, summary judgment is warranted on its claim.  *See* Mot. 23–24.

## III.   PLAINTIFFS' MARITIME LAW CLAIMS ARE MERITLESS.

Plaintiffs do not allege a physical injury to a proprietary interest to assert maritime claims. Instead, they contend they satisfy the commercial fisherman exception because the proposed site for their hypothetical fish farm was oiled.  *See* Opp. 23–24.  This argument depends on the assumption that Plaintiffs were fully permitted to operate their fish farm (they were not) and runs counter to both fact and law.  There is no evidence that Plaintiffs ever farmed a single fish for sale at their proposed site; rather, the FlorAbama Project was a prospective "seafood enterprise[] not actually engaged in fishing, shrimping, crabbing or oystering," and not "routinely operating[] at [all] times pertinent" in the Gulf of Mexico.  *State of La. ex rel. Guste v. M/V Testbank*, 524 F. Supp. 1170, 1174 (E.D. La. 1981), *aff'd*, 728 F.2d 748 (5th Cir. 1984), on rehr'g, 752 F.2d 1019 (5th Cir. 1985), and *aff'd sub nom. State of La. v. M/V Testbank*, 767 F.2d 916 (5th Cir. 1985), and *aff'd sub nom. Testbank, M/V*, 767 F.2d 917 (5th Cir. 1985).  Because Plaintiffs were "not actually engaged in fishing" as of the Spill, their maritime law claims are barred.  *Id.*[7]

## CONCLUSION

For the foregoing reasons, this Court should enter summary judgment for BP.

---

[7]    Nor could Plaintiffs establish a "crucial proprietary interest" in the FlorAbama site because they did not own those waters.  *In re Deepwater Horizon*, 784 F.3d 1019, 1031 (5th Cir. 2015); *id.* at 1025 ("plaintiff must show he is an owner of the damaged property").

June 14, 2021                                   Respectfully submitted,

                                               /s/ Devin Reid
                                               R. Keith Jarrett (Bar # 16984)
                                               Devin Reid (Bar # 32645)
                                               **LISKOW & LEWIS**
                                               One Shell Square
                                               701 Poydras Street, Suite 5000
                                               New Orleans, Louisiana 70139-5099
                                               Telephone: (504) 581-7979
                                               Fax No. (504) 556-4108

                                               Matthew T. Regan, P.C.
                                               (matthew.regan@kirkland.com)
                                               Kristopher S. Ritter
                                               (kristopher.ritter@kirkland.com)
                                               **KIRKLAND & ELLIS LLP**
                                               300 North LaSalle
                                               Chicago, IL 60654
                                               Telephone:  (312) 862-2000

                                               Christopher W. Keegan
                                               (chris.keegan@kirkland.com)
                                               Anna Terteryan
                                               (anna.terteryan@kirkland.com)
                                               **KIRKLAND & ELLIS LLP**
                                               555 California Street
                                               San Francisco, CA 94104
                                               Telephone: (415) 439-1400

                                               *Attorneys for BP America Production*
                                               *Company, BP Exploration & Production,*
                                               *Inc., and BP P.l.c.*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing **BP's Reply In Support of its Motion for Summary Judgment** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of June, 2021.

*/s/ Devin Reid*
Devin Reid