## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL NO. 2179 |
| | * | SECTION J(2) |
| | * | |
| This Document relates to: | * * | HONORABLE CARL J. BARBIER |
| | * | MAGISTRATE JUDGE CURRAULT |
| *Loggerhead Holdings, Inc. v. BP p.l.c., et al.*, Case No. 16-cv-05952 | * * | |

### BP'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
Kristopher S. Ritter
(kristopher.ritter@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000

Christopher W. Keegan
(chris.keegan@kirkland.com)
Ashley Littlefield
(Ashley.littlefield@kirkland.com)
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

R. Keith Jarrett (Bar # 16984)
Devin Reid (Bar #32645)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

**ATTORNEYS FOR BP AMERICA PRODUCTION COMPANY AND BP EXPLORATION & PRODUCTION, INC.**

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**.................................................................................................................1

**ARGUMENT** .....................................................................................................................1

I.      **Plaintiff Cannot Prove Its Section 2702(b)(2)(E) Claim.**...................................1

        A.      Plaintiff's Inoperable Vessels and Insurmountable Debt Caused Its Losses, Not the Spill. ...........................................................................1

        B.      Plaintiff's Alleged "Fear Of Oiling" is Not Legally Compensable. ........................3

        C.      Plaintiff Cannot Prove Damages with Reasonable Certainty. ................................4

                1.      Plaintiff Failed to Rebut BP's Arguments. ..................................................4

                2.      Plaintiff's PTO Statements and Tax Returns Do Not Prove Damages with Reasonable Certainty. ...........................................5

II.     **Plaintiff Cannot Prove Physical Oiling to The *Rorqual*.** ................................7

III.    **Plaintiff Is Not Entitled to Punitive Damages.** .................................................9

**CONCLUSION** ...............................................................................................................10

## INTRODUCTION

Plaintiff's opposition brief ("Opposition") raises no triable issue of material fact and fails to rebut BP's legal arguments.  Loggerhead cannot overcome the undisputed record to prove that its alleged damages were due to the Spill.  Instead, Plaintiff relies on a declaration from its president that contains (i) statements that directly contradict his deposition testimony, (ii) information for which he lacks personal knowledge, (iii) inadmissible hearsay, and (iv) conclusory assertions.  Plaintiff also claims it may have relevant documents or may perform necessary analyses in the future, without explaining why this alleged information was not produced when requested.  Plaintiff cannot defeat summary judgment on these bases.

## ARGUMENT

## I.     PLAINTIFF CANNOT PROVE ITS SECTION 2702(b)(2)(E) CLAIM.

This Court should grant summary judgment on Plaintiff's Section 2702(b)(2)(E) claim for three independent reasons: (i) Plaintiff's business failed for reasons unrelated to the Spill; (ii) Plaintiff's alleged losses due to fear of oiling are not recoverable under OPA and lack factual support; and (iii) Plaintiff cannot prove damages with reasonable certainty.  *See* Motion 11–18.  In its Opposition, Plaintiff does not challenge the legal bases for these arguments, but instead contends, without specificity, that it has enough evidence to prove its claims.  It does not.

### A.     Plaintiff's Inoperable Vessels and Insurmountable Debt Caused Its Losses, Not the Spill.

Plaintiff's business failure had nothing to do with the Spill as both vessels were dry-docked or in need of repair *before* the Spill. *See* Motion, Section I.A.  After years of losses and mounting debt, paying current expenses using customer deposits from future trips, Plaintiff's business collapsed when Plaintiff could no longer operate either of its two vessels due to needed repairs. *See* Motion 12–15; SOF ¶¶ 24, 28, 30–41.

*First*, Plaintiff acknowledges its EBITDA and revenues decreased in the years leading up to the Spill and that it suffered ordinary business losses exceeding $500,000 each year from 2007 to 2009.  Opp'n at 6.  However, pointing to its even lower revenues of 2011 and 2012, Plaintiff contends that these "dramatic drops go far beyond mere coincidence and instead reflect losses caused directly by the spill."  *Id*.  In truth, the further decrease in revenue is evidence that Plaintiff ceased operations in 2010, not evidence that the Spill harmed its business and then somehow caused Plaintiff to cease active operations.

