**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | * | **MDL NO. 2179** |
| | * | |
| | * | **SECTION J** |
| | * | |
| | * | **JUDGE BARBIER** |
| **This Document relates to:** | * | |
| | * | **MAGISTRATE JUDGE CURRAULT** |
| ***Classy Cycles, Inc., v. BP p.l.c., et al.*, Case No. 16-cv-05923** | * | |
| | * | |
| | * | |

# BP'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
Kristopher S. Ritter
(kristopher.ritter@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

Christopher W. Keegan
(chris.keegan@kirkland.com)
Ashley Littlefield
(ashley.littlefield@kirkland.com)
Anna Terteryan
(anna.terteryan@kirkland.com)
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

R. Keith Jarrett (Bar # 16984)
Devin Reid (Bar #32645)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

**ATTORNEYS FOR BP AMERICA PRODUCTION COMPANY AND BP EXPLORATION & PRODUCTION, INC.**

# TABLE OF CONTENTS

**INTRODUCTION** .......... **1**

**ARGUMENT** .......... **2**

**I. PLAINTIFF CANNOT PROVE CAUSATION** .......... **2**

**II. PLAINTIFF CANNOT PROVE DAMAGES.** .......... **3**

- **A.** Plaintiff's Contradictory Statements Are Insufficient to Meet Its Burden. .......... 3
- **B.** Plaintiff Cannot Establish Its Losses to A Reasonable Certainty. .......... 6

**III. PLAINTIFF'S LOST OPPORTUNITIES CLAIM FAILS.** .......... **8**

**IV. SUMMARY JUDGMENT IS PROPER WITHOUT FURTHER DISCOVERY** .......... **9**

**CONCLUSION** .......... **10**

## INTRODUCTION

Plaintiff's opposition ("Opposition") creates no triable issue of material fact, and confirms BP's Motion should be granted. ***First***, Plaintiff's OPA theory is that generic public perception of oiled beaches resulted in fewer tourists in the area, which in turn resulted in decreased rentals of Plaintiff's land-based vehicles by unspecified renters. This allegation does not meet OPA's causation standard.[1]

***Second,*** Plaintiff can neither calculate damages to a reasonable certainty, nor cure this fatal flaw with sham affidavits that contradict plaintiff's deposition testimony. The deposition testimony confirmed (i) the loss of relevant financial documents, (ii) inaccuracies in documents that exist, and (iii) the inability to determine what alleged "loans" purportedly inflated Plaintiff's post-Spill revenues. Plaintiff's newly submitted contrary declarations are meritless as a matter of law, and Plaintiff's attempt to use them only confirms the absence of competent evidence in this case.

***Third,*** Plaintiff undisputedly has no evidence of contracts, financing, or written business plans for its lost opportunities claim. Instead, Plaintiff cites the owner's personal conjecture of what might have happened, yet another unreliable assertion rather than competent evidence.

***Fourth,*** Plaintiff's request that the Court defer BP's Motion to allow additional unspecified discovery is baseless. Plaintiff does not explain why its multiple opportunities for discovery to date, and PTO responses, have been insufficient or what essential information further discovery would yield. Summary judgment is warranted on all of Plaintiff's claims now.

---

[1] Plaintiff does not dispute that its maritime law claims are barred. *See* Mot. 18; Opp. 1.

## ARGUMENT

### I. PLAINTIFF CANNOT PROVE CAUSATION.

Plaintiff does not dispute that its claims are based on an alleged decrease in tourism due to perceived oiling, but disputes that the law bars its recovery on this theory. Plaintiff is wrong, cites no cases to support its position, and cannot recover under OPA.

Plaintiff contends *Blue Water Boating* is not analogous because the plaintiff there did not "clarify how the oil spill damaged its property—or the coastline immediately surrounding its property—and to what extent its losses stemmed from such damage[.]" Opp. 6 (quoting *Blue Water Boating Inc. v. Plains All Am. Pipeline, L.P.*, CV 16-3283 PSG (JEMx), 2017 WL 405425, at *3 (C.D. Cal. Jan. 26, 2017)). But just as in *Blue Water Boating*, Plaintiff here does not link its losses to any ***actual***—as opposed to ***perceived***—oiling. In *Blue Water Boating*, the court held that a claim for damages incurred "when would-be tourists learned of the harm to the coastline and decided to cancel or defer their trips . . . is a step too far removed from OPA and OSPRA's requirement that the lost profits and impaired earning capacity be 'due to' the destruction of natural resources." *Id.* Here, too, Plaintiff alleges lost profits from decreased tourism due to perceived oiling, not actual oiling. *See* Opp. 7–8 (citing testimony that Plaintiff lost customers because tourists "thought there was oil everywhere in Florida"). This alleged harm is too far removed from the Spill, and Plaintiff cites no authority that this attenuated link satisfies OPA. *See* Mot. 8–11. Plaintiff's argument that *Blue Water Boating* involved a California statute (OSPRA) ignores the court's explicit analysis of OPA's causation requirements. *See* Opp. 6.

