IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>This Document relates to:<br><br>*Fin & Feather Adventures, LLC v. BP Expl. & Prod., Inc., et al.*, Case No. 16-CV-06126;<br>*Fin & Feather Cabins, LLC v. BP Expl. & Prod., Inc., et al.*, Case No. 16-CV-06131;<br>*Fin & Feather, LLC v. BP Expl. & Prod., Inc., et al.*, Case No. 16-CV-06118 | * MDL NO. 2179<br>*<br>* SECTION J(2)<br>*<br>* JUDGE BARBIER<br>*<br>* MAGISTRATE JUDGE CURRAULT<br>*<br>* |

## BP'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
Kristopher S. Ritter
(kristopher.ritter@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

Christopher W. Keegan
(chris.keegan@kirkland.com)
Austin Klar
(austin.klar@kirkland.com)
Anna Terteryan
(anna.terteryan@kirkland.com)
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

R. Keith Jarrett (Bar # 16984)
Devin Reid (Bar #32645)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

**ATTORNEYS FOR BP AMERICA PRODUCTION COMPANY AND BP EXPLORATION & PRODUCTION, INC.**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 1

I.      PLAINTIFFS CANNOT PROVE THEIR OPA CLAIMS. ........................................... 1

        A.     Plaintiffs' Future Lodging Claims Are Impermissibly Speculative. ....................... 1

        B.     The Record Does Not Support A Reasonably Certain Damages Calculation. ................................................................................................................ 5

        C.     Plaintiffs Waived and Cannot Prove Boat Shed Rental Damages. ......................... 7

II.     PLAINTIFF'S MARITIME AND STATE LAW CLAIMS FAIL. ............................... 8

III.   SUMMARY JUDGMENT IS PROPER WITHOUT FURTHER DISCOVERY ........................................................................................................................ 8

CONCLUSION ......................................................................................................................... 10

# INTRODUCTION

In their response to BP's Motion (the "Opposition"), Plaintiffs attempt to create triable issues with inadmissible, conclusory testimony and work product prepared after the fact for this litigation. But nothing they offer or belatedly seek through untimely discovery saves Plaintiffs' meritless, speculative claims.

*First*, Plaintiffs cannot prove their OPA claims. Plaintiffs' claims for lost income, including from lodging never constructed, depend on assumptions, contingencies, and speculation, which preclude a reasonable juror from finding that the Spill caused their purported losses. Further, Plaintiffs acknowledge that while they had a net loss in 2009, they did ***better after the Spill*** than before. That undisputed fact, combined with the lack of reliable business records, bars Plaintiffs' claims for ongoing lost profits as a matter of law. Plaintiffs also waived, and have no reliable records to show, their alleged boat shed rental losses. Thus, Plaintiffs cannot prove, as they must, that the Spill caused reasonably certain losses for *any* existing or future business.

*Second*, Plaintiffs' maritime claims are barred because Plaintiffs are not commercial fishermen, their property was not oiled. And OPA preempts Plaintiffs' state law claims.

*Third*, the Court should not defer BP's Motion to allow additional discovery. Plaintiffs had the opportunity to proffer a damages expert, and do not explain how the additional untimely experts they now seek for the first time would enable a juror to reliably calculate their damages with reasonable certainty. Summary judgment is warranted now.

# ARGUMENT

I. **PLAINTIFFS CANNOT PROVE THEIR OPA CLAIMS.**

    A. **Plaintiffs' Future Lodging Claims Are Impermissibly Speculative.**

The undisputed facts show Plaintiffs' alleged losses for the Pelican Plantation are purely conjectural, and the proffered evidence of the likelihood that lodge might have been built in the

1

future and profitable is inadmissible. Plaintiffs' alleged losses for their Additional Cabins also lack support, depend on too many contingencies, and cannot be determined with reasonable certainty.

