UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * | MDL 2179 |
| | * | SECTION: J(2) |
| Applies to:<br>No. 16-05277 | * | JUDGE BARBIER |
| | * | MAG. JUDGE CURRAULT |

## ORDER & REASONS

Before the Court is BP's Motion to Dismiss for Lack of Standing to Prosecute the Claim (Rec. Doc. 26922),[1] which seeks to dismiss the complaint by John DeSilva.[2] After considering the parties' arguments, the record, and the applicable law, the Court finds that BP's motion should be denied. However, in light of certain misrepresentations by DeSilva and his counsel, the Court further orders DeSilva and his attorney to show cause why they should not be sanctioned.

### I.

John DeSilva filed this action seeking to recover economic losses that allegedly resulted from the oil spill, which began in April 2010. Years before the oil spill, DeSilva purchased property located at 2707 Pass-A-Grille Way in St. Pete Beach, Florida ("the Property"). The Property consists of three buildings with nine guest rooms and a large dock. (PTO 65 Stmt. at 2, No. 16-05277, Rec. Doc. 7). There is no dispute that DeSilva was the titled owner of the Property until he sold it in 2017.

DeSilva was also the sole owner and operator of The Bird of Paradise, LLC

---

[1] All "Rec. Doc." citations are to the master MDL docket, No. 10-md-2179, unless the citation references another case, such as No. 16-05277.
[2] Related Briefing: DeSilva Opp'n (Rec. Doc. 27005), BP Reply (Rec. Doc. 27013), DeSilva Suppl. Br. (Rec. Doc. 27144), BP Suppl. Br. (Rec. Doc. 27145), BP Resp. to DeSilva Suppl. Br. (Rec. Doc. 27149).

("TBOP"), a limited liability company organized under Florida law. (Rec. Doc. 26922-5). In 2004, the State of Florida issued to TBOP a Single Resort Dwelling License. This license allowed the Property "to be rented as a resort property and to generate potential revenue." (PTO 65 Stmt. at 7 & Ex. C-4). While the complaint states that it is brought by "JOHN DeSILVA, INDIVIDUALLY, AND AS THE SOLE MEMBER, OWNER, AND OPERATOR OF THE BIRD OF PARADISE, LLC," (Compl. at 1, No. 16-05277, Rec. Doc. 1), the record is now clear that DeSilva is the only plaintiff. TBOP is not a party to this lawsuit.

The current evidence reflects that the Property was being rented to various guests prior to the oil spill, generating around $44,000 per month in gross revenue. (PTO 65 Stmt. at 5 & Ex. C-2).[3] DeSilva asserts that, at the time of the oil spill, preparations were underway to commence a major renovation that would have increased guest capacity and transformed the estate into a "celebrity guest and charity venue." (PTO 65 Stmt. at 2). Indeed, in 2009 the City of St. Pete Beach granted a zoning variance for the planned expansion. (*Id.* at 2). In February 2010, a lender tentatively committed to finance the renovation. (PTO 65 Stmt., Ex. C-12). DeSilva alleges that revenue would have dramatically increased had the renovation occurred. (PTO 65 Stmt. at 5, 8).

Multiple reservations were cancelled following the oil spill, and revenue was only $15,000 for the rest of 2010 (May to Dec.). (PTO 65 Stmt. at 5). Furthermore, the

---

[3] Although not particularly relevant for present purposes, the Court notes that it is not clear what the *net* income was during this time. Some of the evidence indicates that the business was not turning a profit even before the oil spill. (*See* PTO 65 Stmt. at 2 (". . . the income being generated from the boutique rentals was not sufficient to carry the property.")).

lender withdrew its tentative commitment, citing the oil spill. (PTO 65 Stmt, Ex. C-13). Alternative financing was not obtained, and the renovations never occurred. Seven years later, on June 16, 2017, DeSilva sold both the Property and TBOP to entities controlled by Steven MacDonald. (Rec. Docs. 27005-2; 27145-1 at 38-45, 58-60).[4] DeSilva did not reserve for himself any claims for spill-related losses when these transfers occurred. TBOP was dissolved in September 2020. (Rec. Doc. 27145-1 at 134).

DeSilva seeks to recover for the following economic losses: "1) the loss of pre-spill value of the Property when sold post-spill, 2) loss of rental and other business revenue due to the spill, and 3) the loss of financing and the related inability to effect the planned expansion of the Property and business." (Rec. Doc. 27144 at 4 n.4). There is no dispute that the Property was not oiled, and DeSilva does not claim that any physical damage occurred.[5] (*See* PTO 64 Sworn Stmt. Regarding General Maritime Law Claims, No. 16-05277, Rec. Doc. 6-1; 4/21/21 Transcript at 12:9-11, Rec. Doc. 27067).

