UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | * | MDL 2179 |
| "Deepwater Horizon" in | * | |
| The Gulf of Mexico, on | * | SECTION J(2) |
| April 20, 2010 | * | |
| This Document Relates to: | * | JUDGE BARBIER |
| | * | |
| *Remaining Cases in the B1 Bundle* | * | MAG. JUDGE CURRAULT |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN DeSILVA, INDIVIDUALLY,** | CIVIL ACTION NO. 2:16-CV-05277 |
| **AND AS THE SOLE MEMBER,** | |
| **OWNER, AND OPERATOR OF THE** | |
| **BIRD OF PARADISE, LLC** | SECTION J |
| **VERSUS** | JUDGE BARBIER |
| **BP EXPLORATION AND** | |
| **PRODUCTION, INC., ET AL.** | MAG. JUDGE CURRAULT |

### RESPONSE BY RONNIE PENTON TO SHOW CAUSE ORDERS RECORD DOCUMENTS 27174 AND 27175

**MAY IT PLEASE THE COURT**:

Ronnie Penton respectfully submits this response to address the concerns recited by the Court in its Show Cause Order issued on July 19, 2021 (Rec. Doc 27174) and the Supplemental Order issued On July 20, 2021 (Rec Doc 27175). The questions posited by the Court in its two Orders are undoubtedly reasonable with respect to The Bird of Paradise, LLC, but at no time did Ronnie Penton deliberately convey inaccurate or false information to the Court. As he has undertaken during his past four decades as an attorney, Ronnie Penton diligently and thoroughly gathered information and documents to provide meaningful representation to his client; concomitantly, Ronnie has recognized his constant obligation to be candid and forthright with

the Court and opposing counsel based upon all the information he was able to gather through his clients and third parties. He did not deviate from that overriding obligation to the Court in this proceeding.

John DeSilva retained The Penton Law Firm in June 2012 through referral by Jackson Bowman with the St. Petersburg law firm of Moore, Bowman & Reese, formerly Moore, Bowman & Rix. Bowman was not the typical "referral lawyer" in an out-of-state case. In fact, he had represented Mr. DeSilva over twenty years, including in the litigation involving the City of St. Pete Beach and the ultimate granting of a zoning variance, which paved the way for the creation of the "celebrity guest and charity venue." His knowledge of Mr. DeSilva and The Bird of Paradise was first-hand and extensive. Bowman and his law firm provided extensive information and documentation for the OPA presentment, as well as compliance information and documentation for all court orders, pretrial, and case management orders since the inception of Mr. DeSilva's claim more than nine years ago.

Penton's representations to the Court were based solely upon the representations by the client, John DeSilva, and referral/co-counsel, Jackson Bowman's, far-reaching and thorough factual investigation and research, as well as Penton's review of the information and documents presented to him by them. John DeSilva's claim arising from the Deepwater Horizon Disaster has been pending for more than nine years. BP's team of attorneys have proffered a series of maneuvers to defeat Mr. DeSilva's claim. From 2012 through October 3, 2019, BP's defense arguments included causation, allegations of overstated damages by the claimant, suggestions of speculative damages, and alternatively, the incorrect proposition that no oil from the Deepwater Horizon catastrophe ever reached the Tampa, Florida area (Exhibit 7). All of BP's arguments fell flat (Exhibit 9).

PTO 67 required BP to disclose all documents that could support its proposed defenses. In meeting with U.S. District Judge Duval (Ret.), BP referenced the issue of claim ownership retention.  BP's attorneys resorted to a new argument and first mentioned its standing contention in the mediation before former U.S. District Judge Duval (Ret.).  Not surprisingly, Judge Duval was taken back by BP's newly minted argument in view of this Court's PTO 67.

Four (4) days prior to the October 17, 2019 Court-ordered mediation, BP made the statement in an email "…it is not clear that Mr. DeSilva retains an ownership interest in The Bird of Paradise, LLC" and requests "clarification" whether DeSilva "currently has authority" to pursue this claim "on behalf of The Bird of Paradise, LLC" (Exhibit 1).  On Wednesday, October 16, 2019, Penton responded to BP's request for clarification by stating, "This claim is owned by Mr. DeSilva and was not transferred with the acquisition of The Bird of Paradise by the new owner (Exhibit 2).  We have no problem with providing an acknowledgement by the current owner that they have no interest in this claim."  In yet another turn, BP first questioned to the Court (not in PTO 67 response) claim ownership at the September 9, 2020 status conference, even though Ronnie Penton notified BP's attorneys a year earlier by providing the complaint, confirmation of DeSilva's ownership of the claim, and offer of an acknowledgement by the buyer (MacDonald) that he had no interest in the claim (Exhibit 2).

