# EXHIBIT 3

1

```
           UNITED STATES DISTRICT COURT

           EASTERN DISTRICT OF LOUISIANA


****************************************************

IN RE: OIL SPILL BY THE
OIL RIG DEEPWATER HORIZON
IN THE GULF OF MEXICO ON
APRIL 20, 2010

                        CIVIL ACTION NO. 10-MD-2179 "J"
                        NEW ORLEANS, LOUISIANA
                        WEDNESDAY, SEPTEMBER 9, 2020, 9:00 A.M.


THIS DOCUMENT RELATES TO
13-1658, 13-1286, 16-5923,
16-5941, 16-5952, 18-11120,
16-3966, 16-6126, 16-6131,
16-6118, 16-6585, 16-4149,
16-7488, 16-5277, 18-11122,
13-948 (CERTAIN CASES IN THE
B1 BUNDLE)

****************************************************


TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS VIA VIDEOCONFERENCE
        HEARD BEFORE THE HONORABLE CARL J. BARBIER
                UNITED STATES DISTRICT JUDGE


APPEARANCES:


FOR THE PLAINTIFFS:     THE BUZBEE LAW FIRM
                        BY:  CAROLINE E. ADAMS, ESQUIRE
                        600 TRAVIS STREET, SUITE 7300
                        JP MORGAN CHASE TOWER
                        HOUSTON TX   77002
```

*OFFICIAL TRANSCRIPT*

Case 2:10-md-02179-CJB-DPC   Document 27182-3   Filed 08/02/21   Page 3 of 8
Case 2:10-md-02179-CJB-DPC   Document 26700   Filed 09/29/20   Page 4 of 32

4

```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2                WEDNESDAY, SEPTEMBER 9, 2020
 3                   M O R N I N G   S E S S I O N
 4                     (VIA VIDEOCONFERENCE)
 5
 6
 7         THE COURT:  Good morning, everyone.
 8         VOICES:  Good morning, Your Honor.
 9         THE COURT:  All right.  Hopefully, everyone is present
10   who needs to be present.
11              This matter is a status conference that the Court
12   has scheduled to discuss and figure out how to proceed with the
13   remaining B1 claimants or lawsuits.  It appears, from my list,
14   that we have 16 remaining B1 cases.  I don't know if anyone
15   wants to respond to whether they feel that number is accurate
16   or not.
17         MR. REGAN:  Your Honor, Matthew Regan on behalf of BP.
18              I think in terms of the actual case number, I
19   think we have 15, and I can walk through the five that we
20   believe are no longer active since our filing in January of
21   2020, and then the actual number of cases is probably smaller
22   than that because there are some related plaintiffs, but I
23   think in the 15 range is what we have, Your Honor.
24         THE COURT:  Okay.  Well, we're close.  I'm showing 16;
25   although, I'll tell you what I'll do, and you can check these
```

*OFFICIAL TRANSCRIPT*

Case 2:10-md-02179-CJB-DPC   Document 27182-3   Filed 08/02/21   Page 4 of 8
Case 2:10-md-02179-CJB-DPC   Document 26700   Filed 09/29/20   Page 17 of 32

17

1   what the arguments are there, but you may or may not be right
2   is all I'm pointing out.
3           MR. REGAN:  I think that's what we would like to put in
4   front of the Court is not only that case but all of the history
5   with respect to that particular claim because it's a
6   fundamental go, no-go question on the BioMarine, Gulf Marine
7   cases that, I think, some guidance would be helpful on.
8           The other one that has sort of that threshold
9   legal question would be The Bird of Paradise matter, which is
10  16-5277.  From our perspective, there is a question about who
11  owns that claim, and through motion practice we think that
12  could be resolved, which would then, obviously, provide
13  direction of what should happen next.
14          With respect to the others, I mean, again, I
15  think without getting into detail on them, I'm happy to talk
16  about any of the specific cases, but what we would be proposing
17  is an expedited procedure that could be completed probably in
18  about nine months, we think, given that it's only six essential
19  matters, and it's not that many depositions that would bring us
20  to a substantial closure, if not complete closure, for what's
21  here.
22          I'm happy to answer further questions, but that's
23  what we proposed with respect to those last remaining matters.
24          THE COURT:  So, am I understanding that all of these
25  remaining, not all of these, this last group that you talked

*OFFICIAL TRANSCRIPT*

Case 2:10-md-02179-CJB-DPC   Document 27182-3   Filed 08/02/21   Page 5 of 8
Case 2:10-md-02179-CJB-DPC   Document 26700   Filed 09/29/20   Page 26 of 32

26

1    If the Court wants or grants discovery in a CMO,
2  we'll be happy to participate in that, and we'll be happy to
3  meet with Mr. Keegan and Mr. Regan and try to work that out.
4             THE COURT:  When you say *it's purely,* it may be purely
5  a legal issue, but I'm not sure that's necessarily the case.  I
6  don't know.  The claim is listed as *John DeSilva*.  Is that the
7  person you represent here, is John DeSilva?
8             MR. PENTON:  Yes, Your Honor, as John DeSilva is on the
9  presentment paperwork, as well as all the claims, is the single
10 member of -- owner of The Bird of Paradise, L.L.C.
11            THE COURT:  Okay.  So, what's the issue, as you
12 understand it, as to what BP is suggesting that there is an
13 issue of who owns this claim?
14            MR. PENTON:  Judge, the first we found out about this
15 was actually in the mediation, and apparently -- I'll let
16 Mr. Regan speak for them -- in 2017, Mr. DeSilva sold this
17 business, and I have to say that could be the only -- the only
18 issue that I'm aware of, but I'll let Mr. Regan speak to that.
19            THE COURT:  What year?  I'm sorry?  What year?
20            MR. PENTON:  2017.
21            THE COURT:  Oh, okay.  So, long after the oil spill.
22 So, the question is:  Did he retain ownership of this claim or
23 not?
24            MR. PENTON:  Yes.  That's why it goes back to what a
25 single entity L.L.C is.

