# Exhibit 14

Page 1

1                         DeSilva

2            IN THE UNITED STATES DISTRICT COURT

3              CIVIL ACTION NO.: MDL NO. 2179

4

5   In Re: Oil Spill by the Oil Rig  ) SECTION "J"
    "Deepwater Horizon" in the Gulf   )
6   Of Mexico, on April 20, 2010      )
                                      ) JUDGE BARBIER
7   This Document Relates to:         )
    John De Silva, et al vs. BP       ) MAGISTRATE JUDGE
8   Exploration and Production        ) CURRAULT
    Et al.                            )
9   Civil Action Number 16-CV-05277   )
                                      )
10  ----------------------------------)

11

12          The 30(b)(6) deposition of JOHN DESILVA,

13  taken remotely via Zoom videoconference on Wednesday,

14  May 19, 2021.

15

16

17

18

19

20

21

22

23  Reported by:

24  L. ALAN PEACOCK, FAPR, RDR, CRC, CCR

25  JOB NO. 194051

```
                                              Page 26
 1                    DeSilva
 2      A.   I have no idea what it is.  It's his.  I
 3   don't know anything about it other than --
 4      Q.   Are you referring to an entity named
 5   Barracuda Club LLC?
 6      A.   Yes.
 7      Q.   And do you understand that that is a legal
 8   entity that is controlled by Mr. Steven MacDonald?
 9      A.   I do know that much, yeah.
10      Q.   And it's your understanding that Barracuda
11   Club LLC is the current holder of the resort license
12   for the former Busch Estate?
13      A.   Yes.
14      Q.   I'm sending you a document titled "Membership
15   Interest Purchase Agreement."
16      A.   I have it here.  Let me put this other thing
17   away for a moment if you don't mind.
18           MR. RITTER:  Would the court reporter please
19      mark this document as Exhibit 2.
20           (DEPOSITION EXHIBIT 2 WAS MARKED FOR
21           IDENTIFICATION.)
22           THE WITNESS:  I have it here, Kris.
23   BY MR. RITTER:
24      Q.   Do you recognize this document?
25      A.   I do now, yes.
```

```
                                              Page 27
 1                    DeSilva
 2      Q.   Can you tell me what this document is?
 3      A.   It's basically structures of sale of The
 4   Birds of Paradise to Steven MacDonald.
 5      Q.   And what is the date of this document?
 6      A.   Hold on a second.  It's on the signature
 7   page.
 8           Yeah, I don't have a date on this.  I'm
 9   sorry.  It doesn't have a date.
10      Q.   So, Mr. DeSilva --
11      A.   I think it was June 16, 2017, wasn't it?
12      Q.   If you look at the first paragraph of the
13   agreement on page 1, I think you will see that is dated
14   as of June 17, 2017.
15           Do you see that?
16      A.   Yes, there it is.  Okay.  I see it.
17      Q.   And if you look at that same paragraph, do
18   you see it identifies the Barracuda Club LLC as the
19   buyer under this agreement?
20      A.   Yep, I see that.
21      Q.   And it identifies John DeSilva in his
22   capacity as sole member of the company as seller?
23      A.   I see that.
24      Q.   And you will see that it identifies The Bird
25   of Paradise, LLC, as the company?
```

```
                                              Page 28
 1                    DeSilva
 2      A.   That's what it says.
 3      Q.   If you turn to the final page of the
 4   agreements.  Is that your signature?
 5      A.   It is.
 6      Q.   On the line under "Seller"?
 7      A.   Yes.
 8      Q.   And then a little further down, under
 9   "Company," it states, "The Bird of Paradise, LLC, a
10   Florida limited liability company."
11           Is that your signature --
12      A.   It is.
13      Q.   -- for The Bird of Paradise, LLC?
14      A.   Yes.
15      Q.   And did you sign this agreement?
16      A.   I did.
17      Q.   This is an agreement that conveys 100 percent
18   of the membership interests in The Bird of Paradise,
19   LLC, from you to Barracuda Club LLC; isn't that
20   correct?
21      A.   That's what it says, yes.
22      Q.   Have you familiarized yourself with this
23   agreement prior to this deposition?
24      A.   I have.
25      Q.   Can you point to anything in this agreement,
```

```
                                              Page 29
 1                    DeSilva
 2   in this purchase agreement, that provides that you
 3   would retain any assets of The Bird of Paradise, LLC,
 4   after your membership interests were transferred to
 5   Barracuda Club LLC?
 6      A.   I don't.
 7      Q.   From this membership interest purchase
 8   agreement, are there any references to The Bird of
 9   Paradise, LLC's claim in litigation against any of the
10   BP defendants?
11      A.   I didn't see that in there.  It doesn't mean
12   it's not there.  I didn't see it.
13      Q.   Are you aware of any such provisions in this
14   agreement?
15      A.   I'm not aware of any, no.  Doesn't mean
16   they're not there; I'm just not aware of any.
17      Q.   Who prepared this purchase agreement?
18      A.   I really don't know who prepared it.  I would
19   imagine MacDonald's attorney prepared it, but I
20   don't -- and I'm going to be very, very frank with you.
21   Until the day before yesterday, I never saw this
22   agreement.  I signed the signature page.  And if I
23   might have the floor for a minute, I can explain
24   something here.  It's very important that I get this
25   straight.  And I'd appreciate not being interrupted for
```

