UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * | MDL NO. 2179 SECTION: J |
| This Document Relates to: *John DeSilva, Individually, and as the Sole Member, Owner, and Operator of The Bird of Paradise, LLC v. BP Expl. & Prod., Inc., et al.* Case No. 16-cv-05277 | * * * | JUDGE BARBIER MAG. JUDGE CURRAULT |

**BP'S REPLY TO RESPONSES TO SHOW CAUSE ORDERS**

As requested in this Court's Orders of July 19 and 20, 2021 (Rec. Doc. 27174, 27175), Defendants BP Exploration & Production Inc. and BP America Production Company (together, "BP") submit this Reply to Response by Ronnie Penton to Show Cause Orders (Rec. Doc. 27182) ("Penton Response") and Reply to Response To Supplemental Order (Rec. Doc. 27181) ("Bowman Response").

**INTRODUCTION**

The Court ordered John DeSilva and his counsel to show cause why they should not be sanctioned after DeSilva made a series of "patently false" statements to the Court that "[i]t appears . . . delayed resolution of this matter and created additional and unnecessary work for the Court, BP, and non-party [Steven] MacDonald." (Rec. Doc. 27174 at 10-11.) Rather than offering a plausible justification for the admitted false statements, the show cause responses underscore the plaintiff's defiance. In fact, DeSilva's latest declaration reveals he made additional false statements to Mr. MacDonald concerning the basis for the Court's April 2021 discovery order. The Court's consideration of sanctions would be appropriate in light of this plaintiff's years of first avoiding, and then repeatedly misrepresenting, simple and fundamental facts, and the latest attempts to disclaim responsibility and blame others for that conduct in the show cause responses.

**BACKGROUND**

The Court discussed the background of this case at length in its order of July 19, 2021 (Rec. Doc. 27174). Given several misstatements in the show cause responses, BP will briefly set the record straight.

In 2019, the Court issued PTO 67 (Rec. Doc. 25370), which ordered the remaining B1 plaintiffs and BP to exchange information and participate in mandatory mediation. The Court-appointed Mediators, Stanwood Duval, Jr., and Sally Shushan, scheduled The Bird of Paradise, LLC ("the LLC" or "TBOP") mediation for Thursday, October 17, 2019.

- o In 2010, DeSilva was the sole member, owner, and operator of the LLC, a Florida company that held a resort license for property owned by DeSilva. However, on October 11, 2019, Counsel for BP discovered that the 2018 annual report the LLC filed with the State of Florida showed a different owner. BP contacted DeSilva's counsel on October 13, 2019 about this exact question—whether DeSilva retained ownership of the LLC's claim—and asked for a response prior to the Mediation. (Penton Response, Ex. 1, (Rec. Doc. 27182-1).)

- o DeSilva's counsel's staff emailed back on October 16 to state that "*Mr. Penton asked me to send you the first page of this complaint where it clearly shows that Mr. DeSilva appears as the sole member, owner, and operator of the Bird of Paradise.*" (Ex. 1, Decl. of Kristopher S. Ritter in Support of BP's Reply to Resps. to Show Cause Order ("Ritter Decl.") at Ex. D (emphasis added).)

- o Counsel for BP responded that the 2016 complaint could not answer the question. (Ex. 1, Ritter Decl. at Ex. C.) BP counsel further asked: "*Are you saying that The Bird of Paradise, LLC's claim against BP was expressly reserved as part of the sale of the LLC by Mr. DeSilva, such that Mr. DeSilva still owns The Bird of Paradise, LLC's claim? Is there paperwork you can provide to us that shows that?*" (*Id*. at Ex. D (emphasis added).) Those questions went unanswered.

