# HEARTSTREAM

## *CONFIDENTIAL*

**BioMarine Technologies, Inc.**
To the attention of **Mr. John D. Ericsson, Esq.**, Chief Executive Officer, President and Director
100 Northcliffe Dr.
Gulf Breeze
Florida 32562, United States of America
By E-mail at:     John D. Ericsson <u>jde4u@aol.com</u>
             and
**Garcia de la Garza, LLP**
To the attention of **Mr. Mario de la Garza, Esq.**, Managing Partner and Trial Attorney
1616 S. Voss Rd., Suite 870
Houston
Texas 77057, United States of America
By E-Mail at:     Mario de la Garza <u>mdelagarza@dlgtriallaw.com</u>
             and
**The Kreller Law Firm**
To the attention of **Mr. Stephen S. Kreller, Esq.** , Managing Partner and Trial Attorney
757 St. Charles Avenue, Suite 301
New Orleans
Louisiana 70130, United States of America
By E-mail at:     Stephen S. Kreller <u>ssk@krellerlaw.com</u>

Loosdrecht, the Netherlands, June 17, 2021

Subject:     Civil Action (No. 2:13-cv-01286-CJB-SS) of Gulf Marine Institute of Technology and BioMarine
             Technologies, Inc. versus BP Exploration & Production, Inc., BP America Production Company,
             BP, PLC, Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc., Transocean
             Holdings, LLC, Halliburton Energy Services, Inc., Sperry Drilling Services, a Division of Halliburton
             Energy Services, Inc., and Triton Asset Leasing GmbH (the "Civil Action")

Dear John, dear Mario, dear Stephen:

At your request, we are sending you this letter with Memorandum regarding the involvement of Heartstream
Corporate Finance B.V. from the Netherlands as financial advisor to BioMarine Technologies, Inc. from Florida,
USA, in 2007 onwards. This letter with Memorandum can be used in the Civil Action.

Yours sincerely,

Heartstream Corporate Finance B.V.

George J.M. Hersbach
President & Chief Executive Officer

Attached:     **Memorandum**

Gezien voor legalisatie van de handtekening van:
Seen for legalization of the signature of: G.J.M. Hersbach
Vu pour légalisation de la signature de:
Es wird hiermit beglaubigt dass die Unterschrift von:

door mij, notaris, heden de
by me, civil-law notary, on this day of  17 - 06 - 2021
par moi-même, notaire, aujourd'hui le
vor dem unterzeichneten Notar anerkannt ist, heute den

*mr. S. Kreugel*
*Notaris te Wijdemeren*

**EXHIBIT**

# 14

# HEARTSTREAM

*CONFIDENTIAL*

# Memorandum

## Purpose

The purpose of this memorandum (referred to as the or this "Memorandum") is to support the Civil Action (No. 2:13-cv-01286-CJB-SS) of BioMarine Technologies, Inc. and Gulf Marine Institute of Technology versus BP Exploration & Production, Inc., BP America Production Company, BP, PLC, Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc., Transocean Holdings, LLC, Halliburton Energy Services, Inc., Sperry Drilling Services, a Division of Halliburton Energy Services, Inc., and Triton Asset Leasing GmbH (in this Memorandum referred to as the "Civil Action"). This Memorandum is submitted to document the fundraising efforts that Heartstream Corporate Finance B.V. made in collaboration with and assisted by other service providers to secure funding for BioMarine Technologies, Inc. and Gulf Marine Institute of Technology before and after the April 20, 2010 explosion of the Mobile Offshore Drilling Unit Deepwater Horizon (in this Memorandum referred to as "MODU Deepwater Horizon") and subsequent spill of 3.19 million barrels of oil into the Gulf of Mexico. If called to testify, I, George J.M. Hersbach in my capacity of President and Chief Executive Officer of Heartstream Corporate Finance, would testify in accordance with the contents of this Memorandum.

## Introduction

This Memorandum, which term includes the attachments to this Memorandum (in this Memorandum referred to as the "Attachments" or, in case of reference to a particular attachment, referred to as the "Attachment") contains information about BioMarine Technologies, Inc. from Florida, USA (in this Memorandum referred to as "BioMarine"), Heartstream Corporate Finance B.V. from the Netherlands, and other parties with which BioMarine and Heartstream Corporate Finance B.V. have worked in the past or are still working at present.

In this Memorandum, "we" means (and "us" and "our" refer to) Heartstream Corporate Finance B.V., a company registered in the Netherlands under the Netherlands Chamber of Commerce registration number 32100116.

This Memorandum has been drafted and read by me, George J.M. Hersbach, and I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and is based on my personal knowledge.

## Heartstream Corporate Finance B.V.

Heartstream Group B.V., based in Loosdrecht, the Netherlands, is a corporate finance advisory and an investment company focused on selected private and listed companies – micro and small caps – in the 'healthcare' (medical and nutrition) and 'cleantech' industry sectors. The company is the holding of two fully owned subsidiaries: Heartstream Corporate Finance B.V. and Heartstream Capital B.V., which are described hereinafter.

Heartstream Corporate Finance B.V. (in this Memorandum referred to as "Heartstream") is a corporate finance advisor, which renders the following advisory services: (long-term) financial and operational strategy and business plan; financial instruments to finance growth (equity, share issue, convertible loans, PIPEs – private investment in public equity –, bank debt, etc.); preparation of documentation: information memorandum, prospectus, financial modeling and valuation, road show presentation; business development focused on sales, marketing and distribution, on acquiring products and technologies and on merger and acquisition opportunities; creating value for management and stakeholders by rapid, but monitored growth through well-

# HEARTSTREAM

## *CONFIDENTIAL*

structured phases. Heartstream collaborates with banks and/or financial institutions to place financial instruments.

Heartstream Capital B.V. is the holding company of participating interests in companies, generated by the activities of Heartstream Group and Heartstream Corporate Finance. Heartstream Capital takes the role of pro-active investor and invests in selected companies insofar as they have the potential for an IPO or trade sale with the objective of securing a multiple of invested capital after the initial investment. Heartstream Capital prefers to engage in undervalued companies of exceptional quality that are in an early stage of expansion for market launch of a product or service up to (pre- and post-) IPO and trade sale and seeks long-term and intensive collaboration with and serves on boards of (supervisory) directors and advisors of its portfolio companies.

### George J.M. Hersbach

 George J.M. Hersbach, MSc, EurIng, President & Chief Executive Officer of Heartstream Group B.V., is an entrepreneur and corporate manager and supervisor with over forty years of professional experience with private and publicly traded companies in various countries in Europe and the United States of America, and founder and owner Heartstream Group. Mr. Hersbach is chairman and member of boards of (supervisory) directors of various companies in a few executive and mostly non-executive roles. In the healthcare sector he serves on the board of Gilbert Technologies, NanoCorp, DynaCorts Group, T-Soles / To-a-T and AlgaStar, and in the cleantech sector he serves on the board of Ecolutions. He has been serving on boards of various other companies, institutions, and organizations in the (recent) past, including and NovaRay Medical, Théolia (now Futuren and part of EDF Energie Nouvelle) and the European Commission's Strategic Advisory Board of the Competitiveness and Innovation Framework Programme. Until 2002, Mr. Hersbach was President & CEO of Pharming Group, which company he transformed from a private, research driven organization into a publicly traded, biopharmaceutical company by forming partnerships with major healthcare companies and raising a total amount of more than € 200 million in various forms of financing, including an IPO. Mr. Hersbach joined Pharming from EuroCetus, the European organization of Cetus Corp. (later part of Chiron Corp., now part of Novartis) where he held the position of Vice President, Operations. His industrial career started at Royal Gist-brocades (now part of DSM), at which company he held several international research and development, and manufacturing management positions, both in Europe and the United States of America. Mr. Hersbach holds a Master of Science degree (with distinction) in Chemical Technology, Bioprocess Technology from the Netherlands Delft University of Technology, and a European Engineer degree from French FEANI. He is married and has three sons and two granddaughters.

### Compensation for Lost Time

Heartstream has been compensated $300 per hour for lost time of George J.M. Hersbach spent reviewing documents and drafting this Memorandum to document the efforts that Heartstream made in collaboration with and assisted by other service providers to secure funding for BioMarine and Gulf Marine Institute of Technology before and after the April 20, 2010 explosion of the MODU Deepwater Horizon and subsequent spill of 3.19 million barrels of oil into the Gulf of Mexico. Heartstream's normal rate for George J.M. Hersbach is €300 per hour. However, Heartstream has agreed to reduce that rate to $300 per hour for the time it has taken George J.M. Hersbach to review documents and to draft this Memorandum. I, George J.M. Hersbach, have reviewed the ethics advisory opinions from the American Bar Association (Formal Opinion No. 96-402) and the Louisiana Bar Journal (48 La. B.J. 306) and I attest that any payment made to me for my time spent in this matter are for lost time and have not influenced the substance (or efficacy) of my testimony one way or the other.

# HEARTSTREAM
## *CONFIDENTIAL*

**BioMarine, Heartstream and Merit Capital N.V.**

During the third quarter of 2007, BioMarine had been referred to Heartstream by joint business contacts of BioMarine and Heartstream. BioMarine and Heartstream had numerous conference calls and BioMarine gave web-based presentations, also in the presence of Fountainhead Capital Partners, Ltd. from the UK, advisor to BioMarine (Mr. David Cantor and Mr. Adrian Liddell, Partners and Advisors, Fountainhead Capital Partners, Ltd.; in this Memorandum referred to as "Fountainhead"). The first contact of BioMarine with Heartstream was early September 2007. BioMarine and Heartstream agreed to involve Merit Capital N.V. from Belgium as placement agent (Mr. Bart Lammens, Managing Director, Merit Capital N.V., Roderveldlaan 5, B-2600 Berchem-Antwerp, Belgium; in this Memorandum referred to as "Merit") in addition to Heartstream. BioMarine, in the persons of Mr. John D. Ericsson, CEO, and Mr. Luis Cabello, anticipated COO at that time, Heartstream, Merit and Fountainhead have met on October 23, 2007 at the (former) offices of Heartstream in (Naarden) the Netherlands to present and discuss BioMarine's business plan and relationship with the Gulf Marine Institute of Technology and to discuss the financing needs, forms, terms and conditions for BioMarine.

Effective November 7, 2007 BioMarine, Heartstream and Merit reached agreement and entered into a contract in the form of the Financial Advisory Agreement (in this Memorandum referred to as the "FAA") for the private placements of Convertible Debentures for BioMarine. The FAA has been included in this Memorandum as Attachment 1. With the FAA, BioMarine appoints Heartstream as BioMarine's financial advisor and Merit as BioMarine's placement agent. The FAA sets out terms for the private placements with the objective to raise a total amount of US$ 12.5 – 15 million with the assistance of Heartstream and Merit on a best effort and an exclusive basis within the territory, being the World excluding North America (in this Memorandum referred to as "Territory").

According to the FAA, the private placements were planned in following stages:

1.  First private placement: US$ 1 – 2.5 million;

2.  Second private placement: US$ 2.5 – 6 million
    (First and second private placement together: US$ 5 – 7 million);

3.  Third and following private placements together: US$ 5.5 – 10 million
    (All private placements together US$ 12.5 – 15 million).

The Convertible Debentures are convertible into common stock of BioMarine (or a surviving entity of BioMarine in case of a reverse merger into a public company, as described in this Memorandum). The Convertible Debentures have a 100% warrant coverage with 5-year warrants at an exercise price of 120% of the relevant share price of the private placement stage, as mentioned above. One or more of the private placements following the first private placement may have been in the form of a Private Investment in Public Equity (in this Memorandum referred to as "PIPE") combined with a reverse merger into a US public company. Such reverse merger opportunity existed with a US (OTC Bulletin Board) public company, which was controlled by Fountainhead.

**BioMarine mariculture business**

BioMarine was incorporated to develop a fully integrated commercial seafood business using established mariculture techniques, including use of off-shore fish hatcheries and large, open-ocean sea cages, to produce USDA "organic" fish and other aquatic species for human consumption. BioMarine's business objectives included:

# HEARTSTREAM
## *CONFIDENTIAL*

- Producing "organically" grown seafood, free from contaminants, growth hormones and antibiotics, in a natural marine saltwater environment, within a highly controlled, man-made offshore facility located in the Gulf of Mexico; BioMarine's ultimate objective is to commercially produce and sell USDA certified "Grown with Organic Ingredients" seafood;
- Obtaining finfish from foreign marine "organic" fish farming companies and processing them in US based plant(s) for commercial sale in US domestic and foreign markets;
- Developing a fully integrated commercial seafood business involving the production, processing, distribution, marketing, and sale of various fish products; and
- Producing fish feed, fingerlings, and equipment for use in the Gulf of Mexico mariculture industry.

BioMarine's activities focused, in conjunction with Gulf Marine Institute of Technology, an affiliated nonprofit research institute, on researching and developing mariculture technology, identifying fish stock candidates, securing the requisite operational infrastructure and permits, establishing collaborative arrangements with key suppliers of mariculture technology, equipment and fingerlings, as well as pursuing other strategic relationships for the commercialization of BioMarine's proposed business operations. BioMarine had successful cultivation experiences with both Cobia and Redfish, two of BioMarine's anticipated finfish candidates.

BioMarine had secured a contract with Gulf Marine Institute of Technology to jointly develop an offshore complex located in the Gulf of Mexico off the coast of Texas, the Texas site. In addition, BioMarine had rights in permits for similar operations off the coast of the Florida / Alabama state line, the so-called 'FlorAbama' site. Both sites would be used for commercial mariculture production.

BioMarine aimed to raise the funds described in this Memorandum for BioMarine's mariculture business at the described offshore sites.

**BioMarine Executive Summary and private placement memorandum**

Heartstream and Merit in collaboration with BioMarine had generated an extensive Executive Summary based on information that had been made available by BioMarine's Chief Executive Officer, President and Director, Mr. John D. Ericsson, and  Chief Operating Officer, Mr. Luis Cabello, to Heartstream and Merit. This Executive Summary is included in this Memorandum as Attachment 2. The Executive Summary describes the development and the state-of-affairs of BioMarine, as well as the details of the private placements.

The Executive Summary states, among many other things, that:

1. BioMarine is a 'mariculture' enterprise operating in the Gulf of Mexico. BioMarine, along with its associated non-profit research institute, Gulf Marine Institute of Technology has:
   a. researched and developed its aquaculture technology drawing on the expertise of its board members, officers, and consultants;
   b. established collaborative arrangements with key suppliers of mariculture technology, equipment, and fingerlings;
   c. successfully grown out Cobia and other key species;
   d. secured a unique operational site with necessary infrastructure; and
   e. secured or is renewing all the necessary permits to carry out commercial aquaculture production and import of initial stocks of fingerlings for these sites.

2. BioMarine is offering a total of US$ 20 million with $12.5 – 15 million being raised in Europe and the balance in the US. The use of funds is for capital investment and working capital with the intent to start harvesting commercial quantities of high-quality marine fish within 12 months of full funding. In the second year after

# HEARTSTREAM
## CONFIDENTIAL

initiating farming operations and after full funding BioMarine is forecasting an EBITDA of over US$ 9 million and in the fifth year of operation an EBITDA of US$ 68 million.

Heartstream and Merit worked closely with Fountainhead, which was, as described, controlling a US (OTC Bulletin Board) public company that had been reserved for a reverse merger with BioMarine. Fountainhead had been offering the BioMarine investment opportunity to Fountainhead's investor clients with BioMarine's consent, for which Fountainhead used an Executive Summary that was very similar to the Executive Summary, which was used by Merit and Heartstream (Attachment 2 to this Memorandum). Fountainhead, however, had put emphasis on the reverse merger opportunity for BioMarine to become a public company. The reverse merger had been actively supported by all parties involved, being BioMarine, Fountainhead, Merit and Heartstream. The first two pages of the private placement memorandum for the reverse merger with and the financing (in the form of a PIPE) of OTC Bulletin Board listed, inactive Nevada based corporation Techs Lonestar, Inc. has been included in this Memorandum as Attachment 3. For the PIPE and the reverse merger BioMarine retained the advice from Arjent Services, LLC (in this Memorandum referred to as "Arjent").

Equity research for comparable companies in Europe, most notably Nireus from Greece and Marine Harvest in Norway, was used as reference for European investors. Europe has an extensive history in marine fish farming (mariculture).

### BioMarine operations

As agreed in the FAA, BioMarine had been working on the:

- Private placement memorandum, including, but not limited to:
  - a business plan,
  - a sales and marketing plan,
  - the audited financials,
  - the financial forecasts,
  - the detailed financing needs for 3 years,
  - the valuation,
  - all possible risks,
  - the contracts, including the contract with the GMIT,
  - the US state and federal operational permits, and
  - comfort letters from buyers of the BioMarine products and BioMarine customers.

