UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | *   *   * | MDL 2179 SECTION: J(2) |
| Applies to: *No. 16-05277* | * * | JUDGE BARBIER MAG. JUDGE CURRAULT |

### ORDER & REASONS
### [Imposing Sanctions on John R. DeSilva and Ronnie G. Penton]

On July 19, 2021, the Court issued an Order & Reasons that denied defendant BP's motion to dismiss for lack of standing filed against plaintiff John R. DeSilva ("DeSilva"). (Rec. Doc. 27174 at 12). However, the Order & Reasons also required plaintiff DeSilva and his attorney, Ronnie G. Penton ("Penton"), to show cause in writing why either or both of them should not be sanctioned for misrepresenting certain facts to the Court. (*Id.*) (hereinafter, the "Show Cause Order"). The Show Cause Order explained:

> Until very recently, DeSilva and his attorney have repeatedly and vigorously asserted that DeSilva never sold TBOP [The Bird of Paradise, LLC]. The issue was first brought to the Court's attention on September 9, 2020, almost a year ago, when the Court held a status conference with counsel to discuss this case and about a dozen others. There BP's attorney argued that it appeared that DeSilva had sold TBOP in 2017 and "[w]e don't see evidence . . . that he actually retained the claim." (9/9/20 Transcript at 27:17-19, Rec. Doc. 26700). DeSilva's attorney [Penton] did not dispute at that time that DeSilva had sold TBOP; rather, he argued that the claim was simply not included in the sale. (*Id.* at 26:16 to 27:4). While discussing what discovery might be needed to resolve this issue, the Court commented that "it just strikes me fundamentally that a document that might be relevant would be whatever documents related to the sale of the business, because those documents perhaps state whether this claim was sold or retained or what." (*Id.* at 28:21-24). DeSilva's attorney responded, "Like I said, we first sounded this issue at the mediation [in 2019]. We were not prepared to produce anything that was needed, but we'll be happy to review our

tender. . . . If there are additional transactional documents, we'll certainly be happy to produce them so we could work that issue out." (*Id.* at 29:17-22). Following the status conference, the Court entered PTO 69 [Pretrial Order No. 69], which set forth a discovery and briefing schedule for this case and several others. (Rec. Doc. 26709).

After the status conference and despite further requests from BP, DeSilva did not produce any documents concerning the sale of TBOP, although he did produce documents concerning the sale of the Property.[1] On February 22, 2021, BP filed the instant motion where it argued that the evidence it did have indicated that the claim at issue belonged to TBOP, that TBOP was sold in 2017 along with the Property [to Steven MacDonald, a non-party], and that there is no evidence that DeSilva retained TBOP's claim after the sale. (Rec. Doc. 26922). BP relied on, inter alia, the fact that the Florida Department of State's website showed that (1) Steven MacDonald had replaced DeSilva as the manager of TBOP in April 2018 and (2) TBOP was subsequently dissolved while under MacDonald's management. (Rec. Doc. 26922-4, -5).

DeSilva filed an opposition in which he repeatedly denied that TBOP was ever sold:

- "[T]he BOP, LLC was never sold," (Opp'n at 4, n.2, Rec. Doc. 27005);
- "[T]here is zero evidence that Mr. DeSilva ever sold or otherwise actively transferred the LLC to Mr. MacDonald (or anyone else)," (*id.* at 8);
- "The BOP, LLC never filed a tax return, never owned any assets, was never sold …," (*id.*);
- "[T]he BOP LLC was never sold by Mr. DeSilva," (*id.* at 12).

Further, DeSilva stated that the reason Florida records showed a change of manger was because "MacDonald simply unilaterally listed himself as a member." (*Id.* at 4 n.2). DeSilva also asserted that "after selling the Property to Mr. MacDonald . . ., Mr. DeSilva had no reason to continue filing annual reports for the LLC . . . and abandoned it as unnecessary. Apparently, the composition of the LLC was thereafter changed, without the active involvement of, or even any knowledge by, Mr. DeSilva." (*Id.* at 8).

