UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL 2179 |
| | SECTION: J |
| This Document Relates to:<br>*Donovan v. Barbier, et al.*,<br>2:21-cv-00237 | JUDGE BARBIER |
| | MAG. JUDGE CURRAULT |

_____/

### BRIAN J. DONOVAN'S RESPONSE IN OPPOSITION TO MOTION TO FIX ATTORNEYS' FEES

Brian J. Donovan ("Donovan") hereby respectfully submits this Response in Opposition to Motion to Fix Attorneys' Fees by Stephen J. Herman ("Herman") and James P. Roy ("Roy") for the reasons set out herein.

### PRELIMINARY STATEMENT

Herman & Roy's Motion to Fix Attorneys' Fees relates to *Donovan v. Barbier, et al.*, 2:21-cv-00237. In *Donovan*, the Honorable Carl J. Barbier is presiding over a case in which he is a Defendant. As explained below, the Court's Order & Reasons [As to the Motions for Sanctions Against Brian J. Donovan] granting Herman, Roy, and Juneau's Motions for Sanctions (Rec. Docs. 26999; 27003) and by extension Herman & Roy's Motion to Fix Attorneys' Fees are void *ab initio*.

### PROCEDURAL HISTORY

On November 5, 2020, Brian J. Donovan ("Plaintiff"), on behalf of his business, himself, and those parties who were injured as a result of the tortious conduct of the RICO MDL 2179 Defendants and who are not able to assert their rights because they have been denied access to

the courts, brings a civil RICO complaint against Carl J. Barbier, Stephen J. Herman, James P. Roy, Kenneth R. Feinberg, and Patrick A. Juneau ("Defendants" or "RICO MDL 2179 Defendants") in the U.S. District Court for the Middle District of Florida to prevent future harm and to redress past wrongs (Case 8:20-cv-02598). In light of the concerns about the spread of the COVID-19 virus (coronavirus), Plaintiff only files the complaint. Plaintiff does not present a summons to the clerk for signature and seal. Contingent on the severity of the spread of the COVID-19 virus, Plaintiff intends to have the defendants served with a copy of the summons and complaint within the time allowed by FRCP Rule 4(m).

      On November 23, 2020, the JPML files Conditional Transfer Order (CTO-140).

      On February 4, 2021, the JPML issues a Transfer Order transferring *Donovan v. Barbier, et al.* to the Eastern District of Louisiana and, with the consent of that court, assigning the case to the Honorable Carl J. Barbier for coordinated or consolidated pretrial proceedings.

      On February 17, 2021, Plaintiff filed his Notice of Voluntary Dismissal (Rec. Doc. 26916-1).

      On March 19, 2021, Herman and Roy filed a Motion for Sanctions and to Enjoin Further Frivolous Filings against Donovan.

      On March 22, Juneau filed a Motion for Injunctive Relief and Consideration of Sanctions against Donovan.

      On April 11, 2021, Donovan filed two responses, one to each motion (Rec. Doc. 27035, 27036).

      On April 28, 2021, Donovan filed a "Second Motion for Clarification" wherein Donovan asked the Court to clarify whether Herman and Roy, and Juneau engage in "sewer service" when

the motions for sanctions served on Donovan by Herman and Roy, and Juneau are so well-disguised that Donovan would not have any reason to know that the motions for sanctions were filed against him (Rec. Doc. 27074-1).

On April 28, 2021, the Court issued its Order & Reasons denying Donovan's "Second Motion for Clarification." The Court further ordered that, until the Court rules on the pending motions for sanctions against Donovan (*see* Rec. Docs. 26999, 27003), Donovan is prohibited from filing any further documents or motions in MDL 2179 (or any case consolidated with MDL 2179) unless ordered or requested by the Court (Rec. Doc. 27077).

The Court heard arguments on the motions for sanctions on July 23, 2021 (Rec. Doc. 27178).

On August 2, 2021, the Court issued its Order & Reasons [As to the Motions for Sanctions Against Brian J. Donovan] granting Herman, Roy, and Juneau's Motions for Sanctions (Rec. Docs. 26999; 27003). The Court further ordered that Brian J. Donovan or anyone acting on his behalf is enjoined from filing any lawsuit in state or federal court against Stephen J. Herman, James P. Roy, Patrick A. Juneau, or any other person or entity concerning or in any way related to the Deepwater Horizon/Macondo Well casualty and oil spill that began on or around April 20, 2010 in the Gulf of Mexico or any of the claims processes arising from that incident, without first receiving express approval from this Court.

