## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * <br> <br> * | MDL 2179 <br> <br> SECTION: J(2) |
| Applies to: <br> *No. 16-05923, Classy Cycles, Inc. v. BP p.l.c., et al.* | * <br> <br> * | JUDGE BARBIER <br> <br> MAG. JUDGE CURRAULT |

## <u>ORDER</u>

Before the Court is BP's Motion for Summary Judgment (Rec. Doc. 27103) against Classy Cycles, Inc., as well as Classy Cycles's opposition (Rec. Doc. 27147) and BP's reply (Rec. Doc.27158). After considering the parties' arguments, the record, and the applicable law, the Court grants in part and denies in part BP's motion.

### BACKGROUND

The referenced member case is one of the last remaining claims for business economic losses arising from the massive oil spill in the Gulf of Mexico that began on or around April 20, 2010.

Plaintiff Classy Cycles is a motorized vehicle rental business in Panama City Beach, Florida. Classy Cycles rented street legal golf carts, mopeds, and motorcycles, and its business allegedly was "100% based on tourism." (Roof Decl. ¶ 2, Rec. Doc. 27147-5). At the time of the oil spill, Classy Cycles operated out of one central location with four depot locations. Classy Cycles claims that because of the oil spill, fewer tourists came to Panama City Beach, and, consequently, it had fewer customers. Classy Cycles seeks to recover these lost profits. Furthermore, Classy Cycles claims

that the economic consequences of the oil spill deprived it of other business opportunities. Specifically, Classy Cycles asserts it would have opened one or more car washes and purchased an investment property known as Party Shack West.

Classy Cycles filed a complaint against various BP entities alleging claims under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701, et seq., and what the Court interprets to be general maritime law.[1] Classy Cycles's case was consolidated with this MDL as part of the "B1" pleading bundle, which consisted of private claims for economic loss and property damage. In 2018, the Court issued Pretrial Order No. 65 ("PTO 65"), which required all B1 plaintiffs to submit a sworn statement that provided certain information about their claim. (Rec. Doc. 23825). October 2, 2020, the Court issued Pretrial Order 69 ("PTO 69"), which addressed the dozen or so remaining B1 cases in the MDL. (Rec. Doc. 26709). PTO 69 established a timeline for BP and Classy Cycles to conduct limited discovery and then file dispositive motions. (PTO 69 § II & Ex. 2, Rec. Doc. 26709). BP filed the instant motion for summary in accordance with PTO 69.

## DISCUSSION

### A.

As mentioned, Classy Cycles's complaint pleads claims under both OPA and general maritime law. Classy Cycles now admits that it cannot satisfy the elements for a non-intentional tort claim under general maritime law. (Opp'n at 1, Rec. Doc. 27147 ("Plaintiff does not contend that [it] suffered direct physical damage or losses

---

[1] The complaint contains a "claim for punitive damages under federal, statutory, maritime, and federal common law." (Complaint ¶ 46, No. 16-05923, Rec. Doc. 1).

due to commercial fishing.")). Accordingly, Classy Cycles's claim under general maritime law, including its claim for punitive damages, will be dismissed.

The rest of this decision concerns Classy Cycles's claim under OPA § 2702(b)(2)(E).

## B.

OPA compensates a plaintiff for, inter alia, "loss of profits or impairment of earning capacity." 33 U.S.C. § 2702(b)(2)(E). BP argues it is entitled to summary judgment because the available documentary evidence shows that Classy Cycles did not lose any profits after the oil spill. BP points to Classy Cycles's income statements and tax returns, both of which reflect that Classy Cycles earned more, not less, money during the eight months following the commencement of oil spill (May-Dec. 2010), as compared to the same eight months in 2009.

 On summary judgment, the initial burden is on the mover (BP) to show that there is no genuine dispute as to any material fact and the mover is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). One way BP can satisfy its burden is by identifying those portions of the record that it believes demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The income statements and tax returns satisfy BP's burden. The burden now moves to Classy Cycles to identify evidence that establishes a genuine factual dispute. *Id.* at 324.

