IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | * * * * | **MDL NO. 2179**<br><br>**SECTION J** |
| **This Document relates to:** | * * | **JUDGE BARBIER** |
| *John DeSilva, Individually, and as the Sole Member, Owner, and Operator of The Bird of Paradise, LLC v. BP Expl. & Prod., Inc., et al.* Case No. 16-cv-05277 | * * | **MAGISTRATE JUDGE CURRAULT** |

**BP'S MEMORANDUM IN SUPPORT OF ITS MOTION
FOR ATTORNEYS' FEES AND COSTS**

Pursuant to the Court's Order of August 12, 2021 (Rec. Doc. 27196), Defendants BP Exploration & Production Inc. and BP America Production Company (collectively, "BP") respectfully move the Court to order Plaintiff John R. DeSilva to pay attorneys' fees and costs reasonably incurred by BP after it first raised the issue of plaintiff The Bird of Paradise, LLC's ownership in October 2019. For reasons explained below, the Court should order DeSilva to pay $298,914.65 based on 617.1 attorney hours at rates of $470 per hour for lead counsel at Kirkland & Ellis, 20 attorney hours at rates ranging between $270 and $470 an hour for co-counsel at Liskow & Lewis, and costs of $1,804.65. This proposal does not reflect the full amount of fees and costs BP incurred due to DeSilva's misconduct, and is a reasonable award in line with the Court's findings of actions taken or not taken by Plaintiff since October 2019.

**ARGUMENT**

"DeSilva's failure to provide information that was at his ready access caused BP to expend significant time and resources investigating facts, preparing multiple rounds of briefing, preparing for and participating in hearings, etc." (Rec. Doc. 27196 at 5.) The Court thus

concluded that he "is liable to BP for all or part of BP's attorneys' fees and costs it reasonably incurred after it first raised the issue of TBOP's ownership in October 2019." (*Id.* at 6.) Where, as here, a court has ordered a party to pay "reasonable fees and expenses" as a sanction, the court determines the amount through a "lodestar analysis" that "multipl[ies] the reasonable number of hours expended in defending the suit by the reasonable hourly rates for the participating lawyers." *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 568 (5th Cir. 2006).

Here, BP seeks an award of $298,914.65. This request is limited to those fees and costs necessarily incurred in this litigation following the time the ownership dispute was raised, and is based on both a reasonable number of hours worked and a reasonable hourly rate. The 637.1 hours of attorney work upon which this request is based are reasonable given the Court's findings on DeSilva's misconduct. Further, the hourly rate of up to $470/hour that BP seeks is considerably less than the actual and reasonable rates billed by its counsel generally and is consistent with rates charged in multi-district litigation. Finally, the modest amount of costs for which BP seeks payment was directly related to DeSilva's misconduct.

## I.   BP'S PROPOSED AWARD REFLECTS A REASONABLE NUMBER OF HOURS.

As set forth in the Declarations of Christopher W. Keegan, P.C., and Devin C. Reid, attached hereto with supporting documentation as Exhibits 1 and 2, respectively, BP's proposed award is based on 637.1 hours of attorney time. BP will not repeat here the chronology of misconduct identified by the Court beyond what is necessary to demonstrate that 637.1 hours is a reasonable number given the nearly two years of misconduct at issue.

- This misconduct began on October 13, 2019, when counsel for BP—in advance of the court-ordered mediation—asked DeSilva whether he retained ownership of the LLC's claim when he sold the LLC. As the Court has explained "DeSilva's answers in 2019, to the extent he provided any, were evasive at best. The mediation failed as a result, wasting the parties' and the mediators' time." (Rec. Doc. 27196 at 4.) Counsel for BP prepared for that failed mediation using the same process used in nearly 70 other mediations.

- DeSilva's misconduct continued in September 2020 when he, through his counsel, falsely indicated to the Court and BP during a status conference that the claim was not included in the LLC sale. To prepare for that conference, counsel for BP focused on the ownership issue to provide the Court with what BP believed to be the actual state of affairs denied by plaintiff.

