# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 9, 2021
Lyle W. Cayce
Clerk

No. 20-30617

In re: Deepwater Horizon

-----------------------------------------------------------

Christopher Green,

*Plaintiff—Appellant*,

versus

BP Exploration & Production, Incorporated; BP America Production Company; BP, P.L.C.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
MDL No. 2:10-md-2179; USDC No. 2:17-cv-3191

Before Jolly, Haynes, and Oldham, *Circuit Judges*.

Per Curiam:[*]

Christopher Green failed to opt out of a settlement agreement established after BP's Deepwater Horizon oil spill. The question presented

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

is whether his failure should be excused. The district court said no. We affirm.

I.

Christopher Green was allegedly injured while removing oil from the Gulf of Mexico after the Deepwater Horizon oil spill in 2010. Green joined a class of personal-injury plaintiffs participating in MDL 2179. The class negotiated with BP, and the parties eventually agreed upon the Medical Settlement Agreement ("MSA"). *In re Deepwater Horizon*, 295 F.R.D. 112, 119 (E.D. La. 2013) (MSA approval). In the final version of the MSA, BP agreed to provide class members with compensation including payment for injuries and the right to ongoing medical consultation and treatment. *See id.* at 120–25. In exchange for that compensation, class members "fully, finally, and forever . . . resolve[d], discharge[d], and settle[d]" all covered personal-injury claims against BP and other defendants. *See id.* at 125.

The MSA was not compulsory, however. It provided a deadline by which class members could opt out and pursue their claims separately, and it detailed opt-out instructions to streamline the process and prevent fraud. *See In re Deepwater Horizon*, 819 F.3d 190, 197 (5th Cir. 2016). The MSA's opt-out provision instructed:

> [T]o OPT OUT validly . . . a . . . CLASS MEMBER must submit a written request . . . to the CLAIMS ADMINISTRATOR. . . . A written request to OPT OUT may not be signed using any form of electronic signature, but must be signed by hand by the NATURAL PERSON seeking to exclude himself or herself from the MEDICAL BENEFITS SETTLEMENT CLASS or, where applicable, his or her AUTHORIZED REPRESENTATIVE.

An "authorized representative" could sign on a class member's behalf if the member was (1) a minor, (2) lacking capacity or incompetent, or

(3) deceased. Under all other circumstances, a class member was required to include his own wet-ink signature on the opt-out form.

On October 29, 2012, Green filed a timely but noncompliant opt-out form—that is, a form that was submitted three days before the November 1, 2012, deadline but that lacked Green's personal signature. Green's opt-out form was instead signed by his mother, Mary Morris. Morris had held Green's power of attorney for years before the oil spill, so Green and his counsel believed she constituted an "authorized representative" under the MSA.

In 2018, the district court ordered BP to file a motion for summary judgment to dismiss any plaintiffs whose claims were barred by the MSA. BP filed a motion for summary judgment asking the district court to dismiss 12 cleanup workers—including Green—who had failed to validly opt out.

The district court granted the motion with respect to Green, and it dismissed his personal-injury claim against BP. Specifically, the district court upheld the MSA claims administrator's determination that Green's "request[] [was] invalid because [it was] not signed by the class member" and was instead "signed by a person purporting to have power of attorney."

Green did not file a motion for reconsideration. Instead, he timely appealed to this court. We review the district court's grant of summary judgment de novo. *See In re Deepwater Horizon*, 857 F.3d 246, 249 (5th Cir. 2017). And we review the district court's finding that Green failed to opt out of the MSA for abuse of discretion. *See In re Deepwater Horizon*, 819 F.3d at 195.

No. 20-30617

II.

Green first argues that BP failed to prove that his opt-out form violated the MSA's wet-ink requirement. Green then argues the interests of justice warrant reversal in any event. Both arguments fail.

A.

First, the wet ink. The MSA allowed a dissatisfied class member to opt out of the settlement by submitting a written request, signed by the class member himself in wet ink. Only by following that procedure could a class member forgo the MSA's compensation scheme and litigate individually.

