# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SCOT R. BYRD AND JESSICA E. BRANDON, INDIVIDUALLY AND AS PARENTS ON BEHALF OF S.J.B., A MINOR CHILD, | Civil Action No. 2:21-cv-02104 |
| Plaintiff, | Judge Carl Barbier |
| | Magistrate Judge Donna Phillips Currault |
| v. | |
| BP EXPLORATION & PRODUCTION, INC., et al., | |
| Defendants. | |

## ANSWER TO PLAINTIFF'S COMPLAINT

Defendants, Transocean Holdings LLC, Transocean Deepwater, Inc., and Transocean Offshore Deepwater Drilling, Inc. (collectively, the "Transocean Defendants"), answer Plaintiff's Complaint as follows:

## INTRODUCTION OF PARTIES

1.      This is an action arising out of injuries, endured by S.J.B., a Minor ("Child Plaintiff") during her life, subsequently causing permanent injuries, resulting from exposure in the womb and as a child to oil, other hydrocarbons, dispersants, pollutants, and other Toxic Substances due to the *Deepwater Horizon* Oil Spill, which occurred on or about April 20, 2010 ("Oil Spill").

**ANSWER:** The Transocean Defendants deny the allegations of this paragraph.

2.      At all times relevant to this action, JESSICA E. BRANDON ("Mother of Child Plaintiff") and SCOT R. BRYD ("Father of Child Plaintiff") (collectively "Parents of Child Plaintiff") are individuals residing in Baldwin County, AL, and are *sui juris*.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

3.      At all times relevant to this action, Child Plaintiff was a citizen and resident of Baldwin County, AL, and is currently a Minor residing in Baldwin County, AL.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

4.      Child Plaintiff brings this action by and through undersigned counsel and alongside her Parents who bring this action on her behalf.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

5.      Plaintiffs bring this action as individuals seeking relief for Child Plaintiff, and for each Plaintiff respectively for his or her own losses as a Parent of Child Plaintiff.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

### *BP Defendants*

6.      Defendants BP EXPLORATION & PRODUCTION, INC. ("BP Exploration"), and BP AMERICA PRODUCTION COMPANY ("BP America") (collectively "BP Defendants") are Delaware corporations with its principal place(s) of business in Houston, Texas.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

      7.      BP Exploration was a leaseholder and performed oil exploration, drilling, and production-related operations, including the Mississippi Canyon Block 252 in the Gulf of Mexico ("Macondo Well" or "Well") where the Oil Spill originated.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

      8.      The United States Coast Guard designated BP Exploration as a "Responsible Party" of the Oil Spill.[1]

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

      9.      This Court has personal jurisdiction over BP Exploration because it is registered to do business in Louisiana, it does business in Louisiana, and with a registered agent in Louisiana.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

      10.      At all times relevant to this action, BP Exploration purposely availed itself of this Court's personal jurisdiction by performing various acts related to the Oil Spill including:

   i.   Managing Clean-Up and/or Response Activities in and/or around the waters, shores, coastlines, and air of Alabama, Louisiana, Mississippi, Florida, and Texas (collectively "Gulf States");

   ii.   Pumping crude oil during the Oil Spill, which polluted the coasts of the Gulf States and surrounding environment(s);

   iii.   Directing Unified Command, which contracted with various Clean-Up Response Companies throughout the Gulf States;

   iv.   Participating with Unified Command, which contracted with various Clean- Up Response Companies throughout the Gulf States; and

> v.  Engaging in commerce by purchasing, distributing, and supplying goods and services, including petroleum products, dispersants, as well as other supplies and services for various Clean-Up Response Activities.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

> 11.  BP America was a party to the drilling contract with Transocean Holdings, LLC ("Transocean Holdings") for the drilling of the Macondo Well ("Well").

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

> 12.  The United States Coast Guard designated BP America as a "Responsible Party" of the Oil Spill.[2]

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

> 13.  At all times relevant to this action, BP America purposely availed itself of this Court's personal jurisdiction by performing various acts related to the Oil Spill including:
> i.  Managing Clean-Up and/or Response Activities in and/or around the waters, shores, coastlines, and air of Alabama, Louisiana, Mississippi, Florida, and Texas (collectively "Gulf States");
> ii.  Pumping crude oil during the Oil Spill, which polluted the coasts of the Gulf States and surrounding environment(s);
> iii.  Directing Unified Command, which contracted with various Clean-Up Response Companies throughout the Gulf States;
> iv.  Participating with Unified Command, which contracted with various Clean- Up Response Companies throughout the Gulf States;
> v.  Engaging in commerce by purchasing, distributing, and supplying goods and services to Gulf Residents, which included petroleum products, dispersants, as well as other supplies and services for various Response Activities; and
> vi.  Maintaining a presence in the Gulf States by registering to do business in Louisiana, doing business in Louisiana, maintaining a registered agent in Louisiana, with its principal place of business in Texas.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

### *Transocean Defendants*

14.    Defendants TRANSOCEAN HOLDINGS, LLC, TRANSOCEAN DEEPWATER, INC., and TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC. (collectively "Transocean Defendants" or "Transocean") are Delaware corporations with its principal place(s) of business in Houston, Texas.

**ANSWER:**  The Transocean Defendants admit that Transocean Holdings, LLC is a Delaware corporation with its principal place of business in Houston, Texas. The Transocean Defendants admit that Transocean Deepwater, Inc. is a Delaware corporation with its principal place of business in Houston, Texas. The Transocean Defendants admit that Transocean Offshore Deepwater Drilling, Inc. is a Delaware corporation with its principal place of business in Houston, Texas. Any allegation that the Court has personal jurisdiction over the Transocean Defendants is a legal conclusion to which no response is required. To the extent that a response is required, the Transocean Defendants deny this allegation and any remaining allegations of this paragraph.

15.    At all times relevant to this action, Transocean purposely availed itself of this Court's personal jurisdiction by performing various acts related to the Oil Spill, including:

i.   Engaging in Clean-Up and/or Response Activities in or around the Gulf States;

ii.  Manning and guiding the Deepwater Horizon Rig ("DHR"), which exploded while pumping crude oil, resulting in the mass discharge and prolonged seepage of crude oil throughout the Gulf States;

iii. Directing Unified Command, which contracted with various Clean-Up Response Companies throughout the Gulf States;

iv.  Participating with Unified Command, which contracted with various Clean- Up Response Companies throughout the Gulf States;

v.   Engaging in commerce by purchasing, distributing, and supplying goods and services to Gulf Residents, which included petroleum products, dispersants, as well as other supplies and services necessary for various Response Activities; and

vi.  Maintaining a presence in the Gulf States by registering to do business in Louisiana, doing business in Louisiana, maintaining a registered agent in Louisiana, with its principal place of business in Texas.

**ANSWER:**  The Transocean Defendants deny the allegations of this paragraph, including all of its subparts.

### *Halliburton*

> 16.     Defendant HALLIBURTON ENERGY SERVICES, INC. ("Defendant Halliburton") is a Delaware corporation with its principal place of business in Houston, Texas.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

> 17.     Sperry Drilling Services ("Sperry"), a former division of Defendant Halliburton, was responsible for mudlogging personnel and equipment on the *Deepwater Horizon*, including downhole drilling tools. Sperry mudlogging personnel were jointly responsible for monitoring the Well, including mud pit fluid levels, mud flow in and out of the Well, mud gas levels,   and pressure fluctuations.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

> 18.     At all times relevant hereto, Halliburton Energy Services, Inc., and its Sperry division (collectively "Halliburton") purposely availed itself of this Court's personal jurisdiction by performing various acts related to the Oil Spill including:
> i.   Responsibility for the provision of technical advice about the design, modeling, placement, and testing of the cement that was used in the Macondo Well;
> ii.  At and before the time of the blowout, engaging in Cementing Operations to isolate the hydrocarbon reservoirs and seal the bottom of the Well against the influx of hydrocarbons, such as gas and oil; and
> iii. Maintaining a presence in the Gulf States by registering to do business in Louisiana, doing business in Louisiana, maintaining a registered agent in Louisiana, with its principal place of business in Texas.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

### JURISDICTION AND VENUE

19.     This action is in excess of $75,000, exclusive of interest, costs, and attorney's fees.

**ANSWER:**  The Transocean Defendants deny these allegations.

20.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists among the parties.

