## BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE:

OIL SPILL BY THE OIL RIG
"DEEPWATER HORIZON" IN THE
GULF OF MEXICO ON APRIL 20, 2010               MDL No. 2179

### BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO VACATE CONDITIONAL TRASNFER ORDER (CTO – 142)

Pursuant to Rule 7.1(f) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation ("**JPML**" or "**Panel**"), plaintiff in *Marian Law v. BP Exploration & Production, Inc., et al*, **Case No.: 1:21-cv-00520, Southern District of Alabama filed on December 02, 2021** ("Plaintiff" or "Law"), through her attorneys, respectfully submits this Brief in Support of her Motion to Vacate the Conditional Transfer Order (CTO – 142).[1,2,3]

### PRELIMINARY STATEMENT

Ms. Law, a citizen and resident of Loxley, Alabama, requests that her action remain in the Southern District of Alabama, her chosen venue, which has its own Case Management Order ("**SDAL CMO**") for governing cases arising out of the Deepwater Horizon Oil Spill ("**Oil Spill**").

---

[1] Plaintiff's lawsuit was filed on December 2, 2021, in the United States District Court for the Southern District of Alabama prior to the JPML's Transfer Order dated December 7, 2021 in *Johnson v. BP America Production Company*, et al, C.A. No. 1:21−00312.
[2] Some additional points have been included in this Motion to Vacate for the Panel to consider.
[3] The undersigned is in the process of seeking a clarification from the transferee judge as to whether B3 cases filed outside the transferee court should be transferred to the MDL or whether such cases are exempt from complying with the pretrial orders.

1

Plaintiff, a Non- Class Member, is not a part of the Medical Settlement Agreement ("MSA")[4] which is applicable to class members and mandatorily requires filing of their BELO lawsuits in the Eastern District of Louisiana in the first instance. Further the statutory factors under 28 U.S.C. § 1407 do not support transferring her action to MDL-2179 as any commonality with the cases previously transferred by this Panel to MDL 2179 have been resolved by Judge Barbier over the last eleven years and now a transfer to the Eastern District of Louisiana will not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation. Lastly, Ms. Law's serious medical condition of cancer does not afford her the luxury of any delay in her action. Thus, Ms. Law respectfully requests that the JPML vacate its conditional transfer of this matter to the Eastern District of Louisiana. Doing so will foster the just, speedy, and inexpensive determination of this action. *See* Fed. R. Civ. P. 1.

## PROCEDURAL HISTORY

Ms. Law's complaint was filed on December 2, 2021 in the United States District Court for the Southern District of Alabama seeking damages against BP, Transocean, and Halliburton for injuries, including cancer, caused by exposure to the Oil Spill and toxic dispersants resulting from the *Deepwater Horizon* oil spill ("BP Oil Spill"). *See* Ms. Law's Complaint, hereto attached as **Exhibit A**. Ms. Law alleges that she suffers from cancer because she was exposed to harmful toxins and oil that polluted the areas in and around the Southern District of Alabama as a result of the Oil Spill. (*See* **Ex. A** ¶¶ 78 – 81, 97). Defendants BP Exploration & Production Inc and BP America Production Company ("BP") filed a notice of potential tag-along action on December 9, 2021, notifying this Panel that Plaintiff's action relates to the consolidated cases *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010* ("In re Oil Spill" or

---

[4] Deepwater Horizon *Medical Benefits Class Action Settlement Agreement*, *as Amended on May 1, 2012*, MDL 2179, Rec. Doc. 6427-1 (May 3, 2012),

2

"MDL-2179"). On December 10, 2021, this Panel entered a Conditional Transfer Order (CTO – 142) and Plaintiff filed her notice of opposition to the Panel's CTO on December 17, 2021.

## RELEVANT MDL-2179 BACKGROUND FACTS

On August 10, 2010, this Panel was presented with 77 initial actions filed across seven District Courts alleging damages, economic and personal injury, related to the BP Oil Spill. This Panel, pursuant to 28 U.S.C. § 1407, ordered transfer and centralization to the Eastern District of Louisiana ("EDLA") and selected District Judge Carl J. Barbier to serve as transferee judge. *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 731 F.Supp.2d 1352 (J.P.M.L. 2010). This Panel recognized that personal injury actions "will require some amount of individualized discovery" and that the transferee judge has broad discretion to address any differences among the cases to "efficiently manage the various aspects of this litigation." *Id* at 1355.

