**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| IN RE: | **OIL SPILL BY THE OIL RIG** | * | **MDL NO. 2179** |
| | **"DEEPWATER HORIZON" IN** | * | **SECTION: J** |
| | **THE GULF OF MEXICO ON** | * | |
| | **APRIL 20, 2010** | * | |
| | | * | **Judge Barbier** |
| **Relates to:** | **2:14-cv-657** | * | **Mag. Judge Currault** |
| | **Melancon │ Rimes, LLC et al.** | * | |
| | **v. Downs Law Group, LLC, et al** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO RULE 12(b)(2) AND 12(b)(6)

Plaintiffs in the above-captioned matter, Melancon │ Rimes, LLC, Jason L. Melancon, Sterbcow Law Group, LLC, and Marx D. Sterbcow, respectfully submit this Memorandum in Opposition to Motion to Dismiss (R. Doc. 27343) filed by Defendants Downs Law Group, P.A., Craig T. Downs, and Jeremy D. Friedman.

### INTRODUCTION

The First Amended Complaint arises from a breach of fiduciary duty and unfair trade practices by Defendants Downs Law Group, P.A. ("Downs Law Group"), a Florida based law firm, its managing partner, Craig T. Downs ("Mr. Downs"), and law firm associate, Jeremy Friedman ("Mr. Friedman") (collectively referred to hereafter as "Defendants").

Defendants conspired to and did devise a scheme designed to misrepresent and to conceal material facts to joint clients of Plaintiffs and Defendants with the express and intended purpose of manipulating the parties' joint clients into executing revised contingency fee agreements that removed the names of Plaintiffs from said contingency fee agreements. These client claims were expressly related to this Court's MDL No. 2179, Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010 (hereinafter "BP MDL").

Defendants, a Florida law firm and Florida attorneys, initiated a joint venture agreement ("Joint Venture Agreement") with Plaintiffs, two Louisiana law firms and Louisiana attorneys, specifically for the purpose of soliciting and representing Louisiana residents for the BP MDL and with the agreement that attorneys' fees would be shared between the parties.

The Joint Venture Agreement is evidenced by exemplar contingency fee contracts - one in English and one in Spanish - confirming that Plaintiffs' names were expressly identified on the client contingency contracts (*see* Exhibits A & B).  Louisiana based clients executed the contingency fee contracts at Plaintiffs' Louisiana offices.  Plaintiffs have sought copies of all contingency fee contracts from Defendants, who acknowledge the contracts exist (*see* R. Doc. 27343 at p. 5 and 7), privately, in the prior Florida litigation, and in the current litigation, but have been rebuffed by Defendants. Amled Perez, a Downs attorney working in Marx's New Orleans office, initially provided Plaintiffs with a preliminary list of clients, spanning over 1,700 names, who were signed at Plaintiffs' Louisiana offices, (*see* R. Doc. 1-8) but, upon requesting a full listing of joint venture clients, were again denied said information by Defendants.

The Joint Venture Agreement subject of this lawsuit is separate and distinct from, and arose after, Plaintiffs served as co-counsel for certain BP Medical Benefit objectors. After the Fairness Hearing, Plaintiffs and Defendants entered into the Joint Venture Agreement and participated in same via the attorney-client contracts drawn up and executed at Plaintiffs' Louisiana offices. Although Defendants argue that Plaintiffs names were placed on the contingency fee contracts "to notify the clients that they [Plaintiffs] were also providing services related to the objection", the actual contingency fee contracts contradict Defendants' arguments. The contingency fee contracts do not mention representation relating to objections to the settlement *at all*.  In fact, quite the opposite as the contracts specifically contemplate representation "in the application of a cause of

action for personal injuries arising from: Class Action Lawsuit against BP-Deepwater Horizon Spill," and Section 5 of the contract sets forth the clients' understanding that he/she will be seen by physicians relating to the Medical Class Benefits Settlement Matrix, as well as a contemplation of recovery under the BP Settlement (*see* Exhibits A & B at p. 1). Moreover, the timing of the contracts calls into question Defendants' arguments, as these new clients were not all objectors to the BP Medical Settlement with most signing up *after* the Fairness Hearing on November 8, 2012.

Defendants state that, *subsequent* to the work of Plaintiffs, they "sought additional clients that had suffered injuries" and apparently, in relation these new clients, Plaintiffs agreed to permit Defendants to use their "physical office space to assist in signing up these clients" but allegedly requested rent. R. Doc. 27343-1 at 6. Contrary to Defendants' assertions, the Plaintiffs neither requested nor required payment of any rent for the use of their offices, nor will there be any evidence of rent actually paid. Setting up their defense, Downs Law Group sent a single unsolicited check for "rent" **after** the instant dispute arose, which Mr. Sterbcow and SLG never negotiated or cashed. Moreover, Plaintiffs never invoiced, charged or otherwise billed Downs Law Group for the use of the Plaintiffs' Baton Rouge and New Orleans offices in light of their Joint Venture Agreement to share attorney fees from joint Louisiana clients. The use of Plaintiffs' offices was always part of the joint co-counseling agreement.

