UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO ON APRIL 20, 2010 | * * * * * | MDL NO. 2179 SECTION: J |
| | | * | Judge Barbier |
| Relates to: | 2:14-cv-657 Melancon │ Rimes, LLC et al. v. Downs Law Group, LLC, et al. | * * * | Mag. Judge Currault |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SECOND AMENDED COMPLAINT

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, Melancon │ Rimes, LLC, Jason L. Melancon, Sterbcow Law Group, LLC, and Marx D. Sterbcow, (collectively "Plaintiffs") who respectfully aver as follows:

### INTRODUCTION

1.

This Second Amended Complaint arises from a breach of fiduciary duty and unfair trade practices by Defendants Downs Law Group, P.A. ("Downs Law Group"), a Florida based law firm, its managing partner, Craig T. Downs ("Mr. Downs"), and law firm associate, Jeremy Friedman ("Mr. Friedman") (collectively referred to hereafter as "Defendants").

2.

Defendants conspired to and did devise a scheme designed to misrepresent and to conceal material facts to Plaintiffs and Defendants' joint clients with the express and intended purpose of manipulating the parties' joint clients into executing revised contingency fee agreements that removed the names of Plaintiffs from said contingency fee agreements, and whose client claims were expressly related to this Court's MDL No. 2179, Oil Spill by the Oil Rig "Deepwater

Horizon" in the Gulf of Mexico on April 20, 2010 (hereinafter "BP MDL").

3.

Defendants, a Florida law firm and Florida attorneys, initiated a joint venture agreement with Plaintiffs, two Louisiana law firms and Louisiana attorneys, specifically for the purpose of soliciting and representing Louisiana residents for the BP MDL and with the agreement that attorneys' fees would be shared between the parties.

4.

Defendants knowingly co-counseled with Plaintiffs in order to utilize Plaintiffs' licenses to practice law in the State of Louisiana for the purposes of soliciting Spanish-speaking Louisiana residents, executing contingency fee agreements at Plaintiff's Baton Rouge and New Orleans law offices, and advancing medical related costs for joint clients, particularly given Florida's prohibition against advancing medical costs for personal injury plaintiffs.

5.

After manipulating the parties' joint clients to execute revised contingency fee agreements by removing Plaintiffs' names under false pretenses, Defendants, who are not authorized to practice law in the State of Louisiana, proceeded to solely represent the joint clients in the BP MDL with the intent of exclusively retaining all attorneys' fees arising from BP MDL claims, and contrary to the original joint client contingency fee agreements.

6.

Defendants' misrepresentations and concealment of facts to joint clients, which induced said clients to execute revised contingency fee agreements, constitute a clear breach of the fiduciary duty owed by and between Plaintiffs and Defendants and unfair trade practices, for which Plaintiffs now seek economic damages in the amount of attorney fees lost through this conspiracy,

and other equitable relief and attorneys' fees and costs as otherwise provided by law.

## PARTIES

7.

Melancon | Rimes, LLC ("MR") is a named plaintiff herein. MR is a limited liability company domiciled and organized in the State of Louisiana where it operates its law offices.

8.

Jason L. Melancon ("Mr. Melancon") is a named plaintiff herein. Mr. Melancon is domiciled in the State of Louisiana and manages the Baton Rouge law firm of MR.

9.

Sterbcow Law Group, LLC ("SLG") is a named plaintiff herein. SLG is a limited liability company domiciled and organized in the State of Louisiana where is operates its law offices.

10.

Marx D. Sterbcow ("Mr. Sterbcow") is a named plaintiff herein. Mr. Sterbcow is domiciled in the State of Louisiana and manages the New Orleans law firm of SLG.

11.

Downs Law Group is a named defendant herein. Downs Law Group is a professional association domiciled and organized in the State of Florida where is operates its law offices.

12.

Craig T. Downs is a named defendant herein. Mr. Downs is domiciled in the State of Florida and manages the Florida law firm of Downs Law Group.

13.

Jeremy Friedman is a named defendant herein. Mr. Friedman is domiciled in the State of Florida and is an associate with Downs Law Group.

**JURISDICTION & VENUE**

14.

