UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | OIL SPILL BY THE OIL RIG | * | MDL NO. 2179 |
| | "DEEPWATER HORIZON" IN | * | SECTION: J |
| | THE GULF OF MEXICO ON | * | |
| | APRIL 20, 2010 | * | |
| | | * | Judge Barbier |
| Relates to: | 2:14-cv-657 | * | Mag. Judge Currault |
| | Melancon │ Rimes, LLC et al. | * | |
| | v. Downs Law Group, LLC, et al. | * | |

**********************************************

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO AMEND
THE APRIL 1, 2022, ORDER ON DEFENDANTS' MOTION TO DISMISS**

MAY IT PLEASE THE COURT:

Plaintiffs in the above-captioned litigation, Melancon │ Rimes, LLC, Jason L. Melancon, Sterbcow Law Group, LLC, and Marx D. Sterbcow, (collectively "Plaintiffs") respectfully submit this Memorandum in Support of their Motion to Amend the April 1, 2022, Order on the Motion to Dismiss filed by Defendants Downs Law Group, P.A. and Craig T. Downs.[1]

### I.      SUMMARY OF ARGUMENT

The Court's April 1, 2022, order on the Defendants' Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss (the "Order") should be amended pursuant to Federal Rule of Civil Procedure 54(b) to permit Plaintiffs to pursue their claims of breach of fiduciary duty and violation of the Louisiana Unfair Trade Practices Act ("LUTPA") because the Court's Order contains the following manifest errors of fact and law.

First, the Court's reliance on *In the Matter of P&E Boat Rentals, Inc. v. Martzell, Thomas & Bickford*, 928 F.2d 622 (5th Cir. 1991), to dismiss Plaintiffs' claims and order the calculation of damages based upon *quantum meruit* was legal error. *P & E Boat Rentals* is outdated and based

---

[1] Former Defendant Jeremy Friedman also originally filed this Motion but has since been dismissed from this case for lack of personal jurisdiction.

upon a superseded Louisiana Rule of Professional Conduct and superseded Louisiana case law. The Louisiana Supreme Court subsequently ruled that attorney fee disputes arising out of joint venture agreements between two law firms are not subject to Rule 1.5 of the Louisiana Rules of Professional Conduct, nor properly resolved by *quantum meruit*, but rather are governed by the terms of the agreement, oral or written, between the two law firms.

Second, the Court's Order erroneously finds that Plaintiffs are limited to pursuing remedies under *quantum meruit*, only, which is foreclosed by the Plaintiffs' properly alleged legal claims for breach of fiduciary duty and violation of LUTPA arising from Defendants' breach of the parties' joint venture agreement.  Accordingly, Plaintiffs are legally entitled to pursue the remedies prayed for in their complaint, not the remedy of *quantum meruit*.

Third, the Court committed manifest legal and factual errors by soliciting and relying upon statements of counsel and facts outside the First Amended Complaint in issuing its Order on Rule 12(b)(6).

## II.        FACTUAL BACKGROUND

This case arises from an oral joint venture agreement between independent law firms to jointly represent clients in the BP Oil Spill MDL, and the subsequent breach of this agreement by the Defendants' unilateral and surreptitious removal of Plaintiffs as counsel of record for the joint clients, in breach of Defendants' fiduciary duty to Plaintiffs and in violation of LUTPA.  A summary of relevant facts follows.

In August 2012, Downs Law Group, P.A., a Florida law firm, contacted Sterbcow Law Group, a Louisiana law firm, to act as local counsel and provide legal assistance with certain client cases related to the BP oil spill MDL before this Court. The requested assistance included filing an objection to the proposed BP Medical Benefits Class Action Settlement.  (R. Doc. 27307 at pp.

5-6).  Downs Law Group and Sterbcow Law Group then requested the additional assistance of Melancon | Rimes, LLC, another Louisiana law firm.  It is undisputed that the three law firms agreed in writing, in the Attorney Participation Agreement, that Melancon | Rimes, LLC and Sterbcow Law Group would receive ten percent (10%) of all attorney fees derived from this work. *Id*.; (R. Doc. 1-3, Case No. 14-657).  Plaintiffs proceeded with the work under the written agreement with Defendants.

On November 8, 2012, the Court conducted the Fairness Hearing on the BP Medical Benefits Class Action Settlement.  (R. Doc. 27307 at p. 6).  Plaintiff Jason L. Melancon, Esq. of Melancon | Rimes, LLC, presented the objections on behalf of the parties' clients before the Court. The Court ultimately overruled the objections and approved the MDL Settlement Agreement.  *Id*.

Immediately after the Fairness Hearing, Downs, Melancon, and Sterbcow discussed, in person, the impact of the Court's decision and orally agreed to continue working together on BP MDL claims.  *Id*.  The parties specifically agreed that Plaintiffs would continue serving as co-counsel and assisting Defendants as local counsel, which joint venture was necessary in order for the Defendants, a Florida law firm and Florida attorney, to market, solicit, and advance medical costs in Louisiana to Louisiana clients of the parties.  *Id*.  Plaintiffs and Defendants agreed and understood that the fee-sharing terms memorialized in the Attorney Participation Agreement would continue to apply to newly entered contingency fee agreements, specifically that Plaintiffs would be entitled to ten percent (10%) of attorney fees for new Louisiana clients.

After orally agreeing to continue working together on BP MDL claims post-Fairness Hearing, from approximately November 2012 to October 2013, the parties executed contingency fee agreements with new Louisiana clients at Plaintiffs' Baton Rouge and Harahan offices. Every contingency fee agreement identified Plaintiffs Melancon and Sterbcow as assisting joint counsel

for the clients. *Id.*; *see e.g.* (R. Doc. 1-5, Case No. 14-657).

During this time period, Melancon | Rimes provided its Baton Rouge office free of charge to facilitate signing up new clients from November 2012 through October 2013. (R. Doc. 27307, at p. 6). The parties likewise utilized Sterbcow Law Group's Harahan office for signing up clients and did so rent free from November 2012 through July 2013. In July 2013, Defendants proposed paying Sterbcow Law Group a nominal rental/hosting fee of $500.00 per month to host a Downs employee full-time. Defendants neither paid nor attempted to pay Sterbcow Law Group the $500 per month fee until the instant dispute arose in October 2013.

