UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | ) ) ) ) ) | MDL NO: 2179 SECTION: J |
| Relates to: | 2:14-cv-657 Melancon \| Rimes, LLC et. al. v. Downs Law Group, et. al. | ) ) ) ) | Judge Barbier Mag. Judge Currault |

## DEFENDANTS' JOINT MEMORANDUM IN SUPPORT OF ITS JOINT MOTION FOR ATTORNEYS' FEES AND COSTS

**COMES NOW,** Defendants, Downs Law Group, P.A., Craig T. Downs, and Jeremy D. Friedman (collectively, "Defendants"), hereby file their Joint Memorandum of Law in Support of their Motion for Attorneys' Fees and Costs from Plaintiffs Melancon | Rimes, LLC ("Melancon") and Sterbcow Law Group, LLC ("Sterbcow") (collectively, "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 54(d), the Local Rules for the Eastern District of Louisiana 54.1 and 54.2, and the Court's April 4, 2022 Order [Rec. Doc. 27368], and in support, state as follows:

### INTRODUCTION

This is a case in which Plaintiffs allege that Plaintiffs and Defendants agreed to jointly represent certain clients related to an oil spill in the above-referenced matter and that Defendants, among other things, allegedly violated the Louisiana's Unfair Trade Practices and Consumer Protection Law ("LUTPA"). On April 4, 2022, this Court entered its order granting the Defendants' Motion to Dismiss, with prejudice, the Plaintiff's Second Legal Claim, Unfair Trade Practices. [Rec. Doc. 27368]. These claims brought by Plaintiffs were groundless and brought in bad faith and/or were otherwise raised for purposes of harassment. Accordingly, the Court should grant this instant Motion and award Defendants reasonable attorneys' fees and costs related

1

thereto.

## MATERIAL FACTS

On December 27, 2013, the Plaintiffs filed an action in the state court in Miami-Dade County, Florida, which was entitled *Sterbcow Law Group, LLC et al. v. The Downs Law Group, P.A.* (the "Florida State Case"), and claimed that the parties entered into a written participation agreement such that Plaintiffs were allegedly entitled to recover ten percent (10%) of the "net recovery from the BP litigation settlement funds for work performed as to all clients subsequent to the objection and the appeal" (the "Attorneys Participation Agreement"). [Rec. Doc. 27343-1 at 1–2; Rec. Doc. 27343-2 at 1 ¶ 2]. They claimed that, pursuant to this agreement, the parties agreed that Plaintiffs would serve as co-counsel to all of Defendants' BP clients throughout the states of Florida, Louisiana, and any other state in which Defendants were engaged in such legal representation.

Defendants argued that the clear language of the agreement contradicts what Plaintiffs were contending. Namely, that the agreement was limited only to those "certain clients" that filed an objection to the class action settlement with the court, and that the fees due would relate solely to any recovery related to such an objection. Defendants further argued that there was never any agreement to expand the services to be provided by Plaintiffs beyond the objection, that Plaintiffs never executed any of the retainer agreements, and that the clients never agreed to have Plaintiffs provide additional legal representation beyond the objections. Finally, and most important, Defendants argued that Plaintiffs performed no legal services for the clients subsequent to the objections that would entitle them to recover a fee.

After a hearing where the court in Miami-Dade County questioned Plaintiffs on the fact that the agreement's language clearly was limited only to certain clients that filed an objection,

and further after Plaintiffs admitted through discovery that they neither executed any of the retainer agreements nor did the clients agree to have them represent them beyond the objections, and after it was demonstrated that Plaintiffs performed no services for the clients that would entitle them to recover attorneys' fees, Plaintiffs dismissed without prejudice their claims in the Florida State Case proceedings. Plaintiffs claimed at that time that this Court "instructed" them to dismiss the claims in the Florida State Case and re-file them in the Eastern District of Louisiana.[1] [Rec. Doc. 12555].

On March 24, 2014, Plaintiffs filed in this Court their Complaint to Conduct Discovery, For Damages, and for Other Equitable Relief. In the Complaint they allege that this Court "directed" them to file this separate action. [Rec. Doc. 3, Case 2:14-cv-00657, ¶ 2]. In a single Count, Plaintiffs alleged both a "Breach of Joint Venture and Fiduciary Duty" and "Unfair Trade Practices and Fraud."

