**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| IN RE: | OIL SPILL BY THE OIL RIG | * | MDL NO. 2179 |
| | "DEEPWATER HORIZON" IN | * | SECTION: J |
| | THE GULF OF MEXICO ON | * | |
| | APRIL 20, 2010 | * | |
| | | * | **Judge Barbier** |
| Relates to: | 2:14-cv-657 | * | **Mag. Judge Currault** |
| | Melancon │ Rimes, LLC et al. | * | |
| | v. Downs Law Group, LLC, et al. | * | |

**********************************************

<u>**THIRD AMENDED COMPLAINT AND JURY DEMAND**</u>

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, Melancon │ Rimes, LLC, Jason L. Melancon, Sterbcow Law Group, LLC, and Marx D. Sterbcow, (collectively "Plaintiffs") who respectfully aver as follows:

**INTRODUCTION**

1.

This Third Amended Complaint arises from an attorneys' fees dispute caused by the breach of a joint venture agreement, breach of fiduciary duty, and unfair trade practices by Defendants Downs Law Group, P.A. ("Downs Law Group"), a Florida based law firm, and its managing partner, Craig T. Downs ("Mr. Downs") (collectively referred to hereafter as "Defendants").

2.

Defendants, a Florida law firm and Florida attorney, initiated a joint venture agreement with Plaintiffs, Louisiana law firms and Louisiana attorneys, specifically for the purpose of soliciting and representing Louisiana residents with claims in the MDL No. 2179, Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010 (hereinafter "BP MDL") and with the agreement that attorneys' fees would be shared between the parties.

3.

Defendants knowingly co-counseled with Plaintiffs in order to utilize Plaintiffs' licenses to practice law in the State of Louisiana for the purposes of soliciting Spanish-speaking Louisiana residents, executing contingency fee agreements at Plaintiffs' Louisiana law offices, and advancing medical related costs for joint clients, particularly given Florida's prohibition against advancing medical costs for personal injury plaintiffs.

4.

The Defendants and Plaintiffs (collectively, the "Parties") worked together in Louisiana, over the course of approximately a year, signing up over a thousand joint clients who signed contingency fee agreements with the Parties, agreements which specifically identified Plaintiffs as counsel.

5.

Thereafter and without any notice to Plaintiffs, Defendants directed the Parties' joint clients to execute revised contingency fee agreements which removed Plaintiffs' names from said agreements under false pretenses.   Defendants, who are not authorized to practice law in the State of Louisiana, proceeded to solely represent the joint clients in the BP MDL with the intent of exclusively retaining all attorneys' fees arising from BP MDL claims, contrary to the joint venture agreement and original joint client contingency fee agreements.

6.

Defendants' misrepresentations and concealment of facts to joint clients, which induced said clients to execute revised contingency fee agreements, constitute a clear breach of the joint venture agreement and the fiduciary duty owed by Defendants, as well as unfair trade practices, for which Plaintiffs now seek economic damages in the amount of lost attorney fees and other

equitable relief and attorneys' fees and costs as otherwise provided by law.

## PARTIES

### 7.

Melancon │ Rimes, LLC ("MR") is a named plaintiff herein.  MR is a limited liability company domiciled and organized in the State of Louisiana where it operates its law offices.

### 8.

Jason L. Melancon ("Mr. Melancon") is a named plaintiff herein.  Mr. Melancon is domiciled in the State of Louisiana and manages the Baton Rouge law firm of MR.

### 9.

Sterbcow Law Group, LLC ("SLG") is a named plaintiff herein.  SLG is a limited liability company domiciled and organized in the State of Louisiana where is operates its law offices.

### 10.

Marx D. Sterbcow ("Mr. Sterbcow") is a named plaintiff herein.  Mr. Sterbcow is domiciled in the State of Louisiana and manages the New Orleans law firm of SLG.

### 11.

Downs Law Group is a named defendant herein.  Downs Law Group is a professional association domiciled and organized in the State of Florida where is operates its law offices.

### 12.

Craig T. Downs is a named defendant herein.  Mr. Downs is domiciled in the State of Florida and manages the Florida law firm of Downs Law Group.

