## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | **OIL SPILL BY THE OIL RIG** | ) | **MDL NO: 2179** |
| | **"DEEPWATER HORIZON" IN** | ) | |
| | **THE GULF OF MEXICO, ON** | ) | **SECTION: J** |
| | **APRIL 20, 2010** | ) | |
| | | ) | |
| Relates to: | **2:14-cv-657** | ) | **Judge Barbier** |
| | **Melancon | Rimes, LLC et. al.** | ) | **Mag. Judge Currault** |
| | **v. Downs Law Group, et. al.** | ) | |

_____)_____

## DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT WITH PREJUDICE

**COMES NOW,** Defendants, Downs Law Group, P.A. ("DLG") and Craig T. Downs (collectively, "Defendants"), jointly, by and through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby file their Joint Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' Third Amended Complaint with Prejudice, and in support, state as follows:

### INTRODUCTION AND MATERIAL FACTS

This is a case that involves an agreement between Plaintiffs Melancon | Rimes, LLC ("Melancon") and Sterbcow Law Group, LLC ("Sterbcow") (collectively, "Plaintiffs"), and DLG to provide assistance relating to certain DLG clients who filed an objection to a class action settlement agreement in the multi-district litigation involving the BP Oil Spill ("MDL"). The agreement at issue is described as the Attorney Participation Agreement (the "Agreement'). [Rec. Doc. 27343-2]. As discussed and reflected therein, any compensation was based on a contingency; i.e., DLG recovering fees as a result of being successful with the objections. The parties agreed that in relation to the objections, Plaintiffs would receive 10%, jointly, of the fees DLG recovered for the objections.

1

Paragraphs 1(A) through 1(D) within the Agreement specifically delineated Plaintiffs' scope of work to be performed. *Id.* ¶ (1)(A)–(D). The only services that Plaintiffs agreed to perform were those services described in the Agreement, all of which related to the objections to the class action settlement. In fact, at the demand of Plaintiffs, an additional provision was included within the Agreement, which states that Plaintiffs are "under no obligation to perform any additional services but for that which is set forth above [i.e., paragraphs 1(A) through 1(D)] and reserves the right to decline requests by [DLG] regarding the same." *Id.* ¶ 3. If additional services were requested and Plaintiffs accepted to perform same, the percentages set forth in the Agreement would be adjusted to reflect any additional work being performed by Plaintiffs. *Id.* Therefore, Plaintiffs were neither required to undertake any new work nor to perform any additional services. *Id.* Lastly, the parties agreed that the governing law as to the Agreement would be Florida law. *Id.* ¶ 9.

DLG's clients were ultimately unsuccessful with their objections as to the class action settlement agreement. As a result, the clients did not recover anything related to the objections, no fees were recovered by DLG, and thus, no fees were due to be paid to Plaintiffs. Plaintiffs thereafter assisted in the filing of a Notice of Appeal of the adverse ruling. However, the Notice of Appeal was ultimately dismissed prior to moving forward. As such, the issue was closed.

In total, Plaintiffs worked pursuant to the Agreement from August 26, 2012 through November 8, 2012, and shortly thereafter, with regard to the filing and then withdrawing of the Notice of Appeal. The total amount of time worked related to the objections and the Agreement was less than four (4) months. Any work performed was specified in the Agreement and clearly limited to that in scope. Plaintiffs' time spent on this matter was minimal and limited by the specific terms therein, which was further limited by the provision Plaintiffs requested to be

included that eliminated any further obligations under the Agreement.

Subsequently, DLG sought additional clients who had suffered injuries in relation to the incident as described in the settlement agreement.  DLG was admitted pro hac vice into MDL.  As a result, it had the right to participate in the litigation in the state of Louisiana, including signing up new clients related thereto.  Local counsel related to the MDL was unnecessary upon DLG being admitted to practice for this case.

