# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | OIL SPILL BY THE OIL RIG | * | MDL NO. 2179 |
| | "DEEPWATER HORIZON" IN | * | SECTION: J |
| | THE GULF OF MEXICO ON | * | |
| | APRIL 20, 2010 | * | |
| | | * | Judge Barbier |
| Relates to: | 2:14-cv-657 | * | Mag. Judge Currault |
| | Melancon │ Rimes, LLC et al. | * | |
| | v. Downs Law Group, LLC, et al. | * | |

**********************************************

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

MAY IT PLEASE THE COURT:

Plaintiffs in the above-captioned litigation, Melancon │ Rimes, LLC, Jason L. Melancon, Sterbcow Law Group, LLC, and Marx D. Sterbcow, (collectively "Plaintiffs") respectfully submit this Memorandum in Opposition to the Motion to Dismiss Plaintiffs' Third Amended Complaint With Prejudice filed by Defendants, Downs Law Group, P.A. and Craig T. Downs (collectively "Defendants").

## I.    SUMMARY OF ARGUMENT

Defendants' Motion to Dismiss should be denied pursuant to Federal Rule of Civil Procedure 12(b)(6). During a status conference with Magistrate Currault, Defendants opposed discovery, claiming Plaintiffs lacked an "operative complaint;" therefore, at the insistence of Defendants, and at the direction of Magistrate Currault in the Scheduling Order, Plaintiffs filed the instant Third Amended Complaint.

In filing the Third Amended Complaint, Plaintiffs were in the unique and difficult situation of being told by the Court that all their claims were dismissed, but at the same time they were allowed to pursue claims for *quantum meruit* and unpaid rent. Accordingly, in amending the

complaint, out of an abundance of caution to preserve appeal rights, Plaintiffs reasserted their previously dismissed claims and alleged alternatively *quantum meruit* and unpaid rent, claims which were *sua sponte* determined by the Court.  Defendants seek to dismiss these claims, but the Court has already dismissed Plaintiffs' original claims, mooting Defendants' argument.  Plaintiffs have alleged sufficient facts to support their claims of *quantum meruit* and unpaid rent, which the Court authorized Plaintiffs to pursue.

Finally, Plaintiffs' claims are governed by Louisiana law because all of the actions giving rise to Plaintiffs' claims occurred in Louisiana: (1) the solicitation and execution of contingency fee contracts with Louisiana citizens in Louisiana, (2) the practice of law in Louisiana, (3) an oral agreement made in Louisiana by Florida attorneys with Louisiana attorneys, and (4) the interference with representation of Louisiana clients by Florida attorneys.

## II.    FACTUAL BACKGROUND

This case arises from an agreement between independent law firms to jointly represent mutual clients in the BP Oil Spill MDL, and the Defendants' subsequent unilateral and surreptitious removal of Plaintiffs as participating counsel for those joint clients. As restricted by the Court, Plaintiffs seek their rightful share of attorneys' fees and related damages under legal theories of *quantum meruit* and unpaid rents, respectively  Because most of the Defendants' "Introduction and Material Facts" contains statements outside Plaintiffs' Third Amended Complaint, including numerous mischaracterizations of facts and events, Plaintiffs provide the following summary of its factual allegations in this case.

In August 2012, Downs Law Group, P.A., a Florida law firm, contacted Sterbcow Law Group, a Louisiana law firm, to jointly represent certain client cases related to the BP oil spill MDL before this Court. Initially, Downs Law Group requested assistance from Sterbcow Law

Group in filing a motion for *pro hac vice* admission to the Eastern District of Louisiana and in filing an objection to the proposed BP Medical Benefits Class Action Settlement.  (R. Doc. 27394 at pp. 5-6).  After discussing the matter, Downs Law Group and Sterbcow Law Group thereafter requested litigation assistance by Melancon | Rimes, LLC, another Louisiana law firm.   It is undisputed that the three law firms agreed in writing, in the Attorney Participation Agreement ("APA"), that Melancon | Rimes, LLC and Sterbcow Law Group would receive ten percent (10%) of all attorney fees derived from representing certain BP oil spill clients who filed the original objection to the proposed BP Medical Benefits Class Action Settlement.[1]  *Id.*; (R. Doc. 1-3, Case No. 14-657).

The written APA memorialized the original scope of work agreed upon between the parties to be conducted by the Plaintiffs, including filing the objections on behalf of claimants, filing a motion for *pro hac vice* for a Downs attorney to appear before this Court, and Jason L. Melancon, Esq. of Melancon | Rimes, LLC to personally appear and argue on behalf of the certain joint clients at the final fairness hearing.  *See id*.  The APA also expressly stated that Downs Law Group could request Plaintiffs to perform additional services, and that a request for additional services would entitle Plaintiffs to additional attorney fees.  *See id*.

Plaintiffs and Defendants proceeded with the agreed upon work under the APA.   On November 8, 2012, the Court conducted the Fairness Hearing on the BP Medical Benefits Class Action Settlement.  (R. Doc. 27394 at p. 6).  Plaintiff Jason L. Melancon presented the objections on behalf of the parties' joint clients before the Court. The Court overruled the objections and approved the MDL Medical Benefits Class Action Settlement Agreement.  *Id*.

