09:26:59  1                        UNITED STATES DISTRICT COURT.
                                 EASTERN DISTRICT OF LOUISIANA
          2

          3     ****************************************************************

          4     IN RE: OIL SPILL BY THE
                OIL RIG *DEEPWATER HORIZON*
          5     IN THE GULF OF MEXICO ON
                APRIL 20, 2010
          6
                                          CIVIL ACTION NO. 10-MD-2179 "J"
          7                               NEW ORLEANS, LOUISIANA
09:23:34                                  FRIDAY, APRIL 1, 2022, 9:30 A.M.
          8

          9     THIS DOCUMENT RELATES TO:

         10     14-657, 17-2678, 17-3686,
                19-1418, 21-1761, 21-2243,
         11     AND ALL SEVERED B3 CASES

         12
                ****************************************************************
         13

         14

                  TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS AND ORAL ARGUMENT
         15              HEARD BEFORE THE HONORABLE CARL J. BARBIER
                             UNITED STATES DISTRICT JUDGE
         16

         17

                APPEARANCES:
         18

         19     FOR THE PLAINTIFFS'
                LIAISON COUNSEL:        HERMAN HERMAN & KATZ
         20                             BY:  SOREN GISLESON, ESQUIRE
                                        820 O'KEEFE AVENUE
         21                             NEW ORLEANS, LA   70113

         22

         23     FOR THE PLAINTIFFS:     THE DOWNS LAW GROUP
                                        BY:  C. DAVID DURKEE, ESQUIRE
         24                                  JEREMY D. FRIEDMAN, ESQUIRE
                                        3250 MARCY STREET, SUITE 307
         25                             COCONUT GROVE, FL  33133

                              *OFFICIAL TRANSCRIPT*

```
 1   APPEARANCES CONTINUED:

 2

 3                            ROBINSON LAW OFFICES
                             BY:  CRAIG M. ROBINSON, ESQUIRE
 4                           700 CAMP STREET
                             NEW ORLEANS, LA  70130
 5

 6
     FOR BP AMERICA INC.,
 7   BP AMERICA PRODUCTION
     COMPANY, BP COMPANY
 8   NORTH AMERICA INC.,
     BP CORPORATION NORTH
 9   AMERICA INC.,
     BP EXPLORATION &
10   PRODUCTION INC.,
     BP HOLDINGS NORTH
11   AMERICA LIMITED,
     BP PRODUCTS NORTH
12   AMERICA INC.:           LISKOW & LEWIS
                             BY:  R. KEITH JARRETT, ESQUIRE
13                                ONE SHELL SQUARE
                             701 POYDRAS STREET
14                           SUITE 5000
                             NEW ORLEANS, LA 70139
15

16
                             KIRKLAND & ELLIS
17                           BY:  MATTHEW T. REGAN, ESQUIRE
                                  A. KATRINE JAKOLA, ESQUIRE
18                                KRISTOPHER S. RITTER, ESQUIRE
                             300 N. LASALLE
19                           CHICAGO, IL 60654

20

21   FOR O'BRIEN'S RESPONSE
     MANAGEMENT, INC.,
22   NATIONAL RESPONSE
     CORPORATION:           QUINN EMANUEL URQUHART & SULLIVAN
23                          BY:  MICHAEL J. LYLE, ESQUIRE
                            1299 PENNSYLVANIA AVE. NW, SUITE 825
24                          WASHINGTON, D.C. 20004

25
```

**OFFICIAL TRANSCRIPT**

```
 1    APPEARANCES CONTINUED:

 2

 3    ALSO PRESENT:

 4

 5                         ANDRE LAPLACE, ESQUIRE
                          TIM FALCON, ESQUIRE
 6                        JEREMY GRABILL, ESQUIRE
                          WILSON MALOZ, ESQUIRE
 7                        ERIC LITTLE, ESQUIRE
                          TARA KELLY, ESQUIRE
 8

 9                        IVAN RODRIGUE, ESQUIRE
10                        DAVID NEEDHAM, ESQUIRE
                          KEELY DULANEY, ESQUIRE
11                        GRANT LEGER, ESQUIRE
                          JASON MELANCON, ESQUIRE
12

13

14    OFFICIAL COURT REPORTER: CATHY PEPPER, CRR, RMR, CCR
                             CERTIFIED REALTIME REPORTER
15                           REGISTERED MERIT REPORTER
                             500 POYDRAS STREET, ROOM HB-275
16                           NEW ORLEANS, LA  70130
                             (504) 589-7779
17                           Cathy_Pepper@laed.uscourts.gov

18    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
      PRODUCED BY COMPUTER.
19

20

21

22

23

24

25

                         OFFICIAL TRANSCRIPT
```

