UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO ON APRIL 20, 2010 | * * * * * | MDL NO. 2179 SECTION: J |
| | | * | Judge Barbier |
| Relates to: | 2:14-cv-657 Melancon │ Rimes, LLC et al. v. Downs Law Group, LLC, et al. | * * * | Mag. Judge Currault |

*********************************************

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DEFENDANTS' RESPONSES TO REQUESTS FOR PRODUCTION

MAY IT PLEASE THE COURT:

Plaintiffs in the above-captioned litigation, Melancon │ Rimes, LLC, Jason L. Melancon, Sterbcow Law Group, LLC, and Marx D. Sterbcow, (collectively "Plaintiffs") respectfully submit this Memorandum in Support of Motion to Compel Defendants' Responses to Request for Production, seeking an order from the Court compelling Defendants Downs Law Group, P.A. and Craig T. Downs (collectively "Defendants") to produce, without further delay, the requested documents in the Requests for Production propounded by Plaintiffs, and to order an award of reasonable attorneys' fees incurred in filing this Motion.

**I.      SUMMARY OF ARGUMENT**

Plaintiffs' Motion to Compel should be granted pursuant to Federal Rule of Civil Procedure 37, requiring Defendants to produce documents responsive to Plaintiffs' Request for Production Nos. 1, 2, 3, and 4 without further delay. Defendants' refusal to produce the following relevant discovery is legally unjustified: contingency fee contracts containing any of plaintiffs' names executed by the claimants and/or signed up by the parties at Plaintiffs' Louisiana law offices, any subsequent contracts executed by these claimants at the direction of Defendants, and the closing

statements and fee sheets for these claimants. These documents are central to resolving Plaintiffs' claims for attorneys' fees and unpaid rent under *quantum meruit*, particularly for the assessment of the factors under Rule 1.5(a) of the Louisiana Rules of Professional Conduct, which are determinative of the quantum of the attorneys' fees.

Further, the Defendants' claim that no lists of claimants or claimant contracts exist is questionable given evidence of similar lists previously provided by Defendants' own employees to Plaintiffs. Defendants are required to produce these highly relevant lists, but if no such lists exist, then Defendants must provide certification of same.

Finally, Plaintiffs request reasonable attorneys' fees incurred in filing this Motion. Plaintiffs' Requests for Production were limited in scope to obtain only the necessary, relevant information for resolving this attorneys' fees dispute, yet Defendants have obstructed this discovery on no legally justified basis, requiring this frivolous discovery dispute and the waste of attorney and judicial resources.

## II.    FACTUAL & PROCEDURAL BACKGROUND

This case arises from an attorney fee-sharing dispute between the parties involving numerous claims in MDL No. 2179, Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 10, 2010 (hereinafter "BP MDL"). The Court has determined that Plaintiffs may pursue their claims for attorneys' fees and costs, including unpaid rent, pursuant to *quantum meruit*. *See* (R. Doc. 27368).

Plaintiffs, Louisiana lawyers and law firms, and Defendants, a Florida attorney and Florida law firm, entered into an oral agreement whereby they agreed to work together to market to, sign-up, and represent claimants with BP MDL claims in Louisiana, utilizing Plaintiffs' Louisiana law licenses and law offices to facilitate this work. The arrangement between the parties also allowed

Defendants to advance medical costs on behalf of claimants, which is allowed in Louisiana, but not in Florida. Because Defendants are not licensed to practice law in Louisiana, counseling and associating with Plaintiffs was necessary in order for Defendants to conduct this work.

A prior written agreement between the same parties, but for a different scope of work, the Attorney Participation Agreement, provided that Plaintiffs would be provided ten percent (10%) of the share of attorneys' fees. The parties understood and agreed that this same percentage would apply to the new agreement and scope of joint work.

The parties proceeded with this work over the course of approximately 11 months, from November 2012 to October 2013, and signed up, upon information and belief, 1,700 claimants at the Louisiana law offices of each Melancon│Rimes ("MR") and Sterbcow Law Group ("SLG"). Because of the agreement in place, Defendants did not provide compensation to Plaintiffs for the use of Plaintiffs' Louisiana offices for this work, except for the nominal offer of $500.00 per month to SLG for just three months of office space. In addition, Plaintiffs provided work in marketing to claimants, signing-up the claimants, and legal strategy and analysis.

