Attachment "A"

1. **Establishment of Escrow Account**.

1.1 In accordance with this Order, the Claims Administrator shall establish the Escrow Account, and BP, Class Counsel and the Claims Administrator shall execute the Escrow Agreement with The Huntington National Bank as Escrow Agent (the "Escrow Agreement"). A copy of the Escrow Agreement is attached hereto as Attachment "B" and incorporated herein by reference.

1.2 The Escrow Account shall be comprised of the following three (3) subaccounts (the "Subaccounts"), which the Claims Administrator shall direct the Escrow Agent to establish, to be used solely for such purposes as described in the Master Settlement Agreement: the General Medical Claims/SPC Subaccount, the General Medical Claims/PMCP Subaccount, and the Administrative Subaccount. The Claims Administrator shall also establish corresponding demand deposit accounts with The Huntington National Bank for each Subaccount. The Gulf Region Health Outreach Programs Fund of the Medical Settlement Trust has served its purpose and therefore shall not have a corresponding subaccount within the Escrow Account. Any funds remaining in the Gulf Region Health Outreach Programs Fund shall be transferred to the Administrative Subaccount.

1.3 The Escrow Account shall be structured and operated in a manner so that it qualifies as a "qualified settlement fund" under section 468B of the Code and Treasury Regulation section 1.468B-1(c). Specifically, (a) this Order has approved the establishment of the Escrow Account under the terms and conditions of the Escrow Agreement and the Medical Settlement Agreement; (b) the Escrow Agreement and the Escrow Account are subject to the continuing exclusive jurisdiction and supervision of the Court; (c) the Escrow Account is established to resolve or satisfy claims of tort or violation of law arising out of the Deepwater Horizon Incident and settled pursuant to the Medical Settlement Agreement; and (d) the assets of the Escrow Account are, and will be, segregated from the general assets of BP and the BP Entities and deposited herein. The Escrow Account is compromised of the Subaccounts, which together constitute a single qualified settlement fund. Consistent with the terms of the Medical Settlement Agreement, the Claims Administrator shall take any action necessary to create and maintain the Escrow Account's status as a qualified settlement fund, and the Claims Administrator agrees not to take any action that will adversely affect the qualification of the Escrow Account as a qualified settlement fund.

2 **Escrow Agent**.

2.1 The Huntington National Bank is hereby appointed as the Escrow Agent for the Escrow Account.

2.2 The Escrow Agent may be removed by joint motion made by BP and Medical Benefits Class Counsel, and granted by the Court. If the Escrow Agent is removed or resigns, or is otherwise unable to continue in that position, BP and Medical Benefits Class Counsel shall jointly select a new proposed Escrow Agent, which shall be a federally insured depository institution, and move the Court to approve the new Escrow Agent.

3 **Administration of Escrow Account.**

3.1 All assets transferred to the Escrow Account and any earnings thereon shall be referred to herein as the "Escrow Amount." The Claims Administrator assumes all liability and responsibility for the

administration and distribution of the Escrow Amount, in accordance with and subject to the terms of this Order, the Medical Settlement Agreement, and the Escrow Agreement.

3.2  The Escrow Amount shall be administered and disbursed under the terms of this Order, the Medical Settlement Agreement and the Escrow Agreement, subject to continued and ongoing exclusive jurisdiction of the Court. The Claims Administrator shall have sole discretion and authority to direct the Escrow Agent to make payments, transfers, and disbursements from the Escrow Account, in accordance with the Master Settlement Agreement. The Claims Administrator shall establish procedures and controls to manage and account for the maintenance and distribution of the Escrow Amount, consistent with this Order, the Master Settlement Agreement, and the Escrow Agreement. BP and Medical Benefits Class Counsel shall have the right to review, and make recommendations regarding improvements to, such procedures and controls.

3.3  The Claims Administrator has authority to manage and direct the Escrow Agent to invest the Escrow Amount as it deems advisable to effectuate the purpose of the Escrow Account and in accordance with the Master Settlement Agreement. The Claims Administrator may engage such legal, financial, accounting, investment, auditing, and other consultants and agents the Claims Administrator in its discretion believes to be necessary for the proper administration of the Escrow Account and consistent with the terms of the Medical Settlement Agreement, with the compensation for such consultants and agents to be paid from the Administrative Subaccount as Settlement Costs.

