Attachment "B"

Escrow Agreement

[attached]

**EXECUTION VERSION**

**ESCROW AGREEMENT**

This Escrow Agreement dated _____, 2022 is made by and among The Garretson Resolution Group, Inc. d/b/a Epiq Mass Tort ("Fund Administrator"), Medical Benefits Class Counsel ("Class Counsel"), BP Exploration & Production, Inc. and BP America Production Company (collectively, "BP"), and **THE HUNTINGTON NATIONAL BANK**, as escrow agent ("Escrow Agent").

<u>Recitals</u>

A.  This Escrow Agreement governs the deposit, investment and disbursement of the settlement funds that, pursuant to that certain *Deepwater Horizon* Medical Benefits Class Action Settlement Agreement (the "Settlement Agreement") dated April 18, 2012, and amended as of May 1, 2012 and that certain Order dated _____, 2022 (the "Order") (copies of which are attached hereto as *in globo* <u>Exhibit A</u>), entered into by, among others, BP and Class Counsel on behalf of the Medical Benefits Settlement Class, have or will be paid to settle the class action captioned *Deepwater Horizon Medical Benefits Class Action*, pending in the United States Distric Court of the Eastern District of Louisiana (the "Court").

B.  Pursuant to the terms of the Settlement Agreement and the Order, BP agreed to pay or cause to be paid certain cash contributions (the "Settlement Costs") in settlement of the claims brought against BP in the class action. All amounts contained in the Medical Settlement Trust are Settlement Costs.

C.  The Settlement Costs, together with any interest or earnings accrued thereon, are to be deposited into Escrow Agent and used to satisfy payments to the Medical Benefits Settlement Class, payments for attorneys' fees and expenses, payments for tax liabilities, and other costs pursuant to the terms of the Settlement Agreement and the Order.

D.  Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

**<u>Agreement</u>**

1. <u>Appointment of Escrow Agent</u>.  The Escrow Agent is hereby appointed to receive, deposit and disburse the Settlement Costs upon the terms and conditions provided in this Escrow Agreement, the Settlement Agreement, the Order and any other exhibits or schedules later annexed hereto and made a part hereof.

2. <u>The Escrow Account</u>.

    (a)  The Escrow Agent shall establish and maintain an escrow account titled as the DWH Med. Qualified Settlement Fund (the "Escrow Account"). All amounts contained in the Medical Settlement Trust shall be transferred and deposited into the Escrow Account.

Pursuant to the Settlement Agreement and the Order, BP shall also cause all additional Settlement Costs payments to be transferred and deposited into the Escrow Account. Such transfers to the Escrow Account shall occur from time to time, and the Fund Administrator shall direct the Escrow Agent via email instructions as to which Subaccount (defined below) each transfer should be deposited. Escrow Agent shall receive the Settlement Costs into the Escrow Account; the Settlement Costs and all interest and earnings accrued thereon shall be referred to herein as the "Settlement Fund." The Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein, and shall be released by Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreement, the Order, and any other orders of the Court.

(b) Upon creation of the Escrow Account, the Escrow Agent shall establish three (3) subaccounts as follows (the "Subaccounts"): the General Medical Claims/SPC Subaccount, the General Medical Claims/PMCP Subaccount, and the Administrative Subaccount. Any earnings attributable to the General Medical Claims/SPC Subaccount and the General Medical Claims/PMCP Subaccount shall be transferred monthly to the Administrative Subaccount.

3. <u>Investment of Settlement Fund</u>. At the written direction of the Fund Administrator, Escrow Agent shall invest the Settlement Fund exclusively in (1) United States government money market funds having at least an A- rating awarded by at least two of the three major rating agencies (Standard & Poor's, Moody's or Fitch); or (2) short-dated United States treasury bills and/or interest bearing deposits at federally insured depository institutions that are at all times rated A- or higher by Standard & Poor's and Moody's provided such depository institution rated A- or higher at all times holds a stable or positive outlook. BP shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Escrow Agent. The Fund Administrator shall not be responsible for any loss that might occur from investment of the Settlement Fund unless the Fund Administrator directs the Escrow Agent to invest the Settlement Fund in a type of investment other than the types prescribed by the Order.

4. <u>FDIC Pass-Through Coverage</u>. The Settlement Fund shall maintain eligibility for pass-through deposit insurance coverage as is available for certain class account settlement accounts established pursuant to section 468B of the Internal Revenue Code of 1986, 26 USC 468B through 1) titling the Escrow Account with the term "Qualified Settlement Fund" ("QSF") to signify the fiduciary nature of the account, in compliance with the FDIC's regulations under 12 CFR 330.5(b)(1); and 2) ensuring that the beneficial ownership interests in the deposit account will be "ascertainable" within the meaning of 12 CFR 330.5(b)(2) so that the identity of the class members, i.e., the beneficial owners of the deposits, would be known at the time of a deposit insurance determination, and the shares of each of the beneficial owners is also known at that time or within a reasonable time thereafter.

