UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In Re: Oil Spill by the Oil Rig** | * | |
| **"Deepwater Horizon" in the Gulf** | | **MDL 2179** |
| **of Mexico on April 20, 2010** | * | |
| | | **SECTION: J(2)** |
| | * | |
| **Applies to:** | | **JUDGE BARBIER** |
| *No. 2:16-cv-5952 Loggerhead* | * | |
| *Holdings, Inc. v. BP* | | **MAG. JUDGE CURRAULT** |
| | * | |

## MOTION FOR REMAND

Comes now Plaintiff, LOGGERHEAD HOLDINGS, Inc. (Loggerhead"), by and through its undersigned counsel, and moves this Court to issue a Suggestion of Remand in accordance with 28 U.S.C. § 1407(a) and Rule 10(b) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation for this case to be remanded back to the United States District Court for the Southern District of Texas ("SDTX") so that Loggerhead can try its case against Defendants BP, P.L.C.; BP America, Incorporated; BP Products North America, Incorporated; BP America Production Company; BP Exploration & Production, Incorporated, (collectively "BP") in the Houston Division and states:

1.  This Court has diligently served for almost 13 years as the transferee court overseeing substantial pretrial motion practice, limited coordinated and consolidated discovery, presided over trials, and developed and implemented a Court Supervised Settlement Program (CSSP) thereby resolving thousands of claims in the single largest environmental disaster in U.S. history. All outstanding "B1" economic loss claims, the class of claims that Loggerhead is a member of, have been settled or dismissed with prejudice but for Loggerhead's claim against the BP Defendants.

2. Because Loggerhead's claims consist of alleged economic losses, the case was consolidated within this MDL as part of the "B1" pleading bundle, consisting of private claims for economic loss and property damage.

3. In 2018, the Court issued Pretrial Order No. 65 ("PTO 65"), requiring all "B1" plaintiffs, including Loggerhead, to submit a sworn statement that provided the Court causation and damage information about their claims. Loggerhead complied with this requirement.

4. On October 2, 2020, the Court issued Pretrial Order 69 ("PTO 69"), which addressed the still remaining "B1" cases in the MDL. PTO 69 established a timeline for BP and Loggerhead to conduct **limited** discovery before the Court ordered a dispositive motion filing deadline. BP sought and obtained summary judgment on all of Loggerhead's claims. A timely appeal followed and the Fifth Circuit Court of Appeals reversed the summary judgment against Loggerhead's 33 U.S.C. § 2702(b)(2)(E) economic loss claim. The Court of Appeals held that, even on the limited evidentiary record, genuine issues of material fact existed which precluded summary disposition of Loggerhead's claim and these issues can only be resolved by a jury. Because of this holding by the Fifth Circuit Court of Appeals, and as the only economic loss case left, Loggerhead's case is now ripe for remand to the original, transferor court in the Southern District of Texas.

5. The Judicial Panel on Multidistrict Litigation ("JPML") transferred Loggerhead's case to the Eastern District of Louisiana under 28 U.S.C. § 1407 **for coordinated or consolidated pretrial proceedings** in MDL 2179 given the thousands of civil actions filed in different districts throughout the country. The fundamental function for the transferee court to consolidate pretrial proceedings among civil actions and for placing Loggerhead's claim into this MDL, as part of the "B1" pleading bundle consisting of private claims for economic loss, no longer exist.

6.      On March 7, 2022, BP's Answer Brief filed in the United States Court of Appeals for the Fifth Circuit agreed that Loggerhead's case was the last remaining economic loss case.

> "This [Loggerhead] is the last remaining Deepwater Horizon case that alleges economic injury. **All** other economic loss cases have been dismissed, with no appeal pending, or resolved through multiple ongoing efforts." (Rec. Doc. 00516228343) (No. 21-30573), (emphasis added).

7.      The controlling law governing multidistrict litigation is premised upon having thousands of cases, not just one (1) case, that involve common questions of fact and law for determination by one judge to avoid inconsistent rulings and to encourage various forms of court supervised settlements. This framework exists for coordinating or consolidating pretrial proceedings for managing thousands of claims, not just a single unsettled case needing to be tried by a jury.

> **Multidistrict litigation** "(a) When civil action**s** involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for **coordinated or consolidated** pretrial proceedings… Each action so transferred **shall** be remanded by the panel **at or before** the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated…. (28 U.S.C. § 1407 (a)). (emphasis added).

8.      Loggerhead, the sole remaining member of the "B1" pleading bundle since at least March, 2022, wants to pursue its private claim for economic loss in the original court where it filed. There are no other "civil actions" remaining which involve one or more common questions of fact pending in this MDL. Candidly, given the resolution of **all** other economic loss claims, there are no other pending economic loss civil actions requiring this Court's attention for **coordinated or consolidated** pretrial proceedings under 28 U.S.C. § 1407. Frankly stated, the purposes behind consolidating related civil actions in this MDL have disappeared with this Court's termination of all other economic loss cases or the settlement of those cases. There are no further common factual or legal questions requiring the services of this transferee Court. Requiring Loggerhead and BP to further participate in MDL 2179, for this case, will waste this Court's

3

valuable time and resources and will deprive the transferor district court judge in the Southern District of Texas who will try the case of the opportunity to learn about the case and make the remaining pretrial rules on issues solely limited to this case.  Allowing the transferor court (SDTX) to complete pretrial procedures will have no consequence to any other civil action since all other economic loss cases have been resolved.

9. There are no remaining economic damage claim litigants, other than Loggerhead, for this Court to **coordinate or consolidate** pretrial proceedings for.  There are clearly identified material issues of genuine fact recognized by the Fifth Circuit Court of Appeals that require a jury trial of Loggerhead's 33 U.S.C. § 2702(b)(2)(E) claim to resolve and BP, as a matter of law, is precluded from obtaining summary judgement on the remaining OPA 90 claim.  The Supreme Court of the United States in *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S. Ct 956, 140 L. Ed. 2d 62 (1998), requires that this case be transferred back to its transferor court for a trial on the merits.  This required transfer, under the present circumstances, should happen before conclusion of pretrial proceedings so the trial judge in the Southern District of Texas can manage the remaining pretrial proceedings of the case which will be tried there.

10. Loggerhead has participated in good faith in all efforts to settle and resolve this dispute with BP in the MDL without success.  It is very unlikely that any further settlement negotiations between Loggerhead and BP, within the context of the MDL, will result in any settlement given that Loggerhead and BP have <u>very</u> different valuations for the claim.  Indeed, remanding this case to the Southern District of Texas has the greatest potential for encouraging settlement by the BP defendants.  Furthermore, since this Court already stated in its order granting BP summary judgment how it values Loggerhead's 33 USC 2702(b)(2)(E) claim, there is little likelihood the Court can positively assist the parties in any further settlement efforts.

## BACKGROUND RELEVANT MDL 2179 PROCEEDINGS

11. The Judicial Panel on Multidistrict Litigation created MDL 2179 on August 10, 2010. (Rec. Doc. 1). There have been many developments over the past twelve and half years. The following MDL procedural history is relevant to show the transferee Court completed its role successfully and Loggerhead's case is now ready for remand by the JPML before the conclusion of pretrial proceedings.

## PLEADING BUNDLES

12. Numerous civil actions asserted a variety of damage claims and these were all consolidated in MDL 2179. Early on, the transferee Court organized these various claims by type into one of several "pleading bundles." (See Pretrial Order No. 11, Rec. Doc. 569; Pretrial Order No. 25, Rec. Doc. 983) The pleading bundles included:

- A. Personal Injury and Death
- B. Private Individuals and Business Loss Claims
    - B1. Non-Governmental Economic Loss and Property Damages
    - B2. RICO Claims
    - B3. Post-Explosion Clean-Up Claims
    - B4. Post-Explosion Emergency Responder Claims
- C. Public Damage Claims
- D. Injunctive and Regulatory Claims
    - D1. Claims Against Private Parties
    - D2. Claims Against the Government or any Government Official or Agency
- E. Designation of Subsequently Added Cases

13. The Loggerhead claims fell within the "B1. Non-Governmental Economic Loss and Property Damages" pleading bundle.

14. On December 15, 2010, the Plaintiffs' Steering Committee filed a Master Complaint for the "B1" bundle (Rec. Doc. 879) and on February 09, 2011, an Amended Master

Complaint for the "B1" bundle was filed (Rec. Doc. 1128). "B1" Plaintiffs could join in and adopt the claims of the Amended B1 Master Complaint by submitting a three-page Short Form Joinder. (Rec. Docs. 983, 983-3, 982).

15. On August 26, 2011, the transferee Court issued an order granting, in part and denying in part, Defendants' motion to dismiss the Amended B1 Master Complaint. (Rec. Doc. 3830). That order held (among other things) that Plaintiffs' state-law claims were preempted by maritime law.

## COURT SUPERVISED SETTLEMENT

16. In 2012, BP advocated to the Court for a settlement framework. This resulted in the Deepwater Horizon Economic and Property Damage Class Action Settlement Agreement ("Economic Settlement," Rec. Doc. 6276), which was intended to help resolve individual and business economic injury claims arising from the DEEPWATER HORIZON/Macondo Well incident. The Court issued a preliminary approval of the Economic Settlement on May 2, 2012 (Rec. Doc. 6418). There was an objection and opt-out period and a fairness hearing on November 8, 2012 (Rec. Doc. 7900). Final approval of the Economic Settlement was on December 21, 2013 (Rec. Docs. 8138, 8139).

## TRIALS

17. This Court held two bench trials in 2013 and a third in 2015. The Phase One Trial commenced on February 25, 2013 and concluded on April 17, 2013. Known as the Incident Phase, it addressed fault determinations relating to the loss of well control, the ensuing explosion and fire, the sinking of the DEEPWATER HORIZON, and the release of oil from the well (See Findings & Conclusions, Phase One Trial, Rec. Doc. 13381).

18.     The Phase Two Trial commenced on September 30, 2013 and concluded on October 18, 2013.  This phase was divided into two segments: "Source Control" and "Quantification."  Source Control concerned issues pertaining to stopping the discharge of hydrocarbons; the Quantification segment addressed the amount of oil that Defendant released into the Gulf of Mexico. (See Findings & Conclusions, Phase Two Trial, Rec. Doc. 14021).

19.     A third phase known as the Penalty Phase occurred between January 20, 2015 and February 2, 2015.  The purpose of this phase of the trial was to determine the amount of the civil penalty to be imposed under the Clean Water Act, 33 U.S.C. § 1321(b)(7) on Defendants. (See Findings & Conclusions, Penalty Phase Trial, Rec. Doc. 15606).

## THE PRETRIAL ORDERS FOR COORDINATED OR CONSOLIDATED PROCEEDINGS

20.     On October 19, 2010, this Court issued Pretrial Order No. 11 ("PTO 11") (Rec. Doc 569) which applied to all claims transferred to this Court by the JPML and to cases originally filed in this Court and required, among other actions, Claimants to submit a Plaintiff Profile Form ("PPF").  On November 2, 2010, the Court issued its Order Regarding Plaintiff Profile Form. (Rec. Doc. 642).  The Order directed the addition of six categories to the Plaintiff's one-page form indicating the nature of the asserted claims.  The PPF was used to authorize release of all information in the possession of the Gulf Coast Claims Facility ("GCCF") and the BP Claims Office ("BPCO") to the Plaintiffs Steering Committee (PSC) and BP Defendants.  All discovery, except for that specifically directed by the Court, was stayed.

## ALABAMA'S OPA JURY DEMAND

21.     On March 30, 2015, the Court issued its Order & Reasons as to BP's Motion to Strike the State of Alabama's Jury Demand (Rec. Doc. 14347).  With substantial review of relevant case law and procedural history, the Court concluded that OPA 90 claims includes the Seventh

7

Amendment Constitutional right to a jury trial:

> …Court concludes that the State is *entitled to a jury trial* on its present claims under the Oil Pollution Act of 1990 ("OPA" or "the Act"), 33 U.S.C. SS 2701, et seq. (Rec. Doc. 14347) (emphasis added).

## PTO 60

22.    On March 29, 2016, the Court issued Pretrial Order No. 60 ("PTO 60"). This Order applied to all remaining claims in the "B1" bundle (Rec. Doc. 16050). PTO 60 dismissed the Amended B1 Master Complaint in its entirety and required all Plaintiffs to file new individual complaints[1] if they had not already done so and required the filing of a Sworn Statement form attached as Exhibit "A" to the PTO 60 Order. All discovery, except for that specifically directed by this Court, was stayed.

## PTO 65

23.    On January 11, 2018, this Court issued Pretrial Order No. 65 ("PTO 65"), which applied to all remaining claims in the "B1" bundle (Rec. Doc. 23825). PTO 65 required all remaining Plaintiffs in the "B1" pleading bundle to submit certain documents. Specifically, "B1" Plaintiffs who previously filed an individual lawsuit were required to complete, file, and serve a sworn statement regarding the status of their claim. "B1" Plaintiffs had until April 11, 2018 to comply with PTO 65. All discovery, except for that specifically directed by this Court, was stayed.

24.    On July 10, 2018, this Court issued the "PTO 65 Compliance Order" (Rec. Doc. 24686) which listed by name the 237 remaining "B1" Plaintiffs this Court deemed in material compliance with PTO 65 and whose "B1" claims were subject to further proceedings in the MDL.

---

[1] For Plaintiffs whose cases were transferred to this Court by the Judicial Panel on Multidistrict Litigation, filing a new lawsuit in this Court as required by PTO 60 does not constitute consent to having that case tried in this Court, nor does it mean the Plaintiff waives his or its right to request remand to the Transferor Court. (See PTO 60 ¶8, Rec. Doc. 16050 ("[M]ere compliance with this Order will not result in a Plaintiff submitting to this Court's jurisdiction for anything beyond pretrial purposes.")).

"B1" claims that were not listed on Exhibit "1" of PTO 65 were dismissed with prejudice.

## PTO 67

25. On February 5, 2019, this Court issued Pretrial Order No. 67 ("PTO 67") (Rec. Doc. 25370) which required: 1) remaining "B1" Plaintiffs to disclose according to Attachment "A" categories of non-privileged documents no later than April 15, 2019; 2) each properly served Defendant to produce the categories of non-privileged documents and information listed on Attachment "B" no later than June 14, 2019; and 3) for the parties to participate in mandatory mediation beginning on or after July 15, 2019. All discovery, except for that specifically directed by this Court, was stayed.

## PTO 69

26. On October 2, 2020, the Court issued Pretrial Order No. 69 ("PTO 69") (Rec. Doc. 26709) which permitted limited document production, limited depositions, limited expert witness disclosure, and allowed the Defendants to file dispositive motions. All other discovery remained stayed. PTO 69 resulted in all fourteen remaining "B1" economic claim Plaintiffs either settling or being terminated through summary judgment. Loggerhead's claims were terminated when the Court granted BP's Motion for Summary Judgment on **ALL** of Loggerhead's claims. After appeal, Loggerhead's OPA 90, § 2702(b)(2)(E) remains at issue.

## LOGGERHEAD APPEAL RESULTS IN THE VIABILITY OF ITS OPA 90 ECONOMIC LOSS CLAIM

27. On September 16, 2021, Loggerhead timely filed an appeal of the Court's Order of Summary Judgement with Prejudice (Rec. Doc 27250). On September 2, 2022, the Fifth Circuit issued an opinion affirming the summary judgement dismissal for Loggerhead's 33 U.S.C. § 2702(b)(2)(B) claim for physical damage to its vessel but reversed and remanded the 33 U.S.C. § 2702(b)(2)(E) OPA 90 claim for economic damages. The opinion specifically cited no less than

9

four (4) separate material issues of factual dispute which must be decided by a fact-finder and precluded entry of summary judgment for BP. These issues concern:

(1) Whether the May 8 and 15 cruises were canceled versus rescheduled;

(2) Whether the M/V *Rorqual* was fully operational outside of maintenance or repair of the newly installed redundant generator;

(3) Whether the trier of fact would find sufficient causation to support Loggerhead's damages; and

(4) Whether Loggerhead was a going concern which "could have continued to survive, if not thrive, had the April events not occurred."

## MDL 2179 WIND DOWN COMPLETE AND CLOSED BUT FOR PUNITIVE MEDICAL DAMAGE CLAIMS

28. The activities of MDL 2179 have wound down and its mandate is completed with only the punitive damage issues for medical claims cases remaining for consolidated and combined pretrial practice (Rec. Doc. 27028). Specific examples of this Court's many wind-down activities are summarized below.

## COURT SUPERVISED SETTLEMENT PROGRAM (CSSP) IS FORMALLY CLOSED DECEMBER 10, 2020

29. On December 10, 2020, this Court issued the Order to Show Cause Regarding the Court Supervised Settlement Program and the Economic and Property Damages Settlement Agreement (Rec. Doc. 26811). In the Order this Court advised that the CSSP Claims administrator had notified this Court that the CSSP has completed processing all claims:

> The CSSP's Claims Administrator has informed the Court that claims processing is complete, and he has provided the Court with a proposed order that would initiate the closure and wind down of the CSSP. (Rec. Doc. 26811)

## 808 REMAINING "B3" MEDICAL CLAIM CASES SEVERED AND REMANDED APRIL 6, 2021

30. Over time during the MDL 2179 process the Pleading Bundles reduced to primarily

two: the "B1" economic damage claims and the "B3" medical claims. At the November 17, 2020 status conference, after hearing arguments from counsel, this Court announced its intent to sever or suggest remand for nearly all remaining "B3" medical claim cases from MDL 2179 (Rec. Doc. 26784).

## CSSP DOCUMENTS DESTROYED ON AUGUST 5, 2021

31. On March 11, 2013, the transferee Court issued CSSP Document Retention Orders (Rec. Doc. 8866 and 8867) instructing the Claims Administrator and the CSSP to retain various GCCF materials and documents during the pendency of the CSSP and further ordered the Claims Administrator to retain documents and claim files from both the GCCF and the CSSP for a period of three years from the date of final disposition of the last claim resolved by the CSSP. On August 5, 2021, this Court issued an Order (Rec. Doc. 27189) finding the three-year retention was unnecessary and expedited closing of MDL 2179 by ordering destruction of the documents within 90 days.

## US JPML MDL STATISTICS REPORT SHOWS
## FOUR (4) REMAINING ACTIONS AS OF SEPTEMBER 15, 2022

32. Statistics generated and shared by the United States Judicial Panel on Multidistrict Litigation (JPML) show that as of 9/15/2022, MDL 2179 had merely four (4) actions pending.

| United States Judicial Panel on Multidistrict Litigation | | | | Report Date: 9/15/2022 |
|---|---|---|---|---|
| MDL Statistics Report - Distribution of Pending MDL Dockets by Actions Pending | | | | |
| **MDL Filters:** Status: Transferred; Limited to Active Litigations | | | | |
| District | Judge (Title) | Docket No. Litigation | Actions Now Pending | Total Actions (Historical) |
| LAE | Carl J. Barbier (U.S. District Judge) | MDL -2179 IN RE: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | 4 | 6,121 |

Only one of these remaining active cases is an economic damage claim (Loggerhead's). The other

11

three actions are medical claims which the undersigned understands must procedurally pass through MDL 2179 for compliance with pretrial orders before being remanded back to the transferor Court.

## WITH ONLY ONE (1) ECONOMIC DAMAGE CLAIM REMAINING, CONTINUED COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS ARE IMPOSSIBLE

33. Only one "B1" economic injury claim remains in the MDL. As the song says: "One is the loneliest number…"[2], 28 U.S.C. §1407 provides for remand when coordinated and consolidated motion practice is completed or no longer needed before the conclusion of pretrial proceedings. Here, only fact specific discovery issues remain which are relevant to a specific case which can be done in the transferor Court.

34. When the JPML created MDL 2179, it noted that centralization of civil actions "will eliminate duplicative discovery, prevent inconsistent pretrial rulings, including rulings on class certification and other issues, and conserve the resources of the parties, their counsel, and the judiciary." (Rec. Doc. 1 at 3). This case, like the rest of those in the "B1" bundle, has been the subject of proceedings focused on common issues. As set forth above, those proceedings have included the exchange of information and documents administered through the PTO 60, 65, 67 and 69 processes. Those processes have been completed or are no longer applicable. The remaining *Loggerhead* case, after pretrial proceedings including full discovery as permitted by the Rules is completed, will turn on resolution of highly individualized facts and issues ultimately to be resolved by the trier of fact, that is, the jury.

35. Transferee courts have determined that remand is appropriate where, as here, individualized issues will predominate further proceedings. For example, in *In re A. H. Robins*

---

[2] Harry Nilsson, "One", *Aerial Ballet*, 1968

*Co., Inc. "Dalkon Shield" IUD Prod. Liab. Litig.,* the judge presiding over an MDL involving claims related to a medical device recommended remand because "all pretrial proceedings of a general nature have been concluded," the "centralized pretrial proceedings under Section 1407 have been achieved," and the "completion of the remaining discovery and resolution of the remaining issues can most expeditiously be effectuated by the Transferor Courts." 453 F. Supp. 108, 109 (JPML 1978); see also In re *Chinese-Mfr'd Drywall Prod*. Liab. Litig., No. MDL 2047, 2018 WL 3972041, at *5 (E.D. La. Aug. 20, 2018) (suggesting remand of cases where the court, "[a]fter managing this MDL for nine years," had addressed numerous "pretrial issues involving facts and legal questions common to the various cases in this MDL proceeding," and found that remaining "discovery is case-specific; thus, it can, and perhaps should, be supervised by the Transferor Court"); *In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.,* 840 F. Supp. 2d 1193, 1198-201 (D. Minn. 2012) (remand appropriate where individual issues predominated further proceedings).

36.  The same reasoning applies to Loggerhead's case: this Court's processes have resolved all issues common to the "B1" cases, reducing the number of cases to only this one and clarifying the scope of this one remaining case. The only logical conclusion now, with this sole remaining economic damage case, is that coordinated and consolidated pretrial proceedings are impossible because there are no other cases to coordinate and consolidate with. Further proceedings in MDL 2179 will deprave the Transferor Court of a valuable opportunity to learn the case before trial and make the appropriate pretrial rulings.

## **CONCLUSION**

37.  After more than a decade of pretrial motion practice in the massive and historic *Deepwater Horizon* MDL 2179, *Loggerhead* is the last and only remaining "B1" economic

13

damage case remaining for trial. With only one economic claim litigant, the underlying reasons for coordinated or consolidated pretrial proceedings for thousands or hundreds of thousands of cases, which serve as the basis for establishing MDL 2179 as mandated by 28 U.S.C. § 1407, no longer exist.

38.     The U.S. District Court for the Southern District of Texas as the transferor Court where Loggerhead's case was originally filed, and from which it was transferred into MDL 2179, should be given back its jurisdiction try the merits of the case. The Supreme Court of the United States has ruled that each action so transferred shall be remanded by the Panel **at or before** the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated. *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S. Ct 956, 140 L. Ed. 2d 62, (1998). The time to make the transfer back to the Southern District of Texas, Houston Division has arrived.

WHEREFORE, Plaintiff, Loggerhead Holdings, Inc., prays this Court enters its Suggestion of Remand back to the U.S. District Court for the Southern District of Texas.

Dated: October 28, 2022

Respectfully submitted,

By:  /s/ James W. Stroup
JAMES W. STROUP
Florida Bar No. 842117
Stroup & Martin, P.A.
119 S.E. 12th Street
Fort Lauderdale, Florida  33316
Telephone: (954) 462-8808
Email: jstroup@strouplaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **Motion for Remand** has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 28th day of October, 2022.

By: _/s/ James W. Stroup_
JAMES W. STROUP
Florida Bar No. 842117