UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig, "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010 | 2:10-md-02179-CJB-JCW<br>MDL No. 2179<br>Section J<br>Judge Carl J. Barbier |

**NON-PARTIES HOWARD L. NATIONS, CINDY L. NATIONS, HOWARD L. NATIONS, APC, GREGORY D. RUEB, RUEB & MOTTA, APLC, AND THE RUEB LAW FIRM, APLC'S MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AND FOR LIMITED RELIEF FROM CONFIDENTIALITY ORDER**

Pursuant to Rule 24(b), Federal Rules of Civil Procedure, non-parties Howard L. Nations, Cindy L. Nations, Howard L. Nations, APC, Gregory D. Rueb, Rueb & Motta, APLC, and The Rueb Law Firm, APLC, (collectively "NRM") seek limited relief from the Court's June 29, 2012, Confidentiality Order (Rec. Doc. 6822)[1], so that NRM, which represented thousands of BP oil spill claimants in subsistence claims, may obtain clarification and further comply with discovery and/or trial preparation obligations in litigation between Deborah A. Gaudet et al. and NRM pending in the Eastern District of Louisiana Division of Judge Wendy Vitter.[2] This clarification and relief is sought because the "*Gaudet* Case" is set for trial on January 9, 2023, and the "in question" witnesses will need to be subpoenaed or informally requested to be present for trial.

---

[1] Also, Confidentiality Order (Rec. Doc. 21518) signed August 19, 2016 and Confidentiality Order (Rec. Doc. 641) signed November 2, 2010.

[2] *Deborah A. Gaudet and Ray Gaudet, et al. v. Howard L. Nations, APC; The Nicks Law Firm, LLC; Rueb & Motta, APLC, Joseph A. Motta, Attorney at Law, APLC; and The Rueb Law Firm*, United States District Court, Eastern District of Louisiana, Case No. 19-cv-10356, the "Gaudet Case."

1

**MEMORANDUM IN SUPPORT**

The *Gaudet* Case concerns professional liability claims of allegedly untimely filed or allegedly not filed BP subsistence claims in relation to the *In Re: Oil Spill by the Oil Rig, "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010* ("In Re: Oil Spill Case"). Certification for class action was rejected and the denial of certification was affirmed by the United States Fifth Circuit Court of Appeal. Even though class certification is denied, individual claims made by Deborah Gaudet along with 9 other plaintiffs have moved forward with trial scheduled for January 9, 2023. Both plaintiffs' counsel and NRM's counsel have listed Christine Hendricks and Patrick Juneau as witnesses to be called at trial. Christine Hendricks was the Settlement Administrator for subsistence claims for BP Deepwater Horizon Claims Center ("DHECC"). Patrick Juneau was the Claims Administrator for DHECC.

Ms. Hendricks had direct communications with Defendant Howard Nations and other representatives of the Nations Law Firm during the time that the Nations Law Firm was handling subsistence claims. Ms. Hendricks has knowledge of various issues including the problems the Nations Law Firm was experiencing in timely receiving fishing and hunting licenses from the Louisiana Department of Wildlife and Fisheries ("LDW") for clients. Ms. Hendricks has knowledge of Mr. Nations successful negotiations with LDW that resulted in the LDW database being made directly available to DHECC. Through Mr. Nations efforts, DHECC was able to and did in fact directly search the LDW database not only for licensees of clients of the Nations Law Firm but also of all other subsistence claimants. Ms. Hendricks also has knowledge of Mr. Nations' successful petition made just after the subsistence claim filing deadline resulting from DHECC prematurely closing on the night of the filing deadline when before midnight, representatives of the Nations Firm attempted to deliver a final batch of subsistence claims to DHECC for filing but were initially refused access to the DHECC offices. Mr. Nations protested DHECC's refusal to accept

2

the claims for filing. The protest included but was not limited to affidavits of the Nations representatives that were present.

The DHECC did not issue a written ruling on Mr. Nations' protest, but after the protest, the DHECC had the Nations Law Firm deliver the batch of claims to DHECC. The claims were processed by DHECC. Some were paid and others were denied for various reasons.

Ms. Hendricks also has knowledge of Mr. Nations' entry into the field of handing subsistence claims including timing and volume of claims handled.

It is believed that Mr. Juneau also has knowledge relevant to the issues in the *Gaudet* lawsuit.

As NRM explains in the accompanying Motion, counsel for the Claims Administrator has expressed the Claims Administrator's opposition to this motion, and the position taken by the Claims Administrator is shown by the emails of his counsel J David Forsyth which are attached to NRM's Motion.

NRM has served subpoenas for deposition and production of documents to Patrick A. Juneau on several prior occasions, December 19, 2019, February 20, 2020; August 6, 2020 and February 10, 2021. Replies from Sessions, Fishman, Nathan & Israel LLC on behalf of Mr. Juneau were received with production documents and an explanation to NRM's counsel about the prohibitions of this Order 26234 related to testimony. Specifically:

> "[A]ny voluntary compliance with the requests of any parties to your litigation is subject to all "internal workings, procedures, deliberations, nonpublic policies or other protocols, and privileges" of the Settlement Program, as well as the Confidentiality Order issued by Judge Barbier." ... "recognizing that The Settlement Program has essentially operated as an arm and subject to the supervision of the MDL Court, **Judge Barbier has previously ruled that in connection with collateral litigation, the parties to such litigation are not permitted to "subpoena, depose, call a witness, etc. the ... Claims Administrator... the Court supervised Settlement Program or any employees or agents of same."** See Order on Motion to Permit Discovery [Rec. Doc. 26234 in MDL 2179]... (emphasis supplied).

3

Evidence from DHECC came in the form of its documentary subpoena return.

On November 2, 2010, this Court signed into the record of this captioned case, an Order Protecting Confidentiality, Rec. Doc. 641. On June 29, 2012, another Confidentiality Order was signed, Rec. Doc. 6822. In other instances, this Court has signed Order's permitting non-parties to intervene for temporary relief from this Order Protecting Confidentiality.[3]

NRM requests clarification of and relief from the Confidentiality Order Rec. Doc. 6822, to determine whether either Christine Hendricks and/or Patrick A. Juneau may be contacted, subpoenaed, or otherwise appear for trial. Furthermore, NRM requests clarification as to the reach of the order in relation to information not already in existence (testimony of parties not previously submitted in the In Re: Oil Spill Case).

## ARGUMENT

### I. JURISDICTION

This Court has jurisdiction over this matter pursuant to Sect. 18.1 of the Deepwater Horizon Economic and Property Damage Settlement and this Court's Order dated June 29, 2012 Confidentiality Order regarding dissemination of claimant settlement program information.

The Settlement Agreement specifically states:

> The Court shall retain continuing and exclusive jurisdiction over the Parties and their Counsel for the purpose of enforcing, implementing and interpreting this Agreement, including all issues relating to the scope, application and/or operation of the Release in Section 10 above, including jurisdiction over all Economic Class Members, and over the administration and enforcement of the Agreement and the distribution of its benefits to Economic Class Members, and any dispute arising as to the action or election of any Party under Section 21 below regarding the enforceability or illegality of any provisions of this Agreement. Any disputes or controversies arising out of or related to the interpretation, enforcement or
>
> implementation of the Agreement and the Release shall be made by motion to the Court, In addition, the Parties, including each member of the Economic Class as defined in the Final Order and Judgement, and their Counsel are hereby deemed to

---

[3] Rec. Doc. 25297 filed January 14, 2019; Rec. Doc 26234 filed February 4, 2020.

have submitted irrevocably to the exclusive jurisdiction of this Court for any suit, action, proceeding or dispute arising out or of relating to this Agreement.

(Rec. Doc. 6430-1 Sect. 18-16822). Further, in provisions 2, 3, 4, 11, 14, 17, 18, the June 29, 2012 Confidentiality Order states:

> 2. **Claims Information**. Pursuant to Paragraph 18 of the Court's March 8, 2012 First Amended Order Creating Transition Process (Rec. Doc. 5995) and Paragraph 3 of the Court's May 22, 2012 Order Regarding Settlement Implementation (Rec. Doc. 6573), all claim files and claims-related materials and data submitted to the Gulf Coast Claims Facility (the "GCCF") and in the Transition Process have been transferred to the Claims Administrator. Paragraph 4 of the Order Regarding Settlement Implementation directs that all such Claims Information is deemed "confidential" under Pre-Trial Order No. 13 (Rec. Doc. 641). In addition, the Claims Administrator will receive and will generate claims files and claims-related materials and data relating to claims submitted to the Claims Administrator under the Economic and Property Damages Settlement Agreement that contain personal identifying information and other private information regarding claimants that warrant protection from disclosure.
> 3. **The Purpose of this Order**. This Order defines the terms on which third parties may obtain access to Claims Information and the proper use of such information by any recipients of Claims Information.
> 4. **Confidentiality of Claims Information**. All Claims Information shall be kept confidential and shall not be disclosed except as allowed by this Order or subsequent Order of the Court.
> 11. **Provision of Claims Information in Response to Subpoenae or Other Legal Process**. This Court has continuing and exclusive jurisdiction over any proceedings regarding validity, enforceability, scope, compliance and other issues regarding any legal process.
> 14. **Certifications Required of Certain Recipients of Claims Information**. Before disclosing Claims Information pursuant to Paragraphs 7, 9, 10, and 11 of this Order, the Claims Administrator shall require the potential recipient to execute and submit to the Claims Administrator A SIGNED Certification substantially in the form of Appendix B to this Order in which the recipient agrees to be bound by this Order, to submit to the jurisdiction of this Court for purpose or as required by law. The Claims Administrator shall have no obligation to disclose any Claims Information to any potential recipient until such recipient has submitted an executed Certification. An agency or other entity may provide one Certification applicable to all instances in which the agency or entity would be permitted access to Claims Information under this Order. The Claims Administrator has the discretion to make arrangements with a requesting party in the

       alternative to the Certification as the Claims Administrator deems necessary and efficient to secure the protection of the confidentiality of Claims Information. The Claims Administrator shall maintain a log of all recipients who have executed a Certification or made alternative arrangements and shall make that log available for inspection to the Court, Class Counsel and counsel for the BP Parties upon request.

17. **Responses to Legal Proceedings**. Nothing in this Order shall prohibit or restrict the ability of the Claims Administrator to use Claims Information to respond to any suit or other legal proceeding initiated by a claimant or as necessary to enforce the terms of the Settlement Agreement or any Order of the Court as to a claimant or group of claimants.

18. **Exclusive Retained Jurisdiction**. This Court retains continuing and exclusive jurisdiction over the interpretation, implementation and enforcement of this Order.

(Rec. Doc. 6822). (emphasis supplied). The testimony at issue seeks claims processing information and possible confidential claims information from the specific ten plaintiffs listed in the *Gaudet* Case. Thus, this matter is properly before this Court for consideration.

## II.   NON-PARTY MOTION TO INTERVENE

Rule 24(b), provides in relevant part:

(b) Permissive Intervention. (1) In General. On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact. ... (3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

The Fifth Circuit has stated, "The purpose of intervention is to admit, by leave of court, a person who is not an original party into a proceeding. The intervention party then becomes a "party" for the purpose of protecting some right or interest alleged by the intervenor to be affected by the proceeding." *Weiss v. Allstate Ins. Co.*, 2005 WL 2377116, at 2* (Aug. 16, 2007) (*citing Deus v. Allstate Inc. Co.*, 15 F.3d 506, 525 (5th Cir.1994). Intervention through Rule 24 is "procedurally correct course" for nonparties to seek to challenge or modify protective orders. *Id.* at 2 (s*ee In Re Beef*

6

*Indus. Antitrust Litig.*, 589 F.2d 786, 789 (5th Cir. 1979). In determining whether to grant permissive intervention under Rule 24(b), the Court must first decide whether, as a matter of law, the applicant's "claim or defense and the main action have a question of law or fact in common." *Id.* (*citing Newby v. Enron Corp.*, 443 F.3d 416, 421 (5th Cir.2006) (*quoting Howse v. S/V "Canada Goose I"*, 641 F.2d 317, 322 (5th Cir.1981)). Next, the court must exercise its discretion as to whether to allow intervention. *Id.* (s*ee New Orleans Public Service, Inc. v. United Gas Pipe Line, Co.*, 732 F.2d 452, 471 (5th Cir.1984) (*quoting 7C Wright, A. Miller, & M. Kane, Federal Practice and Procedure* § 1913, at 376-77 (2d ed. 1986)) ("Permissive intervention is wholly discretionary with the [district] court ... even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied."). Courts are directed to consider such factors as whether the intervenors' interests are adequately represented by other parties, whether they will significantly contribute to full development of the underlying factual issues of the suit, the nature and extent of the intervenors' interests, the standing of the intervenors to raise relevant legal issues, and whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. *Id.* (*see New Orleans Public Service, Inc* .at 472; *see* also *Mac Sales Inc., et al. v. E.I. Dupont de Nemours*, 1995 WL 581790, at 4* (Sept. 29, 1995).

In *Weiss*, non-party intervenors, Foundation for Taxpayer and Consumer Rights (FTRC) requested intervention and opposition to the sealing of trial exhibits which were previously protected documents under an agreed confidentiality order. FTRC explained the right/interest they were protecting was that of information used to educate the public which "would directly impede FTRC's mission educating the public about Allstate's practices-in particular, its handling of claims for damage to policyholders' homes due to natural disasters." The Court found FTRC's claim was legitimate and allowed intervention.

7

As in *Weiss*, NRM is a non-party requesting intervention for the purposes of obtaining what is presumed to be protected information by a confidentiality order. NRM has tried all available means to obtain information related to claim submissions, claims management, and DHECC claim portal management. Relief from Order 6822 would provide NRM the evidence to support its defenses against the claims presented in the *Gaudet* Case.

The *Weiss* court also looked at the modification of the protective order. The Court determined there was a common issue of law or fact because both the litigation and the right/interest of FTRC related back to insurance claims as a result of natural disasters.

The *Gaudet* Case has clear questions of fact relating back to the BP Oil Spill litigation as it is collateral litigation stemming directly from the BP Oil Spill litigation. Plaintiffs in the *Gaudet* Case claim damages in the form of amounts they claim they would have received if they prove NRM mishandled or did not file their subsistence claims. The information being sought would clarify why the ten plaintiffs' claims were denied. Defendants contend that such denial was as a result of reasons unrelated to and not at all caused by the care provided by NRM to its clients, which care completely satisfied the applicable standard of care. Additionally in *Weiss*, the Court used its discretion and granted the intervention and relief from the protective order because there did not appear to be any delay or burden upon the parties to do such.

Permitting the testimony of Christine Hendricks and Patrick Juneau in no way prejudices, delays or causes undue burden on the In Re: Oil Spill Case as this litigation is predominantly resolved. Furthermore, the information being sought would not be on all parties related to the In Re: Oil Spill Case. The information being sought is further explanation of procedures and handling of the DHECC portal and claims submission, management, and determinations. Any specific inquiry into individual claims would be in relation to the ten plaintiffs listed in the *Gaudet* Case.

8

## III. RELIEF & MODIFICATION OF THE PROTECTIVE ORDER

This Court has considered supporting decisions by other districts when deciding on a non-party's request for intervention and modification or relief from the confidentiality order. Per Rec. Doc. 25294 (and later Order approving intervention Doc. Rec. 25297), the District of Connecticut granted a motion "to intervene... under Rule 24(b) of the Rules of Civil Procedure for the limited purpose of seeking modification of [a confidentiality order] entered in [that] litigation" for purposes of obtaining materials for discovery and trial in another case. *In Re Ethylene Propylene Diene Monomer (EDPM) Antitrust Litigation*, 255 F.R.D. 308, 313 (D. Conn. 2009). In that decision, the court surveyed federal law across the country and provided the applicable standards:

> [A] court will consider first whether a party has met the threshold criteria for permissive intervention and then engage in a balancing test of the parties' interests to determine whether, in its discretion, the motion to intervene should be granted. Only if the court determines that a party should be permitted to intervene, is the issue of modification of a prospective order examined.
>
> \*\*\*
>
> "[P]ermissive intervention is the proper method for a nonparty to seek a modification of a protective order." *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir.2005) (citing *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 293-294 (2d Cir. 1979)); *see* also *EEOC v. Nat'l Children's Ctr., Inc.* 146 F.3d 1042, 1045 (D.C.Cir.1988) (*noting* that "despite the lack of a clear fit with the literal terms of Rule 24(b), every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders") (*citing* cases)
>
> \*\*\*
>
> Rule 24(b)(3) directs that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." The trial court's discretion in considering motions for permissive intervention is considered "very broad" ...
>
> \*\*\*

9

> Courts have interpreted these requirements with even greater flexibility when the third-party seeks to intervene only for the purpose of gaining access to discovery materials.
>
> ***
>
> Where a party seeks intervention to modify a protective order and not to participate on the merits, courts have permitted intervention even where the parties to the underlying litigation have settled their dispute.
>
> ***
>
> It is within the power of this court to modify the protective order in the case, therefore there is no need for [the intervenor] to prove it has an independent basis of jurisdiction in the suit.
>
> ***
>
> A trial court should deny modification only where it would tangibly prejudice substantial rights of the party opposing modification. The desire to make litigation more burdensome to pursue in the collateral jurisdiction is not legitimate prejudice. Any legitimate interest the defendants have in keeping the materials filed under the protective order out of public hands can be accommodated by placing the intervening party under the same use and disclosure restrictions contained in the original order.

(Some internal citations and quotation marks omitted; emphasis added).

*In Re EDPM Antitrust Litigation* is supportive of the *Weiss* case regarding the determination to intervene but adds further analysis for modification of the protective order. The Second Circuit has held that there is a presumption against modification where the parties or deponents have reasonably relied on the confidentiality order in giving testimony or producing materials "absent showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need.'" *Id.* at 317 (*citing* <u>S.E.C. v. TheStreet.Com</u>, 273 F.3d 222, 229 (2d Cir.2001) (*quoting Martindell* 594 F.2d at 296)). This presumption against modification differs from the standard in other circuits, which has a presumption in favor of access in cases where an intervening party involved in bona fide collateral litigation seeks access to protected discovery materials. *Id.* at 317 (*citing* a leading case, *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 789-90 (3d Cir. 1994)). In those Circuits, modification is favored when it will "place private litigants in a position they would otherwise reach only after repetition of another's discovery." *Id.* at 317-18 (citing *Wilk*, 635 F.2d at 1299). A trial court should deny modification only where it would

10

"tangibly prejudice substantial rights of the party opposing modification, in other words, when the parties rely on the permanence of the order. *Id.* The *Martinedell* standard considers the following in its stringent analysis: (1) scope of the order; whether the language of the order is blanket or specific; (2) express language of the order is provided such as time period for enforcement or procedures for disclosure; (3) level of inquiry by the Court who issued the original order such as whether or not a hearing to show cause occurred; (4) nature of the reliance by the parties on the order in anticipation of confidentiality. *Id*. at 319-24. The *Martindell* standard does not apply across the board to all protective orders, it applies mostly to specific protection orders which cut out exact information which should be protected.

Here, the scope of the order appears to be broad, across the board. The enforcement of the order exceeds beyond the resolution of the In Re: Oil Spill case. The court issued the original order in the Pre-Trial phase thus early enough in the proceeding to anticipate future non-party requests for relief. Because In Re: Oil Spill is predominantly resolved, the parties in that litigation no longer have a continued need to preserve such confidences. Further the testimony sought by NRM, does not yet exist (it is testimony) and likely would have little weight in any remaining open In Re: Oil Spill claims.

## CONCLUSION

For the reasons provided herein, NRM requests the entry of an order permitting NRM to intervene for the limited purpose of addressing the Confidentiality Order (Rec. Doc. 6822) and granting relief from the Order sufficient to allow NRM to fully prepare for trial on January 9, 2023 in the *Gaudet* case. In accordance with the Confidentiality Order, NRM will notify all legal counsel for defendants and experts of the Confidentiality Order and have them sign and acknowledge that they have been made aware of and are bound by said Confidentiality Order. NRM requests the ability to contact Ms. Hendricks and Mr. Juneau, speak with them, request them to testify, subpoena

11

them and/or perpetuate their trial testimony. NRM requests all other relief the Court deems to be just and proper under the circumstances.

**RESPECTFULLY SUBMITTED**,

/s/ *Judy L. Burnthorn*_____
JUDY L. BURNTHORN (#17496)
jburnthorn@deutschkerrigan.com
CHRISTOPHER H. CORKERN (#39476)
ccorkern@deutschkerrigan.com
MARK P. ALLAIN (#39782)
mallain@deutschkerrigan.com
**DEUTSCH KERRIGAN, L.L.P.**
755 Magazine Street
New Orleans, LA 70130
Telephone: (504) 593-0688
Facsimile: (504) 566-4088
***Attorneys for Defendants Howard L. Nations, APC; Howard L. Nations; Cindy Nations; Rueb & Motta, APLC; The Rueb Law Firm, APLC and Gregory D. Rueb***

*/s/ Alexandre E. Bonin*_____
Alexandre E. Bonin (#31054)
**BONIN LAW**
4224 Canal Street
New Orleans, LA 70119
Telephone: (504) 586-0064
aeb@boninlawfirm.com
***Counsel for defendants, Howard L. Nations, APC, Howard L. Nations, and Cindy L. Nations***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 23rd day of November, 2022, I electronically filed the foregoing document or other paper with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Judy L. Burnthorn*
_____
JUDY L. BURNTHORN