**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION J |
| This Document Relates To:<br><br>No. 15-4143, 15-4146 & 15-4654 | * * * * * * | HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE<br>DONNA PHILLIPS CURRAULT |

## MEMORARANDUM IN SUPPORT OF MOTION FOR APPROVAL OF COMPLETION AND CLOSURE OF THE HALLIBURTON ENERGY SERVICES, INC. AND TRANSOCEAN LTD. ASSIGNED CLAIMS AND PUNITIVE DAMAGES SETTLEMENTS' PROGRAMS

Patrick A. Juneau (the "Claims Administrator"), Claims Administrator of the Halliburton Energy Services, Inc. ("HESI") Punitive Damages and Assigned Claims Settlement Agreement, Amended as of September 2, 2015 [Rec. Doc. 15322], and of the Transocean Punitive Damages and Assigned Claims Settlement Agreement [Rec. Doc. 14644] (collectively, the "Settlement Agreements"), hereby submits this memorandum in support of his motion for approval of completion and closure of the Halliburton Energy Services, Inc. and Transocean Ltd. Assigned Claims and Punitive Damages Settlements' Programs (the "Motion").

### I.  BACKGROUND

On February 15, 2017, the District Court granted final approval to the Settlement Agreements [Rec. Doc. 22253]. Prior to this, on December 10, 2015, the Allocation Neutral allocated the Settlement Agreements' funds between the Punitive Damages Class (the "New Class") and the Assigned Claims Class (the "Old Class") pursuant to Section 6 of the Settlement Agreements, allocating 72.8%, or $902,083,250, for Punitive Damages to the New Class (the

"New Class Portion"), and 27.2%, or $337,666,750, for Assigned Claims to the Old Class (the "Old Class Portion") [Rec. Doc. 15653].

The District Court ordered that the Settlement Agreements, as they related to the Old Class Portion, would be administered and implemented by the Old Class Claims Administrator through the existing DHEPDS Class structure for Assigned Claims [Rec. Doc. 22252], and approved the Old Class Claims Administrator's Distribution Model for allocating those Settlement Funds (the "Old Class Distribution Model") [Rec. Doc. 18796].  Further, by Order dated February 15, 2017 [Rec. Doc. 22252], the District Court approved the New Class Claims Administrator's Distribution Model for allocating the New Class Portion of the Settlement Funds (the "New Class Distribution Model") [Rec. Doc. 18797 and clarified in Rec. Doc. 21778].  Following motions for approval of distribution in accordance with these Models by the Claims Administrator, the Court issued Orders approving distribution of the Old Class Portion [Rec. Doc. 25128], as well as Distributions A and B of the New Class Portion of the Settlement Agreements [Rec. Docs. 25900, 26498].

Having completed distributions under the Old Class and New Class Distribution Models, the Claims Administrator now seeks approval from the Court to undertake various actions to complete the closure of the Settlement Agreements.

## II. OLD AND NEW CLASS DISTRIBUTION SUMMARIES

Under the Old Class Distribution from the HESI-Transocean Assigned Claims Combined Settlements Fund, successful checks and wires, including the payments to the states for escheated funds, totaled $357,038,279.94.  After payment of administrative costs and fees and the addition of interest, there is a balance remaining of $17,355,481.78 as of November 30, 2022 (La Count Decl., ¶ 7).  In New Class Distribution A, which consisted of the Seafood-related claims under the New Class Plan of Allocation approved by the Court, successful checks and wires, including the

payments to the states for escheated funds, totaled $152,802,951.93. Again, after payment of administrative costs and fees and the addition of interest, there is a balance remaining of $1,343,782.03 as of November 30, 2022 (La Count Decl., ¶ 8). In New Class Distribution B, which consisted of all of the Real and Personal Property-related claims under the New Class Plan of Allocation approved by the Court, successful checks and wires, including the payments to the states for escheated funds, totaled $753,830,746.36. Similarly, after payment of administrative costs and fees and the addition of interest, there is a balance remaining of $8,932,799.21 as of November 30, 2022 (La Count Decl., ¶ 9).

As the Court is aware, claims data from the DHEPDS CSSP was heavily leveraged in the administration of the Settlement Agreements, which provided substantial benefit to the Classes in two forms. First, because Class Members were generally not required to resubmit claims under the Settlement Agreements if they had already successfully submitted valid claims in the DHEPDS, this reduced the burden on the Classes in terms of what they were required to do (if anything) to assert valid Old or New Class claims. This further facilitated the efficient assessment of Old Class and New Class claims by allowing the Claims Administrator to begin disbursing settlement funds far sooner than would have otherwise been possible if the Distribution Models had required all Class Members to submit new claim forms and supporting documentation. Second, because the HESI/TO Settlements Programs were able to rely upon these DHEPDS determinations for tens of thousands of claims without the need for assessment of new claim forms and supporting documentation, the administrative expenses which would have otherwise been incurred to perform this review and determination were not, but were instead maintained within the Settlement Funds for distribution to the Classes.

With that backdrop, the above-referenced balances remain for several related reasons. First, with regard to the Old Class Distribution, some DHEPDS claims were either not fully and finally reviewed and determined, or were pending on appeal, when the Old Class Distribution began. Notably, those DHEPDS claims that were on appeal were generally highly contended claims where a significant potential dollar value was at issue. In order to account for these unresolved claims, Old Class funds were reserved at the time of initial distribution. The Old Class Distribution balance is the remainder of these reserved funds (La Count Decl., ¶ 7). Similarly, for New Class Distributions A and B, funds were reserved for claims pending on appeal and to take into account any potential calculation issues that may be encountered given the complexity of the DHEPDS data that was leveraged by the HESI/TO Settlements Programs in assessing New Class claims. The New Class Distribution balance is the remainder of these reserved funds (La Count Decl., ¶ 8, 9).

### III. DISTRIBUTION OF REMAINING FUNDS

The Claims Administrator proposes to distribute the remaining funds to a non-profit third-party entity pursuing missions that are closely aligned with the interests of those Class Member groups that were most harmed by the Spill, for the following reasons.

#### a. Logistical Barriers and Administrative Expenses to the Class

First, there are significant logistical barriers to any further distribution to Class Members. Because the DHEPDS has been closed and its data has been purged, any further distribution to Class Members would, at least as a starting point, need to rely on the data currently in the possession of the HESI/TO Settlements Programs. Much of this information, however, is now outdated regarding claimant location, attorney representation, succession information, bankruptcy status, and outstanding liens. Further exacerbating the issue is the fact that there is no way to

determine which underlying information is actually outdated—which claimants have changed locations, which attorneys remain associated with the law firms representing the claimants, which estates and successions remain open or have been closed (or have since been opened in light of the subsequent death of the claimant), or which liens have been satisfied in part or in whole (La Count Decl., ¶ 11.a).

For this reason, there are only two options from an administrative perspective. The data in its current state could be utilized for issuing payments, which would require significant reserves for administrative expenses in order to resolve these issues when they inevitably arise on the back-end, including additional escheatment.[1] Alternatively, various notices could be sent to attempt to resolve these issues on the front-end, which would be extremely costly and time-consuming. Either way, the inherent expense burden to the Class of resolving these issues would substantially reduce the remaining funds currently available (La Count Decl., ¶ 11.a).

The administrative expenses of an additional distribution, including the processes necessary to update the requisite information as noted above based on costs previously incurred for similar scopes, are as follows.

For an additional Old Class Distribution, the administrative cost is estimated at $2.4 - $5.1 million (La Count Decl., ¶ 11.b.i). There would remain an estimated $12,255,481 - $14,955,481 to be divided among the 201,777 Old Class-eligible claims. If these remaining funds were distributed *pro rata* based on the initial Old Class Distribution amounts, tens of thousands of claims would be eligible for a further distribution of under $1.00. If divided equally among eligible claims, this would result in an average payment of $60.00 - $74.00 per claim, which would be

---

[1] The Old Class escheatment totaled $3,793,677.44. The New Class escheatment totaled $4,138,279.84, of which $595,147.39 was attributable to New Class Distribution A claims and $3,543,132.45 related to New Class B claims (La Count Decl., ¶ 10).

below the $100.00 minimum payment amount approved by the Court in the Old Class Distribution Model [Rec. Doc. 18796].  For the 80% of Class Members represented by counsel, these payment amounts would likely be further reduced by attorneys' fees of up to 25% and by the additional costs/expenses incurred by the firms in locating and issuing checks to their clients, which could result in as little as $30.00 - $44.00 going to Class Members for the majority of claimants involved (La Count Decl., ¶ 11.b.i).

For an additional New Class Distribution, the administrative cost is estimated at $2.4 - $4.9 million (La Count Decl., ¶ 11.b.ii).  There would remain an estimated $5,408,720 - 7,908,720 to be divided among the 104,157 New Class Distribution A and B-eligible claims.  If these remaining funds were distributed *pro rata* based on the initial New Class Distribution amounts, approximately 50% of claims would be eligible for a further distribution of under $1.00.  If divided equally among eligible claims, this would result in an average payment of $51.00 - $75.00, per claim.  Again, for the same reasons noted above, with approximately 80% of Class Members represented by counsel, payment ultimately going to Class Members for the majority of claims are estimated to be between $21.00 - $45.00 (La Count Decl., ¶ 11.b.ii).

    **b. Timeline of Additional Distributions and HESI/TO Settlements Programs Closure**

Considering the significant effort and time that would be required to issue notice for, research, and resolve the myriad issues noted above, to issue payments to Class Members and representing law firms, to process check re-issue requests, and to ultimately escheat funds associated with checks that were not cashed by Class Members, it is estimated that proceeding with a further distribution of the remaining funds to Class Members would add another 24 - 36 months to the close-out of the HESI/TO Settlements Programs (La Count Decl., ¶ 12).

**IV.    Recommendations for Distribution and Reserve**

In light of the above, an additional distribution to Old and New Class Members is not advisable or recommended.  This is especially true in light of the fact that the amount of money that would ultimately be received by each eligible Class Member would be well below $100.00, which was deemed to be the acceptable floor for what would constitute a meaningful distribution when that question was considered and contemplated with respect to the Old Class Distribution Model (La Count Decl., ¶ 13).  Rather, instead of wasting the millions of dollars in administrative expenses necessary to conduct a further distribution over the course of the next 24 – 36 months, it would be more worthwhile, valuable, and effective to distribute the entirety of the remaining Old and New Class Funds to a non-profit third-party entity with goals closely aligned with the interests of those Class Members that were seriously harmed by the Spill (La Count Decl., ¶ 13).  For these reasons, it is proposed that the remaining Old and New Class Funds be distributed to the Gulf Coast Restoration Trust Fund, created under the Resources and Ecosystems Sustainability, Tourist Opportunities, and Revived Economies of the Gulf Coast States Act of 2012 (the "RESTORE Act")[2], to be allocated pursuant to 40 C.F.R. § 1800.500 and to be utilized for purposes of Gulf Coast Restoration and Recovery, after completed Forms W-9 and payment instructions have been provided as necessary.

Furthermore, in light of a small number of inquiries regarding the issuance of Forms 1099 with mismatched name and Social Security Number or business entity name and Employer Identification Number combinations, due largely if not completely to Class Members providing incorrect Social Security Number or Employer Identification Number information to the DHEPDS or the HESI/TO Settlements Programs, the Claims Administrator seeks to reserve $100,000.00 for

---

[2] https://www.restorethegulf.gov/history/about-restore-act

addressing these matters. The Claims Administrator has provided to the IRS legitimate and reasonable explanation for these mismatches; therefore, these reserves will be released in the final distribution recommended above in the event no additional payment is due to the IRS (La Count Decl., ¶ 18).

                                                         Respectfully submitted,

                                                         <u>/s/ Patrick A. Juneau</u>
                                                         PATRICK A. JUNEAU
                                                         Claims Administrator