IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179 <br> SECTION J |
| This Document Relates To: | * * | HONORABLE CARL J. BARBIER |
| No. 15-4143, 15-4146 & 15-4654 | * * * * | MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT |

### DECLARATION OF MICHELLE M. LA COUNT REGARDING COMPLETION AND CLOSURE OF THE HALLIBURTON ENERGY SERVICES, INC. AND TRANSOCEAN LTD. ASSIGNED CLAIMS AND PUNITIVE DAMAGES SETTLEMENTS' PROGRAMS

I, MICHELLE M. LA COUNT, declare as follows:

1.  I am a Project Director at Epiq Class Action and Claims Solutions, Inc. ("Epiq")[1] (formerly an Assistant Director of Operations at Garden City Group, LLC ["GCG"]). GCG was engaged by the Court appointed New Class Claims Administrator to assist him in implementing the Proposed Halliburton Energy Services, Inc. ("HESI") and Transocean Punitive Damages and Assigned Claims Class Action Settlements. Pursuant to the Court's April 12, 2016 Preliminary Approval Order regarding the Proposed HESI and Transocean Punitive Damages and Assigned Claims Class Action Settlements (the "Preliminary Approval Order"), GCG was authorized to act as the Class Notice Administrator in connection with the Settlements filed in MDL-2179.[2] The following statements are based on my personal knowledge and information provided by other

---

[1] GCG was acquired by Epiq as of June 15, 2018, and is now continuing operations as part of Epiq.
[2] All terms with initial capitalization not otherwise defined herein have the meanings ascribed to them in the HESI Punitive Damages and Assigned Claims Settlement Agreement as amended on September 2, 2015, as well as the Transocean Punitive Damages and Assigned Claims Settlement Agreement dated May 29, 2015 (the "Settlements").

experienced GCG and Epiq employees working under my supervision, and, if called on to do so, I could and would testify competently thereto.

## MAILING OF THE NOTICE

2. Notice regarding the New Class Settlements was included in a combined notice along with details of the Old Class Settlements in one overarching notification to the Classes in order to achieve the most cost-efficient notice campaign possible. Details regarding the notice campaign were provided to the Court in Section 2 of the Declaration of Michelle M. La Count (the "Old Class La Count Declaration") included as an exhibit to the Memorandum in Support of Motion for Approval of Distribution of the Assigned Claims Portion of the Halliburton Energy Services, Inc. and Transocean Ltd. Settlement Agreements [Rec. Doc. 25122-2].

## TELEPHONE HOTLINE

3. Epiq has continued to maintain a toll-free telephone number, 1-877-940-7792, with an Interactive Voice Response ("IVR") system to accommodate potential Old and New Class Members ("Class Members") who have questions about the Settlements. Call agents are available to take calls Monday through Friday, 9:00 am – 5:00 pm Central Time, excluding days when Epiq is closed for federal holidays, etc.

## WEBSITE

4. Epiq continues to maintain the case website, www.GulfSpillPunitiveDamagesSettlement.com, which is dedicated to the Settlements in order to assist potential Class Members, and periodically updates the site pursuant to the directions of the Old and New Class Claims Administrator, Patrick Juneau (the "Claims Administrator").

## WRITTEN CORRESPONDENCE

5. Epiq established the dedicated email address, Questions@GulfSpillPunitiveDamagesSettlement.com, and continues to handle responding to inquiries sent by individuals and attorneys.

6. Other written correspondence sent to the case's dedicated PO Box or received via a courier service are also responded to by Epiq pursuant to the direction of the Claims Administrator.

## DISTRIBUTION SUMMARIES

7. <u>Old Class Payments</u>. The HESI-Transocean Assigned Claims Combined Settlements Fund consisted of initial funding of $377,602,085.69. Successful checks and wires, including the payments to the states for escheated claims, totaled distributions of $357,038,279.94. After payment of costs and fees and the addition of interest, as of November 30, 2022, there is a balance remaining of $17,355,481.78. These residual funds were the result of holdbacks due to unresolved claims in the Deepwater Horizon Economic & Property Damages Settlement ("DHEPDS") Court Supervised Settlement Program ("CSSP") that were still pending at the time the Claims Administrator requested approval to proceed with the initial Old Class distribution; these funds were greater than the amount needed once all claims were final, and these funds are now available for further distribution.

8. <u>New Class Distribution A Payments</u>. New Class Distribution A consisted of the Seafood-related claim funding pools under the New Class Plan of Allocation approved by the Court. A total of $152,802,951.93 was distributed, including the payments to the states for escheated claims. After payment of costs and fees and the addition of interest earned during the pendency of the distribution, there is $1,343,782.03 in residual funds as of November 30, 2022. There was a limited holdback reserve approved by the Court for any claims that might require recalculation due to the complexities of the data and for those claims that were on appeal at the

time of the initial New Class Distribution A to ensure adequate funds were available for payment; these funds are now available for distribution as New Class Distribution A is complete.

9. <u>New Class Distribution B Payments</u>. In New Class Distribution B, consisting of all of the Real and Personal Property-related claims, a total of $753,830,746.36 was distributed to Class Members, including the payments to the states for escheated claims. Again, after deducting administrative costs and adding interest earned, there is a residual balance of $8,932,799.21 as of November 30, 2022. Similarly, there was a reserve included for appeal claims and any potential calculation issues based on the complexity of the data set for this group of claims as well. There were also some funds reserved for administrative expenses that were not utilized. These funds are now available for distribution as New Class Distribution B is complete.

10. <u>Escheatment</u>. The Old Class escheatment totaled $3,793,677.44. The New Class escheatment totaled $4,138,279.84, of which $595,147.39 related to New Class Distribution A claims and $3,543,132.45 related to New Class Distribution B claims. All of these funds were escheated to the states on behalf of Class Members who did not cash their checks; a total of 40 states received escheated funds. To the extent an escheatment was needed for a non-US citizen, such funds were escheated to the State of Louisiana on behalf of the claimant.

11. <u>Distribution of Remaining Funds</u>. The Claims Administrator and Epiq have considered a variety of residual distribution approaches to disburse the remaining funds to the Old Class and/or New Class but have found that logistical barriers and cost issues prevent an equitable and meaningful redistribution strategy involving the original claimants.

    a. Logistical Barriers to Redistribution

        To facilitate the lowest administrative expenses possible for the Old Class, New Class A, and New Class B distributions, data from the DHEPDS was utilized extensively. At this point, however, the DHEPDS has been closed and has purged all

4

of those original records. As such, the HESI-Transocean Settlements Program is limited to those records that it specifically has in its possession at this time. There is therefore a great deal of underlying information regarding claimant location, liens, bankruptcy, successions, law firm changes, and attorney representation/retirements/deaths that would be necessary for any additional distribution, but that simply is not available in the existing, static data set used for the HESI-Transocean distributions that commenced in the period from 2017-2019.

There would be two administrative options in this concern for issuing payments. First, to use claimant representation as an example, because there is also no clear means by which to discern which law firm records require updating as opposed to those that do not, notice could be issued to all of the law firms representing Class Members to request updated information. It is likely this effort would be met with some lack of response given (a) that many of these firms have changed leadership, (b) that the attorneys who took on these cases 11+ years ago may no longer be with those firms, and (c) that the value of the vast majority of any additional distributions likely would be very low. Thus, the firms would be getting very small checks or wires, comprised of all of their clients' comingled payments, that they then would need to reissue as disbursements directly to their clients, who themselves may be difficult for their attorneys to locate. Considering the expenses involved for those firms to complete payment to their clients, the cost of this additional activity in many cases may exceed the entire value of the Class Member's redistribution payment, thus never benefiting represented Class Members at all.

Similarly, for applicable liens, for example, given the age of much of the underlying information, the lienholder data that the Settlements Program has currently

is outdated. Amounts owed are also commonly transferred among creditors over time, further compounding the issue of trying to locate and contact the correct lienholders and to confirm lien amounts owed, if any. Included in this group are child support agency liens, many of which are undoubtedly no longer valid after a period of 10 years. Thus, it would be necessary to update those records with all states that previously submitted liens, again, a considerable task especially when viewed in light of the fact that the value of the vast majority of any additional distributions likely would be very low.

The alternative option would simply be to utilize the information currently available to the Settlements Program for claimant location, attorney representation, succession information, bankruptcy status, and outstanding liens, to issue these payments, but this would exacerbate many of the issues noted above, resulting in increased administrative expenses on the back end, including additional necessary escheatment.

b. Administrative Costs/Potential Payment Amounts Estimate

Each of the estimates below includes the anticipated costs of updating records via notices and/or outreach as described above in order to enact a further distribution.

    i.    Old Class: Assuming an additional payment on all claims that were previously paid, the administrative cost is estimated at $2.4 - $5.1 million based on the original cost of confirming the liens, bankruptcy trustee follow up, contacting and confirming payment instructions for law firms, follow up for uncashed firm checks and unsuccessful wires, Form 1099 preparation, issuing/reissuing checks, decedent/dissolved business updates,

escheatment, contact center and email agent response time, and general project management. This would leave $12,255,481.00 - $14,955,481.00[3] to be divided among the 201,777 Old Class-eligible claims. Using a *pro rata* payment based on actual prior payments would yield tens of thousands of claims with redistributions under $1.00. The average payment amount per eligible claim would be $60.00 - $74.00 per eligible claim, significantly less than the $100.00 minimum payment amount included in the Deepwater Horizon Economic and Property Damage Settlement Claims Administrator's Report Re: Halliburton and Transocean Settlements [Rec. Doc. 18796], which was deemed the minimum amount administratively feasible for a meaningful distribution to the Class while also promoting a high rate of check negotiation by those receiving the funds. Further, approximately 80% of Old Class Members were represented by counsel, so these payments would then be subject to up to 25% in attorney's fees with a further a deduction for expenses incurred by the law firms in locating their clients and issuing disbursement checks, further reducing the amount going directly to the Class Members by $20.00 - $30.00 on average, making the cash-in-hand to Class Members range from as little as $30.00 to $44.00 for 80% of the claims involved.

    ii.    New Class Distribution A and New Class Distribution B: The administrative costs of any additional distribution for the New Class would

---

[3] Based on the 12/31/2022 account balance for the HESI-Transocean Assigned Claims Combined Settlement Fund.

be similar to that of the Old Class, with scope again including confirming claimant location, liens, decedent/dissolved business updates, bankruptcy trustee follow up, contacting and confirming payment instructions for law firms, follow up for uncashed firm checks and unsuccessful wires, Form 1099 preparation, issuing/reissuing checks, escheatment, contact center and email agent response time, and general project management. Even though the number of claims included in this group was lower, the number of decedents and dissolved businesses associated with the Real Property Claims was substantially higher at the time the initial distribution. The administrative time and expense associated with responding to these additional inquiries and addressing these issues were exceedingly time consuming; the time and expense of doing so at this juncture would likely be twice as high as what was seen in 2019 when that work was initially conducted. As such, the estimated cost for a combined New Class A and New Class B distribution would be $2.4 - $4.9 million. The combined value of remaining funds from these distributions is $10,308,720.00; thus, the available distribution amount would be $5,408,720.00 - 7,908,720.00[4]. Again, *pro rata* distribution based on recognized losses would likely yield about one-half of the claims having distribution values under $1.00. Divided among the 104,157 New Class claims that were deemed payable in the New Class A and New Class B initial distributions, this would result in payments of $51.00 - $75.00 on average per claim. As with the Old Class,

---

[4] Based on the 12/31/2022 account balances for the HESI-Transocean Punitive Claims Combined Settlement Fund and HESI-Transocean Punitive Claims Combined Settlement Fund – B accounts.

approximately 80% of these Class Members were represented by law firms, so the ultimate payment to actual Class Members would likely be reduced by 25% in attorney's fees and expenses for the law firms to issue these disbursements to their clients, bringing cash-in-hand payments to most Class Members down to as low as $21.00 - $45.00.

12.   Administrative expenses aside, either of the administrative options for distribution set forth above in paragraph 11.a could reasonably add 24 - 36 months to the close-out of the Settlements Program, after accounting for research time, mailings, response deadlines, processing time, check distribution, void dates passing, reissues, escheatment, etc.

13.   Based on the above analysis, redistribution to the original claimants is not advisable or recommended given the age of the data involved, the administrative complexities, and the limited direct benefit to the Class Members.  In the initial Distribution Model for the Old Class, the Claims Administrator set the minimum payment, approved by the Court, to be $100.00.  This was based on the premise that this $100.00 floor amount would constitute a meaningful distribution, considering (a) the number of represented Class Members who would be subject to attorneys' fees and/or claim preparers' fees and expenses, and (b) what would be deemed a payment amount adequate to promote prompt negotiation of checks.  Neither the Old Class nor the New Class have adequate funds remaining to come close to that bar set by the Court-approved Distribution Model for the Old Class.

14.   In the alternative, distribution to a third party with missions that are closely aligned with the interests of those Class Member groups that were seriously harmed by the Spill would be a more advantageous and effective use of these remaining funds.  Such a distribution could directly benefit the Classes involved and serve to further remediate the damage done to the region.  To do

otherwise would squander millions of dollars on administrative costs and yield a very small financial benefit to only a limited portion of the Class Members affected by the Spill.

## DISTRIBUTION TAX REPORTING

15. <u>IRS Forms W-9 Required</u>. In order to facilitate accurate tax reporting, an IRS Form W-9 that matched the claimant name and Social Security Number or claimant name and Employer Identification Number issued by the IRS was required to be on file with the Claims Administrator prior to payment being issued. For individuals that were not U.S. residents, an IRS Form W-8 was also allowed. Otherwise, the Claimant's award was subject to backup withholding.

16. <u>IRS Backup Withholding</u>. For individuals and entities that were previously identified by the IRS as having provided inaccurate information to the CSSP or the HESI/Transocean Settlements Program and to whom an IRS "B" Notice was issued by the CSSP or HESI/Transocean Settlements Program pursuant to the request of the IRS, backup withholding of 24% was paid to the IRS on the Claimant's behalf. The Claims Administrator directed Epiq to deduct backup withholding from eligible Claimants' distributions for whom the IRS has confirmed the information provided by the Claimant was inaccurate or who have not responded to the Settlements Program notices requesting an updated Form W-9, including those whose payments were escheated to the last known state of residence or the state of Louisiana if the Claimant was residing outside of the United States.

17. <u>Issuance of Forms 1099-MISC</u>. IRS Forms 1099-MISC were issued for both the Old Class/Assigned Claims Combined Settlement Fund and the New Class/Punitive Damages Combined Settlement Fund prior to the IRS deadline of January 31 of the year following the distribution(s). Each law firm that received aggregate payment(s) of $600 or more on behalf of its client(s) and each Claimant that has received $600 or more in reportable payments, in the aggregate, received an IRS Form 1099-MISC.

18. <u>Pending IRS Inquiries</u>. There are pending follow up inquiries from the IRS regarding a small number of mismatched name and Social Security Number or business entity name and Employer Identification Number combinations as part of the IRS Form 1099 reporting for 2020 and potentially for 2021, relating to both the Old and New Class Settlement Funds. This is to be expected in a settlement program of this magnitude that extends over so many years, and the Claims Administrator has responded to the IRS providing legitimate and reasonable explanation in response to the inquiry. A reserve of $100,000.00 is being recommended for handling these matters in the event any payment is deemed due by the IRS at the closure of the inquiries; presuming there is no payment due, these funds will be released at that time consistent with Section 19 (e) below.

**PROPOSED ORDER**

19. The Settlement Administrator respectfully requests the Claims Administrator petition the Court for an Order approving the following actions specified below under the direction and supervision of the Claims Administrator and his vendors:

(a) Close the following accounts with Huntington Bank as soon as any final tax refunds are received and all additional payments have been made:

    i. HESI-Transocean Assigned Claims Combined Distribution Settlement Fund ("Old Class Fund");

    ii. HESI-Transocean Punitive Damages Combined Settlements Fund A for the purpose of conducting Distribution A ("New Class Distribution A Fund"); and

    iii. HESI-Transocean Punitive Damages Combined Settlements Fund B ("New Class Distribution B Fund");

(b) Continue to file state and federal tax returns and make quarterly payments as necessary from the Old Class Fund, New Class Distribution A Fund, and New Class Distribution B Fund accounts;

(c) Approve the administrative costs and expenses through case conclusion for the following entities in the following amounts:

      i.    Juneau David, PLLC $100,000.00;

     ii.    Epiq $175,146.79;

    iii.    Adams, Jenkins, and Cheatham $25,200.00;

(d) Approve a holdback of $100,000.00 to use in handling any outstanding IRS inquiry should any payment be deemed necessary; upon resolution of this inquiry, if available, such funds would be released consistent with Section (e) below; such funds shall be held in a non-interest bearing account;

(e) Distribute the remaining funds via payment to the Gulf Coast Restoration Trust Fund, created under the Resources and Ecosystems Sustainability, Tourist Opportunities, and Revived Economies of the Gulf Coast States Act of 2012 (the "RESTORE Act"), to be allocated pursuant to 40 C.F.R. § 1800.500 and to be utilized for purposes of Gulf Coast Restoration and Recovery, after completed Forms W-9 and payment instructions have been provided as necessary. Payment shall be made via wire or check after deduction of all Court-approved administrative costs and any approved holdback. This approval shall encompass granting authority to the Claims Administrator to later distribute any additional released holdback without further Order of this Court, consistent with Section (f) below;

(f) Reissue any additional payments as needed;

(g) Complete any follow up related to IRS Forms 1099-MISC that were issued to attorneys and Claimants with reportable distributions during the pendency of the matter and file/update the required information with the IRS in conjunction with annual tax filings for 2022;

(h) Retain the Court's jurisdiction over the Old Class Fund, New Class Distribution A Fund, and New Class Distribution B Fund until such time as these accounts are closed and fully distributed pursuant to this Court's Order;

(i) Maintain the existing toll-free number and IVR with live operators until November 30, 2023, at which time the toll-free number and IVR will be closed down;

(j) Maintain the website through November 30, 2023, in its current form, after which a single homepage will be maintained and all other subpages removed. The homepage will indicate that the case is closed and that the email and live call operators are no longer available to assist Class Members with inquiries, but will include information on the escheated distributions and how to request copies of IRS Forms 1099 previously issued by the Settlements Program. The website shall be decommissioned on or about November 30, 2024;

(k) Return physical mail received at the case PO Box and physical mailing address to sender after November 30, 2023 and terminate the case PO Box effective November 30, 2024;

(l) Destroy all paper copies of documentation, correspondence, filings, data files, CD/DVD/drives, or other physical media as soon as practicable on or after November 30, 2023; and

(m) Destroy all electronic copies of claims, documentation, correspondence, filings, data files, or other media as soon as practicable after November 30, 2023.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Green Bay, Wisconsin, on June 2, 2023.

                                                                                       Michelle M. La Count