*Second*, the undisputed evidence shows that events unrelated to the Spill rendered Plaintiff's vessels—its primary source of revenue—inoperable.  *See* Motion at 12–13.  Plaintiff avers that "[t]his is false," yet only cites Mr. Dixon's testimony about how the *Nekton Rorqual* was on a trip during the week of the Spill before taking a nine-day, satellite-tracked voyage from Turks & Caicos to Port St. Joe, Florida.  Opp'n at 8.  None of these facts are in dispute.  ***Plaintiff fails to address that the Rorqual made that nine-day trip to Port St. Joe because it needed a generator repaired, not because of the Spill***.  *See* SOF ¶¶ 37–39; Littlefield Decl. at Ex. A 178:24–179:7.  As for the *Nekton Pilot*, Plaintiff cannot and does not dispute that the *Pilot* had been docked for refit at Port St. Joe for seven months before the Spill, that the estimated cost of the refit was approximately $180,000, and that the *Pilot's* engines had been removed in order to be sent to Alabama for rebuilding (but never were).  SOF ¶¶ 30–33; *cf.* Rec. Doc. 27143-1 at 6 (only clarifying that the Pilot "had" engines, although they were removed from the vessel).

*Third*, the undisputed evidence also shows that, without revenue from the *Rorqual* or *Pilot*, Plaintiff could not pay for the necessary repairs of its vessels.  *See* Motion at 4–5.  Plaintiff attempts to concoct a factual dispute by disputing its own sworn testimony:  Plaintiff contends for the first time in the Declaration of John Dixon (the "Dixon Declaration") that—despite Plaintiff's inability

to pay its existing debt—Plaintiff had "available resources including third party sources to pay for the scheduled NEKTON PILOT's refit." *See* Rec. Doc. 27143-1 at 7; Rec. Doc. 27143-2 at ¶ 12. Mr. Dixon's declaration contradicts his deposition testimony that it was unable to pay for the *Nekton Pilot's* refit absent income from the *Nekton Rorqual* and cash deposits for future trips. SOF ¶¶ 35–36 (citing Littlefield Decl. at Ex. B 88:2–4, 227:9–13). As is well established, in considering a summary judgment motion, "if an affidavit diverges from deposition testimony, courts may disregard the affidavit." *Hills v. Tangipahoa Par. Sch. Sys.*, No. 19-5, 2020 WL 1250810, at *5 (E.D. La. Mar. 16, 2020) ("[A] contradiction between plaintiff's deposition testimony and her sworn affidavit [merited] application of the sham-affidavit rule."). Nor can Plaintiff create a genuine issue of material fact by disputing itself. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (actual controversy exists only "when both parties have submitted evidence of contradictory facts"); s*ee also* Fed R. Civ. P. 56(c)(1)(A); *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 389 (5th Cir. 2020) ("[Plaintiff's] self-serving statements . . . are insufficient to create a triable issue of fact[.]"). Accordingly, Mr. Dixon's change of testimony should not be credited.

**B.     Plaintiff's Alleged "Fear Of Oiling" is Not Legally Compensable.**

Plaintiff contends "there is a plethora of evidence in the deposition testimony linking" the Spill to Plaintiff ceasing operations and incurring lost profits. Opp'n at 7–8. The sole evidence Plaintiff cites from this "plethora" is Mr. Dixon's personal belief that oiling was imminent when he decided to cease operations. *Id*. This is insufficient to establish causation.

*First*, damages due to "fear of oiling" are not recoverable under OPA because they are "a step too far removed from OPA['s] requirement that the lost profits and impaired earning capacity be 'due to' the destruction of natural resources." *See* Motion at 13–14 (citing *Blue Water Boating*,

3

2017 WL 405425, at *3; *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 902 F. Supp. 2d 808, 816 (E.D. La. 2012)).  Plaintiff cites no contrary authority.

**Second**, Plaintiff cannot prove fear of oiling caused its alleged damages.  Mr. Dixon's self-serving testimony is the only cited fact for the claim that the Spill caused him to cease operations.  *See* Opp'n at 7–8.  Plaintiff cannot satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence" as Plaintiff tries to do here.  *Little*, 37 F.3d at 1075 (citations and quotations omitted); *see also Anderson v. Tupelo Reg'l Airport Auth.*, 568 F. App'x 287, 292 (5th Cir. 2014), as revised (May 19, 2014) ("Affidavits that supply ultimate or conclusory facts and conclusions of law are insufficient to create a genuine issue of material fact." (citations and quotations omitted)); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) ("conclusory allegations, improbable inferences, and unsupported speculation" are insufficient to carry nonmovant's burden).

### C.    Plaintiff Cannot Prove Damages with Reasonable Certainty.

As explained in the Motion, Plaintiff's damages are not recoverable because Plaintiff's lost profits claim is speculative, impermissibly includes intercompany transactions, and contains "restart costs" that are not recoverable under OPA.  Plaintiff provides no legal support for its responses to BP's arguments.  Instead, Plaintiff argues its tax returns and PTO statements show damages are capable of being determined with reasonable certainty.  *See* Opp'n at 13–15.  Plaintiff's arguments are meritless.

#### 1.    *Plaintiff Failed to Rebut BP's Arguments.*

**First**, Plaintiff concedes that it was not profitable before the Spill, Opp'n at 13.  Accordingly, Plaintiff cannot prove lost profits with reasonable certainty.  *See* Motion at 16–17; *see, e.g., Sea Trek, Inc. v. Capt. Tom's Seafood*, No. 97-150, 1998 WL 149576, at *2 (E.D. La. Mar. 24, 1998) (granting summary judgment where plaintiff failed to produce competent evidence

of lost profits and had no net profits in three of the four preceding years); *Pontchartrain State Bank v. Duden*, 503 F. Supp. 764, 769 (E.D. La. 1980) (denying lost profits in part because it was "conjectural at best" whether the plaintiff's venture would have yielded future profits).  Plaintiff cites no legal support for its contention that its lost profits are reasonably ascertainable despite its history of losses.

*Second*, Plaintiff also cannot prove lost profits related to intercompany transactions, from which Plaintiff did not net any profits or incur any losses.  *See* Motion at 17.  Plaintiff responded by asserting that this is a fact issue, citing to paragraph 25 of Mr. Dixon's declaration.  Opp'n at 14, n.31.  The cited portion of the declaration is irrelevant to this issue.  *See* Opp'n, Ex. A at ¶ 25 (hearsay testimony from Mr. Dixon about oil entering the Loop Current).  Plaintiff also claimed a need for an order permitting further discovery.  Opp'n at 14.  Plaintiff does not identify what additional information it needs about *its own intercompany transactions*, or why it needs more time to conduct discovery of alleged facts under its own control.

*Third*, Plaintiff seeks *both* lost profits and so-called "restart costs," despite the fact that OPA provides only for "loss of profits" or "impairment of earning capacity."  *See* Motion at 17–18; 33 U.S.C. § 2702(b)(2)(E).  Plaintiff identifies no statutory basis or legal precedent for recovery of "restart costs" under OPA.  Instead, Plaintiff asserts without citation that it is "easily conceivable that such restart costs fall within 'impairment of earning capacity[.]'"  Opp'n at 14–15.  But Plaintiff's "restart costs"—money it asserts it needs to re-launch its business—are plainly not "diminished earning power[.]"  Lost Earning Capacity, Black's Law Dictionary (11th ed. 2019).

### 2.    *Plaintiff's PTO Statements and Tax Returns Do Not Prove Damages with Reasonable Certainty.*

Rather than address the legal bases for excluding Plaintiff's damages, Plaintiff points to "the expert testimony contained in PTO 65 as well as PTO 67" and its tax returns as evidence that

it can prove damages with reasonable certainty.  Opp'n at 14.  These documents cannot satisfy Plaintiff's burden.  *See Stagliano v. Cincinnati Ins. Co.*, 633 F. App'x 217, 220 (5th Cir. 2015) (affirming summary judgment, because expert affidavit was insufficient to create fact dispute and the only other evidence was damage estimates and emails).

Calculating lost profits specifically attributable to the Spill is not a matter of "simple addition" that can be reliably determined from Plaintiff's pre- and post-Spill tax returns.  *See Beauregard Par. Sch. Bd. v. Honeywell Inc.*, No. 2:05 CV 1388, 2008 WL 11387078, at \*5 (W.D. La. May 28, 2008) (granting summary judgment, as plaintiff's use of fact witness to introduce utility bills "without accounting for any variables" was "insufficient to prove damages").

Nor can Plaintiff rely on its PTO 65 and 67 Statements to calculate damages.  According to Mr. Dixon's testimony, Plaintiff is not competent to calculate its own damages and would need an expert to do so.  *See* Littlefield Declaration in Further Support of BP's Motion for Summary Judgment at Ex. N 274:7–14 ("I would need to rely on expert witnesses to -- to do that.").  Indeed, Plaintiff testified that it would produce an expert valuation after its deposition and that such a valuation would differ from the damages disclosed in its PTO 65 statement.  *Id.* at 275:7–15 ("My expectation is . . . that there will be a final expert witness report as part of our presentation."); 265:23–266:16 ("We have a different expert witness engaged today, and their model, their valuation might be different. . . . I believe that the valuation that is currently being considered is different in the way it presents categories.").  But Plaintiff has only submitted a declaration from Mr. Dixon, and did not put forth any report from an expert.  *See generally* Opp'n.  Plaintiff cannot defeat summary judgment through the promise of undisclosed testimony to come, particularly when such disclosure was required and permitted by the PTOs in this proceeding.  *See Little*, 37 F.3d at 1075 ("[Courts] do not, . . . in the absence of any proof, assume that the nonmoving party

could or would prove the necessary facts."); *see also M.D. Claims Grp., LLC v. Anchor Specialty Ins. Co.*, No. 17-00369-BAJ-RLB, 2019 WL 2866838, at *3 (M.D. La. July 3, 2019) (granting a motion *in limine* to exclude references to consequential damages because no computation of damages was disclosed in discovery).

## II.   PLAINTIFF CANNOT PROVE PHYSICAL OILING TO THE *RORQUAL.*

Plaintiff bears the burden to prove that its vessel was oiled, *see In re Deepwater Horizon*, 902 F. Supp. 2d at 816–17, but has no evidence that: (i) the *Rorqual* was anywhere near oil originating from the Macondo wellsite when it traveled to Port St. Joe in early May 2010; (ii) the *Rorqual* actually did encounter such oil; or that (iii) any purported oil on the *Rorqual* was from Macondo.  There is no genuine issue of material fact here.

**First**, Plaintiff's brief does not contest that, when the *Rorqual* purportedly encountered oil while traveling from Mayaguana in the southeastern Bahamas to Port St. Joe, Florida, from April 25 to May 2, 2010, it was over 100 miles east of Macondo oil.  *See generally*, Opp'n; *see also* Motion at 18–20.  Plaintiff disputes the validity of NOAA's oil forecasts but puts forth no evidence to support its contrary assertions.  *See* Rec. Doc. 27143-1 at 9–14 (contesting the validity of NOAA forecasts but not providing evidence of the location of Macondo oil).  Without such evidence, Plaintiff cannot prove the *Rorqual* even **could** have encountered Macondo oil.  *See Stine v. Marathon Oil Co.*, 976 F.2d 254, 265 (5th Cir. 1992) ("the non-movant cannot rest on pleadings but must bring forth significant probative evidence to prevent summary judgment.").

**Second**, Plaintiff has no admissible contemporaneous evidence of oiling.  Plaintiff has no eye-witness testimony of the *Rorqual* traveling through oil on or about May 2, 2010.  *See* Motion at 19–20; *see also* Rec. Doc. 27143-1 at 14 (purportedly contesting the fact that Mr. Dixon could not recall anyone aboard the *Rorqual* seeing oil but conceding that nobody aboard the *Rorqual* reported seeing oil).  Indeed, Plaintiff provided no affidavits or admissible testimony from **anyone**

7

aboard the *Rorqual* when it was purportedly oiled.  Instead, Plaintiff relies on inadmissible hearsay evidence that someone on the *Rorqual* told Mr. Dixon he "smelled" oil.  *Id.  See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 510 n.5 (5th Cir. 2001) ("Because these statements are hearsay, they are not competent summary judgment evidence."); *Miller v. Gaston*, 358 F. App'x 573, 575 (5th Cir. 2009) (holding district court erred in denying summary judgment for defendant, and ordering entry of judgment in favor of defendant, because the only evidence relied upon below was clearly inadmissible deposition testimony).

Similarly, Plaintiff has no contemporaneous records of oiling.  *See* Motion at 19; *see also* Rec. Doc. 27143-1 at 14–15 (purportedly contesting the fact that Plaintiff did not create contemporaneous records concerning the oil but not identifying or producing any such documents). Plaintiff cannot defeat summary judgment by theorizing that unproduced evidence may exist. *Little*, 37 F.3d at 1075 ("[Courts] do not, . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.").  Plaintiff's sole evidence that the *Rorqual* encountered oil on May 2, 2010, is Mr. Dixon's testimony that "a week later" he saw that a plastic hose "was no longer clear but obviously stained and the color of oil."  *See* Opp'n at 15. No reasonable jury could find the *Rorqual* traveled through and was damaged by Macondo oil on this record.

**Third**, Plaintiff has done no fingerprint testing or other forensic analysis to show that any purported oil on the *Rorqual* was from Macondo, and he has not preserved any alleged oil.  *See* Motion at 20–21.  Plaintiff asserts without support that "it is still possible that further testing can be done[,]" Opp'n at 15; Rec. Doc. 27143-1 at 14–15.  Plaintiff does not explain how such fingerprint testing could be performed eleven years later when the alleged samples have not been forensically preserved, nor does Plaintiff explain why it failed to perform such testing.  Instead,

Plaintiff points to Mr. Dixon's testimony that he "believed" the oil was from Macondo because he was not aware of any other leaking wells.  *See* Opp'n at 15–16.  Plaintiff's belief is no substitute for actual evidence.  *Lumar v. Monsanto Co.*, 395 F. Supp. 3d 762, 773 (E.D. La. 2019). *aff'd*, 795 F. App'x 293 (5th Cir. 2020) ("A plaintiff's mere subjective beliefs fail to establish that a material fact issue is in dispute.").  Plaintiff, therefore, has failed to meet its OPA burden as a matter of law. *Scaffidi v. Thompson-Hayward Chem., Inc.*, No. 94-3860, 1997 WL 469966, at *3 (E.D. La. Aug. 12, 1997) (granting summary judgment where plaintiff failed to produce exposure evidence).

## III.    PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES.

Plaintiff cannot recover punitive damages.  Plaintiff points to no statute that would enable it to recover punitive damages.  Plaintiff also has no maritime law claim because it lacks evidence that the *Rorqual* was oiled, and Plaintiff was not in the business of commercial fishing.

Plaintiff's scuba-diving business did not "meet the commercial fisherman exception" to the *Robins Dry Dock* rule merely because, as it asserts, "divers . . . enjoy looking at the fish and taking pictures of them" and "the incident impacted [its] livelihood."  Opp'n at 16.  Plaintiff must show that it ***relies on fishing as its livelihood***.  *See La. Crawfish Producers Ass'n—West v. Amerada Hess Corp.*, No. 6:10-0348, 2015 WL 10571063, at *10 (W.D. La. Nov. 23, 2015) (limiting the class of plaintiffs to those who harvested crawfish, "upon which their livelihood depends," within the impacted area); *see also Yarmouth Sea Prods. Ltd. v. Scully*, 131 F.3d 389, 398 (4th Cir. 1997) ("critical fact" is that fishing "constituted their very livelihood").

The commercial fisherman exception is strictly applied.  *See In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 379 (5th Cir. 2006) (holding that claims by wholesale fishermen did not satisfy the "commercial fishermen" test); *State of La. ex rel. Guste v. M/V Testbank*, 524 F. Supp. 1170, 1174 (E.D. La. 1981), *aff'd*, 728 F.2d 748 (5th Cir. 1984), on reh'g, 752 F.2d 1019 (5th Cir. 1985), and *aff'd sub nom. State of La. v. M/V Testbank*, 767 F.2d 916 (5th Cir. 1985), and *aff'd*

*sub nom. Testbank, M/V*, 767 F.2d 917 (5th Cir. 1985).  And in *M/V Testbank*, the Fifth Circuit explicitly dismissed six categories of persons or entities that do not fall under the commercial fisherman exception, one of which was "[f]ishermen . . . engaged in [fishing] activities for recreational purposes only."  *Id.*  Plaintiff's attempt to equate "looking at" and "taking pictures" of fish with fishing, Opp'n at 16–17, ignores the Fifth Circuit's ruling in *M/V Testbank*.  As a matter of law, a reasonable juror could not find that Plaintiff is a commercial fisherman, because Plaintiff's activities were "for recreational purposes only."  *M/V Testbank*, 524 F. Supp. at 1174.

## CONCLUSION

For the foregoing reasons, BP respectfully requests this Court enter summary judgment in its favor on all claims.

June 23, 2021                              Respectfully submitted,

                                          *Devin C. Reid*
                                          ─────────────────────────
                                          R. Keith Jarrett (Bar # 16984)
                                          Devin Reid (Bar #32645)
                                          **LISKOW & LEWIS**
                                          One Shell Square
                                          701 Poydras Street, Suite 5000
                                          New Orleans, Louisiana 70139-5099
                                          Telephone: (504) 581-7979
                                          Fax No. (504) 556-4108

                                          Matthew T. Regan, P.C.
                                          (matthew.regan@kirkland.com)
                                          Kristopher S. Ritter
                                          (kristopher.ritter@kirkland.com)
                                          **KIRKLAND & ELLIS LLP**
                                          300 North LaSalle
                                          Chicago, IL 60654
                                          Telephone:  (312) 862-2000

                                          Christopher W. Keegan
                                          (chris.keegan@kirkland.com)
                                          Ashley Littlefield
                                          (Ashley.littlefield@kirkland.com)
                                          **KIRKLAND & ELLIS LLP**
                                          555 California Street
                                          San Francisco, CA 94104
                                          Telephone: (415) 439-1400

                                          *Attorneys for BP America Production Company*
                                          *and BP Exploration & Production, Inc.*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing **BP's Reply In Support of its Motion for Summary Judgment** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 23rd day of June, 2021.

*/s/ Devin C. Reid*
Devin C. Reid