Beyond its legal defects, Plaintiff's claim is bereft of factual support. Plaintiff points only to Roof and Swab's conclusory deposition testimony that the Spill caused Plaintiff's losses. Opp. 6–9. Such conclusory, self-serving testimony cannot carry Plaintiff's burden here. *See*

*Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 389 (5th Cir. 2020) ("self-serving statements . . . are insufficient to create a triable issue of fact"); *Anderson v. Tupelo Reg'l Airport Auth.*, 568 F. App'x 287, 292 (5th Cir. 2014), as revised (May 19, 2014) ("Affidavits that supply ultimate or conclusory facts and conclusions of law are insufficient to create a genuine issue of material fact."); *Lumar v. Monsanto Co.*, 395 F. Supp. 3d 762, 773 (E.D. La. 2019)., *aff'd*, 795 F. App'x 293 (5th Cir. 2020) ("A plaintiff's mere subjective beliefs fail to establish that a material fact issue is in dispute."). Plaintiff has no actual evidence that actual oiling caused a decline in its profits.

## II. PLAINTIFF CANNOT PROVE DAMAGES.

Plaintiff has not put forward evidence to support a reasonably certain damages claim, and cannot create a dispute of material fact by contradicting its own testimony with sham affidavits.

### A. Plaintiff's Contradictory Statements Are Insufficient to Meet Its Burden.

Swab and Roof directly contradict their prior sworn testimony with new declarations. The sham affidavit doctrine allows the Court to ignore these declarations. "The sham affidavit doctrine prevents a party who has been deposed from introducing an affidavit that contradicts that person's deposition testimony without explanation." *Free v. Wal-Mart La., LLC*, 815 F. App'x 765, 766–67 (5th Cir. 2020) (striking affidavit where plaintiff "changed her recollection of her conversation with Lowery to include comments on an issue that is central to an element of her claim"). "If an affidavit diverges from deposition testimony, courts may disregard the affidavit[.]" *Hills v. Tangipahoa Parish Sch. Sys.*, No. 19-5, 2020 WL 1250810, at *5 (E.D. La. Mar. 16, 2020); *Hyde v. Stanley Tools*, 107 F. Supp. 2d 992, 993 (E.D. La. 2000) (Barbier, J.), *aff'd*, 31 F. App'x 151 (5th Cir. 2001) (where nonmovant "submits an affidavit which directly contradicts an earlier deposition and the movant has relied upon and based its motion on the prior deposition, courts may disregard the later affidavit").

Roof's and Swab's new declarations directly contradict their prior sworn testimony. For example, BP's Motion cites Roof and Swab's testimony that they could not determine the amount of the loans made to Plaintiff in 2010, and therefore could not determine the extent to which the financial documents are incorrect. In response, Swab and Roof now claim to know exactly what loans to Plaintiff were allegedly misrecorded to the penny. *See, e.g.*, Declaration of Colleen Swab ("Swab Decl.") ¶ 5; Declaration of Rick Roof ("Roof Decl.") ¶¶ 7–9. Similarly, Swab and Roof testified that they either had no personal knowledge as to the accuracy of Plaintiff's pre-Spill financial documents and 2019 damage reports, or believed those documents were inaccurate. *See, e.g.*, SOF ¶¶ 24–28;[2] Littlefield Declaration in Further Support of BP's Motion for Summary Judgment ("Suppl. Littlefield Decl.") at Ex. F 97:24–98:22 (it is no longer possible to confirm Plaintiff's January 2010 revenue). They now assert that Plaintiff's pre-Spill financial documents and 2019 damage reports are accurate, *see, e.g.*, Swab Decl. ¶¶ 4, 7, 11; Roof Decl. ¶¶ 5, 10–11. Swab's and Roof's contradictory testimony includes:

| Prior Testimony | New Declarations |
|---|---|
| **Plaintiff does not know, and it is impossible to determine, the amount of the loans allegedly made to Plaintiff in 2010.**<br><br>*See* Littlefield Decl. at Ex. B 51:16–21 ("Q. Sitting here today, do you know how much Mr. Roof loaned to Classy Cycles? A. I don't. Q. You don't have any documentation to show that total amount? A. I don't."); *see also* Suppl. Littlefield Decl. at Ex. G 60:8–11 ("Q. Classy Cycles does not know the amount of the error or how it was calculated; is that correct? A. That's correct."), 61:24–62:3 (same), 75:17–23 (Plaintiff does not know what documents would show the alleged loans | **"The revenues for 2010 are overinflated due to the loans and cash injections . . . by $792,769.12."**<br><br>Roof Decl. ¶ 11; *see also id.* ¶¶ 7–9; Swab Decl. ¶ 5. |

[2] Plaintiff's sole basis for purportedly disputing these statements of fact is that "Plaintiff has no actual knowledge of errors or omissions on its profit and loss statements and tax returns." Opp. Ex. 1 at 2.

| | |
|---|---|
| from Roof and does not believe there is anyone Swab could talk to to find out), 80:22–81:2 (Plaintiff cannot determine the amount of the loans based on its bank statements); *id.* at Ex. I 42:7–20 (Plaintiff has no knowledge of how much in loans were mischaracterized as revenue); Littlefield Decl. at Ex. D 30:22–32:24 (on any given day, Roof would make a single cash deposit in Plaintiff's bank account, which would include any cash income from the business), 45:14–24 ("Q. How would you be able to recognize a deposit as a loan from you as opposed to a deposit of revenue or some other income? A. I wouldn't be able to, but ones that were just loans, I don't know, maybe. I guess, no, I can't. I thought I could, I can't."); Suppl. Littlefield Decl. at Ex. I 28:19–30:2 (Roof "was putting all this money in the bank without telling the accountant or [his] daughter or anybody"). | |
| **The promissory notes reflect loans made by Roof's father.**<br><br>*See, e.g.*, Suppl. Littlefield Decl. at Ex. F 172:8–173:21 ($50,000 promissory note dated June 2011 actually reflects loan from Roof's father, but Swab made a mistake on the loan documents), 175:12–176:3 ($100,000 promissory note dated April 2012 meant to reflect loan from Roof's father), 176:8–178:11 ($100,000 promissory note dated May 2012 meant to reflect loan from Roof's father), 178:15–179:7 (fourth promissory note meant to reflect loan from Roof's father); *id.* at Ex. I 46:13–49:15 ($150,000 loan reflected in promissory notes was from Roof's father), 49:24–50:10 ($50,000 promissory note dated June 2011 reflects loan from Roof's father), 51:21–52:9 ($100,000 promissory note dated April 2012 reflects loan from Roof's father). | **The promissory notes reflect loans from Roof.**<br><br>*See* Swab Decl. ¶ 5 (Plaintiff's revenues were overstated in part by "$317,000 [in loans] by [Roof] as evidenced by promissory notes"); Roof Decl. ¶ 7 (stating that Roof loaned Plaintiff approximately $317,000). |
| **The revenues in Plaintiff's PTO 65 Statement contradict the figures in Plaintiff's 2019 CSG Report. Plaintiff does not know which is accurate (if either) or whether either document relied on inaccurate data.** | **The revenues in Plaintiff's 2019 CSG report are accurate.**<br><br>Swab Decl. ¶ 4. |

| | |
|---|---|
| *See* Littlefield Decl. at Ex. B 48:9–25. | |
| **Roof has no personal knowledge of Plaintiff's financial statements or revenues.**<br><br>*See e.g.,* Suppl. Littlefield Decl. at Ex. I 18:4–6 (Roof does not know Plaintiff's revenue from January through April 2010); *id.* at Ex. H 64:13–21 (Roof does not know which financial statements reflect Plaintiff's actual results), 145:12–19 (Roof is not involved with Plaintiff's financial paperwork). | **Roof knows Plaintiff's revenues from 2009–2017, including the monthly revenues in 2010.**<br><br>*See* Roof Decl. ¶ 10 (listing revenues from 2009–2017), ¶ 13 (listing monthly revenues from 2010). |

Neither Swab nor Roof provide an explanation that could justify changing their prior testimony, taken just weeks prior to these latest declarations. *See Free*, 815 F. App'x at 766 (striking "an affidavit that contradicts that person's deposition testimony without explanation"). They offer no explanation for why they suddenly know facts they did not know a few months ago when questioned under oath in 30(b)(6) depositions on that precise topic.[3] The only proffered explanation for changed testimony is Swab's contention that her prior testimony was "out of frustration." Swab Decl. ¶ 7. Her purported "frustration" does not explain how or why she claims to now know information she did not know during her deposition. These sham affidavits should be struck from the record.

### B. Plaintiff Cannot Establish Its Losses to A Reasonable Certainty.

Plaintiff cannot establish damages with reasonable certainty. Plaintiff points to no evidence showing it can calculate its actual pre- and post-Spill financial performance, and the necessary underlying records no longer exist. SOF ¶¶ 20, 29.

---

[3] *See* Suppl. Littlefield Decl. at Ex. J, BP's Notice of Rule 30(b)(6) Deposition of Classy Cycles, Inc., Ex. A at 4 (requiring Plaintiff to designate a knowledgeable person to testify regarding Plaintiff's allegation "that 'Classy Cycles injected its own funds into the business and borrowed money,' including the person(s) or entity that provided such funds and/or loans, the dates such funds and/or loans were provided to Classy Cycles, the terms and conditions . . . and any documents evidencing these terms and conditions").

Plaintiff cannot cure its speculative damages claim by pointing in the sham affidavits to a purported calculation of Plaintiff's losses by Claims Strategies Group ("CSG"). That purported expert analysis relies on plaintiff's ***same inaccurate and incomplete documents***. *See* Mot. 11–14. This is insufficient as a matter of law. *See Oracle Oil, LLC v. EPI Consultants*, 391 F. Supp. 3d 634, 640 (E.D. La. 2019) (expert testimony based on "numerous assumptions and estimates" and unverified information was "too speculative").

At the threshold, Plaintiff may not rely on CSG's unexplained and unverifiable calculations to establish purported facts that the record does not support. *See Stagliano v. Cincinnati Ins. Co.*, 633 F. App'x 217, 220 (5th Cir. 2015) (affirming summary judgment where expert opinion was "insufficient to create a genuine dispute of material fact on an essential element of" nonmovant's claim). And, Plaintiff offers no explanation for ***how*** the alleged loans it received in 2010 were "incorrectly booked as revenue[.]" Roof Decl. ¶ 6.

Further, to the extent Swab and Roof repeat CSG's calculations in their declarations, those statements are inadmissible hearsay. Plaintiff does not offer a sworn affidavit by its purported expert stating what Plaintiff's correct revenues and damages are, or the basis for those amounts. Instead, Swab cites CSG's unsworn 2019 damages analysis and CSG's unsworn and admittedly incorrect March 2018 damages analysis. *See* Swab Decl. ¶¶ 4, 6, 11; Littlefield Decl. at Ex. B 48:9–25 (Plaintiff does not know why its PTO 65 damages report differs from 2019 CSG report and does not know which is accurate). And Plaintiff cannot explain why ***both*** of those analyses differ from CSG's unsworn April 2018 report submitted with Plaintiff's PTO 65 Statement. *Compare* Plaintiff's PTO 65 Statement at 27 (April 2018 economic loss report) *with* Swab Decl. Ex. 1 (March 2018 economic loss report) *and* Littlefield Decl. at Ex. E, 6 (November 2019 economic loss report). None of these three reports are reliable, competent summary

judgment evidence. *See Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (affirming summary judgment because "[n]either the district court nor this court may properly consider hearsay evidence in affidavits and depositions"); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 510 n.5 (5th Cir. 2001) ("Because these statements are hearsay, they are not competent summary judgment evidence."). Plaintiff cannot prove its purported lost profits to a reasonable certainty.

## III. PLAINTIFF'S LOST OPPORTUNITIES CLAIM FAILS.

BP's cited authority demonstrates that unestablished ventures without contracts, funding, or business plans are too speculative to establish lost profits. *See* Mot. 15–17; *Peaker Energy Grp., LLC v. Cargill, Inc.,* No. 14-2106, 2016 WL 7491851, at *1 (E.D. La. Dec. 30, 2016), *aff'd* 706 F. App'x 191 (5th Cir. 2017) (denying lost profits where plaintiffs had not secured customer contracts, director approval, necessary financing, or government permits). Plaintiff does not refute these cases. Instead, Plaintiff asserts it does not need to "back up its lost opportunity claim with distinct examples of how it would have obtained financing or demonstrate how those ventures or purchases would have been profitable[.]" Opp. 14. Plaintiff cites *Union Oil Co.* for the proposition that it need not identify specific opportunities from which it lost profits. But *Union Oil* concerned the calculation of lost profits for an ***established*** business—the Fifth Circuit affirmed the District Court's calculation of lost profits by comparing data from the months preceding and following an oil spill. *See Union Oil Co. of Cal. v. Buffalo Marine Servs., Inc.,* 538 F. App'x 575, 576 (5th Cir. 2013). That has no bearing here, where Plaintiff seeks to recover lost profits for a ***non-existent business*** that never launched and had no financing, business plans, written or signed contracts, or revenues from which to extrapolate damages. *See* SOF ¶¶ 36–37. Plaintiff's reliance on *In re M/V Nicole Trahan* and *Nebula Glass* is likewise misguided because both cases awarded lost profits to ***established*** businesses that were able to

demonstrate lost profits to a reasonable certainty. *See In re M/V Nicole Trahan*, 10 F.3d 1190 (5th Cir. 1994); *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203 (11th Cir. 2006). The Court need not make unreasonable inferences that Plaintiff would have launched new businesses and reaped profits based purely on Plaintiff's conclusory assertion. *See In re Taxable Mun. Bond Sec. Litig*., No. 90-4714, 1993 WL 534035, at *5 (E.D. La. Dec. 13, 1993) ("vital facts may not be proved by unreasonable inferences . . . or by piling inference upon inference.").

**IV. SUMMARY JUDGMENT IS PROPER WITHOUT FURTHER DISCOVERY.**

Plaintiff erroneously contends that summary judgment is inappropriate out of desire to take further discovery and/or be transferred to its originating court. Opp. 12, 16. Plaintiff's request for further delay is meritless, as PTO 69 expressly authorized BP's dispositive Motion and the discovery period to support it. PTO 69 at 4.

As for Plaintiff's unsupported assertion that "additional discovery is warranted[,]" Opp. 1, Plaintiff does not explain, as it must, how further discovery would enable it to defeat summary judgment. *See Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1441 (5th Cir. 1993) (affirming trial "court's decision to consider defendant's motion for summary judgment . . . because plaintiff had failed to respond . . . with a statement specifically indicating why plaintiff was unable to oppose the motion at the time and how further merits discovery would enable him to respond"); *Blanchard v. Anslum*, No. 6:18-CV-01589, 2020 WL 7413844, at *2 (W.D. La. Dec. 17, 2020) (discovery "may be cut off when the record shows that the requested discovery will not be likely to produce facts needed to withstand the motion for summary judgment"); *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) ("vague assertions that additional discovery will produce needed, but unspecified facts" are insufficient).

Instead, Plaintiff requests that the Court "allow time to obtain affidavits or declarations or to take discovery[,]" Swab Decl. ¶ 9; Roof Decl. ¶ 15, without explaining what such discovery

would entail, why it is necessary, or why it was not previously taken or provided in response to PTO 67 (Rec. Doc. 25370) or PTO 69 (Rec. Doc. 26709). Additional discovery is unwarranted.

In short, "[t]he court has broad discretion and inherent authority to manage its docket[,]" including to provide for and grant dispositive motions in the MDL. *In re Deepwater Horizon*, 713 F. App'x 360, 362 (5th Cir. 2018); *see also In re Deepwater Horizon*, 907 F.3d 232, 235 (5th Cir. 2018) ("there is a special deference required in the context of an MDL"). There is no reason to return this case to its originating court, particularly where, as here, the record and law warrant summary judgment. *See Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413, 415 n.6 (2015) (final resolution of cases transferred to an MDL is appropriate and common).

## CONCLUSION

For the foregoing reasons, BP respectfully requests that this Court enter summary judgment in its favor.

[*Remainder of the page intentionally left blank.*]

June 28, 2021

Respectfully submitted,

*/s/ Devin C. Reid*

R. Keith Jarrett (Bar # 16984)
Devin C. Reid (Bar # 32645)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
Kristopher S. Ritter
(kristopher.ritter@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

Christopher W. Keegan
(chris.keegan@kirkland.com)
Ashley Littlefield
(ashley.littlefield@kirkland.com)
Anna Terteryan
(anna.terteryan@kirkland.com)
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

*Attorneys for BP America Production Company and BP Exploration & Production Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **BP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 28th day of June, 2021.

*/s/ Devin C. Reid*
Devin C. Reid