**Pelican Plantation.** Regardless of whatever preliminary steps Plaintiffs contend they took toward planning to build the Pelican Plantation, they do not dispute that they never secured the financing, a USDA guarantee, permits, or construction insurance needed before construction could even start. *See* SOF ¶¶ 46–47;[1] Opp'n 19–20; Opp'n Ex. 7, Bush Aff. ¶¶ 18–20 ("Bush Aff."). These undisputed facts alone render the claim for their hypothetical lodge impermissibly speculative. *See Fredonia Farms*, *LLC v. Enbridge Energy Partners, L.P.*, No. 1:12-CV-1005, 2014 WL 3573723 at *8 (W.D. Mich. July 18, 2014) (summary judgment rejecting OPA lost profits where plaintiffs had "not obtained necessary permits, begun construction, planted a single grape, or made a single sale," and thus failed to show with reasonable certainty that "the project would have gone to market" and "been profitable"); *Peaker Energy Grp., LLC v. Cargill, Inc.,* No. 14-2106, 2016 WL 7491851, at *1 (E.D. La. Dec. 30, 2016), *aff'd* 706 F. App'x 191 (5th Cir. 2017) (summary judgment granted because plaintiffs could not prove lost profits with reasonable certainty without customer contracts, director approval, financing, or permits).

Moreover, the only "proof" Plaintiffs offer that Pelican Plantation could theoretically have been built and been profitable is inadmissible speculation. *See* Opp'n 18–20. **First**, Michael Bush, president of Mississippi River Bank, attests, without explanation, that he "believe[s]" the bank would have approved a "significant loan" to fund construction, *if* Plaintiffs applied for one, and does not specify whether Plaintiffs would have obtained the *millions* necessary. Bush Aff. ¶ 18.

---

[1] Plaintiffs do not actually dispute SOF ¶ 47, protesting only that it "improperly *implies* that Plaintiffs took no steps toward the financing of the Pelican Plantation" before the Spill. Pls. Resp. to BP's SOF ¶ 8 (emphasis added).

2

These conclusory assertions do not address the fact that the Prests' financing discussions with Mr. Bush occurred in 2009, before Plaintiffs reported a $26,936 loss. *See* Bush Decl. ¶ 14; Opp'n Ex. 13, Litolff Decl. ¶ 20 ("Litolff Decl."). Mr. Bush also notes, with no foundation, that the "significant decrease" in Plaintiffs' post-Spill revenue makes a loan for Pelican Plantation "an impossibility today." Bush Aff. ¶ 23.[2] He further claims, without explanation, that he is "confident" Plaintiffs would have secured necessary bank and USDA approvals and has "no reason to believe" the Pelican Plantation would not have eventually flourished. *Id.* ¶¶ 20, 22. His conclusory opinions lack foundation and cannot defeat summary judgment. *See Anderson v. Tupelo Reg'l Airport Auth.*, 568 F. App'x 287, 292 (5th Cir. 2014), as revised (May 19, 2014) ("Affidavits that supply 'ultimate or conclusory facts and conclusions of law are insufficient' to create a genuine issue of material fact."); *Barron v. BP Am. Prod. Co.*, 590 F. App'x 294, 297 (5th Cir. 2014) (affirming exclusion at summary judgment of lay opinion that "require[d] 'scientific, technical, or other specialized knowledge' of boats, the Mississippi Sound, and the weather conditions of the Gulf of Mexico beyond what is known by the average person"); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 459–60 (5th Cir. 1996) (affirming exclusion of lay opinion because it was "doubtful that, in the absence of any specialized training or experience in these areas, he—or any other ordinary person—could have personal knowledge about the toxicity of chemicals").

**Second**, Mr. Prest's cousin, Kendell Hyatt, attests that he "would not have spent the time assisting with the preparation of the cost estimates [for Pelican Plantation] if [he] did not believe that Kirk and Denise intended to move forward with the project." Opp'n Ex. 9, Hyatt Aff. ¶ 16; *see also* Opp'n 18. Mr. Hyatt's belief regarding the Prests' ***intent*** to move forward with the project

---

[2] Indeed, by Bush's own measure, such poor performance could have jeopardized Plaintiffs' ability to obtain millions in loans for a new lodge after the Spill, underscoring how speculative and unfounded Bush's beliefs are.

3

is irrelevant to whether they actually could and would have launched it successfully. As this lay opinion testimony is unhelpful to the jury, it is inadmissible. *See* Fed. R. Evid. 701; *DaVinci Editrice S.R.L. v. ZiKo Games, LLC*, 183 F. Supp. 3d 820, 827 (S.D. Tex. 2016), judgment entered, No. CV H-13-3415, 2016 WL 1718825 (S.D. Tex. Apr. 27, 2016) (rejecting lay opinion on summary judgment as irrelevant and unhelpful). **Third**, Plaintiffs' customer, John Mark Patrick, impermissibly speculates about how much money his employer **would have** spent **if** the Pelican Plantation had been operational as of 2012 and states his belief that the hypothetical lodge "would have been a world-class hunting and fishing resort" attracting "high net-worth customers." Opp'n Ex. 6, Patrick Aff. ¶¶ 27–30 ("Patrick Aff."); *see also* Opp'n 3, 20. But Mr. Patrick has no foundation to conclude that "there is no reason that my company would not have spent $900,000 at Pelican Plantation" in the past nine years, Patrick Aff. ¶ 27, especially since there is no evidence of a binding **commitment** to spend even a single dollar. Such unfounded speculation cannot defeat summary judgment. *See Doddy*, 101 F.3d at 459–60. Even accepting Mr. Patrick's affidavit as true, that is insufficient to raise a triable issue on Plaintiffs' claim for millions in alleged lost profits from this niche, untested venture, especially given Plaintiffs' net loss the year before the Spill. *See Al-Saud v. Youtoo Media, L.P.*, 754 F. App'x 246, 255 (5th Cir. 2018) (affirming denial of lost profits for a "new venture" that "rel[ied] in large part on hoped for partnerships, and speculation about the profits those agreements would generate"); Mot. 14–17.

Nor do Plaintiffs offer competent evidence of **when** Pelican Plantation would have been operational and profitable after incurring at least $3,000,000 to build its first three floors. Absent such evidence, Plaintiffs' purported losses cannot be calculated with reasonable certainty. *See Gulf Eng'g Co., L.L.C. v. Dow Chem. Co.*, 961 F.3d 763, 770 (5th Cir. 2020) (no basis for lost profits where no evidence of what income and expenses would have been for relevant work).

4

**Additional Cabins.**  Plaintiffs offer no actual evidence to prove the Additional Cabins were anything but speculative.  *See* Opp'n 21–22.  Instead, they attempt to excuse the entirely hypothetical nature of those cabins by contending that building them involved "insignificant undertakings."  Opp'n 22.  Beyond the Prests' conclusory, self-serving statements, Plaintiffs offer no evidence of ***how much capital*** the Additional Cabins would require to operate or ***when*** the cabins would have been built, let alone turned a profit.  *See Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 389 (5th Cir. 2020) ("self-serving statements . . . are insufficient to create a triable issue of fact"); *Lumar v. Monsanto Co.*, 395 F. Supp. 3d 762, 773 (E.D. La. 2019), *aff'd*, 795 F. App'x 293 (5th Cir. 2020) ("A plaintiff's mere subjective beliefs fail to establish that a material fact issue is in dispute.").  Thus, the Additional Cabins were too vague and contingent on a sudden, significant recovery of a struggling business, and not recoverable under OPA.  *See Norris v. Causey*, 869 F.3d 360, 372 (5th Cir. 2017) (affirming denial of lost profits for new redevelopment enterprise because "profiting from a redevelopment depends on many contingencies such as costs, timely construction, and market conditions"); *Pontchartrain State Bank v. Duden*, 503 F. Supp. 764, 769 (E.D. La. 1980) (denying lost profits where it was "conjectural at best" whether development project would have made a profit even if built absent the alleged wrongful acts).

B.   **The Record Does Not Support A Reasonably Certain Damages Calculation.**

Plaintiffs contend that their existing records are sufficient to allow a non-speculative damages calculation, offering the declaration of its purported damages expert, Ralph Litolff, in support.  Opp'n 10–11.  Not so.  No expert could calculate lost income to a reasonable certainty based on Plaintiffs' records, which include inaccurate, incomplete data regarding reservations, cancellations, prices, and occupancy.  *See* Mot. 89, 13–14, 17–20.  Indeed, Plaintiffs acknowledge that their records are "not ideal," Opp'n 11, and their assertion that they can "interpret and elaborate upon them," if asked, is belied by their inability to do so during depositions.  *See* Mot.

5

Ex.1, Klar Decl., Ex. B at 25:4–18 ("Klar Decl."). And, tellingly, although he offers the impermissible legal conclusion that Plaintiffs' records are sufficiently reliable to permit a calculation of damages "with reasonable certainty," Litolff Decl. ¶¶ 12–13, 18, 20, 22–23, Mr. Litolff does not cite a specific document or information that he claims is reliable and why. *See Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020), cert. denied, No. 20-1269, 2021 WL 1520838 (U.S. Apr. 19, 2021) ("Experts cannot 'render conclusions of law' or provide opinions on legal issues . . . ."); *Oracle Oil, LLC v. EPI Consultants*, 391 F. Supp. 3d 634, 640 (E.D. La. 2019) (expert testimony based on "numerous assumptions and estimates" and unverified information was "too speculative to support a damages award" or "be reliable and admissible"). His bare assertion that Plaintiffs' records suffice does not meet Plaintiffs' burden to identify reliable business records from which reasonably certain damages may be calculated. *See In re Disc. Cigarette, Cigars, Etc., Inc.,* 399 B.R. 605, 618–19 (Bankr. M.D. La. 2009) (holding lack of evidence of sales, tax records, or ledgers made it impossible to reliably determine past profits to support lost profits calculation).

Even accepting the Litolff declaration, Plaintiffs' claims still fail because Mr. Litolff shows that Plaintiffs' post-Spill net income for the past decade was **higher** than their pre-Spill net income, averaging $41,939.40 per year post Spill and $12,922 per year from 2007 through 2009. *See* Litolff Decl. ¶ 20. And to the extent Plaintiffs claim that they would have made even more but for the Spill because their businesses were "poised for break-out in 2010," Opp'n 25, they offer no competent evidence showing their business would suddenly reverse course and make the massive profits they now seek. Plaintiffs' only support for that contention is a tally of their purported lost business for 2010. *See* Opp'n Ex. 2, Prest. Decl. at Ex. E ("Prest Decl."). But since Mr. Prest prepared that tally after the fact in anticipation of litigation, *see* Declaration of Anna Terteryan in Support of BP's Motion for Summary Judgment ("Terteryan Decl."), Ex. M (K. Prest Dep. Tr.)

6

200:2–205:19 (discussing an identical version of Prest Decl. Ex. E); Prest Decl. ¶ 31, it is inadmissible hearsay. *See* Fed. R. Evid. 802–803; *Consol. Env't Mgmt., Inc.—Nucor Steel La. v. Zen-Noh Grain Corp.*, 981 F. Supp. 2d 523, 530 (E.D. La. 2013) ("it has long been the rule that the business records exception does not apply to records prepared in anticipation of litigation").[3] Their contention also contradicts Mr. Litolff's claim that it is "typical and reasonable" to assume *prior* financial results would "continue[] for the foreseeable future." Litollf Decl. ¶ 17.[4]

Finally, none of the speculative and untimely affidavits by former customers and a competitor offering anecdotal observations of allegedly worse fishing post-Spill are competent evidence of Plaintiffs' allegedly ongoing damages. *See* Opp'n Ex. 5, Landry Aff. ¶ 12; Patrick Aff. ¶¶ 32, 33, 35; Opp'n Ex. 10, Presley Aff. ¶ 17; Opp'n Ex. 11, Wadle Aff. ¶ 25; Opp'n Ex. 12, Collier Aff. ¶ 21. These affidavits do not enable a juror to calculate Plaintiffs' lost profits from alleged impact to the fisheries to a reasonable certainty.

### C. Plaintiffs Waived and Cannot Prove Boat Shed Rental Damages.

Plaintiffs acknowledge that they failed to include boat shed damages in their PTO 65 filing and that any damages they have suffered are "*de minimus* [*sic*]." Opp'n 22. That failure waived Plaintiffs' right to recover those damages. *See* Mot. 22. Even if not waived, Plaintiffs could not prove such damages. Plaintiffs contend that a spreadsheet created by Mr. Prest is sufficient to show losses due to the Spill. Opp'n 23. Yet, Ms. Prest testified that this spreadsheet was not used in determining Plaintiffs' boat shed rental earnings and is not a reliable indicator of Plaintiffs' boat shed rental income or Spill-related cancellations. *See* Klar Decl., Ex. B at 84:3–9.

---

[3] Mr. Litolff too notes that litigation materials are less reliable than ordinary course documents. Litolff Decl. ¶ 11.

[4] Further, their claims of a break-out in 2010 are particularly baseless where a majority of the lost profits Plaintiffs seek are premised on Future Lodging that would not be constructed or become operational until at least late 2011 or early 2012. SOF ¶ 43.

7

## II. PLAINTIFF'S MARITIME AND STATE LAW CLAIMS FAIL.

Plaintiffs' maritime claims fail because they are not commercial fishermen and their property was not oiled. *See* Mot. 23–24. Despite previous testimony to the contrary, *see* SOF ¶¶ 11–12, Plaintiffs now claim that their customers "relied on their catch [with Fin & Feather] for sustenance," Opp'n 25. Even so, serving customers who fish for sustenance does not make *Plaintiffs* "commercial fishermen." Commercial fishermen are only those who ordinarily catch or harvest fish and depend on such activity for their livelihood. *See* Mot. 23–24.

Further, as this Court has repeatedly ruled, OPA preempts Plaintiffs' state law claims. *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, 808 F. Supp. 2d 943, 958 (E.D. La. 2011). Plaintiffs do not argue or cite authority to the contrary.

## III. SUMMARY JUDGMENT IS PROPER WITHOUT FURTHER DISCOVERY.

Plaintiffs assert that PTO 69 did not set a "compulsory expert discovery deadline" because it said further discovery "is not required at this time," Opp'n 6–7, and seek permission from this Court to disclose at least three experts and conduct third-party discovery after the deadline to complete "[a]ll" discovery. PTO 69 § II.A.3, B.4, Rec. Doc. 26709 ("PTO 69"). Plaintiffs' arguments misconstrue PTO 69's plain language, are belied by their own statements, and do not satisfy their burden to show the discovery they belatedly seek would defeat summary judgment.

Like any scheduling order in civil matters, the Court did not require parties to conduct expert discovery. Instead, the Court set deadlines for conducting discovery, should the parties wish to do so. *See* PTO 69 § II.A.I ("to the extent that any party wishes to produce newly-available documents . . . they *must* do so by October 30, 2020") (emphasis added); *id.* § II.B.1 ("to the extent that any party seeks to proffer an expert witness, they . . . *shall* serve the following disclosures") (emphasis added). These deadlines were mandatory. *See id.* § II ("to proceed with their pending actions, [Plaintiffs] . . . shall be bound by the discovery and briefing deadlines"). Plaintiffs

8

understood their obligations and, consistent therewith, confirmed Mr. Litolff "will provide an expert report in accordance with the deadline established in [PTO] 69." *See* Klar Decl., Ex. L.

Yet, Plaintiffs did not submit a report from Mr. Litolff (or any other expert), and there is no justification to relieve them from that strategic decision. The issues for which they originally disclosed Mr. Litolff are relevant even to the limited scope of issues on which Plaintiffs claim BP ***could*** move. Plaintiffs' failure to proffer Mr. Litolff by the deadline is particularly inexplicable, as he prepared a damages calculation in 2018 under PTO 67, which Plaintiffs now disavow as inaccurate. *See, e.g.*, Klar Decl., Ex. A at 154:22-25. Plaintiffs' calculated decision to avoid exposing their expert's flawed analysis to scrutiny is no basis for delaying summary judgment. *See Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1441 (5th Cir. 1993) (affirming decision to consider defendant's motion for summary judgment where "plaintiff had failed to respond . . . with a statement specifically indicating why plaintiff was unable to oppose the motion at the time").

Nor have Plaintiffs shown, as they must, that Mr. Litolff's opinions, those of previously undisclosed experts, or third-party discovery would enable Plaintiffs to defeat summary judgment, as that discovery will not cure Plaintiffs' unreliable recordkeeping. *See id.* at 1441; *Blanchard v. Anslum*, No. 6:18-CV-01589, 2020 WL 7413844, at *2 (W.D. La. Dec. 17, 2020) (discovery may be cut off when unlikely "to produce facts needed to withstand . . . summary judgment"); *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) ("vague assertions that additional discovery will produce needed, but unspecified facts" are insufficient).

Finally, Plaintiffs' complaint that BP's Motion is beyond the scope of PTO 69 or BP's representations is meritless. As permitted by PTO 69 and consistent with BP's representations, *see* Terteryan Decl., Exs. N–O (September 2020 correspondence between the parties' counsel), BP has moved for summary judgment on the grounds that Plaintiffs' alleged damages are

9

speculative based on the record established pursuant to PTOs 65, 67, and 69. Further, during the parties' discussions of the draft form of PTO 69, Plaintiffs never sought modifications that would otherwise narrow the allowed scope of dispositive motions, and they agreed to the language ultimately submitted to and entered by the Court "as a joint proposal." *Id.*, Ex. O; *see also* PTO 69 at 4 (authorizing dispositive motions, without limitation).

Plaintiffs' conduct in these cases confirms their understanding that the scope of dispositive motions could be broader than the specific issues anticipated before discovery closed. Consistent with PTO 69, Plaintiffs disclosed Mr. Litolff as their expert "concerning forensic accounting, economic damages analyses, and estimated economic losses incurred by the Fin and Feather entities as a result of the [Spill]." *See* Klar Decl., Ex. L. That disclosure is significantly broader than damages related solely to the Future Lodging or the duration of damages. Further, and tellingly, Plaintiffs did not object to the scope of BP's 30(b)(6) topics or questions during depositions, which touched on all aspects of Plaintiffs' claims. *See, e.g.*, Terteryan Decl., Exs. P–R. It was not until the close of discovery that BP confirmed Plaintiffs' recordkeeping was too unreliable to support a reasonably certain damages calculation as to ***any*** of Plaintiffs' claims. That should come as no surprise to Plaintiffs, who have been required to identify evidence of their damages since at least PTO 65 in 2018, but failed to do so. *See* PTO 65 § I.A.2, Rec. Doc. 23825.

## **CONCLUSION**

For the foregoing reasons and those discussed in BP's Motion, BP respectfully requests that this Court enter summary judgment dismissing all of Plaintiffs' claims.

10

July 12, 2021                                        Respectfully submitted,

                                              */s/ Devin Reid*

Devin Reid (Bar #32645)
R. Keith Jarrett (Bar # 16984)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
Kristopher S. Ritter
(kristopher.ritter@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000

Christopher W. Keegan
(chris.keegan@kirkland.com)
Austin Klar
(austin.klar@kirkland.com)
Anna Terteryan
(anna.terteryan@kirkland.com)
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

*Attorneys for BP America Production Company and BP Exploration & Production Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **BP'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12th day of July, 2021.

                                                                                  */s/ Devin Reid*
                                                                                   Devin Reid