## II.

The first issue presented in BP's motion is whether DeSilva "owns" the claims asserted in his complaint.[6] BP points out that the Single Resort Dwelling License, which allowed the Property to be rented, was in TBOP's name, and DeSilva's previous

---

[4] Neither MacDonald nor the entities he controlled are a party to this lawsuit.
[5] The Court only mentions this because some of DeSilva's arguments could be interpreted to mean that the Property was oiled, when he concedes it was not. Of course, a plaintiff need not own or lease oiled property in order to recover loss of profits or impairment of earning capacity under the Oil Pollution Act. *See* 33 U.S.C. § 2702(b)(2)(E); *In re Settoon Towing, L.L.C.*, 859 F.3d 340, 344-45 (5th Cir. 2017).
[6] The parties disagree over whether this is an issue of Article III standing, as argued by BP, or a matter of "real party in interest" under Rule 17, as urged by DeSilva. Given the Court's conclusion below, it is unnecessary to decide which view is correct.

filings in this litigation indicate that "the claim" was TBOP's asset. As a limited liability company, TBOP was "an entity distinct from its members." FLA. STAT. § 605.0108(1). Its property is separate from that of its member, and it can sue and be sued in its own name. FLA. STAT. §§ 605.0109(1), 605.0110(4); *see also In re Whittle*, 449 B.R. 427, 430 (Bankr. M.D. Fla. 2011).[7] Moreover, when DeSilva sold TBOP in 2017, he did not reserve any claim for himself. Thus, BP argues that the claims are not DeSilva's to pursue.

DeSilva responds that the claims always belonged to him, personally. DeSilva points out that the Property was in his name, not TBOP's, until he sold it in 2017. DeSilva contends the Property would have sold for more had the oil spill not occurred; therefore, he personally incurred that loss. He also asserts that TBOP owned no assets, although he simultaneously concedes that the Single Resort Dwelling License was TBOP's property. (*See* DeSilva Suppl. Br. at 4, Rec. Doc. 27144; 4/21/21 Transcript at 25:18-21).

The Court need not spend much time on this question. On June 8, 2021, Steven MacDonald, whose companies purchased the Property and TBOP in 2017, executed an assignment transferring any oil spill claims he or his companies may have acquired back to DeSilva. (Rec. Doc. 27144-17). MacDonald further states, "It was my, TBOP's and [MacDonald's other company's] intent that the Claims were always to be those of John R. DeSilva, and there was never any intent to acquire those Claims as part of either TBOP or 2707 Pass-A-Grille Way property acquisitions from Mr.

---

[7] DeSilva repeatedly refers to TBOP as a "d/b/a," as opposed to a separate legal entity. (*See* Rec. Docs. 27005 at 9, 27144 at 7-8, 9-10). This is incorrect. The record is clear that TBOP was a limited liability company.

4

DeSilva . . . ." (*Id.*). In light of this assignment, the Court finds that to the extent any oil spill claims were included in the 2017 transfer, they are now back with DeSilva.[8]

### III.

Arguing in the alternative, BP contends that DeSilva cannot personally assert these claims because he failed to opt out of the *Deepwater Horizon* Economic and Property Damages Settlement ("the Settlement"). Under the Settlement, class members released and promised not to sue certain parties for certain types of claims unless the class member submitted a valid opt-out by November 1, 2012. (Settlement §§ 8.2.4, 10, Rec. Doc. 6430-1; Rec. Doc. 7176). There is no dispute that if DeSilva did not opt out of the Settlement, then the Settlement's class-wide release bars his lawsuit. DeSilva contends he did opt out of the Settlement and provides a copy of the purported opt-out. BP argues that this document excluded TBOP from the Settlement, not DeSilva.

The purported opt-out is a form that was created by DeSilva's attorney. At the top of the form is a space to write the "Claimant Name." "The Bird of Paradise, LLC by John DeSilva" is printed in this space. (Rec. Doc. 27005-5 at 3). DeSilva did personally sign the opt-out. However, immediately underneath his signature are the words "The Bird of Paradise, LLC by John DeSilva." (*Id.*) In November 2012 and in March 2016, the claims administrator's vendor filed lists of timely and valid opt-outs. TBOP is included on these lists; DeSilva is not. (Rec. Doc. 8001-39 at 64; 16069-1 at 29). Considering the above, the Court finds that, strictly speaking, the opt-out

---

[8] BP's arguments that the assignment is untimely or invalid (*see* Rec. Doc. 27159) are unpersuasive.

5

excluded the TBOP from the Settlement, not DeSilva.

Nevertheless, the Court construes DeSilva's position to be that the opt-out should be deemed to have opted out both TBOP and DeSilva, even if it literally did not do so. (*See* DeSilva Suppl. Br. at 8-9). In an appeal that arose from another case in this MDL, the Fifth Circuit noted that other circuits and district courts have sometimes enforced "informal" or "imperfect" opt-out requests. *See In re Deepwater Horizon (Mason)*, 819 F.3d 190, 196-97 (5th Cir. 2016). Still, *Mason* refused to construe a motion to sever the plaintiff's case from the MDL as an opt-out, even though the motion was filed before the opt-out deadline. *Id.* at 197. The settlement in *Mason*, like the Settlement here, required that the plaintiff, not the attorney, sign the opt-out in order to ensure that the opt-out is with the plaintiff's express consent. *Id.* The motion to sever was not signed by the plaintiff, and his lawyer admitted that he did not discuss opting out with his client prior to the opt-out deadline; therefore, the plaintiff could not have expressly consented to opting out before the deadline. *Id. Mason* also explained that the motion to sever was not "unequivocal" in expressing a desire to opt out, adding that there is a heightened need for clarity in an MDL as massive and complex as this one. *Id.*

To be sure, the Fifth Circuit did not decide in *Mason* whether it would permit an "informal" or "imperfect" opt-out request. However, this Court believes that the Circuit would accept such a request if presented under the right set of circumstances. Furthermore, this Court believes those circumstances exist here.

First and foremost, DeSilva personally signed the opt-out request and submitted it before the deadline, which sets him apart from *Mason* and many other

6

failed opt-out attempts in this MDL. Thus, there can be no doubt that DeSilva personally and timely gave his express consent to exclude his wholly-owned LLC, if not explicitly himself, from the Settlement. Also, a cover letter submitted with the opt-out stated, "Please find enclosed an original 'Opt Out Exclusion Election' on behalf of our client, John DeSilva *and* The Bird of Paradise, LLC." (Rec. Doc. 27005 at 2) (emphasis added). Further, the claim that BP contends belongs to TBOP is the same claim that DeSilva seeks to assert. BP has long known about and defended itself against this claim, so it will not be prejudiced if DeSilva is the one to pursue it.[9] Also, the opt-out is unequivocal in expressing a desire to opt out, stating, "I wish to be excluded from the Economic & Property Damage class." And, as far as the Court is aware, DeSilva never attempted to submit a claim in the Settlement program. Thus, the Court does not view this as an "after-the-fact attempt to depict completely distinct litigation conduct in another sphere as expressing a desire to opt out." *Id*. Nor does the Court think that creating an exception here would, by extension, "allow class members to make ambiguous statements and motions while waiting to see if the outcome of the class action is favorable." *Id*. at 198. Accordingly, the Court deems TBOP's opt-out as excluding DeSilva from the Settlement as well.

## IV.

The Court will deny BP's motion for the reasons above. It now turns to DeSilva's and his attorney's conduct during these proceedings.

Until very recently, DeSilva and his attorney have repeatedly and vigorously

---

[9] The Court might rule differently if DeSilva was seeking to assert some "new" claim, such as loss of subsistence use or a claim based on some other business venture.

asserted that DeSilva never sold TBOP. The issue was first brought to the Court's attention on September 9, 2020, almost a year ago, when the Court held a status conference with counsel to discuss this case and about a dozen others. There BP's attorney argued that it appeared that DeSilva had sold TBOP in 2017 and "[w]e don't see evidence . . . that he actually retained the claim." (9/9/20 Transcript at 27:17-19, Rec. Doc. 26700). DeSilva's attorney did not dispute at that time that DeSilva had sold TBOP; rather, he argued that the claim was simply not included in the sale. (*Id.* at 26:16 to 27:4). While discussing what discovery might be needed to resolve this issue, the Court commented that "it just strikes me fundamentally that a document that might be relevant would be whatever documents related to the sale of the business, because those documents perhaps state whether this claim was sold or retained or what." (*Id.* at 28:21-24). DeSilva's attorney responded, "Like I said, we first sounded this issue at the mediation [in 2019]. We were not prepared to produce anything that was needed, but we'll be happy to review our tender. . . . If there are additional transactional documents, we'll certainly be happy to produce them so we could work that issue out." (*Id.* at 29:17-22). Following the status conference, the Court entered PTO 69, which set forth a discovery and briefing schedule for this case and several others. (Rec. Doc. 26709).

After the status conference and despite further requests from BP, DeSilva did not produce any documents concerning the sale of TBOP, although he did produce documents concerning the sale of the Property. On February 22, 2021, BP filed the instant motion where it argued that the evidence it did have indicated that the claim at issue belonged to TBOP, that TBOP was sold in 2017 along with the Property, and

8

that there is no evidence that DeSilva retained TBOP's claim after the sale. (Rec. Doc. 26922). BP relied on, inter alia, the fact that the Florida Department of State's website showed that (1) Steven MacDonald had replaced DeSilva as the manager of TBOP in April 2018 and (2) TBOP was subsequently dissolved while under MacDonald's management. (Rec. Doc. 26922-4, -5).

DeSilva filed an opposition in which he repeatedly denied that TBOP was ever sold:

- "[T]he BOP, LLC was never sold," (Opp'n at 4, n.2, Rec. Doc. 27005);
- "[T]here is zero evidence that Mr. DeSilva ever sold or otherwise actively transferred the LLC to Mr. MacDonald (or anyone else)," (*id.* at 8);
- "The BOP, LLC never filed a tax return, never owned any assets, was never sold …," (*id.*);
- "[T]he BOP LLC was never sold by Mr. DeSilva," (*id.* at 12).

Further, DeSilva stated that the reason Florida records showed a change of manger was because "MacDonald simply unilaterally listed himself as a member." (*Id.* at 4 n.2). DeSilva also asserted that "after selling the Property to Mr. MacDonald . . ., Mr. DeSilva had no reason to continue filing annual reports for the LLC . . . and abandoned it as unnecessary. Apparently, the composition of the LLC was thereafter changed, without the active involvement of, or even any knowledge by, Mr. DeSilva." (*Id.* at 8).

DeSilva's attorney made similar statements at a hearing on April 21, 2021:

- "There was never ever any type of transaction selling any business, The Bird of Paradise, stock, or anything else, Judge," (4/21/21 Transcript at

13:13-14, Rec. Doc. 27067);

- "And as far as the Secretary of State filings in the state of Florida, Mr. DeSilva just simply quit filing annual reports in 2017 when he sold the real estate. Mr. MacDonald, on his own, unilaterally simply went into the Secretary of State and filed reports and basically took that over. There was never a sale," (*Id.* at 13:15-16);

- "I'm telling you this, Mr. DeSilva never sold the LLC to Mr. MacDonald nor anyone else. He simply quit filing his annual reports. Simply. That's what he did," (*Id.* at 14:8-11);

- "But what is an absolute fact, Judge, is The Bird of Paradise as an LLC was never sold to anyone, ever," (*Id.* at 17:7-8).

When the Court asked DeSilva's attorney why DeSilva referred to himself as the "former owner" of TBOP in his opposition brief, counsel replied, "Because he just simply abandoned this LLC." (*Id.* at 14:14-19). When the Court asked how the Single Resort Dwelling License issued to TBOP—which states on its face that it is "non-transferrable" (PTO 65 Stmt., Ex. C-4)—came to be transferred to MacDonald, DeSilva's attorney replied, "[M]y understanding is it was simply given to Mr. MacDonald. It was just signed over to him." (4/21/21 Transcript at 17:11-14). At the end of the hearing, the Court ordered the parties to take the deposition of MacDonald and DeSilva, and then file supplemental briefs. (*Id.* at 31).

MacDonald subsequently produced documents that prove the above statements by DeSilva and his attorney were patently false. MacDonald produced a signed purchase agreement dated June 16, 2017 whereby DeSilva sold 100% of his

10

interest in TBOP to a company controlled by MacDonald. (Rec. Doc. 27145-1 at 123-130). The agreement also states that TBOP owns a license that permits TBOP "to operate as a private resort at the property located at 2707 Pass-A-Grille Way." Thus, this transfer gave MacDonald control over not only TBOP, but the resort license as well. Furthermore, MacDonald explained in a declaration under penalty of perjury that, consistent with the purchase agreement, he listed himself as the member-manager of TBOP with the Florida Department of State in April 2018. (Rec. Doc. 27145-1). Two days after MacDonald produced the purchase agreement, DeSilva admitted at his deposition that he had indeed sold TBOP in 2017. (Rec. Doc. 27145-1 at 52-53).

DeSilva and his attorney have misrepresented facts to the Court. It appears that their false statements have delayed resolution of this matter and created additional and unnecessary work for the Court, BP, and non-party MacDonald. Consequently, the Court orders DeSilva and his attorney to show cause in writing by no later than **August 2, 2021** why either or both of them should not be sanctioned under the Court's inherent authority and/or Fed. R. Civ. P. 11. The Court is considering imposing the following sanctions:

> (1) requiring DeSilva and/or his attorney to pay some of BP's expenses and attorney fees; and/or
>
> (2) requiring DeSilva and/or his attorney to pay a fine to the Court.

BP may file a reply, if it chooses to do so, by no later than **August 9, 2021**.

## V.

Accordingly,

11

**IT IS ORDERED** that BP's Motion to Dismiss for Lack of Standing to Prosecute the Claim (Rec. Doc. 26922) is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff John R. DeSilva and his attorney, Ronnie G. Penton, shall **SHOW CAUSE** in writing by no later than **Monday, August 2, 2021,** why either or both of them should not be sanctioned as set forth in Part IV of this Order. BP may file a reply by no later than **Monday, August 9, 2021.**

New Orleans, Louisiana, this 19th day of July, 2021.

_____
United States District Judge