At the September 9, 2020 status conference, BP's attorneys advised Ronnie Penton that all they needed were depositions on the ownership and did not need documents.  This was the first time that BP had raised specifically "who owns the claim" as an issue in this case other than its standing argument presented the previous year. (Exhibit 3 at Page 26, Lines 21 - Page 27, Line 4; Page 27, Lines 16-19; Page 28, Lines 13-19; Page 29, Lines 14-22).  As detailed below, BP's representation proved to be yet another inappropriate litigation tactic. Exacerbating its

misleading conduct, BP repeated its proposal and requested Claimant and Ronnie Penton to agree to a stay of PTO 69 discovery and dispositive motion Order (Exhibit 10) after Penton offered John DeSilva for a deposition in February 2021, in accordance with PTO 69 (Exhibits 11 and 12).  Penton and DeSilva agreed to a stay to conserve the parties' and the Court's resources and the stay was granted on February 22, 2021.  In other words, BP essentially stopped depleting the Court's resources and leading the parties to devote less work and expenses to this remaining issue that was belatedly broached by BP.  BP then filed its motion attacking standing (Rec. Doc.26922) and Ronnie Penton filed an opposition brief on behalf of DeSilva (Rec. Doc. 27005).

As this Court knows, the latest challenge by BP was rejected by Your Honor in the July 19th Order and Reasons (Rec. Doc. 27174). The backdrop to BP's last argument was raised during a status conference on September 9, 2020.  At that status conference there was no forewarning by BP's attorneys to Ronnie Penton that BP's latest defense notion hinged loosely on claim ownership of The Bird of Paradise.  This Court observed that documents related to the sale of the business might be relevant to whether The Bird of Paradise was sold and any retention of the pending claim (Exhibit 3).

The Court promptly requested Ronnie Penton to provide any documents relating to a sale by John DeSilva to Steven MacDonald. Ronnie Penton complied and furnished the BP attorneys with all of the documents and information he was able to retrieve from his client and referral counsel.  These documents and information were delivered to BP's attorneys by the next month, as the Court directed (Exhibit 8).  In addition, supplementing Penton's investigative efforts, he immediately conferred with John DeSilva and Jackson Bowman (Florida co-counsel) to discuss once again the issue of "claim ownership". Bowman researched Florida law on retention of claims, reviewed all transactional documents relating to the sale of the real estate by DeSilva, the

absence of recordation as to The Bird of Paradise or any publicly filed document, complemented with yet more extensive conversations with John DeSilva as to the status of The Bird of Paradise. John DeSilva remained adamant that he did not sell The Bird of Paradise. Bowman then sought to detect any evidence of the sale of The Bird of Paradise as part of his search of public records, review of DeSilva's 2017 tax returns, and conversations with DeSilva's CPA of thirty years.

To address the issue of ownership of the claim, Bowman prepared a proposed affidavit for Steven MacDonald bearing upon ownership of the claim. On September 18, 2020, Steven MacDonald attested that he "did not purchase, nor acquire any interest in the litigation and the inherent claims, and that he has no interest in and to those rights" (Exhibit 4).[1]] The Court recommended, at the April 21, 2021 hearing, that the depositions of John DeSilva and Steven MacDonald should be taken to compile as complete a record as possible. The Court allowed supplemental briefing after those depositions were be taken. Once again adhering to the Court's requests, Ronnie Penton noticed the depositions of DeSilva and MacDonald and tendered DeSilva for deposition (Exhibit 13 and 15). Supplementing Penton's investigative efforts, he immediately conferred with John DeSilva and Jackson Bowman (the Florida attorney) to discuss once again the issue of "claim ownership".

After noticing MacDonald's deposition on May 11, 2021 (Exhibit 13), Ronnie Penton received an email from Mr. Ritter on May 17, 2021 at 3:44 p.m., the afternoon prior to MacDonald's scheduled deposition, informing him that, "BP sees no need for any deposition of Stephen MacDonald to proceed nor for a deposition of John DeSilva on May 19…" and that "I have advised Mr. MacDonald's counsel that in view of Mr. MacDonald's declaration, he has provided sufficient information and BP sees no need to require his deposition." Ritter then

---

[1] To avoid duplication, Ronnie Penton incorporates in his response Bowman's factual sequence of events and efforts, as corroborated in John DeSilva's personal submission to this Court.

"confirmed that MacDonald does not plan to appear for a deposition tomorrow."[2] The BP attorneys crafted the MacDonald Affidavit. This chronology is corroborated in a series of emails from BP's attorneys and MacDonald's attorney (Exhibit 5). Needless to say, this unusual tactic came as a surprise to Ronnie Penton, particularly because he was the attorney who noticed MacDonald's deposition consistent with this Court's comments at the April 21, 2021 hearing on BP's Motion (Exhibit 16 at Page 31, Lines 11-20).

Nevertheless, Jackson Bowman proceeded with defending the deposition of John DeSilva (Exhibit 14). During that deposition Mr. DeSilva admitted his confusion about the real estate transaction that apparently occurred contemporaneously with the sale of Bird of Paradise. When initially confronted with The Bird of Paradise transfer document, John DeSilva immediately apologized to the Court, apologized to Ronnie Penton, and similarly expressed his regret to BP's counsel (Exhibit 14 at Page 29, Line 18 - Page 31, Line 24). Notably, though Ronnie Penton questioned his client in the past (and certainly again after the September 2020 status conference and April 21, 2021 hearing) about a sale of The Bird of Paradise, this was the first epiphany and recognition by John DeSilva that the sale of his immovable property had an attenuated link to The Bird of Paradise. These facts and Ronnie Penton's specific lack of knowledge about the status of The Bird of Paradise is better understood by the federal tax return filed in 2017 by DeSilva's CPA in which there is no mention of The Bird of Paradise (Exhibit 6). Of equal import is the lack of a public recording of any Bird of Paradise transaction compounded by John

---

[2] In response to the Court's inquiry in the show cause orders, Ronnie Penton offered a few limited additions to one of MacDonald's affidavits to clarify that MacDonald was not asserting any claim against BP as the purchaser of property from John DeSilva. (Exhibit 4). In sharp contrast, Ronnie Penton was not nearly as intimately involved in the preparation of the other MacDonald affidavit as the BP attorneys oversaw and may have drafted, which resulted in Mr. MacDonald not providing his deposition at the direction and/or suggestion of BP's attorneys and in contravention of what this Court expected during the September 9, 2020 status conference.

DeSilva's stated lack of knowledge or abject confusion regarding the documents he admitted he rotely signed at the title offices. This series of events reasonably establishes that, despite Ronnie Penton's concerted efforts to delve into the history of The Bird of Paradise, coupled with his reasonable reliance on his client's factual recitations on multiple occasions and exhaustive research by co-counsel, there was no design or intention to misstate any facts to the Court or opposing counsel. Indeed, BP's cadre of attorneys had more information about The Bird of Paradise than Ronnie Penton was able to glean from his client - the usually quintessential and more informative source of information. Reasonably, Ronnie Penton's statements to the Court were based upon the repeated representations by his client, John DeSilva, and Jackson Bowman, referral counsel in Florida, as well as Penton's scrutiny of the facts and documents presented to him by DeSilva and Bowman. Mr. Bowman is a partner in the law firm of Moore Bowman and Reese in Tampa, Florida and has practiced real estate law for more than 20 years. Moreover, Jackson Bowman has represented John DeSilva since the inception of his practice. Mr. Bowman's historic representation of John DeSilva and DeSilva's property transactions was first-hand and sweeping. Since the inception of DeSilva's claim nearly a decade ago, Mr. Bowman has been a primary source of information and documentation for all court orders, motions, briefs, and case management orders.

  The Court made clear in its July 19th and July 20th show cause orders that it is considering if Ronnie Penton should be subjected to any form of Rule 11 sanctions. Respectfully, a Rule 11 sanction against Ronnie Penton is not justified in these circumstances.

  Ronnie Penton has practiced before Your Honor and many other sections of this Court. He has represented clients in federal and state courts for the past 41 years. While Ronnie is an aggressive litigator, he has always made certain that candor, honesty, and forthrightness to a

court and an opponent are his lifelong trademarks. This case is no exception. Having undertaken reasonable due diligence and relying on his client, Florida counsel, as well as other public documents, Ronnie Penton assiduously adhered to the purpose and spirit of FRCP Rule 11. Correspondingly, Ronnie Penton complied with the Rules of Professional Conduct and specifically Rule 3.3 (Candor toward the Tribunal) and Rule 4.1 (prohibition against knowingly making a false statement to others). These Rules have been adopted by this Court. Ronnie Penton knows these Rules and lives by them. Illustrative of his dogged compliance is the telling fact that he has not been sanctioned by a Court during his decades of legal practice, which has frequently involved some of the most challenging, hard-fought and difficult lawsuits.

District Judges have wide discretion in deciding whether to impose sanctions under Rule 11(c)(3) and if so, the type of sanction or admonishment to be issued. Of course, each Rule 11 determination requires a fact-intensive inquiry of the "reasonableness under the circumstances." Ronnie knows that this Court has opined on sanctions and is conversant with the changes in Rule 11 analytical criteria that have transpired. Counsel for John DeSilva with Mr. DeSilva will separately address the Court and provide additional information about Steven MacDonald's affidavit, in response to this Court's Supplemental Show Cause Order (Rec. Doc. 27175).

While most Rule 11 decisions focus on pleadings, some analogous doctrines can be perceived. At the outset, an attorney is expected to conduct a reasonable inquiry into the facts. Ronnie Penton did exactly that.

As noted above, since 1983, the standard under Rule 11 is an objective standard and no longer a subjective one. *Cf. Thomas v. Capital SEC. Services, Inc.*, 836 F2nd 866 (5th Cir.). Further, Ronnie Penton recognizes that good faith is no longer a viable defense to Rule 11 considerations. However, even with these changes, Ronnie Penton did not step into Rule 11

territory given his efforts to obtain all relevant facts and his disclosure to the Court as Ronnie had painstakingly developed those facts and believed them to be true and accurate, particularly given his client's repeated statements as to TBOP and exacerbated by BP's strategic decision to veer from the Court's Pre-Trial Order and raise the TBOP issue at the status conference on September 9, 2020 sans notice to Ronnie Penton.

Courts in the Fifth Circuit examine a number of factors, including but not limited to, whether the questioned conduct was willful or negligent, whether it was a pattern of activity or an isolated event, whether the attorney has engaged in similar conduct in other litigation, the reliance upon the client for factual support, and whether it was intended to injure. Respectfully, Ronnie Penton's conduct does not trigger any of these factors that would result in the imposition of Rule 11 sanctions. See, *e.g. Castillo v. Blanco* (E.D. La.2007) (Barbier, J.) (citing FRCP Rule 11 Adv. Comm. Notes).

In tandem with the above-cited precepts is the premise that the purpose of Rule 11, as this Court itself has stressed, is deterrence rather than punishment. *Id*.

## CONCLUSION

Without doubt, Ronnie Penton acutely recognizes that this proceeding has been riddled with ever changing legal theories by BP and at times confusing facts that would frustrate most district judges, though the Court cut through the legal morass and made the correct determinative ruling in its July 19th Order and Reasons. (Rec. Doc. 27174). Ronnie Penton knows and respects Your Honor. He sincerely regrets if there is a perception that he was deviating from his consistently truthful, ethical, and professional standards. Ronnie has worked hard over the past 40 plus years to preserve his reputation that the Court and opposing counsel can accept his words

without challenge. He resolutely wishes to maintain that reputation and a professional history that is not tainted by the imposition of a Rule 11 sanction.

For these factual reasons and legal authorities, Ronnie Penton respectfully requests the Court to decline the imposition of any sanctions against him.

**THE PENTON LAW FIRM**
209 Hoppen Place
Bogalusa, Louisiana 70427
Phone:  985-732-5651
Email:   fedcourtmail@thepentonlawfirm.com


/s/ Ronnie G. Penton
Ronnie G. Penton, pro se (LA Bar #10462)

**PHELPS DUNBAR LLP**

/s/ Harry Rosenberg
Harry Rosenberg (LA Bar #11465)
365 Canal Place, Suite 2000
New Orleans, Louisiana 70130
Phone:  504-566-1311
Facsimile:  504-568-9130
Harry.Rosenberg@phelps.com


**SCHIFF, SCHECKMAN & WHITE LLP**

/s/ Leslie J. Schiff
Leslie J. Schiff (LA Bar #11776)
117 West Landry Street
Opelousas, Louisiana 70570
Phone:  337-942-9771
Facsimile:  337-942-2821
leslie@sswethicslaw.com

**COUNSEL FOR RONNIE G. PENTON**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing *Plaintiff's Memorandum in Opposition to BP's Motion to Dismiss for Lack of Standing* has been served on all Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electric filing, in accordance with the procedures established in MDL 2179, on this the 2nd day of August, 2021.

/s/ Ronnie G. Penton
Ronnie G. Penton