*OFFICIAL TRANSCRIPT*

Case 2:10-md-02179-CJB-DPC   Document 27182-3   Filed 08/02/21   Page 6 of 8
Case 2:10-md-02179-CJB-DPC   Document 26700   Filed 09/29/20   Page 27 of 32

27

```
 1              THE COURT:  Well, who did he sell it to?  Did that
 2   entity or person make a claim?
 3              MR. PENTON:  No, they didn't.  He still has the claim.
 4   That's our opinion.
 5              Judge, just so that the Court understands our
 6   position is under a single entity L.L.C., you can elect whether
 7   to be taxed as a corporation or as a disregarded entity.  As a
 8   disregarded entity, you take -- you take the deductions and the
 9   revenue on your personal return when you're a single-member
10   L.L.C.
11              THE COURT:  Well, thanks for that tax lesson, but I'm
12   not sure I understand how that helps resolve this here.
13              So, really quickly, Mr. Regan, what's BP's
14   argument here as to why there is a question about who owns this
15   claim?
16              MR. REGAN:  Yeah, it's exactly what the question you
17   just asked.  We don't see evidence or evidence that he actually
18   retained the claim.  He doesn't own this business any more.  He
19   sold it in 2017.
20              As I said in the beginning, both BioMarine and
21   Gulf Marine for different issues and also Bird of Paradise,
22   these are the two where, even before we get into some
23   depositions, there might be some legal questions that we could
24   bring forth immediately because, frankly, this is the challenge
25   we have in that we need to know that the person that's in front
```

Case 2:10-md-02179-CJB-DPC   Document 27182-3   Filed 08/02/21   Page 7 of 8
Case 2:10-md-02179-CJB-DPC   Document 26700   Filed 09/29/20   Page 28 of 32

28

```
 1    of us actually has the claim.
 2              That's our question.  It was the question we had
 3    before the case was mediated, and it's the reason why the
 4    mediation really didn't go anywhere because it really hasn't
 5    been answered from our standpoint, and we know there have been
 6    other --
 7              THE COURT:  So, what are you looking for?  Are you
 8    looking for documents?  Do you have documents pertaining to the
 9    sale itself and what those documents say or don't say?
10              MR. REGAN:  I don't think we have it in detail to
11    confirm that we know that Mr. Penton's clients retained the
12    claim, no.
13              MR. PENTON:  Well, Mr. Keegan, Your Honor, had told me
14    yesterday that there was no documents that he really needed to
15    resolve this issue.  He just needed to take the depositions.
16              If there are additional documents they need, I
17    would be happy to review our exhibits that we tendered to BP
18    and see if there are other documentation they are interested
19    in.  Mr. Keegan said there was not.
20              THE COURT:  I'll let Mr. Keegan answer, if he wants to,
21    for himself, but it just strikes me fundamentally that a
22    document that might be relevant would be whatever documents
23    relate to the sale of the business, because those documents
24    perhaps state whether this claim was sold or retained or what.
25    It certainly seems like that would be relevant.
```

*OFFICIAL TRANSCRIPT*

Case 2:10-md-02179-CJB-DPC   Document 27182-3   Filed 08/02/21   Page 8 of 8
Case 2:10-md-02179-CJB-DPC   Document 26700   Filed 09/29/20   Page 29 of 32

29

```
 1              Let me let Mr. Keegan respond, if he cares to.
 2              MR. KEEGAN:  Yes, Your Honor.  Chris Keegan on behalf
 3    of the BP departments.
 4              For all of these cases, as Mr. Regan has said we
 5    think very limited discovery is appropriate.  To the extent
 6    that we don't (audio distortion gap) -- wasn't sure if that was
 7    provided in the earlier process or not.  I think Your Honor is
 8    right that one or two relevant documents might be spot on; so,
 9    Mr. Penton, if we don't have that already (audio distortion
10    gap) -- whether we need a deposition on top of that or not, I
11    think is a very open question, and we would be happy to discuss
12    with Mr. Penton, but it is a very straightforward question
13    whether purely legal or (audio distortion gap) the ownership.
14              THE COURT:  Okay.  Mr. Penton, did you want to say
15    anything else?
16              MR. PENTON:  Yes, Your Honor.
17              Like I said, we first sounded this issue at the
18    mediation.  We were not prepared to produce anything that was
19    needed, but we'll be happy to review our tender.  We'll be
20    happy to meet with Chris and discuss documentation.  If there
21    are additional transactional documents, we'll certainly be
22    happy to produce them so we could work that issue out.
23              THE COURT:  Okay.  All right.  Anybody else have
24    anything to say right now?
25              I guess I'll ask a general question first:  If I
```

OFFICIAL TRANSCRIPT