Page 30

```
 1              DeSilva
 2   a second.
 3        For some 30 years I went into Heritage Title
 4   for innumerable amounts of closings relative to
 5   purchasing property, selling property, mortgages
 6   against property, many closings regarding this
 7   property. And what would happen is that Peter Graham,
 8   attorney of record for Heritage Title, and his wife,
 9   Tammy Graham, would prepare documents and call me on
10   the phone and say come on in here.
11        And so unlike -- or not unlike every other
12   time I got a call for this and I came in and I signed
13   these documents, what she would do is pass them across
14   the table to me, the signature page, wherever there's a
15   yellow place at the bottom, and I would sign it, either
16   initialing or putting my signature there.
17        And she pushed this across to me, the
18   signature page. And if you look, the signature page is
19   all there is is a signature page; there's nothing else
20   there.
21        I owe an apology to my attorneys. I owe an
22   apology to the Court, Judge Barbier, and to you as
23   well. I made a statement that I never sold The Birds
24   of Paradise. And I would have never made a statement
25   like that had I known that I actually did sell The
```

Page 31

```
 1              DeSilva
 2   Birds of Paradise, which apparently I did here. It was
 3   my understanding that I was vacating my position as a
 4   single sole member of The Birds of Paradise, LLC, that
 5   he could step into that.
 6        The Birds of Paradise has no value. It has
 7   no assets. It doesn't conduct any business. The idea
 8   that there would be a sale of something like that was
 9   beyond my comprehension.
10        So I signed this document, and I never
11   thought back -- never thought about it again after
12   that. And I made the statement to my attorney, to
13   Ronnie Penton, who I deeply apologize to, that I saw
14   the letter that you wrote to him. And it was my -- I'm
15   just not a liar. I would never make a statement like
16   this that is so discoverable to the opposite if I
17   didn't in my heart think that I had sold The Birds of
18   Paradise. I did not think I sold The Birds of
19   Paradise.
20        And that's what's happened here. And I just
21   want to make that clear. I didn't read the document.
22   I own that mistake. I didn't read the document.
23   Doesn't alleviate the fact that my signature is on it.
24   I understand that. But I never read the document.
25        Q.   Mr. DeSilva, when is the first time that you
```

Page 32

```
 1              DeSilva
 2   read this document, received and read this document?
 3        A.   Day before yesterday, the 17th.
 4        Q.   Do you agree that this membership interest
 5   purchase agreement conveys the entirety of your
 6   membership interests in The Birds of Paradise, LLC, to
 7   Barracuda Club LLC as of June 2017?
 8        A.   It does.
 9        Q.   Did you conduct any business under the name
10   Bird of Paradise, LLC, after the date of this
11   agreement?
12        A.   No. Not to my knowledge, no. I walked away
13   on June 16, after 21 years, 2017, and I didn't look
14   back. It was quite a sad day for us. We had big plans
15   for this property. And because of where I'm at with
16   you right now, they were not able to come to fruition.
17   The answer is no.
18        Q.   Having received and had an opportunity to
19   review this membership interest purchase agreement, are
20   you now seeking to pursue any claim on behalf of The
21   Birds of Paradise, LLC?
22        A.   No, because The Birds of Paradise, LLC, never
23   did anything. This is about me litigating against your
24   client for the damage that was done to me. The Birds
25   of Paradise had -- it never conducted any business. It
```

Page 33

```
 1              DeSilva
 2   was a trade name. And the answer is no, I'm not --
 3   this is about John DeSilva against -- and Birds of
 4   Paradise was the name of the company that -- the name
 5   of the -- trade name of the resort, and I filed
 6   everything with my own personal social security number.
 7        Q.   Are you asserting any claims in this
 8   litigation against BP or any other defendants in your
 9   case other than in your individual capacity?
10        A.   Say that again so I get this straight.
11        Q.   Are you asserting any claims in this
12   litigation other than in your individual capacity as
13   John DeSilva?
14        A.   No.
15        Q.   Mr. DeSilva, I'm sending you a two-page
16   document that I believe was part of a filing your
17   counsel made in MDL 2179 in your case.
18        A.   Okay. I've got -- I don't have this.
19        Q.   It should be coming through via the chat.
20        A.   Do I have to do anything to my screen in
21   order to get this?
22        Q.   Yes. And I'm not an expert in the use of
23   Zoom, but I think I can walk you through this.
24        So at the bottom of your screen you should be
25   able to click on the chat function.
```