- o On October 15, 2019, BP emailed Judges Duval and Shushan to inform them of this new issue prior to the mediation. (*Id*. at Ex. B.) In response, Judge Duval suggested that the mediation should be rescheduled. (*Id*. at Ex. E.) Counsel for DeSilva then indicated on October 16 that plaintiff would prefer the mediation continue as scheduled, and Judge Duval concluded that "*[w]e will proceed tomorrow at 8:30 as planned and the standing issue will be item number one.*" (*Id.* at Ex. F (emphasis added).) During mediation, DeSilva's counsel would not confirm that DeSilva had retained the LLC's claim. The mediation ended due to this threshold issue. In the months that followed, DeSilva never provided documentation that he retained the LLC's claim.

On September 9, 2020, the Court held a status conference. In advance, BP spoke with DeSilva (though counsel) about the parties' disagreement. (BP's Mot. to Dismiss for Lack of Standing to Prosecute the Claim, Ex. D to Decl. of K. Ritter, 9/9/2020 Conf. Tr. 25:19–20 (Rec. Doc. 26922-6) (statement that Penton had "had discussions with Chris Keegan").) During that conference, "DeSilva's attorney did not dispute … that DeSilva had sold TBOP; rather, he argued that the claim was simply not included in the sale." (7/19/2021 Order & Reasons at 8 (Rec. Doc. 27174).) After hearing from the parties, it "str[uck the Court] fundamentally that a document that might be relevant would be whatever documents relate to the sale of the business, because those documents perhaps state whether this claim was sold or retained or what." (BP's Mot. to Dismiss for Lack of Standing to Prosecute the Claim, Ex. D to Decl. of K. Ritter, 9/9/2020 Conf. Tr. 28:21-25 (Rec. Doc. 26922-6).) This was the exact issue raised in the 2019 mediation. DeSilva agreed to produce documents so the parties "could work that issue out." (*Id.* at 29:17-22.)

DeSilva, however, did not produce any documents regarding the LLC's sale. Instead, he produced documents relating only to the sale of the real property. DeSilva also produced an affidavit from Mr. MacDonald dated September 18, 2020 in which Mr. MacDonald stated that he had not purchased any claim and had no interest in it, but it was silent on whether the LLC had been sold. On February 22, 2021, the Court granted BP's unopposed motion to pause the PTO 69 schedule until the Court could resolve this threshold issue, first raised in 2019.

On February 22, 2021, BP moved to dismiss for lack of standing. In response, DeSilva stated that Florida's records showed a change of ownership because "MacDonald simply unilaterally listed himself as a member." (*Id.* at 4 n.2, 8). DeSilva also stated that "as far as the Secretary of State filings in the state of Florida, Mr. DeSilva just simply quit filing annual reports in 2017 when he sold the real estate. Mr. MacDonald, on his own, unilaterally simply went into

the Secretary of State and filed reports and basically took that over.  There was never a sale." (BP's Suppl. Brief in Support of Its Mot. to Dismiss, Ex. A to Decl. of K. Ritter, 4/21/2021 Tr. at 13:15-16 (Rec. Doc. 27145-1).)  In response, the Court observed that counsel had just "accuse[d] Mr. MacDonald] of a crime essentially" of filing false annual reports.  (*Id.* at 13:21–23.)  Given DeSilva's representation that he never sold the LLC, the Court noted it was uncertain who owned the LLC's claim, whether "Mr. DeSilva, Mr. MacDonald, [or] some other party."  (*Id*. at 9:17-21.)  The Court ordered the parties to engage in "jurisdictional discovery" into whether DeSilva "sold or transferred the LLC … when he sold the real estate."  (*Id.* at 29:4-6, 11-13.)

Following the Court's discovery order, BP contacted Mr. MacDonald, and he produced a contract evidencing DeSilva's sale of the LLC in June 2017.  Mr. MacDonald also declared that DeSilva did not reserve the LLC's claim and that Mr. MacDonald had listed himself as the LLC's member with the State of Florida "consistent with the Purchase Agreement."  (Rec. Doc. 27145-1 at 59, ¶ 7).  From BP's perspective, there was no further need to depose Mr. MacDonald.  BP, however, did not (and, indeed, could not) stop DeSilva from deposing him.  Instead, Mr. MacDonald—working with his own lawyer—concluded he would not sit for a deposition without a subpoena.  (Penton Response, Ex. 5 (Rec. Doc. 27182-5).)  Given the unambiguous evidence produced by MacDonald, BP urged DeSilva to "promptly dismiss this action rather than impose additional unnecessary burden to BP and the Court."  (BP's Suppl. Brief in Support of Its Mot. to Dismiss, Ex. E to Decl. of K. Ritter, 5/17/2021 Letter (Rec. Doc. 27145-1).)

When confronted in 2021 with his own signature on the sales contract, DeSilva admitted he had sold the LLC in 2017.  (*Id.* at Ex. C to Decl. of K. Ritter, 5/19/2021 DeSilva Dep. at 30:23–31:4 (27145-1).)  Nonetheless, weeks after the close of discovery, Mr. MacDonald assigned the LLC's claim back to DeSilva, prompting the Court on July 19, 2021 to conclude that DeSilva

could continue to litigate the claim.  (*See* 7/19/2021 Order & Reasons at 4-5 (Rec. Doc. 27174).).

## ARGUMENT

DeSilva has made numerous false statements that have subverted and frustrated the Court's case management process for the past two years and resulted in waste of time and resources by the Court, BP, and Mr. MacDonald.  The responses by DeSilva and his lawyers raise far more questions than they answer, and even go so far as to attempt to blame BP for plaintiff's misconduct.

The Court has power to preserve the integrity of its proceedings.  Under Rule 11, the Court "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R. Civ. P. 11(c)(1).  The Court also has inherent authority "to sanction a litigant for bad-faith conduct."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 35 (1991).

### I. DESILVA MADE NUMEROUS FALSE STATEMENTS TO THE COURT AND OTHERS.

DeSilva has not been candid with the Court, the Mediators, BP, or Mr. MacDonald.  Despite years of opportunities to address the LLC sale, including in his PTO 65 responses in 2018, DeSilva evaded the issue when it was first raised in October 2019, denied it when raised in BP's February 2021 motion, and admitted the sale only when confronted with his own signature on the Purchase Agreement.  His explanations for this misconduct are ambiguous and unpersuasive.

#### A. False Statements Regarding the Sale of the LLC.

As the Court documented at length in its July 19, 2021 order, DeSilva made numerous false statements regarding the sale of the LLC.  Neither show cause response adequately explains these misrepresentations.

DeSilva's explanation, for example, is implausible because—as the Court has explained—the LLC *owned* the license.  (Order & Reasons at 2, 4 (Rec. Doc. 27174) (observing that DeSilva "concedes that the Single Resort Dwelling License was TBOP's property" and explaining that

"[i]n 2004, the State of Florida issued to TBOP a Single Resort Dwelling License.")) Accordingly, accepting DeSilva's explanation that he did not know that he had sold the LLC also requires believing that DeSilva did not understand his own business.  It is equally implausible that DeSilva never understood that he sold the license necessary to operate the business that he allegedly worked so hard to obtain, or failed to review the records relating to the June 2017 transaction during the prolonged controversy from October 2019 through May 2021 on this exact issue.  DeSilva admits now that his title agent has the "entire file."  (Mot. for Leave of Court to Substitute Ex. 12, Decl. of John R. DeSilva in Resp. to Show Cause Orders ("DeSilva Decl.") at 4 ¶ 1 (Rec. Doc. 27184-2).)  His failure to ask to see the "entire file" for years demonstrates at best a disdain for his legal obligations.  Indeed, he only admitted the sale after BP received a copy of the sale contract from Mr. MacDonald—DeSilva himself still has never affirmatively produced the document.

That point is especially potent here when the Court reviews the circumstances regarding Mr. MacDonald's September 18, 2020 affidavit.  Although the show cause responses are silent on certain relevant information, it is clear that DeSilva and Mr. MacDonald communicated regarding this issue following the Court's September 2020 status conference.  (Bowman Response at 4 (Rec. Doc. 27181).)  All DeSilva needed to do was ask Mr. MacDonald for any and all relevant documentation regarding the June 2017 transaction.  Mr. MacDonald would have provided DeSilva with a copy of the LLC sale agreement, just as he provided a copy to BP when asked in May 2021.  Sanctions against DeSilva are thus warranted.  *See, e.g.*, *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 568 (5th Cir. 2006) (upholding sanctions against plaintiff for failure to undertake a "reasonable factual and legal inquir[y]").

The Court's Show Cause order sets forth the history of counsel's prior filings and statements that the Court asked to be addressed.  BP points out that any reliance on their client

DeSilva, if reasonable, does not excuse Mr. DeSilva's conduct, as "sanctions should fall on the client rather than on counsel when the attorney has relied reasonably on the client's misrepresentations or the client failed to disclose relevant facts—but the reliance by the attorney on the client must be reasonable under the circumstances." 5A CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1336.2 (4th ed.); *see also Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. 1994).

### B. False Statements Regarding Mr. MacDonald.

DeSilva also made additional false statements that are not addressed in the show cause responses. For example, DeSilva stated that "MacDonald simply unilaterally listed himself as a member," "[a]pparently, the composition of the LLC was thereafter changed, without the active involvement of, or even any knowledge by, Mr. DeSilva," and "Mr. DeSilva . . . abandoned [the LLC] as unnecessary." (Opp'n at 4, 8 (Rec. Doc. 27005).) In reply, BP explained that had Mr. MacDonald done that, he would have committed a felony under Florida law. During the hearing, DeSilva's counsel insisted that "Mr. MacDonald, on his own, unilaterally simply went into the Secretary of State and filed reports and basically took that over." (BP's Suppl. Brief in Support of Its Mot. to Dismiss, Ex. A to Decl. of K. Ritter, 4/21/2021 Tr. at 13:18–20 (Rec. Doc. 27145-1).)

Neither of the show cause responses nor DeSilva's declaration addresses these falsehoods about Mr. MacDonald, despite the fact that the Court addressed them in its show cause order. (7/19/2021 Order & Reasons at 10 (Rec. Doc. 27174)). It is plain that DeSilva had no factual grounds to level such an accusation against Mr. MacDonald.

### C. DeSilva's False Statements To Mr. MacDonald About The Court's April 2021 Order.

DeSilva submitted a declaration in response to the Court's show cause order that further demonstrates misconduct. Specifically, DeSilva swore under penalty of perjury that in response

7

to the Court's April 2021 order directing further discovery as to whether MacDonald had purchased the LLC and so owned its claim, he contacted Mr. MacDonald:

> He asked me what this was about. I told him it was explained to me by my counsel that BP insinuated to the Court that there may have been some underhanded "Shenanigans" going on between Mr. MacDonald and myself in which he might have paid me "under the table" some undisclosed amount of cash for The Bird of Paradise, LLC (a worthless item). He was not pleased at BP's promoting such false and unsubstantiated insecurity to the Court, nor was I.

(DeSilva Decl. at 4-5 ¶ 3 (Rec. Doc. 27184-2).)

DeSilva's statement to MacDonald is unambiguously false—BP has never suggested that Mr. MacDonald did anything wrong, much less that he engaged in fraud. Indeed, the only party who accused Mr. MacDonald of misconduct was DeSilva himself. The statement also represents a misrepresentation of the Court's discovery order. Rather than truthfully explaining to Mr. MacDonald the actual issue before the Court, DeSilva misled him about it. Had DeSilva truthfully told Mr. MacDonald that the Court wanted to know whether DeSilva had sold the LLC, Mr. MacDonald would likely have promptly answered yes and provided DeSilva a copy of the sales agreement, just as MacDonald did without hesitation when BP asked him several weeks later. But DeSilva did not do that; instead, he misrepresented BP's position and the nature of the Court's discovery order and did not reveal the actual question that the Court wanted answered.

### D. The Show Cause Responses Contain Additional False Statements.

Finally, the show cause responses themselves contain further falsehoods. DeSilva's affidavit, for example states that "[t]he Bird of Paradise, LLC did NOT OWN the License, it owned nothing." (DeSilva Decl. at 3 (Rec. Doc. 27184-2); *see also id.* at 2 ("I NEVER realized I had signed a document in which I SOLD a virtually worthless item that never conducted any business whatsoever relative to my property.")) Yet as the Court has explained, DeSilva "concede[d] that the Single Resort Dwelling License was TBOP's property." (7/19/2021 Order & Reasons at 4

8

(Rec. Doc. 27174).) That DeSilva would again repeat that falsehood even after this Court's order is actionable. *See, e.g.*, 8/2/2021 Order & Reasons (Rec. Doc. 27180) (sanctioning Brian Donavan for, *inter alia*, "redundant arguments" the Court had already rejected).[1]

## II.   THESE NUMEROUS FALSE STATEMENTS HAVE PREJUDICED THE COURT, BP, AND MR. MACDONALD.

As the Court observed, "[i]t appears that [DeSilva's and his counsel's] false statements have delayed resolution of this matter and created additional and unnecessary work for the Court, BP, and non-party MacDonald."  (7/19/2021 Order & Reasons at 11 (Rec. Doc. 27174).)  Indeed, DeSilva's misconduct has created obvious prejudice, including:

- o **Undermining PTO 67**:  The Court issued PTO 67 in February 2019, appointing Retired Magistrate Judge Shushan as mediator and setting out an ambitious process aimed at resolving nearly 70 remaining claims.  BP and the mediators invested significant time and effort thoroughly preparing to mediate the LLC's claim.  DeSilva's evasion of the ownership issue, even when directly asked, undermined the mediation process.

- o **Undermining PTO 69**:  In the September 2020 hearing, the Court expressly addressed the threshold issue of the ownership of the LLC and its claim that DeSilva would need to address to proceed with his case.  DeSilva again evaded that issue, requiring the LLC's case to be removed from the PTO 69 process.  It is now August 2021, and the PTO 69 process has not advanced for DeSilva's claim.

- o **Wasteful Litigation Efforts**:  This is now the *fifth* brief that BP has had to prepare, and the Court has had to consider, on the LLC ownership issue.  BP and its counsel have

---

[1] BP also disputes Penton's and Bowman's characterizations of this case's history.  Penton asserts that "BP's attorneys resorted to a new argument and first mentioned its standing contention in the mediation before former U.S. District Judge Duval (Ret.).  Not surprisingly, Judge Duval was taken back by BP's newly minted argument in view of this Court's PTO 67."  (Penton Response at 3 (Rec. Doc. 27182).)  Nothing about that statement is correct.  BP raised the issue days *before* the mediation in an attempt to clarify the matter before the parties met and so remove an obstacle to productive settlement discussions.  (*See* Ex. 1, Ritter Decl. at Ex. A.)  That is why Judge Duval himself proposed that the mediation be postponed.  (*See* Ex. 1, Ritter Decl. at Ex. E.)  Nor did Judge Duval suggest that BP violated PTO 67.  PTO 67 required BP to turn over information "that exist[ed] in BP's databases …."  (Rec. Doc. 25370, Ex. B.)  BP did not learn about this issue from its databases; instead, it learned it by retrieving and reviewing the State of Florida's records in preparation for the mediation.  Suffice it to say, DeSilva himself should have raised the ownership issue with BP and the Court rather than force than BP to piece together information that was always within DeSilva's ready access.  Likewise, Bowman's suggestion that BP entered into a "side agreement" with Mr. MacDonald to thwart him from being deposed by DeSilva is specious.  Because Mr. MacDonald had produced the LLC sale agreement and a declaration that answered the Court's questions from the April hearing, BP concluded that there was no need to insist on his deposition; BP, however, could not control Mr. MacDonald, who was represented by his own counsel.  (*See, e.g.*, Penton Response, Ex. 5 (Rec. Doc. 27182-5).)

9

      expended significant time and resources investigating the facts, preparing multiple rounds of briefing, preparing for and participating in hearings, preparing a subpoena, and preparing for and participating in depositions. The Court, in turn, has had to review those motions and briefs, oversee those hearings, and review DeSilva's statements from discovery.

- **Third-Party Burdens**: Mr. MacDonald, a third party, has had to pay attorney's fees, navigate the judicial system, and respond to inquiries from lawyers, all for a document that DeSilva always had ready access to. Worse, Mr. MacDonald was accused of improper conduct by DeSilva, and DeSilva made further misrepresentations to Mr. MacDonald about the basis for the Court's discovery order, *see* p.10-11, *supra.*

All of this constitutes serious prejudice that further supports sanctions. *See, e.g.*, *Indep. Fire Ins. Co. v. Lea*, 782 F. Supp. 1144, 1158 (E.D. La. 1992), *aff'd as amended*, 979 F.2d 377 (5th Cir. 1992) (imposing sanctions, in part, for "needlessly increasing the costs/expenses associated with investigating claims, trial preparation and the proceedings which ensued").

## III. WEIGHTY SANCTIONS ARE WARRANTED.

In light of the serious and prolonged nature of the misconduct here, which has imposed considerable costs on the judicial system, it is apparent that only a significant sanction will "deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Sanctions are appropriate here and are well supported by precedent. *See, e.g.*, *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 263-65 (5th Cir. 2007) (affirming sanctions where pleading contained false statement and rejecting excuse that it "an inadvertent mistake"). This is particularly true because the show cause responses do not evidence real remorse but instead attempt to minimize plaintiff's wrongdoing, including by blaming others.

The Court would be well within its authority to dismiss this case altogether as sanction for plaintiff's conduct. *See* 5A CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1336.3 (4th ed.). Alternatively, the Court should hold DeSilva to his word that the LLC is, and always was, worthless, thus precluding him from seeking anything but nominal

damages in any litigation alleging economic harm suffered by the LLC.[2]  In addition, BP believes that the Court is within its discretion to order the sanctions proposed in the Show Cause order— payment of attorney's fees and costs that have been expended on this issue since it was raised in October 2019, and/or a fine to the Court.

## CONCLUSION

BP respectfully submits that sanctions are warranted.

---

[2]  *See* DeSilva Decl. at 2 (Rec. Doc. 27184-2) (The LLC was "a virtually worthless item."); *id*. at 3 (The LLC "had no economic value of any kind and at no time ever did. . . .  [The LLC] NEVER had any value . . . [I]t owned nothing."); *id*. at 5 (The LLC was "a worthless entity."); *id*. at 6 (The LLC was "a worthless entity.") (Rec. Doc. 27184-2).

August 9, 2021                                   Respectfully submitted,

                                                    */s/ Devin C. Reid*

R. Keith Jarrett (Bar # 16984)
Devin C. Reid (Bar # 32645)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
Kristopher S. Ritter
(kristopher.ritter@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000

Christopher W. Keegan
(chris.keegan@kirkland.com)
Ashley Littlefield
(ashley.littlefield@kirkland.com)
Anna Terteryan
(anna.terteryan@kirkland.com)
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

*Attorneys for BP America Production Company and BP Exploration & Production Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **BP's Reply to Responses to Show Cause Orders** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 9th day of August, 2021.

*/s/ Devin C. Reid*
Devin C. Reid