- Road show presentation, which has been included as Attachment 4 to this Memorandum;

- Employment contracts, including:
  - Mr. John D. Ericsson, Chief Executive Officer, President and Director;
  - Mr. Luis Cabello, Chief Operating Officer; and
  - Proposal and curriculum vitae for the Chief Financial Officer.

The result of these activities is largely described in the private placement memorandum (Attachment 3 to this Memorandum).

BioMarine had initially been focusing on the described Texas site. During the first quarter of 2008, uncertainty appeared regarding the permit and the long-term lease for this Texas site, which was confirmed by the decision of the Texas Court of Appeal on February 28, 2008 regarding the Texas site, as a result of which the Texas site could no longer be used and no longer be included in the private placement memorandum. Subsequently,

# HEARTSTREAM
## *CONFIDENTIAL*

BioMarine shifted to and focused on the described FlorAbama site, as a back-up to the Texas site. The FlorAbama site had a different mariculture capacity. The Texas site was anticipated to come on stream after the permit and lease challenges would have been resolved and after the FlorAbama site would have been operational. Consequently, the financial forecasts had to be revised. The BioMarine state-of-affairs, business plan and financial forecasts had been included in the private placement memorandum (Attachment 3 to this Memorandum) and the road show presentation (Attachment 4 to this Memorandum).

### Investors and course of affairs

Based on the Executive Summary (Attachment 2 to this Memorandum) and as reported to BioMarine, late 2007, early 2008, Merit and Heartstream had been contacting about 200 investors, and by the end of the first quarter of 2008, Merit and Heartstream had been contacting 449 investors within the Territory, predominantly Europe. Merit and Heartstream received positive response and serious interest from and had conversations and discussions with 41 investors regarding BioMarine's business and private placement(s). A complete overview of all investors that have been contacted by Merit and Heartstream, as well as the investors that expressed interest, has been included as Attachment 5 to this Memorandum.

In December 2007 and January and February 2008 multiple web-based presentations by BioMarine were organized by Merit and Heartstream for European investors, being at Heartstream's, Merit's or the investors' offices. Several of the web-based presentations were attended by Mr. John D. Ericsson, Chief Executive Officer, President and Director of BioMarine and others on behalf of BioMarine, among which Mr. Louis Cabello, Chief Operating Officer of BioMarine. Many web-based Q&A sessions were held, both for groups of investors as well as in one-on-one settings. The majority of the mentioned 41 positively responding and seriously interested investors participated in the various presentations and Q&A sessions. Subsequently, to our best recollection, 12 investors had expressed their explicit consideration to participate in the offering of Convertible Debentures for BioMarine (in this Memorandum referred to as the "Investors") under the terms and conditions described in the Executive Summary (Attachment 2 to this Memorandum). The names of the 12 mentioned investors were:

1. Brenca
2. Capricorn Venture Partners
3. Environmental Technologies
4. Gilde Investments
5. Greenfield Capital
6. HBM Partners
7. Janivo
8. Keijser Capital
9. Kruijff
10. Merit Capital
11. NIB Capital
12. Quest

Several of the Investors had had equity positions in European marine fish farming companies, comparable to BioMarine. As mentioned earlier in this Memorandum, Europe has an extensive history in marine fish farming (mariculture).

Many of the Investors requested Merit and Heartstream to make available BioMarine's private placement memorandum. Due to the events described under the section BioMarine operations in this Memorandum, it took BioMarine additional time to finish its private placement memorandum (Attachment 3 to this Memorandum) and to adjust its road show presentation (Attachment 4 to this Memorandum). To the best of our recollection, Merit and Heartstream informed by far the majority if not all of the mentioned 41 positively responding and seriously interested parties of the Investors about the Texas Court of Appeal's decision regarding the Texas site, as described under the section BioMarine operations in this Memorandum. Despite this

# HEARTSTREAM
## *CONFIDENTIAL*

decision, to the best of our recollection,  many if not all of the mentioned 12 investors, which had expressed their explicit consideration to participate, continued to have interest in BioMarine. In the meantime, the credit and financial crisis, as described under the section about the Great Recession in this Memorandum, had seriously beaten the European financial community. As a result, many of the Investors informed Merit and Heartstream that they preferred to wait until the financial markets would have recovered from the credit and financial crisis in Europe. To the best of their abilities, Merit and Heartstream kept the Investors informed about BioMarine's (limited) progress at that time. By the fourth quarter of 2008, Heartstream's and Merit's fund-raising activities were delayed until the European markets recovered, which recovery happened to coincide with the oil spill by the oil rig MODU Deepwater Horizon in the Gulf of Mexico in April 2010.

### Great Recession

Starting late 2007, the US housing market went from boom to bust, and large amounts of mortgage-backed securities and derivatives lost significant value. This was called the Great Recession, which in the United States officially lasted from December 2007 to June 2009, thus extending over 19 months. The Great Recession resulted in the scarcity of valuable assets in the market economy and the collapse of the financial sector in the world economy. Most of the world's developed economies, particularly in North America and Europe, fell into a definitive recession. The European recession is part of the Great Recession, which began in the United States. The crisis spread to Europe rapidly and affected much of the region with several countries already in recession, and most others suffering marked economic setbacks. Recovery from the Great Recession appeared slower in Europe than in the United States. In particular, the decline in the net rate of return on capital was more severe in Europe than in the United States and the recovery of the net rate of return on capital, which is important for investors, was slower in Europe than elsewhere in the world. This is clearly depicted in the following graph:



### Probability of raising funds

Resuming the funding activities under the FAA would have been possible for Merit and Heartstream within the Territory, starting in 2010 after the Great Recession in Europe. Heartstream, after all, has been involved from 2010 onwards in financing and merger and acquisition activities, resulting in several successful closings including

# HEARTSTREAM

### *CONFIDENTIAL*

a successful closing for a US, California based, company with European investors. In the course of 2010, Merit and Heartstream would have had the opportunity to reproach the Investors (12 in number), as defined in this Memorandum, which in 2008 had expressed their explicit consideration to participate in the offering of Convertible Debentures for BioMarine, as well as the other of the 41 in 2008 positively responding and seriously interested investors, as described in this Memorandum.

Unfortunately, by April 20, 2010, the oil spill by the oil rig MODU Deepwater Horizon in the Gulf of Mexico occurred, which was a very significant setback for BioMarine's operations in the Gulf of Mexico at the US offshore sites in Florida and in Texas, as described in this Memorandum. Following the Great Recession, Heartstream secured funding from its European investors for a US, California based, company. Based on Heartstream's knowledge and experience in fundraising, Heartstream believes with a reasonable degree of certainty that Merit and Heartstream would have secured the requested funding for BioMarine but for the oil spill. If the oil spill had not occurred, Merit and Heartstream would have been in position to update the Investors and the other positively responding and seriously interested investors in 2010. With a reasonable degree of certainty, should the mentioned oil spill not have occurred, Merit and Heartstream, more likely than not, would have been able to complete closings in the staged private placements, as described in this Memorandum, in the course of 2010 and in 2011, and BioMarine would have raised the funds for its mariculture business and for its operational activities at the FlorAbama site, as described in this Memorandum. Alongside the second or third closing of the staged private placements, a reverse merger and PIPE could have been completed with the (or, if no longer available, a) OTC Bulletin Board listed company with the support and advice of Arjent and Fountainhead. Such reverse merger would have further increased the interest of European investors. A few of the Investors, as described in this Memorandum, had approached Merit and Heartstream after the occurrence of the oil spill to familiarize themselves with what happened to BioMarine. This initiative of these few Investors made the Investors' continued interest apparent. Unfortunately, we had to inform these and other Investors that BioMarine's business had been very seriously damaged by and had to be discontinued as a result of the oil spill. The Investors informed us that due to the oil spill they were no longer interested to fund BioMarine, which terminated the significant funding efforts of Heartstream, Merit and other parties involved.

**Remark**

This Memorandum has been drafted and read by me, George J.M. Hersbach, and I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and is based on my personal knowledge.

Loosdrecht, the Netherlands, June 17, 2021

George J.M. Hersbach
President & Chief Executive Officer
Heartstream Corporate Finance B.V.

# HEARTSTREAM

*CONFIDENTIAL*

## Attachment 1

**Financial Advisory Agreement**
**(in this Memorandum referred to as the "FAA")**

**HEARTSTREAM**

*CONFIDENTIAL*

Nov 29 07 11:02p    John Ericsson             850-932-0422        p.1

# FINANCIAL ADVISORY AGREEMENT

*By and between*

## BIOMARINE TECHNOLOGIES, INC.

*And*

## HEARTSTREAM CORPORATE FINANCE B.V.

*And*

## MERIT CAPITAL N.V.

*For*

## *Private Placements of Convertible Debentures for BioMarine Technologies, Inc.*

BIOMARINE - HEARTSTREAM - MERIT - Financial Advisory Agreement - November 29, 2007

Page 1 of 21

# HEARTSTREAM

*CONFIDENTIAL*

Nov 29 07 11:02p     John Ericsson          850-932-0422          p.2

**THIS FINANCIAL ADVISORY AGREEMENT** (the or this "Agreement") is effective on November 5, 2007, the "Effective Date") by and between:

**BioMarine Technologies, Inc.,** a Delaware Corporation, with offices in the US State of Florida and the US State of Texas, and with registered offices at P.O Box 776 Gulf Breeze, Florida 32562-0776, USA and 8111 Broadway, Suite 9, Galveston, Texas 77554, USA, hereby, duly represented by **Mr. John D. Ericsson** in his capacity as President & Chief Executive Officer, hereinafter referred to as **"BIOMARINE"**;

And

**HEARTSTREAM Corporate Finance B.V.**, with registered offices at Gooimeer 3-25, 1411 DC Naarden, the Netherlands, hereby duly represented by Heartstream Group B.V. in its capacity as sole director, the latter being represented by **Mr. George J.M. Hersbach** in his capacity as President & Chief Executive Officer, hereinafter referred to as **"HEARTSTREAM"**, Corporate Finance Advisor;

And

**Merit Capital N.V.**, with registered offices at Roderveldlaan 5, B-2600 Berchem-Antwerp, Belgium, hereby dully represented by **Mr. Bart Lammens** in his capacity as Managing Director, hereinafter referred to as **"MERIT"**, Placement Agent.

**WHEREAS:**

- BIOMARINE is a private company;

- HEARTSTREAM, acting solely as a Corporate Finance Advisor and not as a licensed broker, wishes to advise BIOMARINE for its financing strategy and the structuring of private placements of certain securities;

- MERIT, acting solely as Placement Agent and as a registered and licensed broker dealer, wishes to service BIOMARINE in its private placements of certain securities;

- BIOMARINE desires that HEARTSTREAM and MERIT provides such advice and service.

BIOMARINE - HEARTSTREAM - MERIT - Financial Advisory Agreement - November 29, 2007

Page 2 of 21

# HEARTSTREAM
## *CONFIDENTIAL*

Nov 29 07 11:02p     John Ericsson            850-932-0422           p.3

**NOW, THEREFORE,** the Parties have agreed as follows:

### ARTICLE 1 – DEFINITIONS

In addition to certain specific terms as defined in the following paragraphs, the following terms, when used in capitalized form in this Agreement, shall have the following meaning:

1.1 **"Broker"**: Placement Agent MERIT, which is licensed to list and/or trade equity on stock exchanges.

1.2 **"Convertible Debentures"**: Convertible debt in the form of bonds or notes that are convertible into Shares.

1.3 **"Closing Date"**: the date on which all conditions precedent relating to Convertible Debentures have been completed.

1.4 **"Completion"**: Completion of a Private Placement shall mean the final settlement of a Private Placement or part thereof on a date as agreed between BIOMARINE, HEARTSTREAM and MERIT.

1.5 **"Exchange"**: Stock exchange on which BIOMARINE may be listed upon a reverse merger into a US public company (controlled by Fountainhead Capital Partners, an advisor to BIOMARINE), or, upon a public offering, or upon the registration of its securities, expected to be carried out during 2008.

1.6 **"Executive Summary"** and **"Private Placement Memorandum"**: Documents other than a prospectus under the securities laws in the USA, to be circulated only to potential Investors, which provide information concerning BIOMARINE TECHNOLOGIES, INC., its business and the Offering, as well as the restrictions to the Offering.

1.7 **"Investors"**: Professional, qualified investors who will irrevocably commit themselves to subscribe Convertible Debentures within the Private Placements.

1.8 **"Offering"**: The Private Placement(s) under this Agreement.

1.9 **"Private Placement"** or **"Private Placements"**: The Offering of the Convertible Debentures under this Agreement.

1.10 **"Party"** or **"Parties"**: Each of or collectively BIOMARINE, HEARTSTSTREAM and MERIT.

BIOMARINE - HEARTSTREAM - MERIT - Financial Advisory Agreement - November 29, 2007

Page 3 of 21

**HEARTSTREAM**
*CONFIDENTIAL*

Nov 29 07 11:02p     John Ericsson            850-932-0422            p.4

1.11   **"Shares"**: Common shares of BIOMARINE TECHNOLOGIES, INC.

1.12   **"Subscription Price"**: the price for which a Share can be purchased or for which the Convertible Debenture can be converted.

1.13   **"Territory"**: HEARTSTREAM's and MERIT's territory, being the World excluding North America.

1.14   **"Warrant"** or **"Warrants"**: Warrant(s) to purchase new Shares to the benefit of the Investors, HEARTSTREAM and MERIT.

1.15   **"Warrant Term"**: The time-period during Warrants can be exercised and give right to subscription of Shares.

## ARTICLE 2 – OFFERING and PRIVATE PLACEMENT TERMS

2.1   **Offering:**

This Agreement sets out terms for private placements in order to raise a total amount of USD 12.5 million – USD 15 with the assistance of HEARTSTREAM and MERIT on a best efforts and an exclusive basis in the Territory (of a total amount of USD 20 million, the balance of which is to be raised in North America). The Private Placements will be in the form of Convertible Debentures. One or more of the Private Placements following the first Private Placement may be in the form of a PIPE (Private Investment in Public Equity) combined with a reverse merger into a US public company (controlled by Fountainhead Capital Partners, an advisor to BIOMARINE), or in the form of a public offering, expected to be carried out during 2008. HEARTSTREAM and MERIT will target to raise the Convertible Debentures at conversion terms, which reflect a pre-money valuation of BIOMARINE of USD 20 million or so much higher as the market may be able to bear (or such lesser pre-money valuation which is acceptable to BioMarine's Board of Directors). Once a minimum of USD 5 million has been raised (or such lesser amount which is acceptable to BioMarine's Board of Directors), HEARTSTREAM, MERIT and Fountainhead Capital Partners jointly have the option to require BIOMARINE to undertake a reverse merger or other listing of the Shares, subject to the approval of the BioMarine's Board of Directors (such approval not to be unreasonably withheld).

BIOMARINE - HEARTSTREAM - MERIT - Financial Advisory Agreement - November 29, 2007

Page 4 of 21

# HEARTSTREAM

*CONFIDENTIAL*

**2.2   Capital to be raised in the Territory:**

   a.   First Private Placement: **USD 1 million – USD 2.5 million** by January 31, 2008.

   b.   Second Private Placement: **USD 2.5 million – USD 6 million** by April 30, 2008.

   (First and Second Private Placement together: **USD 5 million – USD 7 million** by April 30, 2008.)

   c.   Third and following Private Placements together: **USD 5.5 million – USD 10 million** by November 30, 2008.

   (All Private Placements together **USD 12.5 million – USD 15 million** by September 30, 2008.)

**2.3   Type of securities:**

Convertible Debentures.

**2.4   Warrants:**

Convertible Debentures will have 100% warrant coverage (meaning that each investor will be issued warrants with an aggregate exercise price equal to the principal amount of its Convertible Debenture). The Warrants will have an exercise price equal to the relevant Private Placement conversion share price and will have a Warrant Term of five (5) years.  The  Warrants will be in BIOMARINE's (or the surviving entity's)  Shares, (one Warrant equals one Share) and will be issued at the Completion of each of the Private Placements or part thereof..

**2.5   Conversion terms:**

The conversion terms will be agreed and described in the Private Placement Memorandum. The Private Placement Memorandum will be updated for each Private Placement and will reflect the actual conversion terms.

Convertible Debentures will have forced conversion in the event of a reverse merger or public offering.

BIOMARINE - HEARTSTREAM - MERIT - Financial Advisory Agreement - November 29, 2007

---

HEARTSTREAM  CORPORATE  FINANCE  B.V.
NIEUW  LOOSDRECHTSEDIJK 227 • 1231 KV  LOOSDRECHT • THE  NETHERLANDS
TELEPHONE:  +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF  COMMERCE NO.  32100116
WWW.HEARTSTREAM.NET

**HEARTSTREAM**

*CONFIDENTIAL*

2.6   **Private Placement terms:**

The terms of each Private Placement will be determined at the time of Closing of each Private Placement or part thereof during the Offering, based on, *inter alia*, the evolution of the BioMarine, market conditions and investor appetite.

2.7   **Other Private Placement rights:**

a.   Lien on all assets of BioMarine.

b.   Annual interest to be determined and to be paid or accrued annually. Interest can be accrued or paid in the form of Convertible Debentures until such time that BioMarine can afford to pay interest after or on the closing of the Private Placements or, as the case may be, until such time Convertible Debentures have been converted.

c.   100% liquidation preference to all current shareholders excluding governmental or bank financing.

2.8   **Efforts:**

HEARTSTREAM and MERIT will perform their duties under this Agreement on a best efforts basis.

2.9   **Exclusivity:**

The exclusivity of HEARTSTREAM AND MERIT will be performance related. BIOMARINE will have the right to terminate the exclusivity upon written notice in case that HEARTSTREAM and MERIT fail to arrange minimum monetary amounts in Convertible Debentures as specified in paragraph 2.10, unless the failure is attributable to a breach of this Agreement by BIOMARINE.

2.10   **Geographic rights and timing:**

HEARTSTREAM and MERIT have exclusive rights for the Territory for the Offering and its Private Placements:

• through April 30, 2008, provided that HEARTSTREAM and MERIT succeed in raising at least **USD 1 million** on or before January 31, 2008 in the First Private Placement, and

• through September 30, 2008, provided that HEARTSTREAM and MERIT succeed in raising at least **USD 5 million** in total on or before April 30, 2008 in the First and the Second Private Placement.

BIOMARINE - HEARTSTREAM - MERIT - Financial Advisory Agreement - November 29, 2007

Page 6 of 21

# HEARTSTREAM

## *CONFIDENTIAL*

The remainder of the **USD 12.5 million – USD 15 million** is to be raised in one or more additional Private Placements prior to September 30, 2008.

**2.11    Initiation and completion:**

The dates of the Initiation and the Completion of a Private Placement of the Offering are subject to mutual agreement between the Parties.

## ARTICLE 3 – CONDITIONS PRECEDENT

Conditions precedent to the Offering (reference is made to Appendix A of the Agreement):

3.1    Within thirty (30) days of the Effective Date, BIOMARINE undertakes to implement all required corporate steps and take all and any related actions in order to obtain consents and authorizations of its Board of Directors and shareholders (the "Consents and Authorizations") as are necessary to consummate the transactions contemplated hereby, including without limitation, all approvals that may be required by the articles of association of BIOMARINE and/or relevant applicable laws and regulations,  and including authorizations for:

   a.    The issue of the Warrants;

   b.    The issue of the Convertible Debentures and implementation of the related increase in the share capital of BIOMARINE upon conversion into Shares; and

   c.    The suppression of the statutory subscription right of the pre-Offering shareholders to the benefit of the Investors with respect to the securities, if applicable (collectively, the **"Shareholder Approval"**).

3.2    BIOMARINE will provide HEARTSTREAM and MERIT with:

   a.    a copy certified by its Secretary attesting to the adoption of the Consents and Authorizations;

   b.    a legal opinion letter from BIOMARINE's legal counsel, addressed to HEARTSTREAM and MERIT (**"BIOMARINE's Legal Opinion"**) and reasonably acceptable to HEARTSTREAM and MERIT, confirming that, when issued, the Convertible Debentures, the Shares to be issued to Investors and the Warrants to be granted to the Investors, HEARTSTREAM and MERIT as a result of a Private Placement will be

HEARTSTREAM  CORPORATE  FINANCE  B.V.

NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS

TELEPHONE:  +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET

CHAMBER OF COMMERCE NO. 32100116

WWW.HEARTSTREAM.NET

**HEARTSTREAM**

*CONFIDENTIAL*

Nov 29 07 11:04p     John Ericsson          850-932-0422          p.8

validly existing. BIOMARINE's Legal Opinion may contain such qualifications to its terms and conditions as are consistent with standard legal practice;

c.   a copy certified by its Secretary certifying as to the resolutions of the Board deciding the launching of the Offering and a Private Placement and précising the maximum amount and Number of the Convertible Debentures to the benefit of the Investors and Warrants to the benefit of the Investors, HEARTSTREAM and;

d.   a copy approved by BIOMARINE of the Executive Summary and of the Private Placement Memorandum.

3.3   BIOMARINE shall take the necessary corporate steps in order to issue the Convertible Debentures, the Shares and the Warrants relating to the respective Private Placements no later than on the fourth (4th) day preceding the closing of the Private Placement and the start of the Warrant Term.

3.4   To facilitate the transactions as described in this Agreement, the Parties will or have set up bank accounts as listed in Appendix B of the Agreement.

3.5   This Agreement will be terminated, and the Parties will be released from any and all obligations pursuant to this Agreement other than the obligations set forth in paragraphs 4.3 and 4.4, if the conditions precedent have not been fulfilled on a timely basis.

**ARTICLE 4 – CASH FEES AND COSTS**

4.1   **Cash fees:**

For the Offering and per Private Placement or part thereof, HEARTSTREAM and MERIT will receive a non-refundable cash fee (**"Cash Fees"**) in the amount of ten percent (10%) of all monies raised by Heartstream, Merit and entities contracted by Heartstream and Merit in the Private Placement or part thereof. The Cash Fees are payable by BIOMARINE directly upon receipt of the Private Placement proceeds on BIOMARINE's bank account. In practice the net proceeds diminished by the Cash Fees will be transferred to BIOMARINE. The Cash Fees are exclusive of Netherlands or Belgian VAT, if applicable.

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
## *CONFIDENTIAL*

4.2    **HEARTSTREAM and MERIT Warrants:**

On the monies raised by HEARTSTREAM, MERIT and affiliates, HEARTSTREAM and MERIT are entitled to receive Warrants giving right to subscribe and purchase a number of Shares equal to twenty five percent (25%) of the number of conversion Shares under the same terms as the Private Placement warrants (as described in paragraph 2.4). The HEARTSTREAM AND MERIT Warrants will be issued as of Completion of the respective Private Placement or part thereof. The HEARTSTREAM AND MERIT Warrants will have a grant date equal to the date of the Completion of respective Private Placement or part thereof and will have a Warrant Term of five (5) years.

4.3    BIOMARINE shall reimburse HEARTSTREAM and MERIT for all reasonable out-of-pocket expenses incurred by HEARTSTREAM and MERIT in connection with the Offering and its Private Placements, including but not limited to expenses related to the cost of the Executive Summary and the Private Placement Memorandum, and other marketing materials, communication, accommodation, meals and travel (business class or equivalent), provided that expenses over and above USD 10,000 are preapproved by BioMarine. Expenses will be invoiced to BIOMARINE and paid from the Private Placement proceeds (either in the Territory or in North America).

4.4    In case of late payment from the Private Placement proceeds of any fees, compensation, reimbursement of expenses to HEARTSTREAM and MERIT, BIOMARINE will pay penalty interest of 1% per month.

### ARTICLE 5 – COVENANTS

5.1    BIOMARINE agrees and warrants that:

a.    Mr. John D Ericsson, Dr. Philip Lee and Mr. Luis Cabello of BIOMARINE will available for road shows and meetings with investors, either in person or by conference calls or video conferencing, with 7 days prior notice for in person presentations;

b.    BIOMARINE will produce audited financials for 2005 and 2006 and for the nine months ended September 30, 2007; prior to issue of the Private Placement Memorandum for the First Private Placement;

c.    BIOMARINE will seek approval by HEARTSTREAM and MERIT of an Executive Summary, a detailed Private Placement Memorandum, including, but not limited to, a business plan, a sales and marketing plan,

BIOMARINE - HEARTSTREAM - MERIT - Financial Advisory Agreement - November 29, 2007

Page 9 of 21

**HEARTSTREAM**

*CONFIDENTIAL*

Nov 29 07 11:05p     John Ericsson          850-932-0422          p.10

the audited financials, the financial forecasts, the detailed financing needs per month for the first 18 months, all possible risks, the contracts, including the contract with the GMIT, the US state and federal operational permits, and comfort letters from buyers of the BioMarine products and BioMarine customers;

d.  BIOMARINE will seek approval by HEARTSTREAM and MERIT of investor presentation materials, including a DVD presentation of the site, the team, the fish breeding activities, and expert interviews.

e.  BIOMARINE will seek approval by HEARTSTREAM and MERIT of a detailed schedule indicating BIOMARINE's use of proceeds for the Private Placements.

f.  HEARTSTREAM and MERIT have the right to review the agreement(s) between BIOMARINE and the GMIT to ensure that BioMarine and the Private Placements investors are sufficiently protected; and Heartstream and Merit have the right to recommend changes to improve such protection and BIOMARINE agrees to make such changes as are deemed reasonable;

g.  Mr. Luis Cabello will be appointed Chief Operating Officer at the closing of the First Private Placement;

h.  A Chief Financial Officer with public listed company experience will be appointed at the closing of USD 2 million in total during the First or the Second Private Placement or part thereof; in case the Chief Financial Officer is to be a part-time appointment, HEARTSTREAM and MERIT will require comfort of adequacy;

i.  HEARTSTREAM and MERIT have the right to veto US investment banker and placement agent ("US Banker") and right to introduce another US Banker, reasonably acceptable to BIOMARINE, for rights to raise funds in North America;

j.  The Convertible Debenture terms and the compensation offered to US Banker and North America investors will not be more favorable than those in this Memorandum of Understanding and those offered to investors within the Territory;

k.  BIOMARINE will make available full outside legal support (with representation in Europe / the Netherlands) in finalizing the Agreement, the Executive Summary, the Private Placement Memorandum and the Road Show Presentation.

BIOMARINE - HEARTSTREAM - MERIT - Financial Advisory Agreement - November 29, 2007

Page 10 of 21

Nov 29 07 11:05p      John Ericsson                850-932-0422            p.11

AND MERIT under paragraph 4.1.

5.8    Should any Disclosure or Disclosures by a Party, as referred to in paragraph 6.5, be likely to have a material adverse impact on the Offering and its Private Placements and/or the performance of the other Party under this Agreement, the Parties will decide within thirty (30) days by mutual agreement concerning the continuation or termination of this Agreement and shall cooperate in order to mitigate the consequences of such a decision. In case of termination paragraph 8.4 comes into effect.

5.9    The provisions of the preamble (the Whereas) to this Agreement is an integral part of this Agreement.

### ARTICLE 6 – REPRESENTATIONS AND WARRANTIES OF BIOMARINE

BIOMARINE represents and warrants to HEARTSTREAM AND MERIT that:

6.1    BIOMARINE has power and authority to enter into and perform its obligations under this Agreement. BIOMARINE shall covenant that from the Closing Date until the end of the last applicable Warrant Term it has and will have the capability to issue and allot Convertible Debentures, Warrants and Shares to the Investors, HEARTSTREAM and MERIT up to the underlying Shares rights attached to the Convertible Debentures and Warrants as may be exercised by the Investors, HEARTSTREAM and MERIT.

6.2    The Shares constituting the share capital of BIOMARINE are validly issued and fully paid.

6.3    The execution and performance of this Agreement and transactions hereby contemplated will have been duly authorized by BIOMARINE and will constitute valid and binding obligations on BIOMARINE which will not contravene:

a.    BIOMARINE's articles of association;

b.    Any US laws or regulations, or order, or judgment, or decree which is applicable to BIOMARINE in accordance with such US laws or regulations; or

c.    Any other agreement or understanding to which BIOMARINE is a party or by which it is bound;

BIOMARINE - HEARTSTREAM - MERIT - Financial Advisory Agreement - November 29, 2007

Page 12 of 21

# HEARTSTREAM
## *CONFIDENTIAL*

6.4 BIOMARINE hereby warrants that it is not in any way precluded or restricted from issuing and allotting any of the Convertible Debentures, Shares and Warrants as at the Effective Date. BIOMARINE hereby warrants that, subject to the relevant approvals, it is not in any way precluded or restricted from granting to HEARTSTREAM and MERIT the rights set forth in this Agreement on the Effective Date. BIOMARINE further warrants that, it will not offer any securities to any third party without the prior written agreement of HEARTSTREAM and MERIT.

6.5 The representations and warranties of BIOMARINE (the **"Warranties"**) pursuant to this Article 6 shall be deemed repeated on each day from the Closing Date until the end of the last applicable Warrant Term. However, BIOMARINE will be entitled to notify HEARTSTREAM AND MERIT at any time during such Period of any event contradicting or otherwise not complying with the Warranties (the **"Disclosure"** or the **"Disclosures"**), provided that in such a case, the Warranties will be repeated on each day following the date of this notification subject to the Disclosure.

## ARTICLE 7 – REPRESENTATIONS AND WARRANTIES OF HEARTSTREAM AND MERIT

HEARTSTREAM AND MERIT represents and warrants to BIOMARINE that:

7.1 HEARTSTREAM and MERIT are corporations duly incorporated, validly existing and in good standing under the laws of the Netherlands and the laws of Belgium, respectively, and has the requisite corporate power and corporate authority to enter into and perform this Agreement. The execution, delivery and performance of this Agreement by HEARTSTREAM and MERIT and the consummation by it of the transactions contemplated hereby have been duly authorized by all necessary corporate action.

7.2 The execution and performance of this Agreement and transactions hereby contemplated will have been duly authorized by HEARTSTREAM and MERIT and will constitute valid and binding obligations on HEARTSTREAM and MERIT which will not contravene:

   a. HEARTSTREAM's and MERIT's articles of association;

   b. Any Netherlands and Belgian laws or regulations, or order, or judgment, or decree which is applicable to HEARTSTREAM and MERIT in accordance with Netherlands and Belgian laws or regulations, or

   c. Any other agreement or understanding to which HEARTSTREAM and

BIOMARINE - HEARTSTREAM - MERIT - Financial Advisory Agreement - November 29, 2007

Page 13 of 21

# HEARTSTREAM
## *CONFIDENTIAL*

Nov 29 07 11:06p     John Ericsson              850-932-0422           p.13

MERIT is a party or by which it is bound.

## ARTICLE 8 – TERM AND TERMINATION

8.1     This Agreement is effective as of the Effective Date and will expire, except for failing to meet the conditions precedent in accordance with the terms of article 3 or otherwise provided for in this Agreement, on the last day of the applicable Warrant Term.

8.2     Each Party will have the right to terminate this Agreement following the completion of the First or Second Private Placement of the Offering, and accordingly to cancel the launching of subsequent Private Placements, in case that the amount raised in the First or Second Private Placement totalizes less than the minimum amounts (the **"Exit Circumstances"**).

8.3     In the event of Exit Circumstances, the Party exercising its termination right shall notify the other Party of its decision no later than the end of the tenth [10th] day following expiry of the First or Second Private Placement, the termination being effective on such day.

8.4     In case BIOMARINE discontinues the relationship with HEARTSTREAM and MERIT after the Closing Date without cause, such as the occurrence of the Exit Circumstances or Disclosures which render the Offering implausible, or BIOMARINE declares this Agreement terminated while HEARTSTREAM and MERIT have performed their obligations in accordance with this Agreement, such performance to be evidenced by bona-fide indications of interest from reputable investors at a pre-money valuation of $10 million or more, and within twelve  months of such termination, an entity or entities other than HEARTSTREAM and MERIT raise amounts above USD 5 million for BIOMARINE (the **"Break-up Event"**), BIOMARINE will pay HEARTSTREAM and MERIT, in the aggregate, the cash fee (the **"Break-up fee"**), being the higher of:

- either a onetime break-up fee of USD 100,000;

- or a break-up fee of 12.5% of monies committed in writing to HEARTSTREAM, MERIT and/or entities contracted by HEARTSTREAM and MERIT by investors, with a maximum of USD 250,000,

in order to compensate for non-productive activities by HEARTSTREAM, MERIT and/or entities contracted by HEARTSTREAM and MERIT. Such Break-up Fee is to be payable immediately upon notification by BIOMARINE of the Break-up Event.

BIOMARINE - HEARTSTREAM - MERIT - Financial Advisory Agreement - November 29, 2007

Page 14 of 21

# HEARTSTREAM

## *CONFIDENTIAL*

Nov 29 07 11:07p     John Ericsson          850-932-0422          p.14

### ARTICLE 9 – ADDITIONAL TERMS

9.1    Any notice, demand, request, waiver or other communication required or permitted to be given hereunder shall be in writing and shall be effective (i) upon hand delivery or facsimile at the address or number designated below (if delivered on a business day during normal business hours where such notice is to be received), or the first business day following such delivery (if delivered other than on a business day during normal business hours where such notice is to be received) or (ii) on the second business day following the date of mailing by express courier service, fully prepaid, addressed to such address, or upon actual receipt of such mailing, whichever shall first occur. The addresses for such communications shall be:

*If to BIOMARINE:*

**BioMarine Technologies, Inc.**
**Mr. John D. Ericsson**
**President & Chief Executive Officer**

P.O Box 776
Gulf Breeze,
Florida 32562-0776
and at
8111 Broadway, Suite 9
Galveston, Texas 77554
USA

E-mail: j.ericsson@biomarineinfo.com and/or JDE4U@aol.com
Mobile tel: +1 850 525 3515
Tel: +1 850 932 9038
Fax: +1 850 932 0422

*If to HEARTSTREAM:*

**Heartstream Corporate Finance B.V.**
**Mr. George J.M. Hersbach**
**President & Chief Executive Officer**

Gooise Poort
Gooimeer 3-25
1411 DC Naarden
The Netherlands

BIOMARINE - HEARTSTREAM - MERIT - Financial Advisory Agreement - November 29, 2007

Page 15 of 21

Nov 29 07 11:07p     John Ericsson          850-932-0422          p.15

E-mail: g.hersbach@heartstream.net
Mobile tel: +31 (0)65 148 0300
Tel: +31 (0)35 695 9941
Fax: +31 (0)35 697 0660

*If to MERIT:*

**Merit Capital N.V.**
**Mr. Bart Lammens**
Managing Director, Placement Agent

Roderveldlaan 5
B-2600 Berchem-Antwerp
Belgium

E-mail: bart.lammens@meritcapital.be
Mobile tel: +32 (0)47 649 0060
Tel: +32 (0)3 259 2600
Fax: +32 (0)3 259 2305

Any party hereto may from time to time change its address for notices by giving written notice of such changed address to the other party hereto in accordance herewith.

9.2    No waiver by either Party of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any other provisions, condition or requirement hereof, nor shall any delay or omission of any party to exercise any right hereunder in any manner impair the exercise of any such right accruing to it thereafter.

9.3    This Agreement shall be binding upon and inure to the benefit of the Parties and their successors. Except with the prior written consent of HEARTSTREAM and MERIT, BIOMARINE may not assign, transfer, charge or deal in any other manner with this Agreement or any of its rights under it, or purport to do any of the same, nor subcontract any or all of its obligations under this Agreement. Except with the prior written consent of BIOMARINE, HEARTSTREAM and MERIT may not assign, transfer, charge or deal in any other manner with this Agreement or any of its rights under it, or purport to do any of the same, nor subcontract any or all of its obligations under this Agreement unless otherwise stipulated in this Agreement.

BIOMARINE - HEARTSTREAM - MERIT - Financial Advisory Agreement - November 29, 2007

Page 16 of 21

**HEARTSTREAM**

*CONFIDENTIAL*

Subject to the foregoing, the assignment by a Party to this Agreement of any rights hereunder shall not affect the obligations of such Party under this Agreement.

9.4     The provisions of this Agreement are severable and, in the event that any court or officials of any regulatory agency of competent jurisdiction shall determine that any one or more of the provisions or part of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision or part of a provision of this Agreement and this Agreement shall be reformed and construed as if such invalid or illegal or unenforceable provision, or part of such provision, had never been contained herein, so that such provisions would be valid, legal and enforceable to the maximum extent possible, so long as such construction does not materially adversely affect the economic rights of either party hereto.

9.5     HEARTSTREAM, MERIT and BIOMARINE agree to keep this Agreement, its terms and the corporate financing structure it describes confidential, and not to distribute it to, or discuss it with, any third parties (other than the Exchange authorities, their respective boards of directors or management corporate bodies, accountants and legal advisors, and in the respect of other professional and financial advisors, only with the prior written consent of HEARTSTREAM and MERIT without the express written consent of the other. Furthermore, except as otherwise required by laws or the regulations applicable to the Exchange and applicable US Securities Laws, BIOMARINE agrees not to announce the terms of this Agreement in any news release, public announcement or regulatory filing, without the prior written consent of HEARTSTREAM and MERIT and in a form acceptable to HEARTSTREAM and MERIT. Where such an announcement is required by laws or the regulations applicable to the Exchange, BIOMARINE will give to HEARTSTREAM and MERIT prior notice of that requirement and the proposed form of disclosure, and will comply with all lawful requirements of HEARTSTREAM and MERIT in relation to the form, content and timing of that disclosure to the extent it complies with the requiring laws or regulations.

9.6     This Agreement contains the entire understanding of the Parties with respect to the matters covered hereby and, except as specifically set forth herein, neither BIOMARINE, nor HEARTSTREAM and MERIT makes any representations, warranty, covenant or undertaking with respect to such matters. No provision of this Agreement may be waived or amended other than by a written instrument signed by the party against whom enforcement of any such amendment or waiver is sought.

**HEARTSTREAM**

*CONFIDENTIAL*

Nov 29 07 11:08p      John Ericsson              850-932-0422              p.17

9.7  This Agreement shall be governed, construed and interpreted by the Laws of the Netherlands. The Parties agree that all disputes between them arising out of or relating to this Agreement shall be settled by the competent Court in Amsterdam, the Netherlands.

9.8  Parties agree that the following article and paragraphs will survive the termination or expiration of the Agreement: article 4 and paragraphs 8.4, 9.5 and 9.7.

[Remainder of this page has intentionally been left blank.]

BIOMARINE - HEARTSTREAM - MERIT - Financial Advisory Agreement - November 29, 2007

Page 18 of 21

# HEARTSTREAM

## *CONFIDENTIAL*

Nov 29 07 11:08p     John Ericsson          850-932-0422          p.18

IN WITNESS HEREOF, the parties hereto have caused this Agreement to be duly executed in Gulf Breeze, Florida / Galveston, Texas;  Naarden, the Netherlands; and Antwerp, Belgium and, as of the day and year first above written, in three (3) original counterparts *i.e.* one (1) original counterpart for each Party.

Agreed and accepted,
BioMarine Technologies, Inc.
Date: 11/29/2007

Mr. John D. Ericsson
President & Chief Executive Officer

Agreed and accepted
On behalf of Heartstream Corporate Finance B.V.
Date: November 29, 2007

Mr. George J.M. Hersbach
President & Chief Executive Officer
Heartstream Group B.V.

Agreed and accepted
Merit Capital N.V.
Date:

Bart Lammens
Managing Director

BIOMARINE - HEARTSTREAM - MERIT - Financial Advisory Agreement - November 29, 2007

Page 19 of 21

# HEARTSTREAM

## *CONFIDENTIAL*

Nov 29 07 11:09p    John Ericsson          850-932-0422        p.19

### APPENDIX A - PLANNING

| DOCUMENTS | BY | RESPONSIBILITY |
|---|---|---|
| Teaser | November 14, 2007 | BioMarine, Heartstream, Merit |
| Updated Private Placement Memorandum, including, but not limited to:<br>• a business plan,<br>• a sales and marketing plan,<br>• the audited financials (2005, 2006 and 2007 through September),<br>• the financial forecasts,<br>• the detailed financing needs for 3 years (per month for the first 18 months),<br>• the valuation,<br>• all possible risks,<br>• the contracts, including the contract with the GMIT,<br>• the US state and federal operational permits, and<br>• comfort letters from buyers of the BioMarine products and BioMarine customers. | December 3, 2007 | BioMarine |
| Review of the agreement(s) for and between BioMarine and the GMIT | November 21, ,2007 | Heartstream, Merit |
| Road Show Presentation | December 3, 2007 | BioMarine |
| Detailed planning regarding the Private Placements | December 3, 2007 | Heartstream, Merit, BioMarine |
| Employment contract Mr. John D. Ericsson | November 30, 2007 | BioMarine |
| Employment Contract Mr. Luis Cabello | November 30, 2007 | BioMarine |
| CV and Employment Contract Proposal CFO | January 3, 2008 | BioMarine |
| Full legal support | November 5, 2007 through November 30, 2008 | BioMarine |

BIOMARINE - HEARTSTREAM - MERIT - Financial Advisory Agreement - November 29, 2007

Page 20 of 21

**HEARTSTREAM**

*CONFIDENTIAL*

Nov 29 07 11:09p     John Ericsson          850-932-0422          p.20

**APPENDIX B – ACCOUNTS**

The Parties to This Agreement have set up the following accounts:

B1   **BIOMARINE Account.**

BIOMARINE has set up a bank account with the following coordinates:
Bank:
Address:
SWIFT:            *To Be Computed*
Account Name:
IBAN / BIC or ABA routing:

B2   **HEARTSTREAM and MERIT Accounts.**

HEARTSTREAM AND MERIT have arranged bank accounts with the following coordinates:

*For its advisory services:*

Bank:               THEODOOR GILISSEN BANKIERS (Amsterdam)
Address:            Keizersgracht 617
                    Postbus 3325
                    1001 AC Amsterdam
                    The Netherlands
SWIFT:              GILL NL 2A
Account Name:       HEARTSTREAM Corporate Finance B.V.
IBAN / BIC:         NL 51 GILL 021.19.26.485

*For the investments:*

Bank:
Address:



SWIFT:
Account Name:       MERIT Capital N.V.
IBAN / BIC:

BIOMARINE - HEARTSTREAM - MERIT - Financial Advisory Agreement - November 29, 2007

Page 21 of 21

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

Page 30 of 66

**HEARTSTREAM**
*CONFIDENTIAL*

## Attachment 2

**Executive Summary of BioMarine Technologies, Inc**
**(in this Memorandum referred to as BioMarine)**

**HEARTSTREAM**

*CONFIDENTIAL*



EXECUTIVE SUMMARY

# BioMarine Technologies, Inc.

THE INFORMATION OF BIOMARINE TECHNOLOGIES, INC. ("BIOMARINE") PROVIDED HEREWITH CONTAINS FORWARD-LOOKING STATEMENTS THAT INVOLVE RISKS AND UNCERTAINTIES. BIOMARINE'S ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE ANTICIPATED IN SUCH FORWARD-LOOKING STATEMENTS AS A RESULT OF CERTAIN FACTORS. THIS EXECUTIVE SUMMARY IS INTENDED SOLELY TO PROVIDE PROSPECTIVE INVESTORS AN INITIAL AND GLOBAL IMPRESSION OF BIOMARINE, ITS BUSINESS STRATEGY AND ITS PERFORMANCE. THE INFORMATION IN THIS DOCUMENT IS NOT COMPLETE. INVESTORS ARE REFERRED TO THE DETAILED AND IMPORTANT INFORMATION INCLUDED IN THE PRIVATE PLACEMENT MEMORANDUM, WHICH IS AVAILABLE UPON REQUEST. FURTHERMORE, INVESTORS ARE REFERRED TO THE DISCLAIMER AT THE END OF THIS EXECUTIVE SUMMARY. INVESTORS SHOULD CONDUCT THEIR OWN INVESTIGATION AND ANALYSIS OF THE BUSINESS, DATA AND PROPERTIES DESCRIBED.

TRANSACTION SUMMARY

| | |
|---|---|
| Sector / Business: | US – Gulf of Mexico – Marine Aquaculture, or Mariculture; |
| Fundraising: | US$ 12.5 – 15 million in several Private Placements; |
| Transaction structure: | Multiple Private Placements of Convertible Debentures convertible into equity, future funding may be contemporaneous with either a reverse merger with OTCBB vehicle or a public listing; |
| Stage of development: | Pre-revenue with permitted sites and major assets in place; |
| Information / Due diligence: | Private Placement Memorandum is available and management is available for meetings; |

THIS MATERIAL IS NOT AN OFFER TO SELL ANY SECURITIES OF BIOMARINE AND BIOMARINE IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES IN ANY COUNTRY OR STATE WHERE THE OFFER OR SALE IS NOT PERMITTED.

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
### *CONFIDENTIAL*



#### E X E C U T I V E   S U M M A R Y

S N A P S H O T



**BioMarine's platform**

BioMarine Technologies, Inc. ("BioMarine") is a mariculture enterprise operating in the Gulf of Mexico. Over the past 7 years BioMarine, along with its associated non-profit research institute, Gulf Marine Institute of Technology ("GMIT") has:

1. researched and developed its aquaculture technology drawing on the expertise of its board members, officers and consultants;

2. established collaborative arrangements with key suppliers of mariculture technology, equipment and fingerlings;

3. successfully grown out *Cobia* and other key species; secured a unique operational site with necessary infrastructure; ,and

4. secured or is renewing all the necessary permits to carry out commercial aquaculture production and import of initial stocks of fingerlings for these sites.

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

**HEARTSTREAM**
*CONFIDENTIAL*



### EXECUTIVE SUMMARY



*Red Porgy*



*Greater Amberjack*

BioMarine is offering a total of US$ 20m with $12.5 – 15 million being raised in Europe and the balance in the US. The use of funds is for capital investment and working capital with the intent to start harvesting commercial quantities of high quality marine fish within 12 months of full funding. In the second year after initiating farming operations and after full funding BioMarine is forecasting an EBITDA of over US$ 9 million and in the fifth year of operation an EBITDA of US$ 68 million.

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
## *CONFIDENTIAL*



### EXECUTIVE SUMMARY

#### KEY INVESTMENT HIGHLIGHTS

| | |
|---|---|
| **Strong Market Dynamics** | Per capita world consumption of fish has increased by 70% since the 1960s and is expected to double by 2030. But in the face of depleting supply with over 40% of major ocean species being overfished, aquaculture now provides 30% of world supply, but over 70% is low value, fresh water finfish. Aquaculture production of marine fish therefore has to increase from its current levels of less than 2% of marine fish consumption to at least 10%. |

**Total global marine finfish landings through capture fisheries and aquaculture**



**Source: Food and Agriculture Organization 2004**

| | |
|---|---|
| **Strategic Importance to the US** | The US is a net importer of US$ 7.5 billion of fish (the total import being well over US$ 10 billion), which is the second largest natural products deficit after oil. This has been an issue of growing importance and focus to the US Dept of Commerce and President Bush culminating in a 10-Year Aquaculture Plan and submission of the National Offshore Aquaculture Acts in 2005 and 2007. |
| **First Mover Advantage** | Mariculture in the US is currently limited to coastal regions, which often creates use conflicts and breeding, hygiene and operational difficulties. BioMarine has the only state and federally permitted offshore sites in the US Gulf of Mexico; one along the Florida/Alabama state line in 90 feet (27 m) of water and the other 9 nautical miles south of Port O'Connor, Texas in 72 feet (22 m) of water utilizing a four platform complex. The site permitting and platform acquisition process is unique; no new permits have been applied for by anyone else in the Gulf of Mexico. BioMarine believes that it has roughly a 5 year start on others trying to enter the infant US offshore mariculture business. |

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
## *CONFIDENTIAL*



### E X E C U T I V E   S U M M A R Y

| | |
|---|---|
| **Unique Value of Asset** | To maximize sustainable breeding and harvesting efficiency and minimize environmental and other operational issues, ideal locations for mariculture are away from the coast yet as close to coastal support infrastructure as possible. Of the estimated 4,000 redundant oil platforms in the Gulf of Mexico, BioMarine believes that its four-platform site in Texas is currently the best for maximizing these operational and eco-friendly requirements. |
| **Ability to Become the Dominant Producer in the Gulf of Mexico** | BioMarine's Texas site alone covers approximately 125 acres (50 hectares), which is expandable by permit extension to 500 acres (200 hectare), which is a similar surface as the entire Greek Sea cage industry today. The ultimate annual production could be as much as 5 times that of the Mediterranean currently valued at US$ 1 billion. BioMarine currently forecasts harvesting 14 million lbs (6.4 million kg) of fish by the third year of operation, with production expected to more than double over the following 3 years as more cages are added to meet the fingerling supply capacity. |

**Growth chart for *Amberjack* and *Cobia* (conservative estimates)**



| | |
|---|---|
| **Focus on High Value Fast Growing Native Species** | BioMarine has selected fish based upon their marketability, cage-culture growth potential and profitability: *Cobia, Red Fish, Amberjack* and *Red Porgy*. All four species are native to the Gulf of Mexico, have very rapid growth rates, excellent profitability and prolific spawning capacity and therefore offer excellent potential for commercial culture. Cobia, in particular (a white, firm, cod-type fish), reaches 16 lbs (7.3 kg) in 12 months, or around 20 times faster than the growth rate of Atlantic salmon. Management and their collaborators have been growing the selected species over the last five years in controlled labs and understand how to grow them successfully in a caged environment. |

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
## *CONFIDENTIAL*



### EXECUTIVE SUMMARY



*Cobia*

| | |
|---|---|
| **Experienced Manage-ment** | BioMarine key management members have many years of experience of aquaculture, from a scientific, research and operational perspective and are qualified to launch what currently would be the largest, most technically advanced fish farm in the Gulf of Mexico. Luis Cabello, the soon to be appointed Chief Operating Officer of BioMarine, has been managing fish farming projects from inception to production all over the world. Management expects to supplement their experience with existing and future collaborative arrangements with leading aquaculture participants from Europe, Greece and Taiwan in the areas of sea farming technology consulting, equipment supply and installation and fingerling production. |
| **Established Technology** | BioMarine is using tried and tested technology based on the development of commercial projects growing warm water marine fish in Greece and Taiwan. BioMarine will manage or subcontract both the training of employees and the transfer of knowledge to the Gulf of Mexico. |
| **Significant Assets Already in Place** | BioMarine and GMIT have already committed significant financial resources to the project. The Texas site consists of the largest four-platform complex located in Texas state waters which is owned by GMIT. BioMarine also owns a number of the equipment components needed to initiate the construction of the first hatchery and nursery system as well as five Japanese Bridgestone sea cages which are ready for final refitting and deployment. These factors are expected to enable BioMarine to reach its first finfish harvesting phase within 9 – 12 months of full funding. |
| **Strong Cash Flow** | Once fully funded and operational, continuous harvesting will allow BioMarine to sell forward contracts with major fish distributors, guaranteeing pricing and allowing BioMarine to count on consistent cash flow. Current wholesale prices for the selected fish average in excess of US$ 4.00 per lbs (US$ 8.82 per kg) with anticipated production costs averaging US$ 1.53 per lbs (US$ 3.37 per kg) in year 3. |

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
## *CONFIDENTIAL*



### EXECUTIVE SUMMARY

#### BUSINESS DESCRIPTION

BioMarine is a private Delaware Company which has been developing systems, technology and expertise for growing fin fish in the coastal waters of the United States Gulf of Mexico.



BioMarine's management has invested over 9 years focusing almost exclusively on the realization of this project and their farming technology strategies which have been verified by a US government independent study funded by the National Oceanic and Atmospheric Administration.

BioMarine and GMIT have completed for the first time in the US history the acquisition and permitting of a Gulf of Mexico sea farming development site, one off Texas and the other along the Florida / Alabama state line. The current funding being sought is for the development of the first Texas site only, with the second site off the Florida/Alabama state line held as a backup.

The Texas site consists of a large former oil and gas platform complex located in the Texas State Waters at a distance of 9 nautical miles from Port O'Connor, located in 72 feet of (22 m) water. GMIT has a 30 year lease surrounding the platform site and a federal permit for using approximately 125 acres (50 hectares). The project is exclusively subleased to BioMarine by GMIT in exchange for a low single digit royalty payment and other considerations. The management team is seeking funding to renovate and convert the platform complex into the largest offshore mariculture production and research project in the USA.

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM

*CONFIDENTIAL*



EXECUTIVE SUMMARY



The platform complex has over 30,000 square feet (2.800 m$^2$) of space, provides a permanent, stable base from which to conduct hatchery and fish farming operations and, together with the existing offshore service infrastructure, a solid base for crew quarters and management facilities, feed delivery equipment and utilities (power, environmental monitoring, etc.), as well as transportation and project support systems. Oil platforms are also well suited as artificial reefs and the resulting abundance of associate sea life provides a healthy environment suitable for cultivation of fish and shellfish. Offshore locations also tend to moderate swings in temperature and water currents, which will provide huge amounts of highly oxygenated water.

Researchers from the University of Texas and sea farming consultants from Greece have verified the environmental requirements necessary for operating sustainable, large scale cultivation of fish.

BioMarine has or is renewing both State and Federal permits for both locations, which it believes gives it at least a 5 year head start on any possible competition. Furthermore, BioMarine is not aware of any other mariculture ventures in the process of obtaining permits to operate in the Gulf of Mexico.

BioMarine intends to breed fish, hatch eggs and produce fingerlings to be grown in sea cages; harvested fish will be sold to local seafood processing plants and national distribution companies. Well-documented scientific reports verify Earth's dwindling wild fish harvest and attest to rising world market demand (US is the second largest importer of seafood) for seafood.

HEARTSTREAM  CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE:  +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM

## *CONFIDENTIAL*



### EXECUTIVE SUMMARY

BioMarine is focused on fast growing, Gulf of Mexico native species. Four types of fish are chosen for their marketability, cage-culture, growth profile and profitability: *Cobia (Ling), Red Fish (Red Drum), Amberjack (Yellow Tail) and Red Porgy (Sea Bream)*. These have been successfully grown by either BioMarine or GMIT and their consultants over the last few years in preparation for the currently planned scale-up.

BioMarine will use proven Mediterranean hatchery technology based on environmentally sustainable, controlled systems where live food is produced for the microscopic fish fry also grown in the hatchery. Raceway nurseries will be used to grow fingerlings to larger size before stocking the juveniles into sea cages for grow-out and subsequent weekly harvesting.

The first planned hatchery will be installed onto the main platform so as to centralize all fish production requirements at one site initially, and will draw upon new technologies developed by BioMarine's board members, officers, consultants and their project collaborators.

No new or untested technologies will be used in the development of the platform-based sea farm. BioMarine has collaborative arrangements with some of the world's leading groups in the aquaculture industry. Primary focus will be on transferring existing Greek, European and Taiwanese systems that are growing marine fish in warm water. One of the largest Greek Companies, *Nireus Chios S.A.*, will provide technical assistance through its project consulting division and subcontract staff and training as well as initially provide some of the Gulf of Mexico fish fry for sea farming. Two Taiwanese Companies are expected to supply fingerlings and technical support during the start up phase. *Nireus* has had significant success with high production hatcheries while the Taiwanese companies have had commercial success with cage farming of Cobia and Amberjack. *HESY* in Holland, a world leader in the supply of hatchery/nursery and indoor fish grow-out systems, will be integrally involved in the construction of the offshore and onshore hatcheries and fingerling production facilities.

BioMarine is seeking to raise a total of US$ 20 million in a private placement to fund the capital requirements for establishing the Texas platform based project, including working capital, purchase and production of fingerlings and to establish commercial Gulf of Mexico offshore sea farming operations.

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
## *CONFIDENTIAL*



### EXECUTIVE SUMMARY



BioMarine Cobia Brood stock grown from eggs (growth rates 20 times Atlantic salmon, which is a more than US$ 5 billion annual product, of which Norway more than US$ 3 billion)

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
## *CONFIDENTIAL*



EXECUTIVE SUMMARY

FINANCIALS

The period from initial closing of funding to the commencement of harvesting of the fish is anticipated to be 3 – 6 months (dependant on the season), and will involve: purchase of required equipment; refurbishment and fitting of existing equipment; assembly of hatchery; setting cages in the water; stocking of fingerlings and fish. "Year 1" in the table below commences after the completion of this preparation phase.

Summary Financial Projections

| $m | | Year 1 2008 | Year 2 2009 | Year 3 2010 | Year 4 2011 | Year 5 2012 | Year 6 2013 | Year 7 2014 |
|---|---|---|---|---|---|---|---|---|
| | | Assume January 2008 Funding | | | | | | |
| Sales | | $5.9 | $18.5 | $44.6 | $83.3 | $101.1 | $127.2 | $144.2 |
| | Growth | | 214% | 142% | 87% | 21% | 26% | 13% |
| Gross Margin | | $3.1 | $13.9 | $35.9 | $68.1 | $81.4 | $102.3 | $115.3 |
| | Margin | 52% | 75% | 80% | 82% | 80% | 80% | 80% |
| EBITDA | | $0.3 | $9.7 | $29.3 | $57.9 | $69.6 | $88.2 | $99.6 |
| | Margin | 6% | 52% | 66% | 70% | 69% | 69% | 69% |
| EBIT | | ($0.7) | $8.6 | $28.0 | $56.6 | $68.2 | $86.7 | $98.3 |
| | Margin | (12%) | 47% | 63% | 68% | 67% | 68% | 68% |
| Net Income (1) | | ($1.1) | $8.2 | $20.7 | $32.9 | $39.7 | $50.6 | $57.5 |
| Operating Cash Flow (2 | | $0.3 | $9.7 | $25.1 | $40.2 | $48.2 | $61.0 | $68.7 |
| Capital Expenditure | | $20.2 | $1.5 | $2.0 | $1.0 | $1.0 | $1.0 | $1.0 |

*(1) After Management Profit Share Plan*
*(2) Before Financing And Interest*

Use of Proceeds

BioMarine requires a total of US$ 20 million to fulfill its business plan and reach cash-flow self-sufficiency, split approximately US$ 15 million for equipment and rig refurbishment and US$ 5 million for early period working capital (particularly fingerling stocking and fish feed).

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM

## *CONFIDENTIAL*



### EXECUTIVE SUMMARY

#### OFFERING

BioMarine is seeking to raise a total of US$ 20 million over the next 10 months to execute and complete the Texas platform project, of which US$ 12.5 million to US$ 15 million in a series of Private Placements outside North America and the balance in North America. Each Private Placement will be closed on a standalone basis and it is intended that subsequent placements will be closed on escalating terms.

One of the Private Placements following the First Private Placement may be combined with a reverse merger into a US public company, or carried out in the form of a public offering, during 2008.

The size of each Private Placement is for guidance only and will be determined by market demand at the time

**Private Placement Terms**

| | |
|---|---|
| Placement Capital | First Private Placement: $1 million to $2.5 million. Escrow will be broken at $1 million; |
| | Second Private Placement: $2.5 million to $6 million, by April 30, 2008; |
| | Third Private Placement: $5.5 million to $10 million, by November 30, 2008; |
| | All Private Placements together: $12.5 million to $15 million, by November 30, 2008. With the balance of the US$ 20 million being raised directly in the USA. |
| Type of Securities | Convertible Debentures into common stock of BioMarine or a surviving entity. |
| | Conversion terms for each Placement to be determined at the time determined by, *inter alia*, the evolution of BioMarine, market conditions and investor appetite. |
| | Convertible Debentures will have forced conversion at the closing of either a reverse merger into a US public company or any other public offering. |
| Warrants | Convertible Debentures to have 100% warrant coverage with 5 year warrants at an exercise price of 120% of the relevant Private Placement share price. Warrants to be in BioMarine (or the surviving entity) and to be issued at the closing of each Private Placement. |

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM

## *CONFIDENTIAL*



### E X E C U T I V E   S U M M A R Y

| Other Rights | Lien on all assets of BioMarine.<br><br>Annual interest (amount to be determined) to be paid or accrued annually. Interest can be accrued or paid in the form of Convertible Debentures until such time that BioMarine determines that its net cash flow is sufficient to pay interest.<br><br>100% liquidation preference to all other investors excluding governmental or bank financing. |
| --- | --- |

HEARTSTREAM  CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE:  +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
## *CONFIDENTIAL*



### EXECUTIVE SUMMARY

*IMPORTANT NOTICE FOLLOWS REGARDING UNDUE RELIANCE ON FORWARD-LOOKING INFORMATION AND FINANCIAL PROJECTIONS CONTAINED IN THIS MATERIAL.*

### FORWARD-LOOKING STATEMENTS; DISCLAIMER

BioMarine desires to take advantage of the "Safe Harbor" provisions of the United States Private Securities Litigation Reform Act of 1995. The foregoing material contains a number of forward-looking statements that reflect management's current views and expectations with respect to BioMarine's business, strategies, future results and events and financial performance. All statements made in this material other than statements of historical fact, including statements that address operating performance, events or developments that management expects or anticipates will or may occur in the future, including statements related to revenues, cash flow, profitability, adequacy of funds from operations, use of proceeds, statements expressing general optimism about future operating results and non-historical information, are forward looking statements. In particular, the words "believe," "expect," "intend," "anticipate," "estimate," "forecast," "project," "may," "will," variations of such words, and similar expressions identify forward-looking statements, but are not the exclusive means of identifying such statements and their absence does not mean that the statement is not forward-looking.

In addition, the foregoing financial projections were not prepared with a view toward complying with published guidelines of the United States Securities and Exchange Commission or The American Institute Of Certified Public Accountants regarding financial projections and do not necessarily conform with United States or other Generally Accepted Accounting Principles. No representations or warranties by BioMarine are made or should be inferred as to the accuracy or completeness of these projections and there can be no assurance that the projected results will be attained any time in the future or at all.

The financial projections and other forward-looking statements are subject to certain risks and uncertainties and BioMarine's actual results, performance or achievements could differ materially from those expressed in, anticipated or implied by these forward-looking statements. BioMarine does not undertake any obligation to revise these forward-looking statements to reflect any future events or circumstances. Actual results will be impacted by a number of factors, including, without limitation, successful implementation of business plans and third-party arrangements, adequate working capital and sources of funding, as well as other economic and business conditions and risks which affect the aquaculture industries, all of which may be adverse to BioMarine.

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
## *CONFIDENTIAL*



### EXECUTIVE SUMMARY

The contemplated transactions shall not result in any direct or indirect offering of the Convertible Debentures of BioMarine to the public. This Executive Summary or any offering material relating to the offering of BioMarine shall not be distributed in any way to the public other than to qualified and professional investors.

Prospective investors are informed that:

1. neither this Executive Summary nor any material relating to the offering of the Convertible Debentures has been or will be submitted to the clearance procedure of any authorities;

2. investors may only participate in the offering of the Convertible Debentures for their own account;

3. investors, acquiring the Convertible Debentures, must refrain from marketing, offering or otherwise reselling such Convertible Debentures unless such marketing, offering or resale is carried out in strict compliance with applicable legislation; therefore, while purchasing the Convertible Debentures, investors will have to commit not to resell the acquired Convertible Debentures on the market other than to qualified and professional investors acting for their own account and / or for smaller amounts than € 50,000.

The information contained in the Executive Summary has been obtained from and provided by BioMarine, its shareholders and other sources and has been prepared solely for the purpose of providing interested parties with background information to assist them in obtaining a general understanding of BioMarine and the proposed transaction. It is not intended to provide the basis for any credit, investment or other evaluation.

No representation or warranty, expressed or implied, is made as to accuracy or completeness of such information or any other written or oral communication transmitted or made available to a prospective investor. Nothing contained in the Memorandum is, or shall be relied upon as a promise or representation, whether as to the past or the future performance of BioMarine. Any estimates or projections contained herein have been prepared by, and are based on information currently available to the management of BioMarine and involve significant subjective judgments and analysis. Accordingly, no representation is made as to their attainability.

The recipient of this Information Memorandum and of other information and documentation is advised to conduct its / his / her own independent investigation(s) regarding the transaction and BioMarine described herein.

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
## *CONFIDENTIAL*



### EXECUTIVE SUMMARY

BioMarine reserves the right to negotiate with one or more prospective investors at any time and to enter into a definitive agreement with respect to the proposed transaction without prior notice to the recipient or other prospective investors.

Further, BioMarine reserves the right not to pursue the proposed transaction and to terminate at any time further participation in the investigation and proposal process by any party and to modify data, documentation and other procedures without assigning any reason therefore.

### CONTACT DETAILS

| BioMarine Technologies, Inc. Mr. John D. Ericsson President & Chief Executive Officer | Heartstream Corporate Finance B.V. Mr. Daco Enthoven Director, Corporate Finance Advisor | Merit Capital N.V. Mr. Bart Lammens Managing Director, Placement Agent |
|---|---|---|
| PO Box 776 Gulf Breeze Florida 32562 and 8111 Broadway, Suite 9 Galveston Texas 77554 USA | Gooise Poort Gooimeer 3-25 1411 DC Naarden The Netherlands | Roderveldlaan 5 B-2600 Berchem-Antwerp Belgium |
| E-mail: j.ericsson@biomarineinfo.com Mobile tel: +1 850 525 3515 Tel : +1 850 932 9038 Fax: +1 850 932 0422 | E-mail: d.enthoven@heartstream.net Mobile tel: +31 (0)65 468 8125 Tel: +31 (0)35 695 9946 Fax: +31 (0)35 697 0660 | E-mail: bart.lammens@meritcapital.be Mobile tel: +32 (0)47 649 0060 Tel: +32 (0)3 259 2600 Fax: +32 (0)3 259 2305 |

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM

## *CONFIDENTIAL*

## Attachment 3

**Private placement memorandum
Techs Lonestar, Inc.,
reverse merger
OTC Bulletin Board listed,
inactive Nevada based corporation
with BioMarine
(first two pages only)**

# HEARTSTREAM
## *CONFIDENTIAL*

*EM DRAFT 5/15/08*

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM

## Techs Loanstar, Inc.

**18,000,000 Shares**
**Common Stock**

**Subscription Price:  $ 0.50 per Share**
**Minimum Subscription: $50,000 (100,000 Shares)**

Techs Loanstar, Inc., an inactive Nevada corporation (the "Company," "we," "us" or "our"), is offering for sale in a private offering (the "Offering") up to 18,000,000 shares of common stock, $.001 par value (the "Shares"), at an offering price of $0.50 per Share (the "Offering Price"). The Shares are being offered and sold only to "accredited investors" (as that term is defined in Rule 501 (a) of Regulation D under the Securities Act of 1933, as amended, or the Securities Act).

We have entered into a Securities Exchange Agreement and Plan of Reorganization with BioMarine Technologies, Inc., a Delaware corporation ("BioMarine") and its stockholders, dated as of May __, 2008 (the Exchange Agreement"), under which contemporaneously with the initial closing of the sale of the Shares offered hereby, we will acquire all of the outstanding shares of the capital stock of BioMarine, which was organized to develop a fully-integrated commercial seafood business using established mariculture techniques, including the use of offshore fish hatcheries and large, open-ocean sea cages planned to produce USDA "organic" fish and other aquatic animals for human consumption. Since we have no operations and nominal assets, for accounting purposes our acquisition of BioMarine (BIOM) will be treated as a reverse acquisition of a shell company.

We have entered into a Placement Agent Agreement dated as of May __, 2008, with Arjent Services, LLC (the "Placement Agent" or "Arjent")), under which Arjent has agreed to act as our placement agent for the Offering on a best efforts basis.

The minimum investment is $50,000 (100,000 Shares), but we and our placement agent may accept lesser investments at their discretion. The Offering will continue until June 30, 2008, or such earlier date (the "Initial Expiration Date") upon which a total of 18,000,000 Shares have been sold and we have received a total of $9,000,000 in subscription payments. We have the right to extend the termination date of the Offering until September 30, 2008, subject to the consent of Arjent.

We and the Placement Agent have agreed that any initial closing of the Offering is subject to the contemporaneous completion of the Exchange Agreement, under which we will acquire all of the outstanding shares of common stock of BioMarine, upon the terms and subject to the conditions set forth in the Exchange Agreement (the "Exchange Transaction").

Subscription proceeds will be placed in a non-interest bearing escrow account held by [Signature Bank], _____, in its capacity as escrow agent (the "Escrow Agent"), until the initial closing, at which time the escrowed funds will be released to us and stock certificates evidencing the Shares will be delivered against such funds, as provided in the Escrow Agreement dated May ___, 2008 between us, the Placement Agent and the Escrow Agent.  Additional closings of this Offering may be held thereafter at the discretion of the Placement Agent and us as more subscription proceeds are received and cleared up to the full amount of the Shares being offered hereby.  If an initial closing has not occurred and we do not complete the Exchange Transaction by the Initial Expiration Date, the escrowed funds shall be returned to the investors and the subscription documents pertaining thereto shall be null and void and without further effect.

Officers, directors, employees and affiliates of our Company and the Placement Agent may purchase Shares in this Offering.

We reserve the right to withdraw or cancel the Offering and to accept or reject any subscription in whole or in part, in our sole discretion.

HEARTSTREAM  CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET
Page 49 of 66

# HEARTSTREAM

## *CONFIDENTIAL*

*EIW DRAFT 5/15/08*

The Shares offered hereby are highly speculative, involve a high degree of risk and immediate dilution, and should be purchased only by persons who can afford the loss of their entire investment. See "Risk Factors" on page 7 of this Memorandum for a description of certain risk factors that should be considered by prospective purchasers of the Shares.

| | Price to Investors | Placement Agent Sales Commission (1) | Proceeds to Company (2) |
|---|---|---|---|
| Per Share | $   0.50 | $0.05 | $0.45 |
| Minimum Investment (3) | $   50,000 | $5,000 | $45,000 |
| Total | $9,000,000 | $900,000 | $8,100,000 |

(1) Represents a selling commission payable to Arjent in an amount equal to 10% ($.05 per Share) of all Shares sold. Does not include a non-accountable expense allowance payable to Arjent in an amount equal to 1% of the gross proceeds from the sale of Shares, plus $50,000 to cover certain out-of-pocket expenses.. We also have agreed to issue to Arjent, or its designees, warrants to purchase that number of shares of our common stock equal to 10% of the total number of Shares sold in the Offering exercisable at a price of $ 0.60 per share for a term of seven years  The Placement Agent may re-allow all or a portion of the sales commission, non-accountable expense allowance and warrants to other FINRA members that participate in the Offering for Shares sold through them. We also have agreed to pay Arjent an investment banking fee of $60,000 ($5,000 per month for a period of one year commencing on the date of the initial closing) which amount is payable at the initial closing of the Offering. In addition, we have granted Arjent a right of first refusal with respect to subsequent private or public financings, with certain limited exceptions. See "Plan of Distribution -Placement Agent Agreement."

(2) Before deducting the legal, accounting, printing and other expenses of the Offering, estimated at $100,000, and the expenses of the Offering referred to in note (1), other than the sales commissions.  See "Use of Proceeds."

(3) The minimum amount of any investment is 100,000 Shares or $50,000.  We reserve the right to accept subscriptions for less than this minimum from any investor.

---

The securities are offered pursuant to claimed exemptions from registration under the Securities Act and certain state securities laws.  The securities are subject to restriction on transferability and resale and may not be pledged, transferred, resold or otherwise disposed of except as permitted under the Securities Act and such laws pursuant to registration or exemptions therefrom.  The securities have not been approved or disapproved by the Securities and Exchange Commission ("SEC") or any state securities authority, nor has the SEC or any state securities authority passed upon the accuracy or adequacy of this Offering.  Any representation to the contrary is a criminal offense.

This Memorandum and all other Offering materials are submitted in connection with the private offering of the Shares and do not constitute an offer or solicitation by anyone in any jurisdiction in which such an offer or solicitation is not authorized.

The offering price for the Shares was arbitrarily determined by the Company.  Although our common stock is quoted on the OTC Bulletin Board, trading is limited and sporadic.  We cannot assure you that upon the completion of the Exchange Transaction that an active market for our common stock will develop, or if such a market develops, that such market will be maintained.

The date of this Memorandum is May ___, 2008.

## ARJENT SERVICES, LLC
### PLACEMENT AGENT

# HEARTSTREAM

## *CONFIDENTIAL*

**Attachment 4**

**Road show presentation
BioMarin**

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
## *CONFIDENTIAL*



**Gulf of Mexico=High Productivity**

- Platforms function as artificial reefs
- Estimated 10,000 to 30,000 fish on larger platforms & same species as grown in cages
- Over 1,000 species of native fish
- Gulf of Mexico is the US's most productive ocean
- Gulf of Mexico water contains high populations of plankton and bacteria that will act like nutrient sponges
- Excellent circulation and water & wind-driven currents
- Warm water temperatures and high sunlight levels

1

**Market, Market, Market**

2



**FlorAbama Site Specifications**

- Feeding Barge- Akva Feeder Barge 50 X 50 ft
- Distance to Shore- 9 mi
- Water depth- 85 ft
- Permitted Site- 7.5 to 27.5 acres in phases

3



4



**BioMarine - FlorAbama Project**

Site is 27.5 acres; (40) 50 m diameter production cages and (8) 15 m diameter nursery cages surrounding a 50 X 50 m platform/feeder barge.

5



6

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
## *CONFIDENTIAL*



7



8



9



10



11

FlorAbama- Summary Financial Projections

| US$ millions | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 |
|---|---|---|---|---|---|---|---|
| Sales | $0.9 | $18.5 | $44.6 | $83.3 | $101.1 | $127.2 | $144.2 |
| Gross Margin | ($3.8) | $13.1 | $33.8 | $63.6 | $75.6 | $94.8 | $106.3 |
| EBITDA | ($3.8) | $8.8 | $26.2 | $51.7 | $61.7 | $78.1 | $87.7 |
| EBIT | ($4.4) | $8.1 | $25.4 | $50.8 | $60.7 | $76.9 | $86.7 |
| Net Income | ($5.3) | $3.3 | $20.7 | $29.2 | $35.0 | $44.6 | $50.6 |
| Operating Cash Flow * | ($3.8) | $8.8 | $24.9 | $36.1 | $42.9 | $54.1 | $60.5 |
| Capital Expenditure | $13.0 | $2.7 | $2.0 | $1.0 | $1.0 | $1.0 | $3.0 |

12

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM

## *CONFIDENTIAL*



13



14



15

16



17

18

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
## *CONFIDENTIAL*

**Relationship between BioMarine Technologies and GMIT**

- GMIT affiliate GMIT: 1995 as a Delaware 501-C(3) Non Profit Research Institute
- GMIT received 1st in USA history ACOE offshore farming permits- 93 & EPA NPDES-95
- Received FRANCHISE permit modified for new FlexAbama site Feb, 2008
- Related ACOE site permit being widely modified from 20 acre site to 95 acres
- Partial ACOE site permits & modifications strategically planned to add 50+ acres and 20 or more new deployments for FlexAbama site prior to funding
- GMIT/GMIT received 1st USA ACOE Texas platform sea farming permits in US History- 2005 with renewal of ACOE Permit – Feb 7, 2008, New Texas GLO lease applied for March, 2008
- BMIT/GMIT enters co-development agree of Texas four (4) platform complex Sept, 2007
  - BioMarine is responsible for all platform maintenance and operational expenses
  - BioMarine receives access to GMIT platforms for commercial operations
  - BioMarine to acquire new 20 yr lease site from Tx GLO- applied March 2008
  - GMIT receives royalty on prime sales @ 2.5% for exclusive commercial develop by BioMarine
- All USACOE and EPA/NPDES permits by BioM & GMIT in force for both FlexAbama & Texas projects

19



20

**TEXAS-ACCUMULATED  NET PROFIT AFTER TAXES**

21

**Texas- Summary Financial Projections**

| US$millions | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 |
|---|---|---|---|---|---|---|---|
| Sales | $5.9 | $18.5 | $44.6 | $68.3 | $101.1 | $129.2 | $144.2 |
| Gross Margin | $2.7 | $12.9 | $33.4 | $53.4 | $75.4 | $94.6 | $106.1 |
| EBITDA | $2.0 | $8.7 | $26.7 | $53.3 | $63.6 | $80.3 | $90.4 |
| EBIT | ($1.0) | $7.6 | $25.5 | $51.9 | $62.2 | $79.0 | $89.1 |
| Net Income | ($1.3) | $7.2 | $69.7 | $30.1 | $36.2 | $46.1 | $52.1 |
| Operating Cash Flow * | $0.6 | $8.6 | $28.9 | $37.6 | $44.1 | $55.7 | $62.4 |
| Capital Expenditure | $20.2 | $1.5 | $2.0 | $1.0 | $1.0 | $1.9 | $1.9 |

22

**Texas-Equity &/or Debt Capital Needs:**
**$20,200,000**

**Capital Expenditures ($12.2M):**

| | |
|---|---|
| Pre-production Costs | $1.6M |
| Platform Conversion | $3.6M |
| Shoreside Facility | $1.8M |
| Equipment | $5.2M |

**Working Capital ($8.0M):**

| | |
|---|---|
| Personnel | $3.0M |
| Fingerlings | $1.5M |
| Feed | $2.2M |
| Insurance | $1.0M |
| Other Operations | $0.3M |

23

**BioMarine**

**Project Highlights**

1. Gulf of Mexico is a Highly Productive Ocean
2. Species Diversification with fast growing Native Finfish
3. Superiority of the permitted FL/AL and Texas
4. Proximity to large USA & Gulf States Markets
   - 81% of total US seafood consumption are imports
   - US$9 Billion +Plus Seafood Trade Deficit
Birth of a Billion $ dollar market-driven industry

24

# HEARTSTREAM

## *CONFIDENTIAL*

## Attachment 5

**List of investors
contacted for BioMarine
by Merit and Heartstream
with the Territory**

# HEARTSTREAM
## *CONFIDENTIAL*

CONFIDENTIAL

| Investors for BioMarine contacted by Merit and Heartstream | | | |
|---|---|---|---|
| **CONTACT** | **INVESTOR** | **EXECUTIVE SUMMARY** | **INTEREST** |
| van DrielLeendert | 1000steps | 1 | |
| PupinAntoine | 21 Centrale Partners | | |
| KawohlBoris | 3i | 1 | |
| OverdijkinkGuus | 3i | | |
| JelskiRobert | 3i | | |
| SiegeleChristian | 3i Deutschland Gesellschaft für Industriebeteiligungen mbH | | |
| ChamboredonJean-David | 3i Gestion SA | | |
| FergusonAllanR | 3i Venture Capital | | |
| GauduchonVerónique | 4D Global Energy Advisors SAS | 1 | |
| Krikke-FritzCécile | 747 Capital | 1 | 1 |
| van ThielGijsFJ | 747 Capital | | |
| ClaquinHervé | ABN Amro Capital France | 1 | |
| MullerCoen | ABNAmro | | |
| RengersFriso | ABNAmro | | |
| van NouhuysRutger | ABNAmro | | |
| NelisHarry | Accel Partners | 1 | |
| MouffletGerard | Acceleration International | 1 | |
| SamuelsonJan | Accent Equity Partners AB | 1 | |
| JohannbroerEric | Accera | 1 | |
| RistMarcus | ACCERA Venture Partners AG | | |
| PoggioliPhilippe | Access Capital Partners | 1 | |
| MinhalesOctavius | Access Capital partners | | |
| CzajkaJulien | ACE Management | | |
| DiehlCharles | Activa Capital | 1 | |
| GomezAlberto | Adara Venture Partners | 1 | |
| ClemmUlrich | AdAstra Venture | 1 | |
| MintjesBernd | Adfundum Participaties | 1 | |
| KlostermeyerPeter | Adiuventa GmbH | 1 | |
| StefaniPascal | Advent International Sarl | 1 | |
| HuepRalf | Advent International GmbH | | |
| ValerioDinko | Aescap Venture Management Bv | 1 | 1 |
| HeijmansTheoH. | AFS Capital Management | 1 | |
| AndreasenJens | AIG Europe SA Germand Branch | 1 | |
| MogalleMarcPh. | AIG Global Investment Group | | |
| TimminsJamesR. | AIG Highstar Capital, LLC | | |
| BalandinaJulia | AIG Sustainable Investment Group | | |
| AlloucheDan | Allouche Ltd | 1 | |
| TandonVivek | Aloe Group Ventures | 1 | |
| DesquesnesPatricia | Alpha Beteiligungsberatung GmbH & Co. KG | 1 | |
| van BarlingenHarrold | Alpinvest | 1 | 1 |
| DoeksenVolkert | Alpinvest | | |
| PearaTim | Alternative Energy Finance | 1 | |
| AdamsDMichael | Alternative Investments | 1 | |
| GloverAnne | Amadeus Capital Partners Ltd | 1 | |
| BoonstoppelRoeland | Amber Venture Partners | 1 | |
| LepageJulien | Amiral Gestion | 1 | |
| YanarMarco | Ampega Asset Management GmbH | 1 | |
| LeahyCurtis | Antaeus Capital Partners, LLC | 1 | |
| de Boeckrobert | Antea participaties | 1 | |
| van EijkBasAT | AON Risk Consultants by | 1 | |
| NillsonAlexandra | AP Fund | 1 | |
| OosteriinckNathalie | AP Tech | | |
| HookJames | Apax Partners | 1 | |
| AfzalKarin | Apax Partners Beteiligungsberatung GmbH | | |
| HeinrichAgathe | Apax Partners SA | | |
| ShimizuOsamu | Apposite Capital | 1 | |
| MarchingtonAllan | Apposite Capital LLP | | |
| TzeDavid | Aquacopia Venture Partners LLC | 1 | |

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
## *CONFIDENTIAL*

CONFIDENTIAL

| CONTACT | INVESTOR | EXECUTIVE SUMMARY | INTEREST |
|---|---|---|---|
| SinghMandhir | Aquamarine Capital | 1 | |
| TurwittMathias | Arcadia Beteiligungen GmbH | 1 | |
| IsnardHenri | ARCIS Group | 1 | |
| TreacherJonathan | Ardour Capital Investments | 1 | |
| MelbyLarsThore | Argentum Fondsinvesteringer AS | 1 | |
| MougenotGilles | Argos Soditic France | 1 | |
| van der SchuerenGuido | Artwork Systems | 1 | |
| SchmitzUlrich | AS Venture GmbH | 1 | |
| MorenoXavier | Astorg Partners | 1 | |
| Teun Scheer | Atlantic Bridge Fund Placement | 1 | |
| GirardFrancoise | Atlas Venture | 1 | 1 |
| GazeckiMark | Atlas Venture DE | | |
| MontanusGerard | Atlas Venture | | |
| NäglerKarl | Atlas Venture | | |
| FestalPierre | Atlas Venture | | |
| OigerDominique | Atria Capital Partenaires | 1 | |
| KrockeIngo | AUCTUS Management GmbH | 1 | |
| DaugerasBernard | Auriga Partners | 1 | |
| BlainDanyel | Avenir Finance | 1 | |
| RabinJohannes | AVIDA Group | 1 | |
| SenequierDominique | AXA Private Equity | 1 | |
| IllenbergerStephanM | AXA Private Equity Germany GmbH | | |
| FolkersenHenrik | Axcel Industri Investor | 1 | |
| ThomassenLars | Axcel Industri Investor | | |
| FigeacAlexis | Axiom Venture Capital | 1 | |
| MinnenBernard | Axis Investments | 1 | |
| IvesBradCaia | Babson Capital | 1 | |
| BogetFranck | Banexi Capital Partenaires | 1 | |
| DahanMichel | Banexi Ventures Partners | | |
| MittalVivek | Bank of Scotland | 1 | |
| CampbellSteven | Bank of Scotland | | |
| RaithelDennis | Bank ten Cate & Cie N.V. | 1 | |
| LauridsenMichaelStuer | Bankinvest Group | 1 | |
| LanzChristophe | Banque Privée Edmond de Rothschild Europe | 1 | |
| PierreJean-Claude | BASF Venture Capital GmbH | 1 | |
| WalterJochen | BayTech Venture Capital Beratungs GmbH | 1 | |
| van OorbeekHans | BC Partners Investment | 1 | |
| BendelBartHJ | Bendel, Van der Mast & Co.B.V. | 1 | |
| de KroesEddie | Berange Groep | 1 | |
| JoysCarl-Fredrik | Bergen Venture AS | 1 | |
| MaddenCharles | Berkeley Finance | 1 | |
| SegalChristian | Berlin Capital Fund GmbH | 1 | |
| BoucheronPhilippe | Bioam Gestion SA | 1 | |
| MäkinenSeppo | BioFund | 1 | |
| MedernachJean | BIP Investment Partners SA | 1 | |
| GüntherRalph | BMP Aktiengesellschaft | 1 | |
| BohnenkampGuido | BM-T Private Equity | 1 | |
| RencurelDominique | BNP Private Equity | 1 | |
| GraafsmaTitus | Box Consultants | 1 | |
| OdefeyAndreasM | BPE Private Equity GmbH | 1 | |
| SuslakNeilS | Breamar Energy Ventures | 1 | |
| ScholmanRicardo | Brenca (Brenninkmeijer) | 1 | 1 |
| HeldermanRobert | Brenca Investment (Brenninkmeijer) | | |
| BassiBenoît | Bridgepoint Capital | | |
| BunkerAnthony | Bridgepoint Capital GmbH | 1 | |
| FullertonAndrew | Bridgepoint Capital GmbH | | |
| SteinbacherUwe | Brockhaus Private Equity GmbH | 1 | |
| IerlandHansvan | BSI AG | 1 | |

Page 2 of 18

# HEARTSTREAM
## *CONFIDENTIAL*

CONFIDENTIAL

| Investors for BioMarine contacted by Merit and Heartstream | | | |
|---|---|---|---|
| **CONTACT** | **INVESTOR** | **EXECUTIVE SUMMARY** | **INTEREST** |
| WellingMarcel | Burggolf | 1 | |
| BickerCaartenMichiel | BNR | 1 | |
| ButlerWalter | Butler Capital Partners | 1 | |
| EggerGerda | BWT | 1 | |
| van CaldenborghJoop | Caldic | 1 | |
| WickenkampRolf | CAM Private Equity Consulting & Verwaltungs-GmbH | 1 | |
| ThompsonGAMark | Canaccord Adams Limited | 1 | |
| ErnstEric-Joost | Candover Investments | 1 | |
| SchmitzPeter | Capital B.V. | 1 | |
| USACraigCuddeback | Capital Group LLC | 1 | |
| RaasioTuomo | CapMan Capital | 1 | |
| LangkjaerPeter | CapMan Capital Mngt | | |
| PeetersJosB. | Capricorn Venture Partners | 1 | 1 |
| LambrechtsMarc | Capricorn Venture Partners | | |
| StoufsClaudeJ | Capricorn Venture Partners n.v. | | |
| TheisStefan | Caption AG | 1 | |
| FlagDaniel | CapVis Equity partners | 1 | |
| BaracloughCaroline | Carbon International | 1 | |
| VarmaRajesh | Carmignac Gestion | 1 | |
| GluckAvisha | Catalyst Fund | 1 | |
| GustafsonJonas | Catella Kapital | 1 | |
| JacomettiMarinus | C-capital Achmea | 1 | |
| GinestetIsabelle | CDC Enterprises | 1 | |
| BalmisseDaniel | CDC Enterprises - FP Gestion | | |
| AiouniLeila | CDC Enterprises - FP Gestion | | |
| Dos SantosFilipe | CDC Entreprises Capital | | |
| TeboulFrederic | CDC Entreprises Innovation | | |
| CormierLionel | CDC Entreprises Services Industrie | | |
| VoultonPascal | CDP Capital | 1 | |
| DreesbachWerner | Cipio Partners | 1 | |
| QueveauPhilippe | CITA Gestion | 1 | |
| BernardtErnst | Clariden Bank (Credit Suisse) | 1 | |
| DecherStephan | Clean Capital | 1 | 1 |
| CameronJames | Climate Change Capital | 1 | |
| SnookJohn | Close Brothers Private Equity | 1 | |
| RaetherSven | Commerzbank | 1 | |
| DreesmanMarc | Commonwealth Investments | 1 | |
| CarterDaniel | Conduit Ventures | 1 | |
| VermeulenStan | Constant Ventures | 1 | |
| WegmanFrankD | Consult b.v. | 1 | |
| SchuitemakerLisette | Core Company | 1 | |
| van HalemPieter | Cornerstone Capital AG | 1 | |
| KöhlerGert | Creathor GmbH | 1 | |
| LaisnéMartine | Crédit Agricole Private Equity | 1 | |
| BollierDominik | Credit Suisse | 1 | |
| BeddaliJames | Credit Suisse Asset Management | | |
| van RappardRolly | CVC Capital Partners | 1 | |
| GleizePhilippe | CVC Capital Partners (France) SA | | |
| CoeberghMarius | De Hoge Dennen Capital Bv | 1 | |
| van KootenWillem | De Hoge Noot | 1 | |
| de JagerEdward | De Participatie Club | 1 | |
| de WitCor | De Wit Invest | 1 | |
| RoosjenPeterA | Deloitte | 1 | |
| van DiemenEgon | Delta Lloyd | 1 | |
| AlofsMichelF | Deutsche Bank | 1 | |
| von HodenbergWilken | Deutsche Beteiligungs AG | 1 | |
| Taleb-IbrahimiBachir | DMI Trust | 1 | |
| OvestadStian | Dnbnor | 1 | |

HEARTSTREAM  CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
## *CONFIDENTIAL*

CONFIDENTIAL

| Investors for BioMarine contacted by Merit and Heartstream | | |
| --- | --- | --- |

| CONTACT | INVESTOR | EXECUTIVE SUMMARY | INTEREST |
| --- | --- | --- | --- |
| StrandbergUlf | Dnbnor | | |
| RooseboomLaura | Doen Participaties Bv | 1 | |
| DouqueBodo | Douque Management BV | 1 | |
| NeuhausGottfried | Dr. Neuhaus Techno Nord GmbH | 1 | |
| DreyfusDominic | Dreyfus | 1 | |
| MarshallRoss | Dunedin Capital Partners | 1 | |
| MillerSimon | Dunedin Capital Partners | | |
| KoopmanMaarten | Dutch infrastructure Fund | 1 | |
| HoffmannRaikCFA | DWS Investment GmbH | 1 | |
| BauerDietmar | Dynamics Venture Capital Fund GmbH | 1 | |
| GleissnerUlrich | Dynamics Venture Capital Fund GmbH | 1 | |
| MangerRoland | Earlybird | 1 | |
| HölzleFrank | eCapital New Technologies Fonds AG | 1 | |
| EcartLeo | Ecart Invest | 1 | |
| RebmannStefan | ECM Equity Capital Management GmbH | 1 | |
| DirectorInvestment | E Technology Ventures | 1 | 1 |
| BerkhoutDirk | E-Concern | 1 | |
| GrimsdaleCharles | Eden Ventures | 1 | |
| FouqueErick | Edmond de Rothschild Capital Partners (E.R.C.P.) | 1 | |
| Raphenne-HocdeNadine | Edmond de Rothschild Investment Partners (E.R.I.P.) | | |
| de LangeLA | Effectenbank Stroeve | 1 | |
| DomanigGina | Emerald Ventures | 1 | 1 |
| DaebelHelge | Emerald ventures | | |
| CapdeviellePhilippe | Emertec Gestion | 1 | |
| HintonPeterF | ENT anking Group | 1 | |
| FarisRobert | Enterprise Investors | 1 | |
| BrenninkmeijerBert | Entrepreneurs Fund | 1 | |
| BrenninkmeijerHerman | Entrepreneurs Fund | | |
| BevanDaniel | Envirinvest | 1 | |
| HorsburghPeter | Environmental Technologies Fund | 1 | 1 |
| OlsenHenrik | Environmental Technologies VC | | |
| JonssonConni | EQT Partners AB | 1 | |
| BrenneckeMarcus | EQT Partners GmbH | | |
| HochThomas | equinet Venture Partners AG | 1 | |
| GranierMartine | Equitis SAS | 1 | |
| KazandjianRaffy | Equitis SAS | | |
| EsslingerFrank | Ethos Partners | 1 | |
| SaadaGilbert | Eurazeo | 1 | |
| VaillantLouis | Euromezzanine Conseil | 1 | |
| SedgwickPeter | European Investment Bank | 1 | |
| LindermeirMathias | EXTOREL | 1 | |
| BarendrechtJaap | FBS Securities | 1 | |
| Norman-PranAdele | Ferd Equity Partners AS | 1 | |
| PayetEmmanuelle | Finama Private Equity | 1 | |
| MaugeyChristian | Financière Boscary | 1 | |
| DescavesJean-François | Financière de Champlain | 1 | |
| FeuersengerUweR | FirstVenture Equity GmbH | 1 | |
| PaltheMichielJ | Florinde by | 1 | |
| DirectorInvestment | Folketrygdfondet | 1 | |
| SoulignacCharles | Fondinvest Capital | 1 | |
| ForbesLee | Forbes Group UK | 1 | |
| ter KuileGuidoHA | Foreman Capital | 1 | |
| TaylorMatt | Foresight Venture Partners | 1 | |
| BroadhurstIan | Fortis | 1 | |
| AltermarkNina | Four Seasons Venture III AS | 1 | |
| WhyattLydia | Foursome Investments Ltd | 1 | |
| CantorDavid | Fountainhead Capital Partners | 1 | 1 |
| LiddellAdrian | Fountainhead Capital Partners | | |

HEARTSTREAM  CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE:  +31 (0)35 697 0032 • MOBILE (HERSBACH):  +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
## *CONFIDENTIAL*

CONFIDENTIAL

| | Investors for BioMarine contacted by Merit and Heartstream | | |
|---|---|---|---|
| **CONTACT** | **INVESTOR** | **EXECUTIVE SUMMARY** | **INTEREST** |
| LucassenMichael | FPA Capital | 1 | |
| HolmsenCatoA | FSN Capital Partners AS | 1 | |
| NiggemanKlaus | FW Niggeman | 1 | |
| FlichyJoël | Galileo Partners | 1 | |
| NathusiusKlaus | Genes GmbH Venture Services | 1 | |
| NietzerPeterG | GermanCapital GmbH | 1 | |
| de GraafEdwinW | Gilde Investment Management | 1 | 1 |
| MolenaarBoudewijn | Gilde Investment Management | 1 | |
| van der MeerPieter | Gilde Investments | | |
| BulensFrank | GIMV | 1 | 1 |
| van HeusdenJim | GIMV (B) | | |
| EhrlichShuki | Giza Venture Capital (Isr) | 1 | |
| LeonardJeffry | Global Environment Fund | 1 | |
| WieseHans-Peter | Global Life Science Ventures GmbH | 1 | 1 |
| MartinDavid | Granville Baird Capital Partners Advisers Limited | 1 | |
| JansenPaul | Greenfield Capital Partners | 1 | 1 |
| WijmaSake | Greenfield Capital Partners | | |
| JongeriusMarc | Greenfield Management Services B.V. | | |
| GrohsHorstdieterP | Grohs Finance | 1 | |
| de JongPieter | Growth Capital | 1 | |
| FeenstraPieterMaarten | GS | 1 | |
| van der HoevenGertJan | H2 Equity partners | 1 | |
| SpliethoffHerman | Hadwaco | 1 | |
| van LeeuwenAkbar | Haegheborgh Capital Consultants BV | 1 | |
| van der meijdenPieter | Halder | 1 | |
| de RidderPaul | Halder Beteiligungsberatung GmbH | | |
| Hertz-EichenrodeAlbrecht | Hannover Finanz GmbH | 1 | |
| HauthuilleThierry | Hauthuille IR GmbH - Switzerland (Hauthuille's Private and institutional Clients) | 1 | 1 |
| ThalerThomas | HBM Partners AG | 1 | 1 |
| RuppertJörg | Heidelberg Innovation | 1 | |
| HumphriesNic | HG Capital | 1 | |
| TurnerNick | HG Capital | | |
| BlockMartin | HgCapital Beratungs Gmbh & Co KG | 1 | |
| SchefflerNicole | HgCapital Beratungs Gmbh & Co KG | | |
| PoortJohan | HILLGATE | 1 | |
| IerlandHansvan | Holland Corporate Finance | 1 | |
| ErskineRichardGeorge | Hydro Technology Ventures | 1 | |
| BendischRoger | IBB Beteiligungsgesellschaft GmbH | 1 | |
| FisslerThomas | IDP Industrial Development Partners GmbH & Co KG | 1 | |
| ScarlettNeil | IETG | 1 | |
| MitjavileRégis | IFE Conseil (Intermediate Finance Europe Conseil) | 1 | |
| BrodbeckRolf | IKB Private Equity GmbH | 1 | |
| TauntNigel | Impax Group | 1 | |
| DietelAlfred | Imperial innovations | 1 | |
| van der BruggenRene | Imtech | 1 | |
| CordiaWillem | Incomare | 1 | |
| DerksMaarten | Independent Capital | 1 | |
| de BruinCees | Indofin Group | 1 | |
| FägerskiöldChristopher | Industri Kapital | 1 | |
| ÖhmanGustav | Industri Kapital | | |
| NieuwenburgKristiaan | Industri Kapital | | |
| CorbetPierre | Industries & Finances Partenaires SAS | 1 | |
| KemnaAngelien | ING | 1 | |
| DeSouzaPaul | ING | | |
| KleevenHerman | ING Investment Management | | |
| ChampenoisDenis | Innovacom | 1 | |
| RavenGeorge | Insinger de Beaufort | 1 | |
| SnijdersJeroen | Insinger de Beaufort | | |

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
## *CONFIDENTIAL*

CONFIDENTIAL

| CONTACT | INVESTOR | EXECUTIVE SUMMARY | INTEREST |
|---|---|---|---|
| TailleurChristian | Insinger de Beaufort (Luxembourg) SA | | |
| TietmannAndreas | Intelligent Venture Capital | 1 | 1 |
| RiemersmaWietze | Intereffekt | 1 | |
| WitteveenMichiel | Invesco | 1 | |
| HammPaul | Investor | 1 | |
| NguyenPhilippe | Investors in Private Equity | 1 | |
| GarriguesAntoine | Iris Capital Management | 1 | |
| HarléEric | I-Source Gestion | 1 | 1 |
| TjadenJoost | Janivo | 1 | 1 |
| DirectorInvestment | JAZADCO (Jazan Development Company) | 1 | |
| van der BurgEmile | Jemburg | 1 | |
| Lede van derKees | JP Morgan | 1 | |
| SchweizerHermann | Julius Baer & Cie | 1 | |
| HendriksMichel | K+ Venture Partners B.V. | 1 | |
| MeyerBobby | Kattenkabinet | 1 | |
| van ZessenReinoud | Keijser Capital (Keijser's Private Clients) | 2 | 2 |
| DeuzemanLeo | Kempen & Co | 1 | 1 |
| CohenBenjamin | Keren Finance | 1 | |
| AhlgrenRoss | Kreos Kapital | 1 | |
| KroonHans& Tonny | Kroon Informal | 1 | |
| de KruijffJeroenP | Kruijff Geneva (Kruijff's Private Clients) | 3 | 2 |
| FourchyYves | L Capital Management | 1 | |
| de Mol van OtterlooMaarten | Landsbanki | 1 | |
| van der VloedKlaas | Langcat | 1 | |
| SalvatoreliFiorangelo | Lansdowne Partners Ltd | 1 | |
| LantsheerHenri | Lantsheer investments | 1 | |
| HauchardMagali | LC Capital | 1 | |
| van der HaveFrits | Life Sciences Partners | 1 | |
| KaiserHarold | Litorina Kapital | 1 | |
| MeirNigel | Ludgate Investments | 1 | |
| MuellerHelge | Lupus Alpha | 1 | |
| CourtAdrianRA | Mahler Ventures Limited | 1 | |
| WeddepohlCoen | Man investments | 1 | 1 |
| VandekeybusJan | Management Technologies Partners | 1 | |
| SchmitzHans-Jürgen | Mangrove Capital Partners | 1 | |
| HaasChristian | Matignon Investissement et Gestion | 1 | |
| EnthovenDaco | Maxx CleanTech Capital | 1 | |
| de MetzJérôme | MBO Partenaires | 1 | |
| HeemskerkBen | MeesPierson Private Equity | 1 | |
| van OlphenFrits | MeesPierson | | |
| MaringMarkwin | MeesPierson Informal Opp. Fund | | |
| DirksenRonald | MeesPierson Private Equity | | |
| KofflerKatrina | Meltwater Ventures | 1 | |
| VromenFrits | Mercurius Investments | 1 | |
| LammensBart | Merit Capital N.V. (Merit's Private Clients) | 10 | 4 |
| de BruijnWiet | Merkstenen | 1 | |
| MesJeroen | Mes Holding | 1 | |
| VriesMichielde | Momach Investments B.V. | 1 | |
| NijssenErik | Morgan Stanley | 1 | |
| HintzeHerman | Morgan Stanley | | |
| JansenR | Mother Earth Investments AG | 1 | |
| HabichlerJurgenF | Mountain Cleantech AG | 1 | |
| NagelRolf | MVP Munich Venture Partners | 1 | |
| BiggerMPatrick | MWB | 1 | |
| DemonsangJean-Patrick | Natexis Private Equity | 1 | |
| Glez De VegaDaniel | Nazca Private Equity | 1 | |
| NieuwenhuysAlexander | NBC Nieuwenhuys, Brink, Crommelin Duurzaarn Vermogensbeheer | 1 | |
| CrommelinAlexander | NBI | 1 | |

Page 6 of 10

HEARTSTREAM  CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV  LOOSDRECHT • THE NETHERLANDS
TELEPHONE:  +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH):  G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

# HEARTSTREAM
## *CONFIDENTIAL*

CONFIDENTIAL

| Investors for BioMarine contacted by Merit and Heartstream | | | |
|---|---|---|---|
| **CONTACT** | **INVESTOR** | **EXECUTIVE SUMMARY** | **INTEREST** |
| BakkerJan | NCP Krill Fishery | 1 | |
| JensenPålR. | NeoMed Management AS | 1 | |
| MaurerRon | Netmeer | 1 | |
| FetterPablo | Neuhaus Partners VC | 1 | |
| PolakPatrick | Newion | 1 | |
| EnthovenMichael | NIB Capital | 1 | 1 |
| HeringaJouke | NIB Capital Bank N.V. | | |
| MüllerMichael | Nomura Bank (Deutschland) GmbH | 1 | |
| CollinsChris | Nomura Code | | |
| SugiyamaKenji | Nomura International plc | | |
| DunlopJohnCFA | Nordbank | 1 | |
| ZaehPhilippE. | Norddeutsche Private Equity GmbH | 1 | |
| SchönhartingFlorian | Nordic Biotech Advisors | 1 | |
| ArnestadBjørn | Norfund | 1 | |
| ThorleifssonTellef | Northzone Ventures AS | 1 | |
| ByrnesMichael | Nova Capital Partners Orah | 1 | |
| TeerlinkPeter | Novem International | 1 | |
| SchifterSoren | Novo Group | 1 | |
| BaudJanWillem | NPM Capital N.V. | 1 | |
| PedrazziniMarco | Nuet E | 1 | |
| JenkinsHenri | Numis Securities | 1 | |
| DekkerWout | Nutreco | 1 | |
| MeesterJorisde | Oakinvest | 1 | 1 |
| SchmittBertrand | Oddo Securities | 1 | |
| PoyetWilfried | Oddyssee Venture | 1 | |
| OosterlinckMichel | Oosterlinck Capital | 1 | |
| van KleefEricHM | Optimix Vermogensbeheer NV | 1 | |
| BjertnesCarl-Gustav | Orah GroupDevelopment Strategies | 1 | |
| ZenatyDaniel | Otto Capital Partners - Compagnie Financière Otto | 1 | |
| FabreJean-Marie | PAI Partners | 1 | |
| de JagerPiet-Hein | Parcom Ventures | 1 | |
| PatouillaudJean-Marc | Partech International SAS | 1 | |
| RicoGuy | Paul Capital France | 1 | 1 |
| YeeStefan | PE Group | 1 | |
| KremerSerge | Penguin Ventures | 1 | |
| Neumanningeborg | Peppermint Holding GmbH | 1 | |
| van CampenhoutXavier | Petercam s.a. | 1 | |
| BosElse | PGGM | 1 | |
| van WaverenSylvia | PGGM Duurzaam | | |
| BonnerjeeRobin | Phanar Asset Management AG | 1 | |
| GuerreOlivierde | PhiTrust Finance, Societe de Gestion de Portefeuille | 1 | |
| LenonHugh | Phoenix Equity Partners | 1 | |
| DunnTim | Phoenix Equity Partners | | |
| PilkingtonBrian | Pilkington | 1 | |
| FischerAlbert | Planet Capital | 1 | |
| AchtmannEric | PolyTechnos Venture-Partners GmbH | 1 | |
| PovelLeoM | Povel | 1 | |
| MacKenzieDavid | PPM Capital | 1 | |
| MacDougallNeil | PPM Capital | | |
| GagnaPascal | Pragma - Capital | 1 | |
| BiedermannWolfgangJ | Pricap Venture Partners AG | 1 | |
| ArmstrongAlistair | Primary Capital | 1 | |
| GonszorCharles | Primary Capital | | |
| WestfeldtHenrik | Priveq Investment | 1 | |
| KokJob | ProMinent | 1 | |
| PörschmannJan | Proventis GmbH | 1 | |
| van KollemBerry | Providence Capital N.V. | 1 | |
| SundbergAsa | Provider Venture Partners AB | 1 | |

Page 7 of 10

# HEARTSTREAM
## *CONFIDENTIAL*

CONFIDENTIAL

| CONTACT | INVESTOR | EXECUTIVE SUMMARY | INTEREST |
|---|---|---|---|
| BlomJillert | Putnam Investments | 1 | |
| van SanteYves | QAT Investments | 1 | |
| FendelAndreas | Quadriga Capital Eigenkapital Beratung GmbH | 1 | |
| JemelenPatrick | Quartus Gestion | 1 | |
| BrooksWilliam | Quest Management N.V. | 1 | 1 |
| AbouchalacheMichel | Quilvest | 1 | |
| RuysCharles | RABO Foundation | 1 | |
| VerbeekJoost | Rabo Private Equity | | |
| CampmanDolf | Regent Associates | 1 | |
| HazewinkelHerman | Reggenburgh Ventures | 1 | |
| KarrEd | Rhone Asset Management Partners | 1 | |
| KeilmanHenkJ | RIG Investments N.V. | 1 | |
| RisseeuwTon | Risseeuw Consult | 1 | |
| MustersAndrew | Robeco | 1 | |
| MollerGeorge | Robeco | | |
| DoelderStefanden | Robeco Alternative Investments | | |
| KeuningKeimpe | Robeco Alternative Investments | | |
| BerkelmansPaul | RODAC | 1 | |
| MelchiorLeon | RODAC | | |
| BomhoffJoost | Rodamco | 1 | 1 |
| BruinBellede | Roosland Beheer B.V. | 1 | |
| BeghinJean-Michel | Rothschild & Cie Gestion | 1 | |
| GuedelHorst | RWB RenditeWertBeteiligungen AG | 1 | |
| JozefakPaul | SAP Ventures | 1 | |
| PendicTanja | SAP Ventures | | |
| PeaseChristopher | Sarasin Investment Management Limited | 1 | |
| AndreassonHans | Scandinavian Life Science Ventures | 1 | 1 |
| GelderloosPaul | Scarlet | 1 | |
| SnippeJan | Schootse Poort | 1 | |
| SchuitemakerAlbert | Schuitemaker | 1 | |
| FaissGisela | SEED | 1 | |
| GrossMichael | Seed Capital Brandenburg GmbH | | |
| SievertChristian | Segulah | 1 | |
| FalckJens Peter | Selvaag Venture Capital | 1 | |
| de BruijnWiet | Sevenoaks | 1 | |
| CohenSabbanJonathan | Seventure Partners | 1 | |
| Malezieux-DehonDidier | SG Corporate & Investment Banking | 1 | |
| ArrigoMaurizio | SGAM Alternative Investments | 1 | |
| LeonhardtHubertus | SHS Gesellschaft für Beteiligungsmanagement mbH | 1 | |
| FortuynBernard | Siemens | 1 | |
| KolbingerThomas | Siemens Venture Capital Gmbh | | |
| LangeAndreas | Sigma Capital Management GmbH | 1 | |
| SantyPaul-Louis | Siparex / Sigefi Private Equity | 1 | |
| KruusvalUrmas | Sjatte AP Fund | 1 | |
| UlmerDietrich | SMAC Partners | 1 | |
| GrapperhausJoos | SNS Asset Management | 1 | |
| RodermannAlain | Sofinnova (F) | 1 | |
| ProtardOlivier | Sofinnova Partners | | |
| van AlkemadeFlorisF | Solid Capital Partners B.V. | 1 | |
| SchaeferAlexander | Sony Europe GmbH | 1 | |
| SminkWillem | Spark | 1 | |
| SabbanJonathanCohen | SPEF Venture | 1 | |
| Reuter-SchmidtKerstin | S-Refit AG | 1 | |
| BuschClemens | Steadfast Capital GmbH | 1 | |
| CreadoDirk | StoneFund nv SAM | 1 | 1 |
| MeisingsetChristineTerklep | Storebrand Investments | 1 | |
| van der CraatsJan | Stork Pensioenfonds | 1 | |
| StoutenbeekWim | Stoutenbeek Investments | 1 | |

Page 8 of 10

HEARTSTREAM  CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE:  +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET

Page 64 of 66

# HEARTSTREAM
## *CONFIDENTIAL*

CONFIDENTIAL

| Investors for BioMarine contacted by Merit and Heartstream | | | |
|---|---|---|---|
| **CONTACT** | **INVESTOR** | **EXECUTIVE SUMMARY** | **INTEREST** |
| BorsJoostJ | Stroeve | 1 | |
| DickersonJohn | Summit Global | 1 | |
| BergerZachi | SVM STAR Ventures Management | 1 | |
| BrossyLaurent | Synchrony Asset management | 1 | |
| HumphreysSam | Syntek Capital AG | 1 | |
| PalazziMarcello | Tällberg Foundation | 1 | |
| SteensGert | Talpa Capital | 1 | |
| JantzWaldemar | Target Partners GmbH | 1 | |
| KatzStephan | TECHNOSTART GmbH | 1 | |
| BarfodFriedwart | Tendris | 1 | |
| KoornstraRuud | Tendris | | |
| TesselaarKoos | Tescon | 1 | |
| KruizeAleid | Teslin Capital management | 1 | |
| PorterJohn | TEUS | 1 | |
| KerbsAvi | Teuza Fund | 1 | |
| DufourJean | Thales Corporate Ventures SA | 1 | |
| BalbachJohn | The Cleantech Group | 1 | |
| SchullerJanWillem | Theodoor Gilissen | 1 | |
| van OersFrankAJ | TMF FundServices B.V. | 1 | |
| von MellenthinAlexander | Transconnect Unternehmensberatungs- und Beteiligungs AG | 1 | |
| DeboosereStefaan | Trevi Capital | 1 | |
| GeigerBernd | Triangle Venture Capital Group Management GmbH | 1 | |
| van der KrabbenJeroen | Tricorp | 1 | |
| SchutJF(Hans) | Triodos Bank | 1 | 1 |
| Chaumet-RiffaudElisabeth | Truffle Venture | 1 | 1 |
| MichalowskiHubert | Turenne Capital Partenaires | 1 | |
| CropperMark | Turquoise International Limited | 1 | |
| KocybikWolfgang | T-Venture Holding GmbH | 1 | |
| PolackAxel | TVM Capital | 1 | 1 |
| SchlesingerMonika | TVM Capital GmbH | 1 | |
| de ClerHans | Tyche Holding | 1 | |
| ShaikhNTariq | UBS Investment Bank | 1 | |
| MannsMarkus | Union Investment Privatfonds GmbH | 1 | |
| WahlstromHans-Rune | Union Securities (International) Ltd. | 1 | |
| DessauErling | University for Peace | 1 | |
| van Ketwich VerschuurJ.A | Veer Palthe Voute NV | 1 | |
| HuetEric | Ventech | 1 | |
| BeyerStephan | Ventegis Capital | 1 | |
| VorndranHelmut | Ventizz Capital Partners Advisory AG | 1 | |
| GuyotArnaud | Ventura | 1 | |
| EkqvistMagnus | Verdane Capital | 1 | |
| HandelandArne | Verdane Capital (N) | 1 | |
| VillevoyeJoost | Vermogens Advies Groep | 1 | |
| Janson-EuterneckChristian | ViewPoint Capital Partners | 1 | |
| DirectorInvestment | Vital Forsikring ASA | 1 | |
| DirectorInvestment | Volksbank CZ | 1 | |
| CharquetPhilippe | VPSA | 1 | |
| RansauerRichardG | VTC Partners GmbH | 1 | |
| ThielenRob | Waterland Venture Capital | 1 | |
| KostermanRob | WEDGE International Holdings B.V. | 1 | |
| MarkusBart | Wellington Partners | 1 | |
| DavidsonGrant | West Private Equity | 1 | |
| KoopFritz | West LB AG, Equity Investments | 1 | |
| SemenzatoMichele | Wise Venture | 1 | |
| FranceschiniValentina | Wise Venture | | |
| OzingaFokkeJan | WP Stewart | 1 | |
| HoppenbrouwersPaul | WSI Webexperts | 1 | |
| AgrechDominique | Xange Private Equity | 1 | |

Page 9 of 10

# HEARTSTREAM

*CONFIDENTIAL*

CONFIDENTIAL

| CONTACT | INVESTOR | | | EXECUTIVE SUMMARY | INTEREST |
|---------|----------|--|--|-------------------|----------|
| **Investors for BioMarine contacted by Merit and Heartstream** | | | | | |
| RoseNicolas | Xange VC | | | | |
| StrubMarcus | ZBI europ | | | 1 | |
| LeuftinkArianneH | Zest Advice | | | 1 | |
| de BruinGer | Zernicke Group Investments | | | 1 | 1 |
| von SchubertFelix | Zouk Ventures Ltd | | | 1 | |
| **Total** | | | | **449** | **41** |

HEARTSTREAM CORPORATE FINANCE B.V.
NIEUW LOOSDRECHTSEDIJK 227 • 1231 KV LOOSDRECHT • THE NETHERLANDS
TELEPHONE: +31 (0)35 697 0032 • MOBILE (HERSBACH): +31 (0)65 148 0300 • E-MAIL (HERSBACH): G.HERSBACH@HEARTSTREAM.NET
CHAMBER OF COMMERCE NO. 32100116
WWW.HEARTSTREAM.NET



13 GELDIG VOOR ALLE LANDEN
Valid for all countries / Valable pour tous les pays

14 OPMERKINGEN VAN BEVOEGDE INSTANTIES
Page reserved for the authorities responsible for issuing the passport /
Page réservée aux autorités compétentes pour délivrer le passeport

**KONINKRIJK DER NEDERLANDEN**
KINGDOM OF THE NETHERLANDS      ROYAUME DES PAYS-BAS

P   NLD Nederlandse                    NWBKC1P55

**Hersbach**

Georgius Josephus Maria

19 DEC/DEC **1952**

Rotterdam

M/M                              1,84 m

08 MEI/MAY 2015                  08 MEI/MAY 2025

Burg. van Wijdemeren

P<NLDHERSBACH<<GEORGIUS<JOSEPHUS<MARIA<<<<<<
NWBKC1P550NLD5212198M2505082039777571<<<<<20

I, mr. Sebastiaan Kreugel,
civil law notary practising in
Wijdemeren, declare that this
is a copy of the original.

mr. S. Kreugel
Notaris te Wijdemeren

# VIS



Koninklijke Notariële
Beroepsorganisatie

**Toetsingsgegevens**

| | |
|---|---|
| Referentie | bk |
| Debiteurnummer | 102331 |
| Datum toetsing | 17-06-2021 14:55 uur |

**Documentgegevens**

| | |
|---|---|
| Documentsoort | Nederlandse en buitenlandse paspoorten |
| Land van uitgifte | Nederland |
| Documentnummer | NWBKC1P55 |
| Geboortedatum | 19-12-1952 |

**Resultaat toetsing**

| | |
|---|---|
| Resultaat | Document staat NIET als gestolen of vermist gesignaleerd |

Extra beschrijving

| | |
|---|---|
| Aantal bevragingen afgelopen 3 weken | 1 |
| Referentie BKR | a8d85629-65af-4ece-acba-0968afb5c758 |