DeSilva's attorney made similar statements at a hearing on April

---

[1] The "Property" is the real property located at 2707 Pass-A-Grille Way in St. Pete Beach, Florida. During the time DeSilva owned the Property and for some time afterwards, TBOP held a state license that allowed the Property to be rented as a boutique resort.

2

21, 2021:

- "There was never ever any type of transaction selling any business, The Bird of Paradise, stock, or anything else, Judge," (4/21/21 Transcript at 13:13-14, Rec. Doc. 27067);
- "And as far as the Secretary of State filings in the state of Florida, Mr. DeSilva just simply quit filing annual reports in 2017 when he sold the real estate. Mr. MacDonald, on his own, unilaterally simply went into the Secretary of State and filed reports and basically took that over. There was never a sale," (*Id.* at 13:15-16);
- "I'm telling you this, Mr. DeSilva never sold the LLC to Mr. MacDonald nor anyone else. He simply quit filing his annual reports. Simply. That's what he did," (*Id.* at 14:8-11);
- "But what is an absolute fact, Judge, is The Bird of Paradise as an LLC was never sold to anyone, ever," (*Id.* at 17:7-8).

When the Court asked DeSilva's attorney why DeSilva referred to himself as the "former owner" of TBOP in his opposition brief, counsel replied, "Because he just simply abandoned this LLC." (*Id.* at 14:14-19). When the Court asked how the Single Resort Dwelling License issued to TBOP—which states on its face that it is "non-transferrable" (PTO 65 Stmt., Ex. C-4)—came to be transferred to MacDonald, DeSilva's attorney replied, "[M]y understanding is it was simply given to Mr. MacDonald. It was just signed over to him." (4/21/21 Transcript at 17:11-14). At the end of the hearing, the Court ordered the parties to take the deposition of MacDonald and DeSilva, and then file supplemental briefs. (*Id.* at 31).

MacDonald subsequently produced documents that prove the above statements by DeSilva and his attorney were patently false. MacDonald produced a signed purchase agreement dated June 16, 2017 whereby DeSilva sold 100% of his interest in TBOP to a company controlled by MacDonald. (Rec. Doc. 27145-1 at 123-130). The agreement also states that TBOP owns a license that permits TBOP "to operate as a private resort at the property located at 2707 Pass-A-Grille Way." Thus, this transfer gave MacDonald control over not only TBOP, but the resort license as well. Furthermore, MacDonald explained in a declaration under penalty of perjury that, consistent with the purchase agreement, he listed himself as the member-manager of TBOP with the Florida Department of State in April 2018. (Rec. Doc. 27145-1). Two days after MacDonald produced the purchase agreement, DeSilva admitted at his deposition that he had indeed sold TBOP in 2017. (Rec. Doc. 27145-1 at 52-53).

3

(*Id.* at 7-11).

The Show Cause Order concluded that "DeSilva and his attorney have misrepresented facts to the Court" and their false statements appeared to have "delayed resolution of this matter and created additional and unnecessary work for the Court, BP, and non-party MacDonald." (*Id.* at 11). Accordingly, the Court ordered DeSilva and Penton to show cause why they should not be sanctioned. The Court also invited BP to submit briefing on this issue.[2] The Court has now received and reviewed DeSilva's brief (Rec. Doc. 27181), Penton's brief (Rec. Doc. 27182), and BP's brief (Rec. Doc. 27191).

In addition to the events described in the Show Cause Order, it is relevant to note that BP first raised the issue of whether DeSilva still owned TBOP and TBOP's claim in a series of emails to Penton in October 2019. This occurred a few days ahead of a mediation that had been scheduled pursuant to Pretrial Order No. 67 ("PTO 67"), which required BP and around 70 plaintiffs to participate in mediations. DeSilva's answers in 2019, to the extent he provided any, were evasive at best. The mediation failed as a result, wasting the parties' and the mediators' time. The point here is that DeSilva and Penton knew that DeSilva's ownership of TBOP was a critical threshold issue for almost a year before it was first brought to the Court's attention at the September 2020 status conference.

The Court agrees with BP that DeSilva's evasion of the ownership issue, even when directly asked, undermined the PTO 67 mediation process and the PTO 69

---

[2] On July 20, 2021, the Court issued a supplement to the Show Cause Order that directed DeSilva and Penton to also address the circumstances surrounding the creation of MacDonald's Sept. 18, 2020 affidavit, which conspicuously omitted any reference to the sale of TBOP. (Rec. Doc. 27175).

4

discovery and motion process. DeSilva's failure to provide information that was at his ready access caused BP to expend significant time and resources investigating facts, preparing multiple rounds of briefing, preparing for and participating in hearings, etc. DeSilva's conduct also imposed unnecessary burdens on MacDonald, a non-party. The Court has similarly wasted its time reviewing motions, briefs, and exhibits; holding hearings; and issuing orders in its effort to get to the bottom of this ***threshold*** issue (read: after all of this, the parties haven't even begun to litigate the merits of DeSilva's claim). Again, most if not all of this could have been avoided if DeSilva provided the information that was at his ready access and which had been sought for nearly two years.

BP requests that the Court sanction DeSilva by dismissing his claims. Alternatively, BP requests that the Court preclude DeSilva from seeking anything but nominal damages in any litigation alleging economic harm suffered by TBOP. In addition, BP requests that the Court sanction DeSilva by requiring him to pay BP's attorneys' fees and costs it expended on this issue and/or a fine to the Court.

After considering the parties' briefs and attachments, as well as the relevant record and the applicable law, the Court finds that sanctions are appropriate against DeSilva under Rule 11 (and specifically for violating paragraphs (b)(3) and (b)(4) of same), as well as under the Court's inherent authority, for the conduct described above, in the Show Cause Order, and in BP's brief. However, the Court does not agree with BP that dismissing or limiting DeSilva's claim would be appropriate under these facts. Instead, the Court will require DeSilva to pay all or part of BP's attorneys' fees and costs it reasonably incurred after it first raised the issue in October 2019. The

5

Court will determine the exact amount in due course, as set forth below.

The Court further finds that Penton's conduct, while less egregious than DeSilva's (and the Court further acknowledges that DeSilva accepts all fault and lays no blame on Penton), still breached his duty to perform an "inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b).[3] The Court sanctions Penton by issuing a public reprimand.

* * *

Accordingly,

**IT IS ORDERED** that John R. DeSilva and Ronnie G. Penton are **SANCTIONED** as follows:

1. John R. DeSilva is liable to BP for all or part of BP's attorneys' fees and costs it reasonably incurred after it first raised the issue of TBOP's ownership in October 2019. By no later than August 26, 2021, BP shall file a motion for attorneys' fees and costs with supporting documentation. DeSilva may file a response by no later than September 2, 2021. The Court will then determine what amount DeSilva shall pay.

2. Ronnie G. Penton, an attorney licensed to practice in the State of Louisiana, is hereby PUBLICLY REPRIMANDED for failing to perform an inquiry reasonable under the circumstances and then presenting to the Court factual

---

[3] For example, when faced with the fact that the Florida Department of State's website indicated that control of TBOP had changed from DeSilva to MacDonald, combined with the knowledge that DeSilva had sold the Property to MacDonald, a reasonable person (and certainly a reasonable attorney), would conclude that the simplest explanation—that DeSilva sold TBOP to MacDonald—is probably correct. Penton, however, accepted DeSilva's story that MacDonald must have filed a false report with the Department of State (i.e., committed a crime) and, in turn, presented this fiction to the Court. DeSilva had no factual grounds to level such an accusation at MacDonald, and it was unreasonable for Penton to rely on his client's representation.

6

contentions that had no evidentiary support, which created waste, multiplied proceedings, and delayed resolution of this matter.

New Orleans, Louisiana, this 12th day of August, 2021.

_____
CARL J. BARBIER
United States District Judge