On August 17, 2021, the Court granted Herman & Roy's Motion for Leave (Rec. Doc. 27202) to file their Motion to Fix Attorneys' Fees after the deadline (Rec. Doc. 27203).

## **LAW AND ARGUMENT**

**I.     Judge Barbier's Refusal to Recuse Himself and His Subsequent Judicial Participation Violates the Due Process Clause of the Fourteenth Amendment.**

**A.     U.S. Supreme Court Precedents**

The U.S. Supreme Court's decision in *Williams v. Pennsylvania*, 579 U.S. ___ (2016) is instructive. In *Williams*, the Court held that Chief Justice Castille's denial of the recusal motion and his subsequent judicial participation violated the Due Process Clause of the Fourteenth Amendment.

The U.S. Supreme Court's precedents set forth an objective standard that requires recusal when the likelihood of bias on the part of the judge "is too high to be constitutionally tolerable." *Caperton* v. *A. T. Massey Coal Co.*, 556 U. S. 868, 872 (2009) (quoting *Withrow* v. *Larkin*, 421 U. S. 35, 47 (1975)).

The U.S. Supreme Court has determined that an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case. See *Murchison*, 349 U. S., at 136–137. This objective risk of bias is reflected in the due process maxim that "*no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome*" (Emphasis added). *Id.*, at 136.

In *Williams*, Chief Justice Castille's significant, personal involvement in a critical decision in Williams's case gave rise to an unacceptable risk of actual bias. This risk so endangered the appearance of neutrality that his participation in the case "must be forbidden if the guarantee of due process is to be adequately implemented." *Withrow*, 421 U. S., at 47.

As Justice Kennedy acknowledged in *Williams*, impartiality in our justice system and the guarantees of due process are "necessary to the public legitimacy of judicial pronouncements and

to the rule of law itself." Justice Kennedy's opinion in *Williams*, joined by Justices Ginsburg, Breyer, Sotomayor, and Kagan, reaffirms what our Constitution's Framers recognized: impartial adjudicators are essential to ensuring due process under law. The constitutionally imposed duty for a judge to recuse him or herself is as equally weighty in the civil setting as it is in the criminal.

### B.     28 U.S.C. § 455(a)

Any justice, judge or magistrate of the United States *shall* disqualify himself in any proceeding in which his impartiality might reasonably be questioned. 28 U.S.C. § 455(a). As the U.S. Supreme Court has explained, that provision requires that the judicial conduct at issue:

> be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance. Quite simply and quite universally, recusal was required whenever "impartiality might reasonably be questioned."

*Liteky v. United States*, 510 U.S. 540, 548 (1994)(Scalia, J.). Thus, it is the appearance of partiality - and not actual bias - that is the test for recusal under Section 455(a): "In applying § 455(a), the judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993).

Even if the decision to recuse in a particular case were a close one, the statute's purpose of promoting public confidence in the judiciary requires that judges must resolve any doubts in favor of recusal. *See, e.g.*, *Republic of Panama v. American Tobacco Co.*, 217 F.3d 343, 347 (5th Cir. 2000)("[I]f the question of whether § 455(a) requires disqualification is a close one the balance tips in favor of recusal."); *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993) ("Where the question is close, the judge must recuse himself."); *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989) (Section 455(a) "requires judges to resolve any doubts they may have in favor of disqualification.").

Congress established the "appearance of impartiality" standard "to promote public confidence in the integrity of the judicial process." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988). The legislative history of § 455(a) is clear:

> This general standard is designed to promote public confidence in the impartiality of the judicial process by saying, in effect, if there is a reasonable factual basis for doubting the judge's impartiality, he should disqualify himself and let another judge preside over the case.

H. Rep. No. 93-1453, p. 5 (1974), U.S. Code Cong. & Admin. News 1974, p. 6355. In the words of the Seventh Circuit, "Once a judge whose impartiality toward a particular case may reasonably be questioned presides over that case, the damage to the integrity of the system is done." *Durhan v. Neopolitan*, 875 F.2d 91, 97 (1989).

There is a heightened need to preserve the appearance of impartiality in bench trials. The question has sometimes arisen as to whether the standard for disqualification differs in a bench trial where the judge's role is even more pivotal than in a jury trial. In *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155 (3d Cir. 1993), the court of appeals said: "We cannot overlook the fact that this is a non-jury case, and that [the judge] will be deciding each and every substantive issue at trial….When the judge is the actual trier of fact, the need to preserve the appearance of impartiality is especially pronounced." Plaintiff respectfully points out that there is a heightened need to preserve the appearance of impartiality in *Donovan v. Barbier, et al.*

### C. Judge Barbier Acknowledges that the Mandatory "Shall" Normally Creates an Obligation Impervious to Judicial Discretion.

"Any justice, judge or magistrate of the United States *shall* disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

Use of "shall" and "may" in statutes mirrors common usage; ordinarily "shall" is mandatory and "may" is permissive. "The mandatory 'shall' ……normally creates an obligation

impervious to judicial discretion." *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998).

Justice Souter, in delivering the opinion of the *Lexecon* Court, explained, "If we do our job of reading the statute whole, we have to give effect to this plain command, see *Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U. S. 469, 476 (1992), even if doing that will reverse the longstanding practice under the statute and the rule, *see Metropolitan Stevedore Co.* v. *Rambo* (1995) ("'Age is no antidote to clear inconsistency with a statute."(quoting *Brown* v. *Gardner*, 513 U. S 115, 122 (1994))). The language is straightforward, and with a straightforward application ready to hand, statutory interpretation has no business getting metaphysical."

Judge Barbier acknowledges "The mandatory 'shall' normally creates an obligation impervious to judicial discretion." He attempts to justify not recusing himself by stating, "Donovan asserts that one of the reasons he dismissed his case is because the undersigned did not recuse from *Donovan III*. However, Donovan never moved for recusal in this case, and *the Court did not have an opportunity to consider whether to recuse sua sponte before Donovan voluntarily dismissed the action*, including the claims against the undersigned." (Emphasis added)(Rec. Doc. 27180). This is not accurate. On November 23, 2020, the JPML files Conditional Transfer Order (CTO-140). On February 4, 2021, the JPML issues a Transfer Order transferring *Donovan v. Barbier, et al*. to the Eastern District of Louisiana and, with the consent of that court, assigning the case to the Honorable Carl J. Barbier for coordinated or consolidated pretrial proceedings. On February 17, 2021, Plaintiff filed his Notice of Voluntary Dismissal (Rec. Doc. 26916-1).

Donovan respectfully points out that Judge Barbier had ample time to recuse himself *sua sponte* from presiding over *Donovan v. Barbier, et al.* He simply refused to do so. A reasonable person may ask: How long does a federal judge require in order to conclude that he must recuse himself from presiding over a case in which he is a Defendant?

**D.     The Canons of the Code of Conduct for United States Judges**

Section 3B(3) of the Code of Conduct for Judges provides that, *"A judge should exercise the power of appointment fairly and only on the basis of merit, avoiding unnecessary appointments, nepotism, and favoritism. A judge should not approve compensation of appointees beyond the fair value of services rendered."*

Judge Barbier, in clear violation of Section 3B(3) of the Code of Conduct for Judges:
(1) Hand-picked an inexperienced Stephen J. Herman, the son of a close friend and favored colleague, to oversee and steer the entire MDL 2179 "litigation" effort. Herman explains: (1) the primary purpose of his appointment as Lead Counsel in MDL 2179 is to further the interests of judicial efficiency and economy; and (2) his primary fiduciary duty is to Judge Barbier. Herman states "the notion that some 'fiduciary duty' extends to individually retained counsel, in my view, *goes too far*." (*See* Stephen J. Herman, *Duties Owed by Appointed Counsel to MDL Litigants Whom They Do Not Formally Represent*, 64 Loy. L. Rev. 1, 8 - 12 (2018)); and

(2) Approved compensation of Herman and Roy beyond the fair value of services rendered. The total compensation paid to Herman and Roy, and the 17 PSC attorneys and their law firms, is guesstimated to be $3.035 billion. A reasonable, objective observer would conclude that this amount is beyond the fair value of the professional services rendered.

**II.     Lack of Personal Jurisdiction**

Although this Honorable Court has previously been fully briefed in this matter (Rec. Doc. 27035), the MDL 2179 Court has neglected to address this issue.

Again, Donovan respectfully points out that this Honorable Court does not have personal jurisdiction over Herman and Roy because the procedural requirement of service of summons has not been satisfied and Donovan has not even presented a summons to the clerk for signature and seal.

As explained *supra*, in light of the concerns about the spread of the COVID-19 virus (coronavirus), Plaintiff only filed the complaint. Plaintiff did not present a summons to the clerk for signature and seal in the U.S. District Court for the Middle District of Florida. Contingent on the severity of the spread of the COVID-19 virus, Plaintiff intended to have the defendants served with a copy of the summons and complaint within the time allowed by FRCP Rule 4(m).

In sum, since the U.S. District Court for the Middle District of Florida did not have personal jurisdiction over the defendants because they were never properly served then the U.S. District Court for the Eastern District of Louisiana has never had personal jurisdiction over the defendants because, again, the defendants have not been served with a copy of the summons and complaint.

A civil action is commenced by filing a complaint with the court. (Fed. R. Civ. P. 3). However, service of process is an essential step in commencing a civil lawsuit. Service of process is so essential in a lawsuit that, if it is not performed properly, a lawsuit cannot proceed. Service of process is critical because it establishes that the court hearing the lawsuit has jurisdiction over the defendant. Service of process is also important because it notifies the defendant that the plaintiff is bringing a lawsuit and that the courts will hear the impending lawsuit.

"Due process requires proper service of process for a court to have jurisdiction to

adjudicate the rights of the parties." *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 353 (6th Cir. 2003) (citing *Amen v. City of Dearborn*, 532 F.2d 554, 557 (6th Cir. 1976)). "Therefore, if service of process was not proper, the court must set aside an entry of default." *Id*. As the Supreme Court has stated on multiple occasions, service of a summons is a prerequisite for the exercise of personal jurisdiction. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1555-56 (2017) ("Congress' typical mode of providing for the exercise of personal jurisdiction has been to authorize service of process. Congress uses this terminology because, absent consent, a basis for service of a summons on the defendant is prerequisite to the exercise of personal jurisdiction." (citations omitted)); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

## SUMMARY

Context is important. Donovan previously filed two motions to recuse Judge Barbier (Rec. Docs. 25908, 25927). On November 8, 2019, Judge Barbier denied the two motions to recuse and, in apparent retaliation, commenced a disciplinary proceeding against Donovan. This order and the baseless allegations therein were publicly posted on the MDL 2179 Court website (Rec. Doc. 26089). Donovan filed his response to the disciplinary complaint on November 14, 2019. On August 6, 2020, Donovan was informed that a recommendation would be made to dismiss the disciplinary complaint filed against Donovan by Judge Barbier.

A.   *Donovan v. Barbier, et al.*
In clear violation of the U.S. Supreme Court's precedents and 28 U.S.C. § 455(a), Judge Barbier, who had ample time to do so, refused to recuse himself *sua sponte* from presiding

over *Donovan v. Barbier, et al.*, a civil RICO lawsuit in which he is a named defendant. Due process compelled Judge Barbier to recuse himself *sua sponte*.

### B.  Motions for Sanctions Relating to *Donovan v. Barbier, et al.*

Again, in clear violation of the U.S. Supreme Court's precedents and 28 U.S.C. § 455(a), Judge Barbier refused to recuse himself *sua sponte* from presiding over two motions for sanctions against Donovan filed by Stephen J. Herman, James P. Roy, and Patrick A. Juneau who were co-defendants of Judge Barbier in *Donovan v. Barbier, et al.* These three individuals are known to be close personal friends and favored colleagues of Judge Barbier. Due process compels Judge Barbier to recuse himself *sua sponte*.

### C.  *Donovan v. Herman*

Similarly, 28 U.S.C. § 455(a) and due process compelled Judge Barbier to recuse himself *sua sponte* in *Donovan v. Herman* because he had an interest in the outcome of the case, namely he had hand-picked Defendant Herman, the son of a close friend and favored colleague, to oversee and steer the entire MDL 2179 "litigation" effort.

Although moot at this point, on March 27, 2020, the Court awarded Stephen J. Herman any costs in *Donovan v. Herman* in accordance with Fed. R. Civ. P. 54(d)(1) (Rec. Doc. 29).

### D.  Due Process Requires Proper Service of Process for a Court to Have Jurisdiction to Adjudicate the Rights of the Parties.

This Honorable Court does not have personal jurisdiction over Herman and Roy because the procedural requirement of service of summons has not been satisfied. Donovan has not even presented a summons to the clerk for signature and seal.

### CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Honorable Court: (1) deny Herman & Roy's Motion to Fix Attorneys' Fees; or (2) *in the alternative*, given that

Judge Barbier's refusal to recuse himself and his subsequent judicial participation violates the Due Process Clause of the Fourteenth Amendment, give Judge Barbier an opportunity to recuse himself *sua sponte*.

DATED: August 25, 2021                                                              Respectfully submitted,

**/s/ Brian J. Donovan**
Brian J. Donovan
Plaintiff
Florida Bar No. 143900
3102 Seaway Court, Suite 304
Tampa, FL 33629
Tel: (352)328-7469
BrianJDonovan@verizon.net

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 25th day of August, 2021.

**/s/ Brian J. Donovan**
Brian J. Donovan
Plaintiff
Florida Bar No. 143900
3102 Seaway Court, Suite 304
Tampa, FL 33629
Tel: (352)328-7469
BrianJDonovan@verizon.net