Classy Cycles points to deposition transcripts and sworn declarations where its owners—Rick Roof ("Roof") and Colleen Swab ("Swab"), Roof's daughter—testified

that the 2010 income statement and tax return are incorrect. According to this testimony, Roof and his father (Swab's grandfather) loaned money to Classy Cycles in 2010 to keep the business afloat, but a former employee or accountant improperly recorded this money as revenue. (*See, e.g.*, Swab Depo at 63:11-22, Rec. Doc. 27103-44; Roof Decl. ¶¶ 6-9, Rec. Doc. 27147-5; Swab Decl. ¶, Rec. Doc. 27147-2). Consequently, the income statement and tax return overstate Classy Cycles's revenue by nearly $792,769.12, assert Roof and Swab. (*See, e.g.*, Roof Decl. ¶ 11). Classy Cycles's owners further testified that these errors were discovered after the fact by a new accountant who examined the 2010 financial records. (Swab Depo. at 63:11-22, Rec. Doc. 27103-4). Classy Cycles attempts to corroborate this testimony by producing five promissory notes that it executed in favor of Roof and Swab, although these notes only add up to $317,769.12. (Rec. Doc. 27147-6).[2]

BP argues the owners' declarations contradict their prior deposition testimony and should be ignored under the sham affidavit rule. "The sham affidavit doctrine prevents a party who has been deposed from introducing an affidavit that contradicts that person's deposition testimony without explanation because a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment." *Free v. Wal Mart La., LLC*, 815 F. App'x 765, 766-67 (5th Cir. 2020) (unpublished) (cleaned up). The Court, however, does not view these statements as

---

[2] It is unclear if Classy Cycles can show through bank records or other documentation that it received additional loans. The Court further notes that Classy Cycles already received $509,961.90 in interim oil spill payments from BP, which would more than offset the loss allegedly disguised by the $317,769.12 loan. Hence, it is important that Classy Cycles prove that it suffered lost profits greater than the amount it received from BP; otherwise its claim fails.

being in conflict. The owners testified at their depositions that the revenue figures were inflated because they improperly included loans, although they could not state the amount of the loans or to what extent revenues were overstated. The declarations make the same point, but they now provide specific amounts.

Under the current procedural posture, the Court cannot conclude that a genuine factual dispute does not exist. The present record raises questions of credibility and would require weighing evidence. However, the Court notes that PTO 69 allowed only limited discovery, as opposed to the more thorough investigation that would typically occur in civil litigation. Thus, while the Court does not grant summary judgment for BP at this time, it also does not foreclose the possibility that this issue could be revisited before trial, after full-blown discovery. This may be particularly appropriate if Classy Cycles cannot prove through documentation (bank records, etc.) the full amount it claims to have received in loans.

## C.

This is not to say that Classy Cycles is entitled to a trial on all of its alleged losses. In addition to the losses allegedly suffered by its vehicle rental business, Classy Cycles contends the oil spill prevented it from starting other businesses, such as opening a car wash and purchasing investment property. BP is entitled to summary judgment against these alleged losses for two reasons.

First, Classy Cycles did not disclose these lost opportunity claims as required by PTO 65. PTO 65 ordered "each Remaining B1 Plaintiff" to "[d]escribe specifically the compensatory damages that [it] claim[s] . . . , including the nature of the damage,

the date(s) . . . , the amount . . . , and the calculations used to arrive at that amount."
(Rec. Doc. 23825 at 2–3; *see also* Rec. Doc. 23825-1 at 1 ("submit[ting] an answer that
is, for example, generic, vague, evasive, or misleading" violates PTO 65)). Indeed, "**[i]t
is imperative that plaintiffs provide responses that are as specific and
accurate as practicable.**" *Id.* at 1 (emphasis in original). Here, Classy Cycles did
not disclose this entire category of damages in response to PTO 65 (*see* No. 16-05923,
Rec. Doc. 6), instead alleging these damages for the first time in February 2021
during their depositions. The Court will dismiss Classy Cycles's lost opportunity
claims. *See In re: Deepwater Horizon*, 805 F. App'x 262, 265 (5th Cir. 2020)
(unpublished) (affirming dismissal of claims that failed to comply with PTO 65).

Second, the Court agrees with BP that any damages calculation from these
alleged plans for new ventures (which were mere ideas without any written business
plans, signed agreements, or financing) would be impermissibly speculative. (*See* BP's
Memo. in Supp. of Summ. J. at 15-16, Rec. Doc. 271033-33; BP's Reply at 8-9, Rec.
Doc. 27158). The Court further agrees with BP that the cases cited by Classy Cycles,
which concern lost profits for *established* businesses, are inapposite.

Accordingly, the Court will dismiss Classy Cycles's claims related to its alleged
plans to open a car wash, purchase investment property, and any other new business
ventures.

**D.**

BP's final argument brings to center stage an issue that has been waiting in
the wings since the MDL began over a decade ago: What is the standard of causation

for an economic loss claim under OPA § 2702(b)(2)(E)?[3]

Some facts must be clarified before engaging this question. The following statements are either undisputed or, if disputed, assumed to be true for purposes of deciding this motion. As mentioned, Classy Cycles's business was located in Panama City Beach, Florida. Oil from the Macondo Well reached the water and beaches in Panama City Beach.[4] However, none of Classy Cycles's property, including its vehicles, was physically oiled. (BP's Stmt. of Undisputed Facts ("BP's SoF") ¶ 6, Rec. Doc. 27103-34). Also, none of Classy Cycle's vehicles were used on the beach or in the water. (BP SoF ¶ 5). The media widely reported on the oil spill and its damage to water, coastline, and animals along the Gulf coast. (Swab Depo. at 127: 21-25, 129:11-14). After the oil spill, the number of tourists who visited Panama City Beach declined sharply. (Roof Depo at 80:7-15, Rec. Doc. 27147-7; Swab Depo. 129:21-22). Classy Cycles's business was "100% based on tourism." (Roof Decl. ¶ 2). Because there were

---

[3] *See In re Oil Spill*, 808 F. supp. 2d 943, 966 (E.D. La. 2011) (declining to define the precise contours of OPA causation by nothing that it may lie somewhere between "but for" and "proximate cause"); *In re Oil Spill*, 2013 WL 10767663, at *13 (E.D. La. Dec. 24, 2013) (While OPA "broadened the scope of persons able to recover economic losses resulting from an oil spill beyond the 'physical injury' bright line that exists under general maritime law, . . . the limits and contours of OPA causation are largely untested in the jurisprudence. . . . The parties negotiated in light of the uncertainty in the law, and the [Economic and Property Damages Class Action] Settlement represents their compromise on this matter."); *In re Oil Spill* (*Moratoria Claims*), 168 F. Supp. 3d 908, 914, 918 (E.D. La. 2016) (noting the parties' disagreement over what causation standard applies but deciding the issue on other grounds); *In re Oil Spill* (*Mexican Plaintiffs*), 496 F. Supp. 3d 989, 1003 n.16 (E.D. La. 2020) (noting that it is unclear what causation standard applies under OPA); *In re Oil Spill*, 2021 WL 3602633, at *2 (E.D. La. Aug. 13, 2021) (declining to decide what causation standard applies because the claim fails even under the most generous standard (but for)).

[4] *See, e.g.* Swab Depo. at 127:16-21 ("We did have tar balls. They were finding them on the beaches and they were having [to] clean [them] up. A lot of the hotels were taken up by BP oil spill [cleanup workers] that would go out and clean the beaches. And so we did have—we had oil that was on the beach . . .); No. 16-05923, Rec. Doc. 6 at ECF p.11 (image from NOAA SCAT map (Shoreline Cleanup and Assessment Technique) indicating "trace" amounts of oil observed on the Panama City Beach coastline). While a casual reading of BP's brief could leave one with the impression that oil did not reach Panama City Beach, BP does not actually assert that oil did not reach this area.

fewer tourists, Classy Cycles's revenue and profits dropped after the oil spill and did not return to pre-spill levels for some time.

OPA's general liability provision is § 2702(a). It states:

> Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) that ***result from*** such incident.

33 U.S.C. § 2702(a) (emphasis added). Section 2702(b)(2) lists six categories of damages, (A) through (F). The only relevant one is (E), "Profits and earning capacity," defined as:

> Damages equal to the loss of profits or impairment of earning capacity ***due to*** the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant.

*Id.* § 2702(b)(2)(E) (emphasis added).

"Well before the enactment of the OPA, it was clear that general maritime law did not permit recovery of purely economic losses." *In re Settoon Towing, L.L.C.*, 859 F.3d 340, 344 (5th Cir. 2017). The Fifth Circuit's rule had been that a plaintiff must sustain physical damage to a proprietary interest. *Id.* Under OPA § 2702(b)(2)(E), though, "recovery of economic losses is allowed without physical damage to a proprietary interest. The only restriction on such recovery is that the loss must be 'due to the injury, destruction, or loss of real property, personal property, or natural resources[.]'" *Id.* at 344-45 (cleaned up).

So the question is, what does "due to" mean?

8

Previously in this MDL BP argued that the plaintiff's losses must be "proximately caused" by the oil spill. *See Moratoria Claims*, 168 F. Supp. 3d at 914. BP does not use that term here, although it does interpret the jurisprudence as requiring "a direct causal relationship between the discharge of oil and the resulting damage." (BP Opp'n at 8, Rec. Doc. 27103-33). In any case, BP's position is that Classy Cycles's alleged losses are too far removed to be "due to the injury, destruction, or loss" of property or natural resources. According to BP,

> [Classy Cycles] contends that its business, which did not involve natural resources and did not experience any physical oiling, lost customers because of the ***perceived*** oiling of the nearby beaches. This "reputational damage" is due to the public perception that the local beaches were covered in tar balls as portrayed by the media . . . .[5] Even if the public perception were correct, none of Plaintiff's rental vehicles are used on the beach or in the water, and were therefore not at risk of oiling or incapable of being used.

(BP Opp'n at 10 (emphasis in original)).

BP relies heavily on an out-of-circuit district court decision, *Blue Water Boating Inc. v. Plains All American Pipeline, L.P.*, No. 16-3283, 2017 WL 405425 (C.D. Cal. Jan. 26, 2017). That case concerned a business that provided sailing charters and kayak and paddleboard rentals. *Id.* at *1. The plaintiff claimed that an oil spill that did not reach the waters used by plaintiff's business caused its customers to cancel reservations. The court held that such a claim was not viable:

> Plaintiff seeks to recover for the business that it lost when would-be tourists learned of the harm to the coastline and decided to cancel or defer their trips to the Santa Barbara area. . . . If Plaintiff is to recover under OPA . . ., it must link its harm to the property damage caused by the oil spill. At this point, as Defendants aptly suggest, the reputational

---

[5] The Court has elided "which Plaintiff believed to be erroneous" from BP's quote, because it is not entirely accurate or even relevant.

damage that Plaintiff alleges might be "utterly divorced" from the oil spill, if "an erroneous public perception existed that oil from Line 901 reached beaches in the City of Santa Barbara, whereas in fact oil from Line 901 did not reach that location. . . . To put Defendants on notice of the scope of their liability and to satisfy the pleading requirements of Rule 8, Blue Water must clarify how the oil spill damaged its property— or the coastline immediately surrounding its property—and to what extent its losses stemmed from such damage.

*Id.* at \*3 (paragraph breaks omitted).

The facts of *Blue Water* are distinguishable. The oil spill there was nowhere near the size of the DEEPWATER HORIZON/Macondo Well spill, and the oil did not reach the area where the plaintiff operated, whereas here the oil did reach Panama City Beach. The Court also has reservations about some of *Blue Water*'s pronouncements. In any event, the case is not binding, nor does the Court find it persuasive.

BP's argument appears to be that because Classy Cycles's vehicles were not used on the beach or in the water, they were not at risk of oiling or incapable of being used, and therefore it cannot recover its lost profits. But OPA does not require this. OPA requires that the discharge or significant threat of discharge must "result" in the "injury, destruction, or loss" of property or natural resources (that the plaintiff need not own or lease), and the plaintiff must have suffered lost profits "due to" this injury, destruction, or loss. So, again, what does "due to" mean?

Does "due to" mean "proximate cause"? No. Congress was obviously aware of the phrase "proximate cause" when it wrote OPA, as it used that very term when it set forth the conditions that would lift OPA's liability limits. 33 U.S.C. § 2704(c)(1) ("Subsection (a) does not apply if the incident was proximately caused by . . .").

10

However, Congress chose not to use this phrase in § 2702. Indeed, "Congress, it is true, has written the words 'proximate cause' into a number of statutes. But when the legislative text uses less legalistic language . . . and the legislative purpose is to loosen constraints on recovery"—as was the case with OPA, *see Mexican Plaintiffs*, 496 F. Supp. 3d at 1002—"there is little reason for courts to hark back to stock, judge-made proximate-cause formulations." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 702 (2011).

What about the other end of the causation spectrum? Could "due to" mean "but for"? The Court does not believe this is correct either. For one, if Congress was aware of the phrase "proximate cause" when it enacted OPA, then it was probably also aware of the phrase "but for." OPA does not use "but for," so one might conclude this omission was deliberate. Moreover, a "but for" test could lead to a perpetual domino effect of "infinite liability." *See id.* at 701; *see also Pac. Operators Offshore, LLP v. Valladolid*, 565 U.S. 207, 221 (2012) (rejecting a "but for" standard under the Outer Continental Shelf Lands Act because it would lead to absurd consequences). While OPA expanded the right of recovery to a greater number of people than existed under prior law, the Court does not believe that Congress meant it to have virtually no limit.

Is there a Goldielocks standard? Something looser than "proximate cause" yet tighter than "but for"? Yes. In *Pacific Operators Offshore, LLP v. Valladolid*, the Supreme Court interpreted the Outer Continental Shelf Lands Act, which extends the Longshore and Harbor Workers' Compensation Act to injuries "occurring ***as the result of*** operations conducted on the Outer Continental Shelf ["OCS"]," 43 U.S.C. §

11

1333(b), as requiring that there be "a significant causal link" between the injury and the employer's on-OCS operations. 565 U.S. at 222. *Valladolid* selected this "substantial-nexus" test in lieu of a "but for" test (as had been applied by the Third Circuit) and a "proximate cause" test (as urged by the concurring opinion).

While this will probably not be the last word on the issue of OPA causation, it is this Court's opinion that a plaintiff must satisfy a "substantial-nexus" test in order to recover its alleged lost profits under OPA § 2702(b)(2)(E). That is, there must be a significant causal link between the injury, destruction, or loss of property or natural resources and the plaintiff's lost profits or impaired of earning capacity.[6] Admittedly, there is a good bit of flex to this standard; even *Valladolid* acknowledged that it "may not be the easiest to administer." 565 U.S. at 222. For what it's worth, this Court believes that the test will vary with the circumstances—e.g., what qualifies as a "significant causal link" in a massive oil spill may not qualify in a much smaller oil spill. As applied here, if a fact-finder determined that the oil spill's injury to water and/or beaches caused fewer tourists to travel to Panama City Beach and further determined that Classy Cycles lost profits because of the decline in tourists, then this Court would hold that the "substantial-nexus" test is satisfied.

For these reasons, the Court rejects BP's arguments regarding causation.

## CONCLUSION

For the reasons explained above,

IT IS ORDERED that BP's Motion for Summary Judgment (Rec. Doc. 27103)

---

[6] And, of course, the injury, destruction, or loss of property or resources must have resulted from the discharge or significant threat of discharge of oil. *See* 33 U.S.C. § 2702(a).

is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Classy Cycles's (i) claim under general maritime law, including its claim for punitive damages, and (ii) its claims related to its alleged plans to open a car wash, purchase investment property, and any other new business ventures are DISMISSED WITH PREJUDICE. BP's Motion is, in all other respects, DENIED.

New Orleans, Louisiana, this 26th day of August, 2021.

_____
United States District Judge