- DeSilva next agreed to produce documents regarding the LLC's sale, but instead produced nonresponsive documents that needlessly delayed resolution of this case, thus requiring BP to expend additional resources on futile discovery. (*See* Rec. Doc. 27196 at 2 ("After the status conference and despite further requests from BP, DeSilva did not produce any documents concerning the sale of TBOP ….").)

- Following DeSilva's failure to provide responsive information, BP moved to dismiss for lack of standing. Because of the case's unusual facts and plaintiffs' denials, BP expended considerable resources on legal research and independent analysis and factual investigation regarding public records relating to transfer of ownership of the LLC, as well as on preparing appropriate briefing for the Court. BP's attorneys performed distinct roles in identifying and advancing BP's arguments to the Court. Further, the documentation demonstrates that BP's counsel—all of whom had experience representing BP in other matters related to the *Deepwater Horizon* incident—were able to quickly situate this case's place in the broader MDL and then focus on the particular characteristics of this unique dispute.

- In response to BP's motion, DeSilva introduced a new argument that the LLC was not sold and "MacDonald simply unilaterally listed himself as a member" with the State of Florida. (Rec. Doc. 27005 at 4 n.2.) This new argument required BP's attorneys to spend additional time researching the facts and law and prepare a reply brief addressing these new arguments. Following receipt of the parties' briefs, the Court held a hearing on this matter on April 21, 2021. At that hearing, DeSilva, through counsel, repeatedly reiterated that he had never sold the LLC and that MacDonald unilaterally began filing reports with Florida. As with the September 2020 status conference, BP expended resources preparing for and participating in the hearing, all of which was only required because of DeSilva's misrepresentations.

- Based on plaintiff's assertions, the Court ordered further discovery into the LLC's sale. BP devoted additional resources to this question, including contacting Mr. MacDonald and his counsel. Because it was not clear until shortly before Mr. MacDonald's scheduled deposition whether his deposition would occur, BP's counsel prepared for that deposition, but avoided unnecessary deposition costs by receiving a declaration on the key questions. BP sought to avoid costs of DeSilva's deposition as well, but was required to prepare for and participate in DeSilva's own deposition when DeSilva insisted on continuing with the action.

- Following the close of discovery, BP's counsel prepared a supplemental brief concerning DeSilva's false statements. BP then received from plaintiff a June 2021 assignment by Mr. MacDonald of the LLC's claim back to DeSilva, which prompted yet another round of supplemental briefing. And after the Court ordered DeSilva to show cause why he should not be sanctioned for his misconduct, BP prepared a third supplemental brief. These three supplemental briefs also required BP to expend additional resources on research and drafting.

In short, DeSilva's misstatements and evasions have caused BP to waste resources preparing for a failed mediation and two court hearings; engaging in two rounds of discovery (including one deposition and preparation for another); and drafting five briefs to the Court, each of which addressed different issues and required specific analysis. Each step in this almost two-year process resulting from DeSilva's misconduct has required substantial lawyer time.

As confirmed by the time records attached to BP's Motion, BP's submission that its counsel spent 637.1 hours for which BP seeks payment is reasonable. *See, e.g.*, *Skidmore Energy*, 455 F.3d at 569 (affirming award of fees based on "defense counsel's documentation"). Those itemized records reflect contemporaneous explanations of the work provided and, if anything, understate the numbers of hours that BP's counsel has dedicated to this matter.[1]

## II.  BP'S PROPOSED AWARD REFLECTS A REASONABLE HOURLY RATE.

BP's proposed award is also based on reasonable hourly rates. As the Court knows well, this is one of the most complex MDLs in history. BP submits that $470/hour is appropriate, which sum is both less than what BP has actually paid its lead outside counsel and substantially below the effective hourly rate recommended by the Special Master for plaintiff's counsel. (Rec Doc. 23574-1 at 100.)

In calculating attorneys' fees under a lodestar analysis, courts typically focus on rates tied to the specific jurisdiction. BP's co-counsel based in New Orleans, Keith Jarrett, generally bills

---

[1]  As explained in the attached declaration, some time entries for BP's counsel reflect work on multiple matters. Counsel for BP has reviewed those time entries in good faith to estimate the amount of time attributable to this particular case. In so doing, however, BP's counsel has tried to be conservative in its estimation. Likewise, BP has chosen not to seek fees for some lawyers whose work on this matter was minimal.

To the extent those time entries contain references to work on other MDL 2179 matters (some of which remain pending before the Court) they have been redacted. Should the Court wish to examine those unredacted time entries, BP will be happy to provide them to the Court for *in camera* review.

$470/hour for his time.  (*See* Exhibit 2 ¶ 9.)  Particularly for counsel experienced with the unique litigation at issue here, that rate is a reasonable reflection of market rates in this jurisdiction.

That ordinary analysis, however, does not apply in the context of an MDL, which by definition involves cases from numerous jurisdictions.  As Judge Rebecca F. Doherty of the Western District of Louisiana has explained in an analogous context:

> The counsel in this MDL span the entire United States; the original and proper venues span the entire United States; the work done spanned both the entire United States and international locations; and the defendants are international and national corporations that bear no relation to the MDL court location.  While this MDL court is located in Lafayette, Louisiana, only a portion of the work in the MDL was performed by attorneys in the physical area of Lafayette, Louisiana and that work, for the most part, was tied directly to participation in Court matters.  Rather, the legal community of the attorneys who prosecuted the MDL, quite literally, spans the nation, conducting work across the nation and outside the United States, for the collective benefit of cases properly filed across the nation, and destined, by statute, to be returned to and resolved in courts located across the nation.  While the legal community of Lafayette, Louisiana is no less skilled or professional than those of, perhaps, San Francisco or New York, in an MDL of this nature, the differing local rates that might prevail in San Francisco or New York or in Lafayette, Louisiana should not by themselves determine the rates of counsel from all across the nation who did work for the benefit of cases from across the nation, destined to be resolved in courts across the nation.  To use the typical hourly rates charged in the area which happens to be where the selected and temporary MDL Court sits—which, again, almost always is not where all of the parties reside, or where the majority of counsel practice, or the proper venue for every member case—such as here, Lafayette, Louisiana, to calculate the lodestar … would result in an arbitrary determination, higher or lower than that which should be proper for compensation, either for the time expended, or for the caliber of work produced.

*In re Actos (Pioglitazone) Prod. Liab. Litig.*, 274 F. Supp. 3d 485, 521 (W.D. La. 2017); *see also In re Vioxx Prod. Liab. Litig.*, 760 F. Supp. 2d 640, 660 (E.D. La. 2010) (declining to use local rates to calculate rates for common benefit work).  Further, even outside of the MDL context, the Fifth Circuit has recognized that a district court imposing sanctions may go above the prevailing local rate.  *See M2 Tech., Inc. v. M2 Software, Inc.*, 748 F. App'x 588, 591 (5th Cir. 2018) ("[T]he district court did not commit clear error in using the Chicago-based rate.").

5

BP's lawyers from its lead law firm, Kirkland & Ellis LLP, typically bill at substantially higher hourly rates, consistent with rates charged by other large international law firms with similar clients and matters. Given the "epic" nature of this MDL, which is marked by its "gargantuan size and extraordinary complexity," *In re Deepwater Horizon (Mason)*, 819 F.3d 190, 197 (5th Cir. 2016), BP's decision to use a large international law firm as lead counsel is reasonable. The Court has recognized this in affirming the reasonableness of fees that are significantly higher than the ordinary billable rate in this jurisdiction. *See, e.g.*, Order [Adopting Special Master's Recommendations Concerning the Allocation of Common Benefit Fees and the Reimbursement of Shared Expenses and Held Costs] (Rec. Doc. 23574-1) at 64.

To be clear, BP does not ask the Court to order DeSilva to pay the full rate charged by BP's national counsel at Kirkland & Ellis. Instead, BP contends that the $470/hour of its lead co-counsel in New Orleans would serve as an appropriate rate to apply to its national counsel's time for purposes of this sanction. After over a decade of litigation, the Court is familiar with BP's counsel and can makes its own assessment of their work and efficiency.[2] BP submits that the proposed rate of $470/hour is certainly reasonable.[3]

Nothing about this litigation, moreover, suggests that BP's rates for purposes of a fee award should be reduced further than what BP has already proposed. Indeed, to the extent the Court considers the factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir.

---

[2] BP's attorneys' qualifications are more fully set forth in the supporting documentation attached to BP's Motion as Exhibit 3. Suffice it to say, however, that BP retained counsel with the skill and experience necessary to litigate a complex MDL and respond to the novel and complex legal questions prompted by DeSilva's claim and misconduct. Notably, BP does not seek an award based on the time of its in-house lawyers but observes that they have also dedicated a significant amount of time to this matter.

[3] Indeed, Judges in this District have upheld attorneys' fees of $375/hour in cases much less complicated than this massive MDL. *See, e.g.*, *Grant v. Gusman*, No. CV 18-6465, 2020 WL 5821753, at *4 (E.D. La. Sept. 9, 2020) (collecting citations), report and recommendation adopted, No. CV 18-6465, 2020 WL 5820378 (E.D. La. Sept. 30, 2020).

6

1974), *but see Skidmore Energy*, 455 F.3d at 568 (focusing only on reasonableness of hours and rates), those factors would support an enhancement. DeSilva's misconduct, for example, has required BP to research and brief many "novel[] and difficult[]" questions, *Johnson*, 488 F.2d at 718, which has required "skill" and "time," *id.* at 717-18. Likewise, the Court imposed sanctions here, which confirms that BP's briefing was successful. *See, e.g.*, *SEC v. Faulkner*, No. 3:16-CV-1735-D, 2018 WL 5924042, at *4 (N.D. Tex. Nov. 13, 2018). Where, as here, a movant "has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* Accordingly, BP submits that the Court should award $297,110 in fees.

## III. BP'S PROPOSED AWARD REFLECTS REASONABLE COSTS.

Although there are other costs arising from DeSilva's misconduct, BP seeks only the $1,805.65 in expenses charged by the court reporter and videographer in connection with DeSilva's May 2021 deposition. (*See* Exhibit 1, ¶ 20.) BP does not seek payment for the fees and expenses related to the 2019 mediation, nor other costs associated with this litigation that cannot readily be apportioned or documented, such as for printing and online research associated with legal analysis.

## CONCLUSION

For the foregoing reasons, BP respectfully requests that the Court grant its Motion.

7

| | |
|---|---|
| August 26, 2021 | Respectfully submitted, |
| | |
| | */s/ Devin C. Reid* |
| | R. Keith Jarrett (Bar # 16984) |
| | Devin C. Reid (Bar # 32645) |
| | **LISKOW & LEWIS** |
| | One Shell Square |
| | 701 Poydras Street, Suite 5000 |
| | New Orleans, Louisiana 70139-5099 |
| | Telephone: (504) 581-7979 |
| | Fax No. (504) 556-4108 |
| | |
| | Matthew T. Regan, P.C. |
| | (matthew.regan@kirkland.com) |
| | Kristopher S. Ritter |
| | (kristopher.ritter@kirkland.com) |
| | **KIRKLAND & ELLIS LLP** |
| | 300 North LaSalle |
| | Chicago, IL 60654 |
| | Telephone:  (312) 862-2000 |
| | |
| | Christopher W. Keegan |
| | (chris.keegan@kirkland.com) |
| | Ashley Littlefield |
| | (ashley.littlefield@kirkland.com) |
| | Anna Terteryan |
| | (anna.terteryan@kirkland.com) |
| | **KIRKLAND & ELLIS LLP** |
| | 555 California Street |
| | San Francisco, CA 94104 |
| | Telephone: (415) 439-1400 |
| | |
| | *Attorneys for BP America Production Company and BP Exploration & Production Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **BP's Memorandum in Support of Its Motion to Attorneys' Fees and Costs** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 26th day of August, 2021.

                                                      */s/ Devin C. Reid*
                                                      Devin C. Reid