Green's opt-out form is facially deficient. Where the signature line should read "Chris Green," it instead reads "Chris Green, *by Mary Morris POA*." There is no dispute that Green did not personally sign his opt-out form. Nor is there any dispute that he is not a minor, does not lack capacity, is not incompetent, and is alive—so nothing in the text of the MSA indicates an authorized representative was entitled to sign for him.

Green's counterarguments lack merit. Green claims he had good reason to authorize his mother to sign on his behalf. And Green complains that the district court and BP relied on other documents, which he claims are inadmissible or inaccessible.† But all of that is irrelevant. All that matters here

---

† Much of the parties' briefing focuses on four pieces of record evidence: (1) a May 2018 report by the class administrator; (2) an unidentified business record stating that Green's "Opt Out received [was] not valid"; (3) a district court order regarding Green's compliance with an unrelated pretrial order; and (4) a declaration by the claims administrator, which Green claims was sealed and thus inaccessible. BP cited the first three in its motion for summary judgment, and the district court relied on the fourth in its order granting BP's motion. But each of these documents could only serve to benefit BP, which is entitled to summary judgment with or without the extra support. Therefore, we rely only on the language of the MSA and the opt-out form and do not address the four disputed documents.

is that the MSA required Green to sign the form personally in wet ink; he indisputably did not. Therefore, the district court was correct to conclude that Green's opt-out form was deficient under the MSA.

B.

Green next argues that even if his opt-out form is technically deficient, the interests of justice require reversal. Specifically, Green claims he lacked notice that he violated the wet-ink requirement and hence could not beg for leniency before the district court. But Green did not lack notice. And he forfeited his equitable arguments by failing to raise them before the district court.

1.

Under Rule 56(f), a district court may grant summary judgment *sua sponte* "[a]fter giving notice and a reasonable time to respond." FED. R. CIV. P. 56(f). Green argues the district court violated the Rule's notice requirement by reaching beyond BP's cited evidence and relying on an allegedly sealed declaration without giving Green a chance to review it and respond. *See supra* n.†. Green is wrong for two reasons.

First, Green had adequate notice that he was subject to a summary-judgment ruling on his noncompliance with the MSA's opt-out provision. Though Green claims he lacked notice of the *specific* deficiency—namely, the absence of his personal wet-ink signature—neither the Rule nor our precedent includes a specificity requirement. Rather, Rule 56(f) applies when the court "(1) grant[s] summary judgment for a nonmovant; (2) grant[s] the motion on grounds not raised by a party; or (3) consider[s] summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." FED. R. CIV. P. 56(f). A district court can violate Rule 56(f) by failing to provide notice before "grant[ing] summary judgment on [a plaintiff's] claim despite there being no pending motion for

summary judgment *on that claim.*" *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 210 (5th Cir. 2018) (emphasis added).

But that's not what happened here. The district court merely granted summary judgment for the movant (BP) on the grounds raised (failure to comply with the MSA's opt-out provision) after considering the record evidence (including the MSA and Green's opt-out form). The fact that the district court also considered other evidence is irrelevant, and *D'Onofrio* says nothing to the contrary.

Second, even if Green had not received adequate notice of the district court's basis for summary judgment, any Rule 56(f) violation would have been harmless. *See id.* ("[T]he harmless error doctrine applies to lack of notice required by rule 56(f) . . . ." (quoting *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 28 F.3d 1388, 1398 (5th Cir. 1994))). Under our Rule 56(f) harmless-error standard, we may affirm the district court's *sua sponte* grant of summary judgment "'if the nonmoving party admits that he has no additional evidence anyway' or if 'the appellate court evaluates all of the nonmoving party's additional evidence and finds no genuine issue of material fact.'" *Id.* (quoting *Leatherman*, 28 F.3d at 1398).

Green says he would have produced a new piece of evidence had the district court provided notice: a declaration that explained his reasons for using a power of attorney to sign the opt-out form. This declaration would do nothing to create a material dispute of fact because it would remain undisputed that Green violated the MSA's wet-ink requirement. Accordingly, any notice violation under Rule 56(f) would be harmless.

### 2.

Finally, Green makes several arguments regarding why the district court ought to have excused his technical noncompliance with the MSA. Green did not raise these equitable arguments before the district court ruled

nor afterward in a motion for reconsideration. He therefore forfeited these arguments on appeal.

AFFIRMED.