**ANSWER:**  The Transocean Defendants deny these allegations.

21.     Alternatively, this Court has subject matter jurisdiction pursuant to 43 U.S.C. § 1349(b)(1), which provides that "[t]he district courts of the United States shall have jurisdiction of cases and controversies arising out of . . . (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals "[3]

**ANSWER:**  The Transocean Defendants deny these allegations.

22.     Furthermore, in the event this Court lacks jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) and/or 43 U.S.C. § 1349(b)(1), this Court has jurisdiction pursuant to 28 U.S.C. § 1333 and the Admiralty Extension Act, which extends admiralty and maritime jurisdiction of the United States to "[c]ases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land."[4]

**ANSWER:**  The Transocean Defendants deny these allegations.

23.     The causes of action in this Complaint arise under the general maritime laws of the United States and/or the laws of Alabama pursuant to U.S.C. § 1367(a).[5]

**ANSWER:**  The Transocean Defendants deny these allegations.

24.     The Southern District of Alabama is the proper venue, pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in the Southern District of Alabama, Plaintiffs reside in the Southern District of Alabama, and Child Plaintiff's exposure, permanent injures, as well as treatment for those injuries occurred in the Southern District of Alabama.

**ANSWER:**  The Transocean Defendants deny these allegations.

25.     Additionally, as a part of this Multidistrict Litigation ("MDL") *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, this case is filed in the Eastern District of Louisiana pursuant to this Court's Case Management Order for the B3 Bundle, dated February 23, 2021, providing "if [Plaintiff] timely complies with PTOs 63, 66, and 68, then the Judge will . . . either transfer or re-allot it per the parties' stipulation."[6]

**ANSWER:**  The Transocean Defendants deny these allegations.

26.    All conditions precedent to the institution of this action have been satisfied or otherwise excused.

**ANSWER:**  The Transocean Defendants deny these allegations.

### GENERAL FACTS

27.    All injuries detailed herein arise from the same transaction and/or occurrence relating to the BP Oil Spill, *Deepwater Horizon* Explosion, and subsequent Oil Spill related events and/or Response Activities.

**ANSWER:**  The Transocean Defendants deny these allegations.

28.    Plaintiffs hereby reference, incorporate, and adopt all findings of fact detailed in *Findings of Fact and Conclusions of Law* ("Phase One Findings").[7]

**ANSWER:**  No response is required to this paragraph.  To the extent that a response is required, the Transocean Defendants deny the allegations in this paragraph.

29.    Specifically, in Phase One, this Court ascertained the facts and considered evidence as to all Defendants' negligence and/or liability surrounding the blowout and explosion of the *Deepwater Horizon* on or about April 20, 2010.[8]

**ANSWER:**  The Transocean Defendants state that the MDL No. 2179 Court has made rulings regarding fault for the Deepwater Horizon spill and other issues in its Findings of Fact and Conclusions of Law for the Phase One Trial (Rec. Doc. 13355).  The Transocean Defendants deny any remaining allegations of this paragraph.

30.    After hearing the evidence, this Court found that all Defendants were each liable under general maritime law for the blowout, explosion, and Oil Spill.[9]

**ANSWER:**  The Transocean Defendants state that the MDL No. 2179 Court has made rulings regarding fault for the Deepwater Horizon spill and other issues in its Findings of Fact and Conclusions of Law for the Phase One Trial (Rec. Doc. 13355).  The Transocean Defendants deny any remaining allegations of this paragraph.

31.    This Court further found that BP Defendants acted with gross negligence and willful misconduct; Transocean Defendants' conduct was negligent; and Halliburton's conduct was negligent. Fault was apportioned as follows: BP Defendants found 67% liable, Transocean Defendants found 30% liable, and Halliburton found 3%

liable.[10]

**ANSWER:**  The Transocean Defendants state that the MDL No. 2179 Court has made rulings regarding fault for the Deepwater Horizon spill and other issues in its Findings of Fact and Conclusions of Law for the Phase One Trial (Rec. Doc. 13355).  The Transocean Defendants deny any remaining allegations of this paragraph.

> 32.     There was a full and fair opportunity to litigate liability, liability was litigated, all Defendants were parties and/or in privity with a party, and resolution of those issues was necessary for this Court to enter the Phase One Findings.

**ANSWER:**  The Transocean Defendants state that the MDL No. 2179 Court has made rulings regarding fault for the Deepwater Horizon spill and other issues in its Findings of Fact and Conclusions of Law for the Phase One Trial (Rec. Doc. 13355).  The Transocean Defendants deny any remaining allegations of this paragraph.

> 33.     On or about December 9, 1998, predecessors to all BP Defendants and all Transocean Defendants entered a contract for the construction, use, and operation of the *Deepwater Horizon*.

**ANSWER:**  The Transocean Defendants state that the MDL No. 2179 Court has made rulings regarding fault for the Deepwater Horizon spill and other issues in its Findings of Fact and Conclusions of Law for the Phase One Trial (Rec. Doc. 13355).  The Transocean Defendants deny any remaining allegations of this paragraph.

> 34.     BP Exploration leased the *Deepwater Horizon*, a vessel, to drill exploratory wells at the Macondo Well ("Well") prospect site. BP's responsibilities, as operator and primary leaseholder, included assessing the geology of the site, engineering the Well design, obtaining regulatory approvals for Well operations, retaining the project's contractors, overseeing the project's contractors, and working on various aspects of the Well and Drilling Operations.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

> 35.     BP America contracted with Transocean Holdings to drill the Macondo

Well.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

36.     Halliburton manufactured a nitrogen foam cement slurry mixture ("Cement Mixture") to provide cementing and mudlogging services for the *Deepwater Horizon*.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

37.     The Oil Spill occurred with the blowout of the Macondo Well, which was drilled by the Deepwater Horizon Rig ("DHR") on the outer continental shelf in the Gulf of Mexico, approximately 130-miles southeast of New Orleans, Louisiana.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

38.     The explosions and fire on board the DHR occurred on or about April 20, 2010.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

### *Deepwater Horizon BP Oil Spill*

39.     On April 20, 2010, workers on the *Deepwater Horizon* Oil Rig lost control of the Macondo Well just after the final cementing work was completed. During the cementing work, an explosion occurred on the *Deepwater Horizon*, and it caught fire.

**ANSWER:** The Transocean Defendants admit that on April 20, 2010, there was a loss of well control followed by one or more fires and explosions. The Transocean Defendants deny any

remaining allegations of this paragraph.

40.     The explosion and fire itself caused the deaths of eleven (11) people and at least seventeen (17) others were injured from the immediate April 20, 2010 incident alone.

**ANSWER:** The Transocean Defendants admit that 11 individuals aboard died following the fires and explosions and that others aboard were injured. The Transocean Defendants deny any remaining allegations of this paragraph.

41.     The explosion(s) and/or fire should have triggered the automatic function on the vessel's Blowout Preventer ("BOP"). The function failed, or the BOP failed to shut in the Well.

**ANSWER:** The Transocean Defendants admit that the BOP installed on the *Deepwater Horizon* failed to seal the well. The Transocean Defendants deny any remaining allegations of this paragraph.

42.     The *Deepwater Horizon* was connected to the wellhead at the seafloor by an approximately 5,000-foot pipe called a "riser" and, as the vessel sank, it pulled the riser down with it – bending and breaking the pipe before finally tearing away from it completely.

**ANSWER:** The Transocean Defendants admit that the riser connected to the *Deepwater Horizon* bent and broke as the vessel sank, resulting at that point in the release of hydrocarbons from the BOP and/or the riser, and that the BOP installed on the *Deepwater Horizon* failed to seal the well. The Transocean Defendants deny any remaining allegations of this paragraph.

43.     The riser, bent into a crooked shape underwater, extended approximately 1,500 feet above the seabed, and then buckled back down.  Oil flowed out from the open end of the riser, and through two (2) breaks along its length.

**ANSWER:** The Transocean Defendants admit that the riser connected to the *Deepwater Horizon* bent and broke as the vessel sank, resulting at that point in the release of hydrocarbons from the BOP and/or the riser, and that the BOP installed on the *Deepwater Horizon* failed to seal the well. The Transocean Defendants deny any remaining allegations of this paragraph.

44.     On or about April 22, 2010, the vessel sank to the ocean floor after burning for approximately two (2) days.

**ANSWER:** The Transocean Defendants admit that the *Deepwater Horizon* sank on April 22, 2010. The Transocean Defendants deny any remaining allegations of this paragraph.

45.     Millions of gallons of oil discharged into the Gulf of Mexico over the next 87-days.

**ANSWER:** The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations. Out of an abundance of caution, the Transocean Defendants deny these allegations.

46.     Crude oil was discharged before the *Deepwater Horizon* platform sank on or about April 22, 2010. However, the rate of discharge increased even more once the *Deepwater Horizon* sank to the ocean floor.

**ANSWER:** The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations. Out of an abundance of caution, the Transocean Defendants deny these allegations.

47.     After the explosion and sinking of the *Deepwater Horizon*, BP Defendants attempted to downplay and/or conceal the severity the BP Oil Spill. Government investigators found that BP's initial leak-estimate of 1,000 barrels of oil per day was a mere fraction of its measured leakage of approximately 50,000 barrels per day.

**ANSWER:** The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations. Out of an abundance of caution, the Transocean Defendants deny these allegations.

48.     Moreover, BP Defendants did not provide complete and timely announcements and warnings about the severity, forecast, and trajectory of the Oil Spill.

**ANSWER:** The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations. Out of an abundance of caution, the Transocean Defendants deny these allegations.

49.     On or about April 30, 2010, oil made landfall as the flow of oil continued unabated.

**ANSWER:** The Transocean Defendants admit that hydrocarbons from the *Deepwater Horizon* or its

appurtenances entered the water column and reached the surface of the Gulf of Mexico and that some

hydrocarbons reached portions of the shorelines of Louisiana, Mississippi, Alabama, and Florida. The

Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of

the remaining allegations.  Out of an abundance of caution, the remaining allegations are denied.

> 50.    On or about June 20, 2010, Congressman Edward Markey of
> Massachusetts released an internal BP document showing that BP's own analysis
> revealed the actual rate of oil leakage to be 4,200,000 gallons per day, and that the total
> oil leakage could reach 100,000 barrels.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief

about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny

these allegations.

> 51.    The Oil Spill created an oil slick with a range of thousands of miles,
> with thick voluminous plumes of oil in the deep waters within the Gulf of Mexico.  The
> Oil Spill caused these slicks and plumes to form.

**ANSWER:** The Transocean Defendants admit that hydrocarbons from the *Deepwater Horizon* or its

appurtenances entered the water column and reached the surface of the Gulf of Mexico and that some

hydrocarbons reached portions of the shorelines of Louisiana, Mississippi, Alabama, and Florida. The

Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of

the remaining allegations.  Out of an abundance of caution, the remaining allegations are denied.

> 52.    The oil infiltrated, and continues to infiltrate, the delicate wetlands and
> intertidal zones that protect the coasts of Louisiana, Mississippi, Alabama, Texas, and
> Florida.

**ANSWER:** The Transocean Defendants admit that hydrocarbons from the *Deepwater Horizon* or its

appurtenances entered the water column and reached the surface of the Gulf of Mexico and that some

hydrocarbons reached portions of the shorelines of Louisiana, Mississippi, Alabama, and Florida. The

Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of

the remaining allegations.  Out of an abundance of caution, the remaining allegations are denied.

> 53.    An estimated 200-million gallons of crude oil infiltrated sensitive

coastland and intertidal ecosystems.

**ANSWER:** The Transocean Defendants admit that hydrocarbons from the *Deepwater Horizon* or its appurtenances entered the water column and reached the surface of the Gulf of Mexico and that some hydrocarbons reached portions of the shorelines of Louisiana, Mississippi, Alabama, and Florida. The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations.  Out of an abundance of caution, the remaining allegations are denied.

54.    On July 15, 2010, after multiple unsuccessful attempts, the Well was finally capped and by mid-September, it was sealed with cement.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

55.    After the Oil Spill, the United States Coast Guard formally and/or informally designated, *inter alia*, BP Defendants and Transocean Defendants as "Responsible Parties" under the Oil Pollution Act ("OPA").

**ANSWER:**  The Transocean Defendants deny these allegations.

56.    Leaked crude oil contains many highly toxic and hazardous chemicals, which can damage nearly every system in the human body.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

57.    In the wake of the disaster, and pursuant to its duties and responsibilities under the OPA, BP Defendants began implementing a Response and Containment Plan.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

58.    The "BP Oil Spill" includes the events, actions, inactions, and omissions leading up to, during, and after the following:

i.   The blowout of the Macondo Well, which was drilled on the Outer Continental Shelf in the Gulf of Mexico (occurring approximately 130- miles Southeast of New Orleans, Louisiana);

ii.   The explosions and fire on board the DHR on or about April 20, 2010;

iii.   The sinking of the DHR on or about April 22, 2010;

iv.   The release of oil, other hydrocarbons, pollutants, and other toxic substances from the Macondo Well and/or the DHR and its appurtenances;

v.   The efforts to contain the Macondo Well; and

vi.   Response Activities performed by Clean-up Workers and Response Workers under the direction of Unified Command.

**ANSWER:** The Transocean Defendants deny the allegations of this paragraph, including all of its subparts.

59.   BP Defendants were the operators of the Macondo Well under federal regulations of the Minerals Management Service ("MMS"). Therefore, BP Defendants were the lessee(s) designated as having control and/or management of operations.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

60.   As operators and primary leaseholders, BP Defendants were responsible for, including, but not limited to – assessing the geology of the site, engineering the Well design, obtaining regulatory approvals for Well Operations, retaining, and overseeing the project- contractors, and working on various aspects of the Well and drilling operations.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

### *DWH Toxic Chemicals*

61.   For purposes of this action, crude oil, hydrocarbons, benzene, and/or products containing benzene, which are all associated with the Clean-Up Efforts from the Macondo Well and the *Deepwater Horizon* Explosion, are collectively known as "DWH Toxic Chemicals."

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

62.     After the disaster, BP Defendants began implementing a Disaster Response Plan to prevent oil from escaping the blown-out Well, manually contain the oil, and disperse oil in the water using chemical dispersants.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

63.     BP Defendants' Response Plan included the use of chemical dispersants, specifically Corexit, to break down the oil into finely dispersed droplets.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

64.     On or about April 23, 2010, immediately after the *Deepwater Horizon* disaster, BP began subsea and aerial application of chemical dispersants to the oil slicks and sheens on the surface of the Gulf of Mexico.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

65.     On or about May 19, 2010, the United States Environmental Protection Agency ("EPA") Administrator directed BP Defendants, within 24-hours of issuance, to identify and use chemical dispersants that are less toxic than the Corexit dispersants.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

66.     On May 20, 2010, BP Defendants objected to changing dispersants and notified the EPA that it would continue using Corexit.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

> 67.     BP Defendants' use of Corexit skyrocketed in May of 2010.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

> 68.     On May 22, 2010, BP Defendants used 45,000 gallons of Corexit.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

> 69.     On May 23, 2010, BP Defendants used 70,000 gallons of Corexit.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

> 70.     On May 26, 2010, the EPA directed BP Defendants to reduce overall use of Corexit by 75%.  This EPA directive also required BP Defendants to eliminate use of chemical dispersants on the surface, except in rare cases where an exemption is sought in writing from the United States Coast Guard Federal On-Scene Coordinator in charge of the Response Efforts.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

> 71.     Since the May 26, 2010 EPA directive, BP Defendants sought more than forty (40) exemption requests to use chemical dispersants on the surface and subsea in the Gulf of Mexico.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

72.    The dispersant-treated and raw crude oil carried significant public health risks because it contained highly toxic chemicals, which can damage various systems in the body.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

73.    Specifically, crude oil contains benzene and other Volatile Organic Compounds ("VOCs") such as ethylbenzene, toluene, xylene, naphthalene, Polycyclic Aromatic Hydrocarbons ("PAHs"), diesel fumes, and heavy metals such as aluminum, cadmium, nickel, lead, and zinc.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

74.    These compounds can cause severe harm to human and reproductive health.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

75.    Chemicals such as benzene, PAHs, VOCs, and other chemicals in crude oil are toxic and move from the oil into the air.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

76.    Once airborne, these chemicals and fugitive emissions, with pungent petroleum- like odors, can blow over the ocean for hundreds of miles, reaching communities far from the location of the Oil Spill.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

77.     According to the Agency for Toxic Substances and Disease Registry, which is part of the United States Department of Health and Human Services, benzene is a known mutagen and carcinogen. Benzene in crude oil can cause a variety of health complications, including ventricular fibrillation, congestive gastritis, toxic gastritis, pyloric stenosis, myalgia, kidney damage, skin irritation and burns, swelling and edema, vascular congestion in the brain, and lethal central nervous system depression.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

78.     A 2007 Centers for Disease Control review of benzene toxicity concluded that there is substantial evidence that benzene causes leukemia, chromosomal abnormalities in lymphocytes and bone marrow cells, damage to the immune system, and abnormal development of blood cells. Long term, low-level oral and inhalation exposures to benzene have also caused peripheral nervous system abnormalities, distal neuropathy, difficulty sleeping, memory loss, and cancer.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

79.     As a result of the explosion of the DHR, DWH Toxic Chemicals and many highly toxic dispersants were released from the Macondo Well and reached the shores of the Gulf States.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

### *Toxic Dispersants*

80.     Aside from DWH Toxic Chemicals, BP Defendants purchased highly noxious chemical dispersants from Nalco, a chemical manufacturer, and/or its subsidiaries and sprayed them as part of the Response Activities performed in the

Clean-Up Efforts. These dispersants manufactured by Nalco include Corexit EC9500A and Corexit EC9527A.

**ANSWER:** The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations. Out of an abundance of caution, the Transocean Defendants deny these allegations.

81.    Corexit products contain hazardous substances, harmful to human health, and dermal exposure, inhalation, and ingestion should be avoided.

**ANSWER:** The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations. Out of an abundance of caution, the Transocean Defendants deny these allegations.

82.    Corexit EC9500 is an eye and skin irritant and can irritate the respiratory tract if inhaled, for example, it can cause chemical pneumonia.

**ANSWER:** The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations. Out of an abundance of caution, the Transocean Defendants deny these allegations.

83.    Corexit EC9527A contains 2-butoxyethanol, ("EGBE"). Repeated or excessive exposure to EGBE can cause injury to red blood cells, the kidneys, and the liver. EGBE can be carcinogenic to humans. It is an eye, nose, and throat irritant that causes nausea, vomiting, diarrhea, and abdominal pain. Exposure to EGBE can also cause headaches, dizziness, lightheadedness, and unconsciousness.

**ANSWER:** The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations. Out of an abundance of caution, the Transocean Defendants deny these allegations.

84.    These harmful dispersants, Corexit EC9500A and Corexit EC9527A, are hereinafter collectively referred to as "Toxic Dispersants."

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

85.     On or about April 23, 2010, BP Defendants and/or BP Defendants' agents began applying Toxic Dispersants to the oil on the surface of the Gulf of Mexico. BP Defendants sprayed Toxic Dispersants onto the ocean surface from aircrafts, which flew over areas with oil and dispensed chemicals from cargo holds, fountain type jets on the decks of boats, and smaller vessels onto the surface of the water. BP Defendants also injected Toxic Dispersants immediately below the surface of the water from vessels, deep below the surface of the ocean, and even sprayed by hand. BP Defendants sprayed these Toxic Dispersants throughout the day and night, exposing anyone near the coastal areas, despite warnings not to.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

86.     According to the *BP Deepwater Horizon Gulf Study*, which was based on the health effects of Zone Residents and Clean-Up Workers around the BP Oil Spill, the toxic effects on the human body are 52-times more toxic when Corexit and crude oil are combined.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

87.     The *BP Deepwater Horizon Gulf Study*, funded by BP Defendants themselves, showed how upstream petrochemical workers have experienced leukemia, multiple myeloma, melanoma, and esophageal adenocarcinoma.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

88.     BP Defendants used dispersants known to cause, *inter alia*: headaches; nausea; vomiting; diarrhea; abdominal pains; dizziness; chest pains and tightness; irritation of the skin, eyes, nose, throat and lung; breathing difficulties and respiratory system damage; asthma attacks; hypertension; damage to the liver and kidneys; central nervous system depression; neurotoxic effects; damage to red blood cells; genetic damage and mutations; reproductive and developmental damage; immune system

damage; cardiac arrhythmia; cardiovascular damage; and increased severity of Chronic Obstructive Pulmonary Disease ("COPD").

**ANSWER:** The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations. Out of an abundance of caution, the Transocean Defendants deny these allegations.

89.     BP Defendants and its contractors have used more than 1.8 million gallons of toxic dispersants in the Gulf of Mexico in connection with the Oil Spill.

**ANSWER:** The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations. Out of an abundance of caution, the Transocean Defendants deny these allegations.

### *Minor Child's Exposure*

90.     During approximately April 2010 through December 2010, and thereafter from 2011 through 2012, Child Plaintiff was exposed to oil, chemicals, dispersants, pollutants, PAHs, VOCs, other hydrocarbons, and other substances (collectively "Defendants' Substances") in and around Galveston County, TX, Baldwin County, AL, and Mobile County, AL.

**ANSWER:** The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations. Out of an abundance of caution, the Transocean Defendants deny these allegations.

91.     Specifically, Child Plaintiff was exposed to Defendants' Substances via Child Plaintiff's Mother frequenting the Gulf herself throughout 2010, and while Child Plaintiff was in the womb throughout the summer of 2010 when Child Plaintiff's Mother frequented the beach and swam in the Gulf, also bringing the infant to the beach where she was brought into the water.

**ANSWER:** The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations. Out of an abundance of caution, the Transocean Defendants deny these allegations.

92.     Child Plaintiff frequented beaches including, but not limited to the beaches of Galveston, TX, Dauphine Island, AL, Orange Beach, AL, and Fort Morgan Beach, AL.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

93.     Child Plaintiff's exposure began prior to her birth while still in the womb, highly susceptible during the first trimester to genetic mutation and throughout the pregnancy when her mother went into the in the water in April 2010 and during the entire summer of 2010 prior to the capping of the well, and thereafter throughout 2010, frequenting the Gulf through 2011 and 2012.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

94.     Child Plaintiff would put her hands into her mouth while on the beach after playing with the toxic sand without cleaning her hands due to her young age.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

95.     Beginning in approximately April of 2010, Child Plaintiff was exposed via dermal, ingestion, inhalation, and direct contact to Defendants' Substances.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

96.     At all relevant times, Plaintiffs were completely unaware of Defendants' wrongful conduct, remaining uninformed of the dangers and hazards related to Child Plaintiff's exposure.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

97.     Child Plaintiff's Parents never received warnings to remain out of the water.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

98.      Child Plaintiff frequented beaches and waters in and around the Gulf throughout 2010 while in the womb, 2011 as a baby, and thereafter into 2012.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

99.      Plaintiffs, at the time of the Oil Spill, believed that BP as a corporation, would not inform the public that the beaches were safe if the beaches were unsafe.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

100.      Further, at the time of the Oil Spill and during the Response Activities, misleading information caused the belief that exposure to oil and/or dispersants was *safe*.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

## CAUSES OF ACTION

### COUNT I – NEGLIGENCE
### (Against All Defendants)

101.      Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 – 100.

**ANSWER:** The Transocean Defendants incorporate each and every answer set forth in response to all preceding paragraphs as if fully restated here.

102.      At all times relevant to this action, Defendants participated in drilling

operations onboard the *Deepwater Horizon* in the Gulf of Mexico.

**ANSWER:**  The Transocean Defendants deny these allegations.

103.   Defendants owed duties of ordinary and reasonable care to Plaintiffs in connection with the Drilling Operations of the *Deepwater Horizon* and maintenance of the vessel, its appurtenances, and equipment.

**ANSWER:**  The Transocean Defendants deny these allegations.

104.   Defendants owed duties of ordinary and reasonable care to Plaintiffs to guard against and/or prevent the risk of the Oil Spill and its subsequent Clean-Up and Response.

**ANSWER:**  The Transocean Defendants deny these allegations.

105.   Defendants owed a duty to warn Plaintiffs of non-obvious dangers, such as chemical dispersants and Defendants' Substances infiltrating beaches, marine animals, drinking water, intercoastal waterways, tributaries, seafood, and other areas along the greater Gulf Coast.

**ANSWER:**  The Transocean Defendants deny these allegations.

106.   Defendants further owed duties to those who might foreseeably be harmed, including Plaintiffs, and to exercise due care in the operation, maintenance, handling, design, implementation, and execution of the relief and recovery measures.

**ANSWER:**  The Transocean Defendants deny these allegations.

107.   At all times material to this action, Defendants breached duties of ordinary and reasonable care to Plaintiffs in connection with the Drilling Operations of the *Deepwater Horizon* and maintenance of the vessel, its appurtenances and equipment, and additionally owed and breached duties to Plaintiffs to guard against and/or prevent the risk of the Oil Spill.

**ANSWER:**  The Transocean Defendants deny these allegations.

108.   Additionally, Defendants breached a duty to Plaintiffs, including persons who might foreseeably be harmed, to exercise due care in the planning, operation, maintenance, handling, design, implementation, and execution of the Oil Spill Relief and Recovery Measures.

**ANSWER:**  The Transocean Defendants deny these allegations.

109.   Defendants failed to warn and/or provide sufficient warnings to Plaintiffs of the non-obvious dangers and heightened risks associated with the Oil Spill and subsequent Clean-Up, such as chemical dispersants and Defendants' Substances infiltrating beaches, seafood, drinking water, intercoastal waterways, tributaries,

and/or other areas along the greater Gulf Coast.

**ANSWER:** The Transocean Defendants deny these allegations.

110. Furthermore, Defendants knew or should have known that:

i.   Crude oil contains hazardous chemicals that are deleterious to human health and the environment;

ii.  Toxic Dispersants used contain hazardous chemicals that are deleterious to human health and the environment;

iii. Individuals, such as Plaintiffs, required information from Defendants to become aware of the non-obvious dangers of the harmful effects of crude oil and/or chemical dispersants and/or combination thereof;

iv.  Individuals, such as Plaintiffs, were misinformed about the need to stay away from the hazard infiltrating beaches, seafood, drinking water, intercoastal waterways, tributaries, and other areas along the greater Gulf Coast when in proximity to crude oil and/or chemical dispersants;

v.   Individuals, such as Plaintiffs, believed that profitable corporations such as Defendants would have invested resources in warning the public of the hazard if health and safety posed a risk at the time of the Oil Spill; and

vi.  Failure to invest resources to properly inform families of the hazard at the time of the Oil Spill, due to conflicting messages at the governmental level from tourism concerns and other public interests separate from private entities and/or corporation(s), leads to childhood health hazards.

**ANSWER:** The Transocean Defendants deny the allegations of this paragraph, including all of its subparts.

111. It is undisputed that the blowout and explosions on the *Deepwater Horizon*, its sinking, the resulting Oil Spill, and Response Activities were caused by the joint and concurrent negligence of all Defendants.

**ANSWER:** The Transocean Defendants state that the MDL No. 2179 Court has made rulings regarding fault for the Deepwater Horizon spill and other issues in its Findings of Fact and Conclusions of Law for the Phase One Trial (Rec. Doc. 13355). The Transocean Defendants deny any remaining allegations of this paragraph.

112. On September 4, 2014, this Court issued *Findings of Facts and Conclusions of Law* holding that BP Defendants' conduct was reckless, Transocean Defendants' conduct was negligent, Halliburton's conduct was negligent, and that each were liable under general maritime law for the blowout, explosion, and subsequent Oil Spill from the *Deepwater Horizon Incident*.[11]

**ANSWER:**   The Transocean Defendants state that the MDL No. 2179 Court has made rulings regarding fault for the Deepwater Horizon spill and other issues in its Findings of Fact and Conclusions of Law for the Phase One Trial (Rec. Doc. 13355).  The Transocean Defendants deny any remaining allegations of this paragraph.

113.   Damages sustained by Plaintiffs as a result of the Oil Spill are apportioned as follows as to liability: BP Defendants 67%, Transocean Defendants 30%, and Halliburton 3%.

**ANSWER:**   The Transocean Defendants state that the MDL No. 2179 Court has made rulings regarding fault for the Deepwater Horizon spill and other issues in its Findings of Fact and Conclusions of Law for the Phase One Trial (Rec. Doc. 13355).  The Transocean Defendants deny any remaining allegations of this paragraph.

114.   In addition to this Court's findings, Defendants breached duties by:

i.   Failing to warn Plaintiffs of the harmful effects of toxic and chemical dispersants, including benzene, PAHs, VOCs, and other hazardous substances coming into contact with Plaintiffs;

ii.   Failing to properly warn Plaintiffs to avoid exposure to hazardous substances encountered in connection with the Oil Spill;

iii.   Failing to maintain, monitor, and operate the *Deepwater Horizon* in a reasonably safe manner so as to avoid harm to foreseeable individuals, such as Plaintiffs harmed from reproductive and/or in-utero exposure, and/or infant exposure, and/or early childhood exposure;

iv.   Failing to inspect the BOP to ensure it was not faulty and/or would not fail during use to avoid harm to foreseeable individuals, such as Plaintiffs harmed from reproductive and/or in-utero exposure, and/or infant exposure, and/or early childhood exposure; and/or

v.   Failing to otherwise exercise reasonable care in the planning, operation, maintenance, handling, design, implementation, and/or execution of the Clean- Up and Response Activities with recovery measures to avoid harm to foreseeable individuals, such as Plaintiffs.

**ANSWER:**   The Transocean Defendants state that the MDL No. 2179 Court has made rulings regarding fault for the Deepwater Horizon spill and other issues in its Findings of Fact and Conclusions of Law for the Phase One Trial (Rec. Doc. 13355).  The Transocean Defendants deny any remaining allegations of this paragraph, including all of its subparts.

115.   Child Plaintiff was exposed and came into contact with oil, other

hydrocarbons, chemical dispersants, and/or other substances through the eyes, nose, mouth, skin, and/or airways via inhalation, ingestion, dermal, and direct contact.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

116.    As a direct and proximate cause of Defendants' negligence, Child Plaintiff was exposed to chemical dispersants, oil, toxins, and/or other substances and suffered significant injuries, including Childhood Leukemia, enduring injuries as a direct and proximate cause of Defendants' negligence including, but not limited to Seizures, Pseudotumor Cerebri, Hydrocephalus, Scattered Lymphocytes, Progressive Multifocal Leukoencephalopathy, Immune Thrombocytopenic Purpura ("ITP"), Pancytopenia, Neutropenia, Posterior Reversible Encephalopathy Syndrome ("PRES"), hyponatremia, thrombocytopenia, intercranial hypertension, and suffers physical pain, mental anguish, loss of enjoyment of life, loss of childhood, loss of future earning capacity, disability, disfigurement, neurological deterioration, shunt placement, motor weakness, headaches, vision loss, nausea, as well as incurred medical and travel expenses in the care and treatment of her injuries, including cognitive and behavioral changes, which were foreseeable, natural, and probable consequences of Defendants' negligence.

**ANSWER:**  The Transocean Defendants deny these allegations.

117.    As a direct and proximate cause of Defendants' negligence, Child Plaintiff suffered through several agonizing years of intense cancer treatment, traveled back-and-forth for medical care, lost precious years of her childhood because of her conditions, and fought for her life with bravery for years. Although she beat cancer, Child Plaintiff continues to endure permanent injuries that she must live with for the rest of her life as a direct and proximate cause of Defendants' negligence, which were foreseeable and natural consequences of Defendants' negligence.

**ANSWER:**  The Transocean Defendants deny these allegations.

118.    As a direct and proximate cause of Defendants' negligence, Child Plaintiff's Parents must continue to tend to Child Plaintiff's extensive medical needs.

**ANSWER:**  The Transocean Defendants deny these allegations.

WHEREFORE, Plaintiffs hereby demand judgment against all Defendants as follows:

i.   Past and future medical expenses;
ii.   Past and future travel expenses for medical care and other treatment;
iii.   Compensatory damages;
iv.   Loss of consortium;
v.   Loss of enjoyment of a healthy child, emotional losses, pain, and suffering;
vi.   Pain and suffering, past, present, and future;
vii.   Punitive damages;

viii.    Pre-judgment and post-judgment interest;

ix.    Any and all supplemental Alabama remedies available to Plaintiffs; and

x.    Any other relief this Court deems just and proper.

**ANSWER:**  The Transocean Defendants deny the allegations of this paragraph, including all of its subparts.

**COUNT II – GROSS NEGLIGENCE**
**(Against BP Defendants)**

119.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 – 118.

**ANSWER:**  The Transocean Defendants incorporate each and every answer set forth in response to all preceding paragraphs as if fully restated here.

120.    BP Defendants owed duties of ordinary and reasonable care to Plaintiffs in connection with the Drilling Operations of the *Deepwater Horizon* and the maintenance of the vessel, its appurtenances, and equipment.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

121.    BP Defendants also owed duties of ordinary and reasonable care to Plaintiffs to guard against and/or prevent the risk of the Oil Spill.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

122.    BP Defendants owed a duty to warn Plaintiffs of non-obvious dangers, such as chemical dispersants and Defendants' Substances infiltrating beaches, seafood, drinking water, intercoastal waterways, tributaries, and/or other areas along the greater Gulf Coast.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

123.    BP Defendants further owed duties to those who might foreseeably be harmed, including Plaintiffs, to exercise due care in the planning, operation, maintenance, handling, design, implementation, and execution of the relief and recovery measures.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

124.    Furthermore, BP Defendants knew or should have known that:

i. Crude oil contains hazardous chemicals that are deleterious to human health and the environment;

ii. The toxic and chemical dispersants used contain hazardous chemicals, which are deleterious to human health and the environment;

iii. Plaintiffs expected a multi-billion-dollar corporation to make the public, consumers, and Parents aware of the non-obvious dangers of the harmful effects of crude oil and/or chemical dispersants;

iv. Failing to warn Plaintiffs of the harmful effects caused by coming into contact with Defendants' Substances from exposure to benzene, PAHs, VOCs, and other hazardous substances would result in harm;

v. Failing to properly warn Plaintiffs to avoid exposure to hazardous substances encountered in connection with the Oil Spill was detrimental to human health;

vi. Failing to maintain, monitor, and operate the *Deepwater Horizon* in a reasonably safe manner so as to avoid harm to foreseeable individuals, such as Plaintiffs, causing reproductive and/or in-utero exposure, and/or infant exposure, and/or early childhood exposure;

vii. Failing to inspect the BOP to ensure it was not faulty and/or would not fail during use would cause harm to foreseeable individuals, such as Plaintiffs harmed from reproductive and/or in-utero exposure, and/or infant exposure, and/or early childhood exposure; and/or

viii. Failing to otherwise exercise reasonable care in the planning, operation, maintenance, handling, design, implementation, and/or execution of the Clean- Up and Response Activities with recovery measures was necessary to avoid harm to foreseeable individuals, such as Plaintiffs.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

125.    BP Defendants additionally focused primarily on profit and image while recklessly disregarding the health of the public, as well as the health and safety of the surrounding environment(s) while undertaking ultra-hazardous activities on the *Deepwater Horizon*.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

126.    BP Defendants' conduct was reckless and/or willful and wanton, which completely disregarded the safety of children and families in the Gulf States, such as Plaintiffs, by:

i.   Performing a critical well pressure test using untrained, unqualified personnel, and ignoring and/or misinterpreting abnormal "red flag" pressure test results;

ii.  Using a Well design with too few barriers to gas flow;

iii. Failing to use a sufficient number of centralizers to prevent channeling during the cement process;

iv.  Failing to run a bottoms-up circulation of the drilling mud prior to beginning the cement job;

v.   Failing to run a cement bond log to evaluate the integrity of the cement job;

vi.  Failing to deploy the casing hanger lockdown sleeve prior to commencing the mud displacement process in the Well;

vii. Using an untested, abnormally large volume of mixed spacer solutions to avoid properly disposing of the two-separate spacer substances as hazardous waste;

viii. Grossly inadequate maintenance, and reckless and improper operation and use of the BOP appurtenant;

ix.  Failing to ensure containment of oil expeditiously and adequately, and within the immediate vicinity of the *Deepwater Horizon* in the event of a blowout;

x.   Failing to ensure that adequate safeguards, protocols, procedures, and resources would be readily available to prevent and/or mitigate the effects of an uncontrolled Oil Spill;

xi.  Failing to warn the public, such as Plaintiffs, of harmful health effects of the DWH Toxic Chemicals and Toxic Dispersants;

xii. Failing to warn the public, such as Plaintiffs, of harmful health effects from exposure to these substances;

xiii. Failing to warn the public, such as Plaintiffs, of the need to use proper protective clothing and respirators when in close proximity to the areas affected by the Oil Spill;

xiv. Failing to warn the public, such as Plaintiffs, of the need to remain away from the beaches despite conflicting information from sources separate from the corporation primarily responsible for the Oil Spill;

xv.  Failing to use reasonably safe dispersant chemicals in attempt to respond to the Oil

Spill;

xvi. Willfully using Corexit despite the EPA issuing directives for BP Defendants to use lesser toxic dispersants than Corexit; and/or

xvii. Willfully failing to comply with and/or ignoring EPA directives to reduce the use of surface and subsurface dispersants.

**ANSWER:** The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations. Out of an abundance of caution, the Transocean Defendants deny these allegations.

127.    Child Plaintiff was exposed to and encountered oil, other hydrocarbons, chemical dispersants, and/or other substances through the eyes, nose, mouth, skin, and airways via dermal, ingestion, inhalation, and/or direct contact.

**ANSWER:** The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations. Out of an abundance of caution, the Transocean Defendants deny these allegations.

128.    BP Defendants' conduct was reckless and/or willful and wanton.

**ANSWER:** The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations. Out of an abundance of caution, the Transocean Defendants deny these allegations.

129.    BP Defendants knew or should have known that such reckless and/or willful and wanton conduct would foreseeably cause Child Plaintiff's injuries.

**ANSWER:** The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations. Out of an abundance of caution, the Transocean Defendants deny these allegations.

130.    As a direct and proximate cause of BP Defendants' reckless and/or willful and wanton acts, Child Plaintiff was exposed to Defendants' Substances, including chemical dispersants and/or other toxins, suffering from Childhood Leukemia and significant injuries as a direct and proximate cause of Defendants' negligence including, but not limited to Seizures, Pseudotumor Cerebri, Hydrocephalus, Scattered Lymphocytes, Progressive Multifocal Leukoencephalopathy, Immune Thrombocytopenic Purpura ("ITP"), Pancytopenia, Neutropenia, Posterior Reversible Encephalopathy Syndrome ("PRES"), hyponatremia, thrombocytopenia, intercranial hypertension, and suffers physical pain, mental anguish, loss of enjoyment of life,

loss of childhood, loss of future earning capacity, disability, disfigurement, neurological deterioration, shunt placement, motor weakness, headaches, vision loss, nausea, as well as incurred medical and travel expenses in the care and treatment of her injuries, including cognitive and behavioral changes, and other complications, which were foreseeable, natural, and probable consequences of Defendants' negligence.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

131.    These injuries Child Plaintiff endured, and losses to her Parents, were foreseeable, natural, and probable consequences of BP Defendants' reckless and/or willful and wanton conduct, which led to the Oil Spill and subsequent Response Activities that exposed Child Plaintiff to harmful substances causing her terminal illness and permanent injuries.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

132.    As a direct and proximate result of BP Defendants' reckless and/or willful and wanton acts, Child Plaintiff lost and continues to remain deprived of precious moments amounting to years of childhood.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

133.    As a direct and proximate result of BP Defendants' reckless and/or willful and wanton acts, Child Plaintiff's Parents will endure the lifelong concern of their child experiencing future illness and/or harm from her permanent injuries.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

134.    As a direct and proximate result of BP Defendants' reckless and/or willful and wanton acts, Child Plaintiff will endure the lifelong concern of experiencing a future illness and/or harm from her permanent injuries.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

> 135.    Child Plaintiff's losses include the likelihood of infertility issues in the future as a direct and proximate cause of Defendants' negligence.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

> WHEREFORE, Plaintiffs hereby demand judgment against BP Defendants as follows:

i.    Past and future medical expenses;
ii.    Loss of future wages and earning capacity of a child;
iii.    Pain and suffering during and after treatment;
iv.    Pain and suffering;
v.    for the rest of her life;
vi.    Pain and suffering leading to fear of future illness;
vii.    Loss of consortium;
viii.    Loss of enjoyment of life and of childhood;
ix.    Emotional trauma from experiencing the terminal illness of a child;
x.    Fear of future illness as to her minor-siblings and Parents' other children;
xi.    Fear of future illness and/or condition(s);
xii.    Punitive damages;
xiii.    Pre-judgment and post-judgment interest;
xiv.    Any and all supplemental Alabama legal remedies available; and
xv.    Any other relief this Court deems just and proper.

**ANSWER:**  The Transocean Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs hereby demand judgment against Defendants as follows:

i.    Past physical pain and suffering, mental pain, anguish, distress, loss of enjoyment of life, and impairment;
ii.    Past and future medical expenses;
iii.    Cost of past and future treatment;
iv.    Loss of earning capacity of the child;

    v.   Lost earnings of each parent in caring for the child;
   vi.   Mental pain, anguish, distress, loss of enjoyment of life, and impairment;
  vii.   Recovery of Child Plaintiff's damages resulting from her illness, including, but not limited to damages for loss of love, affection, consortium, society, companionship, care, guidance, and monetary support;
 viii.   Punitive and/or exemplary damages;
   ix.   Pre-judgment and post-judgment interest;
    x.   Attorney's fees and costs;
   xi.   Any other relief this Court deems just and proper.

**ANSWER:**  The Transocean Defendants deny the allegations of this paragraph, including all of its subparts.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

**ANSWER:**  No response to this paragraph is necessary.  Out of an abundance of caution, the Transocean Defendants deny these allegations.

## AFFIRMATIVE DEFENSES

The Transocean Defendants set forth their affirmative defenses which apply to all claims unless otherwise noted. By setting forth these affirmative defenses, the Transocean Defendants do not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to the Plaintiff.

### Personal Jurisdiction

1.  The Court lacks personal jurisdiction over the Transocean Defendants.

### Standing

2.  The Plaintiff lacks standing because they have not alleged nor can they prove an actual or threatened injury caused by the Transocean Defendants' conduct and redressable by this Court.

### Proper Parties/Joinder

3.  The Plaintiff is not the proper party to assert any claims for natural resource damages.

3656107v.1

4.  The Plaintiff has failed to join an indispensable party (or parties) under Rule 19, Federal Rules of Civil Procedure.

### Ripeness

5.  The Plaintiff's claims for relief are not ripe.

### Vagueness

6.  The Complaint violates Federal Rules of Civil Procedure 8 and 12 by being vague, ambiguous, and/or conclusory and thus (1) not providing the Transocean Defendants with fair notice of what the claims are and the grounds upon which those claims rest and (2) not allowing the Transocean Defendants to reasonably prepare a response to the Complaint.

### Failure to State a Claim

7.  The Plaintiff has failed to state a claim upon which relief can be granted.

8.  The Plaintiff has failed to plead much less satisfy conditions precedent to recovery.

9.  The Plaintiff's claims are barred to the extent that the Plaintiff seeks to impose liability retroactively for conduct that was not actionable at the time it occurred.

### Shipowners' Limitation of Liability Act

10. The Transocean Defendants assert all rights and defenses available under the Shipowners' Limitation of Liability Act, 46 U.S.C. § 30501, et. seq.

### Oil Pollution Act

11. The Transocean Defendants assert all defenses available under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.*, including, without limitation:

    a.  Plaintiff has failed to make presentment of some or all of their claims as required under OPA.

    b.  Plaintiff has no right of action against one or more of the Transocean Defendants to the extent any of them is not a responsible party as defined under OPA.

c.  OPA eliminates or limits Plaintiff's alleged rights of recovery for certain economic loss claims.

d.  OPA does not provide for or allow a determination of joint and several liability but requires an apportionment of fault.

### Maritime and State Law Claims

12. The Transocean Defendants assert all defenses to any maritime and state law claims including, without limitation:

a.  The Transocean Defendants assert preemption to the extent that federal common law, including maritime law, is displaced by the Outer Continental Shelf Land Act, 43 U.S.C. §1331 et. seq. or the Oil Pollution Act, 33 U.S.C. §2701 et. seq.

b.  The Transocean Defendants assert that, under the Outer Continental Shelf Lands Act, 43 U.S.C. §1331, et seq., the Court must apply federal law, including the Oil Pollution Act and/or maritime law, to the exclusion of the law of the adjacent State, which in this case is Louisiana.

c.  The Transocean Defendants assert that Plaintiff's claims for purely economic losses, and any declaration or injunction pertaining to such claims, are barred absent physical injury to a proprietary interest pursuant to *Robins Dry Dock & Repair Co. v. Flint*, 271 U.S. 303, 309 (1927) or similar precedent in Texas, Louisiana, Mississippi, Alabama, Florida, or other states.

### Causation

13. The Plaintiff complains of harm not caused or contributed to in any manner by the Transocean Defendants, their alleged servants, employees, agents, or anyone for whom the Transocean Defendants are responsible. The incident and resulting harm that are the subject of the Complaint were caused by the fault, negligence, breach of contract, breach of warranty, statutory and

regulatory violations of other persons, entities, or sovereigns for whom Transocean Defendants are not legally responsible.

14. The injuries and resulting damages alleged to have been sustained by the Plaintiff resulted from a superseding or intervening cause for which the Transocean Defendants are not responsible.

15. The injuries and resulting damages alleged to have been sustained by the Plaintiff were not proximately caused by any acts and/or omissions of the Transocean Defendants. Any alleged negligence or other supposed culpable conduct by the Transocean Defendants, which the Transocean Defendants specifically deny, was not the proximate cause or sole proximate cause of Plaintiff's alleged injuries or damages, and there is no causal connection between the acts complained of and the injuries and damages alleged.

16. The injuries and resulting damages alleged to have been sustained by the Plaintiff were not foreseeable as a matter of law. Plaintiff's damages or injuries, if any, were caused by an occurrence and/or accident that was unforeseeable by the Transocean Defendants and for which the Transocean Defendants cannot be held legally responsible.

17. Plaintiff cannot establish general causation or specific causation between Plaintiff's alleged injuries or damages and any omissions, acts, or conduct of the Transocean Defendants.

18. In accordance with *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830 (1996), one or more superseding and/or intervening causes—including, but not limited to, medical conditions that preexisted and/or were unrelated to the Transocean Defendants' alleged acts—preclude any finding of liability for damages on the part of the Transocean Defendants.

19. The injuries allegedly sustained by Plaintiff occurred as a result of alternative causes, including but not limited to medical conditions, causes, or injuries which are unrelated to activities of the Transocean Defendants, and the existence of these alternative causes (such as preexisting or other

medical conditions, causes, or injuries) are a bar to and/or mitigating factor to any recovery sought herein.

20. The Transocean Defendants state that the alleged injuries complained of, if any, were caused by Plaintiff's own negligence and recovery is thus barred. Alternatively, the Transocean Defendants state that the alleged injuries and damages were caused by the comparative negligence and/or fault of Plaintiff.

**Damages**

21. Plaintiff's claims are barred, in whole or in part, because Plaintiff is not entitled under the law to the damages that Plaintiff seeks, the alleged damages sought are too speculative, remote, and uncertain, and because of the impossibility of the ascertainment and allocation of such damages among different causes.

22. The Plaintiff has not reasonably mitigated their damages.

23. The Transocean Defendants are entitled to set off, should any damages be awarded against them, in the amount recovered by Plaintiff with respect to the same alleged injuries. The Transocean Defendants assert payment and release to the extent that Plaintiff's alleged injuries have been or will be fully redressed under the Oil Pollution Act or other applicable statute or rule. The Transocean Defendants are also entitled to have any damages that may be awarded to Plaintiff reduced by the value of any benefit or payment to Plaintiff from any collateral source.

24. Punitive damages are not recoverable against the Transocean Defendants as a matter of law.

25. The Transocean Defendants deny that any of them have been guilty of any conduct that would support an award of punitive damages.

26. Any award of punitive damages against the Transocean Defendants would be in violation of the constitutional safeguards provided to the Transocean Defendants under the Constitution of the United States, and under state constitutions or statutory regimes, if applicable. The imposition of

3656107v.1                                                        30

punitive damages would violate the Transocean Defendants' rights for (1) protection against excessive fines under the Eighth Amendment to the Constitution of the United States (and state constitutions or statutory regimes, if applicable) and (2) due process and equal protection of the law under the Fifth and Fourteenth Amendments of the United States Constitution (and state constitutions or statutory regimes, if applicable) in that: (a) the issue of punitive damages would be submitted to a jury without any adequate standards for determination, (b) the jury would be required to decide issues of law rather than issues of fact, (c) there is no adequate review of a jury determination of punitive damages, (d) punitive damages can be imposed jointly without regard to the responsibility of the individual defendants, (e) penalties can be imposed without the increased burden of proof and other protections required by criminal laws, (f) evidence is submitted to the jury on issues of liability that should be limited to the issues of punitive damages only, and (g) the amount of punitive damages are determined in part by the financial status of the defendant.

27. The Transocean Defendants cannot be held liable for any damages resulting from or caused by actions taken pursuant to federal, state, or local government control, direction, delegation, or authorization.

28. The Transocean Defendants may not be held liable for any damages resulting from or caused by the actions of any Transocean Defendants to the extent such damages were exacerbated by federal, state, or local government actions.

29. Each Transocean Defendant may be held liable only for damages resulting from its own conduct and may not be held liable derivatively for the conduct of any other entity.

30. The Transocean Defendants cannot be held liable for damages resulting from or caused by the Transocean Defendants' subcontractors or other parties, as the actions of independent contractors cannot be imputed to the Transocean Defendants.

31. To the extent the Transocean Defendants are found liable to Plaintiff for any damages or injuries, the Transocean Defendants are entitled to have any reward or recovery mitigated or reduced accordingly by the contributory or comparative negligence of other individuals, entities, or vessels.

32. To the extent that the Transocean Defendants are found liable to Plaintiff for any damages, the Transocean Defendants are entitled to contractual or other indemnity from other parties or entities.

33. To the extent that the Transocean Defendants are found liable to Plaintiff for any damages, the Transocean Defendants are entitled to contribution from other parties or entities.

34. To the extent that the Transocean Defendants are found liable to Plaintiff for any damages, the Transocean Defendants are entitled to subrogation from other parties or entities.

35. To the extent the Transocean Defendants are found liable to Plaintiff for any damages or injuries, the Transocean Defendants are entitled to have any reward or recovery mitigated or reduced by the contributory or comparative negligence of other individuals, entities, or vessels, including Plaintiff's own contributory or comparative negligence.

36. The MDL No. 2179 Court held in its Findings of Fact and Conclusions of Law for the Phase One Trial (Rec. Doc. 13381-1) that the defendants could not be liable for punitive damages under general maritime law.

37. To the extent the Transocean Defendants are found liable to Plaintiff for any damages or injuries, the Transocean Defendants are entitled to have any reward or recovery mitigated or reduced by any prior payment to and/or release of liability from a Plaintiff who received funds through the BP claims process, the Gulf Coast Claims Facility, or the claims process to be conducted under any settlement agreement. Furthermore, any settled claims accompanied by any sort of releases of rights against the BP Parties may no longer be maintained.

**Equitable Relief**

38. Plaintiff's claims for equitable relief are barred because of improper claim splitting, and/or because equitable relief is not available under any of the alleged causes of action, Plaintiff has an adequate remedy at law, the hardship that would be imposed on the Transocean Defendants by the relief is greatly disproportionate to any hardship that the Plaintiff might suffer in its absence, because the Court lacks any sufficiently certain, non-speculative basis for fashioning such relief and/or because the alleged conduct of the Transocean Defendants was undertaken in good faith for a valid business purpose.

### Decisions of the MDL

39. All or some of Plaintiff's claims may be barred, preempted, and/or precluded by applicable federal law including, but not limited to, Orders, Judgments, and/or Decisions of the MDL No. 2179 Court.

40. As the MDL Court held in its Order and Reasons As to Motions to Dismiss the B3 Master Complaint at 5 (Rec. Doc. 4159), maritime law preempts all state law claims that are or may be asserted in this action.

41. As the MDL Court held in its Findings of Fact and Conclusions of Law for the Phase One Trial at 143-144 (Rec. Doc. 13381-1), Triton Asset Leasing GmbH and Transocean Ltd. are not liable under general maritime law. Accordingly, Triton Asset Leasing GmbH and Transocean Ltd. are not proper defendants in this case.

### Claim and Issue Preclusion

42. Non-maritime law claims asserted in this Complaint, if any, are barred under the doctrines of claim or issue preclusion (res judicata or collateral estoppel) or law of the case.

### Statutes of Limitations and Repose

43. All or some of Plaintiff's claims may be barred by applicable statutes of limitations and repose.

### Assumption of Risk

44. All or some of Plaintiff's claims are barred by Plaintiff's assumption of risk.

### Compliance with All Applicable Laws

45. The Transocean Defendants state that, at all times relevant, they complied with applicable laws, regulations, standards, as well as with any directions/instructions of the Unified Command, and that its actions were consistent with the National Contingency Plan.

### Doctrine of Release

46. Plaintiff's claims are barred by the doctrine of release.

### Adoption of Affirmative Defenses and Reservation to Amend Answer

47. Any affirmative defenses pleaded by the other Defendants and not pleaded by the Transocean Defendants are incorporated herein to the extent such defenses do not conflict with the Transocean Defendants' affirmative defenses.

48. The Transocean Defendants reserve the right to amend their Answer, Rule 12(b) defenses, and other defenses and to assert cross-claims and third-party claims, as appropriate.

### General Denial

49. The Transocean Defendants deny all allegations of the Complaint not specifically admitted herein, including but not limited to those set forth in all unnumbered paragraphs and/or subheadings.

Respectfully submitted,

/s/ *Paul C. Thibodeaux*
Kerry J. Miller (LA 24562), T.A.
Paul C. Thibodeaux (LA 29446)
Daniel J. Dysart (LA 33812)
**Fishman Haygood LLP**
201 St. Charles Ave., Suite 4600
New Orleans, LA 70170
Telephone:     (504) 556-5549
Telephone:     (504) 556-5548
Email:
kmiller@fishmanhaygood.com
pthibodeaux@fishmanhaygood.com

*Counsel for the Transocean Defendants*

## **CERTIFICATE OF SERVICE**

I, Paul C. Thibodeaux, counsel for the Transocean Defendants, certify that I caused the above and foregoing to be served to all parties on February 18, 2022, via the Court's ECF Notification System.

/s/ *Paul C. Thibodeaux*