Subsequently, Judge Barbier issued a series of pre-trial orders ("PTOs") for allowing the cases to proceed in the consolidated litigation. PTO 63, issued in 2017, requires B3 plaintiffs to serve a sworn statement regarding the status of their claim and PTO 66, issued in 2018, requires B3 plaintiffs to serve a particularized statement of claim. PTO 68, issued in October 2019, requires B3 plaintiffs and BP to exchange certain documents – specifically, BP is required to turn over badging data and any employment history of the B3 plaintiff and in return the plaintiff must produce medical records and billing for the alleged medical conditions.

On February 23, 2021, Judge Barbier issued a Case Management Order for the roughly 810 remaining B3 cases[5] which, *inter alia*, addressed Future B3 Cases and severed the B3 Bundle from

---

[5] Although the exact number of those 810 are Resident, Non-Class Members are unknown, it is estimated that ***less than 10%*** of those 810 B3 cases are Resident, Non-Class Members.

3

the main MDL docket. He noted that the issue of causation for B3 cases "will require an individualized inquiry" and will likely be the "make-or-break issue." (*See* "Case Management Order for the B3 Bundle", Rec. Doc. 26924, pp. 4-5, 2/23/2021 attached hereto as **Exhibit B**). Second, Judge Barbier pointed out that prior rulings in the MDL have narrowed the issues in the B3 cases. (*Id*. at p. 6, n.10). Finally, he ordered "Any B3 case filed in this Court <u>after</u> the issuance of this CMO ("Future B3 Case") shall be consolidated with MDL 2179 . . ." (*Id*. at p. 8). (Emphasis in original). Notably absent from this CMO is instructions to file **all** B3 cases in Eastern District of Louisiana.

**Judge Barbier's Finding of Liability and Apportionment.**

After years of discovery and a three-month trial, Judge Barbier issued Phase One Findings of Fact. Specifically, Judge Barbier found liability and apportionment for the *Deepwater Horizon* explosion and subsequent aftermath against BP, Transocean, and Halliburton. *In re Oil Spill by the Oil Rig Deepwater Horizon*, 21 F.Supp.3d 657, 746-47 (E.D. La. 2014) (finding BP liable under general maritime law tort for the oil spill). These findings of fact are no longer disputed and have not been challenged.

Moreover, BP represented that it will not likely dispute Judge Barbier's Phase One findings of common issues of fact during a status hearing for future B3 cases. BP's counsel represented to Judge Barbier: "on the question of fault, it is absolutely clear that you have made findings as to who was at fault for the spill, and BP has no intention of relitigating any of those issues." (*See* "Status Conference re B3 Bundle", Rec. Doc. 26713, 37:15-18, 9/23/2020 attached hereto as **Exhibit C**). Continuing, BP stated that for "those [] plaintiffs who were exposed to the oil through no fault of their own," specifically, Non-Class Members, like Law, Judge Barbier's "finding about

4

the spill is useful to them . . . [it] might be enough to handle the whole liability question." (*Id*. at 38:20-39:1).

On November 17, 2020, Judge Barbier held another status hearing for the B3 bundle where it was clarified and understood, by all parties including Judge Barbier, that no common issues remained that were to be decided by that court. (*See* "Status Conference", Rec. Doc. 26788, 6:4-20, 11/17/2020 attached hereto as **Exhibit D**). BP stated that the B3 plaintiffs, like Law, were a "really diverse group of plaintiffs with highly individualized issues" and that "[t]hey are different cases [than BELO cases]." (*Id*. at 6:17-19, 7:1-6).

### Adoption of Judge Barbier's Finding of Liability and Apportionment

After Judge Barbier's status hearing for the B3 bundle, BP submitted its position of liability for the Oil Spill before the different jurisdictions.

### Southern District of Alabama

The SDAL CMO in reference to all B3 cases, incorporates Judge Barbier's previous rulings on BP's liability for the Oil Spill. (*See* SDAL B3 CMO. at 1, 08/20/21). Judge Kristi DuBose, stated that, "orders of the MDL 2179 Court's rulings apply to the B3 cases, as summarized by Judge Barbier in his MDL 2179 B3 CMO and Transfer Order. [7] The SDAL Case Management Order is attached hereto as **Exhibit E**.

### Northern District of Florida

BP also submitted its position brief on the extent to which the Deepwater Horizon MDL Phase One findings of liability and percentage allocations of fault should be binding in the proceedings before the Northern District of Florida. (*See* NDFL B3 CMO. at 1, 09/28/21). Based

---

[6] Id. at 3
[7] (See MDL 2179 B3 CMO, at 6 n.10 (identifying "some of the Court's past rulings in the MDL [that] should narrow the issues in the B3 cases")). (*See also* In re Oil Spill by the Oil Rig Deepwater Horizon, 21 F. Supp. 3d 657, 746-47 (E.D. La. 2014) (finding BP liable under general maritime law tort for the oil spill)

5

on the representations, Judge M. Casey Rodgers issued a Case Management Order which, *inter alia*, addressed Judge Barbier's Phase One findings of common issues of fact as follows:

"Having fully reviewed the matter, the Court and the parties generally agree that the Phase One findings of fault should control and consequently, this eliminates the need for further fact and/or expert discovery or litigation on issues of fault related to the Deepwater Horizon blowout, explosion, and oil spill. BP maintains that it will defend, to the extent necessary, any allegations that it was negligent in *responding* to the oil spill, because its conduct during the cleanup activities was not addressed during the Phase One trial. The Court agrees and hereby expressly adopts the Phase One findings of fault and conclusions of law, *see In re Oil Spill by the Oil Rig Deepwater Horizon,* 21 F. Supp. 3d 657 (E.D. La. 2014), as binding in all B3 Bundle litigation transferred to this Court. Therefore, no additional fact and/or expert discovery is necessary on issues of fault related to the Deepwater Horizon blowout, explosion, and oil spill". The NDFL Case Management Order is attached hereto as **Exhibit F.** (*See* NDFL B3 CMO. at 3, 09/28/21).

## LEGAL STANDARD

Under 28 U.S.C. § 1407, a factually related case should be transferred for consolidated pretrial proceedings only when it is determined that (1) its transfer will be for the convenience of parties and witnesses and (2) will promote the just and efficient conduct of such actions. 28 U.S.C. § 1407(a). Tag-along actions are not exempt from this statute. *Id.* All criteria of § 1407 must be satisfied for the Panel to transfer an action to an existing MDL. *In re Highway Acc. Near Rockville, Connecticut, on December 30, 1972*, 388 F.Supp. 574, 575 (J.P.M.L. 1975). The transfer and coordination sought by Defendant would not fulfill these criteria.).

## ARGUMENT

**I.  CTO – 142 Does Not Meet the Statutory Requirements of 28 U.S.C. § 1407**

6

The Court should grant Plaintiff's Motion to Vacate the Conditional Transfer Order because transferring this case will not promote the just and efficient conduct of this action. This Panel promotes the interest of efficiency and justice by ending the automatic transfer of cases where a transferee judge has accomplished essentially all the primary objectives of centralization under 28 U.S.C. § 1407. *In re Cessna 208 Series Aircraft Products Liability Litigation*, 655 F.Supp.2d 1379, 1381 (J.P.M.L. 2009); *see In re Molinaro/Catanzaro Patent Litig.*, 402 F.Supp. 1404, 1405 (J.P.M.L. 1975) (vacating a CTO because, after common issues were concluded by the transferee court, transfer "would neither serve the convenience of the parties and witnesses nor promote the just and efficient conduct of the litigation."); *see also In re Luminex International Inc. Products Liability Litig.*, 434 F.Supp. 668, 669 (J.P.M.L. 1977); *In re Fotomat Franchisee Litig.*, 394 F.Supp. 798, 799 (J.P.M.L. 1975). "The Panel evaluates each group of cases proposed for multidistrict treatment on the cases' own facts in light of the statutory criteria." *Manual for Complex Litigation, Fourth*, § 20.131 (2004).

### A. The Remaining Issues to be Litigated are Individual and Unique.

The common issues of fact between Ms. Law's case and with MDL 2179 have already been resolved by Judge Barbier's Phase One Findings of Liability and Apportionment. A consolidation now for pretrial proceedings will not reduce BP's obligation to litigate the individualized issues as those are not common issues and need to be litigated individually for which the SDAL CMO is already in place. The remaining issues in this matter are thus individualized and unique to Ms. Law and therefore allowing the case to continue in Ms. Law's choice of forum preserves the just and efficient conduct of the matter. *In re Cessna* the Panel found that despite shared factual issues with the tag-along action and MDL, the CTO was vacated because the transferee judge had nearly completed all objectives of the multidistrict litigation and common discovery had been fully

7

completed. *In re Cessna*, 655 F.Supp.2d at 1380. *See also In re Molinaro/Catanzaro Patent Litig.*, 402 F. Supp. 1404, 1407 (J.P.M.L. 1975) (vacating a CTO because the Panel was satisfied that, despite pending common issues, the common issues were to be imminently tried.).

Further, when unique questions of fact predominate over common questions of fact, centralization under § 1407 is not warranted. *In re Pharmacy Benefit Plan Administrators Pricing Litigation*, 206 F.Supp.2d 1362, 1363 (J.P.M.L. 2002. This action while arising out the Oil Spill focuses to a mainly on individual issues of fact that are unique to Ms. Law's exposure within the Zones located in the Southern District of Alabama, her chosen forum. Like *In re Cessna*, Judge Barbier has completed all objectives of the multidistrict litigation – specifically, finding and apportionment of liability for the oil spill – and common discovery is completed. The *only* issues left for personal injury plaintiffs, like Ms. Law, are highly specific and individualized to each plaintiff – namely, routes of exposure, levels of duration, location of exposure (ie. causation) and damages. *See In re Diamond Mortgage Corporation, et al., Securities Litigation*, 1989 U.S. Dist. LEXIS 13672 (J.P.M.L. 1989) (denying motion to transfer as transfer would not serve the goal of efficiency "given the difference in type of plaintiff in each district, the difference in scope in each district, and the difference in purpose in each district as reflected in the legal theories underlying the actions").

### B. Transferring to MDL 2179 Will Not Promote Just and Efficient Conduct of this Action.

When this Oil Spill litigation began in 2010, consolidated pretrial proceedings were necessary because several diverse plaintiffs filed lawsuits in courts across the country. After eleven years the transferee judge has made substantial progress in this litigation. In addition to the transferee court, other district courts have also gained experience with several cases in this type of litigation and formulated their own respective case management orders for the Oil Spill cases. The Supreme has

8

"long recognized that a district court possesses inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Dietz v. Bouldin, ––– U.S. –––, 136 S.Ct. 1885, 1891, 195 L.Ed.2d 161 (2016) . See also Link v. Wabash *Railroad Co.,* 370 U.S. 360. The Court's decision as to how best to manage its docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.,* 299 U.S. 248, 254–55 (1936).

PTO 63, 66 and 68 are a part of the Eastern District of Louisiana for cases filed in that district. Further transferring actions of resident Non-Class Members, like Ms. Law, wastes resources of the parties, counsel, and judiciary, creates duplicative discovery, and prejudices the plaintiff. Cf. In re MLR, LLC, Pat. Litig., 269 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003) ("Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary."). Here, all the basic information and authorizations in the PTO 63, PTO 66 and PTO 68 regarding the status of the plaintiff, type of condition, dates, locations of exposure and providing medical records. will in any event be obtained by Defendants during discovery phase in her chosen forum. Thus, a transfer of Law's case to MDL-2179 will result in duplicative discovery in her compliance with EDLA's PTOs and it will needlessly delay her action by several months, contrary to Fed. R. Civ. P. 1. PTO 63 is a sworn statement to identify the *status* of a particular B3 plaintiff. Specifically, it requires Ms. Law to identify whether they are a Class Member, Class Member Opt-Out, or Non-Class Member. (*See* Pre-Trial Order 63 and Attachment, attached hereto as **Exhibit G** ("PTO 63")). Ms. Law did not plead that she was a clean-up worker or involved in any response activities. *See* Law's Complaint, generally.

9

PTO 66 requires plaintiffs to serve BP a particularized statement of claim – which are 48 specifically tailored interrogatories (not including subparts) signed by the plaintiff under penalty of perjury. (*See* Pre-Trial Order 66 and Attachment, attached hereto as **Exhibit H** ("PTO 66")). BP is getting the advantage of answers to 48 interrogatories *before* they are even required to answer the complaint. Ordinarily, a party is allowed only 25 interrogatories without leave of court; however, here, Ms. Law will be prejudiced because she will be required to answer up to 73 interrogatories.

PTO 68 orders parties to exchange documents within 90 days of filing the complaint. Specifically, B3 plaintiffs are required to submit all medical records for medical conditions identified in PTOs 63 and 66 and execute medical authorization releases. BP conversely is required to produce documents related to plaintiffs' employment history and badging data, in addition to general production of publicly available documents. (*See* Pre-Trial Order 68, attached hereto as **Exhibit I** ("PTO 68")). Again, here, BP is getting the advantage of responses to typical requests for production while BP will produce **no** responsive documents because plaintiffs like Marian Law were not clean-up workers nor involved in response activities and will simply refer Law to previously produced documents.

After complying with the 90-day deadlines, Law will file a venue stipulation[8] to transfer her action back to Southern District of Alabama, the Magistrate will sever her case from MDL-2179 and transfer her action back to the transferor court and Law's action will finally move forward with ordinary Federal and Local Rules of Civil Procedure, which include initial disclosures, scheduling orders, and even more importantly, discovery. As a result, BP will get a second bite at the discovery apple. In addition to the documents and responses that Ms. Law submitted under

---

[8] In the event that BP does not stipulate, Ms. Law will move to transfer her action.

10

the MDL's pretrial orders, she will be required to re-serve them in response to *ordinary* discovery and Transocean and Halliburton will now also be parties.

Moreover, the PTOs are not designed to determine sufficient evidentiary basis to proceed as a lawsuit. Ms. Law is required to submit medical records supporting alleged medical condition, however, if Ms. Law does not have medical records supporting her diagnosis, her case will proceed, nonetheless. The PTOs are merely procedural.

### C. Ms. Law's Action Should Remain in Her Forum of Choice for the Convenience of the Parties.

The Supreme Court has long stressed that "unless the balance [of considerations] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947); see also Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970) ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed."). Such deference is required because "[t]he plaintiff is the master of his complaint and has the privilege of choosing his forum in the first instance". *Keys By Washington v. Konrath*, 1994 WL 75037, at *1 (N.D. Ill. Mar. 10, 1994) Both Ms. Law and her witnesses have a strong presumption of convenience because she brought her action in their home forum. *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (recognizing that the plaintiff's choice of venue is afforded significant deference.). Transferring this action will not serve the convenience of the parties and witnesses because they are in the transferor court and Ms. Law alleged exposure occurred in the same. *Cf. In re: Fretted Musical Instruments Antitrust Litig.*, 657 F.Supp.2d 1379, 1380 (J.P.M.L. 2009). More specifically, Ms. Law's alleges her exposure was in and around Gulf Shores and Orange Beach, Alabama, the fact witnesses to her exposure are in Gulf Shores and Orange Beach,

11

her diagnosing and treating doctors are in the Southern District of Alabama. Thus, Ms. Law will be wholly inconvenienced to litigate this action in the Eastern District of Louisiana. Ms. Law chose the Southern District of Alabama to bring her action and her selection should be given deference.[9]

BP's notice of potential tag along conveniently only mentions that Plaintiff's action – a personal injury lawsuit against Defendants due to their negligence resulting in the *Deepwater Horizon* blowout – shares similar facts to the MDL 2179 which is not a standalone factor justifying a transfer under 28 U.S.C. § 1407. Here, BP has not shown good cause. See *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963) (holding that the defendant who seeks the transfer must show good cause). To show good cause means that a moving party, to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." The moving party bears the burden of demonstrating the need for transfer and consolidation. *See* In re Best Buy Co., 804 F. Supp. 2d 1376, 1379 (J.P.M.L. 2011) (denying transfer and consolidation because "the proponents of centralization have not met their burden of demonstrating the need for centralization"). Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. *In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008).

**D. Judge Barbier Did Not Mandate That All Future B3 Cases Be Filed In EDLA.**

As discussed supra, after holding two B3 status hearings, Judge Barbier issued an order severing the B3 bundle from MDL-2179 and issued instructions for Future B3 Cases. The order only addresses future B3 complaints that are filed in EDLA; he did not order future B3 complaints to be filed in EDLA. It can be inferred that Judge Barbier understood that not all future B3 cases

---

[9] Ala. Const. art, 1, § 13.

12

need to be subject to his PTOs. This order is also clearly distinguishable from the terms of the MSA. The MSA in MDL 2179 applicable to class members requires all BELO actions to be initially filed in the Eastern District of Louisiana.[10] Plaintiffs such as Ms. Law are Non-Class Members and requiring such plaintiffs to file their lawsuit in the Eastern District of Louisiana and comply with that district's case management order tantamounts to foisting the terms of the MSA to which they never agreed to in the first place.

## CONCLUSION

For the foregoing reasons, this Panel should vacate CTO – 142 because all pending issues are unique to Plaintiff's case and transferring will inconvenience the parties and not promote the just and efficient conduct of this action.

Dated December 30, 2021

Respectfully Submitted,

**THE DOWNS LAW GROUP, P.A.**
*Attorneys for Plaintiff*

*/s/ C. David Durkee*
**C. DAVID DURKEE**
Florida Bar No.: 998435
**SHEEBA SHYAM AJWANI**
Texas Bar No.: 24121356
3250 Mary Street Ste 307
Coconut Grove, FL 33133
Telephone: (305) 444-8226
Facsimile: (305) 444-6773
Email: ddurkee@downslawgroup.com
Email: sajwani@downslawgroup.com

---

[10] MSA, § VIII.G.1.c.

13