These *new* Louisiana clients sought after the Fairness Hearing were part of Plaintiffs' and Defendants' Joint Venture Agreement, which expressly contained the names of both Plaintiffs and Defendants. Each contingency fee agreement unambiguously contemplated the legal services and a scope of representation under which the clients were to be jointly represented by Plaintiffs and Defendants. The contracts delineate responsibility among the parties in Section 8:

> Craig Downs, Esquire. will be the attorneys primarily responsible
> for this matter, **additionally Marx Sterbcow, Esquire and Jason**

> **Melancon, Esquire will assist in this matter**.   The Client understands and agrees that other members of the Firm, associates or paralegals , **may assist lead counsel in the preparation and trial of the case**."

*See* Exhibits A & B at p. 2, emphasis added.

Per the new contingency fee contracts, which do not mention objections to the settlement at the Fairness Hearing, and which were primarily executed subsequent to the Fairness Hearing and at Plaintiffs' offices, Plaintiffs would be providing legal services and assisting Downs Law Group matters relating to claims and injuries subject to the BP Settlement.

Defendants knowingly co-counseled and formed the Joint Venture Agreement with Plaintiffs in order to utilize Plaintiffs' licenses to practice law in the State of Louisiana for the purposes of soliciting Spanish-speaking Louisiana residents, executing contingency fee agreements at Plaintiff's Baton Rouge and New Orleans law offices, and advancing medical related costs for joint clients, particularly given Florida's prohibition against advancing medical costs for personal injury plaintiffs.

After manipulating the parties' joint clients to execute revised contingency fee agreements by removing Plaintiffs' names under false pretenses, Defendants, who are not authorized to practice law in the State of Louisiana, proceeded to solely represent the joint clients in the BP MDL with the intent of exclusively retaining all attorneys' fees arising from BP MDL claims, and contrary to the original joint client contingency fee agreements. This constitutes a gross and blatant example of a breach of the fiduciary duty owed between co-joint adventurers.

Defendants' misrepresentations and concealment of facts relating to Plaintiffs' joint representation of mutual clients, which induced said clients to execute revised contingency fee agreements, constitute a clear breach of the fiduciary duty owed by and between Plaintiffs and Defendants, including a clear violation of Louisiana's unfair trade practices, for which Plaintiffs

now seek economic damages in the amount of attorney fees lost through this conspiracy, and other equitable relief and attorneys' fees and costs as otherwise provided by law.

Although the Attorney Participation Agreement ("APA") identified by the Defendants (*see* R. Doc 27343-2) only pertained to the filing of objections and appearance at the Fairness Hearing, not the subsequently entered Joint Venture Agreement entered after the Fairness Hearing, Defendants have denied even the validity of the APA. In Defendants' Florida lawsuit *Answer* (*see* R.Doc. 12729-2, p. 2) at paragraph 9, Defendants denied the legal validity of the APA. Defendants therein claimed to take no actions ratifying the APA ("Denied that Defendant Downs ever executed the agreement...Denied that any specific conduct by Downs would be legal cause for ratification of the agreement.") In yet another pleading, Defendants judicially declared the invalidity of the APA because it only applied to Plaintiff law firms, where the contingency fee agreements only identified Plaintiff attorneys individually (*see* R. Doc. 12826-2). Thus, Defendants continuously deny Plaintiffs' involvement in representing their joint clients, despite overwhelming evidence of Plaintiffs' clear involvement in same. Defendants have taken every measure to deny Plaintiffs their rightful share to mutual attorney fees.

Because the APA only pertained to actions taken by Plaintiffs prior to the Fairness Hearing, the agreement does not mention Plaintiffs' providing local office space to Defendants to sign up new clients. The agreement does not mention a need for Plaintiffs' names to be placed as co-counsel on *new* attorney-client contracts, nor mention work previously performed by Plaintiffs at the Fairness Hearing. Rather, the Joint Venture Agreement involved the newly executed contingency fee agreement with new clients, and Plaintiffs assisted with the continued representation of these clients as co-counsel with Defendants throughout 2012 and 2013, and until Defendants unilaterally forwarded correspondence dated October 22, 2013, to all joint and mutual

clients inducing their execution of altered contingency fee contracts removing Plaintiffs' names upon false premises. Defendants took these actions with the specific intent and artifice to defraud Plaintiffs of their rightful share of the joint venture profits.

**I.    THIS HONORABLE COURT HAS PERSONAL JURISDICTION OVER INDIVIDUAL DEFENDANTS JEREMY FRIEDMAN AND CRAIG DOWNS[1]**

Defendants argue that this Honorable Court lacks personal jurisdiction over individual Defendants, Jeremy Friedman and Craig Downs, because Plaintiffs failed to allege sufficient minimum contacts with Louisiana to create either general or specific personal jurisdiction. The allegations in the Amended Complaint, however, clearly identify the contacts each individual Defendant maintained with Louisiana, which are sufficient to confer personal jurisdiction to this Court.

This Court looks to Louisiana's "long-arm" statute to determine personal jurisdiction over the individual Defendants Friedman and Downs. *See Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 624 (5th Cir. 1999). The Louisiana "long-arm" statute provides that:

> A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
>
> (1) Transacting any business in this state.
>
> (2) Contracting to supply services or things in this state.
>
> (3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
>
> (4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.

---

[1] Notably, Defendants do not challenge this Court's exercise of personal jurisdiction over Defendant Downs Law Group, PA; nor do Defendants challenge this Court's subject matter jurisdiction over all Defendants.

- - - - - - - - -

La. Rev. Stat. § 13:3201 (A).

In addition, the Louisiana Long Arm statue provides for the exercise of personal jurisdiction over a nonresident "on any basis consistent with the constitution of this state and the Constitution of the United States." *Id.* at § (B).  This basis exists where the nonresident has certain minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Guidry*, 188 F.3d at 624 (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).   These minimum contacts may be "general" or "specific." *See id.*  General minimum contacts are "continuous and systematic" with the forum and allow for personal jurisdiction even where the cause of action does not relate to the contacts. *See id.* (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).   Specific contacts, in comparison, occur where the nonresident defendant "purposefully established 'minimum contacts' in the forum state" so that it was foreseeable that the defendant should "reasonably anticipate" being haled into court in the forum. *See id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in the present case, the nonmoving party need only make a *prima facie* showing of personal jurisdiction, and the court must accept as true the nonmover's allegations and resolve all factual disputes in its favor. *Guidry*, 188 F. 3d at 625 (citing references). Under this standard, Plaintiffs easily demonstrate this Court's personal jurisdiction over individual Defendants Friedman and Downs.

Plaintiffs' Amended Complaint clearly alleges that Friedman and Downs both contracted to perform legal business and services in Louisiana with regard to representing Louisiana residents in the BP MDL, and in doing so caused damages to Plaintiffs through an offense or quasi-offense.

Furthermore, the Amended Complaint alleges that both Friedman and Downs were regularly conducting legal services in Louisiana in representing clients in the BP MDL presided over by this Court, as well as other matters in this forum.  A summary of the allegations establishing personal jurisdiction over the individual Defendants Friedman and Downs follows.

Defendants actively solicited Plaintiff law firms and attorneys located within Louisiana for well over one year. Defendant Friedman has a relationship with Plaintiff Marx wherein cases are referred.  R.Doc. 27343-1 at 4. Defendant Friedman maintained regular contact with Plaintiff Marx regarding these referral matters.  In 2012, Defendant Friedman contacted Plaintiff Marx in New Orleans, Louisiana to speak with Defendant Downs about serving as local counsel in BP related matters. *Id*.  Defendant Friedman, on behalf of Defendant Downs, asked Plaintiff Marx, along with Plaintiff Melancon, to serve as local counsel on certain BP matters. *Id*.

Defendants sought Plaintiffs' assistance in marketing and in signing Louisiana residents who worked the BP clean up and reportedly suffered from those conditions listed in the SETTLEMENT AGREEMENT.

Both Defendant Friedman and Defendant Downs flew into New Orleans, Louisiana for BP related matters.  Defendant Friedman traveled to Louisiana in November of 2012 on business related matters.  R. Doc. 27343-1 at 11.  Defendant attorneys all flew into Louisiana for the express purpose of attending the Fairness Hearing on the SETTLEMENT AGREEMENT. While Defendant attorneys requested that Plaintiff Melancon orate the attorneys' collective arguments in objection to the SETTLEMENT AGREEMENT, Craig T. Downs and Jeremy Friedman each sat in the audience during said presentation. Moreover, each attorney voluntarily chose to represent medical benefits class members; therefore, each Defendant attorney knowingly consented to the personal jurisdiction of this Court, as further ratified in Section XXVII of the

underlying SETTLEMENT AGREEMENT.  Upon information and belief, Defendant Downs has flown to Louisiana on numerous occasions, including arguments on BP related matters not related to this complaint.

Defendant Friedman previously was admitted as *pro hac* counsel on a case within the Eastern District of Louisiana entitled *Matt Pecoraro v. Sun Construction, LLC*, 2:06-cv-00193.

Defendant Downs, meanwhile, is listed as attorney of record on 717 cases within the Eastern District of Louisiana, not including individual BP claims within the Settlement Program.

To further their Joint Venture Agreement, Defendants hired and directed Amled Perez, an employee attorney paid by the Downs Law Group, to maintain a permanent office presence at Marx Sterbcow's New Orleans area office for the purpose of meeting and signing Spanish speaking clients. R. Doc. 27307, p. 7.

Moreover, Defendants furthered the Joint Venture Agreement by actively soliciting clients located within the Eastern District of Louisiana through the use of radio advertisements and yard signage. R. Doc. 27307, p. 7. Defendants used Plaintiffs' offices located in both Baton Rouge and New Orleans for the purpose of meeting clients and executing contingency fee agreements identifying Plaintiffs' as co-counsel of record. R. Doc. 27307, p. 6.

Defendant Friedman, individually, participated in the conspiracy to defraud Plaintiffs. Defendant Friedman personally devised the scheme and artifice to defraud along with Defendant Downs. Defendant Friedman devised a scheme to interfere with contracts of joint Louisiana clients, which would include correspondence and revised contracts to be mailed to, and executed in, Louisiana, and which plan was approved by Defendant Downs.  Defendant Friedman and Defendant Downs defrauded its co-joint adventurers through a blatant and brazen breach of fiduciary duty.

Accordingly, Defendant Friedman and Defendant Downs' numerous business activities within the boundaries of the Eastern District of Louisiana satisfy minimum contacts for purposes of personal jurisdiction, both specific and general.

Moreover, these individual Defendants engaged in most of these activities expressly for the purpose of making medical benefits damages claims in the BP MLD.   Notably, this Court in the BP MDL specifically recognized that the MDL Settlement Agreement provided the Court with continuing and exclusive jurisdiction over *counsel* of class members and found that even counsel, like the Defendants, who are not licensed in Louisiana subject themselves to the jurisdiction of the Court under the terms of the MDL Settlement Agreement.  *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL 2179, No. 12-970, 2015 WL 12724047, at *2, *2, n. 1 (E.D. La. Feb. 26, 2015).  In this same BP MDL ruling, this Court resolved issues with class member counsel that arose under the Louisiana Rules of Professional Conduct, the same rules implicated by Plaintiffs' claims against Defendants arising from Defendants' unilateral and surreptitious removal of Plaintiffs' names from re-issued retainer agreements sent to joint clients of the parties.

## II.     PLAINTIFFS HAVE STATED A CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY, INCLUDING THE EXISTENCE OF A JOINT VENTURE BETWEEN THE PARTIES

Louisiana law regarding the formation of a joint venture agreement between attorneys mutually sharing in attorney fees is clearly set forth in *Barham & Arceneaux v. Kozak*, 2002-2325 (La. App. 1 Cir. 3/12/04), 874 So. 2d 228, 236, *writ denied*, 2004-0930 (La. 6/4/04), 876 So. 2d 87. When professional contracts between attorneys who agree to share legal fees are at issue, Louisiana courts have generally refrained from examining them to determine whether one

attorney performed more work than the other. *Citing Rice, Steinberg, & Stutin, P.A. v. Cummings, Cummings & Dudenhefer,* 97–1651 (La.App. 4th Cir.3/18/98), 716 So.2d 8, 12, *writ denied,* 98–1328 (La.6/26/98), 719 So.2d 1288. A joint venture theory was used by the court in *McCann v. Todd,* 203 La. 631, 14 So.2d 469 (1943), to resolve an attorney fee division dispute where the attorneys had jointly undertaken to represent their client in a lawsuit. The court in *McCann* recognized that, absent an agreement to the contrary, the attorneys are entitled to share equally in the compensation. In such a case, the amount of time and labor furnished by the two attorneys is immaterial to the division of fees. *Citing McCann,* 14 So.2d at 472.

The courts have continued to apply the joint venture theory to uphold an agreement to share fees where two attorneys have executed a single contingency fee contract with the client. In such cases, the finding of a joint venture has been based on the fact that neither attorney has been discharged and both were actively involved in the case and remained responsible to their client. *Barham & Arceneaux*, *Id.*; *citing DeFrancesch v. Hardin,* 510 So.2d 42, 45 (La.App. 1st Cir.), *writ denied,* 513 So.2d 819 (La.1987); *see also Krebs v. Mull,* 97–2643 (La.App. 1st Cir.12/28/98), 727 So.2d 564, 569, *writ denied,* 99–0262 (La.3/19/99), 740 So.2d 119; *Rice, Steinberg, & Stutin, P.A.,* 716 So.2d at 11; *Fontenot & Mitchell v. Rozas, Manuel, Fontenot & McGee,* 425 So.2d 259, 260 (La.App. 3rd Cir.1982), *writ denied,* 432 So.2d 268 (La.1983). Relying on *DeFrancesch,* the court in *Rice, Steinberg, & Stutin, P.A.,* held that a single contingency fee was to be divided equally between the two lawyers or firms, rather than on a quantum meruit basis, where two lawyers or firms had executed a single contingency fee contract, neither was discharged, and both were involved in the case through its conclusion. *Rice, Steinberg, & Stutin, P.A.,* 716 So.2d at 14.

Herein, there is no question that Defendants and Plaintiffs' names were both placed on

the contingency fee contracts executed by the new Louisiana clients after the Fairness Hearing. As alleged by Plaintiffs, Defendants solely and exclusively possessed all contingency fee contracts in their possession, the vast majority of which were in Spanish, and of which Plaintiffs cannot read or understand. Consequently, Plaintiffs did not sign the contingency fee agreements given the ratification by the parties' joint collaborative efforts. Nevertheless, "When certain circumstances are present, a writing under private signature that contains a bilateral contract but is signed by only one of the parties may constitute written proof of that contract." § 12.29. Bilateral act signed by one party, 5 La. Civ. L. Treatise, Law Of Obligations § 12.29 (2d ed.); *citing Rainey v. Entergy Gulf States, Inc.*, 35 So. 3d 215 (La. 2010) (the court held that a contract addendum proposed and prepared by the defendant and which recognizes the defendant as the plaintiff's statutory employer provided tort immunity to the defendant, notwithstanding the absence of the defendant's signature from the addendum), and *Cecil Blount Farms, L.L.C. v. MAP00-NET*, 104 So. 3d 1 (La. Ct. App. 2d Cir. 2012) (Act under private signature need only be **signed** by one part, provided the other party accepts by availing himself of the **contract**, such as by recording it.).

Whereas the Plaintiffs and Defendants entered into contingency fee agreement with mutual Louisiana clients to share attorney fees, and whereas Louisiana recognizes a joint venture under the circumstances, and whereas joint ventures are governed by the law of partnership, the parties agree as to the elements of a claim for breach of fiduciary duty under Louisiana law: (1) the existence of a fiduciary duty, (2) a violation of that fiduciary duty, and (3) damages resulting from the violate of the fiduciary duty. *Matthews v. Stolier*, 2014 WL 5214738, at *8 (E.D. La. Oct. 14, 2014)(citing references). Defendants only challenge the first and third elements, which are addressed as follows in turn.

With regard to the first element, there is no question that the contingency fee contracts formed joint ventures with Plaintiffs and Defendants to share attorney fees. The retainer agreements wherein the Plaintiffs and Defendants expressly agreed to joint representation of clients in the BP MDL, on a contingency fee basis, created a joint venture under Louisiana law between the parties; therefore, the Joint Venture Agreement imposed fiduciary duties on the parties.

According to Defendants, however, Plaintiffs have not plead the existence of a fiduciary duty, citing of *Scheffler v. Adams & Reese, LLP*, 2006-1774 (La. 2/22/07); 950 So. 2d 641. Yet, Defendants' reliance on *Scheffler* provides no support to its position, as *Scheffler* involves a lawsuit by outside counsel for a client against corporate counsel for the same client, each of which counsel were *independently* and *individually* engaged by the client. 950 So. 2d at 648. Furthermore, there was no contract between the parties, and the parties did not work on any of the same cases for the client. *Id.* This factual situation has no application to the present case where the face of the retainer agreements expressly provides that Defendants and Plaintiffs were jointly retained by clients to represent these clients in the BP MDL.

Critically, in a footnote, the Louisiana Supreme Court in *Scheffler* specifically recognizes the exact basis of fiduciary duty in the present case – where two attorneys agree to work together on a case on a contingency fee basis, creating a joint venture. *See* 950 So. 2d at 648, at n. 2. Specifically, the Court explained:

> This court has recognized that an agreement by an attorney who has been retained to prosecute claims on a contingent fee to share the fee with another attorney who is employed to act as counsel in the litigation establishes between the attorneys the relationship of joint adventurers. The relationship of joint venture is fiduciary in character, and is generally governed by the law of partnership, imposing upon all the participants the obligation of loyalty to the joint concern and of the utmost good faith, fairness, and honesty in their dealings with each other with respect to matters pertaining to

13

> the enterprise....A joint venture, like a partnership, is a juridical person, distinct from its partners, created by an agreement between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit.  *Id.* (internal citations omitted).

Thus, the very case relied upon by Defendants contradicts their legal position and instead demonstrates that Plaintiffs properly alleged a breach of fiduciary duty.

Indeed, as explained in *Barham & Arceneaux*, *supra*, the Louisiana Supreme Court in *McCann v. Todd*, held long ago that a joint venture is formed when two or more attorneys jointly agree to represent a client under a contingency fee agreement.  14 So.2d 469, 471-472 (1943) ("An agreement by an attorney who has been retained to prosecute claims on a contingent fee to share the fee with the other lawyer who is employed to act as counsel in the litigation establishes between them the relation of joint adventurers and not of employer and employee.").  In Louisiana, joint venturers owe one another a fiduciary duty. *See also Riddle v. Simmons*, 40,000 (La. App. 2 Cir. 2/16/06); 922 So. 2d 1267, 181.  Thus, when two or more attorneys jointly agree to represent a client under a contingency fee agreement, the attorneys owe each a fiduciary duty.

The fiduciary duty of a joint venturer includes the duties of "loyalty and utmost good faith" and "fairness and honesty in their dealings."  *Id.*  "Each partner must refrain from taking any advantage of another partner by the slightest misrepresentation or concealment of material facts."  *Id.*  "The dual requirements of good faith between joint venturers and the principle that a joint venture contemplates a division of all the profits growing out of the transaction among all of the venturers forbid one co-venturer from acquiring and retaining for himself any private or secret advantage in connection with the common enterprise." *Id.*

As previously discussed, when professional contracts between attorneys who agree to share legal fees are at issue, Louisiana courts have generally refrained from examining them to determine

whether one attorney performed *more* work than the other.  *Rice, Steinberg, & Stutin, P.A. v. Cummings, Cummings & Dudenhefer,* 97–1651 (La.App. 4th Cir.3/18/98), 716 So.2d 8, 12, *writ denied,* 98–1328 (La.6/26/98), 719 So.2d 1288.  In such a case, the amount of time and labor furnished by the two attorneys is immaterial to the division of fees. *McCann,* 14 So.2d at 472.

As alleged in the First Amended Complaint, Defendants breached their fiduciary duty to Plaintiffs by conspiring to covertly, unilaterally, and without the consent or knowledge of Plaintiffs, contact their joint BP MDL claims clients and misrepresenting and concealing material facts concerning Plaintiffs' assistance, involvement, and representation as co-counsel, and with the specific intent of taking financial advantage of Plaintiffs by keeping all attorney fees for the exclusive and sole benefit of Defendants.  Defendants' breach of fiduciary duty allowed Defendants to receive all attorneys' fees from the BP MDL client claims, thus preventing Plaintiffs from recovering their fair share of profits as required by Louisiana joint venture law.

Defendants breached the fiduciary duty owed to Plaintiffs by knowingly inducing Plaintiffs to assist Defendants with the purpose of circumventing Louisiana's prohibitions against out-of-state attorney marketing and signing-up of Louisiana clients, yet with the underlying intent and plan of keeping all attorney fees, joint venture profits, for Defendants' sole and exclusive benefit. Defendants breached the fiduciary duty owed to Plaintiffs by knowingly inducing Plaintiffs to assist Defendants with the purpose of circumventing Louisiana's prohibitions against out-of-state attorneys establishing an office or other systematic and continuous presence in this jurisdiction for the practice of law, and in order to sign up thousands of Louisiana residents in offices located in Baton Rouge and New Orleans. Defendants breached the fiduciary duty owed to Plaintiffs by knowingly inducing Plaintiffs to assist Defendants with the purpose of circumventing limitations on Florida attorneys from advancing medical costs for plaintiff clients, and in order to allow the

joint clients to seek medical attention prior to submitting a claim for BP medical benefits.

With regard to the third element for a breach of fiduciary claim, Plaintiffs allege in the First Amended Complaint that Defendants' breach of the fiduciary duty caused Plaintiffs damages in the amount of attorneys' fees that Plaintiffs were entitled to pursuant to the contingency fee agreements, yet Defendants unilaterally and exclusive kept for themselves. A breach of the fiduciary duty requires the breaching partner to fully account to the partnership and his partners for the resulting profits. *See Riddle*, 922 So. 2d at 1281.

In this case, the attorney fees were the resulting profits from the Joint Venture Agreement, and Defendants, a partner in the joint adventure, should be held to account. Plaintiffs were financially damaged by the Defendants' breach of fiduciary duty because Plaintiffs were prevented from marketing and soliciting clients for their sole and exclusive financial benefit, and instead co-marketed and co-represented the joint clients in the BP MDL. As a result of Defendants' breach of the fiduciary duty, Plaintiffs have not received a single cent in attorneys' fees derived from those clients who originally executed contingency fee agreement identifying Plaintiffs' as co-counsel (*i.e.*, joint venture profits), which are owed to Plaintiffs under the contingency fee agreements for the parties' joint clients. Although clients may terminate an attorney's representation at will, the execution of amended contingency fee agreements in this case resulted from a conspiracy, scheme, and artifice to defraud Plaintiffs, resulting from false and misleading representations to mutual clients involving the alleged breach of fiduciary duty of co-counsel. These damages are not "speculative" as argued by Defendants, but rather are an easily ascertainable amount, specifically, the amount of attorneys' fees recovered by Defendants that should have been shared with Plaintiffs under all contingency fee contracts related hereto. Accordingly, Plaintiffs are seeking their share of the profits of the Joint Venture Agreement.

Plaintiffs are not seeking to be paid twice by the mutual clients, which damages can be calculated based upon the attorney fees awarded in the cases of the joint clients.

### III.     PLAINTIFFS HAVE STATED A CAUSE OF ACTION PURSUANT TO THE LOUISIANA UNFAIR TRADE PRACTICES

Plaintiffs properly stated a cause of action under Louisiana's Unfair Trade Practices Act, La. R.S. 51:1401, *et seq*. ("LUTPA").   Defendants raise three arguments for dismissal of Plaintiffs' LUPTA claims, two of which are identical to Defendants' arguments with regard to breach of fiduciary, and all of which fail.

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. Rev. Stat. § 51:1405 (A).  A business practice is "unfair" if it offends established public policy or is unethical, oppressive, unscrupulous, or substantially injurious; a business practice is "deceptive" when it amounts to fraud, deceit, or misrepresentation.  *Surgical Care Ctr. Of Hammond, L.C. v Hosp. Serv. Dist. No. 1 of Tangipahoa Parish*, 309 F.3d 836, 843 (5th Cir. 2022).  A person who suffers an ascertainable loss of money as a result of an unfair or deceptive act may bring an action to recover actual damages.  La. Rev. Stat. § 51:1409.

 Plaintiffs have properly alleged a claim under LUPTA.  Plaintiffs have alleged that Defendants engaged in unfair and deceptive acts in the practice of law by unilaterally and surreptitiously removing Plaintiffs as counsel from the representation of joint clients, after utilizing Plaintiffs to retain and represent these clients in Louisiana, all in a concerted effort to prevent Plaintiffs from sharing in the joint contingency fees for these clients.

Defendants entered into a joint venture with Plaintiffs for representation of joint clients on a contingency fee basis.  Defendants utilized Plaintiffs' Louisiana law licenses, Louisiana law

practices, and Louisiana law offices to sign up and represent these clients.  Upon information and belief, over one thousand contingency fee contracts expressly identified the names of Plaintiffs Melancon and Sterbcow as co-counsel with Defendants on all BP MDL related matters.

Subsequently, and without the knowledge of Plaintiffs, Defendants sent letters to every mutual client represented by the parties containing the fraudulent misrepresentation that Plaintiffs were no longer representing these clients and requesting the clients to execute a new retainer agreement excluding the names of Plaintiffs.  Defendants do not deny sending out these misleading letters, allowing them to gain an unfair advantage in the common enterprise. Defendants knowingly presented new contingency fee contracts to the joint clients that excluded the names of Sterbcow and Melancon from said contracts. R. Docs. 1-10, 1-11. Defendants' own writing evidences the deceptive nature of their intentions: "***Sure it is self serving but it can't hurt*** and we do have an obligation to keep the clients advised." But for Ms. Perez voluntarily turning over this email as evidence of Defendants' unscrupulous intentions, Defendants' email would have never seen the light of day.  R. Doc. 1-9, p. 2.  Defendants knew of the actual or probable damage to Plaintiffs that would result from denying Plaintiffs their rightful profit from the joint venture.  Accordingly, Plaintiffs claim that these fraudulent behaviors, in addition to the prior discussed breach of fiduciary duty, form the basis for Plaintiffs' LUPTA claim.

Turning now to Defendants' three arguments for dismissal of Plaintiffs' LUPTA claims, first, Defendants argue that there is no fiduciary duty between the parties, but as discussed at length in the preceding section, Plaintiffs have properly alleged that a fiduciary duty was created by the parties when they entered into the Joint Venture Agreement to jointly represent clients in the BP MDL on a continency fee basis.  Even the case law cited by Defendants, *Scheffler*, supports this

position.  Thus, Defendants' first argument fails.

Second, Defendants argue that there is no joint venture created between the parties, but again, as discussed at length in the preceding section, Plaintiffs have properly alleged that a joint venture and/or Joint Venture Agreement was created between the parties when the parties agreed to jointly represent clients in the BP MDL on a contingency fee basis.  The Louisiana Supreme Court jurisprudence cited by the parties, from *McCann* to *Scheffler*, supports this position.

Thus, all that remains to address with regard to Plaintiffs' LUTPA claims is Defendants' third and final argument that Defendants' LUTPA violation did not cause Plaintiffs an ascertainable loss.  This argument is easily dismissed as Plaintiffs' have clearly alleged the ascertainable loss suffered as a result of the Defendants' actions at issue in this case, specifically, the loss of shared profit in the joint venture, *i.e.* the Plaintiffs' share of attorneys' fees that they were entitled to as a result of the joint venture created with the Defendants.  This loss is easily ascertainable as all it requires is an accounting from the Defendants as to the amount of attorneys' fees derived from the joint clients and the division of these fees to Plaintiffs in their rightful share. For these reasons, Defendants' arguments for dismissal of Plaintiffs' LUPTA claims should be denied.

**IV.     LOUISIANA LAW APPLIES TO PLAINTIFFS' CLAIMS**

Defendants' final argument in their Motion to Dismiss is that pursuant to the terms of the Attorney Participation Agreement ("APA"), Florida law, and not Louisiana law, governs Plaintiffs' claims.  This argument, however, fails for several reasons: (1) Defendants admit that the APA pertained to Plaintiffs' involvement in objecting to the Fairness Hearing, only, (2) The APA did not pertain to the signing of new Louisiana clients after the Fairness Hearing, (3) Defendants are estopped from invoking the terms of the APA by judicial confession, and (4)

Louisiana law governs claims arising from attorney disputes involving the practice of law in Louisiana such as the present.

In previous court filings, Defendants have consistently denied the validity of the APA and thus, are now estopped from invoking the terms of this irrelevant contract in an effort to now seek dismissal of Plaintiffs' claims.  In Defendants' Florida lawsuit *Answer* (*see* R.Doc. 12729-2, p. 2) at paragraph 9, Defendants denied the legal validity of the APA. Defendants therein claimed to take no actions that ratified the APA ("Denied that Defendant Downs ever executed the agreement...Denied that any specific conduct by Downs would be legal cause for ratification of the agreement."). In yet another pleading, Defendants judicially declared the invalidity of the APA because it only applied to Plaintiff law firms, where the contingency fee agreements only identified Plaintiff attorneys individually (*see* R. Doc. 12826-2).  Thus, Defendants judicially declared in multiple pleadings that the APA was legally invalid, so as to keep it from becoming legally valid and binding contract.

Further, the APA is irrelevant to Plaintiffs' claims in the present lawsuit.  The APA only pertained to the limited joint clients who participated in the objections to the SETTLEMENT AGREEMENT made during the Fairness Hearing. Thus, the APA was limited in its scope, dates back to August 26, 2012, and relates only to "certain clients of Downs," presumably those that existed prior to the date of the Agreement.  The APA provides for only a narrow description of services from Plaintiffs, namely the filing of objections and motions *pro hac vice*, and appearing with Downs, as well as assisting in the presentation of arguments, at the Fairness Hearing.

The APA did not apply to the agreement between Plaintiffs and Defendants to market and solicit Louisiana clients after the Fairness Hearing. The APA does not mention providing local office space to Defendants to sign up new clients, does not mention a need for Plaintiffs' names to

be placed as co-counsel on *new* attorney-client contracts, or mention any contemplation of work to be performed by Plaintiffs post-Fairness Hearing. However, Plaintiffs continued to represent and assist Defendants with mutual marketing efforts and expressly served as co-counsel with Defendants throughout 2012 and 2013, and until Defendants unilaterally forwarded correspondence dated October 22, 2013, to joint clients inducing their execution of altered contracts removing Plaintiffs' names upon a false premise in order to defraud Plaintiffs of their share of the joint venture profits.  Thus, the terms of the APA do not dictate the applicable law in this case.

Louisiana law governs the present case because the Louisiana Supreme Court governs all practice of law located within the State of Louisiana, and the Louisiana Supreme Court applies Louisiana law when regulating the practice of law within its borders. Defendants cannot usurp an attorney's right to compensation under contingency fee contract governed by Louisiana law by relying exclusively upon a private party choice of law provision.

In Louisiana, the general rule is that where parties stipulate the state law governing the contract, Louisiana conflict of laws principles require the stipulation be given effect, unless there is statutory or jurisprudential law to the contrary, or strong public policy considerations justifying the refusal to honor the contract as written. *Associated Press v. Toledo Invs., Inc.*, 389 So.2d 752 (La.App. 3 Cir. 1980). However, the instant action does not involve an ordinary contract, but rather two licensed Louisiana attorneys' right to attorney fees originating from over 1,000 contingency fee contracts executed with Louisiana citizens, whose lawsuits were ultimately filed in a Louisiana court. "Since the Supreme Court is the head of Louisiana's judicial system, it is the final arbiter of the exercise of inherent judicial power." *Bester v. Louisiana Supreme Court Comm. on Bar Admissions*, 2000-1360 (La. 2/21/01), 779 So.2d 715, 717. "This Court has exclusive and

plenary power to define and regulate all facts of the practice of law...." *Id*. at 717.

As it relates to attorney compensation, "[a]lthough the basic relationship between client and lawyer may be contractual, that association is nonetheless subject to the inherent authority of the Louisiana Supreme Court to positively affect that fiduciary relationship through its power to regulate the practice of law." *Skannal v. Jones Odom Davis & Politz, LLP*, 48,016 (La.App 2 Cir. 9/25/13), 124 So.3d 500, 508; (*citing Chittenden v. State Farm Mut. Auto. Ins. Co.*, 00-0414 (La. 5/15/01), 788 So.2d 1140). "Louisiana courts have long approved of the contingent fee contract to compensate attorneys." *Id*.; (*citing O'Rourke v. Cairnes*, 95-3054 (La. 11/25/96), 683 So.2d 697). "Therefore, any dispute relative to an attorney-client relationship is subject to close scrutiny of the Louisiana Supreme Court and is resolved under codal provisions as illuminated by the Louisiana Rules of Professional Conduct." *Id*.

Accordingly, the Supreme Court has the power to regulate attorney compensation pursuant to contingency fee contracts executed by Louisiana citizens. No private party choice of law provision can affect the application of Louisiana law as declared by the Louisiana Supreme Court. As such, Louisiana law, as pronounced by the Louisiana Supreme Court, determines Plaintiffs' entitlement to attorney fees derived from those contingency fee agreements, as well as Plaintiffs' right to treble damages flowing as a consequence of Defendants' fraudulent efforts to negate the underlying contingency fee contracts. Defendants' attempt to dismiss the underlying suit based exclusively on Florida contract law must therefore fail as a matter of law.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss and allow

the parties to proceed with the litigation.

Respectfully submitted,

 /s/ Craig M. Robinson_____         /s/ Alexis A. Butler_____
CRAIG M. ROBINSON (Bar No. 32934)        Alexis A. Butler (Bar No. 32376)
*Robinson Law Offices, LLC*        *The Whitaker Law Firm, APC*
700 Camp Street        201 St. Charles Avenue
New Orleans, Louisiana 70130        Suite 2500
T: (504) 458-5100        New Orleans, LA 70170
F: (504) 717-4627        T: (504) 313-0168
E: craig@rlolegal.com        E: lexybutler@whitakerlaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on this  15th   day of March 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice of electronic filing to all parties of record and that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and in accordance with the procedures established in MDL 2179.

 /s/ Craig M. Robinson_____
Craig M. Robinson