This Court has subject matter jurisdiction to resolve controversies over attorneys' fees when the dispute arises from the litigation before it, under both the court's ancillary jurisdiction and its inherent power to regulate attorneys who practice before the Court.

15.

The Court's Deepwater Horizon Medical Benefits Class Action Settlement Agreement ("MDL Settlement Agreement") provides this Court with exclusive subject matter jurisdiction over all parties, medical and economic benefits class members, and their counsel with respect to all disputes arising from the MDL Settlement Agreement.  Upon information and belief, the parties' joint clients have previously made claims for benefits subject to the MDL Settlement Agreement, which resulted in the payment of attorneys' fees to Defendants.

16.

This Court has personal jurisdiction over Defendants who knowingly and purposefully engaged in a pattern and course of conduct in the State of Louisiana, including the greater New Orleans area, which gives rise to the claims herein.  Defendants purposefully availed themselves to this Court's jurisdiction by initiating a joint venture agreement with Plaintiffs in Louisiana, for the specific purpose of retaining and representing Louisiana residents with claims in the BP MDL. With the assistance of Plaintiffs, Defendants held a continuous office presence within the Eastern District of Louisiana and hired a Spanish-speaking attorney to work at SLG's New Orleans office for the purpose of signing up hundreds, possibly thousands, of medical and economic BP MDL claim clients.   Defendants actively solicited Louisiana clients through print and radio advertisements in Louisiana and, further, issued correspondence and revised contingency contracts

to the joint clients in Louisiana. Defendants Mr. Downs and Mr. Friedman have both appeared in Louisiana to argue before this Honorable Court on BP MDL matters.

17.

Jurisdiction is further premised upon diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The parties are diverse, and the matter exceeds $75,000.00, exclusive of legal interest and court costs.

18.

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in the Eastern District of Louisiana.

**FACTUAL ALLEGATIONS**

19.

In or around August 2012, Mr. Friedman of Downs Law Group contacted Mr. Sterbcow of SLG regarding the formation of a co-counsel arrangement for representing clients with potential medical claims to be filed in the BP MDL.

20.

Mr. Friedman advised Mr. Sterbcow that Downs Law Group wanted to solicit Spanish-speaking, Louisiana residents that worked in the BP clean-up operation, and Mr. Friedman requested Mr. Sterbcow's assistance in marketing and retaining joint clients.

21.

Mr. Sterbcow contacted Mr. Melancon of MR about assisting Downs Law Group with the legal representation, to which Mr. Melancon agreed.

22.

Initially, Plaintiffs and Defendants jointly represented a group of joint clients wishing to

object to the proposed medical settlement agreement. Plaintiffs, who were admitted to practice before the Eastern District of Louisiana, served as *pro hac vice* sponsors for the Defendants. The parties agreed that Mr. Melancon of MR would assist in drafting the objection and also orally address the Court during the fairness hearing. This Court overruled the joint clients' objections and approved the MDL Medical Settlement Agreement. Thereafter, Mr. Melancon continued to assist Downs Law Group with drafting the appeal before the Fifth Circuit.

23.

After the Court approved the MDL Settlement Agreement, the parties discussed a continuation of their joint efforts to solicit Louisiana residents who might have potential medical or property damages claims under the BP MDL. Louisiana Supreme Court Rule XVII § 13(B)(7) prohibited non-Louisiana licensed attorneys from engaging in the unauthorized practice of law by actively soliciting Louisiana residents; therefore, Plaintiffs and Defendants agreed to co-counsel with the intent and purpose of utilizing Plaintiffs' law license in Louisiana to jointly solicit clients located in Louisiana through print adverts, yard signage, and radio advertisements.

24.

In addition to soliciting Louisiana residents, Plaintiffs and Defendants also discussed the need to physically meet with mutual clients at Plaintiffs' Baton Rouge and New Orleans offices. Louisiana Rule of Professional Responsibility 5.5 prohibits engaging in the unauthorized practice of law in Louisiana by establishing an office or other systematic or continuous presence in Louisiana; therefore, Plaintiffs and Defendants agreed to co-counsel with the intent and purpose of utilizing Plaintiffs' law licenses in Louisiana to actively meet with potential joint clients, and Plaintiffs thereafter provided their New Orleans and Baton Rouge offices to Downs Law Group for purposes of meeting with potential Louisiana clients.

25.

Due to the large volume of Spanish-speaking clients, Downs Law Group hired a full-time, Spanish-speaking, non-Louisiana licensed attorney, Amled Perez, to work inside SLG's New Orleans offices. Ms. Perez' sole responsibility involved meeting BP MDL clients for the purpose of evaluating and retaining BP MDL related claims.

26.

According to the terms of the MDL Settlement Agreement, medical claims required a pre-claim diagnosis by a qualified healthcare provider to qualify for benefits. Due to the indigent nature of many joint clients working the BP oil spill, Plaintiffs and Defendants discussed the Florida law prohibiting the Downs Law Group from paying advanced medical costs for personal injury clients. Because Louisiana law permits Louisiana attorneys to advance medical costs, Plaintiffs and Defendants specifically discussed the need to co-counsel and jointly represent clients to protect Downs Law Group from violating Florida's prohibition against advanced medical costs. Co-counseling with Plaintiffs permitted the parties' joint clients to receive appropriate medical attention and evaluations prior to making a claim for benefits under the MDL Settlement Agreement. Thereafter, a Downs Law Group employee informed Mr. Sterbcow that Downs Law Group was in fact advancing medical costs for many of the Louisiana joint clients who executed contingency fee agreements at Plaintiffs' Louisiana offices.

27.

Because of the limitations on the Downs Law Group from soliciting Louisiana clients, maintaining or establishing an office or other systematic or continuous presence in Louisiana, and advancing medical costs for medical evaluations, the Downs Law Group identified Mr. Melancon and Mr. Sterbcow as co-counsel on all contingency fee contracts with the parties' joint clients.

However, because the majority of joint clients spoke Spanish, the Downs Law Group almost exclusively personally met with the Spanish speaking joint clients, and, thus, the Downs Law Group, according to the parties' agreement, exclusively retained control of the joint clients' medical records and contingency fee agreements. Upon information and belief, over 1,000 joint BP MDL clients, most of whom were signed up by the parties at the Plaintiffs' Baton Rouge and New Orleans law offices, executed contingency fee agreements identifying Mr. Melancon and Mr. Sterbcow as co-counsel. *See e.g.* (R. Docs. 1-6, 1-7).

28.

Plaintiffs dutifully performed all legal work for their respective joint clients as requested by, and agreed to by, Defendants. In addition to providing the Louisiana law license required to solicit Louisiana clients, maintaining a continuous legal presence in Louisiana, and advancing costs for pre-claim medical evaluations, Plaintiffs facilitated the signing-up of over 1,000 joint clients, entering appearances and filing pleadings before the trial court and appellate court, and arguing on behalf of joint clients before this Court, all of which, to date, Plaintiffs have received $0.00 in attorney fees, despite being identified as co-counsel of the respective contingency fee agreements.

29.

While working full-time at the SLG New Orleans office, on or about September 24, 2013, Downs Law Group employee, Amled Perez, provided Mr. Sterbcow with the first list of mutual clients spanning over 1,700 names. *See* (R. Doc. 1-8).

30.

In October 2013, Mr. Melancon planned to renew MR's legal malpractice insurance in the upcoming months and needed to know the exact number of mutual clients for reporting purposes

8

to the insurance company. Accordingly, Mr. Melancon requested via email a list of the names of all mutual clients. In response, Downs Law Group provided a list of only 73 clients. *See* (R. Doc. 1-7).

31.

Plaintiffs confronted Downs Law Group regarding the discrepancy in the number of joint clients displayed on the September 2013 list disclosed to Mr. Sterbcow of SLG and the October 2013 list provided to Mr. Melancon of MR. Downs Law Group for the first time responded that Plaintiffs were not co-counsel for the over 1,700 mutual clients who executed contingency fee agreements identifying Mr. Melancon and Mr. Sterbcow as co-counsel, and possibly over 1,000 Louisiana residents in all.

32.

Emails dated October 22, 2013, provided by a Downs Law Group employee, demonstrated that Mr. Downs and Mr. Friedman conspired to and did devise a scheme and artifice to defraud Plaintiffs. Downs Law Group sent out letters instructing the parties' mutual clients to execute revised contingency fee agreements that removed the names of Mr. Melancon and Mr. Sterbcow from said contingency fee agreements. The Downs Law Group correspondence would falsely claim that Mr. Melancon and Mr. Sterbcow were no longer serving as co-counsel, even though Plaintiffs never voluntarily stopped working on the case. *See* (R. Doc. 1-9). These emails expressed the clear intent by Mr. Downs and Mr. Friedman to misrepresent and conceal material facts from the parties' joint clients, thereby misleading the parties' joint clients into executing revised contingency fee agreements that appeared to terminate Mr. Melancon and Mr. Sterbcow's right to future attorney fees. *Id*. Email correspondence between Mr. Downs and Mr. Friedman clearly evidence the conspiracy to devise a "self-serving," false cover story explaining the

unilateral removal of Mr. Melancon and Mr. Sterbcow's name from the contingency fee agreements, constituting an unprivileged communication made in furtherance of a fraud:

> Finally, please be advised that we had initially agreed that the law firms of Melancon Rimes and the Sterbcow Law Group would provide assistance to the objection and appeal only. As these issues are no longer pending, these entities are no longer acting on your behalf. This will have no effect on any recovery that you may have, however, we wanted to keep you informed as to any developments related to your case.
>
> Something like that. **Sure it is self-serving** but it can't hurt and we do have an obligation to keep the clients advised. *Id*. (emphasis added).

33.

After conspiring with one another, Defendants executed the scheme devised in the above referenced email and sent the parties' joint clients new contingency fee contracts omitting the names of Mr. Melancon and Mr. Sterbcow. Defendants' unilateral removal of co-counsel's names from a contingency fee agreement with a false and misleading explanation for said removal constitutes a clear breach of the fiduciary duty owed between Defendants and Plaintiffs, as partners in a joint venture representing mutual BP MDL clients. *See e.g.* (R. Docs. 1-10, 1-1).

34.

After uncovering Defendants' surreptitious activities, in December 2013, Plaintiffs filed suit against Defendants in Florida state court.

35.

While the Florida state court lawsuit was pending, on February 13, 2014, the MDL Settlement Agreement was finalized after exhaustion of appeals. Thereafter, on March 13, 2014, Plaintiffs filed a Motion pursuant to Section XXVII of the MDL Settlement Agreement, seeking to enforce Plaintiffs' rights to attorneys' fees on claims made through the BP MDL. *See* (R. Doc.

1-2). On March 20, 2014, this Court denied the motion on the basis that, pursuant to Section XXIA(8)(d) of the MDL Settlement Agreement, the claims administrator was to resolve all attorneys' fees liens, claims, or rights to reimbursement, and directed Plaintiffs to contact the claims administrator. *Id*. The Court also stated that Plaintiffs could file a separate lawsuit. *Id*.

36.

Plaintiffs then contacted the MDL claims administrator to assert an attorney fee lien. The claims administrator advised Plaintiffs that, in order to file a lien, the office required the first name, last name, dates of birth, social security numbers, and SPC numbers for the clients. However, as previously explained, because the vast majority of joint clients spoke Spanish, the parties' agreed that the Downs Law Group would retain all client information on behalf of the joint venture. Moreover, Downs Law Group refused to share this information when Mr. Melancon requested the information in October 2013. Because Plaintiffs lacked the requested information, the claims administrator refused to consider Plaintiffs' claim for attorney fees and assess the lien, thereby forcing Plaintiffs to seek the requested information in discovery in this Court.

37.

However, because of the stay on litigation involving ancillary BP matters, Plaintiffs have been unable and prevented from obtaining the necessary client identification information in discovery; therefore, Plaintiffs have no way of knowing the identity of or contacting those clients who executed contingency fee agreements identifying Mr. Melancon and Mr. Sterbcow as co-counsel. To date, Plaintiffs have been unsuccessful in obtaining nearly all joint client retainer agreements, and thus have thus been unable to confirm exactly how many clients executed retainers identifying Mr. Melancon and Mr. Sterbcow as counsel, including the number of clients who executed a revised retainer agreements that omitted the names of Mr. Melancon and Mr.

11

Sterbcow.

38.

Because the MDL Settlement Agreement contains an express exclusive jurisdiction clause for all matters arising from disputes involving MDL claims, Plaintiffs eventually dismissed the Florida state court action with Court approval and without prejudice and filed the present lawsuit on March 21, 2014. This Court stayed the case until only recently, when the Court set for oral argument and issued a ruling on the Defendants' Motion to Dismiss.

**FIRST LEGAL CLAIM: BREACH OF FIDUCIARY DUTY**

39.

Defendants breached the fiduciary duty owed to Plaintiffs under Louisiana law. Defendants conspired to and did devise of a scheme whereby they knowingly and purposefully manipulated the parties' joint clients to execute revised contingency fee agreements that omitted Plaintiffs' names under false and misleading pretenses, and all with the intent and purpose of Defendants taking financial advantage of Plaintiffs, and thereby retaining all attorney fees derived from the joint client BP MDL claims for the sole and exclusive benefit of Defendants, only. Defendants' breach of fiduciary duty caused economic damages to Plaintiffs in the amount of those attorneys' fees Plaintiffs have not been able to recover as co-counsel identified on well over 1,000 BP MDL joint clients, all of whom executed contingency fee contracts identifying Plaintiffs as co-counsel.

40.

Specifically, Defendant Downs Law Group breached its fiduciary duty to Plaintiffs when it disregarded its joint venture obligations with Plaintiffs by covertly, unilaterally, and without the consent or knowledge of Plaintiffs, contacted the parties' joint clients with the intent to remove Plaintiffs as counsel of these clients, most of whom spoke Spanish, and directing these joint clients

to execute new contingency fee contracts removing Plaintiffs as co-counsel.

41.

Specifically, Defendant Mr. Friedman conspired to and directly participated in the breach of fiduciary duty to remove Plaintiffs names from the contingency fee agreements. The email communication dated October 22, 2013 clearly shows that Mr. Friedman devised the false and misleading cover story that misrepresented and concealed materials facts to the parties' joint clients. Upon information and belief, Mr. Friedman did also knowingly draft and direct the mailing of the correspondence and revised contingency fee agreements. Mr. Friedman's email specifically acknowledges that his false cover story was "self-serving," and thus designed to take advantage of Plaintiffs by eliminating their right to future attorneys' fees.

42.

Specifically, Defendant Mr. Downs, serving in his capacity as the principal managing partner and owner of Downs Law Group, conspired to and directly participated with Mr. Friedman in the breach of fiduciary duty to Plaintiffs. The email communication between Mr. Friedman and Mr. Downs shows that Mr. Downs authorized and approved the scheme and false cover story developed by Mr. Friedman. Mr. Downs further authorized the mailing of the false and misleading correspondence to the parties' joint clients and authorized the removal of Plaintiffs' names from the revised contingency fee agreements. Thus, Mr. Downs did knowingly and purposefully authorize the self-serving letter sent to the parties' joint clients, advising the joint clients that Plaintiffs were no longer co-counsel on their case and directing the clients to execute new contingency fee contracts that removed Plaintiffs as co-counsel.

43.

The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a

fiduciary duty, (2) a violation of that duty by the fiduciary, and (3) damages resulting from the violation of duty.

44.

Louisiana law provides that a joint venture is created when two or more attorneys jointly represent a client under a contingency fee agreement.

45.

Louisiana law further provides that, when attorneys undertake the joint representation of a mutual client under a contingency fee agreement, the attorneys share equally in the attorneys fees in the absence of a specific division of fees, and thus it is immaterial whether one attorney provides more labor or skill than the other.

46.

In the instant action, Downs Law Group, Mr. Downs, and Mr. Friedman could not solicit Louisiana clients, maintain an office presence for signing up Louisiana clients, or advance medical costs without co-counseling with Plaintiffs; therefore, Plaintiffs performed work under the contingency fee agreements, and are thus entitled to their rightful share of attorney fees in the form of economic damages against Defendants for this breach of fiduciary duty.

47.

A joint venture is governed by Louisiana's partnership law, and thus there exists a fiduciary duty between co-joint venturers imposing upon all the participants the obligation of loyalty to the joint concern and of the utmost good faith, fairness, and honesty in their dealings with each other with respect to matters pertaining to the enterprise.

48.

The fiduciary duty of a joint venturer provides that a partner may not conduct any activity

14

for himself that is contrary to his fiduciary duty and prejudicial to the partnership.

49.

A breach of the fiduciary duty requires the breaching partner to account to the partnership and his partners for the resulting profits.

50.

Each joint venturer must refrain from taking any advantage of another joint venturer by the slightest misrepresentation or concealment of material facts.

51.

Plaintiffs and Defendants entered into a joint venture by jointly representing mutual clients under contingency fee contracts with BP MDL claims clients.

52.

By entering into this joint venture, the parties owed each other a fiduciary duty that precluded any action designed to take advantage of the other through the slightest misrepresentation or concealment of material facts.

53.

Defendants breached their fiduciary duty to Plaintiffs by conspiring to covertly, unilaterally, and without the consent or knowledge of Plaintiffs, contact their joint BP MDL claims clients and misrepresent and conceal material facts concerning Plaintiffs' involvement as counsel, with the specific intent of taking financial advantage of Plaintiffs by keeping all attorney fees for the exclusive and sole benefit of Defendants.

54.

Defendants' breach of fiduciary duty allowed Defendants to receive all attorneys' fees from the BP MDL client claims, thus preventing Plaintiffs from recovering their fair share of attorneys'

fees as required by Louisiana joint venture law under the applicable contingency fee contracts.

55.

Defendants breached the fiduciary duty owed to Plaintiffs by knowingly inducing Plaintiffs to assist Defendants with the purpose of circumventing Louisiana's prohibitions against out-of-state attorney marketing and signing-up of Louisiana clients.

56.

Defendants breached the fiduciary duty owed to Plaintiffs by knowingly inducing Plaintiffs to assist Defendants with the purpose of circumventing Louisiana's prohibitions against out-of-state attorneys establishing an office or other systematic and continuous presence in this jurisdiction for the practice of law, and in order to sign up thousands of Louisiana residents in offices located in Baton Rouge and New Orleans.

57.

Defendants breached the fiduciary duty owed to Plaintiffs by knowingly inducing Plaintiffs to assist Defendants with the purpose of circumventing limitations on Florida attorneys from advancing medical costs for plaintiff clients, and in order to allow the joint clients to seek medical attention prior to submitting a claim for BP medical benefits.

58.

Whereas Plaintiffs were financially damaged by the Defendants' breach of fiduciary duty because they were prevented from representing the joint clients in the BP MDL, and thus never received any of the attorneys' fees owed to Plaintiffs under the contingency fee agreements for the parties' joint clients, Plaintiffs seek damages and equitable relief, along with attorney fees and costs, for the Defendants' breach of fiduciary duty.

## SECOND LEGAL CLAIM: UNFAIR TRADE PRACTICES

59.

The Louisiana Unfair Trade Practices Act, La. R.S. 51:1405, et seq. ("LUTPA"), prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce in Louisiana.

60.

LUTPA prohibits alleged conduct offending established public policy and which is immoral, unethical, oppressive, unscrupulous, or substantially injurious, including fraud, misrepresentation, and similar conduct, and not mere negligence.

61.

The statute provides that "any person who suffers any ascertainable loss of money or movable property . . . as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages." La. R.S. 51:1409(A).

62.

"Person" means a natural person, corporation, trust, partnership, incorporated or unincorporated association, and any other legal entity." La. R.S. 51:1402(8).

63.

Defendants have engaged in unfair competition with Plaintiffs by taking cases and clients jointly represented by all parties and transferring them to Defendants' law firm, Downs Law Group, thereby depriving Plaintiffs of the value and expected profits from these cases.

64.

Defendants abused their position of trust and access to the joint clients and documentation

in order to facilitate their unfair competition scheme.

65.

Defendants' actions, practices, and methods violate LUTPA.

66.

Further, both the law of fiduciary duty and LUTPA prohibit unscrupulous misrepresentations designed to take unfair advantage of another; therefore, an unscrupulous breach of fiduciary duty may also constitute a violation of LUTPA where the conduct involves any trade or commerce.

67.

For those reasons more fully stated above, Plaintiffs maintain that the Defendants' conspiracy and scheme to knowingly and purposefully manipulate the parties' joint clients to execute revised contingency fee agreements that omitted Plaintiffs' names under false and misleading pretenses, and with the intent and purpose of Defendants' taking unscrupulous financial advantage of Plaintiffs, and thereby retaining all attorney fees derived from the BP MDL for the sole and exclusive benefit of Defendants, only, not only constitutes a breach of fiduciary duty, but furthermore constitutes a violation of LUTPA.

68.

Specifically, Defendant Downs Law Group engaged in unfair competition with Plaintiffs when it disregarded its joint venture obligations with Plaintiffs by covertly, unilaterally, and without the consent or knowledge of Plaintiffs, contacted the parties' joint clients with the intent to remove Plaintiffs as counsel of these clients, most of whom spoke Spanish, and directing these joint clients to execute new contingency fee contracts removing Plaintiffs as co-counsel.

69.

Specifically, Defendant Mr. Friedman engaged in unfair competition with Plaintiffs when

he conspired to and directly participated in the breach of fiduciary duty to remove Plaintiffs names from the contingency fee agreements. The email communication dated October 22, 2013, clearly shows that Mr. Friedman devised the false and misleading cover story that misrepresented and concealed materials facts to the parties' joint clients. Upon information and belief, Mr. Friedman did also knowingly draft and direct the mailing of the correspondence and revised contingency fee agreements. Mr. Friedman's email specifically acknowledges that his false cover story was "self-serving," and thus designed to take advantage of Plaintiffs by eliminating their right to future attorneys' fees.

70.

Specifically, Defendant Mr. Downs, serving in his capacity as the principal managing partner and owner of Downs Law Group, engaged in unfair competition with Plaintiffs when he conspired to and directly participated with Mr. Friedman in the breach of fiduciary duty to Plaintiffs. The email communication between Mr. Friedman and Mr. Downs shows that Mr. Downs authorized and approved the scheme and false cover story developed by Mr. Friedman. Mr. Downs further authorized the mailing of the false and misleading correspondence to the parties' joint clients and authorized the removal of Plaintiffs' names from the revised contingency fee agreements. Thus, Mr. Downs did knowingly and purposefully authorize the self-serving letter sent to the parties' joint clients, advising the joint clients that Plaintiffs were no longer co-counsel on their case and directing the clients to execute new contingency fee contracts that removed Plaintiffs as co-counsel.

71.

Defendants' actions caused Plaintiffs' damages.

WHEREFORE, PLAINTIFFS PRAY for an order granting the right to conduct discovery

for the purpose of confirming, identifying, and producing the joint client contingency fee agreements, Defendants' respective letters to each joint client directing them to execute new contingency fee contracts, and the contracts with joint clients wherein Plaintiffs names were removed as well as for any and all joint client claim information.

PLAINTIFFS FURTHER PRAY that there be a judgment rendered herein in favor of Plaintiffs and against Defendants for damages, including legal interest from the date of judicial demand until paid, and all costs of these proceedings, as otherwise permitted under the law.

PLAINTIFFS FURTHER PRAY that there be a judgment rendered herein awarding Plaintiffs attorneys' fees and treble damages against Defendants as otherwise permitted under any contract and/or applicable laws.

Respectfully submitted,

| | |
|---|---|
| /s/ Craig M. Robinson | /s/ Alexis A. Butler |
| CRAIG M. ROBINSON (Bar No. 32934) | Alexis A. Butler (Bar No. 32376) |
| *Robinson Law Offices, LLC* | *The Whitaker Law Firm, APC* |
| 700 Camp Street | 201 St. Charles Avenue |
| New Orleans, Louisiana 70130 | Suite 2500 |
| T: (504) 458-5100 | New Orleans, LA 70170 |
| F: (504) 717-4627 | T: (504) 313-0168 |
| E: craig@rlolegal.com | E: lexybutler@whitakerlaw.net |

## CERTIFICATE OF SERVICE

I hereby certify that on this __31st__ day of March 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice of electronic filing to all parties of record and that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and in accordance with the procedures established in MDL 2179.

/s/ Craig M. Robinson
Craig M. Robinson