In addition to assisting with signing-up new Louisiana clients, Plaintiffs agreed to and did assist Defendants with marketing efforts, legal interpretation of the BP Medical Benefits Class Action Settlement, and legal strategy for filing valid claims for medical benefits under this Settlement. *Id.* at p. 8. After approximately 11 months of soliciting Louisiana clients and executing contingency fee agreements at Plaintiffs' offices, Plaintiffs learned that the parties had signed up 1,700 clients, all of whom executed the contingency fee retainer agreements identifying Melancon and Sterbcow as counsel assisting with the litigation. *See* (R. Doc. 1-8, Case No. 14-657). Because of the large number of clients, Melancon | Rimes asked Downs Law Group to confirm the number of mutual clients for legal malpractice insurance purposes; however, Downs Law Group only identified approximately 73 joint clients. *See* (R. Doc. 1-7, Case No. 14-657). Plaintiffs confronted Defendants regarding this discrepancy in the number of clients. (R. Doc. 27307 at p. 8).

After the confrontation, without any notice whatsoever to Plaintiffs, Downs Law Group sent a letter to all clients who previously executed a contingency fee retainer agreement containing the names of Melancon and Sterbcow as counsel. Defendants' letter misrepresented to the joint clients that Melancon and Sterbcow were no longer assisting the Downs Law Group with the

litigation and directed the clients to sign a new contingency fee agreements that removed the names of Melancon and Sterbcow. *Id*. at pp. 9-10.

Thereafter, Downs Law Group exclusively possessed the joint client records and proceeded to solely represent these clients in the MDL, despite Plaintiffs' efforts in continuing with the joint representation, including but not limited to filing a lawsuit in Florida state court and contacting the MDL claims administrator. Defendants have received or will receive a fund comprised of attorneys' fees for the representation of these clients in the BP MDL, of which Plaintiffs are entitled to a portion pursuant to the oral joint venture agreement between the parties to jointly represent these parties and share in the profits for this work. To date, Plaintiffs have received no compensation arising from the fund of attorney fees received by Defendants.

## III.    PROCEDURAL BACKGROUND

On December 21, 2021, upon instruction by the Court, Plaintiffs filed a First Amended Complaint, alleging the Defendants' breach of an oral joint venture agreement and legal claims of breach of fiduciary duty and violation of LUTPA.  (R. Doc. 27307).  In response, Defendants filed a Rule 12(b)(6) Motion to Dismiss, arguing relevant to the present Motion that Plaintiffs failed to state a claim for relief for breach of fiduciary duty and violation of LUTPA.[2]  The parties submitted additional briefing with regard to the Motion, and the Court conducted a hearing on the Motion on Friday, April 1, 2020.

During the oral argument on Defendants' Motion to Dismiss, the Court requested additional facts from the parties, facts not contained in the First Amended Complaint.  *See* Ex. A (Tr. of Hr'g, Apr. 1, 2022, pp. 30-48).  For example, the Court inquired as to whether Defendants conducted "a lot of national advertising" for soliciting the parties' joint clients, *id*. at 30:20-22,

---

[2] Defendants also raised personal jurisdiction challenges to the claims against individual defendants Jeremy Friedman and Craig T. Downs, which are not at issue in the present Motion.

whether Plaintiffs paid for advertising, expenses, or court costs, *id*. at 42:21-43:4, the number of hours of work expended by Plaintiffs on behalf of the joint clients, *id*. at 46:10-13, and the Defendants' reasons for removing the Plaintiffs' names from the contingency fee contracts of the joint clients, *id*. at 46:21-47:3.

The Court issued a ruling from the bench on the Motion to Dismiss. The Court concluded that there may be "some type of oral agreement" between the parties, but that "no written evidence" had been submitted to the Court "whatsoever." *Id*. at 48:12-16. The Court further concluded, referring to Rule 1.5 of the Louisiana Rules of Professional Conduct, that "[attorney] fees have to be reasonable, even if they are contingent fees. A lawyer is not entitled to a portion of a fee except as the fee is commensurate with the work and effort and time and expenses that the lawyer has put into the case." *Id*. at 48:23-49:2. The Court based this conclusion on the Fifth Circuit case *In the Matter of P & E Boat Rentals v. Martzell*, *Thomas & Bickford*, 928 F. 2d 662 (5th Cir. 1991). *Id*. at 49:3-7. Ultimately, the Court dismissed Plaintiffs' First Amended Complaint "except insofar as it may state a claim for unpaid rent and a quantum meruit fee," and referred the parties to Magistrate Currault to resolve these remaining matters. *Id*. at 50:1-6. The Court memorialized these rulings in a Minute Entry following the hearing.[3] (R. Doc. 27368).

## IV.   LAW & ANALYSIS

### A.  Standard of Review – Rule 54(b) Motion to Amend Court Order Granting Rule 12(b)(6) Motion to Dismiss

The Federal Rules of Civil Procedure do not recognize a motion for reconsideration *per se*. *See Kemp v. Belanger*, 2021 WL 5123734, at *2 (W.D. La. Nov. 3, 2021) (*citing Miller Pharmacy Servs., LLC v. AmerisourceBergen Drug Corp.*, 2021 WL 2627452, at *3 (W.D. La. 2021)).

---

[3] The Court also dismissed the claims against Defendant Jeremy Friedman for lack of personal jurisdiction, which is not at issue in Plaintiffs' Motion.

However, a motion challenging a judgment or order may be filed under Rules 54, 59, or 60.  *Id*. Rules 59 and 60 apply only to final judgments.  *Id*. Rule 54(b) provides that any order that adjudicates fewer than all the claims among all the parties may be revised at any time before the entry of a final judgment.  *Id*.  Here, the Court's Order adjudicated fewer than all claims, leaving claims of unpaid rent and *quantum meruit*, and thus, is to be reconsidered pursuant to Rule 54(b).

Under Rule 54(b), a district court has the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient. *Id*.; *Iturralde v. Shaw Grp., Inc.*, 512 Fed. App'x 430, 432 (5th Cir. 2013). Virtually all interlocutory orders may be altered or amended before final judgment if sufficient cause is shown. *Kemp*, 2021 WL 5123734 at *2 (*citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 n. 14 (U.S. 1983)).

Courts evaluate a motion to amend an interlocutory order under a less exacting standard than Rule 59(e), but, nevertheless, look to similar considerations for guidance.  *Id*.  In determining whether to grant the motion, the court evaluates whether there are manifest errors of law or fact upon which the judgment is based, whether new evidence is available, whether there is a need to prevent manifest injustice, or whether there has been an intervening change in controlling law. *Id*. (quoting *HBM Interests, LLC v. Chesapeake La., L.P.*, 2013 WL 3893989, at *1 (W.D. La. 2013)).

The underlying Order was issued pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) motions to dismiss "are viewed with disfavor and rarely granted."  *Bieller v. Atl. Specialty Ins. Co.*, 2016 WL 915424, at *1 (E.D. La. Mar. 10, 2016)(citing *Lowrey v. Tex. A&M Univ. Sys*., 117 F.3d 242, 247 (5th Cit. 1997)).  "When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party."  *Id*. (citing *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996)).  " 'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accept as true, to state a claim to relief

that is plausible on its face.' " *Id.* (quoting *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)).

This Court should reconsider and amend its interlocutory Order on Defendants' Rule 12(b)(6) Motion to Dismiss pursuant to Rule 54(b).  As demonstrated below, the Court committed manifest errors of law and fact during the hearing and in issuing the Order.

### B. The Court's Reliance on *P & E Boat Rentals, Inc. v. Martzell, Thomas & Bickford* & the Application of Rule 1.5 of the Louisiana Rules of Professional Conduct to Dismiss Plaintiffs' Claims Were in Error.

As noted above, the Court relied upon the case *P & E Boat Rentals, Inc. v. Martzel, Thomas & Bickford*, 928 F.2d 662 (5th Cir. 1991), to dismiss Plaintiffs' claims arising from the of breach of an alleged oral joint venture agreement. The Court ordered that, pursuant to Rule 1.5 of the Louisiana Rules of Professional Conduct, Plaintiffs' damages are instead to be determined by and limited to *quantum meruit*.  Critically, however, the portion of *P & E Boat Rentals* relied upon by the Court is based upon superseded rules of professional conduct, and Rule 1.5 does not apply to determine the allocation of the attorneys' fees earned pursuant to a joint venture agreement between independent law firms.  Accordingly, the Court committed manifest errors of law by relying upon *P & E Boat Rentals* and Rule 1.5 in its Order.

### 1. *P & E Boat Rentals,* Which Relied Upon a Superseded Rule of Professional Conduct, is Not Applicable to Plaintiffs' Claims, as Recognized by Another Section of this Court

The 1991 decision of *P & E Boat Rentals* involved a dispute between two attorneys over their respective shares of attorneys' fees awarded to a joint client and was decided based upon a superseded Louisiana Rule of Professional Conduct. Specifically, the Fifth Circuit relied upon Disciplinary Rule 2-107 (D.R. 2-107) in effect in 1983 when the parties' dispute arose.  928 F.2d at 664.  *P & E Boat Rentals* cited this rule as follows:

> Disciplinary Rule 2-107 (D.R. 2-107) prohibited a lawyer from dividing a legal fee with another lawyer who was neither his partner

nor associate unless:
(1) The client consents to employment of the other lawyer after a
full disclosure that a division of fees will be made.
(2) The division is made in proportion to the services performed and
responsibility assumed by each.
(3) The total fee of the lawyers does not clearly exceed reasonable
compensation for all legal services they rendered the clients.  *Id*.

As a result, the Fifth Circuit concluded: "Under this standard, fees may be divided only on a

*quantum meruit* basis," and proceeded to allocate the attorneys' fees between the attorney parties

on this basis.  *Id*. at 664-65.

Three decades after that version of D-R 2-107 went into effect in 1983, the parties in the

present case entered into the oral joint venture agreement in November 2012. The applicable Rule

1.5 now contains significantly different language that D-R 2-107.  Critically, Rule 1.5 no longer

requires that "[t]he division [of fees] is made in proportion to the services performed and

responsibility assumed by each [attorney]," as required by D-R 2-107, but rather only requires that

"each lawyer renders meaningful legal services for the client in the matter."  La. Rule Prof.

Conduct 1.5(e)(3).

The Court failed to acknowledge this distinction in the applicable Rules of Professional

Conduct in issuing its Order and instead committed legal error by assuming the rules remained the

same.  Specifically, the Court stated: "The Fifth Circuit held, they affirmed the District Court had

basically said, **relying on the then-current ethical rule, which is the same language in the**

**current rule.  They just changed the number of the rules**."  Ex. A. 44:17-21 (emphasis added).

The Court erred in declaring that the then-current ethical rule contained the same language as the

current rule.

Moreover, in *Tolliver v. Naor*, 2003 WL 21241837, at *7 (E.D. La. May 23, 2003), another

Section of this Court correctly identified that *P & E Boat Rentals* was "decided under the now

superseded rules of professional conduct," and concluded that "when attorneys enter into agreements regarding division of fees, the Code of Professional Responsibility does not prohibit enforcement of the agreement and does not require apportionment of the fees on a quantum meruit basis." *Id*. at * 7 (citing references).  Accordingly, in the very situation presented by the Plaintiffs – where attorneys enter into oral or written agreements to share attorneys' fees from joint clients – *quantum meruit* is not the correct basis for determining the allocation of attorneys' fees from the claims of joint clients.

Accordingly, the Court committed legal error in the Order by assuming the superseded professional rule is the same as the current rule and by relying on *P & E Boat Rentals*, which another Section of this Court in *Tolliver* acknowledged constituted outdated legal precedence.

> 2.   Under Louisiana Jurisprudence, Rule 1.5 Does Not Apply to Determine the Allocation of Attorneys' Fees Earned Pursuant to a Joint Venture Agreement

Even if the Court had relied upon the correct version of Rule 1.5 of the Louisiana Rules of Professional Conduct, the Court's Order is still manifestly erroneous because the Court failed to consider that Louisiana state court jurisprudence analyzing attorney fee disputes post *P & E Boat Rentals* has uniformly concluded that when attorneys from separate firms enter into contingency fee agreements to jointly represent clients, the Louisiana Rules of Professional Conduct do not prohibit the enforcement of these agreements and, furthermore, the apportionment of attorneys' fees on a *quantum meruit* basis is improper.  *See e.g. Raspanti v. Litchfield*, 2019-0523 (La. App. 4 Cir. 2/12/20); - - So. 2d - -; 2020 WL 710812, at *12-14; *Wootan & Saunders v. Diaz*, 2017-0820 (La. App. 4 Cir. 3/28/18); 317 So. 3d 390, 395; *Rice, Sternberg & Stutin, P.A. v. Cummings, Cummings & Dudenhefer*, 97-1651 (La. App. 4 Cir. 3/18/98); 716 So. 2d 8, 10-15; *Scurto v. Siegrist*, 598 So. 2d 507, 508-10 (La. App. 1 Cir. 1992), *writ denied*, 600 So. 2d 683 (La. 1992).

For example, in the 2018 decision of *Wootan & Sander v. Diaz*, 317 So.3d 390, the Louisiana Fourth Circuit Court of Appeal examined whether Rule 1.5(e) prohibited the enforcement of an attorney fee sharing agreement between two law firms under facts somewhat similar to the present case. The plaintiff law firm signed up the client, performed limited initial investigatory work, and thereafter recruited the defendant law firm to prosecute the litigation. The two law firms agreed to a 25/75 percentage sharing of attorney fees. The plaintiff law firm turned over its file materials to defendant law firm and stopped working on the litigation. The defendant law firm successfully tried and eventually settled the case.

After settlement, the defendant law firm refused to tender the agreed-upon share of attorney fees to the plaintiff law firm. The defendant law firm maintained that: (1) there existed a conflict of interest preventing plaintiff law firm from receiving any attorney fees under Rule 1.5(e), and (2) plaintiff law firm failed to perform its obligations under the attorney fee sharing agreement. The plaintiff law firm filed a lawsuit seeking to enforce the attorney fee sharing agreement and asserted that defendant law firm breach the agreement to share attorney fees.

The *Wooten* court, looking at current Louisiana law, concluded: "[I]n a situation where the parties have contracted to divide a fee, the Rules of Professional Conduct do not prohibit the enforcement of such an agreement and an apportionment of the fee on a *quantum meruit* basis is not required." *Id*. at 398 (citing authorities*)*. The court explained that an agreement to share attorney fees between two professional lawyers constitute a joint venture arising outside the Rules of Professional Conduct. *Id*. at 397 (*citing Dukes v. Matheny*, 02-0652 (La. App. 1 Cir. 2/23/04), 878 So.2d 517, 520).

Consequently, the *Wooten* court refused to examine the work performed by each professional attorney under *quantum meruit*, explaining: "[T]he agreement between the parties

was 'confected between two professionals and we will not assume the position of dictating to attorneys ... exactly how much work they need to perform to entitle them to a certain fee.' " *Id.* (citing authorities).  "[T]hey, as knowledgeable professionals, negotiated their division of work and the apportionment of their respective shares of the contingency fee...." *Id.* at 398.  On these grounds, the *Wooten* court enforced the agreed-up attorney fee sharing agreement between the two law firms.

In another recent case with similar facts to the present case, *Raspanti v. Litchfield*, 2020 WL 710812, the Louisiana Fourth Circuit of Appeals rejected the very legal grounds relied upon by this Court in restricting Plaintiffs' claims to *quantum meruit*.  Relying on settled Louisiana law, as set forth by the Louisiana Supreme Court, the *Raspanti* court confirmed that Rule 1.5(e) does not apply to disputes over the division of fees between two separate law firms, and thus, in this situation *quantum meruit* is not the proper measure of damages.

In *Raspanti,* two law firms engaged in oral attorney fee sharing agreements for the referral of cases. After a dispute arose, the plaintiff law firm filed a petition to dissolve the oral fee sharing agreement. The plaintiff thereafter filed a motion for summary judgment seeking to have the oral attorney fee agreement judicially dissolved on the basis that it was an illicit contract in violation of Rule 1.5(e) of the Rules of Professional Conduct.

The *Raspanti* court concluded: "In matters such as this, where an attorney associates, employs, or procures another attorney to assist in handling the case, the agreement regarding the division of legal fees is considered a joint venture, whereby the interest each attorney has under such a joint venture gives the parties the right to participate in the fund resulting from the payment of attorneys' fees from the client."  2020 WL 710812, at *6 (citing *Scurto*, 598 So. 2d at 509).

Because the "underlying suit" between the parties was one for "alleged breach of contract

arising out of a joint venture," *Raspanti* further concluded that "the Rule of Professional Conduct, particularly Rule 1.5(e), do not apply to the [fee agreement between the parties]." *Id*. at *7.  Like the *Wooten* court, *Raspanti* concluded that the fee agreement between the parties "was one 'confected between two professionals and we will not assume the position of dictating to attorneys...exactly how much work they need to perform to entitle them to a certain fee.'"  *Id*. (citing *Scurto*, 598 So. 2d at 510).  On these grounds, the *Raspanti* court refused to dissolve the oral joint venture agreement between the parties' two law firms.

This Court legally erred by relying on the outdated *P & E Boat Rentals* decision and by not relying upon recent jurisprudence holding that Louisiana Rule of Professional Conduct Rule 1.5 does not apply to a breach of contract action arising between two independent law firms to share in attorney fees. The determination of attorney fees is based upon the terms of the parties' oral or written agreement, not quantum meruit.  Contrary to established jurisprudence, the Court committed legal error by doing what the Louisiana Supreme Court prohibited in these cases: "assum[ing] the position of dictating to attorneys...exactly how much work they need to perform to entitle them to a certain fee."  *Raspanti, Wooten, supra*.  For these reasons, the Court's application of Rule 1.5 and the imposition of *quantum meruit* as the sole measure of damages constitute manifest legal error.

3.   Plaintiffs Have Properly Alleged an Oral Joint Venture Agreement
Between the Parties, Which Provides the Basis for Damages, Not
*Quantum Meruit*

In the present case, *quantum meruit* is not the proper remedy to resolve Plaintiffs' claims because there exists a contractual basis for Plaintiffs' claims against Defendants, specifically that the parties entered into an oral joint venture agreement to solicit, market, and execute contingency fee agreements with Louisiana clients at Plaintiffs' Louisiana offices.  The factual allegations

contained in Plaintiffs' First Amended Complaint demonstrate that a joint venture agreement was formed between the parties ("[W]here an attorney associates, employs, or procures another attorney to assist in handling [a] case, the agreement regarding the division of legal fees is considered a joint venture, whereby the interest each attorney has under such a joint venture gives the parties the right to participate in the fund resulting from the payment of attorney's fees from the client."). *Raspanti*, 2020 WL 710812, at \*12 (citing *Scurto*, 598 So. 2d at 509).

Plaintiffs have alleged the elements of a joint venture agreement between the parties in the First Amended Complaint, specifically that: "Plaintiffs and Defendants entered into a joint venture by jointly representing mutual clients under contingency fee contracts with BP MDL claims clients." *See* (R. Doc. 27307, at pp. 5-9, 14-150). Plaintiffs alleged that the Defendants initiated the relationship with Plaintiffs to serve as local counsel for filing objections to the MDL Settlement Agreement. *See id*. at pp. 5-6. The parties entered into a written agreement for this work, which provided that Plaintiffs would be entitled to ten percent (10%) of attorneys' fees with the possibility of additional work for additional fees. *See id*. Plaintiffs further alleged that following the hearing on the objections to the Settlement Agreement, the parties discussed continuing to work together to sign-up and represent clients in Louisiana utilizing Plaintiffs' Louisiana law offices. *See id*. at pp. 6-8. The parties moved forward with this work over the course of approximately 11 months, signing-up thousands of clients who executed contingency fee retainer agreements containing the names of both Plaintiffs and Defendants. *See id*. at 6-9. Plaintiffs would have continued to sign-up joint clients and move forward with further representation of these clients but for the Defendants' fraudulent actions of unilaterally and surreptitiously contacting the joint clients of the parties and requesting the clients to execute new retainer agreements that removed the names of Plaintiffs as counsel for these clients. *See id*. at pp. 9-11.

At oral argument on Defendants' Motion to Dismiss, counsel for Defendants acknowledged that Defendants retained Plaintiffs to act as local counsel to several joint clients under a written agreement, Ex. A at 29:23-30:1, 30:5-6; Defendants further admitted during the hearing that Plaintiffs "helped sign-up the clients" at Plaintiffs' offices in Louisiana, *id*. at 30:16-19, 31:3-4, 32:19-20; the original written agreement contained a provision allowing for Plaintiffs to do additional work for additional fees, *id.* at 32:6-10; and that the retainer agreements signed by the joint Louisiana clients did in fact contain the names of Plaintiffs as counsel. *Id*. at 47:9-16. Accordingly, based upon the allegations in the First Amended Complaint and Defendants' admissions at oral argument, there exists sufficient factual allegations to establish that the alleged oral joint venture agreement was created by the parties.

To the extent that the Court was skeptical that the joint venture agreement could have been formed orally, *see* Ex. A at 48:12-16,[4] Louisiana law allows for the formation of oral joint venture agreements, the elements of which are satisfied in the present case. For example, the *Raspanti* decision discussed *supra* specifically upheld an oral joint venture agreement entered into by two separate law firms to jointly represent clients. Pursuant to Louisiana Civil Code article 1846, an oral contract for an amount in excess of $500 requires only one witness and other, general corroborating circumstances. *Peter Vicari Gen. Contractor*, *Inc. v. St. Pierre*, 02-250 (La. App. 5 Cir. 10/16/02) 831 So.2d 296, 301 (*citing Gulf Container Repair Servs., Inc. v. FIC Bus. & Fin. Ctrs., Inc.*, 98–1144 at p. 6 (La. App. 5 Cir. 3/10/99), 735 So.2d 41, 43). Further, "written contracts may be modified by oral contracts and the conduct of parties." *Driver Pipeline Co., Inc. v.*

---

[4] "All right. I've heard enough. Okay. I conclude that whether there was some type of oral agreement between the Downs firm and the Melancon Rimes group, if there was an oral agreement – again, there is no written evidence of that that has been submitted to the Court whatsoever."

*Cadeville Gas Storage, LLC*, 49,375 (La. App. 2 Cir. 10/1/14); 150 So. 3d 492, 500, *writ denied* 2014-2304 (La. 1/23/15), 159 So. 3d 1052.

The undisputed factual allegations discussed above provide sufficient legal basis for the existence of an oral joint venture agreement between the parties. Plaintiffs Melancon and Sterbcow and Defendant Downs were witnesses to the creation of the oral agreement to continue to work together retaining and representing claimants in the BP MDL following the Fairness Hearing. This oral agreement was corroborated by the undisputed facts that: the parties had previously entered into a written agreement that provided Plaintiffs with ten percent (10%) of attorneys' fees for their work related to objections to the MDL Settlement Agreement with the possibility of additional work beyond the objections; the Plaintiffs allowed the Defendants to utilize Plaintiffs' Louisiana law licenses and Louisiana law offices over the course of 11 months to sign-up approximately 1,700 joint clients, with only nominal compensation requested for a few of the months of use of Sterbcow's office; and finally, 1,700 written retainer agreements were signed by the parties' joint clients, which identify Melancon and Sterbcow as additional counsel for these clients. Because Defendants are not licensed to practice in Louisiana, none of this work could have been done without entering into the agreement with Plaintiffs; and it defies logic that Plaintiffs would provide the 11 months of legal work and assistance without any expectation whatsoever of receiving compensation, other than $1,500 for unpaid rental/hosting fee to Sterbcow Law Group and $0.00 to Melancon | Rimes.

At the Rule 12(b)(6) stage of the proceedings, these undisputed facts are more than sufficient to allege and demonstrate the existence of an oral joint venture agreement. Accordingly, under established Louisiana law, the attorneys' fees arising from this oral joint venture agreement are to be determined based upon the terms of the agreement and are not subject to Rule 1.5 or

*quantum meruit*.

C. **Plaintiffs' Allegations in the First Amended Complaint Support Plaintiffs' Remedies for Breach of Fiduciary Duty and LUTPA, and thus,** *Quantum Meruit* **is Not the Sole Remedy Available to Plaintiffs**

The Court's Order that Plaintiffs are entitled to damages under *quantum meruit* constitutes legal error for the additional reason that *quantum meruit* only applies where there is no other legal remedy available.  Here, the Plaintiffs have properly alleged remedies arising from the Defendants' fiduciary breach of the joint venture agreement and violation of LUTPA, and thus, *quantum meruit* is not the sole remedy for Plaintiffs' claims.

1. Law on *Quantum Meruit*

*Quantum meruit*, known as unjust enrichment under Louisiana law, is based upon the equitable principle that a person who has been enriched without cause at the expense of another person is bound to compensate that person.  *Nave v. Gulf State Sers., LLC*, 2020 WL 4584294, at *1-2 (E.D. La. Aug. 10, 2020).  The five requirements for quantum meruit/unjust enrichment are: (1) enrichment, (2) impoverishment, (3) a connection between the enrichment and impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) the lack of another remedy at law.  *Id*.  Quantum meruit " 'is only applicable to fill a gap in the law where no express remedy is provided.' "  *Id*. (quoting *Westbrook v. Pike Elec., LLC*, 799 F. Supp. 2d 665, 672 (E.D. La. 2011)); *Threadgill v. City of New Orleans*, 2013 WL 5538701, at *5 (E.D. La. Oct. 7, 2013).  For example, "[w]hen the circumstances surrounding a relationship reveal that a contract or implied contract exists, the unjust enrichment...is not available because an adequate remedy at law exists."  *United Disaster Response, LLC v. Omni Pinnacle, LLC*, 569 F.Supp.2d 658, 665 (E.D. La. 2008).

2. Plaintiffs Have Sufficiently Alleged Breach of Fiduciary Duty, Precluding *Quantum Meruit*

At the hearing, the Court did not specifically address the Plaintiffs' claims for breach of fiduciary duty and dismissed these claims without any explanation other than that Plaintiffs may pursue claims for unpaid rent and *quantum meruit*. *See* Ex A.   Plaintiffs have properly alleged these claims in the First Amended Complaint and Defendants have not shown otherwise.

As addressed thoroughly above, Plaintiffs have properly alleged the formation of an oral joint venture agreement. *See supra* § IV.B.3.  The law is clear that the fiduciary duties of a party to a joint venture agreement include the duties of loyalty, good faith, fairness, and honesty, and prohibit a party "from taking advantage of another partner by the slightest misrepresentation or concealment of material facts." *Riddle v. Simmons*, 40,000 (La. App. 2 Cir. 2/16/06); 922 So. 2d 1267, 1281.

The First Amended Complaint clearly alleges that Defendants initiated the joint venture agreement with Plaintiffs to jointly represent clients in Louisiana, utilizing Plaintiffs' time, resources, professional skills, and offices to litigate on behalf of these clients and sign up numerous new clients in Louisiana.   Then, without any notice whatsoever to Plaintiffs, Defendants unilaterally contacted the joint clients to remove Plaintiffs as joint counsel and ultimately retained all attorneys' fees obtained from these joint clients.  *See* (R. Doc. 27307, at pp. 15-17).  These facts demonstrate Defendants' unfairness, dishonesty, misrepresentation, and concealment arising from the parties' joint venture agreement. Thus, under these facts, Plaintiffs have properly alleged a claim for breach of fiduciary duty under the standard for a Rule 12(b)(6) motion.

        3.    <u>Plaintiffs Have Sufficiently Alleged a Claim Under LUTPA, Precluding *Quantum Meruit*</u>

At the hearing, the Court did not specifically address the Plaintiffs' claims for violation of LUTPA and dismissed these claims without any explanation other than that Plaintiffs may pursue

claims for unpair rent and *quantum meruit.  See* Ex A.  Plaintiffs have properly alleged claims against Defendants under LUTPA for purposes of Rule 12(b)(6).

LUTPA prohibits any "unfair or deceptive acts or practices in the conduct of any trade or commerce," and grants a right of action to "[a]ny person who suffers an ascertainable loss" due to such acts or practices.  *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc*., 2009-1633 (La. 4/23/10); 35 So. 3d 1053, 1059 (quoting La. Rev. Stats. §§ 51:1405(A), 51:1409(A)).  LUTPA is violated when the acts or practices at issue " 'offend[] established public policy," and are "immoral, unethical, oppressive, unscrupulous, or substantially injurious.' "  *Id.* (quoting *Moore v. Goodyear Tire & Rubber Co.*, 364 So. 2d 630, 633 (La. App. 2 Cir. 1978)).

Plaintiffs' allegations in the First Amended Complaint satisfy the requirements for pleading a claim under LUTPA under the standards of Rule 12(b)(6).  Plaintiffs have alleged that the Defendants' actions in engaging in the joint venture agreement to utilize Plaintiffs' Louisiana law licenses and Louisiana law offices to sign-up and represent joint clients in Louisiana, and the Defendants' subsequent actions in unilaterally and surreptitiously removing Plaintiffs as counsel for these joint clients.  These actions constitute the very conduct proscribed by LUTPA statutory and jurisprudential case law.  Defendants' conduct was unfair, deceptive, unethical, and substantially injurious, as defined under LUTPA.  Further, Plaintiffs suffered the ascertainable loss of their share of joint profits in the form of attorneys' fees for these joint clients, the amount of which can be determined once the Court permits discovery on the compensation awarded to the 1,700 joint clients of the parties in the MDL.

Thus, the Defendants' actions in unilaterally and surreptitiously rescinding the client retainer agreements breached their fiduciary duty to Plaintiffs and constituted a violation of LUTPA, as alleged in the First Amended Complaint.  In summary, because Plaintiffs have

remedies to pursue for breach of fiduciary duty and under LUTPA, *quantum meruit* is not the proper remedy to resolve Plaintiffs' claims.

> **D. It was Manifest Error for the Court to Rely Upon Alleged Facts Outside of the First Amended Complaint, Including Attorney Statements at the Hearing, in Issuing the Order**

The standard of review for a Rule 12(b)(6) motion to dismiss for failure to state a claim for relief prohibits the Court's consideration of facts outside the allegations in the complaint, yet in issuing the Order, the Court elicited facts during the hearing from counsel and relied upon facts not contained in the First Amended Complaint. For these reasons, the Court committed manifest legal and factual errors in issuing the Order, which should be amended to allow Plaintiffs to pursue their remedies arising from the breach of the joint venture agreement entered into with the Defendants.

> 1. Trial Courts are Prohibited from Considering Evidence Outside of the Complaint in Resolving a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim for Relief

On a Rule 12(b)(6) motion to dismiss for failure to state a claim for relief, the district court's review is limited to considering whether the face of the complaint contains sufficient facts, accepted as true, to state a claim for relief that is plausible. *See Bieller*, 2016 WL 915424, at *1. Courts cannot consider evidence outside of the pleadings in the context of a motion to dismiss, other than documents incorporated into the complaint for reference and that are central to the plaintiff's claim.[5] *See id.* (citing *Scanlan*, 343 F.3d at 536); *Rubio v. Hyatt Corp.*, 2017 WL 5177943, at *2 (E.D. La. Nov. 8, 2017) (same). For example, courts are not to consider statements

---

[5] A district court, may however, in its discretion, treat a motion to dismiss as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and consider evidence outside of pleadings. *See Rubio,* 2017 WL 5177943, at *2 (citing Fed. R. Civ. P. 12(d)). If the district court exercises its discretion to do so, the district court must provide the plaintiffs a reasonable opportunity to present all the material that is pertinent to the motion. *In re Deepwater Horizon*, 761 F. App'x 311, 313 (5th Cir. 2019) (citing Fed. R. Civ. P. 12(d)). In the present case, while the Court solicited and relied upon evidence outside of the First Amended Complaint, no notice was provided to Plaintiffs that the Court was converting the Defendants' Motion to Dismiss to a motion for summary judgment pursuant to Rule 56.

of counsel in resolving a Rule 12(b)(6) motion. *See Hobson v. Prudhomme*, 2016 WL 5947301, at *2 (W.D. La. Oct. 13, 2016)

> 2. <u>The Court Improperly Concluded that No Evidence of the Oral Joint Venture Agreement was Provided, Yet the Allegations in the First Amended Complaint Support the Existence & Validity of this Agreement & Additional Evidence is Not Appropriate for Consideration on a Rule 12(b)(6) Motion</u>

In issuing the bench ruling on the Defendants' Motion to Dismiss, the Court stated: "All right. I've heard enough. Okay. I conclude that whether there was some type of oral agreement between the Downs firm and the Melancon Rimes group, if there was an oral agreement – again, there is no written evidence of that that has been submitted to the Court whatsoever." Ex. A at 48:12-16. This statement was inappropriate on a Rule 12(b)(6) motion because under the appliable standard of review the Plaintiffs are not required to submit neither evidence nor "written evidence" of an oral contract, but merely are required to provide allegations in the complaint to support the existence of the oral joint venture agreement. As addressed thoroughly herein, Plaintiffs have sufficiently alleged the existence of an oral joint venture agreement between the parties. *See supra* § IV.B.3. Further, Plaintiffs have already provided ample corroborating evidence to the Court of the oral agreement, including copies of the original, written fee sharing agreement between the parties, (R. Doc. 1-3, Case No. 14-657), exemplar copies of joint client retainer agreements containing the names of Plaintiffs Melancon and Sterbcow, (R. Docs. 1-5, 1-6, Case No. 14-657), and the list of 1,700 joint clients signed up by the parties. (R. Doc. 1-8, Case No. 14-657). No further evidence is necessary at the Rule 12(b)(6) stage in order to prove the existence of the oral joint venture agreement between the parties.

> 3. <u>The Court Improperly Sought & Relied Upon Statements from Counsel During Oral Argument in Issuing the Order</u>

The Court improperly solicited and relied upon statements from counsel during the oral

argument in formulating the Order, constituting manifest error.  *See e.g. Hobson*, 2016 WL 5947301, at *2 (concluding that a court is not to consider counsel's statements in the context of a Rule 12(b)(6) motion).  For example, the Court asked the following evidentiary questions to counsel during the hearing:

- "Your firm did or does a lot of national advertising, apparently, right, for these claims?" Ex. A at 30:20-21;

- "Is all the advertising done by your firm or did Melancon Rimes have any part of that?" *Id*. at 30:23-24;

- "You had one of your lawyers in their office basically signing up clients; is that right?" *Id*. at 32:24-25;

- "Let me ask you this: What part of the expenses that Downs incurred – I'm assuming they spent tens or hundreds of thousands, I don't know, maybe millions of dollars in advertising to obtain these cases. Did you client pay any of that?" *Id*. at 42:21-25;

- "Did you pay any other expenses? Did you pay any court costs?" *Id*. at 43:3-4;

- "[W]hat work did your clients do in this case to advance the clients' claims?" *Id*. at 43:9-10.

The Court essentially conducted a mini-bench trial, with the parties' attorneys answering substantive evidentiary questions, not the attorney-parties themselves.  It was improper to ask counsel to answer substantive evidentiary questions before the completion of discovery. While some discovery was conducted in the prior Florida state court litigation, that case was filed approximately ten years ago, undersigned counsel for Plaintiffs were not involved in that litigation, and discovery was never completed.  For example, there exists no deposition testimony of Marx Sterbcow of Sterbcow Law Group, Craig T. Downs, or Downs Law Group.  Furthermore, Defendants have not produced records of all joint clients retained by the parties, the status of these clients' claims, and the compensation awarded to these clients.  The Court's solicitation of and

reliance upon attorney statements on a Rule 12(b)(6) motion to dismiss are in error and provide

grounds for amending the Order.

> 4. <u>The Court Improperly Characterized the Defendants' Payment of Rent to Plaintiffs</u>

During the hearing, the Court mischaracterized undisputed facts regarding the invoicing

and payment of rent to Plaintiffs for Defendants' use of Plaintiffs' Louisiana offices to sign-up

joint clients of the parties.  Specifically, the Court erroneously concluded that Melancon | Rimes,

LLC invoiced Downs Law Group rents for the use of its offices:

> I think at best what we have here is Melancon Rimes, it is alleged
> that now that they admit that they did invoice for rent, that they were
> sent a check, and they have for some reason not negotiated that
> check, that's what was represented to the Court – was represented
> to the Court. Ex. A at 49:8-13.

At no time, however, did Melancon | Rimes, LLC ever invoice Downs Law Group for the

use of its Baton Rouge offices. Downs Law Group utilized the Baton Rouge offices of Melancon

| Rimes, LLC free of charge from November 2012 through October 2013, executing numerous

contingency fee agreements with Louisiana based clients.  Defendants do not dispute that rent was

never invoiced to them by Melancon | Rimes, nor that Defendants never paid rent to Melancon |

Rimes.  *See* (R. Doc. 27343-1, at p. 6) (noting that only Sterbcow requested rent for the use of

Sterbcow's office space).  To the extent that the Court relied upon these factual errors regarding

the invoicing and payment of rent, the Order contains a manifest error of fact.

> 5. <u>Defendants' Counsel's Statements Regarding "Scrivener's Error" in the Contingency Fee Agreements Should Not Have Been Considered in Issuing the Court's Order</u>

During the hearing, Defendants' counsel maintained that the inclusion of Plaintiffs' names

on thousands of joint client contingency fee agreements resulted from a mistake, or "scrivener's

error."  *See* Ex. A at 47:15-48:4.  Defendants' counsel stated that "essentially, it was a scrivener's

error that the Downs Law Group did not correct and amend their retainer agreements" to remove the names of Plaintiffs. *Id*. at 48:2-4. To the extent that the Court relied upon this "scrivener's error" defense from Defendants in issuing the Order, the Court committed manifest error in relying upon statements of counsel at the hearing rather than the allegations contained on the face of the Plaintiffs' First Amended Complaint. *See e.g. Hobson*, 2016 WL 5947301, at *2 (concluding that a court is not to consider counsel's statements in the context of a Rule 12(b)(6) motion).

Even if it were proper for the Court to consider Defendants' counsel's statements regarding the purported "scrivener's error" in the retainer agreements, Defendants have no legal basis to unilaterally rescind these agreements and retain all of the resulting attorneys' fees. Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. *Peironnet v. Matador Res. Co*., 2012-2292 (La. 6/28/13), 144 So. 3d 791, 806 (quoting La. Civ. Code art. 1983). When there is unilateral error in the contract, "courts may rescind the contract, but recission is not available when the error is the result of the complaining party's own inexcusable error." *Id*. at 824-25. The failure to read a contract before signing it constitutes inexcusable error. *Id*. at 810. Even if the error was excusable and Defendants obtained recission of the contracts, Defendants would still be liable to Plaintiffs for the loss sustained as a result of the recission because Plaintiffs did not know nor should have known of the purported error in the contracts. *See* La. Civil Code art. 1952.

Plaintiffs never consented to dissolving the joint client retainer agreements. Defendants had no legal basis to unilaterally rescind these agreements because any purported error in including Plaintiffs' names in the agreements constitutes inexcusable error. At the hearing, Defendants' counsel claimed that Defendants failed to realize that Plaintiffs' names were included on the agreements. *See* Ex. A at 47:15-48:4. The law is clear the failure to read a contract before

24

executing it constitutes inexcusable error for which recission is not available.  This is particularly

the case since Defendants drafted the joint client retainer agreements containing Plaintiffs' names.

Furthermore, Defendants' counsel's claim of "scrivener's error" is specious at best

considering the undisputed facts in this case.  There is no dispute that Defendants, as a Florida

attorney and Florida law firm without licenses to practice in Louisiana, would have been barred

from soliciting, retaining, representing, and advancing medical costs to clients in Louisiana at

Louisiana law offices, but for the joint venture agreement with Plaintiffs, who are Louisiana

licensed attorneys with Louisiana law offices.  Therefore, Defendants' inclusion of Plaintiffs'

names on the joint client contingency fee agreements was done intentionally; otherwise,

Defendants would have been in violation of restrictions regarding the solicitation of Louisiana

clients under Louisiana law and illegal payment of advanced medical expenses under Florida laws,

respectively.  To allow Defendants to take advantage of Plaintiffs' Louisiana law licenses and

Louisiana law offices to sign-up 1,700 joint clients of the parties and then unilaterally and

surreptitiously remove the names of Plaintiffs from the joint clients and receive all attorneys' fees

for these clients allows Defendants to circumvent professional and legal rules.

### V.      CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that, pursuant to Federal Rule of

Civil Procedure 54(b), the Court reconsider and amend the April 1, 2022, Order on the Defendants'

Motion to Dismiss and allow Plaintiffs to proceed with their claims for breach of fiduciary duty

and pursuant to the Louisiana Unfair Trade Practices Act.

Respectfully submitted,


s/ Craig M. Robinson_____
CRAIG M. ROBINSON (Bar No. 32934)
*Robinson Law Offices, LLC*
700 Camp Street
New Orleans, Louisiana 70130
T: (504) 458-5100
F: (504) 717-4627
E: craig@rlolegal.com

/s/ Alexis A. Butler_____
Alexis A. Butler (Bar No. 32376)
*The Whitaker Law Firm, APC*
201 St. Charles Avenue
Suite 2500
New Orleans, LA 70170
T: (504) 313-0168
E: lexybutler@whitakerlaw.net


## CERTIFICATE OF SERVICE

I hereby certify that on this __11th__ day of April 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice of electronic filing to all parties of record and that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and in accordance with the procedures established in MDL 2179.


/s/ Craig M. Robinson_____
Craig M. Robinson