In the original Complaint in these proceedings Plaintiffs claimed that the Attorneys' Participation Agreement signed by the parties governed their relationship. They alleged that the Agreement "outlined the roles performed by (The Plaintiffs) and provided (The Plaintiffs) with 10% of any recovery obtained from the medical benefits claims process." [Rec. Doc. 3, Case 2:14-cv-00657, ¶ 29]. They then claimed that the agreement related solely to 1,000 mutual *Louisiana citizen* clients only, a claim that contradicted their Florida complaint whereby they said the parties agreed that "all" clients in all states were covered by the agreement.

Plaintiffs further argued that the Attorneys Participation Agreement itself was the "joint

---

[1] Plaintiffs attached to their notice of voluntary dismissal this Court's order dated March 20, 2014, whereby this Court declined to intervene in the fee dispute pending in Miami-Dade County, Florida. The Court stated that Plaintiffs were able to dismiss the Florida suit on their own initiative and did not need this Court's assistance to do so and could file a separate action if they sought further relief. Contrary to the Court's order, Plaintiffs claimed that this Court "instructed" them to re-file in this Court.

venture agreement" that the parties executed regarding these clients.[2]  They argued that Defendants "fraudulently induced" Plaintiffs into assisting Defendants to secure Louisiana residents as clients "with full knowledge that they never intended to share in attorneys' fees derived from all mutual Louisiana residents."  [Rec. Doc. 3, Case 2:14-cv-00657, ¶ 43].

Plaintiffs additionally alleged that the Downs Law Group violated laws governing unfair trade practices and fraud by contacting each mutual client with the express purpose of having mutual clients execute a new contingency fee agreement.  They claim that these actions were done to interfere with Plaintiffs' contractual relationship with their mutual clients.  Plaintiffs sought statutory and punitive damages, along with attorneys' fees and costs, for the unfair trade practices of interfering with Plaintiffs' "contractual rights."  Plaintiffs sought these damages pursuant to both "Florida and Louisiana state laws governing unfair trade practices and fraudulent practices." [Rec. Doc. 3, Case 2:14-cv-00657, ¶ 45].

Thereafter, and for a period of almost eight (8) years, between March 24, 2014 and December 21, 2021, Plaintiffs took almost no actions in regards to their lawsuit.  In addition, Plaintiffs performed no legal services on behalf of any of Downs' clients during this time period.  On November 23, 2021, this Court held a status conference involving this matter.  At the status conference the Court gave Plaintiffs' the opportunity to amend their Complaint to state a cause of action.

On December 21, 2021, Plaintiffs filed their First Amended Complaint before this Court. [Rec. Doc. 27307].  Plaintiffs alleged, in contradiction to their allegations in the state court proceedings and their original Complaint herein, that after the work was completed pursuant to the

---

[2] Plaintiffs attached the Attorneys Participation Agreement to their Complaint in support of their contention that this document created a joint venture agreement between the parties.

4

Attorneys Participation Agreement, the parties instead entered into a *new* and *separate* oral joint venture agreement for the representation of clients in the state of Louisiana in these matters. They allege the parties agreed, as part of this joint venture agreement, that Defendants could use Plaintiffs' offices to sign up their joint clients.

> Plaintiffs further alleged the following:
>
> …and Plaintiffs thereafter provided their New Orleans and Baton Rouge offices at *no cost* to Downs Law Group for purposes of meeting with potential Louisiana clients.
>
> …
>
> Though Downs Law Group claims to have sent an unsolicited check for "rent" after the instant dispute arose, which Mr. Sterbcow and SLG never negotiated, *Plaintiffs never invoiced, charged or otherwise billed Downs Law Group* for use of the Plaintiffs' Baton Rouge and New Orleans office spaces in light of their anticipated joint sharing of attorneys fees under the contingency fee agreements with joint clients.

[Rec. Doc. 27307, ¶ 24, 25].

Plaintiffs alleged two claims, Breach of Fiduciary Duty and Violation of the Louisiana Unfair Trade Practices Act, La, R.S. 51:1405. They claim that the "unfair trade practice" occurred when Defendants removed Plaintiffs' names from the contingency fee contracts. They alleged that this action breached a fiduciary duty between the parties and that as a result of the removal of their names from the contingency fee agreements they suffered damages. Notably missing from the complaint was any description of any of the actual terms of the oral "joint venture agreement" including a lack of any pleading regarding the distribution of work, the fee distribution, or the payment of costs. Plaintiff further failed to describe any legal work they performed subsequent to entering into the alleged joint venture agreement other than claiming that they assisted in signing up the clients in their offices, which they provided "rent free" to Defendants due to the existence of the joint venture agreement.

5

Defendants thereafter filed a Motion to Dismiss Plaintiff's claims pursuant to Rule 12(b)(2) and 12(b)(6). Plaintiffs filed a Memorandum in Opposition to Defendants' Motion to Dismiss. [Rec. Doc. 27355]. In their response, Plaintiffs again stated the following:

> The Joint Venture Agreement subject of this lawsuit *is separate and distinct from*, and arose after, Plaintiffs served as co-counsel for certain BP Medical Benefit objectors.
>
> …
>
> Although the Attorney Participation Agreement ("APA") identified by the Defendants (see R. Doc. 27343-2) *only pertained to the filing of objections and appearance at the Fairness Hearing*, Defendants have denied even the validity of the APA.
>
> …
>
> *Because the APA only pertained to actions taken by Plaintiffs prior to the Fairness Hearing*, the agreement does not mention Plaintiffs' providing local office space to Defendants to sign up new clients.

Plaintiffs then state the following:

> Contrary to Defendants' assertions, the Plaintiffs *neither requested nor required payment of any rent for the use of their offices*, nor will there be any evidence of rent actually paid. Setting up their defense, Downs Law Group sent a single unsolicited check for "rent" after the instant dispute arose, which Mr. Sterbcow and SLG never negotiated or cashed. Moreover, *Plaintiffs never invoiced, charged or otherwise billed Downs Law Group for the use of the Plaintiffs' Baton Rouge and New Orleans offices* in light of their Joint Venture Agreement to share attorney fees from joint Louisiana clients. *The use of Plaintiffs' offices was always part of the joint co-counseling agreement.*

Plaintiffs, again, in contradiction to what they alleged occurred in the state court proceedings and their initial Complaint, claimed that the Attorney Participation Agreement was a separate agreement from the Joint Venture agreement and that it ended once the objections were concluded.

Plaintiffs further claimed that there was never an agreement for Defendants to pay any rent for the use of the office space nor did they ever invoice Defendants for doing so. Rather, the use of their offices was part of the joint venture agreement between the parties. Finally, and most

6

egregiously, Plaintiffs contended that Defendant engaged in a scheme to unilaterally claim rent was owed for the use of the space, without any invoice from Plaintiffs, in order to later disclaim the existence of the joint venture agreement which included free use of Plaintiffs' offices in furtherance of the agreement.

On March 28, 2022, Defendants filed a Notice of Filing of Additional Support of Defendants' Joint Motion to Dismiss. [Rec. Doc. 27361]. Attached to this Notice of Filing were documents evidencing Plaintiff's request of payment from the Downs Law Group of $800 per month for using their offices. They further included correspondence confirming that the parties agreed to $500 per month for use of the space. They further included correspondence from Plaintiffs on October 18, 2013 where Plaintiffs stated the following:

> we have sent three invoices dating back to August 25th. All of those invoices are open and have not been paid. So no you owe all the way back to July 15th when Amled first started using the office for more then 70 hours a week. Please see attached invoices.

Defendant further attached invoices received from Plaintiffs showing charges by Plaintiffs for use of offices during the relevant time period.

These documents demonstrated that Plaintiffs lied in both their Amended Complaint and their Response in Opposition to the Motion to Dismiss about the non-payment of rent, lied about the lack of any invoices to pay rent, and lied about the Downs Law Group, P.A. "scheme" to pay rent, unsolicited, to avoid the application of the joint venture agreement. Most importantly, these documents demonstrate that the Plaintiffs' claim that use of their offices for free *as part of the terms of a joint venture agreement* was a fabrication.

On April 1, 2022, this Court held a hearing as to Defendant's Motion to Dismiss. Plaintiffs additionally requested that this Court permit them to file a Sur-Reply to the Motion to Dismiss and further permit them to amend their pleadings once again in light of the evidence regarding the

7

rents, which demonstrated that they made false statements in these proceedings. They wanted to change their allegations about rent charged to Defendants and whether one of the terms of the joint venture agreement was the use of Plaintiffs' offices for free. The Court denied their Motion to Amend the Complaint.

At the hearing, counsel for Plaintiffs claimed that the joint venture agreement was separate and apart from the Attorneys Participation Agreement. Upon being asked what Plaintiffs' claimed the fee split was between the parties as part of the Joint Venture Agreement, counsel for Plaintiffs stated the following:

> The Court: Then you wanted ten percent of everything still. What do you want now? It sounds like you want half of all their fees.
>
> Mr. Robinson: I think the joint venture agreements that were confected in these individual attorney-fee, contingency agreements was set out one-third, one-third, one-third arrangements, just based upon—
>
> The Court: One-third, one-third, who does the third third belong to?
>
> Mr. Robinson: So, a third to Downs Law Group, a third to Melancon Rimes, and third to Sterbcow Law Group.
>
> The Court: So, your client would be getting two-thirds of the fee, two-thirds of the fee of every fee that Downs Law Firm made in this whole case?
>
> Mr. Robinson: Under the partnership agreement, you know, and under the joint venture agreement, that's how ---

[Ct. Transcript, April 1, 2022 Hearing, 41:1–16].

The Court additionally asked Plaintiffs' counsel as to what costs were expended by Plaintiffs in support of the joint venture agreement, i.e., such as marketing costs. Plaintiffs' counsel responded as follows:

> The Court: Let me ask you this: What part of the expenses that Downs incurred – I'm assuming they spent tens or hundreds of thousands, I don't know, maybe millions of dollars in advertising to obtain these cases. Did your client pay any of that?

8

>Mr. Robinson:  I don't believe we paid any – any promotional—
>
>The Court:  Did you pay any other expenses? Did you pay any court costs?
>
>Mr. Robinson:  No, Your honor, but we did –

[Ct. Transcript, April 1, 2022 Hearing, 42:21–43:5].  The Court subsequently entered an order dismissing the claims involving breach of fiduciary duty and unfair trade practices with prejudice.

Subsequently, and in yet another incredible reversal of alleged facts, Plaintiffs filed a Motion to Amend the April 1, 20220 Order on Defendants' Motion to Dismiss and Memorandum related thereto.  [Rec. Doc. 27372-1].  In this new Motion and Memorandum, Plaintiffs make the following false statement as to the findings by this Court at the April 5, 2022:

>The Court concluded that there may be "some type of oral agreement" between the parties, but that "no written evidence" had been submitted to the Court "whatsoever"

[Rec. Doc. 27372-1, P. 6].  This is yet another direct misrepresentation to this Court by Plaintiffs and their counsel.  At no time did this Court conclude at the April 1, 2022 Hearing that there may be "some type of oral agreement" between the parties.  Rather, the Court actually stated the following:

>All right. I've heard enough.  Okay.  I conclude that *whether* there was some type of oral agreement between the Downs firm and the Melancon Rimes group, *if* there was an oral agreement -- again, *there is no written evidence of* that that has been submitted to the Court whatsoever.

[Ct. Transcript, April 1, 2022 Hearing, 48:12–22].  Plaintiffs have again misrepresented what this Court has found, having previously misstated that this Court "instructed" them to file the original Complaint and Amended Complaint herein.  The Court did not at any time make a finding of the existence of an oral joint venture agreement between the parties.  Rather, the Court stated that if one existed, there is no written evidence of it that it was aware.

9

In addition, Plaintiffs, as part of their Motion to Amend the Order, backtrack from their currently factual allegations that the parties agreed to a separate oral joint venture agreement subsequent to the Attorneys Participation Agreement ending and further backtrack from their current factual allegations that the parties agreed to a *three-way* split of the attorneys' fees.

Rather, their new story reverts back to the original Florida State Case proceeding allegations concerning the Attorneys Participation Agreement. Now, rather than an agreement to split the fees three ways as stated by Plaintiff's counsel at the hearing on April 1, 2022, Plaintiffs allege that what actually occurred was as follows:

> Plaintiffs and Defendants agreed and understood that the fee-sharing terms memorialized in the Attorney Participation Agreement would continue to apply to newly entered contingency fee agreements, specifically, that the Plaintiffs would be entitled to ten percent (10%) of attorney fees for new Louisiana clients.

[Rec. Doc. 27372-1, P. 3].

After Plaintiffs' counsel at the April 1, 2022 Hearing stated to the Court that the parties agreed to a *three-way split* of the fees, Plaintiffs subsequent file a new Motion that the agreement was part of the Attorneys Participation Agreement which entitles the Plaintiffs to *10%* of the fees. Clearly Plaintiffs recognized that the new story that they came up with in this Court for a *three way* split of the fees was ridiculous in light of the lack of any legal services performed by Plaintiffs. As a result, they have decided to re-write history, again, and revert back to the original ten percent (10%), which they alleged in the state court action.

As such, Plaintiffs have changed their story on numerous occasions as to the existence of a separate and subsequent joint venture agreement from the Attorneys Participation Agreement and the agreement as to the fee split related thereto. They lied about a term of their alleged oral joint venture agreement being the use of Plaintiffs' offices for free, lied about never discussing terms of rent, lied about never charging rent, and lied about never invoicing the Downs Law Group,

10

for rent. They further failed to allege any terms of the joint venture agreement as to the obligations of each party to pay costs and thereafter stated in open court that Plaintiffs never paid any costs. They further were unable to state any legal work performed on behalf of the clients other than assisting with signing up the clients and consulting with the Downs Law Group, P.A. as to marketing.

Ultimately, the Court determined, under Louisiana Law and the Code of Professional Responsibility, that "fees have to be reasonable, even if they are contingent fees," that "[a] lawyer is not entitled to a portion of a fee except as the fee is commensurate with the work and effort and time and expenses that the lawyer has put into the case, and that "[a]t best, [Plaintiffs] would be entitled to any rent that is due and perhaps some quantum meruit . . . [which likely] would be the maximum that [P]laintiffs could recover here." [Ct. Transcript, April 1, 2022 Hearing, 25:12–26:18].

## **MEMORANDUM OF LAW**

### **I.  DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS UNDER LUTPA.**

Pursuant to section 1409 of the Louisiana Revised Statutes, "[u]pon a finding by the court that an action under this Section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney fees and costs." La. Rev. Stat. § 51:1409(A); *see also* Fed. R. Civ. P. 54(d)(2)(B)(i)–(iii) (claiming attorneys' fees and costs must be made my motion within fourteen days after a judgment is entered, specify the grounds entitling the award, providing the amount or fair estimate of same); *Vercher v. Ford Motor Co.*, 527 So. 2d 995, 1001 (La. Ct. App. 1988) ("Unfair Trade Law § 1409 gives a defendant a retaliatory right to attorney's fees and costs, when a § 1409 action is unsuccessfully brought against him, and it is found that the action is groundless and brought in bad faith or for purposes of

11

harassment.").

As shown above and during the April 1, 2022 Hearing before this Court, Plaintiffs repeatedly and consistently changed their story as to how much they were allegedly entitled to receive.  Each time Plaintiffs encountered a hurdle, their explanation of what occurred between the parties changed.  This conduct forced Defendants to endure Plaintiffs' unfounded claims that originated in the Florida state case in 2013 and thereafter continued in this Court.

Despite Plaintiffs admitting that they did not incur any expenses related to promotional and/or advertising costs or otherwise paid any court costs with respect to Defendants' clients and the legal services related thereto, they continued to claim entitlement to two thirds of all attorneys' fees recovered by Defendants.  However, the Court dismissed their claims with prejudice and limited such claims to the recovery of any rent due and if any work was performed, quantum meruit.

The record is clear that Plaintiffs conjured facts and augmented their position in order to acquire funds for doing, in essence, nothing.  Plaintiffs were unable to set forth, prove, or otherwise demonstrate that Defendants treated Plaintiffs unfairly or attempted not to uphold the terms within the Attorney Participation Agreement, which are the only applicable terms between the parties. Plaintiffs knowingly, senselessly, and frivolously pursued these baseless claims against Defendants for the better part of decade between multiple jurisdictions, thereby forcing Defendants to expend their time, energy, and resources to retain what rightfully belongs to Defendants. Therefore, Plaintiffs' allegations against Defendants were "groundless and brought in bad faith or for purposes of harassment," and thus, entitles Defendants to recover reasonable attorneys' fees and costs.  La. Rev. Stat. § 51:1409(A); *Slayton v. Davis*, 901 So. 2d 1246, 1253 (La. Ct. App. 2005).

Accordingly, Defendants request this Court determine that Defendants are entitled to reasonable attorneys' fees and costs.

## II. DEFENDANTS' PROPOSED AWARD OF ATTORNEYS' FEES REFLECTS A REASOANBLE NUMBER OF HOURS AND REASOANBLE HOURLY RATE.

Even though the value of the attorneys' fees sought need not be proven, such an award must still be reasonable. *Rincon v. Owens Collision and Repair Serv. Ctr., LLC*, No. 2018 CA 0383, 2018 WL 4520384, *8 (La. Ct. App. Sept. 21, 2018). In addition, Louisiana has provided ten factors in determining the reasonableness of attorney fees, which are:

> (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances made; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge.

*Id.* Moreover, Louisiana routinely utilizes the lodestar method to determine attorneys' fee award in federal civil actions. *Gilmore v. Audubon Nature Inst., Inc.*, 353 F. Supp. 3d 499, 506 (E.D. La. 2018). The lodestar method determines an award of attorney fees by the following two-step process:

> First the court calculates the "lodestar[,]" which is equal to the number of hours *reasonably* expended multiplied by the *prevailing hourly rate* in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) [, *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L.Ed.2d 67 (1989)].

*Id.* The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the

13

professional relationship with the client; and (12) the award in similar cases. *Id.* at 506–07 (quoting *Johnson*, 488 F.2d at 717–19).

Regarding the aforementioned *Johnson* factors, "the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Id.* at 507 (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)). "The lodestar 'is presumptively reasonable and should be modified only in exceptional cases.'" *Id.* (quoting *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)).

As set forth in the Affidavit of Jeremy D. Friedman, Esq. and Invoice # 40—attached hereto—Defendants' proposed award is based on 48.40 hours of attorney time. Defendants will not replicate the entire chronology of its efforts to justify its efforts in obtaining a favorable order from the Court, but simply want to highlight that 48.40 hours, beginning from the filing of the lawsuit in this case through the present is certainly reasonable. Defendants are not seeking herein any fees or costs from the original Florida State Case.

In addition, Defendants assert that the submission of 400.00/hour is a reasonable and appropriate rate under the circumstances. In calculating the attorneys' fees under the lodestar analysis, courts typically focus on rates tied to the specific jurisdiction. Moreover, the undersigned has been practicing in the state of Florida for the last twenty-four (24) years and generally bills $400.00/hour for his time. Given the undersigned counsel's experience and the nature of Plaintiffs' conduct in this case, the rate is a reasonable reflection of market rats in Florida.

In short, Plaintiffs' groundless, bad faith assertions, and harassing claims against Defendants have wasted numerous resources, including this Court's time. As confirmed by the time records attached herein, Defendants' submission that it spent 48.40 hours overall—which

14

excludes the initial litigation from the Florida State Case—is reasonable. *See Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 569 (5th Cir. 2006) (relying on defense counsel's documentation to determine that the number of hours expended were reasonable).

Accordingly, Defendants request the Court determine Defendants' proposed award of attorneys' fees reflects a reasonable number of hours and that Defendants' counsel utilized a reasonable hourly rate.

### III.  DEFENDANTS' PROPOSED AWARD REFLECTS REASONABLE COSTS.

Although there are likely other costs arising from Plaintiffs' misconduct as it relates to this case, Defendants seek only $739.59 in out-of-pocket expenses, which relate to the undersigned's travel expenses incurred to travel to New Orleans, Louisiana from Jacksonville, Florida and appear in-person, as ordered by the Court, on April 1, 2022. *See* attached. Accordingly, Defendants request the Court determine Defendants' proposed award of costs are reasonable.

**WHEREFORE,** Defendants respectfully request that the Court enter an order: (1) granting this instant Motion; (2) awarding Defendants reasonable attorneys' fees and costs in the amount of $20,099.59—which encompasses $19,360.00 in attorneys' fees and $739.59 in costs; and (3) granting any such other and further relief that this Court deems just and proper.

Dated: April 15, 2022                                  Respectfully submitted,

**The Downs Law Group, P.A.**
3250 Mary Street, Suite 307
Coconut Grove, FL 33133
Telephone: (305) 444-8226
Facsimile: (305) 444-6773
jfriedman@downslawgroup.com

/s/ Jeremy D. Friedman
Jeremy D. Friedman, Esq.
Florida Bar No. 134643
*Attorney for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

  I HEREBY CERTIFY that the above and foregoing has been electronically filed with Clerk of Court of the United States District Court for the Eastern District of Louisiana on April 15, 2022, by using the CM/ECF System, which will send notice of electronic filing to all parties of record on or about the date as set forth above, as well as via electronic mail to: Jason L. Melancon, Suite B Baton Rouge, LA 70809, jason@melanconrimes.com.

                <u>/s/ Jeremy D. Friedman</u>
                Jeremy D. Friedman, Esq.