## JURISDICTION & VENUE

### 13.

This Court has subject matter jurisdiction to resolve controversies over attorneys' fees

when the dispute arises from the litigation before it, under both the court's ancillary jurisdiction and its inherent power to regulate attorneys who practice before the Court.

14.

The Court's Deepwater Horizon Medical Benefits Class Action Settlement Agreement ("MDL Settlement Agreement") provides this Court with exclusive subject matter jurisdiction over all parties, medical and economic benefits class members, and their counsel with respect to all disputes arising from the MDL Settlement Agreement. Upon information and belief, the Parties' joint clients have previously made claims for benefits subject to the MDL Settlement Agreement, which resulted in the payment of attorneys' fees to Defendants.

15.

This Court has personal jurisdiction over Defendants who knowingly and purposefully engaged in a pattern and course of conduct in the State of Louisiana, including the greater New Orleans area, which gives rise to the claims herein. Defendants purposefully availed themselves to this Court's jurisdiction by initiating a joint venture agreement with Plaintiffs in Louisiana, for the specific purpose of retaining and representing Louisiana residents with claims in the BP MDL. With the assistance of Plaintiffs, Defendants held a continuous office presence within the Eastern District of Louisiana and hired a Spanish-speaking attorney to work at SLG's New Orleans office for the purpose of signing up hundreds, possibly thousands, of medical and economic BP MDL claim clients. Defendants actively solicited Louisiana clients through print and radio advertisements in Louisiana and, further, issued correspondence and revised contingency contracts to the joint clients in Louisiana. Defendant Downs appeared in Louisiana to argue before this Honorable Court on BP MDL matters.

16.

Jurisdiction is further premised upon diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The parties are diverse, and the matter exceeds $75,000.00, exclusive of legal interest and court costs.

17.

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in the Eastern District of Louisiana.

**FACTUAL ALLEGATIONS**

18.

In or around August 2012, Downs Law Group, a Florida law firm, contacted Mr. Sterbcow of SLG, a Louisiana attorney and Louisiana law firm, to request that Sterbcow and SLG act as local counsel and provide legal assistance with certain client cases related to the BP oil spill MDL before this Court in the Eastern District of Louisiana.  The requested legal assistance included, but was not limited to, filing an objection to the proposed MDL Settlement Agreement.

19.

Mr. Sterbcow then contacted Mr. Melancon of MR about assisting Downs Law Group and SLG with this legal representation, to which Mr. Melancon agreed.

20.

On August 26, 2012, the parties executed, in writing, the Attorney Participation Agreement ("APA"), which provides that MR and SLG would receive ten percent (10%) of all attorneys' fees derived from the agreed-to work between the Parties, creating a joint venture agreement between the parties.

21.

Plaintiffs thereafter proceeded with the legal work under the APA, focusing on the representation of the joint clients who objected to the proposed MDL Settlement Agreement, including the drafting of objections to the proposed Settlement Agreement and preparing for oral argument on these objections.

22.

On November 8, 2012, the Court conducted the fairness hearing on the proposed MDL Settlement Agreement.  Mr. Melancon presented the objections on behalf of the joint clients to the Court.  The Court overruled the objections and approved the MDL Settlement Agreement.

23.

Immediately after the fairness hearing, Melancon, Sterbcow, and Downs discussed, in person, in Louisiana, the impact of the Court's decision and orally agreed to continue working together on BP MDL claims in both filing an appeal to the Court's ruling on the fairness hearing and the marketing, soliciting, and representation of new claimants in Louisiana.

24.

The parties agreed and understood that the fee-sharing terms memorialized in the APA would continue to apply to this new scope of work, specifically that Plaintiffs would be entitled to ten percent (10%) of attorneys' fees.

25.

Pursuant to scope of the oral joint venture agreement, Mr. Melancon proceeded to draft the appeal on the MDL Settlement Agreement.  In addition, Melancon conducted legal analysis and formulated legal strategy for filing additional claims in the MDL following entry of the MDL Settlement Agreement.

26.

With regard to signing-up new MDL claimants, the parties agreed that Plaintiffs would continue to serve as co-counsel and local counsel, thus extending the joint venture agreement in place. This arrangement was necessary in order for the Defendants, a Florida law firm and Florida attorney, to market, solicit, represent, and advance medical costs in Louisiana to Louisiana clients of the parties. Otherwise, Defendants would run afoul of professional rules prohibiting unlicensed practice of law.

27.

Louisiana Supreme Court Rule XVII § 13(B)(7) prohibits non-Louisiana licensed attorneys from engaging in the unauthorized practice of law by actively soliciting Louisiana residents; therefore, Plaintiffs and Defendants agreed to co-counsel with the intent and purpose of utilizing Plaintiffs' law license in Louisiana to jointly solicit clients located in Louisiana through print and radio advertisement and yard signage.

28.

The parties did in fact solicit joint clients in Louisiana through various marketing devices. Mr. Sterbcow and/or SLG bore the costs of certain marketing efforts, including costs associated with True Impact Communications and/or Brian Reiger.

29.

In addition to soliciting Louisiana residents, Plaintiffs and Defendants also discussed the need to physically meet with mutual clients at Plaintiffs' Louisiana offices. Louisiana Rule of Professional Responsibility 5.5 prohibits engaging in the unauthorized practice of law in Louisiana by establishing an office or other systematic or continuous presence in Louisiana; therefore, Plaintiffs and Defendants agreed to co-counsel with the intent and purpose of utilizing Plaintiffs'

law licenses in Louisiana to actively meet with potential joint clients, and Plaintiffs thereafter provided their Louisiana offices for purposes of meeting with potential Louisiana clients.

30.

From approximately November 2012 to October 2013, the Parties executed contingency fee agreements with Louisiana claimants at Plaintiffs' Baton Rouge and Harahan offices.  Every single contingency fee agreement identified Plaintiffs Melancon and Sterbcow as joint counsel for the clients.  *See e.g.* (R. Doc. 1-5).

31.

During this 11-month time period, MR provided its Baton Rouge office free of charge to facilitate signing-up new joint clients of the parties.  The parties also utilized SLG's Harahan office to sign-up clients and did so rent-free from November 2012 through July 2013.  In July 2013, Defendants proposed paying SLG a nominal rental fee of $500.00 per month.  Defendants neither paid nor attempted to pay SLG the $500.00 per month until the instant dispute arose in October 2013.

32.

Due to the large volume of Spanish-speaking clients, Downs Law Group hired a full-time, Spanish-speaking, non-Louisiana licensed attorney, Amled Perez, to work inside SLG's Louisiana office.  Ms. Perez's sole responsibility involved meeting with potential joint clients for the purpose of evaluating and retaining BP MDL claims.

33.

According to the terms of the MDL Settlement Agreement, medical claims required a pre-claim diagnosis by a qualified healthcare provider to qualify for benefits. Due to the indigent nature of many joint clients working the BP oil spill, Plaintiffs and Defendants discussed the Florida law

prohibiting the Downs Law Group from paying advanced medical costs for personal injury clients. Because Louisiana law permits Louisiana attorneys to advance medical costs, Plaintiffs and Defendants specifically discussed the need to co-counsel and jointly represent clients to protect Downs Law Group from violating Florida's prohibition against advanced medical costs. Co-counseling with Plaintiffs permitted the parties' joint clients to receive appropriate medical attention and evaluations prior to making a claim for benefits under the MDL Settlement Agreement. Thereafter, a Downs Law Group employee informed Mr. Sterbcow that Downs Law Group was in fact advancing medical costs for many of the Louisiana joint clients who executed contingency fee agreements at Plaintiffs' Louisiana offices.

34.

Because of the limitations on the Downs Law Group from soliciting Louisiana clients, maintaining or establishing an office or other systematic or continuous presence in Louisiana, and advancing medical costs for medical evaluations, the Downs Law Group identified Mr. Melancon and Mr. Sterbcow as co-counsel on all contingency fee contracts with the Parties' joint clients. The Downs Law Group exclusively retained control of the joint clients' medical records and contingency fee agreements. Upon information and belief, at least 1,700 joint BP MDL clients, most of whom were signed up by the parties at the Plaintiffs' Baton Rouge and New Orleans law offices, executed contingency fee agreements identifying Mr. Melancon and Mr. Sterbcow as co-counsel. *See e.g.* (R. Docs. 1-6, 1-7).

35.

Plaintiffs dutifully performed all legal work for their respective joint clients as requested by, and agreed to by, Defendants. In addition to providing the Louisiana law license required to solicit Louisiana clients, maintaining a continuous legal presence in Louisiana, and advancing

costs for pre-claim medical evaluations, Plaintiffs facilitated the signing-up of thousands of joint clients, entering appearances and filing pleadings before the trial court and appellate court, and arguing on behalf of joint clients before this Court, all of which, to date, Plaintiffs have received no attorney fees whatsoever.

36.

While working full-time at the SLG New Orleans office, on or about September 24, 2013, Downs Law Group attorney, Amled Perez, provided Mr. Sterbcow with the first list of mutual clients spanning over 1,700 names. *See* (R. Doc. 1-8).

37.

In October 2013, Mr. Melancon planned to renew MR's legal malpractice insurance in the upcoming months and needed to know the exact number of mutual clients for reporting purposes to the insurance company. Accordingly, Mr. Melancon requested via email a list of the names of all mutual clients. In response, Downs Law Group provided a list of only 73 clients. *See* (R. Doc. 1-7).

38.

Plaintiffs confronted Downs Law Group regarding the discrepancy in the number of joint clients displayed on the September 2013 list disclosed to Mr. Sterbcow of SLG and the October 2013 list provided to Mr. Melancon of MR.  Downs Law Group, for the first time, stated that Plaintiffs were not co-counsel for the over 1,700 mutual clients who executed contingency fee agreements identifying Mr. Melancon and Mr. Sterbcow as co-counsel, and possibly over 1,000 Louisiana residents in all.

39.

Shortly after this confrontation, emails dated October 22, 2013, provided by a Downs Law

Group employee to Plaintiffs, demonstrated that Downs devised a scheme and artifice to defraud Plaintiffs. These emails revealed that Downs Law Group sent out letters instructing the Parties' mutual clients to execute revised contingency fee agreements that removed the names of Mr. Melancon and Mr. Sterbcow from said contingency fee agreements. The Downs Law Group correspondence falsely claimed that Mr. Melancon and Mr. Sterbcow were no longer serving as co-counsel, even though Plaintiffs never voluntarily stopped working on the case and were actively working on the case pursuant to the joint venture agreement between the parties. *See* (R. Doc. 1-9). These emails expressed the clear intent by Mr. Downs to misrepresent and conceal material facts from the parties' joint clients, thereby misleading the parties' joint clients into executing revised contingency fee agreements that appeared to terminate Plaintiffs' right to attorneys' fees. *Id*. The email correspondence between Mr. Downs and another Downs Law Group attorney, quoted in relevant part below, constitutes an unprivileged, communication made in furtherance of a fraud:

> Finally, please be advised that we had initially agreed that the law firms of Melancon Rimes and the Sterbcow Law Group would provide assistance to
> the objection and appeal only. As these issues are no longer pending, these entities are no longer acting on your behalf. This will have no effect on any recovery that you may have, however, we wanted to keep you informed as to any developments related to your case.
>
> Something like that. **<u>Sure it is self-serving</u>** but it can't hurt and we do have an obligation to keep the clients advised. *Id*. (emphasis added).

40.

Defendants executed the scheme devised in the above referenced emails and sent the Parties' joint clients new contingency fee contracts omitting the names of Mr. Melancon and Mr.

Sterbcow and requested that these new contracts be signed in an effort to remove Plaintiffs as joint counsel. Defendants' unilateral removal of co-counsel's names from a contingency fee agreement with a false and misleading explanation for said removal constitutes a clear breach of the joint venture agreement and the fiduciary duty owed between Defendants and Plaintiffs, as partners in a joint venture representing mutual BP MDL clients. *See e.g.* (R. Docs. 1-10, 1-1).

41.

Thereafter, Defendants exclusively possessed the joint client records and proceeded to solely represent the joint clients in the MDL.  Defendants have received or will receive attorneys' fees for the representation of these clients in the BP MDL, of which Plaintiffs are entitled to a portion pursuant to the joint venture agreement between the parties.  To date, Plaintiffs have received no compensation from the attorneys' fees received by Defendants as a result of the representation of the joint clients.

42.

In December 2013, after uncovering Defendants' surreptitious activities in issuing the letter and revised contingency fee contracts to the joint clients of the parties, Plaintiffs filed suit against Defendants in Florida state court.

43.

While the Florida state court lawsuit was pending, on February 13, 2014, the MDL Settlement Agreement was finalized after the exhaustion of appeals.  As a result, on March 13, 2014, Plaintiffs filed a motion pursuant to Section XXVII of the MDL Settlement Agreement, seeking to enforce Plaintiffs' rights to attorneys' fees on claims made through the BP MDL.  *See* (R. Doc. 1-2).  On March 20, 2014, this Court denied the motion on the basis that, pursuant to Section XXIA(8)(d) of the MDL Settlement Agreement, the claims administrator was to resolve

all attorneys' fees liens, claims, or rights to reimbursement, and directed Plaintiffs to contact the claims administrator. *Id*. The Court also stated that Plaintiffs could file a separate lawsuit. *Id*.

44.

Plaintiffs then contacted the MDL claims administrator to assert an attorney fee lien. The claims administrator advised Plaintiffs that, in order to file a lien, the office required the first name, last name, dates of birth, social security numbers, and SPC numbers for the clients. However, the Downs Law Group solely retained all client information on behalf of the joint venture. Moreover, Downs Law Group refused to share this information when Mr. Melancon requested the information in October 2013 and the information was not produced in the Florida litigation. Because Plaintiffs lacked the requested information, the claims administrator refused to consider Plaintiffs' claim for attorney fees and assess the lien, thereby forcing Plaintiffs to seek the requested information in discovery in this Court.

45.

Because the MDL Settlement Agreement contains an express exclusive jurisdiction clause for all matters arising from disputes involving MDL claims, Plaintiffs eventually dismissed the Florida state court action with court approval and without prejudice and filed the present lawsuit on March 21, 2014. The lawsuit was stayed until 2021.

**FIRST LEGAL CLAIM: BREACH OF JOINT VENTURE AGREEMENT**

46.

Defendants breached the oral joint venture agreement between the parties to share in the attorneys' fees obtained from joint MDL clients by unilaterally and surreptitiously removing Plaintiffs as joint counsel and retaining all profits, *i.e.* attorneys' fees, received from the representation of these clients. Plaintiffs seek to enforce the fee-sharing terms of the parties' joint

13

venture agreement.

47.

Pursuant to Louisiana law, where two attorneys or law firms associate to assist in handling a case, the agreement regarding the division of legal fees is considered a joint venture, whereby each attorney or law firm has the right to participate in the fund resulting from the payment of attorneys' fees from the client.

48.

Where attorneys have formed a joint venture agreement to divide attorneys' fees, the Louisiana Rules of Professional Conduct do not prohibit the enforcement of the agreement and apportionment of the fees on a *quantum meruit* basis is not required.

49.

Defendants initiated the joint venture with Plaintiffs in August 2012, when Defendants sought out Plaintiffs' assistance in jointly representing BP MDL clients in objecting to the MDL Settlement Agreement. The Parties initially memorialized this joint venture agreement in the APA executed shortly thereafter, which provided that Plaintiffs were entitled to ten percent (10%) of attorneys' fees. Thereafter, the Parties worked together under the scope of the APA. Following the fairness hearing on the MDL Settlement Agreement, the Parties orally agreed to continue the joint venture agreement, with a new focus on signing-up mostly Spanish-speaking BP MDL claimants in Louisiana. The Parties proceeded with this work over the course of approximately a year, utilizing Plaintiffs' Louisiana law licenses and law offices to sign-up at least 1,700 joint clients pursuant to contingency fee contracts that identified Plaintiffs as co-counsel. In addition, the Parties performed marketing, paid advanced medical costs, and engaged in legal writing, analysis, and strategy.

50.

Thereafter, in approximately October 2013, Defendants breached the joint venture agreement between the parties by unilaterally and surreptitiously writing letters to the joint clients falsely stating that Plaintiffs were no longer representing the joint clients and directing the joint clients to execute new contingency fee agreements that removed the names of Plaintiffs as co-counsel.

51.

Despite the best efforts of Plaintiffs in Florida state court and this MDL Court, Plaintiffs were unable to prevent Defendants from removing Plaintiffs from the joint representation of the MDL claimants or even to assert a lien for these claims.  Upon information and belief, Defendants proceeded with the litigation and resolution of the joint client claims in the BP MDL and retained all attorneys' fees arising from these claims.

52.

As a result of the Defendants' breach of the joint venture agreement, Plaintiffs suffered damages in the amount of attorneys' fees agreed to be shared among the parties pursuant to the oral terms of the oral joint venture agreement.  Defendants solely retained all attorneys' fees from the joint clients, contrary to the terms of the joint venture agreement and the Plaintiffs' legal work and contributions under this agreement.

**SECOND LEGAL CLAIM: BREACH OF FIDUCIARY DUTY**

53.

Defendants breached the fiduciary duty owed to Plaintiffs under Louisiana law. Defendants knowingly and purposefully directed the Parties' joint clients to execute revised contingency fee agreements that omitted Plaintiffs' names under false and misleading pretenses,

and all with the intent and purpose of Defendants taking financial advantage of Plaintiffs, and thereby retaining all attorneys' fees derived from the joint client BP MDL claims for the sole and exclusive benefit of Defendants.  Defendants' breach of fiduciary duty caused economic damages to Plaintiffs in the amount of those attorneys' fees Plaintiffs have not been able to recover as co-counsel identified on well over 1,000 BP MDL joint clients, all of whom executed contingency fee contracts identifying Plaintiffs as co-counsel.

54.

Specifically, Defendant Downs Law Group breached its fiduciary duty to Plaintiffs when it covertly, unilaterally, and without the consent or knowledge of Plaintiffs, contacted the parties' joint clients with the intent to remove Plaintiffs as counsel of these clients, most of whom are Spanish-speaking, and directed these joint clients to execute new contingency fee contracts removing Plaintiffs as co-counsel.

55.

Specifically, Defendant Mr. Downs, serving in his capacity as the principal managing partner and owner of Downs Law Group, directly participated in the breach of fiduciary duty to Plaintiffs. The email communication involving Mr. Downs shows that Mr. Downs authorized and approved the scheme and false cover story. Mr. Downs further authorized the mailing of the false and misleading correspondence to the Parties' joint clients and authorized the removal of Plaintiffs' names from the revised contingency fee agreements. Thus, Mr. Downs did knowingly and purposefully authorize the self-serving letter sent to the Parties' joint clients, advising the joint clients that Plaintiffs were no longer co-counsel on their case and directing the clients to execute new contingency fee contracts that removed Plaintiffs as co-counsel.

56.

16

The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty, (2) a violation of that duty by the fiduciary, and (3) damages resulting from the violation of duty.

57.

Under Louisiana law, there exists a fiduciary duty between the parties to a joint venture agreement, imposing upon all parties the obligation of loyalty to the joint concern and of the utmost good faith, fairness, and honesty in their dealings with each other with respect to matters pertaining to the enterprise.

58.

The fiduciary duty of a joint venturer provides that a partner may not conduct any activity for himself that is contrary to his fiduciary duty and prejudicial to the partnership.

59.

 A breach of the fiduciary duty requires the breaching partner to account to the partnership and his partners for the resulting profits.

60.

Each joint venturer must refrain from taking any advantage of another joint venturer by the slightest misrepresentation or concealment of material facts.

61.

By entering into this joint venture agreement, the Parties owed each other a fiduciary duty that precluded any action designed to take advantage of the other through the slightest misrepresentation or concealment of material facts.

62.

Defendants breached their fiduciary duty to Plaintiffs by covertly, unilaterally, and without

the consent or knowledge of Plaintiffs, contacting their joint BP MDL claims clients and misrepresenting and concealing material facts concerning Plaintiffs' involvement as counsel, with the specific intent of taking financial advantage of Plaintiffs by keeping all attorney fees for the exclusive and sole benefit of Defendants.

63.

Defendants' breach of fiduciary duty allowed Defendants to receive all attorneys' fees from the BP MDL client claims, thus preventing Plaintiffs from recovering their fair share of attorneys' fees as required by Louisiana joint venture law.

64.

Defendants breached the fiduciary duty owed to Plaintiffs by knowingly inducing Plaintiffs to assist Defendants with the purpose of circumventing Louisiana's prohibitions against out-of-state attorney marketing and signing-up of Louisiana clients.

65.

Defendants breached the fiduciary duty owed to Plaintiffs by knowingly inducing Plaintiffs to assist Defendants with the purpose of circumventing Louisiana's prohibitions against out-of-state attorneys establishing an office or other systematic and continuous presence in this jurisdiction for the practice of law, and in order to sign up thousands of Louisiana residents in offices located in Baton Rouge and New Orleans.

66.

Defendants breached the fiduciary duty owed to Plaintiffs by knowingly inducing Plaintiffs to assist Defendants with the purpose of circumventing limitations on Florida attorneys from advancing medical costs for plaintiff clients, and in order to allow the joint clients to seek medical attention prior to submitting a claim for BP medical benefits.

67.

Whereas Plaintiffs were financially damaged by the Defendants' breach of fiduciary duty because they were prevented from representing the joint clients in the BP MDL, and thus never received any of the attorneys' fees owed to Plaintiffs under the contingency fee agreements for the parties' joint clients, Plaintiffs seek damages and equitable relief, along with attorney fees and costs, for the Defendants' breach of fiduciary duty.

### THIRD LEGAL CLAIM: UNFAIR TRADE PRACTICES

68.

The Louisiana Unfair Trade Practices Act, La. R.S. 51:1405, et seq. ("LUTPA"), prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce in Louisiana.

69.

LUTPA prohibits alleged conduct offending established public policy and which is immoral, unethical, oppressive, unscrupulous, or substantially injurious, including fraud, misrepresentation, and similar conduct, and not mere negligence.

70.

The statute provides that "any person who suffers any ascertainable loss of money or movable property . . . as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages." La. R.S. 51:1409(A).

71.

"Person" means a natural person, corporation, trust, partnership, incorporated or unincorporated association, and any other legal entity." La. R.S. 51:1402(8).

72.

Defendants have engaged in unfair competition with Plaintiffs by taking cases and clients jointly represented by all parties and transferring them to solely Defendants' law firm, Downs Law Group, thereby depriving Plaintiffs of the value and expected profits from these cases.

73.

Defendants abused their position of trust and access to the joint clients and documentation in order to facilitate their unfair competition scheme.

74.

Defendants' actions, practices, and methods violate LUTPA.

75.

Further, both the law of fiduciary duty and LUTPA prohibit unscrupulous misrepresentations designed to take unfair advantage of another; therefore, an unscrupulous breach of fiduciary duty may also constitute a violation of LUTPA where the conduct involves any trade or commerce.

76.

For those reasons more fully stated above, Plaintiffs maintain that the Defendants' scheme to knowingly and purposefully direct the Parties' joint clients to execute revised contingency fee agreements that omitted Plaintiffs' names under false and misleading pretenses, and with the intent and purpose of Defendants' taking unscrupulous financial advantage of Plaintiffs, and thereby retaining all attorney fees derived from the BP MDL for the sole and exclusive benefit of Defendants constitutes a violation of LUTPA.

77.

Specifically, Defendant Downs Law Group engaged in unfair competition with Plaintiffs when it disregarded its joint venture obligations with Plaintiffs by covertly, unilaterally, and

without the consent or knowledge of Plaintiffs, and contacted the Parties' joint clients with the intent to remove Plaintiffs as counsel of these clients, most of whom are Spanish-speaking, and directing these joint clients to execute new contingency fee contracts removing Plaintiffs as co-counsel.

78.

Specifically, Defendant Mr. Downs, serving in his capacity as the principal managing partner and owner of Downs Law Group, engaged in unfair competition with Plaintiffs when he directly participated in the breach of fiduciary duty to Plaintiffs. The email communication involving Mr. Downs shows that Mr. Downs authorized and approved the scheme and false cover story.  Mr. Downs further authorized the mailing of the false and misleading correspondence to the parties' joint clients and authorized the removal of Plaintiffs' names from the revised contingency fee agreements. Thus, Mr. Downs did knowingly and purposefully authorize the self-serving letter sent to the parties' joint clients, advising the joint clients that Plaintiffs were no longer co-counsel on their case and directing the clients to execute new contingency fee contracts that removed Plaintiffs as co-counsel.

79.

Defendants' actions caused Plaintiffs damages, including but not limited to the loss of the agreed-to profits and attorneys' fee-sharing pursuant to the joint venture agreement and contingency fee contracts executed by the Parties.

**FOURTH LEGAL CLAIM, IN THE ALTERNATIVE:** *QUANTUM MERUIT*, **UNPAID RENT**

80.

Plaintiffs have legal remedies arising from the Defendants' breach of the joint venture agreement, breach of fiduciary duty, and violation of LUTPA, but pursuant to the Court's Order

of April 1, 2022, the Court restricted Plaintiffs' claims to *quantum meruit* and unpaid rent. Accordingly, in compliance with this Order, Plaintiffs plead, in the alternative, remedies arising from *quantum meruit*, including any unpaid rent from Defendants arising from the joint venture relationship.

81.

*Quantum meruit*, known as unjust enrichment under Louisiana law, is based upon the equitable principle that a person who has been enriched without cause at the expense of another person is bound to compensate that person.

82.

The five requirements for *quantum meruit*/unjust enrichment are: (1) enrichment, (2) impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) the lack of another remedy at law.

83.

Alternatively, Plaintiffs plead a claim for *quantum meruit*/unjust enrichment, including a claim for unpaid rent, against Defendants. Defendants were enriched through the attorneys' fees they solely received on behalf of the Parties' joint clients. Plaintiffs were impoverished by the Defendants' failure to share these attorneys' fees as required and contemplated by the Parties' joint venture agreement to work together as co-counsel for the joint BP MDL clients and share in the profits, *i.e.* attorneys' fees, earned from this work. There is a direct connection between the Defendants' enrichment and the Plaintiffs' impoverishment, specifically Defendants would not have been enriched by the attorneys' fees had Defendants not engaged Plaintiffs in the joint venture agreement to jointly represent the thousands of joint clients in the BP MDL. Pursuant to ethical

and professional rules, Defendants could not have marketed, solicited, represented, or paid advance medical costs to the joint clients of the Parties without co-counseling with the Plaintiffs, who have Louisiana law licenses and Louisiana law licenses, to conduct this work.  There is no legal justification or cause for the Defendants' actions in unilaterally and surreptitiously removing Plaintiffs as co-counsel for the joint clients.

84.

Plaintiffs are entitled to *quantum meruit* damages in the amount of attorneys' fees agreed-to by the parties in joint venture agreement, which represents the amount Plaintiffs were impoverished by the Defendants' actions, as well as the rental costs expended by Plaintiffs in providing their Louisiana law offices for the Parties' joint venture work, and any marketing, advance medical, or other costs expended by Plaintiffs, which resulted in the Defendants' unjust enrichment.

**JURY DEMAND**

85.

Plaintiffs hereby demand trial by jury on all claims arising from this Complaint.


PLAINTIFFS PRAY that there be a judgment rendered herein in favor of Plaintiffs and against Defendants for damages, including legal interest from the date of judicial demand until paid, and all costs of these proceedings, as otherwise permitted under the law.

PLAINTIFFS FURTHER PRAY that there be a judgment rendered herein awarding Plaintiffs attorneys' fees and treble damages against Defendants as otherwise permitted under any

contract and/or applicable laws.

Respectfully submitted,

/s/ Craig M. Robinson_____          /s/ Alexis A. Butler_____
CRAIG M. ROBINSON (Bar No. 32934)           Alexis A. Butler (Bar No. 32376)
*Robinson Law Offices, LLC*                       *The Whitaker Law Firm, APC*
700 Camp Street                                201 St. Charles Avenue
New Orleans, Louisiana 70130                   Suite 2500
T: (504) 458-5100                              New Orleans, LA 70170
F: (504) 717-4627                              T: (504) 313-0168
E: craig@rlolegal.com                          E: lexybutler@whitakerlaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th  day of May 2022, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system which will send notice of electronic filing to all

parties of record and that the above and foregoing pleading has been served on All Counsel by

electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12,

as amended, and in accordance with the procedures established in MDL 2179.

_/s/ Craig M. Robinson_____
Craig M. Robinson