As it pertained to these new prospective clients, Plaintiffs agreed to permit DLG to utilize their physical office for a period of time in order to sign up these clients.  At no time did the parties ever discuss that either of Plaintiffs would perform additional services under the Agreement that would require additional payment.  And there was certainly no discussion or agreement that a separate and unrelated "joint venture agreement" was being created between the parties whereby each of the parties would be responsible to provide legal services to the clients, a fee would be split between the parties, and the costs would be split between the parties.

Rather, the parties came to an agreement as to rent that would be charged to DLG for use of the office space.  This rental amount was invoiced by Plaintiffs to Defendants and confirmed in writing on various occasions through correspondence directly from Plaintiffs.

Earlier in these proceedings, Plaintiffs attempted to fabricate as to what actually occurred between the parties by claiming that rent was never discussed between the parties.  They further claimed that no invoices were sent out and that Defendants were permitted to use the offices as part of a joint venture agreement.  They further stated that Defendants were creating the issue of the payment of rent after the fact to avoid the enforcement of their joint venture agreement. However, upon being confronted with all of the emails and their own invoices, Plaintiffs finally admitted that they were not telling the truth about the rent and they had, in fact, charged Defendants

rent, sent invoices, and demanded payment related thereto.

Subsequently, after Defendants were utilizing the offices of Plaintiffs to sign up DLG clients, Plaintiffs claimed that they were entitled to 10% of "all" clients of Defendants, in all states, based on the Agreement. This claim was filed in the state court in Miami-Dade County, Florida. After it became obvious that they had no entitlement to such fees, they dismissed the claims and re-filed new claims in this Court. However, this time they claimed that the Agreement had nothing to do with their right to recover a fee. Rather, a joint venture agreement was entered into after the Agreement was completed.

Plaintiffs incredibly claimed that the parties agreed to a three-way, one-third, spilt of attorneys' fees between the three law firms. There was no description of any work that Plaintiffs were going to be doing, there was no description of any marketing Plaintiffs were going to be doing in relation to getting new clients, and there was no description of any costs that Plaintiffs agreed to pay related thereto. Essentially, Plaintiffs claimed that a joint venture agreement was created with no actual terms.

On April 1, 2022, this Court held a hearing as to Defendant's Motion to Dismiss. Plaintiffs requested that this Court permit them to file a sur-reply to the Motion to Dismiss and further permit them to amend their pleadings once again in light of the evidence regarding the rents, which demonstrated that they knowingly made false statements during these proceedings. [Rec. Doc. 27364]. They wanted to change their allegations, again, about rent charged to Defendants and whether one of the terms of the joint venture agreement was the use of Plaintiffs' offices for free. However, the Court denied their Motion to Amend the Complaint. [Rec. Doc. 27368 at 2].

At the hearing, Plaintiffs' counsel claimed that the joint venture agreement was separate and apart from the Agreement. Upon being asked what Plaintiffs claimed the fee split was between

the parties as part of the Joint Venture Agreement, counsel for Plaintiffs stated the following:

> The Court:  Then you wanted ten percent of everything still.  What do you want now?  It sounds like you want half of all their fees.
>
> Mr. Robinson:  I think the joint venture agreements that were confected in these individual attorney-fee, contingency agreements was set out one-third, one-third, one-third arrangements, just based upon—
>
> The Court:  One-third, one-third, who does the third third belong to?
>
> Mr. Robinson:  So, a third to Downs Law Group, a third to Melancon Rimes, and third to Sterbcow Law Group.
>
> The Court:  So, your client would be getting two-thirds of the fee, two-thirds of the fee of every fee that Downs Law Firm made in this whole case?
>
> Mr. Robinson:  Under the partnership agreement, you know, and under the joint venture agreement, that's how ---

[Ct. Transcript, April 1, 2022 Hearing at 41:1–16].

The Court additionally asked Plaintiffs' counsel about the costs that were expended by Plaintiffs in support of the joint venture agreement, i.e., such as marketing costs.  Plaintiffs' counsel responded as follows:

> The Court:  Let me ask you this: What part of the expenses that Downs incurred – I'm assuming they spent tens or hundreds of thousands, I don't know, maybe millions of dollars in advertising to obtain these cases.  Did your client pay any of that?
>
> Mr. Robinson:  I don't believe we paid any – any promotional—
>
> The Court:  Did you pay any other expenses?  Did you pay any court costs?
>
> Mr. Robinson:  No, Your honor, but we did –

[Ct. Transcript, April 1, 2022 Hearing at 42:21–43:5].  The Plaintiffs were in fact unable to articulate any legal services that they provided DLG's clients.  They were unable to describe any work performed at all.  They were further unable to describe any costs that they paid related to any of the claims.

Ultimately, the Court, on April 1, 2022, concluded that, **there is no written evidence of that that has been submitted to the Court whatsoever** of any joint venture agreement.  [Ct. Transcript, April 1, 2022 Hearing at 48:12–22] (emphasis added).  The Court additionally determined, under Louisiana Law and the Code of Professional Responsibility, that "fees have to be reasonable, even if they are contingent fees," that "[a] lawyer is not entitled to a portion of a fee except as the fee is commensurate with the work and effort and time and expenses that the lawyer has put into the case, and that "[a]t best, [Plaintiffs] would be entitled to any rent that is due and perhaps some quantum meruit . . . [which likely] would be the maximum that [P]laintiffs could recover here."  [Ct. Transcript, April 1, 2022 Hearing at 25:12–26:18].

As a result, the Court, on April 4, 2022, entered an order which stated that Plaintiffs' "complaint is **DISMISSED with prejudice** except insofar as it may state a claim for unpaid rent and quantum meruit," and further referred the parties to Magistrate Judge Currault "to determine the unpaid rent and quantum meruit owed."  [Rec. Doc. 27368 at 2].  This order dismissed, with prejudice, all claims for breach of fiduciary duty and unfair trade practices.

In addition, as stated the above, the only claims Plaintiffs were permitted to proceed forward on were claims concerning (1) any amount of rent that would be due and (2) any claims for quantum meruit for actual work that Plaintiffs performed on behalf of DLG's clients for which monies would otherwise be due.

Despite this clear order, and in direct violation thereof, Plaintiffs have now re-filed all of their claims regarding breach of fiduciary duty and unfair trade practices as if the Court's Order never existed.  In addition, they added on a new claim for Breach of a Joint Venture Agreement, a claim that has nothing to do with the two limited areas remaining, the payment of rent and quantum meruit.  Finally, they are inexplicably seeking rental amounts that they paid for other offices

apparently instead of Defendants, and seeking quantum meruit, not as to any work performed, but simply because they hold a license to practice law in the state of Louisiana.

For the reasons set forth below, Plaintiff's Third Amended Complaint should be dismissed in its entirety.

## MEMORANDUM OF LAW

## I.     LEGAL STANDARD FOR A MOTION TO DISMISS.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  As part of a court's analysis, it "must accept all well-pleaded factual allegations in the complaint as true and view the allegations in the light most favorable to the non-moving party."  *Resolution Trust Corp. v. Gaudet*, No. 92-2661, 95-1929, 1996 WL 125591, at *4 (E.D. La. Mar. 19, 1996).  "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Cassibry v. Lee*, No. CIV.A. 04-2027, 2005 WL 246188, at *1 (E.D. La. Jan. 31, 2005); *see also Harold v. City of New Orleans*, No. 07-9204, 2008 WL 5216223, at *1 (E.D. La. Dec. 12, 2008) ("[T]o avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations." (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992))).

"Defendants as movers bear the burden of showing that plaintiff can prove no set of facts consistent with the allegations in the complaint which would entitle plaintiff to relief."  *Resolution Trust Corp.*, 1996 WL 125591, at *4.  Nevertheless, a complaint should be dismissed for failing to state a claim upon which relief can be granted when "it appears beyond doubt that the plaintiff cannot prove any set of facts in support of [his or] her claim that would entitle [] relief."  *Cassibry*, 2005 WL 246188, at *1.

II.   **THE COURT SHOULD DISMISS WITH PREJUDICE PLAINTIFFS' SECOND LEGAL CLAIM: BREACH OF FIDUCIARY DUTY AND THIRD LEGAL CLAIM: UNFAIR TRADE PRACTICES PURSUANT TO THIS COURT'S APRIL 4, 2022 ORDER OF DISMISSAL WITH PREJUDICE.**

On April 4, 2022, this Court dismissed with prejudice Plaintiff's Second Legal Claim for Breach of Contract and Plaintiff's Third Legal Claim for Unfair Trade Practices.  Notwithstanding, and in direct contravention of the Court's Order, Plaintiffs have re-filed the same claims as if the Order was never entered.  These claims must be dismissed immediately.

The Fifth Circuit has stated that it is proper to omit claims that have been dismissed with prejudice from subsequently amended complaints because they are no longer part of the live pleadings.  *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 655 (5th Cir. 2017).  Consequently, no further actions can be taken with regard to such dismissed claims due to being barred from the litigation.  *Id.*  As a result, Defendants cannot take any further action with regard to either the Second Legal Claim or the Third Legal Claim in Plaintiffs' Third Amended Complaint and they should be dismissed with prejudice, *again*.

Defendants would further request that this Court enter sanctions against Plaintiffs for directly violating the Court's April 4, 2022 Order by knowingly re-filing their claims that have been dismissed with prejudice, and thus, requiring Defendants to relitigate these exact same issues. *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 724 (5th Cir. 2015) (reasserting dismissed claims within an amended complaint forces a court to take the perfunctory step of entering another dismissal order and provides a basis to impose sanctions on counsel for ignoring the court's previous ruling); *Johnson ex rel. Wilson v. Dowd*, 345 F. App'x 26, 30 (5th Cir. 2009) (explaining that the plaintiffs' disregard for the district court's order caused the defendants "to incur costs and fees to respond to the amended complaint, after having already been dismissed from the suit.").

### III.    THE COURT SHOULD DISMISS WITH PREJUDICE PLAINTIFFS' FIRST LEGAL CLAIM: BREACH OF JOINT VENTURE AGREEMENT PURSUANT TO THIS COURT'S APRIL 4, 2022 ORDER LIMITING ANY ADDITIONAL CLAIMS TO UNPAID RENT AND QUANTUM MERUIT.

In addition to dismissing the claims with prejudice, as part of the Court's April 4, 2022 Order, the Court ruled that the only claims Plaintiffs could bring in this action were claims for unpaid rent and a claim based upon quantum meruit.  However, in direct contravention to this Court's Order, Plaintiffs realleged the existence of a joint venture agreement and have now claimed that Defendants are in breach.

As this Court clearly ruled in its April 4, 2022 Order, Plaintiffs' claims at this time are limited to claims for unpaid rent and any recovery for quantum meruit; i.e., the work that they actually performed for the clients, if any, that remains unpaid.  The Court stated the following:

> for except insofar as it may state a claim for unpaid rent and quantum meruit," and further referred the parties to Magistrate Judge Currault "to determine the unpaid rent and quantum meruit owed."

[Rec. Doc. 27368 at 2].  Plaintiffs argued the existence of a joint venture agreement between the parties, but the Court rejected any such claims.  It clearly stated that Plaintiffs may proceed forward in this case, but only to the extent of seeking a remedy for any unpaid rent and/or for any recovery under a theory of quantum meruit.

Yet despite such an order, Plaintiffs have now realleged the existence of the same joint venture agreement, an agreement with no definable terms, and are seek damages related thereto, in direct contravention of this Court's Order.  As Plaintiffs' First Legal Claim does not seek either unpaid rent or relief based on quantum meruit, Plaintiffs' claim in their First Legal Count should be dismissed, with prejudice, based on the Court's April 4, 2022 Order and the appropriate sanctions should be levied against Plaintiffs and their counsel.  *Lincoln Gen. Ins. Co.*, 787 F.3d at 724.

## IV.   THE COURT SHOULD DISMISS WITH PREJUDICE PLAINTIFFS' FOURTH LEGAL CLAIM, IN THE ALTERNATIVE: QUANTUM MERUIT, UNPAID RENT.

As stated above, the Court dismissed with prejudice all claims with the exception of any claim that Plaintiffs could allege in relation to unpaid rent and/or quantum meruit.  The only count that addresses these claims, and then only in the alternative, is Count IV.  First, if the only claims that can be brought are these two claims, this Count cannot be considered an "alternative" count as there is no alternative that can be considered in this case.  For this first reason, dismissal is proper.

Second, Plaintiffs have failed to state a cause of action for either unpaid rent or quantum meruit.  As to a claim to recover any unpaid rent, Plaintiffs' make no claim whereby recovery could be made.  In order for rent to be due, Plaintiffs would have to allege that the parties entered into a lease agreement, either in writing or orally, and further allege the terms of the lease agreed upon between the parties.  Plaintiffs failed to allege any of these elements to recover on this claim.

Plaintiffs have failed to allege whether the parties entered into an oral or written lease.  And if written, failed to attach a copy of the lease agreement to the Third Amended Complaint. Plaintiffs have further failed to allege which parties entered into the lease; i.e., which of the named Defendants do they claim are actual parties to the lease.  Plaintiffs have further failed to allege the terms of the lease; i.e., whether it was a month-to-month, annual, or some other type of term binding between the parties.  Plaintiffs have further failed to allege the amount of rent Defendants agreed to pay, describe the space leased, or even state the address, and have further failed to allege any other terms between the parties related to the lease.

Finally, Plaintiffs have failed to allege that Defendants breached the lease by failing to pay rent.  They have further failed to allege how much money they are claiming is due in unpaid rent,

and thus, failed to alleged any amount of damages they are claiming in this case.  In short, they have not made a single allegation that would relate to the recovery of unpaid rent in accordance with the Court's April 4, 2022 Court Order.

Rather, Plaintiffs claim that the parties entered into a "joint venture agreement."  They claim that Plaintiffs are entitled to a recovery of quantum meruit and that "*as part of a recovery for quantum meruit*" they are entitled to recover "rental costs expended by the Plaintiffs in providing their Louisiana law offices for the Parties' joint venture work…"  These allegations cannot possibly constitute a proper claim for the recovery of unpaid rent.  First, the Court already found that there was no evidence of any joint venture agreement between the parties.  However, even if this Court assumes this fact to be true for purposes of this Motion to Dismiss only, the unpaid rent would have to relate to some obligation as part of this agreement.

Plaintiffs, however, seek to recover damages based on "quantum meruit for unpaid rent."  There is no such claim to recover unpaid rent based on a theory of quantum meruit.  In addition, as more fully discussed below, a quantum meruit claim would not exist in the event of the existence of an enforceable agreement between the parties.  So, even if a quantum meruit claim could somehow relate to a claim to recover rent, which it cannot, the fact that Plaintiffs have alleged the existence of an actual agreement within their Fourth Legal Claim would negate the ability to a recovery of quantum meruit therein.

Finally, Plaintiffs do not even allege a claim seeking unpaid rent.  Rather, they seem to have ignored the Court's Order, again, and made a claim for "***rental costs expended by Plaintiffs in providing their Louisiana law offices . . . .***"  This is not a claim for unpaid rent owed by Defendants.  It appears to be a claim where Plaintiffs allege they spent monies on renting other office space and are seeking to recover these costs from Defendants under a theory of quantum

11

meruit.

Thus, Plaintiffs appear to be continuing to ignore the Court's April 4, 2022 Order, do not come close to alleging a claim for unpaid rent, and instead, seek an entirely different relief which the Court has already negated.  For all of these reasons, as to any claim for "unpaid rent," the Third Amended Complaint should be dismissed.

As to a claim for quantum meruit, Count IV similarly fails to state a cause of action.  It alleges the existence of a contractual agreement; i.e., a joint venture agreement.  While the Court has already stated there is no such evidence to support such an agreement, as Plaintiffs allege the existence of a contractual agreement between the parties, they cannot recover for quantum meruit, the sole remedy available to them at this time pursuant to this Court's April 4, 2022 Order.

"*Quantum meruit* is a quasi-contractual remedy that allows a party, in the absence of an express agreement, to recover the reasonable value of his or her materials or services."  *Greenberg v. Thomas Edison Charter Sch.*, No. CIV.A. CPU4-11003483, 2011 WL 6210632, at *2 (Del. Com. Pl. Nov. 21, 2011); *Sw. Bell Tel. Co. v. Fitch*, 643 F. Supp. 2d 902, 911 (S.D. Tex. 2009); *Soni v. CrowdStrike Holdings, Inc.,* No. A-19-CV-969-LY, 2021 WL 3615841, at *5 (W.D. Tex. June 21, 2021), *report and recommendation adopted*, No. 1:19-CV-969-LY, 2021 WL 8083344 (W.D. Tex. Aug. 2, 2021).

In *Soni*, the court found that the plaintiffs were seeking to enforce claims that arose out of a stock options agreement.  Because the claims arose out of such agreement, the court held that the remedy of *quantum meruit* was not available.  2021 WL 3615841, at *5.  Here, Plaintiffs allege the existence of a joint venture agreement within their quantum meruit Count.  Based on this pleading, the Court must dismiss the quantum meruit Count in its entirety.

Notwithstanding, assuming that Plaintiffs claim that their claims for quantum meruit are separate and apart from any contractual agreement between the parties, Plaintiffs have failed to set forth any of the requirements to maintain such a claim.  "On a quantum meruit basis, an attorney may receive payment ***only for the service he performed and the responsibilities he assumed***." *Robert L. Manard III PLC v. Falcon Law Firm PLC*, 119 So. 3d 1, 7 (La. Ct. App. 2012) (emphasis added).  In Louisiana, "[u]nder both *Saucier* analysis and quantum meruit analysis, a court is supposed to use the factors articulated by Louisiana Rule of Professional Conduct 1.5(a) to determine the contribution that a lawyer made to his client's case," for purposes of determining the fee owed attorney for the value of the work performed.  *City of Alexandria v. Brown*, 740 F.3d 339, 352 (5th Cir. 2014); La. St. Bar., Art. 16, RPC, Rule 1.5(a).

The Louisiana Supreme Court has further indicated the following factors a court should consider when determine a quantum meruit attorneys' fees award, which are derived from the Louisiana Rule of Professional Conduct 1.5(a):

> (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.

*Id.*; La. St. Bar., Art. 16, RPC, Rule 1.5(a).

Here, Plaintiffs ignore all the factors necessary to establish an entitlement to quantum meruit.  They further fail to allege that they performed any services independent of the Agreement which limited such services to an objection that was unsuccessful years earlier.  They do not allege what services were performed, when the services were performed, and what the value of the services were that were actually performed.  Without these allegations and thereafter proving that

work was actually performed, Plaintiffs cannot recover any amounts from Defendants under a theory of quantum meruit in their Fourth Legal Claim, which must be dismissed with prejudice.

Plaintiffs, however, instead of actually alleging a claim for quantum meruit to recover attorneys' fees for work performed, claim that they are entitled to quantum merit "***attorneys' fees***" based simply on the fact that they are Louisiana attorneys.  They do not allege that they did anything, and, in fact, freely admit that they did not.  They do not allege that they performed any specific services, expended any costs, engaged in any marketing, or took any other actions on behalf of the clients.  Rather, they seem to be claiming that they can collect attorneys' fees under a theory of quantum meruit simply because they are members of the Louisiana state bar.

However, Louisiana law would clearly negate Plaintiffs' position.  Plaintiffs are seeking to recovery "***attorneys' fees.***"  Therefore, they must follow the requirements stated above for the recovery of "***attorneys' fees***" and prove that these factors exist to recover such attorneys' fees. *City of Alexandria*, 740 F.3d at 348  This is not a claim where Plaintiffs provided some benefit to a third party and are seeking an equitable recovery related thereto based upon a common law theory of unjust enrichment.  Thus, their citation to the laws regarding quantum meruit and unjust enrichment do not apply here.  Because Plaintiffs are seeking actual "***attorneys' fees,***" they must allege and prove the existence of the above stated factors, not simply that they provided a benefit to a third party and are entitled to be paid for it.

In sum, Plaintiffs allege the existence of a contractual agreement in their Fourth Legal Claim for quantum meruit, which would negate the claim entirely.  And even if they did not, they fail to allege any of the factors necessary to support a recovery of attorneys' fees, including the most important: what services did they actually render and perform.  As Plaintiffs failed to allege

the performance of any services, which they cannot because they did not perform any such services, their claim for quantum meruit must be dismissed with prejudice.

V.    **THE COURT SHOULD DISMISS WITH PREJUDICE PLAINTIFFS' THIRD AMENDED COMPLAINT IN ITS ENTIRETY BECAUSE PLAINTIFFS' CLAIMS ARE GOVERNED UNDER FLORIDA LAW.**

All of Plaintiffs' claims must be dismissed with prejudice since the alleged actions all arise out of the Agreement, which the parties agreed would be governed by Florida law.  [Rec. Doc. 27343-2 ¶ 9].  As Plaintiffs' claims are filed pursuant to Louisiana law, dismissal is proper.

The Agreement has a provision regarding additional service.  It further states that the Agreement is governed by Florida law, which would thereby cover any additional work engaged in by Plaintiff for DLG's clients.  As the claims filed by Plaintiffs all rely upon the application of Louisiana law, these claims must be dismissed with prejudice as to all parties herein.

Accordingly, the Court should grant Defendants' instant Motion and Plaintiffs' Third Amended Complaint should be dismissed with prejudice.

**WHEREFORE**, based on all of the foregoing reasons, Defendants respectfully request the Court enter an order: (1) granting this instant Motion; (2) dismissing Plaintiffs' Third Amended Complaint with prejudice; (3) awarding Defendants its reasonable attorneys' fees and costs as a sanction for re-filing claims previously dismissed with prejudice; and (4) granting such other and further relief that the Court deems just and proper.

Respectfully submitted,

**The Downs Law Group, P.A.**
3250 Mary Street, Suite 307
Coconut Grove, FL 33133
Telephone: (305) 444-8226
Facsimile: (305) 444-6773
jfriedman@downslawgroup.com

/s/ Jeremy D. Friedman

15

Jeremy D. Friedman, Esq.
Florida Bar No. 134643

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing has been electronically filed with Clerk of Court of the United States District Court for the Eastern District of Louisiana on May 31, 2022, by using the CM/ECF System, which will send notice of electronic filing to all parties of record on or about the date as set forth above, as well as via electronic mail in compliance with rules and regulations of this Court and the agreement to accept service via email between the parties herein on all counsel of record identified on the attached Service List.

/s/ Jeremy D. Friedman
Jeremy D. Friedman, Esq.

## SERVICE LIST

Robinson Law Offices, LLC
**Craig M. Robinson, Esq.**
Bar No.: 32934
700 Camp Street
New Orleans, Louisiana 70130
T: (504) 458-5100
F: (504) 717-4627
E-mail: craig@rlolegal.com

The Whitaker Law Firm, APC
**Alexis A. Butler, Esq.**
Bar No.: 32376
201 St. Charles Avenue
Suite 2500
New Orleans, LA 70170
T: (504) 313-0168
E-mail: lexybutler@whitakerlaw.net