---

[1] These indigent Spanish speaking clients opposed the BP Medical Benefits Class Action Settlement on the basis that they could not financially afford the necessary medical treatment required to obtain a diagnosis from a qualified health care physician before submitting a claim for medical benefits; therefore, these clients sought up-front financial assistance so that BP oil spill workers could seek medical treatment before submitted a claim for benefits.

Immediately after the Fairness Hearing, Craig Downs, Jason L. Melancon, and Marx D. Sterbcow discussed, in person, in New Orleans, Louisiana, the impact of the Court's decision to overrule the objections. The parties further discussed a plan to appeal the Court's ruling. Craig Downs specifically discussed the large number of indigent Spanish speaking BP oil spill cleanup workers located in Louisiana, many of whom might qualify for medical benefits under the settlement agreement. Craig Downs specifically requested that Jason L. Melancon and Marx D. Sterbcow perform additional services outside the original written APA by assisting Downs Law Group with soliciting and marketing to Louisiana-based BP oil spill cleanup workers and with conducting meetings to execute contingency fee agreements with potential clients at Plaintiffs' Louisiana offices. Plaintiffs further orally agreed with Craig Downs to assist the Downs Law Group with drafting the appeal before the United States Fifth Circuit Court of Appeal.

It is indisputable that Plaintiffs and Defendants continued to closely work together on litigation matters arising outside the original scope of APA, specifically marketing, soliciting, and representing new MDL claimants. *Id.* In fact, Downs Law Group utilized the participation of two Louisiana-based lawyers in its marketing efforts with Louisiana-based BP oil spill workers by expressly stating in the contingency fee agreements that Jason L. Melancon and Marx D. Sterbcow were assisting Downs Law Group on their respective cases. Thus, the parties specifically agreed that Plaintiffs would continue serving as co-counsel and assisting Defendants as requested. In fact, the co-counsel arrangement and contractual relationship between Downs Law Group and Melancon | Rimes, LLC and Sterbcow Law Group was legally necessary and required for the Defendants, a Florida law firm and Florida attorney, to actively market, solicit, and advance medical costs in Louisiana to Louisiana clients of the parties. *Id.*

Contrary to Defendants' assertions, the limited motion for *pro hac vice* admission filed by

Plaintiffs before the Eastern District of Louisiana on certain client cases did not authorize Downs Law Group to actively market and solicit Louisiana citizens; rather, such actions would be in contravention of rules established by the Louisiana Supreme Court governing the practice of law in Louisiana and solicitation of Louisiana citizens. Thus, Plaintiffs and Defendants agreed and understood that the ten percent (10%) of attorney fees as set forth in the APA would extend to new Louisiana-based clients, specifically in light of Defendants' request for additional assistance under the APA and given Plaintiffs' role in facilitating the legal and practical execution of contingency fee agreements with joint clients. *Id.*

From approximately November 2012 to October 2013, the Plaintiffs performed the additional services requested by Craig Downs in New Orleans after the Fairness Hearing. Plaintiffs dutifully participated in marketing, soliciting, and executing contingency fee agreements with new Louisiana clients at Plaintiffs' Baton Rouge and Harahan offices. *Id.* at p. 8. Evidencing the oral agreement reached between Messrs. Downs, Melancon, and Sterbcow, every contingency fee agreement expressly identified Messrs. Melancon and Sterbcow as assisting Downs Law Group in filing their respective claim. *Id.*; *see e.g.* (R. Doc. 1-5, Case No. 14-657).

From approximately November 2012 through October 2013, Melancon | Rimes hosted new client meetings at its Baton Rouge office. At no time did Melancon | Rimes, LLC charge or demand rents to Downs Law Group for signing up new clients. (R. Doc. 27394, at p. 8).

From approximately November 2012 through July 2013, Sterbcow Law Group hosted new client meetings at its Harahan office. Sterbcow Law Group hosted new client meetings rent free for eight (8) months. *Id.* In July 2013, Downs Law Group proposed paying Sterbcow Law Group a nominal fee of $500.00 per month to host a full-time Downs employee in its office. *Id.* Marx D. Sterbcow agreed to accept the nominal $500.00 per month from Downs Law Group, yet Downs

Law Group neither paid nor attempted to pay Sterbcow Law Group the $500 per month fee until the instant dispute arose in October 2013.  *Id.*

       In addition to executing contingency fee agreements with new Louisiana clients, Plaintiffs further assisted Downs Law Group with marketing efforts, legal interpretations of the BP Medical Benefits Class Action Settlement, legal strategies for filing valid claims for medical benefits under this Settlement, and legal theories for filing an appeal.  *Id.* at pp. 8-10.  After approximately 11 months of providing the additional assistance requested by Craig Downs, Plaintiffs learned that Downs Law Group signed up approximately 1,700 new joint clients, all of whom executed the contingency fee retainer agreements identifying Jason L. Melancon and Marx D. Sterbcow as counsel assisting with the litigation.  *See* (R. Doc. 1-8, Case No. 14-657).  Because of the large number of clients, in October 2013, Melancon | Rimes asked Downs Law Group to confirm the exact number of mutual clients for legal malpractice insurance purposes; however, Downs Law Group only identified approximately 73 joint clients. *See* (R. Doc. 1-7, Case No. 14-657). Plaintiffs confronted Defendants regarding the extreme discrepancy in the number of clients, *i.e.,* 1,700 versus 73.  (R. Doc. 27394 at p. 10).

       After the confrontation, and without any notice whatsoever to Plaintiffs, Downs Law Group sent a letter to all mutual clients who previously executed a contingency fee retainer agreement containing the names of Jason L. Melancon and Marx D. Sterbcow as participating counsel.  *Id.* at pp. 10-11.  Defendants' letter misrepresented to the joint clients that Messrs. Melancon and Sterbcow were no longer assisting the Downs Law Group with the litigation and directed the clients to sign a new contingency fee agreements removing their names.  *Id.*

       Downs Law Group exclusively possessed the joint client records, the majority written in Spanish, and proceeded to solely represent these clients in the MDL.  Plaintiffs initially sought

legal relief by filing a lawsuit in Florida state court and contacting the MDL claims administrator. *Id*. at p. 12.   However, Plaintiffs dismissed the Florida action and filed the instant action after the Court's exclusive jurisdiction clause in the Settlement Agreement became final and binding over all MDL matters. Moreover, the MDL claims administrator refused to provide any assistance to Plaintiffs without a copy of the contingency fee agreements and identity of the clients, which documents Defendants have heretofore refused to provide to Plaintiffs.

Defendants have received or will receive a fund comprised of attorneys' fees for the representation of these clients in the BP MDL, of which Plaintiffs are legally entitled to no less than ten percent (10%) of attorney fees according to the prior oral joint venture agreement, or, alternatively, ten percent (10%) or more of fees pursuant to *quantum meruit*. To date, Plaintiffs have received no compensation arising from any attorney fees received by Defendants from either the 73 joint clients initially identified by Downs Law Group, nor the over 1,700 joint clients executing contingency fee agreements identifying Plaintiffs as co-counsel.

## III.   PROCEDURAL BACKGROUND

This case was originally filed in 2014 before the Court but was administratively stayed during the course of the MDL proceedings until 2021.  On December 21, 2021, Plaintiffs filed the First Amended Complaint, alleging a breach of joint venture contract/fiduciary duty and violation of LUTPA.  (R. Doc. 27307).   In response, Defendants filed a Rule 12(b)(6) motion to dismiss. On April 1, 2022, Judge Barbier presided over a hearing on the previous motion to dismiss.  The Court dismissed Plaintiffs' First Amended Complaint "except insofar as it may state a claim for unpaid rent and a *quantum meruit* fee," and referred the parties to Magistrate Currault to resolve these remaining matters.  *Id*. Ex. A (Trans. Apr. 1, 2022, Hr'g at 50:1-6); *see also* (R. Doc. 27368).

Thereafter, the case was referred to Magistrate Currault and the parties provided consent

to Magistrate Currault to resolve certain issues in the case, including dispositive, discovery, and other pretrial motions.  (R. Doc. 27393).   During the initial status conference with Magistrate Currault, Defendants objected to conducting discovery, claiming there existed no "operative complaint;" therefore, Defendants insisted that Plaintiffs file an amended complaint.  Accordingly, Magistrate Currault approved the filing of an amended complaint in the Scheduling Order. Plaintiffs thereafter filed the instant Third Amended Complaint alleging *quantum meruit* and unpaid rents, and in the alternative to their original breach of contract/fiduciary duty and LUTPA claims.  Out of an abundance of caution, Plaintiffs did not delete their original claims to pretermit Defendants from arguing on appeal that Plaintiffs voluntarily dismissed the original claims by deleting same from the Third Amended Complaint.

Plaintiffs' Third Amended Complaint does not exclusively copy-and-paste their dismissed claim of breach of contract and LUTPA; rather, Plaintiffs amended their complaint to include factual allegations relative to *quantum meruit* and unpaid rents, as *sua sponte* ordered by the Court. *See* (R. Doc. 27394); *compare* (R. Doc. 27307)(First Amended Complaint).  Plaintiffs will not voluntarily delete factual allegations or claims relative to their breach of contract/fiduciary duty and LUTPA claims, so as to ensure that Plaintiffs' substantive legal rights on these claims are preserved on appeal. Notwithstanding, Plaintiffs fully understand that their claims are presently limited to *quantum meruit* and unpaid rents, only, pursuant to Judge Barbier's ruling on April 1, 2022.  Just recently, the Court ordered that Judge Barbier, rather than Magistrate Currault, would be resolving Plaintiffs' remaining claims.  *See* (R. Doc. 27406).

As it relates to Plaintiffs' new factual allegations, during the April 1, 2022, hearing on Defendants' original Rule 12 motion to dismiss, the Court inquired as to the extent of advertising conducted by Plaintiffs in furtherance of the joint representation of clients, the billing and paying

for use of Plaintiffs' office space for meeting with joint clients, the extent of work conducted by Plaintiffs on behalf of the joint clients, Plaintiffs' understanding of the portion of fees to which they would be entitled for their work in furtherance of the joint clients' claims, and evidence of the oral joint venture agreement between the parties. *See* Ex. A. However, because formal discovery has never commenced, counsel from both sides were not able to answer these questions fully or accurately. *See id*. Plaintiffs thereafter investigated the matters and alleged facts and events supporting the legal claims of *quantum meruit* and unpaid rents. *See* (R. Doc. 27394). Thus, Plaintiffs added the factual allegations and alternative claims for *quantum meruit* and unpaid rent, as *sua sponte* ordered by Judge Barbier. *See id*.

For the reasons provided below, Plaintiffs merely reiterate their claims for breach of the joint venture agreement/fiduciary duty and for violation of LUTPA pending the outcome of any future appeal. Nevertheless, alternatively, Plaintiffs properly alleged facts relating to their current claims for *quantum meruit* and unpaid rent, as *sua sponte* ordered by Judge Barbier. Accordingly, Defendants' Motion to Dismiss should be denied because Plaintiffs' operative legal theories are limited to *quantum meruit* and unpaid rents, only, as *sua sponte* ordered by the Court.

## IV.     LAW & ANALYSIS

### A.  Standard of Review – Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) motions to dismiss "are viewed with disfavor and rarely granted." *Bieller v. Atl. Specialty Ins. Co.*, 2016 WL 915424, at *1 (E.D. La. Mar. 10, 2016)(citing *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cit. 1997)). "When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." *Id*. (citing *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996)). " 'To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accept as true, to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)).

**B. Plaintiffs Should Not be Subjected to Sanctions for Filing the Third Amended Complaint Because Defendants Insisted on the Filing, Magistrate Currault Approved the Filing in Her Scheduling Order & Plaintiffs' Claims Were Filed in Order to Preserve Appellate Rights**

Defendants seek to impose the draconian measure of sanctions upon Plaintiffs for filing the Third Amended Complaint, despite Plaintiffs' filing the Complaint at the insistence of Defendants, in compliance with the Magistrate's Scheduling Order, and with the cautionary intention of preserving appellate rights for all of Plaintiffs' claims. At the status conference with Magistrate Currault, Defendants insisted that Plaintiffs lacked an "operative complaint" in the case. Accordingly, Magistrate Currault authorized Plaintiffs to file the Third Amended Complaint, and Plaintiffs timely did so, alleging the prior claims dismissed by the Court and claims in the alternative for *quantum meruit* and unpaid rent as *sua sponte* determined by the Court.

Plaintiffs realleged their claims for breach of the joint venture agreement/fiduciary duty and violation of the Louisiana Unfair Trade Practices Act solely out of an abundance of caution to preserve these claims for appeal. Realleging these claims was not done for any undue or improper purpose. Plaintiffs were concerned that by not alleging these claims would be construed as a voluntary withdrawal of the claims, rendering these claims vulnerable to dismissal on appeal.

Plaintiffs' Third Amended Complaint also expressly alleges the alternative claims for *quantum meruit* and unpaid rent, as *sua sponte* ordered by the Court, thereby ensuring the preservation of these legal claims on appeal. *See e.g. Walker v. Webco Indust., Inc*., 562 F. App'x 215, 217 (5th Cir. 2014) (finding claims not asserted in amended complaint will not be considered on appeal). Had Plaintiffs not included these claims in the Third Amended Complaint, any appeal rights with regard to these claims would not be considered.

Plaintiffs also clarified and corrected the facts in the record supporting their claims.  For example, during the April 1, 2022, hearing the Court asked questions regarding the use of Plaintiffs' offices to sign-up and meet with the joint clients and the compensation paid to Plaintiffs for the use of their offices; Defendants stated "absolutely" Plaintiffs billed Defendants for the use of office space.  Ex. A.  Plaintiffs have now corrected these facts in the Third Amended Complaint. Plaintiffs have confirmed and alleged that Downs Law Group utilized the Baton Rouge offices of Melancon │ Rimes, LLC for over eleven (11) months without compensation, and voluntarily offered to pay Sterbcow Law Group a mere $500 per month after eight (8) months of free office utilization. *See* (R. Doc. 27394, at p. 8).  Thus, Defendants neither offered to pay nor actually paid Melancon │ Rimes, LLC for use of its office space; nor did Defendants attempt to pay Sterbcow Law Group for the nine months of free office utilization from November 2012 to July 2013, nor attempt to pay the three months of office utilization at $500.00 per month until the instant dispute arose in October 2013. *See id*.

For example, the Court asked more than once whether any advertising was done by the Plaintiffs, and Defendants responded, "not a single part at all."  However, Plaintiffs have now identified information indicating that Plaintiffs did in fact facilitate and contribute to certain aspects of the marketing and advertising for clients of the joint parties and included these facts in the Third Amended Complaint.  *See* (R. Doc. 27394, at p. 7).

The Court also inquired into other salient issues, such as the anticipated fee sharing between the parties for the work conducted pursuant to the joint venture agreement and written evidence of the joint venture agreement.  *See* Ex. A.  Plaintiffs clarified these issues in the Third Amended Complaint, identifying the previously agreed-upon ten percent (10%) as the portion of attorney fees owed to Plaintiffs and clarifying that the agreement between Craig Downs, Jason L.

Melancon and Marx D. Sterbcow constituted an oral agreement to perform additional services under the APA, as contemplated between the parties, and as perfected between the parties, in person, in New Orleans, Louisiana, following the Fairness Hearing.  *See* (R. Doc. 27394, at p. 6).

Moreover, the cases cited by Defendants to support their arguments for automatic dismissal of Plaintiffs' claims and for sanctions for filing the Third Amended Complaint are inapplicable to the present case.  For example, in *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 655 (5th Cir. 2017), the plaintiff chose not to include dismissed claims in an amended petition, and the Fifth Circuit concluded that even so, the plaintiff did not waive its appeal rights on the dismissed claims.  *Lincoln General Insurance Co. v. U.S. Auto Insurance Services, Inc.*, 787 F.3d 716, 724 (5th Cir. 2015), is also dissimilar to the present case as it involved a plaintiff that voluntarily dismissed claims, claims which the plaintiff did not include in its amended complaint, and thus the appellate court found that the plaintiff had waived appellate rights with regard to these claims.

Finally, the third case cited by Defendants, *Johnson ex rel. Wilson v. Dowd*, 345 F. App'x 26, 30 (5th Cir. 2009), does not apply to the present case.  *Johnson* involved a plaintiff who was granted leave to file an amended complaint only as to defendants who were not previously dismissed on grounds of immunity.  Notwithstanding, the plaintiff filed an amended complaint that renamed the immune defendants and "did not contain any new allegations and reiterated the same claims" against the immune defendants.  Plaintiffs herein did not rename Jeremy Friedman as a named defendant after the Court dismissed Mr. Friedman from the action.  Rather, Plaintiffs restated their original legal claims, as well as two new legal claims for *quantum meruit* and unpaid rent, against the remaining Defendants.

In light of this Fifth Circuit jurisprudence, Plaintiffs took the safe course of action by not voluntarily failing to raise their legal claims in an effort to preserve appellate rights for these

claims.  Counsel should not be sanctioned for taking an action that preserves the client's substantive legal rights.

Ultimately, Plaintiffs filed the Third Amended Complaint at the insistence of Defendants and consistent with the Court's Scheduling Order (R. Doc. 16, Case No. 14-657).  The Third Amended Complaint does not include any dismissed defendants, such as Jeremy Friedman, and merely reiterates the breach of contract/fiduciary duty and LUTPA claims, and only alleges the two new legal claims of *quantum meruit* and unpaid rent, as *sua sponte* ordered by the Court during the April 1, 2022, hearing. Thus, Plaintiffs' Third Amended Complaint was not filed "for any improper purpose" or "without evidentiary support" as is required for sanctions pursuant to Federal Rule of Civil Procedure 11.

### C.  Plaintiffs Properly Alleged a Claim for *Quantum Meruit* in the Third Amended Complaint

The Third Amended Complaint properly alleges a claim for *quantum meruit* and is consistent with the Court's Order that Plaintiffs be permitted to pursue this claim.

*Quantum meruit* as an equitable theory of recovery that originally began in Louisiana via the Supreme Court's 1945 decision of *Doll v. Albert Weiblen Marble & Granite Co.*, 207 La. 769, 773-774 (1945) ("[W]here one employs the services of another without specifying what compensation will be paid therefor, or where one avails himself of the services of another in the performance of a task, he is bound to compensate the person so employed or who performs such a service."). Q*uantum meruit,* as an equitable claim, allows a party to recover if the primary claims are dismissed.  *See e.g. U.S. ex rel. T&C Dirtworks, Inc. v. L& S-CKY JV*, 2011 WL 11932944, at *5 (E.D. La. Mar. 28, 2011); *Dugas v. Aaron Rents, Inc*., 2002-1276; 839 So. 2d 1205, 1208 (La. App. 3 Cir. 3/5/03);  *Kirchberg v. Holloman*, 248 So. 2d 347, 348 (La. App. 4 Cir. 1971).

In the context of an attorney discharged by the client without cause, the Louisiana Supreme

Court in *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102 (La. 1978), examined *quantum meruit* under the factors set forth in Rules of Professional Conduct Rule 1.5.  These relevant factors for consideration are:

1. The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

2. The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

3. The fee customarily charged in the locality for similar legal services;

4. The amount involved and the results obtained;

5. The time limitation imposed by the client or by the circumstances;

6. The nature and length of the professional relationship with the client;

7. The experience, reputation, and ability of the lawyer or lawyers performing the services; and

8. Whether the fee is fixed or contingent.

*Davis v. Zurich American Ins. Co.*, 2020-419 (La. App. 3 Cir. 4/7/21), 318 So.3d 306, 310.

In matters concerning contingency fee agreements, the Louisiana Supreme Court further explained: "The amount prescribed in the contingency fee contract, not *quantum meruit*, is the proper frame of reference for fixing compensation for the attorney prematurely discharged without cause." *Saucier*, 373 So.2d at 118.  "Further, that fee should in turn be allocated between or among the various attorneys involved in handling the claim in question, such fee apportionment to be on the basis of factors which are set forth in the Code of Professional Responsibility." *Id.*

Plaintiffs have properly alleged a claim for *quantum meruit* pursuant to the foregoing law in the Third Amended Complaint.  As alleged in this Complaint, immediately after the Fairness Hearing, Craig Downs requested Jason L. Melancon and Marx D. Sterbcow to perform additional services outside the services originally agreed upon in the written APA. Craig Down specially

asked Messrs. Melancon and Sterbcow to assist Downs Law Group with soliciting and participating in claims filed by Louisiana-based BP oil spill cleanup workers, the majority of whom exclusively spoke Spanish. Neither Mr. Melancon nor Mr. Sterbcow spoke Spanish fluently, yet both possessed professional law offices in Baton Rouge and Harahan, respectively.

Thus, Craig Downs proposed for his law firm's Spanish speaking representatives to meet with potential new clients at Plaintiffs' Louisiana offices, and for Messrs. Melancon and Sterbcow to co-counsel for purposes of marketing and soliciting Louisiana based client. Craig Downs asked Plaintiffs to perform additional nominal assistance in filing medical benefits claims, as requested from time to time by Downs Law Group.

Messrs. Melancon and Sterbcow accepted Craig Down's proposed co-counseling arrangement with the understanding and express agreement that they would continue to receive 10% of all attorney fees, as originally contemplated under the written APA, on all new contingency fee agreements executed with Louisiana-based clients.   This created an oral joint venture agreement.[2]

To the extent the Court restricted Plaintiffs' claims to *quantum meruit*, only, Plaintiffs' good faith performance of the additional services personally requested by Craig Downs not only forms the factual basis of recovery for attorney fees under *quantum meruit*, but also support Plaintiffs' original claim for damages under a breach of joint venture/fiduciary duty previously

---

[2] *See Raspanti v. Litchfield*, 2019-0523 (La. App. 4 Cir. 2/12/20); - - So. 2d - -; 2020 WL 710812, at *12; (citing *Scurto v. Siegrist*, 598 So. 2d 507, 509 (La. App. 1 Cir. 1992), *writ denied*, 600 So. 2d 683 (La. 1992)) ("[W]here an attorney associates, employs, or procures another attorney to assist in handling [a] case, the agreement regarding the division of legal fees is considered a joint venture, whereby the interest each attorney has under such a joint venture gives the parties the right to participate in the fund resulting from the payment of attorney's fees from the client.").

dismissed by the Court.   *See* (R. Doc. 27394).

The Third Amended Complaint alleged that the parties moved forward with the work and agreed upon performance additional services over a course of approximately 11 months, signing-up thousands of new Louisiana based BP oil spill clients at Plaintiffs' Louisiana offices, all of whom executed contingency fee retainer agreements expressly identifying Jason L. Melancon and Marx D. Sterbcow as participating co-counsel located in Louisiana.   *See id*.   In fact, Plaintiffs' direct involvement as licensed Louisiana attorneys was absolutely necessary for Defendants, a Florida attorney and Florida law firm, to solicit, sign-up, market to, represent, and advance medical costs to Louisiana citizens.   *See id*. at p. 7.

Contrary to Defendants' suggestion, Defendants' limited admission *pro hac vice* in the Eastern District of Louisiana for the objection hearing did not legally permit Defendants to actively solicit any and all Louisiana citizens for legal representation. The Louisiana Supreme Court, not the Eastern District of Louisiana, regulates the practice of law in Louisiana, including the marketing and solicitation of Louisiana citizens. *See* Louisiana Supreme Court Rule XVII, Section 13 (B)(7) (prohibiting out-of-state attorneys who are admitted *pro hac vice* from soliciting, advertising, or otherwise holding themselves out in publications in the state as available to assist in litigation in the state). Plaintiffs will testify at trial that Defendants knew co-counseling with Plaintiffs was legally required under Louisiana law for their marketing and solicitation efforts, and thus Defendants purposefully included the names of Jason L. Melancon and Marx D. Sterbcow's names on the contingency fee agreements to comply with the state's rules and regulations regarding the unauthorized practice of law in Louisiana.

As agreed, Plaintiffs initially provided Craig Down's requested additional services by providing their Louisiana law offices to representatives of Downs Law Group free of charge. Jason

L. Melancon provided the Baton Rouge law offices of Melancon | Rimes, LLC free of charge from November 2012 through October 2013. Marx D. Sterbcow provided the Harahan law offices of Sterbcow Law Group free of charge from November 2012 through July 2013. In July 2013, Downs Law Group offered to pay a nominal fee of $500 per month to host a Downs employed attorney full-time. *Id*. at p. 8. Notably, Downs Law Group never paid three months of invoices, which rent they voluntarily offered to pay, until the instant dispute arose in October 2013. Moreover, as alleged, and as will be proven at trial, Plaintiffs facilitated marketing and advertisement efforts related to the joint clients. *Id*. at p. 7. Plaintiffs also conducted legal writing, analysis, and strategy in furtherance of the joint client claims. *Id*. at pp. 6, 14.

After Downs Law Group utilized Plaintiffs' names and professional offices to market, solicit, and execute approximately 1,700 contingency fees agreements over eleven (11) months, Defendants' unilaterally and surreptitiously contacted the joint clients and requested the clients to execute new retainer agreements that removed the names of Plaintiffs as participating counsel. *See id*. at p. 15. Defendants' actions prevented Plaintiffs from representing the joint clients and from assisting in the filing of claims for medical benefits. *See id*. at p. 15. Nevertheless, Plaintiffs and Defendants agreed that the additional services performed by Plaintiffs would justify ten percent (10%) of the attorneys' fees generated on these 1,700 cases, the same as the agreed upon percentage of attorney fees under the original APA. *See id*. at pp. 5-6. It defies logic and common sense to believe Defendants' proposition that Plaintiffs provided Downs Law Group the legal ability to market, solicit, and execute contingency fee contracts with 1,700 Louisiana based clients over an 11-month period of time with absolutely no expectation of compensation or remuneration, other than $1,500 for unpaid rental/hosting fee to Sterbcow Law Group and $0.00 to Melancon | Rimes.

During oral argument on Defendants' prior motion to dismiss, counsel for Defendants, Jeremy Friedman, acknowledged on the record that Defendants asked Plaintiffs to serve as local counsel under the original APA. Ex. A at 29:23-30:1, 30:5-6. Mr. Friedman further admitted during the hearing that the original APA contemplated the payment of additional attorney fees if Downs Law Group requested Plaintiffs to perform additional services outside the terms of the original APA. Finally, Mr. Friedman admitted that Plaintiffs "helped sign-up the clients" at Plaintiffs' offices in Louisiana. Ex. A at 30:16-19, 31:3-4, 32:19-20. According to the terms of the original APA, Plaintiffs are and would be entitled to additional attorney fees by performing additional work outside the scope of work on new client cases executed outside the certain clients listed on the original APA. *Id*. at 47:9-16.

Moreover, Plaintiffs have properly pled the elements of Rule 1.5(a), where possible to do so. Contrary to Defendants' characterization, the Rule 1.5(a) factors are for the Court or jury to consider in calculating the amount of the Plaintiffs' attorneys' fees award and are not dispositive of whether Plaintiffs are entitled to attorneys' fees under a *quantum meruit* claim.

Facts relating to several factors under Rule 1.5 are unknowable to Plaintiffs, because Defendants have consistently refused to produce the requested evidence in discovery. For example, Plaintiffs are unable to plead regarding the critical issues of the "amount involved and the results obtained", because Defendants have refused to produce the contingency fee contracts of the joint clients or any information as to the results obtained for these clients. Likewise, Plaintiffs are unaware of "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly," because Defendants have refused to produce any evidence of such. In determining the quantum of Plaintiffs' fee sharing, it is highly relevant to know whether, after Defendants terminated Plaintiffs as counsel, Defendants were able

to quickly and successfully resolve the joint clients claims through a claims process or whether the joint client claims, for example, proceeded through lengthy litigation before resolution.

For the remaining factors, the Third Amended Complaint clearly sets forth that Plaintiffs worked as co-counsel with Defendants over the course of 11 months to sign-up and represent approximately 1,700 clients who signed contingency fee retainer agreements containing the names of Plaintiffs.  *See* (R. Doc. 27394, at pp. 5-13).  Mr. Melancon conducted legal analysis and formulated legal strategy for filing the new client claims in the MDL.  *See id*. at p. 6.  Mr. Sterbcow facilitated marketing efforts for these joint client claims.  *See id*. at p. 7.  Plaintiffs provided their two Louisiana law offices during the 11-month time period to facilitate signing-up the joint clients, and by Defendants' own admission, Plaintiffs helped sign-up the joint clients.  *See id*. at pp. 7-10. While Defendants attempted to pay a nominal amount of $500 for a few months of use of the SLG law offices, Defendants never paid or attempted to pay Melancon | Rimes, LLC for use of its offices or SLG for the other eight months of office use.  *See id*. at p. 8.

Accordingly, Plaintiffs pled sufficient facts in the Third Amended Complaint to establish their claim and entitlement to attorney's fees under *quantum meruit*.

### D. Plaintiffs Properly Alleged a Claim for Unpaid Rent in the Third Amended Complaint

Plaintiffs' Third Amended Complaint properly alleges a claim for unpaid rent, consistent with the Court's *sua sponte* determination that Plaintiffs' may pursue this claim.

The Court's April 1, 2022, Order provided that Plaintiffs could seek compensation for unpaid rent as a result of Defendants' use of Plaintiffs' law offices to sign-up the joint clients. *See* Ex. A at 48:12-49:18. Notwithstanding this Court's Order, Defendants now argue that Plaintiffs have failed to state a cause of action for unpaid rent, yet the Court specifically stated that Plaintiffs may pursue a claim for unpaid rent.  Ex. A at 49:14-18, 50:1-3.  Accordingly, on this basis alone

Defendants' arguments for dismissal of the unpaid rent claim must fail.

According to the Defendants, Plaintiffs cannot seek unpaid rent because there are no allegations of a rental agreement or breach of any such rental agreement.  As it relates to Plaintiffs Jason L. Melancon and Melancon | Rimes, LLC, these Plaintiffs concede that there exists no oral or written rental agreement to utilize its Baton Rouge law offices. There exists no rental agreement, because that was not the agreement reached between Craig Downs and Jason L. Melancon in New Orleans after the Fairness Hearing. As previously explained, Craig Downs requested the use of Mr. Melancon's law office in exchange for 10% of the attorney fees generated on Louisiana based mutual clients. Mr. Melancon did not agree to a monthly rental, thus the reason why representatives of Downs Law Group utilized Mr. Melancon's law office rent free from November 2012 through October 2013.

As it relates to plaintiffs Marx D. Sterbcow and Sterbcow Law Group, Mr. Sterbcow entered into the same agreement with Craig Downs regarding the use of his Harahan law offices. However, in July 2013, representatives of Downs Law Group proposed a Downs-employed attorney working full-time in Mr. Sterbcow's law office, and thus voluntarily offered to pay a nominal rental/hosting fee of $500 per month. As agreed, Sterbcow Law Group invoiced Downs Law Group for three months' rent. However, at the time the instant dispute arose in October 2013, Downs Law Group had yet to pay a single invoice for the $500 month rent it voluntarily offered to pay in the first place.

Thus, the Court's identification of unpaid rent as a legal remedy for Plaintiffs falls within the factors applicable to *quantum meruit*, which is an extracontractual remedy. To the extent the trier of fact finds Craig Downs requested Plaintiffs to perform additional services outside the original written APA, including but not limited to marketing and soliciting Louisiana citizens as

well as usage of Plaintiffs' professional law office, the usage of said premises arguably falls under *quantum meruit* in the absence of a rental agreement.

*Quantum meruit*, known as unjust enrichment under Louisiana law, is based upon the equitable principle that a person who has been enriched without cause at the expense of another person is bound to compensate that person. *See Nave v. Gulf State Sers., LLC*, 2020 WL 4584294, at *1-2 (E.D. La. Aug. 10, 2020). The five requirements for *quantum meruit*/unjust enrichment are: (1) enrichment, (2) impoverishment, (3) a connection between the enrichment and impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) the lack of another remedy at law. *Id.*

With regard to the unpaid rent, all five elements of *quantum meruit* have been alleged in the Third Amended Complaint. First, with regard to the unpaid rent on the use of Plaintiffs' professional offices, Defendants were greatly enriched by the use of Plaintiffs' Louisiana offices to sign-up Louisiana based clients. Defendants utilized Plaintiffs' offices over the course of 8 or 11 months and without paying any compensation to Plaintiffs. In so doing, Defendants signed up approximately 1,700 new clients, which have likely resulted in windfall attorneys' fees to Defendants. Without the association of Plaintiffs and the use of Plaintiffs' offices, Defendants, as out-of-state Florida attorneys, lacked the legal authority under Louisiana law or the necessary professional offices to sign-up the parties' joint clients. Defendants' offer to pay a mere $500 a month to Sterbcow Law Group in July 2013, after utilizing the office for eight (8) months without paying rent, nor the $0 paid to Melancon | Rimes, LLC for the use of its office, does not somehow negate the great enrichment to Defendants.

Second, Plaintiffs were also impoverished by the Defendants' use of Plaintiffs' law offices without remuneration. Plaintiffs provided their valuable Louisiana law licenses and Louisiana law

offices to Defendants for the course of 11 months.  Defendants' offer, but not actual payment, of $500 a month is clearly insufficient to cover the costs of utilizing a professional law office over the course of nearly a year.

Third, the Defendants' free use of Plaintiffs' office space directly enriched Defendants through the attorneys' fees generated from these cases. Whereas Plaintiffs have received $0 in attorneys' fees to date, there clearly exists an impoverishment to Plaintiffs. Only Defendants reaped the attorneys' fees generated from these clients. Thus, Plaintiffs relied upon Defendants' representations and the thousands of contingency fee contracts signed at their Louisiana offices to seek attorneys' fees, instead of directing resources to other legal work that could have resulted in compensation to Plaintiffs.

Fourth, the Defendants have no justification for not paying rent to Plaintiffs for the use of their offices for 11 months.  This was clearly not a *pro bono* relationship; nor is there any logical reason that Plaintiffs would simply allow Defendants free use of the office spaces without any expectation of compensation.

Fifth, and finally, if the Court finds that Plaintiffs' other legal claims are not viable, then Plaintiffs are left with no other remedies at law to collect unpaid rent from Defendants, satisfying this final requirement for *quantum meruit*.

Thus, in conclusion, Plaintiffs adequately alleged a factual basis for unpaid rents, despite the lack of an oral or written rental agreement between Defendants and Jason L. Melancon and Melancon | Rimes, LLC, and the nominal rental agreement of $500.00 per month between Defendants and Marx D. Sterbcow and Sterbcow Law Group entered in July 2013.

### E.  Plaintiffs' Claims are Not Governed by Florida Law

Finally, Defendants argue that Plaintiffs' claims must be dismissed because these claims

are brought pursuant to Louisiana law and the APA provides that Florida law governs. To the extent the Court is utilizing *quantum meruit* as the legal theory to determine Plaintiffs' claim for attorneys' fees, *quantum meruit* constitutes an equitable remedy under Louisiana, not Florida, law. Moreover, Plaintiffs' claim to attorneys' fees derives from the marketing, solicitation, and execution of contingency fee agreements with Louisiana citizens. As such, the Louisiana Supreme Court governs the practice of law, and thus Plaintiffs are entitled to attorneys' fees under Louisiana law. The parties' APA cannot overrule the Louisiana Supreme Court's rules and regulations regarding the practice of law in Louisiana.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Defendants' Motion to Dismiss and allow Plaintiffs to proceed with their claims for *quantum meruit* and unpaid rent, as *sua sponte* ordered by the Court.

Respectfully submitted,

*s/ Craig M. Robinson*
CRAIG M. ROBINSON (Bar No. 32934)
*Robinson Law Offices, LLC*
700 Camp Street
New Orleans, Louisiana 70130
T: (504) 458-5100
F: (504) 717-4627
E: craig@rlolegal.com

*/s/ Alexis A. Butler*
Alexis A. Butler (Bar No. 32376)
*The Whitaker Law Firm, APC*
201 St. Charles Avenue
Suite 2500
New Orleans, LA 70170
T: (504) 313-0168
E: lexybutler@whitakerlaw.net

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this  14th   day of June 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice of electronic filing to all parties of record and that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and in accordance with the procedures established in MDL 2179.

 /s/ Craig M. Robinson_____
Craig M. Robinson