1                          I N D E X

2

3    ITEMS                                              PAGE

4

5    14-657, MELANCON RIMES VERSUS DOWNS LAW GROUP,        7

6    MOTION TO DISMISS...................................

7    17-2678, MILLER, MOTION FOR PARTIAL SUMMARY JUDGMENT.  7

8    17-3686, MR. REGAN, COON VERSUS BP..................   7

9    19-1418, O'BRIEN'S VERSUS BP........................   7

10   21-1761, DOUCET VERSUS DANOS AND CUROLE.............   7

11   21-2243, JOHNSON VERSUS BP..........................   7

12   MR. DURKEE..........................................   8

13   MR. REGAN...........................................   9

14   MR. DURKEE..........................................  10

15   THE COURT...........................................  12

16   DOUCET..............................................  12

17   MR. LAPLACE.........................................  12

18   THE COURT...........................................  15

19   MR. BRISCOE.........................................  15

20   MR. REGAN...........................................  16

21   O'BRIEN'S...........................................  16

22   MR. LYLE............................................  17

23   MR. REGAN...........................................  20

24   MR. MALOZ...........................................  24

25   MR. REGAN...........................................  26

                    *OFFICIAL TRANSCRIPT*

| | | |
|---|---|---|
| 1 | MR. LYLE............................................... | 27 |
| 2 | THE COURT............................................. | 27 |
| 3 | MR. LYLE............................................... | 28 |
| 4 | THE COURT............................................. | 28 |
| 5 | MR. REGAN............................................. | 28 |
| 6 | THE COURT............................................. | 28 |
| 7 | MR. LYLE............................................... | 28 |
| 8 | MELANCON RIMES VERSUS DOWNS........................... | 28 |
| 9 | MR. FRIEDMAN.......................................... | 29 |
| 10 | THE COURT............................................. | 38 |
| 11 | MR. ROBINSON.......................................... | 39 |
| 12 | MR. MELANCON.......................................... | 44 |
| 13 | MR. FRIEDMAN.......................................... | 47 |
| 14 | THE COURT............................................. | 48 |
| 15 | MILLER................................................ | 50 |
| 16 | MR. GISLESON.......................................... | 50 |
| 17 | MR. REGAN............................................. | 52 |
| 18 | MR. GISLESON.......................................... | 55 |
| 19 | MR. REGAN............................................. | 56 |
| 20 | MR. GISLESON.......................................... | 56 |
| 21 | MR. REGAN............................................. | 58 |
| 22 | THE COURT............................................. | 61 |
| 23 | MR. REGAN............................................. | 61 |
| 24 | MR. GISLESON.......................................... | 63 |
| 25 | THE COURT............................................. | 64 |

*OFFICIAL TRANSCRIPT*

10:07:16  1          MR. ROBINSON:  Good morning, Your Honor.

10:07:18  2    Craig Robinson on behalf of plaintiffs, Melancon Rimes,

10:07:22  3    Sterbcow Law Group, Jason Melancon, and Marx Sterbcow.

10:07:24  4          THE COURT:  Good morning.

10:07:24  5          MR. FRIEDMAN:  Good morning, Your Honor.

10:07:28  6    Jeremy Friedman on behalf of the defendants, Downs, et al.

10:07:30  7          THE COURT:  Okay.  You showed up here.  You might make

10:07:34  8    yourself subject to personal jurisdiction.  They're saying

10:07:38  9    you've been too involved in this to avoid personal

10:07:42 10    jurisdiction.

10:07:42 11          MR. FRIEDMAN:  Your Honor, when we asked to appear by

10:07:44 12    phone and we were told I had to fly over here, so....

10:07:46 13          THE COURT:  Okay.

10:07:46 14          MR. FRIEDMAN:  Your Honor, it is our motion today.

10:07:49 15    Should we start with the motion to dismiss?

10:07:51 16          THE COURT:  Yes.  And I've read everything that you all

10:07:53 17    have filed, so....

10:07:54 18          MR. FRIEDMAN:  Okay.  Your Honor, just, once again,

10:07:59 19    Jeremy Friedman on behalf of Downs, Craig Downs, and myself in

10:08:04 20    regards to this case.

10:08:05 21          Your Honor, just from a brief factual background

10:08:09 22    of what happened here -- I understand you did say you read the

10:08:11 23    material, so I know you're familiar with this -- but the

10:08:14 24    plaintiffs were retained initially to act as simply as local

10:08:17 25    counsel for the objection part of this case.  We had a written

*OFFICIAL TRANSCRIPT*

10:08:20  1    agreement.

10:08:21  2         THE COURT:  Objections to the medical settlement.

10:08:23  3         MR. FRIEDMAN:  Correct.  Correct.

10:08:23  4         THE COURT:  Okay.  All right.

10:08:25  5         MR. FRIEDMAN:  We had a written agreement that stated

10:08:27  6    they would act as local counsel.  They actually ended up --

10:08:31  7    Mr. Melancon was the one that actually argued that the --

10:08:35  8         THE COURT:  You had a written agreement to that effect,

10:08:36  9    and they were supposed to get 10 percent of anything you

10:08:39 10    recovered if you prevailed on those objections, correct?

10:08:43 11         MR. FRIEDMAN:  That is absolutely correct.

10:08:43 12         THE COURT:  Okay.

10:08:44 13         MR. FRIEDMAN:  There was no further agreement on that

10:08:45 14    after that.  We did not prevail.  We withdrew the appeal and it

10:08:51 15    was over.

10:08:51 16         Now, what happened subsequent to that is is that

10:08:54 17    we continued to -- my client or Downs Law Group continued to

10:09:00 18    represent and also sign-up new clients in regard to the medical

10:09:03 19    settlement phase of the case.

10:09:05 20         THE COURT:  Your firm did or does a lot of national

10:09:08 21    advertising, apparently, right, for these claims?

10:09:10 22         MR. FRIEDMAN:  Yes.  Yes.  So, essentially --

10:09:14 23         THE COURT:  Is all the advertising done by your firm or

10:09:17 24    did Melancon Rimes have any part of that?

10:09:21 25         MR. FRIEDMAN:  No, to my knowledge, not a single part

*OFFICIAL TRANSCRIPT*

10:09:23  1    at all.

10:09:23  2            THE COURT:  Okay.

10:09:24  3            MR. FRIEDMAN:  Essentially, Your Honor, we were using

10:09:26  4    their offices here in Louisiana in regards to clients.

10:09:26  5            THE COURT:  Right.

10:09:30  6            MR. FRIEDMAN:  A significant issue in this case has

10:09:32  7    come up is what they've alleged in their pleadings, and now in

10:09:35  8    their response is that they said we claim that we had to pay

10:09:39  9    rent for their offices.  We were renting space from them, and

10:09:44 10    essentially, they alleged in their complaint now in their

10:09:47 11    response that that was actually a lie and that we only sent

10:09:52 12    them a rent check after the fact as a scheme to prevail to

10:09:57 13    overcome --

10:09:57 14            THE COURT:  I read that and you produced now emails and

10:10:00 15    invoices showing they were, in fact, billing you for that

10:10:03 16    office space, right?

10:10:04 17            MR. FRIEDMAN:  Absolutely.

10:10:05 18            THE COURT:  So, your argument is the only agreement you

10:10:08 19    had with them post the objection and 10 percent thing, which is

10:10:16 20    not really directly relevant here now, but post that, your

10:10:21 21    argument is the only agreement you had with them was to use

10:10:23 22    some office space, and there was an agreed-upon amount for

10:10:29 23    that --

10:10:30 24            MR. FRIEDMAN:  Yes.

10:10:31 25            THE COURT:  -- and that was it.

                                    *OFFICIAL TRANSCRIPT*

10:10:32 1          Now, they claim they allude -- and I'll ask

10:10:36 2  Mr. Robinson about this -- that they did all kind of other

10:10:39 3  work, too.

10:10:39 4          You don't need to get up now, Mr. Robinson.  I'll

10:10:44 5  give you a chance.

10:10:44 6          MR. FRIEDMAN:  Your Honor, if I may, the original

10:10:46 7  agreement, which is called the *Attorneys Participation*

10:10:49 8  *Agreement*, has a provision in it that states that if they are

10:10:52 9  to do additional work, that the party -- they would be entitled

10:10:55 10  to additional fees for that and that they are not agreeing to

10:10:59 11  do any additional work pursuant to that agreement.

10:11:01 12          So, that is the only agreement -- written

10:11:03 13  agreement that we have at all to do any -- for them to provide

10:11:08 14  any type of services to these clients.

10:11:09 15          The services that they did ultimately provide,

10:11:13 16  it's my understanding -- and once again, I've been brought into

10:11:16 17  this personally.  I'm not really on this case other than I'm

10:11:20 18  now representing the Downs Law Group, and I'm part of the firm,

10:11:25 19  of course, but, Your Honor, they helped sign-up the clients.

10:11:29 20  When I say "help," meaning they were there in the office at

10:11:31 21  times, but as far as doing additional work, they did not, you

10:11:36 22  know, perform that.

10:11:37 23          Now --

10:11:38 24          THE COURT:  You had one of your lawyers in their office

10:11:42 25  basically signing up clients; is that right?

**OFFICIAL TRANSCRIPT**

10:11:45  1          MR. FRIEDMAN:  That's correct, Your Honor.  And,

10:11:47  2  Your Honor, I'm also trying to avoid -- I don't want to go too

10:11:50  3  far outside of the pleadings because this is a motion to

10:11:52  4  dismiss, so I want to stay within that.

10:11:54  5          So, you know, what we filed here is not so much

10:11:58  6  as far as the factual issues because, no, they did not perform

10:12:01  7  any type of services for these clients, but as a matter of law,

10:12:06  8  the cause of action, the claims that they've actually alleged,

10:12:10  9  they are just not supported by the applicable case law.

10:12:13 10          If I could begin with the breach of fiduciary

10:12:17 11  duty claim -- well, actually, let me start with personal

10:12:20 12  injuries because that was the first part.  As Your Honor is

10:12:21 13  aware, there is two ways to get personal jurisdiction --

10:12:23 14  general and specific.  There is for the individuals, both

10:12:26 15  myself and Mr. Craig Downs, there is not continuous and

10:12:30 16  systematic contacts in order to establish general jurisdiction.

10:12:32 17          The only evidence that they are claiming would

10:12:36 18  demonstrate this would be that I was --

10:12:40 19          THE COURT:  Mr. Downs, he's the principal in Downs Law

10:12:45 20  Group, right?

10:12:46 21          MR. FRIEDMAN:  Yes.

10:12:46 22          THE COURT:  I asked this question previously, and it's

10:12:50 23  still not clear to me what kind of entity that is.  Apparently,

10:12:54 24  it's a Florida legal entity that is not known here in

10:13:02 25  Louisiana.  It's not an L.L.C., I was told, and it's not a

*OFFICIAL TRANSCRIPT*

10:13:06  1   corporation, but you said or someone told me it's akin to a

10:13:12  2   professional corporation, right?

10:13:13  3          MR. FRIEDMAN:  It is.  It's a P.A., a professional

10:13:17  4   association.  Yes.

10:13:18  5          THE COURT:  Okay.  But Mr. Downs being the principal of

10:13:22  6   that, I don't know, when you file claims in this court in an

10:13:30  7   MDL and you represent clients in this court, I don't know how

10:13:34  8   you can avoid personal jurisdiction.

10:13:37  9              Now, you're in a different situation, I think,

10:13:39 10   because I know you had very limited involvement in any of this.

10:13:45 11          MR. FRIEDMAN:  Yes.  Yes, Your Honor.

10:13:47 12          THE COURT:  I'm talking about Mr. Downs now.

10:13:48 13          MR. FRIEDMAN:  Okay.  Well, from Mr. Downs' standpoint,

10:13:52 14   any representation he would have done would be through the

10:13:55 15   corporate entity, the Downs Law Group.

10:13:58 16          THE COURT:  Yeah, but I could have my own, what do you

10:14:04 17   call it, L.L.C. or legal corporation or professional

10:14:08 18   corporation here, and that doesn't absolve me from personal

10:14:14 19   liability as a lawyer, I don't think.

10:14:17 20          MR. FRIEDMAN:  Well, I understand that he --

10:14:19 21          THE COURT:  A little different than a regular employee

10:14:21 22   of some big company.

10:14:23 23          MR. FRIEDMAN:  I do -- I recognize --

10:14:25 24          THE COURT:  So, let's talk about the more important

10:14:27 25   parts of this case, okay?

**OFFICIAL TRANSCRIPT**

10:14:28  1        MR. FRIEDMAN:  So, if we want to -- shifting from

10:14:32  2   personal jurisdiction over to the actual merits of the cause of

10:14:32  3   action --

10:14:32  4        THE COURT:  Yes.

10:14:36  5        MR. FRIEDMAN:  The first is the breach of fiduciary

10:14:38  6   duty.  Now, we recognize that there can be a joint venture

10:14:45  7   agreement or joint venture agreements are recognized in the

10:14:47  8   State of Louisiana between attorneys for joint representation,

10:14:51  9   but what is the Supreme Court in the case of *Scheffler v.*

10:14:54 10   *Adams and Reese*, the Supreme Court of Louisiana, 950 So.2nd

10:15:06 11   651, (2007) -- the Louisiana Supreme Court stated that as a

10:15:12 12   matter of public policy, based on our authority to regulate the

10:15:16 13   practice of law pursuant to the constitution, no cause of

10:15:19 14   action will exist between co-counsel based on the theory that

10:15:22 15   co-counsel have a fiduciary duty to protect one another's

10:15:28 16   prospective interest in a fee.

10:15:29 17        Now, their defense of this is, well, joint

10:15:32 18   venture agreements are valid, and they are recognized.  We

10:15:34 19   don't disagree with that, but for this particular issue, we're

10:15:37 20   talking about whether or not there is a fiduciary duty to

10:15:41 21   ensure that they are paid, and that's really what they are

10:15:44 22   alleging.

10:15:44 23        They are not alleging breach of contract that we

10:15:47 24   failed to pay them.  They are saying that as fiduciaries, we

10:15:50 25   had an obligation to pay them.  Quite frankly, under Louisiana

***OFFICIAL TRANSCRIPT***

10:15:54  1    law, that type of claim is not recognized.  So, that's the

10:15:58  2    first basis of dismissal because for a breach of fiduciary duty

10:16:03  3    claim, you need to have all of the elements, and the first

10:16:05  4    element is an existence of a duty.  That's the first reason.

10:16:08  5              The second reason is, Your Honor, is that there

10:16:11  6    was no joint venture agreement, but, more importantly, they

10:16:14  7    didn't properly allege any terms specific to what a joint

10:16:18  8    venture agreement would be required to have.

10:16:21  9              The case we cited to was *Coffee Bay Investors v.*

10:16:25  10   *W.O.G.C. Co.,* 878 So.2nd 665 (La. App 1st Cir. 2004).  In that

10:16:35  11   particular case the Court listed seven different reasons --

10:16:39  12   seven different indicators as to whether and how a joint

10:16:42  13   venture agreement is created.

10:16:43  14             First, there is a contract between two or more

10:16:46  15   persons.  Well, they allege an oral agreement.  For the

10:16:49  16   purposes of this case -- excuse me, for the purposes of this,

10:16:52  17   motion, we'll have to agree that there was a contract there.

10:16:55  18   There certainly was not, but let's just say for the purposes of

10:16:59  19   the motion there was.

10:16:59  20             But there is other factors involved; for example,

10:17:02  21   they have to show that there is contribution by all parties of

10:17:07  22   efforts and resources.  They haven't alleged properly what that

10:17:09  23   contribution was.

10:17:10  24             Your Honor stated at the last hearing that we had

10:17:13  25   that was over the phone that we appeared at, well, what work

**OFFICIAL TRANSCRIPT**

10:17:15  1  was done?  The only work they said was that they were there to
10:17:19  2  help sign-up the clients, and that does not qualify as a
10:17:21  3  contribution or an effort under a joint venture agreement to
10:17:24  4  represent clients.
10:17:25  5          Number 3, the contribution must be in determinate
10:17:30  6  proportions.  They don't even allege what the contributions
10:17:34  7  were or what their proportion of the contributions should have
10:17:36  8  been.
10:17:37  9          Number 3 [verbatim], there must be a joint
10:17:39 10  effort.  They have made no efforts, Your Honor.  It's been
10:17:41 11  10 years.  They have done nothing.
10:17:44 12          Number 5, there must be mutual risks versus
10:17:47 13  losses.  That's a very important one because that would mean
10:17:50 14  that they would be responsible for a portion of the costs that
10:17:52 15  we've incurred over the last 10 years, and there is nothing
10:17:55 16  alleged in there that says there was any agreement --
10:17:57 17      THE COURT:  Let me ask you.  I know there was the
10:17:59 18  previous lawsuit that was filed in state court in Florida.
10:18:04 19      MR. FRIEDMAN:  Yes.
10:18:05 20      THE COURT:  I understand there was a fair amount of
10:18:08 21  discovery done in that case before it was voluntarily
10:18:13 22  dismissed; is that correct?
10:18:14 23      MR. FRIEDMAN:  There was.  Yes, there was.
10:18:15 24      THE COURT:  Depositions taken and so forth.  So, there
10:18:17 25  must be evidence available to both sides.  Nobody has presented

*OFFICIAL TRANSCRIPT*

10:18:20 1   that to this court, but I don't know how relevant that would be

10:18:24 2   to the issue whether they did any work and all of that.  Was

10:18:28 3   that explored in those depositions?

10:18:30 4        MR. FRIEDMAN:  Yes.  They testified that they did, I

10:18:36 5   believe -- again, I want to stay within the context of the

10:18:38 6   pleadings, but I believe they did state that they did about 40

10:18:41 7   or 50 hours in total of work over the last -- now it's been

10:18:45 8   10 years.  We dispute that, but even if that's true, it's not

10:18:51 9   enough.

10:18:51 10       THE COURT:  Okay.  I understand your arguments.  I've

10:18:53 11  read everything.  Let me hear from the other side, okay?

10:19:02 12       MR. FRIEDMAN:  Thank you, Your Honor.

10:19:02 13       THE COURT:  Mr. Robinson, I've got something I need to

10:19:06 14  have you respond to because yesterday evening at some point you

10:19:15 15  filed a motion for leave to file a surreply, and you also filed

10:19:22 16  a motion for leave to file a second amended complaint, which

10:19:27 17  I'm denying, by the way, okay?

10:19:28 18            In it, you acknowledge, one of the issues that

10:19:39 19  they argued was, as you heard a few minutes ago, is that the

10:19:44 20  only arrangement or agreement beyond the limited scope of that

10:19:52 21  first written agreement about helping out on their objections

10:19:56 22  to the medical class settlement, other than that, the only

10:20:07 23  agreement that they had was to use some of your client's office

10:20:12 24  space at a negotiated fee per month.

10:20:20 25            You and your client -- your client filed

*OFFICIAL TRANSCRIPT*

10:20:23 1    something in this court flatly denying that there had ever been

10:20:30 2    any agreement about rent, there had ever been any invoices sent

10:20:34 3    about rent or any rent paid, and lo and behold, they came up

10:20:39 4    with invoices and emails confirming that your client did bill

10:20:44 5    them for office space.

10:20:48 6              Now, you said you didn't get paid immediately,

10:20:51 7    they would send a check after several months, but I've got a

10:20:55 8    big problem with the misrepresentation that you or your client

10:20:59 9    made to this court, so I'm going to give you a chance to

10:21:03 10   respond to that.

10:21:04 11        MR. ROBINSON:  Your Honor, I have an issue with it as

10:21:04 12   well.

10:21:04 13        THE COURT:  I hope you do.

10:21:07 14        MR. ROBINSON:  Yeah.  Which is why I filed immediately

10:21:10 15   when I understood that there was some rental invoices that were

10:21:13 16   issued.  I think the timing is important, and I want to bring

10:21:15 17   that up as well.

10:21:16 18             We immediately filed a surreply to make sure the

10:21:21 19   Court knew that we were retracting those claims about no

10:21:24 20   invoices being sent, and we even supplemented with that second

10:21:27 21   amended petition just to make sure the Court understood that we

10:21:31 22   were retracting those claims immediately when those documents

10:21:33 23   were provided to us.

10:21:34 24             It's important to note, too, that this claim and

10:21:38 25   this case is about 10 years old now.  It relates back to things

*OFFICIAL TRANSCRIPT*

10:21:45 1   that happened in 2012 and 2013; so, it is an issue over three

10:21:52 2   invoices that were sent over --

10:21:54 3       THE COURT:  But these are your documents, your

10:21:56 4   invoices, your emails, and your client flatly stating, denying

10:22:02 5   that anything like this had ever occurred.  I don't know how

10:22:05 6   you can say now we didn't know about it.

10:22:09 7       MR. ROBINSON:  And it was incorrect, and we tried to --

10:22:10 8       THE COURT:  It was more than incorrect; it was false.

10:22:13 9       MR. ROBINSON:  Right.  And we tried to bring that to

10:22:16 10   the Court's attention as soon as we learned of it.

10:22:20 11         As far as the joint venture agreement, the timing

10:22:25 12   may also be important in that the Attorney Participation

10:22:29 13   Agreement ended after the November fairness hearing, and there

10:22:34 14   were clients being signed up from that period in late 2012.

10:22:37 15       THE COURT:  Well, that's another contradiction.  I know

10:22:39 16   we talked about this last time we were here on this issue.

10:22:43 17   Your client initially filed suit against the Downs group in

10:22:47 18   Florida, right, in state court and basically alleging that you

10:22:55 19   were entitled to 10 percent of all their fees based on that

10:22:58 20   written agreement, which you're now totally disowning, right?

10:23:02 21       MR. ROBINSON:  Well, in part because they have totally

10:23:05 22   disowned the --

10:23:06 23       THE COURT:  No, this is your allegation, your lawsuit.

10:23:11 24       MR. ROBINSON:  And we have since amended our petition

10:23:14 25   to retract.

*OFFICIAL TRANSCRIPT*

10:23:16  1      THE COURT:  Then you wanted ten percent of everything

10:23:18  2  still.  What do you want now?  It sounds like you want half of

10:23:21  3  all their fees.

10:23:23  4      MR. ROBINSON:  I think the joint venture agreements

10:23:25  5  that were confected in these individual attorney-fee,

10:23:29  6  contingency agreements was set out one-third, one-third,

10:23:32  7  one-third arrangements, just based upon --

10:23:34  8      THE COURT:  One-third, one-third, who does the third

10:23:37  9  third belong to?

10:23:39 10      MR. ROBINSON:  So, a third to Downs Law Group, a third

10:23:42 11  to Melancon Rimes, and third to Sterbcow Law Group.

10:23:47 12      THE COURT:  So, your clients would be getting

10:23:49 13  two-thirds of the fee, two-thirds of the fee of every fee that

10:23:52 14  Downs Law Firm made in this whole case?

10:23:54 15      MR. ROBINSON:  Under the partnership agreement, you

10:23:55 16  know, and under the joint venture agreement, that's how --

10:23:57 17      THE COURT:  Are you familiar with Rule 1.5 of the

10:24:00 18  Rules of Professional Conduct?

10:24:02 19      MR. ROBINSON:  Yes, Your Honor.

10:24:03 20      THE COURT:  You read it?

10:24:05 21      MR. ROBINSON:  A long time ago, yes, Your Honor.

10:24:06 22      THE COURT:  I'm going to read to you this part, and

10:24:07 23  I'll let you comment.  Rule 1.5(e):  A division of fees between

10:24:11 24  lawyers who are not in the same firm may be made only if:

10:24:16 25          (1) the client agrees in writing to the

*OFFICIAL TRANSCRIPT*

10:24:19  1    representation by all of the lawyers and is advised in writing

10:24:24  2    as to the share of the fees each lawyer will receive;

10:24:26  3            (2)  the total fee is reasonable;

10:24:28  4            (3) -- and most importantly, perhaps -- each

10:24:32  5    lawyer renders meaningful legal services for the client in the

10:24:35  6    matter.

10:24:37  7            MR. ROBINSON:  Sure.

10:24:38  8            THE COURT:  But you're just asking for two-thirds of

10:24:42  9    the fee doing, essentially, no work.

10:24:46 10            MR. ROBINSON:  Well, it's important -- it might be

10:24:46 11    important to note that the work that was done was done when the

10:24:47 12    clients were being signed up; so, this is at the very

10:24:51 13    beginning.

10:24:52 14            THE COURT:  You think helping to sign up the clients

10:24:55 15    entitles you to two-thirds of their fee?

10:24:58 16            MR. ROBINSON:  In this situation, Your Honor, we're

10:25:01 17    asking for it because of the situation that occurred where the

10:25:04 18    clients were provided a letter that misrepresented the facts,

10:25:09 19    misrepresented that my clients were withdrawing from the case

10:25:13 20    and asking to sign this new agreement.

10:25:15 21            THE COURT:  Let me ask you this:  What part of the

10:25:20 22    expenses that Downs incurred -- I'm assuming they spent tens or

10:25:27 23    hundreds of thousands, I don't know, maybe millions of dollars

10:25:32 24    in advertising to obtain these cases.  Did your client pay any

10:25:36 25    of that?

**OFFICIAL TRANSCRIPT**

10:25:37  1        MR. ROBINSON:  I don't believe we paid any -- any

10:25:43  2   promotional --

10:25:45  3        THE COURT:  Did you pay any other expenses?  Did you

10:25:48  4   pay any court costs?

10:25:49  5        MR. ROBINSON:  No, Your Honor, but we did --

10:25:50  6        THE COURT:  What work was done, after the objections,

10:26:00  7   that issue, under the written agreement, that you are disowning

10:26:05  8   now, beyond that and beyond having someone at the office when

10:26:13  9   Downs had somebody there signing up clients, what work did your

10:26:17 10   clients do in this case to advance the clients' claims?

10:26:23 11        MR. ROBINSON:  So, my clients were acting as local

10:26:26 12   counsel.  They had Louisiana licenses.

10:26:27 13        THE COURT:  I said what work did they do?

10:26:30 14        MR. ROBINSON:  They helped in the marketing.  They

10:26:34 15   would consult with Downs Law Group.  They didn't pay anything,

10:26:36 16   but they would help with the consulting.  They discussed those

10:26:40 17   items with the Downs Law Group.  They discussed --

10:26:41 18        THE COURT:  They discussed the marketing.  Okay.  I'm

10:26:44 19   not sure what you mean by that.

10:26:44 20        MR. ROBINSON:  Sure.  Marketing and signage in

10:26:48 21   Louisiana.  And they discussed the use of their office spaces.

10:26:53 22   Remember --

10:26:53 23        THE COURT:  We talked about that.  You're invoicing for

10:26:59 24   rent for that.

10:26:59 25        MR. ROBINSON:  But that was for a period of time and

**OFFICIAL TRANSCRIPT**

10:27:02 1  only at Sterbcow Law Group's offices, but we acknowledge it,

10:27:05 2  yes, Your Honor.

10:27:05 3      MR. MELANCON:  Your Honor, I'm Jason Melancon.

10:27:08 4      THE COURT:  Please be seated, sir.  You can't just

10:27:12 5  stand up and start talking in court, Mr. Melancon.  Please have

10:27:16 6  a seat.

10:27:18 7      MR. MELANCON:  Yes, Your Honor.

10:27:21 8      THE COURT:  Are you also familiar with the

10:27:25 9  Fifth Circuit case, the *P & E Boat Rentals* case, not for the

10:27:34 10 proposition for which it's usually cited around here for

10:27:37 11 punitive damages but on the matter of attorney's fees between

10:27:41 12 co-counsel?

10:27:42 13     MR. ROBINSON:  No, Your Honor, not offhand.

10:27:43 14     THE COURT:  Okay.  The Fifth Circuit, *In the Matter of*

10:27:48 15 *P & E Boat Rentals*, actually, it involved a claim by a

10:27:53 16 *Charles Collins*, who was the, appellant, *versus Jack Martzell*,

10:28:00 17 and the Martzell Law Firm at the time.  The Fifth Circuit held,

10:28:11 18 they affirmed the District Court had basically said, relying on

10:28:19 19 the then-current ethical rule, which is the same language in

10:28:29 20 the current rule.  They just changed the numbering of the

10:28:32 21 rules.

10:28:32 22         But the District Court relied on the fact that

10:28:36 23 the rule prohibited a lawyer from dividing a legal fee with

10:28:40 24 another lawyer who is neither his partner nor associated

10:28:44 25 unless, and one of the things is that the fee -- the division

**OFFICIAL TRANSCRIPT**

10:28:51  1   is in proportion to the services performed and responsibility

10:28:55  2   assumed by each.

10:28:59  3          The plaintiff in that case, Mr. Collins, was

10:29:04  4   arguing, as you are arguing here, citing an old Louisiana

10:29:08  5   Supreme Court case, *McCann v. Todd*, for the proposition where

10:29:12  6   there is a joint venture among co-counsel, you can just somehow

10:29:20  7   get half of the fee.

10:29:25  8          The Fifth Circuit said, "No such agreement

10:29:34  9   validly could have been made under the Code of Professional

10:29:39 10   Responsibility unless the attorneys equally assume

10:29:42 11   responsibility for the manner and performed essentially equal

10:29:47 12   services.  No contract between counsel which is in conflict

10:29:50 13   with controlling ethical standards should be recognized and

10:29:56 14   enforced by the Court."

10:30:05 15          So, you got anything you want to say?  Anything

10:30:05 16   further?

10:30:07 17       MR. ROBINSON:  Your Honor, I believe that if the

10:30:10 18   Downs Law Group had gone to the clients and told them the truth

10:30:13 19   of, okay, we would like to remove the plaintiffs from this case

10:30:20 20   or that the case or that -- and instead of misrepresenting to

10:30:25 21   the clients that Melancon Rimes and Sterbcow Law Group were

10:30:32 22   voluntarily withdrawing or that they were not participating in

10:30:34 23   this claims [verbatim] anymore, then I think that --

10:30:39 24       THE COURT:  They didn't represent to the clients that

10:30:41 25   you were voluntarily withdrawing.  They were saying, in

**OFFICIAL TRANSCRIPT**

10:30:45 1   essence, that you never were part of the effort to represent

10:30:52 2   them in these claims going forward.

10:30:55 3        MR. ROBINSON:  I mean, I think you look -- if we look

10:30:57 4   at the facts of the situation, if we look at the contingency

10:31:03 5   fee contracts themselves, which contained my clients' names,

10:31:05 6   and if we look at where they were signing up and the

10:31:08 7   consultation Downs Law Group had with my clients, then we can

10:31:14 8   see that there are, obviously, a joint venture that was created

10:31:15 9   here and that my clients were intending --

10:31:17 10       THE COURT:  Mr. Friedman just represented that in the

10:31:20 11  Florida litigation and the depositions taken that your clients

10:31:26 12  contended that they spent 40 to 50 hours in total; is that

10:31:29 13  correct?

10:31:30 14       MR. ROBINSON:  Yes, Your Honor.  I believe so.

10:31:31 15       THE COURT:  Okay.  All right.  Okay.  You can have a

10:31:34 16  seat.  Thank you.

10:31:35 17       MR. ROBINSON:  Yes, Your Honor.

10:31:37 18       THE COURT:  Mr. Friedman, do you want to respond

10:31:40 19  briefly?  I want you to respond to his -- let Mr. Friedman come

10:31:44 20  up, please.

10:31:46 21            Why were their names put on these contingency fee

10:31:50 22  contracts?  As I understand it, in the early stages -- again,

10:31:54 23  I'm talking about post objections and the appeal and all

10:31:56 24  that -- once that was over, your client continued to recruit

10:32:00 25  hundreds or thousands of clients, presumably, and for some

*OFFICIAL TRANSCRIPT*

10:32:04  1    period of time, you were using a contingent fee contract that

10:32:08  2    had Melancon Rimes' name -- their names on the form, and then

10:32:13  3    later, you decided to change that.  Now, what was that about?

10:32:18  4         MR. FRIEDMAN:  Yes, Your Honor.  We are required in

10:32:21  5    Florida to put -- to advise the clients in writing if we are

10:32:27  6    going to be using any additional attorneys for our -- to assist

10:32:31  7    us with their representation.

10:32:32  8         THE COURT:  That's the same rule here, yeah.

10:32:35  9         MR. FRIEDMAN:  So, for the objection, they were put on

10:32:37 10    these contingency fee contracts for the objections.  What

10:32:41 11    happened was after the objections were over with -- and, in

10:32:45 12    fact, there was a little bit of overlap when we were beginning

10:32:47 13    to sign-up new clients at the same time that the objections,

10:32:49 14    because they were still -- the appeal was potentially going to

10:32:54 15    go forward.  So, we continued to, essentially, use the same

10:32:57 16    contracts and did not remove them because they weren't doing

10:33:00 17    anything anymore in regards to the further work.

10:33:02 18              We identified, at some point very soon

10:33:07 19    thereafter, that their names were still there, but they weren't

10:33:10 20    actually representing these clients; so, we had an obligation

10:33:13 21    to advise these clients that they are not representing you

10:33:17 22    anymore.  We asked them to so we can -- they can be amended to

10:33:21 23    demonstrate that.

10:33:22 24              Your Honor, putting them on these contracts also

10:33:25 25    denotes gives them liability potentially as well, so -- you

*OFFICIAL TRANSCRIPT*

10:33:27 1   know, and this was part of the Florida issue -- with the

10:33:29 2   Florida case as well.  So, essentially, it was a scrivener's

10:33:32 3   error that the Downs Law Group did not correct and amend their

10:33:37 4   retainer agreements because it was a very small provision

10:33:41 5   [speaking simultaneously] --

10:33:41 6       THE COURT:  All right.  I think part of the confusion

10:33:41 7   arose or the controversy arose because, apparently, you didn't

10:33:46 8   communicate that timely to them, right?

10:33:48 9       MR. FRIEDMAN:  Yes.  Correct.  Correct.  We did --

10:33:52 10  essentially, what happened was was that -- well, I don't want

10:33:55 11  to go into -- too much into the facts but yes, that's correct.

10:33:58 12      THE COURT:  All right.  I've heard enough.  Okay.  I

10:34:03 13  conclude that whether there was some type of oral agreement

10:34:15 14  between the Downs firm and the Melancon Rimes group, if there

10:34:29 15  was an oral agreement -- again, there is no written evidence of

10:34:33 16  that that has been submitted to the Court whatsoever -- and I

10:34:39 17  understand this is a motion to dismiss, not a motion for

10:34:43 18  summary judgment, but under Louisiana Law, which I've cited to

10:34:52 19  you and the Code of Professional Responsibility applicable here

10:34:55 20  in Louisiana, and I'm pretty sure it's a similar rule, I think

10:35:00 21  it's an ABA model rule.  I don't think this is unique to

10:35:04 22  Louisiana.

10:35:04 23      First of all, fees have to be reasonable, even if

10:35:11 24  they are contingent fees.  A lawyer is not entitled to a

10:35:16 25  portion of a fee except as the fee is commensurate with the

*OFFICIAL TRANSCRIPT*

10:35:25  1    work and effort and time and expenses that the lawyer has put

10:35:28  2    into the case.

10:35:32  3           So, I'm going to follow the guidance, follow the

10:35:42  4    Rule 1.5 that I cited and we talked about a few minutes ago and

10:35:48  5    the Fifth Circuit case *In the Matter of P & E Boat Rentals,*

10:35:54  6    *Charles Collins v. Jack Martzell,* 928 F. 2d 662.  It's a 1991

10:36:02  7    Fifth Circuit case, which relies on that same codal article.

10:36:09  8           I think at best what we have here is

10:36:16  9    Melancon Rimes, it is alleged that now that they admit that

10:36:23 10    they did invoice for rent, that they were sent a check, and

10:36:27 11    they have for some reason not negotiated that check, that's

10:36:30 12    what was represented to the Court -- was represented to the

10:36:36 13    Court.

10:36:36 14           At best, I think Melancon Rimes would be entitled

10:36:41 15    to any rent that is due and perhaps some quantum meruit base

10:36:56 16    fee, which I can't really set right now, but based on what's

10:37:02 17    been represented to the Court, I think that would be the

10:37:09 18    maximum that plaintiffs could recover here.

10:37:13 19           Also, I'm going to grant the motion to dismiss on

10:37:20 20    the basis of lack of personal jurisdiction over Mr. Friedman.

10:37:25 21           I'm going to deny the personal jurisdiction

10:37:28 22    motion with respect to Mr. Downs.  I guess what I'm doing is

10:37:36 23    dismissing -- this is a motion to dismiss under 12(b)(6),

10:37:44 24    correct?

10:37:46 25           MR. FRIEDMAN:  Yes, Your Honor.

***OFFICIAL TRANSCRIPT***

| | | |
|---|---|---|
| 10:37:47 | 1 | THE COURT:  So, I'm going to dismiss the plaintiff's |
| 10:37:52 | 2 | complaint except insofar as it may state a claim for unpaid |
| 10:37:59 | 3 | rent and a quantum meruit fee. |
| 10:38:04 | 4 | With that said, I'm going to refer the parties to |
| 10:38:08 | 5 | Magistrate Currault to see if you all can agree on how to |
| 10:38:17 | 6 | resolve those remaining issues, okay? |
| 10:38:23 | 7 | MR. ROBINSON:  Thank you, Your Honor. |
| 10:38:23 | 8 | THE COURT:  Okay.  Let's take up, we have one more |
| 10:38:26 | 9 | matter.  You're involved in this last one, right, Mr. Regan, |
| 10:38:36 | 10 | too? |
| 10:38:37 | 11 | MR. REGAN:  Yes, Your Honor.  The last matter is the |
| 10:38:39 | 12 | Miller matter. |
| 10:38:40 | 13 | THE COURT:  Yeah, and I realize I should have taken |
| 10:38:42 | 14 | that up ahead of Melancon Rimes because, otherwise, there was |
| 10:38:47 | 15 | no need for you all, the whole team to sit through that. |
| 10:38:50 | 16 | MR. REGAN:  No problem, Your Honor.  It's plaintiff's |
| 10:38:54 | 17 | motion, so.... |
| 10:38:56 | 18 | MR. GISLESON:  Good morning, Your Honor. |
| 10:38:57 | 19 | Soren Gisleson on behalf of James Miller. |
| 10:39:00 | 20 | THE COURT:  Tell me what you are really asking for |
| 10:39:02 | 21 | here, because after I read your motion, their opposition, and |
| 10:39:08 | 22 | your reply, I'm a little confused, Mr. Gisleson. |
| 10:39:15 | 23 | The thing that makes this unclear is all the |
| 10:39:20 | 24 | things that they say you allege in your complaint about all the |
| 10:39:24 | 25 | things they did or didn't do in their response effort, and they |

**OFFICIAL TRANSCRIPT**