Each of the claimants signed-up at Plaintiffs' Louisiana offices executed a contingency fee agreement providing for a 25 percent contingency fee award to counsel and stating that: "Craig Downs, Esquire, will be the attorneys primarily responsible for this matter, additionally Marx Sterbcow, Esquire and Jason Melancon, Esquire will assist with this matter." *See e.g.* (R. Doc. 1-5, Case No. 14-657).

Defendants retained all the signed contingency fee agreements, as well as the master list of claimants signed up by the parties. In September 2013, an attorney working for Defendants in the SLG office at the time provided Mr. Sterbcow with a list of 1,700 clients signed up by the parties in Louisiana. *See* (R. Doc. 1-8, Case No. 14-657). In October 2013, Mr. Melancon requested from

3

Defendants confirmation of the number of claimants but was told by another attorney working for the Defendants that there were only 73 claimants.  *See* (R. Doc. 1-7, Case No. 14-657).

Plaintiffs confronted Defendants about this discrepancy and were told for the first time that Defendants did not consider Plaintiffs joint or co-counsel for the 1,700 claimants signed-up by the parties at Plaintiffs' Louisiana law offices.  Shortly thereafter, an attorney working for Defendants provided communications to Plaintiffs demonstrating that Defendants intended to send letters out to the claimants who signed the retainer agreements containing the names of Melancon and Sterbcow, which directed the claimants to execute new retainer agreements omitting the names of these Plaintiffs.

As a result, in December 2013, Plaintiffs filed suit against Defendants in Florida state court in an effort to prevent Defendants from removing Plaintiffs as counsel for the claimants signed up at Plaintiffs' Louisiana offices.  However, while this suit was pending, in February 2014, the MDL Settlement Agreement was finalized after the exhaustion of appeals, and as a result, Plaintiffs filed a motion with this Court to enforce Plaintiffs' rights to attorneys' fees on the claimants' BP MDL cases.  In resolving this motion, the Court directed Plaintiffs to contact the MDL claims administrator with their attorney fee lien claim.

Plaintiffs then attempted to file an attorneys' fees lien with the MDL administrator, but because Defendants solely possessed the contingency fee contracts and client lists for the joint claimants, Plaintiffs were unable to provide the MDL administrator with the required information to do so.  Specifically, the MDL administrator stated that in order to file an attorneys' fees lien, Plaintiffs would need the names, dates of birth, social security numbers, and SPC numbers for the relevant claimants.

Without sufficient information to proceed with their attorneys' fees lien on the joint claims,

4

Plaintiffs proceeded with filing the present lawsuit on March 21, 2014, while voluntarily dismissing the Florida state court lawsuit. The present case was administratively stayed during the course of the MDL proceedings until 2021.

On December 21, 2021, Plaintiffs filed the First Amended Complaint, alleging breach of fiduciary duty and violation of LUTPA. (R. Doc. 27307). In response, Defendants filed a Rule 12(b)(6) motion to dismiss. On April 1, 2022, Judge Barbier presided over a hearing on the motion to dismiss. The Court dismissed Plaintiffs' First Amended Complaint "except insofar as it may state a claim for unpaid rent and a *quantum meruit* fee." (R. Doc. 27368). Thus, these are the operative claims in the case and dictate the scope of relevant discovery.

### III. THE PARTIES' DISCOVERY DISPUTE

On April 22, 2022, Plaintiffs propounded limited Requests for Production of Documents on the Defendants in an effort to obtain the documents necessary for the Court to resolve this attorneys' fee dispute. Ex. A (Pls.' First Request for Production of Documents). The six Requests for Production seek, in numerical order, as follows:

> (1) Any and all attorney-client contracts containing plaintiffs names, including but not limited to Jason L. Melancon, Melancon │ Rimes, LLC, Sterbcow Law Group, LLC, or Marx D. Sterbcow, related in any way to the BP Oil Spill litigation, MDL-2179;
>
> (2) For those contracts/clients identified in Response to Request No. 1, any attorney-client contracts executed in those same matters subsequent to Your October 22, 2013 letter to clients and which may or may not contain plaintiffs names;
>
> (3) For those contracts/clients identified in Response to Request No. 1, any and all closing statements and/or fee sheets identifying settlement(s) and attorney fees;
>
> (4) Any and all lists prepared by You or your employees identifying the contracts and/or client represented in association with Plaintiff(s);

5

>  (5) Any and all contemporaneous time logs of work kept on the contracts and/or clients identified in the previous requests for production of documents;
>
>  (6) Any and all contemporaneous data identifying the substance of the work contained in the time logs provided in Response to Request No. 5.  Ex. A.

On May 9, 2022, the parties participated in a Federal Rule of Civil Procedure 26(f) conference.

On June 2, 2022, Defendants served their Response to Plaintiffs' First Request for Production of Documents, therein objecting to Plaintiffs' Requests for Production and producing zero documents.  Ex. B (Defendants' Response to Plaintiffs' First Request for Production of Documents).  With regard to Plaintiffs' Requests for Production Nos. 1, 2, and 3, Defendants objected to production on the basis that the Requests were "irrelevant, overbroad and not calculated to lead to admissible evidence," citing the Court's order that Plaintiffs' claims for attorneys' fees and costs are grounded in *quantum meruit*.  *See id*.  In response to Plaintiffs' Requests for Production Nos. 4, 5, and 6, Defendants simply stated "None."  *See id*.

Because Plaintiffs' Requests for Production seek documents that are relevant and critical to resolving the *quantum meruit* claims against Defendants, counsel for Plaintiffs scheduled a Federal Rule of Civil Procedure 37(a) conference with Defendants to discuss the deficient Responses.  This conference occurred telephonically on June 10, 2022, during which the Defendants continued to assert their objections and refused to produce any of the request documents.  *See* Ex. C (Correspondence Confirming Rule 37(a) Conference).  Accordingly, Plaintiffs filed the present Motion.

## IV. LAW & ANALYSIS

### A. Applicable Law for Plaintiffs' Motion to Compel

6

1.     Rule 37(a) Motion to Compel Production of Documents

Pursuant to Federal Rule of Civil Procedure 37(a), "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." "A party seeking discovery may move for an order compelling...production....  This motion may be made if.... a party fails to produce documents...as requested under Rule 34." *Id*. at (a)(3)(B)(iv).  If a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party...whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Id*. at (a)(5)(A).

2.     Proper Scope of Discovery – Rule 26 &  Rule 34

Pursuant to Federal Rule of Civil Procedure 34, "[a] party may serve on any other party a request within the scope of Rule 26(b)...to produce...any designated documents or electronically stored information" that is within "the responding party's possession, custody, or control."  As noted in Rule 34, the proper scope for a request for production is determined by Rule 26(b), which provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

This "broad duty of disclosure" "is a central concept of the discovery process and finds expression not only in the rules of discovery, but also in the Rules of Professional Conduct, which prohibit an attorney from suppressing any evidence subject to a legal obligation to reveal or produce."  *Hsieh v. Apache Deepwater, LLC*, 2021 WL 5302467, at *3 (E.D. La. Aug. 9, 2021)

(citing *Yelton v. PHI, Inc.*, 279 F.R.D. 377, 384 (E.D. La. 2011)).

"Discovery should be allowed unless the party opposing discovery establishes that the information sought 'can have no possible bearing on the claim or defense of the party seeking discovery.'" *Id*. (quoting *Dotson v. Edmonson*, 2017 WL 11535244, at *2)(E.D. La. Nov. 21, 2017)). "If relevance is in doubt, the court should be permissive in allowing discovery." *Id*. (citing *E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 433 (S.D. Ind. 2010)).

### 3. Law on *Quantum Meruit* for Attorneys' Fees

This Court has determined that Plaintiffs may proceed with their claims for attorneys' fees and unpaid rent pursuant to *quantum meruit,* accordingly, a brief summary of this law is necessary to establish the relevancy of the disputed discovery. The U.S. Fifth Circuit Court of Appeals has recognized that under Louisiana law, the determination of reasonable attorneys' fees on a *quantum meruit* basis relies upon the factors set forth in Rule 1.5 of the Louisiana Rules of Professional Conduct.[1] *See Corey v. Brocato*, 626 F. App'x 480, 482-83 (5th Cir. 2015) (citing *City of Alexandria v. Brown*, 740 F.3d 339, 358 (5th Cir. 2014)). The Rule 1.5(a) factors to be considered in determining an attorneys' fees award are as follows:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the

---

[1] The Rule 1.5 factors are applied to determine the reasonable fees of attorneys who are discharged pursuant to contingency fee contracts. *See Corey*, 626 F. App'x at 482 (citing authorities). When an attorney provides work without a contingency fee contract, courts are to consider the "*Saucier* factors" for purposes of a *quantum meruit* award of attorneys' fees. *See id*. (citing *City of Alexandria*, 740 F.3d at 352). In the present case, there are numerous contingency fee contracts executed by the joint claimants; these contracts contain the names of Plaintiffs Melancon and Sterbcow and identify these Plaintiffs as counsel who "will assist in this matter." *See e.g.* R. Doc. 1-5 (Case No. 14-657). Accordingly, Plaintiffs will only refer to the Rule 1.5 factors for purposes of the analysis and arguments of their entitlement to attorneys' fees. Indeed, this approach is consistent with this Court's order that the Plaintiffs' attorneys' fees be determined pursuant to the Rule 1.5 factors. *See* Ex. D. Nonetheless, the Rule 1.5 factors and the *Saucier* factors are "essentially the same factors," and to conflate or confuse the two analyses is "harmless error." *City of Alexandria*, 740 F.3d at 352.

lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

The Fifth Circuit has further determined that a fee under these factors may be properly awarded on a percentage basis rather than on the hours worked and the reasonable local rate. *See Corey*, 626 F.App'x at 483-84 (citing authorities); *see e.g. McDonald v. Trans Atlas Marine Corp.*, 1993 WL 133840, at *5 (E.D. La. Apr. 19, 1993) (awarding ten percent of attorneys' fees under *quantum meruit* analysis even though counsel did not conduct ten percent of the work because of the value counsel brought to the case in securing the client).

### B. Defendants Should be Compelled to Produce Responses to Plaintiffs' Requests for Production Nos. 1, 2, 3 & 4

1. <u>Plaintiffs' Request for Production No. 1, Seeking the Contingency Fee Contracts Executed at Plaintiffs' Louisiana Law Offices, Containing Plaintiffs Names, Which are at the Center of the Litigation</u>

The central issue in this litigation is a dispute over attorneys' fees arising from the parties' joint work in signing up 1,700 claimants pursuant to contingency fee contracts at Plaintiffs' Louisiana law offices; these contracts contain the names of Plaintiffs Melancon and Sterbcow. Incredibly, in response to Plaintiffs' Request for Production No. 1, seeking these very contracts, Defendants objected on the basis of irrelevance and overbreadth and citing Louisiana law on

9

*quantum meruit*, and remained firm in these objections during the Rule 37 conference. *See* Exs. B, C.  Pursuant to Rule 26(b) and *quantum meruit*, these objections are meritless, as these contracts and the information contained therein are highly relevant and critical to resolving Plaintiffs' remaining claim of *quantum meruit*.

Based upon the applicable law on *quantum meruit* addressed above, Plaintiffs' claims for attorneys' fees cannot move forward without the production of the contingency fee contracts executed at Plaintiffs' Louisiana law offices, containing the names of Plaintiffs Melancon and Sterbcow, which identify the claimants who were signed-up pursuant to the joint efforts of the parties.  There is simply no way for the fact finder to even begin an analysis of the Rule 1.5(a) factors without the contracts because these factors are assessed based upon the underlying cases involved.

Without copies of the contingency fee contracts, for example, how can the fact finder determine which and how many cases involved the Plaintiffs' *quantum meruit* work in marketing, soliciting, signing up, and conducting legal research and analysis?  As alleged, Defendants have provided Plaintiffs with conflicting information as to the names and numbers of claimants signed up by the parties at the Plaintiffs' Louisiana law offices, first identifying 1,700, but later only 73. Plaintiffs have attempted to obtain this information from the BP MDL administrator, but without the identifying information contained in these contracts, the administrator was unable to provide the information.  Defendants have sole possession of these contracts.  Thus, the production of the contingency fee contracts is the first, necessary step to resolving this attorneys' fees dispute.

Turning to the specific Rule 1.5(a) factors, without knowing the names of the claimants, how can the fact finder determine the Rule 15(a)(1) "time and labor" that was required for the claimants' cases, or the Rule 15(a)(4) "results obtained" for the claimants?  For example, were the

10

claims resolved quickly through a claims process shortly after signing the contingency fee contract or were the claims resolved after lengthy, complicated litigation? The answers to these questions bear directly on the apportionment of fees to Plaintiffs.

Without the identity of the claimants, as evidenced by the contracts, how will the fact finder determine under Rule 1.5(a)(4) the "amount involved" in the claims? This amount is critical to determining Plaintiffs' damages under *quantum meruit*, as there is no way to apportion fees without knowing the amount of damages awarded and attorneys' fees paid for a claim.

Further, how will the factfinder confirm under Rule 1.5(a)(8) "whether the fee is fixed or contingent" without copies of the contracts? This information is contained on the face of the contracts and would not be located elsewhere.

Also, the dates of the executed contracts will bear directly on the Rule 1.5(a)(6) factor of the "nature and length of the professional relationship with the client," and confirm whether the contracts were executed at Plaintiffs' Louisiana offices. These dates will also assist the fact finder in determining the duration that Plaintiffs' Louisiana offices were used for work towards the joint claimants for purposes of Plaintiffs' unpaid rent claim.

Without copies of the contingency fee contracts, Plaintiffs cannot confirm the scope of their obligations contracted-for in the contracts to the claimants. This information would be contained on the face of the contracts and likely relevant to the Rule 1.5(a) factors.

Further, Defendants do not dispute that Plaintiffs provided their Louisiana law offices to help sign-up the claimants who executed the contingency fee contracts or that the names of Plaintiffs Melancon and Sterbcow are contained in these contracts and identified as counsel to "assist" in the claimants' cases. *See* Ex. D (Trans. H'rg Apr. 1, 2022, at 30:16-19, 31:3-4, 32:19-20; 47:9-16). Accordingly, Defendants have no basis to withhold from production the very

11

contracts that formed the basis of the Plaintiffs' work on behalf of the claimants and from which this attorneys' fee dispute arises.

There are no more essential discovery documents than these contracts which provide necessary and highly relevant information to resolve Plaintiffs' *quantum meruit* claims. For these reasons, the contingency fee contracts signed by claimants at Plaintiffs' Louisiana law offices at issue in Request for Production No. 1 are relevant to Plaintiffs' claims and should be produced by Defendants without further delay.

> 2. <u>Plaintiffs' Request for Production No. 2, Seeking Contingency Fee Contracts, Subsequently Executed by the Claimants Signed-up at Plaintiffs' Louisiana Offices & Which Removed the Names of Plaintiffs</u>

The attorney-client contracts omitting the names of Plaintiffs, which were executed by claimants after executing contracts containing the names of Plaintiffs at Plaintiffs' Louisiana offices, sought by Plaintiffs' Request for Production No. 2 are directly relevant to Plaintiffs' claims for *quantum meruit* under the Rule 1.5(a) factors. To briefly summarize the facts leading up to the execution of the contracts: Plaintiffs were provided with information from an attorney employed by Defendants which demonstrated that, after the dispute between the parties arose regarding the number of joint claimants represented by the Plaintiffs, Defendants contacted the joint claimants and directed these claimants to execute new contingency fee contracts that omitted the names of Plaintiffs. These new contracts, to the extent they exist, are relevant to Plaintiffs' claims under factors (5) and (6) of Rule 1.5(a).

Factor (5) of Rule 1.5(a) requires the fact finder to consider "the time limitations imposed by the client or circumstances." Under this factor, the "circumstances" of the Defendants' actions in contacting the clients and directing the clients to discharge Plaintiffs as counsel resulted in a "time limitation" because it prevented Plaintiffs from further representation of the claimants due

to no fault of their own and without having the ability to communicate with the clients directly to continue the representation. But for the Defendants' actions in removing Plaintiffs as counsel for the joint claimants, Plaintiffs could and would have contributed more legal work to the joint client claims.

Factor (6) of Rule 1.5(a) requires the fact finder to consider "the nature and length of the professional relationship with the client." The subsequently executed contingency fee contracts omitting the names of Plaintiffs are directly relevant to this factor because these contracts demonstrate when and if the joint claimant discharged Plaintiffs as counsel and the nature of the attorney-client relationship between Plaintiffs and these claimants. Because Defendants have not produced any of these requested contracts, Plaintiffs are entirely unaware of how many operative contracts with joint claimants contain Plaintiffs' names as additional counsel.

3. <u>Plaintiffs' Request for Production No. 3, Seeking Closing Statements & Fee Sheets Identifying Settlements & Attorneys' Fees for the Joint Claimants</u>

The closing statements and/or fee sheets identifying settlements and attorneys' fees requested by Plaintiffs' Request for Production No. 3 are directly relevant to Rule 1.5(a), factor (4), "the amount involved and the results obtained," and should be produced by Defendants without further delay. These closing statements and/or fee sheets would not only provide the necessary information identifying the names of the parties' joint claimants, but also the critical information under Rule 1.5(a)(4) of the amount of damages awarded to each claimant, how these damages were awarded, and the portion and amount of attorneys' fees paid to Defendants. The fact finder is unable to apportion attorneys' fees to Plaintiffs without the basic information that these documents provide. Thus, Defendants' relevance objection should be overruled.

4. <u>Plaintiffs' Request for Production No. 4, Seeking Lists Prepared by Defendants Identifying the Contracts & Joint Clients of the Parties</u>

13

Defendants fail to produce documents responsive to Plaintiffs' Request for Production No. 4, which requests lists of joint clients and/or contracts executed by the joint clients, by responding "[n]one" exist. However, prior lists of this nature were provided to Plaintiffs by employees of Defendants and these lists are relevant to Plaintiffs' claims. Accordingly, Defendants should be compelled to provide these lists without further delay.

The lists sought by Plaintiffs are directly relevant to their *quantum meruit* claims, as evaluated pursuant to Rule 1.5(a), because these lists, assuming they contain similar content as lists previously provided by Defendants' employees, identify the names of the claimants signed-up by the parties, personal information of these claimants that is needed to assert an attorneys' fees lien, and perhaps the case or claims number filed on behalf of each claimant, if not more relevant information. With this information, Plaintiffs are able to to identify by claimant name and case/claim number, several of the Rule 1.5(a) factors, particularly factor (4) "the amount involved and the results obtained."

Furthermore, Defendants' Response of "none" to Request for Production No. 4 is contradicted by the evidence. On two separate occasions, employees of Defendants provided lists to Plaintiffs identifying the names of claimants who were jointly represented by the parties and/or signed up at Plaintiffs' Louisiana offices. The first time, an employee of Defendants working at the Louisiana law office of SLG provided Mr. Sterbcow with a list of 1,700 claimants who were signed up by the parties at Plaintiffs' Louisiana law offices. *See* (R. Doc. 1-8, Case No. 14-657). The second time, an employee of Defendants emailed Plaintiffs a list of just 73 claimants who were signed up by the parties. *See* (R. Doc. 1-7, Case No. 14-657). Despite their best efforts, Plaintiffs have never been able to verify from Defendants whether either of these lists is accurate or obtain a complete list of claimants.

Given the existence of these prior lists, it appears that Defendants did in fact maintain "lists" of contracts and/or clients who were signed up by the parties pursuant to the contingency fee contracts. It also seems unlikely that Defendants, who from the outset have possessed and controlled the joint client contracts, would not maintain lists in this manner as part of normal client record keeping and case management. Accordingly, Defendants should be required to produce the requested lists without further delay.

Alternatively, if Defendants truly do not have any such lists in their custody, possession, or control, Defendants are required to provide a certification or confirmation that this discovery does not exist, such as a sworn affidavit. *See Shaw v. Ciox Health, LLC*, 2021 WL 6275288, at *2 (E.D. La. Feb. 10, 2021).

### C. Plaintiffs Should be Awarded the Attorneys' Fees Incurred in Filing this Motion

Pursuant to Rule 37(a)(5)(A), if a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party...whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Accordingly, if the Court grants the present Motion, because of the lack of legal basis for Defendants' discovery objections and the time required to resolve this wholly unnecessary discovery dispute, Plaintiffs request an opportunity to present evidence of the attorneys' fees incurred in bringing the present Motion and the taxation of these fees against Defendants.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion to Compel and require Defendants to produce the documents requested in Plaintiffs' Requests for Production Nos. 1, 2, 3, and 4. Further, Plaintiffs request an award of attorneys' fees

incurred in filing the present Motion.

        Respectfully submitted,

*s/ Craig M. Robinson*_____
CRAIG M. ROBINSON (Bar No. 32934)
*Robinson Law Offices, LLC*
700 Camp Street
New Orleans, Louisiana 70130
T: (504) 458-5100
F: (504) 717-4627
E: craig@rlolegal.com

*/s/ Alexis A. Butler*_____
Alexis A. Butler (Bar No. 32376)
*The Whitaker Law Firm, APC*
201 St. Charles Avenue
Suite 2500
New Orleans, LA 70170
T: (504) 313-0168
E: lexybutler@whitakerlaw.net

## CERTIFICATE OF SERVICE

    I hereby certify that on this __17th__ day of June 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice of electronic filing to all parties of record and that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and in accordance with the procedures established in MDL 2179.

        /s/ Craig M. Robinson_____
        Craig M. Robinson