3.4  The Claims Administrator shall direct the Escrow Agent to invest the Escrow Amount conservatively in a manner to assure timely availability of funds, protection of principal and avoidance of concentration, and only in the following investment types: (1) United States government money market funds having at least an A- rating awarded by at least two of the three major rating agencies (Standard & Poor's, Moody's or Fitch); or (2) short-dated United States treasury bills and/or interest bearing deposits at federally insured depository institutions that are at all times rated A- or higher by Standard & Poor's and Moody's provided such depository institution rated A- or higher at all times holds a stable or positive outlook. The Claims Administrator shall not be responsible for any loss that might occur from investment of the Escrow Amount unless the Claims Administrator invests the Escrow Amount in a type of investment other than the types prescribed herein. Any earnings attributable to such investments in the General Medical Claims/SPC Subaccount and the General Medical Claims/PMCP Subaccount shall be transferred monthly to the Administrative Subaccount. Any earnings attributable to the Administrative Subaccount shall be retained and used to pay Settlement Costs.

3.5  The Claims Administrator shall serve as "administrator" of the Escrow Account as a qualified settlement fund for purposes of Treasury Regulation section 1.468B-2(k)(3), and shall be responsible for the undertakings specified in the regulations promulgated under section 468B of the code, including, but not limited to, the obtaining of an employer identification number for the Escrow Account, the filing of all required federal, state, or local tax and information returns, any required withholding of tax, the payment from the Escrow Account of any federal, state, or local taxes (including estimated taxes) and any associated tax-related penalties and interest for which the Escrow Account may be liable, responding to any questions from or audits regarding such taxes by the Internal Revenue Services or any state or local tax authority, as well as compliance with any other tax-related requirements. Any taxes, interest, and penalty payments shall be Settlement Costs and shall be paid from the Administrative Subaccount.

3.6  In addition to the powers and authority granted above, the Claims Administrator shall have the power:

    (a) To enter into such other arrangements with third parties as permitted by and subject to any requirements set forth in the Medical Settlement Agreement or this Order, or as are determined by the Claims Administrator to be necessary in carrying out the purpose of this Order, consistent with the terms of the Medical Settlement Agreement and this Order, and to compensate such third parties for their services from the Administrative Subaccount as Settlement Costs;

    (b) To delegate any or all of the discretionary power and authority herein conferred at any time with respect to the investment of the Escrow Amount to any one or more individual or institutional advisors or investment managers determined by the Claims Administrator, and as approved by BP and Medical Benefits Class Counsel, to have demonstrated the experience and qualifications necessary for the responsible exercise of such discretion, and to compensate such advisors and managers for their services from the Administrative Subaccount as Settlement Costs;

    (c) To obtain and pay the premiums for such insurance policies required by the Medical Settlement Agreement, or as the Claims Administrator may determine are reasonably necessary or desirable for the protection of the Escrow Amount and the Claims Administrator, with such premiums to be paid from the Administrative Subaccount as Settlement Costs;

    (d) To sue, be sued, and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding or legal action with respect to the Escrow Account, with the costs of any such proceeding to be paid from the Administrative Subaccount as Settlement Costs; and

    (e) To execute and deliver such documents and instruments as the Claims Administrator determines to be necessary and proper in administering the Escrow Account.

3.7    The reasonable and necessary expenses, costs, and expenditures associated with the establishment, operation, administration, and termination of the Escrow Account shall be paid from the Administrative Subaccount as Settlement Costs. The Claims Administrator shall have no liability for the payment of any Settlement Costs.

3.8    The Escrow Account shall terminate upon order of the Court once BP's payment obligations under the Medical Settlement Agreement, and corresponding payments and disbursements under this Order and the Escrow Agreement, have been fully satisfied.

3.9    The Claims Administrator shall receive reasonable compensation related to performance of its duties described in the Medical Settlement Agreement, this Order, the Joint Retention Agreement (defined below in Section 9) and the Escrow Agreement.

4    **Termination of Trustee Services**.

4.1    Upon termination of the Medical Settlement Trust and completion of all remaining actions necessary to wind up the affairs of the Medical Settlement Trust, (i) the Trustee's services shall be terminated, (ii) the Trustee shall be discharged, and (iii) the Trustee shall have no further obligations or responsibilities with respect to the Medical Settlement Trust. The reasonable and necessary compensation, expenses, costs, and expenditures associated with the completion of all remaining actions necessary to wind up the affairs of the Medical Settlement Trust shall be paid from the Administrative Subaccount as Settlement Costs.

5   **BP Payment Obligations.**

5.1   There shall be no change to BP's payment obligations as set forth in the Medical Settlement Agreement. All Settlement Costs shall be paid by BP into the corresponding Subaccount of the Escrow Account as the replacement mechanism for the Medical Settlement Trust in the same manner described in the Medical Settlement Agreement.

5.2   The Claims Administrator shall have the authority to request additional funds from BP when the Claims Administrator reasonably believes such additional funds are necessary to meet BP's obligations under the Master Settlement Agreement. BP may contest any request for payment from the Claims Administrator in accordance with the process described in the Master Settlement Agreement.

5.3   BP shall have a reversionary interest in the Subaccounts within the Escrow Account in the same manner as the corresponding Fund of the Medical Settlement Trust, as described in the Medical Settlement Agreement; provided, however, that, as stated in Section 1.2 above, any funds remaining in the Gulf Region Health Outreach Programs Fund shall be transferred to the Administrative Subaccount.

6   **Reporting and Audit Requirements.**

6.1   The Claims Administrator shall be responsible for reporting as described in the Master Settlement Agreement on the Escrow Account as the replacement mechanism for the Medical Settlement Trust.

6.2   The Claims Administrator shall cause an annual audit to be performed on the Escrow Account as the replacement mechanism for the Medical Settlement Trust, reflecting amounts received from BP and payments and disbursements made from the Escrow Account, with such audit to be distributed as described in the Medical Settlement Agreement.

7   **Indemnification**.

7.1   BP shall indemnify, defend, and hold harmless the Claims Administrator, and its respective officers, owners, employees, representatives, agents, advisors, and consultants (collectively, the "Indemnitees") against any and all claims, demands, suits, liabilities, awards, expenses, losses, costs, fees (including reasonable attorneys' fees and costs), damages, causes of action, and judgments ("Losses") incurred by the Indemnitees in the performance of their duties as set forth in this Order; provided, however, to be indemnified under this Section 7.1, the Indemnitee must have acted in good faith, in a manner such Indemnitee reasonably believed to be in, or not opposed to, the best interests of fulfilling the Indemnitee's obligations under the Medical Settlement Agreement, and without negligence, bad faith, or intentional or willful misconduct, including fraud. All costs associated with indemnification provided under this Section 7.1 shall be paid from the Administrative Subaccount as Settlement Costs. No indemnification shall be provided to the Claims Administrator pursuant to this Section 7.1 for any claims for which the Claims Administrator must provide indemnification pursuant to Section XXIX.L of the Medical Settlement Agreement.

7.2   An Indemnitee shall give written notice to BP and Medical Benefits Class Counsel, and, if the Claims Administrator is not also the Indemnitee, to the Claims Administrator, of any claims that may be subject to indemnification, promptly after learning of such claims. BP and the Claims Administrator shall jointly make a determination regarding whether to contest indemnification under Section 7.1,

provided that BP's determination shall govern in the event that BP and the Claims Administrator disagree regarding such indemnification, and further provided that BP shall make this determination alone if the Claims Administrator is also the Indemnitee. Unless the duty to indemnify has been contested as described in this Section 7.2, BP and (if the Claims Administrator is not also the Indemnitee) the Claims Administrator shall assume the defense of such claim, with counsel chosen by BP and (if the Claims Administrator is not also the Indemnitee) the Claims Administrator.

7.3 Reasonable expenses, costs, and fees (including attorneys' fees and costs) incurred by or on behalf of an Indemnitee in connection with any action, suit, or proceeding from which the Indemnitee is indemnified by BP pursuant to Section 7.1 shall be Settlement Costs paid by the Administrative Subaccount in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Indemnitee, to repay such amount in the event it shall be determined ultimately by final order that such Indemnitee is not entitled to be indemnified by BP. The Indemnitee may, at its option and own expense, be represented by counsel of its choice in any action or proceeding with respect to such claim. Neither BP nor the Claims Administrator shall be liable for any litigation costs or expenses incurred by the Indemnitee's own counsel; provided, however, that if the Claims Administrator is the Indemnitee, the Claims Administrator shall be liable for all litigation costs and expenses incurred by the Indemnitee's own counsel. The Indemnitee and Indemnitee's separate counsel, if applicable, shall reasonably cooperate with BP and, if applicable, the Claims Administrator in such defense, at no cost to BP or, if applicable, the Claims Administrator.

7.4 The Claims Administrator shall purchase and maintain reasonable amounts and types of insurance on behalf of the Escrow Account, the Claims Administrator, and any individual who is or was an officer, employee, representative, or agent of the Claims Administrator against liability asserted against or incurred by such individual in that capacity or arising from his or her status as an Indemnitee. Such premiums for insurance related to the Escrow Account are subject to Section 3.6(c) above.

8 **Conflict with Medical Settlement Agreement**. Except as otherwise amended or modified herein, the terms, conditions and provisions of the Medical Settlement Agreement shall remain in full force and effect.

9 **Joint Retention Agreement**. The Services, as defined in the Joint Retention Agreement by and among the Claims Administrator, BP, and Medical Benefits Class Counsel dated as of September 5, 2012 (the "Joint Retention Agreement"), shall include the Claims Administrator's services and responsibilities described herein. Accordingly, the Claims Administrator's liability for the services and responsibilities described herein shall be limited as set forth in Sections 3.12 and 3.13 of the Joint Retention Agreement. The payment of the Claims Administrator's fees and expenses under the Joint Retention Agreement shall be made from the Administrative Subaccount as Settlement Costs.