5. <u>Escrow Funds Subject to Exclusive Jurisdiction of the Court</u>. The Settlement Fund shall remain subject to the exclusive jurisdiction of the Court until such time as the Settlement Fund shall be distributed, pursuant to this Escrow Agreement the Settlement Agreement and the Order, and on further order(s) of the Court.

6. <u>Tax Treatment & Reporting</u>.  The Settlement Fund shall be treated and operated at all times as a "Qualified Settlement Fund" under section 468B of the Internal Revenue Code of 1986, as amended (the "Code") and Treasury Regulation §1.468B-1.  For purposes of §468B of the Code and Treasury Regulation §1.468B-2(k)(3), the "administrator" of the Settlement Fund shall be the Fund Administrator, and shall be responsible for the undertakings of the administrator as specified in the regulations promulgated under section 468B of the Code, including, but not limited to, the obtaining of an employer identification number for the Escrow Account, the filing of all required federal, state, or local tax and information returns, any required withholding of tax, the payment from the Escrow Account of any federal, state, or local taxes (including estimated taxes) and any associated tax-related penalties and interest for which the Escrow Account may be liable, responding to any questions from or audits regarding such taxes by the Internal Revenue Services or any state or local tax authority, as well as compliance with any other tax-related requirements.  The Fund Administrator and, as required by law, BP, shall jointly and timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. § 1.468B-1(j)(2) if necessary to the earliest permitted date.  The Fund Administrator shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1.  The Fund Administrator shall timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the Settlement Funds and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(l).

7. <u>Tax Payments of Settlement Fund</u>.  All Taxes with respect to the Settlement Fund, as more fully described in the Settlement Agreement and the Order, are Settlement Costs and shall be treated as and considered to be a cost of administration of the Settlement Fund, and the Escrow Agent shall timely pay such Taxes out of the Administrative Subaccount without prior order of the Court, as directed by Fund Administrator**.**  The Fund Administrator shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law.  The Fund Administrator may engage an accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due as set forth in Sections 6 and 7, and the expense of such assistance shall be paid from the Administrative Subaccount by the Escrow Agent at the Fund Administrator's direction.  The Settlement Fund shall indemnify and hold BP harmless for any taxes that may be deemed to be payable by BP by reason of the income earned on the Settlement Fund, and Escrow Agent, as directed by Fund Administrator, shall establish such reserves as are necessary to cover the tax liabilities of the Settlement Fund and the indemnification obligations imposed by this paragraph. If the Settlement Fund is returned to BP pursuant to the terms of the Settlement Agreement and the Order, BP shall provide Escrow Agent with a properly completed Form W-9.

8. <u>Disbursement Instructions.</u>

(a) Disbursements must be authorized by either (i) an order of the Court, or (ii) the written direction of the Fund Administrator.  BP and Class Counsel agree that the Escrow Agent may rely solely on instruction from the Fund Administrator as to the release and

delivery of the Settlement Fund.  Exhibit C, attached hereto, designates the authorized signatories of Fund Administrator who are empowered and authorized to direct Escrow Agent accordingly.

(b) In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, Escrow Agent will seek confirmation of such instructions by telephone call back when new wire instructions are established to the authorized signatories designated in subparagraph (a) above only if it is reasonably necessary, and Escrow Agent may rely upon the confirmations of anyone purporting to be the authorized signatory so designated.  To ensure accuracy of the instructions it receives, Escrow Agent may record such call backs.  If Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved.  The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by Escrow Agent.  The Fund Administrator will notify Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed.  If it is determined that the transaction was delayed or erroneously executed as a result of Escrow Agent's error, Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law.  Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

(c) The Escrow Agent shall not be liable for any losses, costs or expenses arising directly or indirectly from the Escrow Agent's reliance upon and compliance with such instructions notwithstanding such instructions conflict or are inconsistent with a subsequent written instruction. The party providing electronic instructions agrees; (i) to assume all risks arising out of the use of such electronic methods to submit instructions and directions to the Escrow Agent, including, without limitation, the risk of the Escrow Agent acting on unauthorized instructions, and the risk or interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to the Escrow Agent and that there may be more secure methods of transmitting instructions than the method(s) selected by the Escrow Agent; and (iii) that the security procedures (if any) to be followed in connection with its transmission of instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances.

9. Termination of Settlement Agreement.  If the Settlement Agreement terminates in accordance with its terms, the Fund Administrator shall notify Escrow Agent of the termination of the Settlement Agreement.  Upon such notification, the balance of the Settlement Fund, together with any interest earned thereon, less any expenses actually incurred in accordance with the terms of the Settlement Agreement but not yet paid, and any unpaid Taxes due, as determined by the Fund Administrator, Class Counsel, and BP, shall be distributed in accordance with this Escrow Agreement, the Settlement Agreement, the Order, and any other orders of the Court.

10. Fees.  The Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit B. All fees and expenses of Escrow Agent shall be

paid solely from the Administrative Subaccount.  The Escrow Agent may pay itself such fees from the Administrative Subaccount only after such fees have been approved for payment by the Fund Administrator.

        11.      <u>Duties, Liabilities and Rights of Escrow Agent</u>.  This Escrow Agreement sets forth all of the obligations of Escrow Agent, and no additional obligations shall be implied from the terms of this Escrow Agreement or any other agreement, instrument or document.

        (a)      Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Fund Administrator, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order.  Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine, and may assume that such person has been properly authorized to do so.

        (b)      Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel.  Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the Escrow Account only (i) upon approval by Fund Administrator following consultation with BP and Class Counsel or (ii) pursuant to an order of the Court.

        (c)      The Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Settlement Fund may be invested, subject to the permissible investments set forth in Section 3 above.

        (d)      Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

        (e)      Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of paragraph 3 of this Escrow Agreement. The Escrow Agent will be indemnified by the Settlement Fund, and held harmless against, any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Escrow Agent of, any of the Escrow Agent's duties under this Agreement, except as a result of the Escrow Agent's bad faith, willful misconduct or gross negligence.

        (f)      Upon distribution of all of the funds in the Escrow Account pursuant to the terms of this Escrow Agreement and any orders of the Court, Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Escrow Agreement, except as otherwise specifically set forth herein.

(g)     In the event any dispute shall arise between the parties with respect to the disposition or disbursement of any of the assets held hereunder, the Escrow Agent shall be permitted to interplead all of the assets held hereunder into the Court, and thereafter be fully relieved from any and all liability or obligation with respect to such interpleaded assets. The parties further agree to pursue any redress or recourse in connection with such a dispute, without making the Escrow Agent a party to same.

12.     <u>Non-Assignability by Escrow Agent</u>.   Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of Fund Administrator, BP and Class Counsel.

13.     <u>Resignation and Removal of Escrow Agent</u>.

(a)     Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Escrow Agreement herein.  On the effective date of such resignation, Escrow Agent shall deliver this Escrow Agreement together with any and all related instruments or documents and all funds in the Escrow Account to the successor Escrow Agent, subject to this Escrow Agreement.  If a successor Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then Escrow Agent may petition the Court for the appointment of a successor Escrow Agent, or other appropriate relief.  Any such resulting appointment shall be binding upon all of the parties to this Escrow Agreement.

(b)     BP and Class Counsel may make a joint motion to Court to remove the Escrow Agent as escrow agent at any time, with or without cause.  If such motion is approved by the Court, the Fund Administrator shall deliver notice of removal by an instrument (which may be executed in counterparts) delivered to the Escrow Agent, which instrument shall designate the effective date of such removal.  In the event of any such resignation or removal, BP and Class Counsel shall jointly petition the Court to appoint a successor escrow agent.  If a successor escrow agent is not so appointed, the Escrow Agent may apply to the Court to do so.

14.     <u>Notices</u>.  Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

  If to Class Counsel:  Stephen J. Herman
            Herman Herman & Katz LLC
            820 O'Keefe Avenue
            New Orleans, LA  70113
            sherman@hhklawfirm.com

|  |  |
|---|---|
| If to BP: | Chris Lewis<br>Financial Advisor<br>Finance OB&C – BP America Inc.<br>501 Westlake Park Blvd.<br>Houston, TX  77079 |
| If to Fund Administrator: | The Garretson Resolution Group, Inc. d/b/a Epiq Mass Tort<br>Katharine H. Hosty, Esq.<br>Epiq \| Special Counsel & Sr. Director<br>9144 Arrowpoint Blvd, 4th Floor<br>Charlotte, NC 28273<br>Direct:  513 601 8155<br>Email: Katie.Hosty@epiqglobal.com |
| If to Escrow Agent: | THE HUNTINGTON NATIONAL BANK<br>Robyn Griffin<br>Senior Managing Director<br>National Settlement Team<br>The Huntington National Bank<br>One Rockefeller Plaza 10th Fl<br>New York, NY 10020<br>Office: 212-581-5051<br>Mobile: 646-265-3817<br>E-mail:  robyn.griffin@huntington.com<br><br>Susan Brizendine, Trust Officer<br>Huntington National Bank<br>7 Easton Oval – EA5W63<br>Columbus, Ohio 43219<br>Telephone: (614) 331-9804<br>E-mail:  susan.brizendine@huntington.com |

15. <u>Patriot Act Warranties</u>.  Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal entity that opens an account (the "Identification Information").  The parties to this Escrow Agreement agree that they will provide the Escrow Agent with such Identification Information as the Escrow Agent may request in order for the Escrow Agent to satisfy the requirements of the Patriot Act.

16. <u>Entire Agreement</u>.  This Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto.  Any modification of this Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto.  To

7

the extent this Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

17. <u>Governing Law</u>.  This Escrow Agreement shall be governed in all respects by the law of the State of Louisiana, without regard to conflict of law principles.

18. <u>**EXCLUSIVE JURISDICTION**</u>.  **THE PARTIES HERETO SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE COURT IN CONNECTION WITH ANY PROCEEDINGS COMMENCED REGARDING THIS ESCROW AGREEMENT, INCLUDING, BUT NOT LIMITED TO, ANY INTERPLEADER PROCEEDING OR PROCEEDING ESCROW AGENT MAY COMMENCE PURSUANT TO THIS ESCROW AGREEMENT FOR THE APPOINTMENT OF A SUCCESSOR ESCROW AGENT, AND ALL PARTIES HERETO SUBMIT TO THE EXCLUSIVE JURISDICTION OF SUCH COURT FOR THE DETERMINATION OF ALL ISSUES IN SUCH PROCEEDINGS, WITHOUT REGARD TO ANY PRINCIPLES OF CONFLICTS OF LAWS, AND IRREVOCABLY WAIVE ANY OBJECTION TO VENUE OR INCONVENIENT FORUM.**

18. <u>Termination of Escrow Account</u>.  The Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement, the Order, this Escrow Agreement, and any other orders of the Court.

19. <u>Miscellaneous Provisions</u>.

    (a) <u>Counterparts</u>.  This Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Escrow Agreement.

    (b) <u>Further Cooperation</u>.  The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Escrow Agreement in order (a) to give Escrow Agent confirmation and assurance of Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Escrow Agreement, each in such form and substance as may be acceptable to Escrow Agent.

    (c) <u>Non-Waiver</u>.  The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

*[Remainder of page intentionally blank.  Signature page follows.]*

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as Escrow Agent

By: _____
      Robyn Griffin, Senior Managing Director

BP Exploration & Production, Inc.

By:_____
Name:_____
Its:_____

BP America Production Company

By:_____
Name:_____
Its:_____

The Garretson Resolution Group, Inc. d/b/a Epiq Mass Tort

By:_____
Name:_____
Its:_____

Medical Benefits Class Counsel

By:_____
Name:_____
Its:_____

**Exhibit A**

**Settlement Agreement and the Order**

[attached hereto]

**Exhibit B**

**Fees of Escrow Agent**

| | |
|---|---|
| **Acceptance Fee:** | **Waived** |

The Acceptance Fee includes the review of the Escrow Agreement, acceptance of the role as Escrow Agent, establishment of Escrow Account(s), and receipt of funds.

| | |
|---|---|
| **Annual Administration Fee:** | **Waived** |

The Annual Administration Fee includes the performance of administrative duties associated with the Escrow Account including daily account management, generation of account statements to appropriate parties, and disbursement of funds in accordance with the Escrow Agreement.  Administration Fees are payable annually in advance without proration for partial years.

| | |
|---|---|
| **Out of Pocket Expenses:** | **Waived** |

Out of pocket expenses include postage, courier, overnight mail, wire transfer, and travel fees.

**Exhibit C**

**DESIGNATION OF AUTHORIZED SIGNATORIES
OF FUND ADMINISTRATOR**

The undersigned, _____, being the duly elected, qualified and acting representative of Garretson Resolution Group, Inc. d/b/a Epiq Mass Tort ("Fund Administrator"), does hereby certify:

That each of the following representatives is, at the date hereof, an authorized representative of Fund Administrator for purposes of the Escrow Agreement to which this Exhibit is attached (the "Escrow Agreement"), that the signature appearing opposite each representative's name is the true and genuine signature of such representative, and that each representative's contact information is current and up-to-date at the date hereof. Each of the authorized representatives is authorized to issue instructions, confirm funds transfer instructions by callback or email confirmation and effect changes in authorized representatives, all in accordance with the terms of the Escrow Agreement.

| NAME | SIGNATURE | TELEPHONE, CELL NUMBERS and EMAIL ADDRESSES |
|---|---|---|
|  | _____ | (work):<br>(cell):<br>(email): |
| Stephanie Farrar | _____ | (work): 513-601-8171<br>(cell): 513-602-1105<br>(email): stephanie.farrar@epiqglobal.com |
| David Graf | _____ | (work): 513-601-8109<br>(email): david.graf@epiqglobal.com |

The undersigned certifies that pursuant to Fund Administrator's governing documents, as amended, the undersigned has the power and authority to execute this Designation on behalf of Fund Administrator, and that the undersigned has so executed this Designation this _